Todd Ashker, C58191
Danny Troxell, B76578
Box 7500/D1-SHU
Crescent City, Ca. 95532
Plaintiffs, In pro-se

**FILED**

APR 1 4 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT
## THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND-DIVISION

TODD ASHKER and DANNY TROXELL,
Plaintiffs,

VS.

EDMUND G. BROWN, etal.,
Defendants.

CASE No. C09-5796 CW

Plaintiff Troxell's Declaration,
In Support Of Motion For
Relief From Defendants'
Interference.

I, Danny Troxell, declare:

1) That I am the pro-se plaintiff in the above numbered case and I submit this declaration in support of the "Motion For Relief From Defendants' Interference With Ability To Prosecute This Case", based on my personal knowledge and experience with such matters. And, I am willing, able, and competent to testify to such if called upon.

2) That I have read the accompanying "Motion", and I verify the statements therein that are attributed to me are true and correct per. penalty of perjury.

3) That in early March 2011, I began creating a summary of my claims

⟨1⟩

From my 100 page [F.A.C.], for the purpose of using it to give potential inmate witnesses an idea of my claims and what type of support evidence I am seeking. I also created a "form letter" explaining what the summary was; this way I can get copies made, and then, when the Law library officer gives 'em to me, I simply add the inmate witness name to each packet; envelope them and give 'em back to the library officer - on the spot - for delivery to the counselor for approval and processing, per procedure.

4) That attached hereto as [Exhibit A], is a true and correct copy of the above referenced summary of complaint and cover letter.

5) That attached hereto as part of [Exhibit B], are true and correct copies of the following documents:

    a) 3/22/11, Request For Photocopy Service [rejected by c/o Lyons]

    b) 3/23/11, Request For Interview, To Officer Lyons

    c) 3/23/11, Request For Photocopy Service [rejected by c/o Reich]

    d) 3/28/11, Request For Interview [with 4/4/11 response from Ms. McCumsey]

    e) 3/28/11, Request For Photocopy Service [denied 4/4/11 per McCumsey memo - also attached]

I hereby swear the aforementioned is true and correct pursuant to penalty of perjury, and this declaration is executed April 6, 2011, at Crescent City, California.

/s/ Danny Troxell

DANNY Troxell, Plaintiff

    In pro-se



EXHIBIT A

TO: POTENTIAL WITNESS

FROM: DANNY TROXELL, #B-76578 / D1-120

RE: ASHKER & TROXELL V. BROWN, ET AL, USDC-ND CA#C09-5796 C.W., SEEKING DECLARATION

Greetings, I'm doing discovery on my civil suit challenging All Areas of CDCR-PBSP policies & practices. I'm including A SUMMARY of the issues I'm raising & part of the "injunctive relief" I'm seeking, relating to indefinite SHU issues I'm challenging.

Im sending the SUMMARY because my complaint is over 100 pages long, And the issues are complex—this condenses it down, And simplifies the issues, in general terms—but hopefully clear enough so you get the gist of it.

Being that you're similarly situated, I'm hoping you can Assist me with A declaration Addressing related issues— According to your personal knowledge and experience. PLEASE KEEP this copy of the summary complaint for your records.

DATED: 3-23-11
/S/ Danny Troxell

MY BEST,
DANNY TROXELL

1.

Ashker & Troxell v. Brown, ET Al.

USDC-N.D. CAl. CASE NO. C-09-5796 CW.


## Summary of Formal Complaint

RE: COMPlAINT On Human Rights ViolATIONS And REQUEST
   For ACTion To End 20+ yEArs oF STATE SAnCTionEd TorTure
   To EXTrACT informATion from ( or CAuse mENTAl illness
   To) CAliforNIA's Pelican BAy STATE Prison — Security
   Housing uNIT (SHU) innATES.


## I. INTRODUCTION:

   This is A Formal ComplAint And rEQUEST For ACTion To
End 20 + yEArs oF STATE SAnCTioned TorTure in OrdEr To
EXTrACT informATion From ( or CAuse mENTAl illness To)
CAliforNiA inmATEs inCArCErATEd indEfinITEly in puni-
Tive isolATion AT Pelican BAy STATE Prison — SECurITy Hous-
ing unITs ( PBSP-SHU), based On ArbITrAry policies And
PrACTices rE: "STATus" OF The inmATEs ( i.E. A CAliforniA
DEPArTmENT oF COrrECTions And RehAbilITATion (CDCR)
gAng "lAbEl", wiThOuT EvEr bEing chArgEd, And found
guilty, of committing A gang rElATEd illEgAl ACT), in vio-
lATion oF The 1st, 5Th, 8Th And 14Th AmEndmENTs To The
U.S. COnSTITuTion And INTERNATIONAl lAw bArring The usE of
TorTure And oThEr CruEl, inhumAnE, or dEgrAding TrEATmENT
or punishmENT AS A mEAns of obTAining informATion

2.

coercion and/or punishment for acts — suspected acts committed (per. U.N. conventions against torture of 1984-1985).

## II. PARTIES:

1) Named complainant(s), on behalf of themselves and those similarly situated - inmates, family members, friends, and concerned citizen, harmed by such policies and practices.

2) The state of California law makers — including but not limited to Governor Edmund Brown, and CDCR Secretary Mathew Cate, et al. (Each and all of them being on notice of said violations and responsible for inmate care and treatment).

## III. SUMMARY OF HUMAN RIGHTS VIOLATIONS:

The CDCR has been violating the human rights of certain inmates for the last 10-35+ years — and counting - via their policy and practice re: the arbitrary, indefinite placement of said inmates into the punitive SHU units alleging said inmates "status" (i.e., a CDCR-gang affiliation classification, which in turn is based on allegations made by confidential inmate informants seeking and receiving special treatment, etc) mandates this SHU placement for safety and security reasons. However, the true nature of such "status" based-indefinite SHU confinement is not clear. While the arbitrary nature of such policy -

3.

PRACTICE IS CRYSTAL CLEAR, DEMONSTRATED by THE FACT THAT CDCR claims THAT <u>All</u> VALIDATED PRISON gANG-AFFILIATES AUTOMATICALLY "POSE AN IMMEDIATE, SEVERE THREAT TO THE SAFETY AND SECURITY OF All general POPULATION PRISON, OTHER INMATES AND STAFF" (solely based on THIS "STATUS"; IT IS NOTABLE THAT MOST INMATES who hAVE been in SHU FOR THE LAST 10-35 + YEARS HAVE <u>never</u> been found guilty of committing A single gANG-RELATED, illegAl Act). BUT THE FACT IS — THIS IS ACTUALLY <u>only</u> Applied TO A few hundred inmates, while TENS OF THOUSANDS OF gANG AFFILIATES ARE in general POPULATION PRISONS THROUGHOUT THE STATE.

This ARbITRARY "STATUS" based indefinite SHU confinement WAS imposed ON A few hundred inmates, beginning in 1985-1986, without PRIOR NOTICE THAT A gANG "lAbEl" WAS prohibited AND SANCTIONABLE, RELATED RULES AND REGULATIONS WERE NOT included in CDCR- CAl. code of REqs. TITLE 15 RULES book UNTIL 1999 (while CAliF. PRISON gANG CULTURE goes bACK TO THE 1950's).

THE CDCR began HOUSING THESE INMATES in PELICAN BAY STATE PRISON — SHU (PBSP-SHU) IN DECEMBER 1989. SAID INMATES HAVE been HOUSED in PBSP-SHU ARbITRARILY, based ON THAT "STATUS" FOR THE LAST 10-20 + YEARS now, AND THEIR SOLE AVENUES FOR RELEASE FROM SHU ARE: PAROLE, dEATH, MENTAL illness, or "debriefing".

"<u>Debriefing</u>" REQUIRES A SHU INMATE TO PROVIDE CDCR-STAFF with "SUFFICIENT VERIFIABLE INFORMATION THAT WILL AdVERSEly impACT THE gANG, OTHER gANG MEMBERS AND ASSOCIATES

4.

TO THE EXTENT THAT THEY will NEVER ACCEPT THEM BACK". This EQUATES TO A CDCR- REQUIREMENT THAT SAID inMATES hAVE THE choice of remaining in SHU until death, mental illness, or becoming A known informant who hAS CAUSED DAMAGE TO OTHER inMATES. This MAKES THE inMATE (And possibly his FAMILY members) A TARGET FOR reprisal, potentially for life... MANY of These inmates Are serving "Term-To-life" senTences, And They hAVE been eligible for parole for THE last 5-25+ YEARS. But They Are Told if They wAnt A chance To parole They hAVE TO debrief - period!

   The CDCR- PBSP-SHU policies And practices summarized violate both THE U.S. Constitution And International law banning THE use of Torture And other cruel, inhumane, or degrading Treatment or punishment - AS A MEANS of obtaining informa-Tion viA coercion, And / or To punish for Acts or suspecTed Acts of misconduct - AS exemplified below:

A.  In DECEMBER 1989, CDCR opened PBSP-SHU, brAgging THAT iT WAS MEANT TO Contain And isolATE THE prison systems "1% - worst of THE worst inmATES"; And This would MAKE THE system SAFER And EASIER TO MANAGE. (This hAS prov-en TO be FAlse. SEE PAGE 11, * noTE C).

B.  There hAS been A loT of CDCR- PBSP (And guard union-CCPOA) propAgAndA generATed AbouT These "worsT of THE worsT" ever since 1989 (And iT hAS been perpeTuATed by THE corporATE mediA viA T.V. drAmAs And movies).

5.

Yet, a review of these so-called demonized "worst of the worst" PBSP-SHU inmates, who are party to this complaint, will reveal they are actually free of being guilty of serious rule violations for many years (and zero illegal gang-related acts in prison). Many have paroled and discharged parole-staying out 5-10 + years, but as soon as they returned to CDCR they were placed back into PBSP-SHU indefinitely!

C.  Many of these inmates are those who utilize the legal system to challenge illegal-CDCR policies and practices, and encourage others to do the same.

D.  For the last 10-20 + years these PBSP-SHU inmates have been subject to the punitive conditions therein for arbitrarily applied "status" reasons, in order to coerce them into becoming notorious informants for the state, or die/suffer mental illness in SHU- <u>examples being</u>:

1)  Subject to 10-20+ years of sensory deprivation via isolation and intentional limitations of normal human contact and social interaction as much as possible.

2)  Denied physical contact with family-friends; no phone calls, and not even able to have a photograph taken to send home. The isolated location of PBSP-SHU near the Oregon boarder, and fact

THAT visits are restricted to 1½ hour on weekends, behind glass, EQUATES TO no visits for most.

3)  If they want out of SHU, they have to provide staff with information and be willing to testify on other prisoners, free citizens, including family members, that only harms others, and this has to be known by everyone. This is a <u>CATCH-22</u> of: become a notorious informant (and thereby place yourself, and possibly family, at serious risk for retaliation) or die / become mentally ill in SHU. This is outrageous, and family, friends and concerned citizens are outraged by this (especially given the fact that CDCR staff are indifferent to, and incapable of, guaranteeing the safety of inmate informants, and their families, outside of prison). This is applied to lifer parole eligibility too (i.e., become an informant, or do life-without parole).

4)  Denied adequate medical care (This became more pronounced when Dr. Michael C. Sayre became PBSP Chief Medical Officer in 2004; and who, with the complicity of several cronies e.g., M. McLean, Sue Risenhoover and James Flowers, et al, began to systematically discontinue and deny medication, specialist care, assistive aids – Telling SHU inmates," if you want better care,

7.

get out of SHU. And now SHU inmates are chained down to the floor of the clinic, like animals, if they need to see a nurse/doctor). The psychiatric staff are complicit too, claiming "there are no mental health issues precluding continue SHU confinement", without any personal interaction with those inmates.

5) CDCR-PBSP-staff constantly seek ways to make SHU more punitive for these inmates (e.g., most cells are freezing in winter - and adequate clothing and head covering is restricted, denied; the food portions are smaller - much of it is inedible, and it's the same bland diet everyday for 20+ years. No exercise equipment - while most prisons provide at least a pullup, dip-bar in SHU units; all property - privileges are severely restricted-denied (compared to most other long term isolation units across the U.S., including Federal-Supermax in Florence, Colorado). And recently ALL college and education programs have been taken away from all PBSP-SHU inmates. Also "group punishment" is a common response to any rule violation.

All of which combines to a level that constitutes illegal policies that include psychological and physical torture for purpose of coercion and punishment, based on "arbitrary" status

9

... Support for the <u>severity</u> of the combined conditions (exempli-fied above) is the fact that many of these inmates <u>have died</u>; many have developed <u>serious medical</u>, and <u>mental illness</u>; and <u>hundreds</u> have elected to become "known informants", causing major problems to their families, and <u>many</u> have been seri-ously victimized as a result (which CDCR is <u>indifferent</u> to), and when they're actually going through the debriefing process, if they do not provide prison officials enough in-formation on other prisoners and free citizens' criminal activ-ities. They are told to come back when they do, forcing those debriefing to create and invent elaborate half-truths stories incriminating many... further endangering the debriefer and his family...

## IV. EXAMPLES OF LEGAL SUPPORT:

Complainants present the following <u>examples</u> of legal prezedent in support of this complaint, and call for ac-tion. It is notable that California lawmakers and courts have been aware of these blatantly illegal policies and practices for 20+ years; however, for the most part they remain <u>indifferent</u> — therefore, more direct action is necessary, via this new case!

## 1. U.S. CONSTITUTION VIOLATIONS:

A) 1st and 5th Amendment—Right to be free of punish-ment for association and/or choosing not to speak

9.

A)
( SEE: NAACP v. Claiborne Hardware Co., 485 U.S. 866, 925
(1982); U.S. v. Safirstein, 827 F. 2d 1380, 1388 (9th Cir. 1987);
American Arab Anti - Discrimination v. Reno, 70 F. 3d 1045
1063 (9th Cir. 1995); Hydrick v. Hunter, 2006 D.J.D.A.R. 13181,
13186 (9th Cir 2006); People v. Castaneda, 23 Cal. 4th 743, 749
(2000) (Re: Cal. Supreme Court interpretation of Cal. Pen.
Code Section 186.22, which is the penal code relied upon
for CDCR rules re: "gang activity". SEE: Cal. Code of Regu-
lations, Title 15 Section 3023). (e.g., only conviction for
felonious gang activity is sanctionable per. Cal. Pen.
Code 186.22).


B) 8th Amendment Right to be free from cruel and unusal punish-
ment (e.g., not be subject to serious threat of physical or
mental harm) SEE: Valandingham v. Bojorquez, 866 F. 2d
1135, 1138 (9th Cir. 1989) (Re: "informant status" issue);
And, Benefield v. McDowall, 241 F. 3d 1267, 1271 (10th Cir.
2001); David v. Hill, 401 F. Supp 2d 749, at 756-57 (S.D. Tex.
2005); And, U.S. v. Basciano, 369 F. Supp. 2d 344 (E.D. N.Y.
2005); And Madrid v. Gomez, 889 F. Supp. 1146, 1229-30,
1260-67 (N.D. Cal. 1995); re: punitive conditions in PBSP-
SHU, and mental health issues; wherein the court questions
the legitimacy of SHU punitive measures being used in-
definitely on the inmates at issue, and the court states
... "In sum, those incarcerated in SHU for any length
of time are severely deprived of normal human contact
... conditions in SHU amount to a virtual total depriva-
tion, including so far as possible, deprivation on human

10.

CONTACT" ( Id., AT p. 1230).

THE COURT NOTED..."COURTS HAVE RECOGNIZED SHU conditions, length of time And effects on mental health, Are FACTORS THAT MUST be Considered" ( Id. p. 1264-65) And then concludes THAT PBSP-SHU conditions were NOT A per se violation," based on the current record" (SPECIFICALLY STATING: THE COURT "CANNOT SPECULATE on effect, it may have on inmates confined in SHU FOR 10, 20 YEARS or more". NoTing "the inmates studied in connection with the CASE had generally been in SHU for 3 years or less". Id. p. 1247) SEE ALSO: U.C. SANTA CRUZ PROF. CRAIG HANEY, EXPERT Psych. STudies of mental health issues re:" SHU Syndrome" AVAilable online ( SEE U.C. SANTA CRUZ website).

Importantly, the Madrid COURT Acknowledged The Applicability of the principles covered by the U.S. Supreme COURT in Helling v. McKinney, 509 U.S. 25 ( 1993) (Id., AT p. 1261. "THESE SAME STANDARDS will NOT TOlerate conditions likely To make inmates Seriously mentally ill"). The Helling COURT Principle is THAT inmates Subjected To unconstitutional conditions do not have To Actually Suffer physical-mental harm in order To obTain relief if The risk of future harm is A "substantial risk" The COURTS Are Supposed To provide relief.

And in The unpublished ruling USDC-N.D. CAl # C98-2103B J.w., Griffin v. Gomez, The COURT ordered CDCR

- PBSP-SHU TO release Griffin TO general prison population AFTer finding THAT The "debriefing" requirement, And risk of serious mental illness, created sufficiently "substantial risk(s)" TO both physical And mental health, THAT when combined (Per. <u>wilson v. Seiter</u>, 501 U.S. 294, 304-305 (1991) rose To the level of An 8th Amendment violation, And ordered Griffin's release from PBSP-SHU in 2006 (Id., order Granting writ- June 28, 2006). CDCR's response has been 1st: To place Griffin in The Administration Segregation Units; And 2nd: Transfer him To CORCORAN-SHU. Also see: <u>Robinson v. California</u>, 370 U.S. 660 (1962), which held... "Punishment for 'status' is particularly obnoxious And Cruel And unusual punishment.

C) <u>Miscellaneous</u>:

See: <u>Madrid ruling</u>, AT p. 1241, AT FN. 186 (Re: Some validated gang affiliates NOT placed in SHU; Also note: CAl. Code of Regulations, Title 15, Sections 3378 (d) And 3378 (e) re: general prison population vs. SHU gang affiliates eligibility for "inactive" status). This supports contention re: Arbitrary nature of SHU; The fact that There are Tens of Thousands of gang affiliates in CDCR General prison populations is well publicized in news stories And published legal rulings. See Also: <u>Madrid Ruling</u>, AT pages 1263 AT FN. 204 * (re: contrary evidence showing a decline in CDCR- violence <u>starting in 1984</u>- Six years prior To opening PBSP-SHU, Notably, An Analytical study of CDCR-

violence since Madrid's Jan. 1995 ruling will reveal a prison system a lot worse off since PBSP-SHU opened).

SEE: U.S.D.C. - N.D. Cal # C00-905 S.I., Lira v. Cate. Order dated 9-30-09. "Finding of Fact and Conclusion of Law" (wherein, after a court trial, the court held CDCR-PBSP-SHU officials denied Lira of procedural and substantive due process... including that the 180 day classification reviews of his continued SHU retention (mandated in Madrid) were meaningless (Id., order at pages 3, 40-42), and that PBSP-SHU (for 8 years) caused Lira's serious mental illness. Such principles apply to All. (however, very few obtain relief).

2. INTERNATIONAL VIOLATIONS

(i.e., U.N. Universal Declaration of Human Rights... And 1984 Convention Against Torture and Other Cruel, in-humane or degrading Treatment or punishment - ratified by U.S.A. 1994)

Wherein the 1984 (C.A.T.) ARTICLE-1 defines, and criminalizes "Torture" (i.e., "Any act by which severe pain or suffering, whether physical or mental, isn't intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or

13.

A Third person,... when such pain or suffering is inflicted
by or at the instigation of or with the consent acquies-
cence of public official or other person acting in official
capacity").

   There are no-exceptions (Article-2), violations are
criminal acts (Article-4). Clearly, the acts and omissions
summarized herein violate clearly established U.S. consti-
tution principles, and International Treaty Law (a flag-
rant violation of Article-6 of the U.S. Constitution, which
affirms that Treaty Law is the "Supreme Law of the Land").


## RELIEF REQUESTED

   The plaintiffs request injunctive relief that covers (5)
core issues. These are - in general terms - 1. Individual
Accountability, 2. Abolish the Debriefing policy & modify
Active/inactive gang status criteria; 3. Comply with U.S.
Commission's 2006 recommendations re: an end to long
term solitary confinement; 4. Provide adequate food; 5.
Expand & provide constructive programming & privileges
for Indeterminate SHU - inmates. These core injunctive
issues are presented in more specific detail as follows:

   1) Individual Accountability - This is in response to
CDCR-PBSP's application of "group punishment" as a means
to address individual inmate's rule violations. This includes

14.

The Administrations Abusive-pretextual use of "Safety & Security" to justify what are unnecessary punitive acts, and it has been applied in the context of justifying indefinite SHU-status, and to progressively restrict our programming & privileges.

2) Abolish the Debriefing policy, & modify Active/Inactive gang status criteria — The debriefing policy is illegal and redundant, as pointed out in above Section I.(B), at page #9. The Active/inactive gang status criteria must be modified in order to comply with State law and applicable CDCR-rules & regulations (e.g., see above page #9 at section A&B), as follows: (A) cease the use of innocuous association to deny inactive status. (B) cease the use of informant/debriefer allegations of illegal gang activity to deny inactive status — unless such allegations are also supported by factual corroborating evidence — in which case, CDCR-PBSP staff shall and must follow the regulations by issuing a rule violation report and affording the inmate his due process required by law.

3) Comply with U.S. Commissions 2006 Recommendations re: An end to long term solitary confinement — CDCR shall implement the findings & recommendations of the U.S. Commission on Safety & Abuse in America's prisons final 2006 report, regarding CDCR-SHU-facilities as follows: (A) End conditions of isolation (p.14) Ensure that prisoners in SHU and Ad/Seg have regular-meaningful con-

15.

TACT, And freedom from EXTREME physical deprivations that are known to cause lasting harm (pp 52-57); (B) make Segregation a last resort (f.14). Create a more productive form of confinement, in the areas of allowing inmates in SHU and Ad/Seg the opportunity to engage in meaningful self-help TREATMENT, work, education, religious, And other productive activities relating to having a sense of being a part of the community; (C) End long term solitary confinement And release inmates to the gen. prison population, who have been warehoused indefinitely in SHU for the last 10 to 40 years (And counting); (D) provide SHU inmates immediate-meaningful access to: Adequate natural sunlight; quality health care & treatment - including the mandate of transferring All PBSP-SHU inmates with chronic health care problems, to the New Folsom Medical SHU-Facility.

4> Provide Adequate Food - Cease the practice of denying adequate food, And provide wholesome nutritional meals - including special diet meals, And allow inmates to purchase additional vitamin supplements also; (A) PBSP-STAFF must cease their use of food as a tool to punish SHU inmates; (B) provide a sgt./Lt. to independently observe the serving of each meal, And ensure each tray has the complete issue of food on it; (C) Feed the inmates whose Job it is to serve SHU meals, with meals that are separate from the pans of food sent from kitchen for SHU meals.

16.

5> Expand & provide constructive programming & privileges for Indefinite SHU STATUS Inmates - examples are: (A) expand visiting re: amount of time and adding 1 day per week; (B) one photo per year; (C) a weekly phone call; (D) two (2) annual packages per year - (both) pkgs based on "item" weight, and not packaging and box weight; (E) expand canteen (and pkg) items allowed; allow us to have the items in their original pkging (and, the costs for the cosmetics, stationary, envelopes - should not count towards the max. draw limit); (F) more T.V. channels; (G) T.V./radio combinations, or T.V. & a small battery operated radio; (H) Hobby craft items - art paper, colored pens, small pieces of colored pencils, water colors, chalk, etc.; (I) sweat suits and watch caps; (J) wall calendars; (K) install pullup/dip bars on SHU yards; (L) allow correspondence courses that require proctored exams.

NOTE: The above examples of programs/privileges are all similar to what's allowed in other supermax prisons (e.g., Federal Florence, Colorado, and Ohio), which supports our position that CDCR-PBSP-SHU staff claims that such are a threat to safety & security are exagerations.

Respectfully Submitted

Danny Troxell

EXHIBIT B

B

# PELICAN BAY STATE PRISON
## SECURITY HOUSING UNIT LAW LIBRARY
## Request for Legal Photocopy Service

AAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAA

## RULES AND CONDITIONS:

1. When requesting photocopy services, you must complete and submit:
   a. Request for Legal Photocopy Service, form PBSP-0014
   b. Signed Trust Account Withdrawal Order, CDC 193.
2. Photocopy service is limited to legal documents as per D.O.M. 101120. Law books, reference manuals, transcripts, personal mail, etc. **WILL NOT BE COPIED.**
3. Cost for photocopy service will be ten cents (10 ¢ ) per page
4. No inmate may submit another inmate's documents for photocopy services.
5. Separate all double sided and odd sized pages from the rest of your documents to assist staff in more efficient handling of your requests. **DO NOT TIE OR TAPE PAGES TOGETHER.**
6. As per D.O.M. 101120, photocopy orders are limited to fifty (50) pages. Photocopy requests over fifty (50) pages require written justification (below) from the inmate.
7. Photocopy services are subject to these rules and conditions to prevent abuse and to ensure that all inmate have the opportunity to benefit from this service.

AAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAA

I have read the photocopy service rules and conditions. By signing this request, I agree to accept and comply with all the rules and conditions of the PBSP SHU Law Library photocopy service policy.

NOTE *Pgs need front & back copying

Name (Print): DANNY Troxell   CDCR#: B76578   Cell#: D1-120

Type of Document: Discovery Re: Witness Declarations   Number of Pages*: 25

Name of Court: USDC-ND Cal #C09-5796 CW   Number of Sets: 7

Plaintiff: Ashker & Troxell   Total Copies: 175

Defendant: Brown, et al   Total Cost: 17.50

Inmate Signature: Danny Troxell   Date Submitted: 3/22/11

* Over fifty (50) page Justification Statement: N/A Note pages are front & back copies

_____

_____

*Attach additional page if necessary*

AAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAA

## **SHU LAW LIBRARY USE ONLY**

Date received in SHU Law Library:

CX 3-23-11

Approved:_____ Denied:_____ ~~Reason for Denial:~~ RESUBMIT IN COMPLIANCE WITH DOM Supp 101120.15 Lines (E & F) All Docs must be completed & signed BLANK, INCOMPLETE OR UNSIGNED DOC'S WILL BE COPIED (SEE ATTACHED DOM Supp)

Completed By:_____   Date:_____

Issued By Officer:_____   Date:_____

Reviewed and received by Inmate:_____   Date:_____
(Inmate Signature)

Distribution: White Copy: Law Library   Yellow Copy: Inmate

**Floor Officer: Have inmate sign, then forward to the Law Library.**

PBSP-0014
(Rev: 10/09)

# PELICAN BAY STATE PRISON
## SECURITY HOUSING UNIT LAW LIBRARY
## Request for Legal Photocopy Service

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

### RULES AND CONDITIONS:

1. When requesting photocopy services, you must complete and submit:
   a. Request for Legal Photocopy Service, form PBSP-0014
   b. Signed Trust Account Withdrawal Order, CDC 193.
2. Photocopy service is limited to legal documents as per D.O.M. 101120. Law books, reference manuals, transcripts, personal mail, etc. **WILL NOT BE COPIED.**
3. Cost for photocopy service will be ten cents  (10 ¢ ) per page
4. No inmate may submit another inmate's documents for photocopy services.
5. Separate all double sided and odd sized pages from the rest of your documents to assist staff in more efficient handling of your requests.   **DO NOT TIE OR TAPE PAGES TOGETHER.**
6. As per D.O.M. 101120, photocopy orders are limited to fifty (50) pages. Photocopy requests over fifty (50) pages require written justification (below) from the inmate.
7. Photocopy services are subject to these rules and conditions to prevent abuse and to ensure that all inmate have the opportunity to benefit from this service.

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

I have read the photocopy service rules and conditions. By signing this request, I agree to accept and comply with all the rules and conditions of the PBSP SHU Law Library photocopy service policy.

*NOTE - NEED TO BE COPIED F/B -

Name (Print): DANNY Troxell          CDCR#: B76578    Cell#: D1-120
Type of Document: Discovery Re' Witness Declarations    Number of Pages*: 25
Name of Court: USDC-ND CaA # C09-5796 CW    Number of Sets: 8
Plaintiff: Ashker & Troxell    Total Copies: 200
Defendant: Brown et Al    Total Cost: 20.00
Inmate Signature: Danny Troxell    Date Submitted: 3/23/11
* Over fifty (50) page Justification Statement:  N/A - Note these pages need Front & back copying —
THIS IS SUMMARY OF FORMAL Complain
*Attach additional page if necessary*

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

## **SHU LAW LIBRARY USE ONLY**

Date received in SHU Law Library:
3-24-2011

CO
R.REICH

Approved:_____ Denied:_____  Reason for Denial: PLEASE RESUBMIT
with cover page stating what court you are sending this to. And why 8 copies

Completed By:_____  Date:_____
Issued By Officer:_____  Date:_____
Reviewed and received by Inmate:_____  Date:_____
(Inmate Signature)

Distribution: White Copy: Law Library  Yellow Copy: Inmate

**Floor Officer: Have inmate sign, then forward to the Law Library.**

PBSP-0014
(Rev: 10/09)

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE**
CDCR 22 (10/09)

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print)   (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| Troxell | DANNY | B76578 | D. Troxell |

| HOUSING/BED NUMBER: | ASSIGNMENT: | | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| DI-120 | EHU | HOURS FROM 24-7 | LEGAL - PHOTOCOPIES |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW.

I AM PRO-SE IN USDC-NDCAL #C09-5796CW — ON 12- -10, the Court issued AN order
which, in part, Authorizes ME to conduct discovery! On 3/22/11, I sent the encluded material-
to LawLibrary for copies of my discovery related letter to potential inmate witnesses- along
with Summary of my complaint- Necessary in order to obtain related declarations from
Numerous witnesses — S/o yuns rtd it to me on 3/23/11 saying I had to sign everything —
I sent it back on 3/23/11, with everything signed & a note to S/o yuns explaining what
the material is! On 3/25/11 I receive it back again w/note from Risch- requesting Court order that
waives copies Check A14010.21A **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **

METHOD OF DELIVERY (CHECK APPROPRIATE BOX)

☐ SENT THROUGH MAIL: ADDRESSED TO:_____ DATE MAILED:____/____/____

☑ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| S/o J. BATON | 3-28-11 | (signature) | (CIRCLE ONE)  YES   NO |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| | | (CIRCLE ONE)   IN PERSON   BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| E. McCumsey Sr. LL | | E. McCumsey | 4/14/11 |

This document is returned to you uncopied because it appears to be out of
compliance with DOM §14010.21, 14010.21.2, & 54010.22, and DOM Supplement
§ 101129.15. See accompanying memo.

## SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL.  KEEP FINAL GOLDENROD
COPY.

_____

_____

_____

_____

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| | |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

_____

_____

_____

# PELICAN BAY STATE PRISON
## SECURITY HOUSING UNIT LAW LIBRARY
## Request for Legal Photocopy Service

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

### RULES AND CONDITIONS:

1. When requesting photocopy services, you must complete and submit:
   a. Request for Legal Photocopy Service, form PBSP-0014
   b. Signed Trust Account Withdrawal Order, CDC 193.
2. Photocopy service is limited to legal documents as per D.O.M. 101120. Law books, reference manuals, transcripts, personal mail, etc. **WILL NOT BE COPIED.**
3. Cost for photocopy service will be ten cents (10 ¢ ) per page
4. No inmate may submit another inmate's documents for photocopy services.
5. Separate all double sided and odd sized pages from the rest of your documents to assist staff in more efficient handling of your requests.   **DO NOT TIE OR TAPE PAGES TOGETHER.**
6. As per D.O.M. 101120, photocopy orders are limited to fifty (50) pages. Photocopy requests over fifty (50) pages require written justification (below) from the inmate.
7. Photocopy services are subject to these rules and conditions to prevent abuse and to ensure that all inmate have the opportunity to benefit from this service.

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

I have read the photocopy service rules and conditions. By signing this request, I agree to accept and comply with all the rules and conditions of the PBSP SHU Law Library photocopy service policy.

*NOTE - pgs Need Front & back copying-

Name (Print): DANNY Troxell _____ CDCR#: B76578 _____ Cell#: D1-120

Type of Document: Discovery Re: Witness Declarations Number of Pages*: 25

Name of Court: USDC-ND CAL # C09-3796 CW _____ Number of Sets: 8

Plaintiff: Ashker & Troxell _____ Total Copies: 200

Defendant: Gov. SCHWARZENEGGER/BROWN, et al _____ Total Cost: 20.00

Inmate Signature: Danny Troxell _____ Date Submitted: 3/28/11

* Over fifty (50) page Justification Statement: N/A - Note pgs are F&b

_____

_____

*Attach additional page if necessary*

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

## **SHU LAW LIBRARY USE ONLY**

Date received in SHU Law Library:

_____ Ret To LL on 4/4/11

Approved:_____ Denied: See memo Reason for Denial:_____

_____

Completed By:_____ Date:_____

Issued By Officer:_____ Date:_____

Reviewed and received by Inmate:_____ Date:_____
(Inmate Signature)

Distribution: White Copy: Law Library   Yellow Copy: Inmate

**Floor Officer: Have inmate sign, then forward to the Law Library.**

PBSP-0014
(Rev: 10/09)

# Office of the Senior Librarian

to:     Inmate Troxell B-76578, D1-120
from:   E. McCumsey, Sr. Librarian
date:   4 Apr 11
re:     photocopy request


You have requested photocopies from the SHU Law Library of a document seeking declarations from potential witnesses. In an attached CDCR 22, you state you have a court order authorizing you to conduct discovery.

It is not clear that a packet of information to potential witnesses is covered by discovery. I have written the Office of Legal Affairs for clarification on this point, but until they respond, we will follow state and local policy, which state that copies will be made only for courts and certain specified exceptions (DOM §14010.21 Legal Copying Service; §14010.21.2 Legal Documents; DOM Supplement §101120.15 Legal Photocopying). Potential witnesses are not included in any of these sections.

In the CDCR 22, you also state these copies are "necessary in order to obtain related declarations from numerous witnesses." If OLA determines that a packet of information to potential witnesses does not constitute court-ordered discovery, and if the witnesses you are addressing are other SHU inmates, the material you are asking copies of will have to be considered correspondence between inmates, and therefore subject to the regulation cited below.

DOM §54010.22 Correspondence between Inmates/Parolees/Probationers,

> Inmates shall obtain written authorization from the Warden/Regional Parole Administrator or their designee/assigned probation officer, person in charge of the County Jail and/or other State Correctional Systems, at a level not less than Correctional Captain/Facility Captain or Parole Agent III to correspond with any of the following:
> > • Inmates under the jurisdiction of any county, state or federal, juvenile or adult correctional agency.

E. Mc Cumsey

E. McCumsey
Senior Librarian

G-9

## PROOF OF SERVICE BY MAIL

(C.C.P. Section 101(a) # 2015.5, 28 U.S.C. 1746)

I, _D. Troxell, B76578_____, am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below named action.

My Address is: P.O. Box 7500, Crescent City, CA 95531.

On the ___8___ day of ___APRIL_____, in the year of 20_11_, I served the following documents: (set forth the exact title of documents served) RE: #C09-5796 CW

① Plaintiffs' Notice & Motion For Relief From Defendants' Interference With Ability To Prosecute Case

② Ashker Support Declaration ③ Troxell Support Declaration w/exhi A&B

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

US District Court                    |    Nicole Roman
1301 Clay St, Ste #400S              |    atty at Law
Oakland, Ca 94612-5212               |    180 Grand Ave, Ste. 225
                                     |    Oakland, Ca 94612

I declare under penalty of perjury that the foregoing is true and correct.

Dated this ___8___ day of ___April_____, 20_11_.

Signed: _____Tammy Troxell_____
                (Declarant Signature)

Rev. 12/06