Todd Ashker, C58191
Danny Troxell, B76578
P.O. Box #7500/D1-SHU
Crescent City, Cal. 95532
Plaintiffs, In pro-se ++.

RECEIVED
OCT 1 9 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

The United States District Court
For The Northern District Of California
Oakland-Division

Todd Ashker and Danny Troxell,
Plaintiffs,

vs.

Edmund G. Brown, Mathew Cate, Roderick Q Hickman, Jeanne Woodford, Joe McGrath, Richard Kirkland, Robert Horel, Francisco Jacquez, Greg Lewis, William Barlow, R.L. Johnson, D.W. Bradbury, J. McKinney, Robert Marquez, R. Rice, John Harrison, B. Thornton, G.H. Wise, A. Hernandez, Robert Doyle, Susan Fisher, Robert Harmon, Hollis Gillingham, D. Smith, and S. Tucker, inclusive,
Defendants.

Case No. C09-5796 CW

Proposed Second Amended Complaint and Demand For Jury Trial [Seeking Damages and Injunctive Relief, per 42 USC §1983]

## I. Jurisdiction & Venue

1) This action is brought pursuant to 42 USC §1983 to redress the deprivations under color of state law, of rights secured by the Constition of the United States. Jurisdiction is pursuant to 28 USC §§ 1331 & 1343. Plaintiffs seek damages, as well as declaratory relief [per. 28 USC §§ 2201 & 2202]

2) Venue is proper pursuant to 28 USC § 1391(b)(2) because the alleged unlawful acts and ommisions occurred primarily within the Northern District Of California, in the County of Del Norte. Plaintiffs request a trial by jury on all claims.

## II. Parties

3) Plaintiffs Todd Ashker and, Danny Troxell, are both serving term-to-life sentences in the custody of the Calif. Dept. of Corrections & Rehabilitation [C.D.C.R.]. They have been, and were at all times mentioned herein, confined in Pelican Bay State Prison's S.H.U. unit.

4) Defendant ~~Arnold Schwarzenegger~~ EDMUND G. BROWN, JR., is Governor and Chief Executive of the state of California. At all times mentioned herein, he has been legally responsible for the policies, customs, and practices, adhered to by the C.D.C.R. [i.e., he is personally aware of, and condons, state sanctioned torture as a way of coercing P.B.S.P-SHU inmates into providing information & confessions]; as well as, The Board of Prison Hearings [BPH] re: term-to-life inmates parole criteria [i.e., he created, and/or, allowed the continuance of, the policy, or custom under which unconstitutional practices occur; e.g., reviewing [BPH] parole grants, per. article 5, sect. 8(b) of the Calif. Const., and rescinding the parole grants given to inmates with many years of inactive gang-status, until said inmates "debrief" [See below para's #26-27, 40, re: "debriefing"]

5) Defendant Matthew Cate, is the Secretary of [CDCR]; per. Cal. Penal Code §5054, Secretary Cate, is the head of [CDCR], responsible for the supervision, management and control of the state prisons, and for the care, custody, treatment,... of all persons confined therein. Sec. Cate, is responsible for promulgating and rescinding the rules and regulations for the administration of the prisons [per. Cal. Pen. Code §5058]

(1)

Defendant Cate, has personally created, and/or allowed the continuation of, the policies and customs under which the unconstitutional policies, customs & practices occurred.

6) Defendants Roderick Q. Hickman, and Jeanne Woodford, are former Secretarys [Directors] of [C.D.C.R.]. At all times mentioned herein, they both had the same duties and responsibilities as Defendant Cate; each of them were personally responsible for creating, and/or allowed the continuance of, the policies and customs under which the unconstitutional policies, customs, and practices occurred.

7) Defendants Joe McGrath, Richard Kirkland, Robert Horel, and Francisco Jacquez, are each former Wardens/acting Wardens and Administrators at P.B.S.P.; Def. Lewis, is current PBSP-acting Warden. At all times mentioned herein, each of them was legally responsible for implementing and adhereing to the Secretary/Directors rules and regulations, and for the operation of P.B.S.P., and the welfare of all inmates therein. Each of them was personally responsible for creating, and/or, allowing the continuance of, the policies and customs under which the unconstitutional policies, customs, and practices occurred. [each were directly and personally involved in the violations too]

8) Defendants William Barlow [PBSP-Litigation Coordinator], R.L. Johnson [PBSP-SHU, Captain], and D.W. Bradbury [PBSP-SHU, Associate Warden], at all times mentioned herein, were each legally responsible for carrying out their duties [per assigned posts]; including, following applicable law, rules and regulations. Each of them was personally put on notice of the unconstitutional policies, customs, and practices described in the complaint, and each had the power, and duty, to take remedial action. Instead, each of them, via their acts and omissions, exacerbated the problems by condoning them, and thereby ensuring the continuance of the violations indefinitely.

9) Defendants J. McKinney, Robert Marquez, R. Rice, G.H. Wise, John Harrison, and B. Thornton, are each current and former [CDCR-PBSP] gang-investigators. At all times mentioned herein, each of them were legally responsible for carrying out their assigned duties, and adhereing to all applicable laws, rules and regulations. Each of them claimed they personally investigated Plaintiffs gang-affiliation, and status, issues, and each

⟨2⟩

of these Defendants have personally violated Plaintiffs' U.S. Constitutional rights via their failure to follow CDCR- policies; and/or, the policies, customs, and practices they did follow are unconstitutional, as specified in the complaint below.

10) Defendant A. Hernandez, is a former CDCR- correctional officer, who was assigned to P.B.S.P.-SHU, D1-Block. At all times mentioned herein, part of her duty(s) included the processing/reviewing of PBSP-SHU inmates, approved inmate to inmate legal correspondence. As detailed in the complaint, Def. Hernandez, personally violated Plaintiffs' U.S. Const. rights via her acts and omissions re: approved legal correspondence violations.

11) Defendant Robert Doyle, is current [BPH] chairman; Defendants Susan Fisher, Robert Harmon, Hollis Gillingham, Dennis Smith, and Steven Tucker, are each current and former [BPH] commissioners. At all times mentioned herein, each of them were legally responsible for conducting term-to-life inmates, parole suitability hearings pursuant to applicable laws, rules and regulations. Each of them personally created, and/or, allowed the continuance of, the unconstitutional policies, and customs under which the unconstitutional practices occurred. Defendants each personally applied the arbitrary, status-based, no parole and multi-year deferals practice, applied to lifers in [SHU] for administrative reasons; including the Plaintiffs, as specified below.

12) Defendants BROWN, Cate, Hickman, Woodford, McGrath, Kirkland, Horel, Jacquez, Barlow, Johnson, Bradbury, McKinney, Marquez, Rice, Harrison, Thornton, Wise, and Hernandez, are each sued individually and in their official capacity [for damages and injunctive relief].

13) Defendants Doyle, Fisher, Harmon, Gillingham, Smith, Tucker, and LEWIS, are each sued in their official capacity [for declaratory and injunctive relief].

14) Each of the Defendants have acted, and those still employed continue to act, under color of state law at all times relevant to this complaint. Plaintiffs are informed and believe that each of the kinds of conduct complained of herein, are the subject of numerous prisoner complaints, which are reviewed by the Governor, Secretary/Directors, Wardens, and [BPH] staff. Additionally, this conduct has been

<3>

4

the subject of numerous individual suits and writs by inmates [including the Plaintiffs many complaints, memos, and suits]. Defendants have been on notice of the constitutional violations and refuse to correct the problems, and in fact condone these continuing violations.

### III. INTRODUCTION

15) This is a claim for damages and injunctive relief brought under 42 USC §1983, against the Governor, CDCR, and BPH officials, for violations of Plaintiffs rights to: free speech and association; freedom from incriminating themselves and others; freedom from torture and other cruel and unusual punishment; right to due process [both procedural and substantive], equal protection, and ex post facto protection; as protected by the 1st, 5th, 8th, and 14th Amendments to the U.S. Constitution [and United Nations 1984 Convention Against Torture and other cruel, inhuman or degrading treatment].

16) This action arises from Defendants policies, customs, practices, and/or, acts and omissions re: Plaintiffs [23-24+] years of SHU-confinement and related harm therefrom, including multi-year parole deferrals. Defendants have arbitrarily and wrongly retained them in SHU, and issued multi-year parole denials, on the basis of status [a CDCR-gang label]: (a) Without due process of law; (b) When they deny membership, and have never been found guilty of committing an illegal, gang-related act; (c) On the basis of innocent association; (d) On the basis of coerced, erroneous, false, and unreliable information; (e) As part of Defendants informant procurement custom, via the use of torture, and cruel, unusual, and dehumanizing treatment; (f) For more than (23-24) years, in conditions that seriously impact Plaintiffs physical and mental health; (g) And predicating their release from (SHU), and parole, upon their agreement to become known informants, and thereby subject themselves [and family] to serious risk of retaliatory danger.

17) This action also includes claims arising from Defendants acts, omissions, customs, policies, and practices, re: U.S. Constitutional First Amendment

⟨4⟩

violations of Plaintiffs protected rights to: free speech, access to courts, and reading material.

## IV FACTS
### FACTS PERTAINING TO PLAINTIFFS ARBITRARY, ILLEGAL, AND INDEFINITE RETENTION IN THE P.B.S.P.-S.H.U.

(a) General Facts re: Violations of Applicable Laws, Rules, and Regulations

18) As detailed below, Plaintiffs have been arbitrarily, and illegally, confined in [SHU] for more than [23-24] years; such indefinite SHU-confinement is a continuing violation of their protected U.S. Constitutional rights, as follows.

19) The CDCR classified Ashker as an A.B. member in 1988, based on unreliable, unsubstantiated allegations made by confidential inmate informants - to prison staff. This initial classification came about without prior notice that (a) a gang classification was cause for sanctions; and (b) he was even being investigated. He received no notice re: allegations being made about him, nor any opportunity to respond. He has always maintained he is not a gang affiliate, nor is he party to any illegal gang-activity.

20) Ashker's been in (SHU) since 1986, and been on indefinite (SHU) status at PBSP-since January 1992, based on CDCR's arbitrary application of policy(s) re: SHU due to gang-label. Defendants have repeatedly told him his only way out of (SHU) is to parole, die, or debrief; and Defendant's BROWN ~~[crossed out]~~ and (BPH) commissioners, expect him to debrief his way out of (SHU), prior to a chance to parole [see details, paras # 42-91, and 141-149]

21) The CDCR classified Troxell as an A.B. member in 1989, based on unreliable, unsubstantiated allegations made by confidential inmate informants - to prison staff. This initial classification came about without any prior notice that (a) a gang classification was cause for sanctions; and (b) that he was even being investigated. He received no notice about allegations being made about him, nor any opportunity to respond.

⟨5⟩

6

He has always maintained he is not gang affiliated, nor party to any illegal, gang-activity.

22) Troxell has been subject to (SHU) since 1985, and on indefinite PBSP-SHU confinement since December 1989, based on CDCR's arbitrary application of policies re: SHU due to gang-label. Defendants have repeatedly told him his only way out of [SHU] is parole, die, or debrief; and Defendants' Brown, and [BPH] commissioners', expect him to debrief his way out of [SHU], prior to a chance to parole [see details, at paras #92-137, 141-143, and 150-161, below]

23) Plaintiffs' received subsequent reviews of their gang-status in 1995, 2001, 2002, 2003, and 2007. The 1995-2003, reviews were conducted without prior notice or opportunity to be heard. They were given prior notice, and opportunity to be heard, for their 2007 reviews, whereupon defendants' revalidated them again; however, plaintiffs' are informed, and thereby allege, that none of their subsequent reviews [1995-2007], were inclusive of substantive investigations [per, defendant McGrath's testimony, and Court "Findings of Fact", in Lira v. Cate, USDC-N.D.Cal #C00-0905 S.I., Order of Sept. 30, 2009, at pp. #40-42]

24) Plaintiffs' challenged the gang-validations via several CDCR-602 Appeals; all of which defendants', or their agents, denied, based on their unconstitutional policies, and practices at issue. Plaintiffs' are informed, and thereby allege, that none of their 602 appeals, received substantive investigatory reviews [Id, per McGrath's testimony ref'd in the Lira Order, pp #40-42; as more fully detailed in below paras #46-87, and 97-133]

25) Between 1985 and 2010, defendants, and their agents, were mandated to provide meaningful reviews of plaintiffs' (SHU) status every 120/180 days [per, Toussaint and Madrid Court rulings]. This is because plaintiffs' have a liberty interest in not being held in [SHU] beyond [i]1 months, absent specific exceptions. Plaintiffs' are informed, and thereby allege, that their 120/180 day reviews were without substantive due process, and thus, meaningless [Id, Lira Order, at p. #42:8-25].

26) As stated above [see paras #20-22, and paras ref'd], and more fully detailed below, plaintiffs' only avenue for release from SHU [and to be found suitable for parole] is by

⟨6⟩

7

successfully "debriefing". Pursuant to Defendants policy and custom, successful debriefing requires the inmate to provide staff with "sufficient verifiable information about other gang-affiliates, that causes them harm, so they will never accept him back".

27) Defendants "debriefing" policy and custom, described above, is unconstitutional; it requires the inmate to become a known informant; known by other inmates to have harmed them. This puts the debriefer [and his family], at substantial risk of serious harm due to known informant status; and, Defendants are not able to protect inmate informants [or their families], and don't bother to tally the one's who have been hurt.

28) CDCR-Defendants have subjected Plaintiffs, and similarly situated inmates [i.e., arbitrary, indefinite SHU-confinement, for alleged administrative reasons], to progressively more punitive-restrictive conditions in PBSP-SHU [as detailed in below paras # 138-140], in order to coerce them into providing staff with damaging information about themselves, and others [Defendants Schwarzenegger, and [BPH], use their power over parole for the same coercive purpose].

29) Between October 1985 and June 1999, CDCR- did not have any legally promulgated rules or regulations re: indefinite SHU-confinement, or criteria for release therefrom. On June 25, 1999, A Sacramento Superior Court, ruled that CDCR's - gang-validation, and related SHU-placement, retention, and avenue for release, were not legally promulgated [per. Administrative Proc. Act [A.P.A.]], and were not enforceable.

30) In response, CDCR-Defendants have incorporated several rules into the Calif. Code of Regs, Title 15 [per. A.P.A. requirements], that became effective between Aug. 19, 1999 and the present. Such rules are vague, contradictory, and arbitrarily applied. Other rules, and related policies, customs and practices [summarized in above paras # 18-29], promulgated, or allowed to continue, and applied, by Defendants [to Plaintiffs], are unconstitutional violations of Plaintiffs rights, as presented below,

31) Defendants Schwarzenegger, Cate, Hickman, Woodford, McGrath, Kirkland, Horel, Jacquez, Adams, Johnson, Bradbury, McKinney, Marquez, Rice, Harrison, Thornton, and

⟨7⟩

Wise, at all times mentioned herein, created and/or approved, and allowed the continuance of [and personally applied], the policies, or customs under which the unconstitutional practices, policies, and customs have occurred and caused damage and harm to Plaintiffs [as summarized below, and supported in para's # 42-140]

32) At all times specified here, the above named Defendants knew at the time, or should have known in the proper performance of their official duties:

(a) Plaintiffs had a right to prior notice that a CDCR-gang label was cause for punitive sanctions [i.e., indefinite SHU-status, and denial of parole-until you become a successful informant, known for harming other inmates to get out] prior to being sanctioned

(b) Plaintiffs have a liberty interest in remaining in General Prison Population, and to a parole date; because, in part, the SHU- is punitive and restrictive, with potential for causing serious mental illness and exacerbating phys. health problems, and no parole.

(c) Based on this liberty interest and harm caused by decades of indefinite SHU-status, the U.S. Constitution requires due process protection against arbitrary actions, including, procedural due process [i.e., prior notice and opportunity to respond to allegations re: gang issues, <u>before</u> being sanctioned]; and, substantive due process [i.e., legitimate, thorough investigations re: sources of information and Plaintiffs rebuttals; by the gang-investigators, the 180 day committee reviewers, and the 602 Appeals process]

(d) That Plaintiffs have been in [SHU] for [23-24±] years now, without being provided the required due process, since day one. [per details in para's # 18-25, and para's referenced]

(e) That inmate informants are at serious risk of harm in CDCR-prisons; and this risk is greater when the informant is known by gang-affiliates to have told on and harmed them [this may also result in retaliatory harm to the informants family, whom Defendants are not able to adequately protect from such harm].

(f) That their policy, custom, and practice of requiring Plaintiffs to become notorious informants in order to successfully debrief their way out of SHU [and have

⟨8⟩

a chance to parole], and thereby be at serious risk of harm to themselves [and their family], violates the Eighth Amendment of the U.S. Constitution [and, U.N. Convention Against Torture] [as detailed and supported by para's #26-27, and #36-161].

(g) That their policy, custom, and practice of making PBSP-SHU, progressively more punitive-restrictive, for purpose of coercing Plaintiffs, and others, into providing staff with damaging information about themselves, and others [including this requirement to get a parole date], violates the 1st, 5th, and 8th Amends, of the U.S. Constitution [and, U.N.C.A.T.] [as described in para's #138-140].

33) At all times specified herein, Defendants Doyle, Fisher, Harmon, Gillingham, Smith, and Tucker, also personally applied the unconstitutional policy(s), customs, and practices described in above [para #32(a-g)], when they denied parole, with multi-year deferrals, based on status, as detailed in [para's #141 to 161]

34) At all times specified herein, the Defendants named above [in para #31], also created and/or approved, and allowed the continuance of [and personally applied] the below policies, customs under which the unconstitutional policies, customs, and practices occurred, and harmed Plaintiffs [as detailed in para's #35 to 161; this applies to Defendants named in para 33 too, as stated below]

35) At all times specified herein, the above referenced Defendants knew at the time, or should have known in the proper performance of their official duties, that the following policies, customs, and practices, are vague, arbitrary, and contradictory; and, violate the U.S. Const. as applied to Plaintiffs, and similarly situated inmates. All of which have been the subject of numerous complaints, and formal grievances, to Defendants - to no avail; as Defendants not only refuse to take corrective action, they have condoned, and enabled the violations to continue [as detailed in para's #35-161], as follows:

(a) CCR-Title15 §§ 3000 [defining "Gang"], and 3023 [defining "Gang Activity"], when taken together in context, define "Gang-Activity" as, "... when one knowingly commits acts of misconduct classified 'serious' per Title15 § 3315 [unlawful acts], on behalf of a gang." This interpretation is supported by the fact that these (2) Title 15 sections, are pursuant to Cal. Pen. Code §186.22 [which the California

⟨9⟩

10