50.) Ashker first became aware of the "inactive status" policy in (2001), and when his counselor informed him he was scheduled for (ICC) committee review in July 2001, he submitted a written request to be put up for "inactive status" [while clarifying he was never "active" because he was never affiliated in the first place.]

51.) An "investigation" into Ashker's alleged gang-status was conducted by Defendant G.H. Wise on Aug. 1, 2001.

52.) On Aug. 2, 2001, Wise issued a CDC-128 B chrono, stating Ashker did not meet inactive criteria based on (4) confidential memorandum indicating "gang activity" in February and June 2001; and Ashker could request another review in June 2007.

53.) Ashker received Wise's [8-2-01] chrono on Aug. 24, 2001, at the same time, his counselor gave him copies of the CDC-1030 confidential-Disclosure Forms, referenced in Wise's chrono. This was the first time Ashker was aware of the (4) 2001 allegations.

54.) Ashker was not notified, nor given opportunity to respond to the (4) [2001] allegations prior to Wise's decision; nor did Wise conduct any sort of substantive investigation into the allegations [how could he, without giving Ashker a chance to respond]

55.) The confidential memo's dated Feb. 22, 2001, and June 29, 2001, alleged that "an inmate proven reliable" had claimed "Ashker sent several coded messages to the mainline... for non-validated associates of the A.B., to continue to kill ▮▮▮; and Ashker and other AB members in (SHU) were regularly referred to as leaders in the war with the ▮▮▮" [2.22.01]. And, "Ashker and other AB affiliates were conspiring to setup a white inmate to be killed in Feb. 2000" [6.29.01]

56.) Based on information and belief, the above referenced inmate

⟨20⟩

21

informants' "murder conspiracy" claims, are merely unsupported allegations by inmates seeking transfers out of (PBSP); if there was any reliable evidence to support these allegations, CCR Title 15 §§ 3312 & 3315, mandate issuance of CDC-115 Rule Violations, and referral to the District Attorney, neither of which occurred [noteably, if there was reliable evidence supporting such allegations - the failure to issue the mandated (115 RVRs) is a due process violation too]

57.) On Sept. 3, 2001, Ashker submitted 602 Appeal #C01-02335, wherein he specifically addressed, and pointed out easy-to-verify facts to support his denial(s). He also pointed out the fact that he was never issued any CDC-115 R.V.R's, charging him with anything - which is mandatory, if there was any reliable evidence to support such serious allegations.

58.) On Sept. 26, 2001, Def. McGrath, denied the Appeal at Wardens Level, merely rubberstamping Wise's (8-2-01) decision, without any sort of substantive investigation being conducted, based on Ashker's response, and points disputing the allegations [based on info. and belief, i.e., McGrath's testimony admitting that none of the 602 Appeals of validation issues receive substantive review - investigation(s), during Lira trial. per. Lira, supra, Order p 40-42]

59.) Ashker received the Wardens' denial on or about Oct. 2, 2001, and sent it to Director Level on Oct. 14, 2001. Director Level denied the appeal on Feb. 21, 2002, without any substantive type review - investigation [Id. Lira, supra, Order]

60.) During litigation of Ashker, Troxell v. Schwarzenegger, et al #C05-3286 CW., Defendants submitted another CDC-128B Chrono, Authored by Wise, dated Dec. 31, 2001, claiming Wise conducted an investigation into Ashker's gang-status on Dec. 28, 2001, and located (6) conf. memos

⟨21⟩

dated June-August 2001, indicating continued gang-activity.

61.) Defendant Wise' (12-31-01) chrono does not state what prompted the alleged (12-28-01) "investigation" after conducting the (8-1-01) review — investigation [wherein Wise states, "Ashker's next review would not be until 2007"]; Wise also claims "Ashker refused to participate in an interview" on 12-28-01.

62.) Ashker has no recollecting, and therefore <u>denies</u>, ever being asked if he would go for a gang status interview on 12-28-01; he <u>denies</u> ever receiving the (12-31-01) CDC-128B chrono [until reciept of def's 2008 MSJ] And Ashker did not receive the 1030-Conf. Disclosures ref'd in Wise' 12-31-01 chrono until [<u>3-21-02</u>], At which point he challenged them via 602 Appeal(s), which were denied without substantive review [based on <u>Lira, supra, order</u>]

63.) On July 8, 2003, the CDCR-LEIU Defendants revalidated Ashker, as an active AB member, based on the 1988, 1995, and 2001, reviews. This was done <u>without notice</u>, or <u>opportunity to be heard</u>; and was not based on any substantive investigative process [<u>Id</u>., based on Lira, supra; and lack of opportunity to respond — no notice]

64.) Ashker believes the "inactive status" avenue for release from (SHU) is a SHAM [as alleged in above para # 23 H, and based on examples of what has happened to PBSP-SHU inmates Paul Redd, Robert Tanner, and Brad Hart]; and that his only avenue for (SHU) release [and eventual parole] is via informant status, as supported by:

    (A) On Feb. 23, 2004, he submitted a Group Appeal, #C04-00566, on behalf of himself and Troxell [per. CCR Tit 15 § 3084.2(F)], requesting program-rehabilitation opportunities in (SHU), in order to comply with (BPH) parole board recommendations.

<22>

Ⓑ On April 27, 2004, Def. McGrath denied the appeal at Warden's Level, stating, "... you are considered a member of a terrorist organization, and until you fully cooperate with the authorities to help bring down the gang - you will remain in (SHU) without opportunities to program; and, should never be paroled either." [There was NO mention of "inactive status" alternative]

Ⓒ On July 22, 2004, Def. Woodford denied the appeal at Director's Level, stating, "... the Warden's response, represents the CDCR-position." All of Ashker, Troxell's points of dispute were ignored.

65.) On Sept. 15, 2004, Ashker submitted 602 Appeal # C04-02600, wherein he challenged CDCR-Defendants "inactive gang" status criteria; pointing out that the defendants were denying "inactive status" based on hearsay allegations from questionable sources and innocuous activity. And he had not been found guilty of ever committing an illegal gang-related act - and the CDCR CCR Title 15 §§ 3000 [Gang] and 3023 [Gang Activity] meant illegal activity - that mandates issuance of CDC-115 RVR." [this 602 challenge was in response to ICC-committee SHAM review, and continued indefinite SHU-status, held 8-4-04, the chrono wasn't received by Ashker until 9-7-04]

66.) On Dec. 17, 2004, Def. Kirkland, denied the appeal at Warden's level, without addressing the issues, and without any substantive review; he just upheld Ashker's indefinite (SHU) status, based on CDC-128B of 7-8-03.

67.) On March 4, 2005, Def. Woodford rejected the appeal as untimely based on view the appeal challenged the (7-8-03) action. This was clear error, as the appeal challenged policies and practices - as applied by the ICC-Comm. on Aug 4, 2004.

⟨23⟩

68.) On June 6, 2005, Ashker submitted another 602 Appeal, #C05-01551, specifying that he was "challenging CDCR policy's of subjecting him to indefinite (SHU) status, for over (13) years [at the time], based on their gang label." He pointed out that "he had never received a CDC-115 rule violation for committing an illegal act on behalf of a gang, the gang label was based on hearsay from undisclosed inmate informants; and, the continued (SHU) status was used by the (BPH) to justify (5) year parole deferral in (2003), and his only avenue for (SHU) release is via debriefing, or inactive status."

69.) The above referenced appeal pointed out that the policies and practices at issue violated U.S. Constitutional 1st, 5th, 8th and 14th Amendments as follows:

"Ⓐ Sanctions for mere association, without guilt for illegal activity, is a 1st Amendment violation [per. NAACP v. Claiborne Hardware Co. (1982) 485 US 866, 925; American Arab Anti-Discrimination v. Reno, 70 F3d 1045, 1063 [9th Cir 1995]; Cal. Penal Code §§ 186.21-186.22 [e.g., People v. Castaneda, [2000] 23 Cal. 4th 743, 749]

Ⓑ Requiring inmates to become informants to gain release from (SHU) - thereby putting the inmate, and family, in danger of retributive harm, is a 8th Amendment violation.

Ⓒ Premising release from (SHU) upon the inmate becoming an informant via debriefing [implicating ones self and others in gang related acts], which can be used to prosecute the debriefer, and others (and to keep others in SHU), is a violation of 5th and 14th Amendments

⟨24⟩

(D) The (SHU) status has seriously had an adverse impact on his chance for parole, the status has been illegal and completely lacking in adequate due process, in violation of 14th Amendment.

(E) The policy(s) re: "inactive status" is a SHAM, and the (6) year review violate requirement that (SHU) confinement cannot be arbitrary, or a pretext for indefinite segregation and thus periodic-meaningful reviews are mandatory [per. Toussaint v. McCarthy, 801 F2d 1080, 1101; Madrid v. Gomez, at 1277-78, citing Hewitt v. Helms, 459 US 460, 477 n.9] and the ICC-Committee reviews deny meaningful review because they have no authority to release the (SHU) inmate unless he has debriefed, or deemed inactive during one of the (6) year reviews by LEIU."

70.) Defendant Kirkland, denied the appeal at Wardens Level of review, on Aug. 22, 2005. He acknowledged Ashker's 8th Amendment issue re: debriefing places inmate in danger, then ignores it [demonstrating deliberate indifference]; and he acknowledges and admits Ashker has received no disciplinaries for participating in illegal gang activities. He ignores the other points.

71.) On Dec. 13, 2005, Defendant(s) [Hickman or Woodford] denied the appeal at the Director Level, merely rubber stamping the Wardens level denial.

72.) On Aug. 7, 2005, Ashker sent Defendant Hickman a (5) page memo signed by Ashker and Troxell, pointing out that the CDCR use of innocuous-activity, and allegations from confidential inmate informants, to keep them in (SHU) indefinitely unless they debrief, violated clearly established law. The response was, "...the issues presented could not be addressed because they were being litigated in court."

(25)

73.) On October 25, 2007, PBSP-Institutional Gang Investigations [IGI] Unit [Defendants Thornton and Rice] allegedly initiated an investigation regarding Ashker's current gang activity [per.CCR-Title 15 §3378(e), six year review re: inactive status]

74.) This alleged "investigation" into Ashker's current gang activity, was a SHAM - it was not meaningful, because it lacked any semblance of substantive due process [no actual investigation took place] as shown by the following:

    (A) On Nov. 26, 2007, Defendants Thornton and Rice signed a CDC-128B chrono, recommending that Ashker's gang status remain "active" based on their alleged "investigation" consisting of:
        1) Review of Ashker's Central file ['revealing current gang activity,' via (5) confidential memos]
        2) Property Search [revealing (3) photocopies of artwork]
        3) Nov. 26, 2007 "interview" of Ashker [consisting of Ashker giving Def. Thornton (2) pages, denying each item used against him]

    (B) The (5) confidential memos, and Ashker's responsive denials, were as follows:
        1) March 14, 2007, chrono documenting 'a greeting card with numerous shamrocks. The shamrock is used by members of AB to show alliance/membership in gang.' [Response: This is clearly a "St. Patrick's Day" card, dated '98. I kept it to use as a pattern for my own St. Pat's Day card creations & no "sources" ever claimed I've shown them "gang symbols"].
        2) Memo dated Sept. 18, 2006, documenting an informant's claim that 'kites were passed between validated Nazi Lowrider [NLR] members,

<26>

containing the housing assignment of Ashker as well as other AB members [the AB were recruiting the NLR for membership in AB at this time]... Also identified was the fact Ashker had ordered the murder of ▓▓▓▓▓▓▓, who owed Ashker money [Response: #1. I have no control over who passes my # cell on lists or kites; nor do I have any knowledge about "recruitment", # it doesn't specify that I was recruiting anybody. #2. The claim re: putting "hit" on ▓▓▓▓▓ is a Lie! This atty. has helped me on legal issues for 17yrs.- the money he owed has been paid for most part, # if source was reliable, a 115 RVR is mandatory # I've rec'd Ø! Last of all re: alleged "Hit" there's zero demonstrating this is a "gang" issue. My relationship with ▓▓▓ is strictly professional # personal # you have no "evidence" proving otherwise]

3) Memo dated July 7, 2006, staff claimed Ashker attempted to relay messages thru (NLR) member to AB associate Brown, to have his girlfriend sponsor Ashker's girlfriend for U.S. citizenship. Ashker's request shows good standing in gang' [Resp. Brown is a personal friend since [1985]. My wife # his are friends # the subject has nothing to do with "gang" activity period]

4) Memo dated April 4, 2006, informant claimed Ashker is one of the top ranking AB members in PBSP' [Resp. I deny membership /assoc. or involvement in any type of illegal gang activity]

5) Memo dated March 29, 2006, Debriefer claimed, Ashker one of the A.B. members who ordered murder of AB member ▓▓▓▓▓▓ in 2003. [Resp. Your alleged reliable debriefer is a liar! I do not know anyone by

⟨27⟩

28

this name – have never met or been around this person at all – period! And if there was evidence of my involvement – CDC rules mandate a 115 RVR be issued – I've rec'd none for this – I don't know anything about this subject, or this person.]

© The property search [re: three drawings] resulted in (2) chronos, and Ashker's responses – denials were as follows:

1) Oct. 30, 2007, chrono documenting photocopied drawing with a shamrock in axe blade [Resp. The art is from (1995) and I know I'd inked over the shamrock 7-8 yrs ago when I heard staff were making issue out of art work! The symbol means "Irish Pride" to me ...]

2) Oct. 29, 2007, chrono documenting photocopied drawings by A.B. assoc. Evans and AB member Bretches. And by possession, shows Ashker's continued allegiance to gang and its members. [Resp. As for Evan's art copies – so what, there's ∅ demonstrating anything illegal! And gang unit claims re: "indications" sounds juvenile & cartoonish. As for Bretches art – I want that back! That was sent to me as part of an exhibit to declaration he did for me last year – per approved legal corresp. & was reviewed by I.G.I. – as part of my civil case]

75.) Defendants Thornton and Rice, received my above referenced responses, disputing all of the information alleging gang-activity, on Nov. 26, 2007. The fact that they did not investigate the possible validity of any of Ashker's points is supported by the fact that Nov. 26, 2007, is the same day they received Ashker's responses, and authored their 128B-Chrono, referring case to Office of Correctional Safety [OCS] with recommendation

⟨28⟩

Ashker's gang status remain unchanged, and he can request review again in October 2013.

76.) On April 22, 2008, Ashker received Defendant Harrison's CDC-128B-2 chrono dated Jan. 16, 2008 – revalidating him as an active AB gang member based on the (4) confidential memos, submitted by Thornton and Rice.

77.) Defendant Harrison did not independently investigate any of the confidential memos at issue [and, in lieu of Ashker's responsive denials], he just rubber stamped Thornton and Rice's recommendations. [Based on info. and belief, i.e., CDCR-testimony(s) in Lira trial, supra, Order, admitting no substantive review, or independent investigations, are done]

78.) On April 24, 2008, Ashker submitted 602 Appeal (#D08-01173, wherein he challenges "[CDCR] Rules & Regs [CCR Tit. 15 §§ 3341.5 & 3378(e)], and the policies-practices related thereto, on the basis that my [22+] years of indefinite [SHU] confinement [based on "status", i.e., a label], violates clearly established state & federal law, as more fully-specifically detailed below."

79.) The appeal continues, "... I've been on continuous 'indefinite [SHU]' status since [1992], based on [CDCR] classifying me an assoc/member of the A.B. The basis for this classification is confidential inmate informant claims. Yet, I've never been issued a R.V.R [CDC-115] claiming evidence established my personal involvement in any illegal, gang-related activity."

80.) The appeal continues, "... In (2001) I was denied 'inactive status' based on alleged inmate informant & staff claims – yet, I was never charged, nor issued any RVR [CDC-115]. Recently, on [11-19-07] I was given [3] 128-B's and (4) 1030's, containing claims that such represents evidence that I remain "active". On [11-26-07] I gave I.G.I. my written response to these 128B's/1030's, wherein I dispute each of them [see attached copies...]."

⟨29⟩