the Sept. 20, 1999, and Aug. 3, 2000, Conf. Memo's. See details in above paras' #103-108]

114.) Between Nov. 8, 2004 and April 11, 2005, Troxell attempted to file (4) 602-Appeals, challenging Defendants policies re: indefinite (SHU) status, the "informant status" requirement for release, and "inactive" criteria. Defendant Bradbury, refused to process all of these appeals on the pretext that they were "untimely" [CCR-Title 15 states inmates have the right to challenge any policy(s) which have an adverse impact]

115.) Def. Bradbury, rejected the above appeals, at the same time the appeal exhaustion issue was pending in USDC-N.D. Cal #C04-1467 CW [Dismissed without prejudice for failure to exhaust in early June 2005]

116.) On June 7, 2005, Troxell submitted another 602 Appeal, #C05-01550 [this appeal was the same as Ashker's appeal #C05-01551. See above paras #68-71].

117.) In this appeal he specified that, "... he was challenging CDCR policy(s) of subjecting him to indefinite [SHU] status, for over [20] years [at that time], based on their gang-label. He pointed out that he had never received a CDC-115 rule violation for committing an illegal act on behalf of a gang, the gang label was based on hearsay from undisclosed inmate informants; and, the continued [SHU] status was used by the [BPH] to justify (4) year parole deferral in [2001], and his only avenue for [SHU] release is via debriefing, or inactive status.

118.) The above referenced appeal pointed out that the policies and practices at issue violated U.S. Constitutional 1st, 5th, 8th, and 14th Amendments, as follows: [wherein, he listed the same points, and case law as Ashker's appeal. See above para #69 [A-E] for details]

119.) Defendant Kirkland, denied the appeal at Warden's level of review, on Aug. 22, 2005 [the same day, for the same reasons as Ashker's. See above para #70]

120.) On Dec. 12, 2005, Defendant(s) [Hickman or Woodford] denied the appeal at

<40>

41

the Director level, merely rubberstamping the Warden's Level denial.

121.) On August 7, 2005, Troxell was party to the memo he and Ashker created, and sent to Defendant Hickman, pointing out that the CDCR-use of innocuous activity, and allegations from confidential inmate informants, to keep them in [SHU] indefinitely, unless they debrief, violated clearly established law [with case cites incorporated], and requested Hickman remedy the problem. His response was "...the issues could not be addressed due to court litigation."

122.) On March 9, 2007, PBSP-I.G.I.-Unit [Defendants Thornton and McKinney] allegedly initiated an investigation regarding Troxell's current gang-activity [per. CCR-Tit.15 § 3378(e), six year review re: inactive status]

123.) This alleged "investigation" into Troxell's current gang activity, was a SHAM - it was not meaningful because it lacked any semblance of substantive due process [no actual "investigation" took place] as shown by the following:

   Ⓐ On March 19, 2007, Defendants Thornton and McKinney, signed a CDC-128B Chrono, recommending that Troxell's gang status remain "active" based on their alleged "investigation" consisting of:
      1) Review of Troxell's Central File [revealing current gang-activity, via [8] confidential memo's]
      2) Property Search [with negative results]
      3) March 19, 2007 "interview" of Troxell [consisting of Troxell giving Def. Thornton (3) pages, denying each item used against him]

   Ⓑ The [8] confidential memo's, and Troxell's responsive denials, were as follows:
      1) Conf. Memo of Sept. 18, 2006, Informant claims Troxell's name was on a "kite"

⟨41⟩

42

informing other gang members of his location [Response; I have no control over what someone else does. Also, the mention of my name and where I'm housed doesn't meet criteria of "Gang Activity" per. Tit. 15 §§ 3000, 3023]

2) <u>Memo of July 12, 2005</u>, Written Material, "during an investigation, info was discovered by staff indicating Troxell, and other AB members, were attempting to establish a line of communication with other AB's" [<u>Resp.</u> This claim is a fabrication by c/o Sprouse and certain I.G.I. staff in order to prevent white PBSP-SHU prisoners from establishing positive support and programming opportunities...]

3) <u>Memo of July 11, 2005</u> [same as above memo of 7-12-05, with addition of, "Troxell was also receiving funds from an AB members' family"] [<u>Resp.</u> Same response as #2]

4) <u>Memo of April 25, 2005</u>, Staff Info., "... AB members were discussing locations of other members. Troxell was discussed as to current housing." [<u>Resp.</u> My response is same as #1 above....."]

5) <u>Memo of April 2, 2005</u>, Debriefer claimed, "...Troxell communicated housing info. to another member. Troxell was identified as an AB member, who also sponsored an inmate for membership" [<u>Resp.</u> your debriefer is a liar, and his statements - fabrications based on Ⓐ his imagination Ⓑ stuff he's made up based on things he's seen about me on T.V. [Like the Nov. 2002, KTVU Ch.2 news story with my picture, name, and A.K.A. on it] Ⓒ stuff he's read about in newspaper]

6) <u>Conf. CDC-128B dated Aug. 26, 2004</u>, Written Material, "Staff confiscated an "AB roster" with Troxell's name and number on it" [<u>Resp.</u> Same as #1 & 4 above]

7) <u>Memo of May 4, 2004</u>, Debriefer claimed, "...Troxell is an active A.B member, who sponsored an inmate for membership, and gave orders to

⟨42⟩

43

assault certain inmates throughout the state' [Resp. Your informant's claims are false, and not based on firsthand information that I personally ordered him to do anything. I've not been issued a CDCR-115 Rule Violation. And it's been well publicized for past (20) years how prisoners fabricate info, and how easy it is for them to make it appear reliable. Also, many staff — including gang unit staff as far back as 2003 have gone around spreading rumors of conflict between whites and ▇▇▇▇▇▇▇▇▇]

8) Memo of March 3, 2004, Informant claimed, '... Troxell one of the AB members that gave orders to assault ▇▇▇▇▇▇▇, ▇▇▇▇▇ throughout the state.' [Resp. Same as #7 above. You have no real/reliable evidence I ever personally ever gave "orders" to anyone. If you did, Title 15 § 3312-3315 mandate issuance of a CDCR-Rule Violation Report period! Failing to follow Tit 15-3023 re: what constitutes "gang-activity".]

(C) Defendants' Thornton and McKinney, received my points, which dispute each of the (8) items used [to the best of Troxell's ability, based on lack of specific details given], on March 19, 2007; they did not bother to conduct any substantive investigation into any of the (8) items used (either prior to, or after, Troxell's responses were received; based on info. and belief, i.e., Def's 128B-Chrono recommending (OCS) keep his gang status at "active" is dated the same day that he gave them his response (3-19-07) thus making it impossible to believe any "investigation" occurred; and Testimony in Lira case, supra — no substantive investigating is done'.)

124) On Dec. 4, 2007, Troxell received Defendant Marquez' CDC-128B-2 Chrono dated Oct. 18, 2007 — revalidating him as an active AB gang-member

<43>

44

based on the [8] Confidential memos, submitted by Thornton and McKinney. And stating his next Active/Inactive Review, eligibility date would be Sept. 1, 2012.

125.) Defendant Marquez, did not independently investigate any of the confidential memos at issue [and, in lieu of Troxell's responsive denials]. He just rubber stamped Thornton and McKinney's recommendations [based on info. and belief; i.e., CDCR-Testimony(s) in Lira trial, supra, Order of 9-30-09, admitting no substantive review, or independent investigations, are done] [And, on 9-26-07, PBSP-SHU-ICC, had already rubber stamped Thornton, and McKinney's, March 19, 2007, decision to deny inactive status]

126.) On Dec. 12, 2007, Troxell submitted 602 Appeal #D07-02824, wherein he challenges "[CDCR] Rules-Regs. [CCR-Title 15 §§ 3341.5 & 3378(e)], and policies-practices related thereto, on the basis that my [22 plus] years of indefinite (SHU) confinement on the basis of "status" violates state & federal law, as detailed below."

127.) The appeal continues, "... I've been classified by CDC as an associate/member of the A.B. since Jan. 1984, when I was released from S.Q., Max B, to Folsom G.P. The basis for this label was confidential inmate informants. In Oct. 1985, I was placed in (SHU) based on this label & have been in (SHU) ever since. I've never been issued a CDC-115 RVR for involvement in any illegal gang-activity.

128.) The appeal continues, "... In 2000/2001, I was denied inactive status on basis of conf. inmate informants claiming I was a gang member. I was told I can ask for another "inactive" review in 6 years; in the interim my sole means for release to G.P. is via informant status. In 2004, the Warden & Director stated on my group 602 Appeal #C04-00566, that I will never get out of SHU unless I, "fully cooperate with the authorities to bring down the A.B." On 3-15-07, I was issued [8] 1030's being used to deny me "inactive" status again. On 3-19-07, I gave IGI my

⟨44⟩

45

written response to these (8) 1030's, wherein I dispute each one [see attached copies]"

129.) The appeal continues, "... On 12-4-07, I received my copy of the SSU-Review, deeming me ineligible for inactive status, and notifying me my next review will begin Sept. 1, 2012 [see copy of CDC-228B-2...] Thus, between now and 9-1-12, my only way out of SHU is to become an informant. Such policies - practices violate clearly established law as supported below [Troxell then makes the same points, with ref. to the same case cites as Ashker's appeal See above para.# 81 [1-5 A-C], and requested the same relief. See above para # 82]

130.) Defendant Horel, denied the appeal at Warden's Level, on January 30, 2008, based on ..."a thorough investigation"... and determination that "there were no due process violations in relation to this validation." and, "This Reviewer has no authority to overturn a decision by OCS or SSU."

131.) Troxell's position is that Defendant Horel's review, did not include a substantive, independent investigation into the substance of the confidential inmate informants claims /staff info., in lieu of Troxell's rebuttals, and merely rubber stamped the OCS' Chrono. [Based on info. & belief. i.e., Def. Horel's, agent claimed he conducted and completed this "thorough invest." in one day [1-28-08 - 1-29-08]; and trial testimonies of Def. McGrath, Marquez, and other I.G.I/SSU staff during Feb. 2009 Lira, case, supra, admitting no substantive reviews - investigations are done on appeals re: gang-status. See above para # 31(E)]

132.) Defendant Horel, ignores all of Troxell's other points re: 1st, 5th, 8th Amendment violation claims, inspite of the reference to supporting case law. This is deliberate indifference [Based on info. and belief, each of

<45>

the CDCR-Defendants have repeatedly been made personally aware of these Constitutional violations via *numerous inmate appeals; the Griffin ruling,* referrenced in above para# 81(5-C), *and numerous inmates becoming mentally ill in (SHU) at P.B.S.P.; yet doing nothing to fix the problems*].

133.) On May 15, 2008, Def. Cate, *denied the appeal at the Director Level,* by rubber stamping the Warden's response, and thereby ensuring the continuation of such Constitutional violations, inspite of being repeatedly put on notice [per. same manner as Def. Horel, et al., as stated above].

## HARMFULL EFFECT FROM 24 YEARS OF SHU-CONFINEMENT

134.) Troxell has presently been subject to more than [24] years of continued [SHU] confinement, on the basis of arbitrarily applied policy(s) and pretextual justification [based on defendants allegation that his CDCR-gang classification automatically make him a serious threat to safety/security, requiring (SHU) housing indefinitely - for administrative reasons [until he dies, or agrees to become an informant],... *while allowing tens of thousands of gang-affiliates to be in general population prisons], without ever being found guilty of committing an illegal, gang-related act.*

135.) Defendants have punished him for refusing to become their informant, and exercising his first amendment right of choosing not to speak; and, prior to being classified as a gang-affiliate, he was never notified the label would be cause for indefinite [SHU], *unless he agreed to become a known informant for the authorities [and thereby, face serious risk of reprisals, for informant status; such policy being an Eighth Amendment violation].*

136.) Troxell has been isolated in [PBSP-SHU] since Dec. 27, 1989, and has no

⟨46⟩

97

information to provide; and, he's not willing to become an informant for Defendants, or anyone else, based on principle; and, unwillingness to place himself, or family, in the position of the serious danger informants face.

137.) This [24] years of punitive (SHU) confinement has caused the ongoing harm, as exemplified below:

  (A) PBSP-SHU conditions are intentionally punitive [more so than the other [3] SHU-Facilities across the state. Based on info. and belief]; with the purpose of coercing inmates to become informants. Examples are: more restrictions on allowable types of magazines and books, appliances, packages, clothing; lengthy mail-delays, non-contact visits, no phone-calls, no photograph's to send home, no education opportunities [none that require proctored exams - per. Def. Jacquez and Cate] While allowing informants, T.H.U., and G.P. inmates all of the above.

  (B) Troxell has had no physical contact with family, no photographs of himself to send to family, no phone-calls,... for over [24] years; many of his nieces, nephews, grandkids, and other relatives have never seen him in person - or photograph. This, together with years of lengthy mail delays, has caused estrangement from many family members.

  (C) He has been eligible for parole since [1996]; however, the [BPH] has an unwritten policy of issuing all (SHU) lifers, multi-year denials. And they have applied this to Troxell in [1995] with a (5) year denial; in [2001] with a [4] year denial; in [2006] with a [3] year denial; and [2009] with a [7] year denial. [See details in below paras # 141-143, 150-161]

⟨47⟩

48

(D) Troxell's mental health has been damaged as a direct result of his [24] plus years of [SHU] [Based on info. and belief; e.g., experiences of increased negativity, insomnia, anxiety, hypersensitivity, ruminations, aggression, rage, hopelessness and lethargy; and difficulty with ability to concentrate, focus, and communicate. And, sensory overload with related discomfort when leaving his cell/pod area], and there's a serious risk that he may suffer severe mental illness - the longer he is subject to SHU [per. many studies conducted between 1975 to the present]

### ADDITIONAL FACTS PERTAINING TO VIOLATION OF 1st, 5th, 8th, 14th AMENDMENTS TO U.S. CONSTITUTION VIA INDEFINITE PUNITIVE CONDITIONS [per. CDCR-INFORMANT PROCUREMENT AGENDA]

138.) Defendants McGrath, Woodford, Jacquez, Horel, Cate, Johnson, Bradbury [and Does #1 to 5], have intentionally sought to make conditions in (PBSP-SHU) progressively more punitive than the state's [4] other prisons [housing inmates indefinitely based on CDCR-gang classification], as well as more punitive than other state's and Federal Prison System [B.O.P.] supermax prisons; for the sole purpose of coercing plaintiffs [and PBSP-SHU inmates similarly situated] into becoming CDCR-informants [Based on info. and belief, exemplified below]

139.) California state prison inmates civil rights are to be the same as a free person, any restrictions on such rights must be solely based on legitimate penological interests [per. Cal. Penal Code § 2600]

140.) California Code of Regulations [CCR], Title 15 § 3343, addresses

⟨48⟩

49

conditions of (SHU) housing, and specifies such conditions with respect to programming - privilege opportunities are to be the same as the general population inmates are afforded, ... subject to restriction - solely based on legitimate "safety and security reasons" [the most used and abused excuse] used by defendants as a pretext to justify what in reality is done punitively, with the intent of coercing (SHU) inmates at PBSP into becoming informants... their only real means for (SHU) release [other than insanity or death] as exemplified below:

    Ⓐ Between Dec. 1989 and 2001, their were no educational opportunities - requiring proctored exams. In (2001) PBSP-SHU began allowing G.E.D. preparation via in cell study, and institutional T.V. channel instruction - and proctored exams [using the empty visiting cells]

    Ⓑ In late 2003, early 2004, plaintiffs began requesting additional education - vocation - self-help opportunities. In February 2004, they submitted a group appeal requesting such opportunities - based on CCR Tit 15 § 3343(K), and such are required by the parole board for lifers to enhance parole eligibility. Def. McGrath and Woodford denied the appeal, claiming plaintiffs needed to become informants if they wanted these opportunities [see above para's #64[A-C]re; 602 Appeal; also, several other inmates, of all races, did a similar group appeal, at the same time, which defendants denied - without reference to terrorism, or informant issues, mentioned] Many family members and friends were also contacting defendants about this.

    Ⓒ Although defendants denied the appeals referenced above, PBSP-SHU began offering some College courses in August 2004 [via cell-study, and

<49>