ability to purchase your own text-books; and, around Feb. 2005, they began including educational-instructional videos on the T.V., to go with the cell-study] [Based on info. and belief Def. Kirkland is the one allowing it]

(D) In mid-2005, Troxell obtained his G.E.D., and requested the College info. from education and never received any reply. He looked at the material other inmates received or noted he could not afford the cost of books anyhow [he filed a 602 Appeal in 2006 asking to be able to offer his artwork on internet, for donations, to cover book costs - def. Horel, and Cate denied the appeal] [602 Appeal # D06-02017] This is also a denial of free speech - free expression, and an equal protection violation [other prisons allow inmates to offer their art for donations]

(E) In 2007-2008, the College program was expanded, and had some openings for free books too. Troxell's requests to participate went unanswered. And, in early 2009, rumors were that (SHU) inmates were being excluded; thus, on March 8, 2009, he submitted a 602-Appeal. On May 15, 2009, Def. Jacquez, denied the appeal, and Def. Cate, denied it on Aug. 3, 2009. They claimed the College program was cut due to budget cuts and limited staff. However, the only ones not allowed to participate - are (SHU) inmates who refuse to debrief. The inmate informants, and general population inmates still get the College [G.E.D. has also recently stopped in SHU] [See: 602 Appeal # D09-00940] The message being,... if you want educational ops, you need to debrief.

(F) On [1-13-04] Def. McGrath, began a "photograph program" in (PBSP-SHU); wherein, debriefers and those meeting inactive status, can have photo-taken of themselves to send to family. Plaintiffs haven't been able to share a photo of themselves for over (20) years [yet, in 2002 def. McGrath provided a

⟨50⟩

51

news channel (KTVU-Ch.2, in Oakland) with plaintiffs' prison mug shots to air on T.V. in October-November 2002. The message being, if you want to send family a recent photo - you need to debrief. McGrath also banned hardcover books, and internet material in mail [both were struck down by this Court in 2002]

(6.) On June 25, 2008, Plaintiffs submitted 602 Appeals [Ashker's log #D08-01791; Troxell's, log #D08-01784], wherein they pointed out that their, serving indefinite (SHU) terms, and in 2004, McGrath stated they will not leave (SHU) absent informant status - and the program opportunities in (SHU) were not sufficient, to meet parole board requirements and denying them such opportunities - while providing such to all other PBSP - inmates [including those in segregation for informant status (THU) and psych. problems (PSU)] violated Tit. 15 §§ 3040/3343, as well as 1st, 5th, 8th, and 14th Amends [based on principles of equal-protection; and illegality of denying programming necessary to enhance a lifer's parole chances, as a means of coercing inmates to become informants]. On July 2008, Defs. Johnson and Bradbury denied the appeals; On August 15, 2008, Def. Horel denied the appeals; and On Dec. 5, 2008, Def. Cate denied the appeals at Third Level Review. Each of these defendants were put on notice [again] of the U.S. Constitutional issues [i.e., equal-protection; and punitive measures affecting parole chances, for purpose of coercing inmates to be informants] Each defendant ignored the points raised, ensuring continued violations [and, in fact Defs. Jacquez and Cate, have subsequently taken away all educational opportunities from (SHU) See above para #. 140 (E)]

⟨51⟩

(H) On July 2, 2008, Plaintiffs submitted 602 Appeals [Ashker's, Log #D08-01848; Troxell's, Log #D08-01847. Noteably, more than (30) other similarly situated, SHU-inmates filed related, group-appeals, and Defendants used Troxell's Appeal Responses for all of them.] In these appeals, the complaints were that — denying [PBSP-SHU] inmates [serving indefinite SHU-terms, for administrative reasons] programming and privileges, that are available to all other PBSP-inmates [as well as, similarly situated [SHU] inmates in other states and federal system; evidencing lack of validity to defendant's rote safety-security claims], was a pretext for coercing inmates into becoming informants, and thereby be put in serious danger, and violated Cal. Pen. Code § 2600; Title 15 § 3343; and U.S. Constitution 1st, 5th, 8th, and 14th Amendments. Plaintiffs, et al., all requested [monthly phone calls; ability to have a personal photo taken to send home; art paper, colored-pencils, watercolors; state issue watch caps, to keep heads warm; increase in canteen and packages; exercise - pull-up/dip bars, on the yards; and T.V-Radio combo-appliances. Defendants Johnson, Bradbury, Horel, and Cate, denied these appeals, at each level of review, between Aug. to Dec. 2008. Each of these Defendants had the power to provide the relief sought, and each refused, inspite of being on notice about the continuing U.S. Constitutional violations [which they all ignored]

(I) Defendants have also attempted to make (PBSP-SHU) more punitive, as part of their coercive, informant procurement agenda, by: denying SHU-inmates the ability to exchange correspondence with incarcerated family members; Denying adequate medical care, and edible food; Denying many books and magazines, and recently- wall calenders [all of which are allowed in the other CDCR-32 institutions][even barring blank white paper, to stop inmates drawing] Additional harm from conditions is summarized in above [paras # 88-91, 134-137]

(52)

53

## FACTS PERTAINING TO BPH-NO PAROLE POLICY FOR CDCR-SHU-LIFER INMATES

141.) Plaintiffs are serving term-to-life sentences, and California's parole scheme gives rise to a protected liberty interest in release on parole. That's because the parole statute, Calif. Penal Code § 3041, mandates that "the Board shall set a date unless it determines further incarceration is necessary in the interest of public-safety." The California Supreme Court has repeatedly stressed that the Board must base its decision on the inmate's individual acts and ommissions - both for and against parole. The decision cannot be arbitrary - or, predetermined - categorical reasons [This is per. U.S. Supreme Court precedent(s) as well]

142.) The Calif. Supreme Court has also clarified that "... a decision to deny parole comports with due process only if there is a rational, specifically articulated, nexus between the relevant statutory factors as found by the Board and the determination that the inmate would be a current danger to the public if released."..."It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness - this is the key relevant consideration"..."The Board's failure to specifically articulate the nexus...linking the relation between factors cited with how they equate to evidence demonstrating current dangerousness is a denial of due process" In re Lawrence, 44 Cal. 4th 1181, 1205, 1212, 1219 [2008]

143.) Plaintiffs contend the Board [in tandem with CDCR] have subjected them to their unwritten predetermined [arbitrary-categorical] NO-PAROLE policy applied to all SHU-LIFERS [with Catch 22 of: Become an informant

⟨53⟩

for the authorities, and thereby gain release from SHU - to a gen. prison population [and be subject to serious danger per. informant status]; or, die in SHU, "It's your choice." In violation of the U.S. Const. 1st, 5th, 8th, and 14th Amendments, as detailed below:

(A) Between 1989 to present date, not one SHU-Lifer has been found suitable for parole [based on info. and belief, i.e., plaintiffs' review of many SHU-Lifer's parole hearing documents; and Governor's Yearly, Executive Reports To Legislature On Parole Decisions, from Jan. 1, 1999 to present]

(B) Between 1989 to present date, the Board has found more than [2300] lifer's suitable for parole - who were able to program on the general population. Between Jan. 1, 1999, and the present date, the Board has found more than (2000) lifer's suitable [Id., Executive Rpts]

(C) Many of the (2000) lifer's found suitable over past ten years had gang-related crimes, histories of gang activity in and out of prison, prior crime and drug histories. These inmates had all become CDCR informants [or deemed "inactive"; but Def. Schwarzenegger, still expects inmates deemed "inactive" to become informants, prior to parole. Id., Executive Rpts]

(D) In [1992] the Board submitted a proposal to the Governor, to eliminate lifer parole hearings for (SHU) inmates. This was shot down because of recognition it would be illegal [Based on info. and belief, plaintiffs' have the transcript of the proposal]

⟨54⟩

(E) Between 1989 and the present, Board Commissioners [including named defendants Fisher, Harmon, and Gillingham] have told SHU-lifers that they need to get out of SHU [via debriefing if necessary], to have a chance for parole, and issued multi-year denials - based solely on CDCR-Gang Label and related indefinite (SHU) status. [Based on info. and belief, i.e., plaintiffs' personal experiences with the Board; and, review of several SHU-Lifer inmates parole hearing transcripts. noteable is the fact that when asked directly if they have a no parole for (SHU) - debriefing requirement - they deny it, while applying it; this demonstrates intent to knowingly violate the law]. Also, only SHU-"Lifers" are denied parole; inmates in SHU [who have parole dates per. determinate sentence] get time reduction, even in SHU - for being discipline free.

(F) The Board [and Governor] expect SHU-Lifers to get out of SHU- via "debriefing" [becoming a known informant], if they want a chance to parole; inspite of knowing inmate informants, and their families, face retaliation for informant status [including serious injury, and death. Based on info. and belief, i.e., common knowledge, legislative hearings, Board members documented admissions in hearing transcripts, publicized incidents][NOTE: Robert Doyle, BPH-Chairman, is a named defendant for injunctive relief purposes]

(a) <u>Facts Re: No Parole Policy Applied To Ashker</u>

144.) As stated above, Plaintiff Ashker was sentenced to a term of 21 years to life, subsequent to his conviction for second degree murder, with use of a knife, in April 1990 [per. statute, he received 15 to life for second degree murder, (1) year for knife, and (5) year enhancement for prior felony conviction <u>See above</u> para's #32-41, for additional details]

⟨55⟩

145.) Ashker received the 21 to Life sentence on April 23, 1990, and was transfered to PBSP-SHU on May 2, 1990, where he was informed he would remain until he paroled, died, or debriefed [and where he has remained ever since]

146.) Ashker had obtained his G.E.D. in March 1981, and there were no opportunities for him to formally upgrade his education, vocation, or self-help ops, in (PBSP-SHU) between 1990 and 2004 [see above para 138-140]

147.) That the following facts are examples of parole board commissioner's applying their unwritten, no parole for (SHU) lifer policy [with the Catch 22 of: Become a CDCR informant so you can get out of (SHU) to a lower level institution where programs are available; or, remain and die in (SHU),... it's your choice]:

    Ⓐ Ashker's first parole readiness documentation hearing was conducted by Commissioner Roos, on June 17, 1998, who recommends: Upgrade Education, Vocation, Self-Help,..."Get out of SHU-Debrief-Lower Points-Get To General Population".

    Ⓑ Ashker's second parole readiness documentation hearing was conducted by Comm. Roos, on July 24, 2001, who recommends: Upgrade Educ., Vocation, and Self-Help groups, and notes,"...has greatly improved disciplinary record- However, is still in SHU".

    Ⓒ Ashker's initial parole eligibility hearing was held Aug. 7, 2003 before Comm's Lawin and Lehman. Ashker declined to attend due to his pending appeal of conviction, and believed he'd receive a fair hearing regardless of attendance. Comm's Lawin and Lehman, denied Ashker due process, getting the facts of the life crime wrong - claiming it was an

⟨56⟩

"A.B. Gang-Hit" without reference to any supporting facts; and specific refer to his CDCR gang label and related (SHU) status, ... and, "failure to follow prior recommendations to upgrade educ., vocation, self-help, and to get out of SHU", to deny parole with (5) year deferral.

(D) Ashker appealed the (2003) decision, and Comms. Risen and Moore, denied it on Jan. 13, 2004. Re: Ashker's claim board applied no parole policy [informant requirement, and dangers such entails] Risen and Moore, stated: The prisoner by his own actions has placed himself in the current custody situation where programs are not available. This is his choice and it is up to him to make the necessary changes in order to reduce his custody classification, so that he can participate in ... programs."

148.) The above commissioners knew at the time that they made the above assertions that Ashker's (SHU) status was "administrative" rather than behavioral, and the "gang-label" was absent conviction(s) of any illegal "gang-activity"; and that Ashker's only avenue out of (SHU) was via becoming a known informant for CDCR [Based on info and belief. i.e., comm's claimed they reviewed Ashker's records, and common knowledge, bolstered by his appeal points on the issues]

149.) The Board's reliance on (SHU) inmates "Lack of programming" to justify multi-year deferrals is a pretextual excuse to cover their "no parole for (SHU)" policy, as exemplified below:

(A) On August 14, 2008, Ashker attended his parole hearing before Defendant Comms. Gillingham, and Smith. Between Jan. 2004, and the Aug. 14, 2008, Hearing Ashker accummulated over (31) certificates of completion, demonstrating upgrades in education - vocation [thus

⟨57⟩

included an AA Degree in Paralegal Studies] and self-help courses, on his own initiative, at his own expense [re: AA Degree], in SHU [this was possible with proctored exam opportunity – no longer avail. to SHU-inmates. See above para's #138-140]
Ashker also produced undisputable evidence, proving his life-conviction was not gang-related [i.e., Trial Transcripts]

(B) Comm's. Gillingham, and Smith, both commended Ashker for his positive achievements, and stated those were the basis for only giving him a (4) year deferral [rather than a (5) year deferral]; Gillingham stated such positive achievements were outweighed by negative factors; and recited these Immutable Factors: Life crime, lack of remorse, prior crime history - unstable social history, gang validation and related (SHU) housing. These comm's, did not articulate the nexus linking such factors with how they equate to being evidence of current dangerousness.

(C) Comm. Gillingham, also emphasized that so long as Ashker remains in (SHU) for gang-validation …"you're going to have a difficult time" [of ever being found suitable] This statement was made inspite of Ashker presenting evidence that the gang-validation was based on confidential inmate informants stories, which have never resulted in any charges; and neither Gillingham, nor Smith, considered any of the conf. info. they had in front of them. Thus, categorically denying Ashker parole, based on "status" [CDCR- Gang Label and related SHU-housing], rather than an individualized consideration based on all factors [and immutable factors - many of which are over (25) years old, and not true e.g., lack of remorse; or, demonstrate suitability e.g., prior crime history devoid of violence.] denying due process. [See below para's #157-160 re: Troxell's 4.8.09, hearing before Comm. Gillingham]

<58>

.59

(D) Prior to Def's Gillingham, and Smith's, Aug. 14, 2008 Decision, Ashker presented evidence to show his gang-validation, and SHU-housing, was based on conf. inmate informants claims, which he denied, and had never been found guilty of an "illegal" gang-related act; and, his only avenue for (SHU) release was via "known informant" status- which he was not able, or willing to do [i.e., lack of info. to provide, and not willing to place self, or family in danger that informants face], to which Gillingham's response was, 'as long as you're validated and in SHU, you'll continue to have problems' [being found suitable], demonstrating deliberate indifference, and predicating parole on illegal principle [informant status] violating US Const. 1st, 5th, 8th, 14th Amendments [Ashker provided supporting caselaw to these Def's at the hearing]. With "nexus" linking label-SHU, to evidence of "current danger-to the public" [again, violating due process]

⟨b.⟩ <u>Facts Re: No Parole Policy Applied To Troxell</u>

150.) As stated above, Plaintiff Troxell was sentenced on July 16, 1979, to a term of 26 years to life, subsequent to his plea of guilty to first degree felony murder, and robbery [per. statute, he received 25 to life for first degree murder, (1) year for prior prison term; with concurrent (5) year sentence for robbery] [see above para's #92-99, for additional details]

151.) Troxell arrived in the (CDCR) on July 23, 1979 [with credit going back to his Jan. 1979, arrest]; he spent the first [5] years in San Quentin (SHU) for various rule violations. In Jan. 1984, he was transfered to Folsom Prison General Population [despite CDCR-1982, A.B. association classification. Id., above para's #93-95, for details]

⟨59⟩