that Bretches art in his possession was to be used as an item of current gang-activity. Ashker submitted a written objection explaining the art was an exhibit to Bretches authorized legal declaration — reviewed by I.G.I. in (2006), and he wanted it returned. This was ignored, and on (4-22-08) Ashker received def. Harrison's notice that he was denied inactive [see above para's #73-87 re: inactive issues, and 602]

① Ashker then submitted a (CDC-1074) requesting to correspond with Bretches [in late April 2008], in order to notify him about the above issues re: 2006 Declaration art exhibit, and obtain a declaration from him in support of his [Ashker's] gang-validation and magazine ban claims in [#c05-3286 cw], to oppose def's M,S,J,; and on 5-16-08 Def. Johnson denied Ashker's request based on: "one time correspondence previously completed 8-21-06", thereby denying Ashker access to relevant evidence — and the claims at issue were dismissed 3-25-09,

177.) On May 26, 2008, Ashker submitted a detailed 602 Appeal #D08-01455, challenging PBSP-Defendant's interpretation and application of [O.P. 205], using the 5-16-08 Bretches denial, as an example; and pointing out that due process guarantees prisoners access to the courts that is "adequate, effective, and meaningful" [per Casey v. Lewis, 4F.3d 1516 [9th Cir 1993]; and "regulations that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid" [per Procunier v. Martinez, 416 US 396, 419 [1974] [citing Ex Parte Hall, 312 US 546 [1941]], accord, Bounds v. Smith, 430 U.S. 817, 822 [1977]] And..."when prosecuting a lawsuit, a pro-se prisoner has the right to undertake the legal investigation and documentation of his claims in the manner that an attorney would, subject to limited-legitimate security... needs of the prison." [Valandingham v. Bojorquez, 866 F.2d 1135, 1141 [9th Cir 1989]

⟨70⟩

71

178.) On June 18, 2008, Defendants Johnson, and Bradbury, denied the appeal at First Level, ignoring Ashker's points. As did Def. Horel, at Second Level, on July 16, 2008; and Def. Cate, at Third Level, on Nov. 12, 2008. Thus, each of these defendants, with the authority to take corrective action — were put on notice of the constitutional violation, yet failed to take corrective action, thus ensuring the violation(s) continue indefinitely.

179.) Plaintiff Troxell's problems with defendant's November 2007, re-interpretstition of (O.P. 205) are similar, and related to Ashker's [they are co-plaintiffs in #C05-3286 C.W.; plus, has (2) Petitions For Writ of Habeas Corpus – in state, and Federal Court, and at the state court level, the court denied a claim re: "no parole policy" due to lack of evidence – and the reason for this was, Def's only authorize the "one time correspondence", after a case has been filed, and discovery is permitted to proceed. And the court ruled summarily]

180.) Troxell, attempted to obtain permission to followup with inmate witness Pifer, in late April 2008 [re: #C05-3286 CW, inactive gang-status, and no parole policy claims] and on May 16, 2008, Def. Johnson denied the request stating: "One Time Only Correspondence Previously Completed 9-18-06".

181.) On May 26, 2008, Troxell submitted a detailed 602 Appeal #D08-01456, challenging PBSP-Defendant's interpretation and application of (O.P. 205), using the 5-16-08 Pifer denial, as an example [making same points, with supporting case law as Ashker's appeal. See above paras #177]

182.) On June 18, 2008, Def's Johnson, and Bradbury, denied the appeal at First Level, ignoring Troxell's points. As did Def. Horel, at Second Level, on July 15, 2008; and Def. Cate, at Third Level, on Dec. 5, 2008. Thus, each of these defendants, with the authority to take corrective action — were put on notice of the constitutional violation, yet failed to take corrective action, thus ensuring the violation(s) continue indefinitely.

⟨71⟩

(C) INTERFERERENCE, and CONFISCATION of INMATE WITNESS' LEGAL-MATERIAL

183) Between Sept. 6, 2006, and the present, PBSP-Defendants have been interfering with, and confiscating, legal material sent to Ashker in response to his approved correspondence requests; these intentional actions were done without legitimate penological justification, and have caused damage to his litigation efforts, as well as, inhibiting, chilling their communications with inmate witnesses, in violation of 1st and 14th Amendments to the U.S. Constitution, as follows:

(A) In mid-2006, Ashker obtained approval to correspond with PBSP-inmate Olivares; and he asked Olivares if he had any info. re: inmate turned informate "Red", as such was relevant to his claims re: retaliation by PBSP-Defs in 2004 [under pretext of safety-security, based on 1995-1996 confidential informant claims. Re: USDC-N.D.Cal # C05-3759 CW]. On Sept. 6, 2006, Olivares sent (3) pages about this informant [which Ashker had read before and proved personal animosity on informants part [inmate Turner]. PBSP-I.G.I. S/o Buchanon confiscated the (3) pages, without any documentation about this. Ashker was deprived of this evidence - directed related to the main issue in that part of the case - which was dismissed.

(B) In Nov/Dec. 2006, PBSP-I.G.I. refused to give Ashker a letter from approved correspondent, PBSP-inmate witness Redd. Ashker had requested information from Redd [re: # C05-3286 CW, inactive-gang status, and no parole-policy], this was done without any documentation by I.G.I. Ashker learned later that this was done

⟨72⟩

because Redd's letter included "a request for a copy of the civil-suit, if possible".

ⓒ In Mid-2008, Ashker gave Def. Hernandez, Legal-Correspondence for PBSP-inmate witnesses Haddix and Cole. This Legal-correspondence consisted of a brief letter, explaining Ashker was challenging gang-validation issues [re: #c05-3286 CW] and he was seeking info. from them concerning allegations made by inmate informant Walley [per transcript of Whalley interview with Del Norte Prosecutor Fallman re: criminal case against Haddix, and implicating Cole, and Ashker in various conspiracies] this enquirey was directly related to at least (2) items used to deny Ashker inactive status in 2001 [see above paras #50 to 62, and memo's ref'd therein]; he also enquired about another inmate informant [Wino Bob from Stockton, whom he believed was one, fabricating "conspiracy to kill Blacks" story to get transferred out of PBSP]. All of which is common knowledge.

Def's Hernandez [and poss. IGI staff] reviewed, and delivered this correspondence to Haddix and Cole. When they gave Def. Hernandez their replies, she consulted with Def. Barlow, who was working closely with defendants counsel in [#c05-3286CW] and they decided to confiscate Haddix and Cole's replies. And on July 10, 2008, Def. Hernandez, gave Ashker a copy of her CDC-128B chrono stating the correspondence was being confiscated due to Ashker's request re: informant Whalley - based on an unspecified claim that this was ..."a threat against institutional security." [a copy of this chrono was placed in the files of Haddix and Cole too]

⟨73⟩

74

184.) On July 10, 2008, Ashker challenged Defendants Hernandez, and Barlow's action, via 602 Appeal #D08-01998, pointing out that the informants name is Whalley, C#47594 – "it's not speculation, as he (Ashker) has the transcript referenced in his letters to Haddix and Cole". It's no secret Whalley is an informant, so there's no valid reason to keep Haddix and Cole's responses and C/o Hernandez does not articulate the alleged safety-security reason for keeping the approved legal-correspondence-directly related to my civil-case".

185.) On [7-10-08] Def. Hernandez, denied the appeal at the informal-level, stating "per her conversations with Def. Barlow, the correspondence was deemed to be gang activity".

186.) On July 30, 31st, 2008, Defendants Johnson, and Bradbury, denied the appeal at First Level, on basis of 'safety-security, and promoting gang activity' without any specifics; and, ignoring Ashker's points.

187.) On Sept. 9, 2008, Def. Jacquez, denied the appeal at the Second Level, merely rubber stamping First Level; and, on Dec. 18, 2008, Def. Cate, denied the appeal at Third Level, merely rubber stamping the Lower Level decisions.

188.) Defendants Johnson, Bradbury, Jacquez, and Cate, were each in a position to remedy the illegal acts of Hernandez, Barlow; they were each put on notice of the constitutional violation - and each of them intentionally chose not to, thus ensuring the violations continue indefinitely. This caused the following harm to plaintiffs.

    (A) The actions [confiscation, CDC-128 chrono, 602 Appeal respondents allegations re: gang-activity] chilled plaintiffs from pursuing their investigative efforts [re: #C05-3286 CW, gang-activity allegations], because of defendants actions – plaintiffs did not want to risk being accused of additional gang-activity; nor did plaintiffs want to be

⟨74⟩

responsible for having documentation [alleging gang-activity] to be placed in inmate witnesses files. All of which prevented Ashker from obtaining evidence to dispute the confidential information used to re-validate him in (2001), and was responsible for the claim being dismissed March 25, 2009 [#C05-3286 CW]

(B) The [BPH] used the 128B-chrono, and gang-activity allegations, against Ashker at his August 14, 2008, parole-hearing; which also had a chilling effect on plaintiffs' efforts to pursue investigation, and documentation of their claims - out of concerns about having defendants make "gang-activity" assertions that will then be used by the [BPH] against them [and their witnesses]

### FACTS PERTAINING TO PLAINTIFF'S CLAIMS
### RE: DENIAL OF SEXUALLY EXPLICIT READING MATERIAL

189.) In Mid-2009, Ashker sought authorization to make a special-purchase of written-adult erotic material. The special purchase officer denied the request [per. CCR, Title 15, § 3006(c),(15),(A),(B)(C),(1),(2) re: Obscene Material is not allowed, absent Warden - or designee - approval]

190.) On June 7, 2009, Ashker sent a memo to Defendants Jacquez and Johnson, seeking clarification about the application of the above Title 15 section, pointing that he was seeking authorization to purchase books about adult-erotica [in short story form - no pictures].

191.) On June 23, 2009, Def. Johnson denied the request stating these types of books will not be approved at this institution [via memo response]

192.) On July 12th/15th, 2009, Ashker submitted 602 Appeal (#D09-02021; and

⟨75⟩

Troxell, submitted 602 Appeal #D09-02028, challenging PBSP-Defendants refusal to permit written, adult erotic material [Books - without any nude pictures]; and, refusal to permit any exceptions to ban on nudity - for all books [per. Title 15 § 3006(C)(17) pointing out such actions violate both Cal. Penal Code § 2601; and U.S. Const. 1st Amend [per Mauro v. Arpaio, 183 F.3d 1054 [9th Cir. 1999], stating, inmates have a 1st Amend. right to sexually explicit material - upholding a county-jail ban on nudity, while citing: Amatel v. Reno, 156 F.3d 192, 202 [inmate can read what he pleases].

193) Between August and December 2009, Defendants Jacquez, and Cate, denied the appeals, at the Second and Third Levels [adopting Defendant Johnson's 6-23-09, position] These Defendants had the authority to provide the relief sought; and, they were each duty bound to do so, once Plaintiffs put them on notice that the policies, or custom at issue violate the 1st Amendment, with support case law. They refused to do so, and actually approved of the violation(s), thus ensuring they continue indefinitely.

194) Also, the books at issue are allowed at other CDCR-institutions [e.g., such as, San Quentin's Adjustment Center, where Ashker, read some erotic-books - "Penthouse Letters", and looked at nude art, sketch books]; and, PBSP-Defendants action(s), denying these, is another example of them going out of their way to be unnecessarily punitive. [See above paras # 138 - 140 [A-I], for examples].

## V. LEGAL CLAIMS

### FIRST CAUSE OF ACTION

First Amendment Right To Association,
Free Speech, and Free Of Punishment For Not Speaking
(Against All Defendants Except Barlow & Hernandez)

195) Plaintiffs reallege and incorporate by reference, paragraphs # 1 to 194, of this complaint, inclusive.

⟨76⟩

77

196) This is an action for violation(s) of 42 U.S.C. §1983 based on Defendants' violations of Plaintiffs' right to associate, freedom of speech and expression, and to be free from punishment for choosing not to speak, under the First Amendment to the U.S. Constitution.

197) Defendants, and each of them, while acting under color of law, consciously disregarded Plaintiffs' federally protected rights, namely here the First Amendment Rights referenced above.

198) Defendants Cate, Hickman, Woodford, McGrath, Kirkland, Horel, Jacquez, Lewis, Johnson, Bradbury, McKinney, Marquez, Rice, Harrison, Thornton, and Wise, have each participated in, and contributed to, the policies, customs, and practices, resulting in Plaintiffs' ongoing indefinite SHU-confinement based on arbitrarily applied policy(s) re: prison gang classification(s) [based on false, unreliable allegations made by confidential inmate informants; and, innocuous association and possession of greeting cards and artwork].

199) Defendants have each personally applied the unconstitutional policies, customs, and practices specified in the complaint; wherein they revalidated Plaintiffs as active members of the Aryan Brotherhood prison gang, based in part on innocuous associational activity, and possession of greeting cards and artwork. Each Defendant has been put on notice numerous times that the policies, customs, and practices violate the U.S. Constitution; and each of them failed to take corrective action, and actually condoned of the violative practices, via support of each others acts and omissions.

200) Defendants have each participated in, contributed to, condoned, and applied the additional/related policy, custom, and practice [that is unconstitutional on its face, and as applied] whereupon, Plaintiffs' only avenue for release from (SHU) to a general prison population [and a parole date] is for

them to successfully "debrief" [meaning they have to agree to become known informants against other alleged gang-affiliates - and be subject to serious repercussions therefrom]; all of the above of which violates the following protected First Amendment Rights:

(a) Violation of right to associate, by basing Plaintiffs' (24) years of indefinite (SHU) confinement, and thereby subject to the harm therefrom [see para's #88-91, 134-161] and denied parole [with multi-year deferals], wholly or in part, upon Plaintiffs' innocuous, lawful association with other inmates, where such association did not consist of, nor was in furtherance of any illegal prison gang activity whatsoever, and is thereby not reasonably related to any legitimate penological interest [nor, is this evidence of being a current threat to public safety];

(b) Violation of right of free speech and expression, by basing their (24) years of indefinite SHU-confinement, denying inactive gang-status, and denying parole [with multi-year deferals], wholly or in part, upon policies, customs, and practices which penalize inmates for innocuous associational activity [and possessing greeting cards and artwork], when such activity is not in the furtherance of gang activity, nor violative of any law, is not reasonably related to any legitimate penological interest [nor, is it evidence of being a current threat to public safety];

(c) Violation of Plaintiffs' First Amendment right to be free of punishment for exercising their First Amendment Right to not speak, by subjecting them to (24)-years of indefinite SHU-confinement, denial of inactive status, and denial of parole [with multi-year deferals]; and, subjecting them to the harm and progressively more punitive SHU-conditions [see para's #88-91, 134-161], wholly or in part, upon Plaintiffs' decision not to speak [i.e., refusal to become CDCR-informants via debriefing], is not reasonably related

78

to any legitimate penological interest [nor, is it evidence of being a current threat to public safety].

201) Defendant Schwarzenegger has contributed to the above referenced U.S. Constitutional violations, and related harm therefrom to Plaintiffs, by approving such policies, customs, and practices, via his personal application thereof; whereupon, he requires inmates that have many years of positive programming in general population [on inactive gang-status], to debrief prior to parole. [The harm caused is summarized in paras' # 88-91, 134-140, 141-161]

202) Defendants Doyle, Fisher, Harmon, Gillingham, Smith, and Tucker, have each subjected Plaintiffs to an arbitrary, status based "No Parole For SHU-Lifers Policy, Custom, and Practice" based on the other above-named Defendants' allegations that they are prison gang-members, and related indefinite SHU-status; Each of these Defendants have personally violated Plaintiffs First Amendment Rights, in the same manner as stated for the above named Defendants, including denying parole, with multi-year deferrals, wholly or in part, based on Plaintiffs refusal to debrief [punishment for not speaking] [Contributing to harm; i.e., paras' #88-91, 134-161]

203) As a proximate cause of Defendants' acts and omissions, Plaintiffs have suffered and continue to suffer harm [i.e., paras' #88-91, 134-161] and general damages in an amount according to proof, but in excess of one million dollars in terms of loss of parole opportunities, and continuous punitive confinement in SHU [24 years, and counting, of torture]. Plaintiffs each claim mental and emotional distress damages as well.

203) In acting as described herein above, Defendants acted knowingly, willfully, and maliciously, or with reckless or callous disregard for Plaintiffs' federally protected rights, entitling them to an award of exemplary and punitive damages.

Wherefore, Plaintiffs pray for relief as follows.

(79)