1    J. RANDALL ANDRADA (SBN 70000)
randrada@andradalaw.com
2    MATTHEW ROMAN (SBN 267717)
mroman@andradalaw.com
3    **ANDRADA & ASSOCIATES**
**PROFESSIONAL CORPORATION**
4    180 Grand Avenue, Suite 225
Oakland, California  94612
5    Tel.:    (510) 287-4160
Fax:    (510) 287-4161
6

7    Attorneys for Defendants
GOVERNOR EDMUND G. BROWN, JR., WILLIAM BARLOW,
DARRIN BRADBURY, MATTHEW CATE, ROBERT DOYLE,
8    SUSAN FISHER, HOLLIS GILLINGHAM, ROBERT HARMON,
JOHN HARRISON. AMANDA HERNANDEZ, ROBERT HOREL,
9    FRANCISCO JACQUEZ, RICHARD JOHNSON, RICHARD KIRKLAND,
GREG LEWIS, ROBERT MARQUEZ, JOE MCGRATH, JOHN MCKINNEY,
10   ROBERT RICE, DENNIS SMITH, BRYAN THORNTON, STEVE TUCKER,
GARY WISE, AND JEANNE WOODFORD

11

12

13            UNITED STATES DISTRICT COURT

14        FOR THE NORTHERN DISTRICT OF CALIFORNIA

15              OAKLAND DIVISION

16

| | |
|---|---|
| TODD L. ASHKER and DANNY TROXELL, | Case No.:  4:09-cv-05796-CW (NJV) |
| Plaintiffs, | |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** |
| GOVERNOR EDMUND G. BROWN, JR., MATHEW CATE, RODERICK HICKMAN, JEANNE WOODFORD, JOE MCGRATH, RICHARD KIRKLAND, ROBERT HOTEL, FRANCISCO JACQUES, WILLIAM BARLOW, R.L. JOHNSON, D.W. BRADBURY, J. MCKINNEY, ROBERT MARQUEZ, R. RICE, JOHN HARRISON, B. THORNTON, G.H. WISE, A. HERNANDEZ, ROBERT DOYLE, SUSAN FISHER, ROBERT HARMON, HOLLIS, GILLINGHAM, D. SMTH, AND S. TUCKER, et al., | Date:  July 5, 2012<br>Time:  10:00 a.m.<br>Judge:  Hon. Claudia Wilken |
| Defendants. | |

*(vertical left margin text:)* **ANDRADA & ASSOCIATES** PROFESSIONAL CORPORATION

28

{00081802.DOC/}  0922                         *Ashker/Troxell. v. Brown, et al.*
DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO FILE 2ND AMENDED COMPLAINT        C 09 05796 CW

1   Defendants GOVERNOR EDMUND G. BROWN, JR., WILLIAM BARLOW, DARRIN

2   BRADBURY, MATTHEW CATE, ROBERT DOYLE, SUSAN FISHER, HOLLIS GILLINGHAM,

3   ROBERT HARMON, JOHN HARRISON, AMANDA HERNANDEZ, ROBERT HOREL,

4   FRANCISCO JACQUEZ, RICHARD JOHNSON, RICHARD KIRKLAND, GREG LEWIS,

5   ROBERT MARQUEZ, JOE MCGRATH, JOHN MCKINNEY, ROBERT RICE, DENNIS SMITH,

6   BRYAN THORNTON, STEVE TUCKER, GARY WISE, and JEANNE WOODFORD hereby oppose

7   Plaintiffs' Motion for Leave to File a Second Amended Complaint (SAC).

8       The motion for leave to amend should be denied.  The case is already two and one-half years

9   old.  The proposed SAC rewrites the allegations, adds eight plaintiffs, and sets the stage for an

10  unmeritorious motion to certify a class of more than 1,000.  It would make useless much of what has

11  been accomplished.  In short, it is grossly prejudicial and will cause further delay.  If the court is at all

12  inclined to grant the motion, the defendants request an extension of time to file an answer.  Likewise,

13  the defendants request that the Court schedule another case management conference at which the

14  scheduling order can be revised to reflect the reality that this entire litigation will essentially be starting

15  over.

16  **PROCEDURAL HISTORY**

17      Plaintiffs Todd Ashker and Danny Troxell filed their original complaint on December 9,

18  2009.  [Docket No. 1].  The court issued a screening order on February 16, 2010.  [Docket No. 7].

19  The plaintiffs filed the first amended complaint (FAC) on May 21, 2010.  [Docket No. 10].  The

20  FAC is 99 pages long, and presents over 20 causes of action against 24 defendants.  The court issued

21  an order screening the FAC on December 20, 2010.  [Docket No. 12].  On January 3, 2011, the

22  plaintiffs filed a motion requesting the Court amend the screening order to recognize several

23  additional claims and defendants they alleged were included in the FAC.  [Docket No. 14].  On

24  January 14, 2011, the Court issued a supplemental screening order allowing the additional claims and

25  defendants.  [Docket No. 15].

26      Plaintiffs Ashker and Troxell filed their initial motion for leave to file a SAC on October 19,

27  2011 [Docket No. 67].  As discussed in the subject motion for leave to amend, the plaintiffs retained

28  counsel while the motion was pending.  Pursuant to the Court's order at the Case Management

2

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

1   Conference of March 28, 2012, the plaintiffs submitted their proposed SAC to counsel for the

2   defendants on May 1, 2012.  The defendants declined to stipulate to the proposed SAC for the

3   reasons discussed herein.  The plaintiffs filed the subject motion on May 31, 2012 [Docket No. 126].

4                              **LEGAL STANDARD**

5           Once a defendant has answered, a plaintiff can amend the complaint only with the consent of

6   the defendant or leave of court.  Fed. R. Civ. P. 15(a).  "Although the rule should be interpreted with

7   'extreme liberality,' leave to amend is not to be granted automatically.  A trial court may deny such a

8   motion if permitting an amendment would prejudice the opposing party, produce an undue delay in

9   the litigation, or result in futility for lack of merit."  *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir.

10  1999); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

11          The Court may also impose conditions upon its granting of leave to amend in order to avoid

12  or minimize any prejudice to the opposing party, or so that justice will be done to all of the parties.

13  *International Ass'n of Machinists and Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1391

14  (9th Cir. 1985).

15                              **ARGUMENT**

16  **A.      The proposed Second Amended Complaint is prejudicial to the defendants.**

17          The plaintiffs summarize the "four key amendments" (their phrase) at page seven of the

18  subject motion as follows:

19          1) The SAC asserts two claims instead of eleven;

20          2) It seeks only declaratory and injunctive, rather than monetary, relief;

21          3) It names four defendants instead of twenty-four; and

22          4) It asserts their two claims as class claims, adding eight additional proposed class

23              representatives as named plaintiffs.

24          The plaintiffs' contend that the SAC "narrows and focuses Plaintiffs' existing claims" and

25  promotes the "efficient disposition of the claims at issue."  The plaintiffs further argue that the SAC

26  will not prejudice the defendants or delay resolution.  The plaintiffs are incorrect.  In truth, the SAC

27  does just the opposite.  The proposed amendments grossly expand the scope of the case and are

28  indeed prejudicial to the defendants.

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

3

1

**Key Amendment One**

2    The addition of claims which substantially alter the nature of the litigation and require the

3   defendants to undertake a new course of defense should cause the court to deny the motion. *See*

4   *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The First Amended

5   Complaint alleges the First Amendment and Due Process claims of Todd Ashker and Danny Troxell.

6   The First Amendment claims of Ashker and Troxell are essentially limited to their alleged rights to

7   possess certain documents and materials, to associate with certain inmates, and to have access to the

8   courts. Their Due Process claims arise from their allegations that there is insufficient evidence to

9   justify their gang validations and subsequent retention in the SHU. Although the First Amended

10   Complaint is relatively broad in scope, it is at least limited to a finite range of records and legal

11   issues.

12    In stark contrast, the proposed SAC raises a staggering number of factual and legal issues

13   related to the 1,000 plus inmates confined in the SHU, and every inmate who will ever be confined in

14   the SHU. The mental health of plaintiffs Ashker and Troxell is, at best, a peripheral aspect of the

15   First Amended Complaint. However, the proposed SAC could eventually require the defendants to

16   combat the psychiatric claims of more than 1,000 SHU inmates. The defendants will, likewise, be

17   required to defend against 1,000 alleged due process violations.

18    The plaintiffs repeatedly state that the proposed SAC "narrows and focuses" the complaint to

19   two claims instead of eleven. Yes, the proposed SAC states two purported "causes of action."

20   However, the causes include ten separately identified claims in twenty-five paragraphs of text.

21   Furthermore, the proposed SAC seeks to include eight new plaintiffs. It also indicates that the

22   plaintiffs intend to move for certification of a class composed of all inmates who are, or ever will be,

23   confined in the SHU. It is clear that the range of issues within the proposed SAC is much broader

24   than the First Amended Complaint.

25    Indeed, the plaintiffs' claim that the proposed SAC "narrows and focuses" their complaint is

26   absurd, indeed insulting. The proposed amendments would effectively rewrite the case, thus

27   requiring the defendants to undertake an entirely new course of defense.

28    In assessing the propriety of a motion for leave to amend, courts take into account certain

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

1   factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether

2   the plaintiff has previously amended the complaint.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th

3   Cir.2004) (citing *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir.2003).  Where, as here, proposed

4   claims are barred by the doctrine of res judicata and subject to a motion to dismiss, amendment

5   would be futile.  Thus, the motion to should be denied.

6          Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any

7   claims that were raised or could have been raised in the prior action.  The doctrine is applicable

8   whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or

9   privity between parties.  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir.

10  2001) (internal quotation marks and citations omitted).

11          "The central criterion in determining whether there is an identity of claims between the first

12  and second adjudications is 'whether the two suits arise out of the same transactional nucleus of

13  facts.'"  *Frank v. United Airlines, Inc.,* 216 F.3d 845, 851 (9th Cir.2000) (citation omitted).  Here,

14  the allegations in both complaints clearly arise from the same transactional nucleus of facts.  As to

15  plaintiffs Ashker and Troxell, the Court should deny the motion to amend the complaint because the

16  doctrine of res judicata will bar all claims set forth in the proposed amended Complaint.

17          Plaintiffs Ashker and Troxell previously filed an action entitled *Todd Ashker and Danny*

18  *Troxell v. Arnold Schwarzenegger, et al.* (Case No. C 05-03286-CW) in which they sought damages

19  and/or injunctive relief because of the conditions at Pelican Bay State Prison. They alleged, (1)

20  violation of due process rights arising from the defendants' Aryan brotherhood (AB) prison gang

21  validation procedures, (2) violation of due process rights arising from a lack of prison programs

22  available to them because they are housed in the SHU, and (3) Ashker's claim for injunctive relief

23  based on due process violations in his parole suitability determination.

24          In March, 2009, the Court granted, in part, and denied, in part, the defendants' motion for

25  summary judgment.  [MSJ Order, Docket 336].

26          The plaintiffs argued that the defendants arbitrarily applied the applicable California

27  regulations as a pretext for keeping them in the SHU until they become informants.  [MSJ Order at

28  33].  Mr. Troxell's due process claim based on discriminatory AB validation procedures was

5

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

1    dismissed as barred by the applicable statute of limitation.  [MSJ Order at 34]

2         Ashker argued that the gang validation regulations were arbitrarily enforced and that once an

3    inmate is placed in the SHU because of gang membership, he can never get out.  [MSJ Order at 35].

4    He argued that the debriefing process is a sham or meaningless.  He argued that the evidence used

5    for his inactive review and the resulting re-validation as a gang member was based on innocuous

6    associational activity and unsubstantiated allegations of confidential informants.  These arguments

7    were rejected.  [MSJ Order at 35-36].  The Court further found that the confidential evidence

8    submitted by the defendants constituted more than the required "some evidence" to find that Ashker

9    was a member of the AB gang and that they contained adequate indicia of reliability.  [MSJ Order at

10   36].  Summary judgment on Ashker's due process claim regarding gang validation was granted in

11   favor of the defendants.  [MSJ Order at 36].

12        The plaintiffs further argued that their due process and equal protection rights were violated

13   in that they were unable to participate in certain programs because they were housed in the SHU.

14   [MSJ Order at 36].  The Court found that because there is no liberty interest in rehabilitative

15   programs, Ashker's complaint of limited access to programs failed to state a claim for a

16   constitutional violation.  [MSJ Order at 38].  The Court also rejected Ashker's claim that lack of

17   access to programming violated his due process rights in being granted parole.  [MSJ Order at 38].

18        The Court rejected Ashker's claim that his equal protection rights were violated because of

19   restrictions on access to programs.  Inmates housed in the SHU are not similarly situated with

20   prisoners in the general population because of the higher security risk presented by those placed in

21   the SHU.  [MSJ Order at 39].

22        In the instant action, the plaintiffs' proposed SAC contains allegations regarding the same

23   conditions of confinement in the SHU that were previously raised or could have been raised in Case

24   No. C 05-03286-CW.  For example, the plaintiffs allege that their due process rights are violated by

25   the policies, written or unwritten, pertaining to gang validation.  [SAC ¶¶91-122].  These claims

26   were raised and rejected in the prior action.

27        In the SAC, the plaintiffs allege that the unwritten policy prevents any prisoner held in the

28   SHU from being granted parole.  [SAC ¶87].  This claim was raised and rejected in the prior action.

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

6

1     In the SAC, the plaintiffs allege that unless a prisoner in the SHU is willing to debrief,

2   medical care is denied and there is absolutely no possibility of release from the SHU.  [SAC ¶¶ 78,

3   97].  This claim was raised and rejected in the prior action.

4     In the SAC, the plaintiffs allege that they have no access to programming or vocational

5   activities in violation of their due process and equal protection rights. [SAC ¶¶39, 67].  These claims

6   were raised and rejected in the prior action.

7     Res judicata bars a subsequent action when the plaintiff "had to produce substantially the

8   same evidence in both suits to sustain its case."  *Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d

9   863, 868 (9th Cir.1995).

10     Additionally, the plaintiffs' Eight Amendment claims regarding the conditions of

11   confinement in the SHU are barred by the doctrine of collateral estoppel.  The doctrine of collateral

12   estoppel, or issue preclusion, stands for the proposition that factual or legal issues that have been

13   litigated and determined by a valid final judgment are subject to preclusive effect in a later lawsuit

14   on a different claim.  *See Arizona v. California*, 530 U.S. 392, 414 (2000).  The plaintiffs' cruel

15   claims for cruel and unusual punishment arising from indefinite confinement in the SHU were

16   necessarily and finally adjudicated in the case of *Madrid v. Gomez*, 889 F.Supp. 1146 (N.D.

17   California 1995).  Thus, the claims presented under the first cause of action are barred under the

18   doctrine of collateral estoppel.

19     Plaintiffs allege that: "All members of the Eighth Amendment subclass are suffering the

20   deprivation of at least one basic human need due to their prolonged confinement in the SHU,

21   including mental and physical health, physical exercise, sleep, nutrition, normal human contact,

22   meaningful activity, and environmental stimulation."  [SAC ¶ 169].  All of the factual and legal

23   issues arising from these allegations were addressed by the court in *Madrid*.  889 F.Supp. at 1227,

24   1260.

25     The plaintiffs appear to rely upon the court's refusal to "speculate on the impact on inmates

26   confined in the SHU for periods of 10 to 20 years or more" in support of their claim that the

27   proposed SAC "presents the substantial question left unanswered by *Madrid*."  [SAC ¶ 9].  This

28   language was not an invitation by the court to re-litigate the factual and legal issues presented.  To

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

7

the contrary, the court in *Madrid* specifically noted that "there is nothing *per se* improper about segregating inmates, <u>even for lengthy or indefinite terms</u>."  889 F.Supp. at 1261 (emphasis added; citations omitted).  The court further noted that "[t]he decision to segregate inmates who threaten the security of the general population falls well within the defendants' far ranging discretion to manage California's prison population."  *Id.*

In sum, the doctrines of res judicata and collateral estoppel bar the plaintiffs from pursuing the claims within the proposed SAC.

**Key Amendment Two**

The plaintiffs seem to suggest that by withdrawing their claim for monetary relief they are somehow easing the burden on the defendants.  This is clearly not so.  The "favor" the plaintiffs bestow can be summarized as follows: the suit changes from two plaintiffs seeking monetary damages (and thus modest fees) to a class action for injunctive relief (with much greater fees).  Let us be clear.  The proposed SAC is obviously fee-driven.  The plaintiffs have now named eight attorneys as counsel of record.  Five of them attended the case management conference on March 28, 2012.

As discussed above, the plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel.  To repeat, the court in *Madrid* does not invite re-litigation of the claims presented by the plaintiffs now that inmates have been confined in the SHU for a longer period of time.

**Key Amendment Three**

In theory, the task of representing four as opposed to 24 defendants imposes less of a burden on the defense side.  However, in reality, the burden will be much greater in light of the proposed amendments.

As a matter of law, many, <u>if not all</u>, of the 24 defendants will prevail on a motion for summary judgment as to the First Amended Complaint.  Thus, the group of 24 will be greatly reduced, if not completely exonerated.

In contrast, the four defendants named in the proposed SAC will be required to spend a staggering amount of time and money litigating the case.  They will also undoubtedly prevail on a

8

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

motion for summary judgment, but at considerable expense.  Again, the plaintiffs' attempt to reconstruct the instant action and effectively re-litigate Case No. C 05-03286-CW and *Madrid* at taxpayers' expense should be denied.

### Key Amendment Four

The fourth key amendment discloses the plaintiffs' intention to eventually pursue their claims as a class action.  As a preliminary matter, it is clear that the plaintiffs will not be able to certify a class.  The requisite showing of commonality is not satisfied by a mere allegation that the plaintiffs "have suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011).  Rather, a party seeking class certification must demonstrate the existence of a common question of law or fact that is capable of class-wide resolution in "one stroke." *Id.*  The plaintiffs' class allegations clearly do not meet these requirements.

The questions of fact and law presented by each inmate's individual claims will vary substantially.  This is evidenced by the wide range of allegations presented by each individual proposed plaintiff.  The proposed SAC states separate and unique factual allegations for each proposed plaintiff.  As discussed herein, every inmate in the proposed class will have to allege unique psychological symptoms in support of an Eighth Amendment claim.  Likewise, every inmate's alleged due process violations will be based upon the individual circumstances of their confinement in the SHU.  The proposed class of all inmates who are or will ever be confined in the SHU simply does not share a common issue capable of class-wide resolution as necessary for certification. *See Id.*  Thus, if the plaintiffs are granted leave to file the proposed SAC, the defendants will file a preemptive motion to deny class certification and strike the class allegations from the complaint. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009).

Even the ten proposed plaintiffs do not share a common interest sufficient to allow their claims to be tried concurrently.  Each of the claims presented under the first cause of action relies upon the plaintiffs' psychological diagnoses.  Assuming *arguendo* that any of the plaintiffs have a diagnosable mental illness, it is obvious that each plaintiff's signs, symptoms, and psychological diagnosis will vary greatly from the others.  The alleged effects of prolonged SHU confinement on

9

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

1   each plaintiff will require individualized psychological examinations. Likewise, to the extent that

2   corrective action is required, each individual inmate would require unique treatment. To reach the

3   arbitrary conclusion that all inmates will suffer psychological harm if they are not released from the

4   SHU after ten years would be absurd. Thus, the plaintiffs cannot make the requisite showing of

5   commonality with regard to their conditions of confinement claims under the first cause of action.

6        Likewise, the plaintiffs cannot make the requisite showing of commonality with regard to

7   their due process claims. As discussed in the proposed SAC, the plaintiffs are being retained in the

8   SHU due to their status as validated gang affiliates. Inmates are validated and revalidated on the

9   basis of "source items" evidencing their continued gang involvement. Thus, a determination of

10  whether the plaintiffs were provided due process will require an individualized review of the source

11  items relied upon in each inmate's validation. *See e.g. Bruce v. Ylst,* 351 F.3d 1283 (9th Cir. 2003).

12       Such an analysis was already completed with regard to plaintiffs Ashker and Troxell in

13  Northern District Case No. C 05-03286-CW. In that case, the plaintiffs alleged due process

14  violations associated with their gang validation and subsequent retention in the SHU, among other

15  claims alleging violations of the First, Fifth, Eighth, and Fourteenth Amendments. Resolution of the

16  plaintiffs' due process claims entailed an in depth examination of the substantive and procedural due

17  process provided to the plaintiffs in the course of their gang validations.

18       Plaintiffs' counsel is familiar with the need to individually assess the source items relied upon

19  in support of an inmate's gang validation as required in *Castillo v. Alameida*, Northern District Case

20  No. C 94-2847-MJJ. *Castillo* and *Ashker* provide perfect examples of the individualized review

21  required for a due process claim regarding gang validation and SHU retention. Again, the plaintiffs

22  cannot make the requisite showing of commonality with regard to their due process claims under the

23  second cause of action.

24       The amendments presented by the proposed SAC would require the defendants to drastically

25  shift and expand their efforts to defend against the plaintiffs' claims. The efforts undertaken by the

26  defendants to defend the First Amended Complaint would be rendered completely useless in

27  defending the allegations of the proposed SAC. Thus, the taxpayers' money will have been wasted.

28  Likewise, the discovery and investigation necessary to try an action based upon the proposed SAC

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

would be completely irrelevant to the First Amended Complaint.  Merely preparing a meaningful answer to the proposed SAC would require the defendants to undertake a lengthy investigation of matters which were previously not at issue.  Thus, despite the plaintiffs' claims to the contrary, the defendants will suffer prejudice if the plaintiffs are permitted to amend the complaint as proposed.

Again, the plaintiffs' class allegations are barred by the doctrine of collateral estoppel.  The plaintiffs in *Madrid* expressly represented "a class of all prisoners who are, or will be, incarcerated by the State of California Department of Corrections at Pelican Bay State Prison…"  *Madrid*, 889 F.Supp. at 1155.  As discussed above, the plaintiffs' claims were necessarily and finally adjudicated in *Madrid*.  To the extent that the plaintiffs' claims have not been litigated adjudicated, they cannot be litigated in the context of a class action as proposed by the SAC.

**B.      The proposed Second Amended Complaint creates undue delay.**

The proposed SAC makes the current scheduling order obsolete in light of the vast range of new factual and legal issues presented.

Most notably, even the psychiatric status of the original plaintiffs, Ashker and Troxell, is not at issue in the First Amended Complaint.  Under the proposed SAC, the defendants would be required to conduct comprehensive evaluations of the mental health of the ten inmates selected as proposed plaintiffs.  If the plaintiffs are able to certify a class of all inmates confined in the SHU, the defendants will be required to examine the mental health of many more inmates in order to properly defend the plaintiffs' claims.

In short, by permitting the plaintiffs to proceed on the proposed SAC, the case would essentially be starting over.  As stated above, the initial complaint was filed in 2009.  As the court is aware, the defendants have already responded to voluminous discovery requests, as well as numerous procedural and injunctive motions.

**C.      In the alternative, if the Court permits the amendment, the defendants request that the Court extend the time to file an answer to the SAC and issue a new scheduling order.**

The Court has discretion to grant leave upon conditions ameliorating the hardship to opposing parties.  *Schwarzer, et al.,* Cal. Prac. Guide:  Fed. Civ. Pro. Before Trial § 8:1530 (The Rutter Group – 2011).  As discussed above, preparing an answer to the 200-paragraph SAC will be

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

an onerous burden.

Additionally, the tasks of conducting the necessary discovery, filing a dispositive motion, and preparing the case for trial cannot possibly be accomplished in accordance with the present scheduling order. According to the current scheduling order, trial is set to begin on March 5, 2013. The scheduling order also requires that the defendants file a dispositive motion no later than November 15, 2012. At the time the defendants stipulated to these dates, they could not have anticipated the overwhelming scope of the proposed SAC.

As discussed above, the parties will be required to conduct extensive discovery in order to examine the alleged psychological disorders of ten inmates. Likewise, the parties will be required to litigate the due process provided to the plaintiffs in the course of their gang validation and subsequent retention in the SHU. If the plaintiffs are able to certify the proposed class, the efforts required would increase exponentially.

Plaintiffs' counsel should be familiar with these inevitable delays. Plaintiffs' counsel, Charles Carbone, presented similar claims on behalf of Pelican Bay inmate Steven Castillo in Northern District Case No. C 94-2847-MJJ. The initial complaint in that case was filed in August of 1994. Mr. Carbone appeared as counsel eight years later. Thereafter, the plaintiff filed Third, Fourth, and Fifth Amended Complaints, with the final complaint being filed in August of 2003. The case was resolved by way of settlement agreement in January of 2004. That case involved one plaintiff and a much narrower range of claims. Again, it is impossible to conclude that the claims presented by the proposed SAC will be ready for trial in less than nine months.

If the court grants the plaintiffs' motion, the defendants request that the Court grant them an extension of time to file an answer to the SAC. Specifically, the defendants request that the deadline for responding to the SAC be set sixty days from the date the SAC is filed. Such an order is supported by the interests of justice and fairness. Additionally, the defendants request a new scheduling order reflecting the broad range of factual and legal issues presented by ten plaintiffs, if not a class of more than 1,000.

## CONCLUSION

For the foregoing reasons, the defendants respectfully request that the Court deny the

12

ANDRADA & ASSOCIATES
PROFESSIONAL CORPORATION

1  plaintiffs' motion for leave to file a Second Amended Complaint.  As discussed herein, allowing the

2  plaintiffs to proceed on the second amended complaint will essentially result in the case starting

3  over.  This would be grossly prejudicial to the defendants and cause substantial delays in the

4  resolution of this matter.  In the alternative, the defendants request that the Court extend the deadline

5  for responding to the Second Amended Complaint to sixty days after the Second Amended

6  Complaint is filed.  The defendants also request an updated scheduling order as discussed herein.

7

8  Dated:  June 14, 2012                                    ANDRADA & ASSOCIATES

9

10                                                              */s/ Matthew Roman*
                                                         By _____

11                                                             MATTHEW ROMAN
                                                             Attorneys for Defendants

**ANDRADA & ASSOCIATES**
PROFESSIONAL CORPORATION

{00081802.DOC/}  0922                                          *Ashker/Troxell. v. Brown, et al.*
DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO FILE 2ND AMENDED COMPLAINT          C 09 05796 CW