1  JULES LOBEL (*pro hac vice*)
   Email: jll3@pitt.edu
2  ALEXIS AGATHOCLEOUS (*pro hac vice*)
   Email: aagathocleous@ccrjustice.org
3  RACHEL MEEROPOL (*pro hac vice*)
   Email: rachelm@ccrjustice.org
4  CENTER FOR CONSTITUTIONAL RIGHTS
   666 Broadway, 7th Floor
5  New York, NY  10012
   Tel:  (212) 614-6478
6  Fax:  (212) 614- 6499

7  GREGORY D. HULL (Bar No. 57367)
   Email: greg.hull@weil.com
8  BAMBO OBARO (Bar No. 267683)
   Email: bambo.obaro@weil.com
9  WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway
10 Redwood Shores, CA  94065-1134
   Tel:  (650) 802-3000
11 Fax:  (650) 802-3100

12 Attorneys for Plaintiffs
   (Additional counsel listed on signature page)
13

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                          OAKLAND DIVISION

17 | GEORGE RUIZ, JEFFREY FRANKLIN, TODD ASHKER, GEORGE FRANCO, GABRIEL REYES, RICHARD JOHNSON, DANNY TROXELL, PAUL REED, LUIS ESQUIVEL, and RONNIE DEWBERRY, on their own behalf, and on behalf of a class of similarly situated prisoners, | Case No. 4:09 CV 05796 CW

**NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**CLASS ACTION**

Plaintiffs,

v.

EDMUND G. BROWN, JR., Governor of the State of California, MATTHEW CATE, Secretary, California Department of Corrections and Rehabilitation (CDCR); ANTHONY CHAUS, Chief, Office of Correctional Safety, CDCR; and G.D. LEWIS, Warden, Pelican Bay State Prison,

Defendants.

Date: January 10, 2013
Time:  2:00 p.m.
Place:  Courtroom 2, 4th Floor

Honorable Claudia Wilkin

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION .................................................................................................................. 1

RELIEF REQUESTED .................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.    INTRODUCTION ............................................................................................................ 1

II.   STATEMENT OF FACTS .............................................................................................. 3

III.  ASHKER'S TRANSFER WAS IN RETALIATION FOR HIS LITIGATION AND PROTECTED SPEECH ACTIVITIES............................................................................... 7

IV.  THIS COURT HAS INHERENT POWER TO IMPOSE RESTRAINTS ON DEFENDANTS' INTENTIONAL EFFORTS TO HINDER AND OBSTRUCT THIS LITIGATION .................................................................................................................. 11

V.   CONCLUSION............................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. United States*,
  317 U.S. 269 (1942) .................................................................................................................. 12

*Allen v. Iranon*,
  283 F.3d 1070 (9th Cir. 2002) .................................................................................................... 8

*Anthoine v. North Central Counties Consortium*,
  605 F.3d 740 (9th Cir. 2010) .................................................................................................. 8, 9

*Brodheim v. Cry*,
  584 F.3d 1262 (9th Cir. 2009) .................................................................................................. 10

*Bruce v. Ylst*,
  351 F.3d 1283 (9th Cir. 2003) .................................................................................................. 10

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ............................................................................................................. 11, 12

*Coszalter v. City of Salem*,
  320 F.3d 968 (9th Cir. 2003) ................................................................................................... 8, 9

*Cotner v. Hopkins*,
  795 F.2d 900 (10th Cir. 1986) .................................................................................................. 11

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) .................................................................................................... 11

*FTC v. Dean Foods Co.*,
  384 U.S. 597 (1966) .................................................................................................................. 13

*Gomez v. Vernon*,
  255 F.3d 1118 (9th Cir. 2001) .................................................................................................. 11

*Hamilton v. Nakai*,
  453 F.2d 152 (9th Cir. 1972) .................................................................................................... 12

*Hines v. Gomez*,
  108 F.3d 265 (9th Cir. 1997) ................................................................................................ 7, 10

*In re Grand Jury Investigation*,
  545 F.3d 21 (1st Cir. 2008) ....................................................................................................... 11

*Jackson v. D.C.*,
  254 F.3d. 262 (D.C. Cir. 2001) ................................................................................................ 13

*Jones v. Bock*,
  549 U.S. 199 (2007) .................................................................................................................. 12

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) ................................................................................................ 12

*Link v. Wabash R. Co.*,
　370 U.S. 626 (1962) ........................................................................................................... 13

*Molski v. Evergreen Dynasty Corp.*,
　500 F.3d 1047 (9th Cir. 2007) ......................................................................................... 11

*Pratt v. Rowland*,
　65 F.3d 802 (9th Cir. 1995) ........................................................................................... 2, 7

*Reeves v. Sanderson,*
　530 U.S. 133 (2000) ........................................................................................................... 8

*Rhodes v. Robinson*,
　408 F.3d 559 (9th Cir. 2005) ....................................................................................... 7, 10

*Rizzo v. Dawson*,
　778 F.2d 527 (9th Cir. 1985) ............................................................................................. 7

*SEC v. G.C. George Sec. Inc.*,
　637 F.2d 685 (9th Cir. 1981) ........................................................................................... 12

*Silva v. Di Vittorio*,
　658 F.3d 1090 (9th Cir. 2011) ........................................................................................... 7

*Stringham v. Bick*,
　No. 05-0644, 2008 U.S. Dist. LEXIS 79892 (E.D. Cal. Sept. 3, 2008) ........................... 13

*Tripati v. Beaman*,
　878 F.2d 351 (10th Cir. 1989) ......................................................................................... 11

*United States v. Hudson*,
　11 U.S. 32 (1812) ............................................................................................................. 12

*Watison v. Carter*,
　668 F.3d 1108 (9th Cir. 2012) ............................................................................... 7, 10, 13

*Weisman v. Quail Lodge Inc.*,
　179 F.3d. 1194 (9th Cir. 1999) ........................................................................................ 11

**Other Authorities**

All Writs Act
　28 U.S.C. § 1651(a) ............................................................................................. 2, 12, 13

*The Edge of Endurance:  Prison Conditions in California's Security Housing Units*,
　AMNESTY INT'L PUBLICATIONS (Amnesty Int'l, London, United Kingdom) ............................ 3, 10

**Rules**

Federal Rules of Civil Procedure Rule 65 ......................................................................................... 1

# NOTICE OF MOTION

Notice is hereby given to Defendants Edmund G. Brown, Jr., Matthew Cate, Anthony Chaus, and G.D. Lewis (collectively, "Defendants") and their attorneys of record that on Thursday, January 10, 2013 at 2:00 p.m., or as soon thereafter as this matter may be heard in Courtroom 2 of the above-entitled Court, located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs George Ruiz, Jeffrey Franklin, Todd Ashker, George Franco, Gabriel Reyes, Richard Johnson, Danny Troxell, Paul Redd, Luis Esquivel, and Ronnie Dewberry (collectively, "Plaintiffs"), on their own behalf and on behalf of a class of similarly situated prisoners, will and hereby do move this Court, under Rule 65 of the Federal Rules of Civil Procedure, for a preliminary injunction against Defendants.

This motion is made pursuant to Rule 65 of the Federal Rules of Civil Procedure and Civil Local Rules 7-2 and 65-2. This motion is based on the Notice of Motion, the Memorandum of Points and Authorities included below, the Declarations of Jules Lobel, Todd Ashker, and Danny Troxell In Support of Plaintiffs' Notice of Motion and Motion for Preliminary Injunction submitted herewith, the complete pleadings and records on file herein, and upon such other evidence and argument presented at the hearing on this motion, and such matters of which this Court may take judicial notice.

# RELIEF REQUESTED

Plaintiffs request a preliminary injunction that requires Defendants to return Plaintiff Todd Ashker to the prison cell in E Pod at Pelican Bay State Prison that, prior to September of this year, he had inhabited since at least 2006, and enjoining Defendants from relocating Ashker again during the pendency of this litigation.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Named Plaintiff Todd Ashker ("Plaintiff Ashker"), who filed the individual *pro se* complaint on which this class-action suit is based, has been housed in the same cell within the Special Housing Unit of Pelican Bay State Prison for more than five years. On September 6, 2012, in retaliation for and to frustrate Plaintiff Ashker's prosecution of this action, defendants transferred Plaintiff Ashker to another cell. In addition to causing Plaintiff Ashker physical harm as explained below, the

transfer completely eliminates his ability to communicate with the other named plaintiffs in this case and frustrates counsel's ability to litigate Plaintiffs' class-action claims. This motion, brought on behalf of both Plaintiffs' counsel and Plaintiffs, therefore seeks a preliminary injunction order requiring Plaintiff Ashker's return to the cell in which he was housed prior to the recent retaliatory transfer and to enjoin Defendants from relocating Plaintiff Ashker again during the pendency of this litigation.

      Plaintiffs recognize that Plaintiff Ashker has no constitutional right to be housed in any particular cell at the Pelican Bay SHU. Nonetheless, he has a well-established right not to be transferred out of one particular cell as retaliation for the exercise of his right to engage in litigation and other activities protected by the First Amendment. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Here, the intended (and actual) effect of the transfer is to hinder and obstruct Plaintiffs and their counsels' ability to litigate this case effectively and efficiently. This Court has both inherent power and authority pursuant to the All Writs Act, 28 U.S.C. § 1651(a) enjoin such conduct and to sanction parties that take harassing, retaliatory or otherwise oppressive actions that obstruct or hinder litigation before the Court.

      CDCR's retaliatory transfer of Plaintiff Ashker also deprives him of any contact with his CDCR-designated "writing assistant," Plaintiff Danny Troxell ("Plaintiff Troxell"), who CDCR has long recognized "help[s] him with his legal and other paperwork." *See* Ashker Decl. ¶ 7-10. Subsequent to American with Disabilities Act litigation brought by Plaintiff Ashker and a series of grievances that he submitted, Defendants recognized that Plaintiff Asker's writing disability required a reasonable accommodation. Thus, for almost a decade, Defendants have recognized and provided the reasonable accommodation that Plaintiff Ashker be afforded access to his designated writing aide, Plaintiff Troxell. Ashker's transfer away from Plaintiff Troxell eviscerates that accommodation. In addition, the transfer was made with the intent of hindering Plaintiff Ashker's participation in this litigation and without any legitimate penological purpose. The retaliatory transfer should be enjoined, and Plaintiff Ashker should be returned to his original cell.

## II. STATEMENT OF FACTS

Since 2006, Plaintiff Ashker was housed in "E" pod of Pelican Bay Special Housing Unit (SHU), in an area known as the short corridor at Pelican Bay SHU. That pod contained six of the ten named plaintiffs in this lawsuit—Plaintiffs Ashker, Troxell, Dewberry, Franklin, Reyes and Ruiz. Plaintiff Troxell was Plaintiff Ashker's co-plaintiff in the original action before this Court, which was recently amended to add named plaintiffs and class-wide injunctive claims. Plaintiff Troxell also has been formally designated by CDCR as Plaintiff Ashker's "writing assistant" "to help him with his legal and other paperwork" due to Plaintiff Ashker's disability. Ashker Decl., ¶¶ 7-9.

Communication is quite limited in the SHU. Normal, face-to-face social communication is virtually barred by the physical conditions at the SHU, and even communication by means of shouting between cells is sometimes the subject of punishment. However, these six plaintiffs have been able, due to the physical proximity of their cells, to maintain some communication about this case and to discuss the strategy and tactics they wish to pursue.

On September 6, 2012, Plaintiff Ashker was abruptly and, without any warning, transferred from his cell in the E pod to a new cell, D4 121, in the F pod. The cell Plaintiff Ashker was moved to in F pod isolates him totally from any of the plaintiffs in this lawsuit. No other plaintiff is housed in any cell close to his new cell such that they can hear each other. Moreover, his new cell is one of eight cells in the F pod that are "covered with sheets of unbreakable transparent plastic (Lexan)." *Id.* at ¶ 18. These Lexan sheets make communication even more difficult than in the typical SHU cell, since they block out and muffle most sound. Amnesty International's report devotes an entire section to these cells and expresses its concern that these cells "further isolate prisoners and may worsen the air quality in these cells." *See The Edge of Endurance: Prison Conditions in California's Security Housing Units*, AMNESTY INT'L PUBLICATIONS (Amnesty Int'l, London, United Kingdom), September 26, 2012, at 12-16, *available at* http://www.amnestyusa.org/sites/default/files/california_solitary_confinement_report_final.pdf, a courtesy copy of the relevant excerpt is attached to Ashker Decl. as Exhibit J. The Lexan-covered cells lack the perforated holes present in most SHU cells, and were apparently designed to house and punish prisoners who throw materials at guards through the holes in the typical SHU cells. *Id.*

Indeed, a CDCR memo entitled "INMATE PLACEMENT IN LEXAN COVERED CELLS" states that "in the event that an inmate assaults, attempts to assault, or threatens to assault staff or another inmate(s), he will be housed in a cell with a LEXAN covered cell front." Ashker Decl., Ex. E.

Plaintiff Ashker has never been accused of throwing any materials at officers that would warrant transfer to a LEXAN covered cell. Nor has he assaulted, attempted to assault, or threatened the assault of any staff or inmate that would warrant his recent transfer to one of these Lexan covered cells. *Id.* at ¶19.

But Plaintiff Ashker has long engaged in litigation and other protected speech activities at the SHU. Plaintiff Ashker's leadership in litigation and other protected activities are well known to the defendants and to the staff at Pelican Bay SHU. He was a leader in recent non-violent peaceful protests and letter-writing campaigns protesting conditions at the SHU. More specifically, and particularly relevant to this motion, Plaintiff Ashker initiated the *pro se* lawsuit that resulted in the amended class action complaint filed in this Court this year. He personally contacted Center for Constitutional Rights lawyers and requested that they intervene in this case and convert it into a class action. He has advised other prisoners, particularly Plaintiff Troxell, in filing legal claims against CDCR.

Initially, CDCR officials told Plaintiff Ashker that he was being transferred because of unspecified security and safety reasons. After he complained and requested the reason for his transfer, CDCR officials asserted that the reason was contained in Confidential Disclosure Forms 1030 that were served on Plaintiff Ashker on September 10, 2012 – several days after the transfer. *See Id.* at ¶ 23 ("you were issued a CDCR 1030 informing you of the reason you were re-housed").

Those CDCR 1030's disclose the confiscation of several letters that a non-prisoner wrote in July 2012 to Plaintiff Ashker and another inmate, Perez, who is also housed in the E pod. The two Confidential Information Disclosure Forms 1030's state that: (1) CDCR intercepted an incoming letter to Ashker in which "the author appears to be angry with Ashker and makes statements which appeared to be implied threats," and (2) CDCR also intercepted another letter to another inmate at Pelican Bay from the same author which "appears to be soliciting help from this inmate to support her with the veiled threats [against Ashker]." *Id*. at ¶ 24. These letters were confiscated by CDCR

1  officials and were never delivered to their intended recipients.  Plaintiff Ashker and Perez (the other
2  inmate who also received a Confidential Information Disclosure Form and is thus undoubtedly the
3  inmate referred to in Plaintiff Ashker's form) have never received these letters and do not know their
4  contents.

5       To Plaintiffs' knowledge, no prisoner in E pod has written any letter or uttered any statement
6  that contains any implicit or explicit threat against Plaintiff Ashker, nor has any prisoner informed
7  CDCR of any threat emanating from that pod against Plaintiff Ashker that would cause any danger
8  to his security.  CDCR has not conducted any investigation in which they asked Plaintiff Ashker or
9  other inmates to identify any possible threats against him.  CDCR has not issued any disciplinary
10 reports or warning against any E pod prisoner with respect to any threats involving Plaintiff Ashker.
11 Indeed, there is no history of any misconduct, violence or threatened violence involving any
12 prisoners in E pod over the past several years, nor for that matter any significant disciplinary issues
13 involving that pod in any recent period of time.  Since the incoming letters were confiscated, no
14 prisoner has received any letter that contains any threat against Plaintiff Ashker.

15      Plaintiff Ashker's transfer has had the intended impact on his attorneys and the Plaintiffs'
16 ability to litigate this case.  Plaintiff Ashker is a key plaintiff who originally brought this action and
17 whose legal expertise and experience is valued and trusted by the other plaintiffs.  His inability to
18 communicate with the other plaintiffs makes it much more difficult to reach a consensus as to
19 strategy and tactics to pursue in the litigation.  For example, recently Plaintiffs' counsel raised with
20 various plaintiffs the possibility of making a particular motion to the court, and Plaintiff Ashker's
21 inability to communicate with the other Plaintiffs made it impossible to reach any timely consensus
22 on the issue.  *See* Lobel Decl. ¶¶ 5-6.

23      Moreover, the actions CDCR officials have taken against Plaintiff Ashker undoubtedly are
24 intended to and do have a chilling effect on other prisoners who might otherwise desire to aid this
25 litigation. Plaintiffs' counsel need to rely on the cooperation of other named plaintiffs and putative
26 class members to come forward and provide relevant information, support and potential testimony in
27 support of Plaintiffs' constitutional claims.
28

1        Finally, Plaintiff Ashker's transfer has caused him to experience increasing pain in his hand and has made it more difficult for him to write letters.  Plaintiff Ashker suffered a disability to his hand as a result of a shooting by CDCR guards in 1990.  After filing several grievances requesting a reasonable accommodation for this disability, CDCR officially agreed that Troxell would be Ashker's "writing assistant," to help him with legal papers and other documents.  Since 2003, Troxell has either been celled together with Ashker or, when they were transferred to the PBSP Short Corridor, Troxell and Ashker were placed in adjoining cells so that Troxell could function as Ashker's writing assistant.  They were officially permitted to exchange written materials when their cell doors were opened to go to exercise or shower.  *See* Ashker Decl., ¶8, Ex. B (stating that Troxell and Ashker would be allowed to exchange paper materials during "regular unlocks for both inmates").

Compounding the writing pain Plaintiff Ashker experiences is a recent, arbitrary retaliatory move taken by CDCR's medical staff against Plaintiff Ashker by Pelican Bay State Prison Doctor, Michael C. Sayre, M.D.  Specifically, on October 26, 2012, Dr. Sayre arbitrarily reduced Plaintiff Ashker's Tylenol dosage from 650 ml three times per day to once per day, causing him increasing pain in his writing hand and arm, making it harder for Plaintiff Ashker to sleep and to write.  This cut in medication was ordered by Dr. Sayre without any explanation, and despite the fact that pursuant to a Court order, the UCSF pain management experts recommended that he be prescribed Tylenol 650 ml three times per day in 2010.  *See id.* at ¶ 29, Ex. I.  Furthermore, on November 15, 2012, Plaintiff Ashker was notified that his Tylenol prescription has been *completely discontinued* by Dr. Sayre.  Plaintiff Ashker has received no explanation for the discontinuation of his needed pain medication.

Plaintiffs' counsel has tried unsuccessfully to resolve the issue of Plaintiff Ashker's transfer with Defense Counsel in an effort to remove this unnecessary hindrance to the litigation. Defendants have refused to transfer Plaintiff Ashker back to his original cell.

## III. ASHKER'S TRANSFER WAS IN RETALIATION FOR HIS LITIGATION AND PROTECTED SPEECH ACTIVITIES

The Ninth Circuit has repeatedly held that a prisoner has a right to be free from a transfer from one location to another that is intended to "hinder his ability to litigate his pending civil lawsuits." *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (prisoner stated a constitutional claim that prison officials retaliated against him by transferring him to another prison because of his efforts in assisting with litigation and bringing litigation); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (it would be illegal for prison officials to transfer a prisoner in retaliation for First Amendment protected activities).  As the Circuit has noted, such retaliation may result in wrongfully "smothering" discussion about the institution or prosecution of litigation.  *Rizzo*, 778 F.2d at 532.  Moreover, "[t]o succeed on his retaliation claim, [the prisoner] need not establish an independent constitutional interest in either assignment to a given prison or placement in a single cell, because the crux of his claim is that state officials violated his First Amendment rights by retaliating against him for his protected speech activities." *Pratt*, 65 F.3d at 806; s*ee also Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("The adverse action need not be an independent constitutional violation."); *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (prisoners may "base retaliation claims on harms that would not raise due process concerns").

Here, there can be no serious dispute that Plaintiff Ashker was transferred in retaliation for his leadership role in this litigation and related political activities.  The intent and purpose of the transfer was precisely to "hinder his ability to litigate" this lawsuit and to smother all discussion between Plaintiff Ashker and other prisoners about how to conduct this lawsuit and related First Amendment activities.

To set forth a viable retaliation claim under Ninth Circuit law, a prisoner must allege five elements:  "(1) a prison official took an adverse action against him, (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Silva*, 658 F.3d at 1104; *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

First, Plaintiff Ashker's transfer to the isolated Lexan-covered cell, which has been criticized by Amnesty International and is normally reserved by CDCR for prisoners who engage in assaults, is clearly an adverse action taken against him. So too is the removal of Plaintiff Ashker from his CDCR designated writing assistant who aids him with his legal papers.

As for the second and third elements, the circumstantial evidence strongly supports the conclusion that defendants transferred Plaintiff Ashker because of his protected conduct. The transfer was purportedly based on security concerns that are pretextual and false. That defendants transferred Plaintiff Ashker to one of the most isolated cells that is most restrictive of communication in the SHU where no other plaintiff is housed suggests a motive to isolate him from other plaintiffs and supporters and punish him for his protected activities. That the cell he was transferred to is ordinarily used for inmates who have assaulted guards or other inmates also illustrates the retaliatory motive behind the transfer. And Plaintiff Ashker's transfer away from his CDCR designated "writing assistant" Plaintiff Troxell, who aids him with his legal papers and other documents, is further evidence of defendants' retaliatory motive to obstruct Plaintiff Ashker's protected activities.

Because direct evidence of intent is so rarely available, the Ninth Circuit has repeatedly emphasized that plaintiffs can prove a retaliatory motive through circumstantial evidence that the defendant's proffered reason is pretextual or false. *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002) ("evidence that the reasons proffered by the employer for the adverse employment action were false and pretextual" is one form of circumstantial evidence sufficient to demonstrate retaliatory motive); *Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 750 (9th Cir. 2010) (same); *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (same). As the court put it in *Allen*, "[c]ourts determining whether a plaintiff has met his burden [to establish retaliatory motive] . . . often look to evidence that the employer's proffered reasons for the challenged decision were pretextual." 283 F.3d at 1075. The circuit quoted the Supreme Court's opinion in *Reeves v. Sanderson* that "in a discrimination case, 'proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of [an impermissible motive], and it may be quite persuasive.'" *Id.* (quoting 530 U.S. 133, 147 (2000).

1        Here, overwhelming evidence exists that defendants' purported security and safety reasons
2 for transferring Plaintiff Ashker were pretextual and false.  Defendants have presented no evidence
3 whatsoever that any prisoner in D1–E pod made any threat against Plaintiff Ashker or that Plaintiff
4 Ashker made any threat against anyone in that pod.  There have been no disturbances, fights or other
5 altercations amongst any of the prisoners in that pod for years.  The Defendants' allegation that
6 incoming letters made some kind of "veiled threat" against Plaintiff Ashker is irrelevant because the
7 intended recipients of those letters never received them, even if a veiled threat by someone outside
8 the prison was indeed made.  Defendants have presented no evidence that any prisoner who was the
9 intended recipient of those letters ever made any threats against Plaintiff Ashker, was at all
10 sympathetic to or supportive of the alleged threats, or in any way intended to act or did act upon
11 those "veiled threats."  *See, e.g.*, Ashker Decl., ¶¶ 26-27, Exs. F&G.

12        Moreover, the fact that Defendants transferred Plaintiff Ashker to a cell covered with plastic
13 Lexan sheets that are intended to be used for disruptive prisoners and which make it harder for him
14 to communicate with other prisoners is further evidence of a motive to retaliate against him, to
15 disrupt his ability to litigate this case, and to attempt to break his spirit and resolve for this litigation.
16 The Lexan cell imposes a cocoon of silence on Plaintiff Ashker and is harmful to his health, as there
17 is no circulation of air in the cell.  Moreover, as CDCR's own policies indicate, the Lexan cell
18 should be reserved for prisoners who have engaged in assaultive behavior, which Plaintiff Ashker
19 has not.  *See* Ashker Decl. ¶¶ 18-20, Ex. E.  That no plaintiffs are housed in the pod to which
20 Plaintiff Ashker was transferred further evidences defendants' retaliatory motive for the cell
21 reassignment.

22        Finally, the fact and that the transfer took place a few months after Plaintiff Ashker moved to
23 file an amended complaint which included eight other named plaintiffs and class action allegations
24 further supports a finding that the move was in retaliation for Plaintiff Ashker's litigation and
25 political activities and designed to chill and stifle those activities.  *Coszalter*, 320 F.3d at 977 (three
26 to eight months was within relevant time period for showing retaliatory motive); *Anthoine*, 605 F.3d
27 at 951 ("proximity in time may support an inference of retaliation").

28

Plaintiff Ashker's retaliation claim also satisfies the fourth requirement: that the adverse action either chills or silences a person of ordinary firmness from future First Amendment activities, or that he himself has been chilled or harmed. A "plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm that is more than minimal."[1] *Watison*, 668 F.3d at 1114 (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) and *Rhodes*, 408 F.3d at 568 n.11) (internal quotations omitted). Here, as will be set forth more fully in Point II, *infra*, Plaintiff Ashker can demonstrate both that he personally and his litigation efforts have been harmed, and that a person of ordinary firmness would be chilled by his being transferred to a cell that Amnesty International has criticized as being more isolating than even the normal isolation cells at the SHU and is potentially harmful to the prisoner's health. *See The Edge of Endurance: Prison Conditions in California's Security Housing Units*, AMNESTY INT'L PUBLICATIONS (Amnesty Int'l, London, United Kingdom), September 26, 2012, at 12-16.

Finally, as already discussed, defendants cannot demonstrate any legitimate correctional goal for transferring Plaintiff Ashker. The preponderance of evidence demonstrates that the institution's legitimate goals of safety and security of inmates were not served by this transfer, and that those asserted reasons are both pretextual and false. Even if defendants can put forth "some evidence" that might support a safety and security rationale, that is not the standard for evaluating whether Plaintiff Ashker's transfer constitutes illegitimate retaliation. "[T]he 'some evidence' standard of *Hill* [does] not apply to retaliation claims. The 'some evidence' standard applies only to due process claims attacking the result of a disciplinary board's proceeding, not the correctional officer's retaliatory accusation." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003); *Hines*, 108 F.3d at 269 (contrasting allegations of retaliatory conduct with disciplinary board proceedings and concluding that a correctional officer's allegedly retaliatory accusation "is not entitled to the 'some evidence' standard of review that we afford disciplinary administrative decisions").

---

[1] In addition to the chilling effect on the ordinary prisoner, Ashker has clearly suffered harm from his removal from his designated writing assistant, as set forth above.

1   In sum, Plaintiff Ashker can demonstrate that Defendants transferred him to an isolated
2   Lexan covered cell in retaliation for his litigation and related protected activities, which transfer was
3   motivated by interfering with this litigation.

4   **IV.   THIS COURT HAS INHERENT POWER TO IMPOSE RESTRAINTS ON DEFENDANTS' INTENTIONAL EFFORTS TO HINDER AND OBSTRUCT**
5   **THIS LITIGATION**

6   This Court's inherent power to sanction or restrain litigants for improper conduct in the
7   course of litigation "extends to a full range of litigation abuses." *Gomez v. Vernon*, 255 F.3d 1118,
8   1134 (9th Cir. 2001) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991) on of sanctions
9   or other restraints "when a party acts for an improper purpose" or engages in "harassment" during
10  the course of litigation with the intent to interfere with the other party's ability to litigate the case.
11  *Id.* at 1134; *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  This Court's inherent authority can
12  be invoked where either a party or a lawyer has acted for "oppressive reasons," "disrupting
13  litigation," "or has taken actions in the litigation for an improper purpose." *Fink*, 239 F.3d at 992.
14  Where a party acts vexatiously or for oppressive reasons to disrupt litigation, a court's inherent
15  power to impose sanctions "transcends a court's equitable power concerning relations between the
16  parties and reaches a court's inherent power to police itself . . . ." *Chambers*, 501 U.S. at 46.

17  This inherent power encompasses a court's power to impose restraints, restrictions and
18  injunctions on a party. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007)
19  (district courts have inherent power to enjoin vexatious litigants); *Weisman v. Quail Lodge Inc.*,
20  179 F.3d. 1194, 1197 (9th Cir. 1999) (same).  "There is strong precedent establishing the inherent
21  power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored
22  restrictions under the appropriate circumstances." *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir.
23  1986).  A court's inherent power includes the authority to enjoin or restrain a party or lawyer. *In re*
24  *Grand Jury Investigation*, 545 F.3d 21, 27 (1st Cir. 2008) (district court correctly "employed its
25  inherent power to enjoin Harper").

26  In addition to its inherent power, this Court "has power under 28 U.S.C. § 1651(a) to enjoin
27  litigants who abuse the court system by harassing their opponents." *Tripati v. Beaman*, 878 F.2d
28  351, 352 (10th Cir. 1989); *Molski*, 500 F.3d at 1057; *see also SEC v. G.C. George Sec. Inc.*, 637

F.2d 685, 687-88 (9th Cir. 1981) (district court had jurisdiction under the All Writs Act to consider whether to enjoin SEC's administrative proceeding).

The All Writs Act, 28 U.S.C. § 1651(a), states that, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Act does not create any substantive federal jurisdiction but rather empowers District Courts to issue writs against a broad array of conduct that impairs litigation before them. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099-1100, 1102-03 (11th Cir. 2004). Whereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction. *Id.* Thus, a party does not file a new claim or action to obtain an all writs act injunction, but must simply point to some ongoing proceeding which is being threatened by some action or behavior. *Id.* This Court may grant a writ under the act whenever it is "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States*, 317 U.S. 269, 273 (1942). "[A] district court's 'powers under section 1651 should be broadly construed.'" *G.C. George*, 637 F.2d at 688 (9th Cir. 1981) (quoting *Hamilton v. Nakai*, 453 F.2d 152, 157 (9th Cir. 1972).

The Prison Litigation Reform Act does not affect this Court's inherent, equitable power or its power under 28 U.S.C. 1651(a) to enjoin litigants who take harassing, oppressive or retaliatory actions designed to hinder or impair litigation before the court. *Jones v. Bock*, 549 U.S. 199, 214-17 (2007) (Congress did not in enacting the PLRA mean to depart from the usual procedural rules and practices apart from that specified in the statute itself). As the Supreme Court has explained, it "has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers*, 501 U.S. at 43 (quoting *United States v. Hudson*, 11 U.S. 32, 3 L. Ed. 259 (1812)). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31

1  (1962)).  So, too, the All Writs Act codifies and reflects the inherent power of courts to control
2  litigation before them.

3  As the D.C. Circuit held in the PLRA context, "[t]he Supreme Court has long recognized that
4  federal courts possess a 'traditional power to issue injunctions to preserve the status quo while
5  administrative proceedings are in progress and prevent impairment of the effective exercise of
6  appellate jurisdiction.'"  *Jackson v. D.C.*, 254 F.3d. 262, 268 (D.C. Cir. 2001) (quoting *FTC v. Dean*
7  *Foods Co.*, 384 U.S. 597, 604 (1966)) (italics omitted); s*ee also Stringham v. Bick*, No. 05-0644,
8  2008 U.S. Dist. LEXIS 79892, at *29 (E.D. Cal. Sept. 3, 2008) (following *Jackson* in issuing a
9  preliminary injunction).  The judicial authority cited by the D.C. Circuit in *Jackson* was based on the
10 All Writs Act, 28 U.S.C. § 1651(a).  *See FTC v. Dean Foods*, 384 U.S. at 599, 604.

11 Here, the Court's inherent power and its authority under the All Writs Act are properly
12 invoked.  Defendants have transferred Plaintiff Ashker for the improper purpose of hindering and
13 obstructing plaintiffs' ability to properly litigate this case.  First, by preventing communication
14 between Plaintiff Ashker—the initial  plaintiff—and the other named plaintiffs, defendants seek to
15 and already have affected plaintiffs' ability to develop  consensus about how to proceed on certain
16 immediate issues and the tactics to utilize in this litigation.  *See* pp. 6-7, *supra*.  Defendants have also
17 improperly harmed Plaintiff Ashker by removing his access to Plaintiff Troxell, who was designated
18 by CDCR as Plaintiff Ashker's "writing assistant" as a reasonable accommodation for his disability
19 in order to aid him with his legal papers and other documents.  *See* Ashker Decl. ¶¶ 7-10.  Finally,
20 and equally important, if allowed to continue, Ashker's transfer to a more restrictive cell will
21 undoubtedly chill other class members from supporting this litigation and providing evidence to aid
22 plaintiffs' claims.  *See Watison*, 668 F.3d at 1115 (adverse action would chill a person of ordinary
23 firmness).  For these reasons, defendants' retaliatory transfer of Ashker cannot properly be allowed
24 to continue during the pendency of this litigation. Plaintiffs clearly have shown a likelihood that the
25 transfer was pretextual and that their First Amendment protected litigation is being harmed and
26 chilled.  There is no adequate remedy at law for these harms.  This Court should exercise its power
27 under the All Writs Act and its inherent authority to protect the litigation process and transfer
28 Plaintiff Ashker back to his housing assignment in E Pod during the pendency of this case.

## V. CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court enter a preliminary injunction requiring Defendants to return Plaintiff Todd Ashker to the prison cell in E Pod at Pelican Bay State Prison that, prior to September of this year, he had inhabited since at least 2006, and enjoining Defendants from relocating Ashker again during the pendency of this litigation.

Dated:  December 6, 2012                                  Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By:        */s/ Gregory D. Hull*
                Gregory D. Hull
GREGORY D. HULL (Bar No. 57367)
Email:  greg.hull@weil.com
BAMBO OBARO (Bar No. 267683)
Email:  bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1134
Tel:  (650) 802-3000
Fax:  (650) 802-3100

JULES LOBEL (*pro hac vice*)
Email:  jll3@pitt.edu
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email:  aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email:  rachelM@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY  10012
Tel:  (212) 614-6478
Fax:  (212) 614- 6499

CHARLES F.A. CARBONE (SBN 206536)
Email:  charles@charlescarbone.com
EVAN CHARLES GREENBERG (SBN 271356)
Email:  evan@charlescarbone.com
LAW OFFICES OF CHARLES CARBONE
P.O. Box 2809
San Francisco, CA  94126
Tel:  (415) 981-9773
Fax:  (415) 981-9774

MARILYN S. MCMAHON (SBN 270059)
Email:  marilyn@prisons.org
CALIFORNIA PRISON FOCUS
1904 Franklin Street, Suite 507
Oakland, CA  94612
Tel:  (510) 734-3600

1     Fax:  (510) 836-7222

2     ANNE BUTTERFIELD WEILLS (SBN 139845)
    Email:  aweills@aol.com
3     SIEGEL & YEE
    499 14TH STREET, SUITE 300
4     OAKLAND, CA  94612
    Tel:  (510) 839-1200
5     Fax:  (510) 444-6698

6     CAROL STRICKMAN (SBN 78341)
    Email:  carol@prisonerswithchildren.org
7     LEGAL SERVICES FOR PRISONERS WITH
    CHILDREN
8     1540 Market Street, Suite 490
    San Francisco, CA  94102
9     Tel:  (415) 255-7036
    Fax:  (415) 552-3150

Attorneys for Plaintiffs
TODD ASHKER, DANNY TROXELL, et al.