KAMALA D. HARRIS
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General
JILLIAN R. WEADER
Deputy Attorney General
ADRIANO HRVATIN
Deputy Attorney General
State Bar No. 220909
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-1672
  Fax:  (415) 703-5843
  E-mail:  Adriano.Hrvatin@doj.ca.gov
*Attorneys for Defendants*
*Brown, Cate, Lewis, and Chaus*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **GEORGE RUIZ, et al.,**<br><br>                                    Plaintiffs,<br><br>       **v.**<br><br>**EDMUND G. BROWN, JR., et al.,**<br><br>                                    Defendants. | C 09-05796 CW<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT, OR ALTERNATIVELY, TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  February 14, 2013<br>Time:  2:00 p.m.<br>Dept.:  Courtroom 2, 4th Floor<br>Judge:  The Honorable Claudia Wilken<br>Action Filed:  December 9, 2009 |

# TABLE OF CONTENTS

Page

Notice of Motion and Motion to Dismiss ...................................................................... 1

Memorandum of Points and Authorities ...................................................................... 1

Introduction .................................................................................................................... 1

Issues Presented ............................................................................................................. 3

Statement ........................................................................................................................ 4

    I.     Plaintiffs' due process claim should be dismissed as moot under Rule
          12(b)(1) of the Federal Rules of Civil Procedure ........................................... 6

         A.    Plaintiffs' claim is moot because CDCR is conducting case-by-case
             reviews of all validated SHU inmates pursuant to the STG pilot
             program. ................................................................................................. 6

         B.    The common exceptions to mootness do not apply to CDCR's new
             gang management procedures. ................................................................ 9

    II.    In the alternative, the Court should stay Plaintiffs' due process claim
          pending full implementation of the STG pilot program. ................................. 11

    III.   The second amended complaint fails to state a due process claim under the
          Fourteenth Amendment ................................................................................. 12

         A.    The regulations in title 15 meet the minimal procedural protections
             applicable to administrative functions like gang validation and
             review. ................................................................................................. 12

         B.    Plaintiffs were afforded the due process owed to them. ...................... 14

         C.    Plaintiffs cannot state a due process claim based on the alleged
             denial of parole or allegations that violate this Court's prior orders. ....... 14

    IV.   The second amended complaint fails to state a claim for cruel and unusual
          punishment under the Eighth Amendment .................................................... 15

         A.    Plaintiffs' vague and conclusory allegations of psychological harm
             do not give rise to a sufficiently serious deprivation. ......................... 16

         B.    The second amended complaint does not allege the required
             culpable state of mind to establish deliberate indifference. ..................... 17

         C.    Plaintiffs' Eighth Amendment claim alleging cruel and unusual
             punishment is precluded by *Madrid*, *Coleman*, and *Plata* ...................... 19

             1.    Preclusion applies because Plaintiffs here are the same as
                 the plaintiffs in *Madrid*, *Coleman*, and *Plata*. ........................... 19

             2.    Preclusion applies because Defendants here are in privity
                 with the defendants in *Madrid*, *Coleman*, and *Plata*. .................. 20

             3.    The Eighth Amendment claim here is the same as the Eighth
                 Amendment claims resolved in *Madrid*, *Coleman*, and
                 *Plata* ............................................................................................. 21

                 a.    *Madrid* precludes Plaintiffs' Eighth Amendment
                     challenge to the conditions of the SHU ........................... 21

i

**TABLE OF CONTENTS**
(continued)

Page

b.   *Coleman* precludes Plaintiffs' Eighth Amendment challenge regarding mental health. ................................. 23

c.   *Plata* precludes Plaintiffs' Eighth Amendment challenge regarding medical care. .................................... 24

Conclusion ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

### CASES

*Allard v. De Lorean*
　884 F.2d 464 (9th Cir. 1989) ............................................................................................. 7

*Ashcroft v. Iqbal*
　556 U.S. 662 (2009) ....................................................................................................... 12

*Ashker v. Schwarzenegger*
　No. 05-3286 CW, 2009 U.S. Dist. LEXIS 25092 (N.D. Cal. Mar. 25, 2009) ............. 1, 14, 15

*Bell Atl. Corp. v. Twombly*
　550 U.S. 544 (2007) ....................................................................................................... 12

*Bell v. Wolfish*
　441 U.S. 520 (1979) ....................................................................................................... 18

*Brown v. Plata*
　___ U.S. ___, 131 S. Ct. 1910 (2011) ............................................................................ 25

*Bruce v. Ylst*
　351 F.3d 1283 (9th Cir. 2003) ................................................................................. 9, 13, 14

*Burke v. Barnes*
　479 U.S. 361 (1987) ......................................................................................................... 9

*Cell Therapeutics, Inc. v. Lash Grp. Inc.*
　586 F.3d 1204 (9th Cir. 2010) ........................................................................................ 19

*Clinton v. Jones*
　520 U.S. 681 (1997) ....................................................................................................... 11

*Coleman v. Wilson*
　912 F. Supp. 1282 (E.D. Cal. 1995) ...................................................................... 20, 23, 24

*Coleman v. Brown*
　No. 90-0520 LKK (E.D. Cal.) .................................................................................... passim

*Dependable Highway Express v. Navigators Ins. Co.*
　498 F.3d 1059 (9th Cir. 2007) ........................................................................................ 11

*Ex Parte Young*
　209 U.S. 123 (1944) ....................................................................................................... 20

*Farmer v. Brennan*
　511 U.S. 825 (1994) ....................................................................................................... 16

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Garcia v. Schwarzenegger*

4
   No. 05-4009 CW, 2007 U.S. Dist. LEXIS 73739 (N.D. Cal. Sept. 25, 2007).........................9

5
*Green v. Mansour*
   474 U.S. 64 (1985).........................................................................................................8

6

7
*Hansberry v. Lee*
   311 U.S. 32 (1940).......................................................................................................19

8
*Heck v. Humphrey*
   512 U.S. 477 (1994)................................................................................................14, 15

9

10
*Lindquist v. Idaho State Bd. of Corrections*
   776 F.2d 851 (9th Cir. 1985)..........................................................................................9

11
*Lopez v. Cate*

12
   No. 11-2644 YGR, 2012 U.S. Dist. LEXIS 142027 (N.D. Cal. Sept. 30, 2012)....................9

13
*Madrid v. Gomez*
   No. 90-3094 TEH (N.D. Cal.)..................................................................................passim

14

15
*Madrid v. Gomez*
   889 F. Supp. 1146 (N.D. Cal. 1995) ........................................................................passim

16

17
*Native Village of Noatak v. Blatchford*
   38 F.3d 1505 (9th Cir. 1994)..........................................................................................9

18
*Plata v. Brown*
   No. 01-1351 TEH (N.D. Cal.)..................................................................................passim

19

20
*Preiser v. Rodriguez*
   411 U.S. 475 (1973)......................................................................................................15

21
*Rodriguez v. Puente*

22
   No. 11-17290, 478 Fed. Appx. 428 (9th Cir. July 11, 2012) ...............................................9

23
*Safe Air for Everyone v. Meyer*
   373 F.3d 1035 (9th Cir. 2004)..........................................................................................6

24

25
*Savage v. Glendale Union High School*
   343 F.3d 1036 (9th Cir. 2003)..........................................................................................6

26
*SEC v. Medical Comm. for Human Rights*
   404 U.S. 403 (1972)........................................................................................................6

27

28

iv

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*Stewart v. Alameida*
    418 F. Supp. 2d 1154 (N.D. Cal. 2006) ................................................. 9

5

*Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*
    298 F.3d 1137 (9th Cir. 2002) ............................................................. 20

6

7

*Swarthout v. Cooke*
    ___ U.S. ___, 131 S. Ct. 859 (2011) ................................................... 14

8

9

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*
    322 F.3d 1064 (9th Cir. 2003) ............................................................. 20

10

*Toussaint v. McCarthy*
    801 F.2d 1080 (9th Cir. 1986) ............................................................. 13

11

12

*United States Parole Comm'n v. Geraghty*
    445 U.S. 388 (1980) ........................................................................... 6

13

14

*United States v. Liquidators of European Fed. Credit Bank*
    630 F.3d 1139 (9th Cir. 2011) ............................................................. 21

15

*United States v. W.T. Grant Co.*
    345 U.S. 629 (1953) ........................................................................... 9

16

17

*Webb v. Schwarzenegger*
    No. 07-2294 PJH, 2012 U.S. Dist. LEXIS 5944 (N.D. Cal. Jan. 19, 2012) ......................... 19

18

19

*Weinstein v. Bradford*
    423 U.S. 147 (1975) ........................................................................... 10

20

*Whitley v. Albers*
    475 U.S. 312 (1986) ........................................................................... 18

21

22

*Wilson v. Seiter*
    501 U.S. 294 (1991) ..................................................................... 15, 17

23

**STATUTES**

24

California Code of Regulations, Title 15
    § 3341.5(c)(2)(A) ................................................................... 4, 12, 13
    § 3378(c) ............................................................................. 12, 13
    § 3378.1(d) ............................................................................. 13

25

26

Penal Code
    § 5058.1 ................................................................................. 7, 8

27

28

Defs.' Not. Mot. & Mot. Dismiss; Memo. Points & Auth. (C 11-6642 EJD)

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3

**CONSTITUTIONAL PROVISIONS**

4

United States Constitution

5

    First Amendment ................................................................................ 5
    Eighth Amendment ................................................................. passim

6

    Eleventh Amendment ............................................................... 8, 20
    Fourteenth Amendment ......................................................... 1, 6, 12

7

**COURT RULES**

8

Federal Rules of Civil Procedure

9

    Rule 12(b)(1) ...................................................................... 1, 3, 6
    Rule 12(b)(6) .................................................................... 1, 3, 12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Not. Mot. & Mot. Dismiss; Memo. Points & Auth. (C 11-6642 EJD)

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2   PLEASE TAKE NOTICE THAT on February 14, 2013 at 2:00 p.m., or as soon as the

3   matter may otherwise be heard, before the Honorable Claudia Wilken in the United States District

4   Court for the Northern District of California, located at 1301 Clay Street, Oakland, California

5   94612, Defendants Brown, Cate, Lewis, and Chaus will move under Rule 12(b)(1) of the Federal

6   Rules of Civil Procedure to dismiss as moot Plaintiffs' due process challenge to the gang

7   validation and review procedures set forth in California's Code of Regulations.  Alternatively,

8   Defendants request that the Court stay the litigation of Plaintiffs' due process claim pending the

9   full implementation by the California Department of Corrections and Rehabilitation (CDCR) of a

10  new gang management strategy through its "Security Threat Group" pilot program.

11  PLEASE TAKE FURTHER NOTICE THAT on the date and time and at the location

12  noticed above, Defendants will move under Rule 12(b)(6) to dismiss:  (i) Plaintiffs' due process

13  claim under the Fourteenth Amendment; and (ii) Plaintiffs' claim of cruel and unusual

14  punishment under the Eighth Amendment.  The basis for the motion is that Plaintiffs have failed

15  to allege facts sufficient to state a claim, and that Plaintiffs' claims are precluded.

16  The motion is based on this notice of motion and motion, the accompanying memorandum

17  of points and authorities and supporting declaration, request for judicial notice, all pleadings,

18  exhibits, and papers on file in this action, and any other matters property before the Court.

19

**MEMORANDUM OF POINTS AND AUTHORITIES**

20

**INTRODUCTION**

21  The Security Housing Unit (SHU) at Pelican Bay State Prison, and other SHU units in

22  California, exists for the legitimate penological purpose of housing inmates exactly like Plaintiffs

23  — validated gang members and associates who wreak havoc within prison walls, even under the

24  strict conditions of the SHU.  This Court has previously found that Plaintiff Ashker was properly

25  validated and re-validated as a member of the Aryan Brotherhood.  *Ashker v. Schwarzenegger*,

26  No. 05-3286 CW, 2009 U.S. Dist. LEXIS 25092, at *48-52 (N.D. Cal. Mar. 25, 2009).  The other

27  nine named plaintiffs are no different.  Plaintiffs cannot dispute the copious amount of evidence

28  available to prison officials to justify each Plaintiff's validation and re-validation as an active

1

1   gang member or associate.  (*See, e.g.*, Second Am. Compl. (SAC) ¶¶ 18, 104-06, 108-10, 115,

2   Sept. 10, 2012, ECF No. 136.)  Through this case, however, Plaintiffs want to be released from

3   the SHU, without consideration to the current threat they pose to prison safety and security.[1]

4   Their efforts here fail as a matter of law.

5        Plaintiffs' due process challenge to the gang validation and review procedures in title 15 of

6   California's Code of Regulation ignores CDCR's much anticipated and recent change to those

7   procedures.  The "Security Threat Group" (STG) pilot program represents a genuine, proactive,

8   and thorough overhaul of CDCR's gang management procedures and has already resulted in the

9   release of over forty SHU inmates to the general population.  This development renders Plaintiffs'

10  due process claim moot.  Alternatively, to preserve the Court's and parties' resources for the

11  resolution of a "live" dispute, the Court should invoke its discretion and stay litigation of

12  Plaintiffs' due process claim.  A stay will permit CDCR, other interested external stakeholders

13  like Plaintiffs' attorneys at California Prison Focus, and the Court to properly focus their attention

14  and limited resources on CDCR's new approach to the management of prison gangs, for the

15  benefit and safety of the SHU population at Pelican Bay and inmates throughout the state.

16       Plaintiffs further fail to state sufficient facts to make out either of their two claims.  Other

17  than allege in conclusory fashion that they were denied "meaningful review," Plaintiffs fail to

18  show that they have not received the procedural protections, which are minimal, applicable to

19  administrative prison functions like gang validation.  Plaintiffs' due process claim also fails

20  because it implicates the duration of confinement, as Plaintiffs allege the denial or unavailability

21  of parole, which can only be heard on habeas corpus.  For this reason, this Court specifically

22  ordered Plaintiffs Ashker and Troxell to exclude such a claim from any future complaint.  This

23  Court further ordered that Plaintiff Ashker could not challenge CDCR's validation guidelines on

24  due process grounds in this case.  Plaintiffs' cruel and unusual punishment claim fares no better.

25  _____

26       [1] As an example of the influence Plaintiffs have over the general population of prison inmates, on August 12, 2012, Plaintiffs Ashker, Dewberry, Troxell, Franco, and Redd, among a host of other SHU inmates, issued a statement directed to "all California Prisoners" imposing an

27  alleged "mutual agreement" to "officially cease" "all hostilities between our racial groups," effective  October 10, 2012.  (Defs.' Request Judicial Not. Ex. A.)

28

2

1   Plaintiffs' contention is that SHU conditions constitute a per se violation of the Eighth

2   Amendment.  The complaint, however, does not allege a sufficiently serious injury nor meet the

3   subjective requirement for deliberate indifference, which calls for a "wanton" state of mind to

4   establish liability.  The claim is further precluded by three prior class actions that definitively

5   resolved allegations that the conditions of the SHU at Pelican Bay do not meet constitutional

6   standards with respect to inmates' physical and mental health.

7                                  **ISSUES PRESENTED**

8       1.      CDCR has implemented its STG pilot program with new validation and review

9   policies and has, in accordance with those new policies, begun conducting case-by-case reviews

10  of validated inmates serving indeterminate terms in the SHU at Pelican Bay.  Should Plaintiffs'

11  due process challenge to CDCR's former gang management regulations be dismissed as moot

12  under Rule 12(b)(1) of the Federal Rules?

13      2.      A federal court has significant discretion to stay proceedings incident to its power to

14  control its own docket and focus its resources on cases that present actual and ripe controversies.

15  Should the Court stay litigation of Plaintiffs' due process claim to allow CDCR to implement all

16  phases of its STG pilot program?

17      3.      Minimal due process protections apply to administrative functions like gang

18  validation.  Should the Court dismiss Plaintiffs' due process claim under Rule 12(b)(6) because

19  the challenged procedures provide Plaintiffs the requisite notice, an opportunity to be heard, and

20  require that there be "some evidence" to support Plaintiffs' gang status?

21      4.      Should the Court dismiss Plaintiffs' due process claim to the extent it is based on the

22  alleged denial of parole because:  (i) such allegations concern the duration of confinement and are

23  barred by well-established precedent; and (ii) the Court already ordered that Plaintiffs Ashker and

24  Troxell could not proceed on such allegations?  Similarly, should the Court dismiss Plaintiff

25  Ashker's due process claim regarding gang validation because the Court already ordered that he

26  could not bring such a claim in an amended complaint?

27

28

1    5.    Should the Court dismiss Plaintiffs' Eighth Amendment claim for cruel and unusual

2    punishment on the ground that Plaintiffs fail to allege facts to establish:  (i) a sufficiently serious

3    deprivation; and (ii) that each Defendant acted with the required "wanton" state of mind?

4    6.    The doctrine of claim preclusion prevents the relitigation of claims that were finally

5    determined in prior litigation.  Should the Court dismiss Plaintiffs' Eighth Amendment claim as

6    precluded by the *Madrid*, *Coleman*, and *Plata* class actions, each of which concerned the same

7    claim raised by Plaintiffs here regarding the conditions of the SHU at Pelican Bay and the alleged

8    physical and mental health effects of SHU confinement?

9                                   **STATEMENT**

10    This case looks nothing like it did when inmates Ashker and Troxell first commenced suit

11    over three years ago.  Inmates Ashker and Troxell are still plaintiffs but, with the filing of their

12    second amended complaint, so are eight additional inmates — Ruiz, Franklin, Franco, Reyes,

13    Johnson, Redd, Esquivel, and Dewberry.  (SAC ¶¶ 14-23.)  Each Plaintiff, save for inmates Reyes

14    and Esquivel, are validated members of rival prison gangs.  (*Id.* ¶¶ 14-23, 93, 104, 110.)

15    Plaintiffs Reyes and Esquivel are validated gang associates.  (*Id.* ¶¶ 18, 22, 105, 115.)  Because of

16    their gang validations and re-validations, Plaintiffs are confined in the SHU at Pelican Bay.  Each

17    has been confined in the SHU pursuant to an indeterminate term under § 3341.5(c)(2)(A)(2) of

18    title 15 in California's Code of Regulations.  Gone from the operative pleading are twenty-plus

19    defendants, leaving just four:  Governor Brown, former CDCR Secretary Cate,[2] Pelican Bay

20    Warden Lewis, and Chief of the Office of Correctional Safety Chaus,[3] all of which are sued in

21    their official capacities.  (*Id.* ¶¶ 25-28.)

22    Also gone from the operative complaint are the scattered claims initially alleged by

23    Plaintiffs Ashker and Troxell, which ranged from an alleged denial of sexually explicit material in

24

25    [2] Defendant Cate is no longer the Secretary of CDCR.  Martin Hoshino has held the position of acting Secretary since November 12, 2012.

26    [3] Defendant Chaus was not served in this matter until recently.  On December 7, 2012,

27    Plaintiffs filed a waiver of service of summons executed on Defendant Chaus's behalf.  Although his response is not due until January 15, 2013, Defendant Chaus moves here with Defendants Brown, Cate, and Lewis to dismiss Plaintiffs' complaint.

28

4

Defs.' Not. Mot. & Mot. Dismiss 2nd Am. Compl., Alt. Stay; Memo. Points & Auth. (C 09-05796 CW)

1  violation of the First Amendment, to a claim that CDCR's gang validation procedures impinged

2  upon the inmates' First Amendment rights.  (First Am. Compl. ¶¶ 206, 227, 248, May 21, 2010,

3  ECF No. 10.)  There are now just two claims.  Plaintiffs allege that the conditions of the SHU at

4  Pelican Bay constitute a per se violation of the Eighth Amendment's prohibition against cruel and

5  unusual punishment.  (SAC ¶¶ 179-82, 189-92.)  Plaintiffs also allege that CDCR's gang

6  validation and review procedures, as set forth in title 15, violate due process because they do not

7  provide "meaningful review," a term Plaintiffs do not define.  (*Id*. ¶¶ 195-202.)  With respect to

8  each claim, Plaintiffs purport to proceed individually as well as on behalf of a class and subclass.

9  (*Id*. ¶¶ 165-66.)  Plaintiffs no longer seek money damages; instead, they seek various forms of

10  declaratory and injunctive relief, including an across-the-board "release from the SHU of those

11  prisoners who have spent more than 10 years in the SHU," regardless of whether the inmate

12  presents a security threat to other inmates, staff, or the institution.  (*Id*. Prayer for Relief (c)(i).)

13      Notwithstanding the sheer length of Plaintiffs' second amended complaint, which spans

14  almost fifty pages and contains over two-hundred paragraphs, what is significant is what the

15  operative pleading fails to allege.  Plaintiffs do not, for example, acknowledge that CDCR has

16  implemented a new set of guidelines to govern gang validation and review for all inmates serving

17  indeterminate SHU terms.  It is not as if the new guidelines come as a surprise to Plaintiffs.  To

18  the contrary — California Prison Focus, which represents Plaintiffs in this case, provided

19  comments to multiple versions of the new policies.  (G. Giurbino Decl. Supp'g Defs.' Mot.

20  Dismiss (Giurbino Decl.) ¶ 4.)  Similarly, Plaintiffs make only passing reference to the findings

21  made in *Madrid v. Gomez*, No. 90-3094 TEH (N.D. Cal.), a case that involved claims identical to

22  those made by Plaintiffs here.  Nor do Plaintiffs allege that they are already mentally ill or at

23  serious risk of mental illness.  Plaintiffs wholly ignore the impact of *Coleman v. Brown*, No. 90-

24  0520 LKK (E.D. Cal.) and *Plata v. Brown*, No. 01-1351 TEH (N.D. Cal.), cases that, like *Madrid*,

25  addressed the mental health concerns of California inmates, including inmates in the SHU at

26  Pelican Bay.  These critical omissions, taken together with Plaintiffs' failure to allege facts

27  sufficient to state claims under the Eighth and Fourteenth Amendments, warrant the dismissal of

28  Plaintiffs' complaint.

5

Defs.' Not. Mot. & Mot. Dismiss 2nd Am. Compl., Alt. Stay; Memo. Points & Auth. (C 09-05796 CW)

1

**ARGUMENT**

2

**I.    PLAINTIFFS' DUE PROCESS CLAIM SHOULD BE DISMISSED AS MOOT UNDER RULE
       12(B)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

3

4

Plaintiffs seek purely equitable relief in this case.  In connection with their due process

5

claim, Plaintiffs seek a declaration that "defendants' policies and practices of confining prisoners

6

in the Pelican Bay SHU violate the . . . Fourteenth Amendment to the United States Constitution."

7

(SAC Prayer for Relief ¶ (b).)  Plaintiffs also seek a host of forms of injunctive relief including:

8

(i) "the release from the SHU of those prisoners who have spent more than 10 years in the SHU;"

9

(ii) "meaningful review of the continued need for confinement in a SHU of all prisoners currently

10

housed in the SHU;" and (iii) "meaningful review of SHU confinement for prisoners housed in

11

the SHU in the future."  (*Id.* ¶¶ (c)(i), (c)(iii)-(iv).)  Plaintiffs focus on the gang validation and

12

management policies set forth in title 15 under which Plaintiffs were validated, received

13

indeterminate SHU terms, and have been deemed to be active gang participants after periodic

14

reviews.  (*Id.* ¶¶ 102-13, 120.)  CDCR, however, has implemented its STG pilot program, which

15

changes how inmates are validated, whether they are initially assigned to the SHU, and the nature

16

of the periodic review thereafter provided to validated inmates.  Because the STG pilot program

17

renders Plaintiffs' due process challenge moot, the Court should dismiss the claim for lack of

18

subject-matter jurisdiction under Rule 12(b)(1).[4]

19

**A.    Plaintiffs' Claim Is Moot Because CDCR Is Conducting Case-By-Case
        Reviews of All Validated SHU Inmates Pursuant to the STG Pilot Program.**

20

21

Mootness requires that the interest that existed when the case began continue through to the

22

end of the action.  *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).  Absent

23

a justiciable case or controversy, the court risks delivering an advisory opinion addressing

24

supposed wrongs, which is constitutionally improper.  *See SEC v. Medical Comm. for Human*

25

26

[4] A Rule 12(b)(1) motion is considered a factual, as opposed to a facial, attack when the
defendant submits evidence challenging the court's subject-matter jurisdiction.  *Savage v.
Glendale Union High School*, 343 F.3d 1036, 1039-40 & n.2 (9th Cir. 2003).  On such a motion,
the court may consider evidence outside the complaint without converting the motion into one for
summary judgment.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

27

28

6

1    *Rights*, 404 U.S. 403, 407 (1972).  Without the ability to issue a ruling that actually affects the

2    litigants' rights, the court lacks subject-matter jurisdiction.  *Allard v. De Lorean*, 884 F.2d 464,

3    466 (9th Cir. 1989).  The Court here lacks subject-matter jurisdiction over Plaintiffs' due process

4    challenge to CDCR's regulations governing gang validation and review because CDCR has

5    implemented new guidelines that impact all inmates serving indeterminate SHU terms based on

6    gang validation.  Plaintiffs' due process rights are directly impacted by CDCR's new guidelines.

7        On October 18, 2012, the STG pilot program was approved and certified by the Office of

8    Administrative Law and filed by CDCR with the Secretary of State.  (Giurbino Decl. ¶ 2 & Ex. A.)

9    The pilot program, implemented in accordance with § 5058.1 of the Penal Code, reflects CDCR's

10   efforts to address evolving trends of gang activities in state prisons and to provide an alternate

11   procedure for inmates to "step down" or disassociate from gang activity and earn incremental

12   privileges without debriefing, consistent with the security, safety, and inmate management needs

13   presently affecting the administration of state prisons.  (*Id*.)  The STG pilot program is now

14   CDCR's official policy.  (*Id*. ¶¶ 6, 10.)  On October 25, 2012, CDCR started conducting case-by-

15   case reviews of inmates validated as gang members or associates who are serving indeterminate

16   SHU terms at Pelican Bay.  (*Id*. ¶ 6.)  In the nine weeks since the implementation of the program,

17   CDCR has conducted seventy-seven case-by-case reviews at Pelican Bay and four other state

18   institutions with SHU units, including an institution that houses female inmates.  (*Id*.)  The

19   reviews have generated significant results:  (i) forty-three inmates have been classified for release

20   from the SHU to the general population; (ii) twenty-one inmates have been placed in one of the

21   four levels of the plan's Step-Down Program for ultimate release from the SHU; and (iii) eleven

22   inmates requested to be kept in the SHU.  (*Id*.)[5]  The ongoing case-by-case reviews will

23   determine the appropriate placement of the remainder of indeterminate-term SHU inmates either

24   into a level of the Step-Down Program or to general population housing.  (*Id*. ¶ 7.)

25

26   _____

27       [5] This accounts for seventy-five of the seventy-seven reviews conducted to date.  Two
     additional SHU inmates' circumstances presented unique factors that were reviewed and
28   addressed accordingly pursuant to the STG pilot program.  (*See* Giurbino Decl. ¶ 6.)

The impact of this policy change is dramatic. The STG pilot program overhauls CDCR's management of "security threat groups," which replaces pre-existing terms like "prison gang." (*Id.* ¶¶ 3, 5.) The pilot program will reduce the number of inmates assigned to the SHU as well as reduce the potential length of stay in the SHU for all inmates serving indeterminate terms of confinement in the SHU at Pelican Bay and other SHUs in California prisons. (*Id.* ¶ 5.) The changes to CDCR's gang management policies are extensive and include:

> (a) STG associates — a majority of inmates housed in SHUs — will not be considered for direct administrative SHU placement based solely upon their STG validation unless there is corresponding confirmed disciplinary behavior at the time of the original validation;

> (b) an STG prevention program for offenders in the general population and an orientation process for validated affiliates in the Step-Down Program;

> (c) recognition of the different levels of threat posed by STG members, associates, and suspects, and housing that corresponds to the respective threat level;

> (d) a weight-based point validation system, which continues to require a direct link to an existing validated member or associate;

> (e) a new behavior-based system, which serves to enhance the existing intelligence-based validation system;

> (f) a new STG behavior-based disciplinary matrix, which provides for additional procedural due process safeguards and a system of individual accountability;

> (g) a new STG Classification Committee, which provides an additional level of due process review and confirms initial STG validations;

> (h) an incremental four-year Step-Down Program, with the potential further reduction to three years based on positive programming, which will replace the existing six-year inactive review process for validated STG affiliates; and

> (i) an individual behavior-based Step-Down Program that provides graduated housing, enhanced programs, and interpersonal interactions as well as corresponding privileges and personal property enhancements.

(*Id.*) With implementation of the STG pilot program, Plaintiffs' current challenge to CDCR's previous validation procedures no longer presents a "live" controversy, particularly as Plaintiffs seek exclusively equitable relief. *See Green v. Mansour*, 474 U.S. 64, 65 (1985) (holding that, given the change in the defendants' regulations, prospective relief was unavailable and declaratory relief related to past alleged violations was barred by the Eleventh Amendment). The Court should dismiss Plaintiffs' due process claim as moot.

8

1

2

### B.   The Common Exceptions to Mootness Do Not Apply to CDCR's New Gang Management Procedures.

3        There are common exceptions to the mootness doctrine but none of them apply in this case.

4   For example, mootness may not apply where a defendant voluntary ceases the allegedly improper

5   behavior in response to litigation.  *See Native Village of Noatak v. Blatchford*, 38 F.3d 1505,

6   1509-10 (9th Cir. 1994).  But corrective action by an agency to its regulations during the

7   pendency of a lawsuit still can render a controversy moot.  *See Lindquist v. Idaho State Bd. of*

8   *Corrections*, 776 F.2d 851, 854 (9th Cir. 1985).  In addition, a statutory change that alters or

9   repeals the challenged action is generally enough to render a controversy moot.  *See Burke v.*

10  *Barnes*, 479 U.S. 361, 363 (1987).  And when there is no reasonable expectation that the

11  defendant will resume its challenged behavior, the mootness doctrine applies.  *United States v.*

12  *W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953).

13       The STG pilot program was not implemented because the gang validation and management

14  policies set forth in title 15 fail to meet constitutional due process mandates.  (Giurbino Decl. ¶ 8.)

15  To the contrary — the regulations in title 15 have been applied and consistently found to meet

16  constitutional requirements.[6]  Nor was the STG pilot program created or intended to defeat this or

17  any other pending litigation.  (*Id.*)  More than six years ago, CDCR initiated a proactive and

18  internal evaluation of its policies and practices towards gang management in recognition of

19  national trends, best practices, and the evolving sophistication of prison gangs.  (*Id.*)  The policy

20  changes set forth in the STG pilot program are based on recommendations made by subject-

21  matter experts within CDCR, as well as strategies and best practices used by CDCR and other

22  correctional agencies.  (*Id.* ¶ 3.)  For example, CDCR collected documents describing similar

23  programs implemented by the Federal Bureau of Prisons as well as the states of Arizona, New

24  Mexico, Colorado, Texas, Connecticut, and New York.  (*Id.*)  Research studies and national

25

26        [6] *See, e.g.*, *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003); *Rodriguez v. Puente*, No. 11-17290, 478 Fed. Appx. 428, 429 (9th Cir. July 11, 2012); *Lopez v. Cate*, No. 11-2644 YGR,

27  2012 U.S. Dist. LEXIS 142027, at *10-18 (N.D. Cal. Sept. 30, 2012); *Garcia v. Schwarzenegger*, No. 05-4009 CW, 2007 U.S. Dist. LEXIS 73739, *21-25 (N.D. Cal. Sept. 25, 2007); *Stewart v.*

28  *Alameida*, 418 F. Supp. 2d 1154, 1165-68 (N.D. Cal. 2006).

9

Defs.' Not. Mot. & Mot. Dismiss 2nd Am. Compl., Alt. Stay; Memo. Points & Auth. (C 09-05796 CW)

1  reviews of best practices were considered by a combined group of correctional experts in

2  developing the STG pilot program.  (*Id.*)  Moreover, to arrive at the current STG pilot program,

3  CDCR issued incremental versions of its proposed policies for commentary from external

4  stakeholders, including prisoner advocacy groups and counsel.  (*Id.* ¶ 4.)  For example, the Prison

5  Law Office and California Prison Focus, the latter of which represents Plaintiffs in this case,

6  provided comments on prior versions of CDCR's proposed STG policies, which CDCR evaluated

7  and incorporated as appropriate in subsequent versions.  (*Id.*)

8          In this way, the STG pilot program reflects CDCR's goals of reducing long-term SHU

9  confinement, enhancing considerations of due process, incorporating individual accountability,

10  providing alternatives for inmates who want to disassociate from a gang, maintaining the safety of

11  prisons, and having a more effective system that complies with national best practices.  (*Id.* ¶ 9.)

12  CDCR does not intend to return to its enforcement of the regulations challenged by Plaintiffs in

13  this case.  (*Id.*)  Instead, the pilot program affords CDCR an opportunity to complete significant

14  changes to regulations, practices, and institutional culture to ensure success of its new strategy.

15  (*Id.*)  Changes of this magnitude must be completed thoughtfully, methodically, and deliberately,

16  as CDCR works to establish a more effective model of managing security threat groups in a

17  prison environment.  (*Id.*)

18          The separate exception to mootness made for cases capable of repetition, yet evading

19  review, does not apply here either.  For this exception to apply, there must be:  (i) a "reasonable

20  expectation" that the same party suffering an apparent injury will be injured again; and (ii) the

21  type of injury suffered by the party must inherently be the type that will always become moot

22  prior to completion of federal court litigation.  *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

23  This exception does not apply here because the STG pilot program applies to all validated SHU

24  inmates.  That is, Plaintiffs will have the status of their validations reviewed in accordance with

25  STG's new policies.  (Giurbino Decl. ¶¶ 6-7.)  This program has the force of law (*id.* ¶ 10), such

26  that Plaintiffs should not reasonably or otherwise expect to suffer an injury due to application of

27  CDCR's prior validation procedures.  Should any Plaintiff allege an injury as a result of the new

28  validation procedures, he may seek appropriate relief and review will not be evaded.

1    CDCR has changed its gang validation policies, and has commenced case-by-case reviews

2    of all validated inmates serving indeterminate SHU terms.  If the Court provides Plaintiffs with

3    some form of relief based on the prior procedure, CDCR will have to determine the meaning of

4    that relief in light of the new program.  Because Plaintiffs challenge regulations that have been

5    subsumed by the STG pilot program, Plaintiffs' due process claim should be dismissed as moot.

6 **II.   IN THE ALTERNATIVE, THE COURT SHOULD STAY PLAINTIFFS' DUE PROCESS
      CLAIM PENDING FULL IMPLEMENTATION OF THE STG PILOT PROGRAM.**

7

8    If the Court declines to dismiss Plaintiffs' due process claim as moot, the Court still has

9    discretion to stay litigation of the challenge pending full implementation of the STG pilot

10   program.  The district court "has broad discretion to stay proceedings as an incident to its power

11   to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997).  On a motion to stay,

12   the district court considers the possible effects on judicial economy as well as the potential harm

13   to the parties and the public interest. *Dependable Highway Express v. Navigators Ins. Co.*, 498

14   F.3d 1059, 1066-67 (9th Cir. 2007).

15   In this case, a stay promotes the interests of docket control, efficiency, and fairness, and

16   does not prejudice the parties.  The STG pilot program is well underway and applies to all

17   validated inmates currently serving an indeterminate SHU term, including at Pelican Bay.

18   (Giurbino Decl. ¶¶ 5-7.)  As such, Plaintiffs will be reviewed on a case-by-case basis to determine

19   their appropriate placement at a level within the Step-Down Program or to general population

20   housing.  (*Id*. ¶ 7.)  The continued and uninterrupted implementation of the program provides

21   SHU inmates like Plaintiffs a review of their validations, which they contend CDCR has failed to

22   provide in a "meaningful" way.  Without a stay, CDCR and the Court will have to expend

23   resources on litigating whether Plaintiffs received "meaningful review" of their validations under

24   regulations that CDCR no longer intends to apply.  A stay, however, will give the parties a fair

25   and focused opportunity to address CDCR's new policies, including any objections or issues that

26   Plaintiffs may raise regarding the new program.  Accordingly, should the Court find that

27   Plaintiffs' due process claim is not moot, the Court should nonetheless stay litigation of the claim.

28

1    **III.   THE SECOND AMENDED COMPLAINT FAILS TO STATE A DUE PROCESS CLAIM**
2    **UNDER THE FOURTEENTH AMENDMENT.**

**A.    The Regulations in Title 15 Meet the Minimal Procedural Protections**
3    **Applicable to Administrative Functions Like Gang Validation and Review.**

4    If the Court decides to adjudicate the constitutionality of title 15's regulations to which

5    Plaintiffs were subject in the past, Plaintiffs still fail to state a claim.[7]  Validation as a gang

6    member or associate must be supported by at least three independent "source items of

7    documentation."  Cal. Code Regs., tit. 15, § 3378(c)(4) (2012).  Source items may include

8    statements from another inmate, an inmate's own admission, tattoos, written materials,

9    photographs, observations by staff, and information from other agencies.  *Id*. § 3378(c)(8).

10   Contrary to Plaintiffs' allegations that Defendants "ignor[e] prisoners' actual behavior" (SAC ¶

11   92), at least one of those source items must be a "direct link" to a current or former validated

12   member or associate of the gang.  Cal. Code Regs., tit. 15, § 3378(c)(4).  The inmate is given

13   written notice that he will be interviewed in connection with validation and written notice of all

14   confidential source items.  *Id*. § 3378(c)(6)(B)-(C).  Confidential information is disclosed to the

15   inmate to the extent possible by providing him with a confidential information disclosure form.

16   *Id*.  The interview is documented and submitted with the validation package to the Office of

17   Correctional Safety, which approves or rejects the gang validation.  *Id*. § 3378(c)(6)(E).

18   Validated inmates are "deemed to be a severe threat to the safety of others or the security of

19   the institution" and are placed in the SHU for an indeterminate term.  *Id*. § 3341.5(c)(2)(A)(2).

20   An inmate assigned to the SHU on an indeterminate term is reviewed by a classification

21   committee at the institution at least once every 180 days.  *Id*. § 3341.5(c)(2)(A)(1).  Once an

22   inmate has been validated and placed in the SHU, he will be considered an active member or

23   associate until he has been free of gang activity for six years, measured from the date of the last

24   _____

25   [7] To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain more than
"labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl.*
*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint with "unadorned, the-defendant-
26   unlawfully-harmed-me accusation[s]" does not state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (citing *Twombly*, 550 U.S. at 555).  Instead, a complaint must contain sufficient factual
27   matter to raise a right to relief above the speculative level and state a claim for relief that is
plausible on its face.  *Id*.  While a court "must take all of the factual allegations in the complaint
28   as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id*.

12

Defs.' Not. Mot. & Mot. Dismiss 2nd Am. Compl., Alt. Stay; Memo. Points & Auth. (C 09-05796 CW)

1  piece of evidence against him.  *Id.* §§ 3341.5(c)(5), 3378(e).  If an inmate "debriefs" by admitting

2  his gang affiliation, identifying other gang members, and revealing what he knows about gang

3  structure, he can be released from the SHU before the next active/inactive review.  *Id.*

4  § 3378.1(d).

5       Defendants do not admit or concede here that Plaintiffs have a sufficient due process liberty

6  interest in avoiding indeterminate SHU confinement as validated gang members or associates.  If

7  Plaintiffs do, however, they must show that they were denied adequate procedural protections to

8  state a claim for violation of due process based on gang validation.  *Toussaint v. McCarthy*, 801

9  F.2d 1080, 1098-1101 (9th Cir. 1986).  The amount of procedural protections required in the

10 prison context depends on whether the decision at issue is disciplinary or administrative.

11 California's policy of assigning suspected gang affiliates to the SHU is not a disciplinary

12 measure, but an administrative strategy designed to preserve order in the prison and protect the

13 safety of all inmates.  *Bruce*, 351 F.3d at 1287.  "Although there are *some minimal legal*

14 *limitations*[,] . . . the assignment of inmates within the California prisons is essentially a matter of

15 administrative discretion."  *Id.* (emphasis added and citations omitted).  Accordingly, for

16 administrative functions such as gang validation, due process only requires that prison officials

17 provide the inmate with "some notice of the charges against him and an opportunity to present his

18 views[.]"  *Id.* (citations omitted).  The Constitution does not require that the inmate be allowed to

19 present evidence or witnesses, only that he be allowed to present his views.  *Toussaint*, 801 F.2d

20 at 1100-01.  In reviewing the decision to validate or deny inactive status, the court must only

21 determine if there was "some evidence" to support the decision.  *Bruce*, 351 F.3d at 1287-88.

22      Despite the clear, detailed regulations for validation, Plaintiffs call these procedures a "bait

23 and switch" and allege that decisions regarding Plaintiffs' gang involvement violate due process

24 because they are "made without considering whether plaintiffs . . . have ever undertaken an illegal

25 act on behalf of a gang."  (SAC ¶¶ 1, 6, 120.)  Plaintiffs allege that they lack recent "gang related

26 rules violations" and have not committed any "illegal acts" in furtherance of a gang.  (*Id.* ¶ 93.)

27 But those allegations demonstrate a fundamental misunderstanding of the applicable due process

28 standard.  Gang activity for purposes of validation or re-validation is not measured by whether an

13

1  inmate is disciplined for that conduct. [8]  Nor does it impact the due process analysis.  Because the

2  procedures codified in the regulations for gang validation and active/inactive reviews provide the

3  minimal procedural protections of notice, an opportunity to be heard, and require "some

4  evidence," they do not violate due process.

5          **B.**    **Plaintiffs Were Afforded the Due Process Owed to Them.**

6        Notwithstanding the foregoing tried and proven regulations, Plaintiffs claim that they have

7  been denied "meaningful and timely periodic review of their continued . . . indefinite detention at

8  the Pelican Bay SHU." (SAC ¶ 195.)  Plaintiffs do not specify what kind of review would be

9  sufficiently "meaningful" or how "periodic" the reviews need to be to satisfy their due process

10  concerns.  Nor do they allege that they did not receive notice or were deprived an opportunity to

11  be heard and present their views.  Plaintiffs instead characterize the evidence used to deny them

12  inactive gang status as inadequate or innocuous.  (*See*, *e.g.*, *id*. ¶¶ 103-116.)  However, Plaintiffs'

13  disagreement with the nature or significance of the evidence used to substantiate their status as

14  validated gang members or associates does not mean the review provided as to that evidence was

15  not meaningful or otherwise constitutionally deficient.  *See Swarthout v. Cooke*, ___ U.S. ___,

16  131 S. Ct. 859, 862-63 (2011) (holding that procedural due process concerns "whether the

17  constitutionally requisite procedures [were] provided," not whether they "produced the result that

18  the evidence required").  Because Plaintiffs were not denied the minimal procedural protections

19  guaranteed by the Constitution, they cannot state a claim for violation of due process.

20          **C.**    **Plaintiffs Cannot State a Due Process Claim Based on the Alleged Denial of**
21                  **Parole or Allegations That Violate This Court's Prior Orders.**

22        Plaintiffs' due process claim, to the extent Plaintiffs challenge the duration of their

23  confinement, is barred because "habeas corpus is the exclusive remedy for a state prisoner who

24  challenges the fact or duration of his confinement and seeks immediate or speedier release, even

25  though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S.

26  

---

27       [8] Plaintiff Ashker made this same argument in separate litigation, which the Court
  properly rejected.  *Ashker v. Schwarzenegger*, No. 05-3286 CW, 2009 U.S. Dist. LEXIS 25092, at
28  *49 (N.D. Cal. Mar. 25, 2009).

14

Defs.' Not. Mot. & Mot. Dismiss 2nd Am. Compl., Alt. Stay; Memo. Points & Auth. (C 09-05796 CW)

477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)).  Plaintiffs allege here that "prisoners cannot earn 'good time' or 'conduct' credit while in the SHU for gang affiliation." (SAC ¶¶ 86, 180, 199.)  Plaintiffs contend that they were "told," and that parole boards "indicated" to them, that they "will never get parole as long as [they] are housed in the SHU." (*Id*. ¶¶ 87-90.)  Plaintiffs challenge a purported "de facto policy of denying parole to SHU prisoners."  (*Id.* ¶¶ 171(f), 199.)  These allegations, however, may not be brought in this civil-rights lawsuit.  Instead, Plaintiffs must seek relief based on such allegations via habeas corpus.

This Court has already held that claims regarding parole are barred here.  Two prior complaints were filed in this case, both pro se by Plaintiffs Ashker and Troxell.  The Court screened both complaints and issued an order that Plaintiffs Ashker and Troxell "must delete all claims and defendants associated with claims based upon denial of parole."  (*See* Order Screening Compl. 5, Feb. 16, 2010, ECF No. 7.)  In the second amended complaint, however, Plaintiffs Ashker and Troxell, as well as the other eight plaintiffs, continue to allege a violation of due process based on the alleged denial of parole.  (*See*, *e.g.*, SAC ¶¶ 187, 196.)  As the Court ordered on February 16, 2010, claims based on any alleged denial of parole cannot proceed here.  They must be exhausted in state court and then pursued through habeas corpus relief.

Similarly, the Court's screening order dated February 16, 2010 dismissed Plaintiff Ashker's due process claim to the extent he challenged CDCR's gang validation procedures.  (Order Screening Compl. 5-6.)  The Court explicitly held that Plaintiff Ashker had already litigated such a claim in a prior proceeding (*i.e.*, *Ashker v. Schwarzenegger*, No. 05-3286 CW (N.D. Cal.)) and that he could not raise it in any amended pleading.  (*Id.*)  Plaintiff Ashker is thus prohibited from challenging CDCR's gang validation procedures, and his claim should be dismissed.

### IV.   THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT.

To state an Eighth Amendment claim based on conditions of confinement, a plaintiff must establish that a defendant was deliberately indifferent to an inmate's rights.  The plaintiff must show that:  (1) the deprivation was "sufficiently serious" and (2) the prison official acted with a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991).  The

15

"subjective" state-of-mind requirements presents a high bar.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 840. Plaintiffs' claims fail to meet either prong of this test.

### A.   Plaintiffs' Vague and Conclusory Allegations of Psychological Harm Do Not Give Rise to a Sufficiently Serious Deprivation.

Plaintiffs allege that they are deprived of a host of basic human needs including, but not limited to, "normal human contact, environmental and sensory stimulation, mental and physical health, physical exercise, sleep, nutrition, and meaningful activity."  (SAC ¶ 180.)  Plaintiffs claim that these conditions, taken together, cause all SHU inmates to suffer harms to their mental health in violation the Eighth Amendment.  (*See*, *e.g.*, *id*. ¶ 4 (alleging that "[t]he solitary confinement regime at Pelican Bay . . . violates the United States Constitution's . . . prohibition of cruel and unusual punishment"); *id*. ¶ 143 ("[a]ll prisoners confined in the SHU for prolonged periods have a significant risk of descending into mental illness").)  Although psychological harm may under certain circumstances constitute a sufficiently serious deprivation under the Eighth Amendment, Plaintiffs' allegations here are insufficient to state a claim.

*First*, the court in *Madrid* rejected the very contention that Plaintiffs wish to pursue again here — that the degree of segregation is so extreme and the restrictions so severe, that the conditions in the SHU inflict psychological trauma on inmates and thus constitute a per se violation of the Eighth Amendment.  889 F. Supp. 1146, 1261 (N.D. Cal. 1995).  The court rejected the claim "that the SHU . . . violates Eighth Amendment standards vis-à-vis all inmates." *Id.*  Instead, the court considered the claim that SHU confinement violates the Eighth Amendment and only found a violation for those inmates that:  (i) are already mentally ill; or (ii) possess borderline personality disorders, brain damage or mental retardation, impulse-ridden personalities, or a history of prior psychiatric problems or chronic depression.  *Id.* at 1265-66. Plaintiffs attempt to distinguish *Madrid* on the ground that the court "only considered isolation lasting up to three years" and "could 'not even begin to speculate on the impact on inmates

16

Defs.' Not. Mot. & Mot. Dismiss 2nd Am. Compl., Alt. Stay; Memo. Points & Auth. (C 09-05796 CW)

1  confined in the SHU for periods of 10 to 20 years or more.'"  (SAC ¶ 9.)  Plaintiffs' view that

2  "[t]his case presents the substantial question left unanswered by *Madrid*" (*id.*) ignores the well-

3  settled legal doctrine of res judicata, as discussed further below.

4       *Second*, Plaintiffs' claim of deliberate indifference fails because Plaintiffs do not allege that

5  they fall within the two subclasses of SHU inmates that the *Madrid* court specifically found

6  susceptible to psychological harm from SHU conditions.  Plaintiffs allege that the psychological

7  effects of prolonged "solitary confinement" are "well documented by social scientists:  prolonged

8  solitary confinement causes prisoners significant mental harm and places them at grave risk of

9  even more devastating future psychological harm."  (*Id.* ¶ 124.)  According to Plaintiffs,

10  researchers have demonstrated that prolonged solitary confinement results in a laundry list of

11  possible effects — from headaches and nightmares to hallucinations and suicidal ideation.  (*Id.*

12  ¶ 125.)  This range of potential effects, however, is exactly what the *Madrid* court held "does not

13  significantly exceed the kind of generalized psychological pain found to be compatible with

14  Eighth Amendment standards."  889 F. Supp. at 1265.  The second amended complaint falls far

15  short of alleging that each Plaintiff has a diagnosed mental illness but remains confined in the

16  SHU.  Nor does any Plaintiff allege that he had a pre-existing psychological condition that has

17  been exacerbated by his SHU term but ignored by any Defendant.  Not one Plaintiff alleges that

18  his mental health has deteriorated to such a state to rise to the sufficiently serious level of an

19  Eighth Amendment violation.  Absent such allegations, Plaintiffs cannot show the deprivation of

20  a sufficiently serious need, and their deliberate-indifference claim fails.

21       **B.    The Second Amended Complaint Does Not Allege the Required Culpable
22              State of Mind to Establish Deliberate Indifference.**

23       Even if Plaintiffs' allegations gave rise to a "sufficiently serious" injury, Plaintiffs fail to

24  meet the subjective, state-of-mind component under the Eighth Amendment.  Plaintiffs must

25  allege an injury attributable to a Defendant's "wanton" state of mind, and can therefore be

26  characterized as constituting cruel and unusual punishment.  *Wilson*, 501 U.S. at 301-04.

27  Plaintiffs' second amended complaint fails to show that Defendants acted with a "wanton" state

28  of mind.

1    The mental health services at Pelican Bay are dictated by the Mental Health Services

2    Delivery System (MHSDS) Program Guide, ordered by the court in *Coleman*.  As discussed

3    below, certain inmates are specifically excluded from confinement in the SHU.  (Defs.' Request

4    Judicial Not. Ex. B (MHSDS Program Guide 12-8-1).)  An inmate with a documented diagnosis

5    or evidence of certain mental health conditions or a prior history that suggests that the inmate will

6    program poorly in the SHU is excluded.  (*Id.* 12-8-2.)  Inmates may be referred to the MHSDS

7    program by staff or by themselves at any time.  (*Id.* 12-8-5, 12-8-6.)  That Defendants have

8    implemented and comply with the court-approved guidelines for mental health care refutes any

9    contention that Defendants acted toward Plaintiffs with the required culpable state of mind.

10   Defendants have not acted "wantonly" but instead have made reasoned choices consistent

11   with the *Coleman* court-ordered MHSDS Program Guide provisions on SHU placement that

12   strike a balance between the mental health needs of SHU inmates and the challenges inherent in

13   managing a segment of the prison population that presents significant security and safety

14   concerns.  Those decisions are entitled to substantial deference.  Prison officials "should be

15   accorded wide-ranging deference in the adoption and execution of policies and practices that in

16   their judgment are needed to preserve internal order and discipline to maintain institutional

17   security." *Whitley v. Albers*, 475 U.S. 312, 322 (1986) (quoting *Bell v. Wolfish*, 441 U.S. 520,

18   547 (1979)).  The deference accorded to prison officials "extends to a prison security measure

19   taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or

20   preventive measures intended to reduce the incidence of these or any other breaches of prison

21   discipline." *Id*.  The deference "does not insulate from review actions taken in bad faith and for

22   no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment

23   for that of officials who have made a considered choice." *Id*.  Where Defendants have acted in

24   compliance with court-ordered relief and court-approved guidelines that address the mental health

25   concerns raised by Plaintiffs here, they cannot be found to have acted with the requisite "wanton"

26   state of mind.  Plaintiffs' claim for deliberate indifference should be dismissed.

27

28

1

2

      **C.**    **Plaintiffs' Eighth Amendment Claim Alleging Cruel and Unusual Punishment Is Precluded By *Madrid*, *Coleman*, and *Plata*.**

3

      Plaintiffs in this case seek only injunctive and declaratory relief, alleging in part that the

4

conditions of the SHU and alleged related effects on mental and physical health constitute cruel

5

and unusual punishment.  (*See, e.g.*, SAC ¶¶ 74-77, 79-84, 123, 126-39, 143, 145, 169-70, 181-

6

82.)  Plaintiffs' claim for injunctive and declaratory relief, however, is barred because the claim

7

has been litigated previously and is the subject of decades of court-ordered and court-monitored

8

relief in *Madrid v. Gomez*, No. 90-3094 TEH (N.D. Cal.), *Coleman v. Brown*, No. 90-0520 LKK

9

(E.D. Cal.), and *Plata v. Brown*, No. 01-1351 TEH (N.D. Cal.).

10

      It is well established that the doctrine of claim preclusion, or res judicata, prevents the

11

relitigation of claims that were conclusively determined in prior litigation.  This doctrine applies

12

in both individual and class cases.  "It is familiar doctrine of the federal courts that members of a

13

class not present as parties to the litigation may be bound by the judgment where they are in fact

14

adequately represented by parties who are present, or where they actually participate in the

15

conduct of the litigation in which members of the class are present as parties[.]"  *Hansberry v.

16

Lee*, 311 U.S. 32, 42-43 (1940).  In the Ninth Circuit, claim preclusion requires:  (1) an identity of

17

claims; (2) a final judgment on the merits; and (3) the same parties, or privity between the parties.

18

*Cell Therapeutics*, *Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2010).  Plaintiffs are

19

precluded from relitigating their Eighth Amendment claim here because the claims and parties are

20

the same and final judgments on the merits were reached in *Madrid*, *Coleman*, and *Plata*.[9]

21

      **1.**    **Preclusion applies because Plaintiffs here are the same as the plaintiffs in *Madrid*, *Coleman*, and *Plata*.**

22

23

      That Plaintiffs here were class members in *Madrid*, *Coleman*, and *Plata* is evidenced by the

24

prior cases' class definitions.  For example, the class in *Madrid* included "all prisoners who

25

_____

26

      [9] Although Plaintiffs allege class claims in this case, Plaintiffs' individual claims also would be barred, because where allegations seeking injunctive relief involve the very same claims being litigated in class actions, the individual claims must be brought by urging further actions

27

through the class representative and counsel, or by intervening.  *Webb v. Schwarzenegger*, No. 07-2294 PJH, 2012 U.S. Dist. LEXIS 5944, at *7-8 (N.D. Cal. Jan. 19, 2012).

28

1   [we]re or will be, incarcerated by the State of California Department of Corrections at Pelican

2   Bay State Prison." 889 F. Supp. at 1155.  Plaintiffs in this case undoubtedly fall within this class

3   definition.  Plaintiff Dewberry was actually a named plaintiff in *Madrid*.  In *Coleman*, the class

4   was defined to consist of "all inmates with serious mental disorders who are now or who will in

5   the future be confined within the California Department of Corrections." *Coleman v. Wilson*, 912

6   F. Supp. 1282, 1293 (E.D. Cal. 1995).  Plaintiffs fall within the *Coleman* class to the extent any

7   of them has or develops a serious mental disorder.  *Id.*  Finally, the *Plata* class includes all

8   prisoners in the present or future custody of CDCR with serious medical needs, including inmates

9   at Pelican Bay.  (*Plata* ECF Nos. 20, 1237.[10])  As Plaintiffs allege in this case that they "have

10  received inadequate mental health care or none at all" (SAC ¶ 84), Plaintiffs also fall within the

11  *Plata* class.

12          **2.     Preclusion applies because Defendants here are in privity with the
                    defendants in *Madrid*, *Coleman*, and *Plata*.**
13

14          The Eleventh Amendment bars suit against CDCR.  *Ex Parte Young*, 209 U.S. 123, 155-56

15  (1944).  As such, Plaintiffs here, as in *Madrid*, *Coleman*, and *Plata*, seek relief from individuals

16  in the State's executive branch and employees of CDCR.  The Governor and CDCR's Secretary,

17  for example, were defendants in *Madrid*, *Coleman*, and *Plata*.  The Warden at Pelican Bay,

18  currently Defendant Lewis, was a defendant in *Madrid* and *Coleman*.  Even though the number

19  and identity of the defendants across the current and prior actions are not identical, privity still

20  exists because Defendants in the present action are "so identified in interest with [the defendants]

21  in the former action that [they] represent[ ] precisely the same right in respect to the subject

22  matter involved." *Stratosphere Litig. L.L.C. v. Grand Casinos*, *Inc.*, 298 F.3d 1137, 1142 n.3 (9th

23  Cir. 2002); *see also Tahoe-Sierra Pres. Council*, *Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d

24  1064, 1081-83 (9th Cir. 2003).  The privity requirement is met on this record.

25

26          _____
            [10] Where relevant filings in *Madrid*, *Coleman*, and *Plata* are available electronically,
27  Defendants will refer to the filing's electronic case filing number.  For such documents that are
    not electronically available, Defendants have attached copies of the filings to Defendants' request
28  for judicial notice accompanying their motion.

3. **The Eighth Amendment claim here is the same as the Eighth Amendment claims resolved in *Madrid*, *Coleman*, and *Plata*.**

To determine whether there is an identity of claims to warrant claim preclusion, the Ninth Circuit considers whether:  (1) rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) substantially the same evidence is presented in the two actions; (3) the two suits involve infringement of the same right; and (4) the two suits arise out of the same transactional nucleus of facts.  *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011).

Plaintiffs' complaint explicitly alleges a violation of the Eighth Amendment on the basis that "plaintiffs and class members have received inadequate mental health care or none at all" (SAC ¶ 84), and that "Plaintiffs have serious medical conditions . . . caused or exacerbated by their confinement" (*id.* ¶ 74).  This exact claim was thoroughly litigated and conclusively adjudicated in *Madrid*, *Coleman*, and *Plata*.  The claims affect the same rights and interests as these prior class actions, involve the same evidence, and arise out of the same nucleus of facts.

a. ***Madrid* precludes Plaintiffs' Eighth Amendment challenge to the conditions of the SHU.**

As in this case, one of the threshold contentions in *Madrid* was that "the conditions in the SHU . . . pose a grave threat to the mental health of inmates" and that "the extreme social isolation and reduced environmental stimulation in the SHU inflict psychological trauma, and in some cases deprive inmates of sanity itself."  889 F. Supp. at 1261.  The *Madrid* court explicitly held that the SHU does not violate Eight Amendment standards "vis-à-vis all inmates."  *Id.*  The court instead issued a limited holding that "conditions in the SHU violate such [Eighth Amendment] standards when imposed on certain subgroups of the inmate population[,]" those with or at risk of serious mental illness.  *Id.*  It was not enough for the plaintiffs to point to a generalized "'psychological pain'— *i.e.*, the loneliness, frustration, depression or extreme boredom — that inmates may experience by virtue of their confinement in the SHU."  *Id.* at 1263.  An Eighth Amendment violation exists only "if the particular conditions of segregation being challenged are such that they inflict a serious mental illness, greatly exacerbate mental illness, or

21

1   deprive inmates of their sanity." *Id*. at 1264.  Not one Plaintiff here alleges sufficient facts as to

2   mental illness to come within the narrow holding of *Madrid*.  If they did, however, they would

3   not be in the SHU.[11]

4       Plaintiffs seek to distinguish the otherwise clear bar provided by *Madrid*.  This case,

5   according to Plaintiffs, "presents the substantial question left unanswered by *Madrid*."  (SAC ¶

6   9.)  Plaintiffs rely on the court's statement in dicta that it could not "begin to speculate on the

7   impact that Pelican Bay SHU conditions may have on inmates confined in the SHU for periods of

8   10 to 20 years or more."  889 F. Supp. at 1267.  But the court *did* acknowledge the psychological

9   impact of lengthy SHU terms, specifically noting that it "must also consider that many in the

10  SHU face indefinite and potentially lengthy terms."  *Id.* at 1264-65.  To be sure, the court had

11  before it a substantial record regarding the alleged psychological impact of long-term

12  confinement in the SHU.[12]  And, as a result of *Madrid*, all SHU inmates were provided ongoing

13  medical screening to detect and prevent the very harm Plaintiffs allege here — namely, should an

14  inmate's mental or physical health reach a constitutional degree sufficient to warrant removal

15  from the SHU.  (*See*, *e.g.*, Defs.' Request Judicial Not. Ex. C (*Madrid* ECF No. 593); Ex. D

16  (*Madrid* ECF No. 618); Ex. F (*Madrid* ECF No. 1100).)  *Madrid* precludes the relitigation of

17  Plaintiffs' Eighth Amendment claim in this case.

18

19

20

21

22   [11] On March 4, 1996, the *Madrid* special master reviewed the mental health files of all
SHU inmates and ordered complete evaluations of eight inmates he determined to be "at risk" of
a serious mental illness.  (*See* Defs.' Request Judicial Not. Ex. E (*Madrid* ECF No. 688).)  By that

23   date, at least five Plaintiffs in this case were housed in the SHU.  (SAC ¶¶ 14-23.)  The special
master thus reviewed those Plaintiffs' mental health records and necessarily concluded that each

24   could be housed in the SHU.

25   [12] Dr. Stuart Grassian and Dr. Craig Haney provided extensive testimony at the bench
trial, and the court considered the "ample and growing body of evidence" regarding "persons who

26   are, by definition, subject to a significant degree of isolation and reduced environmental
stimulation," as well as studies documenting "the potential adverse mental health effects of

27   solitary or segregated confinement." *See*, *e.g.*, 889 F. Supp. at 1230-36.  These are the effects
Plaintiffs take issue with here.

28

22

Defs.' Not. Mot. & Mot. Dismiss 2nd Am. Compl., Alt. Stay; Memo. Points & Auth. (C 09-05796 CW)

1

### b. *Coleman* precludes Plaintiffs' Eighth Amendment challenge regarding mental health.

2

3      The issue in *Coleman* was whether the level of mental health care provided by CDCR to

4   inmates was sufficient under the Eighth Amendment.  The matter was fully litigated, and the

5   court issued extensive findings against the defendants.  *See*, *e.g.*, 912 F. Supp. at 1296-97.  The

6   court appointed a special master and ordered that CDCR develop a series of forms, protocols, and

7   plans in consultation with court-appointed experts.  The court further ordered that the special

8   master consult with the court regarding the retention of experts, monitor the defendants'

9   compliance with court-ordered injunctive relief, and issue periodic reports.  *Id*. at 1297, 1324.

10     In 2006, the *Coleman* court approved the MHSDS Program Guide, which governs the

11   delivery of mental health services in state prisons, including at Pelican Bay and specifically

12   within the SHU.  Mental health services "within the SHU are provided to all SHU-inmate patients

13   in accordance with the inmate-patient's treatment needs and level of care."  (MHSDS Program

14   Guide 12-8-1.)  Inmates with specific conditions "shall not be admitted" to the SHU.  (*Id*.)  These

15   conditions include, among others, documented diagnosis or evidence of certain "Axis I"

16   conditions currently or in the past three months, a diagnosed mental disorder, including being

17   actively suicidal or a prior history that suggest that the inmate will do poorly in the SHU.  (*Id*.

18   12-8-2.)  An inmate whose history suggests that he will do poorly in the SHU includes an inmate

19   who has experienced psychotic symptoms that "appear to be attributable to incarceration in a

20   SHU environment" or where there is evidence of mental deterioration that correlates with

21   placement in the SHU or SHU-like environments.  (*Id*.)  There are thus clear procedures in place

22   to ensure that the only inmates housed in the SHU are those that do not exhibit the type of mental

23   health concerns identified and addressed in *Madrid* and *Coleman*.  (*Id*. 12-8-3.)

24     The provision of mental health treatment at Pelican Bay is closely monitored in *Coleman*.

25   Since 1998, the special master has completed twenty-four monitoring reports, the majority of

26   which detail the delivery of mental health services to Pelican Bay inmates, including SHU

27   inmates.  (*Coleman* ECF No. 3638-1 at 1-16.)  For example, the special master's twenty-first

28   monitoring report discusses mental health treatment at Pelican Bay, including issues of staffing,

23

1  quality management, suicide prevention, medication, exhibitionism treatment, transfer

2  procedures, the psychiatric services unit, administrative segregation, referrals, records, and pre-

3  release planning.  (*Id.*)  The policies, procedures, and systems established as a consequence of

4  *Coleman* provide an appropriate structure to assure this Court that SHU inmates with existing and

5  future mental health needs have access to treatment.  As a result, Plaintiffs' mental health claims

6  here, including any claims regarding their future mental health, are precluded by *Coleman*.

**c.**     ***Plata* precludes Plaintiffs' Eighth Amendment challenge regarding medical care.**

9       The *Plata* class action challenged CDCR's medical care system under the Eighth

10  Amendment.  The parties in *Plata* stipulated to an injunction regarding CDCR's medical care

11  system, which expressly stated:

> Neither the fact of this stipulation nor any statements contained herein may be
> used in any other case or administrative proceeding, except defendants, CDC[R],
> or employees thereof reserve the right to use this Stipulation and the language
> herein to assert issue preclusion and res judicata in other litigation seeking class or
> systemic relief.

15  (*Plata* ECF No. 68 ¶ 29.)  The stipulation, with the doctrine of claim preclusion, together bar

16  Plaintiffs' claims in this case regarding medical care.

17       After the stipulation was entered in *Plata*, the court appointed a receiver to oversee

18  CDCR's medical care system, including medical care at Pelican Bay.  (*Plata* ECF No. 371.)  The

19  receiver's office controls every aspect of the CDCR medical delivery system, including all

20  staffing, training, policies, and procedures.  Since appointing the receiver, the court approved the

21  receiver's "Turnaround Plan of Action (June 2008)," which required monthly and tri-annual

22  reports on the status of health care delivery by CDCR.  (*Plata* ECF Nos. 1229, 1245.)  The Office

23  of the Inspector General has completed two medical program inspections of Pelican Bay.  The

24  receiver also produces monthly public scorecards of all institutions, including Pelican Bay,

25  available to the public on the Internet.  Recently, and in connection with the significant reduction

26  of the inmate population in California prison institutions, the receiver proposed a transition plan

27  to end the receivership.  (*Plata* ECF No. 2443.)  Any claim of inadequate medical care was fully

28  litigated and resolved in *Plata*, even up to the United States Supreme Court.  *See Brown v. Plata*,

24

1   ___ U.S. ___, 131 S. Ct. 1910 (2011).  Just like *Madrid* and *Coleman* preclude Plaintiffs, *Plata*

2   precludes Plaintiffs from relitigating the adequacy of medical care provided to SHU inmates.

3   ### CONCLUSION

4        Plaintiffs' second amended complaint should be dismissed.  CDCR has implemented new

5   gang management policies applicable to all SHU inmates, which renders moot Plaintiffs' due

6   process challenge to gang validation and review regulations no longer in use.  Alternatively, the

7   Court should stay litigation of Plaintiffs' due process claim to give CDCR the opportunity to

8   complete implementation of the STG pilot program.  The complaint further fails to state a claim.

9   Plaintiffs' due process claim fails because Plaintiffs received the minimal due process protections

10  applicable to administrative prison functions like gang validation and review.  Plaintiffs

11  separately are not entitled to due process relief based on the duration of their confinement.  And

12  Plaintiff Ashker is specifically barred from relitigating any due process challenge to CDCR's

13  validation guidelines.  Plaintiffs' claim of cruel and unusual punishment also fails.  Plaintiffs do

14  not allege sufficient facts to establish a sufficiently serious injury or that Defendants have acted

15  with a sufficiently culpable state of mind.  Moreover, Plaintiffs are precluded from relitigating

16  claims regarding SHU conditions and mental and physical health and treatment, given the

17  conclusive resolution of those same claims in *Madrid*, *Coleman*, and *Plata*.

18  Dated:  December 17, 2012                    Respectfully Submitted,

19                                              KAMALA D. HARRIS
                                                Attorney General of California
20                                              WILLIAM C. KWONG
                                                Supervising Deputy Attorney General
21                                              JILLIAN R. WEADER
                                                Deputy Attorney General
22
                                                /s/ Adriano Hrvatin
23
                                                ADRIANO HRVATIN
24                                              Deputy Attorney General
                                                *Attorneys for Defendants*
25                                              *Brown, Cate, Lewis, and Chaus*

    SF2012204868
26  40626924.doc

27

28