JULES LOBEL (*pro hac vice*)
Email: jll3@pitt.edu
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email: aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email: rachelm@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6478
Fax: (212) 614- 6499

GREGORY D. HULL (Bar No. 57367)
Email: greg.hull@weil.com
BAMBO OBARO (Bar No. 267683)
Email: bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Tel: (650) 802-3000
Fax: (650) 802-3100

Attorneys for Plaintiffs
(Additional counsel listed on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GEORGE RUIZ, JEFFREY FRANKLIN, TODD ASHKER, GEORGE FRANCO, GABRIEL REYES, RICHARD JOHNSON, DANNY TROXELL, PAUL REED, LUIS ESQUIVEL, and RONNIE DEWBERRY, on their own behalf, and on behalf of a class of similarly situated prisoners,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., Governor of the State of California, MATTHEW CATE, Secretary, California Department of Corrections and Rehabilitation (CDCR); ANTHONY CHAUS, Chief, Office of Correctional Safety, CDCR; and G.D. LEWIS, Warden, Pelican Bay State Prison,<br><br>Defendants. | Case No. 4:09 CV 05796 CW<br><br>**DECLARATION OF TODD ASHKER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: January 10, 2013<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 4th Floor<br><br>Honorable Claudia Wilkin |

DECLARATION OF TODD ASHKER    Case No. 4:09 CV 05796 CW

I, Todd Ashker, declare,

1. I am currently living in the Security Housing Unit (SHU) at Pelican Bay State Prison (PBSP). My registration number is C-58191.

2. I have been held in solitary confinement for 26 years [TA 12/18/12]. I have lived in the PBSP SHU for 22 years. Up until recently, I was living in a cell, D1-119, which is in E Pod in an area of the PBSP known as the "short corridor."

3. In E pod, I was housed next to my co-plaintiff and CDCR designated writing assistant Danny Troxell, who aided me in writing and transcribing legal papers and other documents. Also in E Pod area were four other named co-plaintiffs in the current litigation, Ronald Dewberry, Gabriel Reyes, Jeffrey Franklin and lead plaintiff, George Ruiz. To my knowledge, they are all still housed in E Pod. AREA [TA] [D1 and D2, enabling some verbal communication] 12/18/12 [TA]

4. On September 6, 2012, CDCR officials transferred me to a new cell which is D4-121 and in F Pod. I believe the reasons given me as to why I was moved are a pretext and that my removal from my co-plaintiffs was in retaliation for my involvement in the present litigation (Case No. 4:09-CV-05796-CW), particularly after it was converted into a class action lawsuit. By this transfer, CDCR officials intended and have in fact succeeded in harming my ability to participate in this lawsuit and my lawyers' ability to effectively represent me and the other plaintiffs.

5. I was permanently disabled as a result of being wrongfully shot by a PBSP guard on October 24, 1990. I still suffer serious pain and discomfort in my arm, shoulder and hands from the shooting.

6. Because this disability has affected my ability to write, particularly with respect to lengthy legal documents, on numerous occasions I requested a reasonable accommodation that I either be given a cellmate to assist me with writing, or at least provided with a writing assistant who would be celled next to me who could assist me with writing. *See* Documents relating to CDC-1824, Reasonable Modification or Accommodation Request, a true and correct copy of which is attached to this Declaration as Exhibit A; 12/10/2004 General Chrono signed by D. Skerik, Correctional Sergeant/SHU Law Library, a true and correct copy of which is attached to this Declaration as

Exhibit B; *see also* 1/25/2006 Ashker letter to PBSP Administrative Staff, copying Jorgensen, a true and correct copy of which is attached to this Declaration as Exhibit C.

7. My grievances resulted in the recognition by CDCR that I did indeed need writing assistance, and that a writing assistant should be appointed. *See* Ex. A, Documents relating to CDC-1824, Reasonable Modification or Accommodation Request; *see also* Ex. B, 12/10/2004 General Chrono signed by D. Skerik, Correctional Sergeant/SHU Law Library (stating that pursuant to the Second Level Review of November 23, 2004, Ashker had been "granted the use of a 'writing assistant' to help him with his legal and other paperwork.")

8. By December 10, 2004, the law library had not found anyone to assist me, so Danny Troxell volunteered and was approved to be my designated writing assistant. *See* Ex. B, 12/10/2004 General Chrono signed by D. Skerik, Correctional Sergeant/SHU Law Library ("Inmate's ASHKER and TROXELL will be allowed to exchange 'paper' materials only between their respective cells"). We were allowed to exchange legal and other papers between our adjoining cells during regular periods when our cells were unlocked and we were allowed out. While the memo stated that the arrangement would be void if either of us were moved, in fact the arrangement proved very stable and satisfactory for the next eight years until September 6, 2012.

9. For example, when Troxell and I were moved to the Short Corridor in February 6, 2006, we were given cells side by side. Although Danny and I were moved to the Administrative Segregation Unit (Ad-Seg) during the second hunger strike of 2011, we were eventually returned to our same cells, side by side.

10. My move to adjoining cells with Troxell in the short corridor on February 6, 2006, and our continued housing together was based on CDCR's recognition of my need for an accommodation to help me with legal writing, and was consistent with a January 31, 2006, informal understanding I reached with Deputy Attorney General Jorgenson in the last stage of settling my case under the Americans with Disabilities Act against CDCR. *See* Ex. C, 1/25/2006 Ashker letter to PBSP Administrative Staff, copying Jorgensen (expressing concern that he would be separated from Troxell when moved to the Short Corridor.)

11. At the January 31, 2006, settlement conference that resolved two federal ADA lawsuits, Jorgenson informally agreed to ensure that when I was moved to the short corridor that my writing assistant, Danny Troxell, would be moved to the cell next to me, which did in fact occur. While this understanding was not incorporated into the final settlement, it is reflected in my handwritten note on that settlement. *See* 1/31/06 Settlement Agreement and Release re: ADA accommodation lawsuit, a true and correct copy of which is attached to this Declaration as Exhibit D, 3 (handwritten note to paragraph 1.4 noting that agreement only relates to claims arising prior to 1/31/06 and stating that there were "terms discussed and agreed to" at that settlement conference).

12. Due to the denial of my reasonable accommodation of a writing assistant, it is now much more painful for me to write to my attorneys as well as others with whom I have corresponded for many years.

13. It is my belief that when Institutional Gang Investigations (IGI) staff at PBSP and Warden Greg Lewis intentionally moved me away from Troxell without providing me alternative accommodation, CDCR officials did this for retaliatory purposes, and with the intent to harm my ability to assist in our class action lawsuit challenging CDCR's policies.

14. Communication is quite limited in the SHU, and normal face-to-face conversation is virtually barred by the physical conditions at the SHU. One has to speak loudly enough to be heard between cells or through cracks and drains which is clearly not normal human contact, and guards have discretion to punish loud communication as a rule violation. Nonetheless, over a period of time, George Ruiz, Ronnie Dewberry, Gabriel Reyes, Jeffrey Franklin, Danny Troxell and I have been able, because our cells are close to each other, to discuss strategy and tactics in our case and come to a consensus about our ideas about the case so we can give feedback to our lawyers.

15. I have been engaged in prisoner litigation for a long time, approximately 25 years. I have also been involved with other protected speech activities while in the SHU. I believe that both my leadership in this litigation, in prior litigation and other protected activities are well known to the defendants and to the staff at Pelican Bay SHU.

16. I was a leader in recent non-violent peaceful protests and extensive letter writing campaigns protesting conditions at the SHU. More specifically, and particularly relevant to this

motion, I initiated the pro se lawsuit that resulted in the amended class action complaint filed in this Court this year.

17. I personally contacted Center for Constitutional Rights (CCR) lawyers and requested that they intervene in this case and convert it into a class action. I have also advised other prisoners, particularly Danny Troxell, in filing legal claims against CDCR.

18. Since being transferred, I am totally isolated and nowhere near any of my co-plaintiffs in this lawsuit. My new cell is one of four cells in the F pod that are covered with sheets of unbreakable transparent plastic (Lexan). Lexan sheets make communication even more difficult than in the typical SHU cell, since they block out and muffle most sound. They are usually used to punish prisoners who throw materials at guards through the holes in the typical SHU cells. *See* 6/11/96 CDCR Memorandum re: Inmate Placement in Lexan Covered Cells, a true and correct copy of which is attached to this Declaration as Exhibit E.

19. I have never thrown any materials at officers that would warrant my transfer to a LEXAN covered cell. Nor have I assaulted or attempted or threatened to assault any staff member or inmate that would warrant my recent transfer to a Lexan covered cell.

20. Being in this cell makes it even harder for me to sleep and seriously harms my ability to concentrate. There is no circulation of the air in the cell and it becomes very hot and muggy. The sound is muffled and I am more isolated than I have ever been at the SHU many years. I have had my voice taken away as it is very difficult to communicate with someone behind Lexan doors.

21. As mentioned above, on September 6, 2012, I was abruptly and without any warning, transferred from my old cell in D1's E pod to a cell in the F pod of block D4. Initially, I was not informed specifically of the reasons for my transfer, except that a CDCR official, Sgt. Frisk, told me that I was being moved for "safety and security" reasons.

22. After I complained and asked to know the reasons for my transfer, I was issued a Confidential Disclosure Form 1030 on September 10, 2012, four days after my transfer. *See* Confidential Information Disclosure Forms ("CDC 1030") Relating to Ashker's Transfer, a true and correct copy of which is attached to this Declaration as Exhibit F.

DECLARATION OF TODD ASHKER  4  Case No. 4:09 CV 05796 CW

23. The document states that "You were issued a CDCR 1030 informing you of the reason you were re-housed." *See id.* The CDCR 1030 discloses that there was purportedly a confiscation of several letters that a non-prisoner wrote to me on July 16, 2012 and the same person wrote to another inmate, Raymond Perez, on July 24, 2012. *Id.* Perez was housed near my former cell in the D1 pod. *See* 9/30/2012 Declaration of Raymond Perez with attachments, a true and correct of which is attached to this Declaration as Exhibit G.

24. The two 1030 Confidential Information Disclosure Forms, dated September 10, 2012, state that: (1) CDCR intercepted an incoming letter for me in which "the author appears to be angry with Ashker and makes statements which appeared to be implied threats," and (2) that CDCR intercepted another letter to another inmate in my former pod from the same author which "appears to be soliciting help from this inmate to support her with the veiled threats [against Ashker]." *See* Ex. F, Confidential Information Disclosure Forms ("CDC 1030") Relating to Ashker's Transfer.

25. These letters were confiscated by CDCR officials and were never delivered to me or the other intended recipient. I have made written requests to see the letter referred to in these 1030s, and these have been denied. As a result, I do not know the contents of the letters. *See id.*

26. To my knowledge, no prisoner in D1–E pod has written any letter or uttered any statement that contains any implicit or explicit threat against me, nor has any prisoner informed CDCR of any threat emanating from my former pod against me that would cause any danger to my security.

27. To my knowledge, CDCR has not issued any disciplinary reports or warning against any D1–E pod prisoner with respect to any threats involving me. Indeed, there is no history of any misconduct, violence or threatened violence involving any prisoners in D1–E pod in the past several years. Nor do I know of any significant disciplinary issues involving anyone in my former pod in any recent period of time.

28. A very recent and serious retaliatory move against me was taken by Pelican Bay State Prison Doctor, Michael C. Sayre, M.D. On October 26, 2012, Dr. Sayre cut my Tylenol dosage from three 650 mg per day to one per day, causing me severe and increasing pain in my writing hand and arm, making it hard for me to sleep and to write. This cut in medication was ordered by Dr.

Sayre without any explanation, and despite the fact that pursuant to a Court order, the UCSF pain management experts recommended that I be prescribed Tylenol 650 mg three times per day in 2010. *See* 6/18/10 Initial Evaluation of Ashker by UCSF Medical Center Pain Management Center, a true and correct copy of which is attached to this Declaration as Exhibit H.

29. On November 15, 2012, I was notified that my Tylenol prescription has been completely discontinued by Dr. Sayre. I am *appealing that decision. *See* 11/26/2012 Health Care Services Request Form (PBSP 7362), a true and correct copy of which is attached to this declaration as Exhibit I. [I've filed a Notice of Violation of 2/4/10 Order for Specific Performance in USDC-ND CAL # C05-03759CW - via mail on 12/3/12] 12/18/12 (TA)

30. Because I have been moved and isolated from my co-plaintiffs, my ability to communicate has had an impact on my attorneys and their ability to litigate this case. I, along with Danny Troxell, are the original two plaintiffs who originally brought this action. My legal expertise and experience, as well as my deep legal knowledge and familiarity with the facts of this case, is valued and trusted by the other plaintiffs. Now that my ability to communicate with the other plaintiffs has been taken away because of the removal from my old cell, it has become much more difficult, if not impossible to reach a consensus as to our joint strategy and tactics in the litigation.

31. A recent example is when plaintiffs' counsel, Jules Lobel, raised the possibility of making a particular motion to the court with me. I wanted to discuss the question with the other plaintiffs. My inability to communicate with the other plaintiffs at all made it impossible to reach any timely consensus on the issue. This not only denies me the right to discuss the litigation and slows it down or leads to confusion, it also makes it more difficult for the plaintiffs to actively participate in our case and make wise legal decisions. Although I am no longer counsel of record, it has been assumed and accepted by my legal counsel that I will play a strong legal role regarding all aspects of the litigation.

32. In addition, every day I have more and more pain and difficulty in writing legal documents and letters since I have been removed from my CDCR designated writing assistant Danny Troxell. This pain is also increasing because of the now complete removal of my Tylenol medication by Dr. Sayre.

DECLARATION OF TODD ASHKER     6     Case No. 4:09 CV 05796 CW

1   I declare under penalty of perjury that the foregoing is true and correct based on my
2   knowledge and belief and that this declaration was executed on ~~November 28, 2012~~ DECEMBER 18, 2012 (TH), at Pelican Bay
3   State Prison, in Crescent City, California.

*Todd Ashker*
Todd Ashker, C-58191 – D4-121

DECLARATION OF TODD ASHKER      7                  Case No. 4:09 CV 05796 CW