JULES LOBEL (*pro hac vice*)
Email: jll3@pitt.edu
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email: aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email: rachelm@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6478
Fax: (212) 614- 6499

GREGORY D. HULL (Bar No. 57367)
Email: greg.hull@weil.com
BAMBO OBARO (Bar No. 267683)
Email: bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Tel: (650) 802-3000
Fax: (650) 802-3100

Attorneys for Plaintiffs
(Additional counsel listed on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

GEORGE RUIZ, JEFFREY FRANKLIN, TODD ASHKER, GEORGE FRANCO, GABRIEL REYES, RICHARD JOHNSON, DANNY TROXELL, PAUL REED, LUIS ESQUIVEL, and RONNIE DEWBERRY, on their own behalf, and on behalf of a class of similarly situated prisoners,

Plaintiffs,

v.

EDMUND G. BROWN, JR., Governor of the State of California, MATTHEW CATE, Secretary, California Department of Corrections and Rehabilitation (CDCR); ANTHONY CHAUS, Chief, Office of Correctional Safety, CDCR; and G.D. LEWIS, Warden, Pelican Bay State Prison,

Defendants.

Case No. 4:09 CV 05796 CW

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**CLASS ACTION**

Date: January 10, 2013
Time: 2:00 p.m.
Place: Courtroom 2, 4th Floor

Honorable Claudia Wilkin

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................1

A. The All Writs Act and Inherent Court Injunctions Are Not Predicated on the Claims at Issue in the Case ....................2

II. EXHAUSTION IS NOT REQUIRED WHERE THE COURT'S INHERENT POWERS UNDER THE ALL WRITS ACT ARE PROPERLY INVOKED ....................4

III. PLAINTIFFS HAVE DEMONSTRATED THAT INJUNCTIVE RELIEF IS WARRANTED ....................6

IV. DEFENDANTS HAVE NOT REBUTTED PLAINTIFFS' PRIMA FACIE CASE OF RETALIATION ....................8

V. THIS COURT SHOULD NOT STRIKE THE DECLARATIONS OF ASHKER AND TROXELL ....................10

VI. CONCLUSION ....................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ben David v. Travisono*,
495 F.2d 562 (1st Cir. 1974) ........................................3, 4, 6

*Bryant v. Gallagher*,
No. 11cv446BAM, 2012 WL 371895 (E.D. Cal. Feb. 3, 2012) ........................................3

*Frazier v. Redding Police Dept.*,
No. Civ S-11-1351, 2012 U.S. Dist LEXIS 18956 ( Feb. 15, 2012) ........................................3, 5

*Gomez v. Vernon*,
255 F.3d 1118 (9th Cir. 2001) ........................................2, 6

*Harris v. Nelson*,
394 U.S. 286 (1969) ........................................4

*Horacek v. Caruso*,
No. 1:08-cv-262, 2008 WL 4820483 (W.D. Mich. Oct. 30, 2008) ........................................5

*In re Daw*,
2011 Bankr. No. 09-00690-TLM ........................................11

*Jones v. Bock*,
549 U.S. 199 (2007) ........................................5

*Klay v. United Healthgroup, Inc.*,
376 F.3d 1092 (11th Cir. 2004) ........................................2

*Lemas v. Cecil*,
No. C 07-00958 SI, 2008 WL 4665345 (N.D. Cal. Oct. 20, 2008) ........................................10, 11

*Oliverio v. MIV Therapeutics*,
No. 11-10791-MLW, 2011 U.S. Dist LEXIS 121426 (D. Mass Oct. 20, 2011) ........................................3, 6

*Plata v. Schwarzenegger*,
603 F.3d. 1088 (9th Cir. 2010) ........................................4

*Price v. Johnson*,
334 U.S. 266 (1948) ........................................2, 4

*Tatum v. Puget*,
No. 10cv418 LHK, 2011 U.S. Dist. LEXIS 71576 (N.D. Cal. July 1, 2011) ........................................3

*Turner v. Colon*,
No. 2:11-cv 2343, 2012 U.S. Dist. LEXIS 131636 (E.D. Cal. Sept. 13, 2012) ........................................3, 5

Case4:09-cv-05796-CW Document176 Filed12/27/12 Page4 of 16

*U.S. v. N.Y. Tel. Co*,
434 U.S. 159 (1977) ..... 7

**STATUTES**

42 U.S.C. § 1997(e) (a) (2012) ..... 5

PLAINTIFFS' REPLY ISO MOTION FOR PRELIMINARY INJUNCTION – CLASS ACTION iii CASE NO. 4:09-CV-05796-CW

# PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

Defendants' opposition to Plaintiffs' motion for a preliminary injunction misunderstands the factual and legal basis of Plaintiffs' motion. Plaintiffs' position is simple: Defendants cannot retaliate against Plaintiffs with the intent and effect of hindering their prosecution of this lawsuit. The injunction Plaintiffs seek is thus not tethered to any particular claim(s) asserted in Plaintiffs' underlying lawsuit, but rather is needed to allow Plaintiffs to litigate all those claims effectively without hindrance and harassment by Defendants. Plaintiffs invoke the All Writs Act and the Court's inherent power to protect their ability to file and litigate claims before this Court and not as an adjunct to success on a particular claim or claims. Because this motion seeks such protection and does not propound any new claim or cause of action, the administrative exhaustion doctrine does not apply.

Defendants fail – utterly – to dispute that their conduct seriously impedes Plaintiffs' prosecution of their claims or the merits of Plaintiffs' retaliation argument. Instead Defendants offer the patronizing argument that their oppressive conduct actually serves the greater good by preventing Ashker from practicing law without a license. Defs.' Opp'n at 10. But Ashker claims no "special right" or special protection to practice law; he argues that he cannot be transferred for pretextual reasons in order to impede his ability to communicate with his writing assistant, the other Plaintiffs, and with his counsel in this litigation. Defendants' sole, substantive response is to submit several pages of secret material which purports to show that Pelican Bay officials had a valid security reason to transfer Ashker to an isolated, Lexan-covered cell. Without review of the redacted statements, Plaintiffs have no way of challenging these secret assertions. Hence, Plaintiffs object to the complete sealing of Defendants' response. At a minimum, Defendants must disclose to this Court, under whatever protections the Court deems proper, the redacted portions of the declarations filed in opposition to the

instant motion.[1] That issue aside, the public records already disclosed to Ashker, which CDCR officials previously claimed justified the transfer, clearly belie the current security justification.

### A. The All Writs Act and Inherent Court Injunctions Are Not Predicated on the Claims at Issue in the Case

Defendants argue that since Plaintiffs' amended complaint does not contain a claim for retaliation, a preliminary injunction cannot be granted. But this position ignores the function of the All Writs Act, which is not to adjudicate claims that Plaintiffs have filed, but rather to protect litigation which is already filed or may be filed. As the Eleventh Circuit has noted:

> Whereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction. Thus, while a party must "state a claim" to obtain a "traditional" injunction, there is no such requirement to obtain an All Writs Act injunction—***it must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by some action or behavior***. The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because the historical scope of a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns.

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099-1100, 1102-03 (11th Cir. 2004) (emphasis added) (citation omitted).

Therefore, unlike the traditional injunction cases cited by Defendants, the "claim" that Plaintiffs bring to invoke the All Writs Act and the Court's inherent equitable power need not be based on the underlying claims of their lawsuit.[2] *See e.g. Price v. Johnson*, 334 U.S. 266 (1948) (using the All Writs Act to order prisoner be brought before the court for purpose of

---

[1] In their motion to file under seal, Defendants stated that the proposed filing under seal was narrowly tailored and did not seek to file under seal the entirety of Sergeant Frisk's declaration or their opposition, but only portions of it. Defs,' Mot. to File Under Seal at 2-3. Yet they blacked out the **entirety** of Sergeant Frisk's declaration and their opposition memorandum relating to the alleged security and safety concerns that they claim required Ashker's transfer, making it impossible for either Ashker or Plaintiffs' counsel to evaluate and address the weight and credibility of this purported evidence.

[2] Similarly, the Ninth Circuit has affirmed sanctions imposed by the District Court against defense counsel for receiving and reading legal correspondence between inmates and their lawyers under its inherent powers, where such improper conduct committed during the litigation had nothing to do with the prisoners underlying claim. *Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001) While that case involved monetary sanctions and not injunctive relief, Defendants cannot seriously contend that if the offending conduct been uncovered at the outset of the litigation, the Court would not have had the authority to enjoin Defendants and their counsel from taking and reading confidential legal mail pertaining to the lawsuit in order to protect the litigation from conduct undertaken for "oppressive reasons," or for an "improper purpose". *Id* at 1133-4

arguing his appeal); *Ben David v. Travisono*, 495 F.2d 562 (1st Cir. 1974) (upholding District Court's power under All Writs Act to issue an injunctive order prohibiting retaliation against the named Plaintiffs and members of the class in an Eighth Amendment action); *Rissman, Hendricks* and *Oliverio v. MIV Therapeutics*, No. 11-10791-MLW, 2011 U.S. Dist LEXIS 121426, at *14 n.5 (D. Mass Oct. 20, 2011) (Court has inherent power to issue either a preliminary injunction or protective order preventing Defendants from intimidating witnesses in a case involving law firm seeking payment for legal services rendered); *Turner v. Colon*, No. 2:11-cv 2343, 2012 U.S. Dist. LEXIS 131636 (E.D. Cal. Sept. 13, 2012) (issuing injunctive order to ensure that Plaintiff has access to his legal materials so that he can prosecute the case); *Frazier v. Redding Police Dept*., No. Civ S-11-1351, 2012 U.S. Dist LEXIS 18956 ( Feb. 15, 2012) (Court issued order under All Writs Act to ensure that prisoner had access to law library and legal materials to prosecute his unlawful use of force case).[3] Rather, Plaintiffs claim that Defendants threaten "the integrity" of this "ongoing proceeding" by Ashker's transfer – a transfer which was designed to and in fact has hindered Plaintiffs' ability to prosecute this case.

The two, recent district court cases Defendants cite are inapposite. Neither involved the All Writs Act, nor allegations that Defendants had acted with the purpose and effect of hindering or obstructing ongoing litigation.[4] Reference to these cases shows again that Defendants misunderstand the factual and legal basis of the present motion. Ashker does not

---

[3] In *Frazier*, the Magistrate determined that he could not issue a preliminary injunction because the prisoner's retaliation claim did not go to the merits of his use of force claim, but construed Plaintiff's motion for a preliminary injunction as one seeking a protective order, and issued such an order. *Frazier*, 2012 U.S. Dist LEXIS 18956, at *1, *6. While Plaintiffs believe that a preliminary injunction is a proper remedy under the All Writs Act, they have no objection to the Court treating this motion as one for a writ or protective order ensuring that Ashker is not subjected to retaliation, which interferes with his right to litigate this case.

In *Ben David v. Travisono*, the First Circuit recognized that the District Court had the authority to issue a preliminary injunction prohibiting retaliation pursuant to the All Writs Act if the court had made "express findings that the prohibited conduct is likely." *Ben David*, 495 F.2d 562 at 564-5. Because the District Court did not make such findings, but relied instead on fear of such conduct rather than its likelihood, it did not issue a preliminary injunction, but an order pursuant to the All Writs Act prohibiting prison officials from retaliatory conduct. *Id* at 563. That order was affirmed by the Circuit, which characterized the order as a protective order, and noted that a preliminary injunction would have been appropriate had the court found that the offending conduct was likely to occur. *Id.* Again, Plaintiffs have no objection to consideration of their request for relief as one for a protective order.

[4] *See Bryant v. Gallagher*, No. 11cv446BAM, 2012 WL 371895 at *2 (E.D. Cal. Feb. 3, 2012), *Tatum v. Puget*, No. 10cv418 LHK, 2011 U.S. Dist. LEXIS 71576 at *3 (N.D. Cal. July 1, 2011).

merely allege retaliation, but rather retaliation ***for the purpose and effect of hindering this class action litigation.*** The latter allegation properly invokes the Court's inherent power and the All Writs Act to protect the litigation already before it from obstruction and harassment.

Hence, it is beyond dispute that this Court has the equitable power to protect Plaintiffs, potential witnesses or other class members from retaliation or harassment designed to hinder their ability to participate in this litigation. *Ben David*, 495 F.2d 562. Whether that power manifests as a Rule 65 preliminary injunction, a protective order, or an injunction or writ authorized solely by the Court's inherent power or under the All Writs Act, "the rational ends of law" and the "ends of justice" permit this Court to enjoin Defendants' conduct outlined in Plaintiffs' motion designed to undermine litigation before the Court. *Harris v. Nelson*, 394 U.S. 286, 299-300 (1969) (Even though neither Federal Rules of Civil Procedure nor the Habeas statutes permitted a court to allow a prisoner to propound interrogatories in the context of a habeas proceeding, the All Writs Act authorized district courts to permit interrogatories where necessary); *Price*, 344 U.S. at 278-283 (even though neither the habeas statute or English common law specifically authorized the Court of Appeals to order a prisoner be brought before it to argue his or her appeal, the All Writs Act provided the Court with such power).

## II. EXHAUSTION IS NOT REQUIRED WHERE THE COURT'S INHERENT POWERS UNDER THE ALL WRITS ACT ARE PROPERLY INVOKED

Defendants cite a number of unpublished district court opinions for the unremarkable proposition that generally prisoners must exhaust their administrative remedies before seeking preliminary relief. *See* Defs.' Opp'n at 5-6. Defendants do not, however, address Plaintiffs' argument that the usual exhaustion requirement does not apply here, where Plaintiffs seek to protect extant, ongoing litigation from oppressive, harassing actions undertaken with the purpose of hindering Plaintiffs' ability to prosecute that litigation. The exhaustion requirements contained in the PLRA were never intended to erode this Court's well-established, common-law equitable power to protect litigants before it. *See, e.g., Plata v. Schwarzenegger*, 603 F.3d. 1088, 1093-4 (9th Cir. 2010) (PLRA did not displace inherent

equitable power of courts to appoint receivers); *Jones v. Bock*, 549 U.S. 199, 214-17 (2007) (PLRA not meant to displace traditional common law procedures and powers except as explicitly specified in statute).

The PLRA's text supports Plaintiffs' position. The PLRA states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, until such administrative remedies as are available, are exhausted." 42 U.S.C. § 1997(e) (a) (2012). The exhaustion requirement relates to an "action" brought, and not to writs or orders sought by prisoners to protect their ability to litigate an ongoing action from abusive conduct by Defendants.

Indeed, *Horacek v. Caruso*, No. 1:08-cv-262, 2008 WL 4820483 (W.D. Mich. Oct. 30, 2008), relied on by Defendants, illustrates the distinction between an injunction or writ sought to protect ongoing litigation on the one hand, and an injunction sought in conjunction with a new complaint on the other. The *Horacek* court recognized that the PLRA's exhaustion requirement did not preclude an All Writs Act preliminary injunction, but held instead that the underlying complaint there had no merit since Plaintiffs had not exhausted their administrative remedies. *Id* at *1-3. But, here there can be no claim that Plaintiffs have not exhausted their administrative remedies with respect to the underlying complaint or "action", and thus an auxiliary writ in support of that claim is not barred.[5] Here, Plaintiffs are not seeking to use their "action as a forum for airing…unrelated grievances about incarceration," Defs.' Opp'n at 5 (*citing Funches v. McDaniel*, No. 09cv343 LRH, 2011 WL 1871304 (D. Nev. March 31, 2011)), but rather seek to prevent Defendants' conduct related to this action – namely conduct directed at hindering Plaintiffs' ability to prosecute the action that they have filed.

[5] *See, e.g., Ben David v. Trasicono*; *Turner v. Colon*; *Frazier v. Redding supra* p. 3. In none of those cases did the court address and adjudicate whether Plaintiffs had exhausted their claims with respect to conduct which allegedly hindered their ability to litigate the underlying action.

## III. PLAINTIFFS HAVE DEMONSTRATED THAT INJUNCTIVE RELIEF IS WARRANTED

Plaintiffs have met the standards for relief under the All Writs Act or the Court's inherent powers.[6] First, Plaintiffs have demonstrated a likelihood of success on their claim that Ashker has been retaliated against, and that the reasons proffered by Defendants are pretextual. *See infra* pp. 7-9. Moreover, the removal of Ashker from his CDCR designated writing assistant and from any communication with other Plaintiffs, as well as his placement in a Lexan-covered cell, is designed to and effectively hinders and obstructs his and other Plaintiffs' ability to litigate this action. In addition, in the context of a class action, unlike in the individual actions cited by Defendants, such retaliatory action chills other class members from participating in the ongoing lawsuit, just as a retaliatory firing chills employees from participating in a trade union. *Ben David*, 459 F.2d at 563, 564-5 (affirming a "preliminary order of the district court enjoining and restraining" prison officials from "taking any action retaliating against Plaintiffs and members of Plaintiffs' class" on account of their participating or assisting in the class action lawsuit, an order based on Plaintiffs' "legitimate fear of harassment"). These injuries constitute irreparable harm, for Plaintiffs have no adequate remedy at law. *Gomez*, 255 F.3d at 1129-30 (affirming District Court issuance of injunction prohibiting retaliation against certain inmates where "continued retaliation for inmates exercise of their constitutional rights is a real threat" constituting irreparable injury).

If this Court finds that Ashker's transfer was retaliatory, then Plaintiffs meet the other elements for injunctive relief. Both the balance of equities and the public interest weigh decisively in Plaintiffs' favor because Defendants have no legitimate penological interest in pretextually transferring a prisoner to impede the prisoner's ability to litigate a claim against them. Both Plaintiffs and the public have an important interest in ensuring that class action

[6] Some uncertainty exists as to whether the applicable standard here implicates injunctive relief or that accorded pursuant to a motion for protective order. *See Rissman*, 2011 U.S. Dist LEXIS 121426, at *13-17 (finding that courts are unclear whether to treat emergency motion seeking order prohibiting threatening of witnesses under the standards of a Rule 65 Preliminary Injunction or as a protective order under the court's "inherent equitable powers"). Here, as with the plaintiffs in *Rissman*, Plaintiffs meet both the high standards for preliminary injunctive relief under Rule 65, and the lower standard for the issuance of protective orders.

prison litigation challenging allegedly unlawful prison conditions can proceed free from retaliatory, harassing or obstructive conduct by prison officials.

Defendants make two additional, meritless arguments. First, they claim that this Court has no jurisdiction over the motion for injunctive relief because the individuals who made the decision to transfer Ashker are not defendants in this action. However, Pelican Bay Warden Lewis is a Defendant, and presumably he has the authority, and ultimately, the duty to determine where Ashker is housed and to supervise other prison officials in the execution of that duty. A Court order directing that Ashker be returned to his original cell and protected from additional, retaliatory conduct designed to impede his capacity as a litigant adverse to the prison is appropriately directed to Warden Lewis. In addition, All Writs Act orders can be appropriately directed to non-parties, if necessary. *U.S. v. N.Y. Tel. Co*, 434 U.S. 159 (1977). Hence, Defendants' contention that Plaintiffs are not entitled to relief because the relief will compel action by non-parties to the litigation is unavailing.

Second, Defendants argue that Ashker is not entitled to any "heightened First Amendment protection for communications with other named Plaintiffs." Defs.' Opp'n at 9. But Ashker does not claim any "heightened" protection or any "special right."[7] Rather, he claims the same right as any other prisoner to be free from retaliatory transfer intended to impede his ability to litigate his claim against the Defendants. That he is an important Plaintiff and offers advice to other Plaintiffs such as Danny Troxell is relevant to the harm that this transfer has inflicted on this lawsuit, not to any special rights that Ashker asserts. Plaintiffs recognize that Defendants generally have a right to transfer Ashker to a new cell and to impose certain restrictions on him if "the restrictions are reasonably related to legitimate and neutral objectives." *See* Defs.' Opp'n at 10 (*citing Shaw v. Murphy*, 532 U.S. 223, 228 (2001)). Here,

[7] Defendants argue that Ashker's assertion that in his old cell he was able to engage in some communication with other Plaintiffs is "in clear conflict" with the Plaintiffs' allegation in the complaint that they "cannot have a normal human conversation with another prisoner". Defs.' Opp'n at 9. As Ashker's declaration makes clear, communicating through walls or cracks or crevices with other prisoners does not constitute what he or others would consider "normal" communication between people. People generally, and even most prisoners do not carry on "normal" conversations by shouting through walls or cracks –and with punishment as a possible consequence.

no such "legitimate and neutral objectives" exist, and Ashker should be returned to his original cell.

## IV. DEFENDANTS HAVE NOT REBUTTED PLAINTIFFS' *PRIMA FACIE* CASE OF RETALIATION

In their motion, Plaintiffs set forth a *prima facie* case that Ashker's transfer was in retaliation for his litigation activities and had the purpose and effect of hindering his class action litigation. *See* Pls.' Mot. for Prelim. Inj. at 1-11. That *prima facie* case was based on several key points:

a) The reason proffered by Defendants to Ashker after he complained about his transfer was facially implausible. It was based on alleged "veiled" threats by someone outside the prison where there was no evidence that such threats – if in fact they really existed – were either communicated to any prisoner, or supported by any prisoner in Ashker's cell block.

b) It is undisputed that there have been no disturbances or conflicts or threats between any of the prisoners in Ashker's former pod for years. In fact, Ashker has been housed peaceably and without any trouble in his old cell for many years.

c) Defendants' recent interest in Ashker's safety and security came shortly after he was able to convert his pro se lawsuit into a class action lawsuit along with a number of named Plaintiffs who were housed in cells close to his.

d) Ashker was moved away from his CDCR designated writing assistant Danny Troxell, who is also a co-Plaintiff in this action, and who was designated to assist Ashker with his legal writing as a reasonable accommodation for Ashker's disability. Ashker's disability limits his ability to write – a capacity that, given the restrictions on all forms of communication by and between Ashker and, inter alia, his counsel in this action, constitutes an exceedingly important communication avenue.

e) Defendants transferred Ashker to a cell that is totally isolated from other Plaintiffs and is covered with Lexan plexiglass that makes communication outside of the

cell almost impossible, is potentially dangerous to his health, and is normally reserved for prisoners who throw things at or otherwise assault guards or prison officials.

Defendants offer no public evidence to dispute Ashker's *prima facie* case. Instead, they rely entirely on secret assertions that an undisclosed security risk necessitated Ashker's move. Neither Plaintiffs, nor their counsel can evaluate these undisclosed (and very convenient) risk(s) and if the Court determines going forward that at least some of Frisk's blacked out Declaration ought to be unsealed, or should be provided to Plaintiffs' counsel for their eyes only under a protective order, then Plaintiffs request the right to respond to any facts disclosed by the declaration at that time.

However, even without the benefit of the secret declaration, Plaintiffs offer the following observations. Defendants do not dispute that the reason Ashker was given for his transfer had to do with "veiled" threats allegedly written by a non-prisoner in letters which never reached their intended recipients. Defendants do not dispute that they have transferred Ashker away from his CDCR designated writing assistant, Danny Troxell. Likewise, Defendants do not dispute that there is no history of any misconduct, violence or threatened violence involving anyone in Ashker's former pod in recent years. Ashker Decl. at ¶ 27. Nor is it disputed that Ashker has been transferred to a Lexan-covered cell which is totally isolated from any other Plaintiff, and which limits his communication, has limited circulation of air, and is usually used to punish prisoners who throw materials at guards.[8]

Finally, Plaintiffs reiterate that the "some evidence" standard is not appropriate to evaluate Defendants' claims that Ashker was transferred due to secret intelligence of a threat to Ashker's safety. *See* cases cited in Pls.' Mot. at 10. Unlike the standard of review for gang validation/due process claims, once Plaintiffs made a prima facie case of retaliation, the burden

[8] Defendants admit that Lexan cells are "often used to house inmates who have a history of spitting or throwing liquids at correctional officers," but argue that any prisoner can be housed in a Lexan cell. Defs.' Opp'n at 12-13. They further contend that the 1996 CDCR memorandum that states that assaultive prisoners should be placed in Lexan cells is "outdated," but fail to provide any updated memorandum that contains a different policy. They assert that the 1996 memo supports Defendants' position because it says that housing an inmate in a Lexan cell is "not for disciplinary reasons, rather it is for safety," but in the context of that memo it is clear that the words "for safety" meant not for the safety of the prisoner, but for the safety of correctional officials. In any event, the Defendants offer no public explanation as to why Ashker was transferred to a Lexan cell and not to a regular cell.

shifted to Defendants to demonstrate that they transferred Ashker for legitimate reasons of prison safety and security, and not to retaliate against him for protected activities. *Id.*

## V. THIS COURT SHOULD NOT STRIKE THE DECLARATIONS OF ASHKER AND TROXELL

Defendants' objections to the Troxell and Ashker Declarations are moot. Plaintiffs have served Defendants and filed with the Court supplemental Troxell and Ashker Declarations over their original signatures that are either identical or virtually identical to the Declarations filed with the original motion. In addition, neither the interests of Plaintiffs Troxell and Ashker, nor the Defendants were prejudiced by any failing(s) of Plaintiff's counsel regarding the attestation of concurrence. In this regard, Plaintiffs Ashker and Troxell have provided supplemental declarations verifying that each concurred in the filing of the declarations which were filed with the motion. These supplemental declarations were provided to counsel for the Defendants as additional evidence of concurrence and Defendants have suffered no prejudice due to any deficiency in the electronic filing of the original declarations. [9]

The discrepancy that Defendants' counsel notes and argues as a violation, which requires that the original declarations be stricken, occurred because counsel deleted from the motion some of the facts that Ashker and Troxell offered in their original declarations and because of formatting which also polished and shortened the declarations. The deletions occurred pursuant to express instruction and authorization from the declarants to use only those facts appropriate to the motion actually filed. Due to prison imposed impediments to lawyer-client communications,[10] Ashker and Troxell signed drafts of the declarations which they and counsel recognized might contain more facts than necessary and/or appropriate to the motion in its final form. Hence, Mr. Ashker and Mr. Troxell authorized and instructed Plaintiffs' counsel

---

[9] *See Lemas v. Cecil*, No. C 07-00958 SI, 2008 WL 4665345 at *2 n.1 (N.D. Cal. Oct. 20, 2008) (wherein court overruled Defendant's objection to declaration(s) based on improper attestation where deficiency was cured by filing subsequent, substantively consistent declarations).

[10] Namely that Defendants restrict legal visits to only Tuesday and Wednesday, that the physical isolation of Pelican Bay requires a long drive or an expensive plane trip to get there, that both outgoing and incoming legal mail often takes a long time to arrive, that phone calls are only allowed pursuant to court order and then are very limited – and Plaintiffs desire to file this emergency motion as quickly as possible.

to delete facts which were not going to be used in the memorandum of law and to make, other minor edits to the text as necessary. In this context, the Court should not strike the Ashker and Troxell declarations.[11]

## VI. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court issue an order requiring Defendants and their agents to: a) transfer Plaintiff Todd Ashker back to the cell he was housed in when the Motion for Leave to File a Second Amended Complaint was filed on May 31, 2012, and b) to refrain from retaliating against him during the pendency of this action.[12]

Dated: December 27, 2012

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By: */s/ Gregory D. Hull*
Gregory D. Hull

GREGORY D. HULL (Bar No. 57367)
Email: greg.hull@weil.com
BAMBO OBARO (Bar No. 267683)
Email: bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Tel: (650) 802-3000
Fax: (650) 802-3100

[11] The bankruptcy case cited by Defendants to demonstrate that Plaintiffs' counsel filed these declarations in violation of the rules is inapposite. *In re Daw*, 2011 Bankr. No. 09-00690-TLM, LEXIS 279 (Bankr. D. Idaho Jan. 24, 2011). The Bankruptcy Court rules at issue there are clearly different from the electronic filing rules of this Court. Those rules require that "A Registered Participant filing a Verified Pleading electronically shall insure that the electronic version conforms to the original, signed pleading/document," and additionally that "the electronic filing of a Verified Pleading constitutes a representation by the Registered Participant that he or she has the original, signed document in his or her possession at the time of filing." *See id*. at *4-5. No such provisions appear in this Court's rules, which provide simply that the filer has the "concurrence" of the signatory in the filing of the document. Counsel acknowledges that the attestation in question may not conform with a plausible read of the rules and will not use it in the future. However, "concurrence in the filing" is at least arguably satisfied when an attorney deletes facts which the client has reviewed and asserted are true in a setting where those facts are not relevant to the motion the attorneys are making, and because of limitations in communication imposed in large part by Defendants, the client authorizes the attorney in advance to make such deletions.

[12] Defendants object that Plaintiffs' proposed order providing that Ashker be housed in his old cell during the pendency of this action is not narrowly tailored in that it does not allow Defendants to move Ashker if real security reasons do require such a move in the future. In consideration of Defendants' objection, Plaintiffs request more narrowly tailored relief: a Court order that Defendants transfer Ashker back to his old cell and not retaliate against Ashker during the pendency of this action.

JULES LOBEL (*pro hac vice*)
Email: jll3@pitt.edu
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email: aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email: rachelM@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6478
Fax: (212) 614- 6499

CHARLES F.A. CARBONE (SBN 206536)
Email: charles@charlescarbone.com
EVAN CHARLES GREENBERG (SBN 271356)
Email: evan@charlescarbone.com
LAW OFFICES OF CHARLES CARBONE
P.O. Box 2809
San Francisco, CA 94126
Tel: (415) 981-9773
Fax: (415) 981-9774

MARILYN S. MCMAHON (SBN 270059)
Email: marilyn@prisons.org
CALIFORNIA PRISON FOCUS
1904 Franklin Street, Suite 507
Oakland, CA 94612
Tel: (510) 734-3600
Fax: (510) 836-7222

ANNE BUTTERFIELD WEILLS (SBN 139845)
Email: aweills@aol.com
SIEGEL & YEE
499 14TH STREET, SUITE 300
OAKLAND, CA 94612
Tel: (510) 839-1200
Fax: (510) 444-6698

CAROL STRICKMAN (SBN 78341)
Email: carol@prisonerswithchildren.org
LEGAL SERVICES FOR PRISONERS WITH CHILDREN
1540 Market Street, Suite 490
San Francisco, CA 94102
Tel: (415) 255-7036
Fax: (415) 552-3150

Attorneys for Plaintiffs
TODD ASHKER, DANNY TROXELL, et al.