GREGORY D. HULL (Bar No. 57367)
Email: greg.hull@weil.com
BAMBO OBARO (Bar No. 267683)
Email: bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

JULES LOBEL (*pro hac vice*)
Email: jll3@pitt.edu
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email: aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email: rachelm@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6478
Fax: (212) 614-6499

Attorneys for Plaintiffs
(Additional counsel listed on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GEORGE RUIZ, JEFFREY FRANKLIN, TODD ASHKER, GEORGE FRANCO, GABRIEL REYES, RICHARD JOHNSON, DANNY TROXELL, PAUL REED, LUIS ESQUIVEL, and RONNIE DEWBERRY, on their own behalf, and on behalf of a class of similarly situated prisoners,<br><br>Plaintiffs,<br><br>v.<br><br>EDMUND G. BROWN, JR., Governor of the State of California, MATTHEW CATE, Secretary, California Department of Corrections and Rehabilitation (CDCR); ANTHONY CHAUS, Chief, Office of Correctional Safety, CDCR; and G.D. LEWIS, Warden, Pelican Bay State Prison,<br><br>Defendants. | Case No. 4:09 CV 05796 CW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: February 14, 2013<br>Time: 2:00 pm<br>Place: Courtroom 2, 4th Floor<br><br>Honorable Claudia Wilkin |

1

# TABLE OF CONTENTS

2

Page

I.     PLAINTIFFS HAVE ADEQUATELY PLED AN EIGHTH AMENDMENT
       VIOLATION ........................................................................................................... 2

       A.     *Madrid v. Gomez* Does Not Preclude Plaintiffs' Eighth Amendment Claim ......... 2

       B.     Plaintiffs Have Alleged Objectively Serious Harm ................................. 4

       C.     Plaintiffs Have Adequately Alleged Deliberate Indifference ................................ 7

       D.     Plaintiffs Have Also Stated a Claim under the Eighth Amendment Based
              on Undue Coercion and Disproportionate Punishment ........................................... 8

              1.     Plaintiffs have Adequately Alleged an Eighth Amendment
                     Violation Based on the Gross Disproportion between their Conduct
                     in Prison, and Their Treatment by CDCR ........................................... 9

              2.     Plaintiffs have Adequately Alleged an Eighth Amendment
                     Violation Based on the Coercive Nature of the Pelican Bay SHU ........... 11

II.    PLAINTIFFS HAVE ADEQUATELY PLED A DUE PROCESS VIOLATION ........... 11

       A.     Plaintiffs Have Plausibly Alleged a Liberty Interest ............................................. 12

       B.     Plaintiffs Are Entitled To *Wolff* Hearings ............................................................. 12

       C.     Even if SHU Assignment is Administrative, Plaintiffs Have Been Denied
              Notice and Periodic Review Under *Hewitt* ........................................................... 14

              1.     Periodic Reviews of Plaintiffs' SHU Confinement Are Too
                     Infrequent ................................................................................................... 14

              2.     Inactive Reviews Fail To Provide Plaintiffs With Adequate Notice ........ 15

       D.     Plaintiffs Do Not Raise a Due Process Claim Arising from the Denial of
              Parole, Nor Is Plaintiff Ashker's Due Process Claim Precluded ......................... 17

III.   DEFENDANTS HAVE NOT ESTABLISHED THAT PLAINTIFFS'
       PROCEDURAL DUE PROCESS CLAIM IS MOOT OR THAT THE CASE
       SHOULD BE STAYED ........................................................................................... 17

       A.     Defendants Fail To Meet their Heavy Burden of Proving Mootness ................... 18

       B.     A Stay is Not Warranted ....................................................................................... 21

IV.    CONCLUSION ........................................................................................................ 22

1

2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*Adnan v. Santa Clara County Dept. of Corrs.*,
   No. 02-C-3451, 2002 U.S. Dist. LEXIS 28368

6

   (N.D. Cal. Aug. 15, 2002) (Wilken, J.) ........................................................................ 9, 10, 11

7

*FTC v. Affordable Media, LLC*,

8

   179 F.3d 1228 (9th Cir. 1999) ......................................................................................... 18

9

*Allen v. Nelson*,
   354 F. Supp. 505 (N.D. Cal. 1973), *aff'd*, 484 F.2d 960 (9th Cir. 1973) .......................... 9, 10

10

*Alston v. Cahill*,

11

   No. 3:07-cv-473, 2012 U.S. Dist. LEXIS 112982 (D. Conn. Aug. 10, 2012) ...................... 14

12

*United States v. Basciano*,

13

   369 F. Supp. 2d 344 (E.D.N.Y. 2005) .................................................................................. 9

14

*Bruce v. Ylst*,
   351 F.3d 1283 (9th Cir. 2003) ............................................................................................. 13

15

16

*Burke v. Barnes*,
   479 U.S. 361 (1987) ............................................................................................................ 20

17

*Chappell v. Mandeville*,

18

   No. 03-0653, 2009 U.S. Dist. LEXIS 26782 (E.D. Cal. Mar. 31, 2009) ................................ 5

19

*Davenport v. DeRobertis*,
   844 F.2d 1310 (7th Cir. 1988) (Posner, J.) ............................................................................ 8

20

*Dependable Highway Express v. Navigators Ins. Co.*,

21

   498 F.3d 1059 (9th Cir. 2007) ............................................................................................. 21

22

*Despain v.Uphoff*,

23

   264 F. 3d 965 (10th Cir. 2011) .............................................................................................. 3

24

*Enprotech Corp. v. Autotech Corp.*,
   No. 88-4853, 1990 WL 37217 (N.D. Ill. Mar. 16, 1990) ...................................................... 21

25

*Farmer v. Brennan*,

26

   511 U.S. 825 (1994) .............................................................................................................. 7

27

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,

28

   528 U.S. 167 (2000) ............................................................................................................ 19

*Graham v. Florida*,
    130 S. Ct. 2011 (2010) ........................................................................................................ 9

*Green v. Mansour*,
    474 U.S. 64-67 (1985) ........................................................................................................ 20

*Greenholtz v. Inmates of Neb. Penal and Corr. Complex*,
    442 U.S. 1 (1979) .............................................................................................................. 15

*Griffin v. Gomez*,
    No. C-98-21038, slip op. (N.D. Cal. June 28, 2006) ............................................. 4, 11, 15, 20

*Hardiwick v. Ault*,
    447 F. Supp. 116 (M.D. Ga. 1978) .................................................................................... 10

*Harper v. Showers*,
    174 F.3d 716 (5th Cir. 1999)................................................................................................ 5

*Helling v. McKinney,*
    509 U.S. 25, 32 (1993) ....................................................................................................... 4

*Hewitt v. Helms*,
    459 U.S. 460 (1983) .......................................................................................................... 14

*Hiser v. Franklin*,
    94 F.3d 1287 (9th Cir. 1996) ............................................................................................. 17

*Hutto v. Finney*,
    437 U.S. 678 (1978) ............................................................................................................ 3

*IMAX Corp. v. In-Three, Inc.*,
    385 F.Supp.2d 1030 (C.D. Cal. 2005) .............................................................................. 21

*Keenan v. Hall*,
    83 F.3d 1083 (9th Cir. 1996)......................................................................................... 3, 12

*Koch v. Lewis*,
    216 F. Supp. 2d 994, 1007 (D. Az. 2001) .................................................................... 10, 11

*Koch v. Schriro*,
    399 F.3d 1099 (9th Cir. 2005) ........................................................................................... 10

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936)........................................................................................................... 21

*Lindquist v. Idaho State Bd. of Corrections*,
    776 F.2d 851 (9th Cir. 1985)............................................................................................. 18

*Madrid v. Gomez*,
    889 F. Supp. 1146 (N. D. Cal. 1995) ......................................................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*McClary v. Kelly*,
    4 F. Supp. 2d 195 (W.D.N.Y. 1998) ................................................................ 8

*Morris v. Travisono*,
    549 F. Supp. 291 (D.R.I. 1982) ..................................................................... 9

*Nevarez v. Lewis*,
    No. C 12-1912, 2012 U.S. Dist. LEXIS 119966 (N.D. Cal. Aug. 23, 2010) ........................ 13

*Peoples v. Fischer*,
    No. 11-civ-2694, 2012 WL 2402593 (S.D.N.Y. June 26, 2012) ........................... 11

*Pepperling v. Crist*,
    678 F.2d 787 (9th Cir. 1982) .................................................................. 3, 5

*Rhodes v. Chapman*,
    452 U.S. 337 (1981) ............................................................................. 4

*Ruiz v. Johnson*,
    37 F. Supp. 2d 855 (S.D. Tex. 1999), *rev'd on other grounds*,
    243 F.3d 941(5th Cir. 2001) .................................................................. 4, 6

*Sandin v. Conner*,
    515 U.S. 472 (1995) ............................................................................ 17

*Scales v. United States*,
    367 U.S. 203 (1961) ............................................................................ 16

*Soto v. Lewis*,
    No. C 11-4704, 2012 U.S. Dist. LEXIS 158455 (N.D. Cal. Nov. 5, 2012) ........................ 13

*Sweet v. South Carolina Dept. of Corr.*,
    529 F.2d 854 (4th Cir. 1975) .................................................................. 3

*Toevs v. Reid*,
    646 F.3d 752 (10th Cir. 2011) ................................................................ 15

*Tokuyama v. Vision Dynamics*,
    No. 08-2781, slip op. (N.D. Cal. Oct. 3, 2008) ................................................ 21

*Toussaint v. McCarthy*,
    801 F.2d 1080 (9th Cir. 1986) .......................................................... 13, 14, 17

*Toussaint v. Rushen*,
    553 F. Supp. 1365 (N.D. Cal. 1983) ........................................................ 9, 10

*Toussaint v. Yockey*,
    722 F.2d 1490 (9th Cir. 1984) ................................................................. 9

*United States v. W.T. Grant Co.,*
    345 U.S. 629 (1953) .......................................................................................... 18, 19

*Weems v. United States,*
    217 U.S. 349 (1910) ................................................................................................ 9

*Wilkerson v. Stalder,*
    639 F. Supp. 2d. 654 (M.D. La. 2007) ........................................................... *passim*

*Wilkinson v. Austin,*
    545 U.S. 209 (2005) .................................................................................. 12, 15, 17

*Williams v. Hobbs,*
    662 F.3d 994 (11th Cir. 2011) .............................................................................. 14

*Wilson v. Seiter,*
    501 U.S. 294 (1991) ............................................................................................... 4

*Wolff v. McDonnell,*
    418 U.S. 539 (1974) .................................................................................. 12, 13, 19

**Statutes**

CAL. CODE REGS. tit. 15, § 3341.5(c)(2)(A)(1) ............................................................ 14

CAL. CODE REGS. tit. 15, § 3378(e) ............................................................................ 15

CAL. PEN. CODE §§ 2933, 2933.05, 2933.6(a) ............................................................ 12

**Other Authorities**

CDCR, ADULT INSTITUTIONS, PROGRAMS, AND PAROLE OPERATIONS MANUAL, art. 22,
    § 52070.18.4 (2012) ............................................................................................. 15

Harvey R. Colton and Bruce M. Altevogt, *Sleep Disorders and Sleep Deprivation: An Unmet*
    *Public Health Problem* ........................................................................................... 5

Laura Matter, *Hey, I Think We're Unconstitutionally Alone Now: The Eighth Amendment*
    *Protects Social Interaction as a Basic Human Need,* 14 J. GENDER RACE & JUST. 265, 290-91
    (2010) ..................................................................................................................... 5

1    Plaintiffs have spent decades in crippling, unnecessarily harsh isolation, during which the

2    California Department of Corrections and Rehabilitation (CDCR) has promised, and failed to

3    deliver, on myriad efforts at reform.  To this day Plaintiffs are confined alone in their cells,

4    without view of the outside world, human touch, face-to-face conversation, or even telephone

5    calls.  Yet, Defendants frequently impose these conditions without evidence that the prisoner has

6    engaged in gang-related violence or other serious misconduct.  Now Defendants claim that

7    Plaintiffs' due process challenge to these decades of deprivation is moot, or ought to be stayed,

8    because Defendants have again promised reform, this time by a temporary pilot program set by its

9    own terms to expire in two years.

10    Plaintiffs' claim is not moot, as the law is clear that only a *permanent* change can defeat

11    the existence of a live controversy.  Moreover, a stay is inappropriate because Plaintiffs' Eighth

12    Amendment claim will proceed anyway, and the facts of the two claims are closely interrelated.

13    As explained in section III, below, the pilot program has not yet been fully implemented, but it

14    appears to be riddled with many of the same due process infirmities challenged herein.  Discovery

15    on the impact of the pilot program, rather than dismissal or a stay, is therefore the most

16    appropriate resolution here.

17    Defendants' mootness and stay arguments are merely distractions from the central legal

18    question of this case:  Does the Eighth Amendment differentiate between months, or even a few

19    years of solitary confinement, which is legally permissible in some circumstances, and *decades* of

20    the same?  As Plaintiffs show below, precedent is clear that the duration of isolation must be

21    considered when determining its constitutionality.  Indeed, both the Constitution and human

22    intuition recognize that the effects of intense deprivation cannot be evaluated without careful

23    consideration of duration.  As a result, Plaintiffs' allegations that 10 to 22 years in the Pelican

24    Bay Special Housing Unit (PB-SHU) have deprived them of social interaction, environmental

25    stimulation, sleep, and physical and mental health, and have created a substantial risk to their

26    future mental health, state an Eighth Amendment claim.

27    Defendants assert that imposition of this decades-long isolation is "administrative" and

28    therefore Plaintiffs have little constitutional protection.  But since 2010, placement in the PB-

1  SHU deprives Plaintiffs of good time credit, a punitive measure which the Supreme Court has

2  determined entitles them to greater procedural protections.  *See* section II.B *infra*.  And even if

3  administrative process is all Plaintiffs are due, their Due Process claim must still be allowed to

4  proceed, as the reviews CDCR provides occur too infrequently, and without adequate notice.  *See*

5  section II.C *infra*.  Plaintiffs are informed that they can earn release if they are "inactive" in a

6  gang for six years; yet in practice they are routinely kept in the SHU based only on evidence of

7  gang-related artwork and writings, or other gang association, rather than gang "activity."

8        For all of these reasons, Defendants' motion to dismiss should be denied in its entirety.

9  **I.    PLAINTIFFS HAVE ADEQUATELY PLED AN EIGHTH AMENDMENT**
       **VIOLATION**
10

11       Defendants ask the Court to dismiss Plaintiffs' Eighth Amendment claim without

12  affording Plaintiffs the opportunity to develop evidence of the impact of prolonged isolation on

13  their mental and physical health.  According to Defendants, such dismissal is appropriate because:

14  (1) *Madrid v. Gomez*, 889 F. Supp. 1146 (N. D. Cal. 1995) precludes any PB-SHU prisoner who

15  is not diagnosed as mentally ill from arguing that the SHU's restrictive conditions violate his

16  Eighth Amendment rights, no matter what mental and physical harm he may allege or prove (*see*

17  Defendants' Motion to Dismiss "MTD" at 16-17); and (2) Defendants have complied with court-

18  ordered mental health and medical procedures, thus they cannot be found "deliberately

19  indifferent" to Plaintiffs' mental or physical health.  *Id*. at 18.  Defendants are incorrect on both

20  accounts:  Madrid does not control this case, as Plaintiffs here challenge confinement decades

21  longer than that examined in Madrid and allege concrete harms not evidenced in Madrid.

22  Plaintiffs have adequately alleged Defendants' deliberate indifference to these harms.  Finally,

23  Plaintiffs' alternative Eighth Amendment theories also preclude dismissal.

24       **A.    *Madrid v. Gomez* Does Not Preclude Plaintiffs' Eighth Amendment Claim**

25       Defendants misstate the impact of *Madrid*:  neither it, nor any other Eighth Amendment

26  case require a prisoner to have a diagnosed mental illness in order to challenge prolonged solitary

27  confinement in the PB-SHU.  The *Madrid* court rejected the claim that conditions at Pelican Bay

28  violate the Eighth Amendment "*vis-a-vis all* inmates."  *Madrid*, 889 F. Supp. at 1261 (emphasis

1    added).  Plaintiffs do not make that claim.  Rather, they allege that prisoners held in the PB-SHU

2    for very prolonged durations – between 10 and 22 years – are being incarcerated in conditions

3    that violate the Eighth Amendment.  *See* Second Amended Complaint (SAC) at ¶ 166 (Eighth

4    Amendment subclass limited to prisoners held at Pelican Bay SHU for over ten years).

5           The *Madrid* court explicitly limited its holding to a class of prisoners that had spent less

6    than three years at the Pelican Bay SHU:  "We emphasize, of course, that this determination is

7    based on the current record and data before us.  We cannot begin to speculate on the impact that

8    Pelican Bay SHU conditions may have on inmates confined in the SHU for periods of 10 or 20

9    years or more; the inmates studied in connection with this action had generally been confined to

10   the SHU for three years or less."  *Madrid*, 889 F. Supp. at 1267.  Defendants acknowledge this,

11   MTD at 16-17, and then completely fail to explain why it does not foreclose their argument.

12          Under Defendants' argument, the duration of time spent in solitary confinement is of no

13   legal import.  But judicial precedent and common sense are to the contrary.  How long someone

14   spends in solitary confinement – whether a few days, weeks, years, or decades – is a pivotal part

15   of the Eighth Amendment analysis.  *See, e.g.*, *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978)

16   (noting that in solitary confinement context, "the length of confinement cannot be ignored");

17   *Wilkerson v. Stalder*, 639 F. Supp. 2d. 654, 679 (M.D. La. 2007) (citing *Hutto* for proposition that

18   "certain conditions that would pass constitutional scrutiny if imposed for a short period of time

19   may be rendered unconstitutional if imposed for an extended period of time"); *Keenan v. Hall*,

20   83 F.3d 1083, 1089 (9th Cir. 1996) (citing *Hutto*), *Pepperling v. Crist*, 678 F.2d 787, 789 (9th

21   Cir. 1982) (permissible segregation may offend the Eighth Amendment if it lasts too long),

22   *Sweet v. South Carolina Dept. of Corr.*, 529 F.2d 854, 861 (4th Cir. 1975) (prolonged duration is

23   a factor when considering constitutionality of segregated confinement); *cf. Despain v.Uphoff*,

24   264 F. 3d 965, 974 (10th Cir. 2011) ("In general, the severity and duration of the deprivation

25   [needed to set forth an Eighth Amendment claim] are inversely proportional").

26          Indeed, in *Wilkerson v. Stalder*, the Court rejected a similar *res judicata* defense in a

27   challenge to 30 years of solitary confinement, because the "decisions rendered in [plaintiffs' two

28   prior segregation challenges] were both decided over twenty years ago, and involve different

1    facts.  While the physical conditions of confinement may have been the same, or similar, in the

2    present case, a key issue today is the now extraordinary duration of that confinement."  639 F.

3    Supp. 2d. at 685-86.  As the *Wilkerson* Court pointed out, "[t]he emphasis on duration in all these

4    cases is in direct response to the acknowledged severity of the deprivation . . . .  With each

5    passing day its effects are exponentially increased, just as surely as a single drop of water

6    repeated endlessly will eventually bore through the hardest of stones."  *Id*. at 684.

7         Twenty years of solitary confinement "is a shockingly long period of time."  *Griffin v.*

8    *Gomez*, No. C-98-21038, slip op. at 10 (N.D. Cal. June 28, 2006).  Because Plaintiffs challenge

9    isolation ten to twenty years longer than that examined in *Madrid* their claim is not precluded.[1]

10        **B.       Plaintiffs Have Alleged Objectively Serious Harm**

11        In contrast to the *Madrid* plaintiffs' three years in the PB-SHU, Plaintiffs here allege that

12   their 11 to 22 years in isolation have deprived them of the fundamental need for human contact,

13   environmental and sensory stimulation, sleep, and physical and mental health.  SAC ¶ 180.  These

14   allegations are sufficiently serious to meet the Eighth Amendment's objective component.

15        Prison conditions violate the Eighth Amendment when they deprive prisoners of "basic

16   human needs" or "the minimal civilized measure of life's necessities."  *See Madrid,* 889 F. Supp.

17   at 1260, *citing Helling v. McKinney,* 509 U.S. 25, 32 (1993) and *Wilson v. Seiter*, 501 U.S. 294,

18   298 (1991).  Basic human needs must be measured according to "evolving standards of decency

19   that mark the progress of a maturing society."  *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981).

20        Social interaction and environmental stimulation are basic human needs.  *Wilkerson*,

21   639 F. Supp. 2d at 677-678; *Ruiz v. Johnson*, 37 F. Supp. 2d 855, 914 (S.D. Tex. 1999), *rev'd on*

22

---

23   [1] Defendants also argue that Plaintiffs' Eighth Amendment claim is precluded by prior prisoner challenges
     to PB-SHU medical care and mental health care.  *See* MTD at 19-25.  But Plaintiffs do not advance Eighth

24   Amendment claims for inadequate mental health care or medical care.  SAC ¶¶ 177-92.  Rather, Plaintiffs
     allege that (1) medical care is purposefully withheld at the PB-SHU to coerce prisoners to debrief, and this

25   is one aspect of the cruelty of conditions which, taken together, violate Plaintiffs' Eighth Amendment
     rights, *id*. ¶¶ 74-81, and (2) mental health care is lacking at the PB-SHU, evidencing Defendants'

26   deliberate indifference to the risk to Plaintiffs' mental health caused by prolonged solitary confinement, *id*.
     ¶¶ 82-85.  Because SHU prisoners receive no meaningful mental health monitoring, Defendants can

27   purposefully ignore the serious impact of long-term SHU confinement.  These factual allegations support
     Plaintiffs' Eighth Amendment conditions claim, but do not advance discrete medical care claims.  Thus,

28   *Coleman* and *Plata* have no impact here.

*other grounds*, 243 F.3d 941 (5th Cir. 2001), *adhered to on remand*, 154 F. Supp. 2d 975 (S.D. Tex. 2001).  While prisoners may be denied both for some period of time without running afoul of the Eighth Amendment, their permanent or near-permanent deprivation is an entirely different question.  *See Pepperling*, 678 F.2d at 789 ("deprivations associated with an institutional lock-up, including twenty-four hour confinement, and curtailment of all association, exercise and normal vocational and educational activity, may constitute … a violation of the Eighth Amendment, if they persist too long").

Here, Plaintiffs claim extreme isolation for decades – they never touch another human being, have virtually no face-to-face conversation and, in contrast with all other correctional systems of which Plaintiffs and counsel are aware, are denied *all* non-emergency telephone contact.  SAC ¶¶ 45-46.  Plaintiffs have no view of the outside; their life is limited to four bare walls and an occasional disembodied voice.  Such substantial limitation of interaction over several decades is a deprivation of what it means to be human.[2]  *Wilkerson,* 639 F. Supp. 2d at 678.  It is for this reason that prolonged solitary confinement has been decried as torture by several international bodies.  SAC ¶¶ 146-52.

So too, sleep "undoubtedly counts as one of life's basic needs."  *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (reversing district court's dismissal of Eighth Amendment challenge to conditions that deprived prisoner plaintiff of sleep); *accord Chappell v. Mandeville,* No. 03-0653, 2009 U.S. Dist. LEXIS 26782, *27 (E.D. Cal. Mar. 31, 2009).  As result of their prolonged PB-SHU placement, most Plaintiffs suffer from "extreme and chronic insomnia," in some cases resulting in only one to three hours of sleep a night.  SAC ¶¶ 128-29.  Such long-term deprivation is seriously harmful to physical and mental health and may shorten one's life.[3]

---

[2] *See* Laura Matter, *Hey, I Think We're Unconstitutionally Alone Now:  The Eighth Amendment Protects Social Interaction as a Basic Human Need,* 14 J. GENDER RACE & JUST. 265, 290-91 (2010) (summarizing research on fundamental role of social interaction in facilitating human cognition).

[3] *See, e.g.,* Harvey R. Colton and Bruce M. Altevogt, *Sleep Disorders and Sleep Deprivation: An Unmet Public Health Problem*, Nat'l Academies Press Online, 2006, available at http://www.ncbi.nlm.nih.gov/books/NBK19960/pdf/TOC.pdf (reporting that sleeping 5 hours or less a night increased mortality risk, from all causes, by roughly 15 percent).

1      Along with ensuring that prisons provide that which is minimally required to sustain life,

2  the Eighth Amendment also prohibits conditions that "inflict serious mental pain or injury ….

3  '[T]he touchstone is the health of the inmate.  While the prison administration may punish, it may

4  not do so in a manner that threatens the physical *and mental health* of prisoners.'"  *Madrid,*

5  889 F. Supp. at 1260 (emphasis in original), *see also Ruiz*, 37 F. Supp. 2d at 914 ("the same

6  standards that protect against physical torture prohibit mental torture as well – including the

7  mental torture of excessive deprivation").

8      Plaintiffs have alleged that their prolonged PB-SHU confinement has "caused … or

9  exacerbated …" a variety of other serious mental and physical injuries including "severe

10  concentration and memory problems," "emotional numbness," "nightmares," "hallucinations,"

11  "hearing voices," hypertension, eye and vision problems, headaches, diabetes and back problems.

12  SAC ¶¶ 74-77, 125-139.  There is no question that the more serious of these symptoms (including

13  the physical ailments, hallucinations and hearing voices) are sufficient for Eighth Amendment

14  purposes under *Madrid* (*see* 889 F. Supp. at 1234), but even those closer to the line preclude

15  dismissal without further factual development.

16      For example, Plaintiffs allege "severe concentration and memory problems."  While the

17  *Madrid* plaintiffs also reported "problems with concentration," there was no indication as to the

18  severity of those problems.  889 F. Supp. at 1232.  Plaintiffs, in contrast, describe memory and

19  concentration issues so severe as to have completely deprived them of their ability to read or

20  think clearly.  SAC ¶ 130.  This significant impairment of basic functioning is far-removed from

21  the "loneliness, frustration, depression or extreme boredom …" discounted by the *Madrid* Court.

22  *Madrid*, 889 F. Supp. at 1263.

23      Similarly, Plaintiffs allege not just "emotional flatness" like that noted by the *Madrid*

24  court, but that decades without normal human interaction have resulted in a complete

25  disassociation from human emotion.  SAC ¶¶ 131-38, *compare Madrid*, 889 F. Supp. at 1234.

26  These symptoms, and others experienced by Plaintiffs and the putative class, are almost identical

27  to those described in the psychological literature about the long-term effects of severe trauma and

28  torture, SAC ¶ 142, and cannot be discounted as mere "psychological pain."

1    Finally, the Plaintiffs also allege that even if they were not mentally ill when first confined

2    there or at the time this lawsuit was commenced, all prisoners confined in the Pelican Bay SHU

3    for decades face a significant risk of developing serious mental illness or suicidal symptoms.

4    SAC ¶ 143.  The *Madrid* court recognized the possibility that SHU confinement might pose some

5    risk of serious mental illness, but that risk was not "of [a] sufficiently serious magnitude"

6    according to the data available after three years of confinement.  889 F. Supp. at 1265.  Plaintiffs

7    must be allowed to develop and present the Court with evidence as to the elevated risks posed by

8    decades of solitary confinement in the PB-SHU.

9    **C.      Plaintiffs Have Adequately Alleged Deliberate Indifference**

10    Plaintiffs' allegations also meet the Eighth Amendment's subjective component, requiring

11    that each defendant "knows of and disregards an excessive risk to inmate health and safety."

12    *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Here, Defendants had actual knowledge of the

13    effect of prolonged SHU placement on Plaintiffs' mental and physical health through multiple

14    sources.  Moreover, the risk was obvious.

15    Defendants do not deny that they were made aware of the risk to mental health posed by

16    long-term isolation.  Indeed, Plaintiffs told them so repeatedly:

17    • Plaintiffs staged hunger strikes designed to call attention to the severe restrictions in the
        PB-SHU and the resulting threat to their mental health.  SAC ¶¶ 153-54, 159, 162, 191.
18

19    • Plaintiffs Ashker and Troxell three times sent CDCR officials, including some
        Defendants, a "Complaint On Human Rights Violations And Request For Action To End
        Over 20 Years Of State Sanctioned Torture" at the PB-SHU.  *Id.* ¶¶ 156-58, 191.
20

21    • At a California State Assembly hearing convened by the Public Safety Committee and
        attended by CDCR officials, SHU expert Dr. Craig Haney opined that State officials
22      should have known since the 1980's that a prison like Pelican Bay exposes prisoners to
        "psychologically dangerous conditions of confinement."  *See id.* ¶ 161 (citing Sal
23      Rodriguez, *Historic California Assembly Hearing on Solitary Confinement*, Aug. 24,
        2011, at solitarywatch.com).

24    Moreover, Defendants are on notice as to the likely psychological impact of prolonged

25    SHU placement because that impact is obvious.  SAC ¶ 191.  Deliberate indifference does not

26    mean that "prison officials [are] … free to ignore obvious dangers."  *Farmer*, 511 U.S. at 842.

27    Rather, "a fact finder may conclude that a prison official knew of a substantial risk from the very

28    fact that the risk was obvious."  *Id.* at n.8.  As the Court observed in *Wilkerson,* "any person in the

1   United States who reads or watches television should be aware that lack of adequate exercise,

2   sleep, social isolation, and lack of environmental stimulation are seriously detrimental to a human

3   being's physical and mental health."  639 F. Supp. 2d at 680 (adopting *McClary v. Kelly*, 4 F.

4   Supp. 2d 195, 208 (W.D.N.Y. 1998) statement:  "that prolonged isolation from social and

5   environmental stimulation increases the risk of developing mental illness does not strike this

6   Court as rocket science"), *see also Davenport v. DeRobertis*, 844 F.2d 1310, 1313 (7th Cir. 1988)

7   (Posner, J.) ("[T]he record shows, what anyway seems pretty obvious, that isolating a human

8   being from other human beings year after year or even month after month can cause substantial

9   psychological damage, even if the isolation is not total.")

10      Despite the obvious and lengthy deprivations described above, Defendants did not

11  alleviate PB-SHU conditions, or otherwise ameliorate their impact.  SAC ¶¶ 82-85.  This is

12  enough to allege deliberate indifference.  Moreover, Plaintiffs also allege that Defendants

13  *intended* this result.  PB-SHU's punishing isolation, inadequate mental and physical health care,

14  and limited opportunity for release are all intended to coerce Plaintiffs into debriefing and

15  implicating others.  *Id*. ¶¶ 31, 73, 78-81, 120, 152, 192.  The infliction of severe pain and

16  suffering for purposes of obtaining information meets the international law definition of torture.

17  *Id*. ¶ 152.

18      Defendants' only response to these detailed allegations is to refer the Court to their

19  compliance with the *Coleman* settlement.  MTD at 18.  But contrary to Defendants' argument,

20  even if they have taken steps to exclude the most seriously mentally ill prisoners from the PB-

21  SHU, this does not give them a free pass to ignore documented, widespread, and serious harms

22  visited upon the rest of the long-term PB-SHU population.

23      **D.    Plaintiffs Have Also Stated a Claim under the Eighth Amendment Based on
          Undue Coercion and Disproportionate Punishment**

24

25      Defendants' Motion to Dismiss ignores Plaintiffs' alternative Eighth Amendment theories,

26  including:  (1) the gross disproportionality of decades in extremely harsh conditions based on

27  Plaintiffs' status as alleged gang members, *see* SAC ¶ 185; and (2) the coercive nature of PB-

28

1    SHU confinement, *see id.* ¶¶ 183-184.  Under either of these theories, Plaintiffs' claims must be
2    allowed to proceed.

3              **1.      Plaintiffs have Adequately Alleged an Eighth Amendment Violation**
                        **Based on the Gross Disproportion between their Conduct in Prison,**
4                       **and Their Treatment by CDCR**

5              As the Supreme Court has often noted, "the concept of proportionality is central to the
6    Eighth Amendment.  Embodied in the Constitution's ban on cruel and unusual punishments is
7    'the precept of justice that punishment for crime should be graduated and proportionate to [the]
8    offense.'"  *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010), *quoting Weems v. United States*,
9    217 U.S. 349, 367 (1910).  Plaintiffs allege that their isolation violates the Eighth Amendment
10   because it is grossly disproportionate to the State's interest in preventing gang violence by
11   prisoners who are alleged gang members, but do not engage in dangerous gang activity.

12             Duration or conditions of administrative segregation may violate the Eighth Amendment
13   if they are "disproportionate to the reasons purportedly justifying such placement."  *Toussaint v.*
14   *Rushen*, 553 F. Supp. 1365, 1382 (N.D. Cal. 1983) [4]; *see also, Allen v. Nelson,* 354 F. Supp. 505,
15   512-13 (N.D. Cal. 1973) (Eighth Amendment proportionality principles forbid prolonged
16   isolation based on "vague assertions" that a prisoner was "aggressive" and "assaultive"), *aff'd*,
17   484 F.2d 960 (9th Cir. 1973).  To determine proportionality, the Court must consider whether a
18   given deprivation is reasonably related to a legitimate penological justification.  *Adnan v. Santa*
19   *Clara County Dept. of Corrs.*, No. 02-C-3451, 2002 U.S. Dist. LEXIS 28368 (N.D. Cal. Aug. 15,
20   2002) (Wilken, J.), *accord, United States v. Basciano*, 369 F. Supp. 2d 344, 351 (E.D.N.Y. 2005).
21   This requirement is especially essential when solitary confinement is unusually prolonged.
22   *Morris v. Travisono*, 549 F. Supp. 291, 294 (D.R.I. 1982).  And, as the Court explained in
23   *Madrid*, while certain conditions are so inherently harmful as to violate the Eighth Amendment
24   irrespective of penological justification, "a condition or other prison measure that has little or no

25

26

---

27   [4] While other aspects of the *Toussaint* Court's Eighth Amendment analysis of SHU assignment were
     called into question by the Ninth Circuit, *see*, *Toussaint v. Yockey,* 722 F.2d 1490, 1494 n.6 (9th Cir.
28   1984), this proposition remains good law.

1   penological value may offend constitutional values upon a lower showing of injury or harm"

2   889 F. Supp. at 1262-63; *Adnan,* 2002 U.S. Dist. LEXIS 28368 at *10.

3         Prolonged administrative segregation in harsh conditions might thus be proportional for a

4   "particularly violent offender," for example, but "reasons such as refusal to answer questions, or

5   labeling prisoners as agitators are not enough." *Allen,* 354 F. Supp. at 512.  Thus, in *Koch v.*

6   *Lewis,* the court found a constitutional violation where a prisoner was held for five and a half

7   years in Arizona's restrictive solitary confinement unit based on gang affiliation, without

8   evidence of overt misconduct.  216 F. Supp. 2d 994, 1007 (D. Az. 2001), *vacated as moot after*

9   *prisoner's release, Koch v. Schriro*, 399 F.3d 1099 (9th Cir. 2005).  Similarly, in *United States v.*

10  *Bout*, a court held that unsubstantiated allegations of terrorist affiliation, without evidence of

11  recent terrorist acts, could not justify holding a criminal defendant in SHU for 15 months. 860 F.

12  Supp. 2d 303, 308-310 (S.D.N.Y. 2012), *see also Hardiwick v. Ault*, 447 F. Supp. 116, 119, 125

13  (M.D. Ga. 1978) (designation of "problem prisoners" to restrictive wing of prison

14  disproportionately and capriciously inflicted pain in violation of Eighth Amendment).[5]

15        Plaintiffs' decades in solitary confinement under extremely punitive conditions are not the

16  result of violent criminal acts or serious rule violations.  Plaintiffs Ruiz, Johnson, Redd, Esquivel,

17  Reyes and Dewberry, for example, were validated as gang members or associates without

18  allegations of gang-related activity or rule violations, but instead based on their possession of

19  allegedly gang-related art, tattoos, written material, and/or inclusion of their names on alleged

20  lists of gang members and associates.  SAC ¶ 93.  They have been denied inactive status every six

21  years on similar evidence.  *Id*. ¶¶ 104-110.

22        Ten to twenty years of extreme deprivation at Pelican Bay is not reasonably related to the

23  legitimate security concerns raised by an individual who prison officials claim to be a gang

24

25  [5] Though the *Madrid* court opined in a footnote that proportionality analysis does not apply to administrative action (*see* 889 F. Supp. at 1275 n. 225), the Court's analysis elsewhere in the opinion belies this bright line rule.  *See id.* at 1262-63, *see also Toussaint*, 553 F. Supp. at 1382 (proportionality's

26  requirement that the conditions and duration of segregation bear reasonable relation to a legitimate penal justification is not limited to punitive measures, but also applies to allegedly "administrative action"),

27  *accord, Allen,* 354 F. Supp. at 511-12.  Moreover, the distinction is of little import, given that the 2010 statutory provision stripping Plaintiffs of their good time credits has rendered PB-SHU confinement

28  punitive rather than administrative.  *See* SAC ¶ 86; Point II.B *infra*.

1  member or associate but who has engaged in no violence or other serious gang-related

2  misconduct.  See *Koch*, 216 F. Supp. 2d at 1007, *cf.*, *Adnan*, 2002 U.S. Dist. LEXIS 28368 at *10

3  (noting that the Madrid court denied prisoners' Eighth Amendment claim only after assuming

4  "that the prisoners had appropriately been placed in administrative segregation based on their

5  disciplinary histories because they posed a significant security risk to the institution"); *see also*

6  *Peoples v. Fischer*, No. 11-civ-2694, 2012 WL 2402593, *1 (S.D.N.Y. June 26, 2012) (two-year

7  placement in SHU grossly disproportionate to non-violent prison rule-violations).

8
9
            **2.    Plaintiffs have Adequately Alleged an Eighth Amendment Violation
                    Based on the Coercive Nature of the Pelican Bay SHU**

10         Plaintiffs allege that their decades of uniquely restrictive confinement in the PB-SHU is

11  not motivated by any legitimate penological interest, but is actually designed to coerce Plaintiffs

12  to debrief, and become informants for the State.  SAC ¶¶ 31, 45-46, 52, 72, 78, 81, 183.  This

13  coercion violates the Eighth Amendment.

14         Because CDCR's 180-day and 6-year reviews do not actually provide a way out of the

15  SHU, even for a prisoner who has foresworn gang activity for decades, Plaintiffs' only avenue out

16  of the SHU is to debrief or die.  *Id.* ¶¶ 96-97, 99-122.  Yet, at the same time, were Plaintiffs able

17  to debrief, i.e., were they in possession of factual information about other gang members, doing

18  so would place them and their families at risk of death or grave physical harm.  *Id.* ¶ 7.  Thus

19  Plaintiffs are put in an untenable situation:  accept the crushing and seemingly permanent

20  conditions of confinement at PB-SHU or debrief and expose themselves and their families to

21  unspeakable brutality.  The result is "tantamount to indefinite administrative segregation for

22  silence – an intolerable practice in modern society."  *Griffin v. Gomez,* No. C-98-21038, slip op.

23  at *8-9, 11 (N.D. Cal. June 28, 2006).

24  **II.    PLAINTIFFS HAVE ADEQUATELY PLED A DUE PROCESS VIOLATION**

25         Defendants also urge the Court to dismiss Plaintiffs' procedural due process claim.  In

26  doing so, however, they ignore both the punitive nature of PB-SHU confinement as it currently

27  operates (and thus the amount of process Plaintiffs are due), as well as the constitutional

28  inadequacy of the current review process.  Plaintiffs' well-pled claim must stand.

1

### A.    Plaintiffs Have Plausibly Alleged a Liberty Interest

2    Defendants do not challenge Plaintiffs' allegation of a liberty interest in avoiding PB-SHU

3    designation.  *See* MTD at 13.  Nor could they under *Wilkinson v. Austin*, 545 U.S. 209, 223-24

4    (2005) (finding a liberty interest where, *inter alia*, prisoners were deprived of almost all human

5    contact, exercise was one hour per day, and duration of incarceration was prolonged by

6    placement); *see also Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) ("a major difference

7    between the conditions for the general population and the segregated population triggers a right to

8    a hearing," and relevant factors are "whether there is a likelihood that the transfer will affect the

9    duration of [the prisoner's] sentence . . . and the duration of the transfer").[6]

10

### B.    Plaintiffs Are Entitled To *Wolff* Hearings

11    Along with a liberty interest, Plaintiffs have also pled a denial of adequate process.  *See*

12    SAC ¶¶ 91-122.  Defendants argue that the policy of assigning "suspected" gang affiliates to the

13    SHU is not "disciplinary," but an "administrative strategy" that requires "minimal" procedural

14    protections.  MTD at 13.  In so arguing, Defendants fail to grapple with the current consequences

15    of SHU assignment and thus misidentify the level of process Plaintiffs are due.

16    In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that where a

17    prisoner faces punitive sanctions – namely, the loss of good time credit – he is entitled to a more

18    robust due process hearing that must include:  1) advance written notice of the claimed violation

19    and a written statement as to the evidence relied upon and the reasons for the action taken; and

20    2) an opportunity for the prisoner to call witnesses and present documentary evidence in his

21    defense.  *Id.* at 557, 563, 566; *see also Wilkinson*, 545 U.S. at 288 (citing *Wolff* for the proposition

22    that revocation of good time credits for misbehavior calls for "more formal, adversary-type

23    procedures").  Since 2010, California prisoners who are in the SHU for gang affiliation are denied

24    their statutory right to earn good time credit.  *See* CAL. PEN. CODE §§ 2933, 2933.05, 2933.6(a);

25    SAC ¶ 86.  This deprivation of good time credits is not even arguably related to the

26    "administrative" rationale for segregating alleged gang members.  Combined with the

27    _____

28    [6] Should the Court have further questions about this analysis, Plaintiffs respectfully request permission to submit supplementary briefing.

1   extraordinary length of time Plaintiffs have been confined at the PB-SHU, and viewed in light of

2   the harsh conditions there, the post-2010 withholding of good time credit has made clear that PB-

3   SHU assignment is a punitive rather than administrative measure that "affects [Plaintiffs'] term of

4   confinement," and entitles them to *Wolff*'s heightened process.  418 U.S. at 547.

5        Tellingly, the cases on which Defendants rely to argue that Plaintiffs are entitled to only

6   minimal administrative process predate these critical 2010 amendments.  *See* MTD at 13 (citing

7   *Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003), and *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir.

8   1986)).  Even if "the heightened standard of *Wolff*" did not apply when *Bruce* and *Toussaint* (and

9   also *Madrid*) were decided, 351 F.3d at 1287, Plaintiffs are now entitled to *Wolff*'s protections.

10  Indeed, since 2010, courts in this District have treated SHU confinement as a punitive measure

11  imposed for gang membership or association (which is analyzed as in-prison misconduct) in

12  rejecting *ex post facto* challenges to the new statutory bar on earned credits.  *See*, *e.g.*, *Soto v.*

13  *Lewis*, No. C 11-4704, 2012 U.S. Dist. LEXIS 158455 at *18 (N.D. Cal. Nov. 5, 2012) ("[g]ang

14  affiliation in California prisons is like any of the other many forms of misconduct in prison that

15  can affect the ultimate length of time the prisoner spends in prison"); *Nevarez v. Lewis*, No. C 12-

16  1912, 2012 U.S. Dist. LEXIS 119966 at *27 (N.D. Cal. Aug. 23, 2010) ("[g]ang affiliation is

17  viewed as ongoing misconduct by prison officials and state courts").  CDCR cannot have it both

18  ways:  if SHU confinement is punishment triggered only by the date of in-prison gang

19  membership or association for *ex post facto* purposes, *see id.*, it cannot also be considered

20  "administrative" for due process purposes.

21       Thus, each time a prisoner is validated or revalidated as a gang associate (both of which

22  result in six years in the PB-SHU), he is constitutionally entitled to a *Wolff*-type hearing.  It is

23  indisputable that Plaintiffs have received no such hearings, SAC ¶¶ 96-122, and CDCR does not

24  and cannot argue to the contrary.[7]

25

26

27

28  [7] Nor will such hearings occur under CDCR's pilot program, *see infra,* section III.

C.       **Even if SHU Assignment is Administrative, Plaintiffs Have Been Denied Notice and Periodic Review Under *Hewitt***

Even if Defendants are correct that Plaintiffs' segregation is administrative in nature, Plaintiffs are still entitled to notice and an opportunity to present their views prior to that segregation. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).  Moreover, "[a]dministrative segregation may not be used as a pretext for indefinite confinement of an inmate," and periodic review is required. *Id.* at 477 n.9.  Defendants fail to respond to Plaintiffs' well-pleaded allegations that they have been deprived of both notice and adequate periodic review, instead asserting that Plaintiffs' due process claim is based only on their lack of gang-related rules violations or illegal acts. *See* MTD at 13, 14.  This crudely misrepresents Plaintiffs' actual claim.

1.       **Periodic Reviews of Plaintiffs' SHU Confinement Are Too Infrequent**

Defendants do not dispute that Plaintiffs are entitled to timely reviews of their placement in the SHU under *Hewitt*, or that these reviews must be "meaningful." *Williams v. Hobbs*, 662 F.3d 994, 1009 (11th Cir. 2011).  While precedent is not yet clear as to how frequently review must occur, annual review is too infrequent. *Toussaint v. McCarthy*, 801 F.2d 1080, 1101 (9th Cir. 1986)*, see also Alston v. Cahill*, No. 3:07-cv-473, 2012 U.S. Dist. LEXIS 112982 at *28 (D. Conn. Aug. 10, 2012) ("annual reviews are likely too infrequent to satisfy the requirements of *Hewitt*").  Here, Plaintiffs allege that, unless they debrief, their only review that could possibly result in their release from the SHU is the so-called "inactive review" that occurs every *six* years – far longer than in other state or federal prison systems.  SAC ¶ 99.

Nor does the classification committee that reviews the prisoner's status every 180 days, *see* Cal. Code Regs. tit. 15, § 3341.5(c)(2)(A)(1), cure this defect.  Unless a prisoner is willing to debrief, these reviews offer no possibility of release from the SHU.  SAC ¶¶ 96, 97.  No examination of continued gang activity or association occurs, nor is there any assessment of whether the prisoner's behavior requires continued SHU placement. *Id.* ¶ 98.  Indeed, the *only* way a prisoner can participate in, or be released from the SHU pursuant to this purported review process, is by debriefing. *Id.* ¶¶ 97, 120.  But as Plaintiffs have plausibly alleged, and as courts have recognized, debriefing is not only untenable for many prisoners, but it unreasonably

1   conditions release from inhumane conditions on cooperation that places prisoners and their

2   families in significant danger of retaliation.[8]  *Id.* ¶ 7; *Griffin*, No. C-98-21038 ("[r]espondents'

3   refusal to reconsider the classification of former gang members who are unwilling to risk

4   retaliation, such as Petitioner, renders those inmates' segregation not merely indeterminate, but

5   effectively permanent"); *see also Wilkinson*, 545 U.S. at 227 ("Testifying against, or otherwise

6   informing on, gang activities can invite one's own death sentence").  Thus, the only reviews that

7   pose even a theoretical possibility of release from the SHU are the inactive reviews, and those

8   occur only every six years.  SAC ¶ 99.  This is constitutionally inadequate.

9              **2.      Inactive Reviews Fail To Provide Plaintiffs With Adequate Notice**

10          According to CDCR, if a prisoner "has had no gang activity" for six years, he shall be

11  considered "inactive," and considered for release.  CDCR, ADULT INSTITUTIONS, PROGRAMS, AND

12  PAROLE OPERATIONS MANUAL, art. 22, § 52070.18.4 (2012); *see also* CAL. CODE REGS. tit. 15,

13  § 3378(e).  In order to provide Plaintiffs with meaningful notice, this inactive review "should

14  provide a guide for future behavior (i.e., it should give the prisoner some idea of the requirements

15  for, and his progress toward, more favorable placement)."  *Toevs v. Reid*, 646 F.3d 752, 758 (10th

16  Cir. 2011) (citing *Wilkinson*, 545 U.S. at 226 (noting approvingly that Ohio provided prisoners

17  notice that "serves as a guide for future behavior")); *see also Greenholtz v. Inmates of Neb. Penal

18  and Corr. Complex*, 442 U.S. 1, 15 (1979) (noting that prisoners denied parole were given notice

19  of the reason "as a guide to the inmate for his future behavior").

20          The notice provided by the inactive reviews, however, is misleading and meaningless.

21  Plaintiffs are told that they will be considered "inactive" if they engage in no gang "activity."

22  The plain meaning of these words suggests that in order to have engaged in gang "activity," a

23  prisoner must have taken some kind of action, or have performed a specific function or duty, on

24  behalf of a gang.  Similarly, a prisoner would logically become "inactive," and therefore earn

25  release from the SHU, if he has *not* performed any specific acts on behalf of a gang, and is merely

26  

_____

[8] The *Madrid* court noted that a "number of prison staff agree that inmates who debrief and gain release
27   from the SHU are considered 'snitches,' and thus face serious risks of being attacked or even killed by
    other inmates," but did not analyze the debriefing process in light of this threat of retaliation, perhaps
28   because "no evidence of actual reprisals was introduced at trial."  889 F. Supp. at 1241.

1    a member or associate without anything more.  As the Supreme Court put it, "the distinction

2    between 'active' and 'nominal' membership is well understood in common parlance."  *Scales v.*

3    *United States*, 367 U.S. 203, 222-23, 225 (1961) ("active" member of the Communist Party must

4    mean "more than the mere voluntary listing of a person's name on Party rolls").

5         Moreover, this common sense understanding of "activity" and "inactivity" was explicitly

6    endorsed when CDCR officials publicly agreed in the 2004 *Castillo v. Almeida* settlement that

7    "laundry lists" – that is, lists by confidential sources of alleged associates or members without

8    reference to gang-related acts – would not be used to either validate a prisoner as a gang affiliate

9    or deny him inactive status, and that "'the confidential source must identify specific gang activity

10   or conduct performed by the alleged associate or member before such information can be

11   considered as a source item.'"  SAC ¶ 118-19; *Castillo*, C-94-2847 (N.D. Cal. 1994).

12        Despite the plain language of the regulations and the *Castillo* settlement, Plaintiffs who

13   have engaged in no discernible gang activity have nonetheless been routinely denied inactive

14   status.[9]  SAC ¶ 201.  Defendants continue to deny prisoners inactive status based on laundry lists

15   and on informants who identify no specific gang-related conduct.  *Id.* ¶¶ 103-10 (source items

16   include possession of laundry lists of purported gang members and associates, photocopied

17   drawings, owning a book about George Jackson, and possessing a pamphlet in Swahili, "a banned

18   language").  The terms "gang activity" and "inactive" as used by Defendants continue to be of

19   indecipherable and apparently unbounded scope, meaning that prisoners who are not involved in

20   any current gang activity are routinely retained in the SHU. As such, Plaintiffs have plausibly

21   alleged that they are denied notice of what they can do to earn release from the SHU, and that

22   they are given misleading notice that they can earn release from the SHU by refraining from

23   engaging in gang activities.

24

25

26

27
_____

28   [9] In some cases, like that of Plaintiffs Ashker and Troxell, Defendants have made a predetermined decision
     to deny inactive status until they either debrief or die.  SAC ¶ 101.

1

**D.      Plaintiffs Do Not Raise a Due Process Claim Arising from the Denial of Parole, Nor is Plaintiff Ashker's Due Process Claim Precluded**

2

3      Defendants complain that Plaintiffs directly challenge their denial of parole, insisting that

4   such a claim must be brought in a habeas corpus proceeding.  MTD at 15-16.  Defendants have

5   already made this argument unsuccessfully, *see* Docket No. 132 at 6, and it is based on a clear

6   misreading of the Second Amended Complaint.  Plaintiffs raise allegations regarding parole as

7   part of the liberty interest inquiry required under *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

8   *See also Wilkinson*, 545 U.S. at 215, 224 (utilizing an alleged "no parole" rule as part of the

9   liberty interest analysis).  Plaintiffs do *not* allege that the denial of parole constitutes an

10  independent due process violation.  SAC ¶¶ 193-202.  Moreover, Plaintiffs seek no relief that

11  would result in a grant of parole or release from prison; rather, they seek release from segregation

12  in the SHU.  SAC at p.46.  As the Ninth Circuit has recognized, such relief is properly sought

13  under § 1983.  *See Toussaint*, 801 F.2d at 1103.

14     Finally, Defendants assert that Plaintiff Askher's due process claim is precluded "to the

15  extent he challenged CDCR's gang validation procedures."  MTD at 15.  Again, Defendants have

16  already unsuccessfully made this argument.  *See* Docket No. 132 at 5.  The operative facts at

17  issue in this case occurred after Mr. Askher's prior due process case, and thus he was previously

18  incapable of presenting the controversy pleaded in the current action.  *See* Docket No. 133 at 5-6

19  (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. a (1982), *Hiser v. Franklin*, 94 F.3d

20  1287, 1288, 1292 (9th Cir. 1996), *cert. denied* 520 U.S. 1103 (1997)).  Moreover, the claims at

21  issue in the prior litigation are legally and substantively distinct from those alleged here.  *Id*. at 7.

22  His claims must therefore proceed.

23  **III.    DEFENDANTS HAVE NOT ESTABLISHED THAT PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIM IS MOOT OR THAT THE CASE SHOULD BE STAYED**

24

25     Along with dismissal for failure to state a claim, Defendants also urge the Court to dismiss

26  Plaintiffs' procedural due process claim as moot or, in the alternative, to stay the claim for some

27  unspecified duration.  Because Defendants have not met the heavy burden of proving mootness,

28  and because the equities do not support a stay, the Court should deny this motion.

1

## A.    Defendants Fail To Meet their Heavy Burden of Proving Mootness

Defendants argue that Plaintiffs' due process claim is mooted by CDCR's voluntary implementation in October 2012 of a two-year pilot program that temporarily alters SHU review procedures.  The burden of demonstrating mootness "is a heavy one," and requires a showing that a live controversy no longer exists.  *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953), *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 853-54 (9th Cir. 1985).  Defendants fail to meet this burden, as a mootness dismissal would sacrifice Plaintiffs' well-pleaded challenge without any assurance of permanent or meaningful change to PB-SHU practices.

First, and most fundamentally, Defendants' mootness argument is ill-conceived, as the pilot program is explicitly temporary; it expires by its own terms in October of 2014.  *See* Docket No. 161-1 (STG Pilot Program Information Memorandum) at 6 ("The pilot program will remain in effect for a 24-month period from the date it is filed with the Secretary of State, at which time it will lapse by operation of law or will be promulgated through the Administrative Procedure Act.").  Moreover, not a single Plaintiff has yet experienced any change in his situation, or any review, as a result of the pilot program.  To the contrary, the old system continues:  in January of 2013 Plaintiff Troxell received Defendants' decision denying him inactive status under the old inactive review process, not the pilot program.  *See,* Lobel Declaration ¶¶ 2-3.  Defendants insist that each Plaintiff's status will be reviewed under the pilot program, but they do not say *when*, nor is it clear that CDCR will be able to complete the necessary reviews before the pilot program sunsets.

Even if Defendants are correct that the program will "enhance[e] considerations of due process," (MTD at 10), it cannot moot Plaintiffs' claim, as "voluntary cessation of allegedly illegal conduct does not make a case moot."  *Lindquist*, 776 F.2d at 854.  So long as a "defendant is free to return to its illegal action at any time," the case is not moot.  *FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) (internal quotation omitted).  Rather, mootness requires a Defendant to show that "'subsequent events [have] made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur.'"  *Id*. (quoting *Norman-Bloodsaw v.*

1   *Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1274 (9th Cir. 1998)); *Friends of the Earth,*

2   *Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000).

3          Defendants cannot meet this exacting standard.  First, it is indisputable that Plaintiffs'

4   alleged due process violation has not yet been corrected, as Plaintiffs have not yet been reviewed

5   under the pilot program.  And the pilot program expires by its own terms two years from its

6   effective date.  *See* Docket No. 161-1 at 6.  Absent affirmative action extending the program, in

7   October of 2014 the law requires CDCR to return to the gang-validation policies described in

8   Plaintiffs' complaint.

9          CDCR has not said how it will determine whether the program should be extended.

10  Instead, Defendants provide a self-serving representation that "CDCR does not intend to return to

11  its enforcement of the regulations challenged by Plaintiffs," MTD at 10, and an even more

12  equivocal assertion by a CDCR annuitant that he "believe[s]" that CDCR will adopt the program,

13  Docket No. 161 at ¶ 10.  This simply does not establish mootness.  *See*, *e.g.*, *W.T. Grant*,

14  345 U.S. at 632 n.5, 633 (rejecting mootness claim where "defendants told the court that the

15  [challenged] interlocks no longer existed and disclaimed any intention to revive them," because

16  "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of

17  repentance and reform").[10]  Unless and until CDCR permanently implements a constitutionally

18  sufficient program, Plaintiffs' due process challenge to the current procedures remains live.

19         Moreover, even if permanent implementation of the pilot program does occur, it certainly

20  does not provide the *Wolff* hearings the law requires, and it is entirely unclear how it will affect

21  Plaintiffs.  Indeed, the pilot program looks surprisingly like the policies described in Plaintiffs'

22  Second Amended Complaint.  Under both, "confirmed STG behavior or intelligence" used to

23  validate prison gang affiliates and subject them to indefinite SHU confinement may merely

24  involve possession of artwork or a photograph.  *Compare* Docket No. 161-1 at § 200.2 *and*

25  Docket No. 161-2 at § 600.1 *with* SAC ¶¶ 104, 105, 107, 108 (plaintiffs denied inactive status

26  based on possession of artwork).  The pilot program still allows for gang validation in the absence

27  _____

28  [10] Plaintiffs have every reason to be skeptical of CDCR's stated intentions with respect to extending the
    pilot program given CDCR's failure to implement the *Castillo* settlement.  *See supra*, section II.C.

1   of proven gang-related misconduct or a proper hearing.  *See* Docket No. 161-2 at § 600.3.  And

2   while the pilot program does create a new committee to review validations, those "reviews" will

3   nevertheless be conducted by the same CDCR officials, applying the same criteria proven to be

4   merely a rubber stamp under the old framework. SAC ¶ 96, 116, 120 (alleging routine

5   revalidation without evidence of gang activity).

6        Indeed, courts in this District have denied nearly identical mootness arguments based on

7   prior revisions to CDCR's gang-validation procedures.  *See, e.g.*, *Griffin*, No. 98-21038 at *4-5

8   ("a change in procedures does not moot a case when the underlying constitutional issue

9   remains .…  Here, Petitioner maintains that . . . no amount of evidence of disassociation from a

10  gang will persuade [CDCR] to release an inmate from the SHU . . . .  The mere existence of

11  procedures by which Respondents could release him without debriefing does not by itself negate

12  that argument").  Similarly, the mere existence of temporary policies that *could* be used to release

13  Plaintiffs into the general population after completing a four-year step-down program does not

14  eviscerate the live controversy presented by their due process claims.  Plaintiffs have not alleged

15  that CDCR is incapable of releasing them from the SHU; as in *Griffin*, they allege that for

16  decades Defendants have denied them inactive status and they expect nothing to change.

17       The cases on which Defendants rely do not support their mootness argument.  In *Green v.*

18  *Mansour*, 474 U.S. 64-67 (1985), mootness was only established because it was undisputed that

19  there was a permanent amendment to the statutory provisions at issue that explicitly addressed

20  and cured the challenged deficiencies.  While CDCR's pilot program also has "the force of law"

21  (MTD at 10), the very terms of the regulations make it temporary.  And in *Burke v. Barnes*,

22  479 U.S. 361, 363 (1987), a challenge to the President's effort to "pocket veto" a bill became

23  moot when the bill expired on its own terms while the case was on appeal.  Here, by contrast, the

24  temporary pilot program neither appears to cure the challenged aspects of CDCR's gang-

25  validation procedures, nor does it permanently replace the procedures of which Plaintiffs

26  complain.

27

28

1

**B.     A Stay is Not Warranted**

2      Defendants argue in the alternative that Plaintiffs' due process claims should be stayed

3  pending "full implementation of the STG pilot program."  MTD at 11.  Defendants are silent as to

4  when that will occur.

5      A stay is inappropriate.  As Defendants concede, key considerations in assessing the

6  propriety of a stay are preserving judicial economy and avoiding potential harm to the parties and

7  the public interest.  *Id.*; *Dependable Highway Express v. Navigators Ins. Co.*, 498 F.3d 1059,

8  1066-67 (9th Cir. 2007).  These interests are met by allowing this case to proceed.

9      First, the parties and the Court will expend resources resolving Plaintiffs' Eighth

10 Amendment claims irrespective of whether the due process claims are stayed.  Bifurcating the

11 case would result in inefficient, sequential discovery, as the facts relating to both claims must be

12 discovered from the same source.  *See*, *e.g.*, *Tokuyama v. Vision Dynamics*, No. 08-2781, slip op.

13 at 5 (N.D. Cal. Oct. 3, 2008) (denying motion for stay in part because of remaining counterclaim);

14 *IMAX Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030, 1032-33 (C.D. Cal. 2005) (same); *Enprotech*

15 *Corp. v. Autotech Corp.*, No. 88-4853, 1990 WL 37217, *1-2 (N.D. Ill. Mar. 16, 1990) (denying

16 motion for stay pending outcome of patent reexamination proceedings because proceedings

17 would not resolve claim for inequitable conduct).

18      Second, "'if there is even a fair possibility that the stay . . . will work damage to someone

19 else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or

20 inequity.'"  *Dependable Highway Express*, 498 F.3d at 1066 (*quoting Landis v. North Am. Co.*,

21 299 U.S. 248, 255 (1936)).  Here, Plaintiffs may continue to suffer abominable conditions in

22 solitary confinement while a stay is in effect.  Defendants, on the other hand, can only point to the

23 expenditure of resources on the litigation if a stay is not granted.  "[B]eing required to defend a

24 suit … does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."

25 *Id. (quoting Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)).

26      In conclusion, it is not clear whether the pilot program will significantly alter the practices

27 complained of in Plaintiffs' claim.  Discovery, rather than a stay, is appropriate to discern this

28

1   impact.  For these reasons, the Court should deny Defendants' request to stay Plaintiffs'

2   Fourteenth Amendment claims.

3   **IV.    CONCLUSION**

4       For the reasons laid out above, Defendants' motion should be denied in its entirety.

5   Dated:  January 17, 2013          WEIL, GOTSHAL & MANGES LLP

6

7       By:       */s/ Gregory D. Hull*
                        Gregory D. Hull

8   GREGORY D. HULL
    Email:  greg.hull@weil.com

9   BAMBO OBARO
    Email:  bambo.obaro@weil.com

10  201 Redwood Shores Parkway
    Redwood Shores, CA  94065-1134

11  Tel:  (650) 802-3000
    Fax:  (650) 802-3100

12  RACHEL MEEROPOL (*pro hac vice*)
    Email:  rachelM@ccrjustice.org

13  ALEXIS AGATHOCLEOUS (*pro hac vice*)
    Email:  aagathocleous@ccrjustice.org

14  JULES LOBEL (*pro hac vice*)
    Email:  jll3@pitt.edu

15  CENTER FOR CONSTITUTIONAL RIGHTS
    666 Broadway, 7th Floor

16  New York, NY  10012
    Tel:  (212) 614-6432

17  Fax:  (212) 614- 6499

18  CHARLES F.A. CARBONE (SBN 206536)
    Email:  charles@charlescarbone.com

19  EVAN CHARLES GREENBERG (SBN 271356)
    Email:  evan@charlescarbone.com

20  LAW OFFICES OF CHARLES CARBONE
    P.O. Box 2809

21  San Francisco, CA  94126
    Tel:  (415) 981-9773

22  Fax:  (415) 981-9774

23  MARILYN S. MCMAHON (SBN 270059)
    Email:  marilyn@prisons.org

24  CALIFORNIA PRISON FOCUS
    1904 Franklin Street, Suite 507

25  Oakland, CA  94612
    Tel:  (510) 734-3600

26  Fax:  (510) 836-7222

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANNE BUTTERFIELD WEILLS (SBN 139845)
Email:  aweills@aol.com
SIEGEL & YEE
499 14TH STREET, SUITE 300
OAKLAND, CA  94612
Tel:  (510) 839-1200
Fax:  (510) 444-6698

CAROL STRICKMAN (SBN 78341)
Email:  carol@prisonerswithchildren.org
LEGAL SERVICES FO PRISONERS WITH
CHILDREN
1540 Market Street, Suite 490
San Francisco, CA  94102
Tel:  (415) 255-7036
Fax:  (415) 552-3150

Attorneys for Plaintiffs