KAMALA D. HARRIS
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General
ADRIANO HRVATIN
Deputy Attorney General
JILLIAN R. WEADER
Deputy Attorney General
State Bar No. 251311
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5797
 Fax:  (415) 703-5843
 E-mail:  Jill.Weader@doj.ca.gov
*Attorneys for Defendants*
*Brown, Cate, Lewis, and Chaus*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **GEORGE RUIZ, et al.,**<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>**EDMUND G. BROWN, JR., et al.,**<br><br>　　　　　　　　　Defendants. | C 09-05796 CW<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT, OR ALTERNATIVELY, TO STAY**<br><br>Date:  February 14, 2013<br>Time:  2:00 p.m.<br>Dept.:  Courtroom 2, 4th Floor<br>Judge:  The Honorable Claudia Wilken<br>Action Filed:  December 9, 2009 |

**TABLE OF CONTENTS**

Page

Statement ........................................................................................................................... 1

Argument ........................................................................................................................... 3

    I.    Plaintiffs' opposition makes clear that the complaint fails to state a due process claim under the fourteenth amendment. .................................................. 3

        A.    Plaintiffs are not entitled to *Wolff*-type review. ........................... 3

        B.    Plaintiffs' claims regarding denial of parole and denial of good time credits are precluded. ................................................................. 5

        C.    Plaintiffs have received due process. ......................................... 6

        D.    That the court permitted an amended complaint does not insulate plaintiffs' claims from challenge. ................................................ 9

        E.    Plaintiffs' due process claim is moot in light of the security threat group pilot program. ...................................................................... 10

    II.    Plaintiffs' opposition does not remedy the insufficiencies of the complaint's Eighth Amendment claim. ............................................................... 10

        A.    Plaintiffs have not identified a sufficiently serious deprivation to state a cruel and unusual punishment claim. ............................... 10

            1.    The complaint relies on alleged inadequate mental and physical health care, claims that are precluded by *Madrid*, *Coleman*, and *Plata*. ............................................................ 11

        B.    Plaintiffs have not adequately alleged that defendants were subjectively aware of the alleged harm to state a claim under the Eighth Amendment. ..................................................................... 13

Conclusion ........................................................................................................................ 14

i

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

# TABLE OF AUTHORITIES

Page

**CASES**

*Ashker v. Schwarzenegger*
No. 05-03286 CW (N.D. Cal.) .................................................................................................. 9

*Baker v. Walker*
No. 09-1290 KJM, 2012 U.S. Dist. LEXIS 172796 (E.D. Cal. Dec. 5, 2012) ......................... 5

*Bruce v. Ylst*
351 F.3d 1283 (9th Cir. 2003) .......................................................................................... passim

*Dependable Highway Express v. Navigators Ins. Co.*
498 F.3d 1059 (9th Cir. 2007) ................................................................................................ 10

*Farmer v. Brennan*
511 U.S. 825 (1994) ......................................................................................................... 13, 14

*Garcia v. Stewart*
No. 06-6735, 2009 U.S. Dist. LEXIS 20886 (N.D. Cal. Mar. 16, 2009) .............................. 7, 8

*Hewitt v. Helms*
459 U.S. 460 (1983) .................................................................................................................. 6

*Lopez v. Cate*
No. 11-2644 YGR, 2012 U.S. Dist. LEXIS 142027 (N.D. Cal. Sept. 30, 2012) .................. 4, 5

*Madrid v. Gomez*
889 F. Supp. 1146 (N.D. Cal. 1995) ................................................................................ passim

*Navarez v. Lewis*
No. 12-1912, 2012 U.S. Dist. LEXIS 119966 (N.D. Cal. Aug. 23, 2010) ............................ 4, 6

*Netbula, LLC v. Distinct Corp.*
212 F.R.D. 534 (N.D. Cal. 2003) ............................................................................................. 9

*Perkins v. Crum*
No. 11-16903, 476 Fed. Appx. 136 (9th Cir. Aug. 14, 2012) .................................................. 5

*Preiser v. Rodriguez*
411 U.S. 475 (1973) ........................................................................................................ 2, 5, 6

*Rodriguez v. Puente*
No. 11-17290, 478 Fed. Appx. 428 (9th Cir. July 11, 2012) ................................................... 5

*Schneider v. Cal. Dept. of Corr.*
151 F.3d 1194 (9th Cir. 1998) .................................................................................................. 5

ii

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

# TABLE OF AUTHORITIES
(continued)

Page

*Soto v. Lewis*
    No. 11-4704, 2012 U.S. Dist. LEXIS 158455 (N.D. Cal. Nov. 5, 2012) ............................ 4, 6

*Toussaint v. Mccarthy (Touissant II)*
    926 F.2d 800 (9th Cir. 1990) ............................................................................................. 4, 6

*Toussaint v. McCarthy*
    801 F.2d 1080 (9th Cir. 1986) ....................................................................................... 2, 4, 6

*Wilkerson v. Stadler*
    639 F. Supp. 2d 654 (M.D. La. 2007) ................................................................................. 13

*Wilkinson v. Austin*
    545 U.S. 209 (2005) ............................................................................................................ 2, 6

*Wilson v. Seiter*
    501 U.S. 294 (1991) ............................................................................................................. 10

*Wolff v. McDonnell*
    418 U.S. 539 (1974) ............................................................................................................. 1, 5

**STATUTES**

42 U.S.C.
    § 1983 .............................................................................................................................. passim

Cal. Code Regs. Title 15
    §§ 3378.1(c)-(d) ...................................................................................................................... 8
    § 3378(c)(1) ............................................................................................................................ 7

**CONSTITUTIONAL PROVISIONS**

Eighth Amendment .................................................................................................................... passim

Fourteenth Amendment ........................................................................................................... 1, 3, 14

**COURT RULES**

Rule 12(b)(6) .................................................................................................................................. 5

**OTHER AUTHORITIES**

Department Operations Manual
    § 52070.19.2 ............................................................................................................................ 8
    §§ 52070.19.8-8.1 .................................................................................................................... 8

iii

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

**STATEMENT**

Defendants' motion to dismiss established that, volume notwithstanding, Plaintiffs failed to state either a due process claim under the Fourteenth Amendment or a claim for cruel and unusual punishment under the Eighth Amendment. Plaintiffs' opposition to Defendants' motion to dismiss does not rectify or resolve the amended complaint's shortcomings. Plaintiffs' legal arguments do not support an actionable claim. Further, new allegations or theories asserted for the first time in Plaintiffs' opposition papers can be disregarded outright.

Plaintiffs argue that their due process challenge is not moot because the California Department of Corrections and Rehabilitation (CDCR) has only implemented a pilot program in connection with its gang validation and review procedures. It is not "permanent," Plaintiffs argue. (*See* Pls.' Opp'n Defs.' Mot. Dismiss (Opp'n) 1, ECF No. 178.) It is true that the pilot program is set to expire on October 18, 2014. But, Defendants demonstrated that they have no intention of reverting to the old regulations, now, over the next eighteen months, or upon the expiration of the pilot program. (Giurbino Decl. Supp'n Defs.' Mot. Dismiss (Giurbino Decl.) ¶¶ 9-10, ECF No. 161.) Defendants have established that Plaintiffs' due process claim is moot.[1]

Plaintiffs argue, for the first time in opposition, that they are entitled to the standard of due process review applicable to "disciplinary" segregation under *Wolff v. McDonnell*, 418 U.S. 539 (1974), because the state legislature amended a section of the Penal Code to provide, effective January 1, 2010, that SHU inmates are not eligible for good time credits. Plaintiffs, however, fail to cite to any authority to support the novel contention that, as a result of the statutory change, a *Wolff*-level of review is now warranted in the § 1983 context. Only minimal due process is required for prison administrative functions like SHU confinement, a well-established and

---

[1] Plaintiffs' counsel declares that inmate Troxell, a validated, active Aryan Brotherhood member for over twenty years and a litigant familiar to this Court, was recently denied inactive gang status "at a time period where the Defendants claim its pilot program was operational." (Lobel Decl. ¶ 2, ECF No. 178-1.) But counsel does not mention that the investigation that found Troxell to be an active Aryan Brotherhood member was conducted in the months *before* implementation of the STG pilot program (put aside that the evidence noted in counsel's declaration (*see*, *id.*, ¶ 3) absolutely supports Troxell's retention in the SHU under any standard). In addition, Troxell, along with the other nine named plaintiffs, will be reviewed on a case-by-case in accordance with the STG pilot program. (Giurbino Decl. ¶ 7, ECF No. 161.)

1

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

uncontroverted standard recognized and applied time and again from *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005), to *Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003), and *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir. 1986).  Innumerable cases called upon to "grapple with the current consequences of SHU confinement" (Opp'n 12), before and after the amendment to the Penal Code, have held that only minimal procedures are due.  Plaintiffs' opposition, even with its mischaracterization of the settlement that resolved the *Castillo* litigation, confirms that Plaintiffs have received the minimal due process protections they are owed.

Plaintiffs' additional efforts to salvage their due process claim are similarly without merit. If, as Plaintiffs contend, gang validation and review are no longer administrative, because Plaintiffs are no longer eligible for good time credits, their claims for injunctive relief are barred by *Preiser v. Rodriguez*, 411 U.S. 475 (1973).  Just like Plaintiffs' claim that their SHU confinement renders them ineligible for parole, the claim is one that needs to be raised on habeas corpus.  Moreover, inmates Ashker and Troxell, best efforts notwithstanding, cannot escape the preclusive effect of this Court's prior orders forbidding relitigation of due process issues like an alleged "no parole policy" or CDCR's gang validation guidelines.  That the Court granted them leave to amend is insignificant.

Plaintiffs alternatively argue that the Court should not stay litigation of their due process claim, but instead permit the parties to engage in discovery on the old validation and review procedures in title 15 as well as the new procedures promulgated and in effect in accordance with the Security Threat Group pilot program.  Plaintiffs' proposal breeds the inefficiency and burden the Court's discretion is intended to avoid.  The Court, accordingly, should stay litigation of Plaintiffs' due process claim until CDCR has fully implemented its new validation and review procedures, through application of which forty-three SHU inmates have been classified for release to the general population.

Plaintiffs' opposition also confirms that the second amended complaint fails to state a claim under the Eighth Amendment.  *First*, Plaintiffs do not sufficiently allege facts regarding the deprivation of a basic human need or right.  As named plaintiffs, each of them to state a claim must allege specific facts to meet the initial, objective prong of deliberate indifference related to

2

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

their SHU confinement. Plaintiffs' complaint fails in this regard, as it alleges, for instance, that the food provided to SHU inmates generally is "substandard" (Pls.' Second Am. Compl. (SAC) ¶ 71, ECF No. 136) or that the "temperature in the cells can be excessively hot or cold" (*id*. ¶ 61). Moreover, that "most" but unspecified Plaintiffs, sleep "one to three hours" a night (Opp'n 5), is insufficient to state a claim.[2] Plaintiffs contend that long-term SHU confinement presents a host of deprivations that are "obvious." (Opp'n 7-8.) But no class has been certified in this case and the focus must be on what harm the named plaintiffs have alleged. Vague and conclusory allegations regarding what physical or mental harm SHU inmates generally may experience from their SHU confinement, even for indeterminate periods, do not state a cognizable claim.

*Second*, the subjective element of deliberate indifference requires actual knowledge of harm. Defendants' motion to dismiss established that the potential physical, medical, and mental health issues associated with SHU assignments, even indeterminate ones, have been (and continue to be) addressed by CDCR through ongoing extensive class-action litigation (*i.e.*, through *Madrid*, *Coleman*, and *Plata*). Plaintiffs contend that they "do not advance discrete medical care claims." (Opp'n 4 n. 1.) Not one Plaintiff alleges that he is mentally ill or at serious risk of serious mental illness. At bottom, the overall conditions of the SHU, although strict, have not been found to constitute cruel and unusual punishment as to inmates who lack mental illness or serious risk of mental illness. *Madrid v. Gomez*, 889 F. Supp. 1146, 1261 (N.D. Cal. 1995). Plaintiffs have had a full and fair opportunity to allege what specifically substantiates their Eighth Amendment claim. Having failed to do so, the claim should be dismissed.

## ARGUMENT

**I.   PLAINTIFFS' OPPOSITION MAKES CLEAR THAT THE COMPLAINT FAILS TO STATE A DUE PROCESS CLAIM UNDER THE FOURTEENTH AMENDMENT.**

**A.   Plaintiffs Are Not Entitled to *Wolff*-Type Review.**

Plaintiffs claim that Defendants are wrong to "assert" that CDCR's gang validation and review procedures are administrative. (Opp'n 1-2, 12.) But countless courts have clearly held

---

[2] The operative pleading only alleges that, among the ten, inmates Johnson and Ashker experience problems sleeping. (SAC ¶¶ 128-29.)

3

that segregation of inmates for security reasons such as gang validation is an administrative function. *Touissant*, 801 F.2d at 1098-1101 (stating that "when prison officials initially determine whether a prisoner is to be segregated for administrative reasons[,] due process only requires [that] [p]rison officials must hold an informal nonadversary hearing within a reasonable time," "inform the prisoner of the charges against the prisoner or their reasons for considering segregation," and "allow the prisoner to present his views"); *Bruce*, 351 F.3d at 1287 ("California's policy of assigning suspected gang affiliates to the Security Housing Unit is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates.") (citations omitted); *Lopez v. Cate*, No. 11-2644 YGR, 2012 U.S. Dist. LEXIS 142027, at *10-18 (N.D. Cal. Sept. 30, 2012) ("The Ninth Circuit Court of Appeals has stated that housing gang affiliates in the SHU is administrative[.]")(citing *Bruce*, 351 F.3d at 1287).

Plaintiffs argue that because California amended its Penal Code in 2010 to cease giving SHU inmates good time credits, the gang validation process is now disciplinary and thus governed by an entirely new standard. (Opp'n 12.) But Plaintiffs cite no authority to support this novel contention. Instead, Plaintiffs cite two cases in this District in which courts rejected petitions for habeas corpus, not cases under § 1983, affirming state court decisions holding that the loss of good time credits was not an ex post facto law. (Opp'n 13 (citing *Soto v. Lewis*, No. 11-4704, 2012 U.S. Dist. LEXIS 158455, at *18 (N.D. Cal. Nov. 5, 2012); *Navarez v. Lewis*, No. 12-1912, 2012 U.S. Dist. LEXIS 119966, at *27 (N.D. Cal. Aug. 23, 2010).)) These cases do not hold that gang validation is disciplinary, nor do they negate Ninth Circuit precedent holding that validation is an administrative function.

Plaintiffs take issue with Defendants' citation to Ninth Circuit cases before 2010, claiming that since the Penal Code was amended at that time, these cases no longer apply. (Opp'n 19.) But even after 2010, numerous courts have held that gang validation and review are

///

///

///

4

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

administrative, not disciplinary, prison functions.[3]  Indeed, no court has held that CDCR's validation and review procedures are now disciplinary and therefore entitled to a *Wolff* standard of review.[4]  Because gang validation and review are administrative, not disciplinary, Plaintiffs are not entitled to *Wolff* review.  Plaintiffs were each given notice and an opportunity to be heard under the validation and review procedures set forth in title 15.  Plaintiffs fail to state a due process claim.

### B. Plaintiffs' Claims Regarding Denial of Parole and Denial of Good Time Credits are Precluded.

The process of gang validation and review is administrative, not disciplinary.  But even if the process has now suddenly, as Plaintiffs contend, become disciplinary, due to the denial of good time credits, Plaintiffs' claims regarding parole eligibility and the restoration of credits are barred by *Preiser*.  These claims cannot be brought under section 1983.  *Preiser*, 411 U.S. at 487.

Plaintiffs insist that they "do not raise a due process claim arising from the denial of parole" (Opp'n 17, Heading D), and that "Plaintiffs seek no relief that would result in a grant of parole or release from prison" (*id.* at 17).  But that is not true.  Plaintiff's opposition clearly states that the "withholding of good time credit has made clear that [Pelican Bay] SHU assignment is a punitive . . . measure *that affects Plaintiffs' term of confinement*[.]" (*Id.* at 19 (emphasis added and citations omitted).)  Plaintiffs clearly allege that "[w]hether SHU confinement extends the duration of incarceration because of a de facto policy of denying parole to SHU prisoners" is a "common question" to Plaintiffs.  (SAC ¶ 171(f).)  Despite what they now claim, Plaintiffs' second amended complaint does allege that the denial of parole (*id.* at ¶¶ 14, 20, 23, 87-90, 196,

---

[3] *See, e.g.*, *Rodriguez v. Puente*, No. 11-17290, 478 Fed. Appx. 428, 429 (9th Cir. July 11, 2012); *Perkins v. Crum*, No. 11-16903, 476 Fed. Appx. 136, at *1 (9th Cir. Aug. 14, 2012) (citing *Bruce*, 351 F.3d at 1287); *Lopez*, 2012 U.S. Dist. LEXIS 142027, at *10-18; *Baker v. Walker*, No. 09-1290 KJM, 2012 U.S. Dist. LEXIS 172796, at *5 (E.D. Cal. Dec. 5, 2012)).

[4] Plaintiffs cannot now call for a due process standard beyond what the Supreme Court and Ninth Circuit have deemed constitutionally sufficient, when it was not part of the complaint. *Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (citation omitted) (providing that, in the face of a Rule 12(b)(6) challenge, "a court may not look beyond the complaint to a plaintiff's opposition").  Plaintiffs' complaint seeks a "meaningful review." (SAC ¶ 10.)  But the complaint does not ask for any of the *Wolff* procedures.

5

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

199), and the loss of good time credits affects the length of Plaintiffs' sentence and therefore constitutes a violation of due process. (e.g., SAC ¶ 199.) These claims are barred by *Preiser*.

Plaintiffs cite *Touissant* for the proposition that Plaintiffs can proceed under § 1983, but *Touissant* only allows for a § 1983 claim when Plaintiffs seek release from segregation, not the restoration of credits or eligibility for parole. (Opp'n 17.) Even *Touissant* recognized that where plaintiffs "seek[ ] . . . *a speedier release* from that imprisonment, [the] sole federal remedy is a writ of habeas corpus." *Touissant*, 801 F.2d at 1103 (citing *Preiser,* 411 U.S. at 500).

It is no coincidence that the cases Plaintiffs cite for the novel proposition that gang validation is a disciplinary function were brought as habeas petitions. *See Soto*, 2012 U.S. Dist. LEXIS 158455, at *18; *Navarez*, 2012 U.S. Dist. LEXIS 119966, at *27. Plaintiffs cannot bring a 1983 claim for injunctive relief based on regulations or procedures that affect the duration of confinement. *Preiser,* 411 U.S. at 487.

**C. Plaintiffs Have Received Due Process.**

CDCR's gang validation procedure satisfies the requirements of providing notice and an opportunity to be heard. *Bruce*, 351 F.3d at 1287. Once the initial validation has occurred and an inmate is placed in segregation, the inmate is then entitled to "some sort" of periodic review of his status. *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983); *Wilkinson*, 545 U.S. at 229 (upholding a procedure that provides for review at least annually of continued retention in a supermax facility). Reviews of segregation every 120 days comply with constitutional requirements for due process. *Toussaint v. Mccarthy (Touissant II)*, 926 F.2d 800, 803 (9th Cir. 1990) (finding 120-day schedule permissible). Plaintiffs have not cited any authority to show that CDCR's 180-day reviews would not be similarly constitutional.

Plaintiffs ignore the 180-day reviews by the Institution Classification Committee (ICC) and the annual reviews conducted by the Unit Classification Committee (UCC), and instead argue that being validated as a gang associate automatically results in six years in the SHU. (Opp'n 13-14.) But the UCC and ICC do review whether an inmate is still associated with a gang by assessing whether the inmate has debriefed or wishes to debrief. The purpose of these 180-day and annual reviews is not for an inmate to re-argue his validation, but instead to determine

6

whether the gang activity and resulting security concern that caused his placement continue to exist. As in *Madrid*, here Plaintiffs "essentially argu[e] . . . that, at some point, there is no longer 'some evidence' to retain an inmate in the SHU, despite the absence of a debriefing, where the inmate has not engaged in any prison gang activity and there is no new evidence confirming the inmate's continued association with the prison gang." *Madrid*, 889 F. Supp. at 1178. The *Madrid* Court rejected this argument, finding that inmates who join such gangs join "for life," and holding that "the fact that the inmate may not have affirmatively engaged in gang activity after confinement in the SHU does not, in and of itself, vitiate the inmate's gang membership." *Id.*

Plaintiffs are dissatisfied that gang validation and revalidation decisions are not tied to any "illegal act [taken by Plaintiffs] on behalf of a gang" or whether Plaintiffs were "actually involved in gang activity[.]" (SAC ¶ 6.) But "prison regulations do not require that an inmate actually be involved in unlawful gang activity in order to be validated as an active gang member." *Garcia v. Stewart*, No. 06-6735, 2009 U.S. Dist. LEXIS 20886, at *28-*29 (N.D. Cal. Mar. 16, 2009). Instead, under Cal. Code Regs. tit. 15, § 3378(c)(1), revalidation can be based on "any documented gang activity within the past six years[,]" and under § 3023, "gang activity" exists when inmates "knowingly promote, further or assist any gang." *Garcia*, 2009 U.S. Dist. LEXIS 20886, at *29. The standard, despite Plaintiff's contentions, is not whether Plaintiffs committed additional criminal acts after their validation. *Id.*; *Bruce,* 351 F.3d at 1287.

Plaintiffs claim that the *Castillo* settlement changed the validation procedures to require Defendants to determine whether Plaintiffs have "engaged in . . . discernible gang activity" or "specific gang-related conduct." (Opp'n 16.) But Plaintiffs misrepresent the *Castillo* settlement. The settlement agreement did not limit validation evidence to conduct or criminal activity. It allows for validation to rely on photographs, tattoos, symbols, written materials, and even address books, so long as prison staff have an articulable basis for why address book contents are evidence of gang association. *Castillo* Settlement Agreement p. 6 (attached as Exhibit A to Defendants' Second Request for Judicial Notice, filed concurrently). In addition, allegations that Defendants violated the *Castillo* settlement "do not state a claim for relief under 42 U.S.C. § 1983, for the reason that a remedial court decree does not provide a right secured by the

7

Constitution or laws of the United States, the violation of which is a necessary element of a section 1983 claim." *Garcia,* 2009 U.S. Dist. LEXIS 20886, at *22-*23 (citations omitted).

Plaintiffs argue that debriefing is not a viable option, because, according to Plaintiffs, it is equivalent to a "death sentence" and would subject them to "unspeakable brutality," due to the violence of prison gangs. (Opp'n 15, 11.) It is uncontroverted that prison gangs commit brutal acts, but debriefing is still an alternative for Plaintiffs. Plaintiffs ignore the fact that CDCR has a duty to and takes precautions to protect debriefers. Inmates do choose to go through the debriefing process, and CDCR moves them to housing that takes into account their security needs during and after debriefing. Cal. Code Regs. tit. 15, §§ 3378.1(c)-(d); Department Operations Manual (DOM) § 52070.19.2 (staff are to "separate the [debriefer] from identified active gang affiliates, protecting the [debriefer] from their retaliation"). Meetings between debriefers and institutional gang investigators, the information debriefers provide, and even the names of debriefers are kept confidential to try to prevent gang retaliation. *See* DOM §§ 52070.19.8-8.1 (regarding confidentiality of debriefing reports).

Further, Plaintiffs' contention that they should not be required to dissociate from a violent prison gang because the prison gang they associate with is so violent (*see* Opp'n at 11, 15) falls short. The reason for segregation in the SHU of validated inmates is the brutality of gangs and the fact that gang association is "for life." *Madrid*, 889 F. Supp. at 1278. The security risk posed by gangs (that Plaintiffs admit kill those who try to disassociate) is the basis for the regulations that require inmates to sincerely renounce their affiliation and provide information on their gang to obtain release from the SHU.[5]

---

[5] At the same time that Plaintiffs claim that debriefing would put inmates at the risk of serious harm by violent gangs, Plaintiffs also claim that housing gang members and associates in the SHU is "unmoored from any legitimate penological purpose or security need" (SAC ¶ 121) and "not legitimately related to security or other penological needs" (SAC ¶ 183). These claims are totally contradictory. The declaration of Jules Lobel, counsel for Plaintiffs, states that officials at Pelican Bay found a note in a mop head, intended for Plaintiff Troxell, containing a death threat against Troxell by a validated Aryan Brotherhood member. (Lobel Decl., ECF No. 178-1 ¶ 3.) The segregation of gang associates and members to control gang activity is undoubtedly related to the legitimate penological interest of ensuring prison security and inmate and staff safety.

8

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

1   Under the regulations, consideration of whether an inmate has associated with a gang is not
2   limited to gang activity or criminal behavior.  Because the active/inactive, annual, and 180-day
3   reviews rely on materials set forth in the regulations and satisfy the limited requirements of
4   procedural due process for an administrative function, Plaintiffs' due process claim fails.

### D. That the Court Permitted an Amended Complaint Does Not Insulate Plaintiffs' Claims from Challenge.

Plaintiffs claim that in permitting Plaintiffs to amend the complaint, this Court overturned its prior order that Plaintiffs Ashker and Troxell must delete all claims and defendants associated with claims based upon denial of parole, and the Court's prior order that Plaintiff Ashker could not raise the validity of his validation because he already litigated it in a prior proceeding.[6] (Opp'n 17.)  Amendments are to be freely permitted under the federal rules, and permitting an amendment does not mean the court has ruled on the merits of the amended claims.  Plaintiffs themselves argued in support of the motion to amend that dispositive arguments based on principles such as res judicata are inappropriate for argument on a motion to amend, claiming that "ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." (ECF No. 133 p. 3 (citing, e.g., *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003).)  It is disingenuous for Plaintiffs to now argue that the Court somehow ruled against Defendants on dispositive issues in permitting an amendment by a two-page order that did not address the merits of any claims.  (*See* ECF No. 135.)  The Court has already ordered Plaintiffs Ashker and Troxell to "delete all claims and defendants associated with claims based upon denial of parole," and that because Plaintiff Ashker has already litigated his validation in a prior proceeding, he could not raise it in any amended pleading.  (Order Screening Compl., ECF No. 7, at 5-6.)  These claims must therefore be dismissed.

///

///

---

[6] *See* Order Screening Compl. p. 5 (ECF No. 7); *Ashker v. Schwarzenegger*, No. 05-03286 CW (N.D. Cal.).

9

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

      **E.**    **Plaintiffs' Due Process Claim is Moot in Light of the Security Threat Group Pilot Program.**

The STG pilot program is now CDCR's official policy. (ECF No. 161 (Giurbino Decl.) ¶¶ 6, 10.) On October 25, 2012, CDCR started conducting case-by-case reviews of inmates validated as gang members or associates who are serving indeterminate SHU terms at Pelican Bay. (*Id.* ¶ 6.) At the time the motion to dismiss was filed, forty-three inmates had been classified for release from the SHU to the general population, and more have been reviewed since. (*Id.* ¶ 6.) The named plaintiffs will also be reviewed under this new policy. (*Id.* ¶ 7.)

CDCR has no intention of returning to the old policy and intends to take the pilot program through the Administrative Procedures Act process to incorporate it into Title 15. (Giurbino Decl. (ECF No. 161) ¶ 10.) If the Court rules on regulations that no longer govern the relationship of the parties, the parties and other courts will have to determine what the Court's ruling means for the new procedures. While Plaintiffs place no value on the Court's and parties' resources (Opp'n p. 21), the Court must consider the effect of its rulings. At minimum, the Court should stay litigation of the due process claim, until the STG pilot program is fully implemented, to promote judicial economy and avoid rulings on procedures no longer in effect. *Dependable Highway Express v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007). A stay would give the parties an opportunity to address CDCR's new policies, including the objections Plaintiffs have regarding the new program.

**II.**    **PLAINTIFFS' OPPOSITION DOES NOT REMEDY THE INSUFFICIENCIES OF THE COMPLAINT'S EIGHTH AMENDMENT CLAIM.**

      **A.**    **Plaintiffs Have Not Identified a Sufficiently Serious Deprivation to State a Cruel and Unusual Punishment Claim.**

"Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter,* 501 U.S. 294, 305 (1991). Conditions may only be actionable in combination "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." *Id.* at 304. Plaintiffs cannot rely on their vague, piecemeal, and unrelated

10

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

1  allegations in combination to allege a sufficiently serious deprivation of a "single, identifiable
2  human need" under the Eighth Amendment for each named Plaintiff. *Id.*  Plaintiffs argue that
3  they live in extreme isolation, "sealed off from contact with other prisoners" (SAC ¶ 197) (yet
4  Ashker under oath declared that Ruiz, Dewberry, Reyes, Franklin, Troxell, and Ashker "discuss
5  strategy and tactics in [their] case" regularly (ECF NO. 157-1 ¶ 14)).  The complaint alleges that
6  two Plaintiffs are sleep-deprived (SAC ¶¶ 128-29) (though it is not specified how Defendants
7  deprive Plaintiffs of sleep), that food in the SHU is "inferior to that which is served to other
8  prisoners" (SAC ¶ 197), that "[b]edding consists of a hard, lumpy mattress, sheets, and two thin
9  blankets" (SAC ¶ 60), that "the temperature in the cells can be excessively hot or cold[,]" (SAC ¶
10 61), that Plaintiffs are given "recycled air, which is cold in the winter and hot in the summer"
11 ((SAC ¶ 61), and that the SHU has caused them mental and physical health problems (*see* e.g.,
12 SAC ¶¶ 24, 124).  But Plaintiffs' allegations about the duration and intensity of each of these
13 factors individually is too vague to allege a sufficiently serious deprivation on its own.
14        Plaintiffs attempt to combine these vague allegations into a claim based on the deterioration
15 of their mental and physical health.  While the deprivation of mental and physical health care
16 would be sufficiently serious to constitute an Eighth Amendment violation, these claims are
17 precluded by class action cases regarding these very allegations.

18        **1.    The Complaint Relies on Alleged Inadequate Mental and Physical
                  Health Care, Claims that are Precluded by *Madrid*, *Coleman*, and**
19              ***Plata*.**

20        Plaintiffs' opposition claims that the *Coleman* and *Plata* class actions are not at issue,
21 because according to Plaintiffs, they "do not advance Eighth Amendment claims for inadequate
22 mental health care or medical care." (Opp'n 4 n 1.)  But in the same breath, the opposition claims
23 that "mental health care is lacking" and "SHU prisoners receive no meaningful mental health
24 monitoring." (*Id.*)  The second amended complaint clearly does allege the lack of adequate
25 mental and medical health care, by alleging that "mental health care at Pelican Bay is grossly
26 inadequate" (SAC ¶ 82), that "[P]laintiffs . . . have received inadequate mental health care or
27 none at all" (SAC ¶ 84), that Plaintiffs are suffering "devastating psychological and physical
28 effects" (SAC ¶ 124), that Defendants "have been deliberately indifferent to [Plaintiffs'] mental

11

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

and physical suffering (SAC ¶ 171(b)), that Plaintiffs suffer the "deprivation of good medical care" (SAC ¶ 180), "serious psychological pain and suffering and permanent psychological and physical injury" (SAC ¶ 181), and the "denial of standard medical care" (SAC ¶ 197), among similar claims. These allegations are exactly the claims at issue in *Madrid, Plata,* and *Coleman*. Plaintiffs cannot claim that "*Coleman* and *Plata* have no impact here." (Opp'n 4 n. 1.) The *Coleman* case closely monitors the provision of mental health treatment at Pelican Bay. Pelican Bay is subject to routine monitoring by the *Coleman* special master, and mental health services at Pelican Bay are dictated by the Mental Health Delivery Services Program Guide. Because *Coleman* provides SHU inmates with existing and future mental health needs with access to treatment, Plaintiffs' mental health claims are precluded. Plaintiffs' clear claims of inadequate medical care were also fully resolved in *Plata*, which resulted in a federal receiver controlling the CDCR health delivery system, tri-annual reports on the status of health care delivery, and medical program inspections of Pelican Bay.

Plaintiffs at least admit that *Madrid* is relevant, but Plaintiffs fail to address the fact that Plaintiff Dewberry was actually a named plaintiff in *Madrid*. Plaintiffs argue that *Madrid* only applies to the limited class of persons who had spent less than three years in the SHU (Opp'n 3), but that is inaccurate. In addition to clearly applying to Dewberry, *Madrid* covered a class of "all prisoners who [we]re ***or will be***, incarcerated by the California Department of Corrections at Pelican Bay State Prison[.]" 889 F. Supp. at 1155 (emphasis added). This class definition shows that the *Madrid* decision considered those who were not incarcerated in the SHU at the time of the decision (1995), when the SHU was only 6 years old, but that the *Madrid* Court contemplated future inmates confined to the SHU for potentially longer periods. The Court referred to this concern explicitly in saying that the Court also had to "consider that many in the SHU face indefinite and potentially lengthy terms." *Madrid*, 889 F. Supp. at 1264-65.

The *Madrid* Court held that an Eighth Amendment violation exists only "if the particular conditions of segregation being challenged are such that they inflict a serious mental illness, greatly exacerbate mental illness, or deprive inmates of their sanity." *Id*. at 1264. *Madrid* resulted in ongoing medical screening for SHU inmates, to detect whether an inmate's mental or

12

physical health reach a constitutional degree sufficient to warrant removal from the SHU. Monitoring of medical and mental health services ceased in the *Madrid* context, but now continues as part of *Coleman* and *Plata*. *Madrid*, *Coleman*, and *Plata* preclude Plaintiffs' claims that indefinite SHU confinement has caused Plaintiffs a serious deprivation of mental and physical health.

      **B.**    **Plaintiffs Have Not Adequately Alleged that Defendants Were Subjectively Aware of the Alleged Harm to State a Claim Under the Eighth Amendment.**

Deliberate indifference requires a showing that defendants acted with criminal recklessness, a high bar. *Farmer v. Brennan*, 511 U.S. 825, 861 (1994). Plaintiffs argue that they have met this standard because "the risk was obvious." (Opp'n 17.) However, if the risk of indeterminate SHU confinement is so "obvious" and "excessive" (*id*.), then Plaintiffs should be able to allege the resulting harmful effects of this excessive and obvious risk. Instead, as discussed above, none of the ten Plaintiffs alleges that he is mentally ill or at serious risk of serious mental illness. Plaintiffs argue that in addition to the risk being "obvious," Defendants "were made aware of the risk" through Plaintiffs' Ashker and Troxell's "Formal Complaint" mailed to the Governor and Secretary, the gang-led hunger strikes, and California State Assembly hearings on solitary confinement. (*Id*.) But "constructive notice" does not meet the recklessness standard required for a showing of deliberate indifference. *See Farmer*, 511 U.S. at 841. The Middle District of Louisiana's view that "any person in the United States who reads or watches television" would be subjectively aware for deliberate indifference purposes disregards the standard set by the Supreme Court. (Opp'n 8 (citing *Wilkerson v. Stadler*, 639 F. Supp. 2d 654, 680 (M.D. La. 2007).)

Further, it is undeniable that Defendants acted reasonably in complying with the demands of the federal receiver in *Plata* with respect to medical care at Pelican Bay, and in complying with the Mental Health Services Delivery System Program Guide established by *Coleman* in providing mental health care to SHU inmates. Even if Defendants "actually knew of a substantial risk to inmate health or safety[,]" they "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 845. Plaintiffs cannot

13

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

deny that under the court-approved Program Guide, an inmate with a documented diagnosis or evidence of certain mental health conditions or a prior history suggesting an inmate is not SHU-suitable is excluded from the SHU.  Nor can Plaintiffs deny that SHU inmates may refer themselves to the mental health care program at any time and may also be referred by staff.  In implementing the Program Guide's requirements, Defendants have acted reasonably.  "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."  *Id*.  It is outrageous for Plaintiffs to claim that Defendants "intend" to cause Plaintiffs psychological damage.  (Opp'n 8.)  In having a debriefing program set forth in the California Code of Regulations, CDCR does not intend to cause psychological damage to non-debriefers, but to combat the "brutality" Plaintiffs admit prison gangs commit.  (*Id*. at 11.)  Because Plaintiffs cannot allege that Defendants acted with the requisite reckless mental state by operating under California regulations, the Mental Health Program Guide, and the *Plata* Receiver, Plaintiffs' Eighth Amendment claim fails.

## CONCLUSION

When the Court granted Plaintiffs leave to amend to file their second amended complaint, Defendants asked Plaintiffs for an adequate opportunity to challenge the pleading's allegations.  Plaintiffs' response contemplated that Defendants would simply answer the complaint.  Defendants instead moved to dismiss, and for the reasons set forth above as well as in Defendants' moving papers, the motion should be granted.  The operative pleading fails to state a claim under the Eighth Amendment for cruel and unusual punishment.  It also fails to state a due process claim under the Fourteenth Amendment.  New guidelines are in effect and being applied to validated SHU inmates on a daily and case-by-case basis.  Thus, if the Court declines to dismiss the due process claim, the case should be stayed on that claim to streamline the litigation and avoid the burden associated with litigating gang validation and review procedures that CDCR has changed.

14

Defs.' Reply ISO Mot. Dismiss 2nd Am. Compl., Alt. Stay (C 09-05796 CW)

| | | |
|---|---|---|
| 1 | Dated: January 31, 2012 | Respectfully Submitted, |
| 2 | | |
| 3 | | KAMALA D. HARRIS<br>Attorney General of California<br>WILLIAM C. KWONG |
| 4 | | Supervising Deputy Attorney General<br>ADRIANO HRVATIN |
| 5 | | Deputy Attorney General |
| 6 | | */s/ Jillian R. Weader* |
| 7 | | JILLIAN R. WEADER<br>Deputy Attorney General |
| 8 | | *Attorneys for Defendants*<br>*Brown, Cate, Lewis, and Chaus* |
| 9 | SF2012204868<br>20667590.doc | |

15

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **G. Ruiz, J. Franklin, T. Ashker, G. Franco, G. Reyes, R. Johnson, D. Troxell, P. Redd, L. Esquivel, and R. Dewberry v. E. Brown, et al.** | No. | **C 09-05796 CW** |

I hereby certify that on **January 31, 2013**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT, OR ALTERNATIVELY, TO STAY**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **January 31, 2013**, at San Francisco, California.

| M. Thai | */s/ M. Thai* |
|---|---|
| Declarant | Signature |

20667591.doc