CHARLES FRANCIS-ANTONIO CARBONE (SBN 206536)
EVAN CHARLES GREENBERG (SBN 271356)
LAW OFFICE OF CHARLES CARBONE
P.O. Box 2809
San Francisco, California 94126
Tel: 415.981.9773
Fax: 415.981.9774

(Other counsel listed on pg. 18-19)
ATTORNEY FOR PLAINTIFFS

KAMALA D. HARRIS
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General
JILLIAN R. WEADER
Deputy Attorney General
ADRIANO HRVATIN
Deputy Attorney General
State Bar No. 220909
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-1672
  Fax:  (415) 703-5843
  E-mail:  Adriano.Hrvatin@doj.ca.gov
*Attorneys for Defendants*
*Brown, Cate, Lewis, and Chaus*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| RUIZ, et al. , | No. 4:09-cv-05796-CW |
|        Plaintiffs, | |
| v. | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |
| BROWN, et al., | |
|        Defendants. | (FED. R. CIV. P. 26(f) and CIV. L. R. 16) |

CLASS ACTION

Date:  March 14, 2013
Time:  2:00 p.m.
Dept.: Courtroom 2

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

In accordance with Civil Local Rule 16-9, Plaintiffs and Defendants submit their Joint Case Management Statement in this matter set for a case management conference on March 14, 2013, at 2:00 p.m. in Courtroom 2 before the Honorable Claudia Wilken in the Oakland Division of this Court.

**1. <u>Jurisdiction and Service</u>:**

This action was originally filed in the United States District Court for the Northern District of California, Oakland Division, on December 9, 2009, based on the federal questions raised in Plaintiffs' causes of action against Defendants.  After the Court granted leave, Plaintiffs filed a Second Amended Complaint on September 10, 2012.

All Defendants have been served and timely appeared in this matter.  Defendants contest whether the Court has subject-matter jurisdiction over Plaintiffs' due process claim, which Defendants have moved to dismiss as moot or, alternatively, to stay, under Rule 12(b)(1) of the Federal Rules of Civil Procedure in light of new gang-management guidelines implemented and enforced by the California Department of Corrections and Rehabilitation (CDCR).

**2.  <u>Facts</u>:**

<u>PLAINTIFFS</u>

Plaintiffs Ruiz, Franklin, Ashker, Franco, Reyes, Johnson, Troxell, Redd, Esquivel, and Dewberry—and the members of the proposed class—have been held in solitary confinement at

California's Pelican Bay Security Housing Unit and other California Prisons for an extraordinarily long time. Some for more than two decades. During that time, they have committed virtually no disciplinary infractions.

Their conditions of confinement are draconian and stark: they are confined alone to cells measuring approximately 80 square feet, deprived of any normal human contact, deprived of any meaningful exercise, of all telephone calls, contact visits, and vocational, recreational, and educational programming. They must linger in their small, concrete cells for 22.5 hours each day. Moreover, there is an unwritten, but strictly enforced CDCR practice prohibiting the grant of parole to any prisoner incarcerated in the SHU. Nearly as bad, SHU prisoners cannot receive the good-time credits that other California prisoners can earn. Their only way out of isolation is to debrief by reporting on the gang activity of other prisoners, thus placing themselves and their families in great danger.

California, alone out of any state in the country, and most other jurisdictions in the world, holds Plaintiffs and hundreds of others in these tortuous conditions for decades, based merely on their association with a prison gang. CDCR deems it irrelevant whether Plaintiffs have ever undertaken an illegal act on behalf of a gang. California's practices are both cruel and unusual.

Plaintiffs' claims are common and typical to those of the proposed class.

<u>DEFENDANTS</u>

Each of the ten named Plaintiffs is a validated member or associate of rival prison gangs. Some are acknowledged to be leaders, or "shot callers," of those gangs. Because of their gang validations and re-validations, Plaintiffs are confined in the Security Housing Unit (SHU) at Pelican Bay State Prison. Each has been confined in the SHU pursuant to an indeterminate term under § 3341.5(c)(2)(A)(2) of title 15 in California's Code of Regulations. The decisions to assign and retain Plaintiffs in the SHU were made in accordance with due process considerations

1   appropriate for administrative decisions such as gang validation, classification, and housing.  In

2   that context, due process only requires that prison officials provide the inmate with some notice

3   of the charges against him, an opportunity to present his views, and that the validation decision

4   be supported by some evidence.  That a recent change in California's Penal Code no longer

5   permits SHU inmates to earn good-time credits does not change the level of due process owed to

6   inmates subject to administrative decisions by prison officials.  No court has so held; and, most

7   tellingly, Plaintiffs' second amended complaint does not so allege.

8       Notwithstanding the constitutionality of CDCR's validation and review guidelines,

9   CDCR has recently implemented significant changes to those guidelines through its Security

10  Threat Group (STG) pilot program.  The pilot program reflects CDCR's efforts to address

11  evolving trends of gang activities in state prisons and to provide an alternate procedure for

12  inmates to "step down" or disassociate from gang activity and earn incremental privileges

13  without debriefing, consistent with the security, safety, and inmate management needs presently

14  affecting the administration of state prisons.  In connection with the implementation of the STG

15  pilot program on October 18, 2012, CDCR has conducted approximately 150 case-by-case

16  reviews of validated inmates to determine their placement in an appropriate level of the STG's

17  Step-Down Program.  Those case-by-case reviews are ongoing, and it is anticipated that each

18  Plaintiff will have the status of his validation reviewed in accordance with STG's new policies.

19  To the extent Plaintiffs and other validated SHU inmates seek an alternative to debriefing to exit

20  the SHU, the Step-Down Program gives them such an alternative.

21      Defendants dispute that the conditions of the SHU constitute a per se violation of the

22  Eighth Amendment's prohibition against cruel and unusual punishment.  That exact claim was

23  previously litigated and rejected in *Madrid*, which held that SHU conditions give rise to a

24  violation of the Eighth Amendment only as to those inmates that are already mentally ill or are at

25  serious risk of developing mental illness.  Not one Plaintiff alleges that his mental health has

26  deteriorated to such a state to rise to the sufficiently serious level of an Eighth Amendment

27  violation.  Absent such allegations, Plaintiffs cannot show the deprivation of a sufficiently

28  serious need, and their deliberate-indifference claim fails.

However, even if Plaintiffs did allege such facts, they would not be in the SHU.
Defendants have implemented and comply with court-approved guidelines for the provision of
medical and mental health care that exist and are closely monitored as a result of extensive class
allegation litigation in *Madrid*, *Coleman*, and *Plata*.  Inmates with mental illness are excluded
from the SHU.  This refutes any contention that Defendants have acted toward Plaintiffs with the
required culpable state of mind.  Defendants have not acted "wantonly" but instead, for example,
have made reasoned choices consistent with the *Coleman* court-ordered MHSDS Program Guide
provisions on SHU placement that strike a balance between the mental health needs of SHU
inmates and the challenges inherent in managing a segment of the prison population that presents
significant security and safety concerns.  Those decisions are entitled to substantial deference,
and cannot support a claim of deliberate indifference.

3. **Legal Issues:**

PLAINTIFFS

With the adoption of the Second Amended Complaint, Plaintiffs now seek class-wide
declaratory and injunctive relief based on two central claims:

(1)  CDCR's extraordinarily long-term detention of Plaintiffs and the proposed class in
solitary confinement and in extremely harsh conditions deprives Plaintiffs and the proposed class
of basic human needs in violation of the Eighth and Fourteenth Amendments to the United States
Constitution.  Defendants are deliberately indifferent to the deprivation of those human needs.

(2)  CDCR's continued and long-term confinement of Plaintiffs and the proposed class in
isolated, solitary conditions constitute an atypical and significant hardship, and Defendants have
failed to accord notice and meaningful review in violation of the Due Process Clause of the
Fourteenth Amendment.

Plaintiffs and those in the proposed class have been in the SHU for exceedingly lengthy
periods of time – a decade or more.

Few or none of the Plaintiffs evidenced gang activity (as opposed to mere association or inactive membership in a gang) at their last 6-year inactive gang status review. Yet all were denied status as an inactive gang member at that 6-year review and retained in the SHU for an indeterminate and continuing period of time.

Plaintiffs and the proposed class will establish that they have been deprived of basic human needs during their prolonged confinement in the SHU, that all are suffering serious mental harm from their prolonged solitary confinement, and or that they have a significant risk of exposure to future mental harm if they continue to be detained in the SHU.

<u>DEFENDANTS</u>

A.    CDCR has implemented its STG pilot program with new validation and review policies and has, in accordance with those new policies, continues to conduct case-by-case reviews of validated inmates serving indeterminate terms in the SHU at Pelican Bay. Should Plaintiffs' due process challenge to CDCR's former gang management regulations be dismissed as moot under Rule 12(b)(1) of the Federal Rules?

B.    A federal court has significant discretion to stay proceedings incident to its power to control its own docket and focus its resources on cases that present actual and ripe controversies. Should the Court stay litigation of Plaintiffs' due process claim to allow CDCR to continue its implementation of the STG pilot program?

C.    Minimal due process protections apply to administrative functions like gang validation. Should the Court dismiss Plaintiffs' due process claim under Rule 12(b)(6) because the challenged procedures provide Plaintiffs the requisite notice, an opportunity to be heard, and require that there be some evidence to support Plaintiffs' status as active gang members or associates?

D.    Should the Court dismiss Plaintiffs' due process claim to the extent it is based on the alleged denial of parole because: (i) such allegations concern the duration of confinement and are barred by well-established precedent; and (ii) the Court already ordered that Plaintiffs Ashker and Troxell could not proceed on such allegations? Similarly, should the Court dismiss

Plaintiff Ashker's due process claim regarding gang validation because the Court already ordered that he could not bring such a claim in an amended complaint?

E.     Should the Court dismiss Plaintiffs' Eighth Amendment claim for cruel and unusual punishment on the ground that Plaintiffs fail to allege facts to establish:  (i) a sufficiently serious deprivation; and (ii) that each Defendant acted with the required "wanton" state of mind?

F.     The doctrine of claim preclusion prevents the relitigation of claims that were finally determined in prior litigation.  Should the Court dismiss Plaintiffs' Eighth Amendment claim as precluded by the *Madrid*, *Coleman*, and *Plata* class actions, each of which concerned the same claim raised by Plaintiffs here regarding the conditions of the SHU at Pelican Bay and the alleged physical and mental health effects of SHU confinement?

G.     Has each named Plaintiff exhausted his administrative remedies as to the complaint's claims under both the 8th and 14th Amendments?

H.     Are any of the named Plaintiff's claims barred by the statute of limitations?

I.     Can Plaintiffs show that this action is maintainable as a class action under either Rule 23(b)(1) or Rule 23(b)(2) of the Federal Rules of Civil Procedure?

J.     The Prison Litigation Reform Act (PLRA) requires that injunctive relief be "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive measure necessary to correct the violation of the Federal right." Assuming the violation of a federal right, does Plaintiffs' request for injunctive relief, which includes an across-the-board "release from the SHU of those prisoners who have spent more than 10 years in the SHU," violate the PLRA?

## 4.  **Motions:**

PLAINTIFFS

Plaintiffs currently have one motion pending: a motion for a preliminary injunction filed on December 6, 2012.  On December 20, Plaintiffs filed declarations supporting that motion

from counsel Jules Lobel and Plaintiffs Ashker and Troxell.  Also on December 20, Defendants filed their Response.  A week later, on December 27, Plaintiffs filed their Reply.

<u>DEFENDANTS</u>

On December 17, 2012, Defendants filed a motion to dismiss Plaintiffs' second amended complaint or, alternatively, to stay.  The motion is fully briefed and currently set for hearing on March 14, 2013.  Moreover, depending on the Court's ruling on Defendants' motion to dismiss, Defendants may file the following motions:  (a) unenumerated motions to dismiss under Rule 12(b) of the Federal Rules for failure to exhaust administrative remedies; (b) motions to dismiss, for judgment on the pleadings, or summary judgment on individual named Plaintiffs' claims; (c) a motion for summary judgment on the merits of Plaintiffs' claims; (d) discovery-related motions before Magistrate Vadas; and (e) a motion to proscribe extra-judicial statements, should Plaintiffs' counsel make public statements regarding this case that create a substantial likelihood of material prejudice to Defendants' right to a fair trial.

**5.  <u>Amendment of Pleadings:</u>**

Plaintiffs moved for leave to file a Second Amended Complaint on May 31, 2012.  Defendants filed their Response on June 14, 2012, and Plaintiffs filed a Reply on June 21, 2012.  The Court granted Plaintiffs' motion on September 10, 2012, and Plaintiffs filed the Second Amended Complaint the same day.  Although Plaintiffs do not anticipate seeking leave to further amend the complaint, Plaintiffs retain their right to seek the Court's leave.

Should the Court grant any part of Defendants' motion to dismiss but with leave to amend, Defendants request that any further amendment be filed within thirty days of the Court's dismissal order, and that Defendants have a minimum of thirty days to respond to any further amended complaint.  Moreover, Defendants sued in their official capacities may be substituted

when the individual leaves office and is replaced by another individual.  Fed. R. Civ. P. 25(d).

This is applicable to Defendant Cate, who is no longer Secretary of the California Department of

Corrections and Rehabilitation.  In December 2012, Dr. Jeffrey Beard was appointed as

Secretary, and is awaiting confirmation by the State Senate.

**6.  Evidence Preservation:**

Both parties have fulfilled their duties to preserve electronically stored information as

well as with other methods of storage.

**7.  Disclosures:**

The parties have not yet exchanged initial disclosures in accordance with Federal Rules

of Civil Procedure (FRCP) 26(a)(1).  In accordance with FRCP 26(a)(C), and given the nature of

the case, the Court should decide whether initial disclosures are appropriate in this action, and if

so, what disclosures are to be made and the date for disclosure.  Depending on the scope of the

Court's ruling on Defendants' motion to dismiss, and should the Court order the parties to

exchange initial disclosures, Defendants submit that the parties exchange initial disclosures

within thirty days of the Court's ruling on Defendants' motion to dismiss.

**8.  Discovery:**

PLAINTIFFS

(1)  Discovery requests, responses, and objections:

On October 31, 2012, Plaintiffs served their First Set of Common Document Requests

and their First Set of Common Interrogatories.  On November 8, 2012, Plaintiffs served their

First Request for Entry onto Property for Inspection.

On December 3, 2012, Defendants served Responses to the first set of interrogatories and

requests for production of documents from Defendants Cate, Brown, and Lewis.

Defendants served their Response to Plaintiffs' First Request for Entry onto Property for Inspection on December 11, 2012.

(2)  Meet and Confer process:

For more than two months, Plaintiffs and Defendants have engaged in extensive, detailed meet-and-confer discussions.

The parties engaged in extensive discussions on the phone on December 19, 2012; January 7, 2013; February 4 and 11, 2013; and March 1, 2013.

The parties also exchanged letters and emails throughout the months of December 2012 and January and February 2013.  Plaintiffs provided written responses to Defendants' objections to the document requests and interrogatories.

The meet-and-confer process between the parties is ongoing.

 (3)  Protective Order:

The parties stipulated to a protective order that this Court approved on February 6, 2013. (Doc. No. 182.)

(4)  Motions to compel:

Because of ongoing, irresolvable discovery disputes regarding all three of Plaintiffs' requests, Plaintiffs intend to file motions to compel before Magistrate Judge Vadas.

Further, Plaintiffs request clarification—ideally at the upcoming Case Management Conference—from the Court regarding whether the parties may presently engage in expert discovery.  This Court's order dated November 15, 2012, (Doc. No. 155), set the Case Management Conference for February 14, 2013, and then continued, "[u]ntil then, the parties should continue to engage in fact discovery."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This last sentence has been a point of contention, with Defendants reading into it a prohibition on engaging in any expert discovery.  Plaintiffs request that the Court clarify whether they may engage in expert discovery.

## DEFENDANTS

Notwithstanding the case-dispositive nature of Defendants' pending motion to dismiss, Defendants have responded to Plaintiffs' discovery requests to meet the Court's direction that the "parties should continue to engage in fact discovery."  (Order 2, Nov. 16, 2012, ECF No. 155.)  In that connection, Defendants have further engaged in good-faith meet-and-confer efforts to, among other things, alleviate various burdens and other objections associated with Plaintiffs' discovery requests, and so as to avoid unnecessary or premature discovery motion practice.  This is particularly the case with respect to Plaintiffs' pursuit of expert discovery at this still preliminary stage of the case.

Specifically, Plaintiffs inspection demand requests that their experts be permitted to tour Pelican Bay and conduct mental health interviews of sixty-plus SHU inmates, including the ten named Plaintiffs.  During meet-and-confer negotiations, Plaintiffs' counsel have conceded that the information the experts expect to derive from this discovery will serve as the foundation of their anticipated expert testimony in this action with respect to whether the inmates' confinement in the SHU constitutes cruel and unusual punishment under the Eighth Amendment.  Defendants are entitled to a ruling on their challenge to the Eighth Amendment claim, before Plaintiffs should be allowed to impose upon Defendants the burdens of expert discovery.  Moreover, to the extent Plaintiffs seek to conduct expert discovery to support their arguments on class certification or on the merits, Defendants are similarly entitled to engage in expert discovery.  But, the Court has not yet established a schedule for such discovery to take place; instead, having limited the discovery at this stage of the proceedings to "fact discovery" as the parties work to settle the pleadings, which is reasonable.  To have to engage in expert discovery before then is burdensome, costly, and prejudicial to Defendants' right to defend against allegations they have challenged fail to state a claim in the first instance.

1    In accordance with the Court's instruction that the parties engage in fact discovery, on

2    February 14, 2013, Defendants served a set of document requests on all Plaintiffs.  Also on

3    February 14, Defendant Lewis served a set of interrogatories and a set of document requests on

4    each named Plaintiffs.

5    Defendants separately propose that the ten-deposition limit of Rule 30(a)(2)(A)(1) be

6    expanded to fifteen, given the number of parties and the complex nature of the parties' claims

7    and defenses, without prejudice to seeking a further expansion of the limit depending on the

8    Court's ruling on Defendants' motion to dismiss.  Defendants further propose that the Court

9    bifurcate discovery so as to focus the parties' resources on the discovery necessary to adequately

10    brief Plaintiffs' anticipated motion for class certification.  Finally, the scope of the Court's ruling

11    on Defendants' motion to dismiss or, alternatively, to stay litigation of, Plaintiffs' due process

12    claim will impact the scope of discovery (if any) as to that claim (e.g., whether discovery should

13    focus on CDCR's old validation and review guidelines, the guidelines set forth by the STG pilot

14    program, or both).

15

16

17    **9.  Class Actions:**

18    Plaintiffs added class allegations in the Second Amended Complaint.  (Doc. No. 136 at

19    34-38.)  Plaintiffs anticipate moving for class certification by May 2, 2013.  Defendants contest

20    Plaintiffs' ability to meet the class-certification requirements of Rule 23 of the Federal Rules of

21    Civil Procedure, and Defendants will oppose any motion for class certification.  Defendants also

22    object to Plaintiffs' anticipated date for class certification, as discussed further below in

23    connection with scheduling.

24

25

26    **10.  Related Cases:**

27    The parties are unaware of any pending related cases or proceedings at this time.

28

1

2   **11.  Relief:**

3       Plaintiffs seek injunctive relief to require Defendants to conduct a meaningful review for

4   California's gang-validated inmates in the Pelican Bay SHU and end long-term, indefinite

5   detention in CDCR's Administrative and Security Housing Units.

6

7

8   **12.  Settlement and ADR:**

9                          PLAINTIFFS

10      The parties have not engaged in any settlement efforts to date.  Nor have the parties

11  stipulated to ADR.  Plaintiffs agree to mediation.  Plaintiffs would consider entering into an early

12  mediation process in the next few months, consisting of approximately four hours, in order to see

13  if there was any basis for a more prolonged and serious mediation process.

14

15                         DEFENDANTS

16          Although Defendants are willing to engage in meaningful settlement negotiations,

17  given the litigation's procedural posture and Defendants' pending motion to dismiss, Defendants

18  submit this case is unlikely to settle at this time and it is premature to consider whether key

19  discovery or motions would put the parties in a position to negotiate a resolution.  Plaintiffs

20  indicate a willingness to engage in early mediation.  Defendants are willing to engage in early

21  mediation but maintain that any mediation will be most meaningful if conducted following the

22  Court's ruling on Defendants' motion to dismiss.

23

24  **13.  Consent to Magistrate Judge For All Purposes:**

25

26      The parties do not consent to a Magistrate Judge for all purposes.

27

28

**14.  <u>Other References</u>:**

The case is not suitable for binding arbitration, a special master at this time, or the Judicial Panel on Multidistrict Litigation.

**15.  <u>Narrowing of Issues</u>:**

<u>PLAINTIFFS</u>

The Second Amended Complaint has significantly narrowed the issues in this case.

<u>DEFENDANTS</u>

Defendants have moved to dismiss Plaintiffs' second amended complaint or, alternatively, to stay, specifically with respect to Plaintiffs' due process claim.  The Court's ruling on Defendants' motion could eliminate or further narrow the issues subject to litigation.

**16.  <u>Expedited Trial Procedure</u>:**

The parties do not believe that this is the type of case appropriate for an expedited trial procedure.

**17.  <u>Scheduling</u>:**

<u>PLAINTIFFS</u>

Plaintiffs intend on moving to certify the class by May 2, 2013.

Plaintiffs believe a trial date sometime in mid-May 2014 (likely Monday the 12th or 19th) is appropriate and realistic with a commensurate calendaring of the operative deadlines for a discovery cut-off, designation of experts, etc.  Such dates presently depend on the parties' agreeing on a May 2014 proposed trial date.

<u>DEFENDANTS</u>

During meet-and-confer discussions related to the preparation of this joint statement, Plaintiffs' counsel indicated that the next phase of this case should involve class certification. Plaintiffs further indicated that they intended to file a motion for class certification within one month of the Court's ruling on Defendants' motion to dismiss.  Plaintiffs have since changed their position, stating that they will seek class certification by May 2, 2013 on the ground that "t[ying] our motion for class cert to when Judge Wilken decides the motion to dismiss . . . is too uncertain."  Defendants agree that class certification should be taken up next; however, Plaintiffs' intent to move to certify the class by May 2 is unreasonable and prejudicial to Defendants.  The scope of any class certification motion, and discovery related to that motion, will turn directly on the Court's ruling on Defendants' motion to dismiss. The schedule governing this case should provide the Court with sufficient opportunity to rule on Defendants' motion to dismiss, and provide for both sides, depending on the Court's ruling, a full and fair opportunity to litigate issues pertinent to any class certification proceeding.

Similarly, Plaintiffs' proposed trial date of "mid-May 2014," fails to contemplate the currently unsettled nature of the pleadings as well as the complex nature of this case, presuming Plaintiffs intend both of their claims, as currently plead, to go forward through class certification, class, merits, and expert discovery, summary judgment, and trial.  Although proposing a schedule at this time is difficult, given the case's procedural posture, Defendants, as required by this District's Civil Local Rule 16-9, set forth the below proposed schedule should the Court deny Defendants' motion to dismiss and order the litigation to proceed as to both of Plaintiffs' claims:

| Date | Event |
|---|---|
| 3/14/2013 | Hearing on motion to dismiss and CMC |
| 9/12/2013 | Bifurcated class discovery cut-off |
| 10/24/2013 | Class certification deadline |
| 12/19/2013 | Opposition to class certification |
| 1/16/2014 | Reply on class certification |
| 1/30/2014 | Hearing on class certification |

| | |
|---|---|
| 7/10/2014 | Merits discovery cut-off |
| 8/7/2014 | Disclose experts and reports |
| 9/18/2014 | Rebuttal expert reports |
| 10/30/2014 | Expert discovery cut-off |
| 12/11/2014 | Summary judgment deadline |
| 1/22/2015 | Opposition to summary judgment |
| 2/12/2015 | Reply on summary judgment |
| 3/5/2015 | Hearing on summary judgment and further CMC |
| 5/18/2015 | Pretrial conference |
| 6/1/2015 | Trial |

Defendants respectfully reserve the right to propose alternative scheduling proposals depending on the nature of the Court's order on Defendants' motion to dismiss. Should the Court prefer, Defendants are also willing to appear at a further case management conference once the Court rules on Defendants' motion to dismiss and, following meet-and-confer efforts with Plaintiffs' counsel, propose a schedule commensurate with the Court's ruling.

## 18. **Trial**:

<u>PLAINTIFFS</u>

Plaintiffs will withdraw their request for a jury trial. Plaintiffs cannot assess the length of the trial until the issues are sorted out through discovery.

<u>DEFENDANTS</u>

Defendants requested a jury trial in this matter. Given the unsettled nature of the pleadings, Defendants cannot at this time estimate the expected length of any trial. However, depending on the nature of the claims to be tried, Defendants expect a trial could take anywhere from ten to thirty court days.

## 19. **Disclosure of Non-party Interested Entities and Persons**:

<u>PLAINTIFFS</u>

Plaintiffs know of no other entities that may have a financial interest or any other interest in the subject matter in controversy, or in a party to the proceeding, or an interest that could substantially affect the outcome of the proceeding.

<u>DEFENDANTS</u>

Because Defendants work for a governmental entity, they are exempt from the disclosure requirement of Rule 3-16(a) of this District's Civil Local Rules.

**20. <u>Such other matters that may facilitate the just, speedy and inexpensive disposition of this matter.</u>**

<u>PLAINTIFFS</u>

Plaintiffs intend to move by May 2, 2013, for class certification for all those in the Security Housing Unit (SHU) at Pelican Bay State Prison (PBSP).

Plaintiffs anticipate that there will be a need to go before Magistrate Judge Vadas regarding issues of direct access to our clients at PBSP, including but not limited to access for Plaintiffs' experts, both psychological and medical.  Plaintiffs are seeking contact visits for these expert medical and psychological examinations.  There may also be a need for motions to compel responses to discovery, regarding interrogatories and document requests.

Plaintiffs will likely seek to have one or more of the named plaintiffs attend future court hearings via videoconference.

<u>DEFENDANTS</u>

Plaintiffs refer to various "anticipated" events or issues that they "will likely seek" the intervention of either this Court or Magistrate Vadas.  To avoid unnecessary, burdensome, or

premature motion practice, Defendants to date have been willing to discuss Plaintiffs' discovery or informal requests, and negotiate, where appropriate, amenable resolutions.  Defendants will continue to do so, even as to a request that "one or more of the named plaintiffs attend future court hearings via videoconference," an issue raised for the first time in this joint statement.

As a minor, administrative matter, on November 2, 2012, substitutions of counsel were filed on behalf of Defendants Brown, Cate, and Lewis.  Defendants respectfully request that the Court approve and order those substitutions.  Defendants otherwise are unaware at this time of matters, other than those addressed above, that would facilitate the just, speedy, and inexpensive disposition of this matter.

DATED: March 7, 2013

LAW OFFICE OF CHARLES CARBONE, ESQ.


By /s/ Charles Carbone, Esq.
   CHARLES CARBONE, ESQ.

Attorneys for Plaintiffs

ANNE BUTTERFIELD WEILLS (SBN 139845)
SIEGEL & YEE
499-14th Street, Suite 300
Oakland, California 94612
Tel: 510.839.1200
Fax: 510.444.6698

GREGORY D. HULL
Email: greg.hull@weil.com
BAMBO OBARO
Email: bambo.obaro@weil.com
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Tel: (650) 802-3000
Fax: (650) 802-3100

RACHEL MEEROPOL (*pro hac vice*)
Email: rachelM@ccrjustice.org
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email: aagathocleous@ccrjustice.org
JULES LOBEL (*pro hac vice*)
Email: jll3@pitt.edu
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6432
Fax: (212) 614- 6499

MARILYN S. MCMAHON (SBN 270059)
Email: marilyn@prisons.org
CALIFORNIA PRISON FOCUS
1904 Franklin Street, Suite 507
Oakland, CA 94612
Tel: (510) 734-3600
Fax: (510) 836-7222

ANNE BUTTERFIELD WEILLS (SBN 139845)
Email: aweills@aol.com
SIEGEL & YEE
499 14TH STREET, SUITE 300
OAKLAND, CA 94612
Tel: (510) 839-1200
Fax: (510) 444-6698

CAROL STRICKMAN (SBN 78341)
Email: carol@prisonerswithchildren.org
LEGAL SERVICES FO PRISONERS WITH
CHILDREN
1540 Market Street, Suite 490
San Francisco, CA 94102
Tel: (415) 255-7036
Attorneys for Plaintiffs

DATED: March 7, 2013

KAMALA D. HARRIS
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General
JILLIAN R. WEADER
Deputy Attorney General


/s/ Adriano Hrvatin, Esq._____
ADRIANO HRVATIN
Deputy Attorney General
*Attorneys for Defendants*
*Brown, Cate, Lewis, and Chaus*