JULES LOBEL (*pro hac vice*)
ALEXIS AGATHOCLEOUS (*pro hac vice*)
RACHEL MEEROPOL (*pro hac vice*)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: 212.614.6478
Fax: 212.614.6499
Email: aagathocleous@ccrjustice.org, rachelm@ccrjustice.org

Attorneys for Plaintiffs
(Additional counsel listed on signature page)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| TODD ASHKER, DANNY TROXELL, GEORGE RUIZ, JEFFREY FRANKLIN, GEORGE FRANCO, GABRIEL REYES, RICHARD JOHNSON, PAUL REDD, LUIS ESQUIVEL, and RONNIE DEWBERRY, on their own behalf, and on behalf of a class of similarly situated prisoners, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNOR EDMUND G. BROWN, et. al., <br><br> Defendants. | Case No.: 4:09-cv-05796-CW <br><br> CLASS ACTION <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: August 8, 2013 <br> Time: 2:00 p.m. <br> Judge: Honorable Claudia Wilken |

1
2

# **TABLE OF CONTENTS**

3  NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION ................................... 1

4  MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

5  I. INTRODUCTION ................................................................................................................ 1

6  II. STATEMENT OF FACTS ................................................................................................. 2

7      A.   Conditions at the Pelican Bay SHU ........................................................................ 2

8      B.   Defendants' Policy of Indefinite SHU Confinement ............................................. 6

9      C.   Named Plaintiffs........................................................................................................ 8

10  III. ARGUMENT ................................................................................................................... 9

11      A.   Plaintiffs Have Met the Requirements of Rule 23(a)........................................... 10

12        i.    The Size of the Class and Subclass Satisfy the Numerosity Requirement. .............. 10

13        ii.   Commonality Is Met Because Plaintiffs Challenge System-Wide Practices and

14             Policies that Affect all Members of the Class and Subclass. ................................... 11

15        iii.  The Named Plaintiffs' Claims Are Typical of Those of the Class and Subclass....... 17

16        iv.  The Named Plaintiffs and their Counsel Will Adequately Protect the Interests of the

           Class and Subclass. ................................................................................................... 18

17      B.   Plaintiffs Meet the Requirements of Rule 23(b)(2)............................................... 21

18  CONCLUSION ...................................................................................................................... 23

19
20
21
22
23
24
25
26
27
28

1

2

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184 (2013) .................................9

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ..............................................................passim

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ............................................................11, 17, 21

*Bates v. United Parcel Service*, 204 F.R.D. 440 (N.D. Cal. 2001) ................................10, 11, 15

*Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000 (9th Cir. 1981).................................9

*Bradley v. Harrelson*, 151 F.R.D. 422 (M.D. Ala. 1993) .......................................................21

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171 (9th Cir.

    1990) ......................................................................................................................17

*Californians for Disability Rights, Inc., v. Cal. Dep't of Transp.*, 249 F.R.D. 334

    (N.D. Cal. 2008)......................................................................................................10

*Clark v. California*, 123 F.3d 1267 (9th Cir. 1997) ....................................................22

*Connor B. v. Patrick*, 278 F.R.D. 30 (D. Mass. 2011)................................................23

*Dukes v. Wall-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010)...................................9

*Griffin v. Gomez*, No. C-98-21038, slip op. (N.D. Cal. June 28, 2006)........................7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988)...............................11, 17, 19

*Helling v. McKinney*, 509 U.S. 25 (1993)..................................................................18

*Henderson v. Thomas*, CV224-MHT (WO), 2012 WL 3777146 (M.D. Ala. Aug.

    30, 2012) ................................................................................................................16

*Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982)........................................................22

*In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liabl. Litig.*, 693 F.2d 847 (9th

    Cir. 1982) ...............................................................................................................19

*In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. 346 (N.D. Cal. 2005)........10

*In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-0856 MMC, 2008 U.S. Dist.

LEXIS 43617 (N.D. Cal. May 27, 2008). ........................................................... 19

*Inmates of San Diego Cnty Jail in Cell Block 3B v. Duffy*, 528 F.2d 954 (9th Cir. 1975) .......................................................................................................................... 22

*Jordan v. Cnty. of L.A.*, 669 F.2d 1311 (9th Cir. 1982) ........................................ 20

*Leeds v. Watson*, 630 F.2d 674 (9th Cir. 1980) ........................................................ 22

*Madrid v. Gomez*, 889 F. Supp. 1146 (N.D. Cal. 1995) ..................................... passim

*Mayweathers v. Newland*, 258 F.3d 930 (9th Cir. 2001) ...................................... 22

*Parsons v. Ryan*, No. CV12-0601-PHX-NVW, 2013 U.S. Dist. LEXIS 46295 (D. Ariz. Mar. 6, 2013) ................................................................................... 9, 16

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ......................................... passim

*Rosas v. Baca*, CV 12-00428 DDP (SHX), 2012 WL 2061694 (C.D. Cal. June 7, 2012) ................................................................................................................. 16

*Thompson v. City of Los Angeles*, 885 F.2d 1439 (9th Cir. 1989) .......................... 2

*Toussaint v. Yockey*, 722 F.2d 1490 (9th Cir. 1984) ............................................. 22

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) .................................. passim

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1988) ................................................ 15, 21

*Wilkinson v. Austin*, 545 U.S. 209 (2005) ................................................................ 7

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ....................................................... 12, 15

**STATUTES**

Cal. Code Regs. tit. 15, § 3341.5(c)(2)(A)(1) ................................................ 7, 12, 14

Cal. Code Regs. tit. 15, § 3341.5(c)(2)(A)(2) ................................................. 6, 12, 18

Cal. Code Regs. tit. 15, § 3378(c)(8) ......................................................................... 6

Cal. Code Regs. tit. 15, § 3378(e) ...................................................................... 7, 12

**OTHER AUTHORITIES**

1 Robert Newberg, Newberg on Class Actions, § 3.3 (4th ed. 2002). .............................. 10

2 J. WIGMORE, WIGMORE ON EVIDENCE § 437 (J. Chadbourn rev. 1979) ....................................2

5 MOORE'S FEDERAL PRACTICE, § 23.22(3)(a) (3d ed. 2003) ....................................................10

7A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1763
    (2d ed. 1986) ...........................................................................................................................12

CDCR, ADULT INSTITUTIONS, PROGRAMS, AND PAROLE OPERATIONS MANUAL, art.
    22, § 52070.18.4 (2012) ..........................................................................................................7

WILLIAM B. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS, § 3.12 at 198 (5th
    ed. 2011)...............................................................................................................................10

**RULES**

Fed. R. Civ. P. 23 .............................................................................................................................9

Fed. R. Civ. P. 23(a)........................................................................................... 1, 9, 10, 16, 17

Fed. R. Civ. P. 23(b) ..........................................................................................9, 21, 22

Fed. R. Civ. P. 23(b)(2).............................................................................. 1, 9, 21, 22, 23

Fed. R. Civ. P. 23(c)(5) ...............................................................................................9

Fed. R. Civ. P. 23(g) ............................................................................................1, 20

**CALIFORNIA PENAL CODE**

CAL. PEN. CODE § 2933 (2013)..........................................................................................6

CAL. PEN. CODE § 2933.05 (2013)......................................................................................6

CAL. PEN. CODE § 2933.6(a) (2013).....................................................................................6

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on August 8, 2013, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Claudia Wilken, Plaintiffs, by and through their attorneys, respectfully move the Court for an order certifying this proceeding as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. The proposed class and subclass, on whose behalf the representative Plaintiffs named in the Second Amended Complaint bring constitutional claims, are defined below. Plaintiffs further request an order appointing the undersigned counsel to represent the certified class and subclass pursuant to Rule 23(g). This motion is supported by Exhibits A-Y.

Dated: May 2, 2013

Respectfully submitted,

/s/ Alexis Agathocleous
ALEXIS AGATHOCLEOUS (pro hac vice)
Attorney for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case arises from the systematic subjection of Pelican Bay Security Housing Unit (SHU) prisoners to unconstitutional conditions, policies, and procedures by the Defendants. Named Plaintiffs are ten prisoners who have been confined at the Pelican Bay SHU for at least a decade – and in some cases for over 20 years – on the basis of their validation as so-called gang associates or members. Defendants have been, and continue to be, deliberately indifferent to inhumane conditions at the Pelican Bay SHU. Their indifference results in an unreasonable risk of serious harm to these prisoners' mental and physical health.

Plaintiffs, who have been subject to and harmed by Defendants' constitutionally inadequate and system-wide policies and procedures, seek to represent a class and subclass of prisoners housed at the Pelican Bay SHU. The class includes all prisoners serving indeterminate

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
Case No.: 4:09-cv-05796-CW

1

SHU sentences at the Pelican Bay SHU on the basis of gang validation, none of whom have been or will be afforded meaningful review or procedurally adequate review of their confinement, in violation of the Due Process Clause of the Fourteenth Amendment (hereinafter "Due Process class").  The subclass includes all prisoners who are now, or will be in the future, imprisoned by Defendants at the Pelican Bay SHU under the conditions and pursuant to the policies described below for longer than 10 continuous years, in violation of the Eighth Amendment (hereinafter "Eighth Amendment subclass").

Plaintiffs seek declaratory and injunctive relief, including an order compelling Defendants to swiftly develop constitutionally-adequate procedures for reviewing ongoing placement in the SHU, to release from the SHU those prisoners who have languished under the cruel conditions there for over a decade, and to alleviate the conditions of confinement for all Pelican Bay SHU prisoners.

## II. STATEMENT OF FACTS

### A.  Conditions at the Pelican Bay SHU

The Pelican Bay Security Housing Unit (SHU) contains just over 1,000 cells, and all prisoners there are exposed to conditions of extreme isolation, sensory deprivation, and restricted movement.  *See* Amnesty International Report ("AIR"), Exh. V at 12; *see also Madrid v. Gomez*, 889 F. Supp. 1146, 1227 (N.D. Cal. 1995).[1]  Situated on California's northern border with Oregon, Pelican Bay is a remote facility hundreds of miles from San Francisco and Los Angeles, where many prisoners' families live.  *See* Declaration of Todd Ashker (hereafter "Ashker Decl."), attached hereto as Exh. A, at ¶ 17; Dewberry Decl., Exh. D at ¶ 11; Esquivel Decl., Exh. E at ¶ 5; Reyes Decl., Exh. O at ¶ 3; Troxell Decl., Exh. S at ¶ 5; *see also Madrid*, 889 F. Supp. at 1229. The original planners designed the prison under the assumption that prisoners would spend only

---

[1]     Where appropriate, Plaintiffs cite to the extensive findings of fact regarding conditions at the Pelican Bay SHU in *Madrid*.  "It is a bedrock common law principle that in certain situations, once a condition has been proven to exist, it is presumed in the absence of proof to the contrary that the condition has remained unchanged."  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1448 -1449 (9th Cir. 1989) (citing 2 J. WIGMORE, WIGMORE ON EVIDENCE § 437 (J. Chadbourn rev. 1979)).

up to 18 months in the SHU.  *See* AIR, Exh. V, at 15; *see also* Keramet A. Reiter, *Parole, Snitch, or Die: California's Supermax Prisons and Prisoners, 1997-2007*, 14.5 PUNISHMENT & SOC'Y 540 (2012).  According to CDCR, there were approximately 1,100 people incarcerated in the Pelican Bay SHU in 2011.  *See* AIR, Exh. V at 12.  As of 2011, more than 500 prisoners have been in the SHU for more than 10 years.  *Id*; *see also* Southern California Public Radio, *Under Scrutiny, Pelican Bay Prison Officials Say they Target Only Gang Leaders*, available at <http://www.scpr.org/news/2011/08/23/28382/pelican-bay-prison-officials-say-they-lock-gang-bo/> (citing CDCR statistics) (last visited April 30, 2013).  Of these, approximately 222 had been in the SHU for 15 or more years, and approximately 78 had been there for over two decades.  *Id*.

Prisoners at the Pelican Bay SHU are warehoused in cramped, windowless cells.  *See* Ashker Decl., Exh. A at ¶ 3; AIR, Exh. V at 13; *Madrid*, 889 F. Supp.  at 1228.  These cells are completely concrete, and measure approximately 80 square feet.  *Id*.  They include a concrete bed, a sink, and a toilet, and provide little to no exposure to natural light.  *Id*.  The cell doors are made of steel, with small perforations that allow for a partial view into a concrete hallway but significantly block vision and light.  *See* Ashker Decl., Exh. A at ¶ 4; AIR, Exh. V at 13; *Madrid*, 889 F. Supp. at 1228.  The door has a narrow slot through which food and mail are delivered, and which is used to handcuff prisoners any time they leave their cells.  *Id*.

Prisoners spend between 22½ and 24 hours a day in these barren steel and concrete cells.  *See* Ashker Decl., Exh. A at ¶ 8; AIR, Exh. V at 13; *Madrid*, 889 F. Supp. at 1229.  They are supposed to be escorted from their cells once a day to exercise alone for one and a half hours in a barren, solid concrete indoor exercise pen known as a "dog run."  *See* Ashker Decl., Exh. A at ¶ 9; AIR, Exh. V at 14.  In reality, prisoners often do not receive even this minimal access to exercise.  *See* Ashker Decl., Exh. A at ¶ 9; AIR, Exh. V at 15.  The "dog run" has 20 foot high walls, giving no view of the outside.  *See* AIR, Exh. V at 15.  Pelican Bay SHU prisoners are allowed to shower only three times weekly for 15 minutes.  *See* Ashker Decl., Exh. A at ¶ 13; *Madrid*, 889 F. Supp. at 1230.

Pelican Bay SHU prisoners have absolutely no access to group activities.  *See* Ashker Decl., Exh. A at ¶ 20; AIR, Exh. V at 13; *Madrid*, 889 F. Supp. at 1229.  They are denied programming or vocational activities.  *See* Ashker Decl., Exh. A at ¶ 12; AIR, Exh. V at 13; *Madrid*, 889 F. Supp. at 1229.  Their only avenue of communication with other human beings is to speak loudly enough for a prisoner in a neighboring cell to hear.  *See* Ashker Decl., Exh. A at ¶ 22.  However, guards have discretion to issue warnings about talking to others, and such efforts to talk with a validated gang member or associate (including simply a greeting) can and have been used as evidence of gang affiliation justifying further retention in the SHU.  *See id*. at ¶¶ 22-23; *see also* December 10, 2012 Gang Chrono, Exh. B (describing "shouting between pods" as documented gang activity that should be used at Ashker's next inactive review).

Pelican Bay SHU prisoners are prohibited from making or receiving social telephone calls absent an emergency.  *See* Ashker Decl., Exh. A at ¶ 17; AIR, Exh. V at 18; *Madrid*, 889 F. Supp. at 1230.  The facility's remote location also means that few prisoners receive social visits.  *See* Ashker Decl., Exh. A at ¶ 17; Dewberry Decl., Exh. D at ¶ 11; Esquivel Decl., Exh. E at ¶ 5; Reyes Decl., Exh. O at ¶ 3; Troxell Decl., Exh. S at ¶ 5; *see also Madrid*, 889 F. Supp. at 1229. When they do occur, they are limited to two-hour visits on weekends, and are strictly non-contact. *See* Ashker Decl., Exh. A at ¶ 17; AIR, Exh. V at 2, 18; *Madrid*, 889 F. Supp. at 1229.

Plaintiffs have serious medical conditions, but are routinely told that if they want medical care for their conditions or illnesses, or improved pain management, they should debrief (i.e. report on the gang activities of other prisoners).  *See* Ashker Decl., Exh. A at ¶ 25; Johnson Decl., Exh. K at ¶ 4; Reyes Decl., Exh. O at ¶ 9.

As Professor Craig Haney, a psychologist and leading expert in the application of psychological data and principles to legal issues, explains in his Declaration, "being housed in solitary or isolated confinement – especially for a long period of time – can produce a number of negative psychological effects.  It places prisoners at a grave risk of psychological harm."  *See* Haney Decl. Exh. T at ¶ 12; *see also* Kupers Decl., Exh. U at ¶ 10 (long-term solitary

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

confinement is "well-known to cause severe psychiatric morbidity, disability, suffering, and mortality").[2]  "These effects are now well understood and described in the scientific literature." Haney Decl. Exh. T at ¶ 12.  According to Professor Haney, prolonged solitary confinement causes prisoners a wide range of symptoms, including:

> appetite and sleep disturbances, anxiety, panic, rage, loss of control, paranoia, hallucinations, and self-mutilations. Moreover, direct studies of prison isolation have documented an extremely broad range of harmful psychological reactions. These effects include increases in the following potentially damaging symptoms and problematic behaviors: anxiety, withdrawal, hypersensitivity, ruminations, cognitive dysfunction, hallucinations, loss of control, irritability, aggression, and rage, paranoia, hopelessness, a sense of impending emotional breakdown, self-mutilation, and suicidal ideation and behavior.

*Id.* at ¶ 22.  The conditions at the Pelican Bay SHU are "on the extreme or severe end of the continuum of such units," and are "precisely the kind that create a risk of substantial harm for all the prisoners who are subjected to them."  *Id.* at ¶¶ 40, 41.

Plaintiffs suffer from and exhibit many of the symptoms listed above, as well as others, and are experiencing psychological harm as a result of the many years they have spent without normal human interaction, in stark and restrictive conditions, without any hope of release or relief.  *See* Kupers Decl., Exh. U at ¶¶ 11-27; *see also* Haney Decl. Exh. T at ¶ 43.  Dr. Terry Kupers, a nationally-renowned psychiatrist who has interviewed each named plaintiff, comments that they are suffering common symptoms: "I have conducted upwards of a thousand interviews with prisoners in a variety of correctional settings, and I have never before found a pattern at this level of specificity described universally by a group of similarly situated individuals."  Kupers Decl., Exh. U at ¶ 15.  Both he and Professor Haney opine that the symptoms identified in the named plaintiffs are consistent with the types of symptoms and suffering that they would expect to find throughout the Pelican Bay SHU in prisoners who have been isolated there for a decade or more.  *See* Haney Decl. Exh. T at ¶ 43; Kupers Decl., Exh. U at ¶¶ 28-31. As Professor Haney explains, these prisoners are forced "to develop their own socially pathological adaptations – ones

---

[2]      A redacted version of the declaration of Terry Kupers M.D., M.S.P., is included as Exhibit U to this motion.  An unredacted version has been simultaneously submitted to this Court with Plaintiffs' Administrative Motion to Seal Portions of the Declaration of Terry Kupers.

premised on the absence of meaningful contact with people – in order to function and survive."
Haney Decl. Exh. T at ¶ 30.  Professor Haney and Dr. Kupers also opine that the longer the
duration of such confinement, the more these symptoms are exacerbated.  *See* Haney Decl. Exh. T
at ¶¶ 44-45; Kupers Decl., Exh. U at ¶¶ 16-17.  Professor Haney recently interviewed seven
Pelican Bay SHU prisoners whom he first interviewed there 20 years ago, and explains that, as a
result of their incredibly prolonged isolation, the prisoners have experienced a form of "social
death."  Haney Decl. Exh. T at ¶ 45.  "The magnitude of the suffering that they have endured, and
the full measure of what they have lost over the course of the last two decades of their lives, is
difficult to fathom."  *Id*. at ¶ 44.  These prisoners "have lost a connection to the basic sense of
who they 'were.'"  *Id*. at ¶ 45.

## B.  Defendants' Policy of Indefinite SHU Confinement

Under Defendants' policy, any prisoner who is validated as a prison gang member or
associate "will be placed in a SHU for an indeterminate term."  CAL. CODE REGS. tit. 15,
§ 3341.5(c)(2)(A)(2).  As of 2010, all California prisoners in the SHU on the basis of gang
affiliation are denied the statutory right enjoyed by other prisoners to earn good time credit.  *See*
CAL. PEN. CODE §§ 2933, 2933.05, 2933.6(a).  Moreover, those SHU prisoners who are parole
eligible are routinely denied parole and/or effectively told that they will never attain parole so
long as they are housed in the SHU.  *See* Ashker Decl., Exh. A at ¶ 26; Dewberry Decl., Exh. C at
¶ 3; Franco Decl., Exh. G at ¶ 4; Franklin Decl., Exh. I at ¶ 3; Redd Decl., Exh. M at ¶ 9; Ruiz
Decl., Exh. Q at ¶ 3; Troxell Decl., Exh. S at ¶ 4.

Validation as a gang member does not require CDCR to show that the prisoner has
violated a prison rule, broken the law, or even acted on behalf of a gang.  *See* CAL. CODE REGS.
tit. 15, § 3378(c)(8) (including tattoos, symbols, and "written materials" as source items used to
determine gang affiliation).  Indeed, many prisoners who have not engaged in any gang-related
activity or rule violation before validation are placed (or retained) in the SHU based merely on
allegations that they are associated with a gang.  *See*, *e.g.*, Dewberry Decl., Exh. C at ¶ 6.

1

2    Once a prisoner is validated as a gang affiliate and sent to the SHU for an indefinite term,

3    a classification committee purportedly reviews his status every 180 days. *See* CAL. CODE REGS.

     tit. 15, § 3341.5(c)(2)(A)(1). No examination of continued gang activity or association occurs at

4    this 180-day review, nor is there any assessment of whether the prisoner's behavior requires

5    continued SHU placement. *Id.*; *see also* Dewberry Decl., Exh. C at ¶ 7; Franco Decl., Exh. G at ¶

6    3; Redd Decl., Exh. M at ¶ 4; Troxell Decl., Exh. S at ¶ 7.  Indeed, the only way a prisoner can

7    participate in, or be released from the SHU, pursuant to this purported review process, is by

8    debriefing.[3]  *Id.*

9        The review at which CDCR purports to determine whether the prisoner should be released

10   from the SHU occurs once every six years. *See* CAL. CODE REGS. tit. 15, § 3378(e) (when the

11   inmate has not been identified as having been involved in "gang activity" for a minimum of six

12   years, he will be considered for release from the SHU); *see also* CDCR, ADULT INSTITUTIONS,

13   PROGRAMS, AND PAROLE OPERATIONS MANUAL, art. 22, § 52070.18.4 (2012) (if a SHU prisoner

14   "has had no gang activity" for six years, he shall be considered "inactive," and considered for

15   release).  However, even when Plaintiffs have engaged in no gang activity, they are nonetheless

16   routinely denied inactive status. *See* Dewberry Decl., Exh. C at ¶¶ 8-9; Esquivel Decl., Exh. E at

17   ¶ 4; Franco Decl., Exh. G at ¶ 2; Franklin Decl., Exh. I at ¶¶ 5-6; Johnson Decl., Exh. K at ¶¶ 5-6;

18   Redd Decl., Exh. M at ¶ 3; Reyes Decl., Exh. O at ¶¶ 10-11; Ruiz Decl., Exh. Q at ¶ 5; *see also*

19   Exhs. D, F, H, J, L, N, P, R (inactive review documents).  For example, Defendants have denied

20   Plaintiffs inactive status based on laundry lists of purported gang members and associates,

21

22   _____

23   [3]      Courts have recognized that debriefing is not only untenable for many prisoners, but it
     unreasonably conditions release from inhumane conditions on cooperation that places prisoners
     and their families in significant danger of retaliation. *Griffin v. Gomez*, No. C-98-21038, slip op.

24   at *8-9 (N.D. Cal. June 28, 2006) ("[r]espondents' refusal to reconsider the classification of
     former gang members who are unwilling to risk retaliation, such as Petitioner, renders those

25   inmates' segregation not merely indeterminate, but effectively permanent"); *see also Wilkinson v.
     Austin*, 545 U.S. 209, 227 (2005) ("Testifying against, or otherwise informing on, gang activities

26   can invite one's own death sentence"); *Madrid*, 889 F. Supp. at 1241 (a "number of prison staff
     agree that inmates who debrief and gain release from the [Pelican Bay] SHU are considered

27   'snitches,' and thus face serious risks of being attacked or even killed by other inmates").

28   PLAINTIFFS' MOTION FOR CLASS
     CERTIFICATION
     Case No.: 4:09-cv-05796-CW                          7

informants who identify no specific gang-related conduct, and items such as photocopied drawings, books about George Jackson, and possessing a pamphlet in Swahili. *Id.* The same is true of hundreds of other prisoners at the Pelican Bay SHU. *See* Redd Decl., Ex. M at ¶¶ 5-8 (inactive status denied based on poems, appearing on a list of alleged gang members, simply talking to a validated gang member, possessing artwork, or having an address book with contains the address of a validated gang member).

**C. Named Plaintiffs**

The ten named Plaintiffs are prisoners who have been confined at the Pelican Bay SHU for between 11 and 22 years. *See* Ashker Decl., Exh. A at ¶ 1; Dewberry Decl., Exh. C at ¶ 1; Esquivel Decl., Exh. E at ¶ 1; Franco Decl., Exh. G at ¶ 1; Franklin Decl., Exh. I at ¶ 1; Johnson Decl., Exh. K at ¶ 1; Redd Decl., Exh. M at ¶ 1; Reyes Decl., Exh. O at ¶ 1; Ruiz Decl., Exh. Q at ¶ 1; Troxell Decl., Exh. S at ¶ 1. Some were sent to Pelican Bay directly from other SHUs, and thus have spent even longer – over 25 years – in solitary confinement. *See*, *e.g.*, Redd Decl., Exh. M at ¶ 1; Reyes Decl., Exh. O at ¶ 1; Ruiz Decl., Exh. Q at ¶ 1; Troxell Decl., Exh. S at ¶¶ 1-2. The facts surrounding their confinement at the Pelican Bay SHU, as well as the effects of such prolonged periods of isolation on them, are set forth in their declarations, the declarations of Dr. Terry Kupers, M.D., M.S.P. and Professor Craig Haney, and supporting documentation. *See* Exhs. A-U.

The named Plaintiffs do not seek monetary damages. Their goal is to obtain declaratory and injunctive relief on behalf of themselves and the putative class and subclass; moreover, each is willing to be a class representative and has been satisfied with the representation provided by the lawyers seeking to be appointed as class counsel. *See* Ashker Decl., Exh. A at ¶¶ 31-33; Dewberry Decl. Exh. C at ¶¶ 17, 18; Esquivel Decl., Exh. E at ¶¶ 11, 12; Franco Decl., Exh. G at ¶¶ 11, 12; Franklin Decl., Exh. I at ¶¶ 8, 9; Johnson Decl., Exh. K at ¶¶ 9, 10; Redd Decl., Exh. M at ¶¶ 15, 16; Reyes Decl., Exh. O at ¶¶ 13, 14; Ruiz Decl., Exh. Q at ¶¶ 11, 12; Troxell Decl., Exh. S at ¶¶ 12, 13.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III. ARGUMENT

Rule 23 of the Federal Rules of Civil Procedure governs motions for class certification, and requires that a party seeking class certification show that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact that are common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  A class "may be divided into subclasses that are each treated as a class," Fed. R. Civ. P. 23(c)(5), and each subclass must "independently meet the requirements of Rule 23 for the maintenance of a class action."  *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).  In addition to satisfying Rule 23(a), a class action must meet the requirements of one of the provisions of Rule 23(b).  Rule 23(b)(2) authorizes a class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *Armstrong*, 275 F.3d at 868.

The decision to certify a class is committed to the discretion of the district court. *Armstrong*, 275 F.3d at 871 n.28.  While a district court must "perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims," no party may "turn the certification decision into a trial."  *Dukes v. Wall-Mart Stores, Inc.*, 603 F.3d 571, 594, 591 (9th Cir. 2010), reversed on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013); *see also Parsons v. Ryan*, No. CV12-0601-PHX-NVW, 2013 U.S. Dist. LEXIS 46295 at *9 (D. Ariz. Mar. 6, 2013) (granting class certification in case challenging conditions of confinement in Arizona isolation units and noting that "the prohibition

on requiring Plaintiffs to establish their claims at the class certification stage was recently

reinforced by the Supreme Court in *Amgen*").

**A. Plaintiffs Have Met the Requirements of Rule 23(a).**

     **i.    The Size of the Class and Subclass Satisfy the Numerosity Requirement.**

      Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). A party seeking class certification "not need to state the

exact number of potential class members, nor is a specific number of class members required for

numerosity." *Bates v. United Parcel Service*, 204 F.R.D. 440, 444 (N.D. Cal. 2001). However, a

class with 40 or more members raises a presumption that the requirement has been met. *See*

WILLIAM B. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS, § 3.12 at 198 (5th ed. 2011), 5

MOORE'S FEDERAL PRACTICE, § 23.22(3)(a) (3d ed. 2003); *see also Californians for Disability

Rights, Inc., v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008) ("various courts have

found that the numerosity factor is satisfied if the class comprises 40 or more members").

Additionally, a court may make common sense assumptions to support a finding that joinder

would be impracticable. *In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. 346, 350 (N.D.

Cal. 2005) (citing 1 ROBERT NEWBERG, NEWBERG ON CLASS ACTIONS, § 3.3 (4th ed. 2002)).

      Plaintiffs seek to certify a class of all prisoners serving indeterminate SHU sentences at

the Pelican Bay SHU on the basis of gang validation, and a subclass of Pelican Bay prisoners who

have been held at the SHU, or will be in the future, for longer than ten continuous years. The

numerosity requirement is satisfied as to both the Due Process class and the Eighth Amendment

subclass. There are more than 1,000 prisoners at the Pelican Bay SHU, all of whom have been

denied meaningful notice and review pursuant to Defendants' policies and practices. *See* AIR,

Exh. V at 12; Southern California Public Radio, *Under Scrutiny, Pelican Bay Prison Officials Say

they Target Only Gang Leaders*, available at <http://www.scpr.org/news/2011/08/

23/28382/pelican-bay-prison-officials-say-they-lock-gang-bo/> (citing CDCR statistics) (last

visited April 30, 2013). These prisoners are all members of the putative Due Process class. Of

these prisoners, over 500 have been imprisoned in the Pelican Bay SHU for more than a decade. *Id.* These prisoners comprise the putative Eighth Amendment subclass. On the basis of these numbers, Rule 23(a)(1) is presumptively satisfied. It would be impracticable, and a waste of judicial resources, to require each member of the 1,000-member class and 500-member subclass to litigate these questions. *See, e.g.*, *Bates*, 204 F.R.D. at 440 (certifying a class of 460 individuals). Thus, both the class and subclass is sufficiently numerous for class certification.

### ii.   Commonality Is Met Because Plaintiffs Challenge System-Wide Practices and Policies that Affect all Members of the Class and Subclass.

To meet the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has construed this requirement "permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988). The Supreme Court recently reiterated that class claims must "depend upon a common contention . . . [that is] capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S.Ct. at 2551. In other words, "[w]hat matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation and quotation marks omitted). "Even a single [common] question will do." *Id.* at 2256.

In a civil rights suit, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members . . . . In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Armstrong*, 275 F.3d at 868; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) ("We have found '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class'") (citations omitted). Actions for injunctive relief are generally considered to present such common questions. *See, e.g.*, *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) ("[B]ecause they do not also involve an individualized inquiry for the

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
Case No.: 4:09-cv-05796-CW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

determination of damage awards, injunctive actions 'by their very nature often present common questions satisfying Rule 23(a)(2)'" (quoting 7A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1763, at 247 (2d ed. 1986)).

This is a quintessential civil rights case that challenges Defendants' illegal system-wide policies and practices and seeks class-wide declaratory and injunctive relief.

The Due Process class which Plaintiffs seek to represent is comprised of prisoners who have been deprived of hearings to which they are entitled under *Wolff v. McDonnell*, 418 U.S. 539 (1974), *see* CAL. CODE REGS. tit. 15, §§ 3341.5(c)(2)(A)(1), 3378(e) (failing to provide SHU prisoners with advance written notice of the claimed violation, a written statement as to the evidence relied upon and the reasons for the action taken, and an opportunity to call witnesses and present documentary evidence in their defense), denied timely periodic review of their confinement, *see id*. at § 3378(e) (inactive reviews that might result in a SHU prisoners' release occur only every six years), and provided with misleading notice as to how to earn their way out of the SHU, *compare id*. (stating that if a prisoner "has had no gang activity" for six years, he shall be considered "inactive," and considered for release) *with* Dewberry Decl., Exh. C at ¶¶ 8-9; Esquivel Decl., Exh. E at ¶ 4; Franco Decl., Exh. G at ¶ 2; Franklin Decl., Exh. I at ¶¶ 5-6; Johnson Decl., Exh. K at ¶¶ 5-6; Redd Decl., Exh. M at ¶¶ 3, 5-8; Reyes Decl., Exh. O at ¶¶ 10-11; Ruiz Decl., Exh. Q at ¶ 5; *see also* Exhs. D, F, H, J, L, N, P, R. These system-wide practices and policies violate both Plaintiffs' and all classmembers' rights under the Due Process Clause of the Fourteenth Amendment.

Further, Plaintiffs and members of the Eighth Amendment subclass are all subject to the crushing conditions at the Pelican Bay SHU, *see* AIR, Exh. V at 12; *Madrid*, 889 F. Supp. at 1227-30; Askher Decl., Exh. A at ¶¶ 2-17, pursuant to Defendants' policy of retaining prisoners validated as gang associates in the SHU for indeterminate periods of time, *see* CAL. CODE REGS. tit. 15, § 3341.5(c)(2)(A)(2). Plaintiffs' subjection to these conditions of isolation and sensory deprivation for a decade or more has resulted in significant mental harm. *See* Kupers Decl., Exh.

1
2
3

U at ¶¶ 11-27.  As Professor Haney explains, there is "consensus . . . on the harmful effects of long-term isolation and the serious risk of such harm that this form of confinement poses for *all* prisoners who are subjected to it."  Haney Decl., Exh. T at ¶ 38 (emphasis added).

4
5
6
7
8
9
10
11
12

    Plaintiffs allege that the duration of their exposure to these inhumane conditions stands in violation of their rights under the Eighth Amendment.  They seek to certify a subclass of prisoners who have been subjected to exactly the same conditions, also for at least a decade, pursuant to the same policy.  Prolonged confinement at the SHU affects plaintiffs and all members of the subclass identically in that all are: 1) denied at least one basic human need such as normal human contact or sensory stimulation, 2) currently suffering serious mental and/or physical harm as a result of being exposed to this form of confinement for such a lengthy period of time, and/or 3) exposed to a significant risk of future debilitating and permanent psychological harm.  *See* Kupers Decl., Exh. U at ¶¶ 10, 28-31; Haney Decl., Exh. T at ¶¶ 12, 18, 38.

13
14
15

    In challenging Defendants' policies and practices regarding indefinite SHU assignment and the review process, Plaintiffs raise a series of core questions of law and fact that, when answered, will resolve all class and subclass members' claims against Defendants:

16
17

    a)  Whether prolonged confinement in the SHU for over 10 years under the conditions and policies maintained by Defendants constitutes cruel and unusual punishment prohibited by the Eighth Amendment;

18
19

    b)  Whether Defendants have been deliberately indifferent to the mental and physical suffering incurred by the Plaintiff class;

20
21

    c)  Whether incarceration under the conditions and policies imposed by Defendants results in constitutionally cognizable harm, or presents a constitutionally unacceptable risk of harm;

22
23
24

    d)  Whether a legitimate penological reason exists for Defendants to incarcerate prisoners for decades in the conditions described herein simply because they are members or associates of a gang, without demonstrating that they are currently engaged or have been recently engaged in some illegal or wrongful gang-related misconduct;

25
26

    e)  Whether the conditions at the Pelican Bay SHU and the policies imposed by Defendants on all prisoners housed in the SHU constitute an atypical and significant hardship compared to the ordinary incidents of prison life;[4]

27
28

----

[4]    In their motion to dismiss, Defendants did not challenge Plaintiffs' allegation of a liberty interest in avoiding PB-SHU designation.  *See* Defendants' Motion to Dismiss at 13.

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
Case No.: 4:09-cv-05796-CW

1
2
  f) Whether SHU confinement extends the duration of incarceration because of a de facto policy of denying parole to SHU prisoners; and

3
4
  g) Whether CDCR's procedures for assigning inmates to the SHU and periodically reviewing those assignments violate the Due Process Clause of the Fourteenth Amendment.

5
6
7
8
9
This Court's consideration of these questions will "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 131 S.Ct. at 2551.  These answers will be the foundation for determining whether the Eighth and Fourteenth Amendments have been violated, and whether an injunction directing Defendants to remedy the unconstitutional conditions, practices, and policies common to the entire class and subclass is appropriate. *Id.*

10
11
12
13
14
15
16
17
18
19
20
21
22
   Any minor factual differences among members of the Due Process class with respect to their individual 180-day classification committee reviews or six-year inactive reviews, *see* CAL. CODE REGS. tit. 15, §§ 3341.5(c)(2)(A)(1), 3378(e), do not undermine commonality. *See Armstrong*, 275 F.3d at 868 (rejecting defendant's argument that class was improperly certified in prison case alleging several forms of systemic disability discrimination and stating that "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality"). *Rodriguez v. Hayes* is instructive on this point.  In *Rodriguez*, the plaintiff sought certification of a class of individuals held in immigration detention in California for more than six months without a hearing.  591 F.3d at 1111.  The Ninth Circuit rejected the argument that class certification should be denied because each individuals' case turned on "divergent questions of statutory interpretation and consideration of different factual circumstances," finding that "the commonality requirement asks us to look only for some shared legal issue or a common core of facts." *Id.* at 1122.  As the Ninth Circuit observed,

23
24
25
26
  A form of [the common question] is posed here: may an individual be detained for over six months without a bond hearing under a statute that does not explicitly authorize detention for longer than that time without generating serious constitutional concerns?  This question will be posed by the detention of every member of the class and their entitlement to a bond hearing will largely be determined by its answer.

*Id.*

27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, Plaintiffs challenge a common policy regarding the manner in which SHU placement in reviewed, asking whether they are entitled to *Wolff* hearings, whether they may be held for six years before receiving a review that might result in their release from the SHU, and whether they are deprived of meaningful notice regarding how to earn their way out of the SHU. As in *Rodriguez*, these questions will be posed by every member of the class, and their entitlement to more robust procedural protections will largely be determined by the answers. Different factual circumstances (such as different types of evidence relied upon to validate individual class members as a gang affiliate) are of no moment, as Plaintiffs bring a broad challenge to the *procedures* used by Defendants, not to the particular outcomes that a valid process would produce. *Id.*; *see also Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1988) (explaining that a common allegation of illegal procedures is sufficient to find commonality, even when subsequent complex individualized proceedings will be necessary to resolve individual class members' claims); *Bates*, 204 F.R.D. at 445-46 (certifying a class where the issue was "the *process* that UPS follows in addressing (and failing to address) communication barriers and determining what jobs deaf workers can hold, not the specific outcomes that a valid process would produce for individual class members").

Similarly, any differences in the particular psychological and physical symptoms resulting from over a decade in the SHU between members of the Eighth Amendment subclass have no bearing on the commonality inquiry. Even where there are "minor differences in the nature of the specific injuries suffered by the various class members, [these] differences are insufficient to defeat commonality." *Armstrong*, 275 F.3d at 869. Plaintiffs ask whether Defendants may hold them in solitary confinement for over a decade pursuant to a policy of indefinite SHU confinement for gang affiliates without generating serious constitutional concerns. They also ask whether Defendants have been deliberately indifferent to the risks involved in such prolonged isolation. Again, the same questions are posed by every member of the subclass, all of whom have been held in isolation for at least a decade. *Rodriguez*, 591 F.3d at 1122.

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
Case No.: 4:09-cv-05796-CW

1

2
The expert declarations submitted here are sufficient to establish that Defendants' policy

3
and practice regarding indefinite SHU confinement places all putative members at a grave risk of

4
harm, and thus there is a common question as to all putative members of the Eighth Amendment

5
subclass.  *See* Haney Decl., Exh. T at ¶¶ 12, 14, 18, 48, 49; Kupers Decl., Exh. U at ¶¶ 10, 28-31;

6
*see also Parsons*, 2013 U.S. Dist. LEXIS 46295 at *26 (granting class certification where expert

7
declarations explained that practices or customs in Arizona isolation facilities placed inmates at a

8
substantial risk of serious harm).  Where "the risk of harm stemming from the allegedly

9
unconstitutional conditions is the same for all inmates," commonality is satisfied.  *Id*. at *30-31.

10
*Wal-Mart* explicitly recognized that a broad challenge to specific policies affecting all

11
putative class members generally meets the commonality requirement.  The Supreme Court

12
explained that "if [an] employer 'used a biased testing procedure to evaluate both applicants for

13
employment and incumbent employees, a class action on behalf of every applicant or employee

14
who might have been prejudiced by the test clearly would satisfy the commonality and typicality

15
requirements of Rule 23(a).'"  *Wal-Mart*, 131 S.Ct. at 2553.  Where Plaintiffs challenge system-

16
wide procedures, practices and policies that affect all of the putative class members, they too

17
satisfy these requirements.  Like a biased test, the procedures and policies at issue in this case

18
apply to each member of the class and subclass.

19
Accordingly, post-*Wal-Mart* cases consistently confirm that a finding of commonality is

20
appropriate in prison litigation challenging overarching policies and practices such as those

21
challenged here.  *See, e.g.*, *Parsons*, 2013 U.S. Dist. LEXIS 46295 at *9 (granting class

22
certification in case challenging conditions of confinement in Arizona isolation units); *Rosas v.

23
Baca*, CV 12-00428 DDP (SHX), 2012 WL 2061694, at *5 (C.D. Cal. June 7, 2012) (certifying

24
prisoner class where the question whether officials were deliberately indifferent to a pattern or

25
practice of violence was a common question likely to yield a common answer); *Henderson v.

26
Thomas*, CV224-MHT (WO), 2012 WL 3777146, at *5-7 (M.D. Ala. Aug. 30, 2012) (certifying

27
prisoner class where plaintiffs alleged a statewide policy of HIV segregation in the state prison

28
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
Case No.: 4:09-cv-05796-CW

16

system); *see also Brown v. Plata*, 131 S. Ct. 1910 (2011) (decided the same term as *Wal-Mart*; affirming class-wide injunctive relief to remedy inadequate medical and mental health care in all California prisons).

### iii.    The Named Plaintiffs' Claims Are Typical of Those of the Class and Subclass.

The requirements of Rule 23(a)(3) are met where named plaintiffs' claims are "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3); *see also Hanlon*, 150 F.3d at 1020 (describing the typicality standard as "permissive," and finding typicality where claims are "reasonably co-extensive with those of absent class members").  "The commonality and typicality requirements of Rule 23(a) tend to merge."  *Wal-Mart*, 131 S. Ct. at 2551 n.5.  Typicality exists "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Armstrong*, 275 F.3d at 868 (citations omitted).  The Ninth Circuit has emphasized that it "do[es] not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct."  *Id.* at 869; *see also Baby Neal*, 43 F.3d at 58 ("where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice"); *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (Rule 23 "does not require the named plaintiffs to be identically situated with all other class members," only that their situations be "sufficiently parallel to insure a vigorous and full representation of all claims for relief") (citation and quotation marks omitted).

In *Armstrong*, the Ninth Circuit affirmed certification of a class of prisoners with different disabilities, holding that "plaintiffs all suffer a refusal or failure to afford them accommodations as required by statute, and are objects of discriminatory treatment on account of their disabilities." 275 F.2d at 869.  Recognizing that prisoners with different disabilities will suffer different injuries as a result of defendants' conduct, the Court held that these "minor" differences were

1   "insufficient to defeat typicality."  *Id.*

2           That reasoning guides the outcome here.  Plaintiffs allege that the reviews of their

3   placement in the SHU do not meet constitutional requirements, that they are denied timely

4   periodic review of their confinement, and that they are provided with misleading notice as to how

5   to earn their way out of the SHU, pursuant to official and codified CDCR policies and practices.

6   *See* Section III(A)(ii), *supra* (citing CDCR policies at issue).  All SHU prisoners are subject to

7   exactly the same policies and practices.  Thus, each member of the Due Process class raises the

8   same constitutional question: whether the procedures used by Defendants to review SHU

9   placement satisfy due process requirements.  Plaintiffs' due process claims are typical.

10          Similarly, Plaintiffs' Eighth Amendment claim arises from Defendants' policy of retaining

11  prisoners validated as gang associates in the SHU for indeterminate periods of time, *see* CAL.

12  CODE REGS. tit. 15, § 3341.5(c)(2)(A)(2), and turns on the question of whether a prisoner

13  subjected to the crushing conditions at the Pelican Bay SHU for over a decade suffers

14  unacceptable harm, or an unreasonable risk of harm.  *See Helling v. McKinney*, 509 U.S. 25, 35

15  (1993) (describing Eighth Amendment harm standard).  Plaintiffs are experiencing mental and

16  physical harm as a result of this prolonged isolation.  *See* Kupers Decl., Exh. U at ¶¶ 11-27.  This

17  harm is typical of all members of the subclass.  *See id.* at ¶¶ 10, 28-31; *see also* Haney Decl., Exh.

18  T at ¶¶ 12, 22, 41, 43-45.  As in *Armstrong*, the fact that every prisoner at the Pelican Bay SHU

19  might not suffer exactly the same mental or physical injures as the named Plaintiffs is not grounds

20  for denying class certification.  275 F.2d at 869; *see also Rodriguez*, 591 F.3d at 1124 (finding

21  typicality where all class members "raise similar constitutionally-based arguments and are alleged

22  victims of the same practice of prolonged detention while in immigration proceedings").  Because

23  their injuries arise from the same system-wide conditions, policies and practices, Plaintiffs'

24  claims are typical of those of the subclass.

25      **iv.    The Named Plaintiffs and their Counsel Will Adequately Protect the Interests of
26              the Class and Subclass.**

27          Finally, Plaintiffs meet the requirement that they will fairly and adequately represent the

28  PLAINTIFFS' MOTION FOR CLASS
    CERTIFICATION
    Case No.: 4:09-cv-05796-CW                                     18

interests of the class.  Fed. R. Civ. P. 23(a)(4).  This inquiry depends on "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."  *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liabl. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982); *see also In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-0856 MMC, 2008 U.S. Dist. LEXIS 43617 at *6 (N.D. Cal. May 27, 2008).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

The class representatives do not have any interests that are antagonistic to the interests of the class or subclass.  Both the class representatives and class members have a common interest in ensuring that they are not held in conditions, and subject to policies and procedures, that violate their rights under the Eighth and Fourteenth Amendments, as well as the same interest in declaratory and injunctive relief.  *See* Ashker Decl., Exh. A at ¶¶ 31, 32; Dewberry Decl., Exh. C at ¶ 17; Esquivel Decl., Exh. E at ¶ 11; Franco Decl., Exh. G at ¶ 11; Franklin Decl., Exh. I at ¶ 8; Johnson Decl., Exh. K at ¶ 9; Redd Decl., Exh. M at ¶ 15; Reyes Decl., Exh. O at ¶ 13; Ruiz Decl., Exh. Q at ¶ 11 Troxell Decl., Exh. S at ¶ 12.  Each named Plaintiff is willing to perform the duties of a class representative, and to pursue this lawsuit vigorously on behalf of the class and subclass.  *Id.*  No named Plaintiff is currently seeking monetary damages as a result of Defendants' unlawful conduct, *see* Second Amended Complaint at 45-46, and there is no basis on which to argue that their interests are antagonistic to those of the class.  There is no suggestion of collusion between the named Plaintiffs and any of the Defendants.

Undersigned counsel is aware of no conflicts of interest between themselves and members of the class and subclass.  *See* Lobel Decl., Exh. W at ¶ 7; Hull Decl., Exh. X at ¶ 5; Carbone Decl., Exh. Y at ¶ 6.  Further, undersigned counsel will represent the class and subclass fairly, adequately, and vigorously.  The Center for Constitutional Rights (CCR), a non-profit civil rights

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
Case No.: 4:09-cv-05796-CW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

organization, has represented plaintiffs in civil rights litigation, including large-scale class action lawsuits and prisoners' rights litigation (including in the United States Supreme Court), since 1966.  Lobel Decl., Exh. W at ¶¶ 4-9.  Weil, Gotshal and Manges is a global law firm whose lawyers have handled numerous class actions and complex cases.  Hull Decl., Exh. X at ¶ 4.  Charles Carbone, Esq., has represented prisoners in California for over a decade, and has served as lead counsel in numerous prisoners' rights lawsuits.  Carbone Decl., Exh. Y at ¶ 4.  California Prison Focus and Legal Services for Prisoners with Children are non-profit organizations that have advocated for the rights of prisoners in California for decades.  *Id*. at ¶¶ 8-9.  Finally, Siegel and Yee is a 30 year-old law firm specializing in civil litigation, particularly cases involving civil rights.  *Id*. at ¶ 10.  Together, class counsel has the experience, knowledge of applicable law, and resources required to vigorously represent the class.  *See Jordan v. Cnty. of L.A.*, 669 F.2d 1311, 1323 (9th Cir. 1982) (holding that adequacy of counsel can be met by showing that the named plaintiffs' attorneys are qualified, experienced, and generally able to conduct litigation).

Undersigned counsel also meets the requirements of Rule 23(g), and should therefore be appointed as class counsel.  Fed. R. Civ. P. 23(g) ("a court that certifies a class must appoint class counsel").  Under the rule, in appointing class counsel, a court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  *Id*.  Undersigned counsel has been heavily involved in the investigation and litigation of this matter for over a year.  *See* Lobel Decl., Exh. W at ¶ 10; Hull Decl., Exh. X at ¶¶ 6-7; Carbone Decl., Exh. Y at ¶¶ 7-9.  As described above, counsel is well-versed in constitutional and prisoners' rights law which will apply in this case.  *See* Lobel Decl., Exh. W at ¶¶ 4-6, 8, 9; Carbone Decl., Exh. Y at ¶ 4.  Counsel also has extensive experience in handling class actions, other complex litigation, and federal practice, and has sufficient resources to vigorously prosecute this case.  *See* Lobel Decl., Exh. W at ¶¶ 4-6, 8-10; Hull Decl., Exh. X at

¶¶ 4, 6, 7.

**B.  Plaintiffs Meet the Requirements of Rule 23(b)(2).**

So too do Plaintiffs meet the requirements of Rule 23(b)(2), which authorizes a class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  As the Ninth Circuit has explained, the rule "was adopted in order to permit the prosecution of civil rights actions."  *Walters*, 145 F.3d at 1047; *see also Baby Neal*, 43 F.3d at 58 (noting that Rule 23(b)(2) is "almost automatically satisfied in actions primarily seeking injunctive relief"); *Bradley v. Harrelson*, 151 F.R.D. 422, 427 (M.D. Ala. 1993) (Rule 23(b)(2) "is particularly applicable to suits . . . involv[ing] conditions of confinement in a correctional institution").  Whether a class is certified under Rule 23(b)(2) depends on "whether class members seek uniform relief from a practice applicable to all of them."  *Rodriguez*, 591 F.3d at 1125.

Here, Plaintiffs have been denied adequate reviews of their placement in the SHU, denied timely periodic review of their confinement, and provided with misleading notice as to how to earn their way out of the SHU pursuant to official CDCR policy.  *See* Section III(A)(ii), *supra*. These system-wide practices and policies apply to all members of the Due Process class, and uniformly offend the Due Process Clause.  *Id.*  Further, pursuant to Defendants' policy of retaining prisoners validated as gang associates in the SHU for indeterminate periods of time, Plaintiffs have been subjected to draconian conditions for over a decade, resulting in mental and physical harm.  *See id.*  All members of the Eighth Amendment subclass are subject to the same policy and conditions, and their injuries arise from that policy and conditions.  The fact that different class members may have suffered different injuries or differing levels of harm as a result of Defendants' practices does not bar certification under the Rule.  *Rodriguez*, 591 F.3d at 1125; *see also Walters*, 145 F.3d at 1047 ("We note that with respect to 23(b)(2) in particular, the government's dogged focus on the factual differences among the class members appears to

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
Case No.: 4:09-cv-05796-CW

21

1
2    demonstrate a fundamental misunderstanding of the rule . . . . It is sufficient if class members

3    complain of a pattern or practice that is generally applicable to the class").

4            Plaintiffs also seek an injunction that would uniformly address all injuries of the class and

5    subclass.  *See* Second Amended Complaint at 45-46 (requesting release from the SHU of all

6    prisoners who have spent more than 10 years there, alleviation of their conditions of confinement,

7    meaningful review of continued confinement of all current SHU prisoners, and meaningful

8    review of SHU confinement for future SHU prisoners).  Class certification in this case would be

9    consistent with a long line of civil rights cases brought by incarcerated persons seeking injunctive

10   relief that have proceeded as class actions in the Ninth Circuit.  *See*, *e.g.*, *Mayweathers v.*

11   *Newland*, 258 F.3d 930, 933-34 (9th Cir. 2001) (class action by Muslim prisoners at California

12   state prison); *Armstrong*, 124 F.3d at 1019 (statewide class action on behalf of physically disabled

13   California prisoners); *Clark v. California*, 123 F.3d 1267 (9th Cir. 1997) (statewide class action

14   on behalf of developmentally disabled California prisoners); *Toussaint v. Yockey*, 722 F.2d 1490,

15   1491 (9th Cir. 1984) ("class of approximately 2,000 prisoners confined in administrative

16   segregation in four California State Prisons"); *Hoptowit v. Ray*, 682 F.2d 1237, 1249 (9th Cir.

17   1982) (class of all prisoners in Washington State Penitentiary challenging, *inter alia*, "a pattern

18   and practice of brutality and harassment by the prison guards"); *Leeds v. Watson*, 630 F.2d 674,

19   675 (9th Cir. 1980) (class action on behalf of prisoners in county jail); *Inmates of San Diego Cnty*

20   *Jail in Cell Block 3B v. Duffy*, 528 F.2d 954, 956-57 (9th Cir. 1975) (reversing denial of class

21   certification for detainees in a county jail cellblock).  The Supreme Court has affirmed this type

22   of class wide relief designed to remedy a general problem in prison conditions. *Plata*, 131 S. Ct.

23   at 1910 (affirming class-wide injunctive relief to alleviate prison overcrowding and inadequate

24   medical and mental health care).[5] Thus, Rule 23(b)(2) is satisfied here  *See Rodriguez*, 591 F.3d

25   at 1125.

_____

26   [5]      Plaintiffs here present a traditional Rule 23(b)(2) class, seeking only injunctive and
     declaratory relief.  Any post-*Wal-Mart* concerns over Rule 23(b)(2) certification therefore do not
27   apply.  In *Wal-Mart*, the plaintiffs sought both injunctive and declaratory relief and money
     damages for some but not all plaintiffs. 131 S.Ct. at 2549-50.  Due to the hybrid nature of the

28   PLAINTIFFS' MOTION FOR CLASS
     CERTIFICATION
     Case No.: 4:09-cv-05796-CW                                                    22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for class certification.

Dated: May 2, 2013

Respectfully submitted,

By:     /s/Alexis Agathocleous
        ALEXIS AGATHOCLEOUS (*pro hac vice*)
        Email: aagathocleous@ccrjustice.org
        JULES LOBEL (*pro hac vice*)
        Email: jll3@pitt.edu
        RACHEL MEEROPOL (*pro hac vice*)
        Email: rachelm@ccrjustice.org
        CENTER FOR CONSTITUTIONAL RIGHTS
        666 Broadway, 7th Floor
        New York, NY 10012
        Tel: (212) 614-6478
        Fax: (212) 614-6499

        GREGORY D. HULL (Bar No. 57367)
        Email: greg.hull@weil.com
        BAMBO OBARO (Bar No. 267683)
        Email: bambo.obaro@weil.com
        WEIL, GOTSHAL & MANGES LLP
        201 Redwood Shores Parkway
        Redwood Shores, CA 94065-1134
        Tel: (650) 802-3000
        Fax: (650) 802-3100

        CHARLES F.A. CARBONE (SBN 206536)
        Email: Charles@charlescarbone.com
        EVAN CHARLES GREENBERG (SBN 271356)
        Email: evan@charlescarbone.com
        LAW OFFICES OF CHARLES CARBONE
        P. O. Box 2809
        San Francisco, CA 94126

relief sought, the *Wal-Mart* Court's refusal to certify a nationwide employment discrimination class under Rule 23(b)(2) was driven by its concerns that the plaintiffs' addition of class claims for back pay created claims for "individualized relief" that could not meet the requirements of Rule 23(b)(2). *Id.* at 2557; *see also Connor B. v. Patrick*, 278 F.R.D. 30, 34 (D. Mass. 2011) (the holding in *Wal-Mart* regarding Rule 23(b)(2) certification was "limited" to "the propriety of claims for monetary relief.").

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
Case No.: 4:09-cv-05796-CW

23

1    Tel: (415) 981-9773
     Fax: (415) 981-9774
2
3    MARILYN S. MCMAHON (SBN 270059)
     Email: Marilyn@prisons.org
4    CALIFORNIA PRISON FOCUS
     1904 Franklin Street, Suite 507
5    Oakland, CA 94612
     Tel: (510) 734-3600
6    Fax: (510) 836-7222
7
     ANNE BUTERFIELD WEILLS (SBN 139845)
8    Email: aweills@aol.com
     SIEGEL & YEE
9    499 14th Street, Suite 300
     Oakland, CA 94612
10   Tel: (510) 839-1200
     Fax: (510) 444-6698
11
12   CAROL STRICKMAN (SBN 78341)
     Email: carol@prisonerswithchilodren.org
13   LEGAL   SERVICES   FOR   PRISONERS   WITH
     CHILDREN
14   1540 Market Street, Suite 490
     San Francisco, CA 94102
15   Tel: (415) 255-7036
     Fax: (415) 552-3150
16
17
18
19
20
21
22
23
24
25
26
27
28
     PLAINTIFFS' MOTION FOR CLASS
     CERTIFICATION
     Case No.: 4:09-cv-05796-CW                    24

1

## PROOF OF SERVICE

2

3   Case Name:     Ashker, et al. v. Brown, et al.

4   Case No.:      4:09-cv-05796-CW

5   I hereby certify that on May 2, 2013, I electronically filed the following documents with the
    Clerk of the Court by using the CM/ECF system:

6

7          **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS
          CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS**

8             **IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

9   I certify that **all** participants in the case are registered CM/ECF users and that service will be
    accomplished by the CM/ECF system.

10

11  I declare under penalty of perjury that the foregoing is true and correct. Executed on May 2, 2013
    at New York, New York.

12

13                                      /s/Alexis Agathocleous_____
                                        Alexis Agathocleous, Esq.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
Case No.: 4:09-cv-05796-CW                            25