# EXHIBIT A

1  JULES LOBEL (*pro hac vice*)
   Email: jll3@pitt.edu
2  ALEXIS AGATHOCLEOUS (*pro hac vice*)
   Email: aagathocleous@ccrjustice.org
3  RACHEL MEEROPOL (*pro hac vice*)
   Email: rachelm@ccrjustice.org
4  CENTER FOR CONSTITUTIONAL RIGHTS
   666 Broadway, 7th Floor
5  New York, NY 10012
   Tel: (212) 614-6478
6  Fax: (212) 614-6499

7  GREGORY D. HULL (Bar No. 57367)
   Email: greg.hull@weil.com
8  BAMBO OBARO (Bar No. 267683)
   Email: bambo.obaro@weil.com
9  WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway
10 Redwood Shores, CA 94065-1134
   Tel: (650) 802-3000
11 Fax: (650) 802-3100

12 Attorneys for Plaintiffs
   (Additional counsel listed on attached page)
13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                          OAKLAND DIVISION

17  TODD ASHKER, DANNY TROXELL, GEORGE      Case No. 4:09 CV 05796 CW
18  RUIZ, JEFFREY FRANKLIN, GEORGE FRANCO,
    GABRIEL REYES, RICHARD JOHNSON, PAUL    **DECLARATION OF TODD ASHKER**
19  REDD, LUIS ESQUIVEL, and RONNIE         **IN SUPPORT OF PLAINTIFFS'**
    DEWBERRY, on their own behalf, and on behalf of  **MOTION FOR CLASS**
20  a class of similarly situated prisoners,  **CERTIFICATION**

21                          Plaintiffs,      Honorable Claudia Wilken
22              v.
23  EDMUND G. BROWN, JR., Governor of the State
    of California, MATTHEW CATE, Secretary,
24  California Department of Corrections and
    Rehabilitation (CDCR); ANTHONY CHAUS,
25  Chief, Office of Correctional Safety, CDCR; and
    G.D. LEWIS, Warden, Pelican Bay State Prison,
26
27                          Defendants.

28

I, Todd Ashker, declare under penalty of perjury that:

1.  I am 49 years old, and have been housed at the Pelican Bay SHU since May 2, 1990.

2.  My understanding, based on my own observations and information provided to me by other prisoners, is that all of the prisoners in the Pelican Bay SHU are subject to the same harsh conditions.  I describe these conditions below.

3.  The cells in the Pelican Bay SHU are completely concrete, measure approximately 80 square feet, and are about eight feet tall.  They contain a concrete bed, sink, and toilet. Concrete slabs attached to the wall and floor serve as a desk and stool.  The cells have no window or other exposure to natural light.

4.  The doors to our cells are solid steel perforated with small holes that allow for a partial view into a concrete hallway.  The door has a slot that an officer may unlock to insert food or mail, and that is also used to handcuff the prisoner before the door is opened. The cells do not contain emergency call buttons.

5.  The unit is loud.  At night the guards stamp mail, open and close doors, walk the tier with rattling keys and chains for count, and wake up prisoners who are not "showing skin."

6.  The temperature in the cells is often excessively hot or cold.  Bedding consists of sheets and two thin blankets.

7.  Property is tightly restricted.  We are allowed a total of only ten books or magazines, and up to six cubic feet of property.  Only prisoners who can afford one can get a television set or radio.  We are given one quarter of the regular monthly canteen allowance allowed general population prisoners and may receive one annual package, not exceeding 30 pounds in weight, including packaging.

8.   We normally spend between 22 and one-half and 24 hours a day in our cells.  We are typically allowed to leave our cells only for "exercise" and to shower.

9.   "Exercise" occurs in a barren, solid concrete exercise pen, known as a "dog run."  It is supposed to last for one and one-half hours, seven times weekly.  However, we often do not receive even this minimal amount of exercise.

10.  The exercise pen is small and has high walls.  Half of the roof is partially covered with painted plexiglass and a metal mesh grate that obstructs direct sunlight.  All you can see from the exercise pen is a small patch of sky.  It often rains at Pelican Bay, and the rain falls directly into the exercise pens, causing water to pool on the floor.  The roof covering and walls of the exercise pen have accumulated mildew or mold.

11.  Until the 2011 hunger strike, there was no equipment whatsoever in the exercise pen. Since then, we have been provided one handball.  We generally exercise alone; however when a prisoner is double-celled, as I was years ago, he must either exercise with his cellmate or give up the opportunity to exercise so his cellmate may exercise alone.

12.  We have no recreational or vocational programming.  We can take correspondence classes if we can pay for them, but there has been no consistent access to proctors for exams that you need to get credit for coursework.  Until the 2011 hunger strike, we were banned from purchasing art supplies or hobby or crafting materials.  Prisoners who are discipline free for one year are now permitted to purchase and retain a limited amount of art supplies.

13.  We are allowed one 15-minute shower in a single shower cell three times weekly.

14.  We are allowed access to the law library for two hours, approximately once a month, unless we have a court deadline within 30 days.

3

15.   Whenever we are moved to another area of the Pelican Bay SHU, outside of the "pod" in which we are housed, we are handcuffed and shackled, and escorted by two guards.  We are also strip searched in public, near the door to the pod, and required to squat and cough.

16.   Prisoners never leave the Pelican Bay SHU except under rare circumstances for medical purposes or a court appearance.

17.   We have no regular access to social telephone calls.  Very rarely, we can get one discretionary 10-minute telephone call in the event of an emergency such as a death in the family.  For example, I was able to speak to my mother only twice in 22 years: once in 1998, and once in 2000, after family members had passed away.  Each call lasted approximately 10 minutes.  The remote location of Pelican Bay means that many of us receive no visits with family members or friends for years at a time.  When they do occur, family visits are limited to ~~two hours~~ _Less than 1½ hours._ (TA)  Visits occur behind plexiglass, over a telephone, in a cramped cubicle.  This means that we never get to hug or hold hands with visiting family members, children, or other loved ones.  We are strip-searched before visits.  The visits are live-monitored, and guards can decide to terminate them.  The visits are also recorded.  Upon information and belief, the tapes are later reviewed by gang investigators seeking evidence of gang communication to use against the prisoner and his visitor.

18.   When my disabled mother visited me in 1993, no accommodation was made for her wheelchair, causing a shortened and difficult visit.  She never visited again.

19.   Because of the difficulty of visiting, I have received only two social visits since February 2007.  I have gone for years at a time without visits.

4

20.     We have absolutely no access to group recreation, group education, group prayer, or group meals.

21.     I have not had a normal face-to-face conversation with anyone in 22 years.

22.     My only avenue of communication with other prisoners is by speaking loudly enough for the prisoner in the next cell, or a cell down the line, to hear. Over the years, I have been able to communicate with a limited number of people in this way.   However, guards have discretion to issue warnings and punish any loud communication as a rule violation, and do so. Moreover, any communication with another validated gang member or associate, even just a greeting, may be and has been used by CDCR as evidence of gang affiliation justifying the prisoners' retention in the SHU. I can periodically try to communicate through cracks in the wall or the drain when I'm in the exercise pen, but this type of communication is subject to disciplinary action. For example, just recently I received a "gang chrono" which states that on December 10, 2012, a validated Aryan Brotherhood member/associate communicated by shouting between pods to me and two other prisoners. The CDCR document goes on to state: "This documented [gang] activity should be considered as one piece of information during inmate Ashker [sic] next active/inactive review as a member/associate of the Aryan Brotherhood prison gang." A true and correct copy of this document can be found at Exhibit B. To my knowledge, many other prisoners have received such gang chronos to be used in their inactive reviews.

23.     I believe that the only way I will ever be released from the Pelican Bay SHU is if I debrief or die. When I requested program opportunities in 2004, CDCR administrators responded that my only avenue out of the Pelican Bay SHU was to "fully assist the

DECLARATION OF TODD ASHKER
ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Case No. 4:09 CV 05796 CW

authorities in their efforts to bring down the Aryan Brotherhood gang, by divulging all of their secrets."

24. My prolonged solitary confinement in Pelican Bay has caused me serious harm. I have described and discussed this harm with the experts who have been retained by my lawyers in this case.

25. I have constant physical pain, due in part to an old gunshot wound. In 2006, I was told by medical staff that I "hold the keys" to getting better medical care for this pain. I took this to mean that only by debriefing and moving to general population would I get better medical care.

26. My indefinite SHU confinement has also been used by the Parole Board to find me unsuitable for parole, and issue multi-year deferrals between suitability hearings. The Board has told me that I need to debrief and thereby get out of the SHU if I ever want a chance to parole. I have not had any disciplinary charges filed against me for any significant misconduct for the past 20 years. The only disciplinary charges that have been filed against me over the past 20 years are for minor violations, many of which were reduced to a 128 Informational Chrono. They include possession of homemade wine, possession of pieces of a plastic food tray and a TV cable, talking in the law library or to someone in another pod, possession of a staple, and so on. I received a 115 rules violation in connection to my participation in the 2011 hunger strike, but it was dismissed.

27. After spending more than 25 years in solitary confinement, I was a primary force in 2010-2011 in helping to educate people about the torturous conditions at the SHU. By

example, I led prisoners in two 2011 hunger strikes as a form of peaceful protest against conditions at the SHU.

28.    Because of my role as a prisoner representative during the 2011 hunger strikes with CDCR's top administrators, CDCR has designated me and three other prisoners, including my co-plaintiff Dewberry, to be PBSP-SHU prisoner representatives for the purpose of discussing prisoner complaints and issues with PBSP administrators. My co-plaintiffs Troxell and Redd have been designated alternative representatives as part of this process.

29.    As of the filing of the second amended complaint on May 30, 2012, my sole intent is to obtain class wide declaratory and injunctive relief for myself and all Pelican Bay SHU prisoners. That is why I dropped my damages and other non-class wide claims from the complaint.

30.    As part of my non-violent efforts to reform the Pelican Bay SHU, I have joined with other prisoners across racial and ethnic lines to call for an end to all racial group hostilities in CDCR and county jail facilities.

31.    I am interested in being a class representative in this case because I would like to represent other prisoners who have experienced the same constitutional violations as I, and I want to help change and improve CDCR's policies. I share this common interest with all the other prisoners held in the Pelican Bay SHU, so I don't know of any reason why I would be unable to adequately represent them in our claims for injunctive and declaratory relief.

32.    I have been cooperating fully with my lawyers and am responding to their requests to the best of my ability and recollection, and will continue to do that. My lawyers keep me

7

DECLARATION OF TODD ASHKER
ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Case No. 4:09 CV 05796 CW

updated as to the progress of the case. I am happy with their performance, and am

confident that they will adequately represent me and the class.

I declare under penalty of perjury that the foregoing is true and correct based on my

knowledge and belief and that this declaration was executed on April _15_, 2013, in Crescent City,

California.

_Todd Ashker_

TODD ASHKER

DECLARATION OF TODD ASHKER
ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Case No. 4:09 CV 05796 CW

1

2

**ADDITIONAL PLAINTIFFS' COUNSEL**

3   CHARLES F.A. CARBONE (SBN 206536)
    Email: charles@charlescarbone.com
    EVAN CHARLES GREENBERG (SBN 271356)
4   Email: evan@charlescarbone.com
    LAW OFFICES OF CHARLES CARBONE
5   P.O. Box 2809
    San Francisco, CA 94126
6   Tel: (415) 981-9773
    Fax: (415) 981-9774
7

    MARILYN S. MCMAHON (SBN 270059)
8   Email: marilyn@prisons.org
    CALIFORNIA PRISON FOCUS
9   1904 Franklin Street, Suite 507
    Oakland, CA 94612
10  Tel: (510) 734-3600
    Fax: (510) 836-7222
11

    ANNE BUTTERFIELD WEILLS (SBN 139845)
12  Email: aweills@aol.com
    SIEGEL & YEE
13  499 14TH STREET, SUITE 300
    Oakland, CA 94612
14  Tel: (510) 839-1200
    Fax: (510) 444-6698
15

    CAROL STRICKMAN (SBN 78341)
16  Email: carol@prisonerswithchildren.org
    LEGAL SERVICES FOR PRISONERS WITH CHILDREN
17  1540 Market Street, Suite 490
    San Francisco, CA 94102
18  Tel: (415) 255-7036
    Fax: (415) 552-3150
19

20

21

22

23

24

25

26

27

28

9

ADDITIONAL PLAINTIFFS' COUNSEL                                    Case No. 4:09 CV 05796 CW

# EXHIBIT B

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128B (Rev. 4/74)

**Number:** C-58191      **Name:** ASKER                    **Housing:** D04-121L

On December 10, 2012 at approximately 1440 hours while escorting in D04 for a decontamination shower, inmate **EVANS, J-43496, D01-104L,** validated gang member/associate of the **ARYAN BROTHERHOOD** prison gang communicated by shouting between pods to the following inmates;

| | | | |
|---|---|---|---|
| **ASKER, T.** | C-58191, | D04-121L, | **ARYAN BROTHERHOOD** |
| **YANDELL, R.** | V-27927, | D04-215L, | **ARYAN BROTHERHOOD** |
| **JOHNSON, R.** | D-91004, | D04-112L, | **ARYAN BROTHERHOOD** |

These inmates are all validated as members/associates of the **ARYAN BROTHERHOOD** prison gang. This document meets the criteria set forth in the California Code of Regulations (CCR), Title 15, Section 3378 (L), Communications.

This documented activity should be considered as one piece of information during inmate **ASKER** next active/inactive review as a member/associate of the **ARYAN BROTHERHOOD** prison gang.

ORIG: C-FILE
   cc: AWC
       INMATE
       PROGRAM
       CCI
       UNIT (2)

T. BREWER,
Correctional Officer
D10 Floor Officer

*T. Brewer*

**DATE: 12/10/2012**              **GANG CHRONO**                    **Inst: PBSP**

*Rec'd 1/8/13*
(TA)

EXHIBIT C

JULES LOBEL (*pro hac vice*)
Email:  jll3@pitt.edu
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email:  aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email:  rachelm@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY  10012
Tel:  (212) 614-6478
Fax:  (212) 614-6499

GREGORY D. HULL (Bar No. 57367)
Email:  greg.hull@weil.com
BAMBO OBARO (Bar No. 267683)
Email:  bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1134
Tel:  (650) 802-3000
Fax:  (650) 802-3100

Attorneys for Plaintiffs
(Additional counsel listed on attached page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TODD ASHKER, DANNY TROXELL, GEORGE RUIZ, JEFFREY FRANKLIN, GEORGE FRANCO, GABRIEL REYES, RICHARD JOHNSON, PAUL REDD, LUIS ESQUIVEL, and RONNIE DEWBERRY, on their own behalf, and on behalf of a class of similarly situated prisoners,<br><br>               Plaintiffs,<br><br>      v.<br><br>EDMUND G. BROWN, JR., Governor of the State of California, MATTHEW CATE, Secretary, California Department of Corrections and Rehabilitation (CDCR); ANTHONY CHAUS, Chief, Office of Correctional Safety, CDCR; and G.D. LEWIS, Warden, Pelican Bay State Prison,<br><br>               Defendants. | Case No. 4:09 CV 05796 CW<br><br>**DECLARATION OF SITAWA NANTAMBU JAMAA (RONNIE DEWBERRY) IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Honorable Claudia Wilken |

I, Sitawa Nantambu Jamaa (Ronnie Dewberry), declare under penalty of perjury that:

1.    I am a 54-year-old prisoner and have spent the last 28 years in solitary confinement.  I have been in the Pelican Bay SHU since June 1990.

2.    I have had no major disciplinary infractions since 1995 and no gang related disciplinary infractions for my entire time in the SHU.

3.    Based on my sentence, I am eligible for parole.  I have been to the parole board four times already, and was denied each time.  I believe I would be considered for parole consideration but for my retention in the SHU.

4.    I suffer from hypertension, chronic lower back problems and pain, stomach problems, and swollen thyroid glands. I was on pain medication twice a day for my back pain, but that was halved without explanation in 2011.  Recently, my pain medication was reduced by half again.  Now I only have enough pain medication for the first half of each month, and I have to go without pain medication for the second half of each month.

5.    My cell has no window or natural light, and I suffer melanin deficiency leading to severe pigmentation loss and vitamin D deficiency. At the beginning of 2012, I was getting Vitamin D pills, but that stopped in late 2012.  My eyesight has also gotten much worse in recent years.

6.    I was originally validated as a member of the BGF simply because of alleged associations and materials that CDCR claims to have found in my cell.  I was placed in administrative segregation in 1985 because CDCR claims I had five sheets of paper which appeared to be part of the BGF Constitution, even though CDCR released me to the general population when the papers were first found, and because the name "Rashad" was found on a list in someone else's possession.  I used that name but so did other prisoners.  I

2

believe that these reasons were pre-textual and fabricated, and that I was really put in the SHU because of my political activism and ideology.

7.   At my 180-day and annual reviews, CDCR have only asked me to debrief, and whether I have mental health issues.  They also check to see if all my paperwork is in order.  They don't ask me any questions about any gang-related behavior or association.  They also don't suggest any ways I could change my behavior to earn release.

8.   I was denied inactive status in November 2011 because my name appeared on a coded roster in another prisoner's possession, and because I possessed political and historical writings, and photographs, including a pamphlet in Swahili, which my inactive review materials state is a banned language at PBSP.  CDCR also relied on confidential memoranda stating that I am a BGF "enforcer", and on my participation in George Jackson University.  According to my inactive review materials George Jackson University "is not a university at all," but rather a "concept," "to teach the philosophies and ideologies of all 'Political Prisoners'" and "to enlist individuals who are not in prison to help spread the ideologies of the BGF (Black Guerilla Family)."  CDCR misstates the purpose of George Jackson University, which is to educate people to understand their own African history and culture and to educate all prisoners about their rights.  True and correct copies of my 2011 inactive review documents can be found at Exhibit D.

9.   None of the materials used to deny me inactive status and consign me to the SHU for at least six more years contained any evidence whatsoever that I was involved in any gang-related activity as I understand those words.  Rather, the evidence used by CDCR of "gang activity" was my political writings and materials that I had in my cell.

10.   Being at the SHU has made it hard to have any kind of normal family relationship.

3

11.   I have received very few social visits because it is so difficult for my family to get here.  I had less than one visit per year between my 1990 transfer to Pelican Bay SHU and 2007. I had no visits between 2008 and February 2012.  Since 2012, my sister has been able to visit a few times.

12.   Between 2006 and 2010, I attempted to donate one of my kidneys to another sister, who was critically ill and needed a kidney transplant.  CDCR refused my request.  My sister died in June 2010 from kidney failure.

13.   My prolonged solitary confinement in Pelican Bay has caused me serious harm.  I have described and discussed this harm with the experts who have been retained by my lawyers in this case.

14.   I am a principal negotiator for the Pelican Bay Human Rights movement in our efforts to educate people about the torturous conditions at the SHU and to peacefully protest against our SHU confinement by means of this lawsuit, hunger strikes, and political writing.

15.   Because of my role as a principal negotiator during the 2011 hunger strikes CDCR has designated me and three other prisoners, including my co-plaintiff Todd Ashker, to be PBSP-SHU prisoner representatives for the purpose of discussing prisoner complaints and issues with PBSP administrators.  My co-plaintiffs Danny Troxell and Paul Redd have been designated alternative representatives as part of this process.

16.   Part of my non-violent activism efforts have included participation, along with fifteen other PBSP-SHU prisoner representatives of different races and ethnic origins, in issuing a call for an end to all racial group hostilities in CDCR and the county jail system.  Our intent in issuing this statement is to greatly reduce racial violence in California prisons

4

and on the streets. This public call for an end to racial violence became effective on October 10, 2012.

17.    I am interested in being a class representative in this case because I would like to represent other prisoners who have experienced the same constitutional violations as I, and I want to help change and improve CDCR's policies.  I share this common interest with all the other prisoners held in the Pelican Bay SHU, so I don't know of any reason why I would be unable to adequately represent them in our claims for injunctive and declaratory relief.

18.    I have been cooperating fully with my lawyers and am responding to their requests to the best of my ability and recollection, and will continue to do that.  My lawyers keep me updated as to the progress of the case. I am happy with their performance, and am confident that they will adequately represent me and the class.

I declare under penalty of perjury that the foregoing is true and correct based on my knowledge and belief and that this declaration was executed on April 16 , 2013, in Crescent City, California.

_Sitawa Nantambu Jamaa_
( _Ronnie Dewberry_ )
SITAWA NANTAMBU JAMAA
(RONNIE DEWBERRY)

DECLARATION OF RONNIE DEWBERRY
ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

5

Case No. 4:09 CV 05796 CW

1

**ADDITIONAL PLAINTIFFS' COUNSEL**

2

CHARLES F.A. CARBONE (SBN 206536)
3   Email:  charles@charlescarbone.com
EVAN CHARLES GREENBERG (SBN 271356)
4   Email:  evan@charlescarbone.com
LAW OFFICES OF CHARLES CARBONE
5   P.O. Box 2809
San Francisco, CA  94126
6   Tel:  (415) 981-9773
Fax:  (415) 981-9774

7

MARILYN S. MCMAHON (SBN 270059)
8   Email:  marilyn@prisons.org
CALIFORNIA PRISON FOCUS
9   1904 Franklin Street, Suite 507
Oakland, CA  94612
10  Tel:  (510) 734-3600
Fax:  (510) 836-7222

11

ANNE BUTTERFIELD WEILLS (SBN 139845)
12  Email:  aweills@aol.com
SIEGEL & YEE
13  499 14TH STREET, SUITE 300
Oakland, CA  94612
14  Tel:  (510) 839-1200
Fax:  (510) 444-6698

15

CAROL STRICKMAN (SBN 78341)
16  Email:  carol@prisonerswithchildren.org
LEGAL SERVICES FOR PRISONERS WITH CHILDREN
17  1540 Market Street, Suite 490
San Francisco, CA  94102
18  Tel:  (415) 255-7036
Fax:  (415) 552-3150

19

20

21

22

23

24

25

26

27

28

6

# EXHIBIT D

STATE OF CALIFORNIA                    *PAGE ONE*                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
                                                                    CDCR 128-B (Rev. 4/74)

NAME:   **DEWBERRY, Ronnie**                    CDCR#   **C-35671**   HOUSING   **PBSP D1-117L**

On November 2, 2011, the Institutional Gang Investigations Unit (IGI), completed an investigation of Inmate **DEWBERRY, Ronnie, C-35671,** moniker **"Sitawa,"** regarding his current gang status. *(Hereafter DEWBERRY will be referred to as SUBJECT)* On November 14, 1985, SUBJECT was originally validated under CDCR number C-35671, as a member of the Black Guerrilla Family prison gang. Per the California Code of Regulations (CCR), Title 15, Section 3378 (e), there is sufficient evidence to update SUBJECT's status as a member of the Black Guerrilla Family prison gang.

The following documents are being submitted relative to this investigation:

1) SOURCE ITEM- CDCR 128B dated September 27, 2011, (Association)/(Written Material)/ (Tattoos and Symbols).

2) SOURCE ITEM- CDCR 115 dated September 23, 2011, (Offenses)

3) SUPPORT ITEM- Confidential Memorandum dated September 23, 2011, (Association)/(Written Material). This document is supporting information to the CDCR 115 Rules Violation Report dated September 23, 2011.

4) SOURCE ITEM- Confidential Memorandum dated July 16, 2009, (Debriefing Reports)

5) SUPPORT ITEM- Confidential Memorandum dated February 10, 2009, (Debriefing Reports). This document is supporting information for the Confidential Memorandum dated July 16, 2009.

6) SOURCE ITEM- Confidential Memorandum dated January 15, 2008, (Written Material)

**(Archives)** SUBJECT is still serving under his CDCR # C-35671, and does not have an archive file.

**(WSIN)** No additional information was provided by this source.

**(Local Law Enforcement)** SUBJECT's County of commitment was not contacted.

**(Paroles/Leads)** Paroles was not contacted as SUBJECT has been in custody for the last six years.

**(Cal Gangs)** No additional information was provided by this source.

**(SSU/OCS)** No additional information was provided by this source.

## DISCLOSURE AND NOTIFICATION

SUBJECT has a TABE Score of 5.6, therefore, SUBJECT does not require staff assistance. SUBJECT is not a participant in the Mental Health Delivery System.

On October 31, 2011, at 1240 hours, SUBJECT was disclosed all information being utilized in the validation process. If applicable, SUBJECT was disclosed confidential information via CDCR 1030 Confidential Information Disclosure Form. SUBJECT was further advised an interview regarding the information obtained during this investigation would be held not less than 24-hours from the time of the disclosure.

## INTERVIEW

On November 1, 2011, at 1255 hours, I attempted to interview SUBJECT regarding the information obtained during this investigation. SUBJECT informed this investigator that he needed more time, stating, "There is a lot to dispute, can I have another day to prepare?" This investigator informed SUBJECT that he would be allowed an additional 24 hours of preparation time, and I would return the following day. On November 2, 2011, at 1255 hours, SUBJECT was interviewed regarding the documents utilized in the prison gang validation package to identify SUBJECT as a member of the Black Guerrilla Family prison gang. SUBJECT provided a written response addressing all

STATE OF CALIFORNIA                    *PAGE TWO*                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
                                                                          CDCR 128-B (Rev. 4/74)

NAME:   **DEWBERRY, Ronnie**              CDCR#   **C-35671**   HOUSING   **PBSP D1-117L**

documents used in the review process. SUBJECT was asked if he had anything verbal to say regarding the documents utilized in this investigation. SUBJECT stated, "No, it's all written down, that's it."

## CONCLUSION

Upon reviewing the written response and after a thorough review of the evidence, it was determined SUBJECT'S claims have no merit and do not warrant further investigation.

The IGI has concluded there is sufficient evidence to identify **DEWBERRY, Ronnie, C-35671, moniker "Sitawa,"** as a member of the Black Guerrilla Family prison gang.

The aforementioned information will be forwarded to the Office of Correctional Safety for review and acceptance of SUBJECT'S prison gang validation.


S. BURRIS
Assistant-Institutional Gang Investigator
Pelican Bay State Prison

D. BARNEBURG
Institutional Gang Investigator
Pelican Bay State Prison

Orig:   C-File
cc:     OCS
        IGI Unit
        Inmate

DATE:  11/2/2011              **GANG VALIDATION CHRONO**                    **CDCR 128B**

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 128-B (05/08)

| NAME<br>**DEWBERRY** | CDCR# or DOB<br>**C-35671** | INSTITUTION or ADDRESS<br>**PELICAN BAY STATE PRISON** | HOUSING/LOCATION<br>**D1-117L** |
|---|---|---|---|

An investigation was completed into your suspected membership and/or association with a prison gang and/or disruptive group recognized by the California Department of Corrections and Rehabilitation as defined in Section 3000 of the California Code of Regulations. The investigation revealed sufficient evidence to identify you as a:

☒ **MEMBER**    ☐ **ASSOCIATE**    ☐ **IN-ACTIVE**   **OF THE**    ☒ **PRISON GANG**    ☐ **DISRUPTIVE GROUP:**

Black Guerrilla Family

An interview relative to this investigation and suspected gang affiliation shall be held not less than 24-hours from the date of this notification unless otherwise requested by you in writing. During this interview, you will be given an opportunity to be heard and have your opinion documented relative to the evidence considered in this validation. Written rebuttals may be submitted at the time of the interview.

DISCLOSURE OF EVIDENCE
The following source documents were considered in your identification as a member or associate of the aforementioned prison gang or disruptive group. All confidential documents shall be disclosed via CDC Form 1030, Confidential Information Disclosure Form. Each source document shall be identified by type (I.E. CDC 128-B, CDC 115, Confidential Report, etc.) and date of the report.

1) SOURCE ITEM- CDCR 128B dated September 27, 2011, (Association)/(Written Material)/ (Tattoos and Symbols).

2) SOURCE ITEM- CDCR 115 dated September 23, 2011, (Offenses)

3) SUPPORT ITEM- Confidential Memorandum dated September 23, 2011, (Association)/(Written Material). This document is supporting information to the CDCR 115 Rules Violation Report dated September 23, 2011.

4) SOURCE ITEM- Confidential Memorandum dated July 16, 2009, (Debriefing Reports)

5) SUPPORT ITEM- Confidential Memorandum dated February 10, 2009, (Debriefing Reports). This document is supporting information for the Confidential Memorandum dated July 16, 2009.

6) SOURCE ITEM- Confidential Memorandum dated January 15, 2008, (Written Material)

Copies of all documents and/or disclosures were provided to the inmate as required per CCR Section 3378 and Departmental Operations Manual (DOM) 52070.21.1 by:

| NAME<br>S. Burris | | CLASSIFICATION<br>**Correctional Officer** | DATE<br>**10/31/2011** | TIME<br>*1250* |
|---|---|---|---|---|

Additional comments: (Use this space to record any comments made by the inmate at the time of disclosure)

**GANG VALIDATION**
**DATE: 10/31/2011**    **EVIDENCE DISCLOSURE AND INTERVIEW NOTIFICATION**    **CDCR 128B**

**NAME and NUMBER: DEWBERRY, Ronnie      C-35671      HOUSING: PBSP D1-117L**

On September 13, 2011, the Institution Gang Investigations Unit (IGI) initiated an investigation of inmate **DEWBERRY, Ronnie, C-35671,** moniker "Sitawa," validated Black Guerrilla Family (BGF) member, currently housed in Pelican Bay State Prison, Security Housing Unit (SHU), Facility D, Unit 1, Cell 117L, regarding his current gang status. On September 13, 2011, through September 16, 2011, the personal property of DEWBERRY was searched to ascertain any BGF gang-related information for his pending Active/Inactive Review Investigation. Discovered amid his personal property were multiple items which are considered BGF gang-related.

(1) "Turning the Tide newspaper dated July-September 2010. Within this periodical is an article on "George Jackson." George Jackson is the co-founder of the BGF. Members and associates of the BGF hold Jackson in high regard and base their ideologies and philosophy on the structure that Jackson helped establish. BGF members believe Jackson to be a martyr.

(2) Three photographs of George Jackson. Two of these photographs are photocopied, and depict George Jackson. One of the photographs is of Jackson at his funeral. On the back of the photocopied photograph a statement reads, "To brother Rashad. Love and Loyalty, from Khatari and Fela". "Rashad," is identified as DEWBERRY, "Fela," is identified as BGF member **JORDAN, Warren, B-42117,** currently housed at PBSP, SHU, and "Khatari," is identified as **GAULDEN, Jeffery,** who became Commander of the BGF after the death of Jackson. GAULDEN was killed during a football game at San Quentin State Prison on August 1, 1978). BGF members believe Jackson to be a martyr, and utilize pictures that depict Jackson as a symbol of their dedication and devotion to the gang.

(3) Eight photographs of Jeffery Gaulden. Gaulden was the Commander of the BGF after the death of Jackson, killed during a football game at San Quentin State Prison on August 1, 1978.

(4) Three address books which contain names, CDCR numbers, monikers, housing and/or addresses of validated BGF affiliates. These address book will not be documented as gang-activity, based on the addresses are outdated and unusable, and therefore, DEWBERRY will be allowed to send them home at his own expense.

(5) Two day planners with addresses. Within these two day planner books DEWBERRY has written the names, monikers, and birthdates of several BGF members. The first day planner has written: *C. (Abasi) J. May 2.* This is identified as **JACKSON, Clyde, C-33559,** aka "Abasi," validated BGF member, date of birth 5/2/1963. *J. D. Benson 7-27.* This identified as **BENSON, James, Darryl, D-63433,** aka "Hodari," validated BGF member, date of birth 7/27/1954. The second day planner has the same information listed as the first.

(6) One handwritten analogy on Black August. *"Brutha Mumia, has said it best, "Their sacrifices, their despair, their determination, and their blood has painted the month black for all time. Let their revolutionary sacrifices not be forgotten nor taken in vain." Long Live Black August.* "Black August" or the Black August movement is a concept which was established by the BGF to commemorate all of their fallen comrades. The BGF picked the month of August due to the fact that several members and associates of the BGF had been killed in the month of August. These members include George Jackson (co-founder of the BGF, killed during an attempted escape from San Quentin State Prison on August 21, 1971,) Jeffery Gaulden (Commander of the BGF after the death of Jackson, killed during a football game at San Quentin State Prison on August 1, 1978), William Christmas, James McClain, and Jonathan Jackson (all three killed on August 7, 1970, during an attempted escape at the Marin County Courthouse,) death of Alvin Miller, Cleveland Edwards, and W. L. Nolan, who were shot and killed by correctional staff during an incident with the Aryan Brotherhood, (this incident actually took place on January 13, 1970, but BGF utilize the date of August 13, 1970, to commemorate their death.) The BGF also utilize other occurrences not directly involving the BGF, but occurred in the moth of August. This includes the Watts Riots in August 1965, arrival of the first black slaves in the 13 colonies in August 1619, Underground Railroad August 1850, the birth of Marcus Garvey August 17, 1887, and birth of Black Panther Fred Hampton on August 30, 1948.

(7) One scrapbook titled "A Proud Heritage" This book appears to have been manufactured by DEWBERRY in a tribute to African history as it applies toward slavery. Within the scrapbook DEWBERRY has a detailed history of the BGF from its conception. This scrapbook was documented on a CDCR 115 Rules Violation Report dated September 23, 2011. Refer to 115 RVR number D11-09-0012.

1

NAME and NUMBER: **DEWBERRY, Ronnie    C-35671**   HOUSING:  **3SP DT-117L**

(8) One book titled "Cages of Steel" written for George Jackson. This book DEWBERRY was allowed to send home. Within the book is an interview with George Jackson, titled, "Remembering the Real Dragon-An Interview with George Jackson May 16 and June 29, 1971." This book will not be utilized as continued gang-activity for this investigation, but DEWBERRY is not allowed to possess any material which can link him to the gang, and therefore he will be allowed to send the book home at his own expense.

(9) One hand written page titled "Preferable Reading List #1 For Miu Training." "MIU," is an acronym for Military Intelligence Unit. Within this list are books which has been identified as preferred reading material for the BGF for the training of their ideology.

(10)One page titled "The Cultivation Of Learning The Science of Psychology" This handwritten document is a series of questions which pertain to the "Preferred Reading List," which has many historical questions pertaining to black history, but also has several questions which specifically pertain to the BGF and its ideology.

(11)Fourteen pages titled "Understanding Institutionalized Racism" This document is a history account including the coalescing groups making up the BGF organization. This document is handwritten by **POWELL, Lewis, B-59864**, aka "Saani," validated BGF member, in tribute to inmate **CRAWFORD, James, D-05996**, aka "BoLo," validated BGF member.

(12) Eighteen pages Titled "Understanding Ideology" This handwritten document is an orientation/educational document for the BGF, written by POWELL.

(12)Eleven pages titled "Be Apart of Our Liberation struggle" This document is photocopied from an original document which DEWBERRY has comprised. This document demonstrates his support for the black prison population against the "White Supremacy," through the beliefs of George Jackson and the Black Panther Party.

(13)One page with a hand drawn map of Africa, which encompasses the symbol of the George Jackson University. The George Jackson University (GJU) is not a university at all, but a concept designed by the BGF, specifically **HARVEY, James, C-48884**, aka "Abdul Shakur," validated BGF member, and **JACKSON, Clyde, C-33559**, aka "Abasi," validated BGF member, and DEWBERRY, to teach the philosophies and ideologies of all "Political Prisoners," and therefore the BGF. The idea behind the GJU is to enlist individuals who are not in prison to help spread the ideologies of the BGF. The idea behind the GJU was to enable the BGF to spread their views and ideologies not only to prison inmates, but throughout the United States. By spreading the ideologies of the BGF to individuals on the streets and other states, inmates enables the BGF to bolster support for their cause.

(14)Six pages handwritten by Louis POWELL. This document is a letter comprised by POWELL to the "Cutting Edge," newspaper seeking support on bringing attention to the Mexican and Black violence in prison, as well as, out in the community.

(15) Four typed pages titled, "A critical review of the N.A.I.M." Which is the acronym for "New Afrikan Independence Movement." This paper describes the New Afrikan Independence Movement, associating it with a stage of the black liberation movement. At the bottom of page three is the acronym "W.G.J." along with the words "Cadre Manifest." The acronym W.G.J. is Swahili for Weusi Gaidi Jamaa, or translated too Black Guerrilla Family.

(16) One typed page titled "Born Without Justice," By Louis Powell. This single sided page was meant for the cover to a book which POWELL was writing.

(17) Thirty-one typed pages of Front for Liberation of New African Nation. This document was returned to DEWBERRY, as it contained no BGF related material.

(18) One photocopied page titled "Voices In The Whirlwind Alliance." This single page document is an advertisement sent on behalf of all "Political Prisoners," to voice their opinion and spread their beliefs of being prisoners in the "Amerikkkas." At the bottom of this advertisement is a depiction/silhouette representing George Jackson lying in a pool of blood, represented with a quote, "Power to the People, George." This is a statement that George Jackson was quotes as having said before his death.

2

NAME and NUMBER: **DEWBERRY,** Ronnie    **C-35671**    HOUSING:   **3SP D1-117L**

(19)Nine typed pages of George Jackson University instructor/teachers handbook. This typed document is a teacher's manual for the teaching of the BGF concept and ideologies through the concept of black history, as well as, events such as the Civil Rights Movement. Although the Civil Rights Movement and black history is far from gang-related, the BGF has instilled in its affiliates that all black Americans are to rise up against the masses. The following individuals are identified as holding positions within the George Jackson University:

| Moniker | Name | CDC | GJU Position |
|---|---|---|---|
| Abdul Olugbala Shakur | James Harvey | C-48884 | Co-Chancellor, NAC101 Dept |
| SITAWA NANTAMBU JAMAA | Ronnie Dewberry | C-35671 | C-Chancellor, NCTT |
| | Dr. Donald Evans | NonCDC | Vice-Chancellor, Afrocentric Studies |
| RASHAD ALI | Nathaniel Perkins | NonCDC | Secretary General |
| ABASI GANDA | Clyde Jackson | C-33559 | Chief Minister of Justice |
| SONDAI KAMDIBE | Randall Ellis | C-68764 | Minister of Justice |
| OWUSU YAKI YAKUBU | | NonCDC | Director of New Afrikan Political Science Dept, New Afrikan Theoretician |
| HONDO T'CHIKWA | | NonCDC Chicago | Assistant Director Of New Afrikan Political Science Department, New Afrikan Theoretician |
| Saani Muraad Al-Azeez | Lewis Powell | B-59864 | Chief Advisor, New Afrikan Psychology Dept |
| Hodari Kambon | James Benson | D-63433 | Nat'l Spokesman Public Affairs Dept |
| Jitu Joka Kambon | Ruben Williams | B-72882 | New Afrikan Cultural Minister, Advisory Board |
| Askari Joka | Jeffrey Franklin | C-08545 | Advisory Board |
| Sangu Kambon | Paul Jones | B-26077 | Advisory Board |
| Bashir Hameed | Basheer Hameed | 82A6313 New York DOC | Advisory Board, East Coast Chief Representative |
| Mafundi | Richard Lake | 0799972 Alabama DOC | Advisory Board |
| | Michael Zinzun | NonCDC Pasadena | |
| Khalfani Malik Khaldun | Leonard McQuay | 874304 Indiana DOC | Minister of Education, Midwest Chief Representative |

(20) Three typed pages titled, "Mission Statement." This document was written by DEWBERRY around 1982, as the BGF attempted to establish the, "NARN Collective Think Tank (NCTT)" to spread the beliefs and ideologies of the BGF to individuals not only in the prisons and on the streets of California but to individuals who are incarcerated or on the streets throughout the United States. New Africans with the Revolutionary Nationalism or "NARN," forms the basis and beliefs of the BGF. In doing this, the teachings of NARN became more than just words, it became a belief in the concept and ideologies of the BGF. The idea behind the NCTT was to establish various ways such as publications or through artwork to spread the ideologies and teachings of the BGF. The idea was to locate individuals who possessed a likeminded belief system as that of the BGF. By locating these individuals the pool of prospective BGF members grows which would allow the BGF to be more selective in their recruitment of new BGF members. Even those who may not be recruited as members could be utilized as associates because they possess the same ideological beliefs as members.

(21) Ten typed pages titled, "New African people's organization official document #II." This typed document is the constitution and bylaws of the "New African Peoples Organization," (N.A.P.O.). This ideology was established by the BGF to organize "New Afrikan People," to liberate the United States government, as well as liberate the state government, by a pro-socialist movement. Handwritten on the cover page under, "Section 1, Ideology," are the words "New Man/New Woman." The New Man/New Woman (NMNW) ideology speaks of the need to remove all thoughts and actions of Capitalism from the lives of its members. The NMNW explains that the BGF can not move forward to a revolutionary party with a communist belief system, if the membership did not make sacrifices and give up their capitalistic way of thinking. This ideology embraces the BGF members who have embraced the ideology changes under BGF Supreme Commander **CARTER, Kenneth, B-52119**, aka "Fati," validated BGF member.

(22) Ten handwritten pages titled, "Instructions for the Typing of Our BAM." This handwritten document was written by BGF member BENSON. The acronym of "BAM," stands for, "Black August Movement."

(23) Nine typed pages titled "The vortex of prison politics." This document was prepared by POWELL on the racial violence at PBSP and the negotiation committee formed after the 2001 mass riot which occurred on the General Population Yard (Facility B).

(24) Two typed pages titled, "We Shall Confront the World with Our Ideology." This document was prepared by **MASTERS, Jarvis, C-35169**, aka "Askari," validated BGF member, which consists of propaganda for the "oppressed Africans," to rise up against the fascist superpowers of the western and eastern governments.

(25) Three photocopied pages written by DEWBERRY. This document was written by DEWBERRY in 1988, to be read at his families Thanksgiving dinner. This document is being returned to DEWBERRY as it contains no gang activity.

(26) One handwritten pamphlet which is a plan for building the community, institutions, and developing resources. Within the pamphlet there is a subtitle of, "The Black Panther Party and Original Black Guerrillas." This pamphlet consists of material which would be provided to education the black community on "Capitalist Amerika," based on the NARN ideology.

(27) Two pamphlets titled, "Queen of the new Afrikan nation." This pamphlet was written by CRAWFORD for black community woman and children to enlighten them on the BGF ideologies. Specifically, CRAWFORD expresses to the community of black woman on how to survive by understanding socialism, racism, as well as, good health and well being, while introducing the ideologies of the BGF.

(28) Three copies (photocopied pamphlets) titled, "Blood in my eye selected study skill material." This pamphlet was designed to increase a students mental recall and ability to locate the specifics in any subject matter which may be read. In the, "Introduction to Study Material," BENSON writes, "The student must read the book Blood In My Eye, by George Jackson, from which the selected study material is based." BENSON created the booklet to be used by BGF members and recruits to get a

4

better ···anding of the teaching of George JACKSON which are outlined in the book. At the bottom of the introduction page BENSON writes N.C.T.T. which is the acronym for NARN Collective Think Tank.

(29) One copied pamphlet titled, "The need to support the New Afrikan Institute for Criminology 101" This pamphlet was designed by HARVEY and produced by GJU. The book is listed as, "A text on Criminology from a Revolutionary Perspective."

(30) Five copies of pamphlets titled, "Operation Hip Hop Rescue." This pamphlet was also produced by HARVEY which is a proposed plan of action on how to stop the gang violence in the community by creating various programs to educate the youth. These include, "Hip Hop Dance Academy," and the "Hip Hop Trust Foundation." Within the proposal created by HARVEY, he informs the readers by investing in the Hip Hop foundation, the community as a whole can combat the gang problems without the help or guidance of the government and law enforcement. HARVEY informs the community if they design the, "Hip Hop Culture Community Center (H.H.C.C.C.)," there will be wall to wall books on black history written by, "New Afrikan scholars, such as Marcus Garvey and George Jackson."

(31) Three copies pamphlets titled, "New Africans Physical Fitness 101." This pamphlet was designed by **HARRISON, Marcus, H-54077**, aka "Tashiri," validated BGF member.

(32) Eight typed copied pamphlets, titled "I Know My Destiny." This is a pamphlet was designed by DEWBERRY to proclaim his innocence of the crime which sent him to prison. On the back page of the pamphlet, DEWBERRY rants that the California Department of Corrections and Rehabilitations (CDCR), or as he states, "KDK" (Kalifornia Department of Korrections,) has held him in solitary confinement for the past 14 years for his, "political beliefs and spiritual morality as a NARN." Also at the bottom of the page, DEWBERRY writes, "Comrade Sitawa, Black August 1998."

(33) One handwritten pamphlet titled, "Liberator Educator Agitator Devoted." This handwritten document is leadership training manual. Within this document the author writes, "This manual will now set forth a clear line of organizational expectations for the (Cadre). As they relate to our over-all responsibilities as a second level personnel, therefore, let our efforts result in the development of ideological and political cohesiveness, consistent with our party documents and our responsibilities as beneficiaries of W.L. Nolen revolutionary vision and comrade George's legacy and keeper of the dragons torch." "W.L. Nolen," is identified as one of the co-founders of the BGF who was shot and killed by correctional staff during an incident with the Aryan Brotherhood, on January 13, 1970. "Comrade George," is identified as George Jackson.

(34) One typed pamphlet titled, "Ghetto Criminology." This pamphlet was written by HARVEY.

(35) One hand written pamphlet titled, "Voices the Prison Movement." This pamphlet appears to be a rough draft for the "Black August Memorial," and its organizational committee. Within the pamphlet, DEWBERRY writes, "The BPP and the original BG's." (BPP is the acronym of the Black Panther Party, and BG is the acronym of the Black Guerrillas, which is the name utilized prior to the BGF.)

(36) One photocopied pamphlet titled, "N.A.P.P.N. Charts within the Pyramid." N.A.P.P.N. is the acronym for "New Afrikan Publishing and Production Network." This document was returned to DEWBERRY.

(37) Three copies of pamphlets, titled, "New Afrikan Community Parole Review Board Proposal and Petition." This document was also written by HARVEY. The cover of the pamphlet is presented by: "The New Afrikan Institute for Criminology 101, Political Prisoners of War Coalition, Black Panther Party Press, George Jackson Grassroots Foundation, Abdul Olugbala Shakur Legal Defense Fund, Ruchell Magee Defense Fund, and Sojourner Truth Farm School."

(38) One birthday card signed by **ELLIS, Randall, C-68764**, aka "Akili," validated BGF associate, **JACKSON, Clyde, C-33559**, aka "Abasi," validated BGF member, **WILLIAMSON, Jimmy, D-34288**, aka "Baridi," validated BGF member, **ALEXANDER, Leonard, B-72288**, aka "Yafeu," validated BGF member, and HARVEY.

(39) Twenty loose/scrap papers/envelopes with names, CDCR numbers, monikers and/or housing of validated and non-validated BGF affiliates, including a roster of BGF affiliates housed within PBSP, SHU, Facility D, Unit 2.

Case 4:09-cv-05796-CW   Document 195-1   Filed 05/02/13   Page 29 of 42

(40) Six newspaper clippings of Black August and or validated BGF affiliates.

(41) One typed page and one handwritten pamphlet of Swahili. Swahili is a banned language at PBSP.

Based on my training and experience as a gang investigator, I have concluded that DEWBERRY had in his possession multiple items which are identified as being BGF gang-related. Many of the items which are being identified throughout this document, i.e. the names, CDCR identification number, monikers, and the roster discovered on multiple scrap pieces of paper are not being added into this document, as this information is confidential. DEWBERRY would only possess the aforementioned items if he is actively participating in BGF activities.

This document should be utilized in the re-validation for DEWBERRY, per California Code of Regulations, Title 15, Section 3378 (c), (8), (C), (G), (B) Written Material/Association and Symbols.

Although the scrapbook titled "A Proud Heritage," was utilized in a disciplinary action against DEWBERRY, it was added into this document to demonstrate and show the number of items confiscated from his personal property, which several were returned, or allowed to be sent home by DEWBERRY.


S. Burris
Assistant-Institutional Gang Investigator
Pelican Bay State Prison


DATE: 9/27/2011                    **GANG INFORMATION**                    CDCR 128B


# DO NOT ISSUE COPIES OF ATTACHMENTS TO INMATE

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS
**RULES VIOLATION REPORT - PART C**                                                   PAGE _2_ OF _2_

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| C-35671 | DEWBERRY | D11-09-0012 | PBSP | 09-23-11 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☒ 115 CIRCUMSTANCES | ☐ HEARING | ☐ IE REPORT | ☐ OTHER____ |
|---|---|---|---|---|---|

The scrapbook contains a crude timeline of African history as it applied through the centuries beginning with African tribal culture through slavery to the present African American. Hidden within the writing of the book is a detailed history/timeline of the BGF from its formation through the leadership from its conception, (refer to Confidential Memorandum dated September 23, 2011, authored by this investigator).

This document provides information regarding the history of BGF related documents such as the BGF Constitution, Code of Ethics (which was added to the BGF Constitution) and the Operational Documents. As part of the Orientation and Indoctrination process of the BGF, individuals seeking membership must have a clear understanding of each of these documents to include the history of when the documents were written.

The document also outlines an area of BGF history which resulted in power struggles for control of the BGF after the death of BGF co-founder George Jackson. The histories of the BGF as well as the Black Liberation Movement are areas which are also mandatory learning material under the Orientation and Indoctrination Process.

Lastly the document stipulates *"Political training: Party Platform, Soledad Brothers, Blood in My Eye, and all available material on N.A.R.N."* This would indicate the author is advising anyone who reads the document, that as part of BGF Political Training you should read and study the Party Platform (referring to the Ten Point Party Platform of the BGF which is part of the BGF Constitution), NARN materials (New African Revolutionary Nationalism which is the ideology of the BGF), as well as, Soledad Brothers and Blood In My Eye (both books were written by George Jackson and are required reading materials for the BGF).

Based on my training and experience as a gang investigator I believe this document is written training material which could be used by the BGF to train individuals as part of the Orientation and indoctrination process of new members. It is common practice for the BGF to place smaller pieces of BGF information and training material within documents in an attempt to disguise them from staff and other gang members. In doing this they know if the document is discovered they have only lost small portions of their training materials which could easily be replaced.

It is not reasonable to believe that DEWBERRY was not aware of the contents of the book which was discovered amid his personal property. By possessing this gang-related material would clearly allow DEWBERRY to continue to further and promote the ideologies and historical legacy of the BGF prison gang.

This document should also be utilized as one source point of validation for DEWBERRY, per California Code of Regulations, Title 15, Section 3378 (c), (8), (C), Written Material. A copy of these pages will accompany this report as evidence for the Senior Hearing Officer.

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| CORRECTIONAL OFFICER S. BURRIS | | 9-26-2011 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | 10.01.11 | 1145 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

STATE OF CALIFORNIA                                         DEPARTMENT OF CORRECTIONS
CDC 1030 (6/2009)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER     C-35671            INMATE NAME:   DEWBERRY

1)  Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   ☒ a)   Active/Inactive Review

   ☐ b)   Prison Gang Validation                Submitted by, Correctional Officer S. Burris

   ☐ c)   CDC-114-D, Order and Hearing for Placement in Segregated Housing dated      **N/A**

2)  Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐   The confidential source has previously provided information which has proven to be true.

   b) ☐   Other confidential sources have independently provided the same information.

   c) ☐   This information provided by the confidential source is self-incriminating.

   d) ☐    Part of the information provided is corroborated by through investigation or by information provided by non-confidential sources.

   e) ☐   The confidential source is the victim.

   f) ☒   Staff report, the information was confiscated and not solicited by or intended for staff.

   g) ☐   Other (Explain)

3)  Disclosure of information received.

Confidential Memorandum dated September 23, 2011, authored by Correctional Officer S. Burris. On September 13, 2011, at Pelican Bay State Prison, your personal property was search to ascertain any Black Guerrilla Family (BGF) gang-related indicia. Discovered amid your property was a scrapbook titled, "A Proud Heritage." Discovered amid the writings of the book was a detailed history/timeline of the BGF from its formation through the leadership from its conception. This document meets criteria set forth in CCR, Title 15, 3378 (c) (8) (C) (G) Written Material/Association. This document is supporting information for the CDCR 115 Rules Violation Report dated September 23, 2011, where you were found guilty of "Promotion of Gang Activity."

The information is considered reliable Per California Code of Regulations (CCR), Title 15, Section 3321 as indicated above in part 2.

(If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (ie: CDC-128-B of 5-15-86 in the confidential material folder)

   Confidential Memorandum dated September 23, 2011, authored by Correctional Officer S. Burris, in the confidential section of the Central File.

S. Burris                                                    10/31/2011
            STAFF SIGNATURE, TITLE                         DATE DISCLOSED

DISTRIBUTION: WHITE ---Central File; GREEN --- Inmate; YELLOW --- Institution Use

#3

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (6/2009)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER     C-35671                    INMATE NAME:     DEWBERRY

1)  Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   ☒ a)    Active/Inactive Review

   ☐ b)    Prison Gang Validation                    Submitted by, Correctional Officer S. Burris

   ☐ c)    CDC-114-D, Order and Hearing for Placement in Segregated Housing dated      N/A

2)  Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐   The confidential source has previously provided information which has proven to be true.

   b) ☒   Other confidential sources have independently provided the same information.

   c) ☒   This information provided by the confidential source is self-incriminating.

   d) ☒   Part of the information provided is corroborated by through investigation or by information provided by non-
   confidential sources.

   e) ☐   The confidential source is the victim.

   f) ☐   Staff report, the information was confiscated and not solicited by or intended for staff.

   g) ☐   Other (Explain)

3)  Disclosure of information received.

Confidential Memorandum dated July 16, 2009, authored by Correctional Sergeants R. Bishop and A. Murphy. On May 14,
2009, at Pelican Bay State Prison a validated Black Guerrilla Family (BGF) member identified you as holding the rank of BGF
Enforcer, and is the next to be promoted to the position of BGF General.  This document meets criteria set forth in CCR, Title 15,
3378 (c) (8) (M) Debriefing Report

The information is considered reliable Per California Code of Regulations (CCR), Title 15, Section 3321 as indicated above in part 2.

(If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (ie: CDC-128-B of 5-15-86 in the confidential material folder)

   Confidential Memorandum dated July 16, 2009, authored by Correctional Sergeants R. Bishop and A. Murphy, in the
   confidential section of the Central File.

S. Burris                                                                           10/31/2011
              STAFF SIGNATURE, TITLE                                           DATE DISCLOSED
              DISTRIBUTION:  WHITE ---Central File;  GREEN --- Inmate;  YELLOW --- Institution Use

#4

STATE OF CALIFORNIA                                      DEPARTMENT OF CORRECTIONS
CDC 1030 (6/2009)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C-35671                    INMATE NAME:    DEWBERRY

1)  Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   ☒ a)   Active/Inactive Review

   ☐ b)   Prison Gang Validation            Submitted by, Correctional Officer S. Burris

   ☐ c)   CDC-114-D, Order and Hearing for Placement in Segregated Housing dated    N/A

2)  Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  The confidential source has previously provided information which has proven to be true.

   b) ☒  Other confidential sources have independently provided the same information.

   c) ☒  This information provided by the confidential source is self-incriminating.

   d) ☒  Part of the information provided is corroborated by through investigation or by information provided by non-confidential sources.

   e) ☐  The confidential source is the victim.

   f) ☐  Staff report, the information was confiscated and not solicited by or intended for staff.

   g) ☐  Other (Explain)

3)  Disclosure of information received.

Confidential Memorandum dated February 10, 2009, authored by Correctional Sergeant R. Bishop. On July 25, and 26, 2008, at Pelican Bay State Prison, a validated Black Guerrilla Family (BGF) member identified you as holding the position of Enforcer for the BGF hierarchy. This information is supporting information for the Confidential Memorandum dated July 16, 2009, authored by Correctional Sergeants R. Bishop and A. Murphy. This document meets criteria set forth in CCR, Title 15, 3378 (c) (8) (M) Debriefing Report

The information is considered reliable Per California Code of Regulations (CCR), Title 15, Section 3321 as indicated above in part 2.

(If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (ie: CDC-128-B of 5-15-86 in the confidential material folder)

   Confidential Memorandum dated February 10, 2009, authored by Correctional Sergeant R. Bishop, in the confidential section of the Central File.

S. Burris        _S. Burris_                              10/31/2011
                 STAFF SIGNATURE, TITLE                   DATE DISCLOSED

DISTRIBUTION:  WHITE ---Central File; GREEN --- Inmate; YELLOW --- Institution Use

#5

STATE OF CALIFORNIA
CDC 1030 (6/2009)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER     C-35671                    INMATE NAME:     DEWBERRY

1)   Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

☒ a)     Active/Inactive Review

☐ b)     Prison Gang Validation                    Submitted by, Correctional Officer S. Burris

☐ c)     CDC-114-D, Order and Hearing for Placement in Segregated Housing dated     __N/A__

2)   Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☐   The confidential source has previously provided information which has proven to be true.

b) ☐   Other confidential sources have independently provided the same information.

c) ☐   This information provided by the confidential source is self-incriminating.

d) ☐   Part of the information provided is corroborated by through investigation or by information provided by non-confidential sources.

e) ☐   The confidential source is the victim.

f) ☒   Staff report, the information was confiscated and not solicited by or intended for staff.

g) ☐   Other (Explain)

3)   Disclosure of information received.

Confidential Memorandum dated January 15, 2008, authored by Correctional Officer B. Thornton. On January 7, 2008, at Pelican Bay State Prison, a coded roster of Black Guerrilla Family (BGF) affiliates was discovered amid the property of a validated BGF member. The coded roster is titled "Path Finder Index." Within this roster, under the subtitle "Trade," is your name (Dewberry, R.) and code number assigned to you (8). This document meets criteria set forth in CCR, Title 15, 3378 (c) (8) (C) Written Material. By your personal information being discovered amid a coded roster in a validated BGF members possession, potentially allows for illicit BGF gang-related information to be distributed amongst the membership without being detected by custody staff.

The information is considered reliable Per California Code of Regulations (CCR), Title 15, Section 3321 as indicated above in part 2.

(If additional space needed, attach another sheet.)

4)   Type and current location of documentation, (ie: CDC-128-B of 5-15-86 in the confidential material folder)

Confidential Memorandum dated January 15, 2008, authored by Correctional Officer B. Thornton, in the confidential section of the Central File.

S. Burris     _____     . 10/31/2011
                    STAFF SIGNATURE, TITLE                              DATE DISCLOSED

DISTRIBUTION:   WHITE ---Central File:  GREEN --- Inmate:  YELLOW --- Institution Use

#6

EXHIBIT E

JULES LOBEL (*pro hac vice*)
Email:  jll3@pitt.edu
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email:  aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email:  rachelm@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY  10012
Tel:  (212) 614-6478
Fax:  (212) 614-6499

GREGORY D. HULL (Bar No. 57367)
Email:  greg.hull@weil.com
BAMBO OBARO (Bar No. 267683)
Email:  bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1134
Tel:  (650) 802-3000
Fax:  (650) 802-3100

Attorneys for Plaintiffs
(Additional counsel listed on attached page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TODD ASHKER, DANNY TROXELL, GEORGE RUIZ, JEFFREY FRANKLIN, GEORGE FRANCO, GABRIEL REYES, RICHARD JOHNSON, PAUL REDD, LUIS ESQUIVEL, and RONNIE DEWBERRY, on their own behalf, and on behalf of a class of similarly situated prisoners, <br><br> Plaintiffs, <br><br> v. <br><br> EDMUND G. BROWN, JR., Governor of the State of California, MATTHEW CATE, Secretary, California Department of Corrections and Rehabilitation (CDCR); ANTHONY CHAUS, Chief, Office of Correctional Safety, CDCR; and G.D. LEWIS, Warden, Pelican Bay State Prison, <br><br> Defendants. | Case No. 4:09 CV 05796 CW <br><br> **DECLARATION OF LUIS ESQUIVEL IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Honorable Claudia Wilken |

I, Luis Esquivel, declare under penalty of perjury that:

1. I am a 44-year-old prisoner who has spent the last 14 years in solitary confinement in the Pelican Bay SHU.

2. I have never incurred a serious disciplinary violation while at Pelican Bay.  My only violations involve very minor administrative infractions such as saying hello to another prisoner.

3. In 2007, after more than six years in the SHU, I was determined to be an inactive gang associate.  Even so, CDCR kept me in the SHU for a twelve-month "observation period."

4. A year later, in 2008, I was revalidated as an active EME associate because I possessed allegedly gang-related Aztec and Mayan artwork in my cell.  CDCR did not prove or allege that I had engaged in any gang activity.  True and correct copies of my 2008 revalidation documents can be found at Exhibit F.

5. In 2005, I asked for a hardship transfer from Pelican Bay, due to my mother's difficulty in visiting me from San Diego.  My father also has difficulty traveling.  The counselor said he wasn't going to file the papers for me, but that if I debriefed, I would be transferred to a prison closer to my parents.

6. I did not see or speak to my parents between 2000 and 2009, when my mother died.  After her death, I was allowed one phone call with my father and sister—my only social call in nine years.  As soon as I hung up the phone, a Pelican Bay counselor told me to think about taking advantage of the debriefing program, because my father was going to need me.  Two IGI investigators were standing with the counselor during this conversation.

7.   In 2012, my niece was forbidden from visiting me because the address on her driver's license did not match her current address. She had moved but had not yet changed her address with the DMV.

8.   I have not shaken another person's hand or hugged anyone in over a decade.

9.   My prolonged solitary confinement in Pelican Bay has caused me serious harm. I have described and discussed this harm with the experts who have been retained by my lawyers in this case.

10.   I joined this lawsuit and participated in the hunger strike in 2011 because I am interested in the welfare and human dignity of all of the people in the SHU, and not simply my own situation.

11.   I am interested in being a class representative in this case because I would like to represent other prisoners who have experienced the same constitutional violations as I, and I want to help change and improve CDCR's policies. I share this common interest with all the other prisoners held in the Pelican Bay SHU, so I don't know of any reason why I would be unable to adequately represent them in our claims for injunctive and declaratory relief.

12.   I have been cooperating fully with my lawyers and am responding to their requests to the best of my ability and recollection, and will continue to do that. My lawyers keep me updated as to the progress of the case. I am happy with their performance, and am confident that they will adequately represent me and the class.

I declare under penalty of perjury that the foregoing is true and correct based on my knowledge and belief and that this declaration was executed on April 20, 2013, in Crescent City, California.

_Esquivel Luis· E·35207_
LUIS ESQUIVEL

**ADDITIONAL PLAINTIFFS' COUNSEL**

CHARLES F.A. CARBONE (SBN 206536)
Email:  charles@charlescarbone.com
EVAN CHARLES GREENBERG (SBN 271356)
Email:  evan@charlescarbone.com
LAW OFFICES OF CHARLES CARBONE
P.O. Box 2809
San Francisco, CA  94126
Tel:  (415) 981-9773
Fax:  (415) 981-9774

MARILYN S. MCMAHON (SBN 270059)
Email:  marilyn@prisons.org
CALIFORNIA PRISON FOCUS
1904 Franklin Street, Suite 507
Oakland, CA  94612
Tel:  (510) 734-3600
Fax:  (510) 836-7222

ANNE BUTTERFIELD WEILLS (SBN 139845)
Email:  aweills@aol.com
SIEGEL & YEE
499 14TH STREET, SUITE 300
Oakland, CA  94612
Tel:  (510) 839-1200
Fax:  (510) 444-6698

CAROL STRICKMAN (SBN 78341)
Email:  carol@prisonerswithchildren.org
LEGAL SERVICES FOR PRISONERS WITH CHILDREN
1540 Market Street, Suite 490
San Francisco, CA  94102
Tel:  (415) 255-7036
Fax:  (415) 552-3150

# EXHIBIT F

Case 4:09-cv-05796-CW   Document 195-1   Filed 05/02/13   Page 41 of 42

---

| INMATE'S NAME: ESQUIVEL, LUIS | CDCR NUMBER: E35207 |
|---|---|

On October 14, 2008, a gang validation package regarding subject was received from Institution Gang Investigator R. Rice at PBSP.

On June 10, 1999, a validation package was received from Institution Gang Investigator Angeles at LAC. A CDCR 128B2 regarding Subject was issued identifying Subject as an active Mexican Mafia associate. On February 9, 2006 a CDCR 128B2 was issued updating Esquivel's status as an inactive associate of the gang.

This CDC-128B2 reflects additional information which updates Subject's status.

**TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW: (1)**

The following items **meet** the validation requirements:

1. CDCR 128B dated October 1, 2008 (Symbols)

**TOTAL NUMBER ITEMS WHICH MEET VALIDATION REQUIREMENTS: (1)**

The following items do not meet the validation requirements and were/shall not be used as a basis for validation:

NONE

**TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS: (0)**

**ACTION OF REVIEWER**

Pursuant to the validation requirements established in 15 CCR Section 3378, ESQUIVEL, LUIS is:

☒ **VALIDATED**       ☐ **REJECTED**

as **an associate** of the MEXICAN MAFIA **prison gang.**

*T.L. Rosenkrans*
**T. L. Rosenkrans, Special Agent**
**SPECIAL SERVICE UNIT**

---

| DISTRIBUTION:<br>Original – Central File<br>Copy – Classification & Parole Representative/Parole Administrator I<br>Copy – Institutional Gang Investigator/Regional Gang Coordinator<br>Copy – Office of Correctional Safety – Special Service Unit<br>Copy – Inmate/Parolee  12-5-08  by  K Sitz CCI | **ACTIVE/INACTIVE REVIEW**<br><br>**SEPTEMBER 30, 2014**<br><br>**ELIGIBILITY DATE** |
|---|---|

DATE: 10/24/08      SSU GANG VALIDATION/REJECTION REVIEW      GENERAL CHRONO

12882

| NAME and NUMBER | ESQUIVEL | E-35207 | CELL: | C7-213L |
|---|---|---|---|---|

On September 30, 2008 while assigned to the Institutional Gang Investigations Unit, I searched the property of inmate **Luis ESQUIVEL, E-35207,** a.k.a. **"Big Happs from Trece Locos,"** a validated inactive Mexican Mafia (EME) associate, currently housed in Security Housing Unit, Facility C, Unit 7, Cell 213L.  Found amid the property of ESQUIVEL was:

Two original, hand drawn inmate-manufactured drawings. The first drawing was a bust of a man, wearing a bandana and a ball cap. At the bottom of the drawing is the phrase, "All In My Mind." Drawn on the man's neck is the symbol ⠿ (3 dots over 2 lines.) The ⠿ is the Mayan symbol for the number 13. This symbol and number corresponds to the thirteenth letter of the alphabet, which is the letter "M." "M" in the Spanish language is pronounced "EME." Southern Mexican or "Sureño" gang members who associate themselves with the EME prison gang utilize this symbol to show their allegiance and loyalty to the EME. The second drawing contains two Aztec/Eternal/G War Shields on a piece of scratch paper. The Aztec/Eternal/G War Shield has been identified by gang investigators as a symbol utilized by those associated with the EME to show allegiance to the gang as well as identifying with the ideology of being warriors against all who oppose the EME.

Also found during the search was a photocopy of an inmate-manufactured drawing. The drawing is a collage of Aztec pyramids, symbols, and people. Concealed on one of the pyramids is the ⠿. Also on an Aztec warriors' shield is the Aztec/Eternal/G War Shields.

The Office of Correctional Safety has established the credibility regarding the meaning of these symbol's, therefore, these drawings meet criteria set forth in California Code of Regulations, Title 15, Section 3378 (c)(8)(B), Symbols.

It is not reasonable to believe that inmate ESQUIVEL would keep these specific pieces of artwork without having knowledge of these symbol's meaning.  Distinctive symbols, body markings, hand signs, and gang graffiti have been identified as having a direct correlation with specific prison gangs. Gang coordinators and investigators receive training and frequently updated information to identify specific tattoos and symbols. ESQUIVEL's possession of these items proves that he is still associated with prison gang activities. This documented activity should be considered as one source point of validation.

ORIG    :    C-File
cc      :    GANGS

*S. Burris*

S. BURRIS
Correctional Officer
Institutional Gang Investigations

| DATE | 10-1-08 | **GANG CHRONO** | **PBSP** |
|---|---|---|---|

DO NOT ISSUE COPIES OF ART WORK TO INMATE