UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

*ORIGINAL*

| | | |
|---|---|---|
| GEORGE RUIZ, ET AL. | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | NO. C 09-05796 CW |
| | ) | |
| EDMUND G. BROWN, JR., | ) | |
| ET AL., | ) | PAGES 1 - 48 |
| | ) | |
| DEFENDANTS. | ) | OAKLAND, CALIFORNIA |
| _____ | ) | THURSDAY, MARCH 14, 2013 |

**TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

FOR PLAINTIFFS:         CENTER FOR CONSTITUTIONAL RIGHTS
                        666 BROADWAY, SEVENTH FLOOR
                        NEW YORK, NEW YORK  10012
                   BY:  JULES LOBEL, ATTORNEY AT LAW


FOR DEFENDANTS:         STATE OF CALIFORNIA
                        OFFICE OF THE ATTORNEY GENERAL
                        455 GOLDEN GATE AVENUE, SUITE 11000
                        SAN FRANCISCO, CALIFORNIA  94102-7004
                   BY:  ANDRIANO HRVATIN,
                          DEPUTY ATTORNEY GENERAL


REPORTED BY:       RAYNEE H. MERCADO, CSR NO. 8258

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

```
 1    THURSDAY, MARCH 14, 2013                          2:15 P.M.

 2                      P R O C E E D I N G S

 3         THE CLERK:  WE'RE CALLING C09-5796, ASHKER, ET AL.

 4    VERSUS BROWN, ET AL.

 5       PLEASE STEP FORWARD AND STATE YOUR APPEARANCES FOR THE

 6    RECORD, PLEASE.

 7                   (OFF-THE-RECORD DISCUSSION.)

 8         MR. LOBEL:  YOUR HONOR, I THINK THERE ARE A LOT OF

 9    PEOPLE WAITING TO GET IN DOWNSTAIRS AND WE'D BE WILLING TO PUT

10    OUR CASE OFF FOR ONE --

11         THE COURT:  NO, 'CAUSE THE OTHER ONE HAS SO MANY

12    ATTORNEYS WE CAN'T FIT ALL THE ATTORNEYS IN THE COURTROOM,

13    SO --

14         MR. LOBEL:  I'M JULES LOBEL.  I REPRESENT THE

15    PLAINTIFFS IN THIS MATTER.

16         THE COURT:  ALL RIGHT.  DID WE CALL THE CASE?

17         THE CLERK:  YES, I DID.

18         THE COURT:  AND THE NUMBER?

19         THE CLERK:  YES.

20         THE COURT:  AND YOU ARE JULES LOBEL FOR PLAINTIFF,

21    AND --

22         MR. HRVATIN:  ADRIANO HRVATIN FOR THE DEFENDANTS,

23    YOUR HONOR.  GOOD AFTERNOON.

24                   (SIMULTANEOUS COLLOQUY.)

25         THE COURT:  SO THIS IS ON FOR PLAINTIFFS' --
```

1    DEFENDANTS' MOTION TO DISMISS.  SO I PROPOSED -- I DON'T KNOW.

2    THE NAME OF THE CASE KEEPS ON CHANGING.  HOW DID IT GET TO BE

3    RUIZ INSTEAD OF ARMSTRONG?  USUALLY WE START WITH THE NAME

4    THAT WE START WITH AND WE STICK TO IT, EXCEPT IF PEOPLE -- IF

5    GOVERNORS AND THINGS CHANGE, WE TEND TO GO THROUGH A LOT OF

6    GOVERNORS.  SO MY PROPOSAL FOR THE DEFENDANTS WOULD BE WE JUST

7    CALL THEM THE GOVERNOR, THE WARDEN, THE SECRETARY AND WHATEVER

8    AND NOT KEEP TRYING TO KEEP UP WITH WHAT THEY ALL ARE OVER THE

9    YEARS.

10       IS THAT ALL RIGHT WITH YOU ALL?

11          **MR. HRVATIN:**  THAT'S FINE FROM --

12          **MR. LOBEL:**  THAT'S FINE.

13          **MR. HRVATIN:**  -- FROM DEFENDANT'S --

14          **THE COURT:**  AND AS FAR AS THE PLAINTIFFS GOES, WHY

15    ARE YOU CALLING IT RUIZ?

16          **MR. LOBEL:**  WELL, WE FILED IT AS A CLASS ACTION, AND

17    WE JUST PUT RUIZ AS THE FIRST NAMED PLAINTIFF.

18          **THE COURT:**  ALL RIGHT.  WELL, I THINK YOU'D HAVE TO

19    MOVE TO CORRECT THE TITLE, BECAUSE THE TITLE IS WHATEVER IT IS

20    WHEN IT WAS FILED.  SO IF YOU WANT IT TO BE RUIZ, YOU NEED TO

21    FILE A MOTION, AND WE'D HAVE TO CHANGE THE DOCKET.  BUT THE

22    WAY THE COMPUTER DOES IT IS IT REMEMBERS WHO IT WAS IN THE

23    FIRST PLACE AND STICKS WITH THAT.

24          **MR. LOBEL:**  I CAN CALL IT EITHER ASHKER OR RUIZ,

25    WHATEVER YOU PREFER.

```
1        THE COURT:  OKAY.  SO IT'S ASHKER UNLESS YOU WANT TO

2   MOVE.  I DON'T CARE.

3        SO -- WELL, YOU CAN ARGUE THE MOTION TO DISMISS BRIEFLY.

4        MR. HRVATIN:  THANK YOU.

5        THE COURT:  -- TELL YOU, I'M NOT INCLINED TO GRANT

6   IT.  AT MOST, IF THERE WERE -- AND I DIDN'T REALLY LOOK AT

7   THIS CAREFULLY, THERE DOESN'T APPEAR TO BE ACTUAL CLAIMS FOR

8   "I SHOULD BE PAROLED" OR "I SHOULD GET CERTAIN MEDICAL CARE."

9   THEY SEEM TO BE MORE ALLEGED AS -- OR AT LEAST THEY SAY

10  THEY'RE ALLEGED MORE AS SORT OF EFFECTS OF BEING IN THE SHU

11  AND NOT AS A INDEPENDENT CAUSE OF ACTION.

12       IF THERE WERE SOMETHING THAT MADE IT SOUND LIKE IT WAS

13  TRYING TO BE AN INDEPENDENT CAUSE OF ACTION, I MIGHT STRIKE IT

14  PERHAPS OR MAKE IT CLEAR THAT IT ISN'T AN INDEPENDENT CAUSE OF

15  ACTION; IT'S JUST A SIDE EFFECT OF BEING IN THE SHU.  BUT

16  OTHER THAN THAT, I'M -- I'M NOT INCLINED TO GRANT IT, BUT YOU

17  CAN ARGUE IT BRIEFLY.

18       MR. HRVATIN:  YOUR HONOR, I THINK -- THANK YOU VERY

19  MUCH, AND I THINK I'LL START WITH ADDRESSING THAT -- THAT --

20  THAT PRIMARY POINT BECAUSE WITH RESPECT TO THE CONDITIONS OF

21  CONFINEMENT CLAIM --

22       THE COURT:  OH, I'M SORRY.  CAN I INTERRUPT YOU FOR

23  ONE OTHER THING.  THERE SEEMED TO BE SOME PROBLEM THAT

24  SOMEBODY HAD FILED A MOTION TO SUBSTITUTE COUNSEL LAST OCTOBER

25  AND IT WASN'T RULED ON?
```

1      **MR. HRVATIN:**  A VERY MINOR, YOUR HONOR,

2    ADMINISTRATIVE MATTER.  OUR OFFICE CAME INTO THE CASE --

3      **THE COURT:**  AND YOU FILED IT AS A MOTION?

4      **MR. HRVATIN:**  NO, WE FILED THEM -- PURSUANT TO THE

5    STANDARD FORMS, YOUR HONOR, THERE ARE SUBSTITUTIONS OF

6    ATTORNEY AND ORDER, AND IT'S JUST BY WAY OF

7    ADMINISTRATIVELY -- IT'S A VERY SIMPLE FORM TO THE COURT TO

8    SIGN OFF ON JUST TO OFFICIALLY TRANSFER THE REPRESENTATION

9    FROM THE PRIOR PRIVATE --

10     **THE COURT:**  YES, JUST IF YOU FILED IT AS A MOTION

11   WITH A PROPOSED ORDER, I USUALLY JUST DO THOSE, SO SOMETHING'S

12   WRONG.  I'M TRYING TO FIGURE OUT WHY THAT IS.  I GUESS THE

13   CLERK WILL FIND IT WHILE YOU'RE TALKING.

14     **MR. HRVATIN:**  AND -- YEAH, AND I'M HAPPY TO WORK WITH

15   THE CLERK, YOUR HONOR, TO SORT OUT --

16     **THE COURT:**  WELL, IF YOU DIDN'T FILE A PROPOSED

17   ORDER, THAT WOULD HELP.

18     **MR. HRVATIN:**  OKAY.

19     **THE COURT:**  IF YOU DID, I GUESS WE'LL FIND IT

20   SOMEWHERE.

21     **MR. HRVATIN:**  OKAY.  THANK YOU, YOUR HONOR.

22    I THINK THAT THE -- THE APPROPRIATE PLACE TO START, YOUR

23   HONOR, IS WITH THE ISSUE THAT YOU IDENTIFIED AS TO THE CRUEL

24   AND UNUSUAL PUNISHMENT CLAIM UNDER THE EIGHTH AMENDMENT.

25    FROM OUR POINT OF VIEW, YOUR HONOR, THAT -- THAT CLAIM

1    CANNOT BE TAKEN OUT OF THE CONTEXT OF THE VARIETY OF CLASS

2    ACTION MATTERS THAT HAVE HAD A SUBSTANTIAL IMPACT ON THE

3    MANNER IN WHICH THE MEDICAL/MENTAL-HEALTH-TYPE ISSUES ARE

4    ADDRESSED WITHIN THE CALIFORNIA DEPARTMENT OF -- OF

5    CORRECTIONS AND INCLUDING THE SHU UNIT UP AT PELICAN --

6    PELICAN BAY.

7        THE REMEDIAL WORK THAT WAS INITIATED FOLLOWING MADRID WAS

8    EVENTUALLY ROLLED INTO COLEMAN AND PLATA.  TO THE EXTENT THAT

9    THE -- THAT THESE INMATES ARE ALLEGING SOME FORM OF

10   PSYCHOLOGICAL HARM BECAUSE OF THE CONDITIONS OF CONFINEMENT,

11   THERE ARE REMEDIES IN PLACE TO ADDRESS THOSE -- THOSE

12   ISSUES -- THOSE -- THOSE ALLEGED HARMS.

13       THEY WOULD BE TAKEN UP AS PART OF COLEMAN AND/OR PLATA.

14   BUT IF THEY'RE NOT ALLEGING THAT LEVEL OF MENTAL ILLNESS OR

15   TYPE OF PHYSICAL HARM, THEY'RE NOT THERE YET, SO WE'RE IN A

16   LEVEL OF SPECULATION WITH RESPECT TO THE ALLEGED HARM FROM

17   THESE CONDITIONS.

18       NOW, YOUR HONOR, I THINK THAT ALSO TO THE -- ON THE

19   DELIBERATE INDIFFERENCE CLAIM THAT -- THAT THAT CONTEXT PLAYS

20   INTO BOTH COMPONENTS FROM OUR POINT OF VIEW OF THE DELIBERATE

21   INDIFFERENCE THAT'S REQUIRED FROM A STATE-OF-MIND POINT OF

22   VIEW TO ESTABLISH THAT THESE DEFENDANTS ACTED WITH A WANTON

23   STATE OF MIND TO CAUSE THESE INDIVIDUALS HARM; THAT -- THAT

24   THE DEPARTMENT HAS IN PLACE THE TYPE OF REMEDIES FOR PURPOSES

25   OF PROVIDING MENTAL HEALTH CARE, MEDICAL CARE, IT -- IT, FROM

```
1    OUR POINT OF VIEW, CANNOT RISE TO THAT LEVEL OF STATE OF MIND
2    REQUIRED TO STATE A DELIBERATE INDIFFERENCE CLAIM -- EXCUSE
3    ME -- A CRUEL AND UNUSUAL PUNISHMENT CLAIM UNDER THE EIGHTH
4    AMENDMENT, AND THAT'S WHY WE MOVED TO DISMISS IT, BECAUSE THE
5    CLAIM DOESN'T CAPTURE THE -- THE CONTEXT THAT'S IN PLACE
6    WITHIN THE DEPARTMENT OF CORRECTIONS TO ADDRESS SOME OF THE
7    HARMS.
8           THE COURT:  THE CLAIM IS FOR THE CONDITIONS AT THE
9    SHU.  THE ISOLATION, THE LACK OF HUMAN CONTACT, ALL THOSE
10   THINGS.  ONE OF THE EFFECTS OF THAT MIGHT BE SOMEONE HAVING
11   HEALTH PROBLEMS OR MENTAL HEALTH PROBLEMS.  THAT'S NOT WHAT'S
12   BEING -- IT'S -- THE PROBLEMS THEMSELVES AREN'T WHAT'S BEING
13   SUED FOR.  IT'S THE CONDITIONS OF CONFINEMENT, AND THOSE
14   THINGS WEREN'T ADDRESSED IN COLEMAN OR PLATA.  THEY WERE
15   ADDRESSED TO SOME DEGREE IN MADRID BUT NOT CONFINEMENT OF THIS
16   LENGTH.
17          MR. HRVATIN:  WELL, I -- WE'D -- AS WE ARGUED IN OUR
18   PAPERS, YOUR HONOR, WE TAKE THE POSITION THAT MADRID DID
19   CONTEMPLATE THAT THERE WOULD BE INMATES SUBJECT TO THE
20   CONDITIONS OF CONFINEMENT UP AT THE SHU FOR LONGER, EXTENDED
21   PROLONGED PERIODS OF TIME.
22      THE EXPERT TESTIMONY IN -- IN THAT -- IN THAT CASE, YOUR
23   HONOR, DID -- WASN'T LIMITED IN TIME.  IT CONTEMPLATED THAT
24   INMATES -- THE INMATES THERE WERE VALIDATED GANG MEMBERS AND
25   ASSOCIATES WHO WERE IN THE SHU FOR -- ON INDETERMINATE TERMS.
```

```
1    THERE WAS A CONTEMPLATION THAT -- THAT SHU INMATES WOULD BE
2    SERVING TERMS -- PROLONGED TERMS, LONGER THAN THE THREE, TWO-
3    TO THREE-YEAR PERIOD THAT THE JUDGE INDICATED IN -- AS TO THE
4    PARTICULAR INMATES THAT WERE EVALUATED IN -- IN THAT CONTEXT.
5         SO WE DO THINK THAT MADRID FORESAW THAT THERE WOULD BE
6    INMATES SUBJECT TO THESE CONDITIONS FOR LONGER PERIODS OF TIME
7    AND THAT THE REMEDIAL WORK THAT WAS DONE IN CONNECTION WITH
8    MADRID DIDN'T IGNORE THOSE INMATES' NEEDS, THAT THERE WERE
9    REMEDIES PUT INTO PLACE, YOUR HONOR -- THERE WERE REMEDIES PUT
10   INTO PLACE ESTABLISHED BY THE MADRID REMEDIAL TEAM THROUGH A
11   SPECIAL MASTER, ET CETERA.
12        THOSE ALLEGED HARMS AND ISSUES THAT MAY BE CAUSED BY SHU
13   CONFINEMENT FROM OUR POINT OF VIEW, YOUR HONOR, IS ADDRESSED
14   BY THE REMEDIAL WORK THAT HAD -- THAT BEGAN IN MADRID AND THEN
15   ROLLED INTO THE COLEMAN AND PLATA-TYPE CIRCUMSTANCES THAT
16   ADDRESS THE VERY ISSUES THAT ARE ALLEGED TO BE HARMS HERE.
17             THE COURT:  OKAY.  IS THAT IT?
18             MR. HRVATIN:  AS TO THE EIGHTH AMENDMENT ISSUE, IF
19   YOU'D LIKE TO HEAR FROM MR. --
20             THE COURT:  NO.
21             MR. HRVATIN:  -- LOBEL ON THAT.
22             THE COURT:  NO, YOU CAN SAY WHATEVER YOU HAVE TO SAY.
23             MR. HRVATIN:  OKAY.  THANK YOU, YOUR HONOR.
24        THEN WITH RESPECT TO SOME OF THE ISSUES THAT WE TRIED TO
25   RAISE, YOUR HONOR, IN THE PLEADINGS, I'D LIKE TO HAVE AN
```

```
1    OPPORTUNITY TO TALK ABOUT THE -- THE DUE PROCESS CLAIM,

2    PARTICULARLY IN THE CONTEXT THAT WE MOVED TO EITHER DISMISS

3    THAT -- THAT CLAIM AS MOOT OR OTHERWISE TO STAY THE CLAIM.

4        IN -- FROM OUR POINT OF VIEW, YOUR HONOR, THE LANDSCAPE

5    WITH RESPECT TO THE DUE PROCESS ISSUES THERE CONTINUES TO

6    CHANGE.  WE --

7            THE COURT:  WELL, BUT YOU -- YOU CAN'T HAVE A

8    TWO-YEAR PILOT PROGRAM AND DISMISS A CASE BASED ON THAT.  NOR

9    WILL I STAY IT FOR TWO YEARS.  I JUST DON'T WANT TO HAVE A

10   CASE DRAGGING AROUND THAT LONG.  IF YOU MAKE IT PERMANENT AND

11   IT WORKS AND IT SOLVES ALL THE PROBLEMS, THEN GREAT.  THERE

12   WON'T BE A TRIAL.

13           MR. HRVATIN:  YOUR HONOR --

14           THE COURT:  WHICH REMINDS ME, IS THIS -- YOU'RE

15   SEEKING ONLY INJUNCTIVE RELIEF.

16           MR. LOBEL:  SOLELY INJUNCTIVE RELIEF.

17           THE COURT:  IS THERE ANY JURY TRIAL RIGHT?

18           MR. LOBEL:  NO.  WELL, WE DON'T ASK.

19           THE COURT:  I KNOW, BUT CAN THE DEFENDANTS ASK FOR --

20                   (SIMULTANEOUS COLLOQUY.)

21           THE COURT:  -- IF IT'S ONLY INJUNCTIVE RELIEF?

22           MR. LOBEL:  I DON'T THINK SO.

23           MR. HRVATIN:  YOUR HONOR, WE ASKED FOR A JURY TRIAL.

24           THE COURT:  I KNOW.

25           MR. HRVATIN:  AND I'D LIKE TO TAKE A FURTHER LOOK AS
```

1    TO WHETHER THAT'S APPROPRIATE IN THIS CIRCUMSTANCE 'CAUSE I DO

2    APPRECIATE THAT THERE'S NO DAMAGES ISSUE.

3         **THE COURT:**  YEAH, I THINK THERE IS NOT, SO IF YOU

4    THINK THERE IS, WOULD YOU FILE A MOTION SOON SO -- 'CAUSE IT

5    KIND OF DEPENDS ON HOW THE CASE IS HANDLED AND GOES, WHETHER

6    IT'S GOING TO END UP IN FRONT OF A JURY OR AS A BENCH TRIAL

7    SO, I'M -- I'M THINKING IT'S A BENCH TRIAL, AND IF YOU THINK

8    OTHERWISE, FILE A BRIEF MOTION ON THAT SO I CAN RULE ON IT.

9         **MR. HRVATIN:**  WE WILL, YOUR HONOR.  THANK YOU.

10        TO ADDRESS THE COURT'S CONCERN, THE CHANGING LANDSCAPE

11   HERE, THOUGH, YOUR HONOR, WITH RESPECT TO THE DUE PROCESS

12   CLAIM HAS SOME VERY PRACTICAL IMPACTS.  THE POTENTIAL CLASS

13   HERE IS CHANGING ON A DAY-TO-DAY BASIS.

14        WE IDENTIFIED TO THE COURT THAT THE STG PILOT PROGRAM

15   WHICH HAS BEEN RUNNING NOW FOR ABOUT SIX MONTHS, DAY-TO-DAY

16   CASE-BY-CASE REVIEWS ARE BEING PERFORMED WHERE INMATES ARE

17   BEING EVALUATED THROUGH HEARINGS AND DETERMINED EITHER TO BE

18   APPROPRIATELY PUT UP FOR RELEASE TO THE GENERAL POPULATION,

19   PUT INTO A STEP OF THE STEP-DOWN PROGRAM THAT HAS BEEN

20   INCORPORATED INTO THE NEW GUIDELINES.

21        THOSE INMATES, FROM OUR POINT OF VIEW, YOUR HONOR, NO

22   LONGER HAVE THE -- THE DUE PROCESS CLAIMS THAT ARE -- THAT

23   HAVE BEEN PLED IN THE COMPLAINT.

24        SO THE CLASS -- THE REASON THAT WE ASKED TO -- YOUR HONOR

25   TO -- TO CONSIDER THE -- THE CLAIM AS MOOT OR OTHERWISE TO

1    STAY THE -- TO STAY THE CLAIM IS BECAUSE THIS IS -- THIS IS --

2    THE CHANGES HERE ARE HAPPENING ON A DAILY BASIS AND CHANGING

3    THE SCOPE OF THE CASE GOING FORWARD, WHICH HAS AN IMPACT,

4    NATURALLY, ON THE -- THE SCOPE OF DISCOVERY, THE ISSUES THAT

5    WILL BE LITIGATED, CLASS CERTIFICATION, ET CETERA.

6         SO IT -- IT HAS A VERY PRACTICAL CASE MANAGEMENT COMPONENT

7    AS WELL THAT WE WANTED TO IDENTIFY TO THE -- TO THE COURT

8    BECAUSE IT DOES IMPACT NATURALLY THE BURDENS AND RESOURCES

9    ASSOCIATED WITH LITIGATING A CASE THAT FROM DAY TO DAY IS --

10   IS CHANGING.

11        SECONDLY, WITH RESPECT TO THE -- THE DUE PROCESS CLAIM,

12   YOUR HONOR, WE DID NOT LEARN FROM -- UNTIL THE PLAINTIFFS

13   FILED THEIR OPPOSITION TO OUR MOTION TO DISMISS THAT THE LEVEL

14   OF DUE PROCESS THAT THEY NOW CONTEND IS REQUIRED FOR -- FOR

15   THE ADMINISTRATIVE FUNCTION OF GANG VALIDATION AND -- AND

16   REVIEW, HAS -- HAS THERE'S BEEN --

17             THE COURT:  -- WOLFF, BUT THAT'S --

18             MR. HRVATIN:  EXACTLY.

19             THE COURT:  -- OKAY.  SO WE'RE AT THE COMPLAINT

20   STAGE.  I DON'T KNOW WHETHER WOLFF APPLIES OR DOESN'T APPLY

21   BUT --

22                  (SIMULTANEOUS COLLOQUY.)

23             THE COURT:  -- NEITHER HERE NOR THERE AT THE MOTION

24   TO DISMISS STAGE --

25             MR. HRVATIN:  WELL, I THINK THAT THE DEFENDANTS WOULD

1    BE ENTITLED, IF THAT'S THE LEVEL OF DUE PROCESS THAT THEY

2    MAINTAIN IS APPROPRIATE, THAT THAT BE SET FORTH IN THEIR

3    PLEADINGS BECAUSE IT'S NOT -- IT'S NOT THERE NOW.  THERE'S --

4    THERE ARE ALLEGATIONS THAT CURRENT REGULATIONS DON'T PROVIDE A

5    MEANINGFUL REVIEW, BUT THERE'S NO FURTHER ALLEGATION AS TO

6    WHAT THAT MEANS.  WE FOUND OUT IN OPPOSITION THAT THAT MEANS

7    WOLFF.

8         AND I THINK THAT WE WOULD BE ENTITLED TO SEE WHAT THE

9    PLAINTIFFS CONTEND THAT THAT WOLFF-LIKE STANDARD SHOULD LOOK

10   LIKE IN THE CONTEXT OF -- OF GANG VALIDATION AND REVIEW SO

11   THAT WE CAN ADEQUATELY RESPOND AS TO WHETHER THAT'S THE RIGHT

12   STANDARD TO APPLY.  AND I THINK THAT THAT SHOULD BE SET FORTH

13   IN FURTHER AMENDED PLEADING.

14        SO TO -- TO RAISE THAT ISSUE IN OPPOSITION, YOUR HONOR, WE

15   DON'T -- IT WASN'T CAPTURED BY THE COMPLAINT, AND IT WASN'T IN

16   RESPONSE TO OUR -- TO OUR CHALLENGE AS TO WHAT THE STANDARD IS

17   THAT THE PLAINTIFFS IDENTIFY NOW THAT, GIVEN WHAT THEY CONTEND

18   TO BE A DISCIPLINARY-TYPE DECISION, UPS THE LEVEL OF REVIEW

19   THAT'S OWED.

20        AND I THINK THAT THE DEFENDANTS ARE ENTITLED TO ADEQUATELY

21   RESPOND TO THAT BECAUSE WE HAVEN'T -- THAT -- THAT WAS NOT

22   APPARENT ON THE FACE OF THE PLEADING, YOUR HONOR.

23             **THE COURT:**  IS THAT IT?

24             **MR. HRVATIN:**  YOUR HONOR, THAT IS IT.  YES, THANK

25   YOU.

 1          **THE COURT:**  DID YOU WANT TO RESPOND BRIEFLY?

 2          **MR. LOBEL:**  I DO, YES.

 3      THE KEY DIFFERENCE BETWEEN THIS CASE AND MADRID IS

 4   DURATION.  MANY OF THE NAMED PLAINTIFFS HAVE NOW SPENT OVER 20

 5   YEARS IN THE SHU LIVING IN CELLS WITHOUT WINDOWS, WITH

 6   VIRTUALLY NO NORMAL HUMAN CONTACT, NO TELEPHONE CALLS, NO

 7   FAMILY VISITS, RECREATING ALONE IN A SMALL CELL WITH HIGH

 8   WALLS WITHOUT EVER SEEING GRASS, TREES, OR BIRDS.

 9      AND AS JUDGE HENDERSON HIMSELF SAID IN MADRID, I QUOTE, WE

10   EMPHASIZE THAT THIS -- THAT HIS DETERMINATION WAS BASED ON THE

11   CURRENT RECORD AND DATA BEFORE US.  WE CANNOT BEGIN TO

12   SPECULATE ON THE IMPACT THAT PELICAN BAY SHU CONDITIONS MAY

13   HAVE ON INMATES.

14          **THE COURT:**  I KNOW.  I'VE READ THE QUOTE.

15          **MR. LOBEL:**  OKAY.

16          **THE COURT:**  YEAH.

17          **MR. LOBEL:**  DURATION IS CRITICAL, AND THERE ARE FOUR

18   BIG BASIC DIFFERENCES.  ONE IS THE LONGER -- THE LONGER THE

19   DURATION IN SOLITARY, THE LONGER THE SUFFERING, THE MORE PAIN

20   OCCURS, THE MORE SEVERE THE PAIN.

21      SECOND, IN DISTINCTION TO MADRID, WE NOT ONLY ALLEGE

22   PSYCHOLOGICAL INJURY BUT PHYSICAL AND MEDICAL HARM AND THE

23   RISK OF PHYSICAL AND MEDICAL HARM.  IT IS NOW WELL ESTABLISHED

24   BY SCIENCE THAT INCREASED LEVELS OF STRESS -- AND THERE'S NO

25   DOUBT THAT THIS IS AN INCREASED LEVEL OF STRESS -- CAUSES

```
 1    MEDICAL HARM, CAUSES HYPERTENSION, DIABETES, HEART DISEASE,

 2    AND A WHOLE RANGE OF -- WHOLE HOST OF OTHER THINGS WHICH WE

 3    WILL HOPEFULLY PROVE THROUGH EXPERT TESTIMONY.

 4          THE COURT:  WELL, THAT'S WHEN YOU GET INTO THEIR

 5    CLAIMS THAT NOW YOU'RE IMPEDING ON COLEMAN AND PLATA.

 6          MR. LOBEL:  NO, BUT WE'RE NOT CLAIMING -- FIRST OF

 7    ALL, COLEMAN HAS NOTHING TO DO WITH OUR CLAIM BECAUSE IT

 8    ONLY -- THE CLASS IN COLEMAN WAS ONLY SERIOUSLY MENTALLY ILL

 9    PRISONERS, AND WE'RE NOT CLAIMING THAT ANY OF OUR PEOPLE ARE

10    SERIOUSLY MENTALLY ILL.  THAT'S NOT OUR CLAIM, THAT THIS IS --

11    THAT THESE PEOPLE ARE MENTALLY ILL; WE'RE CLAIMING --

12          THE COURT:  -- THAT THEY MAY BECOME SERIOUSLY --

13               (SIMULTANEOUS COLLOQUY.)

14          MR. LOBEL:  WELL, IF THEY BECOME -- OUR CLAIM

15    ACTUALLY IS THAT THERE IS A SIGNIFICANT RISK THAT THEY'LL

16    BECOME SERIOUSLY MENTALLY ILL.  AND THAT'S NOT A CLAIM AS TO

17    WHAT MEDICAL OR MENTAL HEALTH THEY'RE GETTING.  THAT'S A CLAIM

18    AS TO WHETHER THESE CONDITIONS DRIVE PEOPLE INSANE.

19       AND THAT HAS NOTHING TO DO WITH THE COLEMAN AND PLATA --

20          THE COURT:  -- YOU TALK ABOUT LESSER MEDICAL CARE,

21    LESSER MENTAL HEALTH CARE AND --

22               (OFF-THE-RECORD DISCUSSION.)

23          THE COURT:  YOU NEED TO WAIT TILL I FINISH TALKING

24    'CAUSE IT MAKES IT HARD FOR THE REPORTER.

25       THAT'S WHAT THEY SEIZE UPON TO SAY THAT YOU'RE TREADING ON
```

1    THE GROUND OF COLEMAN AND PLATA WHEN YOU TALK ABOUT POOR

2    MEDICAL CARE, POOR MENTAL HEALTH TREATMENT.

3         **MR. LOBEL:**  RIGHT.  I APOLOGIZE, YOUR HONOR.  I KNOW

4    YOU'RE BUSY SO I'M TRYING TO TALK QUICKLY.

5       THAT'S CORRECT.  BUT -- THAT WE DO MAKE THOSE CLAIMS.  BUT

6    OUR -- BUT OUR CLAIM IS NOT -- THOSE CLAIMS ARE JUST IN THE

7    BROAD CONTEXT THAT THEY'RE BEING FORCED TO DEBRIEF.  AND

8    THEY'RE BEING FORCED TO DEBRIEF BY GETTING POORER MEDICAL

9    CARE.  BUT -- BUT WE'RE NOT CLAIMING THAT THE -- THAT THERE'S

10   AN EIGHTH AMENDMENT VIOLATION BECAUSE OF POOR MEDICAL CARE.

11      WE'RE CLAIMING THAT THIS IS AKIN TO TORTURE BECAUSE THE

12   CLASSIFIC DEFINITION OF "TORTURE" IS TRYING TO CAUSE MEDICAL

13   AND MENTAL HEALTH PAIN IN ORDER TO GET INFORMATION.

14      AND THIS WHOLE DEBRIEFING PROGRAM IS PRECISELY THAT IN OUR

15   OPINION.  THEY OBJECT TO THAT, BUT THAT'S WHAT THE TRIAL WILL

16   BE ABOUT.

17      BUT AS I SAID, AS OPPOSED TO MADRID, WE ALSO CLAIM

18   PHYSICAL INJURY.  WE DON'T -- AND MEDICAL INJURY.  WE DON'T

19   CLAIM LACK OF MEDICAL CARE.  WE CLAIM THAT THE CONDITIONS

20   CAUSE MEDICAL HARM, WHICH WAS NOT A CLAIM IN MADRID, WAS NEVER

21   LITIGATED IN MADRID, AND IS BEING LITIGATED HERE.

22      THIRD, WE CLAIM THAT THESE PRISONERS ARE BEING DEPRIVED OF

23   BASIC HUMAN NEEDS TO SOCIAL INTERACTION AND ENVIRONMENTAL

24   STIMULATION.  THAT ALSO WAS NOT A CLAIM IN MADRID, WHICH

25   FOCUSED PURELY ON MENTAL HARM.

```
1        SUBSEQUENT TO MADRID, THERE HAVE BEEN THREE DISTRICT COURT

2    DECISIONS WILKERSON VS. STADLER, RUIZ VS. JOHNSON, AND FREEMAN

3    VS. BERGE, WISCONSIN DECISION, ALL OF WHICH HAVE RECOGNIZED

4    SOCIAL INTERACTION AND ENVIRONMENTAL STIMULATION AS BASIC

5    HUMAN NEEDS.

6        SEEMS TO ME IF OUTDOOR EXERCISE FOR 13 MONTHS -- THE

7    DEPRIVATION OF OUTDOOR EXERCISE FOR 13 MONTHS IS THE A

8    VIOLATION OF THE EIGHTH AMENDMENT, WHICH THE NINTH CIRCUIT HAS

9    RECENTLY HELD IT IS.  AND THEN CERTAINLY THE DEPRIVATION OF

10   THE TYPE OF HUMAN CONTACT AND ENVIRONMENTAL STIMULATION THAT

11   IS ALLEGED HERE IS ALSO.  AND WE HOPE TO PROVE THAT AT TRIAL.

12       FINALLY, WE ALSO CLAIM THAT THIS PUNISHMENT THAT PEOPLE

13   ARE BEING SUBJECTED TO IS DISPROPORTIONATE TO WHATEVER OFFENSE

14   THEY HAVE COMMITTED.

15       AND AS YOUR HONOR POINTED OUT IN A CASE ADNAN VS. SANTA

16   CLARA COUNTY, WHICH WE CITE IN OUR BRIEF, THERE FOR THE

17   PURPOSES OF EIGHTH AMENDMENT, YOU HAVE TO BALANCE THE SEVERITY

18   OF THE HARM VERSUS THE STRENGTH OF THE PENOLOGICAL

19   JUSTIFICATION.

20       AS YOU POINTED OUT, IF THE -- EVEN IF THE HARM IS LESS

21   SEVERE, IF THERE'S LITTLE OR NO JUSTIFICATION, THAT COULD

22   STILL VIOLATE THE EIGHTH AMENDMENT.  AND THAT'S EXACTLY WHAT

23   JUDGE HENDERSON SAID IN MADRID.

24       HERE, THE CONVERSE IS TRUE.  IF THE HARM IS MUCH MORE

25   SEVERE, WHICH IT IS, THAN WHAT THE RECORDS SHOWED IN MADRID,
```

1   WE WOULD THINK THAT THAT SAME DISPROPORTIONATE THEORY WOULD

2   REQUIRE THAT DEFENDANTS HAVE TO SHOW A GREATER JUSTIFICATION

3   AND INSTEAD OF A GREATER JUSTIFICATION, THEY ARE PUTTING

4   PEOPLE IN THE SHU AND THE DOCUMENTS WILL SHOW THIS, THAT

5   THEY'RE PUTTING PEOPLE IN THE SHU FOR 20 YEARS BASED ON ART

6   WORK THAT THEY DRAW, BIRTHDAY CARDS THAT THEY SEND, THEIR

7   NAMES BEING FOUND ON A LIST OF MEMBERS IN GOOD STANDING.

8       I DON'T -- I DON'T KNOW WHAT "MEMBERS IN GOOD STANDING"

9   MEANS, BUT MEMBERS IN GOOD STANDING OF A GANG, JUST BEING ON A

10  LIST.  SAYING HELLO TO A VALIDATED GANG MEMBER.  I HAVE A

11  DOCUMENT IN MY POSSESSION THAT ASHKER IS GOING TO BE -- THAT

12  ONE OF THE SOURCE ITEMS THAT'S GOING TO BE USED AT HIS NEXT

13  AND ACTIVE REVIEW, WHICH, BY THE WAY, IS STILL GOING ON

14  DESPITE THE PILOT PROGRAM, BUT THAT ONE OF THE SOURCE ITEMS IS

15  THAT ANOTHER VALIDATED GANG MEMBER WHEN PASSING THROUGH THE

16  POD SAID "HI" TO ASHKER AND TO TWO OTHER GANG MEMBERS AND THAT

17  ASHKER'S RECEIPT OF THAT HELLO IS EVIDENCE OF HIM BEING IN A

18  GANG.

19      NOW, TO PUT SOMEBODY IN THESE CONDITIONS FOR 20 YEARS

20  BECAUSE OF THEIR DRAWINGS, BECAUSE OF THEIR COMMUNICATIONS IS

21  DISPROPORTIONATE.

22          **THE COURT:**  OKAY.  WHY DON'T YOU MOVE ON TO THE DUE

23  PROCESS CLAIM.

24          **MR. LOBEL:**  OKAY.  THANK YOU.

25          **THE COURT:**  AND PARTICULARLY, YOU THINK YOU NEED TO

```
 1      AMEND YOUR CLAIM TO ALLEGE A WOLFF V. MCDONNELL CLAIM?

 2              MR. LOBEL:  NO, WE DON'T.  AS YOU -- YOUR HONOR, AS

 3      YOU POINTED OUT IN WHAT IN MY OPINION WAS A EXCELLENT

 4      DECISION, SAFEWAY VS. --

 5              THE COURT:  FLATTERY WILL GET YOU NOWHERE.

 6              MR. LOBEL:  THAT WON'T GET ME ANYWHERE, BUT -- BUT

 7      YOU POINTED IT OUT, AND YOU CITED THE NINTH CIRCUIT, WHICH

 8      PROBABLY IS MORE IMPORTANT, AND THAT IS THAT PLEADING IS FACT

 9      PLEADING.  WE DON'T HAVE TO PLEAD OUR LEGAL THEORY.  WE PLED

10      THAT THERE WAS A VIOLATION OF DUE PROCESS.  WE ASKED FOR

11      RELIEF THAT THEY BE GIVEN MEANINGFUL PROCESS, AND WE PLED

12      SPECIFICALLY THAT ONE OF THE COMPONENTS OF THIS WAS THAT THEY

13      ARE BEING NOW DENIED AFTER 2010 GOOD TIME CREDITS --

14              THE COURT:  SO --

15              MR. LOBEL:  -- EARNED GOOD TIME CREDITS.

16              THE COURT:  NOBODY TOOK AWAY GOOD TIME CREDITS THAT

17      SOMEONE ALREADY HAD.  AM I RIGHT?  THEY ONLY SAID IN THE

18      FUTURE, YOU CAN'T EARN ANY.

19              MR. LOBEL:  EXACTLY.

20              THE COURT:  BUT HERE -- I'M NOT SURE THAT'S EXACTLY

21      THE SAME THING.  I MEAN, THERE IS A LOT OF LAW ABOUT

22      PUNISHMENTS THAT TAKE AWAY GOOD TIME CREDITS THAT YOU'VE

23      ALREADY EARNED.  I'M NOT SURE THAT LAW WOULD APPLY TO TAKING

24      AWAY YOUR RIGHT TO EARN GOOD TIME CREDITS IN THE FUTURE.

25              MR. LOBEL:  I THINK IT DOES, BUT LET ME EXPLAIN WHY I
```

1    THINK IT'S PUNITIVE, WHY IT CHANGES THE LEVEL OF DUE PROCESS

2    THAT'S REQUIRED HERE.  TWO REASONS.

3        THE FIRST IS, AS I UNDERSTAND IT, THE BASIC DISTINCTION

4    BETWEEN ADMINISTRATIVE AND DISCIPLINARY IS THAT ADMINISTRATIVE

5    SEGREGATION IS SIMPLY DESIGNED TO PREVENT FUTURE HARM FROM

6    OCCURRING.  IT'S NOT PUNISHMENT FOR SPECIFIC MISCONDUCT THAT'S

7    OCCURRED.

8        DISCIPLINARY IS PUNISHMENT FOR SPECIFIC MISCONDUCT THAT'S

9    OCCURRED.  I -- BY THE WAY, I'VE NEVER UNDERSTOOD WHY WHEN YOU

10   GET SENTENCED TO SHU TIME FOR A YEAR OR TWO FOR MURDERING

11   ANOTHER INMATE, YOU GET WOLFF-TYPE PROCEDURES, WHEREAS IF YOU

12   GET SENT TO THE SHU FOR 20 YEARS OR 25 YEARS FOR HAVING A

13   GANG-RELATED DRAWING, YOU GOT VIRTUALLY NO -- YOU GET VERY

14   MINIMAL -- I HAVEN'T UNDERSTOOD THAT, BUT THAT'S ANOTHER

15   QUESTION.

16       THE TWO -- THE TWO REASONS THAT THIS INVOKES WOLFF IS

17   BECAUSE IT CHANGES THE NATURE OF THE CONFINEMENT FROM

18   ADMINISTRATIVE TO PUNITIVE.

19       FIRST, THERE IS NO ADMINISTRATIVE --

20           THE COURT:  YEAH, WE'RE NOT REALLY ARGUING WHETHER

21   WOLFF APPLIES OR NOT.  WE'RE JUST ARGUING WHETHER YOU NEED TO

22   AMEND YOUR COMPLAINT TO ALLEGE IT SO THAT THEY CAN PRESUMABLY

23   HAVE ANOTHER CHANCE PERHAPS TO MOVE TO DISMISS IT NOW THAT

24   WE'VE --

25               (SIMULTANEOUS COLLOQUY.)

```
 1              THE COURT:  OH, I'M SORRY.  I DID ASK YOU --

 2                   (SIMULTANEOUS COLLOQUY.)

 3              MR. LOBEL:  I'M TRYING TO ANSWER YOUR QUESTION.

 4              THE COURT:  SORRY.

 5              MR. LOBEL:  AND THE FIRST REASON IS THAT THERE IS NO

 6  ADMINISTRATIVE PREVENTIVE RATIONALE FOR TAKING AWAY SOMEBODY'S

 7  GOOD TIME CREDITS.  THE ONLY POSSIBLE REASON IS PUNISHMENT.

 8  THERE -- TAKING AWAY SOMEBODY'S GOOD TIME CREDITS IS NOT GOING

 9  TO MAKE THE PRISON ANY SAFER.  IT'S GOING TO PUNISH THE

10  PERSON, AND THAT'S WHY WHEN YOU'RE PUNISHED FOR DISCIPLINARY

11  INFRACTIONS, PART OF THE PUNISHMENT IS TAKING AWAY THE

12  OPPORTUNITY TO EARN GOOD TIME CREDITS.

13      NOW THEY'VE -- SINCE 2010, THEY'VE SAID EVEN IF YOU'RE

14  PUNISHED AND GIVEN AN INDETERMINATE SENTENCE, YOUR OPPORTUNITY

15  TO EARN GOOD TIME CREDITS ARE ALSO TAKEN AWAY.  THAT ONLY HAS

16  A PUNITIVE RATIONALE.  IT TRANSFERS THE WHOLE SCHEME OF THIS

17  FROM ADMINISTRATIVE TO PUNITIVE.

18      SECOND, IN WILKER- -- IN WILKINSON, THE COURT SAID ALL

19  WE'RE ENTITLED TO -- WELL, NOT ME, BUT ALL THE OHIO PRISONERS

20  WERE ENTITLED TO WAS HEWITT-TYPE PROCEDURES.  THEY

21  DISTINGUISHED A CASE WHERE SOMEBODY IS -- THEIR GOOD TIME

22  CREDITS ARE TAKEN AWAY FOR SPECIFIC MISCONDUCT.

23              THE COURT:  RIGHT, BUT THEY HAD LOST GOOD TIME

24  CREDITS THEY HAD ALREADY EARNED.

25              MR. LOBEL:  THAT'S WOLFF, BUT THERE ARE OTHER CASES
```

1    WHICH I THINK SAY --

2              THE COURT:  THAT'S WILKINSON, YOU MEAN?

3              MR. LOBEL:  -- THE OPPORTUNITY TO EARN GOOD TIME

4    CREDITS IS ALSO THAT, BUT THE KEY POINT IS NOT WHETHER IT'S

5    RETROACTIVE OR PROSPECTIVE.  THE KEEP POINT IS THAT CALIFORNIA

6    COURTS AND FEDERAL DISTRICT COURTS IN THIS DISTRICT HAVE NOW

7    HELD THAT THE REASON IS THAT THIS IS NOT AN EX POST FACTO

8    PUNISHMENT IS BECAUSE YOU'RE BEING -- YOUR OPPORTUNITY TO EARN

9    THE GOOD TIME CREDITS ARE BEING TAKEN AWAY FOR SPECIFIC

10   MISCONDUCT THAT YOU HAVE -- THAT YOU HAVE ENGAGED IN WHILE IN

11   PRISON.  AND, THEREFORE, IT DOESN'T RELATE BACK TO THE

12   ORIGINAL CRIME THAT YOU COMMITTED.  YOU'VE NOW COMMITTED NEW

13   MISCONDUCT, AND YOU'RE BEING PUNISHED -- AND THAT'S WHAT THE

14   CALIFORNIA COURTS SAY AND THAT'S WHAT THESE DISTRICT COURTS

15   SAY -- YOU'RE NOW BEING PUNISHED FOR THAT MISCONDUCT.  THAT'S

16   NO LONGER ADMINISTRATIVE.

17             THE COURT:  NOBODY GOES TO SHU DIRECTLY FROM COUNTY

18   JAIL?  YOU HAVE TO DO SOMETHING ELSE BEFORE YOU GET INTO SHU?

19             MR. LOBEL:  ALL OF THESE PEOPLE, ALL OF -- ALL OF OUR

20   CLIENTS DIDN'T GO DIRECTLY FROM COUNTY JAIL.  THEY -- THEY DID

21   SOMETHING IN JAIL, AND WHAT THEY DID IN JAIL WAS DRAW A

22   PICTURE WHICH SUGGESTED THEY'RE GANG.

23             THE COURT:  YOUR CLAIMING A CLASS, I THINK, AREN'T

24   YOU?

25                    (SIMULTANEOUS COLLOQUY.)

```
1          THE COURT:  -- EVERYBODY IN SHU -- ANYBODY IN THE
2     CLASS WHO WENT THERE DIRECTLY FROM COUNTY JAIL?
3          MR. LOBEL:  WE HAVEN'T COMMITTED -- WE HAVEN'T BEEN
4     ABLE TO ENGAGE IN CLASS-WIDE DISCOVERY WHICH WE'LL GET TO IN A
5     LITTLE WHILE, BUT MY UNDERSTANDING OF IT IS THAT THIS -- IN
6     GENERAL, THE CLASS IS NOT SENT DIRECTLY FROM COUNTY JAIL TO
7     THE SHU.  BUT THEY'RE SENT BECAUSE THEY ARE DETERMINED TO BE
8     ONE OF THESE PRISON GANGS, SO THEY -- SO IT MEANS THAT THEY
9     HAVE TO GET INTO THE PRISON, BECOME A PRISON GANG MEMBER, AND
10    THEN BE SENT TO THE SHU.  SO THE LOGIC OF IT IS THAT THEY HAVE
11    TO BE IN THE --
12         THE COURT:  YOU COULD HAVE BEEN IN PRISON BEFORE AND
13    BEEN A PRISON GANG MEMBER FROM YOUR PAST COMMITMENT --
14         MR. LOBEL:  THAT'S POSSIBLE, BUT I THINK IN
15    GENERAL --
16         THE COURT:  COUNSEL DIDN'T ARGUE THIS JUST NOW, BUT
17    IN THE BRIEF, THEY ARGUE ALSO RES JUDICATA EFFECT FROM
18    ASHKER'S AND TROXELL'S --
19         MR. LOBEL:  YEAH, YOUR HONOR --
20         THE COURT:  -- CLAIMS IN ANOTHER CASE ABOUT
21    DEBRIEFING AND -- SO MAYBE YOU COULD ADDRESS THAT.
22         MR. LOBEL:  YOU ORDERED -- THEY -- THEY SAY THAT IN
23    FEBRUARY 2010, YOU ORDERED THAT THE PAROLE AND THE DUE PROCESS
24    CLAIMS BE DISMISSED.
25         THE COURT:  WAS THAT IN THIS CASE OR ONE OF THE
```

1    PREVIOUS CASES?

2              **MR. LOBEL:**  IN A PREVIOUS --

3              **THE COURT:**  IN A PREVIOUS CASE.

4              **MR. LOBEL:**  OH, NO, NO.  IN THIS CASE.  I'M SORRY.

5              **THE COURT:**  WAS IT IN THIS CASE?

6              **MR. LOBEL:**  IN ASHKER'S ORIGINAL COMPLAINT, THE --

7    THE FIRST COMPLAINT, YOU ORDERED THAT THE PAROLE AND THE DUE

8    PROCESS CLAIMS BE DISMISSED.  THEY ARE CORRECT IN THAT.

9         WHAT THEY HAVE NOT TOLD YOU IS THAT ASHKER THEN MADE A

10   MOTION FOR RECONSIDERATION, AND YOU GRANTED HIS MOTION FOR

11   RECONSIDERATION.  AND YOU GRANTED IT ON THE GROUNDS THAT WE'VE

12   ARGUED HERE, THAT IT WAS -- THAT HE SHOULD HAVE THIS RIGHT,

13   NAMELY, HE HAD A NEW PAROLE -- HE HAD A NEW DUE PROCESS

14   HEARING.  HE HAD A NEW AND ACTIVE REVIEW, AND HE'S NOW

15   CHALLENGING THAT.  AND I HAVE THAT DECISION WITH ME, AND SO

16   THEREFORE THEIR ARGUMENT IS --

17             **THE COURT:**  SHE'S BUSY TAKING THE NOTES.

18             **MR. LOBEL:**  I'M SORRY.

19             **THE COURT:**  SHE CAN'T HANDLE PAPERS.

20             **MR. LOBEL:**  SO THEIR -- THEIR -- THEIR ARGUMENT JUST

21   IGNORES THE FACT THAT AFTER THE ORDER THAT YOU CITED WAS MADE,

22   YOU THEN MADE A NEW ORDER WHICH GAVE ASHKER THE ABSOLUTE RIGHT

23   TO AMEND.  HE THEN AMENDED.  WE THEN READ THE AMENDED

24   COMPLAINT, AND IT HAD DUE PROCESS ARGUMENTS IN IT.  AND WE

25   THEN ADDED IN THE SECOND AMENDED COMPLAINT THE SAME DUE

1    PROCESS ARGUMENTS.

2        AS TO THE PAROLE, I THINK YOU WERE CORRECT IN YOUR

3    QUESTIONS.  WE'RE NOT -- WE'RE NOT ASKING FOR RELEASE FROM

4    PRISON.  WE'RE NOT ASKING FOR ANYBODY TO BE GIVEN PAROLE.

5    WE'RE SAYING THAT THE UNWRITTEN POLICY THAT ANYBODY WHO'S IN

6    THE SHU GETS DENIED PAROLE CONTRIBUTES TO THE CRUEL AND

7    UNUSUAL PUNISHMENT, AND IT CONTRIBUTES TO THE ATYPICAL AND

8    SIGNIFICANT HARDSHIP.  AND -- AND IN ANY EVENT, IT'S NOT

9    PRECLUDED BECAUSE YOU YOURSELF SAID IT WASN'T PRECLUDED.

10       AND -- AND BY THE WAY, WHAT THIS -- THIS PROBLEM OF

11   MISCITING CASES I THINK IS TRUE WITH <u>COLEMAN</u> AND <u>PLATA</u>, AND --

12   AGAIN, <u>COLEMAN</u> ONLY ADDRESSES SERIOUS -- A CLASS OF SERIOUSLY

13   MENTALLY ILL PLAINTIFFS.

14       I'M SORRY.

15           **THE COURT:**  SO WHAT IS YOUR VIEW ABOUT HOW IT WOULD

16   DEAL WITH THIS PILOT PROGRAM IF YOU'RE BUSY ATTACKING THEIR

17   PREVIOUS PROCEDURES AND LET'S SAY THEY DO MAKE IT A PERMANENT

18   PROGRAM, WHAT WOULD WE DO THEN?

19           **MR. LOBEL:**  WELL, THE KEY THING YOU SAID IS LET'S

20   SAY -- IT'S NOT MOOT UNLESS THEY MAKE IT A PERMANENT PROGRAM.

21   THEY HAVEN'T MADE IT A PERMANENT PROGRAM, SO IT'S NOT MOOT.

22           **THE COURT:**  THAT'S MY VIEW AT THIS POINT, BUT AS THE

23   CASE GOES ALONG, I'M JUST CURIOUS HOW YOU WOULD PROPOSE TO

24   DEAL WITH THAT.  ANOTHER THING IS A STAY, WHICH I DON'T WANT

25   TO DO BECAUSE IT WOULD MAKE THE CASE GO ON TOO LONG, BUT IT

```
 1    DOES RAISE AN ISSUE ABOUT HOW WE LITIGATE ESSENTIALLY A MOVING

 2    TARGET IF THE PROCEDURES ARE CHANGING AS YOU'RE LITIGATING

 3    THEM.

 4              MR. LOBEL:  THERE ARE -- THERE --

 5              MR. HRVATIN:  I'M SORRY.

 6              MR. LOBEL:  GO AHEAD.  NO, NO, NO, PLEASE.

 7              THE COURT:  NO, NO.  I'LL GET BACK TO HIM LATER.

 8              MR. LOBEL:  THERE ARE THREE ANSWERS TO THAT.  ONE IS

 9    DISCOVERY IS THE ANSWER, NOT A STAY.  THEY SAID THAT

10    THEY'RE -- THEY SAID THAT EVERY DAY PEOPLE ARE BEING GIVEN

11    HEARINGS.  AT PELICAN BAY, VERY, VERY FEW PEOPLE ARE BEING

12    GIVEN ANY HEARINGS.  ALMOST NOBODY HAS BEEN MOVED OUT.  THE

13    SITUATION --

14              THE COURT:  OH, THOSE 43 PEOPLE WEREN'T AT PELICAN

15    BAY?

16              MR. LOBEL:  NO, THEY WERE NOT AT PELICAN BAY.  IT WAS

17    VERY CLEVER IN THEIR PAPERS TO SAY 43 PEOPLE IN THE SHU, BUT

18    NOT IN -- NOT IN THIS SHU.  THERE ARE ALL SORTS OF OTHER

19    SHU'S.  THE ADMINISTRATIVE -- AT PELICAN BAY, I CAN TELL YOU

20    THAT THERE ARE SEVERAL PEOPLE WHO ARE BEING -- WHO ARE

21    AWAITING -- AT LEAST -- I'VE GOT NO DISCOVERY.  THIS IS ALL

22    WORD OF MOUTH FROM TALKING TO MY CLIENTS, BUT THEY SAY THAT

23    THERE ARE ONE OR TWO PEOPLE WHO MIGHT BE RELEASED, BUT VERY,

24    VERY FEW.

25         THEY ACTUALLY GOT THIS -- ASHKER MEETS WITH THE WARDEN,
```

 1    AND THE WARDEN TOLD HIM THAT SEVEN PEOPLE WERE GIVEN HEARINGS.

 2    ASHKER AND THE OTHER REPRESENTATIVES, SEVEN PEOPLE WERE GIVEN

 3    HEARINGS.  THAT'S THE LAST THAT I -- THAT WE HAVE OFFICIAL

 4    WORD FROM.  IN DISCOVERY, WE'LL FIND MORE, BUT IT WAS VERY

 5    CLEVER THAT THIS -- THE 150 PEOPLE OR THE 43 PEOPLE ARE

 6    STATEWIDE, NOT IN PELICAN BAY.

 7        SECOND, WITH RESPECT TO OUR WOLFF CLAIM, THERE'S NO CLAIM

 8    THAT THEY'RE GOING TO GIVE THESE PEOPLE WOLFF-TYPE HEARINGS,

 9    SO THAT CLAIM IS -- THAT -- THAT ARGUMENT IS NOT PRECLUDED

10    ANYWAY -- IN ANY EVENT.  THAT HAS TO GO FORWARD.

11        AND THIRD, WITH RESPECT TO THE GENERAL SCHEME OF THIS

12    PILOT PROGRAM, IF YOU LOOK AT IT CAREFULLY, WHICH PRISONERS

13    HERE HAVE AND WHICH I HAVE, IT ALLOWS FOR THE EXACT SAME THING

14    THAT THAT'S GOING ON NOW.  IT'S A PILOT PROGRAM WHICH, IN MY

15    OPINION, WAS DESIGNED TO PROVIDE THE APPEARANCE OF REFORM

16    WITHOUT ANY REFORM.  YOU CAN'T DECIDE THAT NOW.  I CAN'T

17    DECIDE THAT NOW, BUT I THINK THAT'S WHAT DISCOVERY WILL SHOW.

18        **THE COURT:**  ALL RIGHT.  DID YOU WANT TO REPLY

19    BRIEFLY?

20        **MR. HRVATIN:**  WELL, YOUR HONOR, THERE'S A LOT THERE.

21    ARE THERE -- I HAVE A COUPLE OF -- OF POINTS.  IS THERE

22    SOMETHING THAT YOUR HONOR HEARD THAT YOU'D BENEFIT FROM ME

23    SPECIFICALLY ADDRESSING?

24        **THE COURT:**  NO.  I JUST -- BUT I DO NEED TO MOVE

25    ALONG.  I'VE GOT TWO CASES WITH A LOT OF PEOPLE WAITING.

```
 1              (SIMULTANEOUS COLLOQUY.)

 2         MR. HRVATIN:  SO JUST A COUPLE THINGS.  FIRST -- AND

 3    I -- AND THIS CONCERNS THE PILOT PROGRAM.  THIS IS NOT AN

 4    EXPERIMENT HERE, YOUR HONOR.  THE RESULTS SPEAK FOR

 5    THEMSELVES.  WE WERE NOT --

 6         THE COURT:  THAT HAS A GOOD -- A GOOD -- SOME GOOD

 7    NEWS AND BAD NEWS.

 8         MR. HRVATIN:  WE LOOK AT IT AS --

 9         THE COURT:  I MEAN, THE GOOD NEWS IS YOU'RE TRYING

10    IT.  THE BAD NEWS IS A LOT OF PEOPLE APPARENTLY WERE IN SHU

11    THAT SHOULDN'T HAVE BEEN.

12         MR. HRVATIN:  NO.  I WOULDN'T GO THAT FAR, YOUR

13    HONOR.  WHAT WE HAVE IS TWO DIFFERENT STANDARDS HERE.  THE NEW

14    PROGRAM EVALUATES THESE -- THESE INMATES UNDER A DIFFERENT SET

15    OF GUIDELINES.  PLAINTIFFS TAKE THE POSITION THAT THEY'RE

16    EXACTLY THE SAME OR THEY OTHERWISE DON'T CHANGE THE MANNER IN

17    WHICH THESE INMATES ARE REVIEWED.

18        BUT THE IMPACT OF THE -- OF THE PROGRAM, YOUR HONOR, I

19    THINK SPEAKS TO ITS PERMANENCY.  THE DEPARTMENT DOES NOT HAVE

20    ANY EXPECTATION TO GO BACK TO THE IMPLEMENTATION OF THESE

21    REGULATIONS OTHERWISE CURRENTLY IN TITLE 15.  AND THE RESULTS

22    THAT COME FROM THIS -- THESE CASE-BY-CASE REVIEWS ON A DAILY

23    BASIS, I THINK, SPEAK -- SPEAK LOUDLY THAT -- AND -- WITH ALL

24    DUE RESPECT TO COUNSEL, WE WERE NOT CUED OR SLY IN THE MANNER

25    IN WHICH WE REPRESENTED TO THE COURT THE RESULTS OF -- OF
```

1    THESE CASE-BY-CASE REVIEWS.

2        THE DECLARATION THAT WE PREPARED ON BEHALF OF DR. --

3    EXCUSE ME -- MR. GIURBINO CLEARLY SETS FORTH THAT THESE

4    REVIEWS ARE TAKING PLACE STATEWIDE.

5        THE RELATED ISSUE, YOUR HONOR, I THINK -- COUNSEL

6    MENTIONED THIS IN THE FIRST INSTANCE, AND I'LL CONCLUDE WITH

7    THIS.  TO THE EXTENT THAT HE -- HE NOTED THAT THIS TRIAL IS

8    GOING TO BE ABOUT A DEBRIEFING PROGRAM, YOUR HONOR, THE -- THE

9    AND THIS IS WHY WE --

10           **THE COURT:**  ONE SMALL PART OF IT.

11           **MR. HRVATIN:**  IT SOUNDED LIKE HE SAID IT'S GOING TO

12   BE A PRETTY BIG PART OF IT.  THAT'S WHY WE CHALLENGED THAT THE

13   DUE PROCESS CLAIM IN THE FIRST INSTANCE AS EITHER MOOT OR TO

14   ASK THE COURT'S DISCRETION IN STAYING THE CLAIM BECAUSE

15   PURSUANT TO THE STG PILOT PROGRAM, DEBRIEFING IS NOT THE ONLY

16   WAY, AS PLAINTIFFS ALLEGE, TO GET OUT OF THE SHU.  THE INMATES

17   ARE EVALUATED AND PLACED INTO DIFFERENT STEPS BASED ON THEIR

18   CASE FACTORS, PLACED INTO DIFFERENT STEPS OF THE -- OF THE

19   PROGRAM TO EARN, BY WAY OF THEIR BEHAVIOR, RELEASE FROM THE

20   SHU.

21           **THE COURT:**  RIGHT.  AND IF BY THE TIME WE GET TO

22   TRIAL, THAT PROGRAM HAS BEEN FULLY INSTITUTED AND HAS BEEN

23   ENSHRINED IN REGULATIONS AND WE CAN BE ASSURED THAT THAT'S HOW

24   IT'S GOING TO BE, THEN PERHAPS WE WON'T TRY THE DEBRIEFING

25   ASPECT OF IT.  BUT AT THIS POINT, THAT ISN'T THE SITUATION, SO

```
1    WE'RE GOING TO HAVE TO CARRY ON UNTIL THINGS CHANGE TO THAT

2    DEGREE.

3        SO WE ALSO HAVE A CASE MANAGEMENT CONFERENCE.  I WILL TELL

4    YOU I'M UNLIKELY TO DISMISS THE COMPLAINT.  I MIGHT

5    CONCEIVABLY STRIKE CERTAIN PARTS OF IT, BUT IN GENERAL, THE

6    TWO CLAIMS WILL GO FORWARD.  I DON'T REALLY SEE WHY YOU WOULD

7    NEED TO HAVE THE WOLFF CLAIM.  I MEAN, THAT'S KIND OF A LEGAL

8    ISSUE.  YOU DON'T HAVE TO ALLEGE ALL OF YOUR LEGAL AUTHORITY

9    IN THE COURSE OF A COMPLAINT.  THE ONLY THING I COULD THINK OF

10   WOULD BE IF SOMEHOW YOUR MOTION TO DISMISS WOULD BE DIFFERENT

11   IF YOU HAD KNOWN WHAT LEGAL STANDARD THEY WERE SEEKING.

12       I GUESS I'LL TAKE A LOOK AT THAT.  IF IT SEEMS LIKE

13   WHAT -- YOU'D HAVE SOME NEW AND DIFFERENT MOTION TO DISMISS

14   YOU COULD HAVE MADE IF ONLY YOU HAD KNOWN THAT --

15           MR. HRVATIN:  I THINK THAT'S RIGHT, YOUR HONOR.  I

16   THINK THAT WHEN --

17           THE COURT:  I MEAN, THE -- THE CLAIM WOULD STILL BE

18   THERE.  THEY HAD THAT -- THEY CLAIM THAT YOU VIOLATE LESSER

19   STANDARDS THAN WOLFF, SO IT WOULDN'T MEAN THE CLAIM WOULD GO

20   AWAY.

21       IF WE HAVE A SUMMARY JUDGMENT MOTION, YOU WOULD BRIEF THE

22   LAW, BUT I'M NOT SURE YOU'D BE BRIEFING THE LAW ON A MOTION TO

23   DISMISS.  BUT ANYWAY, I'LL TAKE A LOOK AT IT.  IF I THINK YOU

24   NEED TWO-PAGE SUPPLEMENT TO EXPLAIN WHY THEIR CASE SHOULD BE

25   DISMISSED IF IT'S -- ALLEGES WOLFF, I GUESS I COULD TAKE A
```

1    LOOK AT IT.

2         **MR. LOBEL:**  YOUR HONOR, WE, BY THE WAY, PUT THIS VERY

3    CLEAR IN OUR OPPOSITION PAPERS, AND THEY HAD A FULL

4    OPPORTUNITY TO REPLY.

5         **THE COURT:**  OKAY.

6         **MR. LOBEL:**  WHICH THEY DID.

7         **THE COURT:**  OKAY.  WELL, I'LL TAKE A LOOK.

8       ANYWAY, IN TERMS OF CASE MANAGEMENT, THERE SHOULD BE A

9    SCHEDULING ORDER THERE ON THE PODIUM SOMEWHERE.

10                   (SIMULTANEOUS COLLOQUY.)

11        **THE COURT:**  TAKE ONE OF THOSE.  YOU CAN FILL IN THE

12   DATES AS WE SET THEM.  ATTACHED TO IT YOU'LL FIND THE ORDER

13   FOR PRETRIAL PREPARATION WHICH WILL TELL YOU THE PAPERWORK

14   THAT WILL NEED TO BE FILED IN ADVANCE OF THE PRETRIAL

15   CONFERENCE.  IF IT'S NOT A JURY TRIAL, SOME OF IT WON'T APPLY,

16   OF COURSE.

17       WELL, I WOULD LIKE TO HAVE YOU TALK ABOUT SETTLING THE

18   CASE AND WHAT I WOULD LIKE TO DO IS TO REFER IT TO JUDGE VADAS

19   TO SUPERVISE ONGOING SETTLEMENT DISCUSSIONS TO TALK TO YOU

20   ABOUT WHEN IS THE RIGHT TIME TO HAVE THEM.  AND THERE MAY BE

21   SEVERAL OF THEM.

22       MAYBE CERTAIN ISSUES COULD BE DISCUSSED AT ONE TIME AND

23   OTHERS AT SOME OTHER TIME.  HE HAS A PLACE UP IN EUREKA, BUT

24   HE ALSO COMES DOWN HERE REGULARLY, BUT YOU COULD CERTAINLY

25   TALK TO HIM ABOUT SCHEDULING SESSIONS DOWN HERE RATHER THAN UP

1   THERE, UNLESS IT'S CONVENIENT TO GO UP THERE BECAUSE YOU'RE

2   HAVING TO DEPOSE SOMEBODY OR HAVE SOME OTHER REASON FOR GOING

3   THERE.  BUT DON'T FEEL LIKE YOU HAVE TO ALWAYS BE GOING UP

4   TO -- UP THERE IF -- JUST BECAUSE JUDGE VADAS IS DOING IT.

5       HE WILL BE DOING THE DISCOVERY ALSO, BUT I DON'T SEE A

6   PROBLEM WITH THAT.  AND I THINK IT'S -- IF THERE WERE ONE,

7   IT'S OUTWEIGHED BY HIS EXPERTISE BOTH IN SETTLEMENT AND IN

8   DISCOVERY, SO I'M GOING TO REFER IT TO HIM FOR SETTLEMENT

9   PROCEEDINGS.  I GUESS I SHOULD SET A DATE FOR THE FIRST ONE.

10  DO YOU THINK NINETY DAYS IS TOO SOON?  SIX MONTHS?

11          **MR. LOBEL:**  NINETY DAYS WOULD BE FINE WITH US.

12          **MR. HRVATIN:**  THAT'S FINE.

13          **THE CLERK:**  JUNE 12TH, YOUR HONOR.

14          **THE COURT:**  OKAY.  AND THEN AS -- OH, NOW PLAINTIFF

15  SAYS YOU WANT TO FILE MORE MOTIONS -- UNENUMERATED MOTIONS TO

16  DISMISS.  NORMALLY, I SEE ALL THE MOTIONS TO DISMISS AT ONCE,

17  SO I WAS A LITTLE DISMAYED TO HEAR THAT YOU MIGHT HAVE MORE TO

18  MAKE.

19          **MR. HRVATIN:**  NOT TO BURDEN'S YOUR -- YOUR -- YOUR

20  HONOR'S DOCKET, WE SET FORTH AS CONTEMPLATING WHAT POTENTIALLY

21  MOTIONS MAY BE AVAILABLE FROM THE DEFENDANTS' POINT OF VIEW AS

22  TO SPECIFIC PLAINTIFFS WITH ISSUES AS TO EXHAUSTION, WITH

23  ISSUES AS TO STATUTE OF LIMITATIONS.

24      WE ARE VERY MUCH, YOUR HONOR, IN THE PROCESS OF

25  UNDERSTANDING WHETHER THE BASES AS TO THOSE ARGUMENTS MADE

1    JUST BECAUSE THEY CONCERN A SUBSTANTIAL AMOUNT OF

2    DOCUMENTATION, AND THE CENTRAL FILES OF THESE INMATES,

3    ET CETERA, IS VOLUMINOUS AND THAT WE THINK COULD FURTHER BY

4    WAY OF STREAMLINING -- STREAMLINING THE CASE --

5          **THE COURT:**  WELL, IT'S A CLASS ACTION.  I MEAN,

6    THE -- UNLESS THERE'S NO PLAINTIFF WHO EXHAUSTED HIS REMEDIES,

7    IT WOULDN'T REALLY MATTER IF SOME OF THEM DIDN'T.

8          **MR. HRVATIN:**  WELL, IT -- I MEAN, YOUR HONOR, FOR

9    PURPOSES OF CASE MANAGEMENT, THE CASE -- THE SCOPE OF THE CASE

10   CHANGES NATURALLY BECAUSE OF THE NUMBER OF PLAINTIFFS THAT

11   ARE -- ARE PRESENT JUST BY WAY OF -- OF DISCOVERY TO THE

12   EXTENT THAT --

13      DO WE NEED TO --

14              (OFF-THE-RECORD DISCUSSION.)

15         **MR. HRVATIN:**  IF WE'RE TALKING ABOUT YOUR HONOR

16   COLLECTING DOCUMENTS WITH RESPECT TO TEN NAMED PLAINTIFFS, IS

17   ONE THING VERSUS COLLECTING THEM AS TO -- TO EIGHT OR FIVE OR

18   CONDUCTING DEPOSITIONS OF THESE PLAINTIFFS.  IT CHANGES THE --

19   THE AMOUNT OF RESOURCES DEDICATED TO THE CASE, ET CETERA.

20      AND SO FROM OUR POINT OF VIEW, WE WANTED TO GIVE THE COURT

21   NOTICE THAT WE WERE LOOKING INTO -- AND I CAN'T -- I CAN'T

22   TELL YOUR HONOR FOR CERTAIN THAT WE WOULD -- WE DO HAVE --

23   WE'D REACH OUT -- BE HAPPY TO REACH OUT TO PLAINTIFFS' COUNSEL

24   TO LET PLAINTIFFS KNOW THAT WE MIGHT -- IF WE SEE AN ISSUE

25   THAT -- THAT COULD FOCUS THE CASE GOING FORWARD THAT, YOU

1   KNOW, WE MIGHT BE ABLE TO WORK THAT ISSUE OUT BEFORE BURDENING

2   THE COURT WITH THE MOTION.

3       BUT FOR PURPOSES OF CASE MANAGEMENT, SOME OF THE ISSUES

4   THAT WE WERE THINKING ABOUT, WE WANTED TO IDENTIFY THAT AS --

5   AS ONE IN THE CASE MANAGEMENT STATEMENT THAT WE SUBMITTED.

6       **THE COURT:**  WELL, I WAS GOING TO SET A DEADLINE.  I'M

7   NOT -- I HATE TO HAVE YOU DOING A LOT OF UNNECESSARY

8   DISCOVERY.  I DON'T REALLY SEE MUCH OF AN ISSUE THERE.  I

9   MEAN, IF BY CHANCE THERE WAS ONLY ONE PLAINTIFF LEFT -- I

10  MEAN, I HATE TO ADDRESS DISCOVERY MATTERS AND I SUPPOSE YOU

11  NEED TO DEPOSE SOME PLAINTIFFS IF YOU DON'T KNOW WHAT THE

12  CONDITIONS ARE, ALTHOUGH YOUR PEOPLE, I PRESUME, DO KNOW WHAT

13  THE CONDITIONS ARE AND DON'T NEED TO DEPOSE THE PERSON JUST TO

14  FIND THAT OUT.

15      I JUST -- I'M SORT OF CONCERNED AT THE THOUGHT THAT YOU'D

16  BE DOING ALL KINDS OF VOLUMINOUS DISCOVERY ABOUT THINGS THAT

17  ARE REALLY NOT MUCH SUBJECT TO DISPUTE.

18      **MR. HRVATIN:**  WELL, I THINK, YOUR HONOR --

19      **THE COURT:**  AND I GUESS WHY I GET TO THAT IS I'D LIKE

20  TO HAVE MOTIONS GET OUT OF THE WAY, BUT I DON'T WANT TO

21  ENCOURAGE YOU TO FILE AN EARLY MOTION THAT'S GOING TO REQUIRE

22  YOU TO DO A LOT OF DISCOVERY THAT ISN'T REALLY NECESSARY TO BE

23  DONE.  SO THAT'S MY DILEMMA.

24      **MR. HRVATIN:**  YOUR HONOR, I -- I THINK THAT WE CAN --

25  WE CAN EFFICIENTLY DETERMINE TO WHAT EXTENT THAT THE -- THE

```
 1    NUMBER OF -- OF PLAINTIFFS CAUSES A PROBLEM BECAUSE

 2    DEPENDING -- WITH RESPECT TO DEPOSITIONS, YOUR HONOR, IT'S NOT

 3    JUST A MATTER OF -- OF SPEAKING TO PRISON OFFICIALS ABOUT THE

 4    CONDITIONS; IT'S TO THE EXTENT THAT THERE IS IMPACT -- THAT

 5    THE IMPACT OF THOSE CONDITIONS IS VERY INDIVIDUAL IN NATURE.

 6        AND SO IF WE'RE TALKING ABOUT DEPOSING A -- A CERTAIN

 7    GROUP OF NAMED PLAINTIFFS AS TO THE ALLEGED EFFECTS OF

 8    CONDITIONS OF CONFINEMENT, ET CETERA, THAT THERE ARE JUST

 9    NATURAL BURDENS ASSOCIATED BY WAY OF QUANTITY.  SO WHAT WE

10    LOOKED AT, WHAT WE WERE TRYING TO --

11            THE COURT:  ARE WE TAPING ALSO, NIKKI?

12                    (OFF-THE-RECORD DISCUSSION.)

13            THE COURT:  WELL, OKAY.  SO LET'S SAY 28 DAYS.  ANY

14    OTHER MOTIONS TO DISMISS YOU FEEL THE NEED TO FILE, FILE THEM

15    IN 28 DAYS.  BUT BEFORE YOU DO THAT, DISCUSS IT WITH OPPOSING

16    COUNSEL AND EXPLAIN WHAT YOUR THEORY IS AND SEE IF IT'S REALLY

17    NECESSARY.

18            MR. HRVATIN:  IF WE COULD HAVE 60, YOUR HONOR, I

19    THINK THAT THAT WOULD BE -- WE'D APPRECIATE.

20            THE COURT:  WELL, SOME OF THEM ARE WAIVED ALREADY IF

21    YOU DIDN'T FILE THEM WITHIN 21 DAYS OF SERVICE, I GUESS.  SO

22    ONES THAT YOU HAVEN'T ALREADY WAIVED -- WE DO THINGS IN

23    MULTIPLES OF 7, SO --

24            THE CLERK:  WANT IT ON A THURSDAY?  SO IT WOULD BE

25    MAY 9TH?
```

1              **THE COURT:** WELL, I'D WANT THEM TO FILE -- FILE IT IN

2   ABOUT 60 DAYS.

3              **THE CLERK:** OKAY.

4      SO THAT WOULD BE MAY 9TH.

5              **THE COURT:** WELL, ACTUALLY, I GUESS -- THAT'S ABOUT

6   WHEN YOU'RE GOING TO FILE YOUR CLASS CERT.

7              **MR. LOBEL:** WE'RE GOING TO FILE OUR CLASS CERT BY MAY

8   2ND.

9              **THE COURT:** SO WE'LL DO IT AS A CROSS-MOTION.

10             **MR. LOBEL:** IF THEY WANT TO MOVE --

11             **THE COURT:** RIGHT.

12             **MR. LOBEL:** I'M AS PERPLEXED AS YOU ARE ABOUT WHAT

13   (SIC) IT WOULD MAKE ANY DIFFERENCE, BUT IF THEY WANT TO --

14             **THE COURT:** ALL I'M THINKING OF IS THEY'RE GOING TO

15   SAY THEY CAN TAKE DISCOVERY OF THE NAMED PLAINTIFFS, AND THEN

16   IF THEY GET DOWN TO WHERE THERE'S ONLY ONE NAMED PLAINTIFF

17   LEFT, OR TWO, WHO -- WHO WE KNOW EXHAUSTED, WHICH IS ASHKER

18   AND TROXELL, THEN THEY WOULD ONLY GET TO TAKE DISCOVERY OF

19   THOSE TWO. AND THEN THEY WOULD HAVE KIND OF SHOT THEMSELF

20   (SIC) IN THE FOOT, SO I DON'T -- BUT THEN WE COULD SAY OKAY.

21   YOU CAN TAKE DISCOVERY FROM EIGHT OTHER PLAINTIFFS TO GET AN

22   IDEA OF WHAT GOES ON -- I DON'T KNOW. WHY DON'T YOU TALK IT

23   OVER. IT DOESN'T SEEM --

24                  (SIMULTANEOUS COLLOQUY.)

25             **THE COURT:** -- LIKE A GOOD IDEA TO ME TO DO A LOT OF

```
 1        DISCOVERY ABOUT EXHAUSTION WHEN I DON'T THINK THAT MATTERS.
 2           BUT ANYWAY --
 3           THAT'S A GOOD IDEA.  WE'LL HAVE -- THEY WANT TO FILE THEIR
 4        CLASS CERT MOTION ON MAY 2ND.
 5           IS THAT A THURSDAY?  YEAH.
 6              THE CLERK:  YES.
 7              MR. LOBEL:  I BELIEVE IT IS.
 8              THE COURT:  AND I KNOW YOU THINK THAT'S WAY TOO
 9        EARLY, BUT IT DOESN'T MATTER TO YOU WHEN THEY FILE.  IT ONLY
10        MATTERS WHEN YOU HAVE TO OPPOSE, SO YOU CAN FILE YOUR
11        OPPOSITION TO THEIR CLASS CERT MOTION, AND IN THE COURSE OF
12        THAT OPPOSITION, YOU MAY ALSO BRIEF ANY OTHER MOTION TO
13        DISMISS YOU THINK YOU HAVE THAT HASN'T BEEN WAIVED AND THAT
14        YOU THINK IS USEFUL TO MAKE.
15              MR. HRVATIN:  THAT'S --
16              THE COURT:  AND IF YOU WOULD TALK TO THEM BEFORE YOU
17        DO THAT AND SEE IF IT REALLY IS WORTH DOING.
18              MR. HRVATIN:  THAT'S ACCEPTABLE, YOUR HONOR.  I --
19        CERTAINLY -- BE CAREFULLY WHAT -- WE WANT TO BE CAREFUL FOR
20        WHAT WE ASK FOR, AND WE'LL TALK WITH COUNSEL ABOUT ANY OTHER
21        MOTION THAT WE SEE ON THE HORIZON IN THAT CONNECTION.
22           TO THE EXTENT THAT, YOUR HONOR, WE DO CONTEMPLATE BRINGING
23        ADDITIONAL MOTIONS IN CONNECTION -- YOU MENTIONED THAT WE'D
24        INCORPORATE THAT IN -- WITH OUR OPPOSITION TO CLASS
25        CERTIFICATION, DO WE HAVE SOME FLEXIBILITY WITH RESPECT TO THE
```

```
 1    COURT'S PAGE LIMITATIONS, ET CETERA?

 2              THE COURT:  YOU FILE A MOTION FOR EXCESS PAGES IF YOU

 3    NEED ONE.

 4              MR. HRVATIN:  YEAH.  VERY GOOD, YOUR HONOR.

 5              THE COURT:  AND THEN WHY DON'T YOU GO AHEAD AND THROW

 6    IN THERE AS WELL ANY ARGUMENT YOU MAY HAVE THAT THERE SHOULD

 7    BE A JURY TRIAL IN THE CASE.  IF YOU DECIDE THERE ISN'T ONE,

 8    THEN OBVIOUSLY DON'T PUT IT IN.  BUT IF YOU THINK THERE IS

 9    ONE, PUT IT IN THAT SAME BRIEF.

10        AND I DON'T WANT -- THIS WILL BE ONE ROUND OF MOTIONS

11    WHICH WILL BE PLEADINGS-BASED MOTIONS AND CLASS-CERT-BASED

12    MOTIONS.  YOU CAN HAVE ONE OTHER ROUND WHICH WILL BE CASE

13    DISPOSITIVE MOTIONS, SUMMARY JUDGMENT MOTIONS, FACT-BASED

14    ONES, BUT THAT'S IT.  I DON'T WANT MOTIONS FILED EVERY COUPLE

15    WEEKS, SO WE'LL HAVE ONE ROUND WITH THIS ONE THAT STARTS IN

16    MAY.  I'LL SET A DEADLINE FOR THE SECOND ROUND, AND THAT'S THE

17    ONLY -- THAT'S ALL THE ROUNDS THAT WE'LL HAVE.

18              MR. HRVATIN:  UNDERSTOOD, YOUR HONOR.

19              THE COURT:  SO ANYTHING YOU CAN DO WITHOUT FACTS WITH

20    JUST PLEADING-BASED STUFF, DO IN THIS ROUND.

21        SO IF THEY FILE ON MAY 2ND, WHEN DO YOU WANT TO FILE YOUR

22    OPPOSITION?

23              MR. HRVATIN:  YOUR HONOR, I WOULD -- WE'RE GOING TO

24    NEED, I THINK, SUFFICIENT OPPORTUNITY TO NOT ONLY -- THERE'S

25    LIKELY DISCOVERY ISSUES THAT WILL BE IMPLICATED BY THE CLASS
```

1   CERTIFICATION MOTION BASED ON WHAT THEY -- WHAT THEY SUBMIT

2   TO -- TO SUPPORT THAT FINDING UNDER RULE 23.  I -- I WOULD

3   REQUEST AT LEAST 120 DAYS, YOUR HONOR.

4          **MR. LOBEL:**  YOUR HONOR, THAT'S -- YOUR HONOR, LET ME

5   JUST SAY, THE MOTION FOR CLASS CERTIFICATION IS GOING TO BE

6   BASED ONLY --

7          **THE COURT:**  WELL, LET'S MAKE IT APPROXIMATELY TWO

8   MONTHS, SO LET'S SAY EIGHT WEEKS.  IF YOU CAN'T DO THAT, THEN

9   YOU CAN TALK TO THEM ABOUT WHAT IT IS YOU THINK YOU NEED TO DO

10  IN ORDER TO FILE THAT BRIEF AND SEE IF YOU CAN GET AN

11  AGREEMENT.  IF YOU CAN'T GET AN AGREEMENT, THEN YOU CAN FILE A

12  MOTION FOR EXTENSION OF TIME EXPLAINING WHAT IT IS YOU NEED TO

13  DO AND WHY AND WHY YOU HAVEN'T BEEN ABLE TO DO IT YET, AND

14  I'LL TAKE A LOOK AT IT.  BUT LET'S AIM FOR YOUR FILING YOUR

15  OPPOSITION EIGHT WEEKS FROM MAY 2ND.

16         **THE CLERK:**  JUNE 27TH, YOUR HONOR.

17         **THE COURT:**  JUNE 27TH.  AND THEN WHAT DO YOU WANT FOR

18  YOUR REPLY?  YOUR REPLY, BY THE WAY, WILL BE YOUR REPLY ON

19  YOUR CLASS CERT BUT ALSO YOUR OPPOSITION TO ANY ADDITIONAL

20  MOTIONS TO DISMISS THEY MIGHT PUT IN, AS WELL AS ANYTHING THAT

21  THEY MIGHT SAY ABOUT JURY TRIAL.

22         **MR. LOBEL:**  YEAH, I -- YOUR HONOR, CAN I JUST REQUEST

23  THAT THEIR -- THAT THEY DON'T HAVE -- THAT YOU SHORTEN THE

24  TIME?

25         **THE COURT:**  OH, I THINK EIGHT WEEKS IS REASONABLE.

```
 1              MR. LOBEL:  OKAY.

 2              THE COURT:  HOW LONG DO YOU WANT?  TWO?

 3              MR. LOBEL:  TWO -- THREE WEEKS.

 4              THE COURT:  THREE.

 5              MR. LOBEL:  THREE.

 6              THE COURT:  OKAY.

 7              THE CLERK:  JULY 18TH.

 8              THE COURT:  OKAY.  AND WE'LL TRY TO HEAR IT ON...?

 9              THE CLERK:  AUGUST 8TH.

10              THE COURT:  AM I HERE THEN?

11              THE CLERK:  JUST GIVE ME ONE SECOND.

12              THE COURT:  YEAH, AUGUST 8TH.

13              MR. LOBEL:  OKAY.

14              THE COURT:  AND AS FAR AS INITIAL DISCLOSURES, YOU

15    WERE GOING TO EXCHANGE THEM WITHIN 30 DAYS OF THE RULING.  YOU

16    MIGHT AS WELL GO AHEAD AND DO THAT.

17              MR. LOBEL:  OKAY.

18              THE COURT:  THIRTY DAYS FROM NOW WOULD BE...?

19              THE CLERK:  APRIL 15TH, YOUR HONOR.

20              THE COURT:  NOW, YOU HAVE THIS QUESTION ABOUT EXPERT

21    TESTIMONY --

22              MR. LOBEL:  WELL, TWO --

23              THE COURT:  -- OR EXPERT DISCOVERY.

24                    (SIMULTANEOUS COLLOQUY.)

25              THE COURT:  YEAH, WHAT I'VE VIEWED AS EXPERT
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1  DISCOVERY WAS THE DISCOVERY THAT YOU DO AFTER YOU'VE DISCLOSED

2  YOUR EXPERTS AND THEN YOU DEPOSE THEM.  DISCOVERY BY EXPERTS

3  IS REALLY FACT DISCOVERY.  SO YOU CAN GO AHEAD AND DO THAT.

4         **MR. LOBEL:**  IT'S -- WE'RE THE ONES THAT WANT TO DO

5  THAT.

6         **THE COURT:**  OH, WELL, YOU CAN -- ANYBODY CAN --

7         **MR. LOBEL:**  YOUR HONOR, WE HAVE TWO PROBLEMS.  ONE IS

8  THE EXPERT DISCOVERY ISSUE WHICH YOU'VE NOW RESOLVED.  BUT THE

9  SECOND IS THAT THEY -- WE HAVE FILED OUR DISCOVERY REQUEST AT

10  THE END OF OCTOBER.  THEY ARE REFUSING TO GIVE US ANYTHING ON

11  ANY CLASS-BASED-WIDE ISSUES; THEY'RE ONLY GOING TO GIVE US

12  MATERIAL ON OUR NAMED PLAINTIFFS.

13         **THE COURT:**  OKAY.  WELL, THAT'S GOING TO BE DECIDED

14  BY JUDGE VADAS, SO YOU SHOULD FILE A MOTION.

15         **MR. LOBEL:**  OKAY.  YOU DON'T -- YOU'RE NOT DISPOSED

16  TO DECIDE THAT NOW?

17         **THE COURT:**  NO.

18         **MR. LOBEL:**  OKAY.

19         **THE COURT:**  AND YOU CAN FOLLOW HIS PROCEDURE.  HE HAS

20  PROBABLY SOME PROCEDURE ABOUT JOINT-LETTER BRIEFS OR SOMETHING

21  LIKE THAT.

22         **MR. LOBEL:**  OKAY.

23         **THE COURT:**  BUT YOU CAN LOOK UP -- AND, AGAIN, HE CAN

24  DO IT BY -- I DON'T WANT YOU TO HAVE TO RUN UP TO EUREKA ALL

25  THE TIME, BUT YOU CAN DO IT PROBABLY BY PHONE OR DO IT WHEN

```
1    HE'S DOWN HERE OR DO IT ON THE PAPERS.
2           MR. LOBEL:  BUT -- BUT AS TO EXPERT DISCOVERY, FOR
3    EXAMPLE, OUR EXPERTS INTERVIEWING PEOPLE WHO ARE NOT NAMED
4    PLAINTIFFS OR GETTING MATERIALS THAT ARE NOT FROM THE NAMED
5    PLAINTIFFS, WE'RE ABLE TO DO THAT, I ASSUME.
6           THE COURT:  YES.
7           MR. LOBEL:  OKAY.
8           THE COURT:  IT'S NOT YOUR EXPERTS DOING IT.
9    YOU'RE -- YOU MAY UNDERTAKE DISCOVERY.
10                (SIMULTANEOUS COLLOQUY.)
11          THE COURT:  -- YOUR EXPERTS WANT TO KNOW, THAT'S
12   FINE.  THERE'S NOTHING WRONG WITH THAT.
13          MR. LOBEL:  OKAY.
14          THE COURT:  YOU CAN'T DEPOSE THEIR EXPERTS YET
15   BECAUSE THEY HAVEN'T DISCLOSED THEM, NOR CAN THEY --
16      WELL, I --
17      ARE YOU PLANNING ON EXPERTS FOR CLASS CERTIFICATION,
18   EITHER OF YOU?  I MEAN, THAT, WE WOULD HAVE TO DO.  IF YOU'RE
19   GOING TO HAVE EXPERTS -- WELL, LET'S JUST WAIT AND SEE.  IF
20   YOU HAVE EXPERTS --
21          MR. LOBEL:  WE WILL HAVE EXPERTS ON --
22          THE COURT:  WELL, THEN THEY'RE GOING TO HAVE TO
23   DEPOSE THEM.
24                (SIMULTANEOUS COLLOQUY.)
25          THE COURT:  AND IF YOU HAVE EXPERTS, THEY'LL JUST
```

```
 1    DEPOSE THEM.

 2           MR. HRVATIN:  YES, YOUR HONOR.  AND THAT'S WHY -- I

 3    MEAN, IN -- WITHOUT -- WITHOUT KNOWING HOW THE PLAINTIFFS

 4    WOULD -- WOULD PRESENT THE CLASS CERTIFICATION ISSUES, WE'VE

 5    ANTICIPATED THAT THERE COULD BE EXPERT-TYPE DISCOVERY --

 6           THE COURT:  RIGHT.  YEAH.

 7                  (SIMULTANEOUS COLLOQUY.)

 8           THE COURT:  -- TALK ABOUT --

 9           MR. HRVATIN:  THAT WAS THE CONTEXT WITHIN WHICH WE

10    WERE WORKING WHEN WE MADE OUR PROPOSAL FOR WHAT WE FEEL WOULD

11    BE A SUFFICIENT AMOUNT OF TIME, NOT ONLY TO --

12           THE COURT:  LET ME JUST INTERRUPT YOU THERE AND SAY

13    IF THEY DO HAVE EXPERTS SUPPORTING THEIR MOTION, THEN YOU WILL

14    TELL THEM THAT YOU NEED TIME TO DEPOSE THEM, AND YOU WILL HAVE

15    TO GIVE THEM THAT TIME.  AND IF IT'S WITHIN THE 60 DAYS AND

16    THEY CAN STILL DO IT, THEN FINE.  IF IT ISN'T, THEN YOU'LL

17    HAVE TO GIVE THEM A CONTINUANCE.

18       NOW THEY DO -- YOU DID TALK ABOUT THE 10-DEPO LIMIT.  I

19    WOULD GUESS THAT THEY'RE GOING TO NEED MORE THAN 10 DEPOS.  15

20    DOESN'T SOUND UNREASONABLE.  YOU CAN AGREE TO IT, OR I'LL SEND

21    IT TO JUDGE VADAS.  YOU'D GET 15 AS WELL OF COURSE.

22           MR. LOBEL:  WE WILL AGREE TO 15.

23           THE COURT:  FINE.

24       WE'VE ALREADY TALKED ABOUT MEDIATION.  YOU'RE NOT PLANNING

25    ON ADDING ANY ADDITIONAL PARTIES OR CLAIMS TO YOUR CASE --
```

1          MR. LOBEL:  NO.

2          THE COURT:  -- AT THIS POINT, AND YOU AREN'T -- WELL,

3   YOU HAVEN'T ANSWERED YET, I GUESS.

4          MR. HRVATIN:  WE HAVE NOT ANSWERED.  WE'LL WAIT FOR

5   THE COURT'S ORDER ON THE MOTION TO DISMISS TO DETERMINE

6   WHAT -- TO WHAT EXTENT WE HAVE TO -- TO THE EXTENT WE HAVE TO

7   ANSWER.

8          THE COURT:  OKAY.  WELL, WHATEVER YOUR DEADLINE FOR

9   ANSWERING IS, WHICH WILL BE 21 DAYS FROM THE ORDER COMING OUT,

10   WILL ALSO BE THE DEADLINE FOR ADDING ADDITIONAL PARTIES OR

11   CLAIMS.

12          MR. HRVATIN:  YOUR HONOR, IF I MAY ON THAT, TO THE

13   EXTENT THAT THE COURT INDICATED AN INCLINATION TO DENY THE --

14   THE DENY THE MOTION TO DISMISS, I BELIEVE WE DID REQUEST A --

15   GIVEN THE NATURE OF THE PLEADING -- IT'S 50 PAGES LONG, OVER

16   200-SOME PARAGRAPHS -- TO PUT THE DEFENDANTS TO THE TASK TO

17   RESPOND TO IT ADEQUATELY IN AN ANSWER, I BELIEVE WE ASKED FOR

18   SOME ADDITIONAL TIME BEYOND THE GENERAL 21-DAY --

19          THE COURT:  YOU CAN START NOW.  IT'S NOT GOING TO BE

20   DISMISSED.

21          MR. HRVATIN:  OKAY.  THANK YOU, YOUR HONOR.

22          THE COURT:  NOW, WE COULD SET FACT DISCOVERY AND

23   EXPERT DISCLOSURE AND EXPERT DISCOVERY NOW, BUT I'M THINKING

24   MAYBE THAT DOESN'T MAKE ANY SENSE AND WE SHOULD JUST WAIT

25   UNTIL THE HEARING ON THE CASE -- CLASS CERT MOTION AND SET

```
1    ANOTHER DATE FOR NON-CLASS DISCOVERY AND EXPERTS AND FOR THE
2    CASE DISPOSITIVE MOTION AND FOR TRIAL.
3         MR. LOBEL:  WELL, WE WOULD LIKE TO SET A DATE FOR
4    TRIAL.  AND WE COULD WORK BACKWARDS FROM THAT.  WE HAVE SOME
5    PROPOSALS, THEY HAVE SOME PROPOSALS.  YOU COULD LISTEN TO THE
6    TWO OF US AND DECIDE WHAT YOU WANT TO DO.
7         MR. HRVATIN:  YOUR HONOR, WE WOULD --
8         THE COURT:  WELL, A LOT DEPENDS ON WHETHER IT'S A
9    BENCH TRIAL OR JURY TRIAL.
10        MR. LOBEL:  OKAY.
11        THE COURT:  WHY DON'T YOU -- YOU DIDN'T AGREE ON ANY
12   OF THESE DATES, I DON'T SUPPOSE.
13        MR. LOBEL:  NO, WE DIDN'T.  WE'RE ASKING FOR A DATE
14   MIDDLE OF MAY NEXT YEAR, 2014.  THAT'S THE DAY WE'D LIKE TO
15   SCHEDULE IT FOR TRIAL, AND WE'D LIKE -- WE'D ALSO LIKE AN END
16   TO FACT DISCOVERY BECAUSE WE THINK THAT THAT WILL PUSH FACT
17   DISCOVERY ALONG, TO HAVE SOME DATES.
18        MR. HRVATIN:  YOUR HONOR, WE WOULD -- WE'D SUBMIT
19   THAT, AS THE COURT INDICATED, THAT THE NEXT PHASE, AND I -- WE
20   DIDN'T DISAGREE IN OUR -- IN OUR STATEMENT THAT THE NEXT PHASE
21   OF THIS CASE IS -- IS APPROPRIATELY TEED UP FOR CLASS
22   CERTIFICATION.
23       AND AS THE COURT DID TODAY WITH THE MOTION TO DISMISS,
24   WE'D -- WE'D SUBMIT THAT THE -- AN EFFICIENT WAY TO DEAL WITH
25   THE CASE GOING FORWARD WOULD BE TO ADDRESS THE CLASS
```

| | |
|---|---|
| 1 | CERTIFICATION ISSUES IN THE FIRST INSTANCE, AND THEN WITH A |
| 2 | FURTHER CMC, PROPOSE ADDITIONAL DATES GIVEN HOW CLASS |
| 3 | CERTIFICATION WILL IMPACT WHAT THE CASE WILL LOOK LIKE. |
| 4 |       **THE COURT:**  DID YOU GIVE ME DATES?  DID THE PLAINTIFF |
| 5 | GIVES ME DATES? |
| 6 |       **MR. LOBEL:**  WE ONLY GAVE YOU THE DATE FOR TRIAL. |
| 7 |       **THE COURT:**  YEAH, NO DISCOVERY CUTOFF -- |
| 8 |           (SIMULTANEOUS COLLOQUY.) |
| 9 |       **THE COURT:**  LET'S JUST WAIT AND DO IT ON THE HEARING |
| 10 | FOR THE CLASS CERT. |
| 11 |       **MR. LOBEL:**  OKAY. |
| 12 |       **THE COURT:**  IF IT IS A COURT TRIAL, IT WILL BE WAY |
| 13 | EASIER TO SCHEDULE, AND IT WILL -- IF IT'S SHORT AND A LOT OF |
| 14 | MATTER ARE DECIDED ON MOTION, THEN IT WILL BE SHORT, AND IT |
| 15 | WON'T BE HARD TO SCHEDULE. |
| 16 |       **MR. LOBEL:**  OKAY.  WE HAVE TWO OTHER MATTERS. |
| 17 |       **THE COURT:**  WELL, YOU CAN TELL ME VERY QUICKLY WHAT |
| 18 | THEY ARE, BUT I NEED TO MOVE ON. |
| 19 |       **MR. LOBEL:**  OKAY.  VERY QUICKLY, ONE IS WE WOULD LIKE |
| 20 | TO HAVE OUR PLAINTIFFS BE ABLE TO TELEPHONICALLY LISTEN -- |
| 21 |       **THE COURT:**  ASK JUDGE VADAS. |
| 22 |       **MR. LOBEL:**  NO, TO THESE HEARINGS. |
| 23 |       **THE COURT:**  OH.  NO. |
| 24 |       **MR. LOBEL:**  NO?  OKAY. |
| 25 |   AND SECOND, I JUST WANT TO RESERVE THE RIGHT TO |

```
 1   POSSIBLY -- TO MAKE -- WE MIGHT MAKE DISPOSITIVE MOTIONS, YOU

 2   KNOW --

 3        THE COURT:  AT THE SAME TIME AS THEY DO IN

 4   CROSS-MOTIONS, YES.

 5           MR. LOBEL:  EXACTLY.

 6        THE COURT:  DON'T DO THEM BEFOREHAND.

 7           MR. LOBEL:  OKAY.

 8        THE COURT:  THE ONLY MOTION WE'RE GOING TO HEAR

 9   STARTING ON MAY 2ND --

10           MR. LOBEL:  SECOND.

11        THE COURT:  -- IS CROSS-MOTIONS FOR CLASS

12   CERTIFICATION AND TO DISMISS, WHICH IS GOING TO BE -- OH,

13   SHOOT, I FORGOT TO DO A SURREPLY.

14      YOU'RE GOING TO NEED ONE MORE BRIEF AFTER THEIR LAST

15   BRIEF.

16        THE CLERK:  DO YOU WANT TO MAKE IT THE -- AUGUST 8TH,

17   WHICH WILL BE TWO WEEKS AFTER THE LAST BRIEF AND THEN WE CAN

18   MOVE THE TRIAL -- THE HEARING OUT TWO WEEKS FROM THERE?

19        THE COURT:  NO, I -- I THINK YOU GAVE ME THREE WEEKS

20   TO PREPARE, SO WE'LL JUST ADD A REPLY TO -- WHAT WAS THE

21   PLAINTIFF'S REPLY DATE?

22        THE CLERK:  JULY.

23        THE COURT:  JULY WHAT?

24        THE CLERK:  I'M SORRY.  JULY 18TH.

25        THE COURT:  OKAY.  SO THE THURSDAY AFTER THAT...?
```

1          **THE CLERK:**  IS JULY 25TH.

2          **THE COURT:**  OKAY.  SO YOU HAVE A REPLY ON YOUR

3    CROSS-MOTION ON THE 25TH.  AND THEN WE CAN STILL DO AUGUST 8TH

4    BECAUSE THAT'S TWO WEEKS AWAY.

5          **THE CLERK:**  IT IS --

6          **MR. LOBEL:**  SO JUST SO I'M CLEAR --

7          **THE COURT:**  SO THERE WILL BE ONE SET OF MOTIONS WITH

8    FOUR BRIEFS, PLAINTIFF/DEFENDANT, PLAINTIFF/DEFENDANT, ALL IN

9    CROSS-MOTIONS, ALL IN SINGLE BRIEFS, AND THEN AFTER THAT ON A

10   DATE TO BE DETERMINED ON AUGUST 8TH, WE WILL HAVE YET ANOTHER

11   ROUND OF MOTIONS WHICH WILL BE DONE THE SAME WAY.  AND IT WILL

12   BE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DEFENDANTS'

13   OPPOSITION AND CROSS-MOTION, PLAINTIFF/DEFENDANT, AND ALL

14   OTHER MOTIONS WILL BE DONE AT THAT TIME, NOT AT ANY OTHER

15   TIME.

16         **MR. LOBEL:**  OKAY.  AND SO WE -- IF WE HAVE ANY

17   DISPOSITIVE MOTIONS, WE SHOULDN'T MAKE IT AT THE SAME TIME

18   THAT THEY'RE MAKING THEIR MOTION IN RESPONSE TO OUR CLASS

19   CERTIFICATION?

20         **THE COURT:**  YOU HAVE A --

21              (SIMULTANEOUS COLLOQUY.)

22         **THE COURT:**  -- BASED ON THE PLEADINGS WITHOUT ANY

23   FACTS?  YES, I GUESS YOU COULD BRING THAT.  I DON'T --

24         **MR. LOBEL:**  WE COULD.

25         **THE COURT:**  -- CAN'T THINK WHAT IT WOULD BE.

 1              **MR. LOBEL:**  OKAY.  IF -- IF WE HAVE A MOTION IN WHICH

 2      THERE'S NO -- NO FACTS IN DISPUTE, IS THE POINT.

 3              **THE COURT:**  RIGHT.

 4              **MR. LOBEL:**  OKAY.

 5              **THE COURT:**  AND THERE'S ONLY WHAT -- THE PLEADING, A

 6      MOTION BASED ONLY ON THE PLEADINGS, LIKE A MOTION TO DISMISS,

 7      ONLY I SUPPOSE THE OPPOSITE OF ONE, A MOTION TO NOT DISMISS.

 8      I DON'T KNOW WHAT IT WOULD BE, BUT IF YOU -- YOU CAN DO IT.

 9        OKAY.  ANYTHING ELSE?

10              **MR. HRVATIN:**  THAT'S IT, YOUR HONOR.

11              **MR. LOBEL:**  THANK YOU VERY MUCH.

12              **MR. HRVATIN:**  THANK YOU VERY MUCH FOR YOUR TIME.

13            (PROCEEDINGS WERE CONCLUDED AT 3:12 P.M.)

14                        --OOo--

15                   **CERTIFICATE OF REPORTER**

16          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

17      FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

18      I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

19      NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

20      HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

21      OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

22

23      _____

24         RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

25              THURSDAY, APRIL 25, 2013