JULES LOBEL (*pro hac vice*)
Email:  jll3@pitt.edu
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email:  aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email:  rachelm@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY  10012
Tel:  (212) 614-6478
Fax: (212) 614- 6499

GREGORY D. HULL (Bar No. 57367)
Email:  greg.hull@weil.com
BAMBO OBARO (Bar No. 267683)
Email:  bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1134
Tel:  (650) 802-3000
Fax:  (650) 802-3100

Attorneys for Plaintiffs
(Additional counsel listed on attached page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ASHKER, et. al, on their own behalf, and on behalf of a class of similarly situated prisoners,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR OF THE STATE OF CALIFORNIA, et. al,<br><br>Defendants. | Case No. 4:09-cv-05796 CW<br><br>**MOTION TO COMPEL**<br><br>Local Rule 37-2<br><br>Honorable Nandor Vadas<br><br>June 18, 2013<br>10:00 a.m.<br>Courtroom 205A |

1

2

**INTRODUCTION**

3

Each of Plaintiffs' discovery requests focuses on their two claims:  that Defendants' gang-

4

validation system violates due process, and that long-term SHU confinement violates the 8th

5

Amendment's ban on cruel and unusual punishment.  Yet Defendants refuse to produce documents

6

and answer interrogatories that directly relate to those claims.  Defendants' objections lack merit,

7

and Plaintiffs ask the Court to compel further production.

8

In compliance with Local Rule 37-2, each request and the Defendants' responses and

9

objections are set forth in full in Exhibit A.[1]

10

**HISTORY OF MEET AND CONFER**

11

Plaintiffs served the First Set of Common Document Requests and First Set of Interrogatories

12

on October 31, 2012.  On November 8, 2012, Plaintiffs served a Request for Entry onto Property for

13

Inspection.  Defendants Cate, Brown, and Lewis each served their responses to the document

14

requests and interrogatories on December 3, 2012, and responded to the request to inspect property

15

eight days later, on December 11, 2012.[2]  By mutual agreement, the parties withdrew the

16

interrogatories to Defendants Cate and Lewis, and their responses.  Defendants will serve further

17

interrogatory responses from Defendant Brown.

18

Since December, the parties engaged in extensive meet-and-confer negotiations.  These

19

included at least five telephone calls, at least eleven letters, and several emails.  Yet significant and

20

irresolvable issues remain.

21

22

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

23

24

Plaintiffs raise two issues regarding the requests for production of documents.  First, there are

25

requests that defendants have agreed to produce, but defendants are unreasonably delaying in the

26

27

[1] Plaintiffs' counsel Evan Greenberg spoke to Judge Vadas's administrative law clerk, Ms. Van Meter, on Friday, April 19, 2013.  She said that given the number of requests at issue, it was appropriate to set forth the requests and objections in an exhibit, instead of in this memorandum.  *See* Greenberg declaration, *infra*.

28

[2] Although not a matter raised in this letter, on February 14, 2013, Defendants served document requests on all 10 Plaintiffs, and Defendant Lewis served document requests and interrogatories on all Plaintiffs.

production.  These requests are:  2, 4, 5, 8, 9, 12, 13, 15, 16, 19, 21, 22, 23, 24, 25, 32, 35, 38, 45, 47, 48, 49, 50, 51, 52, 55, 56, 58, 59, 62, 63, 67, 68, and 69.

Regarding those requests, Defendants refuse to provide a timetable for when Plaintiffs can expect the production.  Plaintiffs ask that the Court set a timetable for Defendants' production.

The second requests are those that Defendants refuse to produce.  To help Defendants allocate their resources, Plaintiffs split the disputed requests into first and second priorities.  Plaintiffs asked that Defendants consider producing the first-priority requests before producing any of the second-priority requests.

**First priority:**  3, 17, 18, 20, 39, 40, 41, 42, 43, 44, 46, 53, 54, 57, 64, 65, 70, and 76.
**Second priority:**  10, 11, 27, 29, 30, 31, 36, 60, 61, 66, 71, 72, 73, 74, and 75.

The following document requests are not at issue in this motion:  1, 6, 7, 14, 26, 28, 33, and 34.

### A.    Plaintiffs are entitled to documents relating to inmates other than the named Plaintiffs.

This is a class action suit, yet for document requests 2, 4, 48, 67, 68, and 69, Defendants limited their production to named Plaintiffs only.

Plaintiffs are entitled to discovery for additional inmates even in the absence of a certified class.  Plaintiffs claim that long-term SHU confinement violates the 8th Amendment because it causes mental and physical harm and increases the risk of future harms.  Plaintiffs also claim that the Defendants have been deliberately indifferent to the harms suffered and the risk of future harm.

The requested documents speak to the general effects of prolonged SHU confinement and may provide evidence that the named Plaintiffs are exposed to an increased *risk* of future harm.  These documents include those regarding the number of inmate suicides (Request No. 57) and instances when SHU inmates were diagnosed with various ailments.  (Req. No. 70.)  These are relevant for proving the 8th Amendment cause of action because they tend to prove that SHU confinement causes mental harm and an increased risk for that harm, as well as Defendants' knowledge of those harms and deliberate indifference.

1    Likewise, documents for inmates other than the named Plaintiffs are relevant to the due-

2    process cause of action.  Plaintiffs seek to prove that the periodic reviews Defendants provide are

3    meaningless.  (Second Amended Complaint (hereafter SAC) ¶ 201, Doc. No. 136.)  SHU-wide

4    statistics are relevant to proving that the reviews are meaningless, because the documents will show

5    that the periodic reviews almost never alter the inmates' gang validation.  Thus, Plaintiffs requested

6    documents relating to how Defendants' committees (the ICC and UCC) review gang validation

7    source items, (Req. Nos. 41-44), whether those committees ever recommend transferring an inmate

8    from the SHU, (No. 46), and similar documents relating to the Inactive/Active reviews provided

9    every six years.  (No. 2.)

10    **B.    Documents reflecting conditions in the Pelican Bay SHU.**

11    Many of the disputed documents concern conditions in the PBSP SHU.  The conditions in the

12    SHU are essential to the 8th Amendment cause of action.  For instance, Plaintiffs allege that the

13    SHU deprives inmates of several basic human needs:  normal human contact, environmental and

14    sensory stimulation, mental and physical health, exercise, sleep, nutrition, and meaningful activity.

15    (SAC ¶180.)  The SHU conditions also relate to the 8th Amendment violation because these

16    conditions prove that:  the SHU inflicts psychological and physical injury; Defendants use the SHU

17    to coerce information from inmates through debriefing; the SHU inflicts disproportionate

18    punishment; and Defendants deprive Plaintiffs of human dignity.  (SAC ¶¶ 181-92.)  The physical

19    conditions of the SHU are essential to Plaintiffs' causes of action, and discovery on conditions is

20    appropriate and necessary.  Defendants refuse to produce the following document requests related to

21    SHU conditions:  3, 10, 11, 17, 18, 20, 27, 29, 30, 31, 36, and 37.

22    Defendants refuse to produce documents relating to SHU conditions.  For instance,

23    documents relating to instances when inmates did not receive adequate exercise (Req. Nos. 10-11)

24    directly relate to factual allegations throughout the complaint, (SAC ¶¶ 30, 39, 65, 180), and the

25    proportionality of punishment raised in the 8th Amendment claim.  (SAC ¶ 185.)

Similarly, two of the requests (Nos. 17-18) are about security risks posed by allowing SHU inmates to make phone calls and have contact visits, which relate to factual allegations throughout the complaint (including among others, ¶¶ 48, 50, 51, 53, 54, 56), and the 8th Amendment claim raised in, among others, ¶ 180 (deprivation of "normal human contact").  Regarding Defendants' privacy-rights objection, Plaintiffs limited this request to the named Plaintiffs, so the request does not implicate privacy rights of other inmates.

Request number 20 asks for documents reflecting the SHU's original conception and design, and the request directly relates to the factual allegation raised in ¶¶ 30, 31, 32, and 33 of the complaint.

Request 27 asks for documents reflecting times when inmates' visiting or correspondence privileges were revoked or cancelled.  Like the response to requests 17 and 18, above, these are relevant to factual allegations throughout the complaint and to Plaintiffs' 8th Amendment claim.  Much of the mental anguish and suffering Plaintiffs and class members experience stems from the SHU's isolation.  Visiting and correspondence implicate that isolation.

Requests 29 and 30 seek documents showing how prison staff interact with inmates when the inmate goes to a hospital and when the inmate is told of a death in his family.  The former are relevant to Plaintiff's 8th Amendment claim in ¶ 183 of the complaint, and the factual allegations in ¶¶ 73, 78, 79, 80, and 81, among others.  Defendants' HIPAA objection can be addressed by redacting confidential information.  Likewise, documents relating to instances when an inmate was notified of a death in his family directly relate to factual allegations in the complaint (¶¶ 45, 52), and to the 8th Amendment cause of action because how inmates are notified of deaths in the family contributes to the "crushing conditions of confinement" in the SHU (¶ 180).

Request 31 seeks CDCR budget requests for the PBSP SHU.  A primary cause of the conditions in the SHU is the amount spent on the facility.  Thus, budget requests relate to the SHU conditions.

Requests 36 and 37 seek documents related to the law library and any other library. Documents relating to the law library (access, facilities, etc.) directly relate to factual allegations in the complaint (¶ 53, 69.)

### C.        Documents related to gang-validation procedures and debriefing

Plaintiffs request documents related to the gang-validation and debriefing processes. Plaintiffs' due-process cause of action avers that Defendants deny SHU inmates meaningful periodic reviews of their indefinite SHU confinement and notice of how they may earn release.  (¶ 195, 200-02.)  Documents relating to the gang-validation process, periodic reviews, and debriefing are relevant and essential to the due-process cause of action.  (¶ 193-202.)  Defendants have no basis to withhold these documents.  The disputed requests in this category are: 3 and 39-46.

Each of these requests seeks documents relating to the method by which CDCR and PBSP investigates gang affiliates, validates inmates as affiliates, and reviews their validation.  The procedures by which inmates are validated and revalidated form the crux of the due-process cause of action (for instance, SAC ¶¶ 200, 201, 202.)

Moreover, Defendants raised meritless objections under section 3370 of Title 15, which prohibits inmates from having parts of other inmates' files.  But each of these seek official government documents that are not part of inmates' central files, so they do not implicate section 3370.

The same logic undermines Defendants' objection that producing these documents violates other inmates' privacy rights or the Health Insurance Portability and Privacy Act (HIPPA).  Official government documents that do not mention any inmate cannot infringe on any inmates' privacy or medical information.  And to the extent that they might, Defendants may redact that information.

### D.        Documents relating to medical and mental-health

Plaintiffs alleged that Defendants inflict psychological and physical injuries through indeterminate, long-term SHU confinement.  (SAC ¶ 181-82.)  Defendants objected to document requests that directly relate to inmates' mental and physical health, as well as CDCR's and PBSP's practices and procedures for identifying, diagnosing, treating, and alleviating SHU inmates' medical and psychological harm.  The disputed requests in this category are:  53, 54, 57, 60, 61, 64, 65, 66, and 70.

Requests 53 and 54 seek documents relating to studies, statistics, or reports on delivering mental-health care to SHU inmates and the effects SHU confinement causes on inmates' mental and physical health.  These relate to factual allegations throughout the complaint.  (SAC ¶¶ 180 [deprivation of mental health], 181, 182, 189, 190, 191, 192, among others.)  Moreover, collecting these documents should involve no substantial burden because Plaintiffs seek documents that Defendants produced or requested.

Request 57 seeks documents related to inmate suicides.  These directly relate to factual allegations in the complaint about suicide, psychological harm, and the risk of psychological harm (for instance, ¶¶ 124, 125, 143).  These documents also relate to the 8th Amendment cause of action, in that suicides evidence psychological distress caused by SHU confinement.  Defendants may resolve their HIPAA and privacy objections with redactions.

Requests 60 and 61 relate to medications available to and prescribed to SHU inmates.  These documents relate to various mental-health allegations in the complaint (for instance, ¶¶ 82, 83, 84, among others) and the 8th Amendment claim.  Redacting information from the documents should resolve defendants' HIPAA and privacy objections.  Regarding section 3370, pharmacy documents are not covered because they are not part of other inmates' files.  But if 3370 is implicated, defendants may produce documents in accordance with the protective order and for attorneys'-eyes only.

Request 64 seeks reviews and audits of security, medical, and mental-health care at the PBSP SHU performed by or at the direction of several agencies both within and outside of CDCR. Plaintiffs' and class members' mental and physical health is directly at issue in the 8th Amendment cause of action, so these documents directly relate to plaintiffs' claim. Further, reviews of security implicate the necessity of PBSP SHU's practices and procedures. A significant issue for the 8th Amendment claim is whether PBSP's practices are necessary.

Number 65 seeks complaints by doctors and any mental-health professional concerning the quality of care delivered at the SHU. The mental health of Plaintiffs and class members is a key issue in this case, and these documents directly relate to inmates' mental health. Further, any complaints or grievances of mental-health care implicate defendants' deliberate indifference to Plaintiffs' suffering, which is relevant for the 8th Amendment claim (SAC ¶¶ 89-92). Defendants' HIPAA and privacy objections may be resolved through redactions.

Number 66 seeks the Curriculum Vitae (CV) of each health and mental-health professional who treated SHU inmates between 2000 and 2012. The CV of each medical and mental-health personnel who treated inmates is directly related to the central issue of medical and mental harm, and is likely to lead to admissible evidence because those people have knowledge of the medical and mental-health treatment PBSP provides.

Lastly, number 70 seeks documents reflecting inmates' being diagnosed with several ailments. These directly relate to the 8th Amendment claim and factual allegations that SHU confinement causes detrimental effects on inmates' medical and psychological health (among others, SAC ¶¶ 73-85). Defendants' privacy and HIPAA objections can be resolved through redactions.

### E.   Documents relating to administrative segregation

Defendants refuse to produce documents relating to CDCR's Administrative Segregation Units. These documents are relevant because they prove that Plaintiffs have a constitutionally

protected liberty interest in avoiding SHU confinement. *Sandin v. Connor* held that inmates have a liberty interest in avoiding confinement that imposes and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). Under Ninth Circuit law, whether the PBSP SHU imposes an "atypical and significant hardship" depends on how SHU conditions compare to conditions in administrative segregation. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). Hence, documents relating to conditions in administrative segregation are discoverable. These are document requests 71-76.

Moreover, Judge Wilken found that whether Plaintiffs have a legally cognizable liberty interest in avoiding SHU confinement is an issue in the case. (Doc. No. 191 at 12:8-10 (although noting that the issue is not disputed).)

## INTERROGATORIES

### F.     Data-related interrogatories

Interrogatories 1-4, 10, 11-14, and 17 seek statistical data related to topics such as alleged gang affiliations, lengths of confinement, the debriefing program, "inactive" gang status, incarceration durations, parole, and suicide. Defendant Brown raised relevancy objections, but cannot credibly call into question the relevancy of such information in a suit which alleges wrongful confinement in the SHU based on unconstitutional gang-affiliation status. (SAC ¶¶ 6-10 (describing inadequate affiliation and validation procedures); ¶¶ 91-103 (same).) These Interrogatories are the heart of Plaintiffs' claims.

Likewise, interrogatories 13 and 14 ask for information regarding parole. Inmates' inability to get out of the SHU—including an unspoken policy prohibiting parole for SHU inmates—is relevant to the 8th Amendment cause of action. Although Defendants objected to parole-related discovery on the ground that Plaintiffs' parole claims are barred under one of Judge Wilken's orders

earlier in this case, Defendants lost this argument in their Motion to Dismiss (*see* Doc. No. 160 at p. 14-15), which Judge Wilken denied.  (Doc. No. 191.)

Defendant Brown next objected that the answer to these Interrogatories would violate section 3370 of Title 15, which prohibits inmates from having access to other inmates' case records file, unit health records, or component thereof.  As Plaintiffs noted in a letter of January 28, 2013, the relevant Interrogatories call for no such thing: they instead seek only statistics *Defendants* have collected about alleged gang affiliations, SHU confinements, and the like.  These statistics would not be tied to individual prisoners or their personal information.  And almost assuredly, Defendants already collect this information as part of its routine data-collection and retention policies—an argument which Defendants do not deny—undermining both the confidentiality objection and any objection that the Interrogatories are unduly burdensome.  Defendant Brown should be compelled to answer these Interrogatories in full.

### G.      Review-Related Interrogatories

Interrogatories 5-9 and 12 seek information on the number and details of the periodic reviews conducted by ICC and UCC members, as well as the 6-year Active/Inactive reviews.  Similar to his responses to the Data-Related Interrogatories, Defendant Brown claims—without stating why—that the Review-Related Interrogatories would disclose confidential information.  The Interrogatories' text belies these objections.  For example, Interrogatory 5 seeks the "total number" of ICC hearings for calendar years 2006 through 2012.  The notion that disclosing the ***number*** of reviews could possibly disclose confidential information strains credulity.  And, as is the case with the Data-Related Interrogatories, Defendant Brown does not state whether such data is regularly collected by his agency, which would negate any burdensomeness objections.  Defendant Brown should be compelled to answer these Interrogatories in full.

### H.      Release-Related Interrogatories

1    Interrogatory 11 seeks the identification of inmates who were released from the PBSP SHU

2    or who died there between 2006 and 2012, and the reasons for such release or death.  Interrogatory

3    17 relates to the number of suicides committed during the same period.  In addition to the same

4    baseless objections refuted above, Defendant Brown objects to these Interrogatories based on the

5    claim that such figures would involve the "disclosure of protected health information under

6    HIPAA."  Notwithstanding that the Interrogatories call for no information covered by HIPAA—

7    mere statistics without personal identifying information—this objection also does not raise HIPAA

8    concerns because HIPAA specifically contemplates disclosure of health information in a judicial or

9    administrative proceeding in response to a discovery request.  45 C.F.R. § 162.512(e)(ii).  For either

10   of these independent reasons, these objections should be overruled and a full answer should be

11   compelled.

12

13

14

15   Dated:  May 10, 2013                              Respectfully submitted,

16                                                     /s/ Charles Carbone, Esq.
                                                       Charles Carbone, Esq.
17

18                                                     Attorney for Plaintiffs
                                                       ASHKER, et al.
19
                        **ADDITIONAL PLAINTIFFS' COUNSEL**
20

21   CHARLES F.A. CARBONE (SBN 206536)
     Email:  charles@charlescarbone.com
22   EVAN CHARLES GREENBERG (SBN 271356)
     Email:  evan@charlescarbone.com
23   LAW OFFICES OF CHARLES CARBONE
     P.O. Box 2809
24   San Francisco, CA  94126
     Tel:  (415) 981-9773
25   Fax:  (415) 981-9774

26   MARILYN S. MCMAHON (SBN 270059)
     Email:  marilyn@prisons.org
27   CALIFORNIA PRISON FOCUS
     1904 Franklin Street, Suite 507
28   Oakland, CA  94612
     Tel:  (510) 734-3600
     Fax:  (510) 836-7222

1

2    ANNE BUTTERFIELD WEILLS (SBN 139845)
     Email:  aweills@aol.com
3    SIEGEL & YEE
     499 14TH STREET, SUITE 300
4    Oakland, CA  94612
     Tel:  (510) 839-1200
5    Fax:  (510) 444-6698

6    CAROL STRICKMAN (SBN 78341)
     Email:  carol@prisonerswithchildren.org
7    LEGAL SERVICES FOR PRISONERS WITH CHILDREN
     1540 Market Street, Suite 490
8    San Francisco, CA  94102
     Tel:  (415) 255-7036
     Fax:  (415) 552-3150
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2 UNITED STATES DISTRICT COURT

3 NORTHERN DISTRICT OF CALIFORNIA

4 EUREKA DIVISION

5 ASHKER, et. al, on their own behalf, and on behalf    Case No. 4:09-cv-05796 CW
  of a class of similarly situated prisoners,
6
                                    Plaintiffs,          **[PROPOSED] ORDER**
7
          v.                                             Local Rule 6-3
8
  GOVERNOR OF THE STATE OF CALIFORNIA,
9 et. al,

10

11                                  Defendants.

12

13          The Court grants the Plaintiffs' motion to compel and rules on the discovery requests as

14 indicated below.

15          Regarding requests for production of documents numbers 2, 4, 5, 8, 9, 12, 13, 15, 16, 19, 21,

16 22, 23, 24, 25, 32, 35, 38, 45, 47, 48, 49, 50, 51, 52, 55, 56, 58, 59, 62, 63, 67, 68, and 69,

17 Defendants must produce all documents by _____, 2013.

18          The Court rules on the remaining requests as follows:

19

20 Requests for production:                              Interrogatories:

21 Req. 3      _____    _____                        Rog. 1    _____    _____
22             Grant      Deny                                     Grant     Deny

23 Req. 10     _____    _____                        Rog. 2    _____    _____
               Grant      Deny                                     Grant     Deny

24 Req. 11     _____    _____                        Rog. 3    _____    _____
25             Grant      Deny                                     Grant     Deny

26 Req. 17     _____    _____                        Rog. 4    _____    _____
               Grant      Deny                                     Grant     Deny

27 Req. 18     _____    _____                        Rog. 5    _____    _____
28             Grant      Deny                                     Grant     Deny

1

2 Req. 20      _____      _____          Rog. 6      _____      _____
                Grant         Deny                        Grant         Deny
3
   Req. 27      _____      _____          Rog. 7      _____      _____
4                Grant         Deny                        Grant         Deny

5 Req. 29      _____      _____          Rog. 8      _____      _____
                Grant         Deny                        Grant         Deny
6
   Req. 30      _____      _____          Rog. 9      _____      _____
7                Grant         Deny                        Grant         Deny

8 Req. 31      _____      _____          Rog. 10     _____      _____
                Grant         Deny                        Grant         Deny
9
   Req. 36      _____      _____          Rog. 11     _____      _____
10               Grant         Deny                        Grant         Deny
11
   Req. 36      _____      _____          Rog. 12     _____      _____
12               Grant         Deny                        Grant         Deny

13 Req. 39      _____      _____          Rog. 13     _____      _____
                Grant         Deny                        Grant         Deny
14
   Req. 40      _____      _____          Rog. 14     _____      _____
15               Grant         Deny                        Grant         Deny

16 Req. 41      _____      _____          Rog. 17     _____      _____
                Grant         Deny                        Grant         Deny
17
   Req. 42      _____      _____
18               Grant         Deny
19
   Req. 43      _____      _____
20               Grant         Deny

21 Req. 44      _____      _____
                Grant         Deny
22
   Req. 46      _____      _____
23               Grant         Deny

24 Req. 53      _____      _____
                Grant         Deny
25
   Req. 54      _____      _____
26               Grant         Deny
27
   Req. 57      _____      _____
28               Grant         Deny

Req. 60    _____    _____
              Grant       Deny

Req. 61    _____    _____
              Grant       Deny

Req. 64    _____    _____
              Grant       Deny

Req. 65    _____    _____
              Grant       Deny

Req. 66    _____    _____
              Grant       Deny

Req. 70    _____    _____
              Grant       Deny

Req. 71    _____    _____
              Grant       Deny

Req. 72    _____    _____
              Grant       Deny

Req. 73    _____    _____
              Grant       Deny

Req. 74    _____    _____
              Grant       Deny

Req. 75    _____    _____
              Grant       Deny

Req. 76    _____    _____
              Grant       Deny

Date: _____

                             _____
                             Magistrate Judge Nandor J. Vadas

## DECLARATION OF EVAN GREENBERG

I, Evan Greenberg, declare:

1. I am one of the Plaintiffs' attorneys of record in this case. My California state bar number is 271356, and I am admitted to practice before this Court. I offer this declaration to comply with Judge Vadas's standing order 12(b).

2. On April 19, 2013, I spoke to Judge Vadas's administrative law clerk, Lynn Van Meter. I told her that setting forth each discovery request and response and objection would require me to exceed the 25-page limit for motions. Ms. Van Meter advised me to move to exceed the page limit. She also told me that it if the Court grants the motion to exceed the page limit, then it would be acceptable to set forth each discovery request and objection in an exhibit, rather than in the motion itself.

3. Plaintiffs have complied with Local Rule 37-1(a), through phone calls, letters, and emails since December 2012. The parties had phone calls on December 19, 2012, and in 2013 on January 7, February 4 and 11, and March 1. The parties also exchanged at least 11 letters over this time, and exchanged several emails. Progress was made on some issues, but irresolvable disputes remain.

4. The motion refers to Plaintiffs' discovery requests, namely some of the requests for production of documents, and some of the interrogatories. Plaintiffs' position is that Defendants are unreasonably delaying in producing documents that they agreed to produce— and refused to estimate when Plaintiffs could expect full production—and that Defendants' objections to many of the requests and interrogatories lack merit. Plaintiffs also submit that they may seek discovery for documents and interrogatories for inmates other than the named plaintiffs, because this is a proposed class-action lawsuit, and Plaintiffs may seek this discovery before the class is certified. Moreover, information about inmates other than the named Plaintiffs is discoverable even if no class is certified, because that information will prove the named Plaintiffs' claims.

5. Defendants' final position is that discovery related to inmates other than the named Plaintiffs is premature because no class has been certified. Defendants also claim that finding many of these documents is unreasonably burdensome as it requires searching through the central files of many inmates. Defendants also raised objections based on the privacy rights of other inmates and section 3370 of Title 15, which prohibits inmates from possessing and having access to other inmates' files.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE: May 10, 2013                          /s/ Evan Charles Greenberg
                                            Evan Charles Greenberg, Esq.