1   KAMALA D. HARRIS
    Attorney General of California
2   WILLIAM C. KWONG
    Supervising Deputy Attorney General
3   ADRIANO HRVATIN
    Deputy Attorney General
4   JILLIAN R. O'BRIEN
    Deputy Attorney General
5   State Bar No. 251311
     455 Golden Gate Avenue, Suite 11000
6    San Francisco, CA  94102-7004
     Telephone:  (415) 703-5797
7    Fax:  (415) 703-5843
     E-mail:  Jill.OBrien@doj.ca.gov
8   *Attorneys for Defendants*

9

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      OAKLAND DIVISION

13

14  **TODD ASHKER, et al.,**                    C 09-05796 CW

15                            Plaintiffs,

16         v.                                   **DEFENDANTS' OPPOSITION TO**
                                                **PLAINTIFFS' MOTION TO COMPEL**
17  **GOVERNOR OF THE STATE OF**
    **CALIFORNIA, et al.,**                     Judge:        Hon. Nandor Vadas
18                                              Hearing Date: June 18, 2013
                              Defendants.       Time:         10:00 a.m.
19                                              Location:     Courtroom 205 A

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................. 1

Applicable Legal Principles ......................................................................................... 3

Argument ..................................................................................................................... 3

    I.      Plaintiffs' motion to compel is unmanageable and misleading. ......................... 3

           A.     Plaintiffs' motion violates the Court's local rules and standing orders. ..................................................................................................... 3

           B.     Plaintiffs blatantly misrepresent the nature of their requests. ................... 4

           C.     Plaintiffs' motion to compel ignores the production to date. ..................... 7

           D.     Plaintiffs' request that the Court set a deadline is premature, arbitrary, and unnecessary at this stage of the litigation. ........................... 8

    II.     Plaintiffs have not demonstrated a need for much of the discovery sought........... 9

           A.     Plaintiffs ask the Court to compel responses that would impose a massive burden on Defendants without demonstrating a need for the discovery. ................................................................................................. 9

           B.     Plaintiffs present no support for discovery of absent class members. ...... 11

           C.     Plaintiffs provide no reason for compelling production of budget documents. ............................................................................................. 13

           D.     Plaintiffs provide no reason for compelling discovery related to administrative segregation. ......................................................................... 13

           E.     Plaintiffs provide no support for seeking publicly-available and third party documents from Defendants. .................................................... 14

    III.    Producing confidential documents regarding gang investigations and debriefers would endanger institutional security and public safety. .................... 15

           A.     Defendants cannot release confidential information about the named Plaintiffs or other present or former gang members without putting lives at risk. ................................................................................. 17

           B.     Defendants cannot release investigative training materials without endangering lives and compromising investigations. ............................... 18

           C.     A protective order will not ensure confidentiality. ................................... 18

Conclusion ................................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Davis v. Leal*
   43 F. Supp. 2d 1102 (E.D. Cal. 1999) ........................................................................ 13

*Mantolete v. Bolger*
   767 F.2d 1416 (9th Cir. 1985) .................................................................................... 13

*Sandin v. Conner*
   515 U.S. 472 (1995) .................................................................................................... 14

*Serrano v. Francis*
   345 F.3d 1071 (9th Cir. 2003) .................................................................................... 14

CONSTITUTIONAL PROVISIONS

8th Amendment ..................................................................................................................... 2

COURT RULES

Federal Rules of Civil Procedure
   Rule 26 ............................................................................................................. 9, 11, 12
   Rule 26(b)(2) ................................................................................................................. 3
   Rule 26(b)(2)(C) ........................................................................................................... 3
   Rule 26(e)(1)(A) ........................................................................................................... 8

Civil Local Rules
   Rule 37-2 ............................................................................................................. 3, 4, 6

OTHER AUTHORITIES

California Code of Regulations, Title 15
   § 3321 ............................................................................................................... 15, 16

http://cphcs.ca.gov ............................................................................................................ 15

ii

1

**INTRODUCTION**

2   The party that moves to compel discovery bears the burden of demonstrating that it is

3   entitled to that discovery, which includes a showing that it has met all the procedural rules that

4   govern motions to compel.  Plaintiffs' motion to compel asks this Court to compel discovery as to

5   83 separate discovery requests but falls far short of meeting that burden, either procedurally or

6   substantively.[1]  Plaintiffs' motion to compel is premature and unwarranted and should be denied.

7   When this Court granted Plaintiffs' administrative request to file a motion to compel in

8   excess of twenty-five pages, it "reminded" the parties of their obligation to meet and confer

9   "before they file a motion to compel discovery."  (Order Granting Pls.' Mot. Exceed Page Limits,

10  ECF No. 206.)  Plaintiffs ignored that reminder and instead filed a motion to compel supported by

11  a declaration, in violation of this District's local rules, broadly stating that the parties had phone

12  calls, exchanged letters and emails, and that "[p]rogress was made on some issues, but

13  irresolvable disputes remain."  (Greenberg Decl. ¶ 3, ECF No. 207 p. 16.)  The vague nature of

14  this representation is intentional — it is implausible that Plaintiffs meaningfully met and

15  conferred over *83 separate discovery requests* concerning widely varying topics, particularly

16  given that the Court just six weeks ago issued its ruling denying Defendants' motion to dismiss.

17  Not only that, but Plaintiffs separately violated this District's local rules that require the party

18  seeking to compel discovery to set forth each discovery request at issue, the disputed response,

19  and the reasons why, as to each request, the discovery is warranted.  That, presumably, was the

20  reason why Plaintiffs sought relief to exceed the page limit — that is, to present each discovery

21  dispute in a format that Defendants and the Court may manageably digest and resolve.  Plaintiffs'

22  motion instead sets forth the discovery requests and responses in an exhibit and uses the pages

23  allotted for argument to repeatedly mischaracterize, summarize, and paraphrase the nature of the

24  discovery sought.

25  The substantive flaws in Plaintiffs' motion are just as apparent.  Plaintiffs insist, for

26  instance,  that Defendants "are unreasonably delaying" in the production of documents and call

27
28
---
[1] Plaintiffs' proposed order shows 83 discovery requests at issue, not including Plaintiffs' improper subparts.  (ECF No. 207 p. 13.)

1

1   for the Court to set a "timetable for Defendants' production." (Pls.' Mot. Compel, ECF No. 207 p.

2   3.) Plaintiffs make this request: (i) absent any supporting authority; (ii) in disregard of the case's

3   procedural posture; (iii) without mentioning that Defendants have produced more than 76,000

4   pages of documents via an ongoing collection and production of documents routine in complex

5   litigation matters such as this one; (iv) and casting aside that Defendants have voluntarily agreed

6   to supplement their responses to all 38 of Plaintiffs' otherwise objectionable interrogatories.

7   Indeed, other than claiming generally that the discovery they seek is "focus[ed]" on the two

8   claims set forth in their complaint, Plaintiffs' motion fails to articulate why discovery related to

9   83 separate requests is now appropriate. Plaintiffs' motion for class certification is already on file,

10  and Plaintiffs do not claim they need any of the discovery for certification. There is no discovery

11  cut-off in this case and no trial date. The next phase of this litigation concerns class certification,

12  with a hearing on certification and a further case management conference currently set for August

13  8, 2013.

14       Separately, the vast majority of Plaintiffs' document requests and interrogatories at issue in

15  this motion are objectionable as unduly burdensome and unmanageable on their face. Plaintiffs

16  request, for example, "[a]ll documents relating to, discussing, of reflecting any instance in which

17  an inmate was notified of a death in his family between 2006 and 2012." (ECF No. 207-1 p. 10

18  (Request No. 30).)  But Plaintiffs' motion casts this request differently, stating that Request No.

19  30 merely "seek[s] documents showing how prison staff interact with inmates when the inmate . . . is

20  told of a death in his family." (ECF No. 207 p. 5.) Plaintiffs attempt to justify the request on the

21  grounds that "documents relating to instances when an inmate was notified of a death in his family

22  directly relate to factual allegations in the complaint (¶¶ 45, 52), and to the 8th Amendment cause of

23  action because how inmates are notified of deaths in the family contributes to the 'crushing conditions

24  of confinement' in the SHU (¶ 180)." (ECF No. 207 p. 5.) But Plaintiffs do not address even one of

25  Defendants objections. Further, this request is not limited to inmates incarcerated in the Security

26  Housing Unit (SHU) at Pelican Bay State Prison or to validated inmates. Instead, this request seeks

27  information regarding all of the 130,000 inmates incarcerated throughout the state, and personal,

28  sensitive information about non-class members, which is clearly beyond the scope of the parties'

2

claims or defenses in this case.  Responding to this request would be nearly impossible.  This is just one of the countless objectionable discovery requests at issue in this motion.  Plaintiffs' motion to compel is premature, unwieldy, and should be denied.

**APPLICABLE LEGAL PRINCIPLES**

Just because Plaintiffs have propounded discovery, are dissatisfied with Defendants' objections and responses, and contend that all of the discovery is relevant because it somehow implicates an allegation in their two-hundred-paragraph complaint, does not mean that Plaintiffs are entitled to that discovery.  Federal Rule of Civil Procedure 26(b)(2)(C) provides that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  The local rules in this District that govern discovery motion practice acknowledge this basic concept of proportionality.  Indeed, as to each disputed discovery request, "the moving papers must detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied."  N.D. Civil L.R. 37-2.  Plaintiffs' motion to compel, with 83 discovery requests purportedly at issue, ignores these principles.

**ARGUMENT**

**I.     PLAINTIFFS' MOTION TO COMPEL IS UNMANAGEABLE AND MISLEADING.**

    **A.     Plaintiffs' Motion Violates the Court's Local Rules and Standing Orders.**

Judge Vadas's May 10, 2013 Order reminded Plaintiffs of their obligation to meet and confer before filing a motion to compel.  (ECF No. 206.)  But the last meaningful conference on these discovery requests was by phone on February 11, 2013.  (Decl. of A. Hrvatin Supp'g Opp. Mot. Compel (Hrvatin Decl.) ¶ 10.)  Plaintiffs simply called Defendants on March 20, 2013, and informed them the motion would be filed.  (*Id.* at ¶ 14.)  Plaintiffs ignore this Court's standing orders and omit these facts from their motion.

3

The Court also requires that Plaintiffs set forth the parties' meet and confer efforts and the final position of each party in the motion. *See* Standing Order ¶ 12(b). Plaintiffs simply state: "Since December, the parties engaged in extensive meet and confer negotiations. These included at least five telephone calls, at least eleven letters, and several emails." (ECF No. 207 p. 2.) Plaintiffs' brief summary of the negotiations violates this Court's standing orders. *See* Standing Order ¶ 12(b).[2]

In seeking to compel responses to 83 requests, Plaintiffs fail to set forth the discovery request and response in the body of the motion, as required by Local Rule 37-2. Despite claiming that they needed 58 pages to comply with the local rules and acquiring leave of Court to file a motion in excess of the page limit, Plaintiffs filed a 10-page motion and attached the disputed discovery requests and responses as an exhibit. (ECF Nos. 207, 207-1.) The purpose of the local rule is to present the Court with the request at issue and the response, so that the Court may properly evaluate the motion. By not including the disputed requests and responses in the body of their motion, Plaintiffs have made this analysis nearly impossible.

Because Plaintiffs unilaterally abandoned the meet and confer process and violated the Court's local rules and standing orders, their motion should be denied.

## B.   Plaintiffs Blatantly Misrepresent the Nature of Their Requests.

Plaintiffs' motion repeatedly misrepresents their requests. Plaintiffs move to compel further responses to interrogatories 1-4, 10-11, 13-14, and 17, claiming that these interrogatories seek "statistical data" and "mere statistics without personal identifying information" (ECF No. 207 pp. 9, 11). But these interrogatories seek inmate names and identifying details, not statistics.

---

[2] Plaintiffs propounded 76 document requests and 38 "common interrogatories" on Defendants, to which Defendants timely responded. (Hrvatin Decl. ¶¶ 2-3.) The parties first met and conferred regarding the requests in December 2012. (*Id.* at ¶ 4.) By January 23, 2013, the parties had entered into a protective order. (*Id.* at ¶ 8.) The parties met and conferred again by phone in February 2013. (*Id.* at ¶ 10) In early March 2013, Defendants sent Plaintiffs a letter addressing all of the requests Plaintiffs categorized as "first priority," agreeing to supplement certain requests and to revisit others after the Court ruled on the motion to dismiss. (*Id.* at ¶ 12.) Defendants reiterated that they would continue to produce documents on a rolling basis. (*Id.*) Six days after the hearing on the motion to dismiss, counsel for Plaintiffs called Defendants and stated that Plaintiffs were going to file a motion to compel. (*Id.* at ¶ 14.) Since then, there have been no additional meet and confer discussions. (*Id.*)

Interrogatory No. 4 asks Defendant Brown to "identify all [Pelican Bay] SHU inmates" who requested to debrief or debriefed over seven years. (ECF No. 207-1 p. 35.) Nothing about this interrogatory is statistical. Plaintiffs seek the name, CDCR number, and present location of inmates who are confidential informants.[3] Similarly, Interrogatory No. 3 asks that Defendant Brown "identify each validated gang associate or gang member who was not confined" to the Pelican Bay SHU and state where they were housed, for a seven year period. (*Id.*) This interrogatory asks for names, CDCR numbers, gang status, and location for inmates who are not even proposed class members.[4] This is not statistical information.

Plaintiffs allege that Interrogatory No. 11 seeks statistical information (ECF No. 207 p. 8), but this single interrogatory asks Defendant Brown to:

> IDENTIFY every inmate who was released from the PBSP SHU between 2006 and 2012 or who died while incarcerated at the SHU during this period of time. For each of these inmates, IDENTIFY: (i) the date he was released or died; (ii) whether he has been returned to the SHU; (iii) to which prison facility and level of custody he was released, if applicable; (iv) where he is currently housed in prison or whether he is no longer incarcerated; and (v) the reason(s) that he was released from the SHU, including, without limitation:
> a) whether he was released from the SHU because his prison sentence was finished;
> b) whether he was released from the SHU for mental-health reasons;
> c) whether he was released from the SHU as a result of being determined to be an inactive gang member or associate pursuant to a six year inactive/active review;
> d) whether he was released from the SHU as a result of a 180 day or annual classification review;
> e) whether he was released from the SHU because he debriefed;
> f) whether he committed suicide or otherwise died while incarcerated at the SHU and, if so, his cause of death;
> g) whether he was released from the SHU for reasons relating to his physical health;
> h) whether he was released from the SHU because he was granted parole after a

---

[3] In addition to seeking non-statistical data, this interrogatory asks Governor Brown to release a list of confidential informants to Plaintiffs, who are validated gang members and associates. Releasing the names of inmates who have debriefed would be, in Plaintiffs' words, "risking their lives and safety and that of their families by debriefing." (Second Amended Complaint (ECF No. 136) p. 38.) As discussed below, Plaintiffs have not shown why their need for a list of the identity of debriefers over a seven-year period outweighs the security concerns of releasing this information.

[4] In addition to seeking identifying information, not statistics, this interrogatory asks for lists of gang members and associates and their locations. As discussed below, this would create a risk to those inmates' safety from rival gang members.

5

parole board hearing;
i) whether he was released from the SHU for any other reason and, if so, please IDENTIFY that reason.  (ECF No. 207-1 p. 40.)

This interrogatory contains subparts of subparts and seeks detailed, personal information about inmates over thirteen years, not "statistical information."  (ECF No. 207 p. 9.)  If the interrogatories Plaintiffs cite actually sought statistical information, as Plaintiffs contend, the inquiry would be different.  But, Defendants cannot be expected to respond to interrogatories that Plaintiffs did not actually propound.

In addition to the interrogatories, Plaintiffs' motion repeatedly misrepresents the nature of their document requests.  Request No. 57 seeks, "[f]or all inmate suicides since [Pelican Bay] opened, all clinical (medical and mental health) and custody files, local reviews, CDCR Central Office reviews, incident reports, recommendations from reviewing bodies, and the case numbers and name of court of all related litigation."  (ECF No. 207-1 p. 20.)  Yet in their motion to compel, Plaintiffs minimize the request as "seek[ing] documents related to inmate suicides."  (ECF No. 207 p. 7.)  Elsewhere, Plaintiffs refer to the request as seeking "the number of inmate suicides." (*Id.* at 3.)  These blatant mischaracterizations minimize Plaintiffs' requests and deprive the Court of the information necessary to evaluate Plaintiffs' claims.[5]

Plaintiffs also misrepresent Request No. 70 as seeking "instances where SHU inmates were diagnosed with various ailments."  (ECF No. 207 p. 3.)  In actuality, Request No. 70 seeks, "[a]ll documents diagnosing a [Pelican Bay SHU] inmate with hypertension, vitamin deficiency, atrophy of any part of their body, lack of bone density, asthma, or sleep deprivation" over an unlimited time period.  (ECF No. 207-1 p. 27.)  It is indecipherable what documents are requested by the term "documents diagnosing," but even if this request were limited to test results for certain conditions for a reasonable time period, there is no single source for these documents. (Decl. of S. Soderlund Supp'g Opp. Mot. Compel (Soderlund Decl.) ¶ 12.)  Finding test results for all Pelican Bay SHU inmates would require a review of their unit health records.  (*Id.*) Responding to this document request would impose a massive burden on Defendants.  (*Id.*)

_____

[5] These inaccuracies demonstrate the rationale behind the local rule requiring the parties to lay out the requests and responses in the motion to compel.  *See* Local Rule 37-2.

1    Contrary to Plaintiffs' assertion, these requests do involve a "substantial burden."  (ECF No. 207

2    p. 7.)

3          Plaintiffs mischaracterize Request No. 2 as seeking "documents relating to the

4    Inactive/Active reviews provided every six years."  (ECF No. 207 p. 4.)  But in actuality, Request

5    No. 2 seeks "all documents . . . containing a recommendation or decision on each and every one

6    of their respective inactive/active reviews **and** their 180 day **and** annual reviews" for a seven year

7    period for all Pelican Bay SHU inmates who spent more than 10 years in the SHU (emphasis

8    added).  To collect these documents, CDCR would have to conduct a manual review of SHU

9    inmate central files to determine the length of stay in the SHU and then a manual review for those

10   documents reflecting these kinds of reviews.  (*See* Soderlund Decl. ¶ 6.)

11         Plaintiffs mischaracterize Request Nos. 3 and 46 as "seeking official government

12   documents that are not part of inmates' central files."  (ECF No. 207 p. 6.)  But Request No. 3

13   asks for "all documents . . . discussing a gang validation source item being rejected" for a seven

14   year period.  (ECF No. 207-1 p. 3.)  Source items for validation do not exist in the abstract.  They

15   only pertain to particular inmates.  Similarly, Request No. 46 seeks "[a]ll documents discussing . .

16   . recommendations to transfer" of validated inmates from the Pelican Bay SHU.  (*Id.* at 17.)

17   Decisions regarding transfer pertain to particular inmates.  Plaintiffs are wrong to contend that

18   these documents "are not part of inmates' central files" and thus do not implicate any

19   confidentiality concerns.  (ECF No. 207 p. 6.)

20         Plaintiffs misrepresent their discovery requests and omit the actual requests from the

21   motion.  The Court should deny Plaintiffs' motion to compel these mischaracterized and overly

22   broad requests.

23   **C.    Plaintiffs' Motion to Compel Ignores the Production to Date.**

24         Plaintiffs complain that Defendants refuse to produce documents and are unreasonably

25   delaying production.  (ECF No. 207 pp. 2-3.)  But nowhere do Plaintiffs acknowledge that

26   Defendants have produced over 76,000 pages of documents to date.  Plaintiffs state that

27   Defendants "refuse to produce documents relating to SHU conditions."  (*Id.* at 4.)  But this is not

28   true.  Defendants have produced: (1) the entire non-confidential portions of the central files of all

7

1   ten named plaintiffs; (2) the entire unit health record (medical file) of all ten named plaintiffs; (3)

2   voluminous Pelican Bay policies related to conditions, policies, and mental health care in the

3   Pelican Bay SHU; (4) thousands of pages of Pelican Bay SHU temperature logs; (5) thousands of

4   pages of Pelican Bay SHU documents that record temperatures and contents of meals and

5   comments by inmates and staff about all meals served in the Pelican Bay SHU; and (6)

6   documents regarding the development and implementation of the STG pilot program, among

7   other documents.  (Hrvatin Decl. ¶ 15.)  These 76,000 pages respond to many of Plaintiffs' broad

8   and overlapping requests and show that Plaintiffs' motion to compel is unwarranted.

9           **D.    Plaintiffs' Request that The Court Set a Deadline is Premature, Arbitrary,
                    and Unnecessary at This Stage of the Litigation.**
10

11          Despite receiving over 76,000 pages of documents, Plaintiffs seek court intervention to

12   compel further production because "Defendants refuse to provide a timetable for when Plaintiffs

13   can expect the production."  (ECF No. 207 p. 3.)  But absent a discovery cut-off, Defendants are

14   not required to set a timeline for production.  Plaintiffs cite to no authority to warrant such a

15   deadline.  Under Federal Rule of Civil Procedure 26(e)(1)(A), Defendants have continued to

16   supplement their responses as new material is discovered, as recently as May 8, 2013.  (Hrvatin

17   Decl. ¶ 15.)  Judge Wilken declined to set a fact discovery deadline when she denied the motion

18   to dismiss on April 9, 2013, and issued a limited scheduling order through class certification.

19   (ECF Nos. 188, 191.)  Plaintiffs have not produced a single document, despite responding to

20   requests served on February 14, 2013.[6]  Any deadline set now would likely need to be changed.

21   The Court should not set an arbitrary deadline at this stage in the case.

22   ///

23   ///

24   ///

25

26

27          [6] On May 22, 2013, Plaintiffs indicated they "expect that the[ir] rolling production will
     begin in about 1 1/2 weeks."  (Hrvatin Decl. ¶ 16.)
28

8

1   **II.   PLAINTIFFS HAVE NOT DEMONSTRATED A NEED FOR MUCH OF THE DISCOVERY
2         SOUGHT.**

3       **A.   Plaintiffs Ask the Court to Compel Responses that Would Impose a
             Massive Burden on Defendants Without Demonstrating a Need for the
4            Discovery.**

5           Rule 26 provides that the Court must limit the extent of discovery, if the Court determines

6   that the burden or expense of the proposed discovery outweighs its likely benefit, considering the

7   needs of the case.  Plaintiffs' motion does not contain any analysis of these concerns.  Contrary to

8   Plaintiffs' claim that "Defendants already collect this information as part of its [sic] routine data-

9   collection and retention policies" (ECF No. 207 p. 10), responding to many of Plaintiffs' requests

10  would require a manual file review of thousands of inmates' central files and impose a massive

11  burden on Defendants.  (Soderlund Decl. ¶¶ 8-12.)

12          For example, Interrogatory No. 1 seeks the identity of all gang affiliates (subpart i), the year

13  they were first placed at the Pelican Bay SHU (subpart iv), any periods of time during which they

14  were not incarcerated at the Pelican Bay SHU (subpart v), and whether they were housed at the

15  Pelican Bay SHU as of May 31, 2012 (subpart vi).  (ECF No. 207-1 p. 33.)  The information

16  requested does not exist in a readily accessible format.  (Soderlund Decl. ¶ 4.)  To respond to

17  these questions would require an extensive and time-consuming manual file review of the central

18  files of the hundreds of gang affiliates presently housed at the Pelican Bay SHU.  (*Id.*)

19  Defendants would need to locate and review the movement history for each inmate to determine

20  if the inmate had left the Pelican Bay SHU to go to a hospital, to a trial or other court proceeding,

21  or to another institution for any length of time.  (*Id.*)  Responding to this interrogatory would

22  impose a massive burden on Defendants.  (*Id.*)

23          Similarly, Interrogatory No. 2 seeks detailed information regarding all Pelican Bay SHU

24  inmates (well over 1,000 individuals and not limited to validated gang members and associates),

25  such as whether each inmate has been housed in the SHU continuously for more than ten years as

26  of November 1, 2012 (subpart i), or for more than fifteen or twenty years (subparts ii and iii), and

27  whether each validated inmate is a gang member or associate (subparts iv and v).  (ECF No. 207-

28  1 p. 34.)  As discussed above, to determine how long each inmate presently housed in the SHU

9

1    has been continuously housed there would require a manual file review.  (Soderlund Decl. ¶ 5.)

2    Responding to interrogatories like this would impose a massive burden on Defendants.  (*Id.*)

3           Similarly, Interrogatory Nos. 5-8 seek the number and result of hearings that have been held

4    by Pelican Bay's Institutional Classification Committees (ICC) and Unit Classification

5    Committees (UCC) with respect to validated gang members or associates over the course of seven

6    years.  (ECF No. 207-1 pp. 36-38.)  But this information is not readily accessible.  (Soderlund

7    Decl. ¶ 6.)  There is, for example, no central computer system from which this information can be

8    easily calculated and collected.  (*Id.*)  Each inmate, whether or not a validated gang member or

9    associate, receives, per title 15, an annual ICC hearing and a UCC hearing every 180 days.  (*Id.*)

10   In addition, ICC and UCC hearings may occur for a variety of reasons at additional time intervals,

11   depending on an inmate's particular case factors.  (*Id.*)  CDCR could provide a rough estimate of

12   the number of ICC and UCC hearings held for validated gang members and associates housed in

13   the Pelican Bay SHU over a period of time, but such a rough estimate would be imprecise and not

14   appropriate for a sworn response.  (*Id.*)  Otherwise, to arrive at the information requested,

15   Defendants would have to conduct an extensive manual file review.  (*Id.*)  Responding to many of

16   Plaintiffs' interrogatories would impose a massive burden on Defendants.  (*Id.*)

17          Plaintiffs' document requests impose similar burdens.  Request No. 4 seeks "all documents

18   . . . relating to the issuance of CDCR 115s (administrative or serious rules violations)" for a

19   thirteen year period for all inmates who have been in the Pelican Bay SHU for more than ten

20   years.  (ECF No. 207-1 p. 4.)  To collect these documents, as discussed above, would require an

21   extensive manual file review.  (Soderlund Decl. ¶ 8.)

22          Similarly, Request Nos. 10 and 11 seek "all documents reflecting non-compliance" with

23   exercise time for Pelican Bay SHU inmates for seven years.  (ECF No. 207-1 pp. 5-6.)  For more

24   than a thousand inmates in the SHU, Pelican Bay logs whether the inmates have utilized their

25   exercise time, six days per week.  (Soderlund Decl. ¶ 9.)  Collecting and copying these logs for

26   every SHU inmate, and thereafter determining whether each SHU inmate is a validated gang

27   member or associate, over a seven-year period, would impose a massive burden on Defendants.

28   (*Id.*)

10

1    Request Nos. 67 and 68 seek inmate grievances "reflecting any prisoner, physician, or

2    psychiatrist request for at transfer" out of the Pelican Bay SHU "for medical or mental health

3    reasons" or grievances regarding refusal to transfer, over a seven year period.  (ECF No. 207-1

4    pp. 24-25.)  But inmate grievances are tracked by general category.  (Soderlund Decl. ¶ 11.)  An

5    inmate "transfer" request for "medical or mental health reasons" could fit into a number of those

6    categories.  (*Id.*)  The only accurate way to determine the true nature of an inmate's appeal is to

7    manually review each grievance.  (*Id.*)  Responding to this document request would impose a

8    massive burden on Defendants.  (*Id.*)

9    Request No. 70 seeks all documents diagnosing a Pelican Bay SHU inmate with

10   hypertension, vitamin deficiency, atrophy of any part of their body, lack of bone density, asthma,

11   or sleep deprivation.  (ECF No. 207-1 p. 27.)  This request is unlimited as to time and seeks

12   confidential, private health information from non-class members.  It is unclear what Plaintiffs

13   expect Defendants to produce with respect to "documents diagnosing" these ailments, but even if

14   the request was limited to test results for certain conditions, there is no single source for such

15   information.  (Soderlund Decl. ¶ 12.)  Defendants would have to engage in a manual review of all

16   Pelican Bay SHU inmates' unit health records to collect and isolate information responsive to this

17   document request.  (*Id.*)  Searching for and collecting documents in response to many of

18   Plaintiffs' requests would impose a massive burden on Defendants.  (*Id.*)

19   By filing a motion of this scope six weeks after the Court denied Defendants' motion to

20   dismiss, Plaintiffs demonstrate that they have failed to consider the burdens or expense of

21   proposed discovery, the needs of the case, and the importance of the issues at stake in this action,

22   as required by Rule 26.  Because Plaintiffs' 83 requests would impose a massive burden on

23   Defendants, Plaintiffs' motion should be denied.

24   **B.    Plaintiffs Present No Support for Discovery of Absent Class Members.**

25   Defendants have already produced to Plaintiffs a copy of all ten named plaintiffs' central

26   files and unit health records.  But Plaintiffs also seek discovery related to proposed class

27   members, all other inmates at Pelican Bay, and even all inmates within CDCR.  Plaintiffs simply

28   assert that they "are entitled to discovery for additional inmates even in the absence of a certified

11

1   class" without citing any legal support or conducting the balancing required by Rule 26.  (ECF
2   No. 207 p. 3.)

3       For example, Request No. 30 seeks documents relating to any inmate in California being
4   notified of a death in his family over a period of seven years.  (ECF No. 207-1 p. 10.)  This
5   request is not limited to Pelican Bay SHU inmates but seeks documents from the central files of
6   the 130,000 inmates in CDCR custody.  Plaintiffs cite paragraph 180 of their second Amended
7   Complaint to support this broad request and others.  (ECF No. 207 p. 5.)  But paragraph 180 of
8   the Second Amended Complaint does not talk at all about how inmates are notified of a death in
9   the family or explain why this is relevant.  Plaintiffs assert that this request relates to their
10  conditions of confinement claim (ECF No. 207 p. 5), but merely stating that a request "relates" to
11  claims is insufficient to overcome the privacy concerns implicated in records regarding inmate
12  family member deaths.

13      Instead of agreeing to narrow them through the meet-and-confer process, Plaintiffs state
14  repeatedly that redacting confidential information "should resolve any privacy concerns."  (ECF
15  No. 207 pp. 5, 7.)  But under Rule 26, Defendants should not be compelled to search for and
16  collect broad categories of irrelevant information from the files of thousands of inmates only to
17  then have to redact the majority of it.

18      Many of Plaintiffs' other requests seek discovery related to all Pelican Bay SHU inmates,
19  when Plaintiffs' proposed class and subclass consist of significantly smaller groups.  For
20  example, Request No. 27 seeks documents relating to cancellation of visiting privileges and
21  correspondence between SHU inmates and visitors over seven years.  (ECF No. 207-1 p. 8.)
22  Plaintiffs justify this request by asserting that it relates to factual allegations in the complaint.
23  (ECF No. 207 p. 5.)  This is insufficient to outweigh the privacy concerns of producing
24  documents showing inmates' names, visitors, and correspondents for inmates who are not even
25  class members.  Defendants have produced all of the named plaintiff's central files, which include
26  documents reflecting cancellation of visiting privileges or correspondence, to the extent they
27  exist.  Plaintiffs have not demonstrated that the need for the information for other inmates.

28

12

It is true that prior to class certification, plaintiffs may need to conduct discovery from defendants if plaintiffs meet the burden of showing that discovery is "likely to produce substantiation of the class allegations." *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir. 1985). But here Plaintiffs have already moved for class certification and did not need this discovery. Courts must impose reasonable limitations as to scope in order to accommodate the privacy concerns of absent putative class members. *Davis v. Leal,* 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999). Because Plaintiffs provide no legal basis for ignoring the privacy concerns of absent class members and non-class members, their requests for discovery regarding these individuals should be denied.

### C. Plaintiffs Provide No Reason for Compelling Production of Budget Documents.

Plaintiffs give no reason why Defendants should be compelled to produce budget documents. (Request No. 31, ECF No. 207-1 p. 10.) Plaintiffs argue that "[a] primary cause of the conditions in the SHU is the amount spent on the facility" and therefore that they should be entitled to "all budget requests" for the Pelican Bay SHU for seven years. (ECF No. 207 p. 5.) But Plaintiffs' claim in the motion that the amount spent on the SHU is a "primary cause" of allegedly unconstitutional conditions is inconsistent with their allegation in the Second Amended Complaint that it costs "tens of thousands of dollars more per prisoner" to house inmates in the Pelican Bay SHU than in the general population. (ECF No. 136 ¶ 38.) Plaintiffs' proffered reason for needing budget requests conflicts with Plaintiffs' own allegations.

### D. Plaintiffs Provide No Reason for Compelling Discovery Related to Administrative Segregation.

Plaintiffs complain that Defendants refuse to produce documents relating to CDCR's administrative segregation units, but Plaintiffs conceal the breadth of these requests. Plaintiffs' requests include all documents describing the rules governing all administrative segregation units in California for thirteen years (Request No. 71), the privileges in all administrative segregation units for thirteen years (Request No. 72), physical characteristics of all administrative segregation units (Request No. 75), and the average length of time inmates spend in all administrative

13

1    segregation units (Request No. 76).  (ECF No. 207-1 pp. 29-32.)  These requests are irrelevant

2    and incredibly broad.  Plaintiffs' claims are based on SHU confinement at Pelican Bay, yet six of

3    Plaintiffs' requests seek broad swaths of documents related to administrative segregation units

4    statewide.  Plaintiffs claim that the documents are relevant because Plaintiffs have a liberty

5    interest in avoiding SHU confinement.  The Supreme Court in *Sandin v. Conner* held that whether

6    inmates have a liberty interest in avoiding confinement that imposes an "atypical and significant

7    hardship on the inmate in relation to the ordinary incidents of prison life[,]" but Plaintiffs'

8    requests are not aimed at the "ordinary incidents of prison life."  515 U.S. 472, 484 (1995).

9    Instead, these requests cover administrative segregation.  Plaintiffs cite *Serrano v. Francis,* 345

10   F.3d 1071, 1077-78 (9th Cir. 2003), and argue that administrative segregation conditions are

11   relevant for determining whether a liberty interest exists.  But the *Serrano* Court was evaluating

12   whether a disabled inmate held in a cell meant for non-disabled inmates had a liberty interest and

13   specifically held that that "administrative segregation in and of itself does not implicate a

14   protected liberty interest."  *Serrano,* 345 F.3d at 1078 (citation omitted).   The *Serrano* Court also

15   held that if a condition of confinement "mirrored those conditions imposed upon inmates in

16   administrative segregation and protective custody," it would "thus comport[ ] with the prison's

17   discretionary authority" and would not support finding a liberty interest.  *Id.*  Under *Serrano,*

18   then, comparisons with administrative segregation would cut against the finding of a liberty

19   interest.  *Id.*  Plaintiffs have not shown why documents regarding administrative segregation units

20   at all California prisons are relevant or should be compelled here.

21            **E.    Plaintiffs Provide No Support for Seeking Publicly-Available and Third**
                      **Party Documents From Defendants.**
22

23            Plaintiffs also seek documents from Defendants that are equally available to Plaintiffs.

24   Plaintiffs admit to seeking reports by "agencies both within and ***outside of*** CDCR."  (ECF No.

25   207 p. 8 (emphasis added).)  Plaintiffs also seek an overbroad category of documents within the

26   control of the Receiver's Office, including "[t]he C.V.s for all health and mental-health personnel

27   who treated inmates at [Pelican Bay] SHU" for thirteen years.  (Request No. 66, ECF No. 207-1

28   p. 24.)  Similarly, Request No. 64 seeks all audits and reviews of security, mental health, or

                                                    14

1   medical care at Pelican Bay SHU performed by, or at the direction of the General Accounting

2   Office, the American Correctional Association, or any mental-health or medical-related agency or

3   licensing bureau.  (*Id.* at 22.)  These requests improperly seek documents from Defendants that

4   are in the control of third parties.

5        Plaintiffs claim that Defendants have failed to provide documents related to the

6   "medications available to" SHU inmates (ECF No. 207 p. 6 (citing Request Nos. 60-61)), but the

7   actual requests are not simply for available medications.  Plaintiffs seek "all documents relating to

8   . . . which psychotropic medications were actually prescribed to [Pelican Bay] SHU inmates" for

9   thirteen years (Request No. 60), and a list of "all prescribed psychotropic medications for

10  prisoners . . . for each month during the past five years, and the formulary for the pharmacy"

11  (Request No. 61).  (ECF No. 207-1 pp. 21-22.)  A request for all documents relating to drugs

12  prescribed over a thirteen year period is overbroad and unduly burdensome.  Furthermore, the

13  formulary of all medications prescribed within CDCR is publicly available on the web at

14  http://cphcs.ca.gov.

15       Request No. 53 seeks all documents relating to any mental health report, studies, or

16  statistics for the delivery of mental-health services to Pelican Bay inmates between 2006 and

17  2012.  (ECF No. 207-1 p. 19.)  Plaintiffs claim that "collecting these documents should involve

18  no substantial burden because Plaintiffs seek documents that Defendants produced or requested

19  [sic]."  (ECF No. 207 p. 7.)  This sentence does not make sense.  If Defendants have already

20  produced these documents, they cannot be compelled.

21       Defendants should not be compelled to produce publicly-available documents or documents

22  in the control of third parties in response to overbroad and massively burdensome requests.

23  **III.  PRODUCING CONFIDENTIAL DOCUMENTS REGARDING GANG INVESTIGATIONS AND
        DEBRIEFERS WOULD ENDANGER INSTITUTIONAL SECURITY AND PUBLIC SAFETY.**

24

25       Plaintiffs have also requested information that CDCR will not disclose because it endangers

26  inmate and public safety and security.  Under Cal. Code Regs., tit. 15, § 3321, confidential

27  information is defined as "[i]nformation which, if known to the inmate, would endanger the

28  safety of any person."  In recognition that gang validation regularly involves information that can

                                                    15

1    endanger the lives of individuals inside and outside of prison, the parties entered into a Stipulated

2    Protective Order that permits a party to withhold information, if the party "believes in good faith

3    that there are documents [whose disclosure under the Protective Order] would endanger the safety

4    and security of an institution or person."  (ECF No. 182 ¶ 5.2.)  The Protective Order signed by

5    the parties and approved by the Court envisions CDCR withholding exactly this kind of

6    information:  confidential information used to validate the named plaintiffs, information on gangs

7    provided by debriefers and the debriefers' identities, and gang validation training materials.  (*Id.*)

8        Plaintiffs now claim in their motion to compel that Defendants have "no basis" to withhold

9    documents "relating to the gang-validation process, periodic reviews, and debriefing."  (ECF No.

10   207 p. 6.)  But the information specifically sought in these requests, such as the identities of

11   debriefers (Interrogatory No. 4), documents regarding the adjudication of gang validation source

12   items (Request No. 3), training materials related to identifying gang affiliates and gang source

13   items (Request Nos. 39, 40, 43), and training materials regarding debriefing for thirteen years

14   (Request No. 41) contain confidential information that cannot be disclosed.  (*See* ECF No. 207-1

15   pp. 3, 12-16, 35; Decl. of J. Prelip Supp'g Opp. Mot. Compel ("Prelip Decl.") ¶¶ 3, 11, 14-16.)

16       Defendants have produced all of the nonconfidential validation materials and documents

17   reflecting reviews in the ten named Plaintiffs' central files.  Under title 15, what information can

18   be shared with inmates is disclosed via a Confidential Information Disclosure Form (Form 1030).

19   (Prelip Decl. ¶ 15.)  When confidential information is used in validating an inmate, the inmate is

20   provided with a Form 1030, which details the use of the confidential information, the reliability of

21   the source, and a description of any information that is not confidential.  (*Id.*)  These forms are

22   not a mere formality; many give specific information.  (*Id.*)  For example, Plaintiff Todd Ashker

23   in this case filed a Form 1030 with the Court regarding stopped mail.  (ECF No. 157-2 p. 21.)  It

24   listed the date on which a letter was received, the identity of the letter's sender, the need for

25   confidentiality, and the content of the letter to the extent consistent with protecting institutional

26   and public safety and security.  (*Id.*)  All of the 1030s used in Plaintiffs' validations and reviews

27   are part of the central files of the ten named Plaintiffs, which Defendants have already produced.

28

Further, the challenged procedures for validating inmates as gang members and associates and for reviews of validation and housing placement are all set forth in title 15 of the California Code of Regulations.  Validation and review of validation decisions under CDCR's new Security Threat Group pilot program are contained in the October 12, 2012 Memorandum, filed with the Court and produced to Plaintiffs in this case.  Defendants have produced a number of nonconfidential documents regarding review under the Security Threat Group Pilot Program.  Given the availability of these documents, Plaintiffs have not shown good cause to compel Defendants to produce confidential information that would endanger the lives of individuals.

### A.   Defendants Cannot Release Confidential Information About the Named Plaintiffs or Other Present or Former Gang Members Without Putting Lives at Risk.

Plaintiffs seek confidential gang-related information used in investigating, validating, and revalidating the named plaintiffs, as well as confidential information related to inmates who have debriefed from gangs.  But disclosing this information would endanger the lives of inmates and their families.  (Prelip Decl. ¶¶ 3-15.)  For example, Interrogatory No. 4 seeks the identity of all Pelican Bay SHU inmates who either requested to debrief or debriefed from 2006 to 2012.  (ECF No. 207-1 p. 35.)  Providing this information would endanger the lives of those individuals and their families.  (Prelip Decl. ¶¶ 3-9.)

Inmates who debrief provide information that is ultimately captured in comprehensive debrief reports that often span hundreds of pages and implicate dozens of inmates in gang activity.  (*Id.* at ¶ 14.)  These reports are not limited to information provided by the debriefer, because they also include corroborating information from other inmates and other incidents.  (*Id.*)  Thus, releasing a debriefing report not only endangers the debriefer and those he has implicated, but also other inmates who may have provided corroborating information.  (*Id.*)

Because Plaintiffs have not shown a need for information that would endanger the lives of individuals, and because Plaintiffs already have access to the nonconfidential documents contained in their central files and procedures set forth in title 15 and the Department Operations Manual, Defendants should not be compelled to provide confidential information regarding gangs and debriefers.

**B.  Defendants Cannot Release Investigative Training Materials Without Endangering Lives and Compromising Investigations.**

Plaintiffs seek documents related to the practices of investigating and validating gang affiliates and the training materials used by the Office of Correctional Safety in training institutional gang investigators.  (Request Nos. 39-41 and 43-45, ECF No. 207-1 pp. 12-14, 16-17.)  Defendants object to these requests, because disclosure of these documents would endanger institutional and inmate security and public safety and would compromise CDCR's ability to control gang violence.  (Prelip Decl. ¶¶ 16-19.)  Documents used in gang training sessions are often deemed confidential, because they reference confidential information, such as names of informants and debriefing inmates, excerpts of interviews with them, and pictures of inmate art work and tattoos.  (*Id.* at ¶ 16.)

Disclosure of materials regarding CDCR's efforts to combat prison gangs would also compromise ongoing gang investigations.  If gang affiliates learn intelligence gathered by OCS, such intelligence becomes useless.  (*Id.* at ¶ 17.)  Disclosure of gang intelligence information causes prison gang members to develop new means of communication and operations to better avoid detection, frustrating CDCR's efforts to combat dangerous gang activity and control gang violence.  (*Id.* at ¶ 18.)  For example, inmate visits at the Pelican Bay SHU are audio recorded and videotaped.  (*Id.* at ¶ 19.)  To avoid having their communications monitored, gang members and associates have adapted to use hand signals, communicate by holding contraband notes up to the glass and then eating the notes, having visitors write notes on their hands or on paper, and by speaking in foreign languages that are not their native language but that they have learned in prison for this purpose.  (*Id.*)

Because Plaintiffs have not shown a need for gang training information that would endanger the lives of inmates and the public, Plaintiffs' requests for this confidential information should be denied.

**C.  A Protective Order Will Not Ensure Confidentiality.**

Disclosing confidential information subject to a protective order in cases where inmates are represented by counsel is inadequate to protect against the disclosure of information.  (*Id.* at ¶

18

21.)  The risk to individuals' lives from disclosing confidential information is real and serious, even where a protective order is in place.  (*Id.*)  First, because inmates have demonstrated a prior history of breaking the law and are still imprisoned, the threat of contempt is unlikely to deter an inmate from disseminating confidential information to other inmates.  (*Id.*)  Further, a protective order does not sufficiently protect against disclosure to inmates, whether through inadvertence or otherwise.  (*Id.*)  There are many instances where protective orders issued by Courts have been insufficient to stop confidential documents from reaching inmates.  (*Id.*)

Plaintiffs have not shown good cause to compel Defendants to produce confidential information that would threaten the lives of individuals, such as confidential documents used in validation inmates, names of debriefers, and investigative training materials.  Plaintiffs' motion to compel should be denied with respect to information that would endanger the lives of individuals.

## CONCLUSION

Plaintiffs' motion to compel is procedurally premature and substantively misleading and unmanageable.  It takes no account of the litigation's posture or the fact that Defendants have produced more than 76,000 pages of documents in a regular and ongoing document production. For these reasons, Plaintiffs' motion to compel should be denied.

Dated:  May 24, 2013

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General
ADRIANO HRVATIN
Deputy Attorney General


*/s/ Jillian R. O'Brien*
JILLIAN R. O'BRIEN
Deputy Attorney General
*Attorneys for Defendants*

SF2012204868
20696581.doc

19