1   KAMALA D. HARRIS
    Attorney General of California
2   WILLIAM C. KWONG
    Supervising Deputy Attorney General
3   ADRIANO HRVATIN
    Deputy Attorney General
4   JILLIAN R. O'BRIEN
    Deputy Attorney General
5   State Bar No. 251311
      455 Golden Gate Avenue, Suite 11000
6   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5797
7   Fax:  (415) 703-5843
    E-mail:  Jill.OBrien@doj.ca.gov
8   *Attorneys for Defendants*

9

                IN THE UNITED STATES DISTRICT COURT

10

              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

                          OAKLAND DIVISION

12

13

14   **TODD ASHKER, et al.,**                  C 09-05796 CW

15                              Plaintiffs,    **DECLARATION OF A. HRVATIN IN
                                               SUPPORT OF OPPOSITION TO
16          v.                                 PLAINTIFFS' MOTION TO COMPEL**

17
     **GOVERNOR OF THE STATE OF**
18   **CALIFORNIA, et al.,**                    Judge:        Hon. Nandor Vadas
                                               Hearing Date: June 18, 2013
                                               Time:         10:00 a.m.
19                              Defendants.    Location:     Courtroom 205 A

20

21

22       I, A. Hrvatin, declare:

23       1.    I am an attorney admitted to practice before the courts of the State of California and

24   this Court.  I am employed by the Office of the Attorney General for the State of California as a

25   Deputy Attorney General and have been assigned to represent Defendants in this matter.  I am

26   competent to testify to the matters set forth in this declaration and, if called on by the Court,

27   would do so.  I submit this declaration in support of Defendants' opposition to Plaintiffs' motion

28   to compel.

                                        1

1    2.    On October 31, 2012, Plaintiffs served a first request for the production of documents

2  consisting of 76 document requests on all Defendants, to which Defendants Brown, Cate, and

3  Lewis timely served their responses and objections on December 3, 2012.  Defendant Chaus was

4  under no obligation to respond to Plaintiffs' document requests, as he had not yet been served

5  with process and made a party to the case.

6    3.    Also on October 31, 2012, Plaintiffs served on Defendants 38 "common"

7  interrogatories, requesting "responses from each Defendant separately, fully, [and] in writing."

8  On December 3, 2012, Defendants Brown, Cate, and Lewis each timely served his responses and

9  objections to Plaintiffs' "common" interrogatories.  Defendant Chaus was under no obligation to

10  respond to Plaintiffs' interrogatories, as he had not yet been served with process and made a party

11  to the case.

12    4.    On December 19, 2012, I conferred by telephone with Charles Carbone and Evan

13  Greenberg, counsel for Plaintiffs, regarding several issues related to Defendants' responses and

14  objections to Plaintiffs' document requests and interrogatories.  For example, Defendants agreed

15  to draft a proposed stipulated protective order for Plaintiffs' consideration, upon approval and

16  entry of which Defendants agreed to begin the production of documents, such as the ten named

17  Plaintiffs' central files, on a rolling basis.  Moreover, with respect to a subset of document

18  requests as to which Defendants had asserted solely objections, Plaintiffs agreed to prioritize

19  those requests and otherwise articulate Plaintiffs' position as to why they were nonetheless

20  entitled to the discovery.  Plaintiffs agreed to take a similar approach with respect to their

21  interrogatories, and address particularly Defendants' threshold objection that Plaintiffs had

22  exceeded the number of interrogatories permitted by the Federal Rules by "jointly" propounding

23  38 "common interrogatories" on each Defendant.

24    5.    On December 20, 2012, I received a letter from Mr. Carbone, a true and correct copy

25  of which is attached as Exhibit A, purporting to "memorialize[]" and "clarif[y]" "some of our

26  discussion" on December 19.

27    6.    On January 4, 2013, I sent to Mr. Carbone and Mr. Greenberg a proposed stipulated

28  protective order for Plaintiffs' consideration.

1       7.     On January 16, 2013, I sent a letter, a true and correct copy of which is attached as

2   Exhibit B, to Mr. Carbone and Mr. Greenberg further to our meet-and-confer discussion on

3   December 19, and in response to Mr. Carbone's letter dated December 20. Of note, I asked

4   counsel for a status regarding the proposed stipulated protective order, as well as when Plaintiffs

5   expected, as promised, to provide a written response to Defendants' pending discovery responses

6   and objections.

7       8.     On January 23, 2013, I received a facsimile from Mr. Greenberg attaching Mr.

8   Carbone's signature to the parties' proposed stipulated protective order. Also attached to Mr.

9   Greenberg's facsimile was a letter from Mr. Carbone in which Plaintiffs purproted to prioritize

10   forty of their document requests into three categories and attempted to explain why Defendants'

11   objections thereto were without merit. Attached as Exhibit C is a true and correct copy of the

12   facsimile I received from Mr. Greenberg on January 23, 2013.

13       9.     On January 28, 2013, I received a facsimile from Mr. Greenberg, attaching a letter of

14   the same date from Mr. Carbone in which Mr. Carbone attempted to explain why Defendants'

15   objections to Plaintiffs' interrogatories were without merit. A true and correct copy of Mr.

16   Carbone's letter is attached as Exhibit D.

17       10.    On February 11, 2013, I conferred by telephone with Mr. Carbone and Mr. Greenberg

18   regarding various pending discovery matters. Of note, to resolve Defendants' threshold objection

19   that Plaintiffs had exceeded the 25-interrogatory limit by "jointly" propounding 38 interrogatories

20   on each Defendant, Defendants proposed that Plaintiffs allocate the 38 interrogatories between

21   two Plaintiffs and specify as to which Defendant they wished to direct the interrogatories.

22       11.    On February 14, 2013, I received a letter from Mr. Greenberg, a true and correct copy

23   of which is attached as Exhibit E, in which he confirmed that Plaintiffs would assign

24   interrogatories numbered "1 through 20 to plaintiff Ruiz" and interrogatories numbered "21-38 . .

25   . to plaintiff Ashker," with both sets directed to Defendant Brown. Plaintiffs further agreed that

26   the other Defendants' responses and objections to Plaintiffs' interrogatories could be deemed

27   withdrawn. The parties discussed this agreement in correspondence dated February 22, 2013 and

28

3

Hrvatin Decl. ISO Opp. Mot. Compel (C 09-05796 CW)

1   March 8, 2013, true and correct copies of which are attached as Exhibits F and G, respectively,

2   and Defendant Brown agreed to supplement his interrogatory responses.

3       12.   On March 8, 2013, my co-counsel, Deputy Attorney General Jillian O'Brien, sent a

4   letter, a true and correct copy of which is attached as Exhibit H, to Mr. Carbone and Mr.

5   Greenberg. Ms. O'Brien's letter addressed the eighteen document requests Plaintiffs indicated

6   fell into a level of "first priority." Defendants agreed to supplement their responses to seven of

7   those first-priority requests, and to revisit their responses to two additional document requests

8   implicated by Defendants' motion to dismiss Plaintiffs' second amended complaint, which was

9   set to be heard on March 14, 2013. Ms. O'Brien further confirmed that Defendants would

10   continue to produce documents on a rolling basis, as well as continue to meet and confer with

11   Plaintiffs regarding Defendants' responses and objections to Plaintiffs' document requests.

12       13.   On March 14, 2013, the parties appeared before Judge Wilken for a hearing on

13   Defendants' motion to dismiss and a case management conference. Judge Wilken indicated that

14   she would deny Defendants' motion, which she did with a written order issued April 9, 2013.

15       14.   On March 20, 2013, I received a telephone call from Mr. Carbone during which he

16   acknowledged receipt of Defendants' March 8 discovery letter and indicated that Plaintiffs would

17   be filing a motion to compel the production of documents. Since that date, the parties have not

18   engaged in any further meet-and-confer discussions regarding Plaintiffs' first request for the

19   production of documents.

20       15.   On February 12, 2013, upon entry of the parties' stipulated protective order,

21   Defendants made an initial production of documents, which has been followed by further

22   document productions on a rolling basis on March 11, 15, 22, and 28, 2013, April 4, 11, and 16,

23   2013, and May 8 and 22, 2013. To date, Defendants have produced over 76,000 pages of

24   documents in this matter. Defendants have produced a variety of documents, including as

25   follows: (1) the non-confidential portions of the central files of all ten named Plaintiffs; (2) the

26   unit health record (medical file) of all ten named Plaintiffs; (3) voluminous Pelican Bay policies

27   related to conditions, policies, and the provision of mental health care in the Pelican Bay SHU;

28   (4) Pelican Bay SHU temperature logs; (5) Pelican Bay SHU documents recording temperatures

4

1  and contents of meals and comments by inmates and staff about all meals served in the SHU; and

2  (6) documents regarding the development and implementation of CDCR's STG pilot program.

3  As part of its ongoing fact investigation and discovery obligations, Defendants continue to

4  collect, process, and produce documents responsive to Plaintiffs' first request for the production

5  of documents.

6        16.    On May 22, 2013, I received a facsimile from Mr. Carbone, a true and correct copy of

7  which is attached as Exhibit I, in which he stated, in response to document requests propounded

8  on February 14, 2013 by Defendants on Plaintiffs, individually and collectively, that Plaintiffs

9  "expect that the[ir] rolling production [of documents] will begin in about 1 1/2 weeks."

10       I declare under penalty of perjury that the foregoing is true and correct to the best of my

11 knowledge and that this declaration was executed on May 24, 2013, in San Francisco,

12 California.

13                                    _____

14                                    Adriano Hrvatin
                                      Deputy Attorney General

15

16 SF2012204868
   20696386.doc

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

**Prisoner Rights Attorney**
*"Justice for the Incarcerated"*

**Charles F.A. Carbone, Esq.**
Attorney

# FAX COVER SHEET

**DATE:** December 20, 2012

**TO:** Adriano Hrvatin, Deputy AG

**FAX:** 415-703-5843

**FROM:** Evan Greenberg, Law Office of Charles Carbone

**RE:** Discovery meet and confer

**NO. OF PAGES (incl. cover sheet):** 3

PO Box 2809
San Francisco, CA 94126-2809
Phone: 415-981-9773 or 415-531-1980
Fax: 415-981-9774

E-mail: charles@charlescarbone.com
Website: www.charlescarbone.com or www.prisonerattornev.com

**Prisoner Rights Attorney**
*"Justice for the Incarcerated"*

Charles F.A. Carbone, Esq.
Attorney

<u>Sent via fax:</u>
415.703.5843

December 20, 2012

Adriano Hrvatin
Deputy Attorney General

     Re:    **Discovery meet and confer.**

Dear Adriano,

     Thank you for spending time yesterday on our meet and confer. This letter memorializes some of our discussion, and clarifies.

     First, I want to address your comment yesterday about my earlier statement that we would propound "limited" discovery. Our discovery is not limited. But I proposed "limited" discovery in a narrow discussion about your plan to file a motion to dismiss. I said that if you were to file a motion to dismiss, we would need "limited" discovery, meaning discovery limited to the issues in the motion to dismiss. But plaintiffs and defendants did not reach an agreed schedule for your motion to dismiss or the rest of the case (hence the briefing before Judge Wilken), so there was no need for plaintiffs to limit discovery to issues in that motion. Although you are correct that I stated an intent to offer "limited discovery," that was during negotiations to reach a scheduling agreement. Proposals during negotiations usually do not apply when negotiations fail, particularly when you opposed any discovery, and plaintiffs had to seek Judge Wilken's leave.

     Regarding our discussion yesterday, let me memorialize some of our agreements. You offered to send my office a draft of a protective order by the end of this week, or if that does not happen, you said you will give me an update on when you will send it.

     Also, as we discussed yesterday, once a protective order is in place, defendants will begin producing documents responsive to the plaintiffs' discovery requests. (Requests number 2, 4, 48, 67, 68, and 69 for named plaintiffs only, and requests 8, 9, 12, 13, 15, 16, 24, 25, 32, 35, 38, 55, 56, 58, 59, 62, and 63 going back to January 1, 2009, with the understanding that plaintiffs may later seek

PO Box 2809
San Francisco, CA 94126-2809
Phone: 415-981-9773 or 415-531-1980
Fax: 415-981-9774

E-mail: charles@charlescarbone.com
Website: www.charlescarbone.com or www.prisonerattorney.com

Adriano Hrvatin
December 20, 2012

Page 2

documents from a longer period of time). Regarding our plaintiff's medical and mental-health files, we agreed on a 6-year window, meaning you would produce documents spanning the past 6 years. Once produced and reviewed, plaintiffs will decide whether six years is adequate.

Defendants agreed to answer some interrogatories regarding named plaintiffs only once the protective order is in place. (Interrogatories 1, 2, 6, 7, 8, 9, and 12.)

Yesterday, we agreed on a "to do list" including the following:

- You would provide us with a "table of contents" of plaintiffs' central files so that we can focus our requests to specific categories;

- For the large number of document requests for which you do not intend to produce anything, plaintiffs will offer a written response to your objections, and will prioritize our requests.

- Regarding interrogatories that defendants intend not to answer, plaintiffs will put our responses to defendants' objections in writing, and will prioritize the interrogatories.

- Finally, plaintiffs will also put in writing our position regarding the number of interrogatories per plaintiff and per defendant.

I intend to get your plaintiffs' written response within 7 to 10 days. Feel free to contact me with any questions or concerns.

Respectfully,

Charles Carbone, Esq.

# Exhibit B



**KAMALA D. HARRIS**
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public:    (415) 703-5500
Telephone: (415) 703-1672
Facsimile: (415) 703-5843
E-Mail: Adriano.Hrvatin@doj.ca.gov

January 16, 2013

*Via Email & U.S. Mail*

Charles Carbone, Esq.
Evan Greenberg, Esq.
LAW OFFICE OF CHARLES CARBONE
P.O. Box 2809
San Francisco, CA 94126

RE:   *Ruiz, et al. v. Brown, et al.*
      U.S. District Court, Northern District of California, Case No. C 09-05796 CW

Dear Counsel:

This follows our conference call on December 19, 2012, during which the parties engaged in initial meet-and-confer negotiations regarding a host of issues related to defendants' responses and objections to plaintiffs' interrogatories and request for the production of documents. Specifically, we write to address components of plaintiffs' letter dated December 20, which you sent to "memorialize[] some of our discussion" on December 19.

*First*, with respect to the discovery that defendants responded to extensively and exclusively with objections, you indicated that plaintiffs would respond to defendants' objections in writing and thereafter prioritize the discovery to, among other things, attempt to alleviate the significant burden imposed by plaintiffs' seventy-six document requests and thirty-eight interrogatories. Although you indicated that plaintiffs would provide this written response within seven to ten days, we have not received it. Please let us know when we can expect to receive plaintiffs' written response, so that defendants may coordinate and organize their resources accordingly in light of competing litigation deadlines and tasks.

*Second*, on January 4, 2013, defendants circulated a proposed stipulated protective order for plaintiffs' consideration. Kindly advise of any revisions to the proposal, or alternatively, whether we have your authority to file the stipulated protective order for the Court's approval and entry. As mentioned, once a protective order is in place, defendants are prepared to respond to certain interrogatories and, on a rolling basis, produce documents responsive to a variety of plaintiffs' document requests.

*Third*, due to the volume of the named plaintiffs' central files, defendants agreed to send you an index identifying the contents of an inmate's central-file, so that you could identify and prioritize with greater specificity which records you would like produced from your clients'

Charles Carbone, Esq.
Evan Greenberg, Esq.
January 16, 2013
Page 2

central files. In this connection, enclosed please find a copy of Form CDC 261 (Order of Filing). Defendants, in the interim, are in the process of contracting with an outside vendor to copy the ten named plaintiffs' central files, which exist in hard-copy rather than electronic format.

*Fourth,* for the majority of the time period at issue here, the named plaintiffs' unit health records exist in hard-copy format. As such, defendants intend to utilize the services of the outside vendor retained to copy your clients' central files to thereafter copy your clients' unit health records.

*Finally,* plaintiffs' December 20 letter does not accurately reflect our understanding of the parties' agreement with respect to the period of time for which defendants would search for, collect, and produce responsive documents. Upon an entry of an appropriate protective order, defendants agreed, for example, to produce certain responsive documents (such as SHU temperature logs) for the last three years — that is, the three calendar years from January 1, 2010 to the present. Your December 20 letter, however, states that defendants will produce documents "going back to January 1, 2009," which spans a four-year period. Defendants remain willing, as stated on December 19, to initially produce certain documents that cover a three-year period from January 1, 2010 to present. Moreover, upon receipt of the proper authorizations, defendants agree to produce certain medical and mental health records for the named plaintiffs for the last six years — so, from January 1, 2007 to the present. This is without prejudice to plaintiffs' right, upon sufficient showing, to request documents beyond these times periods. Please clarify whether plaintiffs agree to proceed in the first instance with the stated three-year and six-year time periods.

Thank you for your time and attention.

Sincerely,

ADRIANO HRVATIN
Deputy Attorney General

For    KAMALA D. HARRIS
Attorney General

Enclosure

SF2012204868
20663830.docx

# Exhibit C

***Law Office of Charles Carbone***
*"Justice for the Incarcerated"*

***Evan C. Greenberg, Esq.***
*Attorney*

# FAX COVER SHEET

**DATE:** January 23, 2013

**TO:** Adriano Hrvatin, Deputy Attorney General

**FAX:** 415-703-5743

**FROM:** Evan Greenberg
Attorney with the Law Office of Charles Carbone

**RE:** Meet and Confer re Pelican Bay SHU case; and protective order.

**NO. OF PAGES (incl. cover sheet):** 9

PO Box 2809
San Francisco, CA 94126-2809
Phone: 415-981-9773 or 310-980-3826
Fax: 415-981-9774

E-mail: evan@charlescarbone.com
Website: www.charlescarbone.com or www.prisonerattorney.com

Jan 23 13 07:03p     Richard S Kolomejec, Atty (415)433-7207          p.2

**Law Office of Charles Carbone**
"Justice for the Incarcerated"

**Evan C. Greenberg, Esq.**
Attorney


Sent via fax:
415.703.5843

January 23, 2013

Adriano Hrvatin
Deputy Attorney General

     Re:   Discovery meet and confer; and protective order.

Dear Adriano,

    Along with this letter, I faxed you the signature page of the protective order, signed by Charles Carbone. The protective order may be filed. Assuming that you will file it, please do so as soon as practicable. Further, once the order is filed, please begin producing discovery as we have discussed.

    This fax also includes Plaintiffs' written response to your objections to the requests for production of documents. Plaintiffs will offer a similar written response to your interrogatory objections soon.

    Charles or I will get in touch with you later today about setting dates to continue our meet and confer. Feel free to contact me with any questions or concerns.

Respectfully,

Evan Greenberg, Esq.


PO Box 2809
Law Office of Charles Carbone
San Francisco, CA 94126-2809
Phone: 415-981-9773 or 310-980-3826 (cell)
Fax: 415-981-9774

E-mail: evan@charlescarbone.com
Website: www.charlescarbone.com or www.prisonerattorney.com

1   Order as set forth in Section 4 (DURATION).

2        IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD:

3   DATED: January ___, 2013

4                                        _____
                                         Charles Carbone
5                                        *Counsel for Plaintiffs*

6

7   DATED: January ___, 2013

8                                        _____
                                         Adriano Hrvatin
                                         *Counsel for Defendants*

9

10       PURSUANT TO STIPULATION, IT IS SO ORDERED:

11

12  DATED: January ___, 2013

13                                       _____
                                         The Honorable Claudia Wilken
                                         United States District Court Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            14

Jan 23 13 07:04p     Richard S Kolomejec, Atty (415)433-7207          p.4

**Prisoner Rights Attorney**
*"Justice for the Incarcerated"*

**Charles F.A. Carbone, Esq.**
*Attorney*

Sent via fax:
415.703.5843

January 23, 2013

Adriano Hrvatin
Deputy Attorney General

Re:     Plaintiffs' written responses to discovery objections—further meet and confer.

Dear Adriano,

As we discussed on December 19, here are plaintiffs' written responses to your discovery objections for Document Requests 1, 3, 6, 7, 10, 11, 14, 17, 18, 20, 26, 27, 28, 29, 30, 33, 34, 36, 39, 40, 41, 42, 43, 44, 46, 53, 54, 57, 60, 61, 64, 65, 66, 70, 71, 72, 73, 74, 75, and 76.

I prioritized them into three groups. First, those that are the highest priority, meaning we would be most likely to move to compel their production and that we prefer to receive before any requests in the other two groups. Document requests numbers 3, 17, 18, 20, 39, 40, 41, 42, 43, 44, 46, 53, 54, 57, 64, 65, 70, and 76 are the highest priority.

The second group is secondary priority, meaning that we are willing to move to compel their production, but we are willing to wait for their production until after defendants produce documents in the highest priority group. Requests numbers 10, 11, 27, 29, 30, 36, 60, 61, 66, 71, 72, 73, 74, and 75 are secondary priority.

The third group is last priority, and these requests we are willing to defer to a future round of meet and confer. We will not move to compel production of these requests without further discussions with you, and for the time being plaintiffs will pause these requests. Requests numbers 1, 6, 7, 14, 26, 28, 33, 34 are last priority. I have not included written responses to these last-priority requests in this letter.

Preliminarily, let me respond to the vague-and-ambiguous objection that you raised in response to each document request. The words you objected to are in standard use by the CDCR, or are defined

PO Box 2809
San Francisco, CA 94126-2809
Phone:  415-981-9773 or 415-531-1980
Fax:  415-981-9774

E-mail:  charles@charlescarbone.com
Website:  www.charlescarbone.com or www.prisonerattorney.com

Jan 23 13 07:04p      Richard S Kolomejec, Atty (415)433-7207      p.5

Adriano Hrvatin
January 23, 2013

Page 2

and used in Title 15 of the California Code of Regulations. In general, they have their standard meaning.

Defendants also raised objections to the length of time plaintiffs' requests spanned. The complaint alleges that long-term SHU confinement violates the 8th and 14th Amendments, and defines the class as inmates who have spent more than 10 years in the SHU, so naturally our requests would span a significant length of time. In many instances, the document requests span periods of fewer than 10 years.

Defendants raised unduly-burdensome objections to nearly every single document request as well. Presumably many of these documents are located in a single file or database, and for those requests defendants need not conduct multiple searches, but merely must produce several documents from a single search.

Regarding every objection that plaintiffs' requests are not limited to the named plaintiffs (for instance in your objection to request 3), the complaint raises class allegations on page 34, and these requests are relevant to class certification.

Regarding defendants' many objections on the ground that section 3370 of Title 15 prevents producing these documents, defendants may produce these documents in accord with the protective order (once it is in place) for attorneys'-eyes only.

Plaintiffs believe that all of defendants' privacy-rights objections can be cured by producing documents with private information redacted.

Now I will respond to each document request:

All first-priority requests:

3. These documents are directly relevant to plaintiffs' meaningless-review claim raised in paragraph 201 of the complaint. If the ICC and UCC decisionmakers never reject source items, or have no power to reject source items, then these hearings are substantively meaningless.

17. Documents relating to plaintiffs' contact visits are relevant to factual allegations throughout the complaint (including among others, ¶¶ 48, 50, 51, 53, 54, 56), and the 8th Amendment claim raised in, among others, ¶ 180 (deprivation of "normal human contact"). Regarding defendants' privacy-rights objection, plaintiffs limited this request to the named plaintiffs, so the request does not implicate privacy rights of other inmates.

18. Documents relating to plaintiffs' making social phone calls are directly relevant to the 8th Amendment claim in the complaint and to factual allegations throughout the complaint (including among others ¶¶ 44, 45, 46, 52, and 53). Regarding defendants' privacy-rights objection, plaintiffs limited this request to the named plaintiffs, so the request does not implicate privacy rights of other inmates.

Adriano Hrvatin
January 23, 2013

Page 3

20. Documents relating to the SHU's original conception and purpose directly relate to the factual allegation raised in ¶¶ 30, 31, 32, and 33 of the complaint.

39. Documents relating to training materials or guidelines provided to IGI are relevant because the procedures by which inmates are validated and revalidated form the crux of the Due Process cause of action (for instance, ¶¶ 200, 201, 202). Further, these documents are directly relevant to the factual allegations in, among others, ¶¶ 91, 92, 94, 101, 102, 103, 116, 118, 120, and 122. Regarding defendants' objection based on section 3370 of Title 15, CDCR training materials, literature, and guidelines are not included in section 3370 because they are not part of other inmates' case records files, unit health records, or a component thereof. Similarly, these documents are CDCR documents so producing them should not implicate the privacy rights of other inmates. If, however, privacy rights of other inmates are implicated, defendants may redact private information.

40. Plaintiffs offer the same response as above in response to number 39.

41. Documents relating to policies/training/etc for those overseeing debriefing process directly relate to the factual allegations throughout the complaint that refer to debriefing (among others, ¶¶ 52, 78, 79, 80, 81, 96, 97, and 101). Further, they relate to the 8th Amendment cause of action (¶¶ 83, 84) and Due Process cause of action (¶ 201). These documents relating to the training of CDCR officials should not implicate privacy rights of other inmates, but to the extent that they do, defendants may redact private information.

42. Documents relating to reviewing source items at ICC and UCC hearings directly relate to plaintiffs' Due Process cause of action, in that they directly implicate the meaninglessness of review (complaint ¶¶ 200, 201, 202). These documents also relate to factual allegations throughout the complaint (¶¶ 96, 97, 98, among others). Regarding privacy rights of inmates, these documents discuss CDCR policies and procedures, so plaintiffs fail to see how this request implicates privacy rights of inmates; if it does, defendants may redact private information. Likewise, because these documents are CDCR documents not belonging to any inmate, section 3370 of Title 15 is not an issue.

43. Plaintiffs offer the same response as above in response to number 42.

44. Documents relating to the training of committee members who review or consider source items are directly relevant to the Due Process cause of action (complaint ¶¶ 200, 201, 202) and factual allegations throughout the complaint (¶¶ 96 through 110, 115, 116, 118, 119, 120, 121, 122, among others).

46. Documents relating to transfer requests made by classification committees relate to the meaningless reviews at issue in plaintiffs' Due Process cause of action (complaint ¶¶ 200, 201, 202) and to factual allegations throughout the complaint (¶¶ 96, 97, 98, among others). Regarding defendants' HIPAA and privacy objections, redacting the documents should alleviate any concerns.

53. Documents relating to mental-health services at the PBSP SHU directly relate to plaintiffs' 8th Amendment claim (complaint ¶¶ 180 [deprivation of mental health], 181, 182, among others.) They also relate to factual allegations at ¶¶ 82, 83, 84, 85, among others.

Jan 23 13 07:05p     Richard S Kolomejec, Atty (415)433-7207          p.7

Adriano Hrvatin
January 23, 2013

Page 4

54. The plaintiffs' mental and physical health are central to the 8th Amendment cause of action (complaint ¶¶ 180, 181, 182, 189, 190, 191, 192, among others), and directly relate to several factual allegations in the complaint (¶¶ 59, 65, 73-81, among others). Defendants may redact documents implicating other inmates' privacy rights. Regarding section 3370, plaintiffs expect most of these documents will not be covered under that section because they are not part of inmate files. But to the extent documents are covered, they may be produced in accordance with a protective order for attorneys'-eyes only.

57. Documents related to inmate suicides directly relate to factual allegations in the complaint about suicide, psychological harm, and the risk of psychological harm (for instance, ¶¶ 124, 125, 143). These documents also relate to the 8th Amendment cause of action, in that suicides evidence psychological distress caused by SHU confinement. Defendants may resolve their HIPAA and privacy objections with redactions.

64. Plaintiffs' and class members' mental and physical health is directly at issue in the 8th Amendment cause of action, so these documents directly relate to plaintiffs' claim. Further, reviews of security implicate the necessity of PBSP SHU's practices and procedures. Whether PBSP's practices are necessary is an issue for the 8th Amendment claim as well.

65. The mental health of plaintiffs and class members is a key issue in this case, and these documents directly relate to inmates' mental health. Further, any complaints or grievances of mental-health care implicate defendants' deliberate indifference to plaintiffs' suffering, which is relevant for the 8th Amendment claim (¶¶ 89-92). Defendants' HIPAA and privacy objections should be resolved through redactions.

70. Documents showing a diagnosis of various health problems directly relate to the 8th Amendment claim and factual allegations that SHU confinement causes detrimental effects on inmates' medical and psychological health (among others, ¶¶ 73-85). Defendants' privacy and HIPAA objections can be resolved through redactions.

76. Plaintiffs offer the same response as below in response to number 71.

All second-priority requests:

10. Documents relating to inmates' exercise time directly relates to the factual allegations raised in ¶ 30 of the complaint ("limited recreational" activity); ¶ 39 ("no access to recreation or exercise"); ¶ 65 (alleging prisoners often do not receive the normal exercise time); and the 8th Amendment claim, particularly ¶ 180 of the complaint, which refers to "physical exercise," "meaningful activity," and "conditions of confinement" in the SHU. These documents also are directly relevant to the proportionality of punishment raised in ¶ 185 of the complaint.

11. Plaintiffs offer the same response as above in response to number 10.

Jan 23 13 07:05p        Richard S Kolomejec, Atty (415)433-7207              p.8

Adriano Hrvatin
January 23, 2013

Page 5

    27.  Like the response to requests 17 and 18, above, documents relating to visiting and
correspondence are relevant to factual allegations throughout the complaint and to plaintiffs' 8th
Amendment claim.  Much of the mental anguish and suffering plaintiffs and class members experience
stems from the SHU's isolation.  Visiting and correspondence are directly relevant to that isolation.

    29.  Documents relating to instances when IGI interviewed inmate within months of being
transferred to an outside hospital are relevant to plaintiff's 8th Amendment claim in ¶ 183, and the
factual allegations in ¶¶ 73, 78, 79, 80, and 81, among others.  Defendants' HIPAA objection can be
addressed by redacting confidential information.

    30.  Documents relating to instances when an inmate was notified of a death in his family
directly relate to factual allegations in the complaint (¶¶ 45, 52), and to the 8th Amendment cause of
action because how inmates are notified of deaths in the family contributes to the "crushing conditions
of confinement" in the SHU (¶ 180).

    36.  Documents relating to the law library (access, facilities, etc.) directly relate to factual
allegations in the complaint (¶ 53, 69.)

    60.  Documents relating to psychotropic medications prescribed to SHU inmates relate to the
various mental-health allegations in the complaint (for instance, ¶¶ 82, 83, 84, among others) and the
8th Amendment claim.  Redacting information from the documents should resolve defendants' HIPAA
and privacy objections.

    61.  The pharmacy print out and formulary directly relate to plaintiffs' mental-health
allegations (among others, ¶¶ 82, 83, 84) and the 8th Amendment claim.  Defendants may resolve their
privacy objection through redactions.  Regarding section 3370, pharmacy documents are not covered
because they are not part of other inmates' files.  But if 3370 is implicated, defendants may produce
documents in accordance with the protective order and for attorneys'-eyes only.

    66.  Inmates' mental and physical health is a key issue in this case, so the C.V.'s of medical and
mental-health personnel who treated inmates is directly related to a central issue.  It is likely to lead to
admissible evidence because those people have knowledge of the medical and mental-health treatment
PBSP provides.

    71.  Conditions of administrative segregation are relevant to plaintiffs' claims because whether
plaintiffs' confinement implicates a liberty interest under *Sandin v. Connor*, 515 U.S. 472 (1995),
depends upon how plaintiffs' SHU confinement compares to conditions in administrative segregation.
*See Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003) (holding that inquiry considers
whether conditions "mirrored those conditions imposed upon inmates in administrative segregation").

    72.  Plaintiffs offer the same response as above in response to number 71.

    73.  Plaintiffs offer the same response as above in response to number 71.  Further, most of the
requested documents should be official CDCR documents and thus will not implicate any inmates'
privacy rights or section 3370 of Title 15.  If privacy rights are implicated, then defendants may redact

Jan 23 13 07:05p     Richard S Kolomejec, Atty (415)433-7207          p.9

Adriano Hrvatin
January 23, 2013

Page 6

private information. If section 3370 is implicated, defendants may produce in accordance with a
protective order for attorneys'-eyes only.

74. Plaintiffs offer the same response as above in response to number 71.

75. Plaintiffs offer the same response as above in response to number 71. Further, private
information may redacted, and any issues concerning section 3370 of Title 15 should be alleviated by
producing the documents in accordance with a protective order for attorneys'-eyes only.

Respectfully,

Charles Carbone, Esq.

# Exhibit D

Case4:09-cv-05796-CW   Document212   Filed05/24/13   Page24 of 48

**Law Office of Charles Carbone**
*"Justice for the Incarcerated"*

**Evan C. Greenberg, Esq.**
Attorney

# FAX COVER SHEET

**DATE:**  January 28, 2013

**TO:**  Adriano Hrvatin, Esq.

**FAX:**  415-703-5843

**FROM:**  Evan Greenberg
Attorney with the Law Office
of Charles Carbone

**RE:**  Meet and Confer letter

**NO. OF PAGES (incl. cover sheet):**  6

PO Box 2809
San Francisco, CA 94126-2809
Phone: 415-981-9773 or 310-980-3826
Fax: 415-981-9774

E-mail: evan@charlescarbone.com
Website: www.charlescarbone.com or www.prisonerattorney.com

**Law Office of Charles Carbone**
*"Justice for the Incarcerated"*

**Evan C. Greenberg, Esq.**
Attorney

<u>Sent via fax:</u>
415 - 703 - 5843

January 28, 2013

Adriano Hrvatin, Esq.
Deputy Attorney General
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA  94102

      Re:     **Meet and confer letter in response to Defendants' Responses to Plaintiffs' First Set
of Common Interrogatories; Ruiz, et al. v. Brown, et. al., U.S. District Court,
Northern District of California, Case No. 09-5796 CW**

Dear Adriano,

      This letter is sent pursuant to the Northern District of California Civil Local Rule 37-1 and calls
your attention to the deficiencies of Defendants' Responses to Plaintiffs' First Set of Common
Interrogatories.

      Initially, Defendants' relevancy objections lack merit. "An interrogatory may relate to any
matter that may be inquired into under Rule 26(b) of the Federal Rules of Civil Procedure." *See* Fed.
R. Civ. P. 33(a)(2); Fed. R. Civ. P. 26(b) ("Parties may obtain information regarding any nonprivileged
matter that is relevant to any party's claim or defense – including the existence, description, nature,
custody, condition, and location of any documents or other tangible things and the identity and location
of persons who know of any discoverable matter."); *see also U.S. ex rel. O'Connell v. Chapman Univ.,*
245 F.R.D. 646, 648 (C.D. Cal. 2007)(finding that "Rule 26(b) is liberally interpreted to permit wide-
ranging discovery of information even though the information may not be admissible at the trial" and
that "[u]nder Rule 33 of the Federal Rules of Civil Procedure, a party may serve upon any other party
written interrogatories that relate to *any* matters that can be inquired under Rule 26(b)(1)) (emphasis

PO Box 2809
Law Office of Charles Carbone
San Francisco, CA 94126-2809
Phone:  415-981-9773 or 310-980-3826 (cell)
Fax:  415-981-9774

E-mail:  evan@charlescarbone.com
Website:  www.charlescarbone.com or www.prisonerattorney.com

Case4:09-cv-05796-CW    Document212    Filed05/24/13    Page26 of 48

Adriano Hrvatin, Esq.
January 28, 2013
Page 2

added). Here, all of the Interrogatories seek information relating to the treatment and living conditions of CDCR[1] inmates, which undoubtedly is relevant to Plaintiffs' claims.

Further, each interrogatory must be answered fully and the party answering must promptly furnish responsive information available through all reasonable efforts. *See* Fed. R. Civ. P. 33(b)(3); *see also Hash v. Cate*, 2012 WL 6043966, No. C 08-03729 MMC (DMR), at *2 (N.D. Cal. Dec. 5, 2012) (granting in part the motion to compel interrogatory responses where the initial responses were "not internally complete, provide no response, reference other documents, reference other interrogatory answers which reference other documents, and/or present illegitimate objections"); *see also Haggarty v. Wells Fargo Bank N.A.*, 2012 WL 4113341, No. 10-2416 CRB (JSC), at *1-*2 (N.D. Cal., Sept 18, 2012) (citing Rule 33(b)). An evasive or incomplete answer may be treated as a failure to answer, possibly subjecting the party to sanctions. *See* Fed. R. Civ. P. 37(a)(4), (d)(1)(A)(ii). Under this liberal standard, Defendants fail to fully answer the majority of the interrogatories as required under the Federal Rules of Civil Procedure. These deficiencies are discussed in more detail below:

## Responses to Interrogatories 1-4, 10, 11-14, 17

Interrogatories 1-4, 10 and 12 ask Defendants to provide identities of and information regarding CDCR inmates in connection with the gang-validation procedures under Title 15, CCR, § 3378 or 3341.5. Interrogatory 11 asks Defendants to provide information regarding inmates who were released from the PBSP between 2006 and 2012 or who died while incarcerated at the SHU during this time period. Interrogatories 13 and 14 ask Defendants to provide identities and information of PBSP SHU inmates relating to their parole hearings between 2006 and 2012. Interrogatory 17 seeks the identity of each inmate who committed suicide or attempted to commit suicide between 2000 and 2012 and the date of the suicide or attempted suicide.

Defendants objected to these Interrogatories, arguing that they call for "information in violation of Title 15, § 3370 of the California Code of Regulations, which prohibit inmates from having access to other inmates' 'case records file, unit health records, or component thereof.'" These Interrogatories do not request case records file or unit health records of other inmates. Rather, Defendants are asked to answer the Interrogatories based on Defendants' knowledge of information relating to CDCR inmates—information which Defendants presumably have gathered and recorded. Thus, it is unclear how the information falls within "case records file or unit health records of other inmates," or how the purported confidentiality concerns cannot be addressed by a protective order. *See William v. Walkers*, 2009 WL 5199227, No. CIV S-07-2385 WBS, at *9 (E.D. Cal. Dec. 22, 2009) (finding defendants' opposition to requests for production based on section 3370 as "not well-taken" and ordering that the requests for production be construed "as interrogatories"); *see also Uribe v. McKesson*, 2010 WL 892093, No. 08CV1285 DMS (NLS) (overruling defendant's objection that certain information sought

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in Plaintiffs' First Set of Common Interrogatories.

Case4:09-cv-05796-CW   Document212   Filed05/24/13   Page27 of 48

Adriano Hrvatin, Esq.
January 28, 2013

Page 3

by a request for production was subject to the confidentiality provision of section 3370 because defendant "does not assert or explain how [the information] become part of an inmate's records file or that the receipts are not part of the institution's files" and "to the extent they could be considered part of confidential inmate case records, those concerns could be addressed by a protective order).

## Interrogatory 5-9, 12,

Interrogatories 5 through 9 ask Defendants to provide information regarding ICC, UCC, and ACTIVE/INACTIVE REVIEWS. This information is directly relevant to the Plaintiffs' causes of action, as the gang-validation procedures are vital to the due-process claim, and the Plaintiffs' inability to gain their release contributes to the harsh conditions relevant to the 8th Amendment claim. Regarding section 3370, these Interrogatories do not request case records file or unit health records of other inmates. Rather, Defendants are asked to answer the Interrogatories based on Defendants' knowledge of information relating to CDCR inmates—information which Defendants presumably have gathered and recorded.

Interrogatory 12 requests information regarding 602 appeals decided by the Chief of Inmate Appeals. These appeals are relevant to the Plaintiffs' causes of action, as the gang-validation procedures are vital to the due-process claim, and the Plaintiffs' inability to gain their release contributes to the harsh conditions relevant to the 8th Amendment claim.

## Interrogatory 11, 17

Interrogatory 11 asks Defendants to provide information regarding inmates who were released from the PBSP between 2006 and 2012 or who died while incarcerated at the SHU during this time period. Interrogatory 17 asks Defendants to identify each inmate who committed suicide or attempted to commit suicide between 2000 and 2012 and the date of the suicide or attempted suicide.

Defendants objected to these Interrogatories as seeking "disclosure of protected health information under HIPAA." However, Defendants' reliance on HIPAA is erroneous as the regulations provide for disclosure of protected health information in the course of any judicial or administrative proceeding in response to a discovery request. *See* 45 C.F.R. 162.512(e)(ii). Accordingly, in light of the fact that the parties intend to enter into a protective order which would cover the information sought by these Interrogatories, Defendants' HIPAA objections are unfounded.

## Interrogatories Nos. 18-38:

Finally, Defendants refused altogether to respond to Interrogatories 18-38, arguing that they "exceed[s] the maximum number of interrogatories (including discrete subparts) permitted under Federal Rule of Civil Procedure 33(a)(1)." Defendants' position is without merit. First, the plain language of Rule 33(a)(1) states that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." This language means that "in multiparty cases, a party

Adriano Hrvatin, Esq.
January 28, 2013

Page 4

may serve 25 interrogatories on each other party involved. For example, if parties A and B are suing parties X, Y, and Z, then A can serve 25 interrogatories on X, 25 on Y, and 25 on Z, and B can do the same." 7-33 Moore's Federal Practice – Civil § 33.30; *see also Zamora v. D'Arrigo Bros. Co. of Cal.*, 2006 WL 931728, No. C04-00047 WL (HRL), at *4 (N.D. Cal. April 11, 2006) ("According to the Federal Rules, each plaintiff may serve each defendant with 25 interrogatories. Because there are four named plaintiffs, they can serve a total of 100 interrogatories on defendant.") (emphasis in original).

In a previous conversation between Deputy Attorney General Adriano Hrvatin and Charles Carbone and Evan Greenberg, Adriano agreed that each plaintiff could serve each defendant with 25 interrogatories, and that the total number of allowable interrogatories reached the hundreds.

Yet Defendants assert that each Plaintiff served 38 identical interrogatories on each Defendant because the Interrogatories were served jointly on behalf of all Plaintiffs and on all Defendants. Defendants place form over substance. Considering that defendants agree that plaintiffs could serve hundreds of interrogatories and have only served 38, the objection is unreasonable and not asserted in good faith. The Interrogatories were served jointly and on behalf of all the Plaintiffs for judicial economy and efficiency; and given the complexity of the case, 38 interrogatories cannot be considered "abusive and harassing on their face," as alleged by Defendants.

Moreover, Defendants also argue that the Interrogatories exceeded the maximum number of interrogatories permitted under Rule 33(a) because they "contain subparts" and that "[e]ach interrogatory that introduces a separate and distinct inquiry is a separate interrogatory under Rule 33." Defendants are mistaken. Under the rules of discovery "[a] single question asking for several bits of information relating to the same topic counts as one interrogatory 'if they are logically or factually subsumed within and necessarily related to the primary question.'" *Sunnergren v. Cate*, 2013 WL 56758, No. C-12-979 LHK (PR), at *1 (N.D. Cal. Jan. 3, 2013), *citing Safeco of America v. Rawstrom*, 181 F.R.D. 441, 445 (C.D.Cal.1998); *see also Medtronic Vascular, Inc. v. Abbott Cardiovascular Systems, Inc.* 2008 WL 2782903, No. C-06-1066 PHJ (EMC), at *1 (N.D. Cal. July 16, 2008); *see also Mc.Colm v. San Francisco Housing Authority*, 2007 WL 218920, No. C-02-5810 PJH (JCS), at *1 (N.D. Cal. Jan. 29, 2007). Here, all of the subparts contained in certain of the Interrogatories seek details about a common theme, relate to the same topic, and are "logically and factually subsumed within and necessarily related to the primary question"—and as such, should be treated as single interrogatory for purposes of the numerical limit.

Assuming, however, defendants are correct that some interrogatories contain subparts, that matters little in light of defendants' agreeing that plaintiffs could serve hundreds of interrogatories. Defendants claim the accurate number of interrogatories is 55, which is still well within the number that defendants agree is permissible.

For the foregoing reasons, Plaintiffs request a conferral regarding further supplementation to Defendants' Interrogatory Responses to take place as soon as is practicable. Please be advised that if

Adriano Hrvatin, Esq.
January 28, 2013

Page 5

we are unable to resolve these issues, Plaintiffs may file a motion to compel discovery pursuant to
Federal Rule of Civil Procedure 37(a)(1).

Respectfully,

Evan Greenberg, Esq.

# Exhibit E

**Law Office of Charles Carbone**
*"Justice for the Incarcerated"*

**Evan C. Greenberg, Esq.**
*Attorney*

# FAX COVER SHEET

**DATE:** February 14, 2013

**TO:** Adriano Hrvatin, Esq.

**FAX:** 415-703-5843

**FROM:** Evan Greenberg
Attorney with the Law Office
of Charles Carbone

**RE:** Discovery letter

**NO. OF PAGES (incl. cover sheet):** 3

PO Box 2809
San Francisco, CA 94126-2809
Phone: 415-981-9773 or 310-980-3826
Fax: 415-981-9774

E-mail: evan@charlescarbone.com
Website: www.charlescarbone.com or www.prisonerattornev.com

**Prisoner Rights Attorney**
*"Justice for the Incarcerated"*

**Evan Greenberg, Esq.**
Attorney

<u>Sent via fax:</u>
415.703.5843

February 14, 2013

Adriano Hrvatin
Deputy Attorney General

     **Re:    Plaintiffs' discovery.**

Dear Adriano,

    As we discussed on Monday February 11, plaintiffs will assign half the already-served Interrogatories to one plaintiff, and half to another. We assign Interrogatories 1 through 20 to plaintiff Ruiz, serving them on defendant Brown. The remaining Interrogatories, numbers 21 through 38, we assign to plaintiff Ashker, serving them on defendant Brown.

    We also reviewed the categories of documents in our plaintiffs' c-files, and we have selected the categories of documents that we want. You included a document called the Order of Filing along with your letter to Charles and I dated January 16, 2013. I will refer to the categories of documents in that Order of Filing. If you have questions please ask.

    The categories of documents that we want are:

    A. Case Summary – sections 3, 4, 5, 6, and 7.

    B. Legal Documents – section 7.

    C. Classification – sections 7, 8, 9, 10, 11, and 12.

    D. Disciplinary – sections 1, 2, 3, 4, and 5.

    E. General Chronos – sections 1, 2, 3, 4, 5, and 6.

PO Box 2809
San Francisco, CA 94126-2809
Phone: 415-981-9773 or 415-531-1980
Fax: 415-981-9774

E-mail: evan@charlescarbone.com
Website: www.charlescarbone.com or www.prisonerattorney.com

Case4:09-cv-05796-CW   Document212   Filed05/24/13   Page33 of 48

Adriano Hrvatin
February 14, 2013

Page 2

     F.  Miscellaneous – section 2 (I cannot read the section number, but I believe it is number 2, and it begins "CDC 602, Inmate/Parolee Appeal with . . .)

I.  BPT and NAEA

     Part D – Appeals – sections 1, 2, 3, and 4.

     Part F – Life Prisoners – sections 5, 9, and 10.

We also want two more categories, neither of which have a legible section number or letter. They appear at the bottom of page 2. The first is "AD SEG: Manila Folder containing CDC 114As." And the other is "PHOTOGRAPHS: Attached to inside of back cover."

Please call or write with any questions.

Respectfully,

Evan Greenberg, Esq.

# Exhibit F



*KAMALA D. HARRIS*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (415) 703-5500
Telephone: (415) 703-1672
Facsimile: (415) 703-5843
E-Mail: Adriano.Hrvatin@doj.ca.gov

February 22, 2013

*By Email & U.S. Mail*

Charles Carbone, Esq.
Evan Greenberg, Esq.
LAW OFFICE OF CHARLES CARBONE
P.O. Box 2809
San Francisco, CA 94126

RE:    *Ruiz, et al. v. Brown, et al.*
       U.S. District Court, Northern District of California, Case No. C 09-05796 CW

Dear Counsel:

This is further to our correspondence regarding a threshold objection asserted by Defendants Brown, Cate, and Lewis, respectfully, to Plaintiffs' first set of "common" interrogatories, which Plaintiffs propounded "jointly" on October 31, 2012. Specifically, because Plaintiffs failed to specify which Plaintiff propounded the interrogatories but instead "jointly" propounded 38 interrogatories, Defendants objected that each named Plaintiff had thus exceeded the 25-interrogatory limit as to each Defendant, as contemplated by Rule 33 of the Federal Rules of Civil Procedure.

There is no dispute that each party may, absent stipulation or court order, propound up to 25 interrogatories, including discrete subparts, on another party. Fed. R. Civ. P. 33. Plaintiffs contend that "[t]he Interrogatories were served jointly and on behalf of all the Plaintiffs for judicial economy and efficiency." (C. Carbone Ltr. to A. Hrvatin, dated Jan. 28, 2013, at 4.) Therein, however, lies the problem. That is, a named Plaintiff did not propound interrogatories on a named Defendant — *all* of the named Plaintiffs "jointly" served interrogatories and requested responses from each Defendant, in violation of the plain language and spirit of Rule 33. This defect, contrary to Plaintiffs' position, did not "place form over substance." (*Id.*) Instead, it provided the foundation for the objection that each Plaintiff had exhausted the amount of interrogatories otherwise allocated to him as to three Defendants.

Notwithstanding the foregoing, when the parties conferred on February 11, 2013, Defendants proposed a compromise. Defendants requested that Plaintiffs: (i) identify which specific named Plaintiff propounded the first 25 interrogatories; and (ii) identify which specific named Plaintiff propounded the remaining interrogatories. Defendants agreed, with that clarification, to

Charles Carbone, Esq.
Evan Greenberg, Esq.
February 22, 2013
Page 2

supplement their interrogatory responses accordingly.   On February 11, you acknowledged the reasonableness of this proposal.

In a letter dated February 14, 2013, you "assign[ed] Interrogatories 1 through 20 to plaintiff Ruiz, serving them on defendant Brown" and "[t]he remaining Interrogatories, numbers 21 through 38," you "assign[ed] to plaintiff Ashker, serving them on defendant Brown." (E. Greenberg Ltr. to A. Hrvatin, dated Feb. 14, 2013, at 1.)  By now specifying that Plaintiffs Ruiz and Ashker, respectfully, have directed their interrogatories to Defendant Brown only, please confirm that Plaintiffs have withdrawn the interrogatories they otherwise propounded on October 31, 2012 to additional Defendants (namely, Defendants Cate and Lewis).  In that case, the responses and objections of those Defendants should similarly be deemed withdrawn, rendering them without legal effect or prejudice.  Let us know whether we have accurately understood the practical effect of Plaintiffs' corrected assignment of specific interrogatories from two Plaintiffs to one Defendant.  If so, Defendant Brown, without waiving any previously-stated or future objection, will supplement his responses to the interrogatories that you have now "assigned" to Plaintiffs Ruiz and Ashker, respectfully.

*     *     *

Separate from our correspondence regarding the objection discussed above, your letter dated January 28, 2013 took issue with Defendants' responses and objections to specific interrogatories.  We will respond to the balance of the January 28 letter on Defendant Brown's behalf under separate cover or, as appropriate, in connection with his supplemental interrogatory responses.

Sincerely,

*A. Hrvatin*

ADRIANO HRVATIN
Deputy Attorney General

For    KAMALA D. HARRIS
       Attorney General

SF2012204868
20671293.doc

# Exhibit G

**Adriano Hrvatin**

| | |
|---|---|
| **From:** | Evan Greenberg <evan@charlescarbone.com> |
| **Sent:** | Friday, March 08, 2013 9:41 AM |
| **To:** | Adriano Hrvatin |
| **Cc:** | charles@charlescarbone.com |
| **Subject:** | Re: Ruiz |

Adriano,

I am confirming your question from your letter and the email included below. You wrote, " We asked that you confirm, given this clarification, that plaintiffs had withdrawn their interrogatories to the other defendants, and that those defendants' responses could be similarly deemed withdrawn." I am confirming this.

Evan


> On March 5, 2013 at 12:01 PM Adriano Hrvatin <Adriano.Hrvatin@doj.ca.gov> wrote:
>
>
> Evan:
>
> This follows our call on Friday, March 1, during which we touched on issues related to the parties' joint case management conference statement, as well as a few pending discovery issues.
>
> As Charles requested, I am writing to confirm that defendants intend to make a further production of documents this week. That production will be accompanied by correspondence addressing plaintiffs' letter dated January 23, 2013, which set forth, among other things, a first tier of purported highest priority in connection with plaintiffs' contested requests for documents. Defendants are further in the process of preparing the named plaintiffs' central files for production. Given the volume of that material, we expect to begin producing the central files on a rolling basis next week. Should this anticipated timetable change, we will let you know.
>
> Separately, Charles confirmed that plaintiffs had received defendants' letter dated February 22, which captured the parties' negotiations regarding defendants' threshold objection that plaintiffs had exceeded the 25-interrogatory limit allocated to each named plaintiff. Plaintiffs have now specifically allocated certain interrogatories to plaintiffs Ruiz and Ashker, respectively, and both have propounded those interrogatories on defendant Brown only. We asked that you confirm, given this clarification, that plaintiffs had withdrawn their interrogatories to the other defendants, and that those defendants' responses could be similarly deemed withdrawn. We have not heard back from you. If we are in agreement, defendant Brown will supplement his interrogatory responses. If not, defendants reserve their right to seek relief from Magistrate Vadas, including a protective order.
>
> Thanks for your time and attention.
>
> CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# Exhibit H



*KAMALA D. HARRIS*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public:  (415) 703-5500
Telephone:  (415) 703-5797
Facsimile:  (415) 703-5843
E-Mail:  Jill.Weader@doj.ca.gov

March 8, 2013

VIA ELECTRONIC MAIL

Charles Carbone, Esq., charles@charlescarbone.com
Evan Greenberg, Esq., evan@charlescarbone.com
LAW OFFICES OF CHARLES CARBONE
P.O. Box 2809
San Francisco, CA 94126-2809

RE:   *Ruiz, et al. v. Brown, et al.*
      U.S. District Court, Northern District of California, Case No. C 09-05796 CW

Dear Counsel:

    This letter is further to the parties' meet-and-confer efforts with respect to Plaintiffs'
requests for the production of documents, Defendants' responses and objections to those
requests, and Defendants' related production of documents in this matter.

    As an initial matter, we have compiled a second group of documents for production that
will be sent to you on a CD this coming Monday.  In the meantime, so that Defendants may
continue to produce documents on a rolling basis, including your clients' confidential health
records, please provide Defendants with copies of the medical releases you indicated you
obtained from the ten named plaintiffs.

    When the parties met and conferred on December 19, 2012, you indicated that Plaintiffs
would prioritize a number of their seventy-six document requests to, in part, address Defendants'
concern that the sheer volume and scope of Plaintiffs' requests present burdens incommensurate
with the case's current procedural posture.  On January 23, 2013, you sent us a letter identifying
eighteen document requests as "first priority."  The parties held a further meet and confer on
February 11, 2013.  This letter addresses Plaintiffs' "first priority" requests.

    Your January 23rd letter argues, as a general matter, that Defendants' objection to the
document requests as unduly burdensome is not valid, because"[p]resumably many of these
documents are located in a single file or database, and for those requests defendants need not
conduct multiple searches, but merely must produce several documents from a single search."
Plaintiffs have no basis to make this claim.  There is not one single database from which
Defendants can obtain documents responsive to each of Plaintiffs' seventy-six document

Charles Carbone, Esq.
Evan Greenberg, Esq.
March 8, 2013
Page 2

requests. To the contrary — as stated in Defendants' discovery responses, many of Plaintiffs' requests would require Defendants to review thousands of inmates' central files and unit health records. Your assertion that responding to Plaintiffs' seventy-six document requests would "merely" require producing the results of a "single search" is baseless.

Your January 23rd letter recognizes that Defendants objected to many of Plaintiffs' requests on the basis that they seek documents spanning seven, thirteen, and even twenty-one years, without a showing that this amount of information is relevant, nor justifying the burden in responding to these requests. *See, e.g.,* Response to Requests No. 41, 42, 43, and 49. That you argue that these requests for documents "naturally span a significant length of time" in light of the definition of a purported sub-class, does not alone justify the breadth of Plaintiffs' requests. Further, it is Defendants' understanding that on December 19, 2012, the parties agreed to limit document discovery for materials such as Pelican Bay temperature and food logs and similar records to the past three years (the period after January 1, 2010), and documents regarding the named plaintiffs' central files and unit health records to the past six years (the period after January 1, 2008), with a further agreement that Plaintiffs may later seek additional material if relevant and necessary. Defendants confirmed this agreement in a letter dated January 16, 2013, to which you did not respond. Please confirm that this is also your understanding of the compromise the parties reached on December 19, 2012, with respect to the time period covered by Plaintiffs' requests.

Of the seventy-six individual document requests propounded by Plaintiffs, your January 23rd letter identifies eighteen as "first-priority" (Request Nos. 3, 17, 18, 20, 39, 40, 41, 42, 43, 44, 46, 53, 54, 57, 64, 65, 70, and 76).

Request No. 3 seeks documents "reflecting or discussing a gang validation source item being rejected at a PBSP ICC or UCC hearing" over the span of seven years. Defendants stand by their objection that the document request improperly assumes that the ICC or UCC "rejects" individual source items. This misstates the statutory roles of the ICC and UCC, and does not render such hearings "meaningless," as Plaintiffs allege. *See* Cal. Code Regs. tit. 15, §§ 3341.5(c)(2)(A), and 3378(c)(7). In any event, beginning next week, you will be receiving documentation of ICC and UCC hearings contained in the ten named plaintiffs' central files. To the extent that Plaintiffs' request seeks ICC and UCC documents for any inmate who has been housed at Pelican Bay for the last seven years, Defendants object that they cannot be expected to review the central files of thousands of inmates. Defendants stand by their objection to this request as overly broad and unreasonably burdensome.

Request Nos. 17 and 18 seek documents that relate to security risks posed "by allowing named plaintiffs to engage in contact visitation with approved visitors" and "by allowing named plaintiffs to make or receive social telephone calls." Defendants maintain that these requests are vague and fail to identify what documents Plaintiffs seek with the reasonable particularity required. The risks involved in allowing inmates who are validated gang members and associates to make telephone calls and have contact visits are obvious. The general security risks

Charles Carbone, Esq.
Evan Greenberg, Esq.
March 8, 2013
Page 3

involved in contact visits and phone access are recognized by the Penal Code. It is, for example, a crime for visitors to provide contraband, including cellular phones, to inmates. (*See, e.g.,* Cal. Penal Code §§ 4570, 4573, 4573.5, 4573.6, 4573.8, 4573.9, 4574, 4575, and 4576.) These concerns exist with respect to inmates generally but even more so with respect to validated gang members and associates, who routinely utilize sophisticated communication techniques to coordinate ongoing gang activity both inside and outside prison walls.

Request No. 20 seeks "all documents relating to, discussing, or reflecting the original conception and purpose of the PBSP SHU" for an unlimited time period. But Plaintiffs have not shown that material from Pelican Bay's inception more than twenty years ago is relevant to whether current practices in the Pelican Bay SHU violate the named plaintiffs' due process or Eighth Amendment rights. That your January 23rd letter cites background information in the Amended Complaint regarding the opening of Pelican Bay does not justify or outweigh the burden associated with responding to this request.

Request Nos. 39, 40, and 41 seek training materials regarding "identifying, tracking, or validating gang affiliates . . . prepared for or provided to IGI, the Office of Correctional Safety, or other CDCR employees[,]" material "identifying gang activity or gang validation source items," and materials regarding the debriefing process. All three of these requests seek documents over a thirteen-year time period. Defendants stand by their objection that these requests are overly broad and unreasonably burdensome. Defendants further note that debriefers are not putative class members. However, beginning this month, Defendants will produce documents responsive to these requests that concern the STG Pilot Program.

Request Nos. 42 and 44 seek documents regarding review of gang validation source items at ICC or UCC hearings and training of ICC and UCC committee members for a seven-year period. Request No. 43 seeks documents regarding the review of gang validation source items at active/inactive reviews, also for a seven-year period. Your January 23rd letter simply asserts that these requests "relate to factual allegations throughout the complaint" without addressing Defendants' objections regarding the breadth of these requests. However, beginning next week, Defendants will produce documentation of ICC and UCC hearings, as well as active/inactive reviews, for the ten named plaintiffs as part of their central files. Defendants will also produce documents responsive to these requests that concern the STG Pilot Program.

Request No. 46 seeks documents regarding recommendations for transfer of validated inmates out of the Pelican Bay SHU over a seven year period. But Plaintiffs have not explained how transfers are relevant. If inmates have transferred out of the Pelican Bay SHU, they are no longer putative class members. Defendants further note that the ten named plaintiffs' central files would contain requests for transfer made by the named plaintiffs. To otherwise respond to this request would be unduly burdensome, given that it would require a manual review of thousands of inmates' central files.

Charles Carbone, Esq.
Evan Greenberg, Esq.
March 8, 2013
Page 4

Request No. 53 seeks "mental-health reports, studies, or statistics for the delivery of mental-health services to PBSP SHU inmates" over a seven-year period. This request, calling for "all documents" relating to "the delivery of mental-health services" is vague and ambiguous and fails to identify what documents Plaintiffs seek with the reasonable particularity required. Moreover, Defendants have pending a threshold challenge to the viability of Plaintiffs' claim under the Eighth Amendment, to which this request relates. If the Court determines that claims regarding mental or medical health care at Pelican Bay are within the scope of this case, Defendants will conduct a reasonable, focused search to determine whether such documents exist and collect those documents that are reasonably accessible.

Request No. 54 seeks "reports, studies, or statistics . . . concerning the mental health or physical effects of SHU confinement on PBSP SHU inmates" over a period of thirteen years. This request is overly burdensome in seeking documents over a thirteen-year time period. Defendants continue to object that Plaintiffs have not shown and the Court has not determined whether such documents are relevant, let alone whether Defendants should be required to produce thirteen years' worth of such documents. If the Court determines that claims regarding mental or medical health care at Pelican Bay are within the scope of this case, Defendants will conduct a reasonable, focused search to determine whether such documents exist and collect those documents that are reasonably accessible.

Request No. 57 seeks "all clinical (medical and mental health) and custody files, local reviews, CDCR Central Office reviews, incident reports, recommendations from reviewing bodies, and the case numbers and name of the court of all related litigation" for "all inmate suicides since PBSP opened." This request spans over twenty years, is not limited to the SHU, would violate the privacy rights of inmates, and seeks documents that are not relevant to Plaintiffs' claims. Moreover, Defendants have agreed to provide information regarding the number of actual suicides in the Pelican Bay SHU over a reasonable time period in response to Plaintiffs' interrogatories, but Plaintiffs have not shown why the identities of such non-class members, let alone their individual records, are relevant.

Request No. 64 seeks "all audits and/or reviews of security, mental health or medical care at PBSP SHU" performed by various entities over a thirteen-year period. As with other requests, this request is overly burdensome in seeking documents over a thirteen-year time period. Plaintiffs have not shown why any report on "security" is relevant to their claims. Your January 23rd letter claims that reviews of security are implicated by the Eighth Amendment claim, but the standard implicated by Plaintiffs' Eighth Amendment claim in this case does not implicate security. In addition, Defendants continue to object that Plaintiffs have not shown and the Court has not determined whether mental and physical health care reports are relevant, let alone whether Defendants should be required to produce thirteen years' worth of such documents.

Request No. 65 seeks complaints or grievances by CDCR mental and medical health professionals over a period of eleven years, without any showing that such documents are relevant. Plaintiffs have not shown and the Court has not determined whether mental and

Charles Carbone, Esq.
Evan Greenberg, Esq.
March 8, 2013
Page 5

physical health care in the SHU is relevant, let alone whether Defendants should be required to produce eleven years' worth of such documents. To the extent that such documents even exist, producing them would violate the privacy rights of employees of CDCR, as well as the privacy rights of inmates who are not named plaintiffs in this action. Defendants will not produce any "complaints or grievances by CDCR mental and medical health professionals," absent a showing by Plaintiffs that such documents are relevant.

Request No. 70 seeks "documents diagnosing a SHU inmate with hypertension, vitamin deficiency, atrophy of any part of their body, lack of bone density, asthma, or sleep deprivation[,]" without any time limitation. This request would require Defendants to review thousands of inmates' unit health records, without any showing by Plaintiffs that the associated burden at this phase of the litigation is justified. No class has been certified in this case, and it is, as such, an individual case. Defendants are not required to conduct such an unreasonable and overly burdensome investigation. Upon receipt of medical releases, Defendants will produce relevant portions of the ten named plaintiffs' unit health records, which may contain documents responsive to this request.

Request No. 76 seeks documents that "reflect the average or median time that inmates spends [sic] in AD-SEG once they are transferred to an AD-SEG unit[,]" without any time limitation and without any explanation of why documents regarding AD-SEG units statewide are relevant. Your January 23rd letter claims that the case *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003), stands for the proposition that AD-SEG conditions are relevant for determining whether a liberty interest exists to support a due process violation. But the "average or median length of time" spent in AD-SEG is not reflective of AD-SEG conditions. Further, the *Serrano* Court recognized that "administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano*, 345 F.3d at 1078 (citation omitted). You have not shown why the duration of confinement of non-class members in AD-SEG units are relevant to Plaintiffs' claims.

As indicated in separate correspondence, Defendants are focusing their efforts so as to produce relevant portions of the ten named plaintiffs' central files on a rolling basis starting next week. Once you have had a chance to review this material, and in anticipation of the Court's ruling on Defendants' pending motion to dismiss, we look forward to meeting and conferring further regarding Plaintiffs' document requests.

Charles Carbone, Esq.
Evan Greenberg, Esq.
March 8, 2013
Page 6

Thank you for your time and attention.

Sincerely,

JILLIAN R. WEADER
Deputy Attorney General

For    KAMALA D. HARRIS
Attorney General

SF2012204868
20677762.docx

# Exhibit I

***Prisoner Rights Attorney***
*"Justice for the Incarcerated"*

***Charles F.A. Carbone, Esq.***
*Attorney*


# FAX COVER SHEET


**DATE:**   May 22, 2013

**TO:**   Adriano Hrvatin, Esq.
Deputy Attorney General
**FAX:**   415-703-5843

**FROM:**   Renee Byndloss
Asst. to Charles Carbone, Esq.

**RE:**   Ashker et al. v. Governor, et al.

**NO. OF PAGES (incl. cover sheet):**   2

PO Box 2809
San Francisco, CA 94126-2809
Phone:  415-981-9773 or 415-531-1980
Fax:  415-981-9774

E-mail:  charles@charlescarbone.com
Website:  www.charlescarbone.com or www.prisonerattorney.com

**Prisoner Rights Attorney**
*"Justice for the Incarcerated"*

**Charles F.A. Carbone, Esq.**
Attorney

Via Facsimile 415-703-5843:

May 22, 2013

Adriano Hrvatin, Esq., Deputy Attorney General
ATTORNEY GENERAL FOR STATE OF CALIFORNIA
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004

     Re:   *Ashker, et al. v. Governor, et al.*

Dear Adriano:

     I write to inform you that Plaintiffs will begin our rolling production of documents in response to the requests for production of documents Defendants tendered in the case. I expect that the rolling production will begin in about 1½ weeks. The discovery which is still subject to objections deserves a meet and confer and I am willing to have that discussion with you at your earliest convenience.

     Please be aware that as the rolling production for the documents will begin, so too will our responses on the interrogatories you tendered, once our attorneys have an opportunity to discuss those requests directly with our clients. We intend to turn our attention immediately to that very task as we are producing documents.

     Insofar as the Plaintiff's discovery, I appreciate the defendants continued rolling production on those requests and simply ask that you identify the particular requests that Defendants believe have been produced in full, as well as these requests that are not subject to the motion to compel for which the defendants are still endeavoring to produce. As debated before, we understand that you will not be identifying particular documents in connection with a particular request, but we believe it is reasonable to ask which requests Defendants believe they have thus far produced.

     Please call or email me with your thoughts on this issue. Thank you for your consideration on all these topics and I look forward to speaking with you soon.

Respectfully,

*Dictated but not read*

Charles Carbone, Esq.

PO Box 2809
San Francisco, CA 94126-2809
Phone:  415-981-9773 or 415-531-1980
Fax:  415-981-9774

E-mail:  charles@charlescarbone.com
Website:  www.charlescarbone.com or www.prisonerattorney.com