KAMALA D. HARRIS
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General
ADRIANO HRVATIN
Deputy Attorney General
JILLIAN R. O'BRIEN
Deputy Attorney General
State Bar No. 251311
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5797
  Fax: (415) 703-5843
  E-mail: Jill.OBrien@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TODD ASHKER, et al.,<br><br>                  Plaintiffs,<br><br>v.<br><br>GOVERNOR OF THE STATE OF CALIFORNIA, et al.,<br><br>                  Defendants. | C 09-05796 CW<br><br>**DECLARATION OF S. SODERLUND IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**<br><br>Judge:        Hon. Nandor Vadas<br>Hearing Date: June 18, 2013<br>Time:        10:00 a.m.<br>Location:    Courtroom 205 A |

I, S. Soderlund, declare:

1.    I am employed by the California Department of Corrections and Rehabilitation (CDCR) as the Litigation Coordinator for Pelican Bay State Prison. I have been employed by CDCR for eleven years. In my current capacity as Litigation Coordinator, I serve as the liaison between Pelican Bay, courts, inmates, and attorneys involved in all litigation brought by Pelican Bay inmates. I am responsible for approximately 500 pending litigation matters, with new state and federal cases filed on a daily basis by Pelican Bay inmates. As part of my job duties, I regularly respond to records requests in pending litigation. I am familiar with CDCR's and

1

1 Pelican Bay's policies, procedures, and practices for collecting and maintaining records pertaining to inmates, including, but not limited to, inmates' central files and unit health records. I am competent to testify to the matters set forth in this declaration and, if called on by the Court, would do so. I submit this declaration in support of Defendants' opposition to Plaintiffs' motion to compel.

2. I am informed that Plaintiffs in this matter have propounded on Defendants discovery requests in the form of interrogatories and document requests. It is my belief that Pelican Bay cannot respond to many of these requests without undertaking a massive burden, given the scope of the requests and the categories of statistical data that are not kept in the regular course of business. Plaintiffs' discovery requests assume, without any basis, that several categories of information about Pelican Bay Security Housing Unit (SHU) inmates, and particularly validated gang members and associates housed in the Pelican Bay SHU, can be isolated and produced with a term or word-based search of inmate documents maintained in a central database. To my knowledge, no such comprehensive database exists. Although CDCR is working towards the electronic storage of central files and other inmate records, this is an ongoing project and would still require a case-by-case review as information will continue to be stored as an individual record and all previously existing central file documentation will be scanned in as a single PDF document.

3. As set forth in the examples below, the information Plaintiffs seek can only be obtained through a manual review of documents, a task that Pelican Bay prison staff cannot support.

**Plaintiffs' Interrogatories**

4. I am informed that Plaintiffs in this case have propounded interrogatories that seek detailed information regarding gang affiliates in the Pelican Bay SHU, such as the identity of all gang affiliates (Interrogatory No. 1, subpart i), the year they were first placed at the Pelican Bay SHU (*id.*, subpart iv), any periods of time during which they were not incarcerated at the Pelican Bay SHU (*id.*, subpart v), and whether they were housed at the Pelican Bay SHU as of May 31, 2012 (*id.*, subpart vi). The information requested does not exist in a readily accessible format.

2

To respond to these questions would require an extensive and time-consuming manual file review of the central files of the hundreds of gang affiliates presently housed at the Pelican Bay SHU. I would further need to locate and review the movement history for each inmate to determine if the inmate had left the Pelican Bay SHU to go to a hospital, to a trial or other court proceeding, or to another institution for any length of time. And even this manual review would not necessarily capture the information requested about inmates who may have been at the Pelican Bay SHU as of May 31, 2012, but are now housed elsewhere. Responding to these interrogatories would impose a massive and undue burden on the limited resources of Pelican Bay.

5. I am informed that Plaintiffs in this case seek detailed information regarding *all* Pelican Bay SHU inmates (well over 1,000 individuals and not limited to validated gang members and associates), such as whether each inmate has been housed in the SHU for ten or more years as of November 1, 2012 (Interrogatory No. 2, subpart i), or for more than fifteen or twenty years (*id*, subparts ii and iii), and whether each validated inmate is a gang member or associate (*id.*, subparts iv and v). To determine how long each inmate presently housed in the SHU has been there would require a manual file review of the central file of each inmate. I would then need to locate and review the movement history for these inmates to determine if the inmates had left the Pelican Bay SHU to go to a hospital, to a trial or other court proceeding, or to another institution for any length of time. And even this manual review would not necessarily capture the answers for inmates who may have been at the Pelican Bay SHU as of November 1, 2012, but are now housed elsewhere. Responding to these interrogatories would impose a massive and undue burden on the limited resources of Pelican Bay.

6. I am informed that Plaintiffs in this case seek information regarding the number of hearings that have been held by Pelican Bay's Institutional Classification Committees (ICC) and Unit Classification Committees (UCC) with respect to validated gang members or associates over the course of seven years (Interrogatory Nos. 5, 7), and the result of each of those hearings over the same time period (Interrogatory Nos. 6, 8). Based on my investigation, information potentially responsive to broad requests like these is not readily accessible. There is, for example, no central computer system from which the information requested could be easily calculated,

3

Soderlund Decl. ISO Opp. Mot. Compel (C 09-05796 CW)

collected, and produced to Plaintiffs. Each inmate, whether or not a validated gang member or associate, receives, per title 15, an annual ICC hearing and a UCC hearing every 180 days. In addition, ICC and UCC hearings may occur for a variety of reasons at additional time intervals, depending on an inmate's particular case factors. Accordingly, I could provide a rough estimate of the number of ICC and UCC hearings held for validated gang members and associates housed in the Pelican Bay SHU over a period of time. However, such a rough estimate would be imprecise and not appropriate for a sworn response. Otherwise, to arrive at the information requested, I would have to conduct a manual review of the ICC and UCC chronos contained in the central files of all validated inmates in the Pelican Bay SHU. Responding to these interrogatories would impose a massive and undue burden on the limited resources of Pelican Bay.

       7.    I am informed that Plaintiffs in this case seek other similar information for validated gang members and associates housed in the Pelican Bay SHU, such as the names of inmates "released" from the SHU in the last seven years and the reasons for those inmates' "release" (Interrogatory No. 11), and all inmate grievances over a seven-year period regarding gang validation (Interrogatory No. 12). There is no readily-accessible list, in electronic format or otherwise, documenting when an inmate was released from the Pelican Bay SHU for the last seven years. Data regarding housing and movement history is not separately collected or categorized by unit, facility, or housing type. Again, responding to this type of request would require the individual case file review of all inmates who are now currently or may have been in the Pelican Bay SHU at any time within the last seven years. Inmate grievances are tracked by Pelican Bay's inmate appeals office by general category, such as "living conditions," "custody/classification," "medical," disciplinary," "property," and "mail." Grievances regarding validation could fit into a number of these categories, depending on the wording of the grievance. There is no way, save for a manual review of all grievances received during the requested seven year period, to collect data regarding the specifics of inmate grievances potentially relevant to the parties' claims and defenses in this case. Responding to these interrogatories would impose a massive and undue burden on the limited resources of Pelican Bay.

4

Soderlund Decl. ISO Opp. Mot. Compel (C 09-05796 CW)

**Plaintiffs' Document Requests**

8.  I am informed that Plaintiffs in this case seek documents including "all documents . . . relating to the issuance of CDCR 115s (administrative or serious rules violations)" for a thirteen year period for all inmates who have been in the Pelican Bay SHU for more than ten years. First, it is unclear to me what Plaintiffs mean by "more than ten years." I understand, for example, that there are inmates that have served ten years in Pelican Bay's SHU but not for a continuous ten years. Separately, to collect these documents, as discussed above, I would first have to conduct a manual review of SHU inmate central files to determine the length of stay in the SHU. Then, for those inmates who have been retained in the SHU for ten years or more, I would need to review and collect all documents relating to the rules violation reports (115s) in each inmate's paper central file. Responding to this document request would impose a massive and undue burden on the limited resources of Pelican Bay.

9.  I am informed that Plaintiffs in this case seek documents including "all documents reflecting non-compliance" with exercise time for Pelican Bay SHU inmates for seven years (Request Nos. 10, 11). As a matter of policy and practice at Pelican Bay, and in line with title 15 and the Department Operations Manual, inmates at Pelican Bay are given the opportunity to exercise outdoors. Six days per week, when it is time for a SHU inmate to exercise, the control booth officer documents on a sheet of paper next to an inmate's name whether the inmate utilized the exercise time allotted for exercise that day, or whether the inmate declined to leave his cell to exercise. Pelican Bay logs in writing, for more than a thousand inmates in the SHU, six days per week, whether the inmates have utilized their exercise time. Collecting and copying these logs for every SHU inmate, and thereafter determining whether each SHU inmate is a validated gang member or associate, over a seven-year period, would impose a massive and undue burden on the limited resources of Pelican Bay.

10. I am informed that Plaintiffs in this case seek documents including "all documents discussing . . . recommendations for transfer . . . made . . . by classification committees" reviewing validated inmates over a seven year period (Request No. 46). Responding to this document request would require collecting, manually reviewing for a transfer request, and then

5

copying committee chronos from the paper central files of all validated inmates in the Pelican Bay SHU. Responding to this document request would impose a massive and undue burden on the limited resources of Pelican Bay.

11. I am informed that Plaintiffs in this case seek documents regarding all "administrative appeals filed by prisoners . . . reflecting any prisoner, physician, or psychiatrist request for at transfer" out of the Pelican Bay SHU "for medical or mental health reasons" over a seven year period (Request No. 67), and "grievances . . . relating to the refusal of CDCR to transfer" (Request No. 68). As mentioned above, inmate grievances are tracked by general category, such as "medical," "living conditions," "custody/classification," disciplinary," "property," and "mail." Grievances regarding inmate "transfer" requests is vague. An inmate "transfer" request for "medical or mental health reasons" could fit into a number of generally-described inmate appeal categories. The only accurate way to determine the true nature of an inmate's appeal is to review the appeal itself, which would require a manual review of each grievance in each Pelican Bay SHU inmate's central file. Responding to this document request would impose a massive and undue burden on the limited resources of Pelican Bay.

12. I am informed that Plaintiffs in this case seek documents including all "documents diagnosing a Pelican Bay SHU inmate with hypertension, vitamin deficiency, atrophy of any part of their body, lack of bone density, asthma, or sleep deprivation" (Request No. 70). I do not understand what Plaintiffs expect Defendants to produce with respect to "documents diagnosing" a variety of alleged mental or physical ailments, but even if the request was limited to test results for certain conditions, it is my understanding that there is no single source for such information. Pelican Bay staff would have to engage in a manual review of all Pelican Bay SHU inmates' unit health records to collect and isolate information responsive to this document request. Responding to this document request would impose a massive and undue burden on the limited resources of Pelican Bay.

13. I have devoted an extensive amount of time to the investigation required to preliminarily determine Pelican Bay's capacity to provide information called for by Plaintiffs' requests, which has resulted in the collection, copying, and production thus far of over

6

Soderlund Decl. ISO Opp. Mot. Compel (C 09-05796 CW)

76,000 pages of documents in this case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed in Crescent City, California, on May 23, 2013.

S. Soderlund
Litigation Coordinator
Pelican Bay State Prison

SF2012204868

7

Soderlund Decl. ISO Opp. Mot. Compel (C 09-05796 CW)