KAMALA D. HARRIS
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General
ADRIANO HRVATIN
Deputy Attorney General
JILLIAN R. O'BRIEN
Deputy Attorney General
State Bar No. 251311
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5797
  Fax: (415) 703-5843
  E-mail: Jill.OBrien@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TODD ASHKER, et al.,<br><br>                      Plaintiffs,<br><br>v.<br><br>GOVERNOR OF THE STATE OF CALIFORNIA, et al.,<br><br>                      Defendants. | C 09-05796 CW<br><br>**DECLARATION OF J. PRELIP IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**<br><br>Judge:        Hon. Nandor Vadas<br>Hearing Date: June 18, 2013<br>Time:         10:00 a.m.<br>Location:    Courtroom 205 A |

I, J. Prelip, declare:

      1.   I am employed as the Senior Special Agent of the Rancho Cordova Special Service Unit of the Division of the Office of Correctional Safety (OCS) for the California Department of Corrections and Rehabilitation (CDCR). I have been employed by CDCR as a Senior Special Agent for 2 years and as a Special Agent for six years. Prior to becoming a Special Agent, I worked for the California Youth Authority (CYA) for over ten years and served in the Gang Intelligence Apprehension Unit there for six years. I am competent to testify to the matters set

1

Prelip Decl. ISO Opp. Mot. Compel (C 09-05796 CW)

forth in this declaration and, if called on by the Court, would do so. I submit this declaration in support of Defendants' opposition to Plaintiffs' motion to compel.

2. In serving as the Senior Special Agent, I supervise ten officers who perform threat assessments and investigate gang activity both inside and outside of prison. My unit compiles and approves comprehensive reports that result from inmates going through the debriefing process. I also serve as the Coordinator for the California Gang Task Force, comprised of law enforcement agencies from across California. I am familiar with CDCR's previous gang validation process, as set forth in title 15 of the California Code of Regulations and the Department Operations Manual, as well as the procedures and requirements newly implemented by CDCR through the Security Threat Group (STG) pilot program, which are described in detail in an institutional memorandum dated October 12, 2012, that was filed with the Court and produced to Plaintiffs.

**Debriefer Information**

3. I am informed that Plaintiffs in this case seek the identity of all PBSP SHU inmates who either requested to debrief or debriefed from 2006 to 2012. Providing this information to individuals outside of CDCR, including to Plaintiffs' attorneys, would endanger the lives of every inmate who requested to debrief or debriefed, as well as the families of those inmates.

4. Debriefing is a tool integral to CDCR's management of the substantial gang influence present throughout California prisons. California prison gangs are sophisticated and share an ideology of violence and corruption disruptive to the inmate population, particularly the inmates who genuinely want to program while incarcerated, and dangerous for communities beyond prison walls. Through debriefing, prison officials learn about gang politics and activity from the inmates most knowledgeable about those politics and activities: active gang members and associates who have voluntarily decided to disassociate from prison gang life.

5. The Mexican Mafia, Black Guerilla Family, Aryan Brotherhood, Nazi Low Riders, Northern Structure, and Nuestra Familia prison gangs, if given the opportunity, will use their considerable resources, both in and out of prison, to physically harm anyone who has provided

2

information to law enforcement about the gang. It is vital here that Plaintiffs and their attorneys not be given information that could lead to the identity of inmates who have provided CDCR with information about activities of gang members and associates.

6. Gang members and associates share information with each other about crimes they have committed, assaults they have authorized, and plans to promote the gang. Inmates who debrief and share that information with law enforcement are subject to punishment by fellow gang members who do not want their own information disclosed.

7. Inmates who choose to debrief are seen by the Mexican Mafia, Aryan Brotherhood, Nuestra Familia, Nazi Low Riders, Northern Structure, and Black Guerilla Family as committing treason. Even the appearance of cooperating with law enforcement can result in punishment by death. The Black Guerilla Family, for example, requires members to take an oath that states that any violation of the gang's confidence is punishable by death. So, too, the Mexican Mafia requires a "blood in, blood out" commitment to the gang, meaning that inmates who seek membership agree upon request to commit acts of violence on behalf of the gang, and attempts to leave the gang will also be met with violence.

8. Even confidential information that was collected five, ten, or fifteen years in the past must be kept confidential. Gang membership is for life. Those inmates who were documented to be involved five, ten, and fifteen years ago are the leaders of the gang today. These gangs require members and associates to deny the existence of the gang and their involvement in it. The danger inherent in the release of confidential information does not diminish over time. I am personally aware of individuals who have been in hiding for over thirty years because they have committed "treason" in the eyes of prison gangs by debriefing and voluntarily leaving the prison gang life.

9. For these reasons, CDCR cannot jeopardize individual, public, or institutional safety by providing Plaintiffs with a list of inmates who have debriefed or requested to debrief.

**Confidential Gang Information**

10. I am informed that Plaintiffs in this case seek confidential information related to investigations, validations, and active/inactive reviews of the ten named plaintiffs and other

3

Prelip Decl. ISO Opp. Mot. Compel (C 09-05796 CW)

validated gang members and associates. Disclosing such information to anyone outside of CDCR is highly dangerous. Such information includes current threats against members of the community and other inmates. Because this kind of information is only known to a small group of individuals, disclosing such information automatically results in disclosing the identity of the group of individuals who could have provided the information to law enforcement.

11. I am also informed that Plaintiffs in this case seek confidential information relating to lists of validated gang members and associates and their locations. Disclosure of the names and locations of inmates validated as gang members and associates would be highly dangerous and would put those inmates at risk for violence by rival gang members

12. The transmission of information among prison gangs is sophisticated, even in the Pelican Bay SHU. For example, prison gangs keep extraordinarily detailed records of inmate movement. By keeping track of who left the tier on what date, at what time, and for how long, prison gangs ensure that their members and associates are not providing information to law enforcement. Upon an inmate's return from a two-hour medical appointment, for example, the gang record keeper will regularly require the inmate produce a medical receipt or other proof of the appointment. Information on such movement can be compared with CDCR confidential documents that state when and where information was obtained. Even without providing names of informants, prison gangs can deduce the source of the information from a date alone.

13. Similarly, prison gangs keep very detailed records about upcoming inmate releases. If a gang member or associate is set to leave CDCR custody, other members and associates will give him notes to transport out of prison, often secreted in body cavities. Inmates associated with the gang who leave CDCR custody are also frequently directed to commit assaults or other acts outside of prison on behalf of the gang.

14. Information that is deemed confidential under Cal. Code Regs., tit. 15 § 3321, such as debrief reports, must be kept confidential to protect individual and institutional safety and the public. Inmates who debrief provide information that is ultimately captured in lengthy debrief reports regarding the particular gang and any activity or knowledge that the debriefer has about the gang. Many of these reports span hundreds of pages and implicate dozens of inmates. These

4

Prelip Decl. ISO Opp. Mot. Compel (C 09-05796 CW)

reports are not limited to information provided by the debriefer, because they also include corroborating information from other inmates and other incidents. Information provided during the debriefing process is verified by independent investigation to ensure its accuracy. Thus, releasing a debrief report not only endangers the debriefer and those he has implicated, but also other inmates who may have provided corroborating information.

15. Disclosure of confidential information regarding these inmates' gang activity must be prevented to protect the sources of that information from physical harm. Moreover, under title 15, what information can be shared with the inmate is provided in a "Confidential Information Disclosure Form, CDC Form 1030." When confidential information is used in investigating, validating, or disciplining an inmate, inmates are provided with the Form 1030, which details the use of the confidential information, the reliability of the source, and a description of any information that is not confidential. These forms are not a mere formality; many give specific information. For example, Plaintiff Todd Ashker in this case filed a Form 1030 with the Court regarding stopped mail. (ECF No. 157-2 p. 21.) It listed the date on which a letter was received, the identity of the letter's sender, the need for confidentiality, and the content of the letter to the extent consistent with protecting institutional and public safety and security.

### Gang-related Training Materials

16. I am informed that Plaintiffs in this case seek gang training materials and materials used by gang investigators in validating inmates as members or associates of gangs. Documents used in gang training sessions are often treated as confidential. Gang training frequently reference confidential information, including information about gang symbols and tactics and information gathered from investigations such as the identity of informants and debriefing inmates, excerpts of interviews with them, and pictures of inmate art work and tattoos.

17. Disclosure of materials regarding CDCR's efforts to combat prison gangs compromises ongoing gang investigations. It is crucial that prison gang members and associates do not know the extent of CDCR's knowledge of each gang's activities. In addition to endangering the lives of individuals who provide such information, if gang affiliates learn intelligence gathered by OCS, such intelligence becomes useless.

5

18. Disclosure of gang intelligence information also causes prison gang members to develop new means of communication and operations to better avoid detection, frustrating CDCR's efforts to combat dangerous gang activity and violence.

19. For example, inmate-visits at the Pelican Bay SHU are audio recorded and videotaped. To avoid having their communications monitored, gang members and associates frequently use hand signals, communicate by holding contraband notes up to the glass and then eating the notes, having visitors write notes on their hands or on paper, and by speaking in foreign languages that are not their native language but that they have learned in prison for this purpose.

20. The risk of disclosure of confidential information is real and serious, even where a protective order is in place. A protective order in cases where inmates are represented by counsel is inadequate to protect against the disclosure of information. First, because inmates have demonstrated a prior history of breaking the law and are still imprisoned, the threat of contempt is unlikely to deter an inmate from disseminating confidential information to other inmates. Second, a protective order does not sufficiently protect against attorneys' disclosure of safety and security information to inmates, whether through inadvertence or otherwise. In this latter regard, I am personally aware of instances of inmates being found with debrief reports of other inmates in their property. I am aware of instances in which even protective orders issued by courts have been insufficient to stop confidential documents from reaching inmate-plaintiff's hands, or those of other inmates. For these reasons, I believe the potential for misuse of information exists even where there is a protective order that theoretically prevents disclosure to inmates.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed in Rancho Cordova, California, on May 24, 2013.

J. Prelip
Senior Special Agent
Office of Correctional Safety

SF2012204868

6

Prelip Decl. ISO Opp. Mot. Compel (C 09-05796 CW)