JULES LOBEL (*pro hac vice*)
Email: jll3@pitt.edu
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email: aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email: rachelm@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6478
Fax: (212) 614- 6499

GREGORY D. HULL (Bar No. 57367)
Email: greg.hull@weil.com
BAMBO OBARO (Bar No. 267683)
Email: bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Tel: (650) 802-3000
Fax: (650) 802-3100

Attorneys for Plaintiffs
(Additional counsel listed on attached page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ASHKER, et. al, on their own behalf, and on behalf of a class of similarly situated prisoners,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR OF THE STATE OF CALIFORNIA, et. al,<br><br>Defendants. | Case No. 4:09-cv-05796 CW<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO THE MOTION TO COMPEL**<br><br>Local Rule 37-2<br><br>Honorable Nandor Vadas<br><br>June 25, 2013<br>1:00 p.m.<br>Courtroom 205A |

I. **Plaintiffs complied with the requirement to meet and confer, and grouped the discovery requests by subject to make the motion more manageable, not less.**

Plaintiffs met and conferred with defense counsel several times—by letter, email, and over the phone. Defendants argued that Plaintiffs "unilaterally abandoned the meet and confer process," but that is wrong. (Defs.' Opp. to Pls.' Mot. to Compel (Doc. No. 211) at 4.) The process reached its natural end before Plaintiffs sought the Court's relief. (*See infra*, Carbone Decl. ¶ 2.) Nevertheless, Plaintiffs look forward to the meet and confer scheduled for June 19.

Regarding the structure of the motion to compel, and contrary to Defendants' assertion, Plaintiffs did not "misrepresent the nature of their requests." (Defs.' Opp. at 4.) It would be impossible to misrepresent the requests because the exhibit to the motion included the requests verbatim.

Plaintiffs summarized and grouped the requests by subject matter to make the analysis easier. Considering the number of requests at issue, the best way to discuss the requests was by topic. Many requests cover similar ground and are relevant for similar reasons, so addressing each individually would have been needlessly repetitive. Contrary to Defendants' claim that the "analysis [is] nearly impossible," grouping the requests made the analysis simpler. (Defs.' Opp. at 4.)

II. **Plaintiffs seek a reasonable timeline for when Defendants will start producing documents for the undisputed requests.**

Plaintiffs acknowledge that Defendants produced thousands of documents so far—those are not sought in the motion to compel. Of course the documents already produced are not at issue here. Plaintiffs merely want to know which requests Defendants have started producing, and for the rest, when Defendants will start producing documents. For all the thousands of pages of documents, Plaintiffs remain clueless *which* document request the production so far responds to.

**III.  The Court should grant the motion to compel because Plaintiffs have a need for the discovery.**

    **A.  The burden of producing documents, if "massive" as Defendants claim, is self-imposed.**

Defendants claim that responding to Plaintiffs' requests requires a manual review of thousands of inmates' central files and imposes a "massive burden." (Defs.' Opp. at 9.) This burden stems solely from Defendants' choosing a record-keeping system that renders information inaccessible.

For instance, Defendants argued that information about the total number of hearings held by the Pelican Bay Institutional Classification Committee (ICC) and inmates whom the ICC recommended for release from the SHU is "not readily accessible" because CDCR keeps these records only in the files of individual inmates, so gathering the information requires "an extensive manual file review." (Defs.' Opp. at 10.) That cannot be a valid defense.

CDCR may choose whatever record-keeping system it wishes, and it chose, in essence, no system at all. The results of ICC hearings are scattered among several thousand individual files. Separating records among thousands of files necessarily makes the information harder to locate and analyze. So why keep records that way?

Defendants and CDCR have a legal obligation to provide information about their activities. The Government Code grants everyone—not just Plaintiffs—a "fundamental and necessary right" of access to information concerning the conduct of public agencies. Cal. Gov't. Code § 6250. And the governing regulations in Title 15 confirm the right to know what CDCR does with public funds for the public good: "Correctional facilities and programs are operated at public expense for the protection of society. The public has a right and a duty to know how such facilities and programs are being conducted." Cal. Code Regs. tit. 15, § 3260. "The public must be given a true and accurate

picture of department institutions and parole operations." *Id.* So by state law, CDCR has an obligation to keep records in way that is publicly accessible.

Defendants now claim that because they shuffled the information among several thousand inmate files, they made it too difficult to collect. The "massive burden" is self-imposed and should not act as a defense.

**B.     Plaintiffs properly sought discovery related to other inmates.**

Defendants' argument that discovery should be limited to the named plaintiffs lacks merit. As explained in the Motion, even if the court does not certify the class, Plaintiffs will still be entitled to discovery about SHU-wide practices. Proving the due-process cause of action requires showing that CDCR does not provide meaningful review of the *named* Plaintiffs' gang validations. (Mot. to Compel at 1-2.) Plaintiffs will prove that CDCR's reviews are meaningless by showing that SHU-wide, the reviews almost never alter any inmates' gang validation. Likewise, SHU-wide information is discoverable to prove the 8th Amendment cause of action because it will indicate that the named Plaintiffs are put at risk for harm. (Mot. to Compel at 1-2.) Thus, discovery for inmates other than the named Plaintiffs is appropriate independent of the class-certification motion.

As for Defendants' privacy objection (Defs.' Opp. at 12-13), this case has a protective order in place. (Docket No. 182.)

**C.     Plaintiffs' requests for budget information do not conflict with any of their allegations.**

Defendants suggested that Plaintiffs' budget-related discovery "conflicts" with Plaintiffs' factual allegations. (Defs.' Opp. at 13.) No conflict exists.

It is a fact that housing inmates in the SHU costs thousands of dollars more than housing them in general population. It is also a fact that by necessity, prison conditions reflect the amount spent on the facility. Those two facts are not in conflict.

The budget requests show more than just *how much* gets spent—they show *how* the money gets allocated. Conditions may be unconstitutional in a prison that spends all its money on correctional officers and ever-more-restrictive housing. But the same amount spent on rehabilitation, medical- and mental-health treatment, food, and housing would make a constitutional difference. In short, how money is allocated affects conditions. Discovery of budget requests is therefore appropriate.

### D. Defendants misunderstood the law on why conditions in administrative segregation are relevant here.

Defendants argued that Plaintiffs "conceal[ed] the breadth" of requests relating to administrative segregation (Ad-Seg), and that the requests are irrelevant. (Defs.' Opp. at 13-14.)

First, Plaintiffs could not have concealed any request because we included each request in the exhibit to the motion.

Second, Defendants bolstered Plaintiffs' argument that conditions in administrative segregation (Ad-Seg) are relevant to whether Plaintiffs have a protected liberty interest in avoiding SHU confinement. The Ninth Circuit has said in explicit terms that Ad-Seg conditions are relevant. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (noting that courts use three guideposts, including whether the challenged condition "mirrored those conditions imposed . . . in administrative segregation"). Defendants confirmed Ad-Seg's relevancy by noting that "comparisons with administrative segregation" implicate the finding of a liberty interest. (Defs.' Opp. at 14.) We cannot "compare" the SHU with Ad-Seg without knowing the conditions in both.

Although Defendants assumed that a "comparison[]" between SHU and Ad-Seg would "cut against the finding of a liberty interest," (*id.*), that is wrong. If the comparison reveals differences between SHU and Ad-Seg, that *favors* finding a liberty interest. *Serrano*, 345 F.3d at 1078. The comparison would only cut against finding a liberty interest if the comparison revealed that

conditions in the SHU "mirrored those conditions" in Ad-Seg. *Id.* Defendants are wrong, because the "comparison" could favor either party.

Ninth Circuit caselaw leaves no doubt that conditions in Ad-Seg are relevant, *Serrano*, 345 F.3d at 1078, and Defendants conceded that Ad-Seg conditions are relevant because they affect whether Plaintiffs have a protected liberty interest at stake.

### E. Defendants cannot avoid discovery simply because the information may be available elsewhere.

Defendants argued that they should not have to provide information and documents that are publicly available. (Defs.' Opp. at 14-15.) Defendants point out that some similar—though not identical—information can be found on the Receiver's Office website. (*Id.*)

Even if some of the information and documents are available elsewhere, they fall within the scope of discovery and Defendants should be compelled to produce them. For instance, Defendants objected that they should not have to provide the C.V. of their employed medical- and mental-health personnel because their C.V.'s are in control of the Receiver's Office. (*Id.*) Not only do Defendants have this information—they surely evaluated the C.V. before hiring these professionals—but producing the C.V.'s reveals these doctors' identities. Asking Defendants is the most reasonable way to learn who works and worked in the prison.

Defendants also objected to producing reports, studies, and statistics regarding mental-health care at Pelican Bay. (Defs.' Opp. at 15.) These reports are either created by CDCR or prepared at CDCR's request, so Defendants have these documents and can produce them without substantial burden. And like with the C.V.'s, Plaintiffs have no way of knowing what reports CDCR created or requested other than asking Defendants through discovery.

Although Defendants pointed out that the word "produced" has more than one meaning, (*id.*), the clear meaning in Plaintiffs' motion was that Defendants "produced" these reports and statistics in the same way that they "produce" a variety of reports every year. *See*

PLAINTIFFS' REPLY TO DEFENDANTS' 5 Case No. 4:09 CV 05796 CW
OPPOSITION TO THE MOTION TO COMPEL

http://www.cdcr.ca.gov/Reports/index.html. Plaintiffs would not move to compel production of documents that Defendants already gave them.

Finally, Defendants are wrong that Plaintiffs can get the documents on the web. (Defs.' Opp. at 15.) We asked for documents showing "which psychotropic medications were actually prescribed to PBSP SHU inmates between 2000 and 2012," and the formulary for the PBSP pharmacy. (Plts.' Mot. to Compel Ex. A at 20-21 (Doc Requests 60 and 61).) We asked for "psychotropic" medications "actually prescribed," so Defendants are wrong that we requested "all documents relating to drugs." (Defs.' Opp. at 15.) And Defendants admit that the online formulary contains "all medications prescribed within CDCR" and is not limited to Pelican Bay. (*Id.*)

## IV.  The protective order addresses Defendant's confidentiality concerns.

Defendants object to several discovery requests on the grounds that answering the requests endanger lives and threaten institutional security. (Defs.' Opp. at 15-19.) Defendants also object that the Protective Order is insufficient because Plaintiffs' attorneys may reveal confidential information to inmates "through inadvertence *or otherwise*." (*Id.* at 19 (emphasis added).)

Inadvertent disclosure is bad enough, but the words "or otherwise" imply that Plaintiffs' attorneys might intentionally violate the protective order and share confidential information with inmates. Any violation will bring possible sanctions and contempt. And although Defendants refer to "many instances" where protective orders did not prevent confidential documents from reaching inmates, Defendants cite exactly zero. (Defs.' Opp. at 19.) The only support for the "many instances" when a protective order failed comes from the declaration of J. Prelip with the Office of Correctional Safety, who declared "I am aware of instances" but failed to cite a single one. (Prelip Decl. at ¶ 20.) Nor did Prelip state that the inmates received confidential documents *from attorneys* who violated a protective order, as opposed to some other source. (*Id.*) Prelip's declaration offers rumors, but no facts.

| PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO THE MOTION TO COMPEL | 6 | Case No. 4:09 CV 05796 CW |

Further, Plaintiffs' counsel Charles Carbone received similar information in *Castillo v. Alameida, Jr.*, No. C-94-2847-MJJ-JCS, (N.D. Cal.). (*See infra* Decl. of Charles Carbone ¶ 4.) In that case, the protective order sufficed to protect CDCR's interests. (*Id.*)

The protective order will address Defendant's concerns over confidentiality. The order requires that Plaintiffs' attorneys ensure that no confidential information finds its way to inmates "through inadvertence or otherwise."

Dated: May 31, 2013

Respectfully submitted,

/s/ Charles Carbone, Esq.
Charles Carbone, Esq.

Attorney for Plaintiffs
ASHKER, et al.

**ADDITIONAL PLAINTIFFS' COUNSEL**

CHARLES F.A. CARBONE (SBN 206536)
Email: charles@charlescarbone.com
EVAN CHARLES GREENBERG (SBN 271356)
Email: evan@charlescarbone.com
LAW OFFICES OF CHARLES CARBONE
P.O. Box 2809
San Francisco, CA  94126
Tel: (415) 981-9773
Fax: (415) 981-9774

MARILYN S. MCMAHON (SBN 270059)
Email: marilyn@prisons.org
CALIFORNIA PRISON FOCUS
1904 Franklin Street, Suite 507
Oakland, CA  94612
Tel: (510) 734-3600
Fax: (510) 836-7222

ANNE BUTTERFIELD WEILLS (SBN 139845)
Email: aweills@aol.com
SIEGEL & YEE
499 14TH STREET, SUITE 300
Oakland, CA  94612
Tel: (510) 839-1200
Fax: (510) 444-6698

CAROL STRICKMAN (SBN 78341)
Email: carol@prisonerswithchildren.org

1  LEGAL SERVICES FOR PRISONERS WITH CHILDREN
   1540 Market Street, Suite 490
2  San Francisco, CA  94102
   Tel:  (415) 255-7036
3  Fax:  (415) 552-3150

PLAINTIFFS' REPLY TO DEFENDANTS'        8        Case No. 4:09 CV 05796 CW
OPPOSITION TO THE MOTION TO COMPEL

DECLARATION OF CHARLES CARBONE

I, Charles Carbone, declare:

1. I am one of the Plaintiffs' attorneys of record in this case. My California state bar number is 206536, and I am admitted to practice before this Court.

2. During the months of calls and letters complying with the meet-and-confer requirement, I offered to meet Deputy Attorney General Adriano Hrvatin in person to discuss. Scheduling conflicts prevented an in-person meeting, but I was willing to meet in person and offered to do so.

3. Plaintiffs did not abandon the meet and confer process. We reached a point where the parties' positions appeared set. We met and conferred in good faith, including exchanging letters addressing the disputed discovery requests. After exchanging those letters and having several phone conversations, I concluded that further attempts to meet and confer would be fruitless. Plaintiffs did not abandon the process, it simply reached its end.

4. I was one of the lead attorneys representing the plaintiff in *Castillo v. Alameida, Jr.*, No. C-94-2847-MJJ-JCS, (N.D. Cal.). In that case, CDCR officials gave the plaintiffs' attorneys confidential information under a protective order which included the training materials for gang validations and confidential memoranda of debriefers and informants with sensitive names redacted. The protective order in *Castillo* was not violated and protected CDCR's confidential interests.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE: May 31, 2013                    /s/ Charles F.A. Carbone
                                       Charles Carbone, Esq.