GREGORY D. HULL (Bar No. 57367)
Email: greg.hull@weil.com
BAMBO OBARO (Bar No. 267683)
Email: bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Tel: (650) 802-3000
Fax: (650) 802-3100

JULES LOBEL (*pro hac vice*)
Email: jll3@pitt.edu
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email: aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email: rachelm@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6478
Fax: (212) 614- 6499

Attorneys for Plaintiffs
(Additional counsel listed on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GEORGE RUIZ, et al.,<br><br>                    Plaintiffs,<br><br>       v.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>                    Defendants. | Case No. 4:09 CV 05796 CW<br><br>**PLAINTIFFS' OPPOSITION TO CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION'S MOTION TO INTERVENE**<br><br>Date: August 29, 2013<br>Time: 2:00 pm<br>Place: Courtroom 2, 4th Floor<br><br>Honorable Claudia Wilken |

...

...

**TABLE OF CONTENTS**

**Page**

I. THE CCPOA FAILS TO MAKE A CASE FOR INTERVENTION AS OF RIGHT ...............1

    A. The CCPOA Has Not Cited a Single Case in Support of Its Motion to Intervene as of Right ..................................................................................................1

    B. The CCPOA Fails to Show a Significant, Legally Protected Interest in this Action as Required by Rule 24 ..................................................................................2

    C. The CCPOA's Interest Is Adequately Protected by the State of California ..................4

II. THE CCPOA FAILS TO MAKE A CASE FOR PERMISSIVE INTERVENTION ...............8

    A. The CCPOA Fails to Show a Claim or Defense Under Rule 24 ...................................8

    B. The CCPOA States No Independent Basis for Subject Matter Jurisdiction ..................9

    C. The CCPOA's Intervention Will Unduly Delay and Prejudice the Adjudication of the Original Parties' Rights .................................................................9

    D. The CCPOA's Intervention Is Not Timely ..................................................................12

III. THE CCPOA FAILS TO COMPLY WITH THE REQUIREMENTS OF RULE 24(C) ......................................................................................................................................13

IV. CONCLUSION ......................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ahanchian v. Xenon Pictures, Inc.*,
  624 F.3d 1253 (9th Cir. 2010) ....................................................................................................11

*Alaniz v. Tillie Lewis Foods*,
  572 F.2d 657 (9th Cir. 1978) ........................................................................................................9

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ......................................................................................................4

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
  966 F.2d 470 (9th Cir. 1992) ....................................................................................................8, 9

*Coleman v. Schwarzenegger*,
  No. CIV S-90-0520LKKJFMP, 2007 WL 2765757 (E.D. Cal. Sept. 19, 2007) ........................3

*Degge v. City of Boulder*,
  336 F.2d 220 (10th Cir. 1964) ....................................................................................................11

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ....................................................................................................2, 8

*Drake's Bay Oyster Co. v. Salazar*,
  No. 12-CV-06134-YGR, 2013 WL 451813 (N.D. Cal. Feb. 4, 2013) ........................................6

*Edwards v. Houston*,
  78 F.3d 983 (5th Cir. 1996) ........................................................................................................11

*Kremen v. Cohen*,
  No. 5:11-CV-05411-LHK, 2012 WL 2919332 (N.D. Cal. July 17, 2012) ...........................9, 14

*League of United Latin Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) ............................................................................................1, 4, 10

*Madrid v. Woodford*,
  60 Fed. R. Serv. 3d 56 (N.D. Cal. 2004) .....................................................................................3

*McDonald v. E.J. Lavino Co.*,
  430 F.2d 1065, 1074 (5th Cir. 1970) .........................................................................................13

*Orange Cnty. v. Air Cal.*,
  799 F.2d 535 (9th Cir. 1986) ..................................................................................................9, 13

*Perry v. Proposition 8 Official Proponents*,
  587 F.3d 947 (9th Cir. 2009) ....................................................................................................5, 6

*Petrol Stops Nw. v. Cont'l Oil Co.*,
    647 F.2d 1005 (9th Cir. 1981) ............................................................................................. 11

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) ................................................................................................. 1

*Sw. Ctr. For Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ................................................................................................. 2

*United States v. City of L.A.*,
    288 F.3d 391 (9th Cir. 2002) ................................................................................................. 3

*United States v. Oregon*,
    657 F.2d 1009 (9th Cir. 1981) ............................................................................................. 11

*United States v. Oregon*,
    745 F.2d 550 (9th Cir. 1984) ............................................................................................... 13

*United States v. Oregon*,
    913 F.2d 576 (9th Cir. 1990) ............................................................................................... 12

*United States v. Union Elec. Co.*,
    64 F.3d 1152 (8th Cir. 1995) ............................................................................................... 11

*United States v. Washington*,
    86 F.3d 1499 (9th Cir. 1996) ............................................................................................... 13

*Westlands Water Dist. v. United States*,
    700 F.2d 561 (9th Cir. 1983) ............................................................................................... 13

*Yniguez v. Arizona*,
    939 F.2d 727 (9th Cir. 1991) ................................................................................................. 1

**STATUTES**

Fed. R. Civ. P. 1 ............................................................................................................................ 11

Fed. R. Civ. P. 24(a)(1)(B) ............................................................................................................. 1

Fed. R. Civ. P. 24(a)(2) ................................................................................................................... 4

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................................................. 8

Fed. R. Civ. P. 24(b)(3) ............................................................................................................... 8, 9

Fed. R. Civ. P. 24(c) ......................................................................................................... 8, 13, 14

Government Code Section 3512 ................................................................................................ 2, 3

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller et al.,
    Federal Practice & Procedure §§ 1913, 1920 (3d ed.) ............................................................. 11

Restatement (Second) of Contracts (1981) ....................................................................................... 11

The California Correctional Peace Officers' Association (the "CCPOA") seeks to intervene in this private civil suit based on an interest in the safety of correctional workers that is already adequately represented by the State of California and without asserting a legal claim or defense. Rule 24, however, allows for intervention only to protect significant, legally protectable interests that the existing parties *will not adequately represent* or to assert a *claim or defense* that shares a common question of law or fact with the ongoing action.

Here, the CCPOA meets neither test. Its motion fails to make a case for either intervention as of right or for permissive intervention. Hence, the CCPOA's motion to intervene should be denied.

## I.     THE CCPOA FAILS TO MAKE A CASE FOR INTERVENTION AS OF RIGHT

Intervention as of Right requires the intervenor to (1) claim an interest relating to the property or transaction that is the subject of the action, (2) be in such a position that disposing of the action may as a practical matter impair or impede the movant's ability to protect that interest, and (3) show that existing parties do not adequately represent that interest. Fed. R. Civ. P. 24(a)(1)(B).

### A.     The CCPOA Has Not Cited a Single Case in Support of Its Motion to Intervene as of Right

The CCPOA's brief cites only two cases in support of its argument for intervention as of right and both are completely inapposite. *See* CCPOA's Mtn. to Intervene at 4–5, ECF No. 233-2 [hereinafter CCPOA Brief]. The CCPOA cites *Yniguez v. Arizona*, 939 F.2d 727 (9th Cir. 1991), for the proposition that Article III standing is not a requirement for intervention as of right in the Ninth Circuit. CCPOA Brief at 4:7–10. Yet the only other case it cites in support of intervention as of right, *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006), explicitly recognized that the opinion in *Yniguez* "was vacated by the Supreme Court" and "'is thus wholly without precedential authority.'" *Id.* at 954 n.8 (quoting *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 n.5 (9th Cir. 1997)). Aside from those two cases—one that is without any precedential value and the other recognizing that fact—the CCPOA fails to cite any authority to show that it meets the requirements for intervention as of right.

### B. The CCPOA Fails to Show a Significant, Legally Protected Interest in this Action as Required by Rule 24

In order to intervene as of right, the movant must have "a 'significant protectable interest' relating to the property or transaction that is the subject of the action. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). To constitute a "significant protectable interest," the movant's interest must be (1) "protected under some law" and (2) there must be a relationship between its legally protected interest and the plaintiff's claims. *Id.*

Here, the CCPOA fails to identify a significant, legally protected interest relating to the subject of this action. Its brief vaguely asserts two potential "interests," neither of which is legally protected. First, the CCPOA mentions its collective bargaining agreements with the State, which are known as Memoranda of Understanding ("MOU"). *See* Alexander Decl. at 1–2. While contractual interests are legally protected within the meaning of Rule 24, *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001), neither the Motion to Intervene nor the attached Alexander Declaration mentions any specific provision of the MOU that refers to the SHU, STGs, or any procedures relating to inmate placement or gang validation. As such, the CCPOA fails to show that it has a protectable interest in the SHU or any procedures related to it derived from its MOU with the State of California and, therefore, has shown no protectable interest in the procedures at issue in this case.

Second, the CCPOA asserts that it has an interest in safeguarding the security of its members. *See* CCPOA Brief at 4:12–13 ("The current parties, particularly the defendants in this case, do not adequately represent CCPOA's interest, which is safeguarding the security of its members, the correctional officers who will face increased violence depending upon the outcome of this case."); Alexander Decl. at 2 ("CCPOA has an interest in the working conditions of correctional employees, especially those conditions concerning the safety of correctional employees."). Yet the CCPOA fails to provide any authority that such an interest is *protected by some law*. The closest it comes is in the Alexander Declaration, which obliquely claims that the CCPOA's status as the collective bargaining agent for correctional peace officers under Government Code Section 3512 gives it an interest in "the working conditions of correctional employees." *See* Alexander Decl. at 1–2 (describing the

OPPOSITION TO MOTION TO INTERVENE           2           Case No. 4:09 CV 05796 CW

1  CCPOA's role as the collective bargaining agent for correctional peace officers prior to asserting
2  that "[a]ccordingly, CCPOA has an interest in the working conditions of correctional employees").
3  But Section 3512 protects the CCPOA's right to negotiate the working conditions of its members *in*
4  *the collective bargaining process*.  Section 3512 does not give the CCPOA or its members any right
5  to a particular set of working conditions; those conditions must be achieved through collective
6  bargaining and protected by contract.  Here, again, the CCPOA fails to assert that any provision of
7  the current MOU gives it a legally protected interest in the SHU or the procedures relating to it.
8        Cases addressing the protectable interest issue properly focus on whether the union
9  demonstrated that its contractual rights under an MOU were implicated and/or whether relief was
10 sought directly against union members, not, as here, on an untethered, general interest in working
11 conditions.  *See, e.g.*, *Madrid v. Woodford*, 60 Fed. R. Serv. 3d 56 (N.D. Cal. 2004) ("With respect
12 to the first factor—the existence of a significant protectable interest relating to the action—it is well
13 established that the CCPOA has a protectable interest in its collectively bargained agreement with
14 the CDC."); *United States v. City of L.A.*, 288 F.3d 391, 400 (9th Cir. 2002) ("To the extent that it
15 contains or might contain provisions that contradict terms of the officers' MOU, the Police League
16 has an interest.  Further, to the extent that it is disputed whether or not the consent decree conflicts
17 with the MOU, the Police League has the right to present its views . . . ."); *id.* ("However, the Police
18 League claims a protectable interest because the complaint seeks injunctive relief against its member
19 officers and raises factual allegations that its member officers committed unconstitutional acts in the
20 line of duty.").  One case, *Coleman v. Schwarzenegger*, which the CCPOA does not cite in its brief,
21 held that "[i]t is plain that California's prison guards are affected by the conditions of the prisons in
22 which they work, and that resolution of the plaintiffs' request for relief from prison overcrowding
23 will affect the membership of the CCPOA" in granting the CCPOA's motion to intervene it that
24 case; however, that opinion cited no legal authority and provided no analytic under Rule 24 in
25 support of that holding.  No. CIV S-90-0520LKKJFMP, 2007 WL 2765757, at *3 (E.D. Cal. Sept.
26 19, 2007).
27       In summary, while the CCPOA may have an interest in bargaining collectively for the
28 working conditions of its members, it does not have a legally protected interest in particular working

OPPOSITION TO MOTION TO INTERVENE       3       Case No. 4:09 CV 05796 CW

conditions unless those working conditions are protected by a contract executed for its benefit. Since the CCPOA has failed to assert that the MOU covers the procedures challenged in this case and has failed to assert any independent legal basis for an interest in the safety of the working conditions of its members, the CCPOA has failed to show a significant, legally protected interest at issue in this case. Further, since it has no such interest in the case, disposing of the action will not, as a practical matter, impair or impede the movant's ability to protect that interest. Fed. R. Civ. P. 24(a)(2).

### C. The CCPOA's Interest Is Adequately Protected by the State of California

Rather than establishing that the State of California will not adequately represent its purported interests, the CCPOA's brief does the opposite. It proves that the CCPOA's interests are aligned with those of the State of California and that the State adequately represents those interests.

The Ninth Circuit considers three factors in determining the adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). In addition, courts often discuss an additional consideration, which is how the intervenor's interest compares with the interests of existing parties. *See, e.g.*, *id.* ("The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties."). Moreover, "[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.*; *Wilson*, 131 F.3d 1297, 1305 ("Under well-settled precedent in this circuit, where an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.") (internal quotations omitted).

First, the CCPOA admits in its brief that its interests in the litigation are aligned with those of the State of California. The CCPOA's brief "maintains that CDCR and CCPOA share a vital interest in controlling disruptive prison gang activities which outweigh the restrictions and limitations the SHU places on inmates." CCPOA Brief at 7:10–12. In support of this alignment, the CCPOA

OPPOSITION TO MOTION TO INTERVENE 4 Case No. 4:09 CV 05796 CW

1 admits that it will make the same arguments as the State of California.  The CCPOA's brief states:
2 "Here, CCPOA presents substantially the same defenses as those the defendants are anticipated to
3 present based upon their motion to dismiss."  CCPOA Brief at 8:22–23.  It also admits that "[i]n this
4 particular case, CCPOA and the defendants share common defenses in maintaining the SHU and the
5 integrity of the screening processes which determine which inmates enter the general population or
6 remain in the SHU."  CCPOA Brief at 7:7–9.  Its brief also states that "[b]oth CCPOA and the
7 defendants are concerned about a release of inmates from the SHU without any type of screening
8 process."  CCPOA Brief at 8:23–24.  Earlier, it admits that "CDCR and CCPOA both believe that a
9 prison system cannot function properly without sufficient control over inmates and disruptive gang
10 activity."  CCPOA Brief at 7:15–17.  The CCPOA even admits that it will rely on the same evidence
11 as the State of California:  "Both CCPOA and the defendants will rely on such facts and policies in
12 maintaining a screening process for inmates prior to release and CCPOA will argue that an STG
13 assessment is more conducive to officer safety than the release without assessment urged by
14 Plaintiffs."  CCPOA Brief at 8:6–9.

15 　　　　　Second, the CCPOA fails to show that the State of California is incapable of making or
16 unwilling to make the same arguments that it would make.  It offers no facts, or even argument, in
17 support of such a showing.  Instead, the CCPOA's brief admits precisely the opposite.  The
18 CCPOA's statement that it "presents substantially the same defenses as those the defendants are
19 anticipated to present based on their motion to dismiss" admits both that the state has already made
20 (in its motion to dismiss) and will continue to make "substantially the same" arguments that the
21 CCPOA intends to make.  CCPOA Brief at 8:22–23.  And the CCPOA's statement that "CCPOA
22 and the defendants share common defenses in maintaining the SHU and the integrity of the
23 screening processes which determine which inmates enter the general population or remain in the
24 SHU" further reinforces this failure.  CCPOA Brief at 7:7–9.

25 　　　　　Third, the CCPOA fails to show that it would offer any necessary elements to the proceeding
26 that other parties will neglect.  It completely fails to show that the State of California has "conceded
27 any *necessary* element to the proceeding."  *See Perry v. Proposition 8 Official Proponents*, 587 F.3d
28 947 (9th Cir. 2009) (internal quotation omitted) (holding that the movant failed to show that it would

OPPOSITION TO MOTION TO INTERVENE　　　　　　　5　　　　　　　Case No. 4:09 CV 05796 CW

1  offer any necessary elements that other parties would neglect where the defendant had not conceded
2  elements of the case in stipulations).  To the contrary, the state thus far has mounted a "full and
3  vigorous defense" of the case.  *Id.*

4        The CCPOA's claims of different interests from the State are unpersuasive and contradicted
5  by its other admissions.  While its brief contains the conclusory allegation that "[t]he current parties,
6  particularly the defendants in this case, do not adequately represent CCPOA's interest," CCPOA
7  Brief at 4:12–13, the CCPOA later "maintains that CDCR and CCPOA share a vital interest in
8  controlling disruptive prison gang activities which outweigh the restrictions and limitations the SHU
9  places upon inmates."  CCPOA Brief at 7:10–12.  Further, although the Declaration of Charles
10 Alexander, attached to the CCPOA's brief, argues that "CCPOA anticipates a need to present
11 different information and legal arguments than might otherwise be presented by Defendants,"
12 Alexander Decl. at 3, in the same paragraph he admits that "CCPOA is hopeful that the Defendants
13 will present a vigorous defense to Plaintiffs' prayers for relief."  Alexander Decl. at 3.  Moreover,
14 Alexander's assertion is contradicted by the statements in the CCPOA's brief that the CCPOA and
15 the State "share common defenses in maintaining the SHU and the integrity of the screening
16 processes which determine which inmates enter the general population or remain in the SHU,"
17 CCPOA Brief at 7:7–9, and "present[] substantially the same defenses."  CCPOA Brief at 8:22–23.
18 Alexander's statement that "[o]ur interests in this action are not identical . . . in that CCPOA wishes
19 to advocate for the specific interest of officer safety and staff security" is unavailing.  Alexander
20 Decl. at 3.  Merely providing a "different 'point of view'" is insufficient to establish that the
21 CCPOA's differing experience or expertise is "necessary to the elements of the proceedings."
22 *Drake's Bay Oyster Co. v. Salazar*, No. 12-CV-06134-YGR, 2013 WL 451813, at *7 (N.D. Cal.
23 Feb. 4, 2013).

24       The CCPOA argues—again, obliquely—that the state may not represent its interests based on
25 the State's introduction of the "STG pilot program."  The CCPOA suggests, without plainly stating,
26 that it would argue against the state's introduction and use of the STG pilot program because the
27 final steps of the program place SHU prisoners in the general population when it states that "[t]he
28 defendants will not be adequately scrutinizing the effects of SHU inmates released into the general

OPPOSITION TO MOTION TO INTERVENE        6        Case No. 4:09 CV 05796 CW

1  population." CCPOA Brief at 5:4–10. Defendants also vaguely assert that the State of California

2  will not be adequately scrutinizing the effects of SHU inmates' release, with the argument that

3  "Defendants have indicated that 'CDCR does not intend to return to its enforcement of the

4  regulations challenged by Plaintiffs in this case.'" CCPOA Brief at 5:12–13 (quoting Mtn. to

5  Dismiss at 10). But that argument is not persuasive, because the introduction of the STG Pilot

6  program does not suggest that the State will not be adequately defending the procedures challenged

7  in this case. "To the contrary," the State asserts that it stands by the constitutionality of the

8  procedures challenged by the Plaintiffs in this case, stating "the regulations [challenged by the

9  Plaintiffs] have been applied and consistently found to meet constitutional requirements." *Id.*

10  Furthermore, the State expressly argues that the Plaintiffs' requested relief will compromise

11  the safety of the prison, further undermining the CCPOA's contention that the State of California

12  will not "adequately scrutinize" the effects of release of SHU inmates on the safety of correctional

13  officers. *Compare* Mtn. to Dismiss at 2:2–3 ("Through this case, however, Plaintiffs want to be

14  released from the SHU, without consideration to the current threat they pose to prison safety and

15  security."), *with* CCPOA Brief at 5:8–10 ("The defendants will not be adequately scrutinizing the

16  effects of SHU inmates released into the general population.").

17  Moreover, these purported different interests alleged by the CCPOA are directly contradicted

18  by the CCPOA's own repeated admissions, quoted above, that they and the State "share common

19  defenses in maintaining the SHU and the integrity of the screening processes which determine which

20  inmates enter the general population or remain in the SHU," CCPOA Brief at 7:7–9, "present[]

21  substantially the same defenses," CCPOA Brief at 8:22–23, "both believe that a prison system

22  cannot function properly without sufficient control over inmates and disruptive gang activity,"

23  CCPOA Brief at 7:15–17, "[b]oth . . . will rely on such facts and policies in maintaining a screening

24  process for inmates prior to release," CCPOA Brief at 8:6–9, and "[b]oth . . . are concerned about a

25  release of inmates from the SHU without any type of screening process." CCPOA Brief at 8:23–24.

26  Thus, the CCPOA's purported interest in officer safety is more than adequately represented

27  by the State of California. The CCPOA shares the same "ultimate objective" with the Defendants

28  and has done nothing to rebut the resulting "presumption of adequacy of representation."

1  **II.     THE CCPOA FAILS TO MAKE A CASE FOR PERMISSIVE INTERVENTION**

Permissive intervention requires that the proposed intervenor have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The motion to intervene must also be timely and there must be an independent basis for jurisdiction over the claim or defense asserted by the proposed intervenor. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). Further, permissive intervention must not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The trial court has discretion over whether or not to grant permissive intervention, and a denial of permissive intervention is reviewed for abuse of discretion. *Donnelly*, 159 F.3d at 411.

### A.     The CCPOA Fails to Show a Claim or Defense Under Rule 24

An express requirement of permissive intervention is that the intervenor "ha[ve] a claim or defense." Fed. R. Civ. P. 24(b)(1)(B). While an exception has been recognized where an intervenor seeks to modify a protective order, *Beckman Industries*—the only case cited by the CCPOA in support of its argument that its claims or defenses share common questions of law or fact—recognized that "the primary focus of Rule 24(b) is intervention for the purpose of litigating a claim on the merits." 966 F.2d at 472. The requirement that the intervenor have a claim or defense is buttressed by the additional requirement that the motion be "accompanied by a pleading that sets out the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), and that there be an independent basis for jurisdiction over the claims or defenses so asserted. *Beckman Indus.*, 966 F.2d at 473. Yet the CCPOA's Brief asserts neither a claim nor a defense. Its express purpose in intervening is to "argu[e] the impact the decision in this case may have upon the safety of the institution"—a far cry from litigating a claim or defense on the merits.

Moreover, aside from the CCPOA's conclusory statements, it fails to identify with any specificity whatsoever the "defense" it purports to assert. This is an unremarkable circumstance given that the CCPOA is not the subject of any claim made by the Plaintiffs and therefore has no defense to assert. A defense is a legal response to a claim, yet the CCPOA has not identified any claim, actual or potential, to which the ambiguous "defenses" it claims would be raised. Hence, the CCPOA fails to meet this requirement for permissive intervention.

**B.     The CCPOA States No Independent Basis for Subject Matter Jurisdiction**

An additional requirement for permissive intervention is that the Court have an independent basis for jurisdiction over the claims or defenses asserted by the intervenor. *Beckman Indus.*, 966 F.2d at 473. Remarkably, the CCPOA's Brief omits any mention of this requirement. Furthermore, the CCPOA's failure to identify the claim or defense it wishes to assert completely deprives the Court of the ability to determine whether there is an independent basis for subject matter jurisdiction over the CCPOA's claims or defenses. *See Kremen v. Cohen*, No. 5:11-CV-05411-LHK, 2012 WL 2919332, at *9 (N.D. Cal. July 17, 2012) ("Movant's failure to attach a pleading . . . deprives the Court of a basis for determining whether it has an independent basis for jurisdiction over Movant's claims or defenses."). Because the CCPOA has failed to show that there is an independent basis for subject matter jurisdiction over its purported claims or defenses, the CCPOA's Motion to Intervene should be denied.

**C.     The CCPOA's Intervention Will Unduly Delay and Prejudice the Adjudication of the Original Parties' Rights**

Permissive intervention should be denied if intervention will unduly delay or prejudice the adjudication of the existing parties' rights. Fed. R. Civ. P. 24(b)(3). In evaluating prejudice to other parties, "'courts have emphasized the seriousness of the prejudice which results when relief from long-standing inequities is delayed.'" *Orange Cnty. v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986) (quoting *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 658 (9th Cir. 1978)). Here, for almost four years, the Plaintiffs have been seeking relief from the twenty-two-plus hour per day solitary confinement that they have suffered for over a decade. Intervention by the CCPOA would unduly delay and prejudice the adjudication of that violation of the Plaintiffs' rights and would delay relief from that long-standing inequity. Intervention will lead to additional motions, additional discovery, and an additional party with adverse interests to the Plaintiffs' involved in settlement negotiations. The State's own Statement of Non-Opposition previews the additional expense and delay that intervention will create when it states that "the case's current schedule should be adjusted to give the CCPOA a full and fair opportunity to participate in this case going forward" and suggests delaying the already scheduled hearing on the Plaintiffs' class certification motion, the case management

1  conference already scheduled by the Court for August 22, and the settlement conference already
2  scheduled by Magistrate Judge Vadas for July 26.  Defendants' Statement of Non-Opposition to Cal.
3  Correctional Peace Officers Association's Mtn. to Intervene at 1:26–27, 2:2–10.

4  Moreover, this lawsuit has been ongoing since 2009, and the Defendants have sat on their
5  purported rights for almost four years.  Motions to intervene have been denied at the pretrial stage
6  where "a lot of water ha[s] already passed underneath [the] litigation bridge."  *Wilson*, 131 F.3d at
7  1303.  In *Wilson*, the Ninth Circuit affirmed denial of a motion to intervene that was filed before trial
8  where the complaint had been filed, a temporary restraining order and preliminary injunction had
9  been issued and appealed, four other sets of parties had intervened, a plaintiff class had been
10 provisionally certified, the plaintiffs had defeated a motion to dismiss, the defendants had answered,
11 partial summary judgment had been granted, and discovery had begun.  *Id.*  Here, the Plaintiffs have
12 amended their complaint twice, faced and prevailed against multiple motions to dismiss, moved for
13 and litigated a preliminary injunction, the Defendants have answered the complaint, and the parties
14 have already had to agree to significantly modify the discovery and motion practice timetable.
15 Allowing intervention would upset the progress made in this case thus far by allowing for new
16 dispositive motions on the pleadings, additional discovery, and postponing already scheduled
17 hearings on pending motions.

18 Furthermore, intervention would obstruct settlement negotiations.  Settlement negotiations
19 and mediation between the Plaintiffs and the Defendants are ongoing.  Allowing the CCPOA to
20 intervene will significantly compromise these negotiations, which is the CCPOA's avowed intent.
21 *See* CCPOA Brief at 5:14–16 ("Accordingly, CCPOA has an interest in any settlement CDCR might
22 entertain or execute in the instant litigation, especially if that settlement calls for relaxing current
23 SHU practices or making concessions to inmates that might endanger correctional officers.").
24 Allowing the CCPOA to intervene on the thin showing discussed herein and with the avowed
25 objective of obstructing settlement negotiations would defeat the mandate of the Federal Rules of
26 Civil Procedure to construe and administer the Rules "to secure the just, speedy, and inexpensive
27 determination of every action and proceeding."  Fed. R. Civ. P. 1; *Ahanchian v. Xenon Pictures,*
28 *Inc.*, 624 F.3d 1253, 1255 (9th Cir. 2010) ("[District Courts'] discretion is circumscribed by the

1  courts' overriding obligation to construe and administer the procedural rules so as 'to secure the just,
2  speedy, and inexpensive determination of every action and proceeding.'") (citing Fed. R. Civ. P. 1);
3  Charles Alan Wright & Arthur R. Miller et al., 7C Federal Practice & Procedure § 1913 (3d ed.) ("In
4  determining whether extra time would be an undue delay the court must remember that Rule 1
5  charges it with responsibility for both the 'just' and the 'speedy' determination of the action and it
6  must balance whatever delay may occur against the advantages of the disposition of all of the claims
7  or defenses in one action.") (internal citation omitted).

8    Further, the cases cited by the CCPOA do not support their argument that intervention would
9  not cause undue delay.  Two of the four cases it cites affirmed trial court decisions denying
10 intervention. *See Degge v. City of Boulder*, 336 F.2d 220, 222 (10th Cir. 1964) ("The record shows
11 that the trial court considered these factors and determined that such delay and prejudice would
12 result. We find no abuse of discretion."); *Petrol Stops Nw. v. Cont'l Oil Co.*, 647 F.2d 1005, 1010
13 (9th Cir. 1981) (affirming "the denial of appellants Clark and Martin's motion to intervene").  The
14 other two are from different circuits and are not binding precedent in this Court.  *United States v.*
15 *Union Elec. Co.*, 64 F.3d 1152 (8th Cir. 1995); *Edwards v. Houston*, 78 F.3d 983 (5th Cir. 1996).

16   An additional reason that the CCPOA's intervention would prejudice the adjudication of the
17 existing parties' disputes is tied to the CCPOA's lack of a claim or defense.  Allowing the CCPOA
18 to intervene here would give the CCPOA a right to continue this lawsuit even if a settlement
19 agreement were to be reached with the original defendants.  The right to bring a lawsuit is a valuable
20 interest. *See* Restatement (Second) of Contracts § 74 (1981) (discussing when the surrender of even
21 invalid legal claims or defenses can constitute consideration).  When a motion to intervene is
22 granted, the intervenor "enter[s] the suit with the status of [the] original parties." *United States v.*
23 *Oregon*, 657 F.2d 1009, 1014 (9th Cir. 1981); *accord* Charles Alan Wright & Arthur R. Miller et al.,
24 7C Federal Practice & Procedure § 1920 (3d ed.) ("Unless conditions have been imposed, the
25 intervenor is treated as if the intervenor were an original party and has equal standing with the
26 original parties.").  Were a court to grant permissive intervention where the intervenor had no "claim
27 or defense," the court would be creating a valuable right to litigate and continue a lawsuit in a party
28 that would not otherwise have that right.  In fact, it is this right to continue to litigate the suit even in

1 the face of a potential settlement that the CCPOA seeks. *See* CCPOA Brief at 5:14–16
2 ("Accordingly, CCPOA has an interest in any settlement CDCR might entertain or execute in the
3 instant litigation, especially if that settlement calls for relaxing current SHU practices or making
4 concessions to inmates that might endanger correctional officers."). Allowing intervention would,
5 therefore, unduly prejudice the Plaintiffs in this action. Creating a right for the CCPOA to maintain
6 the lawsuit in this case will necessarily devalue the Plaintiffs' legal claims, as the Plaintiffs will have
7 to compromise not only with the original defendants in order to settle the case, but with an additional
8 party who would otherwise have no right to demand concessions. As such, allowing intervention
9 unduly prejudices the Plaintiffs by devaluing their legal claims and requiring them to settle with an
10 additional party who, absent intervention, has no legal right to assert a claim.

11 Allowing the CCPOA to intervene with the express purpose of obstructing settlement
12 between the parties will unduly delay and prejudice the adjudication and possible out of court
13 resolution of the Plaintiffs' claims. The motion to intervene should therefore be denied.

14 **D.     The CCPOA's Intervention Is Not Timely**

15 The CCPOA's Motion to Intervene is not timely. "A party seeking to intervene must act as
16 soon as he knows or has reason to know that his interests might be adversely affected by the
17 outcome of the litigation." *United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990). The original
18 complaint in this case was filed in 2009—almost four years ago. While the CCPOA admits that fact,
19 it argues excuse because "the issues affecting CCPOA's interests did not become ripe until the
20 second amended complaint [was] filed," which "sought the blind release of inmates from the SHU."
21 CCPOA Brief at 6:21–24. But that assertion fails. From the beginning of this action, the Plaintiffs
22 have challenged the constitutionality of their incarceration in the SHU. A decision in favor of the
23 Plaintiffs on the very first complaint filed in this case would have resulted in legal precedent that the
24 SHU and the procedures for incarcerating prisoners therein were unconstitutional. Such a decision
25 would have necessarily required changes to the procedure for incarcerating inmates in the SHU and
26 therefore threatened the purported interests in officer security advanced here by the CCPOA.
27 Therefore, the CCPOA's purported interest in the SHU and the procedures relating to inmate
28

1  placement in the SHU have been threatened in this lawsuit from the very beginning.  The fact that
2  the Plaintiffs now seek an injunction ordering their release is inapposite.
3        The cases cited by the CCPOA addressing timeliness do not support its position.  Of the five
4  cases cited by the CCPOA, three affirmed trial court decisions denying motions to intervene.
5  *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983) ("The order denying
6  intervention is AFFIRMED."); *Air California*, 799 F.2d at 539 ("Our conclusion that the district
7  court did not abuse its discretion in denying Irvine's motion to intervene as a matter of right due to
8  its untimeliness applies equally here."); *United States v. Washington*, 86 F.3d 1499, 1507 (9th Cir.
9  1996) ("Because we hold that the district court did not abuse its discretion in finding that the
10 motions to intervene were untimely, we affirm the district court's refusal to exercise its discretion to
11 allow permissive intervention.").  Another case cited by the CCPOA, *McDonald v. E.J. Lavino Co.*,
12 is not binding precedent in this Court, and involved a dispute over the assets of a limited fund where
13 the intervenor moved one day after judgment but prior to disbursement.  430 F.2d 1065, 1074 (5th
14 Cir. 1970).  In the last case cited by the CCPOA, *United States v. Oregon*, while the Court holds that
15 mere lapse of time is not determinative as to timeliness, the Court noted that "the existing parties'
16 concerns have little to do with timeliness" when reversing the District Court's denial of the motion
17 to intervene.  745 F.2d 550, 553 (9th Cir. 1984).
18       The constitutionality of the State's SHU has been at issue in this case since day one, yet for
19 almost four years the CCPOA failed to intervene.  The motion is untimely.
20 **III.   THE CCPOA FAILS TO COMPLY WITH THE REQUIREMENTS OF RULE 24(C)**
21       The CCPOA's Motion to Intervene should also be denied because it fails to comply with the
22 requirements of Rule 24(c).  Rule 24(c) requires that a motion to intervene "be accompanied by a
23 pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).
24 While a Rule 24(c) pleading "is not required 'where . . . the movant describes the basis for
25 intervention with sufficient specificity to allow the district court to rule,'" when the movant "has not
26 adequately identified the claims or defenses that he wishes to assert," failure to comply with Rule
27 24(c) will not be excused.  *Kremen*, 2012 WL 2919332, at *9.
28

Here, CCPOA "has not clearly stated any claim or defense [it] wishes to assert against any party to this action." *Id.*  As discussed above, the CCPOA fails to adequately identify any legal claim or defense that it intends to present in this action, and CCPOA's "failure to attach a pleading . . . renders [the] motion to intervene procedurally deficient." *Id.*

## IV. CONCLUSION

For the foregoing reasons, the CCPOA's Motion to Intervene should be denied.

Dated:  July 10, 2013                          WEIL, GOTSHAL & MANGES LLP

By:      */s/ Gregory D. Hull*

GREGORY D. HULL (Bar No. 57367)
Email:  greg.hull@weil.com
BAMBO OBARO (Bar No. 267683)
Email:  bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1134
Tel:  (650) 802-3000
Fax:  (650) 802-3100

JULES LOBEL (*pro hac vice*)
Email:  jll3@pitt.edu
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email:  aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email:  rachelM@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY  10012
Tel:  (212) 614-6478
Fax:  (212) 614- 6499

CHARLES F.A. CARBONE (SBN 206536)
Email:  charles@charlescarbone.com
EVAN CHARLES GREENBERG (SBN 271356)
Email:  evan@charlescarbone.com
LAW OFFICES OF CHARLES CARBONE
P.O. Box 2809
San Francisco, CA  94126
Tel:  (415) 981-9773
Fax:  (415) 981-9774

1 | MARILYN S. MCMAHON (SBN 270059)
Email: marilyn@prisons.org
2 | CALIFORNIA PRISON FOCUS
P.O. Box 5187
3 | Berkeley, CA 94705
Tel: (510) 734-3600
4 | Fax: (510) 836-7222

5 | ANNE BUTTERFIELD WEILLS (SBN 139845)
Email: aweills@aol.com
6 | SIEGEL & YEE
499 14TH STREET, SUITE 300
7 | OAKLAND, CA 94612
Tel: (510) 839-1200
8 | Fax: (510) 444-6698

9 | CAROL STRICKMAN (SBN 78341)
Email: carol@prisonerswithchildren.org
10 | LEGAL SERVICES FOR PRISONERS WITH CHILDREN
11 | 1540 Market Street, Suite 490
San Francisco, CA 94102
12 | Tel: (415) 255-7036
Fax: (415) 552-3150

Attorneys for Plaintiffs
TODD ASHKER, GEORGE RUIZ, JEFFREY FRANKLIN, GEORGE FRANCO, GABRIEL REYES, RICHARD JOHNSON, DANNY TROXELL, PAUL REDD, LUIS ESQUIVEL, and RONNIE DEWBERRY