UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TODD ASHKER, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>MATHEW CATE, et al.,<br>　　　　Defendants. | Case No. 09-cv-05796-CW (NJV)<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br>Re: Dkt. No. 207 |

Plaintiff Todd Ashker has been confined to Pelican Bay State Prison's Secure Housing Unit ("SHU") since 1992; Plaintiff Danny Troxell since 1985. Doc. No. 1 (Compl.) ¶¶ 16, 18. They allege that they have never been found guilty of committing any gang-related acts and have been housed in the SHU solely because they were "validated" as members of the Aryan Brotherhood by confidential inmate informants. Plaintiffs filed this civil rights action under 42 U.S.C. § 1983 in 2009, alleging that their long-term confinement violates the Eight Amendment's ban on cruel and unusual punishment, and that PBSP's gang-validation system violates their rights under the First, Fifth and Fourteenth Amendments. Since the filing of the lawsuit, eight other plaintiffs have joined the action; all of them also allege they have been confined to the SHU for years based on their validation as gang members. They have filed a second amended putative class action complaint, survived a motion to dismiss, and filed a motion to certify a class in this action. The class certification motion is scheduled to be heard by the district court on August 22, 2013. *See* Doc. No. 230.

Before this court is Plaintiffs' motion to compel further discovery responses from Defendants. Doc. No. 207. The court ordered the parties to meet and confer in person (Doc. No.

217), which the parties did on June 19, 2013. As a result, the parties resolved a number of their disputes. *See* Doc. Nos. 231 & 232.[1] The court heard the parties' remaining disputes on June 25, 2013 and ordered them to engage in further meet and confer efforts. *See* Doc. No. 237. Although further progress was made, the parties remain far apart. *Id*.[2] The court therefore must resolve the remaining issues. For the reasons stated below, the court will grant the motion in part and deny it in part.

**I. ANALYSIS**

    **A. DEADLINE FOR PRODUCING DOCUMENTS DEFENDANTS AGREED TO PRODUCE.**

Defendants agreed to provide certain documents responsive to requests numbers 2, 4-5, 8-9, 12-13, 15-16, 19, 21-25, 32, 35, 38, 45, 47-52, 55-56, 58-59, 62-63, and 67-69. Defendants, however, did not agree to produce the documents by any given deadline. Defendants argue that because Judge Wilken declined to schedule a fact-discovery cut off, they are under no obligation to produce documents according to any timeline. *See* Doc. No. 211 at 8. They urge this court not to "set an arbitrary deadline at this stage in the case." *Id*. This case was filed more than three years ago. *See* Doc. No. 1. Defendants provide no authority to support their position. Under the Federal Rules of Civil Procedure, Plaintiffs are entitled to reasonable discovery, now.

Plaintiffs also complain that Defendants have not indicated which document requests they have responded to through their earlier productions of documents. Plaintiffs are entitled to know which document requests Defendants have responded to, and which document requests they have not yet begun responding to. No later than two weeks from the date of this Order, Defendants shall identify the document requests for which they already produced documents and those for which they have not.

---

[1] Plaintiffs' original motion covered more than 50 document requests and 17 interrogatories. After meeting and conferring, the parties resolved their disputes (at least for the time being) regarding document requests numbers 3, 17, 18, 20, 29, 36, 37, 42, 44, 53, 64, 65 and 71-76. *See* Doc. No. 231.
[2] The court disagrees with Defendants' characterization that many of Plaintiffs' positions are "new and were not contained in the motion to compel." *Id*. at 3. Plaintiffs' "new" positions are compromises that reflect a narrower scope of demands than the relief they requested in their motion to compel. Due process does not require additional briefing from Defendants.

### B. UNDUE BURDEN.

To substantiate their burden argument, Defendants offer the declaration of S. Soderlund, the Litigation Coordinator at PBSP. *See* Doc. No. 213. According to Soderlund, PBSP does not keep records in a readily accessible manner, and it will be difficult to collect the information responsive to Plaintiffs' requests. In their supplemental brief, Defendants provide the cost of copying the records of the ten named Plaintiffs. *See* Doc. No. 237. Based on the $23,250 cost, they contend the average cost of copying an inmate's records would be $2,000 per inmate. Because there are 411 inmates who were validated as gang members or associates on or before November 1, 2002, they contend it would cost approximately $800,000 to copy the records Plaintiffs seek. *Id*. Defendants contend that "Plaintiffs simply do not need documents relating to every single member of the purported subclass to effectively litigate their claims" and offer to copy the records of six more inmates.

Plaintiffs respond that pursuant to Section 6250 of the California Government Code and to Section 3260 of the California Code of Regulations, Title 15, CDCR must keep records in a publicly-accessible manner. Because "[c]orrectional facilities and programs are operated at public expenses. . . . The public must be given a true and accurate picture of department institutions and parole operations." Doc. No. 222 at 2-3. Plaintiffs request records for all 411 inmates.

The court first notes that Defendants' rather fantastical $800,000 figure is not supported by a declaration or an estimate from a copy service. This figure represents the equivalent of ten well-paid, full-time employees for a year, and does not seem justified despite the relative isolation of PBSP and the scope of documents to be copied. The court finds that PBSP's failure to maintain its records in an accessible fashion is not a reasonable ground for denying Plaintiffs information that is clearly relevant to their civil rights claims, both substantively and for purposes of their class certification motion. Nevertheless, copying the records for all 411 inmates described above appears to be a burdensome and costly proposition when balanced against Plaintiffs' stated need for all the files at this stage in the proceeding. Accordingly, Defendants shall identify the names of the 411 inmates described above; Plaintiffs shall select 25 names from the list; Defendants shall produce responsive records for those 25 inmates. **Defendants shall be precluded from making**

3

1 **any arguments during class certification based on inmates whose records were not produced**
2 **in discovery**.

### C. INFORMATION THAT COULD ENDANGER THE SAFETY OF OTHERS.

Defendants argue that producing the type of information Plaintiffs have requested would put lives at risk and compromise ongoing gang investigations. *See* Doc. No. 214 (Prelip Decl.). J. Prelip declares that disclosing information regarding the investigation, validation and active/inactive reviews of validated gang members and associates to anyone outside CDCR "is highly dangerous" and "may compromise[] ongoing gang investigations." Doc. No. 214, ¶¶ 10, 17. Prelip states a protective order is insufficient because (1) inmates are unlikely to be deterred by the threat of contempt; (2) "a protective order does not sufficiently protect against attorneys' disclosure of safety and security information to inmates, whether through inadvertence or otherwise." *Id.*, 20. Prelip is "personally aware of instances of inmates being found with debrief reports of other inmates in their property." *Id.*

The court is well aware that revealing the identity of debriefers and confidential informants could put the lives of those individuals and their families at risk. Defendants want to proceed under Paragraphs 5.2 and 6 of the protective order, but failed to address either at oral argument or in their supplemental brief why the redactions proposed by the court, combined with producing the documents for attorneys' eyes only, provided insufficient protections.[3] When producing documents that contain the names or other identifiers of debriefers and confidential informants, Defendants shall as necessary, (1) redact the names and any information tending to identify debriefers, confidential informants or other persons whose security would be endangered if their

---

[3] At the hearing, the parties discussed Paragraphs 5.2 and 6 of the Protective Order. The court has reviewed the Protective Order and is at a loss to understand why Defendants would choose that method, at this point in the proceedings, except to delay discovery. Plaintiffs requested documents months ago, and filed this motion two months ago. Defendants could have produced redacted documents and allowed Plaintiffs to challenge them in the manner contemplated by Paragraph 6, but failed to do so. Of course, if the files of certain inmates are so replete with information of this type that producing the file at all could amount to a security risk, Defendants may inform Plaintiffs and the court of this matter and may produce all the files of the 25 inmates described above to the court for in camera review so as not to identify the inmate(s) whose file(s) contain the information. Defendants shall provide the court with a confidential letter brief identifying the sensitive information. If necessary, the court shall set a formal briefing schedule.

1   identity were discovered (or whose discovery would cause the security of others to be
2   endangered), and (2) produce the documents pursuant to the "attorneys' eyes only" designation in
3   the parties' Stipulated Protective Order. *See* Doc. No. 182, ¶ 2.3. Defendants shall produce a log
4   listing any document so redacted and/or designated and explaining the reason for the redaction
5   and/or designation. (Defendants shall log any redacted documents on this log, including
6   documents redacted due to HIPAA or other similar reasons.) By this order, the court in no way
7   suggests that Plaintiffs' counsel would reveal the identity of these individuals to their clients. The
8   court only recognizes that accidental disclosures can happen and that the identity of these persons
9   must be afforded the greatest protection.

10  Although Defendants have established that revealing the identity of debriefers and
11  confidential informants could endanger safety, they have not established the same danger exists
12  with respect to any other information, especially information contained in policies and procedures
13  documents and other documents of general application to the SHU, or to documents that have
14  been redacted as described above. The court finds that Defendants have not demonstrated that the
15  attorneys' eyes only designation would be insufficient to protect information other than
16  information identifying debriefers and/or confidential informants. Should Defendants proceed
17  under Paragraphs 5.2 and 6 of the protective order and require in camera review for this type of
18  information, and should the court order production of the documents in unredacted form, the court
19  will invite Plaintiffs to file motions for the costs and fees incurred in proceeding under Paragraph
20  6.

21  The court reminds any party seeking to file documents under seal (whether redacted or in
22  their entirety) must follow the requirements of N.D. L.R. 79-5.

23  **D. INFORMATION THAT DOES NOT RELATE TO THE NAMED PLAINTIFFS.**

24  Information about SHU-wide policies and procedures, SHU-wide conditions, and SHU-
25  wide statistical information is directly relevant in this action, regardless of whether the named
26  Plaintiffs' names appear on the documents, *e.g.*, policies and procedures documents; memos to
27  department heads; statistical information; *etc*. Information that relates only to individuals who are
28

1  not named as plaintiffs in this action (*e.g.*, medical charts[4], information re each individual's access

2  to outdoor exercise, *etc*.) may be relevant in certain respects, including class certification. The

3  court will address this on a request-by-request basis below, and will grant in part and deny in part

4  these requests.

### E. INFORMATION RE ADMINISTRATIVE SEGREGATION ("Ad Seg").

Information allowing Plaintiffs to compare the conditions they experience in the SHU to the conditions inmates experience in Ad Seg is relevant to their Due Process claim. The Due Process Clause protects inmates being subjected to hardships that are "atypical and significant" compared to ordinary prison life. *See Sandin v. Connor*, 515 U.S. 472, 484 (1995) (recognizing that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Although the Ninth Circuit has declined to find that conditions in Ad Seg in and of themselves create a liberty interest, it has used conditions in Ad Seg as a guidepost when analyzing whether particular conditions constituted an "atypical and significant" hardship. *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) ("Rather than invoking a single standard for determining whether a prison hardship is atypical and significant, we rely on a 'condition or combination of conditions or factors [that] requires case by case, fact by fact consideration.' . . . Specifically, we look to three guideposts by which to frame the inquiry: (1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence") (internal citations omitted). Thus, Plaintiffs may be required to compare

---

[4] Some of these requests seek information that is protected from disclosure by privacy laws, including HIPAA. If Plaintiffs obtain additional releases (for example, from the additional 25 inmates whose files they receive), they may renew their motion to compel certain documents (*see, e.g.*, Req. Nos. 60, 61, 67, 69, 70, *et seq*.).

United States District Court
Northern District of California

the conditions in Ad Seg with the conditions in the SHU in order to prove their Due Process Claim. They are entitled to discovery on this issue.

### F. BUDGET INFORMATION.

Plaintiffs seek the production of budget information for the Pelican Bay SHU between 2006 and 2012. They argue that budget information showing how money is allocated may reveal relevant information. For example, "conditions may be unconstitutional in a prison that spends all its money on correctional officers and ever-more-restrictive housing. But the same amount spent on rehabilitation, medical- and mental-health treatment, food, and housing would make a constitutional difference. In short, how money is allocated affects conditions." Doc. No. 222 at 4.

The court finds that this information may lead to the discovery of admissible evidence, but that the requests for "all" budget documents are overbroad. For the time being, the court finds that Defendants should produce documents sufficient to show the requested budget information for the Pelican Bay SHU for each year between 2006 and 2012 as described further below.

## II. APPLICATION TO SPECIFIC DISCOVERY REQUESTS[5]

Based on the reasoning and subject to the limitations described in Part I of this Order, and to the extent Defendants have not already done so, the court orders Defendants to respond to the discovery requests as follows:

Req. No. 2. Defendants shall produce all information relating to the named Plaintiffs. Defendants also shall produce all information relating to the additional 25 inmates Plaintiffs select.

Req. No. 4. Defendants shall produce all information relating to the named Plaintiffs. Defendants also shall produce all information relating to the additional 25 inmates Plaintiffs select.

---

[5] Although Plaintiffs mention Document Requests Nos. 5, 8-9, 12-13, 15, 21-25, 32, 35, 38, 47, 49-52, 55-56, and 58-59, in the introduction to their opening brief, they do not reproduce these requests in Appx. A, nor address them specifically in their brief. The motion to compel further discovery in connection with these requests is denied without prejudice. If Plaintiffs seek production of documents in connection with these requests, they are ordered to meet and confer with Defendants before filing a further motion to compel. The principles articulated in this Order should allow the parties to resolve their dispute without further court intervention.

Req. No. 10. Defendants shall produce all information relating to the named Plaintiffs. Defendants also shall produce information sufficient to show when the SHU has been on lockdown since 2006, as well as any other instances during this period when SHU inmates were not allowed yard and/or exercise time as required in Pelican Bay Operating Procedure No. 222, Ch. 400, Section B.

Req. No. 11. Defendants shall produce all information relating to the named Plaintiffs. Defendants also shall produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates, addressing Title 15, section 3343(h) and actual exercise time for SHU inmates since 2006.

Req. No. 27. Defendants shall produce all information relating to the named Plaintiffs and the additional 25 inmates. Defendants also shall produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates.

Req. No. 30. Defendants shall produce all information relating to the named Plaintiffs and the additional 25 inmates. Defendants also shall produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates.

Req. No. 31. Defendants shall produce documents sufficient to show the annual budget for the Pelican Bay SHU for each year between 2006 and 2013. A one-page budget summary is insufficient. The information must show expenditures for the categories Plaintiffs reference in their motion to compel (salaries for correctional officers and medical staff; rehabilitation and therapy; food; and housing) and other items at that level of budgetary detail.

Req. No. 39. Defendants shall produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates.

Req. No. 40. Defendants shall produce all training materials regarding identifying gang activity used by PBSP officials, including any training materials pertaining to the identification, collection, and use of gang validation source items.

Req. No. 41. Defendants shall produce all PBSP policies and procedures documents, as well as memos, guidelines, and other documents of general application to PBSP inmates regarding the debriefing process that were in use at PBSP.

Req. No. 43. Defendants shall produce all PBSP policies and procedures documents, as well as memos, guidelines, and other documents of general application to PBSP inmates regarding the use of gang validation source items in connection with inactive/active reviews for PBSP SHU inmates since 2006.

Req. No. 45. Defendants shall produce all PBSP policies and procedures documents, as well as memos, guidelines, and other documents of general application to PBSP inmates regarding the training of inactive/active review committee members regarding the review of gang validation source items since 2006. (Defendants already agreed to produce certain documents responsive to this request.)

Req. No. 46. Defendants shall produce all information relating to the named Plaintiffs and the additional 25 inmates. Defendants also shall produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates.

Req. No. 48. Defendants shall produce all information relating to the named Plaintiffs and the additional 25 inmates. Defendants also shall produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates. (Defendants already agreed to produce certain documents responsive to this request.)

Req. No. 54. Defendants shall produce all information relating to the named Plaintiffs and the additional 25 inmates. Defendants need not produce information relating to any individuals other than the named Plaintiffs, but must produce any reports or studies addressing the effects of SHU confinement on PBSP inmates, generally.

Req. No. 57. Defendants shall produce all information relating to the named Plaintiffs. Defendants also must produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates. Defendants also shall respond to Interrogatory No. 17 as described below.

Req. No. 60. Defendants shall produce all information relating to the named Plaintiffs. Defendants also must produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates.

Req. No. 61. Defendants shall produce all information relating to the named Plaintiffs

since 2007.  Defendants also must produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates since 2007.

Req. No. 66.  Plaintiffs request "the CVs for all health and mental-health personnel who treated inmates at PBSP SHU between 2000 and 2012."  The court agrees that this request is overbroad and unduly burdensome.  The motion to compel this request is denied.

Req. No. 67.  Defendants shall produce all information relating to the named Plaintiffs. Defendants also shall produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates since 2006.  (Defendants already agreed to produce certain documents responsive to this request.)

Req. No. 68.  Defendants shall produce all information relating to the named Plaintiffs. Defendants also shall produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates since 2006.  (Defendants already agreed to produce certain documents responsive to this request.)

Req. No. 69.  Defendants shall produce all information relating to the named Plaintiffs. Defendants also shall produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates since 2006.  (Defendants already agreed to produce certain documents responsive to this request.)

Req. No. 70.  Defendants shall produce all information relating to the named Plaintiffs. Defendants also shall produce any SHU-wide policies and procedures documents, as well as memos and other documents of general application to SHU inmates.  (Defendants already agreed to produce certain documents responsive to this request.)

Although Defendants supplemented their responses to certain interrogatories, disputes remain.  *See* Doc. No. 237.  Defendants may redact information pursuant to the methods described above.  The court recognizes that this may "render the responses completely useless to Plaintiffs" (Doc. No. 237 at 4), but that does not excuse Defendants from compiling the information. Plaintiffs may choose to challenge the redactions and the court will decide the matter in due course.  For now, the court orders as follows:

Interrogatory No. 1. Defendants shall respond to this interrogatory with respect to the named Plaintiffs only.

Interrogatory No. 2. Defendants shall identify each inmate housed at PBSP SHU as of November 1, 2012 and the length of time each inmate has been housed there. For the named Plaintiffs only, Defendants shall state whether the inmate was deemed to be a gang member and/or a gang associate.

Interrogatory No. 3. Plaintiffs ask Defendants to identify each validated gang associate or member who was not confined to a CDCR SHU facility. The motion to compel is denied: the request is overbroad and unduly burdensome, and revealing the identity of these persons would create a tangible security risk.

Interrogatory No. 4. Plaintiffs ask Defendants to identify all PBSP SHU inmates who either requested to participate in or graduated from the debriefing program. The motion to compel is denied, as revealing the identity of these persons would create a tangible security risk. Defendants shall, however, disclose the number of inmates for the years 2006 through 2012 who either requested to participate in, or graduated from, the program.

Interrogatory No. 5. Granted as to the named Plaintiffs only.

Interrogatory No. 6. Granted as to the named Plaintiffs only.

Interrogatory No. 7. Granted as to the named Plaintiffs only.

Interrogatory No. 8. This interrogatory is identical to Interrogatory No. 6 and the motion to compel this interrogatory therefore is denied.

Interrogatory No. 9. Granted as to the named Plaintiffs only.

Plaintiffs argue that Interrogatory Nos. 10, 11-14 and 17 "seek statistical data related to" a number of relevant topics. Doc. No. 207 at 8. The court has reviewed the interrogatories in question and finds they do not request statistical data, but rather ask Defendants to identify specific inmates and provide information regarding specific inmates. *See also* Doc. No. 212, Ex. D (E. Greenberg letter confirming that Plaintiffs "ask Defendants to provide identities of and information regarding CDCR inmates").

Interrogatory No. 10. Plaintiffs ask Defendants to identify all PBSP SHU inmates who

11

1 were deemed gang associates or members at an inactive/active review. The motion to compel is
2 granted as to the named Plaintiffs, but otherwise denied. Revealing the identity of these persons
3 would create a tangible security risk.

4       Interrogatory No. 11. Plaintiffs seek the identity of every inmate who was released from
5 PBSP SHU between 2006 and 2012 or who died while incarcerated at the SHU during this period
6 of time. Granted as to the inmates who died. Defendants also shall identify the number of
7 inmates released from SHU each year between 2006 and 2012.

8       Interrogatory No. 12. Granted as to the named Plaintiffs only.
9       Interrogatory No. 13. Granted as to the named Plaintiffs only.

10       Interrogatory No. 14. Denied, except that Defendants shall disclose the number of inmates
11 released on parole from the PBSP SHU after a parole board hearing held from the years 2006
12 through 2012.

13       Interrogatory No. 17. Denied, except that Defendants shall disclose the number of inmates
14 who committed suicide or attempted to commit suicide while in the SHU from the years 2006
15 through 2012.

## CONCLUSION

17 Plaintiff's motion to compel is granted in part and denied in part:
18 Defendants shall produce the list of 411 inmates to Plaintiffs within 1 week of the date of
19 this order and Plaintiffs shall identify the 25 additional inmates within 1 week of receiving the list.
20 Defendants shall produce all documents relating to the individual Plaintiffs within 2 weeks
21 of the date of this order, shall start producing other documents on a rolling basis within 4 weeks,
22 and shall complete production within 6 weeks.
23 Defendants shall supplement their responses to the Interrogatories as described above
24 within 4 weeks.
25 Defendants' redaction/designation logs are due at the time they produce the
26 redacted/designated documents.
27 Plaintiffs may renew their motion to compel as to certain discovery requests if they obtain
28 additional releases from inmates, or if the district court grants their motion to certify a class in this

1    action.  The parties are encouraged to use the reasoning set forth above to resolve any further
2    discovery disputes.

**IT IS SO ORDERED**.

Dated: July 12, 2013



NANDOR J. VADAS
United States Magistrate Judge

13