1  KAMALA D. HARRIS
   Attorney General of California
2  WILLIAM C. KWONG
   Supervising Deputy Attorney General
3  JILLIAN R. O'BRIEN
   Deputy Attorney General
4  MARTINE N. D'AGOSTINO
   Deputy Attorney General
5  ADRIANO HRVATIN
   Deputy Attorney General
6  State Bar No. 220909
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA  94102-7004
     Telephone:  (415) 703-6207
8    Fax:  (415) 703-5843
     E-mail:  Adriano.Hrvatin@doj.ca.gov
9  *Attorneys for Defendants*

10

11                  IN THE UNITED STATES DISTRICT COURT

12                FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                           OAKLAND DIVISION

14

15  **TODD ASHKER, et al.,**                    C 09-05796 CW

16                               Plaintiffs,    **DECLARATION OF S. HUBBARD
                                                IN SUPPORT OF DEFENDANTS'**
17              v.                              **OPPOSITION TO PLAINTIFFS'
                                                MOTION FOR CLASS CERTIFICATION**
18
    **GOVERNOR OF THE STATE OF
19  CALIFORNIA, et al.,**

20                               Defendants.

21

22       I, S. Hubbard, declare:

23       1.       I am employed by the California Department of Corrections and Rehabilitation

24  (CDCR) in the position of Chief Deputy Administrator, Special Projects, for the Division of

25  Adult Institutions (DAI), as a retired annuitant.  Due to my employment, experience, and

26  knowledge, I am familiar with CDCR's policies, procedures, and practices related to gang

27  validation and management, including CDCR's recent efforts to revise and implement those

28  policy revisions through the "Security Threat Group Prevention, Identification, and Management"

                                           1

1    (STG) program. I am competent to testify to the matters set forth in this declaration and, if called

2    on by the Court, would do so. I submit this declaration in support of Defendants' opposition to

3    Plaintiffs' motion for class certification.

4         2.     I have served as Chief Deputy Administrator, Special Projects, for DAI since

5    October 2011. I retired from CDCR in 2009 but continued working for CDCR as a retired

6    annuitant. I have been employed by CDCR for over thirty-three years, during which I held a

7    variety of positions. I served as the Director of DAI, acting Warden of the California Medical

8    Facility, acting Associate Director for High Security and Transitional Housing, Assistant Deputy

9    Director of DAI, Southern Regional Administrator, acting Warden and then Warden of the

10   Northern California Women's Facility, and Acting Warden and Chief Deputy Warden at

11   California State Prison, Solano.

12        3.     In my current capacity as Chief Deputy Administrator, I serve as a member of the

13   Special Projects Team tasked with implementing the STG program, which was approved and

14   certified by the Office of Administrative Law on October 18, 2012. The STG program,

15   implemented as a pilot program in accordance with § 5058.1 of California's Penal Code, reflects

16   CDCR's efforts to address evolving trends in gang activities in state prisons and to provide an

17   alternate procedure for inmates to "step down" or disassociate from gang activity and earn

18   incremental privileges without debriefing while ensuring security and safety and addressing

19   inmate management needs.

20        4.     As part of my job duties, I conduct case-by-case reviews of inmates currently

21   validated as gang members or associates and serving indeterminate terms in the Security Housing

22   Unit (SHU) at Pelican Bay State Prison or within one of CDCR's three other SHU units at men's

23   institutions. The purpose of these reviews is to apply the new security threat group management

24   criteria and determine the appropriate placement of validated inmates by reviewing the inmates'

25   conduct during the preceding four years to verify the existence of any ongoing STG behavior.

26   Depending on the results of that assessment, a validated inmate may be: (i) placed within one of

27   the four steps of the step down program within the SHU, by which the inmate may earn

28   incremental privileges and ultimate release from the SHU based on his behavior; (ii) placed in

2

1   step five of the step down program and eligible for release to the general population; or (iii)

2   retained in SHU because the inmate has chosen to debrief or based on security concerns, resulting

3   in further investigation.  As outlined more fully below, the results of the case-by-case reviews

4   have been significant and positive.

5         5.    CDCR's STG program represents a massive shift in the management of prison gangs

6   in California prison institutions.  The policy changes set forth in the STG pilot program were

7   based on recommendations made by subject-matter experts within CDCR and in consideration of

8   strategies and best practices used by CDCR and other correctional agencies.  CDCR also

9   considered a 2007 study sponsored by the California Legislature entitled, "Security Threat Group

10   Identification and Management," conducted by California State University, Sacramento, which

11   incorporated ideas generated by five national gang experts who served as consultants to CDCR.  I

12   am informed and believe that in preparing this report, California State University, Sacramento

13   collected documents and related security threat group information from the Federal Bureau of

14   Prisons and the states of Arizona, New Mexico, Colorado, Texas, Connecticut, and New York.

15   Moreover, to arrive at the current STG pilot program, CDCR issued incremental versions of its

16   proposed policies for commentary from external stakeholders, including prisoner advocacy

17   groups and counsel.  For example, the Prison Law Office and California Prison Focus, the latter

18   of which represents Plaintiffs in this case, provided comments to multiple versions of CDCR's

19   proposed STG policies, which CDCR evaluated and, after full consideration, incorporated or

20   addressed as appropriate in subsequent versions.

21         6.    The STG program prohibits inmates from creating, promoting, or participating in

22   gangs or disruptive groups, which CDCR now refers to as security threat groups.  CDCR has a

23   zero-tolerance policy for security threat group behavior.  Any inmate engaging in behavior related

24   to STGs may be subject to criminal prosecution in addition to administrative sanctions.

25   Minimizing security threat group behavior and effectively managing high security housing

26   populations are major components of this program.  The program is expected to:  (a) accomplish

27   uniform certification of security threat groups and identify those that pose the greatest threat to

28   the safety and security of the prisons and public safety; (b) provide for identification and

3

1  validation of security threat group affiliates; (c) provide a step down program for offenders placed

2  in segregated housing for validation and/or security threat group behavior to afford enhanced

3  program and privilege incentives to promote positive behavior; and (d) maintain the opportunity

4  for offenders to voluntarily debrief and disassociate themselves from a security threat group and

5  security threat group behavior.

6        7.    The STG program provides a host of key revisions to gang management policy and

7  procedure, including:

8           a.    Incorporation of a security threat group prevention program for offenders

9  during the intake process and an orientation process for validated affiliates classified to

10  participate in the step down process.

11           b.    A new behavior-based system which will serve to enhance the existing

12  intelligence-based validation system. The implementation of this process will include a security

13  threat group behavior-based disciplinary matrix, which will provide for additional procedural due

14  process safeguards and rely on individual accountability.

15           c.    The incorporation of a weight-based, point-value system designed to

16  correspond with the validation process under title 15, which required three individual source

17  items of gang-related evidence, including a direct link to a gang member or associate. The new,

18  weight-based system continues to require a direct link to an existing or former validated member

19  or associate.

20           d.    Recognition that the level of influence and threat from STG affiliates are

21  different among members, associates, and suspects. Upon initial validation, security threat group

22  associates will no longer be considered for direct administrative placement in a security housing

23  unit based solely on their validation to a security threat group. The ICC may place validated

24  associates in the SHU in step one of the step down program (in SHU), if the initial validation

25  included a SHU-able serious rule violation, or if after validation, the inmate received two

26  administrative rule violations or one serious rule violation with a nexus to a security threat group.

27           e.    Implementation of a new security threat group classification committee, which

28  will be responsible locally for affirming initial security threat group validations, evaluating

4

1    potential security threat group behavior subsequent to an affiliate successfully completing the step

2    down process, and evaluating potential security threat group behavior by dropouts (inmates who

3    have debriefed from that security threat group).  The new committee provides for independent

4    oversight of the validation process outside the linear structure of the Office of Correctional Safety

5    (OCS) security threat group process and further enhances inmates' due process by incorporating

6    the use of an investigative employee to assist in gathering relevant information for the

7    classification hearing.

8            f.      Recognition that new security threat groups and affiliates and corresponding

9    gang behavior have emerged within CDCR institutions, and providing for certification,

10   validation, and placement of these security threat group affiliates within the step down process.

11           g.      Implementation of an incremental security threat group step down program

12   designed to encompass four years but that can be completed in as few as three years, to replace

13   the existing six-year inactive review process for validated security threat group affiliates.  The

14   step down program is an individual behavior-based program for security threat group affiliates

15   that will provide incrementally less restrictive housing, enhanced programs, interpersonal

16   interactions, as well as corresponding privilege and personal property enhancements for

17   participating security threat group affiliates.

18           h.      Enhancement of the existing security housing unit classification system and the

19   implementation of the new STG classification system, providing for the ICC to make additional

20   meaningful decisions during the step down program that can accelerate the security threat group

21   participant through the STG program in three years, rather than the standard four-year term of the

22   program.  Additionally, unlike the existing security housing unit process, the ICC will have the

23   authority to release the security threat group participant directly to a general population facility

24   after three years and again after three and a half years, without requiring additional review.

25           8.      Given the significant nature of the changes to its gang management policies,

26   CDCR has implemented the STG program in phases and provided the necessary training to

27   institution staff prior to the implementation of each phase.  A phased approach ensures integration

28   of discrete elements of the program and provides CDCR with the opportunity to resolve questions

                                                    5

1     or issues as they arise in the pilot program.

2          9.      The first phase of the program was implemented with CDCR's instructional

3     memorandum entitled "Pilot Program for Security Threat Group Identification, Prevention, and

4     Management Plan," dated October 11, 2012, a true and correct copy of which is attached as

5     Exhibit A.  This memorandum was distributed to wardens of prisons throughout the state as well

6     as CDCR's Division of Adult Institutions' (DAI) associate directors.  Phase I consists of the

7     Departmental Review Board conducting case-by-case reviews of currently validated associates

8     housed within CDCR's SHUs, beginning with the SHU at Pelican Bay.  During Phase I, several

9     informational and training sessions were also provided to CDCR staff, including an overview

10    presentation and STG validation training to STG investigative staff.  Overview presentations were

11    also provided to staff within CDCR's Appeals Office, SHU management teams, the Board of

12    Parole Hearings, and Classification Services Unit.  Because recently validated inmates who are

13    to be transferred to SHU may be temporarily housed in administrative segregation, training on

14    Administrative Segregation Unit case-by-case reviews was similarly provided to ICC members in

15    state prison institutions.

16         10.     The second phase of the STG pilot program was announced via a memorandum

17    entitled "Security Threat Group Identification, Prevention, and Management Pilot Project – Phase

18    II Implementation," dated January 30, 2013, a true and correct copy of which is attached as

19    Exhibit B.  This memorandum was distributed to CDCR's wardens, associate directors of DAI,

20    and the Special Agent in Charge within OCS.  This memorandum announced the March 1, 2013

21    implementation date of Phase II of the STG pilot program, which included inmate advisement of

22    the STG policy, the transition of DAI and OCS to the new STG validation process, and the

23    provision of additional inmate privileges, in accordance with the step down program component

24    of the STG pilot program.

25         11.     As expected, the application of the pilot program's new criteria has reduced the

26    number of inmates assigned to CDCR's SHUs in the first instance, as well as reduced the current

27    SHU population.  As of June 21, 2013, CDCR has conducted reviews of 249 inmates serving

28    indeterminate SHU terms with the following results:  29 inmates have been placed in step one of

1    the step down program; 27 inmates have been placed in step two; 16 inmates have been placed in

2    step three; 11 inmates have been placed in step four; 166 inmates have been approved for step

3    five of the program (general population). Of those 166 inmates, 130 have been approved for

4    transfer to a specific general population institution and 101 inmates have already been processed

5    and released to the general population.

6         12.    CDCR has also begun case-by-case reviews and assessments of validated inmates

7    housed in CDCR's Administrative Segregation Units. These inmates were validated as gang

8    members or associates in accordance with CDCR's prior validation criteria, as set forth in title 15

9    of the California Code of Regulations, and are thus awaiting indeterminate SHU placement. In

10   accordance with the STG pilot program, CDCR has conducted reviews of 133 inmates in

11   Administrative Segregation with the following results: 27 inmates have been placed in step one

12   of the step down program; 3 inmates have been placed in step two; 2 inmates have been placed in

13   step three; 23 inmates have been retained in Administrative Segregation due to safety concerns or

14   have indicated that they wish to debrief; and 78 inmates have been approved for release to the

15   general population because, applying the new pilot program standards, they do not qualify for

16   SHU placement.

17        13.    As indicated above, the primary impetus of the STG pilot program is to rely on

18   greater individual inmate accountability while continuing to ensure the safety and security of the

19   institution, staff, and inmates from the violence and criminal actions of gang affiliates. The

20   program provides inmates with an avenue to demonstrate their ability to refrain from gang-related

21   behavior and prepare them for return to non-segregated housing and eventual release to the

22   community. Each program step is less restrictive, and it is the responsibility of the inmate to

23   demonstrate that he can be released to increasingly less restrictive environments while abstaining

24   from STG-related behavior. As a result, inmates can reduce the duration of their stay within the

25   step down program and consequently also reduce their length of stay in the SHU by earning

26   release to general population in four years, and perhaps as quickly as three years, should they

27   advance through and complete the step down program. However, progression through the

28   program is voluntary. Inmates who refuse to participate or who continue to engage in STG

7

1    behavior may be retained at his current step or returned to a prior step.

2         14.    In accordance with California law, the STG pilot program has a lifespan of two

3    years (until October 18, 2014).  However, this is not an experiment.  CDCR has expended

4    considerable financial and human resources to develop and implement this policy.  These actions

5    demonstrate CDCR's commitment to permanently adhere to the STG program.  And, to that end,

6    I understand that CDCR is currently taking steps to adopt the program and formalize it as part of

7    the California Code of Regulations through the Administrative Procedure Act well in advance of

8    the pilot program's expiration.

9         I declare under penalty of perjury that the foregoing is true and correct to the best of my

10   knowledge.  Executed in Sacramento, California, on July 12, 2013.

S. Hubbard

SF2012204868

Hubbard Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C 09-05796 CW)