# Exhibit A

# Memorandum

Date : October 11, 2012          **INSTRUCTIONAL MEMORANDUM**

To : Associate Directors, Division of Adult Institutions
Wardens

Subject : **PILOT PROGRAM FOR SECURITY THREAT GROUP IDENTIFICATION, PREVENTION, AND MANAGEMENT PLAN**

## PURPOSE

This memorandum announces the implementation of the Security Threat Group (STG) pilot policy which will define staff responsibilities and establish a uniform process for the prevention, identification, interdiction, and management of security threat groups and individual affiliates within the California Department of Corrections and Rehabilitation (CDCR).

The pilot will provide individual accountability of offenders; incorporate additional elements of due process to the validation system; and provide for a Step Down Program (SDP) as an alternative for offenders to demonstrate their commitment and willingness to refrain from STG behavior. CDCR will do this while continuing to manage safe and secure institutions.

The use of this pilot program will afford the Department an opportunity to complete this complex retooling of the current gang management strategy including significant changes to regulations, practices, and institutional culture to ensure success. Changes of this magnitude must be completed thoughtfully, methodically, and deliberately. The changes in this policy will support California's efforts toward establishing a more effective model of managing security threat groups in a prison environment.

A security threat group is defined as any ongoing formal or informal organization, association or group of three or more persons which has a common name or identifying sign or symbol whose members and/or associates, individually or collectively, engage or have engaged, on behalf of that organization, association or group, in two or more acts which include planning, organizing, threatening, financing, soliciting or committing unlawful acts of misconduct classified as serious pursuant to the California Code of Regulations (CCR), Title 15, Division 3, Sections 3315. The term security threat group will generally replace the terms prison gang, disruptive group, and/or street gang within the CDCR.

The Department prohibits offenders from creating, promoting, or participating in any STG. Any offender engaging in STG related behavior may be subject to criminal prosecution, in addition to any administrative sanctions imposed as a result of the CDCR's disciplinary process.

The key revisions to the policy and procedure are as follows:

- A new behavior based system, which will serve to enhance the existing intelligence based validation system. The implementation of this process will include an STG behavior based disciplinary matrix, which will provide for additional procedural due process safeguards and a system of individual accountability.

* CDC 1617 (3/89)

RUIZ010473

Associate Directors
Wardens, Division of Adult Institutions
Page 2

- Recognition that STG affiliate levels of influence and threat are different between members, associates and suspects.  STG Associates will no longer be considered for direct administrative placement into a Security Housing Unit (SHU) based only upon their validation to an STG, unless there exists corresponding confirmed disciplinary behavior at the time of the original validation.
- Implementation of an incremental four year STG Step Down Program, which by design will replace the existing six year inactive review process for validated STG affiliates.  The SDP will be an individual behavior based program for STG affiliates that will provide graduated housing, enhanced programs, interpersonal interactions, as well as corresponding privilege and personal property enhancements for participating STG affiliates.
- The implementation of a new STG Classification Committee, which will be responsible locally for affirming initial STG validations, evaluating potential new STG behavior subsequent to an affiliate successfully completing the SDP, and evaluating STG behavior for offenders on Dropout-Status.
- Incorporation of a STG prevention program for offenders during the intake process and an orientation process for validated affiliates classified to participate in the SDP.
- Recognition that new STG groups/affiliates and corresponding gang type behavior has emerged within the Department's Sensitive Needs Yard (SNY) population; therefore, providing for certification, validation, and placement of these STG affiliates within the SDP.
- The incorporation of a weight based point value system designed to correspond with the existing three evidence source minimum process, and which continues to maintain a requisite for a direct link to an existing validated member or associate.

Minimizing STG behavior and effectively managing high security housing populations are significant major components of this pilot project and are expected to accomplish 1) uniform certification of gangs and disruptive groups by the Office of Correctional Safety into STGs and identifying those that pose the greatest threat to the safety and security of the prisons and public safety; 2) identification and validation of STG affiliates; 3) provide a SDP for offenders placed in segregated housing for validation and/or STG behavior to afford enhanced program and privilege incentives to promote positive behavior; and 4) debriefing for offenders who choose to disassociate themselves from a STG and STG behavior.

Security Threat Group Definitions (Attachment A) are provided for the terms used in this Instructional Memorandum.

## PILOT PROGRAM REQUIREMENTS

The STG Identification, Prevention, and Management Pilot Program is being implemented under the authority granted in Penal Code Sections 5058.1.  This pilot program is intended to expand upon the requirements set forth in Penal Code Section 5054, 5058, and 5068 by providing a STG Management Plan which was developed in concert with national best practices and input by subject matter experts from around the country.

## PLACEMENT OF OFFENDERS IN THE SECURITY THREAT GROUP PILOT PROGRAM

Inmates identified for the Security Threat Group Pilot Program will be mandated to:

- Have the new validation source criteria and point system applied to their validation process on a prospective basis;
- Attend a hearing with the STG Unit Classification Committee to afford an administrative review and affirmation of the validation package;

RUIZ010474

- Be placed in the SDP based upon the level of their validation and/or confirmed STG behavior, as outlined in Section 600 of this Instructional Memorandum;
- Participate in and progress through the SDP.

Inmates currently serving an indeterminate SHU term due to their gang validation shall be afforded a Departmental Review Board (DRB) hearing to determine their appropriate placement and/or retention within the SHU/Step Down Program or potential release to general population. The new validation source criteria and point system will not be applied to those inmates who were previously validated; however, the DRB will conduct an assessment of the preceding four years to determine the existence of on-going STG behavior. Based upon their unique status as not having participated in the Step Down Program, these inmates shall be referred to as inactive-monitored status affiliates upon their release from SHU. An inactive-monitored status affiliate shall be provided a copy of a CDCR Form 128-B STG1, Notice of Conditions of Inactive-Monitored Status (Attachment B) for review and signature prior to appearance before the DRB.

## PILOT PROGRAM LOCATION

The Security Threat Group Pilot Program will be initiated at all CDCR adult institutions; however, will only have a direct impact on those inmates who continue to engage in STG related behavior or activities. A SDP will be initiated at each of the SHU institutions including Pelican Bay State Prison, California State Prison – Corcoran, California Correctional Institution, California State Prison – Sacramento, and California Institution for Women.

This pilot program will remain in effect for a 24-month period from the date it is filed with the Secretary of State, at which time it will lapse by operation of law or will be promulgated through the Administrative Procedure Act.

## BACKGROUND

CDCR manages the most violent and sophisticated security threat group members and associates in the nation. California STGs are routinely and consistently connected to major criminal activities in communities, including such crimes as homicides, drug trafficking, prostitution, human trafficking, and extortion. As such, the responsibility and challenges facing CDCR relative to the management of security threat groups are immense.

Security Threat Group problems throughout the country have grown more serious in both the local communities and correctional settings. STGs are largely responsible for criminal activities within the institutions, to include the trafficking of narcotics, committing and/or directing violence against staff and offenders, and directing criminal activity between the correctional institutions and the community.

Prisons are especially vulnerable to internal disruption by STG members and their influence over affiliates who, through their covert operations, violent nature, routinely victimize each other, uninvolved inmates and staff, in addition to creating heavy demands on personnel and fiscal resources.

Efficient and effective STG management within prisons requires a comprehensive management strategy that includes prevention, identification, interdiction, and rehabilitation. CDCR's current strategy, which was initially developed more than 25 years ago, is a crime prevention strategy through suppression. The Department recognized the need to evaluate the current strategy and has developed new approaches to addressing constantly evolving STG trends.

RUIZ010475

The continuing evolution of our existing intelligence network is essential in identifying and documenting STG activities/behaviors and tracking trends. A sound strategy supported by reliable intelligence will enhance the prison managers' ability to anticipate, prevent, respond to, and control STG problems proactively rather than relying on defensive or reactive means of suppression and intervention.

This policy includes a weighted intelligence based identification tool used to identify members, associates and suspects who are believed to present a clear threat to the safety of staff, inmates, and the security of the institutions. This, in association with documented STG behavior will provide prison managers the necessary information to make decisions regarding the appropriate housing and program needs for the inmate.

These policy changes are based on recommendations made by subject matter experts within the CDCR as well as consideration of strategies and best practices used by both CDCR and other correctional agencies. In addition, a 2007 study entitled, "Security Threat Group Identification and Management," conducted by the California State University, Sacramento, incorporating ideas generated by five national gang experts who served as consultants to CDCR was also utilized in the development of these policy changes. Documents and related STG information were collected from the Federal Bureau of Prisons and the following States – Arizona, New Mexico, Colorado, Texas, Connecticut, and New York. As CDCR moved to expand the concepts contained in the 2007 study, a follow-up literature review was conducted in 2011 by the California State University, Sacramento, to identify national studies that evaluated correctional programs, including management and treatment approaches for validated STG members.

These research studies and national reviews of best practices were considered by a combined group of correctional experts in developing this policy for managing STGs in California prisons.

## PROGRAM STRUCTURE

The initial Security Threat Group Identification, Prevention, and Management Pilot Program will include approximately 5,000 inmates:

- 3,150 currently validated members and associates assigned to segregated housing
- Approximately 850 inmates who are reviewed for validation on an annual basis

The Pilot Program will monitor each validated STG affiliate to track their behavior within the general population and/or progress and behavior within the SDP. In addition, it will establish a classification committee which will provide additional review and oversight to the validation process.

## PROGRAM COMPONENTS

This pilot program involves the following components:

A. Standardized certification process for groups/gangs to be recognized as STG's within the CDCR.
B. Evaluation of offenders for validation utilizing the weighted point system, including the requirements of three independent source items and a direct link, where required.
C. Office of Correctional Safety (OCS) reviewing the validation package and making a recommendation for validation or rejection and the level of validation.

RUIZ010476

Associate Directors
Wardens, Division of Adult Institutions
Page 5

D.  The STG Unit Classification Committee reviewing the validation package and making the final decision regarding validation and the level of validation.
E.  The Institution Classification Committee (ICC) making the final decision on program and housing needs for validated affiliates.
F.  Placement into and progression through the SDP.
G.  Validated affiliates will be held individually accountable for STG related behavior or activity as outlined in the STG Disciplinary Matrix.
H.  Voluntary participation in the debriefing process.

## PROCEDURES

This STG pilot program will feature a phased approach for implementing the changes associated with this project.  The components of this policy are divided into sections and described in detail in the Instructional Memorandum.

Section 100:     **Staff Roles and Responsibilities**.  Page 6.

Section 200:     **Certification Process**.  Page 8.
                 This section will be implemented immediately upon distribution of this Instructional Memorandum.

Section 300:     **Prevention**.  Page 12.
                 This section will be implemented immediately upon distribution of this Instructional Memorandum.

Section 400:     **Validation**.  Page 12.
                 This section will be implemented in Phase II which is expected to begin December 2012/January 2013.

Section 500:     **Documentation of STG Involvement and Activity**.  Page 21.
                 This section will be implemented in Phase II which is expected to begin December 2012/January 2013.

Section 600:     **STG Disciplinary Matrix for STG Related Behavior or Activity**.  Page 21.
                 This section will be implemented in Phase II which is expected to begin December 2012/January 2013.

Section 700:     **STG Step Down Program**.  Page 40.
                 This section will be implemented immediately upon distribution of this Instructional Memorandum; however, movement between Security Housing Units for placement into various steps is not anticipated to begin until Phase IV (approximately Spring/Summer 2013).

Section 800:     **Validated Inmate on Monitored Status**.  Page 51.
                 This section will be implemented in Phase II which is expected to begin December 2012/January 2013.

Section 900:     **Debriefing**.  Page 54.
                 This section will be implemented immediately upon distribution of this Instructional Memorandum.

Section 1000:    **Renunciation Process for Placement on Sensitive Needs Yards**.

RUIZ010477

Associate Directors
Wardens, Division of Adult Institutions
Page 6

> Page 56.
> This section will be implemented immediately upon distribution of this Instructional Memorandum.

Section 1100:    **Changes to Department Operations Manual (DOM), Chapter 6 – Adult Classification**. Page 56.

Section 1200:    **Revisions to California Code of Regulations, Title 15**. Page 59.

## Section 100. Staff Roles and Responsibilities.

Secretary, California Department of Corrections and Rehabilitation:
> The Secretary, CDCR will be responsible to approve/deny all formal requests for designation of a group or gang as a STG-I within the CDCR.

Director, Division of Adult Institutions (DAI):
> The Director, DAI, in conjunction with the Director, Enterprise Information Services (EIS), and the Chief, OCS, shall ensure departmental compliance with this policy.

Director, Enterprise Information Services (EIS):
> The Director, EIS, in coordination with the Chief, OCS, shall have management responsibility for the STG data base system.

Chief, Office of Correctional Safety:
1) The Chief, OCS, in coordination with the Director, DAI, shall ensure departmental compliance with this policy.
2) Supervise and coordinate the CDCR's STG intelligence, identification, validation, and suppression program and coordinate that program with other law enforcement agencies.
3) Management responsibility for Special Service Unit's (SSU) Gang Intelligence Operations section and its STG investigators. STG investigators shall be senior special agents, special agents, Correctional Lieutenants, and Correctional Sergeants assigned to the unit.
4) Select the SSU STG investigators.
5) Management responsibility for meeting the administrative needs of the California Gang Task Force (CGTF).
6) Develop and update policy; and management of the data for the STG data base.
7) Provide oversight of STG certification.
8) Serve as departmental repository for STG intelligence, identification, and certification. Provide oversight, review, and approval for STG validations.
9) Provide training and oversight to Investigative Service Unit (ISU) and STG investigative staff in the application of STG identification and behavior management.
10) In collaboration with DAI, responsible for providing training and certification of STG Committee Chairpersons.
11) Provide essential training to all department personnel in the implementation of this policy.
12) Make recommendations for approval/rejection of validation packages for STG Members and Associates.

Associate Director, High Security Mission:
> Ensure compliance with this policy as it relates to SHU operations and programs relative to male inmates.

RUIZ010478

Associate Director, Female Offender Programs and Services, Special Housing and Contract Beds:

Ensure compliance with this policy as it relates to SHU operations and programs relative to female inmates.

Wardens:
1) Wardens shall have management responsibility for their respective STG Investigators.
2) Each Warden shall ensure a STG Unit Classification Committee is established to review validation packages received from OCS of STG members and associates.
3) Implement and manage local STG classification committee activities and follow-up action.
4) In collaboration with OCS, establish orientation, practices, and processes to prevent or deter STG membership and activities.
5) Each institution shall have a STG investigator. STG investigators shall be Correctional Lieutenants, who shall be designated locally.
6) Wardens shall ensure that STG related incidents, intelligence, and information is referred to the appropriate personnel for review and disposition.
7) Each Warden shall ensure a Classification Committee reviews inmates who are validated STG affiliates participating in the SDP every 180 days for those in steps 1 through 3 and every 90 days for those in step 4. Inmates in step 5 shall be reviewed on an annual basis.
8) In collaboration with OCS, provide training of STG Committee Chairpersons.

Security Threat Group Unit Classification Committee:
1) Review all STG validation packages for accuracy, compliance, and to ensure due process requirements have been met in accordance with this pilot program, DOM, and various California Code of Regulations (CCR) Sections.
2) Review any Drop-out STG affiliate's new disciplinary behavior for appropriate housing or program due to documented nexus to STG behavior noted in the Rule Violation Report or other items of intelligence.
3) Review information/intelligence received from outside law enforcement agencies or which occurred outside CDCR jurisdiction to ensure disciplinary processes or formal documentation were applied, when appropriate.
4) Refer validated STG cases to ICC for placement consideration in the Step Down Program.
5) Respond to STG validation related inmate appeals.

Classification Services Unit (CSU):
1) Evaluate issues related to SHU placement, Classification Staff Representative (CSR) reviews, housing restrictions, etc.
2) Ensure department compliance with regulations managing SHU terms and placement.
3) Provide feedback to DAI and OCS on issues relating to the application of this policy.
4) In collaboration with OCS, provide training of STG Committee Chairpersons.

Security Threat Group Investigator/Lieutenant (formerly known as IGI or ISU Lieutenant):
1) Responsible to identify, track and document STG Members, Associates, and Suspects in accordance with this policy. Identify STG trends and report STG intelligence to the prison management and OCS.
2) STG investigative staff representative shall attend the classification committee for STG members, associates, and suspects, as a subject matter expert.
3) STG Investigators are directly responsible through their chain of command to their respective Wardens and are functionally supervised by the Special Agent in Charge, OCS, and the Senior Special Agent, Gang Intelligence Operations, SSU.

RUIZ010479

4) In coordination with the Chief, OCS, shall join with task forces comprised of local, State, and federal law enforcement personnel to track, monitor and interdict, within the framework of law, the illicit and unlawful behavior of STGs.

5) Conducts complex STG investigations and documents STG behavior and intelligence in accordance with this policy.

6) Prepare STG validation packages.

7) Maintain the local STG data base system.

8) Ensure that Gang Intelligence Operations is promptly notified of all arrests or incidents involving STG affiliated inmates.

9) Collaborate with the Correctional Counselor II, assigned to the Step Down Program, and other staff to provide updates and clarifications of STG status related to STG affiliates.

Correctional Counselor II (Step Down Program)

1) Serve as expert classification resource for the Step Down Program including participation in STG Unit Classification Committees and Institutional Classification Committees.

2) Complete central file reviews and prepare cases for presentation to the Departmental Review Board.

3) Monitor offender participation in the Step Down Program.

4) Develop Step Down Program schedule and coordinate coverage for facilitators.

5) Act as a Master Trainer in the components of the Step Down Program

Special Agent-in-Charge (SAC), OCS:

1) Shall have functional supervision of the Senior Special Agent, Gang Intelligence Operations, and STG Investigators (as it relates to validations, debriefings, and STG investigations/intelligence).

2) Shall be apprised of all STG management matters affecting, or having a potential to affect, departmental policy or procedure.

3) Shall be responsible for the preparation of charts, assessments, statistical reports, and other material as required to provide an accurate portrayal of STG activity.

4) Shall disseminate information to departmental and other criminal justice agency managers and STG investigators on a need-to-know basis.

Senior Special Agent, Gang Intelligence Operations, SSU:

1) Shall report directly to the SAC, OCS.

2) Provides supervision of the SSU Gang Intelligence Operations section which includes the SSU STG Investigators (Special Agents), and the Correctional Lieutenants, Sergeants, and support staff of the Gang Intelligence Operations Debriefing Team.

3) Maintains a close working relationship with the Chief, OCS; Chief, Classification Services Unit; and Parole Administrator, regarding STG management matters.

4) Shall be responsible for coordinating requests for STG activity data, training, and investigative assistance received from departmental as well as other criminal justices agencies.

**Section 200.  Certification Process.**

This section describes the standardized certification process for groups/gangs to be recognized as Security Threat Group's within CDCR.

Prison gangs, disruptive groups, and/or street gangs may be reviewed, categorized, and certified as STGs through the OCS.  Initial certification shall be based upon the documented severity of the threat to the security of the institution and safety of staff and inmates.

RUIZ010480

Associate Directors
Wardens, Division of Adult Institutions
Page 9

*Section 200.1.  Security Threat Group Certification Criteria:*

The criteria for designation as a Security Threat Group within CDCR may include, but is not limited to, the following:

a) Information from other state departments of corrections, jail or prison facilities, Federal, State, County, or City law enforcement agencies, as to the potential disruptive nature of the group under consideration.
b) Consideration with regard to whether the group meets the definition of a STG consistent with Attachment A of this Instructional Memorandum.
c) History of STG behavior in the community.
d) Evidence that the group presents a potential threat to the security of the institution and safety of staff and offenders.
e) History of threatening behavior to staff or offender safety involving such activities as riots, group disturbances, possession or manufacture of weapons, assault/battery, trafficking of narcotics, extortion and/or coercion of other individuals or groups.
f) Documentation of violent and/or illegal activities which may also include planning, organizing, threatening, financing, soliciting, or committing unlawful acts.
g) Group evolution, structure, formalized procedures or bylaws, and/or membership characteristics.
h) Information concerning group meetings and membership criteria.
i) Chronology of events or other information evidencing a threat to institutional security or safety of staff and offenders through group activities, associations, and potential security alignments.
j) Tattoo and graffiti documentation.
k) Group association evidence, including offender and staff interviews.
l) Available information concerning group philosophy and affiliations.

*Section 200.2.  Security Threat Group Designation Levels*

Security Threat Group-I's will consist of groups, gangs, and/or historically based prison gangs that the CDCR has determined to be the most severe threat to the security of the institutions and communities based on a history and propensity for violence and/or influence over other groups. Based upon their individual threat, clandestine operations, and/or influence over other STG affiliates, inmates who are validated as STG-I members will be placed in the SDP and housed in a SHU based solely upon their validation.  Validated STG-I associates will normally remain housed in general population unless confirmed STG behavior or activities, as described in Section 600 of this Instructional Memorandum, are present.  If these behaviors or activities are present, the STG-I associate will be considered for placement into the SDP.

Security Threat Group-II's will consist of other groups or gangs such as street gangs or disruptive groups comprised of members and associates who may be determined to be in a subservient role to the more dominant STG-I type groups.  Validated STG-II members or associates will remain housed in general population unless two or more confirmed STG behavior or activities, as described in Section 600 of this Instructional Memorandum, are present.  If these behaviors or activities are present, the STG-II member or associate will be considered for placement into the SDP.  As in existing practice, groups identified as STG-II will not be required to be certified.

*Section 200.3.  Requests for Certification of a Group*

Certification of a group at the STG-I level shall be accomplished as follows:
(a) Institution Staff or Division Staff shall:

RUIZ010481

Associate Directors
Wardens, Division of Adult Institutions
Page 10

1) Prepare a Security Threat Group Certification Worksheet (Attachment C) requesting that a STG Threat Assessment be initiated of the identified group.
2) The worksheet may include, but not be limited to:
   A. A history of incidents, behavior, and actions of the group
   B. The number of involved offenders at the institution
   C. Housing of these offenders – General Population (GP), Sensitive Needs Yard (SNY), Administrative Segregation Unit (ASU)
   D. Description of History and Philosophies (if known)
   E. Description of the Ranking Structure
   F. Description of Recruitment Methods or Strategies
   G. Description of identifying signs and symbols
   H. Roster of Members/Associates/Suspects
3) The worksheet shall be signed by the Warden and routed through the Associate Director, DAI, and the Director, DAI, prior to submission to OCS.
4) Attachments to the worksheet shall include copies of all information obtained by the STG Investigator including Crime Incident Reports (including attachments), Program Status Reports, and institutional threat assessments associated with this group.

(b) Office of Correctional Safety:
   1) The Chief, OCS, or his/her designee shall assign a Senior Special Agent or Special Agent to complete an official STG threat assessment investigation and position paper.
   2) The Senior Special Agent or Special Agent may request all STG Investigators to provide information regarding the identified group including:
      A. Confidential Reports/Non-Confidential Reports
      B. Information relative to problems associated with the identified group
      C. Identification (name/CDCR #), status (validated/not validated), and total numbers associated with the group
   3) The assigned agent may contact institutions for assistance with interviews of these offenders
   4) The assigned agent may travel to the requesting institution and interview offenders, as deemed necessary
   5) The assigned agent may develop/research and document in a threat assessment investigation position paper:
      A. The history of the identified group
      B. The ranking structure
      C. The influential members
      D. The Oath (if applicable)
      E. The recruitment process
      F. Common identifying signs and symbols
      G. Codes used by the identified group
      H. A roster of members/associates
      I. The propensity for violence
      J. List of those interviewed including status and location
      K. Significant interview information
      L. Summary of information received from the STG Investigators

RUIZ010482

M. Conclusions and Recommendations

6) The Chief, OCS, shall review the STG threat assessment investigation and position paper to determine whether the group should be recommended to the Secretary, CDCR, for certification as STG-I under any of the following conditions:

A. Serious STG activity within the CDCR or in any other correctional system operated at the City, State, or Federal level or contract facility.

B. Propensity for violence and/or crimes involving possession of weapons or weapon-making material, or other contraband related to violent acts or drug sales.

C. Evidence of inciting or conspiring to incite mass or ongoing disturbances.

D. Committing or threatening violent acts at the direction of and for the benefit of the gang.

E. Absent a documented history of violence, the group possesses the unique resources, training, skills, documents stating intent, or other evidence that presents a clear potential to threaten the safe and secure operation of the Department, its institutions and public safety.

F. Any evidence of current or developing leadership structure.

7) Once approved by the Chief, OCS, a STG threat assessment memorandum will be prepared. A copy of the threat assessment memorandum shall be shared with the Director, DAI prior to routing. The original threat assessment memorandum shall be routed to the Secretary, CDCR, for review and approval/disapproval.

8) The Secretary, CDCR, or designee will notify, in writing, the Chief, OCS, that a group has been certified as a STG-I. The Chief, OCS, will then notify, in writing, all DAI Wardens and STG Investigators that a group has been certified as a STG-I and that a Security Threat Group Administrative Directive (Attachment D) has been issued. The STG Administrative Directive will be transmitted as an Administrative Bulletin under the guidelines of the DOM, Article 6 Policy Directives.

A. If the request is not supported by the Secretary, CDCR, OCS shall prepare a memorandum to the requesting institution/division notifying them of the decision of the Secretary.

*Section 200.4. Request for Recognition of a Group as a STG-II:*

(a) Institution Staff or Division Staff shall:

1) Prepare a memorandum to the Chief, OCS requesting that a group be recognized as a STG-II.

2) The memorandum may include, but not be limited to:

A. A history of incidents, behavior, and actions of the group

B. The number of involved offenders at the institution

C. Housing of these offenders – GP, SNY, ASU

D. Description of identifying signs and symbols

3) The memorandum shall be signed by the Warden and routed through the Associate Director, DAI, and the Director, DAI, prior to submission to OCS.

(b) Office of Correctional Safety:

1) The Chief, OCS, shall assign a Senior Special Agent or Special Agent to review the request received from the institution.

2) The assigned agent may research the information received from the institution including:

A. The ranking structure

B. The influential members

C. The Oath (if applicable)

D. Common identifying signs and symbols

RUIZ010483

      E.  Codes used by the identified group
      F.  A roster of members/associates
      G.  The propensity for violence

3) The Chief, OCS, shall review all information and determine whether the group should be recognized by the CDCR as a STG-II.
4) Once approved by the Chief, OCS, a STG-II Recognition memorandum will be prepared by the assigned agent and distributed to all DAI Wardens and STG Investigators.
5) The group will be added to the STG database.
6) If the request is not supported by the Chief, OCS, the assigned agent shall prepare a memorandum to the requesting institution/division notifying them of the decision.

## Section 300.  Prevention.

(a) Advisement of Expectations:
Every inmate will be served a CDCR Form 2260, Advisement of Expectations (Attachment E), during their initial prison orientation.  The advisement will outline the CDCR's STG policy, to include consequences of STG involvement, as well as support for those desiring to abandon the STG lifestyle.  The advisement shall be provided to each inmate upon arrival at a Reception Center and the inmate will be required to sign noting receipt of the document.

(b) STG Diversion Video:
A comprehensive STG diversion video will be made available for viewing during the inmate orientation process and periodically thereafter.  Additionally, associated literature will be available to inmates as a prevention/diversion effort.  Department/Institution managers shall be responsible to ensure the video and literature is made available to the existing inmate population.  CDCR will incorporate innovative programming, which may include but not be limited to, violence prevention, anger management, self help, and diversion programs to provide inmates with alternatives to participating in STG behavior.

(c) STG Intervention and Diversion Programs:
STG diversion programs are an important component of a STG management strategy.  CDCR will incorporate innovative programming, which may include but not be limited to, violence prevention, anger management, self help, and diversion programs to assist inmates in assimilating into a non-segregated housing setting.

## Section 400.  Validation.

Validation is done to ensure that STG affiliate identifications are in compliance with departmental regulations.  The validation process is a strategy for identifying and documenting STG members, associates, or suspects, which are defined as follows:

Member:  Any offender who, based on documented evidence, has been accepted into membership by a STG.  STG members will be identified by the STG Investigator through the validation process and reviewed by OCS.  This identification requires at least three independent source items with a combined value of 10 points or greater coupled with information/activity indicative of being a member.  Validation of an offender as a member of a STG-I shall also require that at least one source item be a direct link to a current or former validated member or associate of the STG, or to an offender or any person who is validated by the Department within six months of the established or estimated date of activity identified in the evidence considered.

RUIZ010484

Associate:  Any offender who, based on documented evidence, is involved periodically or regularly with the members or associates of a STG.  STG associates will be identified by the STG Investigator through the validation process and reviewed by OCS.  This identification requires at least three independent source items with a combined value of 10 points or greater coupled with information/activity indicative of an associate.  Validation of an offender as an associate of a STG-I shall also require that at least one source item be a direct link to a current or former validated member or associate of the STG, or to an offender or any person who is validated by the Department within six months of the established or estimated date of activity identified in the evidence considered.

Suspect:  Any offender who, based on documented evidence, is suspected of being involved in or assisting a STG in the commission of STG behaviors in violation of CDCR policy.  The suspect is tracked by STG Investigative staff pending validation.  Suspects have attained two or more points and would not be officially validated but tracked for intelligence purposes.

The validation process delineates the formal objective criteria utilized by an STG Investigator to determine an individual's affiliation with a certified or recognized STG.  Each determining factor is weighted in regards to the information establishing a nexus to the STG.

*Section 400.1.  Validation Source Criteria:*

Validation Source Criteria is documented on the STG Pilot Form CDCR 128-B3 STG, Security Threat Group Identification Score Sheet (Attachment F).  This document is completed by the STG Investigator.

Multiple sources providing information about a single incident or behavior shall constitute a single source item.  One may support the other but will only count as one item toward validation with the others listed as support documents.  Source documents must be contained in the central file of the offender being validated.  Source documents may contain multiple source items; however, each piece of evidence must qualify as outlined in this Instructional Memorandum.

Symbols (**Two Points**): Hand signs, distinctive clothing, graffiti, etc., which have been identified by investigators as being used by and distinctive to specific STGs. Staff shall describe the symbol and articulate why they have concluded the symbol is used by and distinctive to a specific STG. Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Association (**Three Points**): Information related to the offender's association with validated STG affiliates. The association shall be more than a chance encounter or an innocuous association, but rather, an occurrence, pattern or history of encounters that involve STG behavior and/or conducting STG related business. Direct contact with a validated STG affiliate is not necessary to show this association. Staff shall articulate the basis for determining the content or conduct is credible evidence of association with the STG.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Informants (**Three Points**):  Documentation of information evidencing STG affiliation from an informant shall indicate the date of the information, whether the information is confidential or non-confidential, and an evaluation of the informant's reliability.  Confidential material shall also meet the requirements established in CCR, Title 15, Division 3, Section 3321.  Staff shall articulate how the information specifically relates to the offender's involvement with the STG. The information may be used as a source of validation if the informant provides specific

RUIZ010485

knowledge of how he/she knew the offender to be involved with the STG. Multiple confidential sources providing information regarding a single STG related incident or behavior shall constitute one source item. Exclusive reliance on hearsay information provided by informants will not be used for validation purposes or placement in the step down program. Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Debriefing Reports (**Three Points**): Only information referencing specific STG related acts or conduct shall be considered as a source item, when utilizing information from another offender's debriefing. Confidential material obtained from a debriefing report shall also meet the requirements established in CCR, Title 15, Division 3, Section 3321. Multiple sources of information relative to a single STG related act or conduct shall be considered a single source of validation. Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Written Materials (Offender identified in written material not in his possession-**Two Points**; Personal Possession-**Four Points**): Any material or documents evidencing STG activity such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific STGs or addresses, names, identities of validated STG affiliates. Although the item by itself may not evidence STG activity, when considered with other STG activity/behavior, it gives credence to a STG nexus. Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Photographs (**Four Points**): Individual or group photographs with STG connotations such as those which include insignia, symbols, or other validated STG affiliates. The date or age of a photograph shall be reasonably ascertained prior to any photo being relied upon for inclusion as a source item. No photograph shall be considered for validation purposes that are estimated to be older than four years. Any photograph being utilized as a source item that depicts STG members shall require that at least one of the individuals be previously validated by the Department, or validated by the Department within six months of the photograph's established or estimated date or origin. Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Staff Information (**Four Points**): Documentation of staff's visual or audible observations which reasonably indicate STG activity as described in Section 3314(a)(3)(L) and (M), Administrative Rules Violations, STG Contraband and Behavior; or Section 3315(a)(3)(Y) and (Z), Serious Rules Violations, STG Activity or Behavior, as described in Section 1200 of this Instructional Memorandum. Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Other Agencies (**Four Points**): Information evidencing STG affiliation provided by other agencies including, but not limited to, police reports, crime reports, or arrest reports evidencing STG conduct, which have not been submitted, considered, and incorporated within received court documents. Any information from another agency shall be documented by the staff person who receives such information, citing the source and validity of the information. Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Visitors (**Four Points**): Visits from persons or entities that are documented as willfully promoting, furthering or assisting STG affiliates in activities associated with the STG. Staff shall articulate the basis for concluding the relationship between the visitor(s) and offender is STG

RUIZ010486

related in nature or that the visitor(s) and offender engaged in conduct related to the STG. Staff shall articulate the basis for identifying the visitor(s) as associated with the STG. Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Communications (**Four Points**):   Documentation of telephone conversations, conversations between offenders, mail, notes, greeting cards, or other communication, including coded messages evidencing STG activity.  Staff shall articulate why, based on either the explicit or coded content, the communication is reliable evidence of association or membership with the STG.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Self Admission (**Five Points**):   Staff shall document information about an offender's verbal, written, or otherwise implied admission and specific involvement with the STG. Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Offenses (**Six Points**):   When circumstances of an offense conclude that the offense was committed for the benefit of, at the direction of, or in association with any STG; such as where the offense is between rival STGs, the victim is verified as a STG affiliate, or the offender's crime partner is a verified STG affiliate.  Staff shall articulate the basis for determining an offense to be STG related.   Multiple sources of information relative to a single incident or offense will be considered one source of validation. Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Tattoos and/or Body Markings (**Six Points**):   Tattoos and/or body markings identified by investigators as being used by and distinctive to a specific STG.  Staff shall describe the tattoo and/or body marking and articulate why they concluded the tattoo and/or body marking is used by and distinctive to a specific STG.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

Legal Documents (**Seven Points**):  Court transcripts, Probation Officer's reports, or other legal documents evidencing STG conduct.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

*Section 400.2.  Validation Procedure*
The validation process is a critical component of curtailing STG behavior.  Once an offender has been identified as a STG affiliate and vetted through the validation process, CDCR staff shall track their movement, monitor their conduct, and take interdiction action, as necessary.

The validation procedure shall be completed as follows:
(a) Institution or STG Investigative Staff:
　　1)   Institution or STG Investigative Staff will collect evidence of STG behavior or intelligence documenting that a subject may be involved in STG activities.
　　2)   STG Investigative staff initiate the validation process by reviewing all evidence and intelligence that has been gathered to determine that there is adequate, credible evidence to warrant further action.  If so, the following steps will be completed.  If not, the subject will continue to be tracked.

RUIZ010487

3) The STG Lieutenant or designee shall assign a staff member to conduct the investigation.

4) The assigned staff shall thoroughly review the evidence collected for corroboration and accuracy, review the central file including but not limited to CDC 115, Rules Violation Report, CDC Form 837, Crime Incident Reports, CDC Form 128-B, General or Confidential Chronos, conduct a search of the inmates cell/bed area, review visiting records, review housing records, interview witnesses, interview the subject, photograph the subject, contact outside agencies (as appropriate), and any other steps deemed necessary to ensure a complete and thorough investigation is completed.

5) The assigned staff shall prepare the validation package which shall consist of:

   A. Form Q, Gang Validation Worksheet-considered investigative materials/not for distribution

   B. Form Q-1, Body Markings Diagram-considered investigative materials/not for distribution

   C. Form Q-2, Body Markings Photographs-considered investigative materials/not for distribution

   D. CDCR Form 128-B STG2 Evidence Disclosure and Interview Notification (Attachment G)

   E. CDCR Form 128-B STG3, Security Threat Group Validation Chrono (Attachment H)

   F. The STG Investigator shall document in narrative fashion, the inmate's STG affiliation, category of involvement, and specify each original, independent source item of information contained in the central file, which was relied upon to support the conclusion. Each source item shall be specifically listed, including the investigator's explanation of the basis for the source items meeting the criteria set forth in this Instructional Memorandum.

   G. CDCR Form 1030STG, Confidential Information Disclosure Form (Attachment I) disclosing each confidential source item in enough detail that the inmate can rebut the information.

   H. CDCR Form CDCR 128-B3 STG Security Threat Group Identification Score Sheet

   I. Photocopy of each non-confidential source items

6) The assigned staff shall serve a copy of the validation package to the subject. The notice will inform the subject that they will have a minimum of 72 hours to prepare a written response/rebuttal to the information contained in the validation package.

7) The assigned staff shall interview the subject to review the written response/rebuttal and provide the subject with a meaningful opportunity to be heard upon the conclusion of the preparation period, unless the time requirements are waived by the inmate, in writing.

8) The subject's mental health status and/or need for staff assistance shall be evaluated prior to the interview. The duties and functions of a staff member assigned to assist an inmate in the source items interview will be the same as set forth in CCR, Title 15, Section 3318. The reason for the decision will be included in the written document.

9) The interview shall be documented and include a record of the subject's position on each of the source items used in the validation. The assigned staff shall record this information, via CDCR Form 128-B STG3, STG Validation Chrono, and provide a copy to the subject within 14 calendar days and prior to submission of the validation package to the OCS.

10) The validation package, along with the subject's written rebuttal and staff's CDCR Form 128-B STG3, STG Validation Chrono, outlining the subject's interview, shall be forwarded to the Senior Special Agent, SSU, or designee to request review of the validation package.

(b) Office of Correctional Safety:

SSU shall generally perform a quality control review of the formal validation package, upon receipt of all required documents from the institution or region. This review shall be completed by OCS staff at a classification level no lower than Special Agent and will ensure that STG affiliate identifications are in compliance with source information requirements contained within this Instructional Memorandum.

1) A Special Agent shall be assigned to complete the review of the validation package.
2) The assigned agent shall ensure the input of information from the validation package into the STG tracking system.
3) The assigned agent shall thoroughly review the validation package.
4) The assigned agent shall recommend validation or rejection and complete the following:
   A. The assigned agent shall prepare a CDCR Form 128-B2, Security Threat Group Validation/Rejection Review (Attachment J), noting the source items that were accepted and those that were rejected.
   B. The agent shall note under the "Action of Reviewer" section the recommended STG designation.
   C. The assigned agent shall update status of the subject in the tracking system, noting the recommendation that has been made to the institution.
   D. The assigned agent shall send the original CDCR Form 128-B2 to the STG Investigator at the originating institution or region.

(c) STG Investigator:
   1) The original CDCR Form 128-B2 shall be received by the originating STG investigator.
   2) The STG Investigator or designee shall review the CDCR Form 128-B2 noting the evaluation and recommendations of OCS.
   3) If incorrect information is contained on the CDCR Form 128-B2, the document must be returned to OCS for correction. Institution staff shall not make corrections, changes, or amendments to the CDCR Form 128-B2.
   4) The STG Lieutenant or designee shall instruct staff to issue a copy of the CDCR Form 128-B2 to the identified subject, provide a copy to the captain of the facility where the inmate is assigned, and forward the original CDCR Form 128-B2 to the Classification and Parole Representative (C&PR) for placement into the central file.
   5) The STG Investigator or appropriate lieutenant shall, as necessary, prepare a CDC Form 114-D, Administrative Segregation Unit Placement Notice. STG-I associates or any STG-II affiliate shall normally not be placed in the Administrative Segregation Unit (ASU). Consideration for placement into ASU will be based upon demonstrated STG behavior or activity by the inmate which warrants consideration of placement into the Step Down Program in a Security Housing Unit or meets placement criteria as outlined in CCR Section 3335(a).
   6) The STG Investigator or appropriate lieutenant shall assign staff to serve the CDC Form 114-D to the subject and facilitate his/her placement into ASU, as appropriate.

(d) Classification and Parole Representative:
   1) The original CDCR Form 128-B2 shall be received by the C&PR of the originating institution for inclusion into the subject's central file.
   2) The C&PR or designee shall be responsible for ensuring that each central file document identified and submitted as a source item for STG validation is clearly and permanently stamped according to its acceptance or rejection on the CDCR Form 128-B2. If the CDCR Form 128-B2 identifies that the document was accepted as a source item for validation, then the C&PR or designee shall stamp the document with the statement: "This document meets the validation requirements established in CCR 3378.2." If the CDCR Form 128-B2 identifies that the document was rejected as a source item for

RUIZ010489

validation, then the C&PR or designee shall stamp the document with the statement: "This document does not meet the validation requirements established in CCR 3378.2."

(e) Captain:
1) Ensure the assigned caseworker schedules the inmate's appearance before the STG Unit Classification Committee within 30 days of the institution's receipt of the finalized CDCR Form 128-B2.
2) Ensure an Investigative Employee is assigned, as appropriate.

(f) Correctional Counselor I:
1) Prepare and serve the CDCR Form 128-B1 STG, Security Threat Group Unit Classification Committee – Notice of Hearing (Attachment K) to the inmate at least 72 hours prior to the STG Unit Classification Committee.
2) Ensure the inmate has received copies of all non-confidential documentation and/or CDCR Form 1030STGs that will be reviewed/discussed during the STG Unit Classification Committee.

(g) Security Threat Group Unit Classification Committee is a unit classification committee responsible to review STG validation packages, after submission by the local STG Investigator and evaluation by OCS. The STG Committee will establish validation status (validated or rejected) and assign the level of the validation (e.g., member, associate).
1) The STG Unit Classification Committee shall be convened within 30 days of the institution's receipt of a completed CDCR Form 128-B2, Security Threat Group Validation/Rejection Review.
2) The validation package is reviewed noting the recommendation of OCS.
3) The committee shall determine if the package is complete, if the evidence is appropriate, and if they concur with the recommendation of OCS.
4) The STG committee shall review the Investigative Employee's Report.
5) The STG committee shall seek input from the inmate.
6) If the committee has a difference of opinion with the recommendation of OCS, the committee chairperson shall suspend the hearing and ask that it be rescheduled.
   A. The committee chairperson shall contact the SSU Senior Special Agent to discuss and resolve the issue/concern.

   B. If the issue/concern can not be resolved with the SSU Senior Special Agent, the Committee shall elevate the issue/concern to the Warden and Special Agent in Charge, OCS, for further discussion and a final decision.
   C. If the original recommendation of OCS requires a change based on the above referenced discussion, a new CDCR Form 128-B2 shall be completed by OCS and issued to the inmate.
   D. The resulting CDC Form 128-G1 shall articulate the issue requiring case conference and the decided resolution.
7) The committee shall re-convene, as necessary, and determine the appropriate level of STG affiliation, based on the totality of the information, as follows:
   A. STG-I Member
   B. STG-I Associate
   C. STG-II Member
   D. STG-II Associate
8) The committee shall make one of the following referrals or determinations:
   A. An inmate validated as a STG-I member shall be referred to ICC for transfer and placement recommendation into the SDP.

RUIZ010490

    B. An inmate who is housed in ASU, validated as an STG-I Associate, and has one STG-related Rules Violation Report (RVR) as listed in the STG Disciplinary Matrix (refer to Instructional Memorandum Procedures Section 600.1) and which is also identified in CCR Section 3341.5(c)(9) SHU Term Assessment Chart that is being used as a validation source item, shall be referred to ICC for transfer consideration to the SDP.

    C. An inmate who is housed in ASU, validated as an STG-II Member or Associate, and has two STG-related RVRs as listed in the STG Disciplinary Matrix and which are also identified in CCR Section 3341.5(c)(9) SHU Term Assessment Chart, shall be referred to ICC for program review and consideration of placement in the SDP.

    D. An inmate who is housed in ASU pending validation, whose validation is rejected, and who does not have documented STG behavior or whose behavior is determined to be non-STG related, shall be scheduled for ICC for release to appropriate general population housing.

    E. An inmate who is housed in general population, validated as a STG-I Associate or any STG-II affiliate and who does not have documented STG behavior, may not require referral to ICC and may be retained in appropriate general population housing.

    F. An inmate who is housed in general population, whose validation is rejected, and who does not have documented STG behavior, shall not require referral to ICC.

9) The committee chairperson shall verbally inform the inmate of the decision of the committee.

10) The committee chairperson shall document the STG Unit Classification Committee review date and the STG designation that is being assigned in the area provided on the CDCR Form 128-B2.

11) The Committee Recorder shall prepare the CDCR Form 128-G1, Security Threat Group Unit Classification Committee - Results of Hearing (Validation) (Attachment L).

12) The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G1, upon approval/signature by the Chairperson and the finalized CDCR Form 128-B2.

13) The STG Lieutenant shall receive a copy of the CDCR Form 128-B2 and forward to OCS for tracking purposes and input in the STG database.

(h) Institution Classification Committee:

    1) The committee shall review the CDCR Form 128-B2 STG, Security Threat Group Validation/Rejection Review and the CDCR Form 128-G1, Security Threat Group Unit Classification Committee – Results of Hearing (Validation).

    2) The committee shall assess a determinate SHU term for any inmate found guilty in a disciplinary hearing of an offense listed in CCR, Section 3341.5(c)(9), with one of the following dispositions:

        A. The ICC has discretion to assess and suspend any determinate SHU term to facilitate the inmate's placement in the SDP, as may be appropriate.

        B. When the ICC elects to assess and impose a determinate SHU term, the inmate, whenever possible, shall not be housed within the SDP portion of the SHU.

        C. Updated segregation reasoning must be provided in a new CDC Form 114-D, when the reasons for segregation changes.

    3) The committee will review the inmate's housing needs, as follows:

        A. STG-I Member:

            i. Requires placement in the Step Down Program at a SHU.

        B. STG-I Associate:

            i. If the validation source items include a documented STG behavior or activity as listed in the STG Disciplinary Matrix and which is also identified in CCR Section

RUIZ010491

3341.5(c)(9) SHU Term Assessment Chart – requires referral for transfer to the SDP and endorsement by the CSR.

    ii. If the validation source items do not meet the designated behavioral criteria for SDP placement - Release to general population unless the placement score or case factors have changed and the inmate requires further housing consideration.

  C. STG-II Member or Associate:

    i. If the validation source items include two occurrences of documented STG behavior or activity as listed in the STG Disciplinary Matrix which is also identified in CCR Section 3341.5 SHU Term Assessment Chart – requires referral for transfer to the SDP and endorsement by the CSR.

    ii. If the validation source items do not meet the designated behavioral criteria for SDP placement - Release to general population unless the placement score or case factors have changed and the inmate requires further housing consideration.

4) The date of the ICC's assessment and imposition of an indeterminate SHU term for the SDP shall establish the start date toward the required time in each specified step of the SDP. Applicable privileges, as outlined in this Instructional Memorandum, shall be initiated upon the inmate's arrival at the SHU facility.

5) If a transfer is determined appropriate, the case shall be referred to the CSR for review and endorsement. The CSR shall ensure segregation notice is appropriate and all source documents supporting the validation are stamped and present in the file.

Inmates who arrive to CDCR with a new commitment and who were previously validated by CDCR while a private citizen shall be referred to the STG Unit Classification Committee. The committee shall affirm or reject the validation, as described in Section 400.2. The inmate shall be referred to ICC for determination of housing based upon the STG designation level assigned, as described in Section 400.2.

*Section 400.3. Appeal of Validation*

An inmate or parolee must submit his/her validation appeal within 30 calendar days of the STG Unit Classification Committee's final decision. The validation will be considered final upon the STG Unit Classification Committee assigning the validation status and finalizing the CDCR Form 128-B2. Upon the inmate's receipt of the finalized CDCR Form 128-B2, he/she will have 30 calendar days to submit his/her appeal.

**Section 500. Documentation STG Involvement and Activity.**

The CDCR has a zero tolerance for any STG behavior or activity within its institutions. The STG policy recognizes that STG groups and group-like activity pose a significant risk to the safety of others and the secure orderly operation of its institutions. Every staff member who observes or witnesses STG behavior or activities has the responsibility to document their observations utilizing the identified forms.

1) CDC Form 837, Crime Incident Report which shall be processed in accordance with CCR, Section 3268. A copy of the document shall be routed to the STG Investigator.

RUIZ010492

2) CDCR Form 115, Rules Violation Report or CDCR Form 128-A, Custodial Counseling Chrono – which shall be processed in accordance with CCR, Article 5, Inmate Discipline. A copy of the document shall be routed to the STG Investigator.

3) CDCR Form 128-B, General Chrono – which shall be placed in the inmate's central file with copies being routed to the STG Investigator.

4) Confidential Memorandum or CDCR Form 128-B Confidential Chrono – which shall be reviewed per CCR 3321(c)(2) for placement into the confidential section of the central file. The original memorandum shall be placed into the central file with a copy being routed to the STG Investigator.

Current STG related behavior or activity is defined as behavior or activity with an identified nexus to the STG that occurred within four years of the current review.

### Section 600. STG Disciplinary Matrix for STG Related Behavior or Activity.

The STG policy incorporates a behavior based disciplinary component as a foundation to its pre-existing intelligence based system. The STG validation system also incorporates a layered approach of procedural safeguards to affirm appropriate due process in the validation and housing placement of STG affiliates.

Inmates who have been validated as a STG affiliate shall not participate in further STG activity or behavior. The consequences of further confirmed STG behavior are outlined in the STG Disciplinary Matrix. STG behaviors or activities included in the STG Disciplinary Matrix are separated into Administrative Rule Violations and Serious Rule Violations, as identified in Section 1200 of this Instructional Memorandum.

The STG Disciplinary Matrix addresses four categories of impacted affiliates:

1) Validated STG I Associates Initial Placement into the SDP from general population.
2) Validated STG II Members or Associates Initial Placement into the SDP from general population.
3) Validated STG affiliates assigned in the SDP, demonstrating continued STG behavior or activities.
4) Validated STG affiliates on Monitored Status, Inactive Status, Inactive-Monitored Status, or Drop-out Status.

### Section 600.1.  STG Disciplinary Matrix

The following behaviors and activities qualify as STG behavior, when a nexus has been established between the behavior and an identified STG. The nexus shall be clearly articulated in the specific act, as well as clearly described within the narrative of the associated RVR and Findings of the Senior Hearing Officer/Hearing Officer (SHO/HO).

| STG DISCIPLINARY MATRIX | | |
|---|---|---|
| Behavior/Activity With Nexus to STG | Administrative or Serious | SDP Placement Options |
| ❖ Murder, attempted murder, solicitation of murder, or voluntary manslaughter of a non-inmate or inmate; ❖ Assault or Battery capable of causing serious injury; Assault or battery with a deadly weapon or caustic substance | Serious | 5, 6 |

| | | |
|---|---|---|
| capable of causing serious injury, solicitation for offense;<br>❖ Taking a hostage;<br>❖ Possession of a firearm, explosive device, or weapon which has been manufactured or modified so as to have the obvious intent or capability of inflicting traumatic injury, and which is under the immediate or identifiable control of the inmate;<br>❖ Escape or attempted escape with force or violence<br>❖ Rape, sodomy, or oral copulation against the victim's will. | | |
| ❖ Introduction, Trafficking, or Distribution of any Controlled Substance (as defined in Section 3000);<br>❖ Arson involving damage to a structure or causing serious bodily injury.<br>❖ Possession of flammable, explosive, or combustible material with intent to burn any structure or property;<br>❖ Extortion or Threat by Means of Force or Violence, including requiring payment for protection/insurance or intimidating any person on behalf of the STG;<br>❖ Threatening to kill or cause serious bodily injury to a public official, their immediate family, their staff, or their staffs' immediate family;<br>❖ Any other felony involving violence or injury to a victim and not specifically identified on this chart. | Serious | 4, 5, 6 |
| ❖ Battery on a Peace Officer or non-inmate not involving use of a weapon;<br>❖ Assault on a Peace Officer or non-inmate by any means likely or not likely to cause great bodily injury;<br>❖ Assault or battery on a prisoner with no serious injury;<br>❖ Harassment of another person, group or entity either directly or indirectly through the use of the mail, telephone, or other means;<br>❖ Destruction of state property valued in excess of $400 dollars during a riot or disturbance;<br>❖ Theft, embezzlement, arson, destruction, or damage to another's personal property, state funds, or state property valued in excess of $400;<br>❖ Any felony not involving violence or the use of a weapon not listed in this schedule with a direct nexus to STG Behavior. | Serious | 3, 4, 5, 6 |
| ❖ Bribery of a non-inmate;<br>❖ Leading/Inciting a disturbance, riot, or strike;<br>❖ Active participation in, or attempting to cause conditions likely to threaten institution security;<br>❖ Willfully resisting, delaying, or obstructing any peace officer in the performance of duties that severely impacts or disrupts facility operations;<br>❖ Possession of Cell Phone or Components;<br>❖ Acting in a Leadership Role displaying behavior to organize and control other inmates; | Serious | 2, 3. 4, 5 |
| ❖ Gambling;<br>❖ Destruction or defacing state property valued at less than $400, with symbols or slogans intended to promote | Serious | 2, 3, 5 |

RUIZ010494

| | | |
|---|---|---|
| affiliation with a STG. | | |
| ❖ STG Related Tattoos and/or Body Markings (new since arrival in CDCR);<br>❖ Recording/documentation of telephone conversations evidencing active STG behavior;<br>❖ Communication between inmates regarding STG behavior or activities;<br>❖ Directing Active Participation for STG Roll Call;<br>❖ Directing Cadence for STG Group Exercise;<br>❖ Wearing, possessing, using, distributing, displaying, or selling any clothing, jewelry, emblems, badges, symbols, signs, or other items with the intent to intimidate, promote membership, or depict affiliation in a STG;<br>❖ In Possession of Self-Created or Original Artwork clearly depicting recognized STG Symbols;<br>❖ In Personal Possession of STG related Written Material including Membership or Enemy List, Constitution, Organizational Structures, Codes, Training Material, etc.;<br>❖ In Personal Possession of mail, notes, greeting cards or other communication including coded messages evidencing active STG behavior; | Serious | 1, 2, 3, 5 |
| Except as otherwise specified in this section, proven attempts to commit or conspire to commit any of the above listed offenses. | Serious | As noted in this chart. |
| ❖ Active Participation in STG Roll Call;<br>❖ Participating in STG Group Exercise;<br>❖ Using hand signs, gestures, handshakes, slogans, distinctive clothing, graffiti which specifically relate to an STG;<br>❖ In Possession of Artwork (other than self created and not original) clearly depicting recognized STG symbols;<br>❖ In Possession of Photographs that depict STG Association. Must include STG connotations such as insignia, symbols, or other validated STG affiliates.<br>❖ Violation of STG Contract (except associated with urinalysis testing or behavior not otherwise designated within this matrix). | Administrative | 1, 2, 5 |

## Section 600.2. Validated Affiliates Housed in the General Population

(a) Validated STG-I Associate

Initial Placement into the Step Down Program shall be based upon a validated STG-I associate being found guilty of STG related behavior, as identified in the STG Disciplinary Matrix, and subsequent to the initial validation, as follows:

- Two Administrative Rules Violation Reports within any 12-month period; or
- One Serious Rules Violation Report

RUIZ010495

If there is a finding of guilt for STG related behavior in an RVR, the SHO/HO shall review the inmate's Central File to affirm validation and review the related disciplinary history. Inmates confirmed as STG-I associates and meeting RVR behavioral criteria should be processed for placement into ASU, based upon their threat to others, pending ICC review for placement consideration into the Step Down Program. The SHO/HO shall ensure a signed preliminary copy of the completed CDCR Form 115 is routed to the STG Lieutenant.

1) Institution Classification Committee

A. The committee shall review the RVR and determine if it meets the criteria for placement in the SDP.
   i. If the behavioral criteria and/or nexus to STG behavior are not clearly identified, the committee shall consider further Chief Disciplinary Officer (CDO) review and/or appropriate general population housing options.
B. The committee shall discuss the inmate's behavior and encourage participation of the inmate.
C. Inmates who are found guilty of a serious rule violation which requires a determinate SHU term, shall be assessed a determinate SHU term in accordance with CCR Section 3341.5(c)(9).
D. ICC may:
   i. assess and impose the SHU term and refer the inmate to the CSR for appropriate SHU transfer endorsement;
   ii. assess and suspend the SHU term and place the inmate in the SDP, in conjunction with referral to the CSR for transfer endorsement;
   iii. upon completion of the determinate SHU term, impose an indeterminate SHU term and referral to the CSR for transfer endorsement.
E. The committee shall determine the inmate's current and future housing needs in accordance with the SDP Placement Option Chart.
F. The committee chairperson shall verbally inform the inmate of the decision of the committee.
G. The committee recorder shall prepare the CDCR Form 128-G, Classification Chrono.
H. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G, upon approval/signature by the Chairperson.
I. The date of the ICC's assessment and imposition of an indeterminate SHU term for the SDP shall establish the start date toward the required time in each specified step of the SDP. Applicable privileges, as outlined in this Instructional Memorandum, shall be initiated upon the inmate's arrival at the SHU facility.
J. If a transfer is determined appropriate, the case shall be referred to the CSR for review and endorsement.

(b) Validated STG-II Member or Associate

Initial placement into the Step Down Program shall be based upon a validated STG-II member or associate being found guilty of:

- Two STG-related RVRs as listed in the STG Disciplinary Matrix which are also identified in CCR Section 3341.5(c)(9) SHU Term Assessment Chart.

If there is a finding of guilt for STG related behavior in two RVRs, the SHO/HO shall review the inmate's Central File to affirm validation and review the related disciplinary history. Inmates validated as STG-II members or associates and meeting RVR behavioral criteria should be processed for placement into ASU, based upon their threat to others, pending

RUIZ010496

ICC review for placement consideration into the Step Down Program. The SHO/HO shall ensure a signed preliminary copy of the completed CDCR Form 115 is routed to the STG Lieutenant.

An inmate who is found guilty of a second STG related, SHUable RVR, but has not completed the validation process, shall have his/her validation package expedited.

1) Institution Classification Committee
   A. The committee shall review the RVRs and determine if they meet the criteria for placement in the SDP.
      i. If the behavioral criteria and/or nexus to STG behavior are not clearly identified, the committee shall consider further CDO review and/or appropriate general population housing options.
   B. The committee shall discuss the behavior and encourage participation of the inmate.
   C. Inmates who are found guilty of a second serious rule violation which requires a determinate SHU term, shall be assessed a determinate SHU term in accordance with CCR Section 3341.5(c)(9).
   D. ICC may:
      i. assess and impose the SHU term and refer the inmate to the CSR for appropriate SHU transfer endorsement;
      ii. assess and suspend the SHU term and place the inmate in the SDP, in conjunction with referral to the CSR for transfer endorsement;
      iii. upon completion of the second determinate SHU term, impose an indeterminate SHU term and refer for transfer endorsement to the SDP.
   E. The committee shall determine the inmate's current and future housing needs in accordance with the SDP Placement Options Chart.
   F. The committee chairperson shall verbally inform the inmate of the decision of the committee.
   G. The committee recorder shall prepare the CDCR Form 128-G, Classification Chrono.
   H. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G, upon approval/signature by the chairperson.
   I. The date of the ICC's assessment and imposition of an indeterminate SHU term for the SDP shall establish the start date toward the required time in each specified step of the SDP. Applicable privileges, as outlined in this Instructional Memorandum, shall be initiated upon the inmate's arrival at the SHU facility.
   J. If a transfer is determined appropriate, the case shall be referred to the CSR for review and endorsement.

(c) Drop-out Status Inmates

A STG member or associate, who is validated as a dropout of a STG and released from a SHU, may be removed from the general population or any other placement based upon being found guilty of continued STG related behavior, as identified in the STG Disciplinary Matrix, as follows:

- Two Administrative Rules Violation Reports within any 12-month period; or
- One Serious Rules Violation Report

The STG related behavior must have occurred after the Drop-out Status inmate's release from Transitional Housing Unit (THU). In addition, the behavior or activity must identify the inmate as an active STG member or associate of the same STG with which the inmate was

previously validated. If the STG related behavior or activity demonstrates a connection to a different STG, the information may be considered in the validation process and/or the disciplinary process, but shall not be used as the sole basis for placement of the inmate into the SDP.

1) Upon conclusion of the disciplinary process(es), the STG Investigator shall:
   A. Be provided a copy of the completed CDCR Form 115, Rules Violation Report(s) and CDC Form 114-D, Administrative Segregation Unit Placement Notice by appropriate facility staff.
   B. The STG Investigator shall prepare a CDCR Form 128-B STG2 Security Threat Group Validation Evidence Disclosure and Interview Notification and serve it to the subject. The notice will inform the subject that they will have a minimum of 72 hours to prepare a written response/rebuttal to the information contained in the RVR and the nexus to the STG.
   C. The assigned staff shall interview the subject to review the written response/rebuttal and provide the subject with a meaningful opportunity to be heard upon the conclusion of the preparation period, unless the time requirements are waived by the inmate, in writing.
   D. The subject's mental health status and/or need for staff assistance shall be evaluated prior to the interview. The duties and functions of a staff member assigned to assist an inmate in the source items interview will be the same as set forth in CCR Section 3318. The reason for the decision will be included in the written document.
   E. The interview shall be documented and include a record of the subject's position on the nexus between the RVR and the STG. The assigned staff shall record this information, via CDCR Form 128-B STG3, STG Validation Chrono, and provide a copy to the subject within fourteen (14) calendar days and prior to submission of the documentation to OCS.
   F. The CDCR Form 128-B STG3, STG Validation Chrono along with the subject's written rebuttal shall be forwarded to the Senior Special Agent, SSU, or designee.

2) OCS:
   A. A special agent shall be assigned to review the CDC Form 128-B STG3.
   B. The special agent shall complete a CDCR Form 128-B2 recommending to rescind the inmate's Drop-out status or recommending that the inmate retain his/her current designation.
   C. The completed CDCR Form 128-B2 shall be returned to the STG Investigator.

3) STG Investigator:
   A. The original CDCR Form 128-B2 shall be received by the originating STG investigator.
   B. The STG Investigator or designee shall review the CDCR Form 128-B2 noting the recommendations of OCS.
   C. The STG Lieutenant or designee shall instruct staff to issue a copy of the CDCR Form 128-B2 to the identified subject, provide a copy to the captain of the facility where the inmate is assigned, and forward the original CDCR Form 128-B2 to the C&PR for placement into the central file.

4) Captain:
   A. Ensure the assigned caseworker schedules the inmate's appearance before the STG Unit Classification Committee within 30 days of the institution's receipt of the finalized CDCR Form 128-B2.
   B. Ensure an Investigative Employee is assigned, as appropriate.

5) Correctional Counselor I:

    A. Prepare and serve the CDCR Form 128-B1 STG, Security Threat Group Unit Classification Committee – Notice of Hearing to the inmate at least 72 hours prior to the STG Unit Classification Committee.

    B. Ensure the inmate has received copies of all non-confidential documentation and/or CDCR Form 1030STGs that will be reviewed/discussed during the STG Unit Classification Committee.

6) Security Threat Group Unit Classification Committee:

    A. The STG Committee shall be convened within 30 days of the institution's receipt of a completed CDCR Form 128-B2.

    B. The STG committee shall review the CDC Form 115, Rules Violation Report(s), and discuss the behavior of the inmate encouraging his/her participation.

    C. The committee shall review the CDCR Form 128-B2, noting the recommendation of OCS.

    D. The committee shall determine if they concur with the recommendation of OCS.

    E. If the committee has a difference of opinion with the recommendation of OCS, the committee chairperson shall suspend the hearing and ask that it be rescheduled.

        i. The committee chairperson shall contact the SSU Senior Special Agent to discuss and resolve the issue/concern.

        ii. If the issue/concern can not be resolved with the SSU Senior Special Agent, the Committee shall elevate the issue/concern to the Warden and Special Agent in Charge, OCS, for further discussion and a final decision.

        iii. If the original recommendation of OCS requires a change based on the above referenced discussion, a new CDCR Form 128-B2 shall be issued.

        iv. The resulting CDCR Form 128-G1 shall articulate the issue requiring case conference and the decided resolution.

    F. The committee shall re-convene, as necessary, and determine the need to rescind the current designation (i.e., drop-out status).

    G. The committee shall make a recommendation to ICC regarding the inmate's current and future housing needs (in accordance with the SDP Placement Option Chart), based on the totality of the information.

    H. The committee chairperson shall verbally inform the inmate of the decision of the committee.

    I. The committee chairperson shall document the STG Unit Classification Committee review date and the STG designation that is being assigned in the area provided on the CDCR Form 128-B2.

    J. The committee recorder shall prepare the CDCR Form 128-G1, Security Threat Group Unit Classification Committee – Results of Hearing (Monitored, Inactive, Inactive/Monitored, or Drop-out Status)(Attachment M).

    K. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G1, upon approval/signature by the Chairperson and the finalized CDCR Form 128-B2.

    L. The STG Lieutenant shall receive a copy of the CDCR Form 128-B2 and forward to OCS for tracking purposes and input in the STG database.

7) Institution Classification Committee:

    A. The committee will review the CDCR Form 128-B2 STG, Security Threat Group Validation/Rejection Review and the CDCR Form 128-G1, Security Threat Group Unit Classification Committee – Results of Hearing (Monitored, Inactive, Inactive/Monitored, or Drop-out Status).

    B. The committee shall discuss the inmate's behavior and encourage participation of the inmate.

RUIZ010499

Associate Directors
Wardens, Division of Adult Institutions
Page 28

C. Inmates who are found guilty of a serious rule violation which requires a determinate SHU term, shall be assessed a determinate SHU term in accordance with CCR Section 3341.5(c)(9).

D. ICC may:
   i.   assess and impose the SHU term and refer the inmate to the CSR for appropriate SHU transfer endorsement;
   ii.  assess and suspend the SHU term and place the inmate in the SDP, in conjunction with referral to the CSR for transfer endorsement;
   iii. upon completion of the determinate SHU term, impose an indeterminate SHU term and referral to the CSR for transfer endorsement.

E. The committee will determine the inmate's current and future housing needs in accordance with the SDP Placement Options Chart.

F. The committee chairperson shall verbally inform the inmate of the decision of the committee.

G. The committee recorder shall prepare the CDCR Form 128-G, Classification Chrono.

H. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G, upon approval/signature by the Chairperson.

I. The date of the ICC's assessment and imposition of an indeterminate SHU term for the SDP shall establish the start date toward the required time in each specified step of the SDP. Applicable privileges, as outlined in this Instructional Memorandum, shall be initiated upon the inmate's arrival at the SHU facility.

J. If a transfer is determined appropriate, the case shall be referred to the CSR for review and endorsement.

(d) <u>STG Monitored Status Affiliates</u>

For STG affiliates who previously completed the SDP, re-housing into the SDP shall be based upon a monitored status affiliate being found guilty of STG related behavior.

- Refer to Section 800.2 of this Instructional Memorandum for monitored status affiliates.

(e) <u>Inactive Status or Inactive-Monitored Status Affiliate</u>

An inactive status affiliate is defined as a validated affiliate who was released from SHU prior to implementation of Case by Case Reviews. This inmate was not identified as having been involved in gang related activity for a period of six years, was reviewed by a Departmental Review Board, and released from the SHU.

An inactive-monitored status affiliate is defined as a validated affiliate who was released from SHU concurrent to the implementation of the Step Down Program through a Case by Case Review.

Placement in the SDP shall be based on an inactive status or inactive-monitored status affiliate being involved in either confirmed STG behavior or being found guilty of STG related behavior, as identified in the STG Disciplinary Matrix, as follows:

- Two Administrative Rules Violation Reports within any 12-month period; or
- One Serious Rules Violation Report

RUIZ010500

Upon conclusion of the disciplinary process(es), facility staff will ensure the Captain of the facility where the inmate is assigned is provided with a copy of the completed CDC Form 115, Rules Violation Report(s).

1) Captain:
   A. Direct staff to prepare a CDC Form 114-D, Administrative Segregation Unit Placement Notice, if applicable, and facilitate his/her placement into ASU.
   B. Ensure an Investigative Employee is assigned, as appropriate.
   C. Ensure the assigned caseworker schedules the inmate's appearance before the ICC.

2) Correctional Counselor I:
   A. Prepare and serve the CDCR Form 128-B1, Notice of Classification Hearing, to the inmate at least 72 hours prior to ICC.
   B. Ensure the inmate has received copies of all non-confidential documentation and/or CDCR Form 1030STGs that will be reviewed/discussed during the ICC.

3) Institution Classification Committee:
   A. The committee shall review the RVR and determine if it meets the criteria for placement in the SDP.
      i. If the behavioral criteria and/or nexus to STG behavior are not clearly identified, the committee shall consider further CDO review and/or appropriate general population housing options.
   B. The committee shall discuss the inmate's behavior and encourage participation of the inmate.
   C. Inmates who are found guilty of a serious rule violation which requires a determinate SHU term, shall be assessed a determinate SHU term in accordance with CCR Section 3341.5(c)(9).
   D. ICC may:
      i. assess and impose the SHU term and refer the inmate to the CSR for appropriate SHU transfer endorsement;
      ii. assess and suspend the SHU term and place the inmate in the SDP, in conjunction with referral to the CSR for transfer endorsement;
      iii. upon completion of the determinate SHU term, impose an indeterminate SHU term and referral to the CSR for transfer endorsement.
   E. The committee shall determine the need to rescind the inmate's current designation (i.e., inactive, inactive-monitored).
   F. The committee shall determine the inmate's current and future housing needs (in accordance with the SDP Placement Options Chart), based on the totality of the information.
   G. The committee chairperson shall verbally inform the inmate of the decision of the committee.
   H. The committee chairperson shall complete the CDCR Form 128-B2 STG Supplement (Attachment N) with the ICC review date and the STG designation that is being assigned.
   I. The committee recorder shall prepare the CDCR Form 128-G, Classification Chrono.
   J. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G, upon approval/signature by the chairperson.
   K. The date of the ICC's assessment and imposition of an indeterminate SHU term for the SDP shall establish the start date toward the required time in each specified step of the SDP. Applicable privileges, as outlined in this Instructional Memorandum, shall be initiated upon the inmate's arrival at the SHU facility.

RUIZ010501

L.  The STG Lieutenant shall receive a copy of the CDCR Form 128-B2 STG Supplement and forward to OCS for tracking purposes and input in the STG database.

M.  If a transfer is determined appropriate, the case shall be referred to the CSR for review and endorsement.

*Section 600.3.  Validated Affiliate with Confirmed STG Behavior Outside the Disciplinary Process*

(a)  A STG affiliate determined to have confirmed STG behavior or intelligence; information from an outside law enforcement agency; or which occurred outside the jurisdiction of the department or formal disciplinary process shall be documented in a CDCR Form 128-B, General Chrono (confidential chrono, if appropriate). The activity or behavior must have occurred within the last four years. Investigators shall establish reliability per CCR Section 3321 when confidential information is used and shall be recorded within the chrono. This confirmed STG behavior or activity shall consist of the following:

- Behavior, activity or intelligence items as identified in Section 600.1 – Validation Source Criteria totaling at least 10 additional points and identified subsequent to the validation process. This process shall only be utilized if the circumstances cannot otherwise be addressed through the disciplinary process.

Any time a validated inmate engages in behavior that would warrant an RVR, it is the responsibility of the observing staff member to ensure appropriate disciplinary procedures are applied.

Investigative staff shall be responsible to initiate or update a STG Pilot Form 128-B3, STG Identification Worksheet, anytime confirmed STG behavior occurs and cannot be addressed through the disciplinary process.

1)  STG Lieutenant or Investigator:

A.  The completed CDC Form 128-B, General Chrono, shall be referred by the facility where it was completed to the STG Lieutenant for review to ensure the identified behavior/activities could not have been addressed through the disciplinary process.

i.  If the STG Lieutenant determines that the information should have been addressed through the disciplinary process, the CDC Form 128-B shall be returned to the originating facility to initiate the disciplinary process.

B.  The STG Lieutenant shall assign staff to prepare a CDCR Form CDCR 128-B3 STG, STG Identification Score Sheet.

C.  When a validated inmate receives a total of 10 additional points (subsequent to validation), the STG Lieutenant shall assign staff to prepare a CDCR Form 128-B STG2, Security Threat Group Validation Evidence Disclosure and Interview Notification, and serve it to the subject, along with copies of all non-confidential information or CDCR Form 1030STG, Confidential Information Disclosure Forms. The notice will inform the subject that they will have a minimum of 72 hours to prepare a written response/rebuttal to the information they received.

D.  The assigned staff shall interview the subject to review the written response/rebuttal and provide the subject with a meaningful opportunity to be heard upon the conclusion of the preparation period, unless the time requirements are waived by the inmate, in writing.

E.  The subject's mental health status and/or need for staff assistance shall be evaluated prior to the interview. The duties and functions of a staff member

RUIZ010502

assigned to assist an inmate in the interview will be the same as set forth in CCR Section 3318. The reason for the decision will be included in the written document.
   F. The interview shall be documented and include a record of the subject's position on each item and it's nexus to the STG. The assigned staff shall record this information, via CDCR Form 128-B STG3, STG Validation Chrono, and provide a copy to the subject within fourteen (14) calendar days and prior to submission of the documentation to OCS.
   G. The CDCR Form 128-B STG3, STG Validation Chrono along with the subject's written rebuttal shall be forwarded to the Senior Special Agent, SSU, or designee.

2) OCS:
   A. A special agent shall be assigned to review the CDC Form 128-B STG3.
   B. The special agent shall complete an updated CDCR Form 128-B2 documenting the additional source items that are being recommended for acceptance and those that are being recommended for rejection.
   C. The completed CDCR Form 128-B2 shall be returned to the STG Investigator.

3) STG Investigator:
   A. The original CDCR Form 128-B2 shall be received by the originating STG investigator.
   B. The STG Investigator or designee shall review the CDCR Form 128-B2 noting the evaluation and recommendations of OCS.
   C. If incorrect information is contained on the CDCR Form 128-B2, the document must be returned to OCS for correction. Institution staff shall not make corrections, changes, or amendments to the CDCR Form 128-B2.
   D. The STG Lieutenant or designee shall instruct staff to issue a copy of the CDCR Form 128-B2 to the identified subject, provide a copy to the captain of the facility where the inmate is assigned, and forward the original CDCR Form 128-B2 to the C&PR for placement into the central file.

4) Captain:
   A. Ensure the assigned caseworker schedules the inmate's appearance before the STG Unit Classification Committee within 30 days of the institution's receipt of the CDCR Form 128-B2.
   B. Ensure an Investigative Employee is assigned, as appropriate.

5) Correctional Counselor I
   A. Prepare and serve the CDCR Form 128-B1 STG, Security Threat Group Unit Classification Committee – Notice of Hearing to the inmate at least 72 hours prior to the STG Unit Classification Committee.
   B. Ensure the inmate has received copies of all non-confidential documentation and/or CDCR Form 1030STGs that will be reviewed/discussed during the STG Unit Classification Committee.

6) Security Threat Group Unit Classification Committee:
   A. The STG Committee shall be convened within 30 days of the institution's receipt of an updated CDCR Form 128-B2.
   B. The STG committee shall review the package prepared by the STG Investigator and the CDCR Form 128-B2, noting the recommendation of OCS.
   C. The STG Committee shall evaluate the reason that STG related activity could not be addressed through the disciplinary process.

RUIZ010503