i. If the committee determines the information should have been addressed through the disciplinary process, the documentation shall be referred to the STG Investigator or other appropriate lieutenant to review and ensure the appropriate disciplinary action is completed.

    ii. If source item(s) would have no bearing on the need for segregation (i.e., source item points remain at 10 or more), the hearing will be continued; or

    iii. The hearing will be suspended pending completion of the disciplinary process and returned to the committee chairperson.

D. The STG committee shall reconvene, as necessary, and shall discuss the behavior and/or activities of the inmate and encourage participation from the inmate.

E. The committee shall determine if they concur with the recommendation of OCS.

F. If the committee has a difference of opinion with the recommendation of OCS, the committee chairperson shall suspend the hearing and ask that it be rescheduled.

    i. The committee chairperson shall contact the SSU Senior Special Agent to discuss and resolve the issue/concern.

    ii. If the issue/concern can not be resolved with the SSU Senior Special Agent, the Committee shall elevate the issue/concern to the Warden and Special Agent in Charge, OCS, for further discussion and a final decision.

    iii. If the original recommendation of OCS requires a change based on the above referenced discussion, a new CDCR Form 128-B2 shall be completed by OCS and issued to the inmate.

    iv. The resulting CDCR Form 128-G1 shall articulate the issue requiring case conference and the decided resolution.

G. The committee shall re-convene, as necessary, and determine the need to rescind the current designation (i.e., drop-out status).

H. The committee shall make a recommendation to ICC regarding the inmate's current and future housing needs, based on the totality of the information.

I. The committee chairperson shall verbally inform the inmate of the decision of the committee.

J. The committee chairperson shall document the STG Unit Classification Committee review date and the STG designation that is being assigned in the area provided on the CDCR Form 128-B2.

K. The Committee Recorder shall prepare the CDCR Form 128-G1, Security Threat Group Unit Classification Committee – Results of Hearing (Confirmed STG Behavior or Intelligence)(Attachment O) which shall include the basis for the decision which did not result in the issuance of a CDC Form 115, Rules Violation Report (e.g., activity occurred in county jail or activity occurred while offender was not in CDCR custody).

L. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G1, upon approval/signature by the Chairperson and the CDCR Form 128-B2.

M. The STG Lieutenant shall receive a copy of the CDCR Form 128-B2 and forward to OCS for tracking purposes and input in the STG database.

7) Captain:

A. Direct staff to prepare a CDC Form 114-D, Administrative Segregation Unit Placement Notice.

B. Instruct staff to issue the CDC Form 114-D to the identified inmate and facilitate his/her placement into ASU.

8) Institution Classification Committee:

RUIZ010504

A. The committee will review the CDCR Form 128-B2, Security Threat Group Validation/Rejection Review and the CDCR Form 128-G1, Security Threat Group Unit Classification Committee – Results of Hearing (Confirmed STG Behavior or Intelligence).

B. The committee shall discuss the inmate's behavior and encourage participation of the inmate.

C. The committee shall determine the inmate's current and future housing needs in accordance with the SDP Placement Option Chart.

D. The committee chairperson shall verbally inform the inmate of the decision of the committee.

E. The committee recorder shall prepare the CDCR Form 128-G, Classification Chrono.

F. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G, upon approval/signature by the Chairperson.

G. The date of the ICC's assessment and imposition of an indeterminate SHU term for the SDP shall establish the start date toward the required time in each specified step of the SDP. Applicable privileges, as outlined in this Instructional Memorandum, shall be initiated upon the inmate's arrival at the SHU facility.

H. If a transfer is determined appropriate, the case shall be referred to the CSR for review and endorsement.

*Section 600.4. Return to CDCR Custody*

a) An inmate who previously paroled or was discharged with MAX custody due to pending validation and is returned to CDCR's custody shall be placed in ASU and afforded all procedural safeguards for segregated inmates.

The STG Investigator shall obtain the validation package to determine the status.

1) If the validation process was completed after the inmate's release from custody and the inmate was validated as an STG-I member, the inmate shall be seen by ICC for review of the placement in the Step Down Program.

2) If the validation process was completed after the inmate's release from custody and the inmate was validated as an STG-I associate or STG-II member or associate, the inmate's validation package shall be reviewed by ICC to determine current housing needs (i.e., release to general population, transfer to the SDP based on documented STG related behavior).

3) If the validation process was not completed, the STG Investigator shall update the validation package in compliance with Section 400 of this Instructional Memorandum and submitted to OCS.

b) Return to CDCR Custody with Previous MAX Custody:

A validated STG affiliate who previously paroled or was discharged with MAX custody and is returned to CDCR's custody shall be placed in ASU and afforded all procedural safeguards for segregated inmates. Receiving and Release staff or counseling staff shall notify the STG Investigator of receipt of a previously validated STG affiliate.

1) Institution or STG Investigative Staff:

RUIZ010505

    A. The STG Lieutenant or designee shall assign a staff member to complete an investigation of the inmate's activities since being released from the custody of the CDCR.

    B. The assigned staff shall thoroughly review the central file including but not limited to CDC 115, Rules Violation Reports, CDC Form 837, Crime Incident Reports, legal documents, parole/Board of Parole Hearing (BPH) reports, CDC Form 816, Reception Center Readmission Summary, CDC Form 128-B, General or Confidential Chronos, and CDC Form 128-B2, SSU Validation/Rejection Review, conduct a search of the inmates property, photograph the inmate, contact outside law enforcement agencies (when appropriate), and any other steps deemed necessary to ensure a thorough investigation is completed.

    C. The assigned staff shall review the circumstances of the commitment offense/parole violation.

    D. The assigned staff shall obtain previous housing information from the Strategic Offender Management System (SOMS).

    E. The assigned staff shall prepare a memorandum or CDC Form 128-B, General Chrono, to the STG Lieutenant or designee outlining all information that has been discovered through the investigation.

    F. The STG Lieutenant shall evaluate the information provided and prepare a CDC Form 128-B requesting an updated CDCR Form 128-B2 from OCS. The package will be forwarded to OCS.

2) Office of Correctional Safety:

    A. A special agent shall be assigned to review the CDC Form 128-B.

    B. The special agent shall complete a CDCR Form 128-B2 recommending to update the inmate's current designation.

    C. The completed CDCR Form 128-B2 shall be returned to the STG Investigator.

3) STG Investigator:

    A. The original CDCR Form 128-B2 shall be received by the originating STG investigator.

    B. The STG Investigator or designee shall review the CDCR Form 128-B2 noting the recommendations of OCS.

    C. If incorrect information is contained on the CDCR Form 128-B2, the document must be returned to OCS for correction. Institution staff shall not make corrections, changes, or amendments to the CDCR Form 128-B2.

    D. The STG Lieutenant or designee shall instruct staff to issue a copy of the CDCR Form 128-B2 to the identified subject, provide a copy to the captain of the facility where the inmate is assigned, and forward the original CDCR Form 128-B2 to the Classification and Parole Representative (C&PR) for placement into the central file.

4) Captain:

    A. Ensure the assigned caseworker schedules the inmate's appearance before the STG Unit Classification Committee within 30 days of the institution's receipt of the CDCR 128-B2.

    B. Ensure an Investigative Employee is assigned, as appropriate.

5) Correctional Counselor I:

    A. Prepare and serve the CDCR Form 128-B1 STG, Security Threat Group Unit Classification Committee – Notification of Hearing, to the inmate at least 72 hours prior to the ICC.

RUIZ010506

   B. Ensure the inmate has received copies of all non-confidential documentation and/or CDCR Form 1030STGs that will be reviewed/discussed during the ICC.

6) Security Threat Group Unit Classification Committee:
   A. The STG Unit Classification Committee shall be convened within 30 days of the institution's receipt of a completed CDCR Form 128-B2.
   B. The STG committee shall review the information contained in the CDC Form 128B, General Chrono.
   C. The STG committee shall discuss the behavior and encourage participation from the inmate.
   D. The committee shall review the CDCR Form 128-B2, noting the recommendation of OCS.
   E. The committee shall determine if they concur with the recommendation of OCS.
   F. If the committee has a difference of opinion with the recommendation of OCS, the committee chairperson shall suspend the hearing and ask that it be rescheduled.
     i. The committee chairperson shall contact the SSU Senior Special Agent to discuss and resolve the issue/concern.
     ii. If the issue/concern can not be resolved with the SSU Senior Special Agent, the Committee shall elevate the issue/concern to the Warden and Special Agent in Charge, OCS, for further discussion and a final decision.
     iii. If the original recommendation of OCS requires a change based on the above referenced discussion, a new CDCR Form 128-B2 shall be completed by OCS and issued to the inmate.
     iv. The resulting CDCR Form 128-G1 shall articulate the issue requiring case conference and the decided resolution.
   G. The committee shall re-convene, as necessary, and determine the need to rescind the current designation (i.e., drop-out status).
   H. The committee shall make a recommendation to ICC regarding the inmate's current and future housing needs (in accordance with the SDP Placement Option Chart), based on the totality of the information.
   I. The committee chairperson shall verbally inform the inmate of the decision of the committee.
   J. The committee chairperson shall document the STG Unit Classification Committee review date and the STG designation that is being assigned in the area provided on the CDCR Form 128-B2.
   K. The committee recorder shall prepare the CDCR Form 128-G1, Security Threat Group Unit Classification Committee – Results of Hearing (Confirmed STG Behavior/Intelligence).
   L. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G1, upon approval/signature by the Chairperson and the CDCR Form 128-B2.
   M. The STG Lieutenant shall receive a copy of the CDCR Form 128-B2 and forward to OCS for tracking purposes and input in the STG database.

7) Institution Classification Committee:
   A. The committee will review the CDCR Form 128-B2 and the CDCR Form 128-G1.
   B. The committee shall discuss the information obtained with the inmate and encourage his participation.
   C. The committee shall give consideration to the inmate's prior housing in ASU or SHU; placement in the SDP; gang or STG activity while in the community; and circumstances of commitment offense.
   D. The committee will discuss the inmate's housing needs as follows:

RUIZ010507

    i.  STG-I Member:
       ➤ Requires placement in the Step Down Program at a SHU.
    ii.  STG-I Associate:
       ➤ If the validation source items include a documented STG behavior or activity as listed in the STG Disciplinary Matrix and which is also identified in CCR Section 3341.5(c)(9) SHU Term Assessment Chart – requires referral for transfer to the SDP and endorsement by the CSR.
       ➤ If the validation source items do not meet the designated behavioral criteria for SDP placement - Release to general population unless the placement score or case factors have changed and the inmate requires alternate housing consideration.
    iii.  STG-II Member or Associate:
       ➤ If the validation source items include two occurrences of documented STG behavior or activity as listed in the STG Disciplinary Matrix which is also identified in CCR Section 3341.5 SHU Term Assessment Chart – requires referral for transfer to the SDP and endorsement by the CSR.
       ➤ If the validation source items do not meet the designated behavioral criteria for SDP placement - Release to general population unless the placement score or case factors have changed and the inmate requires alternate housing consideration.

E. The committee chairperson shall verbally inform the inmate of the decision of the committee.

F. The committee recorder shall prepare the CDCR Form 128-G, Classification Chrono.

G. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G, upon approval/signature by the Chairperson and the CDCR Form 128-B2.

H. The STG Lieutenant shall receive a copy of the CDCR Form 128-B2 and forward to OCS for tracking purposes and input in the STG database.

I. The date of the ICC's assessment and imposition of an indeterminate SHU term for the SDP shall establish the start date toward the required time in each specified step of the SDP. Applicable privileges, as outlined in this Instructional Memorandum, shall be initiated upon the inmate's arrival at the SHU facility.

J. If a transfer is determined appropriate, the case shall be referred to the CSR for review and endorsement.

c) <u>Return to CDCR Custody with other than MAX Custody</u>
A validated STG affiliate who previously paroled or was discharged and was designated either inactive or monitored and returns to the custody of the CDCR shall be referred to the STG Investigator.

1) Institution or STG Investigative Staff:

A. The STG Lieutenant or designee shall assign a staff member to complete an investigation of the inmate's activities since being released from the custody of the CDCR.

B. The assigned staff shall thoroughly review the central file including but not limited to CDC 115, Rules Violation Reports, CDC Form 837, Crime Incident Reports, legal documents, parole/BPH reports, CDC Form 816, Reception Center Readmission Summary, CDC Form 128-B, General or Confidential Chronos, and CDC Form 128-B2, SSU Validation/Rejection Review, conduct a search of the inmates property, photograph the inmate, contact outside law enforcement agencies (when appropriate), and any other steps deemed necessary to ensure a thorough investigation is completed.

RUIZ010508

C. The assigned staff shall review the commitment offense to determine whether the conviction had any connection or nexus to the STG of the inmate's previous validation.

D. The assigned staff shall obtain previous housing information from SOMS.

E. The assigned staff shall prepare a memorandum or a CDC Form 128B, General Chrono, outlining all information that has been discovered through the investigation.

F. The STG Lieutenant shall evaluate the CDC Form 128B, General Chrono, and determine if the information warrants submission to the STG Unit Classification Committee. This decision will be based upon the following:

   i. Circumstances of the commitment offense demonstrate continued behavior or activities in support of the STG. Requires notification to OCS and referral to the STG Unit Classification Committee

   ii. Activity while in the community and/or the totality of the information gathered demonstrates continued behavior or activities in support of the STG. Requires notification to OCS and referral to the STG Unit Classification Committee

   iii. Activity while in the community and/or the totality of the information gathered does not demonstrate continued behavior or activities in support of the STG. Does not require placement in segregated housing or referral to the STG Unit Classification Committee.

G. The STG Lieutenant or designee shall prepare a CDCR Form 128-B STG2, Security Threat Group Validation Evidence Disclosure and Interview Notification, documenting all of the information gathered during the investigation and determined to demonstrate a continued nexus to the STG with which he was previously validated.

H. The STG Investigator or appropriate lieutenant shall, as necessary, prepare a CDC Form 114-D, Administrative Segregation Unit Placement Notice.

I. The STG Investigator or appropriate lieutenant shall assign staff to serve the CDC Form 114-D to the subject and facilitate his/her placement into ASU, as appropriate.

J. The assigned staff shall serve a copy CDC Form 128-B to the subject. The notice will inform the subject that they will have a minimum of 72 hours to prepare a written response/rebuttal to the information provided. The inmate shall be provided with copies of all non-confidential documents and CDCR Form 1030STGs being utilized in this review process.

K. The assigned staff shall interview the subject to review the written response/rebuttal and provide the subject with a meaningful opportunity to be heard upon the conclusion of the preparation period, unless the time requirements are waived by the inmate, in writing.

L. The subject's mental health status and/or need for staff assistance shall be evaluated prior to the interview. The duties and functions of a staff member assigned to assist an inmate in the interview will be the same as set forth in CCR Section 3318. The reason for the decision will be included in the written document.

M. The interview shall be documented and include a record of the subject's position on the evidence relied upon in this action. The assigned staff shall record this information, via CDC Form 128-B, General Chrono and provide a copy to the subject within fourteen (14) calendar days and prior to submission of the information to the OCS.

2) Office of Correctional Safety:

A. A special agent shall be assigned to review the CDC Form 128-B.

B. The special agent shall complete a CDCR Form 128-B2 recommending to rescind the inmate's inactive or monitored status or recommending that the inmate retain his/her current designation.

RUIZ010509

C. The completed CDCR Form 128-B2 shall be returned to the STG Investigator.

3) STG Investigator:
A. The original CDCR Form 128-B2 shall be received by the originating STG investigator.
B. The STG Investigator or designee shall review the CDCR Form 128-B2 noting the recommendations of OCS.
C. If incorrect information is contained on the CDCR Form 128-B2, the document must be returned to OCS for correction. Institution staff shall not make corrections, changes, or amendments to the CDCR Form 128-B2.
D. The STG Lieutenant or designee shall instruct staff to issue a copy of the CDCR Form 128-B2 to the identified subject and forward the original CDCR Form 128-B2 to the Classification and Parole Representative for placement into the central file.
E. Shall forward a copy of the CDCR form 128-B2 to the captain of the facility where the inmate is housed requesting the inmate be scheduled to appear before the STG Unit Classification Committee.

4) Captain:
A. Ensure the assigned case worker schedules the inmate's appearance before the STG Unit Classification Committee within 30 days of the institution's receipt of the CDCR 128-B2.
B. Ensure an Investigative Employee is assigned, as appropriate.

5) Correctional Counselor I:
A. Prepare and serve the CDCR Form 128-B1 STG, Security Threat Group Unit Classification Committee – Notice of Hearing to the inmate at least 72 hours prior to the STG Unit Classification Committee.
B. Ensure the inmate has received copies of all non-confidential documentation and/or CDCR Form 1030STGs that will be reviewed/discussed during the STG Unit Classification Committee.

6) Security Threat Group Unit Classification Committee:
A. The STG Unit Classification Committee shall be convened within 30 days of the institution's receipt of a completed CDCR Form 128-B2.
B. The STG committee shall review the information contained in the CDC Form 128B, General Chrono and discuss the inmate's behavior encouraging his/her participation.
C. The committee shall review the CDCR Form 128-B2, noting the recommendation of OCS.
D. The committee shall determine if they concur with the recommendation of OCS.
E. If the committee has a difference of opinion with the recommendation of OCS, the committee chairperson shall suspend the hearing and ask that it be rescheduled.
   i. The committee chairperson shall contact the SSU Senior Special Agent to discuss and resolve the issue/concern.
   ii. If the issue/concern can not be resolved with the SSU Senior Special Agent, the Committee shall elevate the issue/concern to the Warden and Special Agent in Charge, OCS, for further discussion and a final decision.
   iii. If the original recommendation of OCS requires a change based on the above referenced discussion, a new CDCR Form 128-B2 shall be completed by OCS and issued to the inmate.
   iv. The resulting CDCR Form 128-G1 shall articulate the issue requiring case conference and the decided resolution.

RUIZ010510

F. The committee shall re-convene, as necessary, and determine the need to rescind the current designation (i.e., monitored status).

G. The committee shall make a recommendation to ICC regarding the inmate's current and future housing needs (in accordance with the SDP Placement Option Chart), based on the totality of the information.

H. The committee chairperson shall verbally inform the inmate of the decision of the committee.

I. The committee chairperson shall document the STG Unit Classification Committee review date and the STG designation that is being assigned in the area provided on the CDCR Form 128-B2.

J. The committee recorder shall prepare the CDCR Form 128-G1, Security Threat Group Unit Classification Committee – Results of Hearing (Monitored, Inactive, Inactive-Monitored or Drop-out Status).

K. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G1, upon approval/signature by the Chairperson and the CDCR Form 128-B2.

L. The STG Lieutenant shall receive a copy of the CDCR Form 128-B2 and forward to OCS for tracking purposes and input in the STG database.

7) Institution Classification Committee:

A. The committee will review the CDCR Form 128-B2 and the CDCR Form 128-G1.

B. The committee shall discuss the information obtained with the inmate and encourage his participation.

C. The committee shall determine the inmate's current and future housing needs in accordance with the SDP Placement Option Chart.

D. The committee chairperson shall verbally inform the inmate of the decision of the committee.

E. The committee recorder shall prepare the CDCR Form 128-G, Classification Chrono.

F. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G, upon approval/signature by the Chairperson and the CDCR Form 128-B2.

G. The STG Lieutenant shall receive a copy of the CDCR Form 128-B2 and forward to OCS for tracking purposes and input in the STG database.

H. The date of the ICC's assessment and imposition of an indeterminate SHU term for the SDP shall establish the start date toward the required time in each specified step of the SDP. Applicable privileges, as outlined in this Instructional Memorandum, shall be initiated upon the inmate's arrival at the SHU facility.

I. If a transfer is determined appropriate, the case shall be referred to the CSR for review and endorsement.

*Section 600.5. Step Down Program Placement Options*

The following chart provides a guideline for placement into and movement within the SDP based on inmate behavior.

The date of the ICC's assessment and imposition of an indeterminate SHU term for the SDP shall establish the start date toward the required time in each specified step of the SDP. Applicable privileges, as outlined in this Instructional Memorandum, shall be initiated upon the inmate's arrival at the SHU facility.

This chart will detail the SDP Placement Options associated with the STG Disciplinary Matrix.

RUIZ010511

| SDP Placement Options Chart | | |
|---|---|---|
| 1. – **Active SDP Violators**: Regress 6 months in the Current Step or to the Beginning of the Current Step. | 2. – **Active SDP Violators**: Regress 6 months within the Previous Step or to the Beginning of the Previous Step. | 3. – **Active SDP Violators**: Regress to Beginning of Step 1. |
| 4. – **Active SDP Violators**: Assess and Suspend SHU Term, if appropriate, and Regress to the Beginning of Step 2. | 5. – **Initial Placement or Active SDP Violators**: Assess and Suspend SHU Term, if appropriate. Initial Placement or Regression to the Beginning of Step 1. | 6. – **Monitored, Inactive, Inactive-Monitored, Drop-out, or Return to Custody inmates**: Assess and Suspend SHU Term, if appropriate. Placement at the Beginning of Step 1.<br><br>If offender has completed the SDP previously, he/she must normally serve 2 years in Step 1. |

**Section 700. STG Step Down Program.**

The SDP is an incentive based multi-step process for the management of STG affiliates. This program will assign, transition, and monitor inmates who by their behavior have demonstrated the need for CDCR's utilization of special strategies for their management.

The SDP shall normally be completed in five steps and provides a process for inmates engaged in STG behavior or activities to demonstrate their ability to refrain from this type of behavior, preparing them for return to non-segregated housing and eventual release to the community. Progression through the SDP is voluntary.

Participation in each step of the SDP requires the inmate to acknowledge the program expectations and sign a personal contract (Attachments P-S). The contract will outline the goals, expectations for successful completion, and potential consequences for failure to fully participate and complete the step. The contract will further indicate that by signing the document, the inmate does not acknowledge or admit to being an STG affiliate.

Each program step is progressive and it is the responsibility of the inmate to demonstrate they can be released to a less restrictive environment while abstaining from STG behaviors. If the inmate chooses not to progress through any step of the program, the inmate may be returned, by ICC, to a previous step until they demonstrate a desire and appropriate behavior for movement into the next step.

During the initial ICC review of newly arriving inmates into the SDP; the committee shall review the date that the sending facility/institution's ICC imposed the indeterminate SHU term to ensure the inmate is credited for time spent in the designated step while housed at the previous facility.

An inmate electing not to participate and with no continued STG related behavior may choose to stay in Step 2 indefinitely and the required ICC reviews will continue. At any time the inmate

RUIZ010512

may wish to progress/take part in the SDP, they may notify their assigned caseworker who will schedule their appearance before the ICC within 30 days.

Steps 1 and 2 are specifically designated for housing of STG affiliates determined to pose a threat to the safety of staff, inmates, and the public, in addition to security of the prison based upon confirmed intelligence and/or STG behaviors. This housing designation is intended to segregate the most influential STG affiliates and those who represent the greatest threat to others and institutional security. A high level of monitoring is placed on all avenues of communication during these steps.

Steps 1 and 2 will generally be completed at Pelican Bay State Prison and the California Institution for Women (CIW); however, during the pilot phase, Steps 1 and 2 may be completed at any SHU facility. These steps are designed to be completed in 12 months each, but may be accelerated at the 180 day review, if the ICC determines the inmate has completed all necessary components including remaining free of STG related behavior, completed required program components, participated in elective programming, and demonstrated a sincere desire to participate.

Staff assigned in the SDP, including housing staff, counseling staff, education staff and facilitators, shall complete CDCR Form 2261 (10/12) Step Down Program Progress Notes (Attachment T) documenting the inmate's participation level. These documents will be used by the ICC to assist in determining an inmate's movement between steps.

During Steps 1 and 2, the program will include education and/or program assessments such as TABE testing and COMPAS assessments with cognitive skill based programming. Programming will generally be completed in cell and all offender movement outside the cell shall be in restraints. Operational details associated with Steps 1 and 2 are described in Section 700.4.

Steps 3 & 4 are specifically designated for housing of STG affiliates who have successfully completed steps 1 and 2. This housing designation is intended to begin reintegration with other SDP inmates, by offering program and privilege incentives within a controlled setting and monitoring of program progress.

Step 3 will generally be completed at California Correctional Institution (CCI), California State Prison, Corcoran (COR), California State Prison, Sacramento (SAC) or CIW; however, during the pilot phase, Step 3 may be completed at any SHU facility. Step 3 is 12 months in duration and the program will include educational and cognitive behavior components such as anger management, parenting, substance abuse, and violence prevention programs. Programming will be completed in cell or in individual treatment modules. Movement may be in restraints and meals will be consumed in the cell. Operational details associated with Step 3 are described in Section 700.4.

Step 4 will generally be completed at CCI, COR, SAC, or CIW; however, during the pilot phase, Step 4 may be completed at any SHU facility. Step 4 is 12 months in duration and the program will include education, cognitive behavior changing components, violence prevention programs, 12-step self help programs, and gang diversion programs. Programming will be completed in individual treatment modules and small groups within the housing unit or program areas.

Offender movement *may be* un-restrained and meals may be consumed in small groups in the housing unit. Yard time will be with their cell mate during the first six months and with diverse affiliations after the initial six months of the step. Operational details associated with Step 4 are described in Section 700.4.

RUIZ010513

*Section 700.1.  STG Behavior or Activity in the Step Down Program:*

Failure to maintain acceptable behavior and/or refrain from STG behavior or activities while in the SDP may result in the loss of privileges and/or regression to a previous step, inclusive of return to Step 1 from any subsequent step.  Refer to the SDP Placement Options Chart for a guideline on movement within the SDP.

(a) STG affiliates found guilty of continued STG behavior, while in the Step Down Program, shall be scheduled to appear before ICC for a program review.

    1) Institution Classification Committee:
        A. ICC shall be convened within 30 days of completion of the disciplinary process.
        B. ICC shall discuss the inmate's behavior and encourage participation of the inmate.
        C. ICC shall discuss retention in current step, regression to beginning of the current step, regression to a prior step and/or reduction in privilege levels.
        D. the committee shall assess a determinate SHU term for an inmate found guilty in a disciplinary hearing of an offense listed in CCR, Section 3341.5(c)(9), with one of the following dispositions:
           i. The ICC has discretion to assess and suspend any determinate SHU term to facilitate the inmate's retention in the SDP, as may be appropriate.
           ii. When the ICC elects to assess and impose a determinate SHU term, the inmate, whenever possible, shall not be housed within the SDP portion of the SHU.
           iii. Updated segregation reasoning must be provided in a new CDC Form 114-D, when the reasons for segregation change.
        E. The committee shall make a decision on the inmate's appropriate placement within the SDP, in accordance with the SDP Placement Options Chart, or temporary removal from the program to complete a determinate SHU term.
        F. The chairperson shall verbally inform the inmate of the decision of the committee.
        G. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G, upon approval/signature by the Chairperson.
        H. If a transfer is determined appropriate, the case shall be referred to the CSR for review and endorsement.

*Section 700.2.  Step Down Program Components*

(a) It is the intent of the Department to develop and implement the Step Down Program through a phase-in approach.  Steps 1 and 2 are primarily intended as periods of observation. Components for Step 3 will continue to be enhanced.  Components for Step 4 will be developed during the pilot phase of the implementation.

Self-Directed Journals for Step 3 will provide 12 months of journals focused on helping high-risk inmates live a life free of criminal activity, violence, and drug use.  These journals will help develop a system of values and strategies that lead to responsible thinking and behavior.  Also, this series addresses the needs of the inmates working to successfully reintegrate into a less restrictive housing environment.

Personal reinforcement check sheets have been developed that will be used by the inmate to monitor weekly/monthly program participation and progress.  In addition, Individual Change Plans will be initially completed by the inmate after 6 months in the SDP.  The Individual Change Plan will provide the inmate with a personal assessment of his/her overall

RUIZ010514

program progress and will be completed at six month intervals. These documents will be submitted to the Correctional Counselor II and may be used by the ICC to assist in determining an inmate's movement between steps.

The Self-Directed Journals will include the following themes:

- **The Con Game** explores how the "con game" may be at the core of an individual's fault beliefs and behaviors. The Con Game guides individuals toward self-responsibility and positive life change.
- **Values** guides inmates through an evaluation of the criminal values that have influenced their lives and help them weigh the consequences of living a life based on criminal values versus responsible values.
- **Thinking Errors** encourages inmates to examine eight basic thinking errors that lead to criminal behavior. This journal stresses the importance of changing the way people think as the key to challenging their feelings and behavior.
- **Self Control** explores the connection between criminal behavior and self-control. Inmates consider the consequences of a lack of self-control and explore strategies for handling difficult emotions.
- **Peer Relationships** addresses risks related to criminal peers. Participants consider their past and present peer relationships, learn the differences between healthy and unhealthy relationships, practice handling social peer pressure and learn how to build a positive support network.
- **Violence Prevention** explores the inmates' relationship with violence and learns how to break the cycle of violence. Inmates explore the role violence has played in their lives, learn about physical as well as emotional violence and may practice strategies to break the cycle of violence.
- **Core Skills** can help inmates build a foundation for a healthier life by learning and practicing these skills. This journal offers inmates an organized structure to explore various core skills including effective communication, handling risky situations, and making responsible decisions.
- **Social Values** identifies the inmates' values, where they came from, and the impact on themselves and others. The development of positive life values and roadblocks to incorporating healthy values are explored.
- **Responsible Thinking/Healthy Personality** addresses risks related to a criminal personality. Participants examine whether their thinking is objective and accurate. Errors in thinking are explored along with what is involved in changing habits.
- **Family Ties** evaluate current family relationships and the role they play within their families. Strategies are explored and an action plan is created to rebuild family ties. A section on parental roles and responsibilities is included.
- **Substance Abuse** addresses risks related to substance abuse. Inmates reflect on their current use of alcohol and/or other drugs. They weigh the costs and rewards of making changes to their substance abuse behaviors and learn strategies to keep them on the path of recovery.
- **Victim Awareness** helps inmates begin to consider the idea of taking personal responsibility for their criminal behavior. They look at the ripple effect of their behavior on themselves, their victims, their victims' families, their families, and their communities and consider ways to make amends for the harm they caused.
- **Orientation** assists the inmate in answering the question, "Why am I here?" and gets them started on the path to positive life change.
- **Rational Thinking** helps inmates learn how thoughts influence their beliefs, feelings, and actions and how to counter negative self-talk.

RUIZ010515

Associate Directors
Wardens, Division of Adult Institutions
Page 44

- **Criminal Lifestyles** assists inmates considering how criminal behavior develops from thinking and choices.
- **Violence Prevention** will explore the inmates' relationship with violence and learn to break the cycle of violence.
- **Communication Skills** focuses on using effective communication skills for building relationships and controlling anger.
- **Lifestyle Balance** evaluates whether or not their lives are in balance and teaches skills for making positive adjustments.
- **Transition** evaluates whether their expectations about the future are realistic and explores three key transition issues.
- **Reviewing my Drug Use** examines their drug use history and explores the damaging consequences of drug use.
- **Recovery Maintenance** focuses on maintaining positive change.  Inmates consider strategies to exit from the relapse process.

Step 4 will include an integrated, cognitive behavior change program that will include cognitive restructuring, social skills development, and development of problem solving skills. This program will be designed for small groups and is an option to address the cognitive, social, and emotional needs of the inmate population.

(b) Alternative Programming Education Model:

Each institution with a SDP may provide participating inmates access to education through either the Voluntary Education Program (VEP) Model or the Alternative Programming (AP) Model.  Based on the population needing education programming and the general academic reading levels of the identified inmates, the Principal will determine the most appropriate way to provide education.   The Principal has the option of assigning the appropriate education staff on either a full time or partial day assignment depending on the number of inmates needing services and the overall operational need of the institution.

In order to appropriately determine the educational needs of the SDP population, the Principal and/or Testing Coordinator will determine how many of these inmates need a Test of Adult Basic Education (TABE) reading score.  Once the number of inmates to be tested has been determined, the Principal will have the Testing Coordinator develop a schedule that meets the institutional security and operational needs.

Inmates participating in the SDP will have access to academic opportunities through either the VEP or AP delivery models.   Depending on the operational needs of the institution and the number of inmates participating in the program, the Principal will determine the most effective model for delivering the content.  In some circumstances the inmates may be able to access college programs as well.  This will be determined first by the inmate's ability to pay for the course work and then by operational need of the institution.  Operational considerations are not only for security reasons but for proctoring procedures and the overall number of inmates requesting to participate per period of enrollment.

(c) Self-Help Program Electives

The below noted programs are currently under consideration for inmates participating in the Step Down Program.  Some of these programs will be offered in Steps 1 and 2.  Inmates should be encouraged to seek out these program components and participate on a

RUIZ010516

voluntary basis, as this voluntary participation will be considered as personal initiative during review by the ICC.

- **Criminal and Gangs Anonymous (CGA)** – A 12-Step based program of recovery for criminals and gang members. The program was developed by an inmate at Mule Creek State Prison in the 1990s, and family members established the community based organization which has assisted over seven institutions and countless recovering criminal/gang members in both the prison system and on the street. This program is run at several mainline facilities in a group format with fellow inmates who have been trained as facilitators. Each meeting is guided with the use of a facilitator's handbook, and includes readings, prayer, open discussion, and personal testimony.
- **Purpose Driven Life** – A faith-based program offering self-reflection and a spiritual redirection. This program was originally introduced in the Sierra Conservation Center, and is typically run in a support group style with a sponsor facilitating. Based on the book "A Purpose Driven Life" by Rick Warren, the program can be modified to utilize an in-cell format using the paperback version and a self-directed DVD breaking down the book into a six week program. Each of the six sessions focuses on a different spiritual aspect and a printable workbook is provided to reinforce the teachings.
- **Modified Alternatives to Violence Project (AVP)** - This volunteer facilitated program teaches how to deal with anger in a positive manner. Participants engage in interpersonal exercises in a classroom setting designed to change previous patterns of violent behavior. Participants are provided with course material which is donated by AVP.

## Section 700.3. Step Down Program Privileges:

Participation in the SDP affords STG affiliates the opportunity to refrain from STG behavior/activities, effectively interact with others, and earn enhanced privileges consistent with their ability to reintegrate into a general population setting. STG affiliates participating in the SDP will be placed in privilege group S1 through S4, commensurate with their assigned step of the SDP.

Privilege levels will be based on the following:

| | SDP STEP 1 (S1) | SDP STEP 2 (S2) | SDP STEP 3 (S3) | SDP STEP 4 (S4) | SDP STEP 5 |
|---|---|---|---|---|---|
| CANTEEN | Per CCR, Title 15, Section 3044 – PG S1 will be 25% of the maximum monthly canteen draw. | Per CCR, Title 15, Section 3044 – PG S2 will be 30% of the maximum monthly canteen draw. | Per CCR, Title 15, Section 3044 – PG S3 will be 40% of the maximum monthly canteen draw. | Per CCR, Title 15, Section 3044 – PG S4 will be 50% of the maximum monthly canteen draw. | Per CCR, Title 15, Section 3044. |
| PERSONAL PHOTO | One (1) photo upon completion of 1 year disciplinary free while in | One (1) photo upon transition to Step 2. | Two (2) photos upon transition to Step 3. | Two (2) photos upon transition to Step 4. | In accordance with general population |

RUIZ010517

Associate Directors,
Wardens, Division of Adult Institutions
Page 46

| | | | | | |
|---|---|---|---|---|---|
| | segregation. | | | | |
| TELEPHONE | Phone call on an emergency basis only as determined by staff. | Phone call on an emergency basis only as determined by staff. One (1) call upon transition to Step 2. This call may be facilitated at any approved time during the 12 months; however, if the inmate is found guilty of STG Behavior and regressed in the program, he/she may lose any call that is pending. | Phone call on an emergency basis only as determined by staff. Two (2) calls upon transition to Step 2. These calls may be facilitated at any approved time during the 12 months; however, if the inmate is found guilty of STG Behavior and regressed in the program, he/she may lose any calls that are pending. | Phone call on an emergency basis only as determined by staff. Four (4) calls upon transition to Step 3. These calls may be facilitated at any approved time during the 12 months; however, if the inmate is found guilty of STG Behavior and regressed in the program, he/she may lose any calls that are pending. | In accordance with general population |
| TELEVISION & RADIO | May possess or purchase one (1) television or one (1) radio or one (1) television/ radio combination unit. Clear technology only. | May possess or purchase one (1) television or one (1) radio or one (1) television/ radio combination unit. Clear technology only. | May possess or purchase one (1) television or one (1) radio or one (1) television/ radio combination unit. Clear technology only. | May possess or purchase a TV and a radio or one (1) television/ radio combination unit. Clear technology only. | In accordance with assigned institution's policy. |
| PERSONAL PROPERTY | Items listed in DOM, Section 54030.17, Authorized Personal Property Schedule. | Items listed in DOM, Section 54030.17, Authorized Personal Property Schedule.

Allow possession of | Items listed in DOM, Section 54030.17, Authorized Personal Property Schedule.

In addition to items allowed | Items listed in DOM, Section 54030.17, Authorized Personal Property Schedule.

In addition to items allowed | Items listed in DOM, Section 54030, Authorized Personal Property Schedule for the assigned general population |

RUIZ010518

| | | playing cards as defined in DOM Section 54030.17.8 Games. | in Step 1, allow plastic tumbler; plastic bowl; pair of personal tennis shoes; combination of 10 books newspapers, or magazines; and wooden domino game. | in Step 2, allow a photo album; chess game, and checkers game. | institution. |
|---|---|---|---|---|---|
| PERSONAL PROPERTY PACKAGE | Inmates in SDP permitted one (1) personal package per year not to exceed 30 pounds. | Inmates in SDP permitted one (1) personal package per year not to exceed 30 pounds. | Inmates in SDP permitted one (1) personal package per year not to exceed 30 pounds. | Inmates in SDP permitted two (2) personal packages per year not to exceed 30 pounds, each. | Per CCR, Title 15, Section 3044. |

*Section 700.4.  Step Down Program Operational Components*

Operational Components of the Step Down Program are as follows:

| | SDP STEP 1 | SDP STEP 2 | SDP STEP 3 | SDP STEP 4 | SDP STEP 5 |
|---|---|---|---|---|---|
| SHU HOUSING LOCATION | For Males - To be operated at PBSP  SHU<br><br>For Females – To be operated in a designated SHU unit<br><br>If the inmate's case factors preclude housing at PBSP, appropriate SHU placement will be | For Males - To be operated at PBSP  SHU<br><br>For Females – To be operated in a designated SHU unit<br><br>If the inmate's case factors preclude housing at PBSP, appropriate SHU placement will be | For Males - To be operated at CCI SHU or COR SHU<br><br>For Females – To be operated in a designated SHU unit<br><br>If the inmate's case factors preclude housing at CCI, SAC, or COR, appropriate SHU | For Males - To be operated at CCI SHU or COR SHU<br><br>For Females – To be operated in a designated SHU unit<br><br>If the inmate's case factors preclude housing at CCI, SAC, or COR, appropriate SHU | For Males – Level IV 180 design facility or other facility as approved by DRB.<br><br>For Females – As determined by ICC. |

RUIZ010519

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | determined | determined | placement will be determined | placement will be determined |  |
| ICC REVIEW PERIODS | 180 day ICC review in accordance with CCR, Title 15, Division 3, Section 3341.5 (c)(2)(A)1. | 180 day ICC review in accordance with CCR, Title 15, Division 3, Section 3341.5 (c)(2)(A)1. | 180 day ICC review in accordance with CCR, Title 15, Division 3, Section 3341.5 (c)(2)(A)1. | 90 day ICC review | As determined appropriate at the general population institution. |
| SDP DURATION | 12 months; however, at 180 day review, ICC may transition to next step. | 12 months; however, at 180 day review, ICC may transition to next step. | Minimum of 12 months prior to movement to Step 4 | Minimum of 12 months prior to review for release to Step 5 in a non-segregated setting. | Minimum of 12 months. |
| DOUBLE CELL POLICY | In accordance with departmental Inmate Housing Assignment Policy. | In accordance with departmental Inmate Housing Assignment Policy. | In accordance with departmental Inmate Housing Assignment Policy. Expectation for double cell housing unless precluded by CCR 3269(d) through (f). | In accordance with departmental Inmate Housing Assignment Policy. Expectation for double cell housing unless precluded by CCR 3269(d) through (f). | In accordance with departmental Inmate Housing Assignment Policy. |
| MAIL | Mail procedures and parameters in accordance with CCR, Title 15, Division 3, Subchapter 2, Article 4 | Mail procedures and parameters in accordance with CCR, Title 15, Division 3, Subchapter 2, Article 4 | Mail procedures and parameters in accordance with CCR, Title 15, Division 3, Subchapter 2, Article 4 | Mail procedures and parameters in accordance with CCR, Title 15, Division 3, Subchapter 2, Article 4 | Mail procedures and parameters in accordance with CCR, Title 15, Division 3, Subchapter 2, Article 4 |
| YARD EXERCISE | Yard Exercise provided pursuant to CCR, Title 15, Section 3343(h) | Yard Exercise provided pursuant to CCR, Title 15, Section 3343(h) | Yard Exercise provided pursuant to CCR, Title 15, Section 3343(h) | Yard Exercise provided pursuant to CCR, Title 15, Section 3343(h) | As scheduled at the assigned general population institution. |

RUIZ010520

|  | | | | | |
|---|---|---|---|---|---|
|  | Recreation will include the use of isometric and exercise equipment as determined and deemed appropriate. | Recreation will include the use of isometric and exercise equipment as determined and deemed appropriate. | Recreation will include the use of isometric and exercise equipment as determined and deemed appropriate. | Yard interaction in a group yard setting with inmates of diverse affiliations after 6 months programming within Step 4. | |
| MEALS | Meals consumed in cell. | Meals consumed in cell. | Meals consumed in cell. | Meals consumed in section, unrestrained with other SDP inmates, as authorized by ICC. | As scheduled at the assigned general population institution. |
| SHOWERS | 3 showers per week. Movement consistent with existing local policy. | 3 showers per week. Movement consistent with existing local policy. | 3 showers per week. Movement will be unrestrained and unescorted, with cell partner. | 3 showers per week. Movement will be unrestrained and unescorted, with cell partner. | As scheduled at the assigned general population institution. |
| PROGRAM | May be conducted in assigned cell. | May be conducted in assigned cell or utilizing individual treatment modules, based upon decision of ICC. | May be conducted in assigned cell or utilizing individual treatment modules, based upon decision of ICC. | May be conducted in assigned cell, program area, utilizing individual treatment modules, or in small groups of unrestrained inmates, based upon decision of ICC. | As assigned through Unit Classification Committee. |
| WORK ASSIGNMENTS | N/A | N/A | Eligible for voluntary work assignments as porters, clerks, culinary workers — | Eligible for voluntary work assignments as porters, clerks, culinary workers — | As assigned through Unit Classification Committee. |

RUIZ010521

| | | | must remain within the building. | must remain within the building. | |
|---|---|---|---|---|---|
| VISITS | Non-Contact in accordance with CCR, Title 15, Chapter 5, Article 7. | Non-Contact in accordance with CCR, Title 15, Chapter 5, Article 7. | Non-Contact in accordance with CCR, Title 15, Chapter 5, Article 7. | Non-Contact in accordance with CCR, Title 15, Chapter 5, Article 7. | In accordance with CCR, Title 15, Chapter 5, Article 7. |
| RELIGION | Provided upon request in accordance with CCR 3343(k). | Provided upon request in accordance with CCR 3343(k). | Provided upon request in accordance with CCR 3343(k). | Provided upon request in accordance with CCR 3343(k). | In accordance with the institution Daily Activity Schedule and CCR 3343(k). |

*Section 700.5.  Step 4*

During the last 6 months of an inmate's time in Step 4, the assigned caseworker shall begin efforts to reconcile enemy concerns and update the CDCR Form 812STG, Notice of Critical Case Information – Safety of Persons (Non-Confidential Enemies)(Attachment U) and/or CDC Form 812-C, Notice of Critical Case Information – Confidential Enemies, as appropriate.  These efforts will assist in preparation for the inmate's future potential reintegration into the general population.

During the third 90-day ICC review in Step 4, the STG Investigator shall present a CDC Form 128-B for submittal to OCS.  At the conclusion of ICC, the STG Investigator shall forward the CDC Form 128-B to OCS to determine if they have received any information related to the inmate's continued participation in STG related behavior.  OCS shall provide any updated information to the institution and the new behavior or confirmed intelligence shall be addressed, as outlined in Section 600.  If no new information exists, OCS shall provide the STG Investigator with an updated CDCR Form 128-B2 recommending a change in the inmate's designation or recommending no change in the inmate's designation, due to new information received by OCS.

The inmate shall be scheduled for review by ICC upon completion of the 12 months and receipt of the CDCR Form 128-B2.  ICC shall determine successful completion of step 4 based upon the individual inmate's meaningful participation and behavior.  ICC shall review the CDCR Form 128-B SDP5, Notice of Conditions of Monitored Status (Attachment V) with the inmate and obtain his signature acknowledging understanding of the expectations.

Upon successful completion of Step 4, a male inmate shall generally be referred to the CSR for endorsement to a Level IV, 180 Design Facility (other than a Behavior Management Unit program) for a 12-month observation period (Step 5), regardless of the inmate's placement score.  If a determination is made by ICC, that the inmate does not warrant 180 design housing, the ICC shall refer the case to the Departmental Review Board (DRB) for alternate housing consideration, e.g. Level III/IV 270 design facility.

Upon the successful completion of Step 4 as determined by ICC, a female inmate shall be reviewed by ICC for release to the general population for observation and monitoring.

**Section 800.  Validated Inmate on Monitored Status.**

RUIZ010522

Associate Directors
Wardens, Division of Adult Institutions
Page 51

The SDP transition shall occur during the first 12 months the SDP inmates are assigned to the designated Level IV 180 design Facility, or other facility as approved by the Departmental Review Board, which is considered Step 5 of the SDP, and the inmate's designation is changed to Monitored.

*Section 800.1. Orientation in Step 5*

Orientation at the designated institution shall include, at a minimum, the following:
- STG Investigator interview
- Unit orientation
- Mandatory Urinary Analysis Testing (initial 12 months)
- Initial Classification to include attendance by the STG Investigator with consideration for program enrollment as identified through departmentally approved assessment tools (i.e., COMPAS, TABE), Education, and STG management needs.
- Establishment of 12-month observation period.

After completion of the 12-month observation period (Step 5) with no documented evidence of continued STG involvement and no later than the next annual review, the inmate shall be seen by Unit Classification Committee (UCC) for consideration of transfer to a facility consistent with his/her placement score and case factors.

Based on the inmate's current placement score, efforts to reconcile enemy concerns, and other case factor assessments, the inmate will normally be considered for transfer to a general population or SNY facility commensurate with their individual case factors, program, and housing needs, where they will continue an indefinite period of monitoring and observation for potential recurrence of STG related behavior or activities.

Below are the monitoring activities that should be conducted on all monitored status affiliates:

- Enhanced cell search occurrences as determined necessary
- Enhanced mail scan
- Enhanced telephone call monitoring
- Periodic STG Investigator interviews

*Section 800.2. STG Behavior or Activity by Monitored Status Affiliate*

Inmates who have been designated as a monitored status affiliate shall not participate in STG behavior or activity. The consequences of participation in STG behavior are outlined in this Instructional Memorandum including return placement to Step 1 of the SDP for a two year period. Re-housing in the Step Down Program shall be based on either: (a) being found guilty of STG related behavior, as identified on the STG Disciplinary Matrix; or (b) being identified by confirmed intelligence with on-going participation in STG behavior.

(a) The behavioral criteria for a monitored status affiliate to be considered for re-housing in the SDP will consist of the inmate being found guilty of:

- Two Administrative Rules Violation Reports within any 12-month period; or
- One Serious Rules Violation Report

Upon conclusion of the disciplinary process(es), facility staff will ensure the Captain of the facility where the inmate is assigned is provided with a copy of the completed CDC Form 115, Rules Violation Report(s).

1) Captain:
A. Direct staff to prepare a CDC Form 114-D, Administrative Segregation Unit Placement Notice, if applicable, and facilitate the inmate's placement into ASU.
B. Ensure an Investigative Employee is assigned, as appropriate.
C. The Captain shall notify the assigned caseworker to have the offender scheduled for ICC.

2) Correctional Counselor I:
A. Prepare and serve the CDCR Form 128-B1, Notice of Classification Hearing, to the inmate at least 72 hours prior to the ICC, as needed.
B. Ensure the inmate has received copies of all non-confidential documentation and/or CDCR Form 1030STGs that will be reviewed/discussed during the ICC.

3) Institution Classification Committee:

A. The committee shall review the RVR and determine if it meets the criteria for placement in the SDP.
   i. If the behavioral criteria and/or nexus to STG behavior are not clearly identified, the committee shall consider further Chief Disciplinary Officer (CDO) review and/or appropriate general population housing options.
B. The committee shall discuss the inmate's behavior and encourage participation of the inmate.
C. Inmates who are found guilty of a serious rule violation which requires a determinate SHU term, shall be assessed a determinate SHU term in accordance with CCR Section 3341.5(c)(9).
D. ICC may:
   i. assess and impose the SHU term and refer the inmate to the CSR for appropriate SHU transfer endorsement;
   ii. assess and suspend the SHU term and place the inmate in the SDP, in conjunction with referral to the CSR for transfer endorsement;
   iii. upon completion of the determinate SHU term, impose an indeterminate SHU term and referral to the CSR for transfer endorsement.
E. The committee shall determine the need to rescind the current designation (i.e., monitored status).
F. The committee shall determine the inmate's current and future housing needs (in accordance with the SDP Placement Option Chart), based on the totality of the information.
G. The chairperson shall verbally inform the inmate of the decision of the committee.
H. The committee chairperson shall complete the CDCR Form 128-B2 STG Supplement with the ICC review date and the STG designation that is being assigned.
I. The committee recorder shall prepare the CDCR Form 128-G, Classification Chrono.

J. The committee chairperson shall ensure the inmate is provided with a copy of the CDCR Form 128-G, upon approval/signature by the Chairperson.
K. The STG Lieutenant shall receive a copy of the CDCR Form 128-B2 STG Supplement and forward to OCS for tracking purposes and input in the STG database.

Associate Directors
Wardens, Division of Adult Institutions
Page 53

     L. The date of the ICC's assessment and imposition of an indeterminate SHU term for the SDP shall establish the start date toward the required time in each specified step of the SDP. Applicable privileges, as outlined in this Instructional Memorandum, shall be initiated upon the inmate's arrival at the SHU facility.

     M. If a transfer is determined appropriate, the case shall be referred to the CSR for review and endorsement.

(b) A monitored status affiliate determined to have confirmed STG behavior or intelligence; information from an outside law enforcement agency; or which occurred outside the jurisdiction of the department or formal disciplinary process shall be documented in a CDCR Form 128-B, General Chrono (confidential chrono, if appropriate). The activity or behavior must have occurred within the last four years. Investigators shall establish reliability per CCR Section 3321 when confidential information is used and shall be recorded within the chrono. This confirmed STG behavior or activity shall consist of the following:

- Behavior, activity or intelligence items as identified in Section 600.1 – Validation Source Criteria totaling at least 10 additional points and identified subsequent to the validation process. This process shall only be utilized if the circumstances cannot otherwise be addressed through the disciplinary process.

Any time a validated inmate engages in behavior that would warrant an RVR, it is the responsibility of the observing staff member to ensure appropriate disciplinary procedures are applied.

Refer to section 600.3 of this Instructional Memorandum for the specific process.


**Section 900. Debriefing.**

Debriefing is the process by which a STG coordinator/investigator determines whether a STG Affiliate (subject) has dropped out of the STG. A subject shall be debriefed only upon his or her request, although staff may ask a subject if he or she wants to debrief.

Debriefing is generally a comprehensive two-phase process, which includes an interview/investigative phase and an observation phase. The purpose of the debriefing interview is to provide staff with information about the STG's structure, activities and affiliates. A debriefing is not for the purpose of acquiring incriminating evidence against the debriefing inmate.

Staff shall articulate how the information contained in the debrief report specifically relates to the inmate's involvement with the STG. The information may be used as a source of validation if the informant provides specific knowledge of how he/she knew the inmate to be involved with the STG, and the information is considered reliable.

*Section 900.1. Gang Intelligence Operations, Debriefing Team*

The debriefing team is tasked with the responsibility of debriefing validated STG affiliates who desire to disassociate themselves from the STG and discontinue STG activities. The primary objective of the Debriefing Team shall be to debrief validated STG-I members and associates.

RUIZ010525

Requests from the institutions or parole regions to conduct/complete a debriefing on a validated STG-II shall be directed to the Senior Special Agent, Gang Intelligence Operations. The Senior Special Agent shall review the information provided and make a determination as follows:

If the inmate is assigned to the SDP in the SHU:
- The subject shall be approved to participate in the Debriefing Process and the Debrief Report shall be completed by the Debriefing Team; or
- The subject shall be approved to participate in the Debriefing Process and the Debrief Report shall be completed by STG Investigative staff at the assigned institution.

If the inmate is housed in other than the SDP:
- The subject may be approved to participate in the Debriefing Process and the Debriefing package shall be completed by STG Investigative staff at the assigned institution.

### Section 900.2.  Debriefing Process

(a)  Phase 1:
1) Requires the subject to write a complete history of his/her involvement with the STG and participate in an interview with institutional STG investigative staff.  Upon evaluation and acceptance of the written autobiography by the STG investigator, a CDC Form 128-B shall be authored by the STG investigator and forwarded to OCS.
2) Gang Intelligence Operations, OCS, shall review the Debriefing information received from the institution and assign completion of the process to the Debrief Team or institutional STG investigative staff.
3) If assigned to the Debriefing Team, an agent will be assigned to schedule and complete an interview(s) with the subject.  If assigned to the institution, a STG investigator will be assigned to schedule and complete an interview(s) with the subject.  The information gathered through the written document and the interview(s) shall be thoroughly investigated by the assigned staff and documented on a confidential memorandum entitled "Debrief Report".  The Debrief Report shall contain a statement of reliability, pursuant to CCR, Section 3321.  The Debrief Report shall be approved by the Senior Special Agent, Gang Intelligence Operations.  When the Debrief Report has been accepted, a CDC Form 128-B is forwarded by OCS to the institution, the subject shall be referred to ICC for consideration of need for placement into Phase 2.

b)  Phase 2:
1) Requires completion of an observation phase, of up to 6 months, within the Department's THU Program, as discussed in DOM Section 54058.1.  Upon completion of the THU, the STG Investigator will notify OCS.  OCS will prepare a CDCR Form 128-B2 and forward to the STG Investigator.  The inmate will be referred to ICC for transfer to appropriate housing.

### Section 900.3.  Handling the Debrief Report

The STG coordinator/investigator shall be responsible for having a copy of the debrief report placed in the confidential section of the central file of the subject (as appropriate per CCR Section 3321(a)(5) (Instructional Memorandum Procedures Section 1200).  The current process for the inmate to review his/her debrief report remains unchanged.

### Section 900.4.  OCS Distribution for Review:

RUIZ010526

The Senior Special Agent shall route copies of debrief reports to all STG coordinators/investigators for their confidential review. The recipient STG investigators shall not duplicate, distribute, or copy the reports and shall return the reports to the Senior Special Agent by first-class mail for disposal.

*Section 900.5. Institution Process:*

(a) Upon receipt of a Debrief Report, STG investigative staff will review the report to identify inmates currently housed at their institution. STG behavior or activity by the identified inmate which is documented in the Debrief Report shall be investigated by STG investigative staff or their designee to verify and establish reliability of the information being provided (i.e., corroboration with external law enforcement agency, other debrief reports, other confidential sources, Crime Incident Reports, etc.). Staff shall document the finding of the investigation in a CDC Form 128-B Confidential Chrono or in a Confidential Memorandum. Staff shall prepare a CDCR Form 1030STG, Confidential Information Disclosure Form, as appropriate, documenting as much information as can be disclosed without identifying the source.

STG behavior or activity determined to have occurred within CDCR jurisdiction and within the previous four (4) years shall be reviewed by the STG Lieutenant or an appropriate Lieutenant to determine if the activity/behavior warrants issuance of an administrative or serious Rules Violation Report, as identified in the STG Disciplinary Matrix.

(b) Staff shall prepare a CDCR Form 115, Rules Violation Report, as appropriate, documenting the information as received from the confidential source and any pertinent information gleaned through the investigation. The date of discovery for the RVR shall be the date that sufficient evidence exists to close the investigation and charge the inmate with a rule violation. The inmate will be served copies of the RVR and the Confidential Information Disclosure Form(s). The disciplinary process will proceed as outlined in CCR, Article 5, Inmate Discipline. Dependant upon the STG status/designation of the inmate, the completed CDC Form 115 shall be referred to the STG Committee or ICC for review of the inmate's activities/behavior, as described in Sections 600.2, 600.3, 600.4, 700.1 or 800.2.

(c) STG behavior or activity determined to have occurred outside the jurisdiction of the department or formal disciplinary process shall be documented in a CDCR Form 128-B, General Chrono (confidential chrono, if appropriate). Investigators shall establish reliability per CCR Section 3321 when confidential information is used and shall be recorded within the chrono. The completed CDC Form 128-B shall be referred to the STG Lieutenant for consideration of valication and/or SDP placement.

## Section 1000. Renunciation Process for Placement on Sensitive Needs Yards.

The process by which a non-validated inmate affirms and declares their disassociation with past, current, and future Security Threat Group bonds, recognition, participation, and illicit behavior. Within the CDCR, this process is completed using the CDCR Form 128-B STG5, Renunciation of STG Affiliation, Association, and Illicit Behavior (Attachment W).

The renunciation process is a standard prerequisite for non-validated inmates requesting special housing consideration based upon personal safety concerns.

RUIZ010527

Inmates shall sign the CDCR Form 128-B STG5 prior to approval by ICC and endorsement by the CSR for transfer.

## Section 1100.  Changes to DOM, Chapter 6 – Adult Classification.

(a) *ARTICLE 1 – RECEPTION CENTERS*

   1) *Section 61010.11.2 Background Factors* is being revised as follows:
Method of Verification Code.  Apply the letter code that is most indicative of the STG activity in Box 38.  Use the letter code provided.  Indications of street gang/disruptive group activity are:
Code A - Self admission.

Code B - Tattoos and Symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been identified by STG investigators as being used by and distinctive to specific STGs.

Code C - Written Material.  Any material or documents evidencing STG activity such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific STGs or addresses, names, identities of validated STG affiliates.

Code D - Photographs. Individual or group photographs with STG connotations such as those which include insignia, symbols, or validated STG affiliates.

Code E – Staff Information.  Documentation of staff's visual or audible observations which reasonably indicate STG activity as described in Section 3314(a)(3)(L) and (M), Administrative Rules Violations, STG Contraband and Behavior; or Section 3315(a)(3)(Y) and (Z), Serious Rules Violations, STG Behavior, in accordance with Section 1200 of this Instructional Memorandum.

Code F - Other agencies.  Information evidencing STG affiliation provided by other agencies including, but not limited to, police reports, crime reports, or arrest reports evidencing STG conduct, which have not been submitted, considered, and incorporated within received court documents.

Code G - Association.  Information related to the offender's association with validated STG affiliates. The association shall be more than a chance encounter or an innocuous association, but rather, an occurrence, pattern or history of encounters that involve STG behavior and/or conducting STG related business.  Direct contact with a validated STG affiliate is not necessary to show this association.

Code H - Offenses. The circumstances of an offense evidence STG activity such as an offense being between rival gangs, the victim is a verified STG affiliate, or the inmate's crime partner is a verified STG affiliate.

Code I - Legal documents. Probation officer's report or court transcripts evidencing STG activity.

RUIZ010528

Code J - Communications. Documentation of telephone conversations, conversations between inmates, mail, greeting cards, notes, or other communication, including coded messages evidencing STG activity.

Do not assess points for an inmate's housing preference as may be noted on the CDCR Form 1882, Initial Housing Review. Housing preference alone is not indicative of STG/disruptive group activity.

2) *Section 61010.11.7 CSR Action*

Administrative Determinants are being modified. The GAN code is being replaced with:

STG. Security Threat Group. Documentation establishes that the inmate's STG level designation may require special attention or placement consideration.

New administrative determinates are being implemented as follows:

MONitored. Documentation establishes that the inmate's monitored status reflects completion of the SDP and requires special attention or placement considerations.

IMO. Inactive Monitored. Documentation establishes that the inmate was released from SHU prior to the implementation of the SDP and requires special attention or placement considerations.

(b) *ARTICLE 2 – CASE CONSIDERATIONS*

1) *Section 61020.3 CDCR Form 812, 812-A, 812-B, and 812-C*

Section 61020.3 and all other references to CDC Forms 812-A and 812-B are being removed as it has been determined these forms are obsolete and staff will no longer be required to complete them. Existing forms in the central file should not be removed at this time.

CDCR Form 812 has been modified and is attached as Attachment U.

2) *Section 61020.6 Prison Gang Information Documentation on CDC Form 812-A, Notice of Critical Information-Prison Gang Identification*

**Section 61020.6 is being eliminated in its entirety.**

3) *Section 61020.19.9 CSR Action*

Administrative Determinants are being modified. The GAN code is being replaced with:

STG. Security Threat Group. Documentation establishes that the inmate's STG level designation may require special attention or placement consideration.

New administrative determinates are being implemented as follows:

MONitored. Documentation establishes that the inmate's monitored status reflects completion of the SDP and requires special attention or placement considerations.

RUIZ010529

Associate Directors/
Wardens, Division of Adult Institutions
Page 58

>IMO. Inactive Monitored. Documentation establishes that the inmate was released from SHU prior to the implementation of the SDP and requires special attention or placement considerations.

4) *Section 61020.20.8 CSR Action*

>Administrative Determinants are being modified. The GAN code is being replaced with:

>>STG. Security Threat Group. Documentation establishes that the inmate's STG level designation may require special attention or placement consideration.

>New administrative determinates are being implemented as follows:

>>MONitored. Documentation establishes that the inmate's monitored status reflects completion of the SDP and requires special attention or placement considerations.

>>IMO. Inactive Monitored. Documentation establishes that the inmate was released from SHU prior to the implementation of the SDP and requires special attention or placement considerations.

(c) *ARTICLE 5 — CLASSIFICATION PROCESS*

1) *62010.8.6 Security Threat Group Unit Classification Committee*

>Section 62010.8.6 is a new section that is being added to establish a new classification committee. The language in this section will be as follows:

>Each institution shall establish a STG Unit Classification Committee to provide a due process review of STG validations. This committee will review other actions related to intelligence information, discipline and housing or program placement of validated STG affiliates.

>A. Composition

>>STG unit classification committees shall consist of:
>>- Captain (Chairperson)
>>- Correctional Counselor II (Recorder)
>>- Correctional Counselor I

>B. Functions

>>i. STG Unit Classification Committees shall:
>>>o Review all STG validation packages for accuracy, compliance, and to ensure due process requirements have been met in accordance with this pilot program, DOM, and various CCR Sections.
>>>o Review any Drop-out STG affiliate's new disciplinary behavior for appropriate housing or program due to documented nexus to STG behavior noted in the RVR or other source items of intelligence.

RUIZ010530

    o  Review information/intelligence received from outside law enforcement agencies or which occurred outside CDCR jurisdiction to ensure disciplinary processes or formal documentation were applied, when appropriate.

    o  Refer validated STG cases to ICC for placement consideration in the Step Down Program.

    o  Respond to STG validation related inmate appeals.

ii.  Institution Classification Committee shall:

    o  Review the Validation Package and the CDCR Form 128-G1, Security Threat Group Unit Classification Committee – Results of Hearing (Validation).

    o  Review the CDCR Form 115, Rules Violation Report regarding STG Related Behavior

    o  Review the CDCR Form 115, Rules Violation Report and the CDCR Form 128-G1, Security Threat Group Unit Classification Committee – Results of Hearing (Monitored, Inactive, Inactive-Monitored, or Drop-out Status)

    o  Review the CDCR Form 128-G1, Security Threat Group Unit Classification Committee – Results of Hearing (Confirmed STG Behavior or Intelligence)

    o  The committee shall determine an inmate's housing and program needs.

## Section 1200.  Revisions to California Code of Regulations, Title 15.

*Section 3023, Security Threat Group Activity*, will be amended to read:

(a) Security Threat Groups jeopardize public safety, as they promote violence, drug trafficking, extortion, and create substantial risks in prisons, jails and local communities.   STG management within prisons requires a comprehensive management that includes prevention, interdiction and rehabilitation.   It is the policy of CDCR to ensure that its employees and inmates are able to work and live without fear of intimidation, injury, and/or death.

(b) CDCR has zero tolerance for any STG activity or behavior within its institutions.  The STG Identification, Prevention, and Management Policy of the CDCR recognizes that STG groups and STG group-like activity pose a significant risk to the safety, security, and orderly operation of its institutions.

(c) Inmates and parolees shall not knowingly promote, further or assist any STG.

(d) For the purpose of specific STG participant identification, the department categorizes STGs into the levels STG-I or STG-II as defined in Attachment A.  Participation levels within an STG are further categorized in status as members, associates, suspects, and monitored as defined in Attachment A.

(e) Inmates shall not conspire, attempt, or participate in behavior or activities specifically identified in Section 3314(a)(3)(L) and 3314(a)(3)(M), Administrative Rules Violations, STG Contraband and Behavior; or Section 3315(a)(3)(Y) and 3315(a)(3)(Z) Serious Rules Violations, STG Behavior, as outlined in section 1200 of this Instructional Memorandum.

*Section 3043.4 Non-Credit Earning*, will be amended to read:

(b) An inmate who is placed in SHU, PSU, or ASU for misconduct described in subsection (c) or upon validation as a STG-I member or associate is ineligible to earn credits pursuant to Penal Code section 2933 or 2933.05 during the time he or she is in the SHU, Psychiatric Services Unit (PSU), or ASU for that misconduct.

*Section 3044, Inmate Work Groups*, will be amended to read:

RUIZ010531

(b)(7) Work Group D-2: Lockup Status. Inmates placed in SHU, PSU, or ASU for misconduct described in Penal Code section 2933.6 or upon validation as a STG-I member or associate are ineligible to earn credits during placement in SHU, PSU, or ASU. Inmates placed in SHU, PSU, or ASU due to any other serious disciplinary infraction are ineligible to earn credits for a period not to exceed the number of disciplinary credits forfeited. Zero credit.

(e)(3) Privileges for Privilege Group B are as follows:

(e)(3)(C) Seventy-five percent (75%) of the maximum monthly canteen draw as authorized by the secretary.

(g) Privilege Group D:

(g)(1) Criteria: Any inmate, other than validated STG affiliates participating in the SDP, housed in a special segregation unit, voluntarily or under the provisions of sections 3335-3345 of CCR, Title 15 who is not assigned to either a full-time or half-time assignment.

*Section 3314 Administrative Rule Violations*, will be amended to read:

(a)(3) Administrative rule violations include but are not limited to:

(a)(3)(L) Security Threat Group Contraband: Possessing or displaying any distinctive materials, symbols, clothing, signs, colors, artwork, photographs, or other paraphernalia associated with any Security Threat Group.

(a)(3)(M) Security Threat Group Behavior: Demonstrating or exhibiting any unique behaviors clearly associated with a STG that promotes, furthers or assists any Security Threat Group.

(j) If the hearing official finds the inmate guilty of a rule violation which includes a nexus to a STG, a copy of the completed RVR shall be forwarded to the STG Lieutenant.

*Section 3315, Serious Rule Violations,* is amended to read:

(a)(3) Serious rule violations include but are not limited to:

(a)(3)(Y) Security Threat Group Directing or Controlling Behavior: Demonstrating activity, behavior or status as a recognized member and/or leader of an STG, which jeopardizes the safety of the public, staff, or other inmate(s), and/or the security and order of the institution.

(a)(3)(Z) Security Threat Group Disruptive or Violent Behavior: Demonstrating involvement in activities or an event associated with a STG, which jeopardizes the safety of the public, staff, or other inmate(s), and/or the security and order of the institution.

(h) If the hearing official finds the inmate guilty of a rule violation which includes a nexus to a STG, a copy of the completed RVR shall be forwarded to the STG Lieutenant.

*Section 3321, Confidential Material,* is amended to read:

(a) The following types of information shall be classified as confidential:

RUIZ010532