# Exhibit B

# Memorandum

Date: January 30, 2013

To: Associate Directors, Division of Adult Institutions
Wardens
Special Agent in Charge, Office of Correctional Safety

Subject: **SECURITY THREAT GROUP IDENTIFICATION, PREVENTION, AND MANAGEMENT PILOT PROJECT – PHASE II IMPLEMENTATION**

On October 18, 2012, the California Department of Corrections and Rehabilitation (CDCR) received approval from the Office of Administrative Law to implement the Security Threat Group (STG) Identification, Prevention, and Management Pilot Project. The document and all forms can be viewed at the following link: http://intranet/ADM/DSS/RPMB/Pages/PilotPgms.aspx. We would encourage you to continue to share this link with your staff and ensure printed copies are posted for review by the inmate population.

The project team distributed the Instructional Memorandum and the Word version of all forms on a compact disk to each institution in November 2012. As addressed in the Instructional Memorandum and the November 1, 2012, memorandum entitled "Security Threat Group Identification, Prevention, and Management Pilot Plan", the pilot project will be implemented using a phased approach.

Phase One has been implemented with the use of the Departmental Review Board (DRB) conducting case-by-case reviews for currently validated affiliates housed in Security Housing Units (SHU). On October 25, 2012, the DRB began reviewing existing cases at Pelican Bay State Prison. As of January 18, 2013, a total of 112 cases have been reviewed and all five SHU facilities have been visited by the DRB. Of these cases, 59 inmates have been approved for release to Step 5 in a general population facility; 41 inmates have been placed in the Step Down Program; and the remainder were retained in SHU due to other reasons such as debriefing or safety concerns.

During Phase One, several informational and training sessions were provided to impacted CDCR staff. These training programs included an overview presentation to STG investigative staff on September 26, 2012; STG validation training for STG investigative staff on October 23, 2012; an overview presentation to staff assigned in the DAI Appeals Office; overview presentations to the management teams at the SHU facilities; regional training on Administrative Segregation Unit (ASU) case-by-case reviews for Institution Classification Committees (ICC) during the week of November 26, 2012; and an overview presentation to the Board of Parole Hearings on December 10, 2012. An overview presentation is being planned for the Classification Staff Representatives. The project team continues working with

Associate Directors, Division of Adult Institutions
Wardens
Special Agent in Charge, Office of Correctional Safety
Page 2

various stakeholders to finalize the initial training materials for staff including training for Senior Hearing Officers.

Impacted employee organizations were notified of the policy changes in September 2012. Discussions were held with those who requested to meet and an agreement was reached on December 13, 2012. That agreement is attached for your information.

**This memorandum is the official notification that Phase II will begin effective March 1, 2013.** Phase II will include implementation of the following components:

**PREVENTION (Section 300 of the Instructional Memorandum):**

Begin use of the CDCR Form 2260, *Advisement of Expectations* (Attachment E of the Instructional Memorandum). Every inmate will be served a CDCR Form 2260 during their initial prison orientation. The advisement will outline CDCR's STG policy, to include consequences of STG involvement, as well as support for those desiring to abandon the STG lifestyle. The advisement shall be provided to each inmate upon arrival at a Reception Center and the inmate will be expected to sign noting receipt of the document. A copy of the signed CDCR Form 2260 will be placed into the general chrono section of the inmate's central file.

In addition, Wardens will initiate a process to serve a CDCR Form 2260 to each inmate currently housed at their facility. The inmate will be expected to sign noting receipt of the document and a copy will be placed in the inmate's central file. For existing inmates, this process shall be completed at each inmate's next regularly scheduled annual classification review. Local hiring authorities will establish a tracking system to ensure completion of this process in a 12 month period.

Offenders who refuse to sign the CDCR Form 2260 will be addressed as follows:

> Staff will mark the box indicating the inmate refused to sign the CDCR Form 2260 and will sign on the line for signature of staff. The inmate will be provided a copy of the document and the original will be routed for placement into the general chrono section of the central file. The offender will not be issued a CDC Form 115, *Rules Violation Report* (RVR), for refusing to sign the CDCR Form 2260.

**VALIDATION (Section 400 of the Instructional Memorandum):**

The Division of Adult Institutions (DAI) and the Office of Correctional Safety (OCS) will initiate transition to the new STG validation process as detailed within the Instructional Memorandum. To assist in facilitating this process, a temporary

Associate Directors, Division of Adult Institutions
Wardens
Special Agent in Charge, Office of Correctional Safety
Page 3

suspension in submittal of packages will take place during February 2013 which is further detailed within this memorandum.

- Begin use of the identified forms in completing new validations:
  - CDCR Form 128-B3 STG, *Security Threat Group Identification Score Sheet*
  - CDCR Form 128-B STG2, *Security Threat Group Validation Evidence Disclosure and Interview Notification*
  - CDCR Form 128-B STG3, *Security Threat Group Validation Chrono*
  - CDCR Form 1030STG, *Confidential Information Disclosure Form*
- The OCS and the STG Classification Committee will begin to use the revised CDCR Form 128-B2, *Security Threat Group Validation/Rejection Review*.
- Counseling staff will begin to use the CDCR Form 128-B1 STG, *Security Threat Group Unit Classification Committee – Notification of Hearing*.
- Incorporate the use of the STG Unit Classification Committee in finalizing decisions during the validation process.
- The STG Classification Committee will begin to use the CDCR Form 128-G1, *Security Threat Group Unit Classification Committee – Results of Hearing*.

## RENUNCIATION PROCESS FOR PLACEMENT ON SENSITIVE NEEDS YARDS (SECTION 1000 OF THE INSTRUCTIONAL MEMORANDUM):

Implement the use of the CDCR Form 128-B STG5, *Renunciation of STG Affiliation, Association, and Illicit Behavior* (Attachment W of the Instructional Memorandum), for non-validated inmates who are requesting placement on a Sensitive Needs Yard (SNY). This form affirms and declares the inmate's disassociation with past, current, and future STG behavior. Inmates shall sign the CDCR Form 128-B STG5 prior to review by ICC and endorsement by the CSR for transfer to a SNY.

## STEP DOWN PROGRAM (SECTION 700 OF THE INSTRUCTIONAL MEMORANDUM):

Various program and educational components are being finalized with a goal to implement effective February 1, 2013. In addition, inmates who have been assigned in the Step Down Program (SDP) through the case-by-case reviews are entitled to privileges, as described in Section 700.3, beginning on page 45 of the Instructional Memorandum. Wardens are instructed to implement the new privileges for inmates in the SDP effective February 1, 2013.

Processes and procedures to address general movement outside the cell for showers, meals, etc., as described in Section 700.4, beginning on page 47 of the Instructional Memorandum, are currently under development and will be implemented via a subsequent memorandum.

RUIZ009420

Associate Directors, Division of Adult Institutions
Wardens
Special Agent in Charge, Office of Correctional Safety
Page 4

## USE OF THE CDCR FORM 812 STG, NOTICE OF CRITICAL CASE INFORMATION – SAFETY OF PERSONS (NON-CONFIDENTIAL ENEMIES):

Institutions will initiate the use of the revised CDCR Form 812 STG. In addition, the CDC Forms 812-A and 812-B will no longer be required to be completed.

*The following sections of the Instructional Memorandum will be implemented in Phase III via subsequent memorandum.*

*Section 500 – Documentation of STG Involvement and Activity*
*Section 600 – STG disciplinary Matrix for STG Related Behavior or Activity*
*Section 800 – Validated Inmate on Monitored Status*

**Staff are reminded that prior to implementation of Sections 500 and 600 of the Instructional Memorandum, the language contained in the STG Disciplinary Matrix cannot be utilized in preparation of CDC Form 115 or RVR. However, staff may utilize existing California Code of Regulations; Title 15 language to document STG related behavior when it occurs.**

### Updates and Clarifications to the Instructional Memorandum:

1) The definition of "Delete" in Department Operations Manual (DOM) Section 52070.19.1 was inadvertently omitted in the Instructional Memorandum. The definition has been amended and shall read as follows:

   "Delete" designates the offender is no longer believed to have been an affiliate of a security threat group due to a lack of substantiation. This identification is used to remove the offender from the STG data base.

2) Custody Designation (CCR Section 3377.2) – expanded to address Inactive, Monitored, or Inactive-Monitored status inmates:

   Validated affiliates currently housed in a SHU and who have their custody reduced from MAX due to reclassification as Inactive, Monitored, or Inactive-Monitored shall serve one year at Close B custody, unless other case factors require higher custody level.

3) Housing Designation (CCR Section 3341.5(c)(5)) – expanded to address validated inmates being released through ASU Case-by-Case Reviews:

   Validated affiliates currently housed in the ASU and who have their custody reduced from MAX through the ICC case by case review process shall not be

RUIZ009421

Associate Directors, Division of Adult Institutions
Wardens
Special Agent in Charge, Office of Correctional Safety
Page 5

required to be transferred to a Level IV 180 design facility, unless other case factors require this type of housing, consistent with DOM Section 62010.1.

4) The SDP Placement Options Chart, on Page 40 of the Instructional Memorandum, is amended as follows:

| SDP Placement Options Chart | | |
|---|---|---|
| 1. – **Active SDP Violators**: Regress 6 months in the Current Step or to the Beginning of the Current Step. | 2. – **Active SDP Violators**: Regress 6 months within the Previous Step or to the Beginning of the Previous Step. | 3. – **Active SDP Violators**: Regress to Beginning of Step 1. |
| 4. – **Active SDP Violators**: Assess and Suspend SHU Term, if appropriate, and Regress to the Beginning of Step 2. | 5. – **Initial Placement or Active SDP Violators**: Assess and Suspend SHU Term, if appropriate. Initial Placement or Regression to the Beginning of Step 1. | 6. – **Monitored, Inactive, or Inactive-Monitored, ~~Drop-out, or Return to Custody~~ inmates**: Assess and Suspend SHU Term, if appropriate. Placement at the Beginning of Step 1.<br><br>If offender has completed the SDP previously, he/she must normally serve 2 years in Step 1. |

Drop-out and Return to Custody Inmates will be eliminated from Box 6.

The language to be applied to Drop-out Status Inmates and those housed in the Transitional Housing Unit (THU) is as follows:

> - If the inmate has been found guilty of STG related behavior, as outlined on page 25 of the Instructional Memorandum, the inmate shall be placed at the beginning of Step 1.
> - If the inmate is returned to the SDP for reasons other than participation in STG-related behavior, they will be placed at the beginning of the step that they were in at the time of the decision to initiate the debriefing process.
> - If the inmate had not begun the SDP at the time they began debriefing, they shall be placed at the beginning of Step 1.

The language to be applied to Return to Custody Inmates will be dependant upon STG related behavior that occurred while on parole or outside CDCR's jurisdiction.

Case4:09-cv-05796-CW Document246-4 Filed07/18/13 Page7 of 12

Associate Directors, Division of Adult Institutions
Wardens
Special Agent in Charge, Office of Correctional Safety
Page 6

- If the inmate had no documented STG related behavior, they shall be placed at the beginning of the step that they were in, at the time of parole/discharge.
- If the inmate had documented STG related behavior (which was specifically related to the same STG with which the inmate was previously validated), they shall be placed in the appropriate step based upon a determination by the ICC.

5) Signature on Step Down Program Contract:

Participation in each step of the SDP requires the offender to acknowledge the program expectations and sign a personal contract. The contract will outline the goals, expectations for successful completion, and potential consequences for failure to fully participate and complete the step. The contract will indicate that by signing the contract the offender does not acknowledge or admit to being an STG affiliate.

Offenders who refuse to sign the contract will be addressed as follows:

Placement in Step 1 – The staff will notate that the inmate refused to sign the contract and will sign on the line for "Signature of Staff Witness". The inmate will be provided a copy of the contract and the original will be routed for placement into the general chrono section of the central file. The offender will not be issued a CDC Form 115 or RVR for refusing to sign the contract.

Placement in Steps 2, 3, and 4 – The inmate is required to sign the contract and failure to do so will result in the inmate not being authorized to move to the next step. The staff will prepare a CDC Form 128B documenting the inmate's refusal to sign the contract. The inmate will be provided a copy of the CDC Form 128B and the original will be routed for placement into the central file. The inmate will be subsequently reviewed by ICC for further consideration and potential regression in the SDP. The discussion of the ICC regarding the potential regression for failure to sign the contract shall be included in the CDC Form 128-G. The offender will not be issued a RVR for refusing to sign the contract.

If the inmate refuses to sign the contract for initial placement after a case-by-case review, staff shall follow the process described above. ICC will review the inmate and if inmate continues to refuse to sign the contract, ICC shall place inmate in Step 1, where signature of the contract is not required.

Release to Step 5 – Staff will notate the inmate refused to sign the contract and will sign on the line for "Signature of Staff Witness". The inmate will be

Case4:09-cv-05796-CW   Document246-4   Filed07/18/13   Page8 of 12

Associate Directors, Division of Adult Institutions
Wardens
Special Agent in Charge, Office of Correctional Safety
Page 7

provided a copy of the contract and the original will be routed for placement into the central file. Although the inmate may elect not to sign the contract for Step 5 monitoring, the inmate may be released and held accountable for the conditions described within the document. The offender will not be issued a RVR for refusing to sign the contract.

### Validation Packages:

OCS has seen an increase in validation packages submitted by institutions since the issuance of the Instructional Memorandum. Validation statistics show that for the months of October-December 2011, approximately 280 validation packages were submitted compared to 333 packages submitted during the same timeframe in 2012. This increase has created an additional workload as staff are attempting to zero-out the validations completed using the past practice prior to the implementation of the new validation process. It is imperative that all validation packages completed using the prior process be finalized in order to successfully transition to the new STG validation and quality control review process.

In order to successfully close-out all of the validations completed using the previous process, effective **February 1, 2013,** OCS will no longer accept new validation packages using the old format and will return any received after that date. During the month of February 2013, OCS will not accept any validation packages creating a moratorium to finalize all pending validations. Upon implementation of Phase II on **March 1, 2013**, OCS will begin accepting validation packages prepared utilizing only the new process.

### Inactive Reviews:

The process to complete a Six Year Inactive Review is not being modified at this time. Please continue to process the inactive reviews and submit to OCS utilizing the existing process.

### Administrative Segregation Unit ICC Actions:

1) Case-by-case reviews of validated prison gang associates (STG-I associates) housed in ASU will be initiated in the male SHU institutions on or about March 1, 2013. A list of validated affiliates currently housed in ASU is being developed and institutions will be directed to initiate the review of their cases via electronic mail from the Special Project Team. Support from the Special Project Team will be provided, if requested by the institution.

Associate Directors, Division of Adult Institutions
Wardens
Special Agent in Charge, Office of Correctional Safety
Page 8

- Existing validated prison gang members (STG-I member) housed in ASU shall be retained pending transfer to an appropriate SHU for placement in the SDP.
- Currently validated STG associates housed in ASU shall be retained in ASU pending completion of the ICC case-by-case reviews.
- Any inmate housed in ASU who is serving a determinate SHU term with a minimum eligible release date of less than 180 days, in conjunction with validation as a STG-I associate, should be retained pending an ICC case-by-case review.

2) Inmates currently housed in ASU, pending return of a submitted validation package, must be reviewed by ICC to determine the need for continue retention in ASU. If the inmate does not meet the new STG criteria for SDP placement, the inmate shall be returned to general population housing unless other case factors require retention. This process shall not begin until notified to do so via electronic mail.

3) Inmates currently housed in ASU pending completion of the investigation into STG related activity must be reviewed by ICC to determine the need to continue retention in ASU. If the inmate does not meet the new STG criteria for SDP placement, the inmate shall be returned to general population housing unless other case factors require retention. This process shall not begin until notified to do so via electronic mail.

An electronic mail account for STG Assistance was established and can be accessed should questions arise through this implementation process. The address is CDCR_DAI_STG_Assistance@cdcr.ca.gov. The account is monitored daily and responses will be provided to all requests.

KATHLEEN L. DICKINSON
Director
Division of Adult Institutions

ANTHONY CHAUS, Chief
Office of Correctional Safety

Attachment

cc: Terri McDonald
Brigid Hanson
Mike Stainer
George Giurbino
Katherine Tebrock

Ben Rice
Dan Stone
Kathleen Allison
Vimal Singh
Tanya Rothchild

STATEWIDE AGREEMENT BETWEEN
CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION
(CCPOA)
AND
THE STATE OF CALIFORNIA,
DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR)
REGARDING THE SECURITY THREAT GROUP (STG) MANAGEMENT
PROGRAM

This Agreement represents the full and complete understanding reached by and between the parties at the conclusion of Meet and Confer negotiations on December 13, 2012, regarding the Security Threat Group Management Program.

1. Because of the increased workload associated with the STG, both parties to this agreement will, by written request of either party, re-open and re-convene this negotiation table six (6) months from the date of a signed agreement to re-evaluate this workload, and propose work-shedding ideas if the workload increase still exists.

2. CCPOA and the State agree that the STG Committee actions will be established similarly to the current UCC/ICC committees with the CCI responsible for the same duty assignment as a UCC/ICC and in accordance with the John Kagel Arbitration Award.

3. The State agree that SHU units will make their best efforts to segregate their SHU units and sections in an attempt to keep Step Down Program (SDP) inmate participants in the same "graduated program level" with like situated inmates. Meaning; SDP Phase 2 with other SDP Phase 2, and SDP Phase 4 with other SDP Phase 4.

4. CCPOA and the State agree that the primary duties of the SDP CC II Specialist are to perform work associated with the STG program, and local management shall only assign non-SDP duties when the SDP CC II Specialist has no STG related work.

5. The State and CCPOA agree that the IGI Investigator will prepare the STG Validation packages per the Instructional Memorandum dated October 12, 2012 and the CCI will only ensure the inmate participant has received copies of non-confidential documents and/or the CDCR 1030 STG's that will be reviewed/discussed during the STG Validation Institution classification committee.

6. The State agrees that each Institution will meet with the local CCPOA Chapter officials to develop a safe plan for monitoring Step 5 Security threat Group (STG) inmates who are released to their General Population yards. Serious consideration will be given to the physical layout and limitations of the facility, custody staffing level, and emergency response procedures.

7. The State agrees to run a modified version of the Departmental Review Boards (DRB) referred to as "Case by Case" review committee as needed. Once all current SHU inmates have had a DRB, they will only be done for "special cases" and housing issues associated with Phase 5 and the six (6) year review may no longer be required.

8. Both parties agree that the primary function of the STG Committee is as delineated on page 58-59 of the October 12, 2012 Pilot Instruction Memorandum Article 5 [Classification Process] and is subject to change as the Pilot may dictate.

9. The State and CCPOA agree that additional STG related training for all BU6 Rank and File line staff is important to the success of this program's implementation. As such, a course of instruction curriculum for the CDCR Basic Correctional Office Academy (BCOA) will be produced and distributed as soon as reasonably possible of this signed agreement. Additionally, a training curriculum will also be prepared for training of line staff and Correctional Counselors already assigned to a facility and integrated into current 7K Training.

10. The State agrees that certain SHU facilities may be in need of various levels of updating and/or retro-fitting. These retro-fit costs shall be kept to a minimum but may include the following: Telephone installation (which have the ability to be recorded); relocation of holding cells and shelving units; and the expansion of Gun Ports to accommodate the 40mm weapon system, upon discussion with the local CCPOA Chapter and Institution Management.

11. CCPOA and the State agree the information contained on the 128-G being generated as a result of the Case by Case Review will address the initial 128-B2, documents and/or behavior included in the most recent CDCR Form 128-B2, and any STG related behavior /activities that have occurred in the last 4 years. The format will be created to minimize the workload impact.

RUIZ009427

12. The State agrees to meet & discuss the raw data gathered upon CCPOA's request at no more than 6 month intervals.

13. The State and CCPOA agree to establish at the local level a STG work group that may be made up of the following: Warden or his/her designee; two local CCPOA Chapter officials; the SHU Associate Warden (where applicable); the Associate Warden of the Level IV 180 yards (where applicable); the CCII STG; one IGI Representative; and one ISU Representative. This work group shall be scheduled as needed to meet in order to share information surrounding any problems or concerns related to the STG Pilot program.

14. The State agrees the STG assigned staff will be tasked with insuring the CDC Form 1030 and other non-confidential information is issued to the inmate prior to the STG package being sent to the Office of Correctional Safety (OCS) with the inmates written rebuttal.

15. The State and CCPOA agree that the local level can meet and set the standard for their respective yard size.

16. The State and CCPOA agree that during the first six (6) months of implementation that all phases may be completed at any SHU Facility. However, after the initial six (6) months, the department may begin transferring inmates as expeditiously as possible to the appropriate designated facility.

17. The State agrees that anytime an STG inmate is required to leave the building they will be in restraints, with the exception of group yard.