KAMALA D. HARRIS
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General
JILLIAN R. O'BRIEN
Deputy Attorney General
MARTINE N. D'AGOSTINO
Deputy Attorney General
ADRIANO HRVATIN
Deputy Attorney General
State Bar No. 220909
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-6207
 Fax:  (415) 703-5843
 E-mail:  Adriano.Hrvatin@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **TODD ASHKER, et al.,**<br><br>                                    Plaintiffs,<br><br>        v.<br><br>**GOVERNOR OF THE**<br>**STATE OF CALIFORNIA, et al.,**<br><br>                                    Defendants. | C 09-05796 CW<br><br>**DECLARATION OF T. RUGGLES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

I, T. Ruggles, declare:

1.     I am employed by the California Department of Corrections and Rehabilitation (CDCR) as a contract psychologist and recently have been hired to assume the position of Chief of Mental Health at Pelican Bay State Prison.  The paperwork approving my appointment as the Chief of Mental Health is currently being processed by CDCR, which I understand will be completed in the near future.  As described further below, I have been employed by CDCR for over 13 years and in that time served in a variety of capacities that have entailed the provision of

1

Ruggles Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C 09-05796 CW)

1  mental health services to California inmates, including inmates housed in the Security Housing

2  Unit (SHU) at Pelican Bay. As a result, I am familiar with CDCR's and Pelican Bay's extensive

3  policies, procedures, and practices related to the mental health exclusionary criteria for SHU

4  placement, the provision of mental health services, as well as mental health emergency or crisis

5  intervention. I am competent to testify to the matters set forth in this declaration and, if called on

6  by the Court, would do so. I submit this declaration in support of Defendants' opposition to

7  Plaintiffs' motion for class certification.

8      2.    I first began working for CDCR in 1992 as a contract psychologist providing direct

9  services to inmates housed in the SHU. Thereafter, I held the positions of Staff Psychologist and

10 Senior Psychologist-Supervisor leading up to my appointment as Chief Psychologist at Pelican

11 Bay in 1995. As the Chief Psychologist, I was responsible for overseeing the evaluation of

12 inmates in order to determine the inmates' level of functioning and need for mental health care. I

13 provided status reports and/or recommendations and made appropriate referrals for treatment. I

14 was also responsible for supervising staff charged with classifying inmates for the appropriate

15 level of mental health care within the inmates' housing units and ensuring that mental health staff

16 complied with laws, rules, regulations, and federal mandates governing mental health care in

17 California prisons, including, but not limited, to the court-approved and monitored remedial plans

18 implemented as a result of class action litigation in *Madrid v. Gomez*, No. 90-3094 TEH (N.D.

19 Cal.), *Coleman v. Brown*, No. 90-0520 LKK (E.D. Cal.), and *Plata v. Brown*, No. 01-1351 TEH

20 (N.D. Cal.). As Chief of Mental Health at Pelican Bay, my responsibilities will be very much the

21 same.

22     3.    It is CDCR's policy to provide inmates with prompt access to mental health

23 services, regardless of their housing designation. I am informed and believe that Plaintiffs in this

24 case claim that they receive inadequate mental health care because they are housed in Pelican

25 Bay's SHU. I believe that claim is inaccurate, because the procedures initiated as a result of the

26 *Madrid* decision are sufficient to identify those inmates who evidence mental illness or are at risk

27 for mental illness. The Psychiatric Services Unit (PSU) provides adequate mental health support

28 services to any SHU inmate found to require such services.

2

Ruggles Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C 09-05796 CW)

4. CDCR's mental health services delivery system (MHSDS) is comprised of comprehensive protocols for screening and evaluating inmates with mental health issues upon admission, readmission, or transfer, using standardized mental health screening forms and protocols. Mental health services are provided to all California inmates, including SHU inmates at Pelican Bay, in conformity with MHSDS protocols, all of which were court-approved and continue to be court-monitored. Mental health services within the SHU are available to all SHU inmates in accordance with the particular inmate's treatment needs. Services are designed to achieve symptom management through regular case management activities, medication administration and monitoring, crisis intervention, monitoring, and referral to a more intensive level of care if needed. Pelican Bay's compliance with the protocols governing mental health services is reported in routine monitoring reports to the court-appointed special master in the *Coleman* litigation. I understand and believe that several of the reports provided by Pelican Bay mental health staff to the *Coleman* special master have been produced to Plaintiffs' counsel in this matter. If Pelican Bay SHU inmates were receiving inadequate mental health care, I would expect that the special master would have identified the issue and requested that the *Coleman* court issue orders to remedy the matter. To my knowledge, the special master has not done so.

5. I was employed as a Senior Psychologist-Supervisor at Pelican Bay during the time of *Madrid*, and I provided testimony in that case, including at trial in October 1993. Among other rulings, the *Madrid* court held that the conditions of confinement in the SHU presented a serious risk of harm to two specific categories of inmates: inmates who are mentally ill or at serious risk of mental illness. The court did not find that SHU conditions gave rise to a sufficient risk of harm to the mental health of all SHU inmates.

6. To address the risk of harm identified in *Madrid*, a set of procedures were developed to identify inmates with "SHU-excludable conditions" and to exclude them from housing placement in the Pelican Bay SHU. SHU-excludable conditions identified by the *Madrid* Court include a documented diagnosis or evidence within the preceding ninety days of schizophrenia, delusional disorder, schizophreniform disorder, schizoaffective disorder, brief psychotic disorder, substance-induced psychotic disorder, other forms of psychotic disorders,

3

Ruggles Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C 09-05796 CW)

major depressive disorders, and bipolar disorder. Inmates that are actively suicidal, experience frequent breaks from reality, have been diagnosed with an organic brain syndrome that results in a significant functional impairment if not treated, have a diagnosis of mental retardation, or a prior clinical history that suggests that the inmate will do poorly in the Pelican Bay SHU, are all similarly SHU-excludable. Pelican Bay further constructed the PSU as an alternative housing placement for SHU-classified inmates deemed SHU-excludable.

7. Upon initial arrival at the Pelican Bay SHU, if a review of the inmate's unit health record reveals the presence of a SHU-excludable condition, the inmate is removed from the SHU within 96 hours of his arrival and transferred to an appropriate treatment setting, such as the PSU or the Correctional Treatment Center. However, an inmate may be housed in the Pelican Bay SHU and still be a part of the MHSDS, as long as clinical staff determine that the inmate does not currently evidence any of the exclusionary conditions and there is no evidence to suggest that the inmate has evidenced any of the "excludable" conditions during the 90 days preceding his arrival.

8. There are no inmates in SHU who require the "Enhanced Outpatient" (EOP) level of care outlined in the MHSDS Program Guide. There are presently three inmates in the Pelican Bay SHU who are designated as needing a "Correctional Clinical Case Management System" (CCCMS) level of care, meaning they have been prescribed medications that fall within the mental health services delivery system and/or are receiving short-term psychotherapy.

9. The goal of mental health services in the SHU is to provide inmates who are included in the MHSDS on the basis of "non-excludable" mental health conditions with regular case management, treatment activities, medication monitoring and weekly clinical monitoring by a licensed clinician to enable those inmates to maintain at least their current level of functioning. Bi-weekly clinical rounds by a licensed clinician identify inmates with newly-emerging mental health needs. If an inmate refuses to talk to the primary clinician conducting rounds, the clinician may discuss the inmate's functioning with custody staff. This ensures that the daily adaptive functioning of all SHU inmates is regularly assessed. SHU inmates in need of mental health services have regular access to quality mental health services at Pelican Bay. In addition to intake evaluations and routine clinical rounds, there are several avenues for identifying inmates who

4

Ruggles Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C 09-05796 CW)

may be in need of mental health services. Inmates with mental health needs are identified: (i) upon intake through an initial review of their health record; (ii) via staff observation and referral of an inmate for clinical evaluation; and (iii) by self-referral whereby an inmate may request a clinical interview to discuss his mental health needs.

10. Screening and evaluation interviews and subsequent treatment of inmates are offered in a private setting, except for the rare case where the security of the institution or the safety of staff would be compromised. While clinical staff rounds occur on the tier, mental health treatment occurs in the private setting of the SHU mental health clinic. At all times, mental health staff strive to maintain the level of confidentiality appropriate under the circumstances and abide by the inmate's wishes. If an inmate during clinical rounds on the tier indicates that he wishes to speak with a mental health professional, an appointment is made for the inmate to be seen in the SHU clinic by a mental health professional in a private setting.

11. Across approximately 14 years of direct provision and supervision of mental health services to SHU inmates, it is my experience that most inmates do not report or appear to evidence mental or behavioral changes that would subject them to SHU exclusion. This is supported by the relative infrequency with which routine monitoring results in the discovery of inmates identified as requiring exclusion from SHU as a function of mental health conditions that emerge or are exacerbated after SHU placement.

12. I am readily familiar with the conditions of confinement in the SHU, given my tenure at Pelican Bay. The SHU at Pelican Bay is a form of segregated housing that affords the highest level of inmate control available within the state. However, pods in the Pelican Bay SHU are exposed to natural light through large skylights. SHU inmates are given the opportunity to exercise for 90 minutes per day, seven days per week within an enclosed exercise yard that provides fresh air and light through an open roof. Every week, non-contact family visitation is available to SHU inmates who have visitors, and mail, publications, and packages are delivered regularly to SHU inmates. As stated above, all inmates are visited regularly by clinical staff that engages with them at their cell fronts. Inmates housed in the Pelican Bay SHU communicate

5

Ruggles Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C 09-05796 CW)

frequently and engage one another from cell to cell, as they move through the pod to the shower or exercise yard, or to an area outside the pod. The inmates converse with the pod's tier porter. I have also seen SHU inmates play chess with each other by calling out moves.

13. In addition to providing mental health evaluations and treatment, observation by mental health staff occurs as part of Institutional Classification Committee (ICC) proceedings as well as at disciplinary hearings, which include an assessment of the inmate's ability to understand to ensure he receives due process. Mental health staff may ask the inmate questions regarding his mental health status to clarify observations made at these hearings. If the clinician observes behavior that merits further investigation, the clinician will ask the inmate if he wishes to schedule an appointment with a mental health provider. The appropriateness of an inmate-patient's placement in SHU, based on his clinical needs, if any, is reviewed as part of the inmate's regularly-scheduled ICC hearings. An inmate whose clinical needs cannot be adequately met through regular case management activities is referred to the ICC for consideration of alternative clinical placements. In this way, Pelican Bay's clinical staff ensures the continued appropriate placement of inmates in light of their clinical needs.

14. In my experience, I and other mental health staff are often frustrated because many SHU inmates do not avail themselves of the mental health services available. Clinical staff in SHU have informed me that they believe that these refusals are prompted by gang expectations.

15. I am informed and believe that several Plaintiffs in this case allege that they lack trust in Pelican Bay mental health staff, and that this distrust is the reason they do not seek mental health care. My staff and I are committed to providing the highest level of mental health services to all Pelican Bay inmates, including those housed in the SHU, consistent with court-approved and monitored policies and guidelines.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed in Crescent City, California, on July 15, 2013.

_____ Ph.D.
T. Ruggles

SF2012204868

6

Ruggles Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C: 09-05796 CW)