1  CHARLES FRANCIS-ANTONIO CARBONE (SBN 206536)
   EVAN CHARLES GREENBERG (SBN 271356)
2  LAW OFFICE OF CHARLES CARBONE
   P.O. Box 2809
3  San Francisco, California 94126
   Tel: 415.981.9773
4  Fax: 415.981.9774

5
   (Other counsel listed on pages 18-20)
6  ATTORNEYS FOR PLAINTIFFS

7
   KAMALA D. HARRIS
8  Attorney General of California
   WILLIAM C. KWONG
9  Supervising Deputy Attorney General
   JILLIAN R. O'BRIEN
10 Deputy Attorney General
   MARTINE N. D'AGOSTINO
11 Deputy Attorney General
   ADRIANO HRVATIN
12 Deputy Attorney General
   State Bar No. 220909
13   455 Golden Gate Avenue, Suite 11000
14   San Francisco, CA  94102-7004
     Telephone:  (415) 703-1672
15   Fax:  (415) 703-5843
     E-mail:  Adriano.Hrvatin@doj.ca.gov
16 *Attorneys for Defendants*

17

18

19

20               UNITED STATES DISTRICT COURT

21              NORTHERN DISTRICT OF CALIFORNIA

22                      OAKLAND DIVISION

23

24

25 Ashker, et al. ,
                                    |  No. 4:09-cv-05796-CW
26          Plaintiffs,             |
                                    |  **JOINT CASE MANAGEMENT
27 v.                               |  CONFERENCE STATEMENT**
28 Governor of the State of California, et al.,

---

Defendants.

(FED. R. CIV. P. 26(f) and CIV. L. R. 16)

CLASS ACTION

Date:  August 22, 2013
Time:  2:00 p.m.
Dept.: Courtroom 2

## JOINT CASE MANAGEMENT CONFERENCE STATEMENT

In accordance with Civil Local Rule 16-10(d), Plaintiffs and Defendants submit their Joint Case Management Statement in this matter set for a subsequent case management conference on August 22, 2013, at 2:00 p.m. in Courtroom 2 before the Honorable Claudia Wilken in the Oakland Division of this Court.

1. **Jurisdiction and Service**:

This action was originally filed in the United States District Court for the Northern District of California, Oakland Division, on December 9, 2009, based on the federal questions raised in Plaintiffs' causes of action against Defendants.  After the Court granted leave, Plaintiffs filed a Second Amended Complaint on September 10, 2012.

All Defendants have been served and timely appeared in this matter.

2. **Facts**:

PLAINTIFFS

Plaintiffs Ruiz, Franklin, Ashker, Franco, Reyes, Johnson, Troxell, Redd, Esquivel, and Dewberry—and the members of the proposed class—have been held in solitary confinement at California's Pelican Bay Security Housing Unit and other California Prisons for an extraordinarily long time; some for more than two decades.  During that time, they have committed virtually no disciplinary infractions.

Their conditions of confinement are draconian and stark: Plaintiffs are confined alone to cells measuring approximately 80 square feet, deprived of any normal human contact, deprived of any meaningful exercise, of all telephone calls, contact visits, and vocational, recreational, and educational programming. They must linger in their small, concrete cells for at least 22.5 hours each day. Moreover, there is an unwritten, but strictly enforced CDCR practice prohibiting the grant of parole to any prisoner incarcerated in the SHU. Nearly as bad, SHU prisoners cannot receive the good-time credits that other California prisoners can earn. Their only way out of isolation is to debrief by reporting on the gang activity of other prisoners, thus placing themselves and their families in great danger.

California, alone out of any state in the country, and most other jurisdictions in the world, holds Plaintiffs and hundreds of others in these tortuous conditions for decades, based merely on their association with a prison gang. CDCR deems it largely irrelevant whether Plaintiffs have ever undertaken an illegal act on behalf of a gang. California's practices are both cruel and unusual.

Plaintiffs' claims are common and typical to those of the proposed class.

## DEFENDANTS

Defendants provided initial statements of the relevant facts underlying this action in Defendants' motion to dismiss (ECF No. 160), the joint case management conference statement filed by the parties on March 14, 2013 (ECF No. 183), as well as Defendants' opposition to Plaintiffs' pending motion for class certification (ECF No. 242). Defendants maintain that CDCR's validation and review procedures, as set forth in title 15 of California's Code of Regulations, comport with applicable due process standards. CDCR's new validation and review procedures, implemented through the Security Threat Group (STG) Identification,

Prevention, and Management Program, similarly provide, if not exceed, the level of due process required for administrative decisions such as gang validation, classification, and housing. Defendants separately maintain that the conditions of the Security Housing Unit (SHU) at Pelican Bay State Prison do not amount to cruel and unusual punishment, even as to inmates housed there for ten or more continuous years, as challenged by Plaintiffs in this case.

**3. Legal Issues:**

PLAINTIFFS

With the adoption of the Second Amended Complaint, Plaintiffs now seek class-wide declaratory and injunctive relief based on two central claims:

(1)  CDCR's extraordinarily long-term detention of Plaintiffs and the proposed class in solitary confinement and in extremely harsh conditions deprives Plaintiffs and the proposed class of basic human needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  Defendants are deliberately indifferent to the deprivation of those human needs.

(2)  CDCR's continued and long-term confinement of Plaintiffs and the proposed class in isolated, solitary conditions constitute an atypical and significant hardship, and Defendants have failed to accord notice and meaningful review in violation of the Due Process Clause of the Fourteenth Amendment.

Plaintiffs and those in the proposed class have been in the SHU for exceedingly lengthy periods of time – a decade or more.

Few or none of the Plaintiffs evidenced gang activity (as opposed to mere association or inactive membership in a gang) at their last 6-year inactive gang status review.  Yet all were denied status as an inactive gang member at that 6-year review and retained in the SHU for an indeterminate and continuing period of time.

Plaintiffs and the proposed class will establish that they have been deprived of basic human needs during their prolonged confinement in the SHU, that all are suffering serious mental harm from their prolonged solitary confinement, and or that they have a significant risk of exposure to future mental harm if they continue to be detained in the SHU.

<u>DEFENDANTS</u>

Currently pending before the Court is the legal question of whether Plaintiffs have met their burden under Rules 23(a) and (b) of the Federal Rules of Civil Procedure and established that this matter should proceed as a class action.  Disputed points of law that will implicate the merits of Plaintiffs' claims include the following:  (i) whether the Court has jurisdiction over Plaintiffs' due process challenge to CDCR's validation and review procedures, once the STG Program is officially promulgated through the Administrative Procedure Act; (ii) the amount of due process owed administrative prison decisions like gang validation, classification, and housing; and (iii) whether gang validated inmates housed in Pelican Bay's SHU for ten or more continuous years are exposed to a sufficiently serious risk of psychological harm, to which Defendants are deliberately indifferent, to constitute cruel and unusual punishment.

**4.  <u>Motions:</u>**

<u>PLAINTIFFS</u>

Plaintiffs currently have two motions pending.

The first is a motion for class certification filed on May 2, 2013.  (Doc. 195).  On July 18, 2013, Defendants filed their Response.  (Doc. 242).  On August 8, 2013, Plaintiffs filed their Reply.  (Doc. 263).

The second is a cross-motion, filed on August 9, 2013 as part of Plaintiffs' response to Defendants' July 26, 2013 motion for relief from non-dispositive pretrial order of magistrate, to

1

2

strike the declarations of J. Zubiate and J. Bryan Elrod that Defendants submitted with their

response to Plaintiff's motion for class certification on July 18, 2013.  (Doc. 260, 261, 264).

3

Defendants' response to the cross-motion is due on August 23, 2013.

4

5

The California Correctional Peace Officers Association (CCPOA) filed a motion to

6

intervene on June 26, 2013, to which Defendants filed a statement of non-opposition on July 1,

7

2013.  (Doc. 233, 236).  Plaintiffs filed an opposition to the motion on July 10, 2013.  (Doc.

8

238).  If CCPOA is permitted to intervene, both the case schedule and the prospects for

9

settlement based on the extensive work done by Magistrate Judge Vadas to date will be

10

significantly altered.

11

12

Finally, Plaintiffs expect to move for summary judgment on one or both of their claims

13

for violations of the Eighth and Fourteenth Amendments at the close of discovery.

14

DEFENDANTS

15

16

Plaintiffs have accurately identified the status of motions currently pending before the

17

Court, except as follows.  On July 26, 2013, Defendants moved in accordance with Rule 72 of

18

the Federal Rules and Rule 72-2 of this District's Civil Local Rules for relief from Magistrate

19

Vadas's discovery order dated July 12 (ECF No. 255).  Because fourteen days have passed since

20

the filing of the motion, and the Court did not issue an order denying the motion or setting a

21

briefing schedule, Defendants' motion is deemed denied.  N.D. Civ. L.R. 72-2.  Unless the Court

22

indicates otherwise, Defendants expect, as required, that the Court's Clerk will soon provide

23

notice that Defendants' "motion has been deemed denied."  *Id.*

24

Separately, but in connection with Plaintiffs' opposition to Defendants' motion

25

challenging Magistrate Vadas's discovery order, Plaintiffs filed a motion to strike the

26

declarations of inmates Elrod and Zubiate, which Defendants submitted in support of their

27

opposition to class certification.  Defendants' opposition to Plaintiffs' motion to strike is due

28

August 23, the day after the hearing on class certification.  And Plaintiffs' motion to strike is

noticed to be heard on September 26, over a month after the August 22 class certification hearing. As such, the parties are currently on calendar to appear for argument on class certification although evidentiary issues directly implicating class certification will not have been fully briefed, argued, and presented to the Court for decision.

In addition, briefing on CCPOA's motion to intervene was completed on July 17, 2013, when CCPOA filed its reply (ECF No. 241). On July 29, the Court took CCPOA's motion under submission and vacated the hearing scheduled for August 29 (ECF No. 258). The motion remains pending. Defendants disagree that if CCPOA is allowed to intervene that both the case schedule and prospects for settlement "will be significantly altered" in a way detrimental to the litigation. If the Court agrees that CCPOA has an interest in this case worthy of intervention, that interest deserves to be contemplated and protected through full participation in this litigation, via discovery, further settlement proceedings, as well as scheduling, including as early as at the next case management conference currently set to take place on August 22.

With respect to anticipated motions, Defendants may file: (i) a motion to stay should Defendants receive and appeal an adverse ruling on Plaintiffs' motion for class certification; (ii) a renewed motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction over Plaintiffs' due process claim upon codification of the STG Program in title 15; (iii) motions for summary judgment on the merits of Plaintiffs' two claims; and (iv) discovery motions before Magistrate Vadas.

**5. Amendment of Pleadings:**

Plaintiffs moved for leave to file a Second Amended Complaint on May 31, 2012. Defendants filed their Response on June 14, 2012, and Plaintiffs filed a Reply on June 21, 2012. The Court granted Plaintiffs' motion on September 10, 2012, and Plaintiffs filed the Second Amended Complaint the same day. Although Plaintiffs do not anticipate seeking leave to further amend the complaint, Plaintiffs retain their right to seek the Court's leave. Following the

Court's order denying Defendants' motion to dismiss Plaintiffs' second amended complaint (ECF No. 191), Defendants filed their answer (ECF No. 194), which settled the pleadings. Without knowing how Plaintiffs would seek to further amend their complaint, Defendants would oppose another motion for leave to amend.

**6.  Evidence Preservation**:

Both parties have fulfilled their duties to preserve electronically stored information as well as with other methods of storage.

**7.  Disclosures**:

On April 15, 2013, Defendants served their initial disclosures.  On April 22, 2013, upon agreement between the parties, Plaintiffs served their initial disclosures.  On July 17, 2013, Defendants served a first supplement to their initial disclosures consistent with Rule 26(g) of the Federal Rules.

**8.    Discovery**:

PLAINTIFFS

(1)  Discovery requests, responses, and objections:

On October 31, 2012, Plaintiffs served their First Set of Common Document Requests and their First Set of Common Interrogatories.  On November 8, 2012, Plaintiffs served their First Request for Entry onto Property for Inspection.

On December 3, 2012, Defendants served Responses to the first set of interrogatories and requests for production of documents from Defendants Cate, Brown, and Lewis.

Defendants served their Response to Plaintiffs' First Request for Entry onto Property for Inspection on December 11, 2012.

On February 14, 2013, Defendants served their first set of requests for production and first set of interrogatories on Plaintiffs.

On March 21, 2013, Plaintiffs responded to Defendants' first set of requests for production. Plaintiffs began their rolling production of documents in response to Defendants' discovery requests in early June and are continuing to review documents for production.

On June 20, Defendants served their first supplemental responses to Plaintiff's First Set of Interrogatories.

On June 24, 2013, Plaintiffs' responded to two of Defendants' interrogatories, which Defendants' counsel indicated were needed for Defendants' response to Plaintiffs' motion for class certification.

In light of their rapidly deteriorating health as a result of their participation in the ongoing hunger strike, Plaintiffs sought to depose four of the named plaintiffs in late July, 2013 to preserve their testimony for trial. However, after administrative delays in scheduling the depositions, Plaintiffs' counsel determined upon visiting plaintiffs that their conditions had already weakened to the point that they might not be able to withstand potentially lengthy depositions. Plaintiffs therefore cancelled the noticed depositions.

Plaintiffs have noticed and will proceed with depositions of CDCR officials George Giurbino and Jeremy Frisk on August 19 and August 21, respectively.

(2) <u>Meet and Confer process:</u>

Both parties have provided some discovery, and the parties' meet-and-confer discussions concerning the scope and timing of that discovery remain ongoing.

(3) <u>Protective Order:</u>

1   The parties stipulated to a protective order that this Court approved on February 6, 2013.

2   (Doc. No. 182.)

3   (4)   Motions to compel:

4   After extensive meet-and-confer discussions throughout the winter and spring proved

5   largely unfruitful, Plaintiffs filed a motion to compel on May 10, 2013.  The motion was fully

6   briefed and heard by Magistrate Judge Vadas on June 25, 2013.  On July 12, 2013, Magistrate

7   Judge Vadas issued an order granting in part and denying in part the motion to compel, in which

8   he set out a timetable for Defendants to produce the documents required by the order.  (Doc.

9   239).  Defendants have begun and are continuing their production of documents required by the

10  order, and the parties are continuing meet-and-confer discussions concerning the timing and

11  scope of that production, and of Defendants' further supplemental responses to Plaintiff's

12  interrogatories.

13

14

15                                     DEFENDANTS

16  Defendants' discovery work in this case has been extensive and is ongoing.  For example,

17  Defendants have produced approximately 82,000 pages of documents, consisting of, but not

18  limited to, the ten named Plaintiffs' central files and unit health records, the central files and unit

19  health records of inmates Elrod and Zubiate (who submitted declarations supporting Defendants'

20  opposition to class certification), as well as various categories of documents called for by

21  Plaintiffs' seventy-six requests for production.  Moreover, consistent with Magistrate Vadas's

22  July 12 discovery order, Defendants continue to collect, review, redact where necessary to

23  protect against the disclosure of sensitive information implicating issues of safety and security,

24  and produce discovery on a rolling basis.  Given the scope of Magistrate Vadas's order, which

25  includes the production of documents related to twenty-five SHU inmates in addition to the ten

named Plaintiffs, the parties have thus far worked together to modify certain deadlines and provide Defendants reasonable extensions of time to meet their discovery obligations.

In July, Plaintiffs sought to depose inmates Ashker, Dewberry, Reyes, and Esquivel to preserve their testimony on the ground that each intended to participate in a hunger strike "to the death" such that each would be unavailable to testify at trial. The propriety and scheduling of these depositions was the subject of "emergency" proceedings before Magistrate Vadas, and the depositions were scheduled to proceed over four days between July 29, 30, 31, and August 1. On July 25, Plaintiffs' counsel canceled these four depositions. All ten Plaintiffs will be deposed as the litigation of this matter continues to unfold. The parties have separately corresponded about scheduling the depositions of various named Defendants and other individuals affiliated with CDCR or employed at Pelican Bay. Two such depositions have been confirmed — George Giurbino and Jeremy Frisk will be deposed on August 19 and August 21, respectively. The Court previously permitted each side to take up to fifteen depositions.

Defendants also continue to pursue the discovery they have propounded to date in this matter, which consists of interrogatories and document requests propounded on each Plaintiff individually, as well as two sets of document requests on Plaintiffs collectively. On May 22, 2013, Plaintiffs wrote to advise that they would "begin [their] rolling production of documents in response to the requests for production of documents Defendants tendered in this case." Although Plaintiffs did not specify as to which of Defendants' requests for documents Plaintiffs were referring, Plaintiffs produced documents on June 4 (consisting of approximately 4,850 pages) and on July 1 (consisting of approximately 8,700 pages). Based on Defendants' review, the productions appear largely unrelated to any party or claim at issue in this matter. For example, the first set of documents included material from an unrelated state employment case.

1   The second production at least pertains to some of the Plaintiffs but is not responsive to

2   Defendants' requests.

3          At Plaintiffs' request, on May 29, 2013, Defendants prioritized a single document request

4   regarding Plaintiffs' allegations of serious mental and physical harm.  Defendants wanted these

5   documents to evaluate the evidence Plaintiffs submitted to support class certification.  Plaintiffs

6   promised to produce these documents by June 17, just ten days before Defendants' then pending

7   June 27 deadline to oppose class certification.  Because of Plaintiffs' non-responsiveness,

8   Defendants sought and obtained an extension of time to July 18 to file their opposition to class

9   certification.

10

11         Plaintiffs failed to provide the documents requested by June 17, as promised.  Defendants

12  thereafter asked repeatedly when Plaintiffs intended to produce the limited set of documents,

13  including on June 18, 24, 26, and 28, and on July 1, 2, and 3.  Plaintiffs failed to provide a

14  substantive response.  Defendants asked whether Plaintiffs would agree to further extend

15  Defendants' deadline to oppose class certification — again, without response.  On July 5,

16  Defendants proposed a modest further extension to Defendants' opposition deadline from July 18

17  to August 1, assuming Plaintiffs would meet their discovery obligations and promptly produce

18  the specific records at issue.  On July 5, Plaintiffs refused to stipulate to any extension of time,

19  contending that Plaintiffs had provided interrogatory responses on the issue and that Defendants

20  were otherwise in control of the documents requested.  Plaintiffs have produced no further

21  documents.  On August 2, Defendants asked that Plaintiffs provide a status regarding their

22  document collection and production efforts.  Plaintiffs have not responded.

23

24         Relatedly, on May 22, Plaintiffs advised that "as the rolling production for the documents

25  will begin, so too will our responses on the interrogatories you tendered."  Plaintiffs further

26

27

28

indicated that "[w]e intend to turn our attention immediately to that very task as we are producing documents." Plaintiffs' initial interrogatory responses consisted solely of objections. Since then, Plaintiffs supplemented their interrogatory responses once and, in that regard, in connection with two specific interrogatories Defendants identified were of priority because of their connection to class certification. On August 2, Defendants asked Plaintiffs when Defendants could expect further supplemental interrogatory responses. Plaintiffs have not responded. In addition to the discovery propounded to date by each side, and future discovery contemplated by the current parties, the scope and course of discovery should accommodate CCPOA, should the Court grants CCPOA's motion to intervene.

### 9.  **Class Actions:**

Plaintiffs added class allegations in the Second Amended Complaint. (Doc. No. 136 at 34-38.) Plaintiffs filed a motion for class certification on May 2, 2013. (Doc. 195). Defendants filed their response opposing Plaintiffs' request for class certification on July 18, 2013. (Doc. 242). Plaintiffs filed their Reply on August 8, 2013. (Doc. 263). Plaintiffs' motion for class certification is currently scheduled to be heard on August 22, 2013.

### 10.  **Related Cases:**

The parties are unaware of any pending related cases or proceedings at this time.

### 11.  **Relief:**

Plaintiffs seek injunctive relief to require Defendants to conduct a meaningful review for California's gang-validated inmates in the Pelican Bay SHU and end long-term, indefinite detention in CDCR's Administrative and Security Housing Units.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**12.  Settlement and ADR:**

The parties have engaged in extensive settlement discussions to date, including by participating in full-day in-person settlement conferences with Magistrate Judge Vadas on June 19, 2013 and July 26, 2013.  The parties held a further status conference with Judge Vadas concerning the status of settlement efforts on August 12, 2013.  Judge Vadas will meet separately with Defendants and Plaintiffs on August 16, 2013 and August 26, 2013, respectively. The parties remain hopeful that this matter can be resolved through settlement.

**13.  Consent to Magistrate Judge For All Purposes:**

The parties do not consent to a Magistrate Judge for all purposes.  Defendants suggest that discovery issues and further settlement proceedings should be assigned to separate magistrate judges.

**14.  Other References:**

The case is not suitable for binding arbitration, a special master at this time, or the Judicial Panel on Multidistrict Litigation.

**15.  Narrowing of Issues:**

Plaintiffs submit that the Second Amended Complaint has significantly narrowed the issues in this case.  Defendants maintain that there will likely be issues that can be narrowed as the litigation unfolds and after a period of further discovery on the merits of Plaintiffs' claims.

**16.  Expedited Trial Procedure:**

1

2

The parties do not believe that this is the type of case appropriate for an expedited trial procedure.

3

**17.  Scheduling:**

4

### PLAINTIFFS

5

6

7

8

9

Plaintiffs believe a trial date sometime in May 2014 (likely Monday the 19th) is appropriate and realistic with a commensurate calendaring of the operative deadlines for a discovery cut-off, designation of experts, motions for summary judgment, etc.  Such dates presently depend on the parties agreeing on a May 2014 proposed trial date.

10

### DEFENDANTS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Defendants do not agree to a trial date of May 19, 2014.  This date fails to contemplate the complex nature of this case and the time the parties will need to litigate the case on the merits.  Plaintiffs' proposed date would have the parties move forward from class certification and, within a period of nine months, complete both fact and expert discovery regarding at least 35 purported class members, including fifteen depositions per side, brief and argue summary judgment, conduct pretrial work, and appear for trial.  But there are several pending matters that bear directly on any schedule governing this litigation.  For example, if CCPOA is allowed to intervene in this matter, CCPOA must participate in any discussions regarding scheduling to protect its interests.  In addition, on August 9, 2013, Plaintiffs filed a motion to strike certain evidence submitted by Defendants in support of their opposition to Plaintiffs' motion for class certification.  Defendants are entitled to respond to Plaintiffs' motion to strike, and argue the matter on September 26, as noticed by Plaintiffs.  The Court, in turn, must have sufficient opportunity to issue its order on class certification, and therein resolve any underlying and related evidentiary issues.  Depending on the Court's ruling, the Federal Rules contemplate that

28

---

either side may appeal an adverse ruling under Rule 23(f), and seek a stay pending resolution of the appeal.

Given the case's procedural posture, proposing a schedule to govern this case going forward is difficult. However, as required by applicable rules, Defendants suggest that the following dates accompany litigation events leading up to trial:

| Date | Event |
|------|-------|
| 8/22/2013 | Hearing on class certification and further CMC |
| 6/26/2014 | Merits discovery cut-off |
| 8/7/2014 | Disclose experts and reports |
| 9/18/2014 | Rebuttal expert reports |
| 11/13/2014 | Expert discovery cut-off |
| 1/15/2015 | Summary judgment deadline |
| 2/26/2015 | Opposition to summary judgment |
| 3/19/2015 | Reply on summary judgment |
| 4/2/2015 | Hearing on summary judgment |
| 5/18/2015 | Pretrial conference |
| 6/1/2015 | Trial |

## 18. <u>Trial</u>:

<u>PLAINTIFFS</u>

Plaintiffs will withdraw their request for a jury trial. Plaintiffs cannot assess the length of the trial until the issues are sorted out through discovery.

<u>DEFENDANTS</u>

Defendants withdraw their request for a jury trial. Depending on the nature and scope of the claims to be tried, Defendants expect a trial to take anywhere from fourteen to thirty court days.

## 19. <u>Disclosure of Non-party Interested Entities and Persons</u>:

<u>PLAINTIFFS</u>

Plaintiffs know of no other entities that may have a financial interest or any other interest in the subject matter in controversy, or in a party to the proceeding, or an interest that could substantially affect the outcome of the proceeding.

DEFENDANTS

Because Defendants work for a governmental entity, they are exempt from the disclosure requirements of Rule 3-16(a) of this District's Civil Local Rules.

**20. Other matters that may facilitate the just, speedy, and inexpensive disposition of this matter.**

PLAINTIFFS

Plaintiffs anticipate there may be further need to go before Magistrate Judge Vadas regarding issues of direct access to our clients at PBSP, including but not limited to access for Plaintiffs' experts, both psychological and medical.  While some access has been permitted, facilitating direct contact with the Plaintiffs continues to be a logistical struggle for Plaintiffs' counsel.

DEFENDANTS

Plaintiffs' counsel have routine contact with the named Plaintiffs.  Plaintiffs receive regular attorney visits.  They correspond with their attorneys through legal mail.  Pursuant to an agreement between counsel, Plaintiffs' counsel get as many as five, one-hour telephone calls with individual Plaintiffs every two weeks.  In advance of a settlement conference held in this matter on June 19, 2013, Pelican Bay, at the instruction of Magistrate Vadas, accommodated a meeting between Plaintiffs' counsel and all ten Plaintiffs, which was unprecedented.  Plaintiffs' experts have had direct access to all ten Plaintiffs.  Indeed, on April 16 and 17, Plaintiffs' mental

health experts, Drs. Craig Haney and Terry Kupers, conducted confidential mental health evaluations of each Plaintiff as well as other SHU inmates.  On April 20 and 21, Plaintiffs' medical expert, Dr. Robert Cohen, conducted medical exams of each Plaintiff.  Direct access to Plaintiffs thus has not been limited.

Defendants otherwise are unaware at this time of matters, other than those set forth above, that would facilitate the just, speedy, and inexpensive disposition of this matter.  To the contrary, Defendants recognize this as a matter of complex litigation to which significant time and resources have been allocated, and will continue to be, to thoroughly litigate Plaintiffs' claims.

DATED: August 15, 2013

LAW OFFICE OF CHARLES CARBONE, ESQ.


By /s/ Charles Carbone_____
    CHARLES CARBONE, ESQ.

Attorneys for Plaintiffs


ANNE BUTTERFIELD WEILLS (SBN 139845)
SIEGEL & YEE
499-14th Street, Suite 300
Oakland, California 94612
Tel: 510.839.1200
Fax: 510.444.6698

GREGORY D. HULL
Email: greg.hull@weil.com
BAMBO OBARO
Email: bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134

1  Tel: (650) 802-3000
   Fax: (650) 802-3100

2

3  CARMEN E. BREMER (*pro hac vice*)
   WEIL, GOTSHAL & MANGES, LLP
4  Email: carmen.bremer@weil.com
   200 Crescent Court, Suite 300
5  Dallas, TX 75201
   Tel: (214) 746-8165
6  Fax: (214) 746-7777

7  RACHEL MEEROPOL (*pro hac vice*)
   Email: rachelM@ccrjustice.org
8  ALEXIS AGATHOCLEOUS (*pro hac vice*)
   Email: aagathocleous@ccrjustice.org
9  JULES LOBEL (*pro hac vice*)
   Email: jll3@pitt.edu
10 CENTER FOR CONSTITUTIONAL RIGHTS
   666 Broadway, 7th Floor
11 New York, NY 10012
   Tel: (212) 614-6432
12 Fax: (212) 614- 6499

13

14 MARILYN S. MCMAHON (SBN 270059)
   Email: marilyn@prisons.org
15 CALIFORNIA PRISON FOCUS
   1904 Franklin Street, Suite 507
16 Oakland, CA 94612
   Tel: (510) 734-3600
17 Fax: (510) 836-7222

18

19

20 CAROL STRICKMAN (SBN 78341)
   Email: carol@prisonerswithchildren.org
21 LEGAL SERVICES FOR PRISONERS WITH
   CHILDREN
22 1540 Market Street, Suite 490
   San Francisco, CA 94102
23 Tel: (415) 255-7036

24

25 *Attorneys for Plaintiffs*

26

27

28

---

DATED: August 15, 2013

KAMALA D. HARRIS
Attorney General of California
WILLIAM C. KWONG
Supervising Deputy Attorney General
JILLIAN R. O'BRIEN
Deputy Attorney General
MARTINE N. D'AGOSTINO
Deputy Attorney General

/s/ Adriano Hrvatin, Esq.
ADRIANO HRVATIN
Deputy Attorney General
*Attorneys for Defendants*