UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

*ORIGINAL*

```
TODD ASHKER, ET AL.            )
                               )
           PLAINTIFFS,         )
                               )
  VS.                          )      NO. C 09-05796 CW
                               )
EDMUND G. BROWN, JR.,          )
ET AL.,                        )      PAGES 1 - 50
                               )
           DEFENDANTS.         )      OAKLAND, CALIFORNIA
_____)      THURSDAY, SEPTEMBER 26, 2013
```

**TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

```
FOR PLAINTIFFS:           CENTER FOR CONSTITUTIONAL RIGHTS
                          666 BROADWAY, SEVENTH FLOOR
                          NEW YORK, NEW YORK  10012
                   BY:  ALEXIS AGATHOCLEOUS, ATTORNEY AT LAW

                          CENTER FOR CONSTITUTIONAL RIGHTS
                          3900 FORBES AVENUE
                          PITTSBURGH, PENNSYLVANIA  15260
                   BY:  JULES LOBEL, ATTORNEY AT LAW

                          CALIFORNIA PRISON FOCUS
                          1904 FRANKLIN STREET, SUITE 507
                          OAKLAND, CALIFORNIA  94612
                   BY:  MARILYN S. MCMAHON, ATTORNEY AT LAW
```

(APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:        RAYNEE H. MERCADO, CSR NO. 8258

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

<pre>
1                 A P P E A R A N C E S (CONT'D.)

2

3    FOR PLAINTIFFS:          WEIL, GOTSHAL & MANGES
                              201 REDWOOD SHORES PARKWAY
4                             REDWOOD SHORE, CALIFORNIA  94065-1134
                        BY:  GREGORY D. HULL, ATTORNEY AT LAW
5

6                             SIEGEL & YEE
                              499 - 14TH STREET, SUITE 220
7                             OAKLAND, CALIFORNIA  94612
                        BY:  ANNE B. WEILLS, ATTORNEY AT LAW
8

9                             LAW OFFICE OF CHARLES CARBONE
                              3128 16TH STREET
10                            SAN FRANCISCO, CALIFORNIA  94103
                        BY:  EVAN C. GREENBERG, ATTORNEY AT LAW
11

12

13   FOR DEFENDANTS:          STATE OF CALIFORNIA
                              OFFICE OF THE ATTORNEY GENERAL
14                            455 GOLDEN GATE AVENUE, SUITE 11000
                              SAN FRANCISCO, CALIFORNIA  94102-7004
15                      BY:  ANDRIANO HRVATIN,
                              MARTINE N D'AGOSTINO,
16                            JILL O'BRIEN, DEPUTY ATTORNEYS GENERAL

17

18                              --OOO--

19

20

21

22

23

24

25
</pre>

3

```
 1   THURSDAY, SEPTEMBER 26, 2013                     2:27 P.M.

 2                   P R O C E E D I N G S

 3          THE CLERK:  WE'RE CALLING C09-5796, ASHKER, ET AL.

 4   VERSUS BROWN, ET AL.

 5       PLEASE STEP FORWARD AND STATE YOUR APPEARANCES FOR THE

 6   RECORD, PLEASE.

 7                   (PAUSE IN THE PROCEEDINGS.)

 8          THE COURT:  SOMEBODY CAN COME UP AND STATE THEIR

 9   APPEARANCE WHILE THE OTHERS ARE SHUFFLING THEIR PAPERS.

10          MR. AGATHOCLEOUS:  GOOD AFTERNOON, YOUR HONOR.  MY

11   NAME IS ALEXIS AGATHOCLEOUS.  I'M WITH CENTER FOR

12   CONSTITUTIONAL RIGHTS.  I REPRESENT THE PLAINTIFFS.  WITH ME

13   TODAY ARE MY --

14          THE COURT:  DID YOU GIVE A CARD TO THE COURT

15   REPORTER?

16          MR. AGATHOCLEOUS:  OKAY.  JULES LOBEL, WHO WILL BE

17   ADDRESSING THE CMC PORTION OF TODAY'S PROCEEDINGS.  I'LL BE

18   ARGUING THE CLASS CERTIFICATION MOTION.  ALSO HERE IS MR. GREG

19   HULL, WHO CAN ANSWER ANY QUESTIONS THE COURT MAY HAVE ABOUT

20   THE CROSS-MOTION TO STRIKE TO THE EXTENT THAT THERE ARE

21   QUESTIONS.

22       AND ALSO AT PLAINTIFFS' TABLE ARE ANNE WEILLS, MARILYN

23   MCMAHON, AND EVAN GREENBERG.

24          MR. HRVATIN:  GOOD AFTERNOON, YOUR HONOR.  ADRIANO

25   HRVATIN HERE FOR THE DEFENDANTS.  WITH ME AT COUNSEL TABLE IS
```

1    JILL O'BRIEN AND MARTIN D'AGOSTINO FROM THE ATTORNEY GENERAL'S

2    OFFICE.

3              **THE COURT:**  GOOD AFTERNOON.

4        SO THIS IS ON FOR MOTION FOR CLASS CERTIFICATION, AND YOU

5    ALSO HAVE THIS ISSUE ABOUT THE MAGISTRATE JUDGE'S ORDER AND

6    THE MOTION TO STRIKE.  ON THAT, IT SEEMS CLEAR TO ME --

7    MAYBE -- WELL, SEEMS CLEAR TO ME THAT WHAT THE MAGISTRATE

8    JUDGE HAD IN MIND WAS TO SAY THAT WHILE THE PLAINTIFFS

9    INITIALLY WANTED, WHAT, 411 SETS OF DISCOVERY, HE WASN'T GOING

10   TO ALLOW THAT.  BUT -- AND THAT HE WOULD ALLOW THE PLAINTIFFS

11   TO PICK 25 PEOPLE.  BUT AT THE SAME TIME IF DEFENDANTS WERE

12   GOING TO RELY ON SOMEONE ELSE, THAT IN ALL FAIRNESS, THE

13   DEFENDANTS WOULD PROVIDE THE DISCOVERY AS TO THE PEOPLE UPON

14   WHOM IT WISHED TO RELY.

15       THAT BEING SAID, IT SEEMS THAT THEY DID, ALTHOUGH ONLY

16   SHORTLY BEFORE YOUR REPLY WAS DUE.  IF YOU FOUND SOMETHING OUT

17   IN THERE THAT WOULD HAVE AFFECTED YOUR REPLY, YOU COULD

18   CERTAINLY TELL ME NOW OR, IF ABSOLUTELY NECESSARY, I SUPPOSE

19   YOU COULD FILE SOMETHING LATER.

20       SO THAT WOULD MEAN THAT I WOULD NOT BE OVERTURNING THE

21   MAGISTRATE JUDGE'S RULING, NOR WOULD I BE STRIKING THOSE

22   DECLARATIONS.  ALL I MIGHT DO WOULD BE TO ALLOW YOU SOMETHING

23   FURTHER TO ADDRESS THE DISCOVERY, IF THAT'S REALLY NECESSARY.

24       ON THE CLASS CERTIFICATION -- SO YOU'RE ONLY TALKING ABOUT

25   THIS -- PEOPLE IN THE SHU WHO ARE THERE FOR -- BECAUSE THEY'VE

1   BEEN VALIDATED AS GANG MEMBERS.  SO ARE YOU SAYING THAT'S WHY

2   AND THE ONLY REASON WHY EVERYONE WHO'S IN THERE IS IN THERE?

3   OR ARE THERE OTHER PEOPLE THAT WE'RE NOT TALKING ABOUT WHO ARE

4   IN THERE FOR OTHER REASONS, SUCH AS A DISCIPLINARY MATTER,

5   CRIME COMMITTED IN PRISON, OR THAT SORT OF THING.

6           MR. AGATHOCLEOUS:  WELL, YOUR HONOR, FOR PURPOSES OF

7   OUR PROPOSED DUE PROCESS CLASS, WE DO INDEED ASK THE COURT TO

8   CERTIFY A CLASS OF INDIVIDUALS WHO ARE SERVING INDETERMINATE

9   SENTENCES AT THE PELICAN BAY SHU AS A RESULT OF GANG

10  VALIDATION.

11          THE COURT:  AND THAT ALONE.

12          MR. AGATHOCLEOUS:  AND THAT ALONE.

13          THE COURT:  IF THEY WERE GANG VALIDATED AND HAD SOME

14  OTHER DISCIPLINARY PROBLEM, THEN YOU WOULDN'T -- THEN THEY

15  WOULDN'T BE IN YOUR CLASS, I GUESS.

16          MR. AGATHOCLEOUS:  WELL, TO THE EXTENT THAT THEY ARE

17  THERE INDEFINITELY, THAT WOULD BE BECAUSE -- MY UNDERSTANDING

18  WOULD BE THAT WOULD BE BECAUSE OF GANG VALIDATION.  THOSE WHO

19  ARE AT THE SHU FOR DISCIPLINARY REASONS ARE THERE FOR A FINITE

20  PERIOD OF TIME.  SO THE DUE PROCESS CLASS WOULD ENCOMPASS THAT

21  BROADER GROUP OF PRISONERS.

22      BUT THEN THE SUBCLASS THAT WE ASK THE COURT TO CERTIFY,

23  THE EIGHTH AMENDMENT SUBCLASS, WOULD CONSTITUTE ANY PRISONER

24  WHO HAS BEEN AT THE PELICAN BAY SHU FOR A DECADE OR MORE.

25          THE COURT:  BUT SEE, THAT'S MY LOGICAL PROBLEM WITH

1    IT.  IF IT'S A SUBCLASS, IT'S NECESSARILY A SUBSET, A SMALLER

2    GROUP OF THE LARGER GROUP.  AND IF THE LARGER GROUP IS ONLY

3    PEOPLE WHO ARE THERE FOR GANG VALIDATION REASONS, THEN THE

4    SUBSET NECESSARILY WOULD ALSO BE PEOPLE WHO ARE ONLY THERE FOR

5    GANG VALIDATION REASONS AND WOULDN'T REACH ANYONE WHO WAS

6    THERE FOR SOME OTHER REASON.

7          **MR. AGATHOCLEOUS:**  I UNDERSTAND.

8          **THE COURT:**  THAT'S WHY I ASKED WHETHER THERE IS

9    ANYBODY THERE WHO'S THERE FOR SOME OTHER REASON.  MAYBE THERE

10   ISN'T AND THAT'S WHY WE DON'T HAVE A PROBLEM.

11         **MR. AGATHOCLEOUS:**  OKAY.  THAT'S A GREAT QUESTION,

12   YOUR HONOR.

13       I'M NOT ACTUALLY AWARE AT THIS POINT IF THERE ARE

14   PRISONERS AT THE PELICAN BAY SHU WHO HAVE BEEN THERE FOR MORE

15   THAN A DECADE FOR A REASON OTHER THAN GANG VALIDATION.

16   SOMETHING THAT WE CAN ASCERTAIN THROUGH DISCOVERY, BUT AT THIS

17   POINT, WE DO NOT KNOW FOR SURE.

18         **THE COURT:**  DO YOU KNOW?

19         **MR. HRVATIN:**  AS TO WHETHER THERE IS ANYONE WHO'S

20   BEEN IN THE SHU FOR LONGER THAN TEN CONTINUOUS YEARS FOR A

21   REASON OTHER THAN GANG VALIDATION?

22         **THE COURT:**  YES.

23         **MR. HRVATIN:**  YOUR HONOR, I'M NOT SURE.  I MEAN,

24   THERE ARE INMATES WHO, SUBJECT TO THE DISCIPLINARY SYSTEM, CAN

25   SERVE CONSECUTIVE PERIODS OF -- OF SHU TERMS.  I'M -- I'M

 1    NOT -- AND I CAN TELL YOUR HONOR THE WHOLE TIME THAT WE'VE

 2    BEEN INVOLVED IN -- IN THIS CASE, WE'VE BEEN LOOKING AT IT

 3    FROM THE CONTEXT OF THE GANG-VALIDATED INMATE HOUSED IN THE

 4    SHU FOR A PERIOD OF TIME.  THAT'S WHAT ALL THE DISCOVERY HAS

 5    FOCUSED ON.  THAT'S HOW WE -- THAT'S HOW WE'VE POSTURED --

 6         **THE COURT:**  THIS IS JUST A FACTUAL QUESTION.  ARE

 7    THERE PEOPLE IN THE SHU WHO ARE THERE FOR SOME REASON OTHER

 8    THAN OR IN ADDITION TO GANG VALIDATION?  IT'S JUST A FACT

 9    QUESTION.

10         **MR. HRVATIN:**  OH, THERE IS INDEED.  YEAH, THERE --

11         **THE COURT:**  I THOUGHT SO.

12         **MR. HRVATIN:**  YEAH, THERE IS INDEED.  NOW, WHETHER

13    THEY'VE BEEN IN THE SHU FOR A PERIOD OF TEN CONTINUOUS YEARS

14    IS SOMETHING THAT WE HAVEN'T LOOKED AT.

15         **THE COURT:**  YEAH, BUT THE DUE PROCESS CLASS YOU

16    AREN'T LIMITING TO PEOPLE WHO HAVE BEEN THERE LONGER TEN YEARS

17    OR YOU ARE?

18         **MR. AGATHOCLEOUS:**  NO, WE'RE NOT LIMITING IT TO

19    TEN-PLUS YEARS.  THAT WOULD BE ANY PRISONER SERVING AN

20    INDETERMINATE TERM IN THE SHU AS A RESULT OF GANG VALIDATION.

21    SO THAT COULD, INDEED, ENCOMPASS PEOPLE WHO HAVE BEEN

22    INCARCERATED IN THE SHU FOR LESS THAN TEN YEARS.

23         **THE COURT:**  OKAY.  AND SO THOSE PEOPLE COULD HAVE

24    BEEN THERE FOR THEIR SHORTER TERM FOR TWO REASONS, GANG

25    VALIDATION AND SOME DISCIPLINARY VIOLATION.

8

1      **MR. AGATHOCLEOUS:**  THAT COULD WELL BE, YOUR HONOR.

2  SO I SUPPOSE WHAT WOULD HAPPEN --

3                  (SIMULTANEOUS COLLOQUY.)

4      **THE COURT:**  -- DIFFERENT QUESTION BECAUSE THE --

5  GANG -- IF THEY'RE THERE FOR TWO SEPARATE BUT EQUAL

6  INDEPENDENT REASONS, THEN ONE WOULD HAVE TO LOOK AT BOTH

7  PROCESSES AND NOT JUST THE PROCESS THAT GOT THEM VALIDATED.

8  THEY'D ALSO HAVE THE OTHER PROCESS THAT GOT THEM IN THERE FOR

9  SOME DISCIPLINARY VIOLATION.

10      **MR. AGATHOCLEOUS:**  RIGHT.  BUT WHAT WOULD BE

11  DIFFERENT, YOUR HONOR, IS THAT WHAT THAT WOULD UNDO -- IF THE

12  COURT WERE TO FOUND (SIC) THAT THE PROCEDURES THAT WERE USED

13  TO SEND THEM TO THE SHU ON THE BASIS OF GANG VALIDATION WERE

14  INDEED UNCONSTITUTIONAL, WHAT THAT WOULD IMPACT WOULD BE THEIR

15  INDEFINITE SHU TERM.  RIGHT?

16      SO IF THEY WERE SERVING A SPECIFIC AMOUNT OF TIME IN THE

17  SHU AS THE RESULT OF A DISCIPLINARY VIOLATION FOR WHICH THEY

18  RECEIVED ADEQUATE PROCESS, THAT'S ONE THING.  BUT IF THEY'RE

19  SERVING AN INDEFINITE SHU TERM AS A RESULT OF CONSTITUTIONALLY

20  INFIRM PROCEDURES BY WHICH THEY WERE VALIDATED AS GANG

21  ASSOCIATES OR MEMBERS, THAT'S QUITE ANOTHER.

22      **THE COURT:**  OKAY.  SO THESE NEW PROCEDURES -- I

23  FORGET WHAT THEY CALL THEM -- STG'S OR SOME ACRONYM.

24      **MR. HRVATIN:**  THAT'S RIGHT.  THE STG PROGRAM.

25      **THE COURT:**  YEAH.  SO HOW DO YOU PROPOSE TO DEAL WITH

1   THAT?  I MEAN, I SAID THE LAST TIME THAT I DIDN'T THINK A

2   PROCEDURE THAT WAS NOT -- THAT WAS BY DEFINITION ONLY FOR A

3   SHORT PERIOD WOULD NECESSARILY MOOT THE CASE OR ANYTHING LIKE

4   THAT, BUT IT DOES HAVE AN EFFECT.  AND SO I'M WONDERING HOW

5   YOU DEAL WITH YOUR CLASS DEFINITION GIVEN THAT YOU MIGHT NOW

6   OR IN THE FUTURE HAVE SOME PEOPLE WHO ARE THERE BECAUSE THEY

7   WENT THROUGH AN STG PROCEDURE IN ADDITION TO OR INSTEAD OF THE

8   OLD PROCEDURE.

9       HOW WOULD YOU HANDLE ALL THAT IN TERMS OF YOUR CLASS

10  DEFINITION AND PEOPLE SORT OF COMING IN AND OUT OF THE CLASS?

11          **MR. AGATHOCLEOUS:**  RIGHT.  SO, WELL, YOUR HONOR IS

12  RIGHT TO IDENTIFY THIS -- THIS POINT AS A POINT OF CONTENTION.

13  IN FACT, IT IS THE EXCLUSIVE POINT OF A (SIC) CONTENTION

14  AROUND THE DEFINITION OF OUR DUE PROCESS CLASS.  DEFENDANTS

15  HAVE NOT DISPUTED OUR SUBMISSIONS REGARDING OUR OTHER DUE

16  PROCESS CONTENTIONS.

17      SO THEY DO FOCUS ON THE PILOT PROGRAM AND ARGUE THAT IT

18  UNDERMINES COMMONALITY AND TYPICALITY FOR PURPOSES OF RULE 23.

19  BUT YOUR HONOR, JUST AS DEFENDANT'S SELF-SERVICING PROP- --

20  SELF-SERVING PROMISES OF CHANGE DID NOT ESTABLISH MOOTNESS ON

21  THEIR MOTION TO DISMISS, THEY DON'T DEFEAT CLASS CERTIFICATION

22  FOR FOUR SEPARATE REASONS.

23      FIRST OF ALL, DEFENDANTS HAVE NOT SUBMITTED ANY EVIDENCE

24  WITH THEIR PAPERS THAT -- THAT EXPLAIN HOW THIS PILOT PROGRAM

25  IS OPERATING AT THE PELICAN BAY SHU.  THEY OFFER US NO NUMBERS

1    ABOUT HOW MANY PELICAN BAY SHU PRISONERS ARE IN THE PROGRAM OR

2    ANY MEANINGFUL EVIDENCE ABOUT WHAT PROCESS THEY WILL RECEIVE

3    PURSUANT TO THIS PROGRAM.

4          AND WHAT WE DO KNOW --

5                    (SIMULTANEOUS COLLOQUY.)

6          **THE COURT:**  -- BUT THEY SAID THEY SUBMITTED A HUNDRED

7    PAGES OF EXPLANATION OF THE PROGRAM.  DOESN'T IT SAY IN THERE

8    WHAT THE PROCESS IS?

9          **MR. AGATHOCLEOUS:**  IT -- IT LEAVES SHROUDED IN

10   MYSTERY, YOUR HONOR, WHAT WILL HAPPEN TO THOSE PRISONERS WHO

11   ARE READY (SIC) AT THE SHU.  WHAT WE DO KNOW IS THAT -- WHAT

12   THEY TELL US IS THAT SINCE THE PROGRAM WAS LAUNCHED IN OCTOBER

13   OF LAST YEAR, THEY HAVE REVIEWED 10 PERCENT OF SHU PRISONERS

14   STATE WIDE.

15         **THE COURT:**  YEAH, I'M NOT SO INTERESTED IN THE

16   NUMBERS.  I'M INTERESTED IN THE MECHANICS OF HOW ONE WOULD

17   HANDLE IT, ASSUMING THAT THEY GO FORWARD AND DO THESE THINGS

18   TO SOME PEOPLE, AND WE'RE GOING FORWARD WITH A LAWSUIT, HOW WE

19   DEAL WITH PEOPLE WHOSE FACTS CHANGE IN THE MIDDLE OF IT.

20                   (SIMULTANEOUS COLLOQUY.)

21         **THE COURT:**  -- SUBCLASSES HERE?  WOULD THEY GO OUT OF

22   THE CLASS?  OR WHAT WOULD HAPPEN TO THEM?

23         **MR. AGATHOCLEOUS:**  WELL, YOUR HONOR, THIS -- THIS

24   SORT OF -- THIS SCENARIO IS NOT WITHOUT PRECEDENT.  THIS IS

25   EXACTLY WHAT HAPPENED IN WILKINSON V. AUSTIN, WHICH WENT

1    BEFORE THE SUPREME COURT ALSO ON A DUE PROCESS ISSUE.  THAT

2    CASE WAS ALWAYS CLASS-ACTION PROCEEDING.  AND DURING THE

3    PENDENCY OF THAT PROCEEDING, A HIGHER (SIC) PROMULGATED NEW

4    PROCEDURES IN THE FORM OF POLICY, NOT AN INTERIM PILOT PROGRAM

5    BUT ACTUALLY PROMULGATED POLICY DURING THE PENDENCY OF THE

6    LITIGATION, AS I SAID, AND THE CASE WENT AHEAD AS A CLASS

7    ACTION NONETHELESS WITHOUT AMENDMENT OF THE PLEADINGS AND

8    WITHOUT REDEFINITION OF THE CLASS.

9        SO WHAT THE SUPREME COURT DID IN THAT CASE WAS RULED ON

10   THE CONSTITUTIONALITY OF -- OF THE NEW PROCEDURE BASED ON ITS

11   TEXT, BASED ON THE VARIOUS FORUMS THAT ACCOMPANIED THE POLICY,

12   AND BASED ON THE PARTIES' REPRESENTATIONS AT ORAL ARGUMENT AND

13   IN THEIR BRIEFING.

14       SO IF, IN FACT, THE PILOT PROGRAM IS INSTITUTED AS

15   PERMANENT POLICY AT SOME POINT, AS DEFENDANTS INDICATE THAT IT

16   WILL, THEN ALL MEMBERS OF THE CLASS WILL ESSENTIALLY BE

17   SUBJECT TO ITS PROVISIONS.  AND --

18            THE COURT:  WELL, BUT EVEN BEFORE THAT, SOME MEMBERS

19   OF THE CLASS MAY BE SUBJECT TO ITS PROVISION TOMORROW OR THE

20   NEXT DAY OR NEXT MONTH OR THERE MIGHT BE A NEW CLASS MEMBER

21   WHO GETS THE NEW PROCEDURE OR SOME CLASS MEMBER MIGHT GET

22   INVOLVED IN THE STEP-DOWN BUSINESS.

23       I'M JUST SAYING THESE THINGS CAN HAPPEN DURING THE

24   LITIGATION, AND ONE OF THE CONSIDERATIONS IS MANAGEMENT.  AND

25   I'M WONDERING HOW I WOULD MANAGE A CLASS THAT HAD PEOPLE

```
 1    COMING IN AND OUT AND HAVING DIFFERENT FACTS, HAVING DIFFERENT

 2    SORTS OF PROCESS APPLIED TO THEM.

 3         MR. AGATHOCLEOUS:  WELL, YOUR HONOR, I WOULD SUBMIT

 4    THAT EVEN IF THE COURT WERE TO CONSIDER THE PILOT PROGRAM IN

 5    TERMS OF DECIDING THE CLASS CERTIFICATION DECISION, THERE IS

 6    JUST NO EVIDENCE THAT IT RESOLVES PLAINTIFFS' CLAIMS.  AND, IN

 7    FACT, IT SEEMS, BASED ON THE TEXT, THAT THE SAME QUESTIONS

 8    REMAIN.

 9         WHAT THE --

10              (SIMULTANEOUS COLLOQUY.)

11         THE COURT:  -- NOT ADDRESSING MY ISSUE, BUT LET'S

12    MOVE ON.

13         SO THE -- I'M GETTING THE FEELING THAT -- WELL, THERE'S A

14    LOT OF CASE LAW OUT THERE FROM MANY, MANY CASES OVER THE YEARS

15    ABOUT THE AMOUNT OF PROCESS THAT NEEDS TO BE GIVEN TO PEOPLE

16    GOING INTO -- MAYBE THEY'RE MOSTLY AD-SEG BUT MAKES SOME

17    PROBABLY ON THE SHU AS WELL.  AND YOU, OF COURSE, CAN ARGUE

18    THAT THOSE CASES ARE WRONG.  I WOULDN'T BE ABLE TO OVERRULE

19    THEM BECAUSE THEY'RE NINTH CIRCUIT CASES.  EVEN A PANEL

20    WOULDN'T BE ABLE TO, BUT I GUESS YOU CAN MAKE AN ARGUMENT THAT

21    THE LAW SHOULD CHANGE.

22         BUT THE ONE ARGUMENT THAT YOU SEEM TO BE MAKING THAT ISN'T

23    THAT IS THAT WOLFF APPLIES, IT SEEMS, BECAUSE OF THE CHANGE IN

24    THE LAW THAT SAYS YOU CAN'T EARN GOOD TIME CREDITS WHILE IN

25    SHU.
```

1       AND MY QUESTION THERE IS IT SEEMS TO ME THE PRISON

2   DISCIPLINE CASES TALK ABOUT THE TAKING AWAY OF GOOD TIME

3   THAT'S ALREADY EARNED.  LIKE, SAY, I'VE ALREADY EARNED A MONTH

4   OF GOOD TIME, AND THEY TAKE IT AWAY.  NOW I HAVE NO GOOD TIME.

5   THAT'S ONE THING.  BUT TO SAY I CAN'T EARN GOOD TIME IN THE

6   FUTURE AND THAT THERE HAS TO BE A WOLFF HEARING IN -- IN

7   DECIDING TO PUT ME INTO A PLACE WHERE I WON'T IN THE FUTURE BE

8   ABLE TO EARN GOOD TIME, I JUST DON'T KNOW IF THERE'S ANY CASE

9   LAW THAT INDICATES THAT THAT'S CONSIDERED AS DISCIPLINARY.

10       IS THERE ANY?

11           **MR. AGATHOCLEOUS:**  WELL, YOUR HONOR, A COUPLE OF

12   POINTS.  NUMBER ONE, THIS IS AN ARGUMENT THAT DEFENDANTS MADE

13   ON THEIR MOTION TO DISMISS.  THIS -- THIS ISSUE WAS BRIEFED ON

14   THE MOTION TO DISMISS.  IT WAS -- IT CAME UP AT ORAL ARGUMENT

15   AT THE MOTION TO DISMISS, AND THE COURT NONETHELESS REFUSED TO

16   GRANT THAT MOTION TO DISMISS.  SO MY UNDERSTANDING IS THAT

17   THOSE ALLEGATIONS REMAIN ACTIVE ALLEGATIONS IN THIS CASE.

18       THAT SAID, WILKINSON V. AUSTIN DOES NOT -- I DON'T BELIEVE

19   THAT WILKINSON V. AUSTIN DRAWS A STRICT DELINEATION BETWEEN

20   WHETHER OR NOT THE SORT OF -- THE GIVING UP OF GOOD TIMES

21   (SIC) CREDITS NEEDS TO BE RETROSPECTIVE OR PROSPECTIVE.

22       SO IT IS OUR CONTENTION THAT THE FACT THAT GOING FORWARD,

23   SHU INMATES MAY NOT EARN GOOD TIME CREDITS AS OF THE DATE OF

24   THESE AMENDMENTS TRANSFORMED SHU CONFINEMENT FROM AN

25   ADMINISTRATIVE MEASURE TO A DISCIPLINARY MEASURE AND ENTITLED

1   EVERY SHU PRISONER TO A <u>WOLFF</u> HEARING AS OF THAT DATE.

2           **THE COURT:**  I'M -- I LOST YOU A LITTLE BIT THERE.

3   WAS THERE A CASE INVOLVED THERE, OR IS THIS JUST YOUR

4   ARGUMENT?

5           **MR. AGATHOCLEOUS:**  <u>WILKINSON</u> ITSELF --

6           **THE COURT:**  OH, YOU'RE TALKING ABOUT <u>WILKINSON</u>.

7   OKAY.  NEVER MIND.

8           **MR. AGATHOCLEOUS:**  YES.

9           **THE COURT:**  SO I HAVE A CONCERN ABOUT YOUR CLASS

10  DEFINITION, WHICH IS SLIGHTLY DIFFERENT IN YOUR COMPLAINT

11  VERSUS YOUR MOTION.  BUT WHAT IT SAYS IS ALL INMATES ON -- I'M

12  TALKING ABOUT THE DUE PROCESS CLASS NOW -- SERVING

13  INDETERMINATE SENTENCES AT THE PELICAN BAY SHU ON THE BASIS OF

14  GANG VALIDATION, NONE OF WHOM HAVE BEEN OR WILL BE AFFORDED

15  MEANINGFUL REVIEW, AND THEN YOU WANT TO ADD "OR PROCEDURALLY

16  ADEQUATE REVIEW" OF THEIR CONFINEMENT.

17      SO WHAT I'M TRYING TO FIGURE OUT IS, DO YOU MEAN TO SAY

18  YOU ONLY WANT THE INMATES WHO DIDN'T GET SUCH REVIEW, OR YOU

19  WANT ALL THE INMATES AND YOU ARE SORT OF STATING THAT NONE OF

20  THEM GOT THE REVIEW?

21          **MR. AGATHOCLEOUS:**  THE LATTER, YOUR HONOR.

22          **THE COURT:**  SO CAN'T WE JUST SAY ALL THE INMATES?

23          **MR. AGATHOCLEOUS:**  WHO ARE THERE AS A RESULT OF GANG

24  VALIDATION, YES.

25          **THE COURT:**  'CAUSE OTHERWISE IT SOUNDS LIKE YOU'RE

```
1   SAYING YOU ONLY WANT THE ONES WHO DIDN'T GET DUE PROCESS, AND

2   THAT SOUNDS LIKE SOMETHING ONE COULDN'T DECIDE ON A CLASS

3   BASIS BECAUSE THEN YOU'D HAVE TO SAY -- LOOK AT EACH ONE TO

4   SEE IF THEY --

5                    (SIMULTANEOUS COLLOQUY.)

6          MR. AGATHOCLEOUS:  -- I UNDERSTAND, YOUR HONOR, AND I

7   APOLOGIZE IF WE PHRASED THE CLASS INARTFULLY, BUT WE DO MEAN

8   TO SAY AND ALLEGE, AS WE DO, THAT ALL SHU PRISONERS WHO ARE

9   THERE AS A RESULT OF GANG VALIDATION HAVE NOT RECEIVED

10  CONSTITUTIONALLY ADEQUATE PROCESS --

11         THE COURT:  OKAY.

12         MR. AGATHOCLEOUS:  -- THAT ARE ENCOMPASSED BY OUR

13  MOTION.

14         THE COURT:  OKAY.

15    ALL RIGHT.  SO IS THERE ANYTHING ELSE YOU WANT TO ADD ON

16  YOUR MOTION?

17         MR. AGATHOCLEOUS:  WELL, DOES YOUR HONOR HAVE ANY

18  QUESTIONS ABOUT THE EIGHTH AMENDMENT SUBCLASSES?  I'M HAPPY TO

19  ANSWER ANYTHING THE COURT MAY HAVE, BUT OTHERWISE, WE WILL

20  REST ON OUR PAPERS.

21         THE COURT:  OKAY.  DID YOU WANT TO RESPOND?

22         MR. HRVATIN:  YES, YOUR HONOR.  THANK YOU.

23    GOOD AFTERNOON.  I THINK THE RELIANCE ON WILKINSON DOESN'T

24  GET THE PLAINTIFFS AS FAR AS THEY WOULD LIKE TO GET AT THIS

25  STAGE OF THE CASE.  WE'RE TALKING ABOUT CLASS CERTIFICATION,
```

```
 1    AND WE'RE TALKING ABOUT IT IN THE FIRST INSTANCE WITH RESPECT

 2    TO THE COMPONENTS REQUIRED UNDER RULE 23(A), AND WE MADE A

 3    THRESHOLD CHALLENGE AS TO COMMONALITY.  WE ARE NOT DEALING

 4    WITH A SINGLE UNIFORM POLICY THAT APPLIES ACROSS THE ENTIRE

 5    PROPOSED DUE PROCESS CLASS.

 6             THE COURT:  BECAUSE OF STG.

 7             MR. HRVATIN:  CORRECT.

 8             THE COURT:  YEAH.  WELL, THAT'S WHAT I WAS TRYING TO

 9    GET AT.  IT SEEMS LIKE THERE SHOULD BE A WAY TO DEAL WITH

10    THAT, LIKE SAYING THE CLASS IS PEOPLE AREN'T GETTING STG --

11             MR. HRVATIN:  EXCLUDED.  EXCLUDED FROM THE --

12                     (SIMULTANEOUS COLLOQUY.)

13             THE COURT:  -- OR HAVING TWO CLASSES, THE ONES WHO

14    DON'T GET STG PROCESSES AND THE ONES WHO DO GET THEM IF

15    THERE'S -- I GUESS IT WOULD HAVE TO ALMOST BE AN AMENDED

16    COMPLAINT TO SAY THAT EVEN THE STG PROCESS IS -- ARE NO GOOD

17    EITHER.  BUT WHETHER WE HAD SUCH A THING OR NOT AND IT SEEMS

18    LIKE -- AND THIS IS WHAT I WAS TRYING TO GET AT -- THAT WE

19    COULD HAVE TWO CLASSES.

20             MR. HRVATIN:  BUT THAT'S WHAT WOULD HELP US FOCUS

21    CERTAINLY, DISCOVERY, THE LITIGATION GOING FORWARD ON A

22    CLASS-WIDE BASIS AS TO WHICH --

23                     (SIMULTANEOUS COLLOQUY.)

24             THE COURT:  -- BOTH.

25             MR. HRVATIN:  -- BASED ON THE DEFINITION THAT I THINK
```

1    YOU CLARIFIED JUST MOMENTS AGO, BUT AS IT WAS STAYED IN THE

2    COMPLAINT, AS WELL AS MODIFIED SLIGHTLY IN THE -- IN THE CLASS

3    CERTIFICATION MOTION, IT'S NOT CLEAR.  AND --

4           **THE COURT:**  WHAT'S NOT CLEAR?

5           **MR. HRVATIN:**  THE PROCESS THROUGH WHICH THEY'RE

6    CHALLENGING FROM A DUE PROCESS POINT OF VIEW, EXCEPT THAT

7    IT -- IT DOES NOT -- TO THE EXTENT IT DOES NOT CONTEMPLATE THE

8    EXISTENCE AND APPLICATION OF THE STG PROGRAM, THE FOCUS IS ON

9    TITLE 15.  THAT THE DEPARTMENT IS NOW APPLYING A DIFFERENT

10   STANDARD HAS TO BE ACCOUNTED FOR IN THE CURRENT CLASS

11   DEFINITION.  IT DOES NOT.

12          **THE COURT:**  YEAH, WELL --

13          **MR. HRVATIN:**  OR AT LEAST IT DOESN'T -- IT DOESN'T --

14   IT DOESN'T, YOUR HONOR, AND MEET COMMONALITY.

15          **THE COURT:**  YEAH, SO WE COULD JUST DEFINE IT AS

16   PEOPLE WHO ARE PUT IN UNDER TITLE 15 PROCEDURES AND HAVE NOT

17   BEEN REVIEWED UNDER STG PROCEDURES.

18          **MR. AGATHOCLEOUS:**  IF -- IF THAT'S HOW THEY WOULD

19   LIKE TO PROCEED, I DON'T THINK THAT BURDEN IS ON US TO DRAFT

20   THEIR CLASS DEFINITION.

21          **THE COURT:**  WELL, OR I COULD JUST DECIDE THAT THAT'S

22   WHAT IT IS WHETHER THEY LIKE IT OR NOT.

23          **MR. HRVATIN:**  I'LL TAKE IT FROM YOU, YOUR HONOR?

24          **THE COURT:**  I MEAN, I'D BE INTERESTED TO HEAR IT --

25   WHY OR HOW YOU MIGHT THINK THAT WOULDN'T WORK.  BUT IT STRIKES

1    ME THAT IT WOULD.

2        I MEAN, IF YOU GOT TO THE POINT WHERE YOU'VE GIVEN

3    EVERYONE A NEW HEARING UNDER THE STG PROCEDURES AND THERE WAS

4    NOBODY LEFT WHO WAS THERE ONLY BASED ON TITLE 15, I SUPPOSE

5    THAT WOULD ANSWER ITS OWN QUESTION.

6            **MR. HRVATIN:**  IT DOES, YOUR HONOR, BECAUSE --

7            **THE COURT:**  UNLESS THEY -- YOU KNOW, UNLESS THEY

8    BRING AN AMENDED COMPLAINT SAYING THE STG PROCEDURES ARE NO

9    GOOD EITHER, IN WHICH CASE THEN WE WOULD HAVE A WHOLE CLASS OF

10   PEOPLE WHO GOT THERE BY THE STG ROUTE AND WE'D DEAL WITH IT

11   THAT WAY.

12       AND IN THE MEANTIME, IT SEEMS LIKE WE JUST HAVE TWO GROUPS

13   AND PEOPLE MIGHT --

14           **MR. HRVATIN:**  MOVE FROM ONE TO THE NEXT BECAUSE

15   THE -- THE TITLE 15 DUE PROCESS CLASS IS CHANGING DAILY AS THE

16   STG PROGRAM CONTINUES TO BE IMPLEMENTED.  THERE'S THE RELATED

17   CASE-BY-CASE REVIEWS THAT CONTINUE TO HAPPEN AT PELICAN BAY AS

18   WELL AS THE OTHER INSTITUTIONS THROUGHOUT CALIFORNIA THAT HAVE

19   SHU UNITS.  THE -- IT'S CHANGING.  THE CLASS IS CHANGING, AND

20   IT'S CHANGING UP AT PELICAN BAY.

21           **THE COURT:**  YEAH.  I MEAN, IT'S -- THE PROCESS THAT

22   GET YOU IN THERE ARE REALLY WHAT THEIR AIMED AT.  I'M NOT SURE

23   THAT IF SOMEBODY, THEN, ONCE THEY GOT IN ON A TITLE 15

24   PROCESS, THEN STARTED GETTING OUT ON A STEP-DOWN PROCESS, THAT

25   WOULDN'T NECESSARILY MOOT THE TITLE 15 -- THE ATTACK ON THE

1    TITLE 15 PROCESS, UNLESS THEY ACTUALLY GOT OUT INTO THE

2    GENERAL POPULATION.  THEN THEY WOULD NO LONGER BE A CLASS

3    MEMBER, SO THAT WOULD SOLVE THAT PROBLEM.

4         **MR. HRVATIN:**  YES.  I MEAN, IT WOULD -- IT WOULD

5    SOLVE -- WELL, I -- I THINK --

6         **THE COURT:**  UNLESS YOU WOULD SAY THE STEP-DOWN

7    PROCEDURES WOULD SOMEHOW MOOT OR REMEDY THE FACT THAT THEY GOT

8    IN THERE UNDER POOR PROCEDURES IN THE FIRST PLACE BUT NOW

9    THAT'S OKAY BECAUSE SINCE THEY GOT IN, THEY GOT SOMETHING

10   THROUGH THE STEP-DOWN PROCEDURE THAT SOMEHOW REMEDIED IT.

11   IT'S NOT CLEAR TO ME THAT THAT'S HOW IT WORKS, BUT --

12        **MR. HRVATIN:**  OUR POSITION WOULD BE THAT THE CHANGE

13   IN PROCESS WOULD HAVE THE LEGAL EFFECT OF MOOTING OUT THE

14   TITLE-15-BASED CLAIM.  NOW, THAT'S NOT --

15        **THE COURT:**  NOT NECESSARILY.  DEPENDS ON WHAT YOU DO

16   IN THE STEP DOWN.

17        **MR. HRVATIN:**  THAT'S -- THAT'S TRUE, AND WE WOULD --

18   WE'D BE PREPARED TO PRESENT THAT TO THE COURT.  IT'S NOT

19   BEFORE YOUR HONOR AT THIS TIME, BUT FROM OUR CURRENT

20   LITIGATION, PERSPECTIVE, THAT'S -- THAT WOULD BE OUR POSITION,

21   AND -- AND WHEN -- AS THE COURT ACKNOWLEDGED WHEN WE WERE

22   BEFORE YOUR HONOR LAST TIME, GIVEN THE PILOT NATURE OF THE --

23   THE MANNER IN WHICH THE STG PROGRAM WAS INITIALLY IMPLEMENTED,

24   THE DEPARTMENT HAS EVERY FULL INTENTION, IS DRAFTING THE

25   REGULATIONS, THEY ARE SUBSTANTIALLY DRAFTED WITH THE FULL

```
1    INTENTION OF PROMULGATING THOSE THROUGH THE APA IN SHORT

2    ORDER -- THAT THE COURT IN -- POTENTIALLY ANTICIPATED IT WAS

3    SOMETHING THAT WE WERE GOING TO HAVE TO DEAL WITH BY WAY OF

4    THE INTERPLAY BETWEEN TITLE 15 AND THE STG PROGRAM FOR

5    PURPOSES OF -- OF STANDING TO PURSUE THE CLAIM -- THE SUBJECT

6    MATTER JURISDICTION TO PURSUE THE CLAIM.

7         AND WE CAN PRESENT THAT WHEN WE'RE -- WHEN WE'RE READY TO

8    GO FORWARD ON THAT.  BUT THAT'S -- THAT'S WHERE WE WOULD SEE

9    THIS GOING.

10             THE COURT:  OKAY.

11        SO YOU WOULD NOT HAVE A PROBLEM SORT OF AS A MATTER OF

12   FORM TO DEFINING THE CLASS BY DROPPING THAT CLAUSE THAT WE

13   WERE TALKING ABOUT?

14             MR. HRVATIN:  WE --

15             THE COURT:  AND ADDING IN THE NOTION THAT IF THEY GET

16   AN STG PROCESS, IT'S DIFFERENT OR THE --

17             MR. HRVATIN:  WE --

18             THE COURT:  -- ONLY ABOUT THE PEOPLE WHO DIDN'T GET

19   AN STG PROCESS.

20             MR. HRVATIN:  -- WE MAINTAIN THAT THE STG PROCESS

21   IS -- IS -- NOT THAT TITLE 15 DIDN'T MEET DUE PROCESS

22   STANDARDS BUT THAT THE STG PROGRAM GOES ABOVE AND BEYOND --

23   BEYOND THAT AND MEETS THE MEANINGFUL REVIEW REQUESTS AND

24   DEMANDS THAT THE PLAINTIFFS ARE -- ARE MAKING.  SO WE THINK

25   IT'S A SEPARATE PROCESS THAT IMPLICATES SEPARATE DUE PROCESS
```

```
1     CONSIDERATIONS AT -- THAT THE PLAINTIFFS HAVEN'T ON THIS

2     RECORD DEMONSTRATED IS, IN SOME DUE PROCESS FASHION,

3     INADEQUATE; THAT IT CAN JUST ALL BE CLUMPED TOGETHER; THAT

4     IT'S JUST ANOTHER TITLE 15 DISGUISED AS THE -- UNDER ANOTHER

5     NAME.

6         THEY HAVEN'T DEMONSTRATED THAT THE STG PROGRAM -- OTHER

7     THAN STATING THAT SOME OF THE SOURCE ITEMS THAT ARE USED TO

8     VALIDATE INMATES THAT THEY TAKE ISSUE WITH ARE THE SAME.  BY

9     WAY OF THE DUE PROCESS STANDARDS, BY WAY OF THE REVIEW THAT'S

10    AVAILABLE THROUGH THE STG PROGRAM, THAT IS DIFFERENT AND --

11    AND WE'RE TALKING ABOUT THE DUE PROCESS THAT'S PROVIDED, NOT

12    NECESSARILY THAT THE PLAINTIFFS ARE CONTESTING THE RESULT IN

13    THE SAME ACTION, VALIDATING AN INMATE OR RETAINING THE INMATE.

14    IT'S THE PROCESS THAT'S PROVIDED.

15            THE COURT:  OKAY.  SO --

16            MR. HRVATIN:  AND WE MAIN THAT WERE UNDER IN STG

17    PROGRAM, IT'S -- IT'S A -- IT'S A DIFFERENT WAY OF DOING

18    THINGS.

19            THE COURT:  OKAY.  SO WE COULD SAY SOMETHING LIKE ALL

20    INMATES SERVING INDETERMINATE SENTENCES AT THE PELICAN BAY SHU

21    ON THE BASIS -- WELL, AT THE PELICAN BAY SHU PURSUANT TO,

22    WHAT, TITLE 15 PROCEDURES AS OF -- AS OF WHAT?  I MEAN, IF YOU

23    ADOPT THE STG, IT WILL BE IN TITLE 15 AS WELL PRESUMABLY.

24            MR. HRVATIN:  IT WILL BE, YES, YOUR HONOR.

25            THE COURT:  SO WE CAN'T CALL IT TITLE 15 --
```

```
 1                    (SIMULTANEOUS COLLOQUY.)

 2          THE COURT:  TITLE 15 AS -- AS --

 3          MR. HRVATIN:  AS WILL BE --

 4          THE COURT:  AS --

 5          MR. HRVATIN:  -- PROMULGATED --

 6          THE COURT:  NO, NO.  THE OLD ONE.  I'M TRYING TO --

 7   I'M STRUGGLING WITH THE WAY TO WORD WHAT THE OLD ONE IS.  IS

 8   THERE A DATE, LIKE -- WHEN WAS IT LAST REVISED OR SOMETHING

 9   LIKE THAT, TITLE 15 AS OF TODAY?

10          MR. HRVATIN:  WE'D BE HAPPY -- I'M NOT SURE OF THE

11   LAST REVISION TO THE GANG VALIDATION REGULATIONS UNDER TITLE

12   15.  WE'D BE HAPPY TO DO SOME RESEARCH ON THAT AND SUPPLEMENT

13   THE RECORD FOR YOUR HONOR.

14          THE COURT:  SO PURSUANT TO TITLE 15 --

15                    (SIMULTANEOUS COLLOQUY.)

16          THE COURT:  -- AS OF "X" DATE.

17          MR. HRVATIN:  I'M SORRY.

18          THE COURT:  AND THEN I STILL -- I GUESS YOU ANSWERED

19   THIS, BUT I STILL DON'T REALLY GET IT.  ON THE BASIS OF GANG

20   VALIDATION AND GANG VALIDATION ONLY.  RIGHT?  BECAUSE IF THEY

21   WERE THERE FOR ANOTHER REASON ON TOP OF GANG VALIDATION AND

22   THEY GOT SOME DIFFERENT PROCESS FOR THEIR OTHER VIOLATION,

23   THEY WOULDN'T BE IN THE CLASS.

24     SO IT MUST BE PEOPLE WHO ARE THERE BECAUSE OF GANG

25   VALIDATION AND GANG VALIDATION ONLY.
```

1          **MR. AGATHOCLEOUS:**  WELL, YOUR HONOR, I WOULD CONTEND

2     THAT SOMEONE WHO WAS THERE ON THE BASIS OF GANG VALIDATION AND

3     SOME OTHER REASON, WHICH PRESUMABLY WOULD BE DISCIPLINARY,

4     WOULD IN FACT BE INCLUDED IN THE CLASS BECAUSE THEY COULD ONLY

5     BE SENT TO THE SHU INDEFINITELY BECAUSE OF GANG VALIDATION,

6     RIGHT?  SO THEY WOULD BE SERVING A DETERMINATE SENTENCE AT THE

7     SHU IF IT WAS ON THE BASIS OF A DISCIPLINARY VIOLATION SO THEY

8     WOULD -- THEY WOULD BE ABLE TO EARN RELIEF.

9          **THE COURT:**  WHAT IF THEY WERE STILL EARNING -- WHAT

10    IF THEY WERE STILL SERVING IN THEIR OTHER ONE?  LET'S SAY THEY

11    GOT TWO YEARS IN SHU FOR ASSAULTING A GUARD.

12         **MR. HRVATIN:**  RIGHT.

13         **THE COURT:**  PLUS THEY'RE THERE INDETERMINATELY FOR

14    BEING IN A GANG BUT THE TWO YEARS AREN'T UP YET.  ARE THEY A

15    CLASS MEMBER?

16         **MR. AGATHOCLEOUS:**  WELL, THEY'RE A CLASS MEMBER.  IT

17    CERTAINLY WOULDN'T -- IT WOULDN'T SORT OF EXCUSE THEM FROM

18    THEIR TWO-YEAR DETERMINATE SENTENCE IN THE SHU, BUT IT WOULD

19    REQUIRE THEM TO RECEIVE CONSTITUTIONALLY ADEQUATE PROCEDURES

20    TO ENSURE THAT THEY WERE VALIDATED AS A GANG MEMBER IN

21    ACCORDANCE WITH THE DUE PROCESS CLAUSE.

22         YOUR HONOR, CAN I BRIEFLY RESPOND TO --

23         **THE COURT:**  NO.

24              (SIMULTANEOUS COLLOQUY.)

25         **THE COURT:**  -- FINISHED WITH THE OTHER ATTORNEY YET.

1          **MR. AGATHOCLEOUS:**   OKAY.

2          **THE COURT:**   BUT YOU MAY WHEN WE GET BACK TO YOU.

3     AND THEN WHAT DID WE DECIDE ABOUT THE FACT THAT THE

4     SUBCLASS ISN'T REALLY A SUBCLASS?

5          **MR. HRVATIN:**   I DON'T SEE, YOUR HONOR -- THANK YOU

6     FOR THE OPPORTUNITY TO RESPOND TO THAT.

7          I DON'T SEE HOW WE CAN HAVE A SUBCLASS OUT OF A CLASS OF

8     VALIDATED INMATES HAVING A SUBCLASS THAT TAKES -- THAT

9     INCORPORATES A DIFFERENT KIND OF INMATE INTO A SMALLER CLASS.

10    I MEAN, WE'RE TALKING ABOUT -- IF WE'RE TALKING ABOUT THE

11    VALIDATED GANG MEMBER OR ASSOCIATE, AND AS I UNDERSTAND THE

12    ALLEGATIONS BEING THAT THESE --

13         **THE COURT:**   OH, I KNOW.   I GUESS HE SAID THAT ANYBODY

14    WHO WAS THERE FOR MORE THAN TEN YEARS HAD TO BE THERE ONLY ON

15    AN INDETERMINATE SENTENCE BECAUSE OTHERWISE THEIR SENTENCE

16    WOULD HAVE EXPIRED BECAUSE NOBODY GETS A TEN-YEAR SENTENCE IN

17    SHU.

18         **MR. HRVATIN:**   WELL, YOUR HONOR --

19                    (SIMULTANEOUS COLLOQUY.)

20         **MR. HRVATIN:**   AS AN EXAMPLE, AN INMATE MURDERS

21    ANOTHER INMATE.   UNDER THE DISCIPLINARY SET OF REGULATIONS,

22    THE -- THE MAXIMUM DISCIPLINE IS FIVE YEARS.   IF HE'S

23    SERVING -- IF THIS -- AND SO THIS INMATE, LET'S SAY, HE GOES

24    THROUGH A DISCIPLINARY PROCESS FOR MURDERING ANOTHER INMATE,

25    IS ASSIGNED A FIVE-YEAR DETERMINATE SHU TERM.   HE'S IN THE

1    SHU, AND HE MURDERS ANOTHER INNATE, GOES THROUGH THE

2    DISCIPLINARY PROCESS, OKAY?  IS FOUND GUILTY AND IS ASSESSED

3    ANOTHER FIVE-YEAR SHU TERM, DETERMINATE AGAIN.

4        THAT, IF I'M -- IF I'M READING THE PLAINTIFFS' PROPOSED

5    CLASS DEFINITION OF THE EIGHTH AMENDMENT CLAIM, WOULD CAPTURE

6    THAT INMATE BECAUSE HE WILL HAVE SERVED TWO CONSECUTIVE

7    FIVE-YEAR DETERMINATE TERMS.

8            THE COURT:  OKAY -- SO THE --

9            MR. HRVATIN:  -- AND BE IN THE SHU FOR MORE THAN --

10           THE COURT:  SO THE PROBLEM IS CALLING IT A SUBCLASS.

11   IT'S REALLY A VENN DIAGRAM.

12           MR. HRVATIN:  WE COULD GET THAT UP ON THE BOARD, YOUR

13   HONOR, AND WE COULD -- WE COULD SORT THAT OUT, BUT I THINK

14   THAT THAT -- BY A WAY OF AN EXAMPLE, THERE IS -- THAT'S THE

15   FIRST THAT COMES TO MIND, THAT THERE COULD BE A REASON FOR AN

16   INMATE BEING IN THE SHU FOR WHATEVER "CONTINUOUS" MEANS,

17   PRESUMABLY NOT BEING ASSIGNED TO ANOTHER HOUSING UNIT FOR

18   PURPOSES OF -- OF MEDICAL REASONS OR OUT TO COURT FOR A TRIAL

19   OR TO SERVE AS A WITNESS FOR -- FOR VARIOUS PERIODS OF TIME.

20   THE NATURE OF WHAT "CONTINUOUS" MEANS IS ALSO A SEPARATE

21   ISSUE, I THINK, FROM THE ISSUE THAT YOUR HONOR IS TALKING

22   ABOUT AS TO SPECIFICALLY WHAT KIND OF INMATE ARE WE TALKING

23   ABOUT WHO'S IN THE SHU.

24           THE COURT:  OKAY.  SO IF WE STOP CALLING IT A

25   "SUBCLASS" AND JUST CALL IT A DIFFERENT, SOMEWHAT OVERLAPPING

```
 1    CLASS, THAT WOULD SOLVE THE PROBLEM, I GUESS.

 2              MR. HRVATIN:  WELL, TO THE EXTENT THAT THIS IS THE

 3    FIRST TIME, YOUR HONOR, THAT -- AND MAYBE I HADN'T -- I HADN'T

 4    REALLY LOOKED AT THE CASE THIS WAY -- THAT WE'RE TALKING ABOUT

 5    INMATES OTHER THAN VALIDATED GANG MEMBERS AND ASSOCIATES WHO

 6    ARE AT THE PELICAN BAY SHU.  I HAVEN'T EVEN -- I HADN'T GIVEN

 7    A THOUGHT TO THAT.  AND I DON'T KNOW WHAT THAT INVOLVES BY WAY

 8    OF NUMBERS OR --

 9              THE COURT:  WELL, TO THE EXTENT IT'S AN EIGHTH

10    AMENDMENT CASE, IT DOESN'T REALLY MATTER WHY THEY'RE THERE.

11    IF IT'S CRUEL AND UNUSUAL PUNISHMENT TO BE THERE FOR TEN YEARS

12    OR MORE, THAN IT IS, WHETHER -- REGARDLESS --

13                        (SIMULTANEOUS COLLOQUY.)

14              MR. HRVATIN:  BUT THAT --

15              THE COURT:  -- MAY NOT BE TRUE.  YOU'RE RIGHT.

16              MR. HRVATIN:  I THINK THAT'S WHAT UNDER --

17                        (SIMULTANEOUS COLLOQUY.)

18              MR. HRVATIN:  THE ALLEGATIONS ARE THAT THESE INMATES

19    ARE WITHOUT DUE PROCESS AND ON BOGUS INFORMATION, CONFIDENTIAL

20    INFORMATION, BEING --

21              THE COURT:  WELL, NO, THAT'S --

22                        (SIMULTANEOUS COLLOQUY.)

23              THE COURT:  THAT'S TOTALLY SEPARATE.  WHEN WE TALK

24    ABOUT THE EIGHTH AMENDMENT, WE'RE ONLY TALKING ABOUT THE

25    PRISON CONDITIONS, THE CRUEL AND UNUSUAL PUNISHMENT ALLEGED
```

```
1    PRISON CONDITIONS.  THAT'S UNRELATED TO WHETHER YOU GOT DUE

2    PROCESS OR NOT, IT SEEMS TO ME.

3         BUT YOU DO MAKE A GOOD POINT -- OR AT LEAST YOU MADE ME

4    THINK OF A GOOD POINT, WHICH IS THAT I SUPPOSE THE DEFINITION

5    OF "CRUEL AND UNUSUAL PUNISHMENT" COULD CONCEIVABLY INVOLVE

6    SOME SORT OF PROPORTIONATELY AND CONCEIVABLY BE DIFFERENT FOR

7    SOMEONE WHO WAS ACTUALLY CONVICTED OF SOME DISCIPLINARY

8    VIOLATION OR CRIME VERSUS SOMEBODY WHO WAS THERE SOLELY FOR

9    GANG VALIDATION PURPOSES.

10        SO THAT WOULD -- MIGHT ARGUE FOR SOME SORT OF LACK OF

11   COMMONALITY, I GUESS, UNLESS YOU WANTED TO RESTRICT IT TO

12   PEOPLE WHO WERE THERE FOR GANG VALIDATION PURPOSES.

13             MR. HRVATIN:  YEAH, I -- I THINK YOUR HONOR RAISES

14   ISSUES THAT I DON'T -- I DON'T BELIEVE -- AND I APOLOGIZE.

15   I -- I DON'T BELIEVE THAT THE DEFENSE BRIEFED WITH RESPECT TO

16   A SEPARATE SET OF -- ON THE EIGHTH AMENDMENT CLAIM, A SEPARATE

17   CATEGORY OF SHU INMATES UP AT PELICAN BAY BECAUSE WE WERE

18   LOOKING AT IT AS A -- AS A -- AS A SUBCLASS, SO -- AS A

19   SUBCLASS OF THE PURPORTED DUE PROCESS CLASS.

20        AND THEY'RE -- THE DUE PROCESS CLASS CONSISTS OF A

21   PARTICULAR KIND OF SHU INNATE.  THAT'S HOW WE WERE LOOKING AT

22   IT.  IF -- IF WE'RE OPENING THAT -- IF WE'RE OPENING IT UP TO

23   A POTENTIALLY SEPARATE SET OF -- OF SHU INMATE WHO WOULD

24   OTHERWISE BE IN THERE FOR PURPOSES OF -- OF -- LIKELY FOR

25   DISCIPLINARY REASONS, I THINK WE NEED THE OPPORTUNITY TO
```

1   EXPLORE THE CLASS CERTIFICATION COMPONENTS THAT MIGHT BE

2   IMPLICATED AS SEPARATE FROM THOSE THAT WE DISCUSSED IN

3   CONNECTION WITH THE GANG-VALIDATED SHU INMATE.

4          **THE COURT:**  DID YOU HAVE ANYTHING ELSE YOU WANTED TO

5   SAY WITH RESPECT TO THE MOTION?

6          **MR. HRVATIN:**  YOUR HONOR, GIVE ME ONE -- ONE MOMENT.

7          (PAUSE IN THE PROCEEDINGS.)

8          **MR. HRVATIN:**  I DO HAVE, YOUR HONOR, A -- AN ISSUE

9   I'D LIKE TO RAISE UNDER THE 23(B) COMPONENT OF PLAINTIFFS'

10  MOTION.

11      ALTHOUGH THE SECOND AMENDED COMPLAINT PURPORTED TO SEEK

12  CLASS CERTIFICATION UNDER BOTH 23(B)(1), AS WELL AS RULE

13  23(B)(2), THAT -- THE FORMER WAS ABANDONED ON THE MOTION FOR

14  CLASS CERTIFICATION.  THE MOTION -- THE OPENING MOTION AT

15  LEAST EXCLUSIVELY SOUGHT RELIEF UNDER RULE 23(B)(2).

16      IT WASN'T UNTIL REPLY THAT PLAINTIFFS INDICATED THAT THIS

17  COURT COULD ALSO CERTIFY UNDER THE CLASS UNDER 23(B)(1), WHICH

18  WE -- WHICH WE DID NOT ADDRESS IN OUR PAPERS BECAUSE IT WASN'T

19  RAISED IN THE MOVING PAPERS.

20      TO THE EXTENT THAT THE COURT IS CONSIDERING CERTIFYING A

21  CLASS IN ANY WAY UNDER RULE 23(B)(1), WE -- WE'D LIKE THE

22  OPPORTUNITY TO DO SO BECAUSE WE WEREN'T GIVEN NOTICE THAT

23  THAT'S WHAT PLAINTIFFS WERE GOING TO BE DOING.  SO I WANTED TO

24  RAISE THAT ISSUE BECAUSE WE CAUGHT IT IN -- WE CAUGHT IT IN

25  REPLY.

| | |
|---|---|
| 1 | **THE COURT:** YEAH, I THOUGHT THEY WERE NOT, BUT, WHAT, |
| 2 | ARE YOU? |
| 3 | **MR. AGATHOCLEOUS:** YOUR HONOR, NO, WE DO INDEED |
| 4 | ALLEGE THAT THE -- THE CLASS SHOULD BE CERTIFIED UNDER EITHER |
| 5 | 23(B)(1) OR 23(B)(2), BUT THERE IS NO REQUIREMENT THAT |
| 6 | PLAINTIFFS SATISFY BOTH PROVISIONS.  ONE OR THE OTHER WILL |
| 7 | SUFFICE.  WE HAVE BRIEFED BOTH ISSUES.  IF DEFENDANTS WANT AN |
| 8 | OPPORTUNITY TO FILE A SURREPLY, CONSENT TO THAT.  THAT'S NOT A |
| 9 | PROBLEM.  BUT THE FACT IS, IS THAT WE EASILY MEET THE |
| 10 | REQUIREMENTS OF 23(B)(2) NONETHELESS BECAUSE THE LITIGATION IS |
| 11 | CLEARLY AMENABLE TO CLASS-WIDE INJUNCTIVE RELIEF. |
| 12 | JUST LIKE PLAINTIFFS IN THE LONG LINE OF PRISONERS RIGHTS |
| 13 | CLAIMS, OUR CLIENTS SEEK INJUNCTIVE RELIEF FROM SYSTEM-WIDE |
| 14 | PRACTICES AND POLICIES THAT AFFECT THE ENTIRE CLASS AND THE |
| 15 | ENTIRE SUBCLASS. |
| 16 | AND AS THE WALTERS COURT -- |
| 17 | **THE COURT:** OKAY.  I JUST WANTED THAT ONE SHORT |
| 18 | ANSWER. |
| 19 | **MR. AGATHOCLEOUS:** OKAY. |
| 20 | **THE COURT:** YOU'LL GET YOUR CHANCE TO REPLY IN A |
| 21 | MINUTE.  SO IT SEEMS THEY DO WANT (B)(1), SO YES, IF YOU FEEL |
| 22 | YOU DIDN'T HAVE A CHANCE TO ADDRESS THAT AND YOU WANT TO, YOU |
| 23 | CAN FILE A FIVE-PAGE BRIEF IN FIVE DAYS. |
| 24 | **MR. HRVATIN:** CAN WE HAVE A WEEK, YOUR HONOR? |
| 25 | **THE COURT:** FIVE-PAGE BRIEF IN SEVEN DAYS? |

1          **MR. HRVATIN:**  THANK YOU.

2          **THE COURT:**  OKAY.

3     AND WAS THERE ANYTHING ELSE YOU WANTED TO SAY --

4          **MR. HRVATIN:**  YEAH, THERE WAS -- THERE WAS ONE

5     ADDITIONAL ISSUE, YOUR HONOR, THAT WE WANTED TO RAISE WITH

6     RESPECT TO A CASE THAT PLAINTIFFS PLACE GREAT RELIANCE ON TO

7     DISPUTE OR THEY TAKE ISSUE WITH THE FACT THAT THERE -- TO THE

8     EXTENT THAT THERE IS (SIC) ANY DIFFERENCES IN EXPERIENCES,

9     HARM, ET CETERA, FROM INMATE TO INMATE, LET'S SAY, FROM THE

10    NAMED PLAINTIFFS TO PUTATIVE CLASS MEMBERS, THAT THOSE -- THAT

11    THOSE DIFFERENCES DON'T DEFEAT COMMONALITY, THEY DON'T DEFEAT

12    TYPICALITY.

13         AND -- AND THE -- THE CASE THAT -- AT LEAST THE MOST

14    RECENT ONE POST-WAL-MART THAT ADDRESSES THAT ISSUE IS A CASE

15    CALLED PARSONS, WHICH IS PENDING IN THE DISTRICT OF ARIZONA.

16    THE CASE WAS JUST RECENTLY TAKEN UP BY THE NINTH CIRCUIT ON A

17    DISCRETIONARY 23(F) APPEAL AND IS ON THE VERY ISSUES.  THE

18    CASE INVOLVES CONDITIONS OF CONFINEMENT IN ARIZONA'S STATE

19    PRISONS SUPERMAX FACILITIES, AMONG A HOST OF OTHER ISSUES WITH

20    ARIZONA STATE PRISONS.

21         BUT TO THE EXTENT THAT THERE IS ANALOGOUS-TYPE LITIGATION

22    ACTIVITY, THE COURT IN -- THE DISTRICT COURT IN ARIZONA

23    GRANTED CLASS CERTIFICATION ON THE CRUEL AND UNUSUAL

24    PUNISHMENT CLAIM THAT'S PRESENT IN THAT CASE WITH RESPECT TO

25    SUPERMAX PRISON CONDITIONS.

```
 1          AS I MENTIONED, YOUR HONOR, THE NINTH CIRCUIT RECENTLY

 2   TOOK THAT UP ON THE DISCRETIONARY APPEAL.  THE MATTER'S

 3   CURRENTLY BEING BRIEFED ON AN EXPEDITED SCHEDULE TO BE HEARD

 4   ON NOVEMBER 6TH.

 5          TO US, IT DEMONSTRATES FROM THE NINTH CIRCUIT'S -- A

 6   POTENTIAL FROM THE NINTH CIRCUIT'S POINT OF VIEW AN

 7   OPPORTUNITY TO LOOK AT THE ISSUE OF HOW WAL-MART WITH RESPECT

 8   TO COMMONALITY AND TYPICALITY AND HOW THE DIFFERENCES OF

 9   EXPERIENCES AND DIFFERENT ALLEGED HARMS, TO THE EXTENT THAT

10   THOSE PREVIOUSLY MAY NOT HAVE SERVED SUFFICIENTLY TO -- TO

11   DEFEAT COMMONALITY OR TYPICALITY, THAT THE NINTH CIRCUIT MIGHT

12   BE LOOKING AT THAT POST-WAL-MART IN -- SPECIFICALLY IN THE

13   PRISON CONDITIONS CONTEXT.

14          I HAVE SOME OF THE BRIEFING, YOUR HONOR, THE DOCKET,

15   ET CETERA, IF YOU'D BE INTERESTED IN HAVING A COPY OF THAT,

16   BUT WE JUST WANTED TO BRING THAT TO YOUR ATTENTION.

17              THE COURT:  I'LL WAIT TILL THEY RULE, AND THEN I'LL

18   READ IT AND SEE WHAT THEY SAY.

19              MR. HRVATIN:  VERY GOOD.

20              THE COURT:  AND IF IT CHANGES EVERYTHING, THEN WE'LL

21   JUST HAVE TO CHANGE THE RULINGS.

22              MR. HRVATIN:  VERY GOOD, YOUR HONOR.  THANK YOU.

23              THE COURT:  IS THAT IT, THEN?

24              MR. HRVATIN:  THAT'S WHAT I HAVE, YOUR HONOR.  THANK

25   YOU.
```

1      **THE COURT:**  OKAY.  DID YOU WANT TO REPLY?

2      **MR. AGATHOCLEOUS:**  YEAH.  I HAVE A FEW VERY BRIEF

3  POINTS, YOUR HONOR.  FIRST OF ALL, ON THE PARSONS CASE, IT IS

4  TRUE THAT THAT APPEAL IS GOING UP TO THE NINTH CIRCUIT.  IN

5  THAT -- IN THAT APPEAL, DEFENDANTS HAVE TAKEN THE POSITION

6  THAT AFTER WAL-MART, CLASS CERTIFICATION IS CATEGORICALLY

7  UNAVAILABLE TO AN EIGHTH AMENDMENT CHALLENGE -- EIGHTH

8  AMENDMENT CHALLENGE TO INADEQUATE HEALTH CARE IN THE

9  CORRECTIONAL SETTING.

10     I'M OBVIOUSLY NOT PREPARED TO ARGUE THE MERITS OF THAT

11  CLASS CERTIFICATION MOTION, YOUR HONOR.  BUT IT DOES APPEAR

12  THAT DEFENDANTS' POSITION ON THAT MOTION BORDERS ON FRIVOLOUS,

13  PARTICULARLY IN LIGHT OF THE FACT THAT IN PLATA, WHICH WAS

14  DECIDED THE SAME TERM AS THE WAL-MART CASE, THE SUPREME COURT

15  AFFIRMED A GRANT OF SYSTEM-WIDE INJUNCTIVE RELIEF TO A CLASS

16  OF PRISONERS CHALLENGING INADEQUATE MENTAL AND HEALTH CARE IN

17  THE CALIFORNIA PRISON SYSTEM.

18     SO THERE'S EVERY EXPECTATION THAT THE NINTH CIRCUIT WILL

19  AFFIRM THE DISTRICT COURT'S FINDING, PARTICULARLY IN LIGHT OF

20  THE FACT THAT THE CIRCUIT REFUSED TO GRANT THEM A STAY.  BUT

21  MORE -- MORE TO THE POINT, THERE IS JUST NO PARALLEL BETWEEN

22  THAT CASE AND THIS CASE BECAUSE PARSONS IS A

23  PATTERN-OR-PRACTICE CASE.

24     IN THAT CASE, THEY -- THEY ARE CHALLENGING A PATTERN AND

25  PRACTICE OF INADEQUATE MEDICAL CARE.  IT'S NOT A CASE

```
 1    INVOLVING A WRITTEN POLICY.  THIS ONE IS.

 2        SO IF THE CIRCUIT DOES, IN FACT, DEVIATE FROM THE DISTRICT

 3    COURT IN THAT CASE, IT WILL BE ON THE QUESTION OF WHETHER

 4    THESE PATTERN-AND-PRACTICE ALLEGATIONS THEY MAKE SURVIVE AFTER

 5    WAL-MART, SO IT WILL HAVE NO IMPACT ON THE CASE AT ALL.

 6        TO -- TO TURN QUICKLY TO THE TWO OTHER -- THE POINT ABOUT

 7    THE CLASS AND THE SUBCLASS, FIRST I'LL -- I'LL ADDRESS YOUR

 8    HONOR'S QUESTIONS ABOUT THE EIGHTH AMENDMENT SUBCLASS AS THEY

 9    WERE DEVELOPED IN YOUR QUESTIONS TO MY OPPOSING COUNSEL.

10        SO IT IS CORRECT WHAT YOU SAID, THAT WE ARE TAKING ON THE

11    TOTALITY OF THE CONDITIONS AND ALLEGING THAT TEN OR MORE YEARS

12    IN SOLITARY CONFINEMENT POSES AN UNACCEPTABLE RISK OF HARM TO

13    PRISONERS.  THAT APPLIES WHATEVER REASON A PRISONER IS THERE.

14        NOW, YOUR HONOR ALLUDED TO THE FACT THAT WE BRING A

15    PROPORTIONALITY CLAIM UNDER OUR EIGHTH AMENDMENT CLAIM, AND

16    THAT IS TRUE.  BUT THAT IS ONE OF OUR EIGHTH AMENDMENT

17    THEORIES.  SO TO THE EXTENT THAT THAT IS LINKED TO GANG

18    VALIDATION, THAT IS BUT ONE OF OUR THEORIES.  WE --

19            THE COURT:  RIGHT.  BUT IT MESSES WITH OUR

20    COMMONALITY, IF YOU WANTED TO PURSUE THAT THEORY.

21                    (SIMULTANEOUS COLLOQUY.)

22            THE COURT:  -- STICK TO YOUR SUBCLASS IDEA;

23    OTHERWISE, YOU'VE GOT A -- SEEMS TO ME A COMMONALITY PROBLEM.

24            MR. AGATHOCLEOUS:  WITH RESPECT TO A PROPORTIONATELY

25    SUBCLASS?  WELL --
```

```
 1              THE COURT:  NO, IT'S NOT A SUBCLASS.

 2              MR. AGATHOCLEOUS:  WELL, WITH RESPECT TO THE

 3    PROPORTIONATELY THEORY?  WELL, YOUR HONOR, PLAINTIFF --

 4              THE COURT:  IF YOU START BRINGING IN PEOPLE WHO ARE

 5    CONVICTED OF MURDERING INMATES AND THINGS LIKE THAT, THEN

 6    THAT -- THEN YOU DON'T HAVE COMMONALITY WITH RESPECT TO

 7    PROPORTIONATELY.  SO ALTHOUGH I ORIGINALLY THOUGHT THE

 8    SUBCLASS IDEA MAYBE WASN'T A GOOD ONE, I NOW THINK IT -- IT IS

 9    A GOOD ONE.  SO -- SINCE THAT'S WHAT YOU ASKED FOR, I'LL TAKE

10    YOU AT YOUR WORD.

11              MR. AGATHOCLEOUS:  OKAY.  AND ON THAT POINT, YOU

12    KNOW, I'M NOT AWARE OF ANY RULE 23 CASE LAW THAT REQUIRES A

13    SORT OF, QUOTE, UNQUOTE, SUBCLASS TO OVERLAP ENTIRELY WITH A

14    LARGER CLASS.

15              THE COURT:  IT'S JUST A MATTER OF ENGLISH.  I MEAN, A

16    SUBCLASS IS --

17              MR. AGATHOCLEOUS:  SURE.  SO PERHAPS IT IS TWO

18    CLASSES THAT OVERLAP VERY SUBSTANTIALLY, YOUR HONOR.

19              THE COURT:  NO, A SUBCLASS IS A SUBCLASS.  IT'S A

20    GROUP OF PEOPLE WHO -- ALL OF WHOM ARE CONTAINED WITHIN THE

21    LARGER CLASS, A VENN DIAGRAM OR AN OVERLAPPING CLASS IS JUST A

22    DIFFERENT CONCEPTUAL THING.

23              MR. AGATHOCLEOUS:  OKAY.  SO -- SO PERHAPS IT IS --

24    IT IS TWO CLASSES, THEN.

25         BUT, YOUR HONOR, WITH RESPECT TO THE DUE PROCESS CLASS,
```

1    YOU KNOW, IF THE COURT CHOOSES TO DEFINE TWO SEPARATE CLASSES

2    WITHIN THE DUE PROCESS CLASS, THAT'S ALSO FINE.  BUT I JUST

3    WANTED TO BE CLEAR THAT THE PLAINTIFFS DO CONTEND THAT THE

4    SAME SUBSTANTIVE DEFICIENCIES IN -- IN THE STG PILOT PROGRAM

5    CHARACTERIZE TITLE 15, SO IT STILL DOESN'T PROVIDE FOR --

6    **THE COURT:**  I'M SORRY.  I DIDN'T FOLLOW THAT LAST

7    SENTENCE.  WHAT DID YOU SAY?

8    **MR. AGATHOCLEOUS:**  THE SAME PROCEDURAL DEFICIENCIES

9    WITH TITLE 15 THAT WE HAVE ALLEGED CHARACTERIZE THE PILOT

10    PROGRAM.

11    **THE COURT:**  OH, I HAVE NO IDEA.  YOU DON'T ALLEGE

12    THAT.  MAYBE YOU WILL SOME DAY.

13    **MR. AGATHOCLEOUS:**  WELL, BUT WE HAVE -- WE BRIEFED

14    THAT ON THE MOTION TO DISMISS IN RESPONSE TO THEIR MOOTNESS

15    ARGUMENT, AND WE BRIEFED THAT IN OUR REPLY ON THIS CLASS

16    CERTIFICATION.

17    **THE COURT:**  WELL, SURE.  IF YOU WANT TO SUE THEM FOR

18    THEIR STG PROCEDURES, YOU'RE GOING TO HAVE FILE A MOTION FOR

19    LEAVE TO YOUR COMPLAINT AND SAY WHAT'S WRONG WITH THEIR STG

20    PROCEDURES.  I DON'T DOUBT THAT SOME DAY YOU WILL, BUT YOU

21    HAVEN'T YET.  AND THAT'S WHAT YOU'D HAVE TO DO.

22    **MR. AGATHOCLEOUS:**  WELL, I MEAN, THAT, AS I INDICATED

23    EARLIER, IS NOT WHAT THE WILKINSON COURT REQUIRED.  THE

24    WILKINSON COURT REQUIRED -- DID EXAMINE THE DEFICIENCIES OR

25    ALLEGED DEFICIENCIES WITHIN A HIGHER (SIC) POLICY DESPITE THE

1    PROMULGATION OF A NEW POLICY WITHOUT REQUIRING AMENDMENT OF

2    THE PLEADINGS.

3         **THE COURT:**  HMM.

4         **MR. AGATHOCLEOUS:**  BUT AS I INDICATED, YOU KNOW, WE

5    HAVE ARGUED THAT THE -- THAT THE NEW PROCEDURES SUCH AS THEY

6    ARE, STILL DO NOT PROVIDE WOLFF HEARINGS.  THEY STILL ALLOW

7    FOR GANG VALIDATION BASED ON ALLEGATIONS OF ASSOCIATION,

8    INCLUDING THINGS LIKE POSSESSION OF ARTWORK.  THEY STILL ALLOW

9    FOR CLASS MEMBERS TO BE RETAINED AT THE SHU BASED ON

10   ASSOCIATION.  THEY STILL ALLOW DEFENDANTS TO KEEP CLASS

11   MEMBERS AT THE SHU INDEFINITELY WITHOUT PROVEN MISCONDUCT OR

12   WITHOUT A HEARING.

13       SO IN OTHER WORDS, ALL THE QUESTIONS WE POSED PURSUANT TO

14   TITLE 15 STILL APPLY.

15        **THE COURT:**  OKAY.  WELL --

16       BUT THE CLASS DEFINITION THAT I WOULD CONSIDER APPLYING

17   WOULD BE THE ONE I WENT OVER WITH YOUR OPPOSING COUNSEL.

18        **MR. AGATHOCLEOUS:**  OKAY.  BUT -- BUT TO BE CLEAR --

19        **THE COURT:**  DO YOU HAVE A PROBLEM WITH THAT?

20        **MR. AGATHOCLEOUS:**  WELL, I DON'T HAVE A PROBLEM AS

21   ARTICULATED, BUT WE WOULD ASK THAT THE COURT ALSO CERTIFY A

22   CLASS, THEN, OF PRISONERS WHO ARE GOING TO BE -- I MEAN, IT'S

23   VERY UNCLEAR WHAT DEFENDANTS ARE DOING.  THIS IS PART OF THE

24   PROBLEM --

25        **THE COURT:**  WELL, THAT'S WHY I'M SAYING YOU'RE GOING

```
 1    TO HAVE TO WAIT AND SEE, AND THEN FILE A MOTION TO AMEND YOUR

 2    COMPLAINT, SEEMS TO ME.  I DON'T SEE ANY WAY AROUND THAT.

 3         MR. AGATHOCLEOUS:  WELL, YOU KNOW, I DO OFFER

 4    WILKINSON AS A SORT OF WAY FORWARD.

 5         THE COURT:  IF YOU GET TO THE SUPREME COURT, MAYBE

 6    THEY'LL DO THE SAME THING.

 7         MR. AGATHOCLEOUS:  ALL RIGHT.

 8         THE COURT:  BUT IN THE TRIAL COURT, I NEED A

 9    COMPLAINT THAT SAYS WHAT'S GOING ON HERE.

10         MR. AGATHOCLEOUS:  OKAY.  WE WILL TAKE THAT UNDER

11    ADVISEMENT, YOUR HONOR.

12                   (OFF-THE-RECORD DISCUSSION.)

13         THE COURT:  SO WE HAVE A CASE MANAGEMENT CONFERENCE

14    ALSO, AND I DON'T KNOW IF YOU WANT TO TALK ABOUT THIS OR NOT,

15    BUT I GATHER YOU'RE PURSUING POSSIBLE SETTLEMENT TALKS.

16      ARE YOU IN A POSITION TO TELL ME WHAT YOUR NEXT DATE IS OR

17    WHAT YOUR NEXT STEP IS, OR SHALL WE JUST PROCEED ON PARALLEL

18    TRACKS AND SEE WHAT HAPPENS?

19         MR. LOBEL:  I THINK PROBABLY THE BEST WAY NOW IS TO

20    PROCEED ON PARALLEL TRACKS.  I MEAN, WE DON'T HAVE A ANOTHER

21    SETTLEMENT CONFERENCE DATE.

22         MR. HRVATIN:  YOUR HONOR, MY UNDERSTANDING --

23         THE COURT:  SHALL I SET ONE?

24         MR. HRVATIN:  THE --

25         THE COURT:  OR ARE YOU WORKING AMICABLY WITH JUDGE
```

```
 1    VADAS?  AND HE WILL HAVE YOU TALK TO HIM WHEN IT'S TIME TO

 2    TALK TO HIM?  OR DO I NEED TO ORDER YOU TO GO BACK TO HIM?

 3          MR. HRVATIN:  YOUR HONOR, MY UNDERSTANDING WAS THAT

 4    PLAINTIFFS' COUNSEL LAST MET WITH MAGISTRATE VADAS, AND

 5    THEY'RE -- SO IT'S -- AFTER HAVING MET WITH US, HE WENT AND

 6    MET WITH THEM.  AND IT WAS -- IT'S IN THEIR COURT.

 7        NOW, WHAT -- WE'RE NOT EXACTLY CLEAR AS TO WHAT THE NEXT

 8    STEP IS, BUT AS MR. LOBEL MENTIONED, WE DON'T HAVE ANOTHER

 9    FORMAL SETTLEMENT CONFERENCE ON CALENDAR.

10          THE COURT:  OKAY.

11          MR. LOBEL:  AND WE'RE WORKING --

12          THE COURT:  YOU BOTH WILL PURSUE WHATEVER JUDGE VADAS

13    WANTS YOU TO DO IN ORDER TO EXPLORE SETTLEMENT.

14          MR. LOBEL:  CORRECT.

15          MR. HRVATIN:  YES.

16          THE COURT:  AND YOU WILL -- IF HE WANTS SOMETHING

17    FROM YOU, YOU'LL GIVE IT TO HIM --

18          MR. LOBEL:  WE ARE PROCEEDING THAT WAY.

19          THE COURT:  AND IF HE WANTS SOMETHING FROM YOU,

20    YOU'LL GIVE IT TO HIM WHEN HE WANTS.  AND IF HE WANTS YOU TO

21    COME BACK, YOU'LL COME BACK?

22          MR. HRVATIN:  YES, YOUR HONOR.

23          MR. LOBEL:  CORRECT.

24          THE COURT:  OKAY.

25        SO THE DEFENDANT HAS PROPOSED DATES, AND THE PLAINTIFF
```

1    WANTS A TRIAL IN MAY AND THEN, WHAT, YOU'D WORK BACKWARDS?

2         **MR. LOBEL:**  WE'D WORK BACKWARDS, YEAH.

3         **THE COURT:**  YOU MIGHT FIND YOURSELF HAVING THINGS

4    THAT SHOULD HAVE BEEN DONE A COUPLE OF MONTHS AGO.  I MEAN, IF

5    IT WAS TO BE TRIED IN MAY, THE SUMMARY JUDGMENT WOULD HAVE TO

6    BE FILED OR HEARD THREE MONTHS BEFORE THAT, SO THAT WOULD BE

7    FEBRUARY.

8         **STPHAOP:**  YOUR HONOR --

9         **THE COURT:**  ARE YOU GOING TO BE READY TO HAVE SUMMARY

10   JUDGMENT HEARD IN FEBRUARY?

11        **MR. LOBEL:**  WE WOULD OFFER A COMPROMISE FROM OUR MAY

12   DATE AND THEIR NEXT YEAR JULY DATE, WHICH WOULD BE --

13        **THE COURT:**  I THINK IT MIGHT BE BETTER TO JUST START

14   FROM NOW AND SEE WHERE IT ENDS.

15        **MR. LOBEL:**  SURE.

16        **THE COURT:**  RATHER THAN START FROM THE END AND SEE

17   HOW FAR BACK IT GETS.

18        **MR. LOBEL:**  CORRECT.  THAT'S FINE.

19        **THE COURT:**  SO -- I'M GOING TO HAVE TO RULE ON THE

20   CLASS CERTIFICATION MOTION.  I CAN'T GUARANTEE WHEN THAT WILL

21   COME, BUT YOUR NEXT DATE WOULD BE A MERITS DISCOVERY CUTOFF.

22     THE DEFENDANT PROPOSES SEPTEMBER 27TH OF 2014, ESSENTIALLY

23   A YEAR OF DISCOVERY.

24     WHAT WOULD YOU --

25        **MR. LOBEL:**  WE -- I WOULD PROPOSE A FEBRUARY 17TH

1    DISCOVERY DEADLINE.

2         **MR. HRVATIN:**  YOUR HONOR, IF I MAY JUST COMMENT ON

3    SOME OF THE WORK.  WE -- WE SET FORTH IN OUR PAPERS WHY WE

4    THINK THE MORE EXTENDED SCHEDULE WOULD BE -- WOULD BE

5    APPROPRIATE.  EVEN IN -- IN DR. HANEY'S DECLARATION, ONE OF

6    THE MENTAL HEALTH SPEAKERS RETAINED BY THE PLAINTIFFS, HE

7    INDICATED GIVEN THAT, YOU KNOW, HE'S DONE PRELIMINARY WORK AND

8    THERE'S GOING TO HAVE TO BE MORE WORK TO BE DONE.  HE

9    ESTIMATED INTERVIEWING MORE THAN 100 INMATES UP AT PELICAN BAY

10   THROUGH THE COURSE OF THIS LITIGATION.  I --

11        **THE COURT:**  IT'S THE PLAINTIFFS' EXPERT.

12        **MR. HRVATIN:**  THAT'S THE PLAINTIFFS' EXPERT.

13        **THE COURT:**  WELL, I WOULDN'T WORRY ABOUT HIM.

14        **MR. HRVATIN:**  OH, WE'LL HAVE TO DEAL WITH HIM, YOUR

15   HONOR FOR --

16        **THE COURT:**  WELL, I KNOW, BUT IF HE DOESN'T HAVE TIME

17   TO DO IT IN BETWEEN NOW AND FEBRUARY, THEN THAT'S HIS PROBLEM

18   NOT YOURS.

19        **MR. HRVATIN:**  BUT BY WAY OF WHAT -- I MEAN, WE'RE

20   WORKING WITH WHAT HAS BEEN PRESENTED TO US, AS -- AS I'M

21   IDENTIFYING IT, SOME OF THE WORK THAT THE PARTIES CONTEMPLATE

22   IN LITIGATING THIS CASE FAIRLY WITH RESPECT TO DISCOVERY,

23   ET CETERA, AND --

24        **THE COURT:**  YEAH.  WELL, CLEARLY, THEY'LL NEVER

25   INTERVIEW A HUNDRED WITNESSES BETWEEN NOW AND FEBRUARY.  SO

```
 1    HOW LONG --

 2             MR. HRVATIN:  IF THAT'S NOT GOING TO HAPPEN, YOUR

 3    HONOR, THEN MAYBE WE CAN TALK ABOUT --

 4             THE COURT:  YEAH, SO HOW LONG DO YOU NEED TO ACTUALLY

 5    DO YOUR DISCOVERY?

 6             MR. HRVATIN:  I WOULD SAY IF -- IF A YEAR IS TOO

 7    LONG, YOUR HONOR, I'D GO INTO JUNE.

 8             MR. LOBEL:  YOUR HONOR, COULD I JUST --

 9             THE COURT:  WHAT DO YOU NEED?  I MEAN, YOU HAVE THEIR

10    "C" FILES.  YOU HAVE -- YOU KNOW WHAT ALL YOUR RULES ARE?  YOU

11    HAVE TO DEPOSE THEM.  I'M NOT SURE WHAT TAKES YOU SO LONG.

12             MR. HRVATIN:  WE HAVE TO DEPOSE THEM.  WE HAVE MENTAL

13    HEALTH EXAMINATIONS TO CONDUCT OF THESE TEN FROM THE EXPERT ON

14    OUR SIDE.  WE -- WE KNOW THAT THE -- THE PLAINTIFFS HAVE

15    RETAINED A MEDICAL EXPERT WHO HAS ALREADY VISITED AT LEAST

16    INITIALLY WITH THE INMATES BACK IN APRIL TO THE EXTENT THAT

17    THEY'RE STILL PURSUING MEDICAL-TYPE HARM.

18         WITH RESPECT TO CONDITIONS OF CONFINEMENT, THERE'S --

19    THERE'S OUR MEDICAL EXPERT THAT'S GOING TO HAVE TO HAVE.

20             THE COURT:  WELL, BUT THAT -- WE'RE GOING TO GET TO

21    EXPERT DATES IN A MINUTE, BUT NOW WE'RE JUST TALKING ABOUT

22    FACT DISCOVERY I THINK.

23             MR. HRVATIN:  WE HAVE OUTSTANDING -- WE HAVE

24    PROPOUNDED DISCOVERY, YOUR HONOR.

25             MR. LOBEL:  YOUR HONOR, WE'VE GIVEN THEM ALL THE
```

```
 1    DOCUMENTS -- BASICALLY ALL THE DOCUMENTS THEY'VE ASKED FOR --

 2           THE COURT:  I TEND TO THINK THAT FEBRUARY REALLY --

 3    LET'S SAY THE END OF FEBRUARY OUGHT TO BE ENOUGH FOR FACT

 4    DISCOVERY UNLESS THERE'S HUGE DISPUTES AND PEOPLE DELAY AND

 5    DON'T TURN THINGS OVER AND SO ON.

 6           MR. HRVATIN:  WELL --

 7           THE COURT:  I THINK THAT MIGHT BE ENOUGH.  AND IF IT

 8    ISN'T, THEN WE CAN ALWAYS EXTEND IT IF WE HAVE TO.

 9           MR. HRVATIN:  I --

10           THE COURT:  SO --

11           MR. HRVATIN:  -- REQUEST IF -- IF THE YEAR DATE IS

12    TOO FAR OUT THERE AND JUNE IS TOO FAR OUT THERE, I THINK

13    BETWEEN FEBRUARY AND JUNE, WE MIGHT BE ABLE --

14           THE COURT:  HOW ABOUT MARCH?

15           MR. HRVATIN:  HOW ABOUT APRIL?  AND -- BECAUSE WE

16    DO -- THEY'VE AT LEAST INDICATED -- WANTED TO TAKE A DOZEN

17    DEFENSE DEPOSITIONS, WHICH WE HAVE TO GET UP AND --

18           THE COURT:  ALL RIGHT.  WELL, LET'S SAY --

19                  (SIMULTANEOUS COLLOQUY.)

20                  (OFF-THE-RECORD DISCUSSION.)

21           THE COURT:  I WISH I HAD A CALENDAR.

22           MR. HRVATIN:  YEAH, MY POINT, YOUR HONOR, IS JUST

23    THAT THERE IS A SUBSTANTIAL AMOUNT OF LITIGATION DISCOVERY

24    WORK THAT STILL NEEDS TO BE DONE.  WE'RE FOCUSING ON -- AS WE

25    HAVE IN THIS CASE PRUDENTLY ON THE VARIOUS PHASES OF THE CASE
```

```
1    THAT WE'RE IN.  WE DEALT WITH THE PLEADINGS.  WE DEALT WITH

2    CLASS CERTIFICATION.  WE'RE MOVING TO SUMMARY JUDGMENT NOW.

3    THAT'S FINE.  BUT I THINK WE DO NEED AN ADEQUATE OPPORTUNITY

4    TO DO THE DISCOVERY --

5            THE COURT:  YEAH, I JUST DON'T SEE IT AS SUCH A

6    DISCOVERY CASE.  I MEAN, THE CONDITIONS ARE THE CONDITIONS.

7    YOU KNOW WHAT THEY ARE.  THE -- THE DUE PROCESS THAT'S GIVEN

8    IS WHAT'S GIVEN.  YOU KNOW WHAT IT IS.  IT'S JUST NOT -- IT'S

9    NOT LIKE DAMAGES.  NO ONE'S SEEKING DAMAGES.  IT'S JUST NOT AN

10   INTENSIVE FACT DISCOVERY CASE TO ME.

11       SO I THINK --

12           MR. LOBEL:  COULD I --

13           THE COURT:  -- MARCH WOULD BE FINE.

14           MR. LOBEL:  COULD I JUST SAY ONE THING, YOUR HONOR?

15           THE COURT:  OH, IF YOU MUST.

16           MR. LOBEL:  I THINK BALANCED AGAINST THIS IS THE FACT

17   THAT OUR COMPLAINT ALLEGES IRREPARABLE HARM THAT WE'VE --

18   SEEKING INJUNCTIVE RELIEF AND THAT EVERY DAY THAT THESE

19   PRISONERS SPEND IN THESE CONDITIONS WE CLAIM IS FURTHER

20   IRREPARABLE HARM.

21       WE -- WE ARE THEREFORE SEEKING -- AND YOU KNOW FROM THE

22   VERY BEGINNING, WE'VE SOUGHT AN EXPEDITED SCHEDULE HERE.  THEY

23   DON'T -- ALL THE DOCUMENTS ARE IN THEIR POSITION --

24   POSSESSION.  THEY HAVE TO DEPOSE THE PLAINTIFFS.  EVERYTHING

25   ELSE IS OUR PROBLEM, AND WE'LL DEAL WITH THAT.
```

```
1            THE COURT:  OKAY.  WELL, I THINK MARCH 29TH WILL BE

2     FINE.

3        AND THEN YOU'D HAVE -- YOU WERE GOING TO DISCLOSE

4     YOUR EXPERT -- DEFENDANTS PROPOSE DISCLOSING EXPERTS TWO

5     MONTHS AFTER FACT DISCOVERY.  THAT SEEMS LIKE A LOT, TOO,

6     SO --

7            MR. LOBEL:  WE WILL KNOW WHO OUR EXPERTS ARE BY THE

8     DATE OF CLOSURE OF DISCOVERY.  I DON'T SEE ANY REASON WHY YOU

9     NEED TWO MONTHS TO KNOW THAT.

10           THE COURT:  WERE YOU GOING TO DISCLOSE THEM

11    SIMULTANEOUSLY?

12           MR. LOBEL:  YEAH, WE CAN DISCLOSE THEM SIMULTANEOUSLY

13    AT THE END OF DISCOVERY.

14           THE COURT:  OKAY.

15           MR. LOBEL:  THEY HAVE SIX MONTHS TO FIGURE OUT --

16                  (SIMULTANEOUS COLLOQUY.)

17           THE COURT:  YEAH, WHY DON'T WE SAY APRIL 12TH.

18           MR. HRVATIN:  I'M SORRY, YOUR HONOR.

19           THE COURT:  APRIL 12TH.

20           MR. HRVATIN:  DISCLOSE EXPERTS AND EXCHANGE INITIAL

21    EXPERT REPORTS ON APRIL 12TH?

22           THE COURT:  RIGHT.

23           MR. HRVATIN:  OKAY, YOUR HONOR.

24           THE COURT:  AND THEN EXPERT DISCOVERY CUTOFF, YOU

25    WERE ALLOWING YOURSELF ABOUT A MONTH SO WE CAN DO THAT TILL
```

1    MAY 13TH.

2         AND THEN SUMMARY JUDGMENT, ARE WE GOING TO HAVE

3    CROSS-MOTIONS?

4              **MR. LOBEL:**  WE MAY.  WE MAY HAVE.

5              **MR. HRVATIN:**  I THINK THAT'S LIKELY, YOUR HONOR.

6              **THE COURT:**  OKAY.  SO SINCE YOU'RE THE ONE IN A RUSH,

7    YOU CAN TELL ME WHEN YOU'D LIKE TO FILE YOURS.

8              **MR. LOBEL:**  WHEN WAS THE END OF --

9              **THE COURT:**  MAY 13TH IS EXPERT DISCOVERY CUTOFF.

10             **MR. LOBEL:**  I WOULD SAY A MONTH LATER OR --

11             **THE COURT:**  OKAY.

12             **MR. LOBEL:**  -- MONTH AND A WEEK LATER, SO JUNE --

13   JUNE 20TH?  YEAH.

14             **THE COURT:**  OKAY.  SO JUNE 20TH, YOU FILE YOURS.

15   JULY 18TH, YOU FILE YOUR OPPOSITION AND CROSS-MOTION, IF ANY,

16   CONTAINED WITHIN A SINGLE BRIEF.  YOU SHOULD READ THE

17   ATTACHMENT TO THE CASE MANAGEMENT ORDER.  YOU GOT ONE OF

18   THOSE, RIGHT?

19             **MR. HRVATIN:**  YES, YOUR HONOR.

20             **THE CLERK:**  YEAH, THEY'RE THERE.

21             **THE COURT:**  SO YOURS IS A OPPOSITION AND CROSS-MOTION

22   IN A SINGLE BRIEF, 25 PAGES.

23         AND THEN WE CAN HAVE A OPPOSITION TO THEIR CROSS-MOTION --

24             **MR. LOBEL:**  CORRECT.

25             **THE COURT:**  -- AND YOUR REPLY ON YOUR MOTION AUGUST

```
 1   1ST.

 2        AND A REPLY ON THE CROSS-MOTION AUGUST 8TH.

 3        AND WE CAN HEAR IT ON --

 4            MR. LOBEL:  WAIT.  AREN'T THESE -- WHATEVER MOTIONS

 5   ARE GOING TO BE MADE ARE GOING TO BE MADE SIMULTANEOUSLY.

 6            THE COURT:  NO, THEY AREN'T.  THEY'RE CROSS-MOTIONS.

 7            MR. LOBEL:  THEY'RE CROSS-MOTIONS.

 8            THE COURT:  CROSS-MOTIONS.  FOUR BRIEFS ALL TOGETHER.

 9            MR. LOBEL:  OKAY.

10            THE COURT:  YOU'LL READ ABOUT IT IN THE TRIAL PREP

11   ORDER.

12            MR. LOBEL:  THANK YOU, YOUR HONOR.

13            THE COURT:  SO APRIL -- AUGUST 22ND, I GUESS --

14        NIKKI; IS THAT ALL RIGHT?

15            THE CLERK:  YEAH.

16            THE COURT:  AT 2:00 O'CLOCK FOR HEARING THOSE

17   MOTIONS, AND THAT WILL ALSO BE FOR A FURTHER CASE

18   MANAGEMENT --

19            THE CLERK:  I'M SORRY.  ARE WE TALKING 2014?

20            THE COURT:  OH, NO.  YOU'RE RIGHT.  I'M LOOKING AT

21   THE WRONG YEAR.

22            THE CLERK:  OTHERWISE, IT WOULD BE THE 21ST.

23                    (SIMULTANEOUS COLLOQUY.)

24            THE COURT:  SO ALL THOSE DATES NEED TO BE CHANGED TO

25   THURSDAYS.  I WAS LOOKING AT THE WRONG YEAR.  I'M NOT IN MY
```

```
 1    OWN COURTROOM, SO --

 2            MR. LOBEL:  WE'D BE HAPPY FOR YOU JUST TO SEND OUT AN

 3    ORDER --

 4            THE COURT:  WELL, IT WILL COME OUT IN YOUR MINUTE

 5    ORDER.

 6            MR. LOBEL:  OKAY.

 7            THE COURT:  SO JUST -- THE DATES WILL BE ADJUSTED

 8    SLIGHTLY TO MAKE THEM LAND ON THURSDAYS.

 9            THE CLERK:  WE SHOULD DO THE AUGUST 28TH FOR THE

10    HEARING, YOUR HONOR.

11            THE COURT:  THAT WILL BE AT 2:00 O'CLOCK.

12        THERE'LL BE A FURTHER CASE MANAGEMENT CONFERENCE ON THAT

13    DATE, EVEN IF NO ONE FILES ANY CASE-DISPOSITIVE MOTIONS.

14        AND SO NOW WE'VE GOTTEN OURSELVES TO LATE AUGUST, SO THE

15    EARLIEST WE COULD TRY IT WOULD BE SEPTEMBER, OCTOBER,

16    NOVEMBER.

17        DID YOU GIVE ME A TRIAL ESTIMATE?

18            MR. LOBEL:  A TRIAL ESTIMATE FOR HOW LONG THE TRIAL

19    WOULD TAKE?

20            THE COURT:  RIGHT.

21            MR. LOBEL:  LET'S TRY TWO WEEKS.

22            THE COURT:  TWO WEEKS.

23        SO WE'RE -- WE'RE ON 2014 NOW?

24            THE CLERK:  YES.

25            MR. LOBEL:  SO NOVEMBER 1ST OR SO?
```

| 1 | **THE COURT:**  YEAH, WE COULD SAY NOVEMBER 3RD. |

1      **THE COURT:**  YEAH, WE COULD SAY NOVEMBER 3RD.

2      **MR. LOBEL:**  NOVEMBER 3RD.

3      **THE COURT:**  AND THE DEFENDANT SAYS 14 TO 30 COURT

4  DAYS, WHICH WOULD BE THREE TO SIX WEEKS.

5      **MR. HRVATIN:**  DEPENDING ON --

6      **THE COURT:**  YOU COULD DO IT IN TWO WEEKS?

7      **MR. HRVATIN:**  WE'RE ESTIMATING, YOUR HONOR,

8  WITHOUT -- WITHOUT KNOWING TO WHAT EXTENT CLAIMS ARE GOING TO

9  GO FORWARD AND -- ET CETERA, WE -- WE THOUGHT ON THE LOW END

10  ABOUT 14 COURT DAYS AND THOUGHT WE'D -- THOUGHT WE'D GIVE YOU

11  AN ESTIMATE ON THE HIGH END AS WELL.

12      **THE COURT:**  OKAY.  SO IF WE START ON THE 3RD, THERE'S

13  ONE HOLIDAY IN THERE, SO THAT WOULD BE 14 DAYS FROM THE 3RD TO

14  THE 21ST OF NOVEMBER.

15    PRETRIAL CONFERENCE ON THE 22ND OF OCTOBER.

16    THIS IS A BENCH TRIAL, TOO, SO IT'S A LOT EASIER TO

17  SHUFFLE THINGS AROUND THAT WAY.

18      **THE CLERK:**  SO WE'LL DO COURT ON FRIDAYS?

19      **THE COURT:**  I'M SORRY?

20      **THE CLERK:**  COURT ON FRIDAYS FOR THIS ONE?

21      **THE COURT:**  PROBABLY DEPENDING ON HOW THINGS ARE

22  GOING.

23      **THE CLERK:**  OKAY.

24      **THE COURT:**  SO I THINK THAT'S ALL.

25    I DO HAVE ONE OTHER MOTION UNDER SUBMISSION, BUT I'LL HAVE

```
1    TO RULE ON THAT.

2         IS THERE ANYTHING ELSE?

3              MR. HRVATIN:  NO, YOUR HONOR.

4              MR. LOBEL:  ON THE PRIOR POINT, I JUST WANTED TO SAY

5    I DON'T KNOW IF THERE ARE ANY -- IN FACT, ANY -- ANY PRISONERS

6    WHO ARE SERVING TEN OR MORE CONTINUOUS YEARS WHO HAVE

7    DETERMINATE SENTENCES, ALTHOUGH THEORETICALLY HE'S RIGHT, THAT

8    THEY COULD.  BUT I DON'T KNOW IF THERE ARE ACTUALLY ANY

9    THERE --

10             THE COURT:  I DON'T EITHER.

11             MR. LOBEL:  -- WHO ARE THAT WAY.

12             THE COURT:  I DON'T EITHER, BUT WE HAVE TO DEFINE THE

13   CLASS IN A WAY THAT IT'S -- CAN BE ASCERTAINED WHO'S IN IT.

14   AND SO IF THERE COULD BE SUCH A PERSON, WE HAVE TO KNOW

15   WHETHER THAT PERSON IS IN THE CLASS OR ISN'T IN THE CLASS, SO

16   IT HAS TO BE DEFINED IN SUCH A WAY THAT WE'D BE ABLE TO TELL.

17             MR. LOBEL:  WELL, LET'S SAY THEY SUBMITTED A PILOT

18   PROGRAM WHICH HAD THE ONLY EFFECT OF CHANGING A COMMA OR

19   GRAMMATICALLY CHANGING TITLE 15.  YOU WOULDN'T SET UP TWO

20   SUBCLASSES FOR THAT, SO THERE MUST BE SOME NOTION THAT THIS

21   PILOT PROGRAM MEANINGFULLY CHANGES THE PROCEDURES IN ORDER TO

22   HAVE TWO SUBCLASSES, WHICH I AGREE WOULD BE APPROPRIATE THAT

23   WE'D HAVE.  BUT IF WE CLAIM THAT IT DOESN'T --

24             THE COURT:  WELL, I JUST DON'T KNOW.

25             MR. LOBEL:  BUT --
```

1     **THE COURT:** AND I DON'T THINK -- OR YOU'VE TOLD ME

2  YOU DON'T KNOW EITHER, SO I CAN'T RULE ON SOMETHING UNTIL I

3  FIND OUT WHAT IT IS.

4     SO IF YOU FIND OUT THEY ARE THE SAME, THEN -- I MEAN, AT

5  THE MOMENT I'M GOING TO -- THE CLASS I'M THINKING OF

6  CERTIFYING WOULD BE ONE THAT WAS PEOPLE WHO WERE GIVEN

7  INDETERMINATE SHU SENTENCES PURSUANT TO THE TITLE 15 AS IT

8  STOOD IN ON SEPTEMBER 25TH OF 2013.

9     **MR. LOBEL:** AND WOULD HAVE BEEN REVIEWED PURSUANT TO

10  THAT BECAUSE -- BECAUSE THE ONLY QUESTION -- ALL OF THE PEOPLE

11  NOW AT THE SHU IN OUR CLASS WERE GIVEN INDETERMINATE SENTENCES

12  PURSUANT TO TITLE 15.  AND THE SUB -- THE PILOT PROGRAM

13  DOESN'T CHANGE THAT ONE BIT.  WILL NOT CHANGE THAT.

14     **THE COURT:** OKAY.  BUT TOMORROW SOME NEW PERSON MIGHT

15  GO THERE.

16     **MR. LOBEL:** OKAY.

17     **THE COURT:** AND THEY MIGHT GO THERE --

18     **MR. LOBEL:** THAT'S FINE.

19     **THE COURT:** -- UNDER THE STG, AND I DON'T -- WON'T

20  KNOW WHAT PROCEDURE THEY HAD.

21     **MR. LOBEL:** THAT'S FINE.  THANK YOU.

22     **MR. HRVATIN:** THANK YOU, YOUR HONOR.  GOOD AFTERNOON.

23     **THE COURT:** OKAY.

24     (PROCEEDINGS WERE CONCLUDED AT 3:23 P.M.)

25     --O0O--

1

2                    **CERTIFICATE OF REPORTER**

3

4          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

5     FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

6     I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

7     NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

8     HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

9     OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

10

11          _____

12          RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

13                MONDAY, DECEMBER 9, 2013

14

15

16

17

18

19

20

21

22

23

24

25