1  KAMALA D. HARRIS
   Attorney General of California
2  WILLIAM C. KWONG
   Supervising Deputy Attorney General
3  ADRIANO HRVATIN
   Deputy Attorney General
4  JILLIAN R. O'BRIEN
   Deputy Attorney General
5  MARTINE N. D'AGOSTINO
   Deputy Attorney General
6  State Bar No. 256777
    455 Golden Gate Avenue, Suite 11000
7   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5233
8  Fax:  (415) 703-5843
    E-mail:  Martine.DAgostino@doj.ca.gov
9  *Attorneys for Defendants*

10

                 IN THE UNITED STATES DISTRICT COURT
11
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
12
                        OAKLAND DIVISION
13

14

15  **TODD ASHKER, et al.,**                    C 09-05796 CW

16                              Plaintiffs,     **DEFENDANTS' MOTION TO COMPEL
                                                PLAINTIFFS TO PRODUCE
17         **v.**                               DOCUMENTS**

18                                              Local Rule 37-2
    **EDMUND G. BROWN, JR., et al ,**
19                                              Date:   January 28, 2014
                               Defendants.      Time:   10:00 a.m.
20                                              Dept.:  15th Floor, Courtroom D
                                                Judge:  Hon. Nandor Vadas
21                                              Action Filed: December 9, 2009

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

Notice of Motion and Motion ........................................................................................ 1

4

Introduction ................................................................................................................. 1

Relief Sought ............................................................................................................... 2

5

Facts    ........................................................................................................................ 7

6

      I.     Plaintiffs' Responses to Defendants' Requests for Production of
             Documents. ...................................................................................... 7

7

      II.    The Required Meet-and-Confer Discussions. ........................................ 8

8

Argument ................................................................................................................... 11

9

      I.     Plaintiffs' Failure to Assert Objections in a Timely Fashion Constitutes
             Waiver. ........................................................................................... 11

10

      II.    Plaintiffs are Improperly Withholding Documents. ............................... 12

11

      III.   Defendants' Discovery Requests Relate to Plaintiffs' Claims and are
             Relevant............................................................................................ 15

12

Conclusion ................................................................................................................ 18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**CASES**

Bretana v. International Collection Corp.
   2008 WL 4334710, N.D. Cal. Case No. C07-05934 JF (HRL) (Sept. 22, 2008) ................... 13

Davis v. Fendler
   650 F.2d 1154 (9th Cir.1981) ............................................. 11

Estelle v. Gamble
   429 U.S. 97 (1976) .................................................. 16

Helling v. McKinney
   509 U.S. 25 (1993) .................................................. 16

Richmark Corp. v. Timber Falling Consultants
   959 F.2d 1468 (9th Cir. 1992) ............................................ 11

St. Paul Reinsurance Co., Ltd. v. Comm. Fin. Corp.
   198 F.R.D. 508 (N.D. Iowa 2000) .......................................... 13

**CONSTITUTIONAL PROVISIONS**

Eighth Amendment ................................................. 15, 16

Fourteenth Amendment .............................................. 15, 17

**COURT RULES**

Federal Rule of Civil Procedure,
   Rule 26(a)(1)(A)(ii) ................................................ 15
   Rule 26(b)(1) ................................................... 13
   Rule 26(b)(2)(C) .................................................. 13
   Rule 34 ..................................................... 1, 11
   Rule 34(b)(2)(A) ................................................. 11
   Rule 37 ...................................................... 1

Local Rule
   37-2 ....................................................... 1

**OTHER AUTHORITIES**

California Code of Regulations, Title 15,
   § 3378(e) .................................................... 17
   § 3378.1 ..................................................... 17

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 28, 2014 at 10:00 a.m., or as soon thereafter as is practicable, at the Northern District of California, San Francisco Courthouse, at 450 Golden Gate Avenue, San Francisco, CA 94102, 15th Floor, Courtroom D, Defendants will move this Court for an order compelling discovery from Plaintiffs.

Defendants will move the Court under Federal Rule of Civil Procedure 37 and Local Rule 37-2 to compel Plaintiffs to produce documents that are responsive to Defendants' document requests, which were properly served under Federal Rule of Civil Procedure 34. The basis for this motion is that Plaintiffs are in possession of responsive documents that are not subject to any claim of privilege or work product, but Plaintiffs have refused to produce the documents at issue.

This motion is based on this notice and motion, the accompanying memorandum of points and authorities, the accompanying declaration, all pleadings and exhibits on file in this action, the arguments of the parties at hearing, and any other matters properly before this Court.

**INTRODUCTION**

What Defendants seek from Plaintiffs here is straightforward: documents concerning specific factual allegations in the Second Amended Complaint. They are, inarguably, relevant. Plaintiffs do not contend they are privileged. But, for some reason, Plaintiffs refuse to produce, make available for inspection, or even identify responsive documents that they admit are in their custody or control. Instead, Plaintiffs rely on late objections that fly in the face of well-settled case law.

The record with respect to Plaintiffs' responses to Defendants' requests for production is one of untimeliness and obfuscation. Plaintiffs responded to the requests two-and-a-half weeks late, without ever seeking an extension of time to respond, even though Defendants twice alerted them of their lateness. In their initial responses, Plaintiffs agreed to produce responsive documents, but eight months later, they have still not produced documents responsive to the disputed requests.

1

After waiting months for Plaintiffs to produce responsive documents, based on their representation that they would do so, Defendants sought to meet and confer over the outstanding production. Plaintiffs did not respond to Defendants' request for three weeks, and then only after Defendants made a second request for a conference. When the parties did eventually confer, Plaintiffs declined to identify which requests they had already responded to, calling it "busywork."

Shortly thereafter, Plaintiffs sent Defendants an email, stating, for the first time, that they were withholding responsive documents because they were in the public domain or already in Defendants' possession, custody, or control. After Defendants challenged Plaintiffs' position, Plaintiffs changed their objection by basing it on a distorted and inappropriately narrowed interpretation of the original requests. Specifically, Plaintiffs' new objection mischaracterized Defendants document requests as calling for documents that Plaintiffs *relied on* in drafting the Second Amended Complaint, instead of all documents *concerning* the allegations in the Second Amended Complaint. Concurrently, Plaintiffs claimed that Defendants *may* have responsive documents in their possession, custody, or control.

Fairness and the Federal Rules require that Plaintiffs produce the requested responsive documents that concern specific allegations of the operative pleading. To adequately prepare their defense and to inform their further discovery efforts, it is imperative that Defendants obtain and review the requested documents. And there is no legal basis for Plaintiffs to withhold documents that are equally available to Defendants. Accordingly, the Court should order that Plaintiffs produce all documents responsive to Defendants' requests immediately.

## RELIEF SOUGHT

Defendants seek an order requiring Plaintiffs to produce documents, or otherwise identify documents, that concern specific allegations set forth in Plaintiffs' Second Amended complaint, and that Plaintiffs concede are in their possession, custody, or control.

On February 14, 2013, Defendants propounded a series of document requests on Plaintiffs collectively, the following of which are at issue in this motion:

2

1.   **REQUEST FOR PRODUCTION NO. 4:**  All documents concerning the allegation that "[t]he solitary confinement regime at Pelican Bay, which renders it an outlier in this country and in the civilized world, violates the United States Constitution's requirement of due process and prohibition of cruel and unusual punishment, as well as the most basic human rights prohibitions of cruel, inhuman or degrading treatment," as set forth in paragraph 4 of the second amended complaint.

2.   **REQUEST FOR PRODUCTION NO. 6:**  All documents concerning the allegation that "[w]hile defendants purport to release 'inactive' gang members after six years in the SHU, in reality their so-called validation and retention decisions (and resulting indefinite SHU placement) are made without considering whether plaintiffs . . . have ever undertaken an illegal act on behalf of a gang, or whether they are — or ever were — actually involved in gang activity," as set forth in paragraph 6 of the second amended complaint.

3.   **REQUEST FOR PRODUCTION NO. 10:**  All documents concerning the allegation that "many prisoners [in the SHU at Pelican Bay] have developed sleep disorders, vision problems, and headaches," as set forth in paragraph 59 of the second amended complaint.

4.   **REQUEST FOR PRODUCTION NO. 18:**  All documents concerning the allegation that "[d]espite these serious conditions, prisoners [in Pelican Bay's SHU] with medical concerns are routinely told by prison officials that if they want better medical care for their conditions or illnesses, or improved pain management, the way to obtain adequate care is to debrief," as set forth in paragraph 78 of the second amended complaint.

5.   **REQUEST FOR PRODUCTION NO. 19:**  All documents concerning the allegation that "[t]he denial of adequate medical care at Pelican Bay is not isolated to a few doctors or correctional officials, but is rather a longstanding pattern and practice which . . . has been officially sanctioned by defendants for the purpose of coercing plaintiffs . . . to debrief," as set forth in paragraph 81 of the second amended complaint.

6.   **REQUEST FOR PRODUCTION NO. 20:**  All documents concerning the allegation that "[t]he serious mental-health impact of even a few years in solitary confinement is

3

well-documented, yet mental health care at the Pelican Bay SHU is grossly inadequate," as set forth in paragraph 82 of the second amended complaint.

7.    **REQUEST FOR PRODUCTION NO. 21:**  All documents concerning the allegation that "many prisoners [in Pelican Bay's SHU] who have not engaged in any gang-related misconduct or rule violations before validation are placed in the SHU based merely on allegations that they have associated with a gang," as set forth in paragraph 92 of the second amended complaint.

8.    **REQUEST FOR PRODUCTION NO. 22:**  All documents concerning the allegation that "California's practice of placing people in long-term SHU confinement simply because of gang association is unusual and does not comport with the general practice of other states that maintain super-maximum security prisons," as set forth in paragraph 95 of the second amended complaint.

9.    **REQUEST FOR PRODUCTION NO. 25:**  All documents concerning the allegation that "CDCR routinely and regularly denies inactive status to prisoners even where there is no evidence whatsoever of any gang activity," as set forth in paragraph 103 of the second amended complaint.

10.    **REQUEST FOR PRODUCTION NO. 27:**  All documents concerning the allegation that "[w]hen, in the rarest of cases, a long-term prisoner does achieve inactive status, even this is no guarantee of escape from solitary confinement," as set forth in paragraph 115 of the second amended complaint.

11.    **REQUEST FOR PRODUCTION NO. 28:**  All documents concerning the allegation that "CDCR informs prisoners that they can gain release from the SHU as an 'inactive' gang member if CDCR has no evidence that they have been involved in 'gang activity' for at least six years, but in practice it denies prisoners inactive status even where there is no evidence of any 'gang activity' as that word is understood by the ordinary person," as set forth in paragraph 116 of the second amended complaint.

4

1    12.  **REQUEST FOR PRODUCTION NO. 29:**  All documents concerning the

2 allegation that Plaintiffs "are not given information about an actual path out of the SHU, besides

3 debriefing," as set forth in paragraph 117 of the second amended complaint.

4    13.  **REQUEST FOR PRODUCTION NO. 30:**  All documents concerning the

5 allegation that "Defendants' policy of retaining prisoners in the SHU who are not active gang

6 affiliates, or against whom no reliable evidence exists that they present any threat of gang-related

7 violence or misconduct, is unmoored from any legitimate penological purpose or security need,"

8 as set forth in paragraph 121 of the second amended complaint.

9    14.  **REQUEST FOR PRODUCTION NO. 43:**  All documents concerning the

10 allegation that "[Plaintiffs'] psychological symptoms are precisely those reported in the literature

11 about individuals placed in prolonged solitary confinement," as set forth in paragraph 142 of the

12 second amended complaint.

13    15.  **REQUEST FOR PRODUCTION NO. 45:**  All documents concerning the

14 allegation that "numerous prisoners confined in the SHU for long periods of time have developed

15 mental illness, and some have committed or attempted suicide while in the SHU," as set forth in

16 paragraph 143 of the second amended complaint.

17    16.  **REQUEST FOR PRODUCTION NO. 46:**  All documents concerning the

18 allegation that "[a]ll prisoners confined in the SHU for prolonged periods have a significant risk

19 of descending into mental illness due to prolonged exposure to the conditions in the SHU," as set

20 forth in paragraph 143 of the second amended complaint.

21    17.  **REQUEST FOR PRODUCTION NO. 50:**  All documents concerning the

22 allegation that "extremely prolonged exposure to these deprivations of basic human needs is

23 currently imposing serious psychological pain and suffering and permanent psychological and

24 physical injury on Plaintiffs," as set forth in paragraph 181 of the second amended complaint.

25    18.  **REQUEST FOR PRODUCTION NO. 51:**  All documents concerning the

26 allegation that "[i]n addition to plaintiffs' current psychological and physical pain, the likelihood

27 that plaintiffs . . . will remain in [the] SHU for the foreseeable future subjects plaintiffs . . . to a

28

1   significant risk of future debilitating and permanent mental illness and physical harm," as set

2   forth in paragraph 182 of the second amended complaint.

3       19.   **REQUEST FOR PRODUCTION NO. 54:**  All documents concerning the

4   allegation that "[i]t should be obvious to defendants . . . that the conditions imposed on plaintiffs .

5   . . for many years cause tremendous mental anguish, suffering, and pain to such prisoners," as set

6   forth in paragraph 191 of the second amended complaint.

7       20.   **REQUEST FOR PRODUCTION NO. 55:**  All documents concerning the

8   allegation that Defendants are "retaining plaintiffs . . . [in the SHU at Pelican Bay] . . . without

9   reliable evidence that plaintiffs . . . are committing any acts on behalf of a prison gang and are

10  thus active gang members," as set forth in paragraph 202 of the second amended complaint.

11      In responses served on April 7 (a Sunday), Plaintiffs provided the following response to

12  each request:

13  **PLAINTIFFS' RESPONSE:**  Plaintiffs incorporate by reference their general

14  objections, set forth above, here.  In addition to their general objections, Plaintiffs object to the

15  request for "[a]ll documents concerning" on the grounds that it is vague, overly broad, unduly

16  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

17  Plaintiffs object to the request for "documents concerning the allegation…set forth in…the

18  second amended complaint" to the extent it seeks privileged attorney-client communications and

19  information protected by the attorney work-product doctrine.  Plaintiffs object to this request as

20  unduly burdensome, costly, and expensive to the extent that it seeks documents that are in

21  Defendants' exclusive possession, custody, or control, that are not in Plaintiffs' possession,

22  custody, or control, that are not reasonably accessible to Plaintiffs, and/or that can be obtained by

23  Defendants from other sources that are more convenient, less burdensome, and less expensive.

24  Subject to and without waiving their general and specific objections, to the extent there may be

25  any responsive, non-privileged documents in Plaintiffs [sic] possession, custody, or control,

26  Plaintiffs have already produced or will produce such documents.

27

28

6

Defs.' Mot. to Compel  (C 09-05796 CW)

1

**FACTS**

2    **I.    PLAINTIFFS' RESPONSES TO DEFENDANTS' REQUESTS FOR PRODUCTION OF
3         DOCUMENTS.**

4         On February 14, 2013, all four Defendants served on all ten named Plaintiffs the first set of

5    document requests, consisting of 59 requests.  (Declaration of Martine D'Agostino in Support of

6    Defs.' Mot. Compel ("Decl. D'Agostino") ¶2, Ex. A.)  Simultaneously, Defendant Warden sent

7    an accompanying first set of requests for production of documents and interrogatories on each

8    Plaintiff individually.  (*Id.* at ¶ 2.)  Plaintiff's responses were due on or before March 20.  (*Id.*)

9    On March 20, each Plaintiff responded to Defendant Warden's document requests and

10   interrogatories served on Plaintiffs individually.  (*Id.* at ¶ 4.)  But Plaintiffs did not serve

11   responses or objections to Defendants' document requests to all Plaintiffs, nor did they seek an

12   extension of time to respond.  (*Id.*)

13        On March 22, counsel for Defendants emailed Plaintiffs' counsel, inquiring about the

14   outstanding responses.  (*Id.* at ¶ 5, Ex. B.)  A week later, on March 29, having received no

15   response, Defendants' counsel again emailed Plaintiffs' counsel about the responses.  Plaintiffs'

16   counsel did not respond.   (*Id.* at ¶ 6, Ex. C.)  Instead, on April 7, Plaintiffs served responses and

17   objections to Defendants' document requests, nearly three weeks late, without explanation, other

18   than stating that they were "inadvertently not produced," a claim which was belied by the fact that

19   the responses were dated and signed on April 7.  (*Id.* at ¶ 7, Ex. D.)  Additionally, Plaintiffs

20   attempted to condition their acceptance of Defendants' supplemental responses to interrogatories,

21   which were timely and the subject of extensive meet-and-confer negotiations, on Defendants'

22   acceptance of Plaintiffs' untimely responses and objections to the document requests at issue

23   here.  (*Id.* at ¶ 8, Ex. E.)  On April 16, Defendants rejected this proposal, and informed Plaintiffs

24   that they had waived their objections to Defendants' document requests.  (*Id.* at ¶ 9, Ex. F.)

25        On May 22, 2013, Plaintiffs advised Defendants that they would begin their "rolling

26   production of documents."  (*Id.* at ¶ 10, Ex. G.)  On June 4, Plaintiffs produced documents,

27   consisting of approximately 4,850 pages.  (*Id.* at ¶11.)  On July 1, Plaintiffs produced a second

28   collection of documents, consisting of approximately 8,700 pages.  (*Id.*)  While some documents

7

1  were prison appeals by some of the ten named Plaintiffs, many were unrelated to any party or

2  claim in this matter.  (*Id.* at ¶12.)  For example, Plaintiffs' second document production included

3  parole-hearing transcripts and records of parole decisions for inmates other than the named

4  Plaintiffs.  (*Id.*)  Furthermore, the document production included material from a state civil case

5  completely unrelated to this matter.  (*Id.*)

6         Meanwhile, Defendants pursued discovery related to rebutting claims made by Plaintiffs in

7  their motion for class certification.  (*Id.* at ¶ 13, Ex. 11.)  On May 29, at Plaintiffs' request,

8  Defendants prioritized a single document request, propounded to each Plaintiff individually,

9  regarding his allegations of serious physical and mental harm.  (*Id.*)  Plaintiffs promised to

10  produce these documents on June 17, just ten days before the then-pending deadline to oppose

11  class certification.  (*Id.* at ¶ 14, Ex. I.)  However, Plaintiffs failed to provide the requested

12  documents on June 17, and did not respond to Defendants' repeated request for the documents.

13  (*Id.* at ¶ 15, Ex. J.)  Plaintiffs did not produce documents responsive to this request.  (*Id.*)

14  Defendants filed their opposition to class certification on July 18.  (ECF No. 242.)

15         On September 9, Plaintiffs produced approximately 2,800 pages of documents.  (Decl.

16  D'Agostino ¶19.)  This production included questionnaires created by Plaintiffs' counsel and

17  completed by inmates housed in the Pelican Bay SHU.  (*Id.*)

18         On November 12, Plaintiffs produced another 700 pages of documents.  (*Id.* at ¶ 26.)  In a

19  call on November 14, Plaintiffs' counsel stated that the 700 pages of documents were not

20  responsive to the document requests at issue here; namely, those served by Defendants

21  collectively on all Plaintiffs.  (*Id.*)

22  **II.     THE REQUIRED MEET-AND-CONFER DISCUSSIONS.**

23         The meet-and-confer process regarding this basic discovery has been extensive.  On August

24  2, counsel for Defendants sent a letter to the three members of Plaintiffs' team of attorneys who

25  had represented to Defendants that they would handle all discovery issues.  (*Id.* at ¶ 16, Ex. K.)

26  Defendants' letter inquired about the outstanding document productions, including responses to

27  the requests at issue in this motion.  (*Id.*)  Twenty days later, hearing no response, Defendants

28  forwarded the same correspondence to another member of Plaintiffs' litigation team, asking to

8

Defs.' Mot. to Compel  (C 09-05796 CW)

meet and confer.  (*Id.* at ¶17, Ex. L.)  This time, Plaintiffs' counsel promptly responded, and the parties arranged to meet-and-confer by telephone[1].  (*Id.*).

On Thursday, August 29, the parties held a meet and confer regarding various issues related to both sides' ongoing discovery efforts, including Plaintiffs' document production.  (*Id.* at ¶28.)  In that call, Defendants requested that Plaintiffs provide an account of their document production to date that identifies which documents were responsive to each request, as Defendants did in response to the Court's July 12 discovery order.  (*Id.*)  Plaintiffs declined to do so, calling it "busywork."  (*Id.*)

In a September 16 email, Plaintiffs identified, for the first time since the responses were served on April 7, 45 document requests for which they were withholding responsive documents. Plaintiffs asserted that they were withholding the documents because "they are in the public domain, and thus, are as accessible to Defendants as they are to Plaintiffs, or they are already in Defendants' possession, custody, or control."  (*Id.* at ¶ 20, Ex. M.)

On October 3, Defendants responded to Plaintiffs' September 16 email.  (*Id.* at ¶ 21, Ex. N.) Defendants stated that :  (1) when Plaintiffs served their responses on April 7, they said they had produced or otherwise agreed to produce responsive documents in their possession, custody, or control; (2) Plaintiffs failed to identify the specific requests for which they contend that responsive documents are  already in Defendants' possession, custody, or control, as opposed to those for which responsive documents are allegedly in the public domain; (3) the law is clear that the objection that documents are equally available to the requesting party is not a basis to withhold documents; and (4) Plaintiffs' responses were untimely in the first instance, and all objections were already waived.  (*Id.*)

The parties held a further meet-and-confer call on October 14.  (*Id.* at ¶ 22.)  During the call, Plaintiffs' counsel stated that the responsive documents allegedly within the public domain included scholarly articles that had been cited in Plaintiffs' prior court filings.  (*Id.*)  Nevertheless, Plaintiffs' counsel agreed to specifically identify the document requests for which Plaintiffs

---

[1] Because Plaintiffs' counsel, Carmen Bremer, is employed in Dallas, Texas, the parties did not arrange to meet in person.

1   contend that responsive documents are in the public domain, and provide citations to the articles.

2   (*Id.*)  Further, Plaintiffs' counsel asserted, for the first time, that for certain document requests, no

3   responsive documents are available because Plaintiffs relied exclusively on their own experts'

4   knowledge to draft those portions of the Second Amended Complaint.  (*Id.*)  Plaintiffs' counsel

5   agreed to specifically identify those requests.  (*Id.*)  Plaintiffs' counsel also stated that they did

6   not believe Plaintiffs were required to produce documents that were equally available to

7   Defendants because they are within Defendants possession, custody, or control, but that Plaintiffs

8   would specifically identify those document requests.  (*Id.*)  Finally, Defendants requested that

9   Plaintiffs either produce all documents that Plaintiffs maintained were equally available to

10  Defendants, or specifically identify them by bates-number.  (*Id.*)  Plaintiffs agreed to consider this

11  request.  (*Id.*)

12          On October 23, Plaintiffs sent a follow-up email that further muddied the waters by:  (1)

13  identifying a new category of document requests, relating to claims in the Second Amended

14  Complaint for which they relied on their experts' knowledge and Plaintiffs' counsels' own

15  expertise and knowledge, but for which Defendants also likely have responsive documents in

16  their possession, custody or control; and (2) narrowing the category of document requests for

17  which Plaintiffs only claimed that the responsive documents are in Defendants' possession,

18  custody, or control.  (*Id.* at ¶ 23, Ex. O.)  Once again, Plaintiffs' constantly shifting objections,

19  which Plaintiffs had already waived, left Defendants unable to evaluate their merits.  Even more

20  troubling, Plaintiffs now appeared to interpret the document requests at issue to call for

21  documents *relied on* by Plaintiffs' counsel when drafting the Second Amended Complaint.  (*Id.*)

22  But the language of the requests makes no such qualification.  (*Id.*)  The requests call for

23  documents *concerning* allegations in the Second Amended Complaint, and whether or not

24  Plaintiffs' counsel relied on them, or even knew about them at the time, is not relevant.  (*Id.*)  And

25  Plaintiffs refused to produce or specifically identify the documents they contend are equally

26  available to Defendants.

27          In an October 30 call, Plaintiffs' counsel raised yet another new objection, namely that,

28  with respect to document requests concerning allegations stated in the Second Amended

10

Defs.' Mot. to Compel  (C 09-05796 CW)

1   Complaint, responsive documents do not include documents that may have come into Plaintiffs'

2   possession since the filing of the Second Amended Complaint.  (*Id.* at ¶ 24.)  Plaintiffs' counsel

3   further stated that Plaintiffs' document production was "substantially complete," and agreed that

4   Defendants had sufficiently fulfilled their obligation to meet-and-confer regarding the sufficiency

5   of Plaintiffs' responses to document requests.  (*Id.*)  Finally, Plaintiffs' counsel stated that

6   document requests seeking material that may also be in Defendants' possession, custody, or

7   control would have been met with a substantive response by Plaintiffs if the requests had instead

8   been served as contention interrogatories asking Plaintiffs to identify responsive documents.  (*Id.*)

9   However, Plaintiffs' counsel noted that they would only provide substantive responses to those

10   not-yet-served contention interrogatories at the close of discovery.  (*Id.*)  On November 26,

11   Defendants Secretary and Chief served, on all Plaintiffs, contention interrogatories seeking

12   identification of the documents at issue in this motion.  (*Id.* at ¶ 25.)

**ARGUMENT**

I.   **PLAINTIFFS' FAILURE TO ASSERT OBJECTIONS IN A TIMELY FASHION CONSTITUTES WAIVER.**

16   Federal Rule 34 requires that parties respond to document requests within 30 days.  Fed. R.

17   Fed. R. Civ. P 34(b)(2)(A).  Although not explicitly stated in Rule 34, "it is well established that a

18   failure to object to discovery requests within the time required constitutes a waiver of any

19   objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.

20   1992)(citing *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981)).  The record on this issue

21   demonstrates that Plaintiffs waived any objections to Defendants' document requests by failing to

22   provide timely responses.

23   *First,* Plaintiffs' responses were untimely.  Plaintiffs served their responses and objections

24   two-and-a-half weeks late, despite having been alerted to the issue twice, with no explanation and

25   no attempt to expeditiously cure the deficiency.  (Decl. D'Agostino at ¶ 7, Ex. D.)

26   *Second,* Plaintiffs failed in the first place to properly notice Defendants that they intended

27   to withhold documents based on their objections, such that Defendants were unable to evaluate

28   the basis for the withholding when the objections were served.  In their original responses,

11

Defs.' Mot. to Compel  (C 09-05796 CW)

1    Plaintiffs "object[ed] to [the] request[s] as unduly burdensome, costly, and expensive to the extent

2    [they] [seek] Documents that are in Defendants' exclusive possession, custody, or control, that

3    are not in Plaintiffs' possession, custody, or control, that are not reasonably accessible to

4    Plaintiffs, and/or that can be obtained by Defendants from other sources that are more convenient,

5    less burdensome, and less expensive." (*Id.*)  Nevertheless, Plaintiffs stated they had already or

6    would produce responsive, non-privileged documents in their possession, custody, or control, thus

7    giving Defendants no notice of their intent to withhold documents.  (*Id.*)  Furthermore,

8    Defendants could not evaluate any of Plaintiffs' asserted objections in light of their document

9    production because Plaintiffs did not produce a single document on April 7.  Plaintiffs did not

10    produce any documents until June 4.  (*Id.* at ¶ 11.)  And it was not until September 16 that

11    Plaintiffs identified 45 document requests for which Plaintiffs "may not have produced"

12    responsive documents which they, at some point in the intervening 160 days, had decided not to

13    produce.  (*Id.* at ¶20, Ex. M.)  Thus, not only did Plaintiffs serve their objections two-and-a-half

14    weeks late, but Plaintiffs also waited six months to provide notice that they intended to withhold

15    responsive documents.

16      Thus, for nearly six months, Defendants had no notice that Plaintiffs were going to

17    withhold documents based on their late objections.  This conduct unfairly stalled Defendants'

18    discovery efforts.  Accordingly, the Court should deem all of Plaintiffs' objections to Defendants'

19    document requests waived.

20    **II.**     **PLAINTIFFS ARE IMPROPERLY WITHHOLDING DOCUMENTS.**

21      To the extent that Plaintiffs rely on their objection that responsive documents are "as

22    accessible to Defendants as they are to Plaintiffs," this objection is unfounded and is not a basis

23    for withholding documents.  During meet-and-confer negotiations, Plaintiffs' counsel cited to no

24    authority to support the argument that a party could refuse to produce responsive documents on

25    the ground that they are equally available to the requesting party.  (*Id.* at ¶22.)  That is because

26    the law does not support Plaintiffs' position.

27      "Under the former equity practice it was held that discovery could not be had of matters

28    already within the knowledge of the party seeking discovery.  This restriction could hardly apply

12

1  to discovery under the federal rules, since the purpose of the discovery rules is not only to elicit

2  unknown facts, but also to narrow and define the issues, and for this purpose it is often necessary

3  to use discovery about known facts."  8 FED. PRAC. & PROC. CIV. § 2014 (3d ed. 2013); *see also*

4  *St. Paul Reinsurance Co., Ltd. v. Comm. Fin. Corp.*, 198 F.R.D. 508, 514(N.D. Iowa 2000) ("The

5  plaintiffs' fifth objection to [the] request is based on the ground that it seeks information and

6  documents equally available to the propounding parties from their own records or from records

7  which are equally available to the propounding parties.  However, with respect to this objection,

8  courts have unambiguously stated that this exact objection is insufficient to resist a discovery

9  request."); *Bretana v. International Collection Corp.*, 2008 WL 4334710 at * 5, N.D. Cal. Case

10  No. C07-05934 JF (HRL) (Sept. 22, 2008).

11  　　　Even when the "equally available" objection is read in conjunction with Plaintiffs'

12  objection that the documents "can be obtained by Defendants from other sources that are more

13  convenient, less burdensome, and less expensive," a blanket refusal to produce or even identify

14  responsive documents is improper.  Fed. R. Civ. P. 26(b)(1).  Rule 26 provides, in pertinent part,

15  that courts may limit discovery where:  (a) "the discovery sought is unreasonably cumulative or

16  duplicative, or can be obtained from some other source that is more convenient, less burdensome,

17  or less expensive"; or (b) "the burden or expense of the proposed discovery outweighs its likely

18  benefit, considering the needs of the case, the amount in controversy, the parties' resources, the

19  importance of the issues at stake in the action, and the importance of the discovery in resolving

20  the issues."  Fed. R. Civ. P. 26(b)(2)(C).

21  　　　*First*, Defendants, at more than one point in meet-and-confer negotiations, offered Plaintiffs

22  a "more convenient, less burdensome, or less expensive" alternative to producing documents that

23  Plaintiffs claim had already been produced by Defendants in this action.  Defendants suggested

24  that Plaintiffs identify by Bates number the documents responsive to each of the disputed

25  requests.  (Decl. D'Agostino ¶ 22.)   Plaintiffs refused this proffered solution, and instead, did

26  nothing.  (*Id.* at ¶ 23, Ex. O.)  *Second*, Plaintiffs have not made any showing of the burden or

27  expense associated with responding to this discovery.  In fact, aside from their late, boilerplate

28

13

1   objections served on April 7, Plaintiffs have made no mention of burden or expense in reference

2   to these document requests.

3         It may be true that some responsive documents are equally available to Defendants because

4   they created the documents (in maintaining records for the ten named Plaintiffs in their custody),

5   or are generally the custodian of records of the documents.  But there is no basis in the record by

6   which Defendants may evaluate the merit of Plaintiffs' proffered basis for withholding documents.

7   Plaintiffs have never provided any description of the responsive documents that they refuse to

8   produce.  Plaintiffs merely state that they have not produced responsive documents because "they

9   are already in Defendants possession, custody, or control," or, alternatively, "Defendants likely

10  also have documents in their possession, custody, or control that relate to many of these

11  requests."  (*Id.* at ¶ 23, Ex. O.)  Because Plaintiffs refuse to identify responsive documents,

12  Defendants have no way to evaluate the validity of their claim, *e.g.* if, in fact, Defendants have all

13  responsive documents in their possession, custody, or control.

14        Defendants are entitled to use discovery practice to investigate Plaintiffs' allegations and

15  narrow and define the issues in the litigation.  Indeed, it is prudent for both parties, and the Court,

16  that they do so.  Defendants have reasonably sought discovery into specific allegations made by

17  Plaintiffs in the Second Amended Complaint that will be the subject of further extensive motion

18  practice, and potentially, trial.  Plaintiffs refuse to produce these documents, or otherwise identify

19  them in a manner that would lessen the expense and burden associated with producing them.  It

20  cannot be that Plaintiffs may use the Federal Rules to compel Defendants to conduct a scavenger

21  hunt related to specific claims Plaintiffs made in the Second Amended Complaint.

22        In sum, Plaintiffs have provided no basis to support their untimely objections, which were

23  made six months late, that they should not be obligated to produce responsive documents to 39 of

24  Defendants' 59 document requests.  Plaintiffs refuse to produce documents for a large swath of

25  Defendants' document requests, based on untimely and poorly articulated objections.  By their

26  actions, Plaintiffs have essentially taken the position that Defendants must respond to their own

27  discovery requests, a task that, under the Federal Rules, should fall to Plaintiffs.

28

14

Defs.' Mot. to Compel  (C 09-05796 CW)

1

2

**III.   DEFENDANTS' DISCOVERY REQUESTS RELATE TO PLAINTIFFS' CLAIMS AND ARE RELEVANT.**

3

4

5

6

7

8

9

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Defendants are left wondering why Plaintiffs would seek to withhold documents in this circumstance, since each and every request at issue seeks documents concerning specific allegations from the Second Amended Complaint.  The material is undoubtedly relevant, and essential to Defendants as they evaluate the merits of Plaintiffs' claims of violations of due process under the 14th Amendment, and cruel and unusual punishment in violation of the 8th Amendment.

10

11

12

13

14

15

16

17

18

19

20

It is entirely proper for Defendants to use document requests to define the issues in the litigation by narrowing the universe of documents that Plaintiffs will use to support their claims.  Plaintiffs cannot contend that Defendants are not entitled to this information.  In fact, Plaintiffs have a duty under Rule 26 to provide Defendants with "all documents…that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(ii).  Yet Plaintiffs have refused to produce, or even identify, documents concerning the claims alleged in the operative complaint.  Plaintiffs are not entitled to wait until the close of discovery to produce or otherwise identify documents supporting their claims, when Defendants have served them with adequate discovery requests, and certainly not when their justification for doing so is a flimsy objection of equal access coupled with a non-existent showing of burden.

21

22

23

24

25

26

27

Furthermore, Plaintiffs cannot claim credibly that because discovery is ongoing, it is premature for them to begin identifying documents that will be used to support their claims.  Plaintiffs must have had a basis to assert the allegations that they did in the operative complaint.  If Plaintiffs' position is that they have acquired documents concerning their allegations since the filing of the complaint, Plaintiffs have an ongoing obligation to produce those documents, particularly if they are now in Plaintiffs' possession, custody, or control, and have been for some time.

28

1    Many of the requests seek documents concerning the ten named Plaintiff's allegations of

2    mental harm that violates the Eighth Amendment.  (*See* Request Nos. 10, 20, 43, 45, 46, 50, 51,

3    54.)  For example, Request No. 43 seeks documents concerning Plaintiffs' allegation that "[their]

4    psychological symptoms are precisely those reported in the literature about individuals placed in

5    prolonged solitary confinement."  Similarly, Request No. 50 asks for documents concerning the

6    allegation that "extreme and prolonged exposure to these deprivations of basic needs is currently

7    imposing serious psychological pain and suffering and permanent psychological and physical

8    injury on Plaintiffs."  Likewise, Request No. 51 seeks documents concerning the allegation that

9    "[i]n addition to plaintiffs' current psychological and physical pain, the likelihood that

10   plaintiffs…will remain in [the] SHU for the foreseeable future subjects plaintiffs…to a significant

11   risk of future debilitating and permanent mental illness and physical harm."  Plaintiffs' allegedly

12   serious physical and mental harm are indisputably at issue in this action.  *Estelle v. Gamble*, 429

13   U.S. 97, 102 (1976).  Additionally, Plaintiffs' claims of future harm are at issue, as an

14   "unreasonable risk of serious damage" to mental or physical health may form the basis for an

15   Eighth Amendment violation.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

16       Other requests solicit documents related to Plaintiffs' claims that Defendants violate their

17   due-process rights.  (*See* Request Nos. 6, 21, 22, 25, 27, 28, 29, 55.)  Specifically, in the Second

18   Amended Complaint, Plaintiffs question "whether a legitimate penological reason exists for

19   defendants to incarcerate prisoners for decades…simply because they are members or associates

20   of a gang, without demonstrating that they are currently engaged or have been recently engaged

21   in some illegal or wrongful gang-related misconduct."  (Pls.' Second Am. Compl., ECF No. 136

22   at 37.)  Request No. 25 seeks documents concerning the allegation that "CDCR routinely and

23   regularly denies inactive status to prisoners even when there is no evidence whatsoever of gang

24   activity."  Request No. 55 seeks documents concerning the allegation that Defendants are

25   "retaining plaintiffs…[in the SHU at Pelican Bay]…without reliable evidence that plaintiffs…are

26   committing any acts on behalf of a prison gang and are thus active gang members."  Plaintiffs

27   have directly placed their status, or lack of status, as gang members and associates at issue.

28   Defendants must be permitted to collect documentation as to the basis of Plaintiffs' claim that

16

1    there is "no evidence whatsoever" or no "reliable evidence" that they are currently engaged in, or

2    recently have engaged in, gang activity.

3       Additionally, Plaintiffs claim they are not afforded "meaningful review of their

4    confinement, in violation of the Due Process clause of the Fourteenth Amendment." (ECF No.

5    136 at 36.) Defendants propounded requests related to Plaintiffs' contentions regarding six-year

6    "inactive" reviews under California Code of Regulations, title 15, section 3378(e) (Request Nos.

7    6, 25, 27, 28). Another group of requests seek information related to Plaintiffs' claim that the

8    debriefing process, as set forth in California Code of Regulations, title 15, section 3378.1, is

9    "tortur[e]". (ECF No. 136 at 33.) (Request Nos. 18, 19, 29)

10       Finally, Defendants propounded requests seeking documents related to Plaintiffs'

11    allegations that "California's uniquely harsh and regime of prolonged solitary confinement"

12    "renders [it] an outlier in this country and in the civilized world." (ECF No. 136 at 2-3.)

13    (Request Nos. 8, 22) For the first time, on October 23, Plaintiffs raised the objection to these

14    requests, that they "relied on…discussions with their experts[,]…Plaintiffs' and their counsel's

15    own knowledge[,] and/or…information and belief in drafting the Second Amended Complaint."

16    (Decl. D'Agostino at ¶ 23, Ex. O.) Plaintiffs added the caveat that "Defendants likely also have

17    documents in their possession, custody or control that relate to many of these requests, which are

18    the subject of Plaintiffs' ongoing discovery efforts." (*Id.*) But Defendants' document requests

19    call for documents "concerning" allegations in the Second Amended Complaint, not documents

20    "relied" upon by Plaintiffs or their counsel when drafting the Second Amended Complaint. Even

21    a casual reader of the Second Amended Complaint could discern that Plaintiffs contend that

22    California's practice of housing inmates in the Pelican Bay SHU "renders [it] an outlier in this

23    country and in the civilized world." Defendants are entitled to the purported evidence Plaintiffs

24    intend to use to substantiate this claim.

25       Plaintiffs are withholding documents that clearly concern the subject matter of this

26    litigation, and, supposedly, should prove up Plaintiffs' claims. Although the parties seem to agree

27    that the documents are relevant and not privileged, Plaintiffs refuse to produce them.

28

1    Nevertheless, Defendants are entitled to use discovery to learn the basis for Plaintiffs' allegations,

2    define the contested facts in this litigation, and adequately prepare their defense.

3                                              **CONCLUSION**

4           Defendants are entitled to the documents that concern specific allegations in Plaintiffs'

5    complaint.  Plaintiffs have admitted that these documents exist but have unreasonably refused to

6    produce them or even identify them for Defendants.  Plaintiffs have stalled for long enough.

7    There is no basis in law for Plaintiffs to withhold these documents and Plaintiffs have waived any

8    objections by failing to respond to Defendants' requests in a timely fashion.  Defendants

9    respectfully request that the Court order Plaintiffs to produce documents responsive to the

10   disputed requests, which Plaintiffs concede they have in their possession, custody, or control.

11

12   Dated:  December 17, 2013                    Respectfully Submitted,

13                                                KAMALA D. HARRIS
                                                  Attorney General of California
14                                                WILLIAM C. KWONG
                                                  Supervising Deputy Attorney General
15

16

17                                                *s/ Martine N. D'Agostino*
                                                  MARTINE N. D'AGOSTINO
18                                                Deputy Attorney General
                                                  *Attorneys for Defendants*
19
     SF2012204868
20   40843664.doc

21

22

23

24

25

26

27

28

                                                   18