IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TODD ASHKER, et al.,

    Plaintiffs,

  v.

GOVERNOR OF THE STATE OF
CALIFORNIA, et al.,

    Defendants.

No. C 09-5796 CW

ORDER GRANTING IN
PART MOTION FOR
CLASS
CERTIFICATION;
DENYING MOTION TO
INTERVENE (Docket
Nos. 195, 233)

_____/

  Plaintiffs, a group of Pelican Bay State Prison inmates, move
for class certification to pursue claims under the Eighth and
Fourteenth Amendments of the United States Constitution.
Defendants, the Governor of the State of California, Secretary of
the California Department of Corrections and Rehabilitation
(CDCR), Chief of CDCR's Office of Correctional Safety, and Warden
of Pelican Bay State Prison, oppose the motion.  After considering
the parties' submissions and oral argument, the Court grants the
motion in part and denies it in part.  In addition, the Court
denies the California Correctional Peace Officers Association's
(CCPOA) motion to intervene.

BACKGROUND

  Plaintiffs are ten inmates who live or recently lived in
solitary confinement at Pelican Bay, a maximum security prison
located in Crescent City, California.  Five of these inmates are
currently assigned to the Security Housing Unit (SHU), the "most
controlled and restrictive housing available" at the prison, where
each has lived for over a decade.  Swift Decl. ¶ 4.  The other
five inmates were recently transferred out of the Pelican Bay SHU.

United States District Court
For the Northern District of California

Although CDCR operates SHUs at three other correctional facilities, this action focuses exclusively on the conditions of confinement within the Pelican Bay SHU.

Under CDCR's current regulations, inmates may be assigned to the SHU if their "conduct endangers the safety of others or the security of the institution."  Cal. Code Regs. tit. 15, § 3341.5; accord Harrington Decl. ¶ 3.  Any inmate who is a member or associate of a gang is "deemed to be a severe threat to the safety of others or the security of the institution and will be placed in [the] SHU for an indeterminate term."  Cal. Code Regs. tit. 15, § 3341.5(c)(2)(A).  Because all of the Plaintiffs in this case were "validated" by CDCR as gang members or associates, they were all assigned to the SHU for an indeterminate term.

Plaintiffs allege that SHU inmates live in almost total isolation.  They spend at least twenty-two and a half hours per day in windowless, concrete cells with perforated steel doors and typically leave only to shower or exercise alone in an enclosed pen.  Swift Decl. ¶ 8; Ashker Decl. ¶¶ 3, 9-11.  Although SHU inmates sometimes speak to each other through the perforations in their cell doors, they cannot communicate face-to-face and have no contact with inmates in Pelican Bay's general population.  Ashker Decl. ¶¶ 20-22; Zubiate Decl. ¶ 28.  They also have limited contact with friends and family outside the prison.  Ashker Decl. ¶¶ 17-19; Dewberry Decl. ¶ 11; Esquivel Decl. ¶¶ 7-8; Franco Decl. ¶¶ 7-8; Reyes Decl. ¶¶ 3-6; Ruiz Decl. ¶ 10; Troxell Decl. ¶ 5.

Plaintiffs filed this putative class action in September 2012, at which time all ten were assigned to the Pelican Bay SHU. Their complaint alleges that long-term confinement inside the SHU

United States District Court
For the Northern District of California

violates the Eighth Amendment's prohibition on cruel and unusual punishment and that CDCR's procedures for assigning inmates to the SHU violate the Fourteenth Amendment's guarantee of procedural due process.  Docket No. 136, Second Am. Compl. (2AC) ¶¶ 177-202. Plaintiffs seek an injunction compelling CDCR to alleviate certain conditions of confinement in the SHU, adopt new procedures for reviewing SHU assignments, and transfer every inmate who has been assigned to the SHU for more than ten years into the general prison population.  Id. at ¶ 202.

Defendants moved to dismiss the complaint in December 2012. They argued, among other things, that Plaintiffs' due process claim was moot because CDCR had implemented a new set of procedures, collectively known as the "Security Threat Group" (STG) pilot program, in October 2012 to review existing SHU assignments and transfer certain SHU inmates into the general population.  The Court rejected that argument in its April 2013 order denying Defendants' motion to dismiss.  It found that the implementation of the STG pilot program was not sufficient to render Plaintiffs' claims moot because CDCR had not implemented the program permanently and, at that time, all ten Plaintiffs remained subject to the preexisting procedures.

Defendants filed their answer to the complaint on April 30, 2013.  Two days later, on May 2, 2013, Plaintiffs moved for class certification under Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2).  In June 2013, CCPOA moved to intervene as a defendant. It sought intervention under Rule 24(a) or, in the alternative, under Rule 24(b).

United States District Court
For the Northern District of California

Those motions remained pending for nearly a year while the parties engaged in settlement negotiations.  On May 14, 2014, however, the parties notified the Court that they were not able to reach a settlement.  They filed a stipulation to lift the stay of discovery that the Court had previously entered to allow them to focus on settlement negotiations.  The Court approved that stipulation on May 16, 2014 and, at the parties' request, set a case management conference for June 4, 2014.

LEGAL STANDARDS

I.   Class Certification

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if

>     (1)  the class is so numerous that joinder of all members is impracticable;
>
>     (2)  there are questions of law or fact common to the class;
>
>     (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
>     (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs must also establish that one of the subsections of Rule 23(b) is met.  In the instant case, Plaintiffs seek certification under subsections (b)(1) and (b)(2).

4

Subsection (b)(1) applies where the prosecution of separate actions by individual members of the class would create the risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class," or of adjudications "which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1).

Subsection (b)(2) applies where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. Proc. 23(b)(2).  "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) actions.  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

Regardless of what type of class the plaintiff seeks to certify, it must demonstrate that each element of Rule 23 is satisfied; a district court may certify a class only if it determines that the plaintiff has borne this burden.  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977).  In general, the court must take the substantive allegations of the complaint as true.  Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975).  However, the court must conduct a "'rigorous analysis,'" which may require it "'to probe behind the pleadings before coming to rest on the certification question.'"  Wal-Mart

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Falcon, 457 U.S. at 160-61).  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."  Dukes, 131 S. Ct. at 2551.  To satisfy itself that class certification is proper, the court may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties.  Blackie, 524 F.2d at 901 n.17.  "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'"  Aburto v. Verizon Cal., Inc., 2012 WL 10381, at *2 (C.D. Cal.) (quoting Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011)).  Ultimately, it is in the district court's discretion whether a class should be certified.  Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003); Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991).

## II.  Intervention

To intervene as a matter of right under Rule 24(a)(2), an applicant must claim an interest the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without the applicant.  Wilderness Society v. U.S. Forest Serv., 630 F.3d 1173, 1177 (9th Cir. 2011).  The Ninth Circuit applies a four-part test to motions under Rule 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the

1

applicant's interest must be inadequately
protected by the parties to the action.

2  Id. (quoting Sierra Club v. EPA, 995 F.2d 1478, 1481 (9th Cir.

3  1993)).

4       The Ninth Circuit interprets Rule 24(a)(2) broadly in favor

5  of intervention.  Id. at 1179.  In evaluating a motion to

6  intervene under Rule 24(a)(2), a district court is required "to

7  take all well-pleaded, nonconclusory allegations in the motion

8  . . . as true absent sham, frivolity or other objections."  Sw.

9  Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir.

10 2001).

11      Alternatively, a court may, in its discretion, permit

12 intervention under Rule 24(b)(1)(B) by anyone who "has a claim or

13 defense that shares with the main action a common question of law

14 or fact."  In exercising its discretion, a court should "consider

15 whether the intervention will unduly delay or prejudice the

16 adjudication of the original parties' rights."  Fed. R. Civ. P.

17 24(b)(3).

18                            DISCUSSION

19 I.  Motion for Class Certification

20      Plaintiffs move to certify two classes of inmates under Rules

21 23(b)(1) and 23(b)(2).  First, they move to certify a "Due Process

22 Class" consisting of all inmates "serving indeterminate sentences

23 at the Pelican Bay SHU on the basis of gang validation, none of

24 whom have been or will be afforded meaningful review or

25 procedurally adequate review of their confinement."  Docket No.

26 195, Class Cert. Mot. 1-2.  Second, they move to certify an Eighth

27

28

Amendment Class[1] consisting of all inmates "who are now, or will be in the future, imprisoned by Defendants at the Pelican Bay SHU under the conditions and pursuant to the policies described below for longer than 10 continuous years."  Id. at 2.

Defendants contend that Plaintiffs' proposed definition of the Due Process Class is ambiguous and that neither the proposed Due Process Class nor the proposed Eighth Amendment Class satisfies the requirements of Rule 23.  As explained more fully below, these arguments do not justify denying class certification.

A.   Due Process Class Definition

Plaintiffs' proposed Due Process Class contains the terms "meaningful review" and "procedurally adequate review," neither of which is defined in the complaint.  Defendants contend that, because these terms lack a concrete meaning, the proposed class definition is ambiguous and precludes certification.  See Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009) (denying class certification because an ambiguous term in proposed class definition made "no reference to objective criteria" and meant that "the class members themselves might not know if they were members of the class"); Whiteway v. FedEx Kinko's Office & Print Servs., 2006 WL 2642528, at *3 (N.D. Cal.) ("An implied prerequisite to certification is that the class must be sufficiently definite.").

---

[1] Plaintiffs originally characterized the Eighth Amendment Class as a "subclass" of the Due Process Class.  However, at the hearing, they acknowledged that their proposed definition of the Eighth Amendment Class conceivably could encompass inmates who are not members of the proposed Due Process Class.  Accordingly, this order refers to the Eighth Amendment Class as a separate class rather than a subclass.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Although Defendants are correct that Plaintiffs' proposed class definition is ambiguous, this ambiguity does not preclude certification of the Due Process Class.  As Plaintiffs acknowledged at the hearing, the ambiguous terms can simply be removed from their proposed class definition.  Thus modified, the Due Process Class would simply consist of all Pelican Bay inmates who are currently assigned to an indeterminate SHU term on the basis of gang validation.  This amended class definition is both precise and inclusive of all inmates who would benefit from the declaratory and injunctive relief that Plaintiffs seek.  Furthermore, CDCR's own regulations treat this group as a distinct class and provide a straightforward framework for distinguishing between class members and non-members.  <u>See</u> Cal. Code Regs. tit. 15, § 3341.5(c) (distinguishing "Indeterminate SHU Segregation" from "Determinate SHU Segregation" and requiring all validated gang members and associates to be assigned to indeterminate terms).  Thus, while the ambiguous terms of Plaintiffs' proposed Due Process Class definition might require that the class definition be amended, they do not require that class certification be denied.

B.   Rule 23(a)(1): Numerosity

Defendants have acknowledged that there are "approximately 1,100 inmates housed in Pelican Bay's SHU, the majority of which are validated gang members and associates."  Swift Decl. ¶ 6.  Plaintiffs assert that several hundred of these inmates have lived in the SHU for over a decade.  These numbers are sufficient to satisfy the numerosity requirement for both the proposed Due Process Class and the proposed Eighth Amendment Class.

C.   Rule 23(a)(2): Commonality

As noted above, Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit has explained that this rule does not preclude class certification if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).  Indeed, Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiffs here have identified common issues of law and fact for both proposed classes.

1.   Due Process Class

Defendants contend that the implementation of the STG pilot program precludes certification of the proposed Due Process Class. They note that, under the STG program, CDCR has begun conducting case-by-case reviews of all current SHU assignments and has already transferred more than one hundred inmates from SHUs into the general prison population.  Hubbard Decl. ¶ 11.  Because some SHU inmates have received these new procedural protections and others have not, Defendants contend that Plaintiffs cannot establish commonality.

This argument does not justify denying class certification. Even if some SHU inmates at Pelican Bay have been transferred to

other units or received additional procedural protections under the STG program, Defendants have not shown that <u>all</u> Pelican Bay SHU have received such protections.  Many of the inmates in the Pelican Bay SHU remain subject to the SHU assignment procedures that were in place before the STG program was implemented and which remain codified in CDCR's official regulations.  Because some inmates remain subject to these procedures -- which represent the core of the "system-wide practice" that Plaintiffs seek to challenge here -- Plaintiffs have satisfied Rule 23(a)'s commonality requirement with respect to their proposed Due Process Class.  <u>Armstrong v. Davis</u>, 275 F.3d 849, 868 (9th Cir. 2001) ("We have previously held, in a civil-rights suit, that commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."), <u>abrogated on other grounds by Johnson v. California</u>, 543 U.S. 499, 504-05 (2005); <u>see also Dukes</u>, 131 S. Ct. at 2254 (recognizing that a "<u>uniform</u> employment practice . . . would provide the commonality needed for a class action" (emphasis added)).

That said, any inmates who have been placed in the STG program or transferred out of the Pelican Bay SHU, must be excluded from the proposed Due Process Class.  Plaintiffs' due process claim, as currently plead, only challenges the procedures that were in place before CDCR implemented the STG program.  Thus, inmates who were placed in the STG program were subject to a different set of procedures and lack commonality with inmates who have only received the preexisting procedures.  As explained at the hearing, if Plaintiffs seek to challenge the STG program procedures, they must seek leave to amend their due process claim.

United States District Court
For the Northern District of California

2.   Eighth Amendment Class

Defendants contend that Plaintiffs' Eighth Amendment claim "presents a host of individual questions not subject to classwide proof." Opp. 18. As noted above, however, the mere existence of individual legal and factual questions is not sufficient to preclude class certification. See Hanlon, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule."). Rather, to satisfy Rule 23(a)'s commonality requirement, a plaintiff need only show that his or her claims raise some questions that are amenable to classwide adjudication.

Plaintiffs have satisfied this requirement here. Their Eighth Amendment claim raises several common questions of law and fact including (1) whether long-term confinement inside the Pelican Bay SHU exposes inmates to a "sufficiently serious" deprivation of basic human needs and (2) whether Defendants acted with a "sufficiently culpable state of mind" in assigning inmates to the SHU for indefinite terms. See generally Farmer v. Brennan, 511 U.S. 825, 834 (1994) (explaining that, to establish that a prisoner's Eighth Amendment rights have been violated, "the deprivation alleged must be, objectively, 'sufficiently serious'" and the "prison official must have a 'sufficiently culpable state of mind'"). Plaintiffs have presented evidence to suggest that the conditions inside the Pelican Bay SHU and the mental health risks associated with long-term confinement there are common to all putative class members. See, e.g., Kupers Decl. ¶ 15 ("[T]here is a clear and consistent pattern in the stories articulated by these 10 men about the psychological consequences of spending a decade or longer in the SHU."); Haney Decl. ¶ 10

("[L]ong-term exposure to precisely the kinds of conditions and practices that . . . appear to currently exist in the [Pelican Bay SHU] places prisoners at grave risk of psychological harm.").

The fact that different inmates may exhibit different symptoms or respond differently to prolonged SHU confinement does not suffice to defeat commonality.  Nor does the fact that some inmates personally believe that they did not suffer any psychological harm while they were confined in the SHU.  Numerous courts, including the Ninth Circuit, have held that "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality" in class actions challenging a "system-wide" policy.  Armstrong, 275 F.3d at 868 (rejecting California prison officials' argument that "a wide variation in the nature of the particular class members' disabilities precludes a finding of commonality"); see also Parsons v. Ryan, 289 F.R.D. 513, 523 (D. Ariz. 2013) (rejecting Arizona prison officials' argument "that to determine whether these conditions pose an unconstitutional risk of harm, the Court must assess each individual class member's exposure to the alleged conditions"), appeal docketed, No. 13-16396 (9th Cir. July 10, 2013).  Indeed, "classes have been certified in a legion of civil rights cases where commonality findings were based primarily on the fact that defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct."  Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994).  Accordingly, because Plaintiffs have identified questions of fact and law that are common to all class

United States District Court
For the Northern District of California

members, they have satisfied the commonality requirement with respect to the Eighth Amendment Class.[2]

As with the Due Process Class, however, any inmates who have been transferred out of the Pelican Bay SHU must be excluded from the Eighth Amendment Class.  These inmates lack commonality with inmates who remain housed in the Pelican Bay SHU and would not benefit from any of the injunctive relief that Plaintiffs are seeking here.  If Plaintiffs seek to challenge the conditions of confinement in any other housing unit or correctional facility, they must seek leave to amend their Eighth Amendment claim.

D.   Rule 23(a)(3): Typicality

Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156 (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted).  This requirement is meant to ensure "that the interest of the named representative aligns with the interests of the class."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.

---

[2] Defendants continue to cite Madrid v. Gomez, 889 F. Supp. 1146 (1995), for the proposition that Plaintiffs' "alleged harms are insufficient to state a claim" under the Eighth Amendment.  Opp. 19. This argument is not properly raised in an opposition to class certification and, even if it was, the Court has already rejected it. As the Court explained in its prior order, Madrid dealt only with inmates who had been confined in the SHU for less than three years and "expressly left open the possibility that longer periods of confinement in the SHU -- such as those alleged here -- could implicate Eighth Amendment concerns."  Docket No. 191, April 9, 2013 Order, at 10; see also Madrid, 889 F. Supp. at 1267 ("We can not begin to speculate on the impact that Pelican Bay SHU conditions may have on inmates confined in the SHU for periods of 10 or 20 years or more.").  Thus, to the extent Defendants contend that Madrid requires denial of class certification, this argument is not persuasive.

United States District Court
For the Northern District of California

1992).  Rule 23(a)(3) is satisfied where the named plaintiffs have the same or similar injury as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members have been injured by the same course of conduct.  Id.  Class certification is inappropriate, however, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  Id. (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990)).

     As noted above, five of the named Plaintiffs in this case are currently assigned to an indeterminate term in the Pelican Bay SHU on the basis of gang validation.  Each of these inmates has lived in the SHU for at least ten years.  Defendants have not identified any unique defenses that they might raise against these five Plaintiffs and, instead, argue that Plaintiffs cannot establish typicality for the same reasons they cannot establish commonality.  These arguments fail for the reasons discussed above.  See Armstrong, 275 F.3d at 869 ("We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct."); LaDuke v. Nelson, 762 F.2d 1318, 1332 (9th Cir. 1985) ("The minor differences in the manner in which the representative's Fourth Amendment rights were violated does not render their claims atypical of those of the class." (footnote omitted)); Hanlon, 150 F.3d at 1020 ("Under the rule's permissive standards, representative claims are 'typical'

1  if they are reasonably co-extensive with those of absent class

2  members; they need not be substantially identical.").

3      In contrast to the five named Plaintiffs who remain housed in

4  the Pelican Bay SHU, the five inmates who have been transferred to

5  other units or facilities are not typical of other putative class

6  members.  The transferred individuals have been subject to a

7  different set of housing assignment procedures than the putative

8  class and now live under different conditions of confinement.  As

9  such, they may be subject to a unique set of defenses and do not

10  satisfy the requirements of Rule 23(a)(3).

11      E.   Rules 23(a)(4) & 23(g)(2): Adequacy

12      Rule 23(a)(4) requires that class representatives "will

13  fairly and adequately protect the interests of the class."  Fed.

14  R. Civ. P. 23(a)(4).  Rule 23(g)(2) imposes a similar requirement

15  on class counsel.

16      Defendants contend that two of Plaintiffs' attorneys, Marilyn

17  McMahon and Carol Strickman, cannot adequately serve as class

18  counsel in this case because they are "fact witnesses" who may be

19  called to testify about their communications with Plaintiffs

20  regarding recent prisoner hunger strikes.  Opp. 23.[3]  Defendants

21  have not explained how this testimony is relevant to this case nor

22  how it would be admissible.  Any communications between Plaintiffs

23  and Ms. McMahon and Ms. Strickman would not only be subject to the

24  attorney-client privilege but also likely constitute hearsay.

25

26      [3] Defendants also initially argued that Ms. McMahon and Ms.

27  Strickman -- along with a third attorney, Anne Weills -- were inadequate
   because Plaintiffs failed to submit evidence of their qualifications to

28  serve as class counsel.  Because Plaintiffs subsequently submitted these
   attorneys' CVs with their reply brief, this argument is now moot.

Thus, because Defendants have not identified any legitimate grounds to disqualify Plaintiffs' counsel, Plaintiffs have satisfied the adequacy requirements of Rule 23(g).

As noted above, the five named Plaintiffs who have been transferred out of the Pelican Bay SHU pursuant to the STG program are not typical class members.  This renders them inadequate class representatives under Rule 23(a)(4).  Thus, only the five named Plaintiffs who currently remain housed in the Pelican Bay SHU may adequately represent the class.

F.   Rule 23(b)(1): Risk of Inconsistent Adjudications

As noted above, a class may be certified under Rule 23(b)(1) if the prosecution of separate actions by individual members of the class would create the risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  If each of the hundreds of proposed members of either the Due Process Class or the Eighth Amendment Class were forced to adjudicate his claims individually, there would be a significant risk of inconsistent judgments.  Certification of both proposed classes is therefore appropriate under Rule 23(b)(1).

G.   Rule 23(b)(2): Grounds General Applicable to the Class

"Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (2009) (quoting Rule 23(b)(2)).  "In a class-action lawsuit, Rule 23(b)(2) enables a trial court to determine the appropriateness of

**United States District Court**
For the Northern District of California

system-wide relief based on the individual experiences of the named plaintiffs." <u>Armstrong</u>, 275 F.3d at 871.

Plaintiffs in this case seek an injunction to cure alleged violations of their Eighth and Fourteenth Amendment rights resulting from a uniform set of CDCR policies and procedures. These claims fall squarely within the realm of class claims covered by Rule 23(b)(2). <u>Parsons</u>, 289 F.R.D. at 524 ("Plaintiffs' claims for injunctive relief stemming from allegedly unconstitutional conditions of confinement are the quintessential type of claims that Rule 23(b)(2) was meant to address."); <u>see also</u> <u>Baby Neal</u>, 43 F.3d at 58-59 ("It is the (b)(2) class which serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment.").

Nevertheless, Defendants contend that certification is inappropriate because Plaintiffs' requested injunctive relief "exceeds the boundaries of Rule 65(d)." Opp. 25. Defendants have not cited any authority to support this argument and numerous courts have expressly held that plaintiffs are not required to satisfy Rule 65(d) in order to obtain class certification. <u>See, e.g.</u>, <u>Shook v. Board of County Comm'rs</u>, 543 F.3d 597, 605 n.4 (10th Cir. 2008) (explaining that plaintiffs need not "come forward with an injunction that satisfies Rule 65(d) with exacting precision at the class certification stage"). Indeed, in many class actions challenging the constitutionality of a system-wide policy or practice, it would be difficult for a plaintiff to determine precisely the appropriate scope of injunctive relief at

United States District Court
For the Northern District of California

the class certification stage.  Defendants' Rule 65(d) argument therefore does not justify denying class certification here.

Defendants next contend that Plaintiffs' requested injunctive relief "contravenes" the Prison Litigation Reform Act (PLRA) because it would have an "adverse impact on public safety."  Opp. 25.  As with their Rule 65(d) argument, Defendants have failed to cite any case law to support this contention.  The provision of the PLRA that they cite in their brief governs the scope of injunctive relief that a federal court may issue in a "prison conditions" case after liability has been assessed.  18 U.S.C. § 3626(a)(1) ("Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.").  It does not impose any requirements on plaintiffs seeking class certification under Rule 23(b)(2).  Accordingly, it does not preclude class certification here.

II.  Motion to Intervene

CCPOA is a labor union that represents roughly 27,000 CDCR correctional officers across the State of California.  It moves to intervene as of right on the grounds that it has an interest in protecting the safety of its members.  It contends that Plaintiffs' requested injunctive relief -- particularly the transfer of any inmates out of the Pelican Bay SHU -- would jeopardize the safety of CDCR officers.  In the alternative, it argues that it should be granted leave to intervene permissively because its motion is timely and it has defenses that share common questions of law or fact with the main action.  Neither of these arguments is persuasive.

**United States District Court**
For the Northern District of California

CCPOA has not explained why Defendants cannot adequately protect the safety interests of CDCR officers in this litigation. Wilderness Society, 630 F.3d at 1177 (requiring that "the applicant's interest must be inadequately represented by the parties to the action"). In fact, it concedes that it plans to present "substantially the same defenses as those the [current] defendants are anticipated to present based on their motion to dismiss." Docket No. 233, CCPOA Mot. Intervene 8. CCPOA has also failed to explain persuasively how its intervention in this action would actually help it achieve its stated objective of preventing any inmates from being transferred out of the Pelican Bay SHU. As noted above, CDCR has already begun transferring inmates out of the Pelican Bay SHU independently, even as these proceedings were stayed. It is therefore not clear that CCPOA's intervention in this action would actually alter CDCR's existing plans or procedures. Thus, because intervention is not necessary to protect the safety of CDCR employees, CCPOA may not intervene as of right.[4]

Permissive intervention is also inappropriate here. The only potential defenses that CCPOA would raise are entirely duplicative of arguments that Defendants have already raised, as noted above. Furthermore, CCPOA waited nearly a year after Plaintiffs filed their 2AC before it moved to intervene even though its interests

---

[4] Notably, courts in this and other districts routinely dismiss civil rights claims asserted by prisoners against CCPOA on the grounds that CCPOA is not a proper defendant in such actions. See, e.g., Page v. Acosta, 2009 WL 1357453, at *2 (N.D. Cal.) (dismissing Pelican Bay inmate's claims against CCPOA and noting that the "fact that an alleged wrongdoer is the member of a union does not support liability for the union").

**United States District Court**
For the Northern District of California

1   in this case became "ripe" when that complaint was filed.  <u>See</u>

2   CCPOA Mot. Intervene 6 (stating that "the issues affecting CCPOA's

3   interests did not become ripe until the second amended complaint

4   was filed" in September 2012).  For these reasons, intervention by

5   CCPOA at this stage would neither be productive nor timely.

6       Although CCPOA's request to intervene is denied, the Court

7   will grant CCPOA leave to file an amicus brief in support of

8   Defendants' dispositive motion.

9                             CONCLUSION

10      For the reasons set forth above, Plaintiffs' motion for class

11  certification (Docket No. 195) is GRANTED in part and DENIED in

12  part.

13      The Court certifies the following Due Process Class under

14  Rules 23(b)(1) and 23(b)(2): all inmates who are assigned to an

15  indeterminate term at the Pelican Bay SHU on the basis of gang

16  validation, under the policies and procedures in place as of

17  September 10, 2012.

18      The Court certifies the following Eighth Amendment Class

19  under Rules 23(b)(1) and 23(b)(2): all inmates who are now, or

20  will be in the future, assigned to the Pelican Bay SHU for a

21  period of more than ten continuous years.

22      The Court certifies the five named Plaintiffs who are

23  currently housed in the Pelican Bay SHU to serve as class

24  representatives and certifies Plaintiffs' counsel to serve as

25  class counsel.

26      CCPOA's motion to intervene (Docket No. 233) is DENIED.

27  CCPOA may submit an amicus brief in support of Defendants'

28  dispositive motion.  The amicus brief shall not exceed fifteen

pages and shall not repeat any arguments raised by Defendants in their motion.

A case management conference will be held at 2:00 p.m. on June 4, 2014.

IT IS SO ORDERED.

Dated: 6/2/2014

CLAUDIA WILKEN
United States District Judge