```
 1                                        PAGES 1 - 42

 2                        UNITED STATES DISTRICT COURT

 3                       NORTHERN DISTRICT OF CALIFORNIA

 4                 BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

 5     TODD ASHKER, ET AL.,             )
                                        )
 6                   PLAINTIFFS,        )
                                        )
 7       VS.                            ) NO. C 09-5796 CW
                                        )
 8     GOVERNOR OF THE STATE OF CALIFORNIA,)
         ET AL.,                        )
 9                                      )  OAKLAND, CALIFORNIA
                     DEFENDANTS.        )  THURSDAY
10                                      )  FEBRUARY 12, 2015
       _ _____)  2:00 O'CLOCK P.M.

11

12                      TRANSCRIPT OF PROCEEDINGS
```

**APPEARANCES:**

**FOR PLAINTIFFS:**          **CENTER FOR CONSTITUTIONAL RIGHTS**
                             666 BROADWAY, 7TH FLOOR
                             NEW YORK, NEW YORK 10012
                   **BY:**   **JULES LOBEL, ESQUIRE**
**AND**
                             **LEGAL SERVICES FOR PRISONERS WITH
                             CHILDREN**
                             1540 MARKET STREET, SUITE 490
                             SAN FRANCISCO, CALIFORNIA 94102
                   **BY:**   **CAROL STRICKMAN,**
                             **ATTORNEY AT LAW**


FURTHER APPEARANCES NEXT PAGE
*REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR*

```
 1   FURTHER APPEARANCES:

 2   ALSO FOR PLAINTIFFS:
     CALIFORNIA PRISON FOCUS
 3   MARILYN MCMAHON, EXECUTIVE DIRECTOR
     1904 FRANKLIN STREET, #507
 4   OAKLAND, CALIFORNIA 94612

 5

 6   FOR DEFENDANTS:
     STATE OF CALIFORNIA
 7   DEPARTMENT OF JUSTICE
     OFFICE OF THE ATTORNEY GENERAL
 8   455 GOLDEN GATE AVENUE, SUITE 11000
     SAN FRANCISCO, CALIFORNIA 94102-7004
 9   BY:  ADRIANO HRVATIN, DEPUTY ATTORNEY GENERAL
          MARTINE N. D'AGOSTINO, DEPUTY ATTORNEY GENERAL
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   FEBRUARY 12, 2015                        2:00 O'CLOCK P.M.

 2

 3                         P R O C E E D I N G S

 4         THE CLERK:  CALLING CIVIL CASE 09-5796, ASHKER, ET AL

 5   VERSUS BROWN, ET AL.

 6         COUNSEL, PLEASE COME TO THE PODIUM, AND STATE YOUR

 7   APPEARANCES.

 8         MR. LOBEL:  JULES LOBEL FOR THE PLAINTIFFS.

 9         MR. HRVATIN:  GOOD AFTERNOON, YOUR HONOR.  ADRIANO

10   HRVATIN FOR THE DEFENDANTS.

11         THE COURT:  GOOD AFTERNOON.  SO THIS IS ON FOR

12   PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT.

13         MY INCLINATION IS TO SAY THAT A SUPPLEMENTAL

14   COMPLAINT THAT ADDED THAT PEOPLE WHO HAD SPENT MORE THAN TEN

15   YEARS IN PELICAN BAY SHU, AND THEN WERE TRANSFERRED TO ANOTHER

16   SHU, SUCH AS TEHACHAPI, WOULD BE APPROPRIATE AND WOULD BE

17   SUFFICIENTLY CLOSE TO THE ORIGINAL CASE TO BE REASONABLE, AND

18   ACTUALLY IT WOULD BE BETTER THAN FILING A NEW SUIT, WHICH WOULD

19   REQUIRE A NEW JUDGE TO NOT ONLY DETERMINE WHETHER THE TEN YEARS

20   IN THE PELICAN BAY SHU WAS CRUEL AND UNUSUAL, AND THEN GO ON

21   FROM THERE, WHICH WOULD BE DUPLICATIVE TO CONSIDERING

22   TEHACHAPI, AS WELL.

23         I GATHER THERE'S ONLY THREE OTHER PRISONS.  WELL, SO

24   FAR THE ONLY PLACE PRISONERS HAVE BEEN SENT FROM PELICAN BAY IS

25   TEHACHAPI SHU TO THE EXTENT THEY ARE STILL IN SHU.  AND THERE'S
```

1    ONLY TWO OTHER PRISONS BESIDES PELICAN BAY AND TEHACHAPI THAT

2    EVEN HAVE A SHU.  SO AT THE MOMENT WE'RE TALKING ABOUT ONLY

3    ADDING TEHACHAPI.

4            AND AT WORST WE'D BE ADDING TWO OTHER PRISONS, UNLESS

5    I'VE GOT THAT WRONG.  AS FAR AS VENUE GOES, I DON'T REALLY SEE

6    A PROBLEM WITH THAT BECAUSE I'M VERY FAMILIAR WITH THIS

7    LITIGATION THAT INVOLVES CDCR, AS A WHOLE, ALONG WITH PRISONS

8    THAT ARE IN VARIOUS DISTRICTS OF THE COURT.  SO I DON'T SEE A

9    VENUE PROBLEM.

10           THE EXHAUSTION PROBLEM ISN'T REALLY FULLY DEVELOPED,

11   BUT EXHAUSTION DOESN'T NEED TO BE PLED AND IS AT LEAST A MOTION

12   TO DISMISS.  AND I THINK MAYBE NOW THE NINTH CIRCUIT SAYS IT'S

13   THE SUBJECT OF A MOTION FOR SUMMARY JUDGMENT.  SO IF THERE

14   REALLY IS AN EXHAUSTION PROBLEM, THAT COULD BE RAISED.

15           I THINK WHAT WE COULD PROBABLY DO, RATHER THAN DELAY

16   THE TRIAL, WOULD BE TO BIFURCATE THE TRIAL AND GO AHEAD AND TRY

17   IN DECEMBER.  SINCE IT'S A BENCH TRIAL WE HAVE A LOT MORE

18   FLEXIBILITY NOT HAVING TO HAVE A JURY COME IN OVER AND OVER.

19   BUT WE COULD GO AHEAD AND TRY THE PELICAN BAY PART OF THE CASE

20   IN DECEMBER, AND THEN WE COULD RECESS AND TRY THE PART OF THE

21   CASE THAT HAD TO DO WITH THE ISSUE OF WHETHER A TRANSFER FROM

22   TEN YEARS OR MORE AT PELICAN BAY TO TEHACHAPI SHU CONTINUES TO

23   BE CRUEL AND UNUSUAL PUNISHMENT OR NOT.

24           WHAT I'M NOT TOO CLEAR ON IS THE SITUATION OF THE

25   INDIVIDUAL PLAINTIFFS, EITHER THE ONES WHO WERE NO LONGER CLASS

1   OR WEREN'T CLASS MEMBERS AT THE TIME CLASS WAS CERTIFIED, OR

2   WHO HAVE SINCE BEEN TRANSFERRED OUT OF SHU ALTOGETHER, AND

3   ARGUABLY AREN'T A CLASS MEMBER AT ALL THAT PLAINTIFF CLAIMS

4   THAT THEY CAN STILL PURSUE INDIVIDUAL CLAIMS.

5          I DON'T KNOW WHAT THAT WOULD ACTUALLY MEAN IN THE

6   CONTEXT OF CLAIMS FOR ONLY INJUNCTIVE RELIEF.  THEY ARE NOT

7   SEEKING DAMAGES, SO I'M NOT SURE WHAT INJUNCTIVE RELIEF CLAIMS

8   INDIVIDUALS COULD REALLY BRING.

9          THERE ARE ARGUMENTS WITH REGARD TO MOOTNESS, I

10  SUPPOSE.  AND THEN, RESPONSES TO THAT THAT IT'S A SITUATION

11  SUBJECT TO EVASION AND LIKELIHOOD OF RECURRENCE, WHICH ISN'T

12  GENERALLY TRUE IN PRISON CASES.  BUT IN THIS CASE WHERE THEY

13  ARE STILL IN A PROGRAM THAT MAKES IT SOMEWHAT MORE LIKELY THAT

14  THEY WOULD GO BACK TO A SHU THAN IT IS FOR A GARDEN VARIETY OF

15  PRISONERS WHO TRANSFERRED FROM ONE PRISON TO ANOTHER.

16         SO I'M A LITTLE UNCLEAR ON ESQUIVEL.  WHAT IS HIS

17  SITUATION?

18         **MR. LOBEL:**  ESQUIVEL HAS NOW BEEN TRANSFERRED.

19         **THE COURT:**  FROM WHERE?

20         **MR. LOBEL:**  TO A GENERAL POPULATION PRISON.  I FORGET

21  WHICH ONE.

22         **THE COURT:**  OKAY.

23         **MR. HRVATIN:**  CALIPATRIA.

24         **THE COURT:**  OKAY.  SO HE'S IN THE POSITION OF A

25  COUPLE OF OTHERS.

1              **MR. LOBEL:**  OF REDD AND REYES AND JOHNSON.  THERE ARE

2 FOUR OF OUR INITIAL PLAINTIFFS WHO ARE NOW IN -- OUT OF SHU

3 TOTALLY.

4              **THE COURT:**  WELL, YES.  BUT YOU'RE DRAWING A

5 DISTINCTION, OR ATTEMPTING TO, BETWEEN ONES WHO WERE AT ONE

6 TIME CLASS MEMBERS --

7              **MR. LOBEL:**  CORRECT.

8              **THE COURT:**  -- AND NOW ARE NOT IN SHU --

9              **MR. LOBEL:**  RIGHT.

10              **THE COURT:**  -- VERSUS ONES WHO NEVER WERE CLASS

11 MEMBERS BECAUSE THEY WEREN'T IN SHU AT THE TIME THE CLASS WAS

12 CERTIFIED.

13              **MR. LOBEL:**  RIGHT.  SO HE'S IN THE POSITION OF, I

14 BELIEVE, REYES AND ESQUIVEL ARE IN THE POSITION THAT THEY WERE

15 CLASS MEMBERS AT THE TIME.  NO, MAYBE JOHNSON.

16              **THE COURT:**  NO, DEWBERRY AND JOHNSON WERE ONCE CLASS

17 MEMBERS, AND NOW AREN'T.

18              **MR. LOBEL:**  CORRECT.

19              **THE COURT:**  I THINK.

20              **MR. HRVATIN:**  THAT'S CORRECT, YOUR HONOR.  THOSE WERE

21 A COUPLE OF THE INMATES WHO WERE TRANSFERRED FROM PELICAN BAY'S

22 SHU.

23              **THE COURT:**  RIGHT.

24              **MR. HRVATIN:**  IT'S TO THE EXTENT AS TO WHERE THEY

25 WENT, TO ANOTHER SHU AND/OR TO GENERAL POPULATION.  AS I

1   UNDERSTAND WHAT THE PLAINTIFFS ARE SEEKING THROUGH THE

2   SUPPLEMENT IS STILL TO CONTINUE ON AN INDIVIDUAL BASIS.  THE

3   CLAIMS OF THE INMATES WHO WERE PREVIOUSLY CLASS MEMBERS AND

4   CLASS REPRESENTATIVES TO CONTINUE TO SEEK RELIEF ON THEIR

5   BEHALF, ALTHOUGH THEY RECEIVED WHAT THEY ASKED FOR, WHICH WAS

6   RELEASE FROM SHU.  THEY ARE ON GENERAL POPULATION YARDS.

7          SO CLEARLY THE SUPPLEMENTAL COMPLAINT DOESN'T ASSERT

8   OR PLEAD A SEPARATE CLAIM ON BEHALF OF THESE INDIVIDUALS, SO

9   I'M NOT SURE WHAT -- TO THE EXTENT THAT THE PLAINTIFFS PHRASED

10  IT AS "APPRISING THE COURT" OF THEIR CURRENT CIRCUMSTANCE, HOW

11  THAT SUPPLEMENTAL ALLEGATION WITH RESPECT TO THOSE GENERAL

12  POPULATION INMATES SERVES ANY PURPOSE IN THE SUPPLEMENTAL

13  COMPLAINT TO PURPORTEDLY SUPPORT A CLAIM.  THERE'S NO CLAIM

14  WITH RESPECT TO THOSE INMATES ANYMORE.

15         **THE COURT:**  WELL, WHEN YOU TALK ABOUT IT I NEED TO

16  KNOW YOUR RESPECTIVE POSITIONS WITH RESPECT TO WHETHER PEOPLE

17  WHO WERE ALREADY IN GENERAL POPULATION AT THE TIME THE CLASS

18  WAS CERTIFIED AND THUS NEVER ACTUALLY WERE A CERTIFIED CLASS

19  MEMBERS AND THOSE WHO WERE A CERTIFIED CLASS MEMBER AT THE TIME

20  THE CLASS WAS CERTIFIED, AND THEN SUBSEQUENTLY WERE TRANSFERRED

21  OUT OF THE SHU.

22         SO THAT'S TWO SLIGHTLY DIFFERENT SITUATIONS.

23         **MR. LOBEL:**  CORRECT.  YOUR HONOR, OUR POSITION IS

24  THAT PEOPLE WHO WERE CERTIFIED CLASS MEMBERS AND SUBSEQUENTLY

25  TRANSFERRED OUT OF THE SHU ARE STILL CLASS REPRESENTATIVES.

```
1              WITH RESPECT TO ALL OF THE PLAINTIFFS, INCLUDING

2   THOSE WHO WERE TRANSFERRED TO GENERAL POPULATION SUBSEQUENTLY

3   OR THOSE WHO WERE TRANSFERRED TO POPULATION BEFORE THE CLASS

4   WAS CERTIFIED, OUR CLAIM IS THAT THEY ARE STILL INDIVIDUAL

5   PLAINTIFFS AND THAT HAS NOTHING TO DO WITH THE SUPPLEMENTAL

6   CLASS.  I MEAN, TO THE SUPPLEMENTAL COMPLAINT.

7              THEY ALWAYS HAVE BEEN INDIVIDUAL FOR TWO REASONS.

8   THE FIRST IS WHAT YOU SAID, WHICH IS THE VOLUNTARY CESSATION

9   DOESN'T MOOT OUT A CASE IF THERE'S A SIGNIFICANT LIKELIHOOD

10  THAT THEY COULD BE RETURNED TO THAT SITUATION.

11             BUT, SECONDLY, AND PERHAPS MORE IMPORTANTLY, ALL FIVE

12  OF THOSE -- ALL FOUR OF THE INDIVIDUALS WHO WERE TRANSFERRED TO

13  GENERAL POPULATION, OUR CLAIMS ARE -- IS THAT THEY ARE STILL

14  SUFFERING THE EFFECTS OF SHU CONFINEMENT, EVEN THOUGH THEY ARE

15  NO LONGER --

16             THE COURT:  THEY AREN'T MAKING DAMAGES CLAIMS.

17             MR. LOBEL:  NO.

18             THE COURT:  SO EVEN IF THEY ARE, WHAT IS IT YOU --

19  WHAT WOULD YOU BE SEEKING AS AN INDIVIDUAL CLAIM ON THEIR

20  BEHALF?

21             MR. LOBEL:  RIGHT.

22             THE COURT:  WHAT WOULD YOU BE ASKING FOR?

23             MR. LOBEL:  WE WOULD BE SEEKING AFFIRMATIVE RELIEF

24  FOR COUNSELLING, PROGRAMMING DESIGNED TO OVERCOME THE EFFECTS

25  OF THE SHU CONFINEMENT.  AND WE WOULD BE SEEKING THAT PROBABLY
```

```
1    NOT JUST FOR THE INDIVIDUALS, BUT FOR ALL OF THE CLASS MEMBERS

2    DOWN THE ROAD.  AND, THEREFORE, I THINK THOSE INDIVIDUAL

3    PLAINTIFFS PROBABLY WOULD -- THEIR CLAIMS WOULD BEST BE SERVED

4    IN THE REMEDY PHASE OF THIS CASE.

5             I DON'T THINK THAT WILL HAVE ANYTHING TO DO WITH THE

6    TRIAL IN DECEMBER, WHICH WE'RE PREPARED TO GO AHEAD WITH.

7             MR. HRVATIN:  BUT, YOUR HONOR --

8             THE COURT:  EXCUSE ME JUST A MINUTE.

9             ARE THOSE REMEDIES SOMETHING YOU PLED FOR IN THE

10   COMPLAINT?

11            MR. LOBEL:  NO.  BUT WE --

12            MR. HRVATIN:  THAT WAS MY POINT, YOUR HONOR.

13            MR. LOBEL:  BUT WE BELIEVE YOU HAVE THE EQUITABLE

14   POWER -- WE PLED FOR ALL OTHER REMEDIES THAT THE COURT BELIEVES

15   APPROPRIATE.  AND WE BELIEVE THAT AFTER THE EVIDENCE IS IN IN

16   TRIAL, WE BELIEVE YOU'LL FIND THIS APPROPRIATE.

17            THE COURT:  YOU HAVEN'T ADDED ANYTHING NEW FOR THOSE

18   PEOPLE IN THE AMENDED COMPLAINT.

19            MR. LOBEL:  NO.

20            THE COURT:  SO IF THEY WERE SUBJECT TO DISMISSAL,

21   THAT WOULD BE SOMETHING YOU WOULD MOVE FOR, I GUESS.  I MEAN,

22   EVEN IF YOU ARE RIGHT ON THAT POINT, WHAT YOU WOULD NEED TO DO

23   IS MOVE TO DISMISS THEM FROM -- MOVE TO DISMISS THEIR CLAIMS,

24   NOT SORT OF RAISE IT IN RESPONSE TO A MOTION TO SUPPLEMENT ON

25   OTHER POINTS.
```

1           **MR. HRVATIN:** BUT I THINK THE CLASS DEFINITIONS, YOUR

2    HONOR, CONTEMPLATE THAT INMATES ARE GOING TO FALL IN AND OUT OF

3    THESE CLASSES WITH THE PASSAGE OF TIME.  AND WITH CDCR'S

4    CONTINUED IMPLEMENTATION OF THESE NEW REGULATIONS.  AND SO --

5           **THE COURT:** THAT COULD BE, BUT THAT ISN'T RELEVANT TO

6    THE QUESTION OF WHETHER THE SUPPLEMENTAL COMPLAINT SHOULD BE

7    FILED.  THAT MIGHT BE A POINT YOU WOULD RAISE AT SOME -- IN THE

8    FUTURE.

9           AND I'M NOT REALLY SURE HOW EFFICIENT THAT IS.  GIVEN

10   THAT PEOPLE COULD MOVE IN AND OUT, THAT DOES SORT OF LEND

11   ITSELF TO A CAUSE OF ACTION THAT IS SUBJECT TO REPETITION AND

12   EVASION.  AND IT WOULDN'T MAKE SENSE TO SAY:

13          "OH, TODAY WE'VE GOT THIS PLAINTIFF AND TOMORROW

14          WE HAVE TO HAVE A NEW PLAINTIFF.  AND THE NEXT DAY

15          WE'RE GOING TO HAVE SOME DIFFERENT PLAINTIFFS."

16          THE FACT IS WHOEVER IS IN THESE PLACES IS SUBJECT TO

17   ESSENTIALLY THE SAME CONDITIONS, SO I'M NOT SURE HOW MUCH SENSE

18   IT MAKES TO BE SWITCHING PLAINTIFFS IN AND OUT CONTINUOUSLY AS

19   THE CASE GOES ON.

20          **MR. HRVATIN:** YOUR HONOR, UNDER RULE 15, AS I

21   UNDERSTAND IT, I THINK THAT JUDICIAL EFFICIENCY, ECONOMY IS A

22   THRESHOLD CONSIDERATION.  AND IN THE SUPPLEMENTAL COMPLAINT

23   HERE, IN OUR MIND TAKES A PIECEMEAL APPROACH, REALLY, TO THE

24   NEW REGULATIONS THAT HAVE BEEN PROMULGATED BY CDCR WITH RESPECT

25   TO VALIDATION AND HOUSING.

```
 1            THE CONTENTION IS THAT THE CONDITIONS OF CONFINEMENT
 2   PURSUANT TO INMATES ASSIGNED TO STEPS THREE AND FOUR AND
 3   TRANSFERRED TO TEHACHAPI AND/OR POTENTIALLY OTHER SHUS, ARE NO
 4   DIFFERENT OR POTENTIALLY WORSE THAN WHAT IS THE CONDITIONS
 5   PRESENT AT PELICAN BAY.
 6            THE COURT:  YOU'RE SAYING THEY ARE NO DIFFERENT AND
 7   MAYBE WORSE?
 8            MR. HRVATIN:  THAT'S THE CONTENTION.
 9            THE COURT:  OH, OKAY.
10            MR. HRVATIN:  THAT'S WHAT HE SAID.
11            THE COURT:  YOU HAD ME GOING THERE FOR AWHILE.
12            MR. HRVATIN:  RIGHT.
13            THE COURT:  WHAT ARE THE OTHER TWO PRISONS BESIDES
14   PELICAN BAY AND TEHACHAPI?
15            MR. HRVATIN:  THERE'S A SHU IN CORCORAN AND AS WELL
16   AS SAC, SACRAMENTO.
17            THE COURT:  AND CORCORAN IS IN EASTERN DISTRICT?
18            MR. HRVATIN:  CORRECT.
19            THE COURT:  TEHACHAPI IS CENTRAL DISTRICT?
20            MR. HRVATIN:  I BELIEVE THAT'S CORRECT, YOUR HONOR.
21            AND SO TO THE EXTENT THAT A PIECEMEAL ATTACK ON THE
22   IMPLEMENTATION OF THE STEP DOWN PROGRAM AND ASSIGNMENT OF
23   INMATES TO STEPS THREE AND FOUR DOESN'T -- DOESN'T ANSWER ALL
24   THE QUESTIONS THAT ARE PRESENTED BY CDCR'S IMPLEMENTATION AND
25   APPROVAL OF THESE NEW REGULATIONS.
```

```
1              WHAT IS HAPPENING IN STEPS ONE AND TWO?  WHAT'S
2    HAPPENING AT STEP FIVE?  THESE ARE QUESTIONS THAT WILL NOT BE
3    RESOLVED IN THIS LITIGATION, AT LEAST PURSUANT TO THE
4    SUPPLEMENTAL COMPLAINT THAT HAS BEEN FILED.
5              SO WE STRUGGLE TO SEE THE JUDICIAL EFFICIENCY AND
6    ECONOMY THAT COMES ABOUT BY ADDING THIS SEGMENT OR THIS SLIVER
7    OF THE STEP DOWN PROGRAM AS TO WHAT IS HAPPENING IN STEPS THREE
8    AND FOUR AT TEHACHAPI IN THE CONTEXT OF WHAT WE'VE BEEN
9    LITIGATING SINCE JUNE OF LAST YEAR ON A CLASS-WIDE BASIS, WHICH
10   IS FOCUSED EXCLUSIVELY AS TO THE CONDITIONS OF CONFINEMENT AT
11   PELICAN BAY, AS WELL AS TITLE 15 VALIDATION AND REVIEW
12   PROCEDURES.
13             SO THAT'S THE -- WE BELIEVE TO BE ONE OF THE
14   CONSIDERATIONS THAT DOESN'T -- ISN'T MET HERE FOR PURPOSES OF
15   JUDICIAL EFFICIENCY OR ECONOMY IN BRINGING IN A NEW CLAIM AT
16   THIS STAGE OF THE CASE WHERE WE'RE GOT A TRIAL IN DECEMBER.
17             BIFURCATION, I'M NOT SURE, YOUR HONOR.  I HAVE TO
18   APOLOGIZE.  I'M NOT SURE I UNDERSTAND IT.  IF THIS CLAIM IS
19   FILED, WE'RE ENTITLED TO RESPOND TO IT, INVESTIGATE THE CLAIM.
20             THERE'S A NEW CLASS THAT THE PLAINTIFFS WANT TO
21   CERTIFY.  I'M NOT SURE WHEN WE'RE GOING TO DO THAT BASED ON
22   THE CURRENT SCHEDULE WITH EXPERT DISCLOSURES, FOR INSTANCE, DUE
23   IN A MONTH'S TIME.
24             I BELIEVE WE HAVE A DUE PROCESS RIGHT TO RESPOND TO
25   THOSE ALLEGATIONS IN THE SUPPLEMENTAL COMPLAINT.  AND I DON'T
```

 1   SEE HOW WE CAN DO THAT ON THE SAME TRACK THAT WE'RE ON WITH THE

 2   DECEMBER TRIAL DATE ON CLAIMS THAT HAVE BEEN CERTIFIED FOR OVER

 3   NINE MONTHS AND THAT WE'VE BEEN LITIGATING FOR MANY, MANY

 4   YEARS.

 5          IT'S TAKEN US THIS LONG JUST TO FIGURE OUT WHAT IS

 6   GOING ON IN PELICAN BAY.  I'M NOT SURE THAT WE CAN THEN JUST,

 7   ON THE SAME TRACK, GO AND FIGURE OUT WHAT IS HAPPENING AT

 8   TEHACHAPI.  ARE THERE STEP THREE AND FOUR INMATES AT ANY OF

 9   THESE OTHER SHUS, AND WHAT KINDS OF CONDITIONS ARE PRESENT AT

10   THOSE SEPARATE INSTITUTIONS?

11          IT'S AN AWFUL LOT TO TAKE ON, YOUR HONOR.

12          **THE COURT:**  WELL, WHAT WE WOULD TRY IN DECEMBER WOULD

13   BE:  IS IT OR WAS IT CRUEL AND UNUSUAL PUNISHMENT TO BE AT

14   PELICAN BAY SHU FOR TEN YEARS OR MORE.  AND THEN, AT A LATER

15   PHASE -- HOWEVER THAT WENT.  AT A LATER PHASE, WE WOULD --

16   WELL, I GUESS IF IT WERE FOUND NOT TO BE CRUEL AND UNUSUAL --

17          **MR. LOBEL:**  THEN THERE'S NO NEED FOR A LATER PHASE.

18          **THE COURT:**  WE WOULD GO FROM THERE.  SO IT WOULD ONLY

19   BE IF THAT WAS CRUEL AND UNUSUAL.  THEN, WE WOULD HAVE TO MOVE

20   ON TO SAY:  IS THAT RESOLVED OR REMEDIED BY A MOVE TO A SHU IN

21   TEHACHAPI?

22          AND THEN, WE WOULD GO INTO WHAT HAPPENS AT TEHACHAPI?

23   WHAT'S IT LIKE THERE?  A PERSON WHO HAS BEEN FOR TEN YEARS AT

24   PBSP, DO THEY CONTINUE TO SUFFER CRUEL AND UNUSUAL PUNISHMENT

25   EVEN IF THEY ARE TRANSFERRED TO TEHACHAPI?

```
 1              SO THE QUESTION WOULD REALLY BE ALL ABOUT WHAT GOES
 2   ON AT TEHACHAPI, WHICH WOULD BE PRETTY MUCH SEPARATE AND COULD
 3   BE DISCOVERED AND INVESTIGATED AND SO FORTH ON A DIFFERENT
 4   TRACK.
 5              MR. HRVATIN:  THEN, WHY ARE WE HAVING SUPPLEMENTAL
 6   COMPLAINT NOW IF THAT'S SOMETHING THAT IS GOING TO HAPPEN LATER
 7   IN SOME REMEDIAL PHASE OF THE CASE, AS I BELIEVE?
 8              THE COURT:  WELL, IT'S NOT A REMEDIAL PHASE.  IT'S
 9   STILL A LIABILITY --
10              MR. HRVATIN:  IT'S A SEPARATE LIABILITY QUESTION.
11              THE COURT:  TRUE.
12              MR. HRVATIN:  SO WHY IS THAT COMPLAINT BEING FILED
13   NOW?
14              THE COURT:  TO GIVE YOU MORE TIME TO INVESTIGATE IT
15   AND CONDUCT DISCOVERY.  AND YOU'RE ALREADY COMPLAINING IT'S TOO
16   DELAYED, SO YOU AREN'T SUGGESTING IT SHOULD BE DELAYED EVEN
17   MORE.
18              MR. HRVATIN:  SO THE DEFENDANTS AREN'T GOING TO BE
19   PUT TO RESPONDING TO THE COMPLAINT?
20              THE COURT:  OH, NO.  YOU WOULD FILE YOUR MOTION TO
21   DISMISS.  THEY WOULD FILE THEIR CLASS CERT.  MEANWHILE, WE
22   WOULD CONTINUE PREPARING FOR THE DECEMBER TRIAL.
23              WE HAVE -- I DON'T KNOW.  ARE YOU FILING A SUMMARY
24   JUDGMENT MOTION?
25              MR. LOBEL:  WE ARE FILING SUMMARY JUDGMENT WHICH, I
```

1    THINK, IS DUE JULY 2ND.

2          **MR. HRVATIN:**  THAT'S RIGHT.  SUMMARY JUDGMENT

3    BRIEFING IS THIS SUMMER.  AND, YOUR HONOR, RESPECTFULLY I DON'T

4    SEE HOW WE CAN BE LITIGATING THIS NEW CLAIM AND CONDUCTING

5    INVESTIGATION AS TO NOT JUST WHAT IS HAPPENING AT TEHACHAPI.

6    I'M PRETTY CONFIDENT THAT THERE ARE STEP THREE AND FOUR INMATES

7    AT THE OTHER SHUS.  AND THEN, TAKING UP A SEPARATE ISSUE AS TO

8    THE CERTIFICATION OF THAT CLASS, WHILE WE ARE ON THE TRACK TO

9    GO TO TRIAL ON TWO COMPLEX -- NARROW, YET COMPLEX CLAIMS THAT

10   HAVE TAKEN US TWO-AND-A-HALF YEARS TO TRY TO WORK THROUGH.

11          I THINK THE DEFENDANTS ARE ENTITLED TO EITHER HAVE,

12   AS WE PROPOSED, YOUR HONOR, THAT THE CURRENT DATES BE VACATED

13   OR AT LEAST THEY BE STAYED FOR A CERTAIN PERIOD OF TIME SO THAT

14   WE CAN CONDUCT AND BE GIVEN A DUE PROCESS OPPORTUNITY TO

15   UNDERSTAND WHAT IS GOING ON AT TEHACHAPI, AND CHALLENGE THOSE

16   ALLEGATIONS AND DEAL WITH THESE SEPARATE CLASS CERTIFICATION

17   ISSUES THAT I THINK WILL PRESENT ISSUES WITH RESPECT TO

18   COMMONALTY, TYPICALITY AND ADEQUACY.

19          I THINK WE'RE ENTITLED TO THAT, YOUR HONOR.  AND I

20   DON'T THINK UNDER RULE 15 (D), WHICH CONTEMPLATES A SUPPLEMENT,

21   WITH YOUR HONOR HAVING GREAT DISCRETION, THAT ANY SUPPLEMENT BE

22   GRANTED ON JUST AND FAIR TERMS.

23          AND I'D SUBMIT, YOUR HONOR, THAT JUST AND FAIR

24   DOESN'T CONTEMPLATE LITIGATING THESE POTENTIALLY VERY DIFFERENT

25   CASES ON THE SAME TRACK WITH A DECEMBER TRIAL DATE.

1    **THE COURT:** OKAY. AS LONG AS YOU'RE SPEAKING, YOU

2    MIGHT AS WELL SAY ANYTHING ELSE YOU HAVE TO SAY ON THE MOTION.

3    HAVE WE COVERED EVERYTHING THAT YOU WOULD WANT TO SAY? AND

4    ORDINARILY I'D HAVE THEM START. BUT YOU ARE --

5    **MR. HRVATIN:** YOU CAME AT ME. YOU CAME AT ME, SO

6    THANK YOU FOR THE OPPORTUNITY IN THE FIRST INSTANCE. YOUR

7    HONOR, I'VE MADE MY ARGUMENTS.

8    **THE COURT:** OKAY. DID YOU WANT TO RESPOND, THEN?

9    **MR. LOBEL:** YES. A FEW THINGS. ONE, YOUR HONOR, I

10    HAVE A DEPOSITION TRANSCRIPT.

11    **THE COURT:** THE COURT REPORTER IS BUSY REPORTING. IF

12    YOU WANT TO HAND SOMETHING TO SOMEBODY YOU CAN HAND IT TO THE

13    CLERK. I WON'T BE LOOKING AT IT NOW.

14    **MR. LOBEL:** OKAY. IT IS A TRANSCRIPT WHICH SAYS THAT

15    THE CURRENT POLICY OF THE CDCR IS TO PLACE ALL STEP THREE AND

16    FOUR PEOPLE FROM PELICAN BAY AT TEHACHAPI. THEY MAY CHANGE

17    THAT IN THE FUTURE, BUT AS OF NOW THE PEOPLE ARE BEING SENT TO

18    TEHACHAPI. AND ACCORDING TO THEIR OFFICIALS, WILL BE SENT TO

19    TEHACHAPI IN THE FUTURE.

20    SO IF THEY ARE SENT SOMEWHERE ELSE, WHEREVER THEY ARE

21    SENT WE'RE PREPARED TO LITIGATE THAT. BUT FOR THE TIME BEING,

22    AT LEAST ACCORDING TO THE CDCR, THEY ARE BEING SENT TO

23    TEHACHAPI. THAT'S THE FIRST THING.

24    THE SECOND THING IS WITH RESPECT TO BIFURCATION, OUR

25    POSITION IS WE'RE PREPARED TO GO TO TRIAL DECEMBER 7TH. WE

```
1    WANT TO GO TO TRIAL ON DECEMBER 7TH ON THE QUESTION THAT YOU

2    ARTICULATED.

3           WE'RE PREPARED TO RESPOND TO A MOTION TO DISMISS

4    WHENEVER THEY MAKE IT.  WE ARE PREPARED TO MOVE FOR CLASS

5    CERTIFICATION WHENEVER YOU ORDER US TO DO SO.  WE COULD

6    ACTUALLY DO IT JULY 2ND WITH OUR MOTION FOR SUMMARY JUDGMENT.

7    BUT IF THEY OBJECT TO THAT, WE HAVE NO OBJECTION TO THEM

8    PUTTING OFF THE MOTION FOR CLASS CERTIFICATION AND DISCOVERY

9    UNTIL AFTER THE FIRST HEARING, IF THEY SAY IT'S TOO BURDENSOME

10   FOR THEM.

11          THE COURT:  FIRST TRIAL, YOU MEAN.

12          MR. LOBEL:  AFTER THE FIRST TRIAL, YEAH.  WE DON'T --

13   WE DON'T HAVE AN OPINION ON THAT.  WE PREFER TO GO FORWARD, BUT

14   IF THEY WANT TO DELAY THAT UNTIL AFTER THE FIRST TRIAL, BECAUSE

15   THEY SAY IT'S TOO BURDENSOME FOR THEM AND IT WILL HARM THEIR

16   DUE PROCESS RIGHTS, WHICH I DON'T FEEL IS A PARTICULAR HARM

17   HERE, BUT WE'RE WILLING TO DELAY.

18          WITH RESPECT TO THE CLAIM THAT THERE'S A GENERAL

19   CHALLENGE OUT THERE WAITING ON THE STEP DOWN PROGRAM, WE

20   HAVEN'T MADE IT, SO WE SHOULDN'T BE ABLE TO GO FORWARD ON THE

21   CHALLENGE THAT WE HAVE, WHICH IS --

22          THE COURT:  I DON'T UNDERSTAND WHAT YOU JUST SAID.

23          MR. LOBEL:  WELL, THEY JUST SAID THIS IS GOING TO BE

24   A PIECEMEAL CHALLENGE TO THE STEP PROGRAM.  BUT WE'RE NOT

25   CHALLENGING THE WHOLE STEP DOWN PROGRAM.  THEY ARE CORRECT.
```

1    WE'RE CHALLENGING THE STEP DOWN PROGRAM AS IT APPLIES TO OUR

2    PLAINTIFFS, AS IT APPLIES TO OUR CLASS.  NAMELY, INSTEAD OF

3    TAKING PEOPLE FROM THE SHU AND PUTTING THEM IN THE GENERAL

4    POPULATION OR ALLEVIATING THEIR SOLITARY CONFINEMENT, THEY ARE

5    PUTTING THEM INTO ANOTHER SHU.  AND THAT IS A NARROW CLAIM

6    WHICH IS DIRECTLY TIED TO OUR ORIGINAL CLAIM AND IS NECESSARY

7    FOR OUR ORIGINAL PLAINTIFFS AND THE CLASS THEY REPRESENT TO GET

8    THE RELIEF THAT THEY SOUGHT.

9            I'M NOT GOING TO GO INTO IT MORE BECAUSE I THINK

10   YOU'VE COVERED THE WHOLE THING.  I JUST WANT TO SAY ONE OTHER

11   THING THEN.

12           WITH RESPECT TO THE MOOTNESS QUESTION OF THE

13   INDIVIDUAL PLAINTIFFS, WHICH I AGREE SHOULD BE THE SUBJECT OF A

14   SEPARATE MOTION AND NOT PART OF THIS SUPPLEMENTAL CLASS

15   HEARING, BUT I WOULD ONLY RAISE A NINTH CIRCUIT CASE

16   NORMAN-BLOODSAW VERSUS LAWRENCE BERKELEY, 135 F.3D 1260, IN

17   WHICH THE COURT SAYS:

18               "A CLAIM IS ONLY MOOT IF THE INTERIM RELIEF OR

19               EVENTS HAVE COMPLETELY AND IRREVOCABLY ERADICATED THE

20               EFFECTS OF THE ALLEGED VIOLATIONS."

21           NOW, I KNOW WE DON'T HAVE A DAMAGE ACTION, BUT OUR

22   CLAIM WHICH WE'RE GOING TO PRESENT VIGOROUSLY AT TRIAL IS THAT

23   ONE OF THE PROBLEMS WITH SHU CONFINEMENT IS THAT IT CAUSES

24   LASTING PERMANENT DAMAGE TO THE PERSON.  AND WHILE AT LEAST

25   THEY ARE IN PRISON -- THE CDCR CAN'T DO ANYTHING WHEN THEY GET

1    OUT OF PRISON.  BUT WHILE THEY ARE IN PRISON, WE BELIEVE THEY

2    ARE ENTITLED TO ADEQUATE PROGRAMMING AND ADEQUATE REMEDIES TO

3    TRY TO GET OVER THAT TRAUMATIC EXPERIENCE.

4            IN THAT CASE, IT WAS A MEDICAL PROBLEM.  AND THE

5    PERSON'S MEDICAL PROBLEM WAS CURED, BUT THEY STILL HAD SOME

6    EFFECT FROM THE TAKING AGAINST THE PLAINTIFFS' WISHES OF THEIR

7    MEDICAL INFORMATION.

8            AND THE COURT SAID WE COULD REMEDY THAT.

9            NOW, I AGREE WE DIDN'T PLEAD THAT REMEDY IN THE

10   COMPLAINT, BUT I THINK YOU HAVE THE EQUITABLE POWER TO REMEDY

11   THAT, TO AFFIRM THAT REMEDY.  AND THAT'S IN ADDITION TO THE

12   PROBLEM OF VOLUNTARY -- IT'S AN ADDITION IN THE SECOND PRONG,

13   THE PROBLEM OF VOLUNTARY CESSATION, WHERE IF THERE'S THIS

14   LIKELY CHANCE THAT THE PERSON COULD BE SENT BACK TO THE SAME

15   SITUATION, IT'S NOT MOOT.

16           BUT FOR THOSE TWO REASONS WE THINK OUR PLAINTIFFS,

17   INDIVIDUAL PLAINTIFFS' CLAIMS ARE NOT MOOT.  I AGREE WITH YOU.

18   ONCE YOU CERTIFY THE CLASS, THEN IT'S UNCLEAR HOW YOU GO

19   FORWARD WITH THE INDIVIDUAL PLAINTIFFS.

20           THERE ARE A NUMBER OF CASES IN WHICH THIS HAPPENS.

21   OFTEN IT HAPPENS WHEN THE CLASS IS DECERTIFIED.  THE INDIVIDUAL

22   PLAINTIFFS ARE STILL -- I MEAN, IF YOU WERE, WHICH I DON'T

23   FORESEE, IF YOU WERE TO SOMEHOW DECERTIFY OUR CLASS, OUR

24   INDIVIDUAL PLAINTIFFS WOULD STILL BE ALLOWED TO GO FORWARD.

25           BUT IN THIS CASE, I DON'T THINK THAT'S THE CASE.  BUT

1    I DO -- SO I THINK WE HAVE TO TRY TO WORK OUT A PROCEDURAL

2    MECHANISM TO HAVE THAT, THOSE CLAIMS HEARD.  AND I'M WILLING TO

3    GO WITH WHATEVER RECOMMENDATION YOU HAVE.

4             **THE COURT:**  WELL, I DON'T KNOW WHAT TO DO ABOUT THOSE

5    PEOPLE, BUT YOU HAVE YET ANOTHER ARGUMENT IN YOUR BRIEF.  AND

6    THAT IS THAT IF SOMEONE IS A CLASS MEMBER AT THE TIME THE CLASS

7    IS CERTIFIED, EVEN IF THEY LATER BECOME NO LONGER A CLASS

8    MEMBER, THEY CAN STILL REPRESENT THE CLASS.

9             **MR. LOBEL:**  CORRECT.

10            **THE COURT:**  WHICH IS AN INTERESTING CONCEPT.  AND YOU

11   CITE ONE CASE THAT I HAVEN'T REALLY STUDIED TO SEE IF THAT'S

12   ACTUALLY CORRECT.

13            BUT THAT'S SORT OF A DIFFERENT ARGUMENT.

14            **MR. LOBEL:**  CORRECT.  WE BELIEVE ONCE YOU ARE A CLASS

15   REPRESENTATIVE, CLASS REPRESENTATIVE, NOT A CLASS MEMBER, A

16   CLASS REPRESENTATIVE, YOU CONTINUE AS A CLASS REPRESENTATIVE,

17   EVEN IF YOU'RE NO LONGER A MEMBER OF THE CLASS.

18            **THE COURT:**  IN PRACTICE, THAT SOMETIMES DOESN'T

19   HAPPEN.  AND CASES HAVE BEEN DECERTIFIED WHEN THE CLASS

20   REPRESENTATIVES HAVE BECOME NO LONGER CLASS MEMBERS.  SO I'M

21   NOT SURE HOW STRONG THAT POSITION IS.

22            I'LL BE ASKING THEM IN A MINUTE, AND WE MIGHT DO A

23   LITTLE MORE RESEARCH ON THAT POINT.

24            **MR. LOBEL:**  WELL, WHAT WERE TO HAPPEN, FOR EXAMPLE,

25   IF THEY WERE TO MOVE ALL OF OUR CLASS MEMBERS -- CLASS

1    REPRESENTATIVES OUT OF PELICAN BAY SHU -- AND RIGHT NOW THERE

2    ARE ONLY TWO OF THEM AT THE PELICAN BAY SHU -- WE DON'T BELIEVE

3    THAT THAT WOULD LEAD TO THE DECERTIFICATION OF THE CLASS.

4            **THE COURT:**  MIGHT MEAN THAT YOU HAVE TO FIND ANOTHER

5    CLASS REP.  MIGHT MEAN YOU HAVE TO BEAT THE BUSHES OVER AT THE

6    SHU AND FIND SOMEBODY ELSE.  I MEAN, THAT HAS HAPPENED.  I'M

7    NOT BASING THAT ON CASE LAW, JUST ON MY EXPERIENCE.  WHEN

8    SOMETIMES THE CLASS REP ISN'T A CLASS REP ANYMORE, AND THE

9    ATTORNEYS ARE LEFT TO FIND SOME NEW CLASS REPS.

10           AND I DON'T KNOW IF THAT'S REQUIRED, BUT IT CERTAINLY

11   HAS HAPPENED IN THE PAST.

12           **MR. LOBEL:**  RIGHT.

13           **THE COURT:**  SO I WOULD NEED TO KNOW A LITTLE BIT MORE

14   ABOUT THE LAW ON THAT POINT.

15           **MR. LOBEL:**  YES.  AND WE WOULD BE PERFECTLY PREPARED

16   TO DO THAT.  I DON'T THINK WE WOULD HAVE TO BEAT THE BUSHES TOO

17   FAR.

18           **THE COURT:**  YOU HAVE TO TALK TO THEM.

19           **MR. LOBEL:**  YES, BUT THE --

20           **THE COURT:**  HOW MANY MORE PEOPLE ARE STILL IN PELICAN

21   BAY SHU THAT HAVE BEEN THERE FOR TEN YEARS?

22           **MR. LOBEL:**  ABOUT 240 RIGHT NOW.

23           **THE COURT:**  240?

24           **MR. LOBEL:**  CORRECT.

25           **THE COURT:**  OH.

1    **MR. LOBEL:**  BUT THE DEFENDANTS HAVE A POLICY NOW OF

2    GIVING HEARINGS TO ALL -- THEY HAVE ESSENTIALLY SUSPENDED THE

3    HEARINGS STATEWIDE, AND THEY ARE FOCUSING ON PELICAN BAY AND

4    GIVING HEARINGS TO EVERY INMATE AT PELICAN BAY WHO HAPPENS TO

5    HAVE BEEN THERE FOR MORE THAN TEN YEARS.

6    **THE COURT:**  WELL, THAT'S A GOOD CRITERIA.

7    **MR. LOBEL:**  THAT'S A GOOD CRITERIA.

8    **THE COURT:**  YOU CAN'T ARGUE WITH THAT CRITERIA.

9    **MR. LOBEL:**  EXACTLY.  BUT WHEN WE ASKED THEM WHY THEY

10   CAME UP WITH THE TEN YEARS, THEY HAD NO ANSWER FOR US.

11   **THE COURT:**  WELL, SO THE MOOTNESS THING, I MEAN

12   THERE'S A LOT OF PRISON CASE LAW THAT SAYS THAT SOMEBODY WHO

13   SUES ONE PRISON FOR FAILING TO GIVE ADEQUATE MEDICAL CARE, AND

14   THEN GETS MOVED TO ANOTHER PRISON, AND THEN THEIR INJUNCTIVE

15   RELIEF CLAIM AT THE FIRST PRISON IS MOOT BECAUSE THEY ARE NOT

16   AT THAT PRISON ANYMORE AND THAT THERE'S NO PARTICULAR REASON TO

17   BELIEVE THEY WOULD EVER BE TRANSFERRED BACK THERE.  SO YOU'RE

18   FACING THAT, THOSE KINDS OF INDIVIDUAL CASES.

19   NOW, YOU HAVE A SOMEWHAT DIFFERENT ARGUMENT, WHICH IS

20   IN YOUR CASE YOUR PEOPLE ARE LIKELY TO BE TRANSFERRED BACK

21   BECAUSE THEY ARE PARTICIPANTS IN THE STEP DOWN PROGRAM, AND THE

22   CRITERIA ARE SOMEWHAT NEW AND PERHAPS VAGUE, AND, THEREFORE,

23   IT'S MORE LIKELY THAN IN THE RUN-OF-THE-MILL CASE THAT THEY

24   WILL END UP BACK.

25   **MR. LOBEL:**  CORRECT.

1     **THE COURT:**  SO THAT'S -- THE ARGUMENT ABOUT NEEDING A

2   FURTHER REMEDY, YOU KNOW, I CAN -- I UNDERSTAND WHAT YOU'RE

3   SAYING.  BUT THE FACT THAT YOU HAVEN'T PLED IT I FIND A LITTLE

4   TROUBLESOME.  AND MAYBE YOU WOULD HAVE TO MOVE AGAIN FOR -- TO

5   AMEND THE COMPLAINT, IF YOU REALLY WANTED TO GO FOR THAT.  BUT

6   THE FACT THAT IT WASN'T SOMETHING THAT CAME TO YOU EARLY ON --

7     **MR. LOBEL:**  OKAY.

8     **THE COURT:**  -- IS A LITTLE BIT LESS COMPELLING.

9     SO THERE'S -- YES, SO THOSE ARE THE ARGUMENTS THAT

10   YOU COULD MAKE FOR THE FACT THAT THE PEOPLE WHO ARE NO LONGER

11   CLASS MEMBERS, BUT ONCE WERE, SHOULD STILL BE ALLOWED TO BE

12   CLASS MEMBERS.

13     SO I'LL HEAR FROM DEFENDANT AS TO WHAT THEY THINK OF

14   THOSE THREE ARGUMENT.

15     **MR. LOBEL:**  ONE OTHER ELABORATION ON THE ARGUMENT

16   THAT THEY COULD BE TRANSFERRED BACK.  IF YOU'RE IN STEP -- IF

17   YOU ARE IN THE STEP DOWN PROGRAM, YOU NO LONGER HAVE TO BE

18   VALIDATED.  YOU DON'T HAVE TO GO THROUGH THE NEW PROCEDURES.

19     ALL YOU HAVE TO GET IS SOME VIOLATION, NOT AT SHUABLE

20   OFFENSE, NOT A VIOLENT OFFENSE.  BUT SOME VIOLATION WHICH WOULD

21   SEND YOU BACK.

22     **THE COURT:**  IN OTHER WORDS, YOU'RE MORE APT.  IT'S

23   EASIER TO SEND YOU BACK TO --

24     **MR. LOBEL:**  PELICAN BAY.

25     **THE COURT:**  -- GANG-VALIDATED SHU STATUS IF YOU WERE

```
1   IN ONE BEFORE THAN TO PUT YOU IN IT FROM THE GET-GO.
2            MR. LOBEL:  CORRECT.
3            MR. HRVATIN:  WE WOULD DISAGREE WITH THAT, YOUR
4   HONOR.  THERE'S A COMPLETELY NEW PROCESS.
5            THE COURT:  LET ME JUST MAKE SURE THEY'RE DONE
6   TALKING SO I CAN FINISH WITH YOU.
7            MR. HRVATIN:  VERY GOOD.
8            THE COURT:  DO YOU HAVE ANYTHING ELSE YOU WANTED TO
9   SAY?
10           MR. LOBEL:  NO.
11           THE COURT:  OKAY.
12           MR. HRVATIN:  YOUR HONOR, I THINK THAT THE NEW
13  PROCESS UNDER THE SECURITY THREAT GROUP REGULATIONS CONTEMPLATE
14  A COMPLETELY DIFFERENT SET OF CIRCUMSTANCES AS TO WHAT TYPE OF
15  PROCESS AN INMATE RECEIVES IN DETERMINING WHERE HE GOES THROUGH
16  THE STEP DOWN, EITHER BY WAY OF PROGRESSION OR REGRESSION THERE
17  IS A SUBSTANTIALLY DIFFERENT PROCESS IN PLAY THAT COMES UP WITH
18  DUE PROCESS AND HEARINGS THAT ALLOW THE INMATE TO DEFEND
19  HIMSELF IN CONNECTION WITH WHATEVER SERIOUS RULES VIOLATION OR
20  ADMINISTRATIVE RULES VIOLATION THAT HAS TO HAVE SOME SPECIFIC
21  NEXUS, A FINDING WITH RESPECT TO A SPECIFIC GANG BEHAVIOR.
22           IT'S A COMPLETELY DIFFERENT PROCESS.  AND SO TO THE
23  EXTENT THAT AN INMATE WOULD REGRESS AND GO BACK TO SOME STEP OF
24  THE STEP DOWN, OR BACK TO PELICAN BAY SHU, IT WOULD BE PURSUANT
25  TO A COMPLETELY DIFFERENT PROCESS, WHICH WE THINK SEPARATELY
```

1  ADDRESSES THE MOOTNESS COMPONENT HERE, YOUR HONOR.  BECAUSE WE

2  HAVE TO CONTEMPLATE AS OF RIGHT NOW THE CLAIMS THAT WE'VE BEEN

3  LITIGATING SINCE JUNE.  ON A CLASS-WIDE BASIS WE'VE BEEN

4  FOCUSED ON TITLE 15 AND THE CONDITIONS OF CONFINEMENT AT

5  PELICAN BAY SHU.

6          IF WE'RE BRINGING IN A NEW PROCESS, I BELIEVE THE

7  PLAINTIFFS HAVE TO CHALLENGE THAT PROCESS, AND THEY ARE NOT

8  DOING HERE WITH THE SUPPLEMENTAL COMPLAINT.  AND I THINK THAT

9  HITS ON WHY THESE INMATES, AS THEY ARE BEING REVIEWED PURSUANT

10 TO THE NEW REGULATIONS, FALL OUT OF THE CLASS, SOMETHING THAT

11 THE COURT ACKNOWLEDGED WHEN WE WERE HERE FOR ARGUMENT ON

12 WHETHER THE CLASS SHOULD BE CERTIFIED AND HOW TO BEST DEFINE

13 THAT.

14          THE COURT ACKNOWLEDGED THAT INMATES WHO ARE

15 TRANSFERRED OUT BASED ON THE TWO CLAIMS THAT ARE PRESENT IN THE

16 SECOND-AMENDED COMPLAINT, THEY CANNOT BE PART OF THE CLASS.  I

17 MEAN, THAT WAS MADE CLEAR THAT THEY HAVE ISSUES OF COMMONALTY,

18 ISSUES AS TO TYPICALITY.  THEY DON'T ADEQUATELY REPRESENT THE

19 CLASS BECAUSE THEY ARE NO LONGER SUBJECT TO THE EXACT SAME

20 CONDITIONS AND/OR POLICIES ONCE THEY HAVE GONE THROUGH THE STEP

21 DOWN PROCESS AND RECEIVED A REVIEW PURSUANT TO THOSE NEW

22 REGULATIONS.

23          **THE COURT:**  WELL, WHAT HE IS SAYING IS SOMETHING A

24 LITTLE BIT DIFFERENT.  I'M NOT SURE YOU'RE DISAGREEING.  BUT

25 WHAT HE'S CLAIMING IS THAT -- IT'S SORT OF HARD TO DESCRIBE.

```
 1    BUT LET'S SAY YOU'VE GOT INMATE A, WHO WAS VALIDATED 11 YEARS

 2    AGO UNDER THE OLD PROGRAM.  AND HE STARTS INTO THE -- AND THAT

 3    WAS, LET'S SAY, JUST FOR PURPOSES OF ARGUMENT, THAT DIDN'T

 4    REQUIRE VERY MUCH.  IT WAS PRETTY RUDIMENTARY.  DIDN'T REQUIRE

 5    AS MUCH AS IT NOW REQUIRES.

 6              IS THAT TRUE, DO YOU THINK?

 7              MR. HRVATIN:  AT THE INITIAL VALIDATION STAGE?

 8              THE COURT:  YES.

 9              MR. HRVATIN:  THE PROCESSES WERE DIFFERENT, YOUR

10    HONOR, YES.

11              THE COURT:  YES.  OKAY.  SO IF YOU'VE GOT INMATE A

12    WHO GOT VALIDATED TEN YEARS AGO UNDER SOME EASIER-TO-VALIDATE

13    CRITERIA, GETS INTO THE STEP DOWN, VERSUS INMATE B, WHO JUST

14    CAME TO PRISON YESTERDAY AND GOT VALIDATED UNDER STRICTER AND

15    MORE DUE PROCESSY PROCEDURES AND WENT INTO THE STEP DOWN

16    PROGRAM, THAT IF EACH OF THEM MESSES UP, AND MIGHT BE SENT

17    BACK, THAT INMATE B WOULD HAVE -- WOULD BE IN BETTER SHAPE

18    BECAUSE HE WOULD HAVE HAD MORE PROOF TO GET HIM IN THERE IN THE

19    FIRST PLACE.  WHEREAS, INMATE A WOULD SORT OF BE SHOEHORNED IN

20    BY THE FACT THAT HE WAS VALIDATED UNDER EASIER PROCEDURES IN

21    THE FIRST INSTANCE, SO THAT HE NEVER GOT THE HIGHER SHOWING

22    THAT INMATE B WOULD HAVE GOTTEN.

23              SEE WHAT I MEAN?

24              MR. HRVATIN:  I DO.

25              THE COURT:  A BECOMES THEN, EVEN THOUGH STARTING AT
```

1    STEP THREE, THEY ARE BOTH THE SAME, INMATE B STARTS WITH A LEG

2    UP BECAUSE MORE WAS PROVED AGAINST HIM IN THE FIRST PLACE,

3    WHEREAS INMATE A IS MORE LIKELY TO STAY IN SHU BECAUSE LESS WAS

4    PROVED AGAINST HIM IN THE FIRST PLACE.

5            I THINK THAT'S WHAT HE'S SAYING.

6        **MR. HRVATIN:**  YES, AND I DIS --

7        **THE COURT:**  WE COULD FIND OUT BY READING THE REGS.  I

8    MEAN, THAT CAN'T BE -- UNLESS THE REGS ARE AMBIGUOUS AND

9    UNCLEAR, WE SHOULD BE ABLE TO FIGURE THAT OUT.

10       **MR. HRVATIN:**  THE SAME STANDARD APPLIES TO BOTH THE

11   CONDUCT OF THE INMATE, WHETHER IT BE INMATE A OR B, IS GOVERNED

12   AS TO HOW HE PROGRESSES OR REGRESSES THROUGH THE STEPS, BECAUSE

13   THE SAME STANDARD --

14       **THE COURT:**  RIGHT.  AT THAT TIME.

15       **MR. HRVATIN:**  -- APPLIES TO BOTH.

16       **THE COURT:**  AT THAT TIME.

17       **MR. HRVATIN:**  CORRECT.

18       **THE COURT:**  BUT IF A STARTS OFF WORSE BECAUSE HE HAS

19   ALREADY GOTTEN IN THERE BY VIRTUE OF AN EASIER STANDARD WHEN HE

20   GOT THERE.  SO HE'S WORSE OFF THAN B, ONE MIGHT ARGUE, BECAUSE

21   B HAD MORE PROVEN AGAINST HIM IN THE FIRST PLACE.  EVEN THOUGH

22   ONCE THEY GET -- SORT OF LIKE A HEAD START IN A RACE.  EVEN

23   THOUGH ONCE THEY GET AFTER THE FIRST LAP THEY ARE BOTH AT THE

24   SAME SPOT, ONE OF THEM GOT A HEAD START BECAUSE HE HAD MORE

25   PROVED AGAINST HIM IN THE FIRST PLACE.

```
 1              I DON'T KNOW IF I'M BEING CLEAR.
 2          MR. HRVATIN:  ONE MIGHT ARGUE --
 3          THE COURT:  I'M NOT SURE THAT'S WHAT HE IS SAYING,
 4   BUT I THINK THAT'S WHAT HE'S SAYING.
 5          MR. HRVATIN:  ONE MIGHT EVEN MAKE THAT ARGUMENT, YOUR
 6   HONOR, AND I THINK THAT WE WOULD CLEARLY DISPUTE IT OR
 7   DISAGREE.
 8          THE COURT:  WHAT DO THE REGS SAY?  I MEAN, IF THE
 9   REGS SAY:
10              "NO MATTER HOW LONG YOU'VE BEEN IN SHU, WE'RE
11              GOING TO START OVER AND PRETEND YOU NEVER WERE IN SHU
12              AND WE ARE GOING TO PRETEND YOU JUST WALKED INTO
13              PRISON YESTERDAY AND GIVE YOU AN INITIAL FINDING THAT
14              YOU SHOULD HAVE BEEN IN SHU IN THE FIRST PLACE," IF
15   THAT'S WHAT IT STAYS, THEN HE'S WRONG.
16              BUT IF IT SAYS:
17              "WE'RE JUST GOING TO TAKE YOU AS YOU COME, AND
18              IF YOU'RE IN THERE, WE'RE GOING TO START FROM YOU'RE
19              IN THERE AND NOT WORRY ABOUT HOW YOU GOT IN THERE IN
20              THE FIRST PLACE."
21              BUT THE REGS SHOULD SAY THAT, ONE WOULD EXPECT.
22              ANYWAY, LET'S -- I DON'T THINK ANY OF US KNOW THE
23   ANSWER, SO -- BUT IF YOU COULD TELL ME WHAT YOU THINK ABOUT THE
24   CASE LAW THAT THEY CITED.  AND I CAN'T REMEMBER THE CASE.
25   MAYBE FRANKLIN OR SOMETHING LIKE THAT THAT SAYS THAT EVEN IF
```

```
 1  SOMEONE IS A CLASS REP AND CERTIFIED AS A CLASS REP, AND THEN

 2  BECOMES NO LONGER A MEMBER OF THE CLASS, CAN STILL CONTINUE TO

 3  REPRESENT THE CLASS.  WHAT DO YOU SAY ABOUT THAT?

 4           MR. HRVATIN:  YES.  SO, YOUR HONOR, IF YOU ARE

 5  TALKING ABOUT THE CASE THAT WAS -- THAT COUNSEL JUST

 6  REFERENCED, I DON'T --

 7           THE COURT:  NO, NOT THAT ONE.  IT WAS ONE HE CITED.

 8  DO YOU WANT ME TO LOOK IT UP?  I CAN'T REMEMBER.  I FEEL LIKE

 9  IT WAS FRANKLIN.  BUT --

10           MR. HRVATIN:  MY RECOLLECTION OF THE AUTHORITIES,

11  YOUR HONOR, ONE OF THE THINGS THAT STOOD OUT TO ME WAS I

12  THOUGHT THAT NONE OF THOSE MOOTNESS DISCUSSIONS HAPPENED IN THE

13  CONTEXT OF A CLASS CASE.  THEY WERE INDIVIDUAL INMATE CASES,

14  BUT I MAY BE -- I MAY BE MISTAKEN, AND I APOLOGIZE FOR THAT,

15  YOUR HONOR.

16           MR. LOBEL:  ISN'T THE CASE WE CITE SOSNA VERSUS IOWA?

17           THE COURT:  I DON'T REMEMBER.  I DON'T REMEMBER.

18           MR. LOBEL:  IT'S BLACK LETTER LAW THAT A CERTIFIED

19  CLASS REPRESENTATIVE CAN CONTINUE TO REPRESENT THE INTERESTS OF

20  THE CLASS EVEN IF HIS INDIVIDUAL INTEREST HAS BEEN MOOTED

21  POSTCERTIFICATION.

22           ON PAGE TEN OF OUR BRIEF:

23               "ALL THAT IS REQUIRED IS THAT THE CLASS

24           REPRESENTATIVE CONTINUES TO 'FAIRLY AND ADEQUATELY

25           PROTECT THE INTERESTS OF THE CLASS.'"
```

```
 1                  AND WE PIN CITED IT TO A PARTICULAR PAGE, AND I
 2     RECALL THAT CASE, AND I BELIEVE THAT'S WHAT IT STANDS FOR.  I
 3     HOPE THAT'S WHAT IT STANDS FOR.
 4                  THE COURT:  THAT WOULD BE GOOD.  YES, MAYBE THAT'S
 5     WHAT I'M THINKING OF.
 6                  MR. LOBEL:  IT'S ON PAGE TEN OF OUR REPLY.
 7                  THE COURT:  OH, OF THE REPLY?
 8                  MR. LOBEL:  OF THE REPLY, YES.  WE ONLY RAISED
 9     THIS -- WE DIDN'T RAISE MOOTNESS AT OUR ORIGINAL -- ALL WE
10     RAISED WAS THE MOTION TO SUPPLEMENT, FILED A SUPPLEMENTAL
11     BRIEF.  THEY RAISED MOOTNESS, AND WE REPLIED TO IT.  IT'S A
12     SUPREME COURT CASE, BUT --
13                  THE COURT:  OKAY.
14                  MR. LOBEL:  A LITTLE OLD, BUT WHAT CAN YOU DO?
15                  THE COURT:  THAT'S RIGHT.  I GUESS THAT'S RIGHT.  SO
16     THAT -- AND ALSO YOU CITE LA DUKE V. NELSON.
17                  MR. LOBEL:  YES, I THINK.  SO I THINK THAT IS THE
18     LAW.  I MEAN, I'M NOT --
19                  THE COURT:  DO YOU HAVE ANYTHING?
20                  MR. HRVATIN:  YOUR HONOR, I'M SORRY.  AT PRESENT HERE
21     TODAY I DO NOT.
22                  THE COURT:  OKAY.
23                  MR. HRVATIN:  AND I'D BE HAPPY, GIVEN THAT THE COURT,
24     I THINK, HAS RAISED A GOOD ISSUE, WE'D BE HAPPY TO LOOK AT
25     THESE AUTHORITIES THAT WERE CITED IN THE REPLY AND SUBMIT A
```

```
 1   FURTHER RESPONSE, IF THE COURT WOULD LIKE SOME BRIEFING THAT

 2   COULD HELP THE COURT ADJUDICATE THIS MOOTNESS ISSUE.

 3            THE COURT:  PLEASE.  YOU CAN GIVE ME, SAY, ANOTHER

 4   TWO OR THREE PAGES EITHER ADDRESSING THOSE CASES OR CITING

 5   CASES THAT SAY THE OPPOSITE.  YOU CAN REPLY WITH ANOTHER PAGE

 6   OR TWO.

 7            MR. LOBEL:  SURE.

 8            THE COURT:  IF YOU WOULD DO THAT.

 9            MR. HRVATIN:  AND, YOUR HONOR --

10            THE COURT:  SO THAT'S THE -- THAT'S THAT ISSUE.  AND

11   THEN, THERE'S THE FUTURE REMEDY ISSUE, THE NOTION THAT THEY

12   CAN, EVEN IF THEY AREN'T CLASS MEMBERS THAT THEY CAN PURSUE

13   INDIVIDUAL CLAIMS FOR INJUNCTIVE RELIEF.  OTHER THAN JUST BEING

14   TAKEN OUT OF SHU, BUT INSTEAD GETTING PROGRAMMING, OR THIS OR

15   THAT.

16            MR. HRVATIN:  BUT EVEN IF THOSE, THAT ADDITIONAL

17   RELIEF IS NOT BEING SOUGHT IN THE SUPPLEMENTAL PLEADING THAT IS

18   BEFORE US NOW?

19            THE COURT:  YES.  THEIR ARGUMENT IS THEY ASKED FOR

20   ALL JUST AND PROPER RELIEF.

21            MR. HRVATIN:  OKAY.

22            THE COURT:  AS PEOPLE ALWAYS DO, AND THAT THAT WOULD

23   BE ONE OF --

24            MR. HRVATIN:  AND THIS IS PART OF THAT.

25            THE COURT:  OR THAT PERHAPS, I SUPPOSE, THEY COULD
```

1    MOVE TO AMEND AGAIN.  THAT WOULDN'T BE WELL-TAKEN GIVEN THE AGE

2    OF THE CASE.  BUT, ANYWAY, THAT'S A SECOND ARGUMENT.  AND A

3    THIRD ARGUMENT IS THE LIKELY-TO-RECURE ARGUMENT, WHICH WE JUST

4    TALKED ABOUT, I GUESS.

5             SO THE ONLY ONE THAT YOU HAVEN'T TALKED ABOUT IS THE

6    INDIVIDUAL CLAIM FOR FUTURE REMEDY ARGUMENT.  AND I CAN GUESS

7    WHAT YOU ARE GOING TO SAY ABOUT THAT:  THEY DIDN'T PLEAD IT.

8    IT'S NOT --

9             **MR. HRVATIN:**  RIGHT.  AND, HOWEVER, YOUR HONOR, WE'D

10   BEEN HAPPY TO INCLUDE THAT IN THE PROPOSED SUPPLEMENTAL

11   BRIEFING THAT THE COURT IS CONSIDERING HERE.  IF YOU WOULD LIKE

12   US TO HIT THESE THREE POINTS, I CAN DO THAT.

13            **THE COURT:**  NO, I'M REALLY -- WELL, IF YOU CAN COME

14   UP WITH SOMETHING ABOUT THE REG.  IF YOU CAN DEMONSTRATE THAT

15   THE PERSON WHO HAS BEEN IN SHU FOR A LONG TIME AND WAS

16   VALIDATED UNDER THE OLD PROCEDURES IS NO MORE LIKELY TO END UP

17   BACK IN SHU THAN THE PERSON WHO WAS VALIDATED UNDER THE NEW

18   PROCEDURES BECAUSE THE REGS SOMEHOW GO BACK AND PUT THEM ALL IN

19   THE SAME FOOTING.  IF THAT'S WHAT THE REGS SAY, YOU CAN

20   CERTAINLY TELL ME THAT.  IF THAT ISN'T WHAT THE REGS SAY, YOU

21   COULD ADMIT THAT AND THAT WOULD MAKE IT EASIER.

22            **MR. HRVATIN:**  AND THAT WOULD FIT, YOUR HONOR, UNDER

23   THE THIRD ISSUE THAT I BELIEVE YOU IDENTIFIED WITH RESPECT TO

24   THE LIKELIHOOD OF A REOCCURRENCE, CORRECT?

25            **THE COURT:**  RIGHT.  AND IT'S NOT SO MUCH -- IT'S NOT

```
 1   A QUESTION OF THAT'S THE CAUSE OF ACTION.  IT'S NOT LIKE THAT,

 2   THAT THEY ARE SUING BECAUSE OF THAT.  WHAT IT IS IS A DEFENSE

 3   TO MOOTNESS, OR AN ARGUMENT ABOUT LIKELIHOOD OF RECURRENCE.

 4              MR. HRVATIN:  OKAY.

 5              MR. LOBEL:  YOUR HONOR?

 6              THE COURT:  SO -- BUT, ANYWAY, DID YOU HAVE ANYTHING

 7   ELSE YOU WANTED TO SAY?

 8              MR. HRVATIN:  WELL, THERE ARE A COUPLE OF THINGS.

 9   FIRST, WITH RESPECT TO THIS ADDITIONAL BRIEFING, MAY WE HAVE A

10   WEEK UNTIL THE END OF NEXT WEEK TO SUBMIT THIS?

11              THE COURT:  I GUESS SO.

12              MR. HRVATIN:  OKAY.  SO FRIDAY NEXT WEEK.

13              THE COURT:  OKAY.

14              MR. HRVATIN:  THANK YOU.

15              THE COURT:  AND YOU CAN FILE ON MONDAY.

16              MR. LOBEL:  SURE.

17              MR. HRVATIN:  WE'LL DO THAT, YOUR HONOR.  THANK YOU

18   FOR THAT OPPORTUNITY.

19              I THINK BY WAY OF THE COURT'S INCLINATION TO GRANT

20   THE PLAINTIFFS' MOTION FOR LEAVE AND ALLOW THE SUPPLEMENT TO BE

21   FILED, DOES THE COURT HAVE SOME SCHEDULE IN MIND AS TO HOW --

22   WE REQUESTED 30 DAYS TO INVESTIGATE, RESPOND TO THE PLAINTIFF.

23              I THINK PLAINTIFFS' COUNSEL MENTIONED THAT THEY

24   DIDN'T HAVE AN OBJECTION TO THAT REQUEST.  BY WAY OF WHAT THIS

25   CASE IS GOING TO LOOK LIKE GOING FORWARD IN CONNECTION WITH THE
```

1   SUPPLEMENTAL COMPLAINT, BECAUSE I THINK IT DOES, AGAIN, BY WAY

2   OF THE JUST AND FAIR TERMS THAT WE WOULD CONSIDER APPROPRIATE,

3   GIVEN THE COURT'S INCLINATION TO GRANT THE SUPPLEMENT, THAT

4   WE'D BE GIVEN ENOUGH TIME AND A SUFFICIENT SCHEDULE TO TAKE UP

5   I THINK THE TWO CRUCIAL ISSUES HERE, AT LEAST IN THE FIRST

6   INSTANCE WITH RESPECT TO WHETHER THE COMPLAINT SUFFICIENTLY

7   STATES A CLAIM.

8           AND, SECOND, AS WELL:  HOW ARE WE GOING TO DEAL WITH

9   THIS PROPOSED FURTHER CLASS IN CONNECTION WITH A CASE THAT

10  WE'VE OTHERWISE BEEN LITIGATING ON A CLASS-WIDE BASIS FOR OVER

11  NINE MONTHS.

12          **THE COURT:**  YES.  WELL, WHAT I WOULD PROPOSE WOULD BE

13  SOMETHING ALONG THESE LINES, AND THEN IF YOU DIDN'T LIKE IT AND

14  COULD AGREE ON SOMETHING DIFFERENT, YOU COULD DO THAT.  BUT I

15  WOULD SAY 28 DAYS FROM NOW YOU FILE YOUR MOTION TO DISMISS THE

16  SUPPLEMENTAL COMPLAINT, KEEPING IN MIND THAT ARGUMENTS YOU'VE

17  ALREADY MADE DON'T REALLY NEED TO BE MADE OVER AGAIN.  BUT IF

18  THERE'S SOMETHING NEW AND DIFFERENT BESIDES WHAT YOU'VE SAID SO

19  FAR, YOU COULD SAY THAT.  AND I COULD RULE ON IT ON THE PAPERS.

20          COUNSEL IS PLANNING ON FILING A SUMMARY JUDGMENT

21  MOTION ON THE FIRST CASE, OR THE ORIGINAL CASE, ON THE 2ND OF

22  JULY.  AND I DON'T KNOW IF YOU WERE PLANNING ON JUST OPPOSING

23  THAT, OR IF YOU WERE PLANNING ON FILING A CROSS MOTION FOR

24  SUMMARY JUDGMENT?

25          **MR. HRVATIN:**  THE COURT'S SCHEDULE CONTEMPLATES A

1    CROSS-MOTION.

2         **THE COURT:**  YOU WOULD BE FILING A CROSS-MOTION.

3         **MR. HRVATIN:**  CORRECT.

4         **THE COURT:**  SO THAT YOU'VE ALL BEEN PLANNING ON, SO

5    YOU CAN GO AHEAD AND DO THAT.  IT WOULD ADDRESS ONLY THE

6    ORIGINAL COMPLAINT AND THE CLAIMS THAT WERE MADE IN THE

7    ORIGINAL COMPLAINT.

8         I THINK THERE'S NO HARM IN LETTING COUNSEL DO WHAT HE

9    SUGGESTS, AND THAT IS INCLUDE IN HIS MOTION FOR SUMMARY

10   JUDGMENT A MOTION TO -- AT THE SAME TIME, A MOTION TO CERTIFY

11   THE CLASS INVOLVED IN THE -- LET'S CALL THEM "THE TEHACHAPI

12   PEOPLE."

13        WE COULD DELAY SUBSTANTIALLY YOUR RESPONSE TO THAT IF

14   YOU FELT LIKE IT WAS TOO BURDENSOME TO HAVE TO RESPOND TO THAT

15   NOW.  WE COULD WAIT, AND YOU COULD RESPOND TO IT NEXT JANUARY.

16        **MR. HRVATIN:**  I MEAN, WOULD THE COURT -- I MEAN,

17   WOULD WE BE PERMITTED TO CONDUCT SOME FORM OF DISCOVERY AS

18   TO --

19        **THE COURT:**  OH, SURE.

20        **MR. HRVATIN:**  AND WHEN ARE WE GOING TO DO THAT, YOUR

21   HONOR?

22        **THE COURT:**  NOW.  GO AHEAD ANY TIME YOU WANT.  I

23   MEAN, YOU KNOW, IT'S YOUR PRISON.

24        **MR. HRVATIN:**  AND NOW WE'RE TALKING --

25        **THE COURT:**  GO OUT THERE AND FIND OUT.

1        **MR. HRVATIN:** NOW WE'RE TALKING ABOUT FOUR OF THEM,

2   YOUR HONOR.  NOW WE'RE TALKING ABOUT FOUR SHUS.

3        **THE COURT:** YES.  LOOK, I HAVE PRISON CASES THAT HAVE

4   EVERY PRISON IN THE STATE OF CALIFORNIA, SO IT CAN BE DONE, YOU

5   KNOW.  THERE'S A LOT OF CASES LIKE THAT.  YOU'VE ONLY GOT FOUR.

6   MAYBE ONLY TWO.

7        SO, YES, WHATEVER DISCOVERY YOU NEED TO DO OR

8   INVESTIGATION OR ASKING YOUR OWN PEOPLE WHAT THE SITUATION IS,

9   YOU CAN START DOING THAT NOW, OR YOU CAN WAIT UNTIL LATER, IF

10  YOU WOULD LIKE.

11       BUT THE POINT IS THEY WOULD MAKE THEIR MOTION FOR

12  CLASS CERTIFICATION.  THAT DOESN'T HURT YOU HAVING THEM MAKE

13  IT.  AT LEAST YOU KNOW WHAT THEY ARE TALKING ABOUT.  AND IF YOU

14  PREFER AND YOU FEEL THAT YOU NEED ALL YOUR TIME TO WORK ON THE

15  SUMMARY JUDGMENT AND THE TRIAL, WE COULD DELAY YOUR RESPONSE TO

16  THE CLASS CERT MOTION, LIKE I SAY, UNTIL JANUARY.

17       YOU COULD THEN PROCEED.  AND WE COULD NOT NECESSARILY

18  DELAY, BUT AT LEAST LEAVE OPEN DISCOVERY ON THE TEHACHAPI

19  STUFF.  YOU COULD -- UNLESS THE CASE WERE RESOLVED ON SUMMARY

20  JUDGMENT, YOU'D CONTINUE TO PREPARE FOR TRIAL.

21       WE'D HAVE A TRIAL ON STRICTLY WHAT WAS CLAIMED IN THE

22  ORIGINAL COMPLAINT, WHICH WOULD BE ESSENTIALLY ON THE QUESTION

23  OF WHETHER TEN YEARS OR MORE IN PELICAN BAY AMOUNTS TO CRUEL

24  AND UNUSUAL PUNISHMENT.

25       AFTER THAT TRIAL WAS OVER, YOU COULD THEN RESPOND ON

```
1    THE CLASS CERT.  YOU COULD CONTINUE TO DO DISCOVERY ABOUT

2    TEHACHAPI.  WE COULD HAVE A SUMMARY JUDGMENT.  WE COULD, IF WE

3    NEEDED ONE, HAVE ANOTHER SUMMARY JUDGMENT MOTION WHICH

4    ADDRESSED ONLY NEW ISSUES HAVING TO DO WITH TEHACHAPI.  AND

5    THEN, YOU KNOW, MAYBE THAT WOULD BE LIKE IN FEBRUARY OR MARCH.

6    AND THEN, WE WOULD HAVE ANOTHER TRIAL MAYBE NEXT MAY ON

7    TEHACHAPI, UNLESS, OF COURSE, IT WAS FOUND THAT PELICAN BAY

8    WASN'T CRUEL AND UNUSUAL PUNISHMENT, IN WHICH CASE TACKING ON

9    TEHACHAPI --

10              MR. LOBEL:  IS IRRELEVANT.

11              THE COURT:  -- WOULD SEEM TO BE IRRELEVANT.

12              MR. LOBEL:  IT WOULD BE IRRELEVANT.

13              THE COURT:  YOU CONCEDE THAT?

14              MR. LOBEL:  I CONCEDE THAT.

15              THE COURT:  OKAY.  SO HE SAID ON THE RECORD THAT IF

16   THEY LOSE ON THE FIRST TRIAL THERE WOULDN'T EVEN BE A SECOND

17   TRIAL, SO --

18              MR. HRVATIN:  I'LL ORDER THAT TRANSCRIPT, YOUR HONOR.

19              THE COURT:  SO I THINK THAT'S WORKABLE.  AND I THINK

20   IT GIVES YOU SOME TIME TO DEAL WITH THE TEHACHAPI ANGLE AFTER

21   THE PELICAN BAY ANGLE IS DONE, AND MAY EVEN MOOT IT OUT.

22              MR. HRVATIN:  OKAY.  SO IF I UNDERSTAND, AND THE

23   COURT IS CONTEMPLATING THAT THE PARTIES WOULD NOT LITIGATE FOR

24   PURPOSES OF DISCOVERY --

25              THE COURT:  WELL, I --
```

1        **MR. HRVATIN:** -- AND LIABILITY UNTIL THE CONCLUSION

2    OF THE --

3        **THE COURT:** WELL, I WOULDN'T SAY THAT, NECESSARILY,

4    BECAUSE YOU MAY FIND IN SOME INSTANCES THAT THE DISCOVERY WITH

5    RESPECT TO PELICAN BAY WOULD BE THE SAME THINGS THAT YOU NEED

6    TO KNOW ABOUT TEHACHAPI.  FOR EXAMPLE, LIKE IF YOU WERE TAKING

7    THE DEPO OF SOME CDCR HEADQUARTERS GUY, I WOULDN'T MAKE ANY

8    SENSE TO CALL HIM IN FOR A DEPO AND ASK HIM A BUNCH OF

9    QUESTIONS ABOUT PELICAN BAY, AND SAY:

10        "NO, NO, NOTHING ABOUT TEHACHAPI."

11        IT WOULD PROBABLY BE MORE EFFICIENT FOR BOTH OF YOU

12    TO GO AHEAD AND NOT DRAW THAT ARTIFICIAL DISTINCTION.  AND IF

13    YOU'VE GOT SOMEBODY THERE WHO KNOWS ABOUT BOTH, GO AHEAD AND

14    ASK THEM SO MORE QUESTIONS.  SO I WOULDN'T FAVOR AN ARTIFICIAL

15    LINE-DRAWING DISTINCTION BETWEEN THEM, BUT IN BOTH OF YOUR

16    INTERESTS YOU WOULD BE CONCENTRATING ON PELICAN BAY.

17        YOU WOULDN'T TAKE A DEPO OF THE WARDEN OF TEHACHAPI,

18    FOR EXAMPLE.

19        **MR. HRVATIN:** RIGHT.  THAT SHIP HAS SAILED, YOUR

20    HONOR.  FACT DISCOVERY HAS CLOSED.

21        **THE COURT:** OH, WELL, THERE'S NO PROBLEM.

22        **MR. HRVATIN:** WELL, IT'S A -- IT'S NOT A PROBLEM AS

23    TO THE OLD CASE BECAUSE WE'RE DONE, AND WE'RE HOPEFULLY MOVING

24    FORWARD --

25        **THE COURT:** OH, OKAY.

| | |
|---|---|
| 1 | **MR. HRVATIN:**  -- IN EXPERT DISCOVERY AND -- |
| 2 | **THE COURT:**  WHY DON'T YOU TALK ABOUT IT? |
| 3 | I DON'T KNOW.  DO YOU WANT TO THE START DISCOVERY ON |
| 4 | THE NEW CASE?  OR I SHOULDN'T CALL IT A NEW CASE, BUT -- |
| 5 | **MR. LOBEL:**  ON THE NEW CLAIM. |
| 6 | **THE COURT:**  ON THE NEW CLAIM UNTIL -- |
| 7 | **MR. LOBEL:**  WE COULD.  THE ONLY -- |
| 8 | **THE COURT:**  OR JUST WAIT UNTIL JANUARY TO DO THAT, AS |
| 9 | WELL? |
| 10 | **MR. LOBEL:**  I THINK WE PREFER TO JUST WAIT.  AND IN |
| 11 | FACT -- |
| 12 | **THE COURT:**  OKAY. SO THEY AGREE.  YOU ARE RIGHT.  I |
| 13 | DIDN'T REALIZE DISCOVERY WAS CLOSED. |
| 14 | SO, YEAH.  YOU WOULD WAIT ON DOING ANY MORE |
| 15 | DISCOVERY. YOU WOULD WAIT ON -- YOU'VE ALREADY DONE YOUR |
| 16 | EXPERTS?  OR WHAT'S UP WITH YOUR EXPERTS? |
| 17 | **MR. LOBEL:**  OUR EXPERTS ARE DUE MARCH 13TH, AND WE'RE |
| 18 | PREPARED TO FILE OUR EXPERT REPORTS MARCH 13TH. |
| 19 | **THE COURT:**  BUT YOU ARE NOT GOING TO BE PUTTING |
| 20 | TEHACHAPI IN THERE. |
| 21 | **MR. LOBEL:**  NO. |
| 22 | **THE COURT:**  SO WE WOULD HAVE ANOTHER ROUND OF EXPERTS |
| 23 | IN JANUARY? |
| 24 | **MR. HRVATIN:**  SO WE'RE GOING TO HAVE AN UNSETTLED |
| 25 | SUPPLEMENTAL PLEADING BECAUSE WE'RE IN THE PROCESS.  WE HAVEN'T |

1  HAD AN OPPORTUNITY TO RESPOND TO IT, AND WE'RE STILL GOING TO

2  BE LITIGATING THE OLD PELICAN BAY CASE.

3        **THE COURT:**  CORRECT.  YES.  THE SUPPLEMENTAL

4  COMPLAINT, IT'S NOT THAT HARD.  I MEAN, YOU'VE ALREADY RAISED

5  ALL YOUR OBJECTIONS TO IT.  I DON'T KNOW WHAT ELSE NEW YOU'LL

6  THINK OF IN A MOTION TO DISMISS.  WE'LL RULE ON IT.  IT WON'T

7  BE THAT DIFFICULT.

8        AND THEN, THAT WILL BE ALL YOU'LL HAVE TO DO UNTIL

9  JANUARY.  ONE LITTLE MOTION TO DISMISS.

10        **MR. HRVATIN:**  VERY GOOD, YOUR HONOR.

11        **MR. LOBEL:**  YOUR HONOR, LET ME JUST MAKE A COUPLE

12  OF -- ASK A COUPLE OF QUESTIONS.  ONE IS ON THE -- WHEN THEY

13  FILE ON FRIDAY, WE HAVE UNTIL MONDAY TO RESPOND?

14        **THE COURT:**  OKAY, TUESDAY.

15        **MR. LOBEL:**  COULD WE GET TUESDAY?

16        SECOND, IF THEY ARE NOT GOING TO RESPOND UNTIL

17  JANUARY, IT MAKES MORE SENSE TO ME THAT WE FILE OUR MOTION FOR

18  CLASS CERTIFICATION AFTER THE TRIAL IS OVER, THEY THEN RESPOND.

19        **THE COURT:**  WE COULD DO THAT.  WOULD YOU RATHER DO

20  THAT?

21        **MR. LOBEL:**  I WOULD PREFER THAT.

22        **MR. HRVATIN:**  RESPOND TO?  I'M SORRY.  RESPOND TO

23  THE SUPPLEMENTAL COMPLAINT?

24        **MR. LOBEL:**  NO.

25        **THE COURT:**  NO.  HE'S PROPOSING THAT HE DOESN'T EVEN

```
1    FILE THE NEW CLASS CERT MOTION UNTIL AFTER THE FIRST TRIAL, OR

2    THE FIRST PART OF THE TRIAL, WHICH IS FINE, I THINK.

3             MR. HRVATIN:  YES, YOUR HONOR.  IF WE COULD -- IF WE

4    COULD HAVE AN OPPORTUNITY.  WOULD YOU MIND IF WE INCORPORATE

5    THAT ISSUE, AS WELL, INTO THE SUPPLEMENTAL BRIEFING JUST SO WE

6    UNDERSTAND AND GIVE THIS A LITTLE BIT OF THOUGHT AS TO HOW MOST

7    EFFICIENTLY TO LITIGATE THE OLD CASE IN CONNECTION NOW WITH

8    WHAT IS GOING TO BE A SUPPLEMENTAL COMPLAINT?

9             I'M NOT SURE RIGHT NOW -- I'M NOT SURE RIGHT NOW --

10            THE COURT:  I THINK IT MAKES MORE SENSE FOR THEM TO

11   DELAY IT.  WHO KNOWS?  IT MIGHT ALL BE MOOT BY THAT POINT.  WHY

12   MESS WITH IT NOW?  IF WE FILE TOO EARLY AND YOU DON'T RESPOND

13   TO IT FOR SIX MONTHS, THE CASE LAW CHANGES.  I THINK HE'S

14   RIGHT. AND THAT'S WHAT YOU WANTED IN THE FIRST PLACE, ANYWAY.

15            MR. LOBEL:  YES.

16            THE COURT:  LET'S GO BACK TO THAT.

17            YES.  THAT'S FINE.  THAT'S FINE.  THAT'S WHAT WE'LL

18   DO.

19            MAYBE YOU CAN GET TOGETHER AND TALK ABOUT ACTUAL

20   DATES.  I'VE ROUGHED OUT WHAT SORT OF THING I HAVE IN MIND.

21   KEEP IN MIND NOW I AM A SENIOR JUDGE NOW.  I WON'T BE AROUND

22   HERE FOREVER, SO WE NEED TO MOVE IT ALONG SOMEWHAT QUICKLY.

23   BUT MAYBE YOU ALL COULD TALK ABOUT A SCHEDULE FOR THINGS THAT

24   WOULD START HAPPENING IN JANUARY.

25            BUT IN TERMS OF THE MOTION TO DISMISS, FILE IT IN 28
```

1   DAYS.  NOTICE IT FOR FIVE WEEKS THEREAFTER.  DO THE USUAL

2   BRIEFING SCHEDULE.  I'LL PROBABLY RULE ON IT ON THE PAPERS.

3   AND THEN, OTHERWISE, YOU'LL JUST CARRY ON AS YOU HAVE BEEN.

4   AND ANYTHING WE ADD WILL BE ADDED AS OF JANUARY.

5           AND YOU CAN TRY AND TALK ABOUT WHAT THAT SCHEDULE

6   WILL ENTAIL.  OKAY?

7           **MR. LOBEL:**  THANK YOU.

8           **MR. HRVATIN:**  THANK YOU, YOUR HONOR.

9           **THE COURT:**  THANK YOU.

10          (THEREUPON, THIS HEARING WAS CONCLUDED.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   STENOGRAPHY CERTIFICATION

2          "I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
    FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."

3          FEBRUARY  16, 2015
           KATHERINE WYATT

4   _____

5

6   *Kathy Wyatt*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

KATHERINE WYATT, PRO TEM REPORTER, CSR, RMR (925) 212-5224