| | |
|---|---|
| JULES LOBEL (*pro hac vice*) | KAMALA D. HARRIS |
| ALEXIS AGATHOCLEOUS (*pro hac vice*) | Attorney General of California |
| RACHEL MEEROPOL (*pro hac vice*) | JAY C. RUSSELL |
| SAMUEL MILLER, State Bar No. 138942 | Supervising Deputy Attorney General |
| CENTER FOR CONSTITUTIONAL RIGHTS | ADRIANO HRVATIN |
| 666 Broadway, 7th Floor | Deputy Attorney General |
| New York, NY 10012 | State Bar No. 220909 |
| Tel: 212.614.6478 | 455 Golden Gate Avenue, Suite 11000 |
| Fax: 212.614.6499 | San Francisco, CA 94102-7004 |
| Email: aagathocleous@ccrjustice.org, | Telephone: (415) 703-1672 |
| rachelm@ccrjustice.org | Fax: (415) 703-5843 |
| *Attorneys for Plaintiffs* | E-mail: Adriano.Hrvatin@doj.ca.gov |
| (Additional counsel listed on signature page) | *Attorneys for Defendants* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| TODD ASHKER, et al., | Case No.: 4:09-cv-05796-CW |
| Plaintiffs, | **CLASS ACTION** |
| v. | **NOTICE OF JOINT MOTION AND MOTION FOR: (1) CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS; (2) PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; (3) STAY OF THE PROCEEDINGS; (4) NOTICE TO CLASS MEMBERS; AND (5) SCHEDULE SETTING FAIRNESS HEARING FOR FINAL APPROVAL** |
| GOVERNOR OF THE STATE OF CALIFORNIA, et. al., | |
| Defendants. | |
| | Date: October 6, 2015 |
| | Time: 2:00 p.m. |
| | Location: Courtroom 2, 4th Floor |
| | Judge: Honorable Claudia Wilken |

JOINT MOTION FOR CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT, STAY OF PROCEEDINGS, ETC.

CASE NO. 4:09-CV-05796-CW

**NOTICE OF JOINT MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on October 6, 2015, in Courtroom 2 on the 4th Floor, 1301 Clay Street, Oakland, California, Plaintiffs and Defendants will jointly move for an order providing that the Court: (1) conditionally certify under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure a Supplemental Settlement Class defined to include inmates who have now, or will have in the future, been housed by Defendants at Pelican Bay State Prison's Security Housing Unit (SHU) for ten or more years and who then were transferred to another CDCR SHU facility in connection with CDCR's Step Down Program; (2) preliminarily approve the Settlement Agreement reached by the parties that, if ultimately approved by the Court, will settle all claims for relief asserted in Plaintiffs' Second Amended Complaint and Supplemental Complaint; (3) approve the proposed notice to be distributed to the classes under Rule 23(c)(2) and (e)(1); (4) schedule a fairness hearing for final approval of the parties' Settlement Agreement; and (5) stay all proceedings pending resolution of the fairness hearing. This joint motion is based on this notice, the accompanying Joint Memorandum of Points and Authorities, the Declaration of Jules Lobel, and all documents and arguments submitted in support thereof. Rule 23 does not require a hearing on a motion seeking preliminary approval of a class action settlement, and the parties agree to forego the hearing, noticed for October 6, 2015, unless the Court concludes that a hearing is necessary.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This class action concerns the California Department of Corrections and Rehabilitation's (CDCR) gang management policies and practices and its use of segregated housing, including at Pelican Bay's SHU. In particular, the case alleges that confinement for ten continuous years or more at Pelican Bay SHU violates the Eighth Amendment's prohibition against cruel and unusual punishment, that such confinement solely based on alleged gang

affiliation violates the Eighth Amendment, and that the absence of meaningful review of SHU placement violates prisoners' rights to Fourteenth Amendment due process. After engaging in years of litigation—including a motion to dismiss, motion for class certification, and extensive fact and expert discovery—followed by five months of tough, arm's-length settlement negotiations, the parties have entered into a Settlement Agreement (the Settlement Agreement or Agreement) to resolve all claims for relief brought in this case. The Agreement has been approved by the named Plaintiffs after a full and fair opportunity to consider its terms and to discuss those terms with their counsel. The Agreement, if approved by the Court, would dispose of all claims for relief in the case.

By this motion, the parties now jointly seek approval of the Agreement, a copy of which is attached as Exhibit 1 to the Declaration of Jules Lobel submitted in support of the motion. In addition, the parties jointly seek an order conditionally certifying a Supplemental Class for settlement purposes only, approving notice to class members of a fairness hearing, setting a schedule for such fairness hearing for final approval of the Agreement, and staying this litigation.

The Court should grant preliminary approval of the Agreement because it is the product of arm's-length, serious, informed and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation. Additionally, the parties have proposed a schedule that will allow an adequate opportunity for notice, and for review and comment by all class members. The schedule also is consistent with the parties' desire for prompt implementation of the Settlement Agreement.

II. BACKGROUND

Plaintiffs are Todd Ashker, George Franco, Gabriel Reyes, George Ruiz, Richard Johnson, Danny Troxell, Paul Redd, Luis Esquivel, Ronnie Dewberry, and Jeffrey Franklin (Plaintiffs). Defendants are the Governor of the State of California, the Secretary of CDCR, the Warden at Pelican Bay, and the Chief of CDCR's Office of Correctional Safety, each of whom is sued in his official capacity (Defendants).

This action was originally filed on December 9, 2009 as an individual pro se civil-rights suit by Plaintiffs Todd Ashker and Danny Troxell.  A First Amended Complaint was filed on May 21, 2010.  On September 10, 2012, Plaintiffs, having retained counsel, filed a Second Amended Complaint, which added class allegations and eight additional Plaintiffs.  The Second Amended Complaint alleges that CDCR's gang management regulations violate the Due Process Clause of the Fourteenth Amendment and that prolonged confinement in the conditions of confinement in Pelican Bay's SHU constitute cruel and unusual punishment in violation of the Eighth Amendment.  The Second Amended Complaint seeks declaratory and injunctive relief to address the alleged constitutional violations.

Defendants filed a motion to dismiss the Second Amended Complaint, which the Court denied on April 9, 2013.  (ECF No. 191.)  On April 30, 2013, Defendants answered the Second Amended Complaint.  (ECF No. 194.)  Shortly thereafter, Plaintiffs filed a motion for class certification, which the Court granted in part and denied in part on June 2, 2014.  (ECF No. 317.)  The Court certified two classes of inmates under Rules 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure:  (i) all inmates assigned to an indeterminate term at Pelican Bay's SHU on the basis of gang validation, under CDCR's policies and procedures, as of September 10, 2012; and (ii) all inmates who are now, or will be in the future, assigned to Pelican Bay's SHU for ten or more continuous years.  (*See, e.g*., ECF No. 317 at 11, 14, 21; ECF No. 387 at 13-17.)

On October 18, 2012, CDCR implemented its Security Threat Group program as a pilot program which modified the criteria for placement into the SHU and initiated a Step Down Program designed to afford validated inmates a way to transfer from the SHU to a general population setting within three or four years.  On October 17, 2014, and upon expiration of the pilot, CDCR's Security Threat Group regulations were approved and adopted in title 15.

Plaintiffs filed a motion for leave to file a Supplemental Complaint, which the Court granted on March 9, 2015.  (ECF No. 387.)  On March 11, 2015, Plaintiffs filed their Supplemental Complaint.  (ECF No. 388.)  The Supplemental Complaint alleges an additional

Eighth Amendment claim on behalf of a putative class of inmates who have now, or will have in the future, been housed by Defendants at Pelican Bay's SHU for longer than ten continuous years and then transferred to another CDCR SHU facility under the Step Down Program. Plaintiffs Dewberry, Franklin, Ruiz, and Troxell are alleged to be putative class representatives concerning this supplemental Eighth Amendment claim. Plaintiffs transferred from Pelican Bay's SHU also pursue injunctive relief on an individual basis. The Court stayed litigation on the Supplemental Complaint until the Eighth Amendment claim alleged in Plaintiffs' Second Amended Complaint is resolved. (ECF Nos. 387, 393.) As set forth in greater detail below, the parties jointly request that the Court certify Plaintiffs' Supplemental Class for settlement purposes.

From 2013 to 2015, the parties conducted extensive discovery, including more than 42 depositions of prison officials, prison leadership, prisoners, former prisoners and experts, and the production of hundreds of thousands of pages of documents. (Decl. Lobel ¶ 3.) Discovery was stayed by a round of settlement negotiations. (*Id*.) The parties served thirteen expert reports and eleven rebuttal reports, and took twelve expert depositions. (*Id*.) Discovery is closed. (*Id*.)

In the spring and summer of 2015, the parties engaged in extensive settlement negotiations, supervised by Magistrate Judge Nandor J. Vadas. (*Id*. ¶ 5, Ex. 1.) The Settlement Agreement, if approved, would settle all claims for relief asserted in Plaintiffs' Second Amended Complaint and the Supplemental Complaint.[1] (*Id*.)

---

[1] The Settlement Agreement also provides that Defendants agree to pay Plaintiffs' counsel attorneys' fees and costs for work reasonably performed on this case, including monitoring and enforcing CDCR's compliance with this Agreement, and for work to recover fees and costs, at the hourly rate set forth under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d). The Agreement states that Plaintiffs shall have sixty days from the entry of a final order approving this Agreement to file their motion for attorneys' fees and costs for work reasonably performed before that date. Plaintiffs will submit an informal fee demand to Defendants prior to filing the motion. If a settlement of the attorneys' fees and costs is reached, the parties will comply with Rule 23(h) requirements concerning notice to the class and Court approval.

## III. SUMMARY OF KEY PROPOSED SETTLEMENT TERMS

A complete copy of the Agreement is attached as Exhibit 1 to the Declaration of Jules Lobel, which is filed in support of this joint motion. The following are some of the key terms of the parties' Agreement:

1. CDCR shall no longer place prisoners into any SHU, Administrative Segregation, or the Step Down Program solely because of gang validation status. Instead, all SHU or Step Down Program placements of validated CDCR prisoners shall be based solely on a conviction of a SHU-eligible offense following a disciplinary due process hearing.

2. CDCR will no longer impose indeterminate SHU sentences, with a limited exception called Administrative SHU, imposed after a prisoner has served a determinate SHU term when the Departmental Review Board decides that overwhelming evidence shows that a prisoner presents an immediate threat and cannot be assigned to less-restrictive housing. CDCR will provide enhanced out-of-cell recreation and programming for these prisoners of 20 hours per week, and its placement decision is subject to review by Magistrate Judge Nandor J. Vadas. CDCR expects that a small number of prisoners will be retained in Administrative SHU.

3. CDCR will not house any inmate involuntarily in Pelican Bay's SHU for more than five continuous years.

4. Within one year of preliminary approval, CDCR will review the cases of all currently validated prisoners serving indeterminate SHU terms under the old validation regulations, or who are currently assigned to Steps 1 through 4 of the Step Down Program, or administratively retained in SHU. If an inmate has not been found guilty of a SHU-eligible rule violation with a proven Security Threat Group (STG) nexus within the last 24 months, he shall be released from the SHU and transferred to a General Population facility consistent with his case factors. Those who have been incarcerated in a SHU for more than ten years will generally be released from the SHU, even if they have committed a recent SHU-eligible offense and allowed to serve the remainder of the SHU term and their Step Down Program time in the new Restrictive Custody General Population unit.

5. The Step Down Program will be shortened from four to two years, and prisoners will be transferred from SHU after two years in the Step Down Program unless they commit a new SHU-eligible offense.

6. CDCR will create a new unit called the Restrictive Custody General Population unit (RCGP). The RCGP is a Level IV 180-design facility commensurate with similarly designed high security general population facilities. The RCGP will provide prisoners with increased opportunities for programming and social interaction such as contact visits, small group programming, and yard/out-of-cell time commensurate with Level IV general population in small group yards. Prisoners subject to transfer to the RCGP are those who: (i) refuse to complete required Step Down Program components; (ii) are found guilty of repeated STG violations while in the Step Down Program; (iii) face a substantial threat to their personal safety if released to the general population; or (iv) have been housed in a SHU for 10 or more

continuous years and have committed a SHU-eligible offense with a proven STG nexus within the preceding 24 months.

      7.     CDCR will train staff about the Agreement's requirements, including training to ensure that confidential information used against prisoners is accurate.

      8.     Plaintiffs' representatives and their counsel, with the assistance of Magistrate Judge Vadas, will have an active, ongoing role in overseeing implementation and enforcement of the Settlement Agreement, including the opportunity to raise before Magistrate Judge Vadas alleged violations of the Agreement or the Constitution.

      9.     The Court will retain jurisdiction over this case for two years.  Plaintiffs may extend the Court's jurisdiction by showing that current and ongoing systemic violations of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment exist; otherwise, the Court's jurisdiction and the parties' Agreement automatically ends.

      10.    Plaintiffs will file a motion for attorneys' fees following entry of a final order approving the Agreement.

## IV.    PROPOSED NOTICE

The parties have agreed to a proposed notice to class members, which is attached as Exhibit 2 to the Jules Lobel Declaration.  The parties agree that this form of notice is adequate to provide class members with notice of the proposed settlement and fairness hearing and complies with the due process requirements of Rule 23 of the Federal Rules.

      Within 30 days of the Court granting preliminary approval of the Settlement Agreement and the notice to class members attached as Exhibit 2 to the Jules Lobel Declaration, Defendants will post the notice in English and Spanish in each SHU housing pod or unit.  Moreover, copies of the order granting preliminary approval and the parties' Settlement Agreement will be provided in each law library servicing a CDCR SHU facility.  Defendants will provide Plaintiffs' counsel with a certification to confirm that the notice and related documents have been disseminated and posted, as agreed.

## V.    ANALYSIS

**A.  The Proposed Supplemental Settlement Class Should Be Certified.**

Rule 23 of the Federal Rules permits a case to be maintained as a class action if:

    (1) the class is so numerous that joinder of all members is impracticable,(2) there are questions of law or fact common to the class, (3) the claims or defenses of the

> representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* To demonstrate that class certification is proper, Plaintiffs must show that all four of these threshold requirements, and one of the three provisions of Rule 23(b), are satisfied. *Id.*; *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 162-63 (1974); *In Re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). Here, the proposed supplemental settlement class—of inmates who have now, or will have in the future, been housed by Defendants at Pelican Bay's SHU for ten or more years continuous years and then were transferred to another CDCR SHU facility in connection with CDCR's Step Down Program—meets all requirements and should be certified. This Supplemental Settlement Class, all of whom are also members of the original *Ashker* certified classes, will benefit from the policy changes agreed to by the parties.

**Numerosity**. Joinder of all members of the proposed Supplemental Class is impracticable. The latest data show that approximately 50 CDCR inmates have been housed by Defendants at Pelican Bay's SHU for longer than ten continuous years and then transferred to another CDCR SHU facility. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (noting Rule 23(a)(1) requires only "substantial" numbers) (citations omitted). Relatively small class sizes have been found to satisfy the numerosity requirement where joinder is still found impracticable. *See*, *e.g.*, *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673 (W.D. Wash. 2010) (certifying class of twenty-seven known plaintiffs); *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 2014 WL 6625011, at *16 (N.D. Cal. 2014) (noting that courts routinely find numerosity where class comprises 40 or more members). Additionally, where, as here, "the class includes unnamed, unknown *future* members, joinder of such unknown individuals is impracticable." *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986) (emphasis added). Certification is particularly appropriate where, as here, individual class members are alleged to have suffered medical and mental health effects from being housed in the SHU. *Amone v. Aveiro*, 226 F.R.D. 677, 684 (D. Haw. 2005) (finding joinder impracticable where proposed class comprised of

"individuals whose financial circumstances may prevent them from pursuing individual litigation [and] who are unlikely to know that a cause of action exists"); *Tenants Associated for a Better Spaulding v. U.S. Dep't of Hous. and Urban Dev.*, 97 F.R.D. 726, 729 (N.D. Ill. 1983) ("As the plaintiff class members are or were residents of federally-subsidized housing, there is a very real possibility that few, if any, of the class members are in the financial position to individually pursue this action."); *Matyasovszky v. Hous. Auth. of City of Bridgeport*, 226 F.R.D. 35, 40 (D. Conn. 2005) (finding numerosity particularly given circumstances of class, whose members were "low income, disabled, and in some cases, homeless individuals"); *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996) (certifying class where individuals "who are residents of a nursing home may also lack the ability to pursue their claims individually").

**Common Questions of Law or Fact**.  "All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, the Supplemental Class shares common questions of law or fact, as the action challenges system-wide policies or practices affecting inmates having been housed at Pelican Bay's SHU for ten or more continuous years, and all Supplemental Class members share the same claim that the duration of their exposure to SHU conditions stands in violation of their rights under the Eighth Amendment.  *L.H. v. Schwarzenegger*, No. CIV S-06-2042 LKK/GGH, 2007 WL 662463, at *11 (commonality is satisfied where "plaintiffs' grievances share a common question of law or of fact") (citing *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)).

**Typicality.**  The Supplemental Class representatives have claims typical of the Supplemental Settlement Class, as they are former Pelican Bay SHU inmates who are subject, or who have been subject, to the challenged policies or procedures.  The alleged harm suffered by the Supplemental Class representatives is typical of all members of the Supplemental Settlement Class.  Thus, each supplemental class representative is part of the class and

1  possesses "the same interest and suffer[s] the same injury as the class members." *General Tel.*
2  *Co. of the S.W. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *East Tex. Motor Freight Sys. v.*
3  *Rodriguez*, 431 U.S. 395 (1977); *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1020 (claims
4  are "typical" if "reasonably co-extensive" and "they need not be substantively identical").

5  **Adequacy.** The named Plaintiffs for the Supplemental Settlement Class and their
6  counsel are adequate. The named Plaintiffs' claims for injunctive relief are aligned with the
7  interests of other Supplemental Class members who are being or will be subjected to the same
8  policies and practices, and the named Plaintiffs have no interests antagonistic to the proposed
9  class. *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (affirming finding of adequate
10 representation where named plaintiffs "interested and involved in obtaining relief" for entire
11 class); *Access Now*, *Inc. v. Ambulatory Surgery Ctr. Group*, *Ltd.*, 197 F.R.D. 522, 528 (S.D.
12 Fla. 2000) (certification appropriate where named plaintiffs sought injunction against
13 accessibility barriers on behalf of similarly disabled persons); *Hilton v. Wright*, 235 F.R.D. 40,
14 52 (N.D.N.Y. 2006) (finding claims of named prisoner plaintiffs "consistent and
15 complementary to" those of proposed class, all of whom had been refused medical treatment
16 based on state prison policy). Courts rarely decline class certification in cases such as this one,
17 where no individual damages are sought. *See, e.g., Access Now*, *Inc.*, 197 F.R.D. at 528
18 ("[B]ecause there are no individual monetary damages sought, the interests of the representative
19 Plaintiffs do not actually or potentially conflict with those of the Class."). Class counsel will
20 fairly and adequately represent the interests of the Supplemental Class as they have done in the
21 remainder of the *Ashker* litigation. Undersigned counsel for the named Plaintiffs and the
22 Supplemental Settlement Class also meet the requirements of Rule 23(g), and therefore should
23 be appointed as Supplemental Settlement Class counsel.

24 **Rule 23(b)(2).** Finally, the proposed Supplemental Settlement Class meets the
25 requirements of Rule 23(b)(2) because the issues resolved via the parties' settlement "apply
26 generally to the class." Fed. R. Civ. P. 23(b)(2). As a matter seeking injunctive relief
27 concerning only system-wide policies or practices, this matter is well-suited for certification
28

1  under Rule 23(b)(2). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) cases); *Taylor v. Hous. Auth. of New Haven*, 257 F.R.D. 23, 32 (D. Conn. 2009) ("Where, as here, plaintiffs allege discriminatory and unlawful systemic or policy level actions, certification under Rule 23(b)(2) is proper."). Indeed, subdivision (b)(2) was added to Rule 23 in 1966 "primarily to facilitate the bringing of class actions in the civil rights area." Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d Ed., § 1775, p. 470 (1986).

### B. The Court Should Preliminarily Approve the Settlement Agreement.

As a procedural safeguard to protect "unnamed class members from unjust or unfair settlement," before a settlement becomes binding on the parties, the trial judge must approve the settlement only after finding that the settlement is "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e); *San Francisco NAACP. v. Brian Ho*, 2001 U.S. Dist. LEXIS 25904 (N.D. Cal. Oct. 24, 2001); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir 1992). Court approval of a class action settlement involves two phases: (1) preliminary approval and notice to the class; and (2) a fairness hearing and final approval of the settlement agreement. Manual for Complex Litigation, (Fourth) § 21.632 (2004).

At the preliminary approval phase a "full fairness analysis is unnecessary[.]" *Zepeda v. Paypal*, *Inc.*, 2014 U.S. Dist. LEXIS 24388, *1,*16 (N.D. Cal. Feb. 24, 2014) (citations omitted). The purpose the preliminary approval process is to determine whether the proposed settlement is within the range of reasonableness and thus whether notice to the class of the terms and conditions and the scheduling of a formal fairness hearing is worthwhile. Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:25 (4th Ed. 2002). Preliminary approval may be granted where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies [and] does not grant

1  preferential treatment to class representative or segments of the class[.]" *In re Tableware*, 484
2  F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (citations omitted).

3        There is an "initial presumption of fairness when a proposed class settlement was
4  negotiated at arm's length by counsel for the class." *Murillo v. Texas A&M Univ. Sys.*, 921 F.
5  Supp. 443, 445 (S.D. Tex. 1996). Other factors courts consider in assessing a settlement
6  proposal include: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and
7  likely duration of further litigation; (3) the risk of maintaining class-action status throughout the
8  trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage
9  of the proceedings; (6) the experience and views of counsel; (7) the presence of a government
10 participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon*, 150
11 F.3d at 1026; *see also In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1179 (N.D. Cal.1993). The
12 district court must explore these factors comprehensively to satisfy appellate review, but "the
13 decision to approve or reject a settlement is committed to the sound discretion of the trial
14 judge." *Hanlon*, 150 F.3d at 1026.

15       Furthermore, courts must give "proper deference to the private consensual decision of
16 the parties." *Id*. at 1027. Settlement is the preferred means of dispute resolution, particularly in
17 complex class litigation. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.
18 1982) (class action suit challenging allegedly discriminatory employment practices by a police
19 department). "[T]he court's intrusion upon what is otherwise a private consensual agreement
20 negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a
21 reasoned judgment that the agreement is not the product of fraud or overreaching by, or
22 collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,
23 reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. Thus a district court's
24 decision to approve a class action settlement may be reversed "only upon a strong showing that
25 the district court's decision was a clear abuse of discretion." *Id.*

26       Here, a preliminary review of the relevant considerations demonstrates a firm basis for
27 granting preliminary approval of the parties' Settlement Agreement. The Agreement is fair and
28

1 adequate in that Defendants have agreed to settlement terms that directly address the class
2 claims in this case, including, but not limited to, no longer placing prisoners into the SHU for
3 indeterminate terms solely on the basis of their validation as gang members and associates.
4 Defendants have further agreed to review the cases of all validated prisoners who are currently
5 in the SHU as a result of either an indeterminate term that was previously assessed under prior
6 validation regulations, who are currently assigned to Steps 1 through 4, or who were assigned to
7 Step 5 but are retained in a SHU. (Decl. Lobel, Ex. 1.) The Agreement was reached after
8 months of extensive arm's-length negotiations between the parties. Plaintiffs' representatives
9 played an active role in determining the terms of the Agreement through regular meetings and
10 individual and conference calls with Plaintiffs' counsel, and by giving their consent to the final
11 terms of the Agreement. Plaintiffs have been zealously represented by their experienced
12 counsel throughout this litigation. (*Id*. ¶ 7.)
13  The Settlement Agreement also was reached after extensive fact discovery was
14 completed, including numerous depositions, large productions of documents, and full expert
15 discovery. (*Id*. ¶ 3.) Thus, the parties had adequate time to fully evaluate one another's claims
16 and defenses before engaging in settlement negotiations and reaching an agreement.
17  Further, the outcome of the litigation and the extent of any relief that the classes might
18 be awarded if the case were to proceed to trial is uncertain. Proceeding through pre-trial
19 motions, trial, and probable appeal would impose risks, costs, and a substantial delay in the
20 implementation of any remedy in this matter. Given the relief achieved and the risks and costs
21 involved in further litigation, the negotiated settlement represents a fundamentally "fair,
22 reasonable and adequate" resolution of the disputed issues and should be preliminarily
23 approved. *See* Fed. R. Civ. P. 23(e)(2).
24  **C. The Proposed Notice is Adequate.**
25  Rule 23(e) requires that notice of the proposed settlement be disseminated to the class
26 before the Court grants final approval. As described above, the Court previously certified two
27 classes based on the allegations of Plaintiffs' Second Amended Complaint and the parties here
28

1  jointly request that the Court certify a Supplemental Class for settlement purposes only under
2  Federal Rules 23(a) and (b)(2), in connection with the additional claim asserted in Plaintiffs'
3  Supplemental Complaint.  The parties have agreed to the form and content of the notice to the
4  classes, which is attached to the Jules Lobel Declaration as Exhibit 2, and which the parties
5  agree provides reasonable notice of the terms of the Settlement. In addition to the notice,
6  Plaintiffs' counsel also intend to provide a full copy of the Settlement Agreement to all class
7  and supplemental class members. The means of disseminating the notice will allow an adequate
8  opportunity for class members to review and comment on the Settlement Agreement.  The
9  parties respectfully request that the Court approve the notice and order its dissemination to the
10 class members.

**D.  The Court Should Approve the Proposed Scheduling Order and Set a Date for the Fairness Hearing.**

The parties propose the following general time schedule to provide for notice, comment, and final approval of the Settlement Agreement.  The parties also submit a proposed scheduling order attached to the Jules Lobel Declaration as Exhibit 3.

First, the parties request thirty days from the date of preliminary approval to disseminate notice to all class members.  Second, the parties request a six-week period, following the dissemination of the notice, during which class members may file comments and objections. Third, the parties request three weeks from the end of the comment period for the parties to respond to any objections.  Fourth, the parties request that the fairness hearing be set approximately two weeks after the deadline for responding to the objections.  The entire schedule totals fifteen weeks from preliminary approval to the final approval hearing.

## VI.    CONCLUSION

For the reasons discussed above, Plaintiffs and Defendants request that the Court grant preliminary approval of the parties' Settlement Agreement, conditionally certify the proposed Supplemental Settlement Class, approve the form of the proposed notice and order its posting, issue the proposed scheduling order, and stay all other proceedings in this case pending a final

ruling on the fairness of the Settlement. The parties further request final approval of the Settlement Agreement at the time of the fairness hearing.

Dated: September 1, 2015          Respectfully submitted,

By:   /s/  Jules Lobel____
JULES LOBEL (*pro hac vice*)
ALEXIS AGATHOCLEOUS (*pro hac vice*)
Email: aagathocleous@ccrjustice.org
RACHEL MEEROPOL (*pro hac vice*)
Email: rachelm@ccrjustice.org
SAMUEL MILLER
Email: samrmiller@yahoo.com
SOMALIA SAMUEL
Email: ssamuel@ccrjustice.org
AZURE WHEELER
Email: awheeler@ccrjustice.org
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6478
Fax: (212) 614-6499

ANNE CAPPELLA (Bar No. 181402)
Email: anne.cappella@weil.com
AARON HUANG (Bar No. 261903)
Email: aaron.huang@weil.com
BAMBO OBARO (Bar No. 267683)
Email: bambo.obaro@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Tel: (650) 802-3000
Fax: (650) 802-3100

CAROL STRICKMAN (SBN 78341)
Email: carol@prisonerswithchilodren.org
LEGAL SERVICES FOR PRISONERS WITH CHILDREN
1540 Market Street, Suite 490
San Francisco, CA 94102
Tel: (415) 255-7036
Fax: (415) 552-3150

CARMEN E. BREMER
Email: Carmen.bremer@cojk.com
CHRISTENSEN, O'CONNOR,

JOHNSON & KINDNESS PLLC
1201 Third Avenue, Suite 3600
Seattle, WA 98101-3029
Tel: (206) 695-1654
Fax: (206) 224-0779

GREGORY D. HULL (State Bar No. 57367)
E-mail: greg@ellenberghull.com
ELLENBERG & HULL
4 N 2nd Street, Suite 1240
San Jose, CA 95113
Telephone: (408) 998-8500
Fax: (408) 998-8503

CHARLES F.A. CARBONE (Bar No. 206536)
Email: Charles@charlescarbone.com
LAW OFFICES OF CHARLES CARBONE
P. O. Box 2809
San Francisco, CA 94126
Tel: (415) 981-9773
Fax: (415) 981-9774

MARILYN S. MCMAHON (SBN 270059)
Email: Marilyn@prisons.org
CALIFORNIA PRISON FOCUS
1904 Franklin Street, Suite 507
Oakland, CA 94612
Tel: (510) 734-3600
Fax: (510) 836-7222

ANNE BUTTERFIELD WEILLS (SBN 139845)
Email: abweills@gmail.com
SIEGEL & YEE
499 14th Street, Suite 300
Oakland, CA 94612
Tel: (510) 839-1200
Fax: (510) 444-6698

*Attorneys for Plaintiffs*

KAMALA D. HARRIS
Attorney General of California

/s/ Adriano Hrvatin_____
ADRIANO HRVATIN
Deputy Attorney General
*Attorneys for Defendants*