UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

TODD ASHKER, et al.,

    Plaintiffs,

v.

MATHEW CATE, et al.,

    Defendants.

Case No. 09-cv-05796 CW (NJV)

**ORDER RE PLAINTIFFS' MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER**

Re: Dkt. No. 590

On July 21, 2016, Plaintiffs filed a Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge Regarding Retention of Four Class Members in SHU before the Honorable Claudia Wilken. (Doc. 590.) On September 16, 2016, District Judge Wilken issued an order in which she denied Plaintiffs' request for an evidentiary hearing and recommitted Plaintiffs' motion to the undersigned "to consider the new evidence and the parties' arguments." (Doc. 632, 13:11-12.) The undersigned held a hearing on the matter on December 7, 2016. (Doc. 643.) After due consideration, the court has determined that further briefing is necessary, as explained below.

**PROCEDURAL HISTORY**

On September 30, 2015, six prisoners were charged with CDCR rule violations for conspiracy to murder an inmate with a security threat group ("STG") nexus. At the time of the original rules violation reports ("RVRs") all six men were in Pelican Bay State Prison Secured Housing Unit ("SHU") on indeterminate terms. The conspiracy charges arose from an investigation which began on January 20, 2015, and involved coded prisoner notes found between January and April 2015. The charges were not filed until the end of September 2015, near the

1   time the prisoners would have been released to general population pursuant to the settlement
2   agreement reached in this case, as none had a SHU-eligible offense within the prior two years.
3   All six inmates were found guilty of conspiracy to commit murder after a disciplinary hearing.
4   One inmate's guilty finding was subsequently reversed by Associate Warden Bradbury based on
5   lack of evidence.

6   In January 2016, Plaintiffs' Counsel requested that CDCR provide them with a copy of the
7   relevant confidential file. Defendants objected and the undersigned ordered CDCR to provide the
8   file to the court for *in camera* review. Plaintiffs' Counsel wrote to the undersigned, alleging a
9   number of procedural deficiencies, and reasserting their request to review the confidential files
10  underlying the RVRs. Following discussions with Counsel and the court, CDCR withdrew the
11  five RVRs, and in its March 21, 2016 status report indicated that the RVRs would be reissued and
12  reheard. During this same period, the undersigned ordered that Plaintiffs' Counsel be provided
13  with a redacted copy of the confidential file.

14  On May 10, 2016, Plaintiffs filed a Motion to Enjoin CDCR from Continuing to Retain
15  Five Prisoners in SHU. (Doc. 524.). Plaintiffs contended: (1) there was no evidence of a
16  conspiracy to murder, (2) CDCR failed to adequately disclose to the alleged co-conspirators the
17  confidential information on which the RVRs were based, and (3) the RVRs were untimely under
18  CDCR regulations. Plaintiffs sought to alleviate the conditions of solitary confinement of the five
19  alleged co-conspirators. Defendants opposed the Motion, arguing: (1) the Settlement Agreement
20  does not allow Plaintiffs to challenge the legitimacy of an RVR which results in retaining a class
21  member in the SHU, (2) any due process violations in the original RVRs were moot, and
22  (3) the alleged co-conspirators were not entitled to any relief from their conditions in solitary
23  confinement. (Doc. 536.)

24  On May 31, 2016, three weeks after Plaintiffs had filed their Motion, CDCR reissued the
25  RVRs based on the same conspiracy to murder. The new RVRs were issued to only four of the
26  inmates, because the CDCR decided to withdraw the RVR as to one inmate. The newly reissued
27  RVRs were based on the same confidential record previously provided to Plaintiffs' Counsel, but
28  were accompanied by new CDC 1030 forms disclosing more of the confidential information

2

relevant to the charges. *See* Bremer Decl., Ex. 3.

Plaintiffs' Motion was heard before the court on June 10, 2016. (Doc. 560.) The court found that it had jurisdiction under paragraphs 49 and 53 of the Settlement Agreement to determine whether the four men were being retained in SHU pursuant to an illegitimate RVR. (Doc. 573, 45:1-12.) The court declined to review the alleged procedural errors in the first set of RVRs, in light of CDCR's representation that new RVRs had been issued, and would be heard. (*Id*. at 73:11-12.)

On June 24, 2016, some three weeks after the reissuance of the RVRs, CDCR served the prisoners with another new confidential disclosure form purporting to summarize new evidence discovered in June of 2016. *See* Bremer Decl., Ex. 3. The new evidence was in the form of testimony by a new confidential informant.

In a letter dated November 28, 2016, Defense Counsel informed the court that the four men in question had been transferred from Corcoran SHU to Restricted Custody General Population ("RCGP").

## THE SETTLEMENT AGREEMENT

Paragraph 53 of the Settlement Agreement is applicable here, as the violations alleged are specific to particular Plaintiffs, and are not "systematic." Paragraph 53 provides as follows:

> 53. If Plaintiffs contend that CDCR has not substantially complied with any other terms of this Agreement that do not amount to current, ongoing, systemic violations as alleged in the Second Amended Complaint or Supplemental Complaint of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment of the United States Constitution, they may seek description of the basis for that contention and may request that the parties meet and confer to resolve the issue. Defendants shall respond to Plaintiffs' contentions no later than 30 days after they receive Plaintiffs' written description of the issue. If the parties are unable to resolve the issue informally, Plaintiffs may seek enforcement of the Agreement by seeking an order upon noticed motion before Magistrate Judge Vadas. It shall be Plaintiffs' burden in making such a motion to demonstrate by a preponderance of the evidence that Defendants have not substantially complied with the terms of the Agreement. Defendants shall have an opportunity to respond to any such evidence presented to the Court and to present their own evidence in opposition to Plaintiffs' motion. If Plaintiffs satisfy their burden of proof by demonstrating substantial noncompliance with the Agreement's terms by a preponderance of the evidence, then Magistrate Judge Vadas may issue an order to achieve substantial compliance with the Agreement's terms. An order issued by Magistrate Judge Vadas under this Paragraph is subject to review under 28 U.S.C.

§ 636(b)(1)(B).

Paragraph 34 of the Settlement Agreement provides in part that, "CDCR shall adhere to the standards for the consideration of and reliance on confidential information set forth in Title 15 of the California Code of Regulations, section 3321."

## DISCUSSION

### Mootness

Defendants argue in their letter of November 28, 2016, that in light of the transfer of the men to RCGP, Plaintiffs' motion is now moot.

In response, Plaintiffs argue in their letter of November 29, 2016, that their motion is not moot. They argue that because of the finding of guilt as to conspiracy to commit murder with a gang nexus, the men served approximately a year of a determinate SHU sentence. But for that conviction, they argue, the men would have been transferred to General Population ("GP"). Further, because of the "with a gang nexus" component of the conspiracy finding, the men have not now been sent to GP, but rather were sent to Step One of the Step Down Program of the Restricted Custody General Population, pursuant to paragraph 26 of the Settlement Agreement.

The court agrees with Plaintiffs that their Motion is not moot, at least to the extent that it challenges the reissued RVRs and the related disciplinary hearings. Because of the findings of those disciplinary hearings, the four men have suffered adverse consequences from being sent to RCGP, including less contact visits, not being eligible to earn good time credits, potential negative effects on eligibility for parole and the need to complete the requirements of the Step Down Program. Further, Plaintiffs' procedural claims as to the first RVRs may also not be moot. District Judge Wilken has ruled that, "[i]f Defendants' actions did not correct earlier procedural due process violations, then Plaintiffs' claims would not be moot." (Doc. 632, 11:8-10.)

### Procedural Claims

Plaintiffs' May 10, 2016 Motion to Enjoin CDCR from Continuing to Retain Five Prisoners in SHU incorporated an earlier February 1, 2016 letter to the undersigned, alleging procedural and substantive deficiencies that arose in CDCR's adjudication of the first set of RVRs. *See* Bremer Decl., Ex. 1 (Plaintiffs' Motion to Enjoin) at Ex. C. CDCR argued that this issue was

4

moot, as it planned to reissue the RVRs with "all confidential information required under section 3321." *See* Doc. 536 at 6. The court accepted CDCR's representation and declined to rule on Plaintiffs' procedural claims. Plaintiffs now claim that while the new RVRs do provide increased confidential disclosures, they are still inadequate. Plaintiffs contend that fundamental violations of 15 C.C.R. Section 3321 and the right to due process persist in the new RVRs, even after CDCR's second chance at following their due process requirements. They seek a declaration that the prior and current RVRs violate CDCR's regulations on the use of confidential information, the Settlement Agreement and constitutional due process protections.

The Copies of the Notes and the FBI's Transcriptions of those Notes

Plaintiffs argue that while the new confidential disclosure forms set forth a significant portion of the language CDCR relies on to find a conspiracy, the alleged co-conspirators still have not been provided copies of the relevant notes they are alleged to have written. Section 3321 (and paragraph 34 of the Settlement Agreement), provides that certain types of information shall be classified as confidential, such as information, which if known to the inmate would endanger the safety of any person. 15 C.C.R. § 3321(a)(1). With respect to such confidential information, CDCR is required to provide to the inmate "as much of the information as can be disclosed without identifying its source." Section 3321(b)(3)(B). *See Young v. Kann*, 926 F.2d 1396, 100-02 (3rd Cir. 1991) (no security concern preventing the production of the prisoner's own letter used against him). Plaintiffs reasonably argue that without access to the notes on which the CDCR relied to find the existence of a conspiracy, and the FBI transcriptions of those notes, the alleged conspirators have no way to challenge the accuracy of the CDCR's allegations as to what they said and what the notes mean. Interestingly, Plaintiffs note that the confidential informant told the CDCR that it was mistaken as to the identity of the person identified by a code name in one of the notes. Bremer Decl., Ex. 4 at RVRinCamera 0132.

Distortion and Omission of Relevant Evidence from Confidential Disclosures

Plaintiffs allege that the new confidential disclosure reports misstate the confidential information in significant ways. For example, they allege that the second confidential disclosure report attached to each RVR briefly describes an interview with a confidential informant ("CI") and in doing so, attributes a statement to the CI that does not appear in the underlying March 19,

5

2015 confidential memo summarizing the interview with that CI. Bremer Decl., Ex. 4 at RVRInCamera 0211-0215. While the language in question does appear in a September 30, 2015 confidential memorandum detailing the investigation, Plaintiffs reasonably question how this later description of the interview could contain more information than contained in the original memo. Plaintiffs also contend that the new confidential disclosure reports describe a prisoner note in a materially different way than the note is described in the FBI's transcription of the note in the confidential file.

Plaintiffs allege that along with misstating or distorting certain evidence, the new confidential disclosure reports omit other important information altogether, citing four instances of such omission. For example, Plaintiffs allege that one Plaintiff's new confidential disclosure report identifies him as using a particular code name. Plaintiffs claim that is based on evidence in the September 30, 2015 confidential memorandum. Yet the confidential disclosure report fails to mention this memorandum, much less summarize the information therein. Without access to the information, Plaintiffs argue, it is impossible to challenge it.

Defendants do not address the substance of Plaintiffs' arguments, despite having had the opportunity to do so. Instead, Defendants make several arguments of their own. First, Defendants argue that a disagreement with individual inmate disciplinary findings cannot amount to a breach of the Settlement Agreement. The court is unconvinced by this argument. This would nullify paragraph 53, which provides the procedure for Plaintiffs to prove "substantial noncompliance with the terms of the Settlement Agreement" based on violations which are not "current, ongoing, systematic." Second, Defendants argue that claims regarding prisoner disciplinary proceedings are routinely raised in habeas corpus petitions or civil rights actions pursuant to 42 U.S.C. Section 1983. However, District Judge Wilken has ruled that the existence of such remedies does not preclude the relief sought here. (Doc. 632, 10:16-17.)

Third, Defendants argue that the Plaintiffs have sidestepped the Settlement Agreement's dispute resolution provisions by presenting their arguments regarding the revised RVRs to District Judge Wilken before presenting them to the undersigned. Plaintiffs reasonably respond that this is the result of CDCR's delay from March 21, 2016, to May 31, 2016, in reissuing the RVRs. Moreover, due to Judge Wilken's referral, Plaintiffs' arguments are now before the undersigned.

Accordingly, Defendants will be ordered to file a supplemental brief, specifically and directly addressing in detail each of Plaintiffs' allegations regarding procedural violations in the revised RVRs.

**Sufficiency of the Evidence**

Plaintiffs repeat their argument, made in regard to the original RVRs, that insufficient evidence existed to support the disciplinary findings of guilt of conspiracy to commit murder with an STG nexus. Plaintiffs contend that the elements of the disciplinary violation of conspiracy are the same as those of the crime of conspiracy under the California Penal Code. Defendants will be asked to address this argument, specifically comparing and contrasting the definition of crimes under the California Penal Code and the definition of disciplinary violations under Title 15 of the California Code of Regulations, and how this applies to the present case. Defendants will also address the apparent discrepancy between the violated rule charged in the RVRs and the specific acts, as noted in Footnote 8 of Plaintiffs' Motion.

**Compliance with Regulations**

Plaintiffs contend that the new RVRs are time-barred. The undersigned did not address this contention previously, because of the pending reissuance of the RVRs. Plaintiffs state correctly that CDCR's regulations require prompt issuance of RVRs after misconduct is identified. *See* 15 CCR § 3320(a) (prisoners to be provided with a CDC 115 notice of rule violation within 15 days from the date the information is discovered by staff); 15 CCR § 3320(a)(1) (CDCR may delay issuance of a CDC 115 by an additional 30 days, for a total of 45 days, in certain limited circumstances.) Plaintiffs contend that while the rules permit another 45-day period for re-issuance of a CDC 115 after the date the chief disciplinary hearing officer orders rehearing (*see id*. at § 3320 (a)(2)), there is no extra time allotted for reissuance of an RVR at CDCR's discretion, without order of the disciplinary hearing officer.

Plaintiffs argue that even if the additional time the rule allows for reissued RVRs applies to voluntarily withdrawn RVRs, and even if CDCR met the three exceptions under § 3320(a)(l), allowing for an additional 30 days, CDCR would still be time barred from reissuing the RVRs, as CDCR indicated in its March 21, 2016 status report to the undersigned that it would reissue the RVRs. The RVRs, however, were not reissued until May 31, 2016, more than the 15, or even 45,

days allowed by Title 15.

Defendants are ordered to brief the issue of the timeliness of the revised RVRs, addressing Plaintiffs' arguments set forth above.

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that no later than January 26, 2017, Defendants shall file a supplemental brief addressing in detail Plaintiffs' contentions in each of the three areas as outlined above, including citation to controlling authority.  Plaintiffs may file a responsive supplemental brief no later than ten days after the date Defendants file their supplemental brief.

**IT IS SO ORDERED**.

Dated: January 5, 2017

_____
NANDOR J. VADAS
United States Magistrate Judge