1   JULES LOBEL (*pro hac vice*)
    Email: jll4@pitt.edu
2   RACHEL MEEROPOL (*pro hac vice*)
    Email: rachelm@ccrjustice.org
3   SAMUEL MILLER, State Bar No. 138942
    Email: sammmiller@yahoo.com
4   CENTER FOR CONSTITUTIONAL RIGHTS
    666 Broadway, 7th Floor
5   New York, NY 10012
    Tel: (216) 614-6478
6   Fax: (212) 614-6499

7   Attorneys for Plaintiffs

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11

12  TODD ASHKER, et al.,                    Case No.: 4:09-cv-05796-CW

13          *Plaintiffs*,                   **CLASS ACTION**

14          v.                              **DECLARATION OF DARYN REICHERTER
                                            IN SUPPORT OF PLAINTIFFS'**
15  GOVERNOR OF THE STATE OF                **ENFORCEMENT MOTION REGARDING**
    CALIFORNIA, et. al.,                    **VIOLATION OF SETTLEMENT**
16                                          **AGREEMENT PROVISION REQUIRING**
                                            **RELEASE OF CLASS MEMBERS TO**
17          *Defendants*.                   **GENERAL POPULATION**

18                                          Honorable Claudia Wilken

19

20

21

22

23

24

25

26

27

28

I, Daryn Reicherter, declare as follows:

1.      I am the director of the Human Rights in Trauma Mental Health Laboratory (Stanford Lab) and a Clinical Associate Professor at Stanford University, School of Medicine's Department of Psychiatry and Behavioral Sciences.  The Stanford Lab is a multidisciplinary collaboration between Stanford University's School of Medicine, Law School, and the WSD Handa Center for Human Rights and International Justice, and is composed of faculty and students including academic clinicians, lawyers, and policy experts with special knowledge in the area of trauma mental health. Moreover, the team has practical experience in clinical psychiatry and mastery of the science of the effects of adverse conditions on human psychology, as well as significant experience performing interviews and qualitative research in adverse conditions.

2.      I also am an Attending Physician in the General Psychiatry Clinic at Stanford Hospital, and I serve as a psychiatrist at the Gardener Mental Health Clinic in San Jose, California as well.  I am on the Fulbright Specialists Roster for work in international trauma mental health, and a Senior Fellow at the Center for Innovations in Global Health at Stanford University.

3.      I received my Bachelor of Arts degree in Psychobiology and Philosophy, *Suma Cum Laude,* from the University of California, Santa Cruz in 1994.  In 2001, I received my Doctor of Medicine degree from New York Medical College.

4.      Since 2002, I have been licensed as a Physician and Surgeon by the Medical Board of California.  In 2007, I received my Diplomate from the American Board of Psychiatry and Neurology.  Additional background and experience is listed on my c.v., attached hereto as Exhibit 1.

5.      I am an expert in the area of cross-cultural trauma psychiatry, having spent more than a decade dedicated to providing a combination of administrative and clinical services in trauma mental health locally and internationally.

6.      In the spring of 2017, members of the Stanford Lab, including myself, were invited to consult with attorneys from the Center for Constitutional Rights (CCR) representing class

1   members in the *Ashker* case. The Stanford Lab was asked to gather narratives from *Ashker* class

2   members in order to glean insight into what lasting psychiatric sequelae are present and how the

3   acquired psychological changes affect the transition from solitary confinement to the mainline, as

4   well as to review the science of the consequences of isolation for human psychology. The focus of

5   the endeavor was to evaluate the extent of psychological harm directly related to prolonged,

6   indefinite isolation in the Security Housing Units (SHU) at California prisons and to determine

7   whether that harm continues to impact prisoners following their release from SHU.

8         7.      As a result of this consultation, I have co-authored the report entitled *Mental*

9   *Health Consequences Following Release from Long-Term Solitary Confinement in California*

10   ("Report"), submitted as Exhibit 2 to this Declaration, and previously provided to the Court and

11   counsel for the California Department of Corrections (CDCR).

12         8.      The methodology and limitations of our process in the consultation are contained in

13   the Report. (Report pp. 1-3). Based on my expertise in clinical psychiatry and my experience

14   performing interviews and qualitative research, especially in adverse conditions, I can say that the

15   information gained during the prisoner interviews for this consultation are the sort reasonably

16   relied upon by experts in the field of psychiatry in forming opinions as to the nature and extent of

17   psychological harm borne by individuals who have experienced trauma. Additionally, the quality

18   and size of the set of narratives we gathered provides a reliably representative sample of the

19   overall population of class members, subject to the acknowledgement of limitations referenced in

20   the Report (pp. 2-3).

21         9.      For the purpose of this declaration, I focus on the aspects of the Report referencing

22   the experiences of *Ashker* class members being housed following release from SHU Level IV

23   prisons. To highlight some of the relevant portions of the Report:

24         a.   General Population units in which prisoners spend almost all of their day in their cell

25             with little productive activity, have contributed to many class members' continuing

26             psychological symptoms. (Report p. 25).

27

28

b.  Class members who are denied opportunities for employment or education can be expected to demonstrate greater levels of psychiatric distress, poorer general health, and poorer outcomes with regard to functioning and performance.  (Report p. 23).

c.  Class members who were involved in jobs and other programming at the time of interview appeared to adjust to GP significantly better than those who lacked similar opportunities.  (Report p. 25).

d.  The lack of programming, significant restrictions, limited mobility, and repeated distress and disruptions experienced by ex-SHU prisoners in GP led some class members to describe their experience in GP as a "modified SHU."  (Report p. 15).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in _San Jose, California_ on October, 13, 2017.

Daryn Reicherter, M.D.