UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TODD ASHKER, et al., <br>     Plaintiffs, <br> v. <br> BROWN, et al., <br>     Defendants. | Case No. 09-cv-05796-CW (NJV) <br><br> **ORDER RE PLAINTIFFS' ENFORCEMENT MOTION REGARDING RETENTION OF GANG-VALIDATED READMITTED INMATES IN ADMINISTRATIVE SEGREGATION** <br><br> Re: Dkt. No. 804 |

    Pending before the court is Plaintiffs' Enforcement Motion Regarding Retention of Gang-Validated Readmitted Inmates in Administrative Segregation. (Doc. 804.) The matter was heard before the court on October 20, 2017. After considering the parties' arguments, the court will deny the motion for the reasons explained below.

    In this motion, Plaintiffs seek an order requiring CDCR to transfer to appropriate non-SHU, non-administrative-segregation housing within fifteen days all inmates who (i) paroled from CDCR custody while serving an indeterminate SHU term for gang validation; (ii) upon readmission to CDCR custody, were assigned to (and still remain in) administrative segregation based on either their gang-validation status or MAX custody status; and (iii) have no guilty findings of a SHU-eligible RVR with a proven STG nexus within the past 24 months.

    Plaintiffs' essential argument is that when gang-validated prisoners leave CDCR custody through parole and then subsequently reoffend, CDCR cannot house them in SHU or ASU upon their readmission to CDCR custody merely because of their gang-validation status. Plaintiffs claim that while CDCR has in place new proposed regulations on that issue, CDCR is retaining at least seven gang-validated reoffenders in Ad Seg, apparently pending review of safety concerns. Some

have been there more than six months. Plaintiffs argue that this is in violation of both the Settlement Agreement and the CDCR's own February 16 policy memo, both of which require general population housing unless a gang-validated reoffender has been found guilty of a SHU eligible offense with a proven Security Threat Group nexus in the past 24 months.

In footnote 1 of their Motion, Plaintiffs identify 7 prisoners who they claim have been wrongly detained in Ad Seg. They also state that there were at least 12 other gang-validated offenders who were also placed in Ad Seg upon their readmission to CDCR custody, who have since debriefed.

CDCR issued a policy memo to its Reception Center Institutions, on February 5, 2016. The memo outlines separate protocols to determine appropriate housing for four different categories of MAX custody reoffenders, including those who served SHU terms for gang-validation and those who served SHU terms due to safety concerns. For those prisoners whose SHU term was based on gang validation, the memo instructs that unless there is a guilty finding of a SHU eligible RVR with a proven STG nexus within the past 24 months, <u>the prisoner with no additional safety concerns</u> "shall be released from ASU/STRH with appropriate custody designation. The case will be referred to a CSR for transfer to an appropriate GP institution consistent with the inmate's case factors and placement score." (Emphasis added.) The cited provision also permits consideration of a prisoner's "additional safety/security concerns." The memo provides :

> "If the inmate is being reviewed due to significant safety concerns, ICC will require a current investigation to be completed. The investigation will be complete and comprehensive, detailing all safety related concerns for the inmate, and will include a thorough review of the inmate's file, interview with the inmate, other inmates, staff, or agencies that may have pertinent information relative to the inmate's safety issues."

Plaintiffs argue that CDCR's practice of reviewing safety concerns for all prisoners returning to CDCR custody with a MAX custody designation, and CDCR's explanation for it, are at odds with the February 5, 2016 memo because the memo outlines separate protocols for handling prisoners who paroled with MAX custody status due to safety concerns, and those who paroled with MAX custody status due to gang validation. Plaintiffs claim that only the former protocol includes review of safety concerns; the latter is limited to reviewing disciplinary history.

2

In response, Defendants state that every inmate who returns to CDCR's custody on maximum-custody status is assigned to segregated housing while he is evaluated for appropriate housing consistent with CDCR's obligation to maintain inmate and staff safety and institutional security. *See generally*, *Hewitt v. Helms*, 459 U.S. 460, 473 (1983) (the State must ensure the safety of guards and prison personnel, the public, and the prisoners themselves); *Griffin v. Gomez*, 741 F.3d 10, 20 (9th Cir. 2014) (Prison administrators are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). On this point, all inmates who return to CDCR's custody after having paroled or otherwise discharged on maximum-custody status are treated the same.

Defendants explain that prison officials focus on the inmate's custody status—maximum custody being the highest custody status—to determine how best to safely house the inmate and maintain institutional security. Under paragraph 25 of the Settlement Agreement, CDCR reviewed approximately 1,600 validated inmates serving indeterminate SHU terms for potential transfer to the general population. The threshold criterion was whether an inmate had a SHU-eligible rules violation with an STG nexus within the past twenty-four months. But, argue Defendants, just because the inmate may not have had a rules violation on his record did not guarantee immediate transfer to the general population. If the inmate had safety concerns, he could be a candidate for placement in CDCR's Restricted Custody General Population unit. (Settlement Agreement ¶¶ 25, 27.) If he had a serious history of disciplinary issues, he could be retained on administrative SHU status. (*Id*. ¶ 29.) Defendants conclude that CDCR must perform the same particularized review of safety factors for inmates returning to CDCR custody on maximum-custody status, regardless of whether the inmate's case file reflects that he was validated as a gang affiliate.

In regard to Plaintiffs' contention that assigning readmitted inmates who are gang validated to administrative segregation violates the February 5, 2016 policy memorandum, Defendants argue that the memorandum provides that "[a] validated STG affiliate who was serving an administrative SHU term based on STG validation and previously paroled or were discharged

3

with maximum custody classification and are returning to CDCR's custody shall be retained in ASU pending completion of the ICC CBC review." (Bremer Decl. Ex. C.) The memorandum directs staff to review the validated inmate's disciplinary section of his file for any guilty finding of a SHU-eligible offense with an STG nexus. (*Id.*) "Validated STG affiliates with no guilty findings of a SHU eligible RVR with a proven STG nexus within the last 24 months, and who have no additional safety/security concerns shall be released from ASU/STRH with appropriate custody designation" and "[t]he case will be referred . . . for transfer to an appropriate [general population] institution consistent with the inmate's case factors and placement score." (*Id.* (emphasis added).) Thus, CDCR reviews every inmate who paroled from CDCR's custody on maximum-custody status and is re-incarcerated, regardless of validation, to ensure that inmate's safety and preserve institutional security. Until that review is complete, the inmate is held in segregated housing. Defendants argue that to do otherwise would needlessly expose inmates and staff to preventable incidents and violate CDCR's Eighth Amendment duty to protect.

Plaintiffs' final argument is that "CDCR's practice of housing gang-validated reoffenders in ASU pending review of safety concerns further runs afoul of CDCR's own proposed regulations implementing the terms of the SA." (Pls.' Mot. Enforce 5.) CDCR's proposed regulations codify the behavior-based model contemplated by the Settlement Agreement into Title 15. Inmates who return to CDCR custody on maximum-custody status are assigned to administrative segregation while CDCR determines an appropriate housing placement, which could include SHU reassignment based on the inmate's case factors. An inmate who returns to CDCR's custody on maximum-custody status who was serving a determinate SHU term for a prison rules violation could be assigned to administrative segregation. (Bremer Decl. Ex. E at 22 (referring to proposed amendment to Cal. Code Regs., tit. 15 § 3341.6(b)).) An inmate who was discharged on administrative SHU status (which could include gang validation) and returns to CDCR's custody could be assigned to segregated housing. (*Id.* at 23 (referring to proposed amendment to § 3341.6(c)).) But an inmate's status as a validated gang affiliate, on its own, does not result in an assignment to segregated housing. Rather, it is the inmate's maximum-custody status that warrants temporary segregated housing while CDCR investigates the basis for the

4

designation and evaluates appropriate housing.

The court finds that no material breach of the Settlement Agreement in CDCR's stated policy that every inmate who returns to CDCR's custody on maximum custody status is assigned to segregated housing while he is evaluated for appropriate housing consistent with CDCR's obligation to maintain inmate and staff safety and institutional security. While the court finds no material breach of the Settlement Agreement, it does understand Plaintiffs' concerns that the safety review for certain gang validated readmitted inmates appears to be proceeding at less than optimal speed. The court recognizes CDCR's discretion in the day to day management of its institutions, but urges CDCR to review the relevant procedures to assure that its safety review does not amount to the unexamined, de facto long-term placement of gang validated readmitted inmates in administrative segregation as a matter of course.

Plaintiffs' Enforcement Motion Regarding Retention of Gang-Validated Readmitted Inmates in Administrative Segregation is HEREBY DENIED.

**IT IS SO ORDERED**.

Dated: November 2, 2017

_____
NANDOR J. VADAS
United States Magistrate Judge