UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TODD ASHKER, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>BROWN, et al.,<br><br>  Defendants. | Case No. 09-cv-05796-CW (RMI)<br><br>**ORDER REGARDING PLAINTIFFS' ENFORCEMENT MOTION REGARDING CLASS MEMBERS RETAINED IN ADMINISTRATIVE SEGREGATION FOR SAFETY CONCERNS**<br><br>Re: Dkt. No. 832 |

Pending before the court is Plaintiffs' Enforcement Motion Regarding Class Members Retained in Administrative Segregation for Safety Concerns filed October 10, 2017. (Doc. 832.) Defendants oppose the motion. (Doc. 897.) The court heard argument on December 19, 2017, and after considering the parties' papers and their arguments at the hearing, will deny Plaintiffs' motion for the reasons explained below.

## DISCUSSION

Plaintiffs seek relief pursuant to Paragraph 52 of the Settlement Agreement, which addresses contentions of ongoing violations of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment.[1] Plaintiffs contend that CDCR is "systematically violating the Settlement Agreement by maintaining class members in administrative segregation for months on end, based on unproven safety concerns." Specifically, Plaintiffs contend that CDCR is failing to substantially comply with Paragraph 27 of the Settlement Agreement. This paragraph is within

---

[1] Paragraph 52 of the Settlement Agreement provides in part that, "[i]f Plaintiffs have demonstrated by a preponderance of the evidence a material noncompliance with these terms, then for the purposes of Plaintiffs' enforcement motion only, the parties agree that Plaintiffs will have also demonstrated a violation of a federal right."

Section C of the Settlement Agreement, entitled "Review of STG-Validated Inmates Currently in the SHU." The pertinent language of Paragraph 27 is as follows:

> 27. For those STG inmates considered for release to the General Population either following Step Down Program completion or pursuant to the review described in Paragraph 25, and against whom there is a substantial threat to their personal safety should they be released to the General Population as determined by a preponderance of the evidence, the Departmental Review Board retains the discretion, in accordance with existing authority, to house that inmate in alternate appropriate non SHU, non-Administrative segregation housing commensurate with his case factors, such as a Sensitive Needs Yard or RCGP, until such time that the inmate can safely be housed in a general population environment. The Departmental Review Board shall articulate the substantial justification for the need for alternative placement.
> . . .
> If Plaintiffs' counsel contends that CDCR has abused its discretion in making housing decisions under this Paragraph, that concern may be raised with Magistrate Judge Nandor J. Vadas in accordance with the dispute resolution and enforcement procedures set forth in Paragraphs 52 and 53 below to determine whether CDCR has articulated substantial justification by a preponderance of the evidence for alternative placement.

Plaintiffs claim that CDCR is violating Paragraph 27 by holding class members in administrative segregation for extended periods of time based on safety concerns after they are released from SHU pursuant to the review required by the Settlement Agreement. These class members were not transferred directly from SHU to administrative segregation. Rather, they are class members who were released from SHU to an initial housing situation and then placed in administrative segregation based on safety concerns. Thus, Plaintiffs tacitly claim that Paragraph 27 controls housing placement of class members even after an initial placement has been made following release from SHU.[2]

Plaintiffs state that this issue was discussed at the January 26, 2017 monitoring meeting. (Doc. 674.) At that time the Court ordered CDCR to update Plaintiffs on several individuals then held in administrative segregation, but denied Plaintiffs' request for a list of all CDCR inmates who had been held in administrative for more than three months. (Doc. 674, 26-29.) The Court

---

[2] At the hearing on December 19, 2017, Plaintiffs' Counsel stated on the record that class members are entitled to special protections for the duration of their incarceration.

2

stated, however, "If there continues to be a problem, I may very well have to side with Mr. Lobel and start to see some documentation as to how many and why they're here. I don't think that's an unreasonable splitting of the baby." *Id.* at 29.

On September 13, 2017, Plaintiffs provided CDCR and the Court with the names of 16 individuals Plaintiffs believed to be held in prolonged administrative segregation. At the September 18, 2017 monitoring meeting, the Court ordered CDCR to provide Plaintiffs with an update as to all of the individuals on the list who were class members. CDCR responded by email dated September 29, 2017, declining to provide information about seven individuals it identified as non-class members. For the remaining nine individuals, CDCR provided Plaintiffs with the date and reason each prisoner was placed in administrative segregation.[3]

In their motion, Plaintiffs cite three specific examples of class members who were transferred out of SHU to general population pursuant to the Settlement Agreement, but were then removed to restricted housing. Inmate no. 1 was removed to restricted housing thirteen days after being released from SHU due to an investigation by an outside agency. At the time of the filing of Plaintiffs' motion, he had remained in restricted housing for nearly fourteen months. Inmate no. 2 was removed to administrative segregation twenty days after he was transferred to general population, after he expressed safety concerns and requested placement in a special yard. According to Plaintiffs, he spent the next nineteen months in administrative segregation. Inmate no. 3 was transferred to general population and then placed in administrative segregation six days later after being the victim of a battery. He remained there for ten and a half months before being sent to the RCGP.

---

[3] In their motion, Plaintiffs ask the Court to order CDCR to provide information regarding two men who were previously identified as class members in discovery. In their opposition, Defendants state they have now provided Plaintiffs with the requested information. Defendants state that it shows that both inmates were released from SHU and transferred to general population before the Settlement Agreement was executed, and thus do not fall within either Paragraph 25 or Paragraph 27 of the Settlement Agreement.

3

Plaintiffs claim that these are not isolated examples and that the information provided by CDCR indicates that each of the eight class members identified spent over five months in administrative segregation with six class members spending between ten and nineteen months. Plaintiffs ask the court to order CDCR to disclose all class members currently held in administrative segregation for safety concerns, along with the date and reason for their placement, and order CDCR to provide the Court with a proposal to "ensure all class members held in administrative segregation for safety concerns are removed forthwith."

Plaintiffs' arguments are unconvincing. While Plaintiffs make the blanket assertion in their motion that the provisions of Paragraphs 25 and 27 "explicitly rule out placement of class members in administrative segregation based on safety concerns," they concede in their reply that "segregation may occasionally be necessary for a short period of time, to investigate where a prisoner may safely be housed in general population, or requires alternative placement." Thus, Plaintiffs state that they do not ask the Court to order class members' immediate release from administrative segregation, but rather to order CDCR "to develop a plan to ensure *safe* removal of all class members from prolonged administrative segregation."

In so doing, Plaintiffs proceed from the false premise that under the Settlement Agreement, CDCR must justify placement of class members in administrative segregation for safety reasons (and the length of that segregation) after their initial placement following release from the SHU. Paragraph 27, when examined in the context of the entire Settlement Agreement, clearly refers to placement of class members upon being released from SHU. It does not grant Plaintiffs supervisory authority over CDCR's subsequent security decisions regarding class members for their entire remaining terms of confinement. Plaintiffs appear to concede this point when they state correctly that there is no dispute that class members coming out of SHU with safety concerns cannot be placed into administrative segregation, and then assert "[t]here is no reason why the same should not be true when a safety concern is identified *after* the paragraph 25 review." To the

4

contrary, there is a very good reason: it is not required by the terms of the Settlement Agreement. Although Plaintiffs argue that Paragraph 27 would be meaningless if it could be circumvented by simply releasing an inmate to general population for a few days and then placing him in administrative segregation, the Settlement Agreement addressed placing inmates in SHU, administrative segregation or a step down program on the basis of their validation status. This is not the issue now before the court.

Although Judge Vadas required CDCR to provide information to Plaintiffs regarding the class members in administrative segregation based on safety concerns, he did not issue a decision ruling on whether such placement was covered by the Settlement Agreement. Judge Vadas suggested that evidence of a pattern of prolonged placements in administrative segregation might suggest that there was a problem, but he did not find that such a problem existed. He ordered CDCR to provide Plaintiffs with the relevant information concerning class members placed in administrative segregation, and CDCR provided that information to Plaintiffs. While Plaintiffs speculate that there may be many more class members being held in administrative segregation following their initial release into general population from SHU, the court finds no basis for requiring CDCR to provide further information on this topic. As explained above, the propriety of both such detention and the length thereof is beyond the scope of the Settlement Agreement.

The court finds that Plaintiffs have failed to carry their burden under Paragraph 52 of demonstrating by a preponderance of the evidence that CDCR is in material breach of its obligations under the Settlement Agreement. Accordingly, Plaintiffs' motion is HEREBY DENIED.

**IT IS SO ORDERED.**

Dated: December 21, 2017

_____
ROBERT M. ILLMAN
United States Magistrate Judge

5