UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TODD ASHKER, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>BROWN, et al.,<br><br>　　　　Defendants. | Case No. 09-cv-05796-CW (RMI)<br><br>**ORDER RE PLAINTIFFS' MOTION REGARDING SETTLEMENT AGREEMENT PROVISION REQUIRING RELEASE OF CLASS MEMBERS TO GENERAL POPULATION**<br><br>Re: Dkt. No. 930 |

Pending before the court is Plaintiffs' Enforcement Motion Regarding Settlement Agreement Provision Requiring Release of Class Members to General Population, filed October 13, 2017. (Doc. 849.) Plaintiffs filed a corrected version of the motion on December 7, 2017. (Doc. 930.) Defendants filed an Opposition to the motion on January 23, 2018 (Doc. 961), and Plaintiffs filed a Reply on February 5, 2018. (Doc. 969). The court heard oral argument on the motion on February 23, 2018. (Doc. 976).

**DISCUSSION**

In their motion, Plaintiffs contend that Defendants have violated the terms of the Settlement Agreement provision found at Paragraph 25 that provides that a class member eligible for release from the SHU shall be "transferred to a General Population level IV 180-design facility, or other general population institution consistent with his case factors." Settlement Agreement (Doc. 424-2) ¶ 25. Relying on legal principles of contract construction, Plaintiffs

argue that Defendants have placed many class members in housing that fails to meet the general meaning of "general population." As Plaintiffs note, the court previously held:

> The parties' agreement here is governed by California law (Settlement Agreement ¶ 60), which requires that contractual terms "be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." Cal. Civ. Code § 1644. Moreover, the parties agreed that "the language in all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning." (Settlement Agreement ¶ 61.)

Order Denying Motion to Compel (Doc. 785) 2:15-20. Plaintiffs argue that under Paragraph 25, they are entitled to be transferred to a prison that conforms with the ordinary and popular sense of "general population," "as reflected in the practices of other state prisons across the country." Pl.'s Motion (Doc. 849), 7:25-26.

Although Plaintiffs' argument concerns the construction of the term "general population," the complete term used in Paragraph 25 is "a General Population level IV 180-design facility." Considering the Settlement Agreement as a whole and the usage of the term in the context of the Settlement Agreement, it is clear that the parties understood a "General Population level IV 180-design facility" to refer to such an institution within the CDCR system. Thus, the default placement for class members eligible for transfer from the SHU was a CDCR "General Population level IV 180-design facility." It is undisputed that the class members at issue in this motion were each transferred to such a facility.

Plaintiffs contend, however, that the conditions at the institutions to which they have been transferred are such that they have not received the benefit of the bargain they made in entering into the Settlement Agreement, claiming that their conditions are worse than those of other class members. Specifically, they argue that while Paragraph 29 of the Settlement Agreement provides that inmates on Administrative SHU status will receive "enhanced out of cell recreation and programming of a combined total of 20 hours per week," many class members in General Population level IV facilities do not receive even an hour of out of cell time per day. Plaintiffs further argue that the programming provided for class members in General Population level IV

facilities falls short of what was agreed upon for RCGP inmates. Finally, Plaintiffs argue that class members in General Population level IV facilities actually experience less out of cell time than they did while housed in the SHU. Thus, Plaintiffs conclude that class members who are in General Population level IV institutions may actually live in more punitive and isolated circumstances than those in restrictive housing such as Administrative SHU or the RCGP, or as compared with what they endured while they were in the SHU. Plaintiffs therefore argue that placement of class members in CDCR's General Population level IV housing is inconsistent with the Settlement Agreement as a whole. The remedy that Plaintiffs seek is a court order requiring the parties to meet and confer with the goal of drafting a joint plan addressing Plaintiffs' allegations regarding the disparities in the out-of-cell time and programming afforded to class members in General Population level IV institutions.

In support of their arguments, Plaintiffs put forth the declaration of findings of Eldon Vail, former Secretary for the Washington State Department of Corrections. Vail Decl. (Doc. 930-3). This declaration relies on the surveys of approximately fifty-five class members, as well as the declarations of eight class members.[1] Defendants argue that this evidence is scientifically unreliable due to the number of surveys sent out and the number of inmates who responded to the survey, as well as the lack of distinction between out-of-cell time programming opportunities available from one institution to the next, as compared with the time inmates actually used and recorded in the month the survey was conducted. Defendants also argue that Plaintiffs' expert conducted no separate investigation to corroborate the inmates' data and improperly relied on his previous observations in other litigation against CDCR. Additionally, Defendants separately raised hearsay objections to the responses to Plaintiffs' survey, and to Mr. Vail's reliance on them. The court finds it unnecessary to resolve Defendants' objections.

## CONCLUSION

Plaintiffs seek to define the contractual term "General Population level IV 180-design

---

[1] Plaintiffs state that blank surveys were sent to 205 class members. Pl.'s Reply (Doc. 969) 7: fn. 4. Approximately 80 surveys were returned to counsel, of which approximately 25 were incomplete and therefore were excluded from the tabulations. (*Id.*)

3

facility" by reference to the meaning of "general population" in the standard usage of the term in the prison context, arguing that "CDCR cannot be allowed to transfer class members to a unit where their out-of-cell time falls below the common definition of general population."  Pl.'s Reply (Doc. 969) 2:8-10.  But such a restriction does not appear within the Settlement Agreement.  The Settlement Agreement which Plaintiffs signed provides for transfer of a specific subgroup of class members to a General Population level IV 180-design facility within the CDCR system. It provides no details regarding the conditions of confinement for those class members.  This is because, as Defendants argue, this case does not concern general population.  Rather, it concerns CDCR's agreement to change its segregated housing practices to comport with the related shift to a behavior-based model for managing prison gang affiliates.  *See* Order Granting Final Approval (Doc. 488) 19-20 (approving the parties' settlement resolving Plaintiffs' claims regarding CDCR's "policies and practices related to gang validation and management and its use of segregated housing").

Not only does the Settlement Agreement not specify details as to the conditions of confinement for class members transferred to a General Population level IV 180-design facility, it provides no requirements regarding the conditions of such a facility as compared with general population facilities nation-wide, or as compared with other inmates in the CDCR systems.[2] Plaintiffs may not, in the context of a motion to enforce the Settlement Agreement, seek to challenge the conditions found within the facility to which they were assigned in compliance with the Settlement Agreement, when no requirements regarding said conditions were included in the Settlement Agreement.  As Judge Vadas previously held, the Settlement Agreement "does not grant Plaintiffs supervisory authority over CDCR's subsequent security decisions regarding class members for their entire remaining terms of confinement."  Order Regarding Plaintiffs' Enforcement Motion Regarding Class Members Retained in Administrative Segregation for Safety Concerns (Doc. 946) 4: 22-24.  Nor does the Settlement Agreement grant Plaintiffs supervisory authority over the conditions of confinement at CDCR's General Population level IV facilities.

---

[2] It is for this reason that it is unnecessary to resolve the evidentiary issues raised by Defendants.

Any order by this court regarding such conditions of confinement at the CDCR General Population level IV facilities would far exceed the enforcement provisions of the Settlement Agreement over which this court has retained jurisdiction.

Based on the above, the court finds that Plaintiffs have not carried their burden pursuant to Paragraphs 52 or 53 of showing a material breach of, or substantial noncompliance with the Settlement Agreement. Accordingly, Plaintiffs' Motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated: March 29, 2018

ROBERT M. ILLMAN
United States Magistrate Judge