UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

TODD ASHKER, et al.,

    Plaintiffs,

v.

MATHEW CATE, et al.,

    Defendants.

Case No. 09-cv-05796-CW (RMI)

**ORDER DENYING PLAINTIFFS' ENFORCEMENT MOTION REGARDING RCGP PRISONERS ON WALK-ALONE STATUS**

Re: Dkt. No. 844

In this motion filed October 13, 2017, Plaintiffs contend that Defendants are not in substantial compliance with the Settlement Agreement in regard to a subgroup of restricted custody general population ("RCGP") prisoners who are on "walk alone" status. (Doc. 844.) Defendants oppose the motion. (Doc. 927.) The matter was heard before the court on March 16, 2018. (Doc. 980.) After reviewing the parties' arguments made in their papers and at the hearing, the court will deny Plaintiffs' motion.

## DISCUSSION

In support of their motion, Plaintiffs rely on Paragraph 25 of the Settlement Agreement, which provides in pertinent part as follows:

> Programming for those inmates transferred to or retained in the RCGP will be designed to provide increased opportunities for positive social interaction with other prisoners and staff, including but not limited to: Alternative Education Program and/or small group education opportunities; yard/out of cell time commensurate with Level IV GP in small group yards, in groups as determined by the Institutional Classification Committee; access to religious services; support services job assignments for eligible inmates as they become available; and leisure time activity groups. Contact visiting will be limited to immediate family and visitors who have been pre-approved in accordance with existing Title 15 visiting regulations.

Settlement Agreement (Doc. 424-2) ¶ 25.

Plaintiffs contend that Defendants are not fulfilling their obligations to the prisoners who are on walk-alone status within the RCGP. Relying on declarations of prisoners whom Plaintiffs claim are or have been on walk-alone status, Plaintiffs claim specifically that prisoners on walk-alone status in the RCGP:

> have less opportunity for physical exercise because their "yard time" is spent inside small cages with dirt floors and no roof that hold nothing more than a toilet and sink, they have no access to exercise equipment (not even a dip bar or pull-up bar), and they are unable to run or walk any significant distance;
>
> have limited opportunity for social interaction because they have no group activities, such as classes, informal discussion groups, work projects, or sports. Day room for prisoners on walk-alone status is weekly for about an hour (though some walk-alone prisoners receive more), during which time they go to day room alone, where there is virtually nothing to do except talk to other prisoners in their unit in front of their cells;
>
> have limited educational programming because prisoners on walk-alone status in the RCGP are only offered self-study and have little or no contact with the RCGP teacher, who only comes twice a week and spends most of his time with people who are programming with a group;
>
> frequently experience significant delays in delivery of their quarterly packages, which they are told is because prisoners housed in the new Level 2 unit at Pelican Bay have priority for the whole institution, and are not allowed canteen make-up draw; and
>
> have no meaningful ability to parole.

Pl.'s Mot. (Doc. 844) 4:19-5:13, citations omitted.

Plaintiffs thus contend that relative to their counterparts in RCGP who program in groups, walk-alone prisoners have fewer educational opportunities, less opportunities for social interaction, and less opportunity for physical exercise. Plaintiffs claim that the isolating conditions alleged above are exacerbated by the remote location of Pelican Bay State Prison, where the RCGP is located.

To remedy the alleged violations of the Settlement Agreement, Plaintiffs request an order from the court requiring the following:

1. CDCR shall move the RCGP out of Pelican Bay State Prison to a prison located

in the central part of the State;

2. Alternatively, CDCR shall move RCGP walk-alone prisoners who request transfer to comparable safe housing in the central part of the State;

3. CDCR shall expand educational and social opportunities for RCGP walk-alone prisoners as follows:
a minimum of four hours per week of contact with a teacher for each walk-alone prisoner;
a minimum of two hours per week for each walk-alone prisoner to participate in a group class, discussion or activity (such as AA/NA, GOGI, meditation, religious services, book club, Leisure Time Activity Groups, making music, or other appropriate activities) with a teacher, facilitator, or other resource person (can be a prisoner) in a secure setting; and
institute a "buddy" program in which each walk-alone prisoner is provided a compatible person to have contact visits with for a minimum of two hours per week. The "buddy" can be a volunteer from the outside community or another prisoner.

4. CDCR shall expand the walk-alone yard program as follows:
a minimum of two hours per month to go out to a grassy yard;
provide a way for walk-alone prisoners to be able to run and/or walk for an hour per week; and
installation of dip bars and pull-up bars in the yard cages.

Pl.'s Mtn. (Doc. 844) 8:12-9:15.

In response to Plaintiffs' contentions, Defendants provide the Declaration of J. Berg, Captain of Pelican Bay State Prison's RCGP unit. (Doc. 927-9.) Defendants provide the following explanation for the walk-alone status of some RCGP inmates:

> The current walk-alone policy exists because not all inmates assigned to the RCGP for their safety can program safely with other RCGP inmates. (Berg Decl. ¶ 4.) Inmates are not assigned to walk-alone status indefinitely, as Plaintiffs claim, but until such time that prison staff determine that the inmate can program safely with other RCGP inmates. (*Id*.) When an inmate first arrives to the RCGP, he is put on walk-alone status for a period of observation. (*Id*.) This allows staff over a period of a few weeks to see how the inmate interacts with other inmates in the housing unit, in the individual exercise yards, and with staff. (*Id*.) A correctional counselor then evaluates the inmate for possible assignment to a group of compatible RCGP inmates. (*Id*.) There are currently three compatible inmate groups—with between seven and nine inmates assigned to each group. (*Id*.) The RCGP inmates already assigned to the group sign a form memorandum confirming that they can safely interact with the inmate wishing to join the group. (*Id*.) The inmate new to the RCGP and the inmates already in the compatible group then appear before committee to confirm their agreement to add another inmate to the group or express any concerns. Committee ultimately decides whether to add the new inmate to the group. (*Id*.) This process allows inmates to contribute to decisions related to their housing, while giving

3

staff sufficient discretion to safely house all inmates assigned to the RCGP. (*Id.*) Def.'s Opp. (Doc. 927-4) 5:13-28.

In response to Plaintiffs' request that the court order CDCR to move the RCGP out of Pelican Bay and to a more centrally located part of the state, or move RCGP prisoners who request transfer to comparable safe housing in the central part of the state, Defendants argue that the issue of the location of the RCGP was addressed by the parties when seeking the court's final approval of the Settlement Agreement and the court approved the settlement knowing that the RCGP would be located at Pelican Bay. *See* Notice of Joint Motion and Motion for Final Approval of Settlement Agreement (Doc. 485). Plaintiffs provide no citation to the Settlement Agreement showing that the parties gave Plaintiffs the authority to choose the location of the RCGP.

In response to Plaintiffs' contention that walk-alone inmates have less opportunity for physical exercise, Defendants note that the parties agreed that RCGP inmates will have "yard/out of cell time commensurate with Level IV GP in small group yards, in groups as determined by the Institution Classification Committee." Settlement Agreement (Doc. 424-2) ¶ 28. Defendants argue that if an inmate cannot be assigned safely to a group of compatible RCGP inmates, Pelican Bay staff must have the discretion to provide the inmate with alternative opportunities for physical exercise. Defendants cite the declaration of Associate Warden Berg, who explains that in order to allow the inmates to exercise safely, Pelican Bay (like other institutions) uses fenced individual exercise yards that are linked in rows and located in front of the RCGP unit. Berg. Decl. (Doc. 927-9) ¶ 6. The individual yards have concrete floors, and half of the yard is covered so the inmates can be outdoors during inclement weather. (*Id.*) Each yard is twenty feet long, ten feet wide, and ten feet high, which gives the inmates space to run and walk. (*Id.*) At the allocated daily time for yard, staff escort as many as eight-to-fourteen inmates on walk-alone status at a time from the housing unit so the inmates can exercise outdoors, during which time the inmates routinely socialize with one another. (*Id.*)

4

Defendants respond to Plaintiffs' demand that walk-alone inmates be given access to a grass yard with the undisputed contention that nothing in the Settlement Agreement, the Constitution, or in applicable regulations mandates that inmates exercise on grass yards. Further, they assert that Pelican Bay State Prison cannot give walk-alone inmates access to its grass yard without interfering with the program provided to the prison's general inmate population, citing the Declaration of Associate Warden Berg. Berg. Decl. (Doc. 927-9) ¶ 7. In regard to Plaintiffs' demand for CDCR to install dip bars and pull-up bars in the individual exercise yards, Defendants state that Pelican Bay State Prison has submitted a work order for the installation of pull-up bars, which it expects to be filled by spring of 2018. (*Id*.)

In response to Plaintiffs' concerns that walk-alone inmates have limited social interaction, Defendants cite the declaration of Associate Warden Berg and reiterate the point that these inmates cannot be released into a group because of their safety concerns. Berg Decl. (Doc. 927-9) ¶ 8. They note, however, that walk-alone inmates in the day room may speak with other inmates in front of their cells. (*Id*.) Walk-alone inmates also have the same opportunities as other RCGP inmates for social interaction through regular access to telephone calls and contact and non-contact visits. (*Id.*) Further, as stated above, for the ten or more hours per week that walk-alone inmates are in the individual exercise yards, they can interact with the other inmates who are only a few feet away. (*See id*. ¶ 6.)

The Settlement Agreement allows CDCR to provide RCGP inmates "Alternative Education Program and/or small group education opportunities." Settlement Agreement (Doc. 424-2) ¶ 28. Defendants reiterate that walk-alone inmates have safety concerns that limit inmate-to-inmate exposure, and they currently cannot be assigned to a compatible group of other RCGP inmates. Berg. Decl. (Doc. 927-9) ¶ 9. But, they argue, Pelican Bay provides walk-alone inmates with appropriate access to educational opportunities through the alternative education program. (*Id*.) All RCGP inmates, including walk-alones, are offered educational programs, including

5

Alcoholics and Narcotics Anonymous programs, book club, recreational therapy, the "Getting Out By Going In" program, and Arts in Corrections. (*Id.*) RCGP inmates have access to Adult Basic Education and General Education Diploma (GED) programs, college courses offered through Lassen, Feather River, and Coastline, as well as the Center for Academic Support and Assessment testing, High School Equivalency testing, and GED testing. (*Id.*)

In response to Plaintiffs' demand that each walk-alone inmate receive a minimum of four hours per week of contact with a teacher, Defendants explain that the teacher assigned to the RCGP facilitates educational programming at least four days per week among all inmates housed there, including those in different compatible groups. Berg Decl. (Doc. 927-9) ¶ 9. The teacher dedicates at least two afternoons per week to the inmates on walk-alone status and corresponds with walk-alone inmates through the front of their cells to assist the inmates with their studies. (*Id.*) The prison is evaluating its hiring budget to retain additional teachers. (*Id.* ¶ 8.)

In response to Plaintiffs' contention that quarterly packages are delivered to walk-alone inmates later than other RCGP inmates and that walk-alone inmates are not allowed canteen make-up draws, Defendants correctly note that no settlement term concerns when quarterly packages should be delivered or the provision of canteen to RCGP inmates. Defendants state, however, that there is no current backlog related to the delivery of quarterly packages to any RCGP inmate, regardless of group status. Berg Decl. (Doc. 927-9) ¶10. Moreover, Pelican Bay provides all RCGP inmates with access to the canteen every month. (*Id.*) The only difference is how RCGP inmates obtain canteen items. Inmates in compatible groups are escorted unrestrained by staff to the canteen, whereas inmates on walk-alone status receive their canteen purchases from staff, who deliver it to their cells pre-bagged from the canteen. (*Id.*)

Lastly, Defendants respond to Plaintiffs' claim that walk-alone inmates have no meaningful opportunity to parole. Plaintiffs speculate that "confinement to the RCGP, particularly on walk-alone status, is likely to mean that these prisoners will continue to be denied the programming and opportunity to move to a less restrictive prison which would improve their

6

chance for parole." Pl.'s Mot. (Doc. 844) 7:2-4. Plaintiffs do not cite to any settlement term regarding the RCGP that concerns inmates' eligibility for parole. As Defendants argue, absent a settlement breach, Plaintiffs' argument fails.

**CONCLUSION**

Nothing in the Settlement Agreement supports the presumption that it is a *per se* violation of the Settlement Agreement for some RCGP inmates, *i.e.*, those on walk-alone status, to be treated differently than other RCGP inmates. Defendants acknowledge that the prisoners on walk-alone status are treated differently than their fellow RCGP inmates, and give a legally-supportable explanation for this policy: CDCR's well-established Constitutional duty to protect the inmates' safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners.). Prison officials have a particular duty to protect prisoners from violence at the hands of other prisoners. *See id.* at 833; *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982). As set forth above, Defendants explain the opportunities afforded walk-alone inmates for physical exercise, social interaction, and education. The fact that the walk-alone inmates are afforded less (but still some) of these opportunities than other RCGP inmates does not mean that the walk-alone inmates are being deprived of the benefits granted to them under the Settlement Agreement particularly where, as here, this difference stems from Defendants' duty to protect the walk-alone inmates' safety. Accordingly, the court finds that Plaintiffs have not carried their burden of showing substantial noncompliance with Paragraph 28 of the Settlement Agreement.

The court further finds that even if Plaintiffs had shown substantial noncompliance with Paragraph 28, it would exceed the court's authority under the Settlement Agreement for the court to simply impose on Defendants the extensive requirements for walk-alone inmates sought by Plaintiffs. It would also violate clearly established law. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (Prison administrators are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)

7

("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a correctional system and for determining the most appropriate means to accomplish them." ); *Griffin v. Gomez*, 741 F.3d 10, 21 (9th Cir. 2014) ("In particular, federal courts should exercise restraint when reviewing management decisions taken by prison administrators to secure the safety of prisoners and state prison personnel.").

Accordingly, Plaintiffs' motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated: March 29, 2018

ROBERT M. ILLMAN
United States Magistrate Judge