UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TODO ASHKER, ET AL.,

            Plaintiffs,

      v.

MATHEW CATE, et al.,

            Defendants.

Case No.  09-cv-05796-CW (MEJ)

**ORDER RE: MOTION FOR ATTORNEYS' FEES**

Re: Dkt. No. 690

## INTRODUCTION

This class action litigation arises from the policies and practices promulgated by the California Department of Corrections and Rehabilitation ("CDCR") relating to gang validation and management and use of segregated housing.  Plaintiffs[1] seek $ 2,881,044.14 in attorneys' fees and costs for work performed from September 2, 2015 through October 15, 2016.  Mot., Dkt. No. 690.  Defendants[2] filed an Opposition (Dkt. No. 730), and Plaintiffs filed a Reply (Dkt. No. 755).

Judge Wilken referred the Motion and Request to the undersigned.  Order of Referral, Dkt. No. 923.  For the reasons set forth below, the Court **GRANTS IN PART** the Motion for Attorneys' Fees and Costs.

---

[1] Plaintiffs are Todd Ashker, Danny Troxell, George Ruiz, Jeffrey Franklin, George Franco, Gabriel Reyes, Richard Johnson, Paul Redd, Luis Esquivel, and Ronnie Dewberry.

[2] Defendants are Edmund G. Brown, Jr., Governor of the State of California; Matthew Cate, Secretary of the CDCR; Anthony Chaus, Chief of the CDCR's Office of Correctional Safety; and G.D. Lewis, Warden of Pelican Bay State Prison.

## BACKGROUND

Plaintiffs are ten inmates who live or lived in solitary confinement at Pelican Bay State Prison, a maximum security prison in Crescent City, California.  On December 9, 2009, Mr. Ashker and Mr. Troxell, then pro se, initiated this lawsuit challenging CDCR's policies related to and the conditions of their confinement in Pelican Bay's Secure Housing Unit ("SHU").  Compl., Dkt. No. 1.  On September 10, 2012 and with the assistance of counsel, they filed a Second Amended Complaint ("SAC") which added class allegations and named eight additional Plaintiffs. SAC, Dkt. No. 136.  The SAC asserted claims under the Eighth and Fourteenth Amendments.  *Id.* ¶¶ 177-202.

On June 2, 2014, Judge Wilken certified a Due Process Class pursuant to Federal Rules of Civil Procedure 23(b)(1) and (b)(2), defined as "all inmates who are assigned to an indeterminate term at the Pelican Bay SHU on the basis of gang validation, under the policies and procedures in place as of September 10, 2012." Dkt. No. 317 at 21.  Judge Wilken also certified an Eighth Amendment Class under Rules 23(b)(1) and (b)(2), comprised of "all inmates who are now, or will be in the future, assigned to the Pelican Bay SHU for a period of more than ten continuous years." *Id.*

After conducting discovery and engaging in negotiations before the Honorable Nandor J. Vadas, the parties negotiated a settlement agreement.  *See* Mot. for Prelim. Approval, Dkt. No. 424.  Among other things, the Settlement sets forth new criteria CDCR would use to place inmates into SHU, Administrative Segregation, or Step Down Program; provides for modifications to the Step Down Program; requires CDCR to review the cases of certain inmates currently in the SHU; provides for the transfer of certain inmates to the Restrictive Custody General Population ("RCGP") Housing Unit; sets forth conditions under which an inmate may be retained in the SHU and placed on Administrative SHU status; and places limitations on the number of years an inmate could be housed at Pelican Bay's SHU.  Settlement ¶¶ 13-33.

CDCR agrees to provide Plaintiffs' counsel with data and documentation over a two-year period, to allow counsel to monitor Defendants' compliance with the terms of the Settlement.  *Id.* ¶ 37.  Plaintiffs may seek an extension of this period by presenting evidence of current and

ongoing constitutional violations. *Id.* ¶ 41. The Settlement also establishes mechanisms to ensure compliance with the Agreement. *Id.* ¶¶ 48-53.

The Settlement provides that

> Defendants agree to pay Plaintiffs' counsel attorneys' fees and costs for work reasonably performed on this case, including monitoring CDCR's compliance with this Agreement and enforcing this Agreement, and for work to recover fees and costs, at the hourly rate set forth under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d). [ ] Subject to the provisions under 42 U.S.C. §§ 1988 and 1997e, Plaintiffs' motion may request an award that includes their expert fees. On a quarterly basis, Plaintiffs may file motions for reasonable attorneys' fees accrued in monitoring and enforcing CDCR's compliance with this Agreement.

*Id.* ¶ 55.

Judge Wilken finally approved the Settlement on January 26, 2016. Dkt. No. 488.

Plaintiffs moved, unopposed, for $4,550,000 in attorneys' fees and costs incurred from the case's inception through September 1, 2015. Dkt. No. 549. Judge Wilken denied that motion without prejudice to Plaintiffs' refiling the motion with documents to support their request. Dkt. No. 555. On July 1, 2016, Judge Wilken awarded Plaintiffs attorneys' fees and costs in the amount of $4,550,000. Dkt. No. 579.

Plaintiffs now seek compensation for work performed between September 2, 2015 through October 15, 2016. In addition to the instant Motion, Plaintiffs filed a Request for Interim Payment of Attorneys' Fees. Dkt. No. 756. The Court denied that request and ordered Plaintiffs to provide additional documentation to support their fee request. Mar. 29, 2018 Order, Dkt. No. 988.

## OBJECTIONS

Before turning to the parties' substantive arguments, the Court considers the parties' evidentiary objections.

### A. Plaintiffs' Objections

Plaintiffs object and move to strike the testimony of Gerald Knapton. Pls.' Obj., Dkt. No. 755-6; *see* Knapton Decl., Dkt. No. 730-1. Plaintiffs submit their 8-page objection as an attachment to their Reply brief in violation of Civil Local Rule 7-3(c). *See* Civ. L.R. 7-3(c) ("Any evidentiary and procedural objections to the opposition must be contained within the reply brief or

3

memorandum."). The Court therefore declines to consider Plaintiffs' objection as procedurally improper. *See Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083, 1094-95 (N.D. Cal. 2014), *aff'd*, 650 F. App'x 500 (9th Cir. 2016) (declining to consider evidentiary objections raised separate from briefs); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1119 (N.D. Cal. 2011) (same).

## B.    Defendants' Objections

Defendants object to portions of the Bremer Reply Declaration and the Miller Reply Declaration and exhibits attached thereto. Defs.' Obj., Dkt. No. 769; *see* Miller Reply Decl., Dkt. No. 755-1; Bremer Reply Decl., Dkt. No. 755-3. As the Court does not rely on these documents, it finds these objections moot.

## ATTORNEYS' FEES

Courts may award attorneys' fees and costs in a certified class action as authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). "When awarding attorneys' fees in a class action, the district court has 'an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 705 (9th Cir. 2018) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)). "The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

Where an "action [is] brought by a prisoner who is confined to any jail, prison, or other correctional facility," the Prison Litigation Reform Act ("PLRA") authorizes an award of attorneys' fees to the extent they are permitted under 42 U.S.C. § 1988. 42 U.S.C. § 1997e(d)(1). Section 1988 allows the "prevailing party" to recover "a reasonable attorney's fee as part of the costs" of a case brought under various civil rights statutes. 42 U.S.C. § 1988(b). "The fundamental purpose of § 1988 is to ensure that victims of civil rights violations are able to obtain competent legal counsel who will make it possible for them to enforce their rights, including the compensation to which they are entitled on account of the violation of those rights." *Bravo v. City*

*of Santa Maria*, 810 F.3d 659, 672 (9th Cir. 2016). As such, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. This method therefore requires a two-step process: "First, a court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "Second, the court determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure." *Id.* "There is a strong presumption that the lodestar is a reasonable fee." *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).

But "[t]he PLRA alters the lodestar method in prisoner civil rights cases in three fundamental ways":

> First, rather than hours reasonably expended in the litigation, hours used to determine the fee award are limited to those that are (1) directly and reasonably incurred in proving an actual violation of the plaintiff's rights and (2) either proportionately related to court-ordered relief or directly and reasonably incurred in enforcing such relief. 42 U.S.C. § 1997e(d)(1). Second, in actions resulting in monetary judgments, the total amount of the attorney's fees award associated with the monetary judgment is limited to 150 percent of the judgment. *Id.* § 1997e(d)(2); *see Jimenez v. Franklin*, 680 F.3d 1096, 1100 (9th Cir. 2012). This limitation does not apply to actions (or parts of actions) resulting in non-monetary relief. Third, the hourly rate used as the basis for a fee award is limited to 150 percent of the hourly rate used for paying appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A (the "CJA rate"). 42 U.S.C. § 1997e(d)(3).

*Kelly*, 822 F.3d at 1099-100.

Plaintiffs seek a total of $2,839,824.36 in attorneys' fees: a lodestar of $1,620,129.60, with a multiplier of 2 applied to fees for attorneys' work relating to monitoring and enforcement of the Settlement. It is undisputed that the applicable PLRA rate is $216 per hour. Mot. at 2; Opp'n at 2; Knapton Decl. ¶ 14, Dkt. No. 730-1 ("It is my understanding that Defendants are not, in connection with this fee motion, disputing the application of the $216 [PLRA] rate.").

## A.    Lodestar

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Counsel must exercise sound "billing judgment" as to the number of hours worked, eliminating excessive, redundant, or unnecessary hours, and provide billing records supporting the time claimed. *Id.* at 433-34. Counsel "is not required to record in great detail how each minute of his time was expended," but should "identify the general subject matter of his [or her] time expenditures." *Id.* at 437 n.12; *see Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *id.*).

As noted, the PLRA permits the recovery of fees "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" where the fee "is proportionately related to the court ordered relief for the violation; or . . . was directly and reasonably incurred in enforcing the relief ordered for the violation." 42 U.S.C. § 1997e(d)(1). The PLRA also caps the amount of attorneys' fees at an "hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). Section 3006A establishes the methodology for determining the hourly rate of compensation for appointed criminal defense counsel and charges the Judicial Conference with determining and making periodic adjustments to that rate. 18 U.S.C. § 3006A.

From September 2, 2015 through October 15, 2016, 23 timekeepers – attorneys, paralegals, and law clerks – expended 8,444.6 hours on this litigation. Mot. at 7; Miller Decl. ¶ 28, Dkt. No. 690-7. Plaintiffs exercise "billing judgment" to reduce their request by 11.2%, or 944 hours. Mot. at 2; Miller Decl. ¶ 28. In addition, "[t]o further assure the Court that all time requested is appropriately compensable, Plaintiffs voluntarily take an additional 5% off the fees presented in this motion, thereby providing a 16.2% overall billing judgment reduction on Plaintiffs' fees." Mot. at 2. Plaintiffs therefore seek compensation for 7,500.6 hours worked at the PLRA rate of $216 per hour.[3] *Id.*; Miller Decl. ¶ 28. The hours are as follows:

---

[3] Plaintiffs seek the same hourly rate for paralegals and law clerks as attorneys. *See Perez v. Cate*, 632 F.3d 553, 557 (9th Cir. 2011) ("[B]ecause the PLRA allows an award of attorney's fees in the

United States District Court
Northern District of California

| Name | Position | Firm/Organization | Actual Hours | Hours After Billing Judgment | Lodestar |
|---|---|---|---|---|---|
| C. Carbone | Attorney | Law Office of Charles Carbone | 1.8 | 1.3 | $280.80 |
| R. Rabkin | Attorney | Law Office of Charles Carbone | 231.4 | 202.3 | $43,696.80 |
| A. Agathocleous | Attorney | Center for Constitutional Rights ("CCR") | 205.0 | 194.9 | $42,098.40 |
| C. Dailey | Law clerk or paralegal[4] | CCR | 103.2 | 41.6 | $8,985.60 |
| S. Llanes | Law clerk or paralegal | CCR | 21.0 | 3.5 | $756.00 |
| J. Lobel | Attorney | CCR | 863.2 | 828.6 | $178,977.60 |
| R. Meeropol | Attorney | CCR | 410.8 | 389.0 | $84,024.00 |
| S. Miller | Attorney | CCR | 810.6 | 778.6 | $168,177.60 |
| S. Samuel | Attorney | CCR | 509.1 | 463.0 | $100,008.00 |
| K. Watson | Law clerk or paralegal | CCR | 24.0 | 24.0 | $5,184.00 |
| A. Wheeler | Attorney | CCR | 884.3 | 789.0 | $170,424.00 |
| C. Bremer | Attorney | Bremer Law Group PLLC/COJK[5] | 759.8 | 747.1 | $161,373.60 |
| M. McMahon | Attorney | CPF[6] | 593.9 | 555.9 | $120,074.40 |
| E. DeLair | Attorney | DeLair | 215.3 | 207.8 | $44,884.80 |
| G. Hull | Attorney | Ellenberg & Hull | 80.6 | 79.9 | $17,258.40 |
| C. Strickman | Attorney | Legal Services for Prisoners with Children | 811.2 | 751.7 | $162,367.20 |

Northern District of California based on an hourly rate up to $169.50, and because attorney's fees include separately billed paralegal fees, we conclude that the PLRA allows an award of paralegal fees up to $169.50 per hour.").

[4] Paragraph 30 of the Miller Declaration describes "Dailey, Llanes, Watson, Scheer, Dalmau-Jones, Greenfeld, and Jones" collectively as "paralegals and law clerks" but does not specify who is a paralegal and who is a law clerk.

[5] It is unclear what "COJK" is.

[6] Neither the McMahon nor Miller Declarations identifies what "CPF" is. *See* McMahon Decl., Dkt. No. 690-6; Miller Decl., Dkt. No. 690-7. However, a previously-filed declaration shows that "CPF" stands for California Prison Focus. Dkt. No. 263-3 ¶ 2.

| | | | | | |
|---|---|---|---|---|---|
| C. Scheer | Law clerk or paralegal | Siegel & Yee | 78.5 | 24.8 | $5,356.80 |
| A. Weills | Attorney | Siegel & Yee | 610.4 | 538.1 | $116,229.60 |
| C. Travis | Attorney | Travis | 388.6 | 364.5 | $78,732.00 |
| A. Cappella | Attorney | Weil, Gotschal & Manges LLP | 196.0 | 169.2 | $36,547.20 |
| A. Dalmau-Jones | Law clerk or paralegal | Weil, Gotschal & Manges LLP | 225.5 | 105.6 | $22,809.60 |
| A. Greenfeld | Law clerk or paralegal | Weil, Gotschal & Manges LLP | 299.8 | 226.6 | $48,945.60 |
| H. Jones | Law clerk or paralegal | Weil, Gotschal & Manges LLP | 13.6 | 13.6 | $2,937.60 |
| **TOTALS** | -- | -- | 8337.6 | 7500.6 | $1,620,129.60 |

Bremer Decl. ¶ 1, Dkt. No. 690-1; Cappella Decl. ¶ 1, Dkt. No. 690-2; Hull Decl. ¶ 1, Dkt. No. 690-3; Lobel Decl. ¶ 1, Dkt. No. 690-4; Meeropol Decl. ¶ 1, Dkt. No. 690-5; McMahon Decl. ¶ 1, Dkt. No. 690-6; Miller Decl. ¶¶ 14, 30, Dkt. No. 690-7; Rabkin Decl. ¶ 1, Dkt. No. 690-9; Strickman Decl. ¶ 1, Dkt. No. 390-10.

Plaintiffs initially categorized their work as follows: (1) monitoring and enforcement of the Settlement by attorneys, (2) monitoring and enforcement of the Settlement by paralegals and law clerks, and (3) fees work by all timekeepers. Miller Decl. ¶ 29. Attorneys spent 6,338.7 hours monitoring and enforcing the Settlement; paralegals and law clerks spent 439.7 hours on monitoring and enforcement. *Id.* ¶ 30. Overall, Plaintiffs dedicated 3,778.4 hours on these matters. *Id.* All timekeepers spent a total of 722.2 hours on fees work. *Id.*

In its March 29, 2018 Order, the Court noted Plaintiffs' counsel generally described the work they performed, but they did not identify how much time they spent on each task. Mar. 29, 2018 Order at 1-2. The Court therefore ordered Plaintiffs' counsel "to provide additional documentation that demonstrates the reasonableness of their claimed hours" and "clearly categorize[d] each 'monitoring and enforcement' task[.]" *Id.* at 2.

Plaintiffs' Supplemental Brief describes 27 categories of monitoring and enforcement

tasks.[7]  Pls. Suppl. Br. at 1-5, Dkt. No. 995.  These tasks and the hours spent thereon include:

| Category | Attorney Hours | Paralegal/Law Clerk Hours | Total Hours |
|---|---|---|---|
| Data/Document Protocols | 73.5 | 27.6 | 101.1 |
| Communication Protocols | 159.2 | 38.6 | 197.8 |
| Weekly Team Conferences | 1124.0 | 96.3 | 1220.3 |
| Team Discussion/Correspondence & General Monitoring | 264.1 | 19.7 | 283.8 |
| Magistrate Judge Conferences | 893.7 | 56.8 | 950.5 |
| Client Communications | 930.9 | 122.1 | 1053 |
| Client Meetings | 157.3 | 55.2 | 212.5 |
| Travel for Client Meetings | 188.7 | 67.7 | 256.4 |
| Travel for Hearings/Meetings | 169.2 | 13.3 | 182.5 |
| Preliminary Approval | 32.2 | 0 | 32.2 |
| Final Approval | 232.7 | 27.2 | 259.9 |
| Enforcement Motions | 412.1 | 11.5 | 423.6 |
| De Novo Motions | 152.8 | 0 | 152.8 |
| Motion Hearings | 30.2 | 0 | 30.2 |
| Document Analysis | 417.8 | 69.9 | 487.7 |
| Semi-Annual Meetings | 82.8 | 24.5 | 107.3 |

---

[7] Defendants argue "Plaintiffs failed to submit detailed time records to the Court, a fundamental defect warranting a substantial reduction in the amount of hours deemed reasonable in this case." Opp'n at 3.  "A court's discretion to deny fees under § 1988 is very narrow and fee awards should be the rule rather than the exception."  *Vasquez v. Rackauckas*, 734 F.3d 1025, 1055 (9th Cir. 2013) (internal quotation marks and ellipses omitted).  Plaintiffs need only submit records that "identify the general subject matter of [their] time expenditures."  *Hensley*, 461 U.S. at 437 n.12; *see Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004) (district court did not clearly err in finding number of hours worked were reasonable where, "[a]lthough the time descriptions are minimal, [the submitted records] establish that the time was spent on the matters for which the district court awarded attorneys' fees.").  "[P]laintiff's counsel can meet his burden—although just barely—by simply listing his hours and identifying the general subject matter of his time expenditures." *Fischer*, 214 F.3d at 1121.  As discussed below, Plaintiffs' supplemental brief largely meets this minimum standard; the Court addresses where it does not.

| Security/Welfare Checks | 247.1 | 10.0 | 257.1 |
|---|---|---|---|
| Merits Fees Preparation | 244.7 | 58.9 | 303.6 |
| Merits Fees Negotiations | 81.8 | 0 | 81.8 |
| Merits Fees Approval | 81.2 | 3.2 | 84.4 |
| Monitoring Fees Preparation | 159.1 | 12.6 | 171.7 |
| Monitoring Fees Litigation | 90.7 | 3.4 | 94.1 |
| Press | 17.8 | 0 | 17.8 |
| Step Down Programming | 89.4 | 26.1 | 115.5 |
| Training | 54.6 | 12.3 | 66.9 |
| Meet & Confer Document Production | 94.2 | 1.0 | 95.2 |
| Monitoring Planning | 228.4 | 32.5 | 260.9 |
| **TOTALS** | **6710.2** | **790.4** | **7500.6** |

*Id.* at 5.

    1.   <u>Reasonableness of Hours</u>

    "[A] 'reasonable' number of hours equals the number of hours which could reasonably have been billed to a private client." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (internal quotation marks and edits omitted). "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley*, 461 U.S. at 434).

    Courts may exclude such hours in one of two ways. *Gonzalez*, 729 F.3d at 1203. First, courts may exclude unreasonable hours after "conduct[ing] an hour-by-hour analysis of the fee request[.]'" *Id.* (internal quotation marks omitted). Second, courts "faced with a massive fee application" may "make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding non-compensable hours from a fee application." *Id.* (internal quotation marks and brackets omitted); *see Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1150 (9th Cir. 2001) (recognizing that "where the underlying case is

complex, the billing records are likely to be voluminous, and the judicial time expended in detailing excessive hours can therefore be similarly great"); *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) ("[I]n cases where a voluminous fee application is filed in exercising its billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request."). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "[I]t makes no difference in terms of the final amount to be awarded whether the district court applies the percentage cut to the number of hours claimed, or to the lodestar figure." *Gonzalez*, 729 F.3d at 1203.

However, a district court must explain how it came up with the amount of an attorneys' fees award. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The explanation need not be elaborate, but it must be comprehensible. . . . Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected." [8] (citations omitted)). The court's reasoning must state "why it chose to cut the number of hours or the lodestar by the specific percentage it did." *Gonzalez*, 729 F.3d at 1203.

Having reviewed Plaintiffs' time expenditures and Defendants' objections thereto, the Court finds not all of the hours claimed are reasonable.

     a.    *Developing Protocols*

Plaintiffs claim 73.5 hours by nine attorneys and 27.6 hours by four paralegals to develop data/document protocols, a total of 101.1 hours. Pls. Suppl. Br. at 5; Suppl. Miller Decl., Ex. 2 at

---

[8] The Ninth Circuit has "recognized one exception to this rule: 'The district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.'" *Gonzalez*, 729 F.3d at 1203 (quoting *Moreno*, 534 F.3d at 1112) (brackets omitted).

ECF p.4, Dkt. No. 995-1. They seek compensation for another 159.2 hours by thirteen attorneys and 38.6 hours by three paralegals to develop communication protocols, for a total of 197.8 hours of work. Pls. Suppl. Br. at 5; Suppl. Miller Decl, Ex. 2 at ECF p.5. This work consisted of "[e]stablishing framework and protocols for receiving and analyzing CDCR data and document productions, including engagement with defense counsel" as well as "[e]stablishing framework and protocols for receiving and analyzing class member communications and information." Pls. Suppl. Br. at 1; *see* Miller Decl. ¶¶ 6, 8-11. Plaintiffs' descriptions of this work show that these tasks did not include any actual review or engaging in correspondence. *See* Pls. Suppl. Br. at 2-3, 5 (providing separate categories for client communications and document analysis).

A party may seek fees for time spent creating protocols. *See Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 970 (N.D. Cal. 2014) ("developing and revising document review protocols" is a "task[] appropriately performed by attorneys" and thus compensable). But Plaintiffs' hours are excessive. Plaintiffs' descriptions of this work do not suggest that establishing these protocols was particularly complicated, such that it required nine attorneys to create document/data protocols or thirteen attorneys to create communication protocols, not to mention work performed by support staff. Mr. Miller describes counsel as "well-qualified attorneys with specialized expertise in the fields of constitutional law, prisoners' rights, complex litigation, and class actions." Miller Decl. ¶ 3. Mr. Lobel also declares CCR "developed a team of Bay Area lawyers who are very experienced in working with and are trusted by prisoners [and] have extensive knowledge of CDCR[.]" Lobel Decl. ¶ 4. In light of counsel's expertise in this type of litigation and based on this record, the Court cannot conclude that a paying client would approve a total of 298.9 hours – approximately 12.5 days – of work simply to establish protocols for receiving and processing documents, data, and communications. The Court finds a paying client at most would pay for half this work. The Court therefore reduces the amount of time spent on developing data/document protocols by 50%, or 36.75 attorney hours by nine attorneys and 13.8 paralegal/legal worker hours. The Court also reduces the number of hours spent on developing communication protocols by 50% to 79.6 attorney hours and 19.3 paralegal/legal worker hours.

b.    *Meetings and Internal Discussions*

"[C]ollaboration and brainstorming are an important aspect of legal practice.  Even the most competent and experienced attorney does not have all the answers, and therefore attorneys should receive some compensation for consultations with colleagues."  *Elise Dragu v. Motion Picture Indus. Health Plan for Active Participants*, 159 F. Supp. 3d 1121, 1129 (N.D. Cal. 2016); *see MacDonald v. Ford Motor Co.*, 2016 WL 3055643, at *4 (N.D. Cal. May 31, 2016), *appeal dismissed*, 2017 WL 4011879 (9th Cir. Feb. 22, 2017) (In large, putative class actions, "some number of intra-office conferences are not only to be expected, but will often result in a savings of attorney time by ensuring that all attorneys on a team are kept apprised of important information about the case as it becomes available.").  As such, "[t]ime billed for internal conferencing is recoverable to the extent it is reasonably necessary to conducting the litigation."  *Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1192 (C.D. Cal. 2009) (citing *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993)).  Plaintiffs seek compensation for time spent on weekly meetings, team discussion/correspondence and general monitoring, and "monitorship planning."  Plaintiffs spent a total of 1,765 hours on these tasks.  *See* Pls. Suppl. Br. at 5.

i.    Weekly Team Conferences

Plaintiffs claim 1,220.3 hours for time spent on weekly team conferences, two long-term strategy videoconferences, work in preparation thereof, and follow-up work.  Pls. Suppl. Br. at 1-2, 5; Suppl. Miller Decl., Ex. 2 at ECF p.2.  Mr. Miller declares

> [t]he team calls typically include Jules Lobel (lead counsel), Carmen Bremer (principal attorney interfacing with defense counsel), Rachel Meeropol (principal drafter of several enforcement motions, supervisor of data and document analysis), Alexis Agathocleous (contributor to enforcement motions and data and documentation review, sub-group co-leader on client communications), Azure Wheeler (principal associate-level attorney on several enforcement motions, data and documentation coordination and analysis, client communications), Carol Strickman (investigation and analysis of enforcement activity, client relationships and communications, detailed knowledge of CDCR regulations and procedures), Anne Weills (client relationships and communications), Carole Travis (client relationships and communications), Marilyn McMahon (client relationships and sub-group co-leader on client communications), Rebecca Rabkin (client communications, detailed

knowledge of CDCR regulations and procedures), Eva DeLair
(client relationships and communications), and myself (overall
management, substantive legal work, and principal fees attorney).

Miller Decl. ¶ 14.  Other attorneys, paralegals, or interns participate in the meetings as needed.  *Id.*

Mr. Miller identifies the topics that were discussed at these meetings.  *Id.* ¶ 15.  These meetings

generally last two hours.  Bremer Decl. ¶ 12.  Starting in July 2016, the frequency of these

meetings decreased from once a week to every other week.  Miller Decl. ¶ 13.

It is reasonable for Plaintiffs' counsel to regularly communicate about this case.  However,

"the law does not require the district court to compensate for *all* the time [Plaintiffs'] counsel

spent conferring among themselves."  *Terry v. City of San Diego*, 583 F. App'x 786, 790 (9th Cir.

2014) (emphasis added).  In this case and based on this record, the Court finds the hours claimed

for the weekly team conferences are unreasonable, and that a reasonable paying client would not

have paid for all of these hours.

The Court finds these meeting were overstaffed.  According to the Miller Declaration,

eight of the attorneys who "typically" attended the meetings were responsible for "client

relationships and communications": Mr. Agathocleous and Ms. McMahon, both sub-group co-

leaders on client communications; Ms. Wheeler; Ms. Strickman; Ms. Weills; Ms. Travis; Ms.

Rabkin; and Ms. DeLair.  Miller Decl. ¶ 14.  While Mr. Agathocleous, Ms. McMahon, Ms.

Wheeler, Ms. Strickman, and Ms. Rabkin had other responsibilities, it appears Ms. Weills, Ms.

Travis, and Ms. DeLair focused exclusively on client relationships and communications.  *Id.*  Also

present at every meeting were three attorneys involved in the drafting of enforcement motions:

Ms. Meeropol, Mr. Agathocleous, and Ms. Wheeler.  *Id.*  These same three attorneys handled data

and document analysis as well, with Ms. Meeropol as the supervisor of this task.  *Id.*

Mr. Miller explains

> [i]t is important that we have all principal team members on these
> calls due to the active and regular role of the class representatives in
> addressing substantive monitoring issues, the intersectionality of
> many legal and factual issues, the diversity of experience and
> expertise among the attorneys . . . , and the need to ensure that we all
> operate from a common understanding and knowledge base as the
> monitoring proceeds.

*Id.* ¶ 13.  Even so, Plaintiffs do not explain why it was necessary to have eight attorneys working

on client relationships and communications attend the meetings on a weekly or bimonthly basis. Mr. Miller declares counsel created sub-groups "with lead attorneys for each sub-group." *Id.* ¶ 8. Plaintiffs fail to show why the participation of the two co-leaders of the communications sub-group was insufficient so as to require the presence of three other attorneys (Ms. Weills, Ms. DeLair, and Ms. Travis) who only handled communications. Absent such a showing, the Court finds the hours Plaintiffs claim for their weekly meetings are duplicative.

The Court therefore deducts a total of 224.7 hours, representing the time Ms. Weills, Ms. DeLair, and Ms. Travis spent at weekly meetings (94.8 hours, 49.4 hours, and 76.9 hours, respectively). *See* Suppl. Miller Decl., Ex. 2 at ECF p.6. The Court finds 979.8 attorney hours and 19.4 paralegal/legal worker hours are compensable.[9]

     ii.  Team Correspondence & General Monitoring; Monitorship Planning

Plaintiffs spent 283.8 hours spent on "team discussion/correspondence and general monitoring", which consisted of "team members and/or sub-groups" discussing or corresponding about "general monitoring and specific issues, as well as substantive work related to those issues" outside of the weekly team conferences. Pls. Suppl. Br. at 2, 5; Suppl. Miller Decl., Ex. 2 at ECF p.7. Plaintiffs spent an additional 260.9 hours for "monitorship planning," which they describe as "[p]reparing for and conducting team strategy sessions for settlement implementation and long-term planning." Pls. Suppl. Br. at 4-5; Suppl. Miller Decl., Ex. 2 at ECF p.30.

These descriptions do not allow the Court to conclude that this time was not unnecessary and duplicative. *See Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) ("[T]he court reasonably reduced the hours billed for intra-office conferences between [plaintiff]'s primary counsel . . . and her colleague. [] Given her substantial experience and [plaintiff]'s failure to provide a persuasive justification for the intra-office meetings, the district court did not err in finding the intra-office conferences to be unnecessary and duplicative."); *S.H. v. Mount Diablo Unified Sch. Dist.*, 2018 WL 510167, at *9 (N.D. Cal. Jan. 23, 2018) ("It is Plaintiff's burden to show that inter-office meetings are not excessive or duplicative."). The Court therefore deducts

_____

[9] Although Ms. Travis is an attorney (Travis Decl. ¶ 1), Plaintiffs bill Ms. Travis as a "paralegal/legal worker" (*see* Suppl. Miller Decl., Ex. 2).

these hours from the fee request.

### iii.    Summary

The Court deducts a total of 765.8 hours, broken down as follows: (1) 144.2 attorney and 76.9 paralegal/legal worker hours from time claimed for weekly or bi-monthly conferences; (2) 264.1 attorney and 19.7 paralegal/legal worker hours for team discussion/correspondence and general monitoring; and (3) 228.4 attorney and 32.5 paralegal/legal worker hours for monitorship planning.

### c.    *Magistrate Judge Conferences*

Plaintiffs claim 950.5 hours for "magistrate judge conferences," which consisted of "[p]reparing for and holding monthly meetings and other conferences with Magistrate Judge Vadas. This work includes pre-conference investigations, client communications, legal research, meeting and conferring, and letter briefing, as well as follow-up tasks and communications." Pls. Suppl. Br. at 2, 5; Suppl. Miller Decl., Ex. 2 at ECF p.8. Of these hours, 893.7 were performed by attorneys, and 56.8 were performed by paralegals/legal workers. Pls. Suppl. Br. at 5. Plaintiffs block bill this time entry. *See id.* at 2; *Banas*, 47 F. Supp. 3d at 966 n.9 ("Block-billing is the practice of including various tasks within one time entry without specifying the time spent on each task within an entry.").

Some of these hours may be recoverable, such as the time Plaintiffs spent attending a conference with Judge Vadas, conducting pre-conference investigations, legal research, and letter briefing. But Plaintiffs' submissions do not allow the Court to find Plaintiffs are entitled to compensation for meeting and conferring or client communications insofar as these tasks relate to "magistrate judge conferences."

First, as discussed earlier, Plaintiffs held and seek compensation for weekly meetings. At 24 of the 46 meetings, counsel prepared for conferences with Judge Vadas or conducted post-conference follow-up work. Miller Decl. ¶¶ 15(a),(b), (e), (g), (i), (j), (k), (m), (n), (o), (q), (r), (s), (v), (z), (dd), (hh), (ii), (ll), (mm), (nn), (pp), (ss), (tt). This overlaps with Plaintiffs' separate time category of "magistrate judge conferences." *See* Pls. Suppl. Br. at 2 ("This work includes . . . meeting and conferring . . . , as well as follow-up tasks and communications."). Plaintiffs do not

United States District Court
Northern District of California

indicate that the hours claimed for "meeting and conferring" under "magistrate judge conferences" do not include the time spent preparing for or following up on conference with Judge Vadas in the weekly meetings. Nor do Plaintiffs explain why "meeting and conferring" as described under this category is different from their discussions about these conferences that took place during their weekly meetings.

Second, Plaintiffs represent "magistrate judge conferences" also entailed client communications. Pls. Suppl. Br. at 2. However, Plaintiffs separately bill another 1,053 hours for client communications. *Id.* at 2, 5; Suppl. Miller Decl., Ex. 2 at ECF p.9. Plaintiffs do not explain how their work on client communications as it relates to "magistrate judge conferences" differs from the hours claimed under the separate category of "client communications."

Nothing in the record allows the Court to conclude that these hours spent on meeting and conferring or client communications are not claimed elsewhere. Courts have the "discretion to reduce the requested fee amount to account for the potential inflation of hours that may result from block billing and to account for any improperly claimed interest." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 765 (9th Cir. 2015). This is because "[t]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked"; "block billing makes it more difficult to determine how much time was spent on particular activities." *Welch*, 480 F.3d at 948. If the court reduces the fee request due to block billing it "must explain how or why the reduction fairly balances those hours that were actually billed in block format and how it determined the percentage of reduction to apply." *Ryan*, 786 F.3d at 766 (internal quotation marks and edits omitted).

As meeting and conferring and client communications comprise two of the seven identified tasks, this work represents approximately 28% of this time entry. The Court accordingly reduces these hours by 28%, or 266.14 hours. Plaintiffs may recover fees for 684.35 hours: 643.46 attorney hours and 40.89 paralegal/legal worker hours.

### d.     *Client Communications*

Plaintiffs spent 930.9 attorney hours and 56.8 paralegal/legal worker hours on client communications. Pls. Suppl. Br. at 5; Suppl. Miller Decl., Ex. 2 at ECF p.9. Plaintiffs block bill

this request; these hours include "[t]elephone and written communications with prisoners and family/supporters regarding monitoring issues, including logistics, preparation, and follow-up, as well as communications among team members concerning such prisoner and family/supporter communications." Pl. Suppl. Br. at 2.

Plaintiffs do not explain how "communications among team members concerning . . . prisoner and family/supporter communications" differs from their time spent on team discussions "regarding general monitoring and specific issues." *Id.* at 2. It is also not clear whether these communications took place during weekly team meetings – time for which Plaintiffs separately seek fees – or elsewhere. *See, e.g.*, Miller Decl. ¶ 15(b) (September 21, 2015 meeting, "[c]omplaints from clients and investigation of possible retaliation"); *id.* ¶ 15(g) (November 9, 2015 meeting, "corresponding with class re SA approval, and translation of SA"); *id.* ¶ 15(k) (December 21, 2015 meeting, "summary of incoming client correspondence"); *id.* ¶ 15(o) (January 11, 2016 meeting, "coordination with prisoners' family members"). If the communications were separate, Plaintiffs do not establish why these additional communications were necessary

Without more details, the Court cannot determine whether communications about counsel are not billed elsewhere or are otherwise duplicative. The Court therefore finds a reduction is appropriate. Based on Plaintiffs' description, this time entry includes two types of communications: (1) communications with class members or their family and (2) communications amongst counsel. The Court reduces these hours by 50%. Plaintiffs are entitled to recover fees for 526.5 hours: 465.45 attorney hours and 61.05 paralegal/legal worker hours.

> e. *Client Meetings*

Attorneys spent 157.3 hours and paralegals spent 55.2 hours conducting "[i]n-person meetings with prisoners regarding monitoring issues, including logistics, preparation, and follow-up, as well as communications among team members concerning such in-person meetings." Pls. Suppl. Br. at 2; Suppl. Miller Decl., Ex. 2 at ECF p.10.

This category suffers from the same defects as Plaintiffs' client communications entry. Counsel block bill and do not specify how much time was spent meeting with clients rather than meeting with each other to discuss those meetings. Plaintiffs do not explain whether hours spent

on "communications among team members concerning such in-person meetings" are also claimed in other time entries, such as "team discussion/correspondence and general monitoring." *See id.* at 2 ("team discussion/correspondence and general monitoring" includes discussions amongst counsel "regarding general monitoring and specific issues").

Plaintiffs' time entries shows counsel here billed for two types of work: in-person meetings and team communications about those meetings. As Plaintiffs fail to adequately support their request for fees regarding the team communications, the Court reduces these hours by 50%. Plaintiffs may recover 78.65 attorney hours and 27.6 paralegal/legal worker hours for client meetings.

### f.    *Travel for Client Meetings*

Counsel spent 188.7 hours and a paralegal/legal worker spent 67.7 hours traveling to attend "prisoner meetings regarding monitoring issues, including semi-annual meetings." Pls. Suppl. Br. at 2, 5; Suppl. Miller Decl., Ex. 2 at ECF p.11.

Courts may award fees under § 1988 for travel time, provided those hours are reasonable. *See Davis*, 976 F.2d at 1543; *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1177 (N.D. Cal. 2012) ("[U]nder Section 1988, [courts in] this district ha[ve] long granted prevailing parties their full hourly rate for travel time." (collecting cases)).

"It takes 8 hours to drive one-way to Pelican Bay from the Bay Area." Strickman Reply Decl. ¶ 10, Dkt. No. 755-5. Counsel also traveled to other prisons "located a considerable distance from the Bay Area: Kern Valley State Prison (250 miles), Calipatria (565 miles), Lancaster (350 miles), Corcoran (230 miles), and recently High Desert (600 miles)." *Id.* As Plaintiffs could not travel, counsel had no other option but to travel the considerable distance to meet their clients. The Court therefore finds these hours are reasonable.

### g.    *Travel for Hearings/Meetings*

Plaintiffs claim 169.2 attorney hours and 13.3 paralegal/legal worker hours for time spent traveling to "hearings and meetings with counsel and/or Judge Vadas." Pls. Suppl. Br. at 2, 5. Plaintiffs do not claim time traveling to motion hearings before Judge Wilken. *Id.* at 2; *see* Dkt. Nos. 440, 448 (minute entries re: hearings on motions for preliminary and final approval).

19

Plaintiffs' records and briefs do not adequately support their request. Time spent traveling to appear at a status conference, settlement conference, or motion hearing is compensable. *See Davis*, 976 F.2d at 1543; *Cotton*, 889 F. Supp. 2d at 1177. But it is unclear whether "meetings with counsel" includes meetings with defense counsel or Plaintiffs' counsel. Nor do Plaintiffs explain what those meetings concerned or how they were related to the Settlement. Plaintiffs therefore fail to meet their burden of showing this time is reasonable. As such, the Court cannot find time spent traveling to meet with counsel is compensable.

Plaintiffs do not distinguish how much time counsel spent traveling to meet with counsel versus traveling to appear before Judge Vadas. As time spent traveling to meet with counsel is one of two tasks delineated in this entry, the Court reduces this time by 50%. Plaintiffs may recover fees for 84.6 attorney hours and 6.65 paralegal/legal worker hours.

h.   *Preliminary and Final Approval Motions*

Plaintiffs claim 32.2 attorney hours for drafting and researching the motion for preliminary approval. Pls. Suppl. Br. at 3, 5; Suppl. Miller Decl., Ex. 2 at ECF p.13. Plaintiffs claim an additional 232.7 attorney hours and 27.2 paralegal/legal worker hours for work performed on the motion for final approval, for a total of 259.9 hours. Pls. Suppl. Br. at 3, 5; Suppl. Miller Decl., Ex. 2 at ECF p.14. This work included drafting and researching the motion, as well as responding to class members' objections and comments. *Id.* at 3; *see also* Mot. for Final Approval at 9-10, Dkt. No. 486 (Plaintiffs' counsel received 32 letters from class members, some of which were written by the same individual).

The record does not suggest the time spent on these motions was unreasonable or excessive. Plaintiffs obtained court approval at both stages. *See Moreno*, 534 F.3d at 1112 ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."). Nothing in the record suggests the hours Plaintiffs' counsel spent preparing these motions was unreasonable. The Court finds Plaintiffs are entitled to compensation for 32.2 and 259.9 hours of work for these tasks.

1                        i.     *Post-Settlement Motion Practice*

2    Plaintiffs claim 576.4 hours researching and drafting post-Settlement motions: 423.6

3    attorney and paralegal hours on three motions to compel or enforce and 152.8 attorney hours on

4    motions for de novo review.  Pls.' Suppl. Br. at 3, 5; Suppl. Miller Decl., Ex. 2 at ECF pp. 15-16.

5    On April 12, 2016, Plaintiffs sought an order requiring Defendants to "reformulate SHU-

6    eligible offense 9(B) so that the offense has a coercive component."  Dkt. No. 513 at 1.  Judge

7    Vadas denied this motion (Dkt. Nos. 560, 580), and Plaintiffs sought de novo review of this order

8    (Dkt. No. 588).  Judge Wilken denied the motion for de novo review and affirmed Judge Vadas'

9    ruling.  Dkt. No. 634.

10    On May 10, 2016, Plaintiffs filed a motion to enjoin CDCR from continuing to retain

11    prisoners in the SHU.  Dkt. No. 524.  Judge Vadas denied the motion (Dkt. Nos. 560, 580), and

12    Plaintiffs sought de novo review (Dkt. No. 590).  Judge Wilken recommitted the motion to Judge

13    Vadas to review new evidence and arguments.[10]  Dkt. No. 632.

14    On June 7, 2016, Plaintiffs moved to compel Defendants' compliance with Paragraphs 25

15    and 27 of the Settlement.  Dkt. No. 553.  Judge Vadas denied the motion, "find[ing] that

16    Defendants' substantial compliance with the requirements of Paragraph 27 makes it unnecessary

17    to implement Plaintiffs' request for imposition of specific timetables" and that "Defendants ha[d]

18    substantial[ly] complied with the requirements of Paragraph 25."  Dkt. No. 608 at 2.  Plaintiffs did

19    not seek de novo review of this ruling.

20    The record shows Plaintiffs obtained, at best, limited success on their post-Settlement

21    motions.  Judge Vadas denied each of their enforcement motions.  Judge Wilken denied one

22    motion for de novo review.  Dkt. No. 634.  She recommitted another because Plaintiffs offered

23    new evidence that they had not presented to Judge Vadas; Judge Wilken did not rule on its merits.

24    Dkt. No. 632 at 11-13.  The record also shows Plaintiffs' insistence on prolonging litigation on

25    _____

26    [10] On January 5, 2017, Judge Vadas ordered supplemental briefing on the matter (Dkt. No. 656), which both parties provided (Dkt. Nos. 667, 670).  Judge Vadas denied the motion (Dkt. No. 676).

27    Plaintiffs sought de novo review.  Dkt. No. 681.  Judge Wilken affirmed the denial.  Dkt. No. 771. As these events fall outside the timeframe of this fee request, the Court does not consider them in

28    ruling on this Motion.

certain issues was not always reasonable.  For instance, at the hearing on Plaintiffs' motion

regarding offense 9(b) and

> [a]fter Judge Vadas denied Plaintiffs' motion to enforce the December agreement, Plaintiffs suggested that Judge Vadas issue an order "indicating . . . that 9B is to be interpreted consistent with our understanding of it . . . ." [] Judge Vadas responded by stating in part that "no court . . . should make advisory opinions.  I'll rule on the motions that are before me."

Dkt. No. 634 at 3-4 (citations omitted); *see* Dkt. No. 560 ("Plaintiff's oral motion for the court to

make advisory ruling interpreting the settlement agreement is Denied.").  Despite Judge Vadas'

admonishment that such an order would amount to an advisory opinion, Plaintiffs continued to

press the matter and urged Judge Wilken to adopt their interpretation of offense 9(B).  Dkt. No.

634 at 5-6.  Judge Wilken held that "[n]o term of the Settlement Agreement authorizes the Court

to interpret the Agreement outside the context of a showing of substantial noncompliance.  The

Court agrees with Judge Vadas that to do so would be an advisory opinion."  *Id.* at 6.

Counsel has an obligation to advocate for their clients.  *See* Dkt. No. 676 at 9 (Judge Vadas

recognized and "respect[ed] the zealous advocacy by counsel on both sides of this case").  Despite

Plaintiffs' lack of success, the Court cannot find that Plaintiffs' enforcement motions filed before

Judge Vadas were so frivolous that counsel's time on these motions should be deducted or

reduced.  Nor does the record allow the conclusion that the hours spend on these motions were

excessive or unreasonable.

It is nevertheless counsel's responsibility to weigh the risks and costs of continued motion

practice and to proceed efficiently and sensibly.  Whether the Court could award the relief

Plaintiffs sought in their enforcement motions may not have been apparent when Plaintiffs filed

their motions before Judge Vadas.  The same cannot be said once Judge Vadas denied the

motions; at that point, it was incumbent on Plaintiffs' counsel to carefully consider the nature of

their requested relief, consider Judge Vadas' reasons for denying such relief, and determine

whether seeking de novo review is a reasonable and cost-efficient next step for which a private

client would have paid.  True, "the Settlement Agreement does not require Plaintiffs to win

enforcement motions for counsel's time pursuing those motions to be compensable."  Bremer

Reply Decl. ¶ 5.  But the fact that Plaintiffs did not prevail on their motions for de novo review suggests this motion practice was not entirely reasonable.

For these reasons, the Court finds it appropriate to reduce the hours spent on de novo motion practice.  *See Hensley*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. [] [T]he most critical factor is the degree of success obtained.").  Plaintiffs do not indicate how much time was spent on each motion for de novo review.  The Court will therefore reduce the hours spent on de novo motion practice by 50%. This credits Plaintiffs' counsel with time spent on the motion for de novo review regarding the prisoners in the SHU, but discounts hours spent on the motion regarding offense 9(B).

### j.    *Motion Hearings*

Plaintiffs' counsel spent 30.2 hours "[p]reparing for and attending motion hearings."  Pls. Suppl. Br. at 3, 5; Suppl. Miller Decl., Ex. 1 & Ex. 2 at EFC p.17.  Plaintiffs may recover fees for this time.  *See Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *4 (N.D. Cal. Jan. 18, 2017). Nothing in the record suggests this time was unreasonable.

### k.    *Document Analysis*

Plaintiffs' attorneys spent 417.8 hours and paralegals/legal workers spent 69.9 hours "[r]eviewing and analyzing documents and information from CDCR."  Pls. Suppl. Br. at 3, 5; Suppl. Miller Decl., Ex. 2 at ECF p.18.

The Settlement requires Defendants to produce to Plaintiffs "data and documentation . . . to monitor Defendants' compliance with the terms of this Agreement."  Settlement ¶ 37.  The Settlement contains a non-exhaustive list of fifteen types of documents to be produced, as well as the frequency of the production.  *Id.*; *see* Mot. at 3-4.  Given the scope of the ongoing production of documents, the Court finds these hours are reasonable.

### l.    *Semi-Annual Meetings*

The Settlement provides that "Defendants shall meet with Plaintiffs' counsel and the four inmate representatives semiannually to discuss progress with implementation of this Agreement." Counsel for Plaintiffs spent 82.8 hours and paralegals spent 24.5 hours "[c]onducting two semi-

1   annual meetings with CDCR officials and prisoner representatives, . . . including preparation and

2   follow-up."  Pls. Suppl. Br. at 3, 5.  Plaintiffs do not specify how much time was spent on each of

3   these three tasks (preparing for the meetings, attending the meetings, and following up thereafter),

4   nor is it clear whether this includes time spent traveling to the meetings.

5       The agendas for counsel's weekly team conferences showed counsel used these meetings

6   to prepare for the semi-annual meeting.  *See* Miller Decl. ¶ 159(bb) (April 11, 2016 meeting,

7   "planning semi-annual meeting with class reps"); *id.* ¶ 15(tt) (October 3, 3016 meeting,

8   "preparation for semi-annual meeting with class representatives").  Plaintiffs' records are unclear

9   as to whether they twice claim these hours, under the "semi-annual meetings" entry and/or the

10  "weekly team conferences" entry.  Plaintiffs therefore fail to establish the reasonableness of this

11  request.  As preparations constitute one-third of the tasks described in this entry, the Court reduces

12  Plaintiffs' request by 33%.  Plaintiffs may recover fees for 54.65 attorney hours and 16.17

13  paralegal/legal worker hours.

14          m.      *Guard One (Security/Welfare Checks)*

15      Plaintiffs seek compensation for work performed regarding CDCR's "Guard One" welfare

16  check policy, which has been the subject of litigation pending in the Eastern District of California,

17  *Coleman v. Brown*, 90-cv-520 (E.D. Cal.).  *See* Strickman Decl. ¶¶ 8-22; Pls. Suppl. Br. at 3.

18  Plaintiffs claim 247.1 hours for this work.  Pls. Suppl. Br. at 5.

19      Fees "may be reduced for time spent on ultimately unsuccessful claims, but those claims

20  generally must be both unsuccessful and unrelated to the successful claims."  *Hensley*, 461 U.S. at

21  434-35.  "[C]laims are unrelated when the relief sought on the unsuccessful claim is intended to

22  remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise

23  to the injury on which the relief granted is premised.  But, even if a specific claim fails, the time

24  spent on that claim may be compensable, in full or in part, if it contributes to the success of other

25  claims."  *Community Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 956

26  (9th Cir. 2002) (internal citations and quotation marks omitted) (affirming district court's

27  conclusion that all initial claims had similar factual bases, were based on similar legal theories,

28  and targeted single course of conduct by defendant).  "Hours expended on unrelated, unsuccessful

24

claims should not be included in an award of fees." *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).

A deduction of these hours is warranted. Carol Strickman declares that "[o]ver a thousand class members were incarcerated in the SHU at [the time correctional officers began using the Guard One device every half hour] and were negatively impacted by this protocol." Strickman Decl. ¶ 8. While there may be overlapping *Coleman* and *Ashker* class members, Plaintiffs' counsel do not represent the *Coleman* class and are uninvolved in that case. *See Coleman* Docket. Nevertheless, on October 26, 2015, Plaintiffs' counsel raised this issue before Judge Vadas.[11] Strickman Decl. ¶ 10. Judge Vadas allowed Plaintiffs' counsel to submit reports regarding the Guard One policy.[12] *See id.*; Strickman Reply Decl. ¶ 6. Judge Vadas also accompanied *Coleman* and *Ashker* counsel on a December 2, 2015 visit of Pelican Bay. Dkt. No. 454. But to the extent Judge Wilken or Judge Vadas entertained the possibility that they *may* have jurisdiction over CDCR's use of Guard One, the record does not indicate that either judge made a finding to that effect.[13] Plaintiffs do not otherwise explain how their Guard One work contributes to the enforcement or furtherance of the *Ashker* Settlement.

Moreover, although Mr. Lobel and Ms. Strickman submitted letter briefs to the *Coleman* and *Ashker* Courts, "[n]either . . . court held evidentiary hearings on the issue [Plaintiffs' counsel]

---

[11] Neither Ms. Strickman nor the record indicates how counsel raised the issue before Judge Vadas. The record does not contain any motions, letters, or other filings submitted on October 26, 2015, nor does it show the parties appeared before Judge Vadas on that date. *See* Docket.

[12] It is unclear whether Plaintiffs filed such reports or submitted them informally to Judge Vadas; it is also unclear how many reports Plaintiffs submitted. To the extent Plaintiffs filed their reports regarding Guard One, Plaintiffs do not identify where in the more than 1,000 docket entries those reports appear.

[13] Ms. Strickman asserts that "a continuing and systemic violation of the Constitution constitutes a breach of our Settlement Agreement." Strickman Reply Decl. ¶ 3. While it is not in this Court's purview to interpret the Settlement, the Court nevertheless notes this appears to be a broad reading of the Settlement, which is limited to "current and ongoing violations *of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment of the United States Constitution . . . as alleged in the Second Amended Complaint or Supplemental Complaint or as a result of CDCR's reforms to its Step Down Program and SHU policies contemplated by this Agreement. . . .*" Settlement ¶ 52 (emphasis added).

raised." Strickman Reply Decl. ¶ 8. In fact, the *Coleman* Court expressly declined to act on Plaintiffs' counsel's concerns. *See* Docket Entry, *Coleman* Dkt. No. 5447 ("On May 2, 2016, the court received the attached letter from counsel for plaintiffs in Ashker v. Brown, Case No. 09-cv-05796 (N.D.Cal.). The letter will be disregarded, and the original returned to counsel.").

Ms. Strickman nevertheless contends that "due at least in part to our efforts, the reduction of these security/welfare checks . . . has remained in place." Strickman Reply Decl. ¶ 8; *see id.* ¶ 7 ("[T]he *Ashker* team's work here did not duplicate that of plaintiffs' counsel in *Coleman*. They were not conducting prisoner interviews, writing reports, obtaining expert statements, not strenuously advocating for a modification of the order – all of which *Ashker* counsel were doing."). The record does not support this assertion. The Guard One issue eventually became moot, as "all of [the *Ashker*] class members were transferred out of the Pelican Bay SHU and [Plaintiffs' counsel] did not pursue the issue further." *Id.* ¶ 8. Nothing in the record suggests these transfers were the result of Plaintiffs' counsel's unsolicited contributions to the *Coleman* settlement.

In short, Plaintiffs' counsel's work on the Guard One matter was both unsuccessful and unrelated to the merits of this case. While it would be reasonable for Plaintiffs' counsel to alert *Coleman* counsel that *Ashker* class members experienced issues caused by CDCR's use of the Guard One system, Plaintiffs' counsel voluntarily involved themselves in the *Coleman* matter by employing experts and preparing various reports to send to the special master appointed in *Coleman*.[14] *See id.* ¶ 4. This does not justify awarding fees for this work.

The Settlement limits the recovery of attorneys' fees to work "monitoring CDCR's compliance with this Agreement and enforcing this Agreement[.]" Settlement ¶ 55. The Settlement does not require Defendants to compensate Plaintiffs' counsel for work that counsel

---

[14] Ms. Strickman purports to quote, without citation, "[t]he official notes" of the parties' March 7, 2016 settlement conference before Judge Vadas, where Judge Vadas ostensibly encouraged Plaintiffs' counsel to submit reports to the *Coleman* special master. Strickman Decl. ¶ 16. It is unclear what Ms. Strickman means by "official notes"; the minute entry regarding the March 7, 2016 settlement conference does not contain the quote Ms. Strickman cites in her declaration. *Compare id. with* Dkt. No. 500.

voluntarily undertook to enforce a settlement negotiated in a different litigation before another court. Plaintiffs do not cite any portion of the Settlement that suggests the *Coleman* case is related to the *Ashker* agreement. Neither Judge Wilken nor Judge Vadas concluded the Guard One matter was properly before the *Ashker* Court or fell within the scope of the Settlement; on the contrary, they declined to consider the matter further. Accordingly, Plaintiffs cannot seek compensation under the Settlement for work related to CDCR's Guard One policy and the *Coleman* litigation. A reduction of 257.1 hours (247.1 attorney hours and 10 paralegal/legal worker hours) is therefore appropriate.

### n.   *Fees on Fees*

Under § 1988, "[r]ecoverable attorney's fees may include fees incurred while doing work on the underlying merits of the action ('merits fees') as well as fees incurred while pursuing merits fees ('fees-on-fees')." *Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995). But "[b]ecause *Hensley* . . . requires the district court to consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990); *see also Wagner v. Shinseki*, 640 F.3d 1255, 1260 (Fed. Cir. 2011) ("Because *Hensley* requires a court to calibrate the amount of attorney fees to the degree of success a claimant has achieved, it is generally appropriate to make an award of supplemental fees that is commensurate with the degree of success obtained on the original fee application."). To that end, "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

Plaintiffs seek attorneys' fees for time spent on negotiating and litigating the "merits fees" and the instant Motion.

### i.   Merits Fees

Plaintiffs seek compensation for work performed concerning their merits fees, that is, their fee request regarding the start of the case through September 1, 2015. Plaintiffs categorize this time as follows: merits fees preparations, merits fees negotiations, and merits fees approval. Pls. Suppl. Br. at 3-5. Counsel spent a total of 303.6 hours (244.7 attorney hours and 58.9

paralegal/legal worker hours) on "prepar[ing] briefing and extensive documentation for merits fees motion in preparation for litigation." *Id.* at 5; Suppl. Miller Decl., Ex. 2 at ECF p.21. They spent 81.8 attorney hours on negotiations, plus 81.2 attorney hours and 3.2 paralegal/legal worker hours on merits fees approval. Pls. Suppl. Br. at 5; Suppl. Miller Decl., Ex. 2 at ECF pp. 22-23. This latter task entailed the "[p]reparation of unopposed motion for approval of settled amount of merits fees, including briefing and extensive documentation." Pls. Suppl. Br. at 4.

Nothing in the record suggests the time spent on negotiations is unreasonable. The Court therefore approves these hours. However, Plaintiffs' time entries for merits fees preparation and merits fees approval are problematic.

First, Plaintiffs do not sufficiently explain why they should be compensated for two merits fees motions when one was unsuccessful. Judge Wilken denied Plaintiffs' initial, unopposed motion for attorneys' fees "without prejudice to refiling with additional explanation and supporting documentation." Dkt. No. 555 at 1. Judge Wilken stated that any renewed motion must include the number of hours for which payment is sought, the hourly rate used to calculate the lodestar figure, the specific amount of costs, and summary charges of hours and costs claimed. *Id.* Judge Wilken explained that "[s]uch information and argument is necessary for class members to understand the fee request and for the Court to make the required findings of fact and conclusions of law with respect to the fee award." *Id.* at 1-2. Plaintiffs subsequently filed a renewed motion (Dkt. No. 577), which Judge Wilken granted (Dkt. No. 579). Thus, while Plaintiffs ultimately prevailed on their merits fee request, their initial fee motion was unsuccessful.

Faced with a fees-on-fees request brought under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), the Supreme Court explained that "[e]xorbitant, unfounded, or procedurally defective fee applications—like any other improper position that may unreasonably protract proceedings—are matters that the district court can recognize and discount." *Jean*, 496 U.S. at 163; *see Gomez*, 45 F.3d at 1368 ("If *Hensley* required defendants to pay 100 pennies on the dollar in fees-on-fees for every twelve pennies they successfully trim from merits fees, defendants would have little incentive to raise legitimate objections to improper billing entries, and plaintiffs would have every incentive to feather their nests."); *United States ex rel. Sant v. Biotronik, Inc.*, 716 F.

App'x 590, 593 (9th Cir. 2017) (upholding district court's reduction of fees-on-fees work by 30% where court had denied more than 70% of fees requested for work performed on underlying litigation).

Mr. Miller contends that with regard to the first merits fees motion, Judge Wilken "did not fault Plaintiffs, but ordered a resubmission with greater detail." Miller Reply Decl. ¶ 11. He further declares that "[a]side from the minimal time reviewing the Court's initial order and actually filing the revised motion, Plaintiffs would have billed the time spent drafting declaration testimony, developing new charts, and the other work necessary to meet the Court's requirements, whether it came with the initial or subsequent filing." *Id.* Even if this is true, the fact remains that the denial of the first merits fees motion required Plaintiffs to draft a revised merits fees motion – one that would have been unnecessary had Plaintiffs provided the requisite documentation and support for their request in the first instance. Plaintiffs offer no argument as to why they should be compensated for both motions, nor do they explain why their defective fee application did not "unreasonably protract proceedings." *Jean*, 496 U.S. at 163. On this record, the Court cannot find Plaintiffs sufficiently support recovery of fees for their first unsuccessful merits fees motion.

Second, Plaintiffs' descriptions of merits fees preparation and merits fees approval are not sufficiently detailed to allow the Court to conclude that this work was not duplicative. According to Plaintiffs, merits fees preparations required counsel to "[p]repare briefing and extensive documentation for merits fees motion in preparation for litigation." Pls. Suppl. Br. at 3. Merits fees approval consisted of the "[p]reparation of unopposed motion for approval of settled amount of merits fees, including briefing and extensive documentation." *Id.* at 4. It thus appears that both categories involved preparing "briefing and extensive documentation" for the merits fees motion. It is unclear how these tasks differ or why they are not duplicative.

Accordingly, the Court deducts the hours claimed for merits fees litigation: 90.7 attorney hours and 3.4 paralegal/legal worker hours. Plaintiffs may recover fees for merits fees preparation: 244 attorney hours and 58.9 paralegal/legal worker hours.

### ii.   Monitoring Fees

Plaintiffs also seek to recover fees incurred in relation to the instant fee request. Plaintiffs

29

spent 159.1 attorney hours and 12.6 paralegal/legal worker hours on "monitoring fees preparation," which consisted of "work to prepare and negotiate fees for each of the four periods in the present fee request, including mediation with Judge Vadas." Pls. Suppl. Br. at 4-5; Suppl. Miller Decl., Ex. 2 at ECF p.24. Plaintiffs also expended 90.7 attorney hours and 3.4 paralegal/legal worker hours on "monitoring fees litigation," which involved their "initial work to prepare and litigate the fee request for the first period of monitoring." Pls. Suppl. Br. at 4-5; Suppl. Miller Decl., Ex. 2 at ECF p.25.

Nothing in the record suggests the time spent on the monitoring fees litigation was unreasonable. Accordingly, the Court finds Plaintiff may recover fees for 90.7 attorney hours and 3.4 paralegal/legal worker hours.

As to monitoring fees preparation, the Miller Declaration sets forth Plaintiffs' attempts to negotiate the instant fee request. Miller Decl. ¶¶ 22-27. In January and February 2016, Mr. Miller proposed entering into a stipulation establishing a process for the parties to handle fee demands and disputes. Id. ¶ 27. Mr. Miller represents Defendants did not agree to Plaintiffs' proposed process. Id.

Plaintiffs sent Defendants demand letters on February 16, 2016; July 6, 2016; and September 21, 2016.[15] Id. ¶¶ 22-24. Negotiations ensued after the February 16 and July 6 letters, but these discussions were ultimately unsuccessful. Id. ¶¶ 22-23; see id. ¶ 24 (Plaintiffs had yet to receive a response to the September 21 letter).

It is unclear when or how often the parties met with Judge Vadas to discuss attorneys' fees. The only settlement conference noted is the December 7, 2016 conference, and this date falls outside the September 2, 2015 – October 15, 2016 timeframe of this Motion. See id. ¶ 26. To the extent the parties attended other settlement conferences regarding attorneys' fees that did fall within the applicable time period, Plaintiffs have not established they have not sought compensation for this time elsewhere in their Motion. As discussed above, Plaintiffs separately seek compensation for magistrate judge conferences, including "[p]reparing for and holding

---

[15] Plaintiffs also sent Defendants a demand letter on January 17, 2017. Miller Decl. ¶ 25. However, this falls outside time period at issue in this Motion.

monthly meetings and *other conferences* with Magistrate Judge Vadas." Pls. Suppl. Br. at 2 (emphasis added). Plaintiffs' submissions do not suggest that the time spent in settlement conferences is excluded from the "magistrate judge conference" category. The Court therefore cannot conclude Plaintiffs have not twice billed for time spent in settlement conferences to negotiate attorneys' fees.

A reduction is therefore necessary. But Plaintiffs do not identify the time spent in settlement conferences or in preparation thereof and do not identify how many settlement conferences they attended. Nor do they clearly identify what other work went into "monitoring fees preparation." Absent such information, the Court deducts the full 159.1 attorney hours and 12.6 paralegal/legal worker hours.

   o. *Press*

Plaintiffs claim 17.8 hours for addressing media inquiries and communications. Pls. Suppl. Br. at 4-5; Suppl. Miller Decl., Ex. 2 at ECF p.26.

A prevailing civil rights plaintiff may recover attorneys' fees for "the giving of press conferences and performance of other lobbying and public relations work" where such work "is directly and intimately related to the successful representation of a client[.]" *Davis*, 976 F.2d at 1545; *see Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency*, 2017 WL 3096105, at *11 (9th Cir. June 27, 2017) (unpub.) ("[T]he Ninth Circuit has held that prevailing civil rights counsel are entitled to fees for press conferences and performance of other lobbying and public relations work when those efforts are directly and intimately related to the successful representation of a client."); *Terry*, 583 F. App'x at 790 ("[C]ompensable public relations work must be 'directly and intimately related to the successful representation of a client.'" (quoting *Davis*, 976 F.2d at 1545)).

Plaintiffs do not describe the contents of the media requests, nor do they explain how responding to media inquiries and communications is reasonably related to the Settlement. As such, Plaintiffs fail to show how this work is "directly and intimately" related to Plaintiffs' representation. The Court accordingly deducts 17.8 hours from Plaintiffs' request. *See Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995), *as amended* (Aug. 3, 1995) (district court abused its discretion awarding attorneys' fees for attending conference and media contact, as "[t]hese are the

kinds of activities that attorneys generally do at their own expense").

    p.  *Step Down Programming*

   Plaintiffs seek to recover fees for time spent "[m]onitoring work on CDCR's obligation to revisit Step Down Programming." Pls. Suppl. Br. at 4. Attorneys spent 89.4 hours and paralegals/legal workers spent 26.1 hours on this task. *Id.* at 5; Suppl. Miller Decl., Ex. 2 at ECF p.27.

   The Settlement provides for new criteria and modifications to CDCR's Step Down Program. Settlement ¶¶ 15-24. The Settlement also provides that Plaintiffs shall "monitor Defendants' compliance with the terms of this Agreement." *Id.* ¶ 37. Nothing in the record indicates this time is unreasonable, duplicative, or excessive. As such, the Court finds Plaintiffs are entitled to compensation for 89.4 attorney hours and 26.1 paralegal/legal worker hours for this task.

    q.  *Training*

   Plaintiffs' counsel expended 54.6 hours and paralegals/legal workers spent 12.3 hours on "training," which Plaintiffs describe as "[m]onitoring work on CDCR's training obligations pursuant to Paragraphs 34 and 35 of the Settlement Agreement." Pls. Suppl. Br. at 4-5; Suppl. Miller Decl., Ex. 2 at ECF p.28.

   Paragraphs 34 and 35 of the Settlement provide that

> 34. [ ] To ensure that the confidential information used against inmates is accurate, CDCR shall develop and implement appropriate training for impacted staff members who make administrative determinations based on confidential information as part of their assigned duties, consistent with the general training provisions set forth in Paragraph 35. The training shall include procedures and requirements regarding the disclosure of information to inmates.

> 35. CDCR shall adequately train all staff responsible for implementing and managing the policies and procedures set forth in this Agreement. Plaintiffs' counsel shall be provided an advanced copy of all such training materials with sufficient time to meet and confer with Defendants, prior to the implementation of the trainings. Plaintiffs are entitled to have an attorney attend training sessions on these modifications, no greater than 6 times per year.

The record does not suggest this time is unreasonable, duplicative, or excessive. The Court

therefore finds Plaintiffs may recover fees for 54.6 attorney hours and 12.3 paralegal/legal worker hours for this work.

### r. *Meet and Confer Document Production*

Attorneys spent 94.2 hours and one paralegal/legal worker spent 1 hour to "[m]eet and confer (including team communications in preparation for meet and confer) regarding issues with CDCR's document production." Pls. Suppl. Br. at 4-5; Suppl. Miller Decl., Ex. 2 at ECF p.29.

Plaintiffs do not specify how many hours were spent in meet and confer sessions, rather than spent conversing amongst themselves. Moreover, based on Plaintiffs' description of this work, it is not obvious that "team communications in preparation for meet and confer" are not already subsumed in time spent in "team discussion/correspondence and general monitoring," which includes "[d]iscussion (non-weekly meetings) and/or correspondence among various team members and/or subgroups regarding general monitoring and specific issues, as well as substantive work related to those issues." Pls. Suppl. Br. at 2.

On this record and absent more details, the Court cannot find Plaintiffs have sufficiently shown these hours are recoverable.

### s. *Carole Travis*

Defendants argue Carole Travis cannot recover fees for 364.5 hours of work because Ms. Travis, who is not licensed in California, "is engaged in the unauthorized practice of law." Opp'n at 6; *see* Miller Decl., Ex. 1 (Summary of Hours).

Defendants have not moved to disqualify Ms. Travis from this litigation. *See* Docket. It is not within this Court's purview to determine whether Ms. Travis has impermissibly practiced law during her involvement in this action.[16] The Court therefore declines to subtract Ms. Travis' hours on this basis.[17]

---

[16] As noted above, Plaintiffs claim Ms. Travis' work as "paralegals/legal workers" hours, not attorney. Suppl. Miller Decl., Ex. 2.

[17] Defendants also request the $386,040.13 in fees previously awarded to Plaintiffs for Ms. Travis' work performed during the merits phase of this litigation "be reimbursed to the State within ninety days of the Court's order on this motion[.]" Opp'n at 6 n.5; *see* July 1, 2016 Order. This falls outside the scope of Judge Wilken's referral. Accordingly, the undersigned declines consider this

t.    *Conclusion*

Plaintiffs have had two opportunities to sufficiently support their fee request, once when they filed their Motion and another when they responded to the Court's March 29, 2018 Order. Plaintiffs have largely failed to do so and thus do not meet their burden of showing all of their claimed hours are reasonable.  In several instances, Plaintiffs' descriptions of their work appear to overlap other time entries; as such, Plaintiffs' submissions do not permit the Court to conclude that Plaintiffs have not twice billed for the same work.  Based on this record, the Court finds Plaintiffs may recover fees for the following hours:

| Category | Attorney Hours | Paralegal/Law Clerk Hours | Total Hours |
|---|---|---|---|
| Data/Document Protocols | 36.75 | 13.8 | 50.55 |
| Communication Protocols | 79.6 | 19.3 | 98.9 |
| Weekly Team Conferences | 979.8 | 19.4 | 999.2 |
| Team Discussion/Correspondence & General Monitoring | 0 | 0 | 0 |
| Magistrate Judge Conferences | 643.46 | 40.89 | 684.35 |
| Client Communications | 465.45 | 61.05 | 526.5 |
| Client Meetings | 78.65 | 27.6 | 106.25 |
| Travel for Client Meetings | 188.7 | 67.7 | 256.4 |
| Travel for Hearings/Meetings | 84.6 | 6.65 | 91.25 |
| Preliminary Approval | 32.2 | 0 | 32.2 |
| Final Approval | 232.7 | 27.2 | 259.9 |
| Enforcement Motions | 412.1 | 11.5 | 423.6 |
| De Novo Motions | 0 | 0 | 0 |
| Motion Hearings | 30.2 | 0 | 30.2 |
| Document Analysis | 417.8 | 69.9 | 487.7 |
| Semi-Annual Meetings | 54.65 | 16.17 | 70.82 |

request and will not disturb Judge Wilken's July 1, 2016 Order.

| | | | |
|---|---|---|---|
| Security/Welfare Checks | 0 | 0 | 0 |
| Merits Fees Preparation | 244.7 | 58.9 | 303.6 |
| Merits Fees Negotiations | 81.8 | 0 | 81.8 |
| Merits Fees Approval | 0 | 0 | 0 |
| Monitoring Fees Preparation | 0 | 0 | 0 |
| Monitoring Fees Litigation | 90.7 | 3.4 | 94.1 |
| Press | 0 | 0 | 0 |
| Step Down Programming | 89.4 | 26.1 | 115.5 |
| Training | 54.6 | 12.3 | 66.9 |
| Meet & Confer Document Production | 0 | 0 | 0 |
| Monitoring Planning | 0 | 0 | 0 |
| **TOTALS** | **4297.86** | **481.86** | **4779.72** |

Based on the foregoing, the Court calculates the lodestar to be $1,032,419.52:

| Type of Hours | Number of Hours | Rate | Total |
|---|---|---|---|
| Attorney | 4297.86 | $216 | $928,337.76 |
| Paralegal/Legal Worker | 481.86 | $216 | $104,081.76 |
| **TOTAL** | **--** | **--** | **$1,032,419.52** |

B. **Modification of Lodestar**

The PLRA "allows enhancement of the lodestar figure in appropriate circumstances," for instance, "when plaintiff's counsel's 'superior performance and commitment of resources' is 'rare' and 'exceptional' as compared to the run-of-the-mill representation in such cases." *Kelly*, 822 F.3d at 1100 (quoting *Perdue*, 559 U.S. at 553-54). "[A] fee applicant seeking an enhancement must produce specific evidence that supports the award." *Perdue*, 559 U.S. at 553 (internal quotation marks omitted).

Plaintiffs request a multiplier of 2.0 on counsel's monitoring and enforcement work. Mot. at 2; Miller Decl. ¶ 31. As an initial matter, Defendants argue the Settlement "does not authorize a multiplier" and "Defendants agreed to pay Plaintiffs for work 'reasonably performed on this case'

35

at the hourly rate provided for by the PLRA, nothing more nor less."[18] Opp'n at 14. Under

paragraph 55 of the Settlement,

> Defendants agree to pay Plaintiffs' counsel attorneys' fees and costs for work reasonably performed on this case, including monitoring CDCR's compliance with this Agreement and enforcing this Agreement, and for work to recover fees and costs, at the hourly rate set forth under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d). [ ] The Prison Litigation Reform Act applies to all applications for attorneys' fees in this case.

As such, the Settlement does not expressly provide for a multiplier.

In any event, Plaintiffs have not demonstrated that an enhancement is warranted under

these circumstances. Plaintiffs argue "[t]he implementation of this settlement is no less

remarkable or innovative than the process of reaching the Agreement itself[.]" Mot. at 18. This is

unpersuasive. First, "the PLRA rate generally subsumes the factors relevant to the determination

of a reasonable attorney's fee, *including the novelty and complexity of the case and the quality of

the attorney's performance*." *Kelly*, 822 F.3d at 1103 (emphasis added). "[E]ven when an

enhancement is appropriate, . . . it may not be based on considerations already subsumed in the

PLRA rate." *Id.* at 1102; *see id.* at 1099 ("[T]he court determines whether to modify the lodestar

figure, upward or downward, based on factors not subsumed in the lodestar figure."). As such,

counsel's performance is already factored into the PLRA rate.

Second, the record does not support Plaintiffs' assertion that their performance over the

13-month period at issue is "rare" or "exceptional." As discussed above, Plaintiffs had limited

success with their post-Settlement motions. Plaintiffs' decision to engage in multiple rounds of

ultimately unsuccessful motion practice does not, in and of itself, make their work exceptional. In

contrast, in *Kelly*, the Ninth Circuit affirmed the district court's decision to apply a multiplier to

the PLRA rate where the fact that

> Plaintiffs' counsel labored "under extreme time pressure and with very limited resources" was, if anything, an understatement. Plaintiffs' counsel had only twenty-six days to conduct discovery in preparation for the contempt hearing. During that period, Plaintiffs' two attorneys not only engaged in extensive motions practice,

---

[18] To the extent the parties dispute the Settlement's interpretation, this falls outside the scope of the Court's referral.

United States District Court
Northern District of California

> writing numerous pre-trial briefs; they also conducted an extraordinary amount of discovery. They interviewed, deposed, and prepared numerous witnesses in three states and obtained and reviewed roughly 7,000 pages of discovery. Most of the documents were produced for their review only five days before the beginning of the hearing. Some were even produced for review on the first evening of the hearing. Despite these constraints, Plaintiffs' counsel uncovered substantial evidence of noncompliance with the settlement agreement. Based on this evidence, they obtained a contempt finding and secured significant remedies for their clients.

822 F.3d at 1103. While the record shows Plaintiffs have actively litigated on behalf of their clients, this is what they, as advocates, are supposed to do.

An enhancement may, however, be appropriate "[w]hen a plaintiff demonstrates with specific evidence that no competent attorney is willing to take on a meritorious civil rights case because of insufficient fees, the district court furthers the PLRA's purpose by enhancing the lodestar figure by an amount reasonably calculated to induce competent lawyers in the relevant community to take such cases." *Kelly*, 822 F.3d 1085, 1104 (citing *Perdue*, 559 U.S. at 554).

The Court recognizes that an hourly rate of $216 falls well below the prevailing market rate for civil rights attorneys in the Northern District of California. *See Kelly*, 822 F.3d at 1103 (acknowledging "actual prevailing rates are very unlikely to be as low as the PLRA rate"); *see, e.g.*, *Gonzales v. City of San Jose*, 2016 WL 3011791, at *4 (N.D. Cal. May 26, 2016) (awarding fees under § 1988 and approving hourly rates of $625/hour for attorney with 20 years of experience, $575/hour for managing attorney with 10 years of experience, $450/hour for associate with 12 years of experience, and $425/hour for associates with 12 and 22 years of experience (collecting cases)). Plaintiffs argue this enhancement will bring attorneys' hourly rates in line with prevailing market rates. Mot. at 16-17. They contend their proposed multiplier is "necessary . . . to encourage attorneys to take such challenging cases of egregious violations and prosecute them exceptionally well throughout the full course of the litigation." *Id.* at 17.

The Ashker Declaration details Messrs. Ashker's and Troxell's difficulties in finding an attorney to represent them. Ashker Decl. ¶¶ 13-15, Dkt. No. 690-13. Mr. Ashker declares he and Mr. Troxell sent 120 letters to 100 firms, solo practitioners, and organizations. *Id.* ¶¶ 13, 15. Mr. Ashker believes they received less than 10 replies, each of them declining to take the case. *Id.* ¶ 15 ("Said replies were all supportive of our cause, while apologetic for not being able to assist us,

wishing us luck.").

Unfortunately, Plaintiffs do not offer evidence as to *why* attorneys declined to assist Messrs. Ashker and Troxell. Nothing in the record indicates these attorneys declined representation on account of the PLRA rate, as opposed to time constraints or other commitments. The Ninth Circuit is clear that an enhancement is permitted only upon a showing of "specific evidence that no competent attorney is willing to take on a meritorious civil rights case because of insufficient fees." *Kelly*, 822 F.3d at 1104. Absent such evidence, Plaintiffs fail to show an enhancement is needed to encourage competent attorneys to represent clients in meritorious civil rights cases. Indeed, in pursuing the merits fees, Plaintiffs did not request a multiplier. Dkt. No. 577 at 4 n.4 ("The settlement of attorneys' fees for litigating the merits of the case through the execution of the Settlement Agreement does not include a multiplier."); Dkt. No. 577-1 ¶ 61 (same). Plaintiffs do not explain why one is warranted now.

Under these circumstances and based on this record, the Court finds Plaintiffs are not entitled to a multiplier.

## C.    Summary

Based on the foregoing, the Court awards Plaintiffs $1,032,419.52 in attorneys' fees.

### COSTS

Plaintiffs seek reimbursement for $41,219.78 in costs. *See* Miller Decl., Ex. 4; Miller Reply Decl. ¶ 18 (reducing request for costs from $47,706.20 by $486.42, for total of $41,219.78). Plaintiffs' costs include copying, court and legal costs, court reporters, document processing, online legal research, postage and delivery, service of process, supplies, telephone and fax, translation, and travel. Miller Decl., Ex. 4.

The Court finds these costs are recoverable. *See Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) ("service of summons and complaint, service of trial subpoenas, fee for defense expert at deposition, postage, investigator, copying costs, hotel bills, meals, messenger service and employment record reproduction" recoverable under § 1988).

Defendants argue Plaintiffs fail to provide receipts, invoices, or other documentation and thus fail to adequately support their request for costs. Opp'n at 12-13. Defendants offer no

authority in support of their proposition that Plaintiffs must submit this level of documentation to be compensated for costs.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiffs' Motion for Attorneys' Fees and Costs. The Court awards Plaintiffs $1,032,419.52 in attorneys' fees and $41,219.78 in costs.

**IT IS SO ORDERED.**

Dated: June 25, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge