XAVIER BECERRA
Attorney General of California
ADRIANO HRVATIN
Supervising Deputy Attorney General
LE-MAI D. LYONS
Deputy Attorney General
State Bar No. 285756
 455 Golden Gate Ave., Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 510-3750
 Fax: (415) 703-5843
 E-mail: LeMai.Lyons@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| **TODD ASHKER, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GOVERNOR OF THE STATE OF CALIFORNIA, et al.,**<br><br>Defendants. | 4:09-cv-05796 CW (RMI)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' ENFORCEMENT MOTION REGARDING INMATE DISCIPLINE FOR PARTICIPATION IN SHU-ELIGIBLE ROUT ACTIVITY** |

## INTRODUCTION

The settlement agreement that resolved this class action always contemplated that prison officials could discipline inmates with a Security Housing Unit (SHU) term for participating in a "rout." A rout is illegal conduct that falls just short of a prison "riot," and which would escalate into a full-blown riot if prison staff did not intervene and prevent it, thereby avoiding substantial risk to inmate and staff safety. There should be no dispute that the California Department of Corrections and Rehabilitation (CDCR) is required under its Eighth Amendment duty to protect, investigate, and avert such dangerous behavior. Plaintiffs' enforcement motion seeks to constrain, if not obviate, that constitutional duty to secure inmate, staff, and institutional safety.

1

Defs.' Opp'n Pls.' Enf. Mot. (4:09-cv-05796 CW (RMI))

In Plaintiffs' view, CDCR can never discipline a class member with a SHU term for rout activity because the settlement's SHU Term Assessment Chart did not explicitly list a "rout" as a SHU-eligible offense. (Pls.' Enf. Mot., Oct. 29, 2019, ECF No. 1215 at 2). But such an interpretation distorts the settlement's language and spirit. The SHU Term Assessment Chart did not limit CDCR's ability to discipline class members for participating in a "riot," "disturbance," or "strike," or "for inciting conditions likely to threaten institutional security." (Settlement Agreement, Sept. 1, 2015, ECF No. 424-3 at 5). These terms encompass routs and rout activity. At a minimum, routs are a disturbance; moreover, a rout incites prison conditions likely to threaten institutional security, as well as inmate and staff safety. Defendants have not modified, let alone violated, any settlement term by disciplining inmates who participate in rout activity with SHU terms. The Court should reject Plaintiffs' strained interpretation of the settlement and deny Plaintiffs' enforcement motion.

## ARGUMENT

**I. THE SETTLEMENT AGREEMENT DID NOT AFFECT CDCR'S ABILITY TO DISCIPLINE INMATES FOR VIOLATING PRISON RULES, INCLUDING ROUT ACTIVITY.**

The settlement agreement reformed the manner in which CDCR assigns prison-gang affiliates to SHU terms—specifically, CDCR ended its prior practice of assessing validated inmates to indeterminate SHU terms based solely on gang status. The focus now is on the inmate's behavior, and the settlement listed the various offenses for which class members (like all inmates) can be disciplined with a SHU term. That list is in a document called the SHU Term Assessment Chart.

Under the settlement's paragraph 14, CDCR agreed to "amend the SHU Assessment Chart located in Title 15 of the California Code of Regulations, section 3341.5, subsection (c)(9)," and that "[t]he SHU Assessment Chart shall be amended as set forth in Attachment B." (ECF No. 424-2 at 6). Attachment B was later incorporated into CDCR regulations—both of which put class members on notice that they could be placed in SHU for a specific determinate term if found guilty of committing certain offenses.

2

Defs.' Opp'n Pls.' Enf. Mot. (4:09-cv-05796 CW (RMI))

1    Relevant to Plaintiffs' enforcement motion, section 7 of the SHU Term Assessment Chart
2    outlines the low, middle, and high SHU-term ranges for inmates found guilty of a "disturbance,
3    riot, or strike." The SHU-eligible activity includes: (a) leading a disturbance, riot or strike; (b)
4    active participation in a disturbance, riot or strike (two or more offenses within a 12-month period
5    or one with a direct nexus to a prison gang or Security Threat Group); and (c) inciting conditions
6    likely to threaten institution security. (ECF No. 424-3 at 5). While the SHU Term Assessment
7    Chart does not explicitly include the word "rout" as a SHU-eligible offense, a rout falls within the
8    defined activity subject to discipline under section 7.

**II.   DEFENDANTS DID NOT VIOLATE THE SETTLEMENT AGREEMENT BY DISCIPLINING CLASS MEMBERS FOR ROUT ACTIVITY.**

**A.   A Rout Is a SHU-Eligible Offense Under the Settlement Agreement.**

Under California law, which governs the settlement, "the words of a contract are to be understood in their ordinary and popular sense, … unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." Cal. Civ. Code § 1644. Merriam-Webster defines a "rout" as a "disturbance." *Rout*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/rout (last visited Nov. 6, 2019). California Penal Code defines a "rout" as "whenever two or more persons, assembled and acting together, make any attempt or advance toward the commission of an act which would be a riot if fully committed." Cal. Pen. Code § 406. Under either definition, rout activity is a SHU-eligible offense under section 7 because a rout is either a disturbance or an incomplete riot. At a minimum, a rout falls under section 7(c) because it "[incites] conditions likely to threaten institution security." (ECF No. 424-3 at 5).

Plaintiffs contend that because the word "rout" does not appear in section 7, where the words disturbance, riot, and strike do, CDCR cannot discipline class members for rout activity. But this elevates form over substance. Section 7 prohibits the same *underlying conduct* of any action that threatens institutional security (like a disturbance, riot, or strike). Plaintiffs' flawed logic would then similarly prohibit Defendants from assessing SHU terms to inmates found guilty of possessing a "gun" or "knife," since only possession of a "firearm" or "weapon" is expressly

3

Defs.' Opp'n Pls.' Enf. Mot. (4:09-cv-05796 CW (RMI))

1   listed in the SHU Term Assessment Chart.  (ECF No. 424-3 at 4).  Such myopic focus on the
2   words used, rather than their meaning, is inconsistent with settled contract law and would
3   frustrate the settlement's terms and intent.

4       Plaintiffs' motion also fails because section 14 of the SHU Term Assessment Chart makes
5   clear that "[a]ny inmate who conspires to commit or solicits another person to commit any of the
6   offenses above shall receive the term specified for that offense."  (ECF No. 424-3 at 6).  Section
7   14 thus permits punishing inmates with a SHU term for conspiring to engage in a SHU-eligible
8   offense—which includes a conspiracy and attempt to commit a riot, *i.e.*, a rout.  The only reason
9   the riot does not happen is because staff is able to intervene and prevent it.  The SHU Term
10  Assessment Chart makes clear then that participating in a rout will result in the same SHU term
11  for participating in a riot, the same way the "conspiracy to traffic drugs" would result in the same
12  SHU term for actually trafficking drugs, even though "conspiracy to traffic drugs" is not
13  expressly enumerated in the SHU Term Assessment Chart.  Excluding these unlisted conspiracy
14  offenses would render section 14 meaningless.  *See* Cal. Civ. Code § 1641 (providing that "[t]he
15  whole of a contract is to be taken together, so as to give effect to every part, if reasonably
16  practicable, each clause helping to interpret the other").

17      **B.    Routs Are Assessed the Same SHU Term as Disturbances or Riots.**

18      Plaintiffs' attempt to distinguish a rout from a riot or a disturbance also fails because these
19  offenses are subject to the same SHU-term ranges under the settlement and the SHU Term
20  Assessment Chart.  The rules violation report package Plaintiffs rely on as a representative
21  sample actually supports Defendants' position.  The inmate there pled guilty to a violation of
22  Title 15, section 3005(d)(3), which states: "Inmates shall not participate in a riot, rout, or
23  unlawful assembly."  (ECF No. 1215-2 at 4).  Section 3005(d)(3) unambiguously subjects
24  inmates to discipline for participating in routs and riots, as the terms are used interchangeably.  If
25  the inmate's rout activity escalated into a riot, he would have been charged for participating in a
26  riot under that same code section.  And the inmate would have been subject to the same range of
27  determinate SHU terms for his behavior.  Because an inmate is subject to the same range of SHU
28

4

Defs.' Opp'n Pls.' Enf. Mot. (4:09-cv-05796 CW (RMI))

terms for a rout, riot, or disturbance, Plaintiffs can claim no prejudice for an inmate charged for a rout, as opposed to a riot or disturbance.

## CONCLUSION

Defendants neither modified nor violated the settlement agreement by assessing SHU terms to class members found guilty of participating in a rout. CDCR's ability to assess SHU terms for routs is rooted in its constitutional obligation to keep inmates safe—the same foundation that allows CDCR to discipline inmates who engage in a disturbance, riot, strike, or other activity that incites conditions likely to threaten institutional security. The Court should deny Plaintiffs' enforcement motion.

Dated:  November 12, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
ADRIANO HRVATIN
Supervising Deputy Attorney General

*/s/ Le-Mai D. Lyons*
LE-MAI D. LYONS
Deputy Attorney General
*Attorneys for Defendants*

SF2012204868
21703539.docx

5

Defs.' Opp'n Pls.' Enf. Mot. (4:09-cv-05796 CW (RMI))