UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

TODD ASHKER, et al.,

    Plaintiffs,

v.

MATHEW CATE, et al.,

    Defendants.

Case No. 09-cv-05796-CW   (RMI)

**REPORT AND RECOMMENDATION**

Re: Dkt. Nos. 1424, 1425

Now pending before the court are dueling motions for attorneys' fees.[1] In the first motion (dkt. 1424) counsel for Plaintiffs seek an order from the court directing the payment of a disputed sum of attorneys' fees accrued during the 19th quarter of the monitoring and enforcement period under the Settlement Agreement (dkt. 424-2) involved in this case. In the second motion (dkt. 1425) counsel for Defendants seek an order declaring that, as the prevailing parties in the course of an appeal from one of the decisions of this court, Defendants should be entitled to either attorneys' fees, or in the alternative, "nominal attorneys' fees in the amount of $1." (*see* dkt. 1425 at 9). For the reasons stated below, the undersigned recommends that Plaintiffs' motion (dkt. 1424) be granted in part, and that Defendants' motion (dkt. 1425) be denied. Because each motion seeks relief that is largely unrelated to the other, the undersigned will address them separately.

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

The Settlement Agreement in this case provides that "Defendants agree to pay Plaintiffs' counsel attorneys' fees and costs for work reasonably performed on this case, including monitoring CDCR's compliance with this Agreement and enforcing this Agreement, and for work

---

[1] Pursuant to Civil Local R. 7-1(b), the undersigned finds that this matter is suitable for disposition without oral argument.

to recover fees and costs, at the hourly rate set forth under the Prison Litigation Reform Act . . . On a quarterly basis, Plaintiffs may file motions for reasonable attorneys' fees accrued in monitoring and enforcing CDCR's compliance with this Agreement." *See* Settlement Agmt. (dkt. 424-2) at 21-22. The Settlement Agreement, however, is one-sided in this regard – that is, the agreement contains no provision allowing for Defendants to seek or recover attorneys' fees under any circumstance. *See generally id*. at 2-23. The agreement also contains an integration clause stating that it "reflects the entire agreement of the parties and supersedes any prior written or oral agreements between them," and that that "[a]ny modification of the terms of this Agreement must be in writing and signed by a CDCR representative and attorneys for Plaintiffs and Defendants to be effective or enforceable." *Id*. at 22. Additionally, the agreement contains a provision to the effect that "[t]his Agreement shall be government and construed according to California law." *Id*.

    Defendants now seek attorneys' fees either in the nominal amount of a single dollar, or attorneys' fees somewhere in the neighborhood of $139,500 for appellate work performed by Defendants' counsel in matters where Defendants were the ultimate prevailing parties; or, if one were to include fees that Defendants have already paid to Plaintiffs' counsel (about which they have now experienced a change of heart) Defendants submit that "in addition to approximately $139,500 for Defendants' successful Ninth Circuit appeal . . . the [] motions on which Defendants ultimately prevailed [] cost the State over $500,000 in attorneys' fees and costs." *See* Defs.' Mot. (dkt. 1425) at 5, 9; *see also* Shryock Decl. (dkt. 1425-1) at 3-4. Thus, in short, Defendants seek either (1) a nominal fee award of a single dollar; or, (2) an award of the fees their counsel incurred in securing an appellate victory (to wit, $139,500); or, (3) the combination of the amount of fees their counsel incurred in securing that appellate victory plus a clawing back of moneys previously paid to Plaintiffs' counsel but which has now become the subject of regret due to the subsequent appellate victory. Notwithstanding the Settlement Agreement's lack of any provision entitling Defendants to the recovery of costs or attorneys' fees, Defendants suggest that "[u]nder California law, the Agreement's attorneys' [] fee provision is reciprocal, and thus the prevailing party on any given enforcement action is entitled to collect its attorneys' fees and costs spent litigating the enforcement dispute." *See* Defs.' Mot. (dkt. 1425) at 5 (citing Cal Civ. Code § 1717). Defendants

2

1  contend that "California has a firm policy against one-sided attorneys' [] fee provisions in
2  contracts . . . [thus] if a contract contains a provision, like the one here, that allows one of the
3  parties to seek fees incurred in actions to enforce the contract, then either party may recover their
4  attorneys' fees if they are the prevailing party in a contract enforcement dispute." *Id*. at 6.
5  Defendants also suggest that "[c]ourts have applied section 1717 to disputes over the enforcement
6  of settlement agreements." *Id*. (citing *Lemberg v. San Francisco Opera Ass'n*, No. 17-cv-06641-
7  MMC, 20 WL 5074257 (N.D. Cal. Aug. 24, 2020).

8        For the following reasons, the undersigned finds Defendants' arguments to be
9  unpersuasive. First, the undersigned will note that each of the cases cited by Defendants in support
10 of their interpretation of § 1717 are substantially different than the case at bar. *See* Defs.' Mot.
11 (dkt. 1425) at 5-7. For example, the settlement agreement at the heart of *Lemberg* was materially
12 different in that, unlike the agreement in this case, the attorney fee provision in the agreement in
13 *Lemberg* was two-sided and provided for attorneys' fees and costs reasonably incurred by <u>any</u>
14 party who might prevail in any action to enforce the terms of that agreement. *See Lemberg*, Case
15 No. 3:17-cv-06641-MMC, Settlement Agmt. (dkt. 80) at 9. Similarly, Defendants' reliance on
16 *Ribbens Int'l, S.A. de C.V. v. Transp. Int'l Pool, Inc.*, 47 F. Supp. 2d 1117, 1119 (C.D. Cal. 1999),
17 is misplaced as that case was a breach of contract lawsuit, bringing it within the ambit of § 1717's
18 "in any action on a contract" language. Defendants' citation to *Merritt v. City of Sunnyvale*, 726 F.
19 App'x 646, 648 (9th Cir. 2018) is no more persuasive because that case, an action on a contract
20 between *pro se* homeowners and their homeowners' association had been improperly couched as a
21 § 1983 claim, and the appellate court merely affirmed the district court's granting of an attorneys'
22 fee award to the association under the rationale that, "[t]he district court did not abuse its
23 discretion by granting the Classics Defendants' motion for attorney's fees because the Declaration
24 of Restrictions ("CC&Rs") provided for attorney's fees in legal proceedings relating to the rights
25 'of the Association or any Person subject to this Declaration.'" Similarly, the remainder of the
26 cases relied upon by Defendants are unpersuasive as their holdings rest on materially different
27 foundations than the case at bar. In short, Defendants have not cited to any authority where a
28 federal case involving constitutional torts was settled through an agreement where the parties

3

1  expressly agreed to a one-sided attorneys' fee provision which was interpreted by a federal court
2  as having to be two-sided due to the application of § 1717.

3        When enacting § 1717, it was not the intention of the California legislature to force the hand of parties to federal civil rights litigation, engaged in settlement negotiations, to always and invariably agree to reciprocal provisions regarding attorneys' fees in matters pertaining to the enforcement of such settlement agreements. Section 1717(a) of the California Civil Code provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." This case – though it became the subject of a settlement agreement – is not "an action on a contract" as contemplated by § 1717.[2] Instead, this case arose under federal law through the pleading of a number of federal constitutional torts, and while the case was later settled pursuant to an agreement that, itself, is a contract, it cannot be said that this

---

[2] *See e.g., Gil v. Mansano*, 121 Cal. App. 4th 739, 744-45, 17 Cal. Rptr. 3d 420, 424-25 (2004) ("An 'action' is 'a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law . . . [a]n ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense' . . . [i]n this case, the attorney fee provision in the release is very narrowly drawn. It requires action brought to enforce the terms of the release. Plaintiff did not bring an action on the release; he sued in tort for fraud. Thus, the mutuality and reciprocity provisions of Civil Code section 1717 are inapplicable."); *Santisas v. Goodin*, 17 Cal. 4th 599, 621, 71 Cal. Rptr. 2d 830, 844, 951 P.2d 399, 413 (1998) ("the Legislature did not act to expand the scope of section 1717 to encompass tort and other noncontract claims arising from contracts containing broadly worded attorney fee provisions, nor did it enact separate legislation to address such claims or otherwise articulate public policy as permitting or precluding attorney fee awards as costs for such claims."); *Lerner v. Ward*, 13 Cal. App. 4th 155, 159, 16 Cal. Rptr. 2d 486, 488 (1993) ("The [California] Supreme Court held, *inter alia*, that '[a] tort action for fraud arising out of a contract is not, however, an action 'on a contract' within the meaning of this section [1717].'") (citing *Stout v. Turney*, 22 Cal.3d 718, 730, 150 Cal. Rptr. 637, 586 P.2d 1228 (1978)); *Loube v. Loube*, 64 Cal. App. 4th 421, 430, 74 Cal. Rptr. 2d 906, 911 (1998) ("although the parties had a contractual relationship, and appellant's claim for legal negligence arose from the relationship between them, which relationship was founded on a contract, the cause of action sounded in tort and was no more 'on the contract' than a claim for breach of fiduciary duty or for fraud involving a contract. It follows that Civil Code section 1717 provides no basis for an award of attorney fees."); *In re Johnson*, 756 F.2d 738, 740 (9th Cir. 1985) ("The question for determination here, then, is whether a motion for relief from an automatic stay pursuant to 11 U.S.C. § 362(d) is an "action on a contract" to which California law should be applied. Although the Righettis were seeking relief from the automatic stay in order to foreclose under the deed of trust, both case law and the nature of stay relief proceedings support the conclusion that stay relief proceedings are not actions 'on a contract' to which California law should be applied.").

4

case is an action on a contract such as would require the court to graft a reciprocity provision into the settlement agreement that the parties could have, but chose not to, include among its express terms.

In this regard, Plaintiffs' arguments are more persuasive. Plaintiffs note that, under the circumstances of this case, the express terms of the settlement agreement and federal law exclusively control their entitlement to an attorneys' fee award. *See* Pls.' Opp. (dkt. 1429) at 2-5. Plaintiffs also note that Defendants, essentially governmental parties, are sufficiently sophisticated such that if they wanted to bargain for a reciprocal attorney fee provision in the agreement they could have done so, and the omission of such a provision reflects the clear intention of the Parties. *Id*. at 5-6. To put it in Plaintiffs' words, "[i]f Defendants wanted a prevailing party standard for settlement enforcement work, they knew how to propose it in negotiations, and chose not to do so." *Id*. at 6. Accordingly, for the above-discussed reasons, the undersigned **RECOMMENDS** that Defendants' Motion (dkt. 1425) for attorneys' fees be **DENIED**.

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

When it was initially filed, Plaintiffs' fee motion (dkt. 1424) was defective in that it simply sought the payment of $312,747.85 in fees based on 1,139.1 hours of work done by a number of attorneys during the relevant time period; however, as noted by Defendants, Plaintiffs' fee motion was not accompanied by any supporting documentation to establish the reasonableness of the number of hours expended (*see* Defs.' Opp. (dkt. 1428) at 1). Consequently, the undersigned entered an order (dkt. 1430) directing Plaintiffs to provide substantial billing documentation such that the court could gauge the reasonableness of the hours claimed. Shortly thereafter, Plaintiffs submitted some billing records in support of their fee request (*see* dkt. 1435-3 *SEALED* at 1-53). By way of opposition, Defendants contend that although Plaintiffs' billing records "contain [some] questionable time entries, Defendants only oppose Plaintiffs' request for the $44,938.80 in attorneys' fees for their counsel's work on the Enforcement Appeal." *See* Defs. Opp. (dkt. 1441) at 2. The gist of Defendants' argument in this respect rests on the contentions that Plaintiffs' counsel overstaffed this appeal, and further, that since Plaintiffs were not the prevailing parties in that appeal, they should not be entitled a fee award for an appeal they lost. *See id*. at 1-2. However, it

should be noted at the outset that the Settlement Agreement (dkt. 424-2) in this case does not limit attorneys' fees for Plaintiffs to matters in which they were the prevailing party – instead, it provides, in pertinent part, that "Defendants agree to pay Plaintiffs' attorneys' fees and costs for work *reasonably* performed on this case . . . [thus] [o]n a quarterly basis, Plaintiffs may file motions for *reasonable* attorneys' fees accrued in monitoring and enforcing CDCR's compliance with this Agreement." *Id*. at 21-22 (emphases added). Simply because Plaintiffs' counsel found themselves unable to convince an appellate panel to see things their way does not render their effort to do so as work that was, *per se*, not "reasonably performed" within the meaning of the Settlement Agreement.

It is well established that absolute precision is not required when calculating an award of attorneys' fees; instead, it is only incumbent on a reviewing court to give "some indication of how it arrived at its figures and the amount of the award [that it found to be] necessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986). In fact, not only is absolute precision not required, the Supreme Court has specifically instructed courts in this context that "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The reason the Supreme Court has countenanced this "rough justice" approach is to effectuate the notion that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In the end, this court is directed to take into account its overall sense of the case, and, where necessary, to use estimates in calculating and allocating an attorneys' time expenditures in light of its understanding of the nature and requirements of the litigation because, "[a]s the Supreme Court declared, '[w]e can hardly think of a sphere of judicial decision-making in which appellate micromanagement has less to recommend it.'" *Parsons v. Ryan*, 949 F.3d 443, 462 (9th Cir. 2020) (quoting *Fox*, 563 U.S. at 838).

For the reasons described below, as well as to address some of Defendants' concerns regarding Plaintiffs' overstaffing of this case – resulting in a moderately inflated number of hours

billed for the work performed – the undersigned will recommend a 10% downward adjustment to the total amount sought by Plaintiffs in order to account for the approximate difference in how Plaintiffs' legal team chose to staff this case versus what appears to be a number of reasonably expended hours on the tasks for which Plaintiffs seek this fee award. In this regard, it is well established that a "district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Without wading into the minutia of the seemingly countless phone conferences, meetings, and time spent performing various tasks, the undersigned will simply discuss one cogent example of how *some* of the time spent on this case was not reasonably expended.

Included in the 1,139.1 hours of work performed by Plaintiffs' counsel and encompassed in this fee request is a combined total of 177.5 hours spend on the extension appeal. However, as it turned out, the extension appeal amounted to little more than an utter waste of time. On January 25, 2019, the undersigned entered an order extending the settlement agreement. *See* Order of January 25, 2019 (dkt. 1122). Given that the undersigned has been the referral judge, and _not_ the presiding judge on this case, the undersigned had every expectation that any dissatisfied party would seek review of the extension order from Judge Wilken, the presiding judge. However, contrary to that expectation, approximately two weeks after the entry of the extension order, the Parties jointly filed a notice on February 8, 2019, stating that "for the purpose of clarifying that Magistrate Judge Illman's January 25, 2019 Order on Plaintiffs' Extension Motion is a final order subject to appellate review, the parties hereby provide notice that they mutually had consented to the finality of Magistrate Judge Illman's [Extension] order." *See* Joint Notice (dkt. 1129) at 2. Pursuant to this short-lived agreement between the Parties, Defendants filed a notice of appeal (dkts. 1126, 1130), and Plaintiffs filed their notice of cross appeal (dkt. 1131), causing the matter to be docketed in the appellate court while bypassing Judge Wilken entirely. Then, once the case was docketed in the appellate court, Plaintiffs – somewhat remarkably – adopted a position that stood in stark contrast to that which was expressed in their joint notice. As the Court of Appeals put it: "[t]he Prisoners argue that we cannot reach the merits of the appeals because the magistrate

7

judge lacked authority to enter a final extension order." *See Order of USCA* (dkt. 1309) at 8. The apparent insincerity of this contention was not lost on the appellate court as it noted that, "[t]o be sure, dismissing the appeals for lack of jurisdiction rewards the Prisoners' gamesmanship." *Id*. at 13. Nevertheless, the appeals court was left with little choice but to reluctantly note that, "[w]e agree and therefore dismiss the appeals for lack of jurisdiction." *Id*. at 8. For this reason, the presiding judge was directed to treat the extension order entered by the undersigned in January of 2019 as a report and recommendation, to entertain objections thereto, and then to issue a truly final and appealable order thereon. Of course, the Court of Appeals was correct, this was in fact nothing more than gamesmanship, and, this gamesmanship resulted in a great deal of wasted time and effort in briefing and arguing what turned out to be a nugatory appeal. It goes without saying that gamesmanship of this sort does not constitute a reasonable expenditure of time or effort as contemplated by the attorney fee provisions of the Settlement Agreement. Accordingly, the undersigned **RECOMMENDS** that Plaintiffs' fee request be **GRANTED in part** to the tune of the reduced sum of $281,473.06, in order to reflect a downward adjustment of 10%.

One matter remains that should be addressed. Plaintiffs note while they currently "do not seek a ruling on their right to a multiplier at this time," they repeatedly contend that they "are entitled to a multiplier," and that they "preserve the right to seek a multiplier at the appropriate time." *See* Pls.' Mot. (dkt. 1424) at 3 n.2. First, the undersigned will note that the time for arguing the propriety of their entitlement to a multiplier for the work performed in relation to *this* fee request is *now*, and there is no legitimate reason for the court to address a single fee request in a piecemeal fashion and on a nebulous timetable of Plaintiffs' choosing. Second, for the reasons stated below, a multiplier is simply not appropriate in this case, neither due to any purported complexity of the subject, nor due to the caliber of the work performed. Initially, it must be noted that there is a strong presumption that the lodestar figure is reasonable. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000). A modification of the lodestar is appropriate only in "rare" and "exceptional" cases supported by both "specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F. 3d 1041, 1045 (9th Cir. 2000). Nonetheless, a court may adjust

the lodestar upward or downward based on factors including (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "[T]he trial court is not required to include a fee enhancement to the basic lodestar figure" for these factors, "although it retains discretion to do so in the appropriate case." *Id*. at 1138. Plaintiffs bear the burden of proving a multiplier is warranted (*see id*.) and they have not established that a multiplier is warranted here. First, this case has not presented any novel or difficult legal questions. Second, although Plaintiffs' counsel successfully negotiated a settlement and then persuaded this court to extend the settlement agreement based on a simple showing of a series of continuing and systemic violations of prisoners' rights, (in light of the wasted time and effort due to the gamesmanship discussed above) counsel's asserted skill in obtaining these outcomes is more than appropriately factored into the PLRA-capped hourly rates. *See id*. at 1139 ("The factor of extraordinary skill, in particular, appears susceptible to improper double counting; for the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar."). Third, Plaintiffs' several attorneys (*see* list of attorneys at dkt. 1437-2 at 35) do not argue that this matter precluded them from taking on other employment. Accordingly, the undersigned **RECOMMENDS** a finding that the time for seeking a multiplier for this fee request was now, and that Plaintiffs have failed the establish their entitlement thereto.

Any party may file objections to this Report and Recommendation with the district court within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the district court's order.

**IT IS SO ORDERED.**

Dated: May 6, 2021

ROBERT M. ILLMAN
United States Magistrate Judge