UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TODD ASHKER, et al., <br> Plaintiffs, <br> v. <br> MATHEW CATE, et al., <br> Defendants. | Case No. 09-cv-05796-CW (RMI) <br><br> **ORDER RE: DISCOVERY DISPUTE** <br> Re: Dkt. No. 1490-3 |

Now pending before the court are two disputes presented in the form of a discovery dispute letter brief. *See generally* Ltr. Br. (dkt. 1490-3 *SEALED*). However, only one of the two disputes actually concerns discovery, the other dispute is something else entirely, something more akin to the substance of an enforcement motion. In short, for the reasons stated by Plaintiffs, their request for an additional 2.5 hours of deposition time for the questioning of a particular prison guard (attended with certain admonitions addressed to that witness and to defense counsel) is granted; while, for the reasons stated by Defendants, Plaintiff's request for the enforcement-type relief that has been shoehorned into this discovery dispute letter brief is denied.[1]

This is a class-action case brought on behalf of a class of California prisoners that resulted in a comprehensive settlement agreement wherein Defendants agreed to implement certain reforms intended to address the constitutional concerns raised in the operative complaint. The agreement provides for certain monitoring periods wherein the Parties would exchange documents and information such that Plaintiffs and the court can monitor and, if necessary, enforce

---

[1] Pursuant to Civil Local R. 7-1(b), the court finds that this matter is suitable for disposition without oral argument.

1  Defendants' compliance with the various provisions of the settlement agreement. Among other
2  aspects, certain matters pertaining to the monitoring and enforcement issues in this case have been
3  referred to the undersigned by the presiding judge. One such matter is the question of whether one
4  particular person's current housing situation (in a particular unit with fewer liberties and fewer, if
5  any, programming opportunities as compared to other units) is in fact legitimate and necessary, or
6  whether it is the product of Defendants' retaliation against that person (hereafter referred to the
7  "forthcoming enforcement motion."). In anticipation of preparing and filing the forthcoming
8  enforcement motion, Plaintiffs made certain discovery requests which this court granted over
9  Defendants' objections. As part of this pre-motion discovery, Plaintiffs have deposed a particular
10 prison guard (hereafter, "Guard") who has been designated as an expert by Defendants, and who
11 has produced an expert report. The essence of this dispute is simple – the deposition was left open
12 for various reasons and the parties now dispute the appropriate length and the substantive scope of
13 its continuation.

14 Plaintiffs seek to depose the Guard for another 2.5 hours, while Defendants suggest
15 limiting the continuation of the deposition to 1 hour. *See id*. at 6, 10. Part of the Parties' dispute is
16 founded on their differing interpretations as to the proper scope and subject matter limits that
17 might be permissible for this deposition. For example, a review of the Parties' letter brief and
18 attached materials indicates that Defendants believe that the Guard can only be questioned about
19 the information in his expert report. *See id*. at 5 (Defense Counsel: "I'm going to object to the
20 question to the extent it exceeds or seeks information beyond the scope of [the Guard's] retention
21 in this matter and seeks information about [the Guard's] day-to-day duties. The report speaks for
22 itself, and the question poses an incomplete hypothetical."); *see also id*. at 3 (Defense Counsel: ". .
23 . we can move on to other matters actually relevant to [the Guard's] report."). Furthermore, aside
24 from Defense Counsel's view about the limits on the scope of this deposition, the Guard himself
25 would frequently refuse to answer certain questions pertaining to imprisoned persons'
26 involvement in some other currently-pending case. *See id*. at 3-4 (The GUARD: "I would
27 respectfully decline answering any questions pertaining to any of the individuals that [are
28 involved] in that case . . . I'm not going to identify who I've spoke[n] to . . . I'm not going to

divulge any [Prison Gang] affiliate that I've spoke[n] to . . . [a]gain, the same courtesy I would extend to your client. I would not divulge who I've spoke[n] to."). Additionally, Plaintiffs also note that certain subsequent developments and revelations, all of which came to light after the Guard's deposition, necessitate the continuation of this deposition, if only for that reason. *See id*. at 5-6, n.3.

Much of the substance of the instant dispute is rooted in Defendants' objection to the Guard being questioned about anything falling "outside the scope of [the Guard's] duties as an expert, his report, and his expert opinion." *Id*. at 11. This objection is now **OVERRULED** and the undersigned holds that, while the scope shall not be unlimited, the Guard can also be questioned about matters going to his credibility in general, and matters relevant to the reliability of the opinions expressed in his report. Therefore, while Plaintiffs do not have leave to conduct a limitless fishing expedition into any and all matters within the Guard's knowledge, Plaintiffs will be permitted to ask any questions for which there is an articulable relevance to the Guard's credibility or to the reliability of his stated opinions. Anything less would hamstring Plaintiffs unfairly. Furthermore, Defendants are instructed to direct the Guard not to refuse to answer questions (as he did before) that fall within the permissible scope herein defined. This case has a protective order in place, and Plaintiffs' counsel are officers of this court; therefore, issues such as confidentiality, privacy, and institutional security concerns can be addressed through the provisions of the protective order. As such, the witness is not permitted to unilaterally decide what he will and will not answer on those bases. In the event that the Guard's intransigence continues at the continuation of this deposition, Plaintiffs are encouraged to bring that to the court's attention such that it can be appropriately addressed. Accordingly, in line with the scope of questioning herein described, Plaintiffs' request to re-open and continue the deposition of the Guard for an additional 2.5 hours is **GRANTED**.

Additionally, Plaintiffs seek an order from this court directing Defendants to allow a certain person (imprisoned in one particular prison unit) to enjoy certain privileges and liberties that are not available in that unit. *See id*. at 6-9. Clearly, this is not a discovery dispute. In fact, while not a complete overlap, this request goes a long way toward the relief that seems to be the

3

focus of the forthcoming enforcement motion. Despite the fact that some of Plaintiffs' suggestions in this regard appear compelling – as Defendants have pointed out, the settlement agreement in this case has not given this court unlimited powers of supervision and control regarding Defendants' administration of this state's prison system. Instead, the agreement provides for certain reforms coupled with monitoring and enforcement of those reforms through certain specified mechanisms such as document production and enforcement motions. *See generally id*. at 14-17. In this regard, Defendant's convincingly point out that if Plaintiffs believe that Defendants have violated the settlement agreement regarding this individual's privileges – or his housing situation – they should either file an ordinary enforcement motion as provided for in the settlement agreement, or "they should file their [forthcoming enforcement motion], prove retaliation, and argue that this Court under the settlement agreement can order CDCR to house [that person] in [another unit]." *Id*. at 16-17. Accordingly, Plaintiffs' request for an order directing Defendants' to provide the person in question with privileges and liberties associated with a unit other than that in which he is currently housed is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 28, 2021

ROBERT M. ILLMAN
United States Magistrate Judge

4