UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TODD ASHKER, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MATHEW CATE, et al.,<br><br>　　　　Defendants. | Case No. 09-cv-05796-CW   (RMI)<br><br>**ORDER RE: DISCOVERY DISPUTES, DISCOVERY CUT-OFF DATE, AND SETTING A BRIEFING SCHEDULE**<br><br>Re: Dkt. Nos. 1513-3 *SEALED* |

Now pending before the court is a jointly filed letter brief (dkt. 1513-3 *SEALED*) through which the parties dispute the propriety of certain discovery sought by Plaintiffs in support of their forthcoming motion that will argue that one particular class member's housing placement is the product of retaliation for participation in this action rather than being guided by legitimate penological concerns for individual or institutional security. The issues in dispute are relatively straightforward, but their resolution could nevertheless benefit from some context.[1]

**BACKGROUND**

By way of background, a few basic facts about this case should be noted. This is a class action case that became the product of a comprehensive settlement agreement six years ago (*see* dkt. 424) which resulted in widespread reforms in the policies governing Defendants' placement and retention of class members in security housing units. Thereafter, in January of 2019, Judge Wilken referred a discrete retaliation claim to be heard by the undersigned. *See Order of January 15, 2019* (dkt. 1118 *SEALED*) at 10. The retaliation claim was to be advanced, not by the entire

---

[1] Pursuant to Civil Local R. 7-1(b), the court finds that this matter is suitable for disposition without oral argument.

1  class, or even a number of class members, but by a single class member claiming that his
2  placement in a particular housing unit was the product of Defendant's retaliation against him for
3  his participation in this case, and that any contentions about the individual's safety and
4  institutional security were merely pretext. When the retaliation matter was referred to the
5  undersigned nearly three years ago, Judge Wilken ordered the production of certain discovery as
6  such: "[i]f there are any new determinations or investigations conducted relating to [this class
7  member's] placement, Defendants are hereby ORDERED to produce such records to Plaintiffs'
8  counsel within twenty-one days of this Order or within twenty-one days of when such document is
9  created." *Id*. This provision of Judge Wilken's order creates a continuing obligation with which
10 the undersigned presumes that Defendants are in compliance – principally because the now-
11 pending letter brief contains no complaints in that regard.
12           Following this, Plaintiffs twice sought to significantly expand the scope of discovery
13 underlying their forthcoming retaliation motion, and the undersigned granted the overwhelming
14 majority of those requests for substantially expanded document production as well as the
15 compelled depositions of various CDCR officials. *See generally Order of August 9, 2019* (dkt.
16 1203 *SEALED*); *see also Order of November 12, 2020* (dkt. 1396). Further, in the 2019
17 discovery order, the undersigned ordered the parties to "meet and confer in a good-faith effort to
18 streamline the discovery process and, no later than Friday, August 30, 2019, submit a joint
19 proposal regarding the timetable for completion of the discovery consistent with this order, as well
20 as proposed dates for the subsequent briefing schedule for the retaliation motion." *Order of August
21 9, 2019* (dkt. 1203 *SEALED*) at 8. No such joint proposal for a timetable to complete discovery,
22 or a jointly proposed briefing schedule, was ever submitted by the Parties. Now, nearly three years
23 has elapsed since Judge Wilken referred the retaliation motion to the undersigned and (as
24 described below) Plaintiffs still seek more discovery and still contend that establishing a briefing
25 schedule is premature. The undersigned disagrees and finds that the amount of time that has
26 passed since the referral of the retaliation motion, during which the Parties seem to have been
27 mired in a seemingly endless discovery process, is unreasonable. Therefore, the undersigned will
28 herein fix an imminent cut-off date for the discovery process, and the undersigned will establish a

firm briefing schedule for the retaliation motion.

## DISCUSSION

In November of 2020, the undersigned ordered certain depositions and certain document production in the nature of, "any emails sent or received by that person [to be deposed], as well as any notes taken or kept by that person that relate to or reference [the class member] in question." *Order of November 12, 2020* (dkt. 1396) at 3. Plaintiffs complain that notwithstanding this order, Defendants have only produced the emails and notes of the two pertinent CDCR employees that surround the class-member's 2017 housing placement review, and Plaintiffs contend that "[i]t is undisputed that [a particular CDCR staff member] performed this role for each of [the class-member's] subsequent DRB reviews as well . . ." Ltr. Br. (dkt. 1513-3 *SEALED*) at 2. Defendants contend that Plaintiffs are seeking an expansion of the scope of discovery previously ordered by the undersigned, and contend that acceding to Plaintiffs' demands would be unduly burdensome. *Id*. at 7-8. Defendants proposed a production of such emails associated with the proposed deposition witnesses, the prison warden and the correctional officer, for the periods: "during March 2018, August 2019, and from April 1, 2021 through June 30, 2021 . . . [because] [t]hese periods surround [the class-member's] housing reviews." *Id*. at 7. Defendants note that they proposed this compromise to Plaintiffs but were rebuffed. *Id.* The undersigned finds this compromise to be reasonable. Accordingly, to the extent that Plaintiffs seek the production of emails or notes beyond the scope of Defendants' compromise position described herein (to wit, email spanning 4 months on either side of each DRB review), that request is **DENIED** as overly broad, burdensome, and disproportional to the needs of the matter at hand, while Defendants' request to limit the scope of production for emails and notes to the time periods they have identified as being associated with the class-member's housing placement determinations is **GRANTED**.

Next, given that part of Defendants' reasoning for refusing to transfer this class-member to other types of housing units is their concern that doing so would imperil the class-member by exposing him to the risk of violence from the associates and confederates of a certain prison gang, Plaintiffs have asked the undersigned to compel Defendants to inform Plaintiffs about the details

3

of any prison units that are not currently housing affiliates and members of that prison gang – either so they can disclose this information to the class-member himself or (at least) to be able to make use of the information in the forthcoming retaliation motion. *See* Ltr. Br. (dkt. 1513-3 *SEALED*) at 3-4. Plaintiffs' justification for needing such information is dubious at best – they contend that the class member "is entitled to know *which* facilities did not house any [affiliates of a particular prison gang] as of the DRB's most recent decision so he can demonstrate to Judge Wilken that, for at least those specific facilities, Defendants had no legitimate safety concerns about his placement." *Id*. at 4 (emphasis in original). However, the undersigned finds this approach to be misguided. Plaintiffs seem to presume that this court can – by virtue of the settlement agreement in this case – usurp the day-to-day management of California's prison system by making housing decisions that are untethered to the strictures of the agreement itself. Or, to put it another way, Plaintiffs seem to be under the impression that this court can, in the abstract, simply overrule CDCR housing decisions whenever it sees fit. This approach is disagreeable because it seems to be oblivious of the mandate of Judge Wilken's referral which makes it incumbent on Plaintiffs to prove retaliation, and confirming whether or not there are any members of a particular prison gang in one or another prison unit is of questionable relevance to that endeavor. Indeed, Plaintiffs' seem to hope that this approach might yield a shaky and highly speculative sort of circumstantial evidence from which they hope to draw what the undersigned sees as an unreasonable inference, if even that. This is so because Plaintiffs' approach turns a blind eye to the notion that it is well within the realm of imagination that if one prison gang wanted to visit harm or violence upon a particular person, they could quite easily arrange for the deed to be done by a member of another gang through the payment of money or the owing of a reciprocal type of attack or some other type of bargained for arrangement. On the other hand, the undersigned is persuaded by Defendants' compelling arguments about both the irrelevance of this information, as well as Defendants' contentions about how producing this information (that is, listing the prison units, if any, where this particular gang does not have a foothold) would endanger institutional safety and security. *See id*. at 6-7. Thus, for the reasons articulated by Defendants, Plaintiffs' request to compel the production of this information is **DENIED**.

4

1   Lastly, as mentioned, two years ago the undersigned directed the Parties to "streamline the
2   discovery process and . . . submit a joint proposal regarding the timetable for completion of the
3   discovery . . . as well as proposed dates for the subsequent briefing schedule for the retaliation
4   motion." *See Order of August 9, 2019* (dkt. 1203 *SEALED*) at 8. At a status conference during
5   that same period, the undersigned warned the parties that the failure to arrive at a jointly proposed
6   briefing schedule would result in the court fixing its own schedule for briefing the retaliation
7   motion. Because an unreasonable amount of time has passed since then, the court will now direct
8   the Parties to adhere to the following schedule:

It is hereby **ORDERED** that:

(1) The discovery cut-off date shall be **December 15, 2021**.

(2) If any previously ordered depositions have not been undertaken by that date, those depositions shall be taken, if at all, no later than **January 19, 2022**.

(3) Plaintiffs' retaliation motion shall be due on or before **March 1, 2022**.

(4) Defendants' response in opposition shall be due on or before **April 18, 2022**.

(5) Plaintiffs' reply brief (if they chose to file one) shall be due no later than **May 9, 2022**.

(6) All papers filed in this regard shall strictly comply with the page limitations set forth in the court's Local Rules and no motions for excess pages will be entertained.

(7) Requests for filing Sur-Reply or Sur-Sur-Reply Briefs will not be entertained, therefore Plaintiffs are directed to refrain from filing evidence with their Reply Brief. Any evidentiary filings attached to the Reply Brief, or any otherwise non-conforming briefs will be stricken.

(8) Absent the most extraordinary circumstances, any requests to alter or amend this schedule will be denied.

(9) Lastly, counsel for the Parties are reminded of their professionalism obligations and are herewith expressly directed to refrain from littering their papers with scurrilous attacks leveled at the integrity and reputation of opposing counsel. Counsel for both sides have been guilty of this in the past, however, in the currently-pending letter brief, Plaintiffs' counsel have, in passing, accused opposing counsel of misleading the court (*see* Ltr.

Br. (dkt. 1513-3 *SEALED*) at 2 n.1); further, they have also alleged that Defendants' counsel have engaged in "deception," and "falsehoods about the facts of this case . . ." *Id*. at 4. The undersigned will remind counsel of their obligation to maintain an appropriate degree of decorum in their pleadings. An attorney's reputation for integrity is the very currency on which the business of law practice is conducted and the undersigned is losing patience with what is becoming a pattern and practice where the lawyers in this case tangentially accuse one another of such dishonesty in unrelated contexts and without even the provision of any concrete proof for such scandalous assertions. Counsel are warned that, going forward, this sort of bombast will no longer be overlooked.

**IT IS SO ORDERED.**

Dated: August 30, 2021

ROBERT M. ILLMAN
United States Magistrate Judge