IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD ASHKER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | Case No. 09-cv-05796 CW<br><br>**ORDER DENYING MOTION TO STAY**<br><br>(Re: Dkt. No. 1605) |

Now before the Court is Defendants' motion to stay the proceedings pending their appeal of this Court's order of February 2, 2022, which granted Plaintiffs' second motion to extend the settlement agreement (February 2 Order). Defendants argue that their appeal of the February 2 Order divested this Court of jurisdiction over "matters related to the appeal[.]" Docket No. 1605 at 2. Alternatively, Defendants contend that prudential grounds exist for staying the proceedings pending this appeal. Plaintiffs oppose the motion. For the reasons set forth below, the Court DENIES the motion.

I.   BACKGROUND

The procedural history of this class action is set forth in detail in the February 2 Order. *See* Docket No. 1579.

The parties entered into a settlement agreement (SA) in August 2015. *See* Docket No. 424-2. Paragraph 41 of the settlement agreement permits Plaintiffs to move for an extension of

the agreement and the Court's jurisdiction over this matter of not more than twelve months; to obtain the extension, Plaintiffs must demonstrate by a preponderance of the evidence that current and ongoing systemic violations of the Eighth or Fourteenth Amendments occur as alleged in the Second Amended Complaint, or the Supplemental Complaint, or as a result of reforms by the California Department of Corrections and Rehabilitation (CDCR) to its Step Down Program or the SHU policies contemplated in the agreement. *Id.* ¶ 41.

If the Court's jurisdiction and the settlement agreement are extended under paragraph 41, then "they shall both automatically terminate at the end of the extension period not to exceed 12 months and the case shall be dismissed unless Plaintiffs make the same showing described in Paragraph 41." *Id.* ¶ 43. The agreement permits Plaintiffs to seek to extend indefinitely the settlement agreement and the Court's jurisdiction so long as they make the requisite showing of ongoing and systemic constitutional violations described in paragraph 41, with each extension lasting no more than twelve months. *Id.* "[A]ny extension shall automatically terminate if plaintiffs fail to make the requisite showing described in Paragraph 41." *Id.*

The settlement agreement expressly provides that Defendants' obligations with respect to the production of documents and data shall continue during any extension of the settlement agreement under paragraph 41. *Id.* ¶ 44 ("To the extent that this Agreement and the Court's jurisdiction over this matter are extended beyond the initial twenty four-month period, CDCR's obligations and production of any agreed upon data and documentation to Plaintiffs' counsel will be extended for the same period.").

On November 20, 2017, Plaintiffs moved for an extension of the settlement agreement under paragraph 41 based on three independent categories of alleged systemic violations of the Due Process Clause of the Fourteenth Amendment, with each being sufficient to warrant an extension under paragraph 41: (1) Defendants' ongoing and systemic misuse of, and lack of accurate disclosures regarding, confidential information; (2) Defendants' ongoing and systemic failure to provide adequate procedural protections prior to the placement and retention of class members in the Restrictive Custody General Population (RCGP) based on demonstrated threats to inmates' personal safety; and (3) Defendants' ongoing and systemic retention of old gang

2

validations that could be relied upon for parole purposes.  Docket No. 898-4.  The Court referred this motion to the magistrate judge for a report and recommendation.  The magistrate judge concluded that Plaintiffs' motion to extend the settlement agreement should be granted, finding that Plaintiffs had satisfied their burden under paragraph 41 based on two of the three categories of alleged due process violations they advanced in their motion.  Docket No. 1122.

The parties appealed this order directly to the Ninth Circuit.  While their appeals were pending, the twelve-month extension of the settlement agreement went into effect; the extension began on July 15, 2019, and it ended on July 15, 2020.  *See* Docket No. 1471.  On August 3, 2020, the Ninth Circuit held that the magistrate judge's order on Plaintiffs' extension motion was not a final order under 28 U.S.C. § 636(c)(1).  *Ashker v. Newsom*, 968 F.3d 975 (9th Cir. 2020).  The court of appeals remanded the action to the undersigned "to consider construing the magistrate judge's extension order as a report and recommendation and afford the parties reasonable time to file objections."  *Id.* at 985.  In accordance with the Ninth Circuit's opinion, the Court construed the magistrate judge's order on Plaintiffs' extension motion as a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and permitted both sides to file objections to it.

Meanwhile, on December 15, 2020, Plaintiffs filed a second motion to extend the settlement agreement under paragraph 41 for a second twelve-month period based on the same three categories of alleged due process violations upon which their first extension motion was premised, as well as two new categories of alleged due process violations, namely (1) Defendants' systemic failure to ensure that confidential information in confidential memoranda is accurate and complete, and (2) Defendants' systemic failure to timely disclose to inmates a non-confidential summary of confidential information that could be relied upon by parole commissioners for the purpose of parole determinations.  Docket No. 1411.  The Court referred that motion to the magistrate judge for a report and recommendation.

On April 9, 2021, the Court adopted the magistrate judge's recommendation to grant Plaintiffs' first motion to extend the settlement agreement by twelve months under paragraph 41.  Docket No. 1440.  The Court held that the extension was warranted based on all three categories of due process violations advanced by Plaintiffs, not just the two that the magistrate judge had

3

1    found. The effect of the Court's April 9, 2021, order was to confirm that the twelve-month
2    extension of the settlement, which ran between July 15, 2019, and July 15, 2020, was justified by
3    the evidence that Plaintiffs presented in their first extension motion.

4    Defendants filed a notice of appeal with respect to the April 9, 2021, order on May 7,
5    2021. Docket No. 1455. That appeal is pending.

6    On July 12, 2021, the magistrate judge issued a report and recommendation with respect to
7    Plaintiffs' second extension motion. Docket No. 1497. The magistrate judge found that Plaintiffs
8    had not satisfied their burden under paragraph 41 based on any of the categories of alleged due
9    process violations they advanced in the second extension motion, and he recommended that the
10   Court deny the motion.

11   On February 2, 2022, the Court adopted in part and rejected in part the magistrate judge's
12   recommendations as to Plaintiffs' second extension motion. Docket No. 1579. The Court
13   concluded that Plaintiffs had met their burden under paragraph 41 as to each of the categories of
14   alleged due process violations they advanced, except with respect to alleged due process violations
15   arising out of hearing officers' reliability determinations as to confidential information they relied
16   upon in adjudicating disciplinary charges, and CDCR's failure to provide class members with
17   timely disclosures of confidential information in their files that could be used against them in
18   parole determinations. *Id.*

19   On February 24, 2022, the Court, at Defendants' request, clarified the February 2 Order to
20   indicate that the second twelve-month extension period will begin on the date that Defendants
21   make a complete production of the documents and data (1) that Defendants are required to
22   produce under paragraph 37 of the settlement agreement; (2) that the magistrate judge requires
23   Defendants to produce; and (3) that the parties agree Defendants must produce. Docket No. 1588.

24   On March 4, 2022, Defendants filed a notice of appeal with respect to the February 2
25   Order. Docket No. 1604. That appeal is pending.

26   **II.    DISCUSSION**

27   Defendants argue that (1) this Court was divested of jurisdiction over all proceedings that
28   would take place during the second extension period during the pendency of their appeal of the

4

February 2 Order because that order is a "final" decision under 28 U.S.C. § 1291 or should be treated as final under the collateral order doctrine; and (2) if this Court was not divested of jurisdiction, then the Court should exercise its discretion to stay the proceedings pending appeal.

### A. The Court Was Not Divested of Jurisdiction by Defendants' Appeal of the February 2 Order

#### 1. The Court Has the Authority to Implement and Enforce the February 2 Order and Any Provisions of the Settlement Agreement Triggered by It

A federal circuit court has jurisdiction over appeals from "final decisions" of the district courts. *See* 28 U.S.C. § 1291.

> A final decision is typically one by which a district court disassociates itself from a case. If non-final decisions were generally appealable, cases could be interrupted and trials postponed indefinitely as enterprising appellants bounced matters between the district and appellate courts. Costs would be inflated by such a multiplication of proceedings, and district courts would be inhibited in their ability to manage litigation efficiently[.] Moreover, piecemeal appeals would undermine the independence of the district judge.

*SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 723 (9th Cir. 2017) (internal citations and quotation marks omitted).

> In limited circumstances, however, appeals may be allowed before a final judgment. For example, a district court may certify an order for an immediate appeal. *See* 28 U.S.C. § 1292(b). Alternately, some statutes and rules allow an early appeal of decisions on certain specific issues. Relief from a court order may also be obtained in extraordinary circumstances through a writ of mandamus.

*Id.* (final citation omitted). Alternatively, "a piece of the case may become effectively 'final' under the collateral-order doctrine, even though the case as a whole has not ended." *Id.* (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). The collateral order doctrine is discussed in more detail in the next section.

Under the judicially-created divestment doctrine, the filing of a notice of appeal divests the district court of jurisdiction "over the matters being appealed." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (*Sw. Marine*). The purpose of this doctrine is to "promote judicial economy and avoid the confusion that would ensue from having the same issues

5

before two courts simultaneously." *Id.* (citation omitted).

> This rule is not absolute. For example, a district court has jurisdiction to take actions that preserve the status quo during the pendency of an appeal, but may not finally adjudicate substantial rights directly involved in the appeal. Absent a stay or supersedeas, the trial court also retains jurisdiction to implement or enforce the judgment or order but may not alter or expand upon the judgment.

*In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000) (internal citations and quotation marks omitted).

The February 2 Order is not a final decision within the meaning of § 1291 because, instead of ending the litigation, it extended the parties' obligations under the settlement agreement and the Court's jurisdiction over this matter for another twelve months pursuant to paragraph 41. *Cf. SolarCity Corp.*, 859 F.3d at 723 ("A final decision is typically one by which a district court disassociates itself from a case.") (citation omitted). Accordingly, the appeal of the February 2 Order is interlocutory.[1]

Regardless, the Court is not precluded from enforcing or implementing the February 2 Order, as well as the terms of the settlement agreement that are automatically triggered by the February 2 Order, such as the provisions of the settlement agreement that require Defendants to continue to produce documents and data to Plaintiffs for the duration of the second twelve-month extension period. *See In re Padilla*, 222 F.3d at 1190 (a notice of appeal does not preclude a court from implementing or enforcing the order on appeal so long as it does not "alter or expand" it); *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980) ("[P]ersons

---

[1] Defendants cite *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1065 (9th Cir. 2010) for the proposition that the February 2 Order is a post-judgment order that must be construed as a final decision under § 1291. *Armstrong* is inapposite. There, the Ninth Circuit construed as a final decision a post-judgment order that was entered in the remedial phase of the litigation to enforce a permanent injunction; the court of appeals did so, in relevant part, because it was "unclear that there would be any future opportunity for [the parties] to appeal," as the remedial phase of the action had no definite endpoint. Here, by contrast, there is a temporal endpoint to the litigation, because the Court's jurisdiction is governed by paragraph 43. Under that paragraph, the Court's jurisdiction will end at the conclusion of the second twelve-month extension period authorized under paragraph 41, unless Plaintiffs make the requisite showing under paragraph 41 for a third time.

6

subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.").

*Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990), is instructive. There, the Ninth Circuit held that an appeal of an interlocutory order denying a motion to compel arbitration did not divest the district court of jurisdiction to enter subsequent orders. The court of appeals distinguished orders and actions by the district court that involve "moving the case along consistent with its view of the case as reflected in its order denying arbitration," which are within the district court's jurisdiction pending appeal, from orders and actions that would effectuate "a change in the result of the very issue on appeal," which fall outside of the district court's jurisdiction pending appeal. *Id.* at 1411-12 (emphasis added). The latter are inappropriate because they would force the court of appeals to "deal[] with a moving target." *Id.*

Here, enforcing the February 2 Order and the terms of the settlement agreement triggered by it is permissible, because doing so would not alter or modify the matters determined in the February 2 Order, namely, whether Plaintiffs met their burden to show that the second twelve-month extension was warranted. *See id.*; *cf. McClatchy Newspapers v. Central Valley Typo. Union No. 46*, 686 F.2d 731, 735-36 (9th Cir. 1982) (holding that it was error for the district court to modify the judgment being appealed while the appeal was pending).

Defendants cite *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) and *Doe v. Trump*, 957 F.3d 1050, 1068-69 (9th Cir. 2020) for the proposition that the Court should find that Defendants' appeal of the February 2 Order divested it of jurisdiction over this litigation on the basis that the February 2 Order "does alter and expand the status quo of the settlement agreement." *See* Docket No. 1613-0 at 3. Defendants' reliance on these authorities is misplaced. Neither case addresses the divestment doctrine or the circumstances under which an order must be construed as final under § 1291. The authorities are inapposite because they address the question of whether an order granting a preliminary injunction sufficiently preserved the relevant positions of the parties until a trial on the merits could be held. *See Tanner*, 316 F.2d at 808 (reversing grant of preliminary injunction in relevant part because the preliminary injunction failed to "preserve the status quo ante litem pending a determination of the action on the merits");

7

*Doe v. Trump*, 957 F.3d at 1068-69 (denying motion for emergency stay of order granting preliminary injunction in relevant part because the preliminary injunction sufficiently preserved the status quo by enjoining the implementation of a presidential proclamation that would have significantly changed immigration policy).

Further, to the extent that Defendants contend that allowing the second extension period to proceed would contravene the divestment doctrine because it would result in "expanding and altering" their document production obligations under the settlement agreement, *see* Docket No. 1613-0 at 3-4, the Court is not persuaded. As discussed above, the relevant inquiry under the divestment doctrine is whether the district court's actions after a notice of appeal has been filed would expand or alter the matters decided in the order on appeal such that the court of appeals would be forced to deal with a moving target. Here, allowing the second extension period to proceed during the appeal of the February 2 Order would not expand or alter the findings or conclusions in the February 2 Order, which, as discussed above, pertain to whether Plaintiffs made the requisite showing under paragraph 41 to extend the settlement agreement for a second time. Whether Defendants' production obligations during the second extension period change relative to the first extension period has no bearing on the question of whether Plaintiffs made the requisite showing under paragraph 41 to extend the settlement agreement for a second time. Accordingly, a change in Defendants' production obligations during the second extension period would not expand or alter the matters addressed in the February 2 Order.

    **2. The Collateral Order Doctrine Does Not Preclude the Court from Enforcing the February 2 Order and Any Provisions of the Settlement Agreement Triggered by It**

In the alternative, Defendants contend that this Court was divested of jurisdiction to enforce the February 2 Order and any matters arising therefrom on the ground that their appeal of that order falls within the collateral order doctrine, which permits an interlocutory order to be treated as "final" for the purpose of permitting an immediate appeal under 28 U.S.C. § 1291.

The collateral order doctrine is "best understood" as a "practical construction" of "the final decision rule laid out" in 28 U.S.C. § 1291. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (citation and internal quotation marks omitted). It permits a court of appeals to

"treat[] as final" an interlocutory order so that it can be immediately appealed under § 1291. *Id.* (citation and internal quotation marks omitted).

Here, even if it were the case that the February 2 Order is immediately appealable under the collateral order doctrine, this would not compel a finding that the Court is divested of jurisdiction to enforce that order or any provisions of the settlement agreement that are triggered by it. Under *Britton*, discussed above, the Court continues to have jurisdiction to take actions that involve "moving the case along consistent with its view of the case" as reflected in the February 2 Order, so long as such actions do not effectuate "a change in the result of the very issue on appeal," namely the question of whether Plaintiffs met their burden to show that the second extension of the settlement agreement under paragraph 41 is warranted. *See* 916 F.2d at 1411-12; *see also Nascimento v. Dummer*, 508 F.3d 905, 910 (9th Cir. 2007) (relying on *Britton*, 916 F.2d at 1412, to support the proposition that an appeal of an interlocutory order under the collateral order doctrine would "divest[] the district court of jurisdiction over the [issue on appeal] and would not . . . affect[] its jurisdiction over other matters in the case"). Enforcing the February 2 Order or any terms of the settlement agreement triggered by it would not affect the issue of whether Plaintiffs satisfied their evidentiary burden as to the second extension; accordingly, the Court is not divested of jurisdiction to proceed with such actions.

**B.   A Stay of the Proceedings Pending Appeal Is Not Warranted**

The Court now turns to Defendants' request for a stay of the proceedings pending their appeal of the February 2 Order.

A request for a stay calls for the "consideration of four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citations and internal quotation marks omitted).

Courts evaluate these factors on a continuum. *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008). "At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of

9

irreparable injury." *Id.* at 1115 (citation and internal quotation marks omitted). "At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Id.* at 1116 (citation and internal quotation marks omitted). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (citation and internal quotation marks omitted).

"A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34 (citations and internal quotation marks omitted).

Here, Defendants have failed to meet their burden to show that a stay is warranted.

As to the first factor, the likelihood of success on the merits, Defendants contend that they have a "substantial case for relief" on appeal because the magistrate judge found that Plaintiffs had not shown ongoing and systemic due process violations of any kind and recommended denying Plaintiffs' second extension motion. Docket No. 1605 at 11. They also argue that they raise "serious legal questions" as to "the [Court's] interpretation of the settlement agreement and the proper due process standard to apply," and as to whether the Court erred in finding that class members have a liberty interest in avoiding RCGP retention under paragraph 27 of the settlement agreement.[2] *Id.* at 12-13. To prevail on appeal, Defendants must show that *none* of the categories

---

[2] Defendants argue that the "Ninth Circuit's decision disagreeing with this Court's interpretation of the settlement agreement's scope" in *Ashker v. Newsom*, 968 F.3d 939 (9th Cir. 2020) supports a finding that the Court's interpretation of the settlement agreement in the February 2 Order was erroneous. *See* Docket No. 1613-0 at 6-7. The Ninth Circuit opinion that Defendants cite has no bearing on the issues discussed in the February 2 Order. That opinion resolved appeals of two orders issued by this Court that granted Plaintiffs' motions to enforce paragraphs 25 and 28 of the settlement agreement; such motions were premised on alleged breaches of those paragraphs based on the amount of time that prisoners transferred from security housing to the general population were forced to spend in their cells and the limitations on contact with other inmates that inmates on walk-alone status experienced. Neither of those paragraphs of the settlement agreement was at issue in Plaintiffs' second extension motion or in the February 2 Order.

10

of alleged due process violations that the Court relied upon in granting Plaintiffs' second extension motion constitutes a proper ground for extending the settlement agreement. But Defendants have not shown any likelihood that they will be able to do so, much less that they have a "substantial case for relief on the merits" on appeal with respect to any of those categories. *See Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011) (holding that, "in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits"). In their motion for a stay, Defendants repeat the same arguments that this Court already considered and rejected in the February 2 Order. For the same reasons discussed at length in the February 2 Order, the Court finds that Defendants have failed to show any meaningful likelihood that they will succeed on appeal with respect to any of the categories of due process violations that the Court found justified the second extension of the settlement agreement.[3] *Nken*, 556 U.S at 434 ("It is not enough that the chance of success on the merits be better than negligible.") (citation and internal quotation marks omitted).

Because Defendants have not shown any likelihood of success on the merits on appeal, to justify a stay, Defendants' showing of irreparable harm must be very strong. *See Golden Gate*, 512 F.3d at 1116 ("[T]he required degree of irreparable harm increases as the probability of success decreases.") (citation and internal quotation marks omitted).

Defendants argue that they will suffer irreparable harm absent a stay because "(1) the bell of producing highly confidential documents—many unredacted—cannot be unrung, placing inmates, their families, and staff lives at serious risk; (2) they lack a timely and adequate legal remedy to challenge the [February 2] order; (3) exorbitant litigation costs from extended

---

[3] Defendants' failure to show any likelihood that they will succeed on appeal distinguishes the circumstances here from those that supported this Court's grant of a motion to stay pending appeal in *McArdle v. AT&T Mobility LLC*, No. C 09-1117 CW, 2010 WL 2867305, at *3 (N.D. Cal. July 20, 2010). In that case, the Court granted a motion to stay pending the appeal of a denial of a motion to compel arbitration in relevant part because the movant had shown that recent "actions" by the Supreme Court "raised substantial questions" as to whether arbitration agreements barring class-wide arbitration could be enforced; the Court's denial of the motion to compel arbitration had been predicated on a finding that such arbitration agreements were unenforceable and the recent Supreme Court actions cast doubt on the validity of that ruling. *Id.* at *3-4. Here, by contrast, Defendants have not raised serious questions as to the validity of the Court's findings and conclusions in the February 2 Order.

11

monitoring have been and will be incurred and cannot be recovered if Defendants prevail on appeal;" and (4) the Court may grant "a number of enforcement remedies," which could alter CDCR policies and regulations and impose significant financial and administrative burdens on Defendants. *See* Docket No. 1605 at 14-20.

Defendants' first argument that having to produce sensitive documents and information to Plaintiffs during the second extension period would cause them or others irreparable harm is unconvincing. The production of documents and data in this action is governed by a protective order that protects against the disclosure of documents and information to unauthorized persons. *See* Protective Order, Docket No. 182. At least one court in this district has declined to find that the party moving for a stay would suffer irreparable harm because of production obligations where, as here, the production of sensitive documents and information is governed by a protective order. *See Nikon Corp. v. GlobalFoundries U.S., Inc.*, No. 17-MC-80071-BLF, 2017 WL 4865549, at *2 (N.D. Cal. Oct. 26, 2017) (declining to find that the production of sensitive information would cause irreparable harm to party moving for a stay in relevant part because "any disclosure would be subject to the protective order issued in this case"). The Court is persuaded by this reasoning and adopts it to reach the same conclusion here. That inadvertent disclosures of documents or information could take place as a result of "human error" notwithstanding the protective order does not compel a finding of irreparable harm absent a stay, because that risk exists in any litigation that involves the production of sensitive documents or information.

Defendants' second argument that the February 2 Order will "evade appellate review" in the absence of a stay, Docket No. 1605 at 18-19, also is unpersuasive. Defendants have already filed a notice of appeal with respect to that order and the appeal is pending. Thus, the February 2 Order will not "evade" appellate review. That the parties' obligations under the settlement agreement, and the Court's jurisdiction over this action, must continue during a second twelve-month extension period while the appeal is pending does not compel a finding that Defendants will suffer irreparable harm absent a stay, because irreparable harm cannot arise from contractual terms to which Defendants agreed. As noted, the settlement agreement provides that the parties' obligations and the Court's jurisdiction will continue during any twelve-month extension period

authorized pursuant to paragraph 41.  The settlement agreement does not contemplate pausing the parties' obligations and the Court's jurisdiction during any such extension period in the event that an order granting an extension under paragraph 41 is appealed.  Thus, allowing the extension period to proceed during the pendency of the appeal of the February 2 Order would be consistent with the contractual terms to which the parties agreed.  Defendants cite no authority in which a court granted a motion to stay pending appeal on the basis that continued litigation would cause irreparable injury to the moving party even though the moving party contractually agreed to continued litigation in the event that the court made a finding described in the contract.[4]

Defendants next argue that the litigation expenses they will have to incur during the second extension period will cause them irreparable harm.  Courts, however, routinely hold that litigation expenses do not constitute irreparable harm of the type that would warrant a stay.  *See, e.g.*, *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 2293221, at *4 (N.D. Cal. June 8, 2011) (collecting cases).  Further, the litigation expenses at issue here arise out of contractual terms to which Defendants agreed.[5]  As such, the litigation expenses that Defendants

---

[4] The authorities that Defendants cite for the proposition that the proceedings should be stayed pending appeal are inapposite.  None involved a settlement agreement or other contract that required continuing the litigation if one of the parties made a requisite showing defined in the contract.  *See Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986) (granting a motion to stay the extradition of the movant from the United States to another country pending appeal); *Gray v. Golden Gate Nat'l Recreational Area*, No. 08-0722, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011) (granting motion to stay order granting class certification pending appeal).

[5] This distinguishes the facts here from those in the non-binding cases that Defendants cite for the proposition that litigation expenses are a relevant consideration when determining irreparable harm in the context of a motion to stay pending appeal.  In the cases that Defendants cite, courts considered the expense or burden of continued litigation in district court as a factor weighing in favor of staying an action pending appeal of a denial of a motion to compel arbitration.  These courts recognized that the contract requiring arbitration would have reduced or eliminated the burden of litigating in district court, and they reasoned that the movants could suffer irreparable harm if the litigation in district court were not stayed, as that could deprive the movants of some of the benefits of the contract containing the arbitration clause.  *See, e.g.*, *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1034 (N.D. Cal. 2015) (granting motion to stay non-discovery-related activity in district court pending appeal of denial of motion to compel arbitration in relevant part because not staying such activity could cause the movant to potentially lose some of the contractual benefits "it had bargained for"); *Pokorny v. Quixtar Inc.*, No. 07-00201 SC, 2008 WL 1787111, at *2 (N.D. Cal. Apr. 17, 2008) (granting motion to stay pending appeal in part because not staying the action could result in the movants losing some of the contractual benefits they bargained for).  Here, as discussed above, the settlement agreement requires that the parties' contractual obligations and, by implication, any resulting litigation

13

may incur during the second extension period cannot be said to constitute irreparable harm. That the settlement agreement, according to Defendants, "provides no clear recourse for Defendants to recover any wrongfully incurred attorney fees and costs that Defendants are obligated [to incur]," Docket No. 1605 at 17, does not alter this conclusion, because the absence of any "clear recourse" for recovering fees is consistent with the terms to which Defendants agreed.

Finally, Defendants argue that they will suffer irreparable harm because the Court will "likely grant" enforcement motions or motions for certain remedies if Plaintiffs file them. Defendants argue that these possible actions by the Court would "interfer[e] with day-to-day operations that should be left to the discretion of prison officials" and would impose financial and administrative burdens on Defendants. *See* Docket No. 1605 at 19. The Court cannot find irreparable harm based on requests or rulings that have not yet been made. Additionally, in the event that Plaintiffs brought any enforcement motions or motions for remedies, Defendants could attempt to make a showing at that time that a stay of the implementation of any remedies or relief requested by Plaintiffs is warranted.

In light of the foregoing, the Court finds that Defendants have not shown that they are likely to suffer any irreparable harm absent a stay. This is sufficient to deny Defendants' motion. *See Leiva-Perez*, 640 F.3d at 965 ("[I]f the petitioner has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors.").

The remaining factors, the likelihood of injury to Plaintiffs if a stay is issued and the public interest, also weigh against granting a stay. The Court finds that the interests of Plaintiffs would be served by the efficient and effective provision of constitutional due process to California inmates. The recent findings in the February 2 Order, and the evidence proffered by Plaintiffs in support of their second extension motion, suggest that significant and systemic due process violations may be ongoing. Staying this litigation while the appeal is pending, therefore, could

---

expenses, continue in the event that the Court finds that Plaintiffs made the requisite showing under paragraph 41. Thus, any litigation expenses incurred during the second extension period were a part of Defendants' bargain and cannot be said to constitute irreparable harm.

result in further due process violations that the settlement agreement was intended to redress and prevent. That individual prisoners may have the ability to file individual lawsuits or grievances on their own behalf does not change this conclusion, as individual lawsuits and grievances are less likely to challenge and obtain redress for the systemic due process violations discussed in the Court's February 2 Order. The Court also finds that enforcing the terms of the settlement agreement, which provide that the parties' obligations and the Court's jurisdiction continue for an additional twelve months if the Court finds that Plaintiffs made the requisite showing under paragraph 41, would be consistent with public policy that favors settlement agreements. *See Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy.") (citation and internal quotation marks omitted).

Defendants' contention that a stay would promote judicial economy is flawed, because it presupposes that the findings and conclusions in the February 2 Order were erroneous. For the reasons discussed above, Defendants have not shown that they have any likelihood of succeeding in their appeal of the February 2 Order.

In light of the foregoing, the Court DENIES Defendants' motion to stay the proceedings pending the appeal of the February 2 Order.

### III.   CONCLUSION

For the reasons set forth above, the Court concludes that it is not divested of jurisdiction over the enforcement of the February 2 Order and any provisions of the settlement agreement triggered thereby by virtue of Defendants' appeal of the February 2 Order. The Court declines to exercise its discretion to stay the enforcement of the February 2 Order pending the appeal.

IT IS SO ORDERED.

Dated: April 4, 2022

CLAUDIA WILKEN
United States District Judge