UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TODD ASHKER, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>MATHEW CATE, *et al.*,<br><br>　　　　　Defendants. | Case No.  09-cv-05796-CW (RMI)<br><br>**ORDER RE: PENDING RETALIATION MOTIONS, AND ASSOCIATED EVIDENTIARY MOTIONS**<br><br>Re: Dkt. Nos. 1591, 1601, 1663-3, 1667 |

Now pending before the court are two unrelated enforcement motions that allege certain retaliatory acts on Defendants' part by virtue of two individual class-members' activism and involvement in this case; and, as to one of those motions, Plaintiffs have filed two separate evidentiary motions (one of which seeks additional discovery, while the other seeks the exclusion of an expert report on which Defendants have based some of their arguments). Due to specific concerns regarding the safety of the two individual class-members, as well as more general concerns for institutional security, the Parties' arguments and evidence have been filed under seal; and, given that this order will be filed publicly, the order will venture in large part to incorporate the Parties' arguments by reference and citation rather than to narrate those details here. Also, pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the undersigned finds that the above-mentioned matters are adequately briefed and suitable for disposition without oral argument. For the reasons described herein, Plaintiffs' motions are denied.

As to the first class-member's (hereafter, "Prisoner-1") retaliation motion (dkt. 1594-2 *SEALED*), this matter was referred to the undersigned in January of 2019 (*see* dkt. 1118 *SEALED*) for resolution and the parties were instructed to "file briefs pursuant to a schedule to be determined by" the undersigned. *Id*. at 10. The referral order also provided that "[i]f there are any new determinations or investigations concluded relating to [Prisoner-1's] placement, Defendants are hereby ordered to produce such records to Plaintiffs' counsel within twenty-one

days of this Order or within twenty-one days of when such document is created." *Id*. Following that referral, along with its establishment of a narrow scope of discovery, the undersigned twice expanded the scope of that discovery substantially. *See* Order of August 9, 2019 (dkt. 1203 *SEALED*), and Order of November 12, 2020 (dkt. 1396). Thereafter, on August 30, 2021, when it appeared to the undersigned that the discovery period for Prisoner-1's retaliation motion seemed to be dragging on for too many years, the undersigned finally imposed a discovery cutoff date and established the briefing schedule that had been contemplated in the original referral order. *See* Order of August 30, 2021 (dkt. 1516) (establishing a discovery cutoff date and setting a firm briefing schedule for Prisoner-1's retaliation motion). In connection with Prisoner-1's retaliation motion, Plaintiffs and Defendants have presented a jointly-filed letter brief setting forth a discovery dispute that asks (from Plaintiffs' perspective) whether the establishment of a discovery cutoff date and the setting of a briefing schedule by the undersigned has "supplanted" the district judge's order "requiring CDCR to produce documents relating to each of [Prisoner-1's] housing reviews," presumably into perpetuity. *See* Ltr. Br. (dkt. 1663-3 *SEALED*) at 2. The undersigned does not see any need for extensive discussion on this issue. When Judge Wilken referred this matter to the undersigned, and instructed the Parties to file briefs pursuant to a schedule to be determined by the undersigned (while also providing for limited preliminary discovery by Plaintiffs), Plaintiffs' interpretation of the interaction of those two provisions, as permitting permanent discovery into perpetuity (even beyond the briefing schedule for which that discovery was afforded in the first place) is disagreeable. Instead, the undersigned interprets those two provisions – harmoniously with one another – such that Plaintiffs were afforded preliminary discovery on a limited topic, subject to a briefing schedule that would be established by the undersigned. The undersigned finds that inherent in the establishment of that briefing schedule is a discovery cutoff. Therefore, for that reason, as well as for the reasons expounded by Defendants (*see id*. at 4-6), Plaintiff's request for further discovery in support of Prisoner-1's retaliation motion, which was referred *years ago* and that has already been fully briefed and is ripe for decision, is **DENIED**. If Plaintiffs wish to avail themselves of still further discovery in the event that they decide to seek review of this order (as they have so indicated – *see id*. at 3), they are free

1    to renew their request for more discovery before the presiding judge when seeking such review.

2          A second threshold matter to be considered in connection with Prisoner-1's retaliation

3    motion is Plaintiffs' motion to exclude the expert report of a prison guard which Defendants

4    maintain is "important for understanding the specialized issues in this case, including the rules of

5    [a particular] prison gang and the implication of violating those rules: the actual reason [Prisoner-

6    1] was kept in restricted housing." *See* Defs.' Opp. (dkt. 1626-1 *SEALED*). The gist of

7    Plaintiffs' argument about this report is: that the prison guard is not a suitable expert witness

8    because that person is a CDCR employee; that the guard's opinion to the effect that Prisoner-1

9    cannot be housed outside of restrictive housing because of safety concerns is nothing more than a

10   predetermined conclusion in search of evidentiary support; that the guard ignored contrary

11   evidence; that the conclusion was unreliable because it was not based on sufficient facts or data,

12   and that it did not follow any discernible methodology; that the source material was unreliable

13   because the opinion rested – at least in part – on confidential memoranda; and, that the report is

14   unreliable because its results are not replicable. *See* Pls.' Mot. (dkt. 1589-2 *SEALED*) at 2-3, 5-

15   11. In short, Plaintiffs suggest that the report should be excluded because it is unreliable and

16   irrelevant. *Id*. at 3.

17         Defendants then note that: Plaintiffs have not challenged the guard's qualifications as an

18   expert on the particular prison gang in question; that the guard's testimony is important to

19   understanding the issues surrounding the prison gang in question, including the dangers posed to

20   Prisoner-1 by that gang's perception that Prisoner-1 has violated the gang's rules – giving rise to

21   what Defendants' contend to be the non-retaliatory reason that Prisoner-1 must be housed in a

22   restrictive setting such as to effectively guarantee his safety from violence at the hands of that

23   gang. *See* Defs.' Opp. (dkt. 1626-1 *SEALED*) at 5. Noting that the guard's expert report

24   regarding this prison gang's rules and culture can help the court understand what is not scientific

25   or technical but nevertheless specialized knowledge – Defendants provide a wealth of citations

26   showing decades of authority for courts admitting expert testimony about gang rules and practices.

27   *Id*. at 6-7. Defendants then set forth the support for the guard's opinion being based on extensive

28   penological experience and institutional knowledge. *Id*. at 8-9. Lastly, Defendants correctly point

out that many of Plaintiffs' complaints about the report are more properly addressed to the weight of the evidence rather than its admissibility. *Id*. at 9-11. In short, for all the reasons expounded by Defendants (*see id*. at 5-11) the court finds that this testimony – regarding gang rules and practices – is indeed the sort of specialized knowledge that will assist the undersigned in determining the facts that are at issue in Prisoner-1's retaliation motion; that the testimony is based on sufficient data for present purposes; that it is the product of reliable methods and principles given the present context (whether or not the assigned housing of Prisoner-1 was based on legitimate penological concerns); and, that the author of the opinion reliably applied those principles and methods to the facts of this case – as contemplated by F.R.E. 702. Accordingly, Plaintiffs' request to strike the report is **DENIED**.

Turning to the merits of Prisoner-1's retaliation motion, Plaintiffs contend that Prisoner-1's housing placement in restrictive housing is retaliatory and based on Prisoner-1's participation in this case rather than being based on legitimate penological reasons – essentially, Plaintiffs contend that Defendants' stated concerns for Prisoner-1's safety are mere pretext and that his housing placement is pure retaliation for having participated in activism and litigation against Defendants. *See generally* Pls.' Mot. (dkt. 1574-2 *SEALED*) at 9-33. Plaintiffs' case for retaliation calls for a great deal of inference and deduction on the court's part – all of which the undersigned finds to be unreasonable and unwarranted. The gist of the support for Plaintiffs' retaliation argument includes the following background: a narration of Prisoner-1's involvement in this litigation (*id*. at 9-10); a description of Prisoner-1's past involvement with prison officials dealing with Prisoner-1's own concerns for the safety of his loved one(s) and his efforts to communicate with them by choosing to "enter the debriefing process," while claiming that he reportedly "had no real intention of debriefing" (*id*. at 10-11); allegations that prison staff then spread false rumors (which are suggested to have come to the attention of his former confederates in a particular prison gang) about Prisoner-1's attempted or desired cooperation with prison gang investigations (*id*. at 13, 18, 21-22, 26, 27-28, 30, 32); a lengthy history of back-and-forth decisions by various prison authorities regarding concerns – or, sometimes, the lack thereof – for Prisoner-1's safety if not kept in restrictive housing (*id*. at 10-11, 14-18, 19-21); and, the mixed results from numerous safety

investigations by various prison authorities concerning the existence of threats to Prisoner-1's safety (*id*. at 11-14). By way of argument, Plaintiffs contend that Prisoner-1's placement in restrictive housing constitutes an adverse action (*id*. at 21-22); that his constitutionally protected conduct is causally connected to the adverse action that placed Prisoner-1 in restrictive housing (*id*. at 22-27); and, that Prisoner-1's placement in restrictive housing has caused substantial harm due to having been undertaken without a valid penological purpose (*id*. at 27-30). Lastly, Plaintiffs once again ask that Defendants' failure to retain certain records constitutes willful spoliation of evidence warranting an adverse inference. *See id*. at 31. By way of remedy, Plaintiffs ask for injunctive relief, such that would constitute overruling CDCR's safety concerns for Prisoner-1 while ordering CDCR to re-house that person in a general population unit somewhere within the state's prison system. *See id*. at 31-33.

First, for the reasons stated by Defendants (*see* Defs.' Opp. (dkt. 1627-1 *SEALED*) at 28-29, n. 12), Plaintiffs' argument that Defendants' failure to promulgate a policy to preserve recordings used to generate confidential memoranda entitles Plaintiffs to an adverse inference that automatically proves Prisoner-1's retaliation claim is without merit. Because the undersigned finds that there has been no willful spoliation here, and for the reasons stated by Defendants (*see id*.), Plaintiffs' request for an adverse evidentiary inference is **DENIED**. Second, the undersigned agrees with Defendants that none of the "allegedly retaliatory actions of which [Plaintiffs] complain [were] taken because of [Prisoner-1's] protected conduct, [or] that [Prisoner-1's] housing decisions failed to advance legitimate penological goals, or that CDCR staff spread rumors about [Prisoner-1]." *See generally id*. at 18-30. In short, the undersigned is generally persuaded by Defendants' arguments because the undersigned is of the opinion that Plaintiffs have failed to demonstrate retaliatory animus, or frankly any motivation other than legitimate penological concerns, for Prisoner-1's housing assignment (as meticulously set forth in Defendants' brief in opposition). *See generally* dkt. 1627-1 *SEALED* at 6-30. To put it in Defendants' words, "CDCR's assessments of threats to [Prisoner-1's] life all stem from [Prisoner-1's] violation of [a prison gang's] rules for which there are deadly consequences[;] Plaintiffs conflate their disagreement with CDCR's assessments with unconstitutional retaliation, despite no

5

1  evidence of any action taken because of [Prisoner-1's] protected conduct . . . [instead,] by
2  requesting to debrief, [Prisoner-1] placed [himself or herself] in danger of being targeted for
3  assault or murder by the [prison gang in question]." *See id*. at 6.
4      Additionally, the gravity of this situation should not go without mention as it likely
5  implicates matters of life and death. In such circumstances, the undersigned believes that it is
6  imperative to tread carefully as a wrong decision could result in Prisoner-1's murder. As the
7  undersigned has pointed out before, running a prison system is perhaps unlike any other endeavor
8  in modern society if only because, pursuant to the Eighth Amendment, prison officials are charged
9  with "tak[ing] reasonable measures to **_guarantee_** the safety of the inmates." *Hudson v. Palmer*,
10 468 U.S. 517, 526-27 (1984) (emphasis added); *see also DeShaney v. Winnebago County*, 489
11 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there
12 against his will, the Constitution imposes upon it a corresponding duty to assume some
13 responsibility for his safety and general well-being."). Of course, in the prison context, the most
14 difficult part of guaranteeing prisoners' safety is the Herculean task of protecting prisoners from
15 their fellow prisoners. *See e.g., Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). As the
16 undersigned sees it, the staggering difficulty of guaranteeing the safety of prisoners from violence
17 that might be visited upon them by their fellow prisoners necessarily calls for a measure of
18 deference when evaluating prison officials' assertions of prisoner safety as a justification for
19 housing assignments. In other words, if the undersigned were to give Plaintiffs the benefit of the
20 doubt by rejecting the expert witness prison guard's relevant and reliable gang expertise, by
21 crediting what the court views to be a series of unreasonable inferences and unwarranted
22 deductions, and by following Plaintiffs down a path that the undersigned believes to be dotted
23 with a series of logical leaps – after which, the court would be expected to force Defendants to re-
24 house Prisoner-1 in confines that appear to be clearly attended with grave threats to Prisoner-1's
25 life and limb, the undersigned would in effect be unduly interfering with CDCR's ability to
26 effectively discharge its constitutional duty to guarantee Prisoner-1's safety (let alone the safety of
27 prison staff and other prisoners who might become embroiled in any potential attack on Prisoner-
28 1). For these reasons, in addition to those expounded by Defendants, Plaintiffs' enforcement

1 motion as to Prisoner-1 is **DENIED** because while Plaintiffs describe Prisoner-1's activism and
2 participation in this litigation and his or her housing in a restricted facility, Plaintiffs fail to
3 convincingly establish any logical connection between the activism or the participation in
4 litigation and Defendants' decision to house Prisoner-1 in a restricted facility.

5 The undersigned will now turn to the final pending matter that is ripe for decision –
6 namely, a retaliation motion filed by another class member ("Prisoner-2"). *See* Pls.' Mot. (dkt.
7 1665-2 *SEALED*); Defs.' Opp. (dkt. 1671-2 *SEALED*); and, Pls.' Reply (dkt. 1678-2
8 *SEALED*). Plaintiffs again set the stage by narrating the details of Prisoner-2's activism and
9 involvement in this litigation (*see* Pls.' Mot. (dkt. 1665-2 *SEALED*) at 7-8) as well as certain
10 details pertaining to Prisoner-2's health and his housing at a particular facility (*see id*. at 8-9).
11 Prisoner-2 was recently involved in a certain disciplinary matter wherein Plaintiffs contend that
12 Prisoner-2 was falsely accused of assaulting someone ("Victim-1") about whom Prisoner-2 had
13 reportedly lodged a complaint on grounds that Victim-1 had bullied another person. *See id*. at 9-
14 11. As a result of these allegations, Prisoner-2 was found guilty of battery and disciplined by
15 Defendants. *Id*. Plaintiffs allege that this disciplinary action was groundless and that it was mere
16 pretext for retaliating against Prisoner-2 for having participated in this litigation (*see id*. at 12).
17 Plaintiffs also allege certain other retaliatory treatment including an allegation that a nurse's
18 assistant "verbally threatened [Prisoner-2] and his family's lives" and that the same nurse's
19 assistant maliciously failed to clean Prisoner-2 after Prisoner-2 suffered a digestive accident. *Id*. at
20 11. Plaintiffs allege that they have offered sufficient "evidence garnered by [Prisoner-2] and [his
21 or her] counsel thus far to establish a *prima facie* case that there has been harmful adverse action
22 by a state actor with a causal relationship to constitutionally protected conduct," such as to warrant
23 discovery and further briefing. *See id*. at 13-18. Specifically, Plaintiffs seek any and all
24 documentation that three particular staff members sent, received, took, or reviewed regarding
25 Prisoner-2 from mid-2020 through the present; any and all documentation that any CDCR
26 personnel sent, received, took, or reviewed regarding or referencing the battery for which
27 Prisoner-2 was deemed guilty; and, all documentation concerning any investigation, interviews,
28 inquiries, or conclusions (including documentation possessed by certain non-parties to the

litigation such as a county sheriff, the state public health department, and others) which regarded or referenced the battery for which Prisoner-2 was deemed guilty. *Id*. at 17-18. Defendants contend that the motion is due to be denied: (1) because a state prisoner cannot use 42 U.S.C. § 1983 to challenge the fact or duration of his confinement because such an action lies at the core of habeas corpus (*see* Defs.' Opp. (dkt. 1671-2 *SEALED*) at 9); (2) because the actions of which Plaintiffs complain were undertaken by private parties at a private facility (*see id*. at 11-13); (3) because Plaintiffs fail to state a *prima facie* claim for retaliation because CDCR's disciplinary actions furthered a legitimate penological goal (*id*. at 13-16); and, (4) that if the court were to permit discovery, Plaintiffs' requests should be narrowed (*id*. at 16-17). As was the case with Prisoner-1's retaliation arguments, the court finds that Prisoner-2's arguments are also based on unwarranted and unreasonable inferences and deductions, combined with leaps of logic. At bottom, the court agrees with Defendants (*see id*. at 13-14) in finding: that Plaintiffs have failed to set forth any particular facts that Prisoner-2 expects to uncover through discovery; that Plaintiffs have failed to identify any specific facts tending to show that whatever evidence they seek actually exists; that, putting aside Plaintiffs' conclusory statements and unreasonable inferences and deductions, Plaintiffs have failed to establish – even in *prima facie* form – any indication that any of the government action involved in Prisoner-2's disciplinary matter was fueled by retaliatory animus rather than by legitimate penological goals. For that reason, as well as for the reasons set forth by Defendants (*see id*. at 5-18), Plaintiffs' request for discovery is **DENIED** and Plaintiffs' enforcement motion as to Prisoner-2's disciplinary matter is likewise **DENIED** because while Plaintiffs set forth Prisoner-2's activism and participation in this litigation and the details of his or her disciplinary matter related to the assault in question, Plaintiffs fail to convincingly establish any logical connection between Prisoner-2's activism or participation in litigation and Defendants' decision to discipline Prisoner-2 for having committed an assault.

**IT IS SO ORDERED.**

Dated: September 6, 2022.

ROBERT M. ILLMAN
United States Magistrate Judge