UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TODD ASHKER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MATHEW CATE, et al.,<br><br>    Defendants. | Case No. 09-cv-05796-CW (RMI)<br><br>**ORDER RE: PLAINTIFFS' GLOBAL ENFORCEMENT MOTION**<br><br>Re: Dkt. No. 1682 |

    Now pending before the court is "Plaintiffs' Enforcement Motion to Remedy Proven Constitutional Violations" (dkt. 1682). Defendants have filed a response (dkt. 1743) and Plaintiffs have filed a reply (dkt. 1804). Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the undersigned finds the matter to be suitable for disposition without oral argument. For the reasons set forth below, Plaintiffs' motion is denied.

    In August of 2015, the Parties executed their Settlement Agreement (cited as "SA") (dkt. 424-2) in this case. In pertinent part, the agreement provides that "[i]f Plaintiffs contend that current and ongoing violations of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment of the United States Constitution exist on a systemic basis as alleged in the Second Amended Complaint or Supplemental Complaint or as a result of CDCR's reforms to its Step Down Program and SHU policies contemplated by this Agreement . . . [and] the parties are unable to resolve the issue informally, Plaintiffs may seek *enforcement of the Agreement* by seeking an order upon noticed motion before [the undersigned]." *See id*. at ¶ 52 (emphasis added). In this regard, "Plaintiffs must demonstrate by a preponderance of the evidence that CDCR is in material breach of its obligations under this Agreement . . . [and] [i]f Plaintiffs have demonstrated

1  by a preponderance of the evidence a material noncompliance with these terms, then for the
2  purposes of Plaintiffs' enforcement motion only, the parties agree that Plaintiffs will have also
3  demonstrated a violation of a federal right and that [the undersigned] may order enforcement
4  consistent with the requirements of 18 U.S.C. § 3626(a)(1)(A)." *Id*. at ¶ 52. Lastly, the Settlement
5  Agreement provides (*see id*.) that "[a]n order issued by [the undersigned] under this Paragraph is
6  subject to review under 28 U.S.C. § 636 (b)(1)(B)," which appears to call for the undersigned to
7  issue an order that would then be reviewable under the standards applicable to reports and
8  recommendations. Additionally, in pertinent part, 18 U.S.C. § 3626(a)(1)(A) provides that
9  prospective relief in any civil action with respect to prison conditions shall extend no further than
10 necessary to correct the violation of the federal right implicated; that such relief must be narrowly
11 drawn; that it must extend no further than necessary to correct the violation of the federal right;
12 that it constitute the least intrusive means necessary to correct the violation; and, most
13 importantly, "[t]he court shall give substantial weight to any adverse impact on public safety or
14 the operation of a criminal justice system caused by the relief." *Id*. Pursuant to ¶ 52 of the
15 agreement, Plaintiffs seek an order from the undersigned in order to remedy what they submit to
16 be three broad categories of already proven violations: (1) the misuse of confidential information,
17 (2) the denial of fair opportunities for parole, (3) and the due process violations in the placement
18 and retention of class members in RCGP housing. *See* Pls.' Mot. (dkt. 1682) at 12-22.
19         As to the first category, referring to their past citations of examples, Plaintiffs argue that
20 those examples "illustrate that Defendants continue to fabricate and inaccurately disclose
21 confidential information . . . [in ways that] hinder[] class members in preparing their defense and
22 questioning the accuracy and reliability of informant statements [as it relates to their disciplinary
23 hearings]." *Id*. at 13. Plaintiffs state that "nearly half of the 151 [Rules Violation Reports]
24 reviewed during the extended monitoring period contained inaccurate or fabricated confidential
25 disclosures used to return class members to solitary confinement." *Id*. By way of remedy,
26 Plaintiffs state that:
27
28
> [b]ased on CDCR's longstanding and proven violations, Plaintiffs
> seek the following narrowly tailored remedy: (1) the audio-recording

> of all confidential source interviews unless an investigator explains in writing why recording would interfere with the integrity of the interview; (2) maintenance of all investigator notes and recordings of confidential source interviews; (3) new training and written guidelines to ensure that confidential memoranda accurately and fully document the confidential interviews, including disclosing any potentially exculpatory information; (4) new training and written guidelines to ensure that confidential disclosures accurately summarize the confidential memoranda, including disclosing all relevant information that can be disclosed without compromising source identity; (5) the creation of an independent monitor to review CDCR's use of confidential information; and (6) a mechanism for prisoners who are currently serving solitary terms or have lost good-time credits based on confidential information to appeal those disciplinary proceedings to an independent monitor acting as a neutral fact-finder.
>
> *See id*. at 14.

Plaintiffs contend that these measures "are calibrated to narrowly but sufficiently resolve the systemic problems created by CDCR's unconstitutional policies and practices, in a manner that is proportional to the scope of the violation . . . [and that] by specifically linking each measure to the particular violations identified by the District Court, the remedy is narrowly drawn, necessary, and the least intrusive means to achieve compliance." *See id*. at 14-17.

As to the second category, Plaintiffs complain that validation of prisoners' gang affiliation becomes a highly significant, if not dispositive, factor in their parole consideration – the upshot of which is that Plaintiffs want CDCR to stop transmitting this information to the Board of Parole Hearings ("BPH") – at least in the manner that has thus far been the case. *Id*. at 17. Plaintiffs state that "by refusing to inform BPH that the validations do not reliably indicate that a prisoner has been active on behalf of a gang, CDCR leads parole commissioners to rely on constitutionally infirm validations to deny class members fair parole consideration." *Id*. By way of remedy, Plaintiffs submit that this court should order CDCR to instruct the BPH with a directive for all class members scheduled to appear for parole hearings that, "[a] prisoner's old gang validation, on its own, should not be assumed to reliably indicate that the prisoner was active with a prison gang, as many prisoners were previously validated without such evidence and the District Court has ruled that the validations were made in systemic violation of constitutional due process; instead, as the Board of Parole Hearing commissioners evaluate the totality of case factors, they should consider only overt acts of recent gang activity, as opposed to indications or labels of association

3

or affiliation." *Id*. at 18. Plaintiffs submit that this remedy is simple, narrowly tailored, "minimally intrusive and provides the BPH with the information it needs to avoid making erroneous presumptions and to provide class members with meaningful and fair eligibility determinations." *Id*.

Regarding the third category, Plaintiffs contend that prisoners in the Restricted Custody General Population ("RCGP") unit "face a serious risk of erroneous deprivation of liberty under current procedures because CDCR provides inaccurate and misleading notice to class members of how to avoid placement and retention in RCGP and indulges a virtually irrebuttable presumption that historical safety concerns persist indefinitely, resulting in wrongful placement and retention of prisoners in the unit on a systemic basis." *Id*. at 19. Plaintiffs contend that "decisionmakers deny prisoners meaningful review and a fair opportunity for rebuttal"; that they "are denied adequate notice of the factual basis of their RCGP placement and retention"; and, that "safety threat reviews lack sufficient checks and balances." *Id*. Plaintiffs urge the court to adopt a remedy devised by Emmitt Sparkman, a corrections expert retained by Plaintiffs. *Id*. at 20. In this regard, Plaintiffs' proposed remedy and its justification are as follows:

> The [Departmental Review Board ("DRB")] should develop a written Prisoner Supervision Plan for each individual placed in the RCGP (and for each individual already housed in the RCGP as of the date of the Court's order). The Plan would include the reasons and/or criteria utilized for RCGP placement (or, in the case of individuals already housed in the RCGP on the date of the Court's order, retention), and objectively describe how, using resources available in the RCGP, the prisoner can demonstrate eligibility for release to the general population. The requirements of a Prisoner Supervision Plan would include, for instance, programming positively, interacting with other prisoners, or otherwise acting in a manner consistent with a person who is in good standing with the group with which he is alleged to have safety concerns. The Plan would be reviewed with the prisoner within two weeks of his initial placement and during each subsequent [Institution Classification Committee ("ICC")] and DRB review, at which the Director or Chairperson would discuss with the prisoner his progress, or lack of progress, on each component of the Plan, explain how any yet-unsatisfied components can be met for future reviews, and note any revisions to the Plan that are necessary in light of any materially changed circumstances. The Plan and any revisions also would be produced to Plaintiffs' counsel. Once the objectives of the Plan are accomplished, the ICC would refer the prisoner to the DRB with a recommendation of release to general population, notwithstanding whether CDCR's gang investigators or the ICC can definitively state that the historical safety concerns that were the

original basis for the prisoner's placement in RCGP have been resolved or no longer exist. While the prisoner's fulfillment of the Plan would not automatically require placement in general population, the DRB would be required to provide compelling evidence of ongoing safety concerns (or a signed statement by the prisoner acknowledging his desire to remain housed in RCGP) to overcome the presumption that the prisoner is safe to return to general population upon having fulfilled the criteria set forth in the Plan. These safeguards would ensure prisoners have a pathway for release from indefinite RCGP placement and would avert inappropriate RCGP placement and retention. Additionally, multi-tiered review by ICC and DRB is necessary to remediate the problem identified by the District Court that class members do not receive meaningful periodic reviews of their RCGP retention and is responsive to the Court's direction that "multi-level reviews" would significantly reduce the errors inherent in the current system.

\* \* \*

In the alternative, Defendants could mitigate the due process concern through measures to lessen the burdens imposed by the RCGP that give rise to a liberty interest, including by: (a) relocating the RCGP, or establishing an additional RCGP unit that is centrally located to relieve the burdens imposed by the remoteness of [Pelican Bay State Prison]; (b) providing greater opportunities for increased social interaction with other prisoners by allowing prisoners in programming groups to interact with prisoners in other groups or other housing units in controlled settings, or through a chain link fence; and (c) offering RCGP prisoners the opportunity to have contact visits on weekends.

*Id*. at 20-21, n.3 (internal citations omitted).[1]

Lastly, Plaintiffs also propose that this court's remedial order should "include a one-year compliance period, subject to extension until substantial compliance of each requirement is shown." *Id*. at 22.

Defendants disagree and submit that: (1) Plaintiffs are not entitled to ¶ 52 relief because no term of the settlement agreement has been breached, and that even if there was a breach it was not material; (2) that in any event, Plaintiffs' proposed remedies go far beyond the narrowly-tailored remedies permitted under 18 U.S.C. § 3626(a)(1)(A), and would effectively rewrite the settlement agreement; and, (3) that Plaintiffs' suggestion of a one-year compliance period would effectively nullify certain express terms of the Settlement Agreement. Defs.' Opp. (dkt. 1743) at 8-30. As an initial matter, Defendants argue that Plaintiffs' motion fundamentally misinterprets the interplay

---

[1] Defendants note that CDCR is addressing issues with RCGP's location and visiting opportunities for persons assigned to that facility. *See* Defs.' Opp. (dkt. 1743) at 22-24.

between ¶ 41 (Termination) and ¶ 52 (Compliance) of the Settlement agreement. *See id*. at 8-9. In this regard, Defendants point out that ¶ 41 allows for an extension of the agreement's original 24-month term, by subsequent 12-month periods, upon a showing of "current and ongoing systemic violations of the Eighth Amendment or the Due Process Clause . . . as alleged in [the operative complaints] or as a result of CDCR's reforms to its Step Down Program or the SHU policies contemplated by this Agreement." *See id*. at 8; *see also* SA (dkt. 424-2) at ¶ 41. On the other hand, Defendants note that ¶ 52 – one of two enforcement mechanisms in the agreement – adds another layer to the extension standard set forth in ¶ 41; namely, ¶ 52 provides in pertinent part that:

> [i]f Plaintiffs contend that current and ongoing violations of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment of the United States Constitution exist on a systemic basis as alleged in the [operative complaints] or as a result of CDCR's reforms to its Step Down Program and SHU policies contemplated by this Agreement . . . Plaintiffs may seek enforcement of the Agreement by . . . demonstrat[ing] by a preponderance of the evidence that CDCR is in material breach of its obligations under this Agreement.

*See* Defs.' Opp. (Dkt. 1743) at 8-9; *see also* SA (Dkt. 424-2) at ¶ 52.

In other words, an extension motion can be granted on the 1-layer standard set forth in ¶ 41, however, the 2-layer standard for enforcement under ¶ 52 also requires a showing of material breach of one of the Settlement Agreement's terms. As for relief that may be had for constitutional violations that *do not* amount to a material breach of one of Defendants' obligations under the agreement, Defendants point that "Plaintiffs may initiate a separate lawsuit to remedy alleged constitutional violations that fall outside the parties' narrow Agreement, and individual inmates always have the option to file lawsuits should they believe their individual rights have been violated." Defs.' Opp. (dkt. 1743) at 8-9, n. 4.

Under this framework, Defendants contend that an earlier finding that Plaintiffs have satisfied the ¶ 41 standard should not automatically entitle them to their requested remedies under ¶ 52. *Id*. at 8. Defendants submit that this approach is faulty because "[b]eyond [Plaintiffs'] one-sentence recitation of Paragraph 52's standard, Plaintiffs fail to analyze whether the alleged constitutional violations [previously found by the presiding judge] put Defendants in material breach of the Agreement's terms." *Id*. at 9. In short, Defendants contend that they are not in breach

6

1    – let alone material breach – of any term of the Settlement Agreement. *Id*.

2          Plaintiffs' response to this line of argument is unpersuasive. *See generally* Pls.' Reply (dkt.
3    1804) at 5-7. First, Plaintiffs suggest that the presiding judge's previous findings about CDCR's
4    use of confidential information establish breaches of ¶¶ 15-17 and 34. *See id*. at 5. A review of ¶¶
5    15-17, however, does not reveal any mention of confidential information – the closest thing being
6    a discussion of the relevant Step Down procedures for prisoners who are found guilty during
7    disciplinary hearings. In other words, Plaintiffs are interpreting the "have been found guilty"
8    language of those paragraphs broadly enough to include "on an unimpeachable basis" – an
9    interpretation which the undersigned finds disagreeable. *See* SA (dkt. 424-2) at ¶¶ 15-17. While ¶
10   34 requires CDCR to adhere to "the standards for the consideration of and reliance on confidential
11   information set forth in Title 15 of the California Code of Regulations, section 3321," Plaintiffs
12   have offered no analysis or explanation as to how or why they believe the presiding judge's
13   previously-rendered ¶ 41 findings compel a ¶ 52 finding that Defendants have breached ¶ 34 by
14   failing to adhere to the § 3321 standards for considering and relying on confidential information.
15   *See generally* Pls.' Mot. (dkt. 1682), and Pls.' Reply (dkt. 1804). Accordingly, for these reasons,
16   the undersigned finds that Plaintiffs have failed to prove that ¶¶ 15-17 or 34 have been breached.

17         Plaintiffs then add that they "ground their RCGP claim in Paragraph 27's requirement to
18   conduct periodic safety review and verification." *See* Pls.' Reply (dkt. 1804) at 5. This too,
19   however, is unpersuasive, because Plaintiffs' motion does not contend that Defendants have failed
20   to conduct period safety reviews and verification as it relates to RCGP placement and retention –
21   instead, as described above, Plaintiffs' argument is that the periodic safety review and verification
22   process is conducted in a manner with which they disagree. *See* Pls.' Mot. (dkt. 1682) at 18-19
23   (arguing that reviews lack sufficient checks and balances; that RCGP prisoners are given
24   inadequate and inaccurate notice for the factual basis of their placement; and that prisoners are
25   given inaccurate and misleading notice of how to avoid RCGP placement and retention). In short,
26   the undersigned finds that Plaintiffs have similarly failed to establish a breach under ¶ 27.

27         As to the parole issue, Plaintiffs do not even identify any specific provision of the
28   agreement that might have been breached. *See generally* Pls.' Mot. (dkt. 1682) at 17-18; *see also*

Pls.' Reply (dkt. 1804) at 6-7. Instead, Plaintiffs only state that "[w]ith respect to parole, Defendants dispute that the process used to make the old gang validations was unconstitutional, but they already lost that issue . . . [and] [b]ecause the old validations are unreliable, CDCR staff should have recognized, if they'd had adequate training, that the faulty validations could be used unqualifiedly against the class consistent with the Agreement." Pls.' Reply (dkt. 1804) at 6. But not all constitutional violations would constitute breaches of the agreement and, in any event, this argument is unpersuasive for more than one reason. First, it appears to lump together reliable and unreliable validations – after all, it cannot be suggested that every putative parolee's validation was incorrect or outdated, as gang activity in the prison system continues to exist. Second, it appears to rely on a degree of speculation to the extent that it asserts that the validations "could be used" in a manner that would be inconsistent with the agreement – that sort of equivocation falls short of concretely establishing a breach of one of the agreement's terms. Third, and most importantly – as mentioned, Plaintiffs' argument fails to identify any paragraph or section of the agreement that has actually been breached in this regard. Therefore, this argument too fails to establish any breach that might entitle Plaintiffs to relief under ¶ 52.

Lastly, Plaintiffs contend that Defendants have somehow breached ¶¶ 41 and 52 themselves because of the notion that those paragraphs "quite clearly impose[] an obligation . . . to refrain from systemic constitutional violations related to the complaint or Settlement reforms [and] [b]reach of, or noncompliance with, that obligation is subject to remedial enforcement." Pls.' Reply (dkt. 1804) at 6. As to the suggestion that ¶ 41 (requirements for termination or extension of the agreement) and ¶ 52 (setting forth a 2-layer enforcement mechanism) generally obligate Defendants to avoid systemic constitutional violations of the sort described, the establishment of which automatically would open the door to remedies consistent with the requirements of 18 U.S.C. § 3626(a)(1)(A) – Defendants are correct to note that Plaintiffs have presented a circular argument with no traction because Defendants cannot breach these provisions because they do not impose any such obligation on them. *See* Defs.' Opp. (dkt. 1743) at 9. The undersigned agrees. By way of example, the only "obligation" imposed upon Defendants under ¶ 52 is that they "shall respond to Plaintiffs' contentions [in the meet and confer process] no later than 30 days after

receipt of Plaintiffs' written description of the issue." *See* SA (dkt. 424-2) at ¶ 52. The remainder of that paragraph is procedural in that it sets forth the above-described enforcement mechanism for specific types of systemic constitutional violations that can be tethered to a material breach of Defendants' obligations under the agreement. To couch the enforcement mechanism itself as constituting one of Defendants' obligations under the agreement relies on a disagreeable interpretation of that provision. The same is true for ¶ 41 the termination or extension provision.

Thus, Plaintiffs have failed to show any breach has occurred that might entitle them to ¶ 52 relief, let alone a material breach. Having found no breach, it is unnecessary to proceed any further – nevertheless, the undersigned will also note that even if a material breach had been established, the undersigned agrees with Defendants' arguments (*see* Defs.' Opp (dkt. 1743) at 10-30) to the effect that Plaintiffs' proposed remedies are grossly overbroad; that they fail to account for the degree of deference contemplated by § 3626(a)(1)(A)[2]; and, if implemented, that they would effectively rewrite much of the Parties' the settlement agreement.[3]

**IT IS SO ORDERED.**

Dated: May 22, 2023

ROBERT M. ILLMAN
United States Magistrate Judge

---

[2] *See e.g., Brown v. Plata*, 563 U.S. 493, 543 (2011) ("Proper respect for the State and for its governmental processes require[s] . . . accord[ing] the State considerable latitude to find mechanisms and make plans to correct [] violations in a prompt and effective way consistent with public safety. In order to 'give [the] substantial weight to any adverse impact on public safety,' [required by] 18 U.S.C. § 3626(a)(1)(A), [] court[s] must give due deference to informed opinions as to what public safety requires, including the considered determinations of state officials . . .").

[3] *See e.g., San Francisco NAACP v. San Francisco Unified School Dist.*, 59 F. Supp. 2d 1021, 1037 (N.D. Cal. 1999) ("[The] Court cannot rewrite the settlement agreement. It cannot delete, modify, or substitute certain provisions in favor of provisions that the Court would prefer.").